**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ROYAL INDEMNITY COMPANY,

               Plaintiff,

      v.

                                   C.A. No. 05-165 (JJF)

PEPPER HAMILTON LLP, RODERICK
GAGNÉ, FREED MAXICK & BATTAGLIA
CPAs, PC, McGLADREY & PULLEN, LLP,
and MICHAEL AQUINO,

               Defendants.

**DEFENDANT FREED MAXICK & BATTAGLIA CPAs, PC's
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

James L. Holzman (Bar ID #663)
J. Clayton Athey (Bar ID #4378)
PRICKETT, JONES & ELLIOTT, P.A.
1310 King Street
Wilmington, Delaware  19801
(302) 888-6500
jlholzman@prickett.com
jcathey@prickett.com
*Attorneys for Defendants Freed Maxick
   & Battaglia CPAs, PC*

OF COUNSEL:

John H. Eickemeyer (JE-8302)
Jonathan A. Wexler (JW-5587)
VEDDER, PRICE, KAUFMAN
  & KAMMHOLZ, P.C.
805 Third Avenue
New York, New York  10022
212-407-7700
jeickemeyer@vedderprice.com
jwexler@vedderprice.com

Dated:  June 10, 2005

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................ 1

NATURE AND STAGE OF THE PROCEEDING.......................................................... 2

STATEMENT OF FACTS ............................................................................................... 3

SUMMARY OF ARGUMENT ....................................................................................... 7

ARGUMENT ................................................................................................................... 8

POINT I    ROYAL FAILS TO STATE A RICO CLAIM AGAINST FMB ........................ 8

POINT II    ROYAL'S COMMON LAW CLAIMS ARE BARRED BY THE
APPLICABLE STATUTE OF LIMITATIONS ................................................ 10

POINT III    ROYAL'S COMMON LAW CLAIMS AGAINST FMB  MUST BE
DISMISSED FOR FAILURE TO STATE A CLAIM ...................................... 12

    A.    Royal's Civil Conspiracy Claim is Legally Insufficient........................... 12

    B.    Royal's Fraud Claims Should Be Dismissed ....................................... 13

    C.    Royal's Negligence Claims Are Legally Insufficient........................... 14

    D.    Royal's  Aiding and Abetting A Breach Of  Fiduciary Duty Claim Should
Be Dismissed ....................................................................................... 14

CONCLUSION.................................................................................................................. 15

## TABLE OF AUTHORITIES

**Page**

### CASES

*Lum v. Bank of America*, 361 F.3d 217 (3rd Cir. 2004)................................................................ 3

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)........................................................................ 13

*Smith v. Berg*, 247 F.3d 532 (3rd Cir. 2001)............................................................................ 9

*Ziemba v. Cascade International, Inc.,* 256 F.3d 1194 (11th Cir. 2001)...................................... 13

### STATUTES

10 Del. C. §8106 ....................................................................................................................... 11

10 Del. C. §8121 ....................................................................................................................... 11

18 U.S.C. §§1962(c) ................................................................................................................... 8

18 U.S.C. §1962(d) .................................................................................................................. 7-9

42 Pa. Cons. Stat. Ann. §5524 ................................................................................................ 10

## PRELIMINARY STATEMENT

Defendant Freed Maxick & Battaglia, CPAs, P.C. ("FMB") submits this Memorandum in support of its motion to dismiss the First Amended Complaint (the "Complaint"). FMB is an accounting firm located in Buffalo, New York, that was organized in August 2001 – after the issuance of the two audited financial statements of Student Finance Corporation ("SFC") on which plaintiff Royal Indemnity Company ("Royal") claims to have relied. As demonstrated herein, FMB never audited or issued a report on any of SFC's financial statements. Moreover, defendant Michael Aquino ("Aquino"), who Royal alleges "conducted and supervised" the audits of the two SFC financial statements on which it purportedly relied, has never been affiliated in any way with FMB. While a similarly-named entity – Freed Maxick Sachs & Murphy, P.C. ("FMSM") – did issue an audit report on SFC's financial statements for the year ended December 31, 1999, out of FMSM's Philadelphia office, Royal fails to distinguish between FMB (which has never had a Philadelphia office) and FMSM, which is still an existing professional corporation organized under New York law. Quite simply, FMB does not belong in this lawsuit and should be dismissed as a party.

As demonstrated herein, any efforts by Royal to assert RICO claims against FMB must fail because Aquino, against whom two RICO claims have been alleged, was never affiliated in any way with FMB. Moreover, Royal fails to allege several of the requisite elements of the RICO claims that it purports to assert, including one claim that it apparently seeks to assert against FMB, with which Aquino was never affiliated. Accordingly, the RICO claims asserted in the Complaint must be dismissed. (Point I, *infra*)

Royal fares no better in its efforts to assert common law claims against FMB. First of all, FMB never audited any SFC financial statements and so could not have done anything that would give rise to liability to Royal. Even if the Court decided to apply Royal's allegations

against "Freed" to FMSM, Royal would still fall short of the mark.  Under Pennsylvania law –
which the Court should apply here – Royal's claims are untimely in that they were not asserted
within two years of the admitted revelation of SFC's alleged misconduct on March 20, 2002.
Even under Delaware law, any claims against FMB – or FMSM – would be untimely. (Point II,
*infra*)

Moreover, all of Royal's purported common law claims must be dismissed for failure to
state a claim upon which relief can be granted.  Royal fails to allege the requisite elements of a
fraud claim in that it fails to allege facts from which scienter could be inferred and cannot allege
justifiable reliance, especially since Royal had committed itself to the entire SFC insurance
program before the time it alleges it received an audited SFC financial statement.  Royal also
cannot allege the privity required to assert a negligence claim against FMB (or against FMSM
for that matter) and cannot allege the justifiable reliance required to sustain a negligent
misrepresentation claim.  Further, Royal fails to allege facts from which it could be inferred that
FMB was involved in a "conspiracy" whose last act occurred before FMB was formed, or that
FMSM somehow was involved in such a conspiracy.  Finally, Royal also fails to allege requisite
elements of its purported claim for aiding and abetting a breach of fiduciary duty and cannot
assert a claim for "deepening insolvency." (Point III, *infra*)  Accordingly, the Complaint should
be dismissed with prejudice as against FMB.

## NATURE AND STAGE OF THE PROCEEDING

This is an action by Royal against the several defendants listed in the caption for the
recovery of alleged money damages.  Royal has asserted claims under the Racketeer Influenced
and Corrupt Organizations Act (RICO) along with several common law claims.  This action is at
the pleading stage and this motion to dismiss is submitted by FMB in response to Royal's First
Amended Complaint.

2

## STATEMENT OF FACTS

In an effort to avoid repetitive motion papers, FMB respectfully refers the Court to the Statement of Facts contained in defendants McGladrey & Pullen, LLP ("McGladrey") and Michael Aquino's Memorandum In Support of Their Motion to Dismiss (the "McGladrey Memo"), which recounts the facts underlying this controversy in a straightforward chronological manner. These facts include the origins of SFC's securitization program and the issuance of credit insurance by Royal prior to the issuance of the SFC financial statements referred to in the Complaint, as well as the services performed for SFC by Aquino while he was employed at BDO Seidman prior to January 2000. FMB will supplement the McGladrey Memo's Statement of Facts here only to give the Court a clearer picture of FMSM's role, and to underscore that FMB did not arrive on the scene until after the events complained of in the Complaint.

FMB is a professional corporation that was organized under New York State law on August 22, 2001. (*See* Entity Information reports from New York Department of State, Division of Corporations, web site, Exhibit A hereto.) In its complaint, Royal misleadingly refers to FMB as "Freed," implying that there has been one and only one accounting firm bearing this name and further alleging that "Freed was merged with McGladrey from approximately November, 2000, through September 2001." Royal also alleges that "Freed provided accounting services for SFC, based in Delaware, from 1999 through 2001." (Complaint, ¶15) Every single one of these allegations is demonstrably incorrect based on public records and documents relied upon by Royal in the Complaint, all of which may properly be considered by the Court on this motion. *See, e.g., Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3rd Cir. 2004) (Court may consider documents that form basis of claim as well as matters of public record on a motion to dismiss).

FMSM is a New York professional corporation formed in June 1978. (*See* Exhibit A) FMSM has at all times continued as a separate and existing corporation and it continues to be a

corporation in good standing to this day. (*Id.*) FMSM's shareholders have also at various times created certain related entities for the purpose of performing non-financial statement (or "non-attest") services, but none of these entities is involved in the events at issue here. Royal alleges that Aquino "was formerly a partner and/or employee of Freed" (Complaint, ¶17), and alleges that "Upon information and belief, from 1999 through 2000, Aquino worked for Freed, which, on or about November 2000, merged with McGladrey." (*Id.* ¶95)

Of course, Aquino could not have become associated with FMB in 1999 and 2000 since FMB did not yet exist. In reality, Aquino joined FMSM in January 2000, when an FMSM-related entity acquired a Philadelphia-based practice of BDO Seidman LLP, that Aquino operated and that was largely non-attest in nature. Aquino continued to conduct accounting and auditing services for certain clients – of which SFC was one – under the FMSM name. Indeed, after his departure from BDO Seidman, Aquino continued to operate his practice – including the audit of SFC's financial statements – out of the same Philadelphia office in which he had worked for BDO Seidman.

Prior to Aquino's arrival in January 2000, SFC was not a client of FMSM and FMSM did not provide any services to it; Royal does not – and cannot – allege to the contrary. Indeed, Royal acknowledges in its Complaint (¶¶97-103) that Aquino performed services for SFC while at BDO Seidman prior to 2000.[1] Significantly, by January 2000, Royal had already:

- Issued its first SFC credit risk insurance policy in the amount of $75 million on January 22, 1999 (Complaint, ¶37); and

- Issued a "Master Policy" of credit risk insurance to SFC in 1999 in the amount of $200 million. (*See* SFC Audited Financial Statement for the Years Ended December 31, 1999 and 1998, dated July 26, 2000 (Exhibit B hereto), at 10)

---

[1] Royal's reference to the "McGladrey accountants" in paragraph 101 of the Complaint is entirely misleading since at the time of the events alleged there (June 1998), Aquino was still associated with BDO Seidman and had no association whatever with FMSM or McGladrey.

By definition, Royal took these actions without reviewing or relying on any SFC financial statements that had been audited by FMSM.

On a date no earlier than July 26, 2000, FMSM issued its audit report on the financial statements of SFC as of December 31, 1999 and 1998 (the "12/31/99 SFC Statement").[2] (*See* Exhibit B hereto)  Royal itself alleges that the audit of the 12/31/99 SFC Statements was conducted and supervised by Aquino (Complaint ¶104), who was not then and never has been associated with FMB.  Although Royal alleges that SFC was a Pennsylvania corporation with its principal place of business in New Castle, Delaware (*id*, ¶18), the FMSM audit report was addressed to "Student Finance Corporation, Radnor, Pennsylvania." (Exhibit B at 3)  Royal alleges that it received the 12/31/99 SFC Statement on or about July 26, 2000, though it does not specify precisely when or how it received the statement. (Complaint ¶104)  The distribution list appearing at the end of the annexed copy of the 12/31/99 SFC Statement shows that FMSM did not send a copy to Royal, and that the only copies sent outside the firm by FMSM went to SFC's executive offices in Radnor, Pennsylvania. (*See* Exhibit B)  Thus, if Royal received a copy of the 12/31/99 SFC Statement at all, it would not have been until the statement was transmitted to Royal by Andrew Yao, SFC's president, at some unknown date subsequent to July 26, 2000.

Royal alleges that "Freed and Aquino intended that Royal rely on" the 12/31/99 SFC Statement (*id.* ¶108), and alleges in various places elsewhere in the Complaint that it justifiably relied on this financial statement and on a subsequent SFC financial statement on which McGladrey issued an audit report. (Complaint ¶¶54, 129, 133)  However, the disclosures

---

[2] Royal incorrectly alleges that "Freed" represented in its audit report that "it had complied with Generally Accepted Accounting Principles ("GAAS")." [*sic*] (Complaint, ¶106)  In fact, FMSM's report states that it had conducted its audit "in accordance with generally accepted auditing standards," commonly known as GAAS, and that in its opinion, SFC's financial statements, which "are the responsibility of [SFC's] management," "present fairly, in all material respects, the consolidated financial position of [SFC] and subsidiaries as of December 31, 1999 and 1998 and the consolidated results of their operations and their cash flows for the years then ended in conformity with generally accepted accounting principles," which are known as GAAP. (Exhibit B at 3)

contained in the 12/31/99 SFC Statement thoroughly undercut any allegation that Royal relied on that statement in committing itself to the SFC credit insurance program. The first note to the 12/31/99 SFC Statement contains a section entitled "Prepaid Credit Insurance," which discloses not only that Royal had issued the initial $75 million credit insurance policy and that SFC had obtained an additional $200 million in insurance coverage from Royal in 1999, but also that in July 2000, Royal had made a commitment to SFC to issue an additional $350 million in credit insurance coverage. (Exhibit B at 10) Nowhere in its complaint does Royal allege that this note was incorrect or inaccurate. Royal had thus indisputably committed itself to the issuance of $625 million in credit insurance coverage to SFC *without* receiving and scrutinizing SFC's audited financial statements – the very type of statement that it now alleges it justifiably and detrimentally relied on with respect to the SFC insurance program.

The McGladrey Memo's Statement of Facts describes at length the events that occurred subsequent to the issuance of the 12/31/99 SFC Statement in late July 2000 – including the disclosures concerning "forbearance" payments in 1999 and 2000 that are contained in the notes to the subsequent SFC financial statement audited by McGladrey – and the Court is respectfully referred to that discussion. However, FMB does wish to point out that Royal's allegation that "Freed" was merged into McGladrey (Complaint ¶¶15, 95) is incorrect under any interpretation. If by "Freed," Royal is referring to FMB, it is obviously wrong since FMB was not organized until August 22, 2001. (*See* Exhibit A) If by "Freed," Royal is referring to FMSM, it is wrong again since FMSM continues to be a corporation in good standing under New York State law. (*Id.*)

McGladrey issued an audit report on SFC's financial statements for the years ended December 31, 2000 and 1999 (the "12/31/00 SFC Statement"), which is dated "Philadelphia,

6

Pennsylvania, April 6, 2001." That report is also addressed to "Student Finance Corporation, Radnor, Pennsylvania." (*See* 12/31/00 SFC Statement, annexed hereto as Exhibit C)  As the audit report on the 12/31/00 SFC Statement specifically states, the directors of FMSM (including Aquino) – as opposed to the firm itself – "merged with" McGladrey on November 1, 2000.

However, the affiliation between the directors of FMSM and McGladrey ended as of August 1, 2001, and, as Royal admits (Complaint ¶95), Aquino and all of the Philadelphia-based operations and employees with which he was involved remained with McGladrey when the FMSM affiliation terminated.  There is thus no dispute that Aquino is not now, and never has been, affiliated in any way with FMB.  Moreover, there is no possible dispute as to the lack of any involvement by FMB with the audits of SFC's financial statements that occurred before FMB was formed.  Having committed itself to a $625 million credit insurance program without reviewing SFC's financial statements, Royal now compounds its error by suing FMB, even though FMB (1) did not audit either of the two financial statements on which Royal, after the fact, alleges it relied, and (2) was never affiliated with the person whom Royal alleges was responsible for the conduct and supervision of those two audits.  For the reasons set forth more fully below and in the McGladrey Memo, Royal's Complaint should be dismissed with prejudice.

### SUMMARY OF ARGUMENT

1.     Royal fails to state a claim against FMB under 18 U.S.C. §1962(d) in that it alleges no facts from which it could be inferred that FMB (or FMSM) shared, and acted pursuant to, a common design with SFC's management or anyone else to deceive Royal.

2.     Royal's common law claims against FMB are barred by the statute of limitations. Delaware's borrowing statute requires the application of the shorter of Delaware's statute of limitations or that of the state in which the claim arose.  Pennsylvania has a paramount interest in

regulating the conduct of Pennsylvania-licensed accountants performing services within that state for Pennsylvania corporations.  Based on this factor and others, Pennsylvania has the predominant state interest here and should be deemed to be the state in which the claim arose. Pennsylvania has a two-year statute of limitations that is applicable to both fraud-based and negligence-based claims, while Delaware has a three-year statute.  Since Royal's claims indisputably accrued no later than March 20, 2002, the date on which Royal admits that the alleged SFC fraud was disclosed, this action – commenced on March 18, 2005 – is untimely under Pennsylvania law and so must be dismissed.  In any event, since Delaware's three-year statute of limitations begins to run from the date of the alleged wrongful conduct – which, to the extent the claim against FMB is based on FMSM's audit of SFC's financial statements for the years ended December 31, 1999 and 1998, is July 26, 2000, the date of the audit report – Royal's purported common law claims against FMSM are untimely under Delaware law as well.

       3.      Royal also fails to allege requisite elements of each of its purported common law claims against FMB.

## ARGUMENT

### POINT I

### ROYAL FAILS TO STATE A RICO CLAIM AGAINST FMB

In Counts I and II of the Complaint (¶¶135-172), Royal purports to assert claims against Aquino and defendant Rodrick Gagne under two RICO provisions, 18 U.S.C. §§1962(c) and (d), respectively.  In an improper effort to sweep FMB into its RICO dragnet without having to specify any alleged misconduct by FMB, Royal states in paragraph 15 of the Complaint that all allegations against Aquino are also made against "Freed."  This in and of itself is improper given that Aquino has never been affiliated with FMB and was affiliated with FMSM for only a portion of the time period at issue.  However, Royal excludes the allegations contained in Count I from

this blanket pleading exercise. (Complaint, ¶15)  Thus, there is no question that Count I is not alleged against FMB.  Even if it were and even if "Freed" was read to include FMSM, Royal would fail to state a claim under Section 1962(c) for the reasons set forth in Point I of the McGladrey Memo's argument.

While Royal apparently tries to include FMB within the ambit of Count II, its RICO conspiracy claim under Section 1962(d), it fails to state a claim against FMB under that provision as well.  First of all, FMB could not have been part of any RICO conspiracy since Aquino was never affiliated with it and FMB did not even exist at the time of most of the events alleged in the Complaint.  Even if Count II were taken as pled with respect to Aquino's activities while he was affiliated with FMSM, Royal would still fail to state a claim.  As discussed in Point II of the McGladrey Memo, in order to state a Section 1962(d) claim, the Complaint must allege facts from which it could be inferred that (1) the conspirators shared a common purpose, and (2) the particular defendant "knowingly agrees to facilitate a scheme, which includes the operation or management of a RICO enterprise." *Smith v. Berg*, 247 F.3d 532, 538 (3rd Cir. 2001)

As the McGladrey Memo demonstrates, Royal's own allegations are inconsistent with the proposition that Aquino shared a design to conceal the forbearance payments from Royal.  Not only did the 12/31/00 SFC Statement disclose the existence of the forbearance payments and specify the amount of those payments, but Royal alleges that Aquino sought written assurance of Royal's understanding of SFC's forbearance payment policy. (Complaint, ¶124)  Royal can hardly contend that such behavior evinces a design on Aquino's part – or on FMSM's part – to conceal the forbearance payments from Royal.  Indeed, since Royal alleges that Aquino was asking SFC to assure that Royal understood the forbearance policy, it can hardly contend in the same breath that Aquino was conspiring to further a "common design" to deceive Royal.  If

9

anything, the facts alleged by Royal negate any inference that Aquino – or any firm with which he may have been associated – agreed to further any deceptive scheme. Accordingly, and for the reasons set forth in Point II of the McGladrey Memo, Count II of the Complaint must be dismissed to the extent it is alleged against FMB.

## POINT II

### ROYAL'S COMMON LAW CLAIMS ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

Royal's common law claims are all time-barred under the applicable statute of limitations.[3] This action was commenced on March 18, 2005, nearly three years to the day after the date (March 20, 2002) on which Royal admits that it learned of the alleged fraud from SFC's president, Andrew Yao. As demonstrated in Point III of the McGladrey Memo, Pennsylvania's two-year statute of limitations bar applies to all of the purported common law claims and requires their dismissal. Indeed, as demonstrated below, even if Delaware's statute of limitations were held to govern, Royal's common law claims against FMB would be untimely. FMB joins in and relies upon the McGladrey Memo's discussion of the statute of limitations issue, to which this Court is respectfully referred.[4]

As noted in the McGladrey Memo, Pennsylvania applies a two-year limitations period to all of the common law clams Royal purports to assert. 42 Pa. Cons. Stat. Ann. §5524. For fraud claims, this two-year period runs from the date on which the fraud could be discovered with reasonable diligence, while for negligence claims the time runs from the date on which the

---

[3] Royal purports to assert common claims for civil conspiracy to commit fraud (Count III), fraud, fraudulent inducement and fraudulent concealment (Count IV), aiding and abetting fraud (Count V), negligence and negligent misrepresentation (Count VI), "deepening insolvency" (Count VII), and aiding and abetting a breach of fiduciary duty (Count VIII).

[4] FMB notes once again that it did not issue either of the financial statements referred to in the Complaint and that it did not even exist at the time of the events at issue. This discussion of the issues relating to the statute of limitations, and the subsequent discussion concerning the substance of Royal's purported common law claims, will assume, for purposes of this motion only, that Royal's claims against FMB are based on alleged wrongful conduct by FMSM without conceding that any such attribution is proper or has any basis in law or fact.

alleged duties were breached. While Delaware has a three-year statute of limitations (10 Del. C. §8106) that is applicable to Royal's purported common law claims, Delaware holds that claims accrue at the time of the alleged wrongful act, even if the plaintiff is not yet aware of the cause of action. (*See* McGladrey Memo at Point III.A, and cases cited there)

This Court must utilize Delaware's borrowing statute (10 Del. C. §8121), which requires the application of the limitations period either of Delaware or of the state where the cause of action arose, whichever is shorter. As demonstrated in the McGladrey Memo at Point III.B, Delaware courts determine where the claim arose by performing an analysis similar to that utilized in a substantive choice of law decision. The analysis contained in the McGladrey Memo that shows Pennsylvania law should be applied here is fully applicable with respect to FMB (or to FMSM, if that is the entity under consideration). Of paramount importance here is Pennsylvania's interest in regulating the conduct of Pennsylvania professionals, such as Aquino, who perform services for a Pennsylvania-based entity, which SFC was.[5] FMB adopts, and respectfully refers the Court to, the discussion in the McGladrey Memo (*see* Point III.B) demonstrating that Pennsylvania law should be applied and that Pennsylvania should therefore be deemed the state where the cause of action arose for purposes of application of the Delaware borrowing statute.

Under the borrowing statute, the shorter applicable limitations period must be applied. Royal acknowledges that the alleged SFC fraud was revealed no later than March 20, 2002, which would be the date on which Pennsylvania's two-year limitations period for fraud claims began to run. Thus, the period in which a fraud claim based on FMSM's alleged conduct could be brought under Pennsylvania law expired on March 20, 2004, nearly a full year before this

---

[5] Not only was SFC incorporated under Pennsylvania law, but it maintained an executive office in Radnor, Pennsylvania, to which, as discussed above, FMSM directed its audit report and to which it sent all of the copies of the 12/31/99 SFC Statement that FMSM sent outside the firm.

action was commenced. Under Pennsylvania's two-year limitations period, which is shorter than Delaware's three-year period and so should govern under Delaware's borrowing statute, any common law claims based on FMSM's allegedly wrongful conduct with respect to the 12/31/99 SFC Statement are thus time-barred.[6]

As demonstrated in the McGladrey Memo (Point III.C), even under Delaware law, the three-year limitations period applicable to common law claims began to run on the date of the alleged wrong, which would be the date on which the 12/31/99 SFC Statement was allegedly issued, *i.e.*, July 26, 2000. The Delaware limitations period applicable to Royal's common law claims thus ran no later than July 26, 2003, fully twenty months before Royal brought suit. Accordingly, even if Delaware were found to be the state in which a claim based on any allegedly wrongful conduct by FMSM arose – which, we respectfully submit, would be incorrect for the reasons discussed above and in the McGladrey Memo – the common law claims that Royal purports to assert against FMB would be untimely and so should be dismissed.

## POINT III

### ROYAL'S COMMON LAW CLAIMS AGAINST FMB MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

#### A.    Royal's Civil Conspiracy Claim is Legally Insufficient

Royal's allegations completely fail to support its purported claim of civil conspiracy (Complaint, Count III) with respect to FMB. The Complaint alleges no fact that even suggests that FMB (or FMSM) had a common purpose with SFC or its management to deceive Royal. Royal also fails to allege facts supporting the essential element of malice. Accordingly, FMB

---

[6] Since under Pennsylvania law, the limitations period on a negligence claim would begin to run on the date of the alleged wrong, *i.e.*, when the 12/31/99 SFC Statement was issued (*see* McGladrey Memo, Point III.A) – which Royal alleges was on July 26, 2000 – any negligence claim based on alleged wrongful conduct by FMSM is even more untimely since that limitations period expired on July 26, 2002, long before Royal commenced this action.

joins in and adopts the argument at Point IV of the McGladrey Memo with respect to the legal insufficiency of Royal's claim of civil conspiracy.

**B.    Royal's Fraud Claims Should Be Dismissed**

Royal's claims for fraud (Count IV) and aiding and abetting fraud (Count V) must be dismissed due to, among other things, the absence of the essential element of justifiable reliance. In that regard, it is significant that, *before* receiving the 12/31/99 SFC Statement on or about July 26, 2000, Royal had already committed itself to issuing approximately $625 million in insurance coverage to SFC, as the 12/31/99 SFC Statement discloses. (S*ee* Exhibit B at 10; *see also* Complaint ¶¶ 37, 49, 51)  In addition, any attempt by Royal to question FMSM's professional judgment with respect to the adequacy of the disclosures contained in the 12/31/99 SFC Statement would not sound in fraud, particularly in view of decisions finding that allegations of GAAP and GAAS violations are insufficient to plead scienter. *See, e.g., Ziemba v. Cascade International, Inc.,* 256 F.3d 1194, 1208 (11th Cir. 2001); *Rothman v. Gregor,* 220 F.3d 81, 98 (2d Cir. 2000).  Finally, Aquino's attempt to secure written assurances from SFC that Royal knew of the forbearance payments – which Royal admits in its Complaint (¶124) – is completely inconsistent with an inference that Aquino, or any of the firms he was associated with at various times, intended to deceive Royal.  For these reasons, as well as for the reasons set forth at Point V of the McGladrey Memo, in which FMB joins and which it adopts, Royal's claims of fraud and aiding and abetting fraud should be dismissed as against FMB.[7]

**C.    Royal's Negligence Claims Are Legally Insufficient**

With respect to Royal's claims of negligence and negligent misrepresentation (Count VI), the analysis presented at Point VI of the McGladrey Memo is fully applicable to FMB (and to

---

[7]  As demonstrated in Point VII of the McGladrey Memo, Royal's claim of "deepening insolvency" (Count VII) must be dismissed because no such separate cause of action is recognized.

FMSM to the extent Royal's claims may be based on that entity's conduct), whose lack of privity with Royal is parallel to McGladrey's. As with McGladrey, because FMB did not have a contractual relationship with Royal (and the Complaint does not so allege, nor could it), and because there is no allegation (as shown above) that Royal justifiably relied on anything FMB (or FMSM) did or failed to do, Royal's claims of negligence against FMB must be dismissed. Also, as demonstrated in the McGladrey Memo, the absence of justifiable reliance is fatal to Royal's negligent misrepresentation claim.

### D. Royal's Aiding and Abetting A Breach Of Fiduciary Duty Claim Should Be Dismissed

Royal's claim of aiding and abetting a breach of fiduciary duty (Count VIII) is legally insufficient. In addition to the doubt that some federal courts have expressed as to the very existence of such a cause of action, the complaint fails to allege that FMB (or FMSM) participated in any way in a breach of fiduciary duty by SFC's officers and/or directors – to the extent they owed any such fiduciary duty to Royal. Accordingly, for the reasons set forth at Point VIII of the McGladrey Memo – which are adopted herein – Royal's breach of fiduciary duty claim should be dismissed with respect to FMB.

## CONCLUSION

For all the foregoing reasons, FMB's motion to dismiss the Complaint against it with prejudice should be granted in all respects.

Dated: June 10, 2005

Respectfully submitted,

PRICKETT, JONES & ELLIOTT, P.A.

By: _____
James L. Holzman (Bar ID #663)
J. Clayton Athey (Bar ID #4378)
1310 King Street
Wilmington, Delaware  19801
(302) 888-6500
jlholzman@prickett.com
jcathey@prickett.com

*Attorneys for Defendant Freed Maxick &
Battaglia, CPAs, PC*

OF COUNSEL:

John H. Eickemeyer (JE-8302)
Jonathan A. Wexler (JW-5587)
VEDDER, PRICE, KAUFMAN
    & KAMMHOLZ, P.C.
805 Third Avenue
New York, New York  10022
212-407-7700
jeickemeyer@vedderprice.com
jwexler@vedderprice.com

15

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2005, I electronically filed **Defendant Freed Maxick &**

**Battaglia, CPAs, P.C.'s Memorandum of Law in Support of Its Motion to Dismiss** with the

Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Lawrence C. Ashby, Esquire
Philip Trainer, Jr., Esquire
Tiffany Geyer Lydon, Esquire
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, DE 19899

William H. Sudell, Jr., Esquire
Donna L. Culver, Esquire
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
Wilmington, DE 19801

Christopher M. Winter, Esquire
Duane Morris LLP
1100 North Market Street
Suite 1200
Wilmington, DE 19801

I hereby certify that on June 10, 2005, I have e-mailed the document to the following

non-registered participants:

Bruce P. Merenstein, Esquire
Email: bmerenstein@schnader.com

Elizabeth K. Ainslie, Esquire
Email: eainslie@schnader.com

Nicholas J. LePore, III, Esquire
Email: nlepore@schnader.com

Stephen J. Shapiro, Esquire
Email: sshapiro@schnader.com

James L. Holzman (Bar ID #663)
J. Clayton Athey (Bar ID #4378)
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899
(302) 888-6500
jlholzman@prickett.com
jcathey@prickett.com
*Attorneys for Defendant Freed Maxick*
*& Battaglia CPAs, PC*