# Exhibit C

# *ROYAL INDEMNITY COMPANY*

(A Delaware Capital Stock Insurance Company)
P.O. Box 472488
Charlotte, North Carolina 28247-2488

Policy Number RST 293308

## MASTER CREDIT RISK INSURANCE POLICY

### DECLARATIONS

| | | | |
|---|---|---|---|
| Item 1. | Insureds: | | SFC Financial I, LLC, SFC Financial II, LLC and the Insureds from time to time designated pursuant to the Sub-Policies from time to time issued hereunder. |
| | Beneficiary: | | The Beneficiaries from time to time designated pursuant to the Sub-Policies from time to time issued hereunder |
| Item 2. | Policy Period: | Policy Inception Date: | December 1, 1999 |
| | | Policy Expiration Date: | The later of (i) the Termination Date, or (ii) twelve months after all of the Obligations Insured under all Sub-Policies have been repaid to the Insureds or the Beneficiary in full, subject in any event to commutation pursuant to Article IV, Section B, Paragraph 2. |
| | | | (in each case at 12:01 A.M. at the address of the applicable Insureds stated herein). |
| Item 3. | Termination Date: | | The obligation to issue Sub-Policies hereunder shall terminate at 11:59 P.M. on December 31, 2001, unless extended in writing by the Insurer. |
| Item 4. | Limit of Liability: | | The Initial Balance of Student Loans covered by all Sub-Policies issued under this Policy shall not exceed $200,000,000 (the "Cap"), in the absolute aggregate for the Policy Period and all Sub-Policies combined, subject to adjustment for prepaid Student Loans during the period commencing with the Issuance Date for the applicable Sub-Policy and ending on the last day of the twelfth month after such date as provided in Article V. The aggregate Limit of Liability under the Sub-Policies shall be the sum of (i) the Initial Balance of the Student Loans subject to the Sub-Policies, not to exceed the Cap, less the amount of principal repayments on the Student Loans by the Student directly to the Insured or Beneficiary other than prepayments subject to Article V, (subject to re-increase in the event of any return of such payment on account of bankruptcy) plus (ii) three months of interest at the stated interest rate contained in the Student Loans. |

| Item 5: | Student Loans: | The student loan agreements listed on Schedule I attached to the Sub-Policies from time to time issued hereunder. |
|---|---|---|
| Item 6: | Principal State: | Delaware |
| Item 7: | Endorsements: | Endorsements attached at Policy Inception Date and at various times during the Policy Period as provided herein. |
| Item 8: | Premium: | The premium of eight and one-half percent (8 ½%) of the Initial Balance of the Student Loans covered by each Sub-policy shall be due and payable as provided in the applicable Sub-Policy. |
| Item 9: | Exclusions: | None |
| Item 10: | Insurance: | The Servicer shall have procured crime, fraud and fidelity insurance in an amount equal to the Experience Accounts established under the Sub-Policies naming Insurer as an additional insured and providing annual evidence thereof for so long as any Experience Account is in existence. |
| Item 11: | Sub-Policies: | Sub-Policies will be issued in the form of Exhibit A attached to this Master Policy from time to time at the request of either SFC Financial I, LLC and SFC Financial II, LLC to the designated Insureds as provided in this Policy. |

By acceptance of this Policy the Insureds agree that the statements in this Policy (including the Declarations and the attachments hereto) are the agreements and representations of the Insureds and that this Policy embodies all agreements existing between the Insureds and the Insurer or any of its representatives relating to this insurance.

-2-

PHLEGAL #792623 v5 gzh04! WPD

CREDIT RISK INSURANCE POLICY

In consideration of the payment of the premium and in accordance with this Policy, the Declarations, the Sub-Policies issued hereunder from time to time, and any endorsements(s) hereto or thereto, which together shall constitute the Credit Risk Insurance Policy ( the "Policy"), Royal Indemnity Company (the "Insurer") agrees as follows:

I.    **INSURING AGREEMENT**

Subject to the Limit of Liability and the terms and conditions set forth hereunder, the Insurer hereby agrees to issue from time to time Sub-Policies evidencing the Insurer's agreement to pay on behalf of the Insureds to the Beneficiaries, from the Insurer's own funds, for a Loss caused by a Default during the Policy Period as specified in such Sub-Policy.  The amount payable by the Insurer will be paid in accordance with Article III Payment; Notice and Proof of Loss and Recoveries after Payment, of the applicable Sub-Policy.

II.    **DEFINITIONS**

A.    "Aggregate Annual Funding Costs" shall mean, with respect to a pool of Student Loans to be covered by a Sub-Policy, the sum of (i) any servicing fees, custody account fees, trustee fees and other periodic fees associated with the servicing and holding of the Student Loans, and (ii) the periodic interest, fees and charges due to the related Beneficiaries, expressed as a rate per annum.

B.    "Beneficiary" shall mean the Beneficiary specified in the applicable Sub-Policy.

C.    "Cap" shall mean the dollar amount set forth in Declarations Item 4, and shall be the maximum aggregate Initial Balance of the Student Loans covered by Sub-Policies issued hereunder in the absolute aggregate for the Policy Period.

D.    "Escrow Agent" shall mean the Escrow Agent under the Escrow Agreement.

E.    "Escrow Agreement" shall mean an Escrow Agreement substantially in the form of Exhibit C attached hereto, with such changes, additions or deletions thereto as shall be approved by Insurer in its reasonable discretion.

F.    "Experience Accounts" shall mean the Experience Accounts established from time to time pursuant to the Sub-Policies.

G.    "Initial Balance" shall mean, as to each Student Loan, the outstanding principal balance of such Student Loan on the date such Student Loan is added to the Policy as set forth on Schedule 1 to the applicable Sub-Policy.

H.    "Issuance Date" shall mean, as to any Sub-Policy, the policy inception date with respect thereto.

I.    "Insureds" shall mean SFC Financial I, LLC, SFC Financial II, LLC and the Insureds from time to time designated pursuant to the Sub-Policies from time to time issued hereunder.

J.    "Limit of Liability" shall mean limit of liability calculated as provided in Item 4 of the Declarations and Article V hereof, and shall be the maximum payment obligation of the Insurer under this Policy for all Obligations Insured for the entire Policy Period under all Sub-Policies.

PHLEGAL· #792623 v5 gxb04LWPD

K.  "Net Margin" shall mean, with respect to a pool of Student Loans that will be subject to a Sub-Policy, the excess of (i) the WAC with respect to such pool of Student Loans as set forth on the Schedule I attached to the applicable Sub-Policy, to (ii) the Aggregate Annual Funding Costs with respect to such pool of Student Loans.

L.  "Obligations Insured" shall mean the full amount of the principal and interest due to the Insureds pursuant to the Student Loans between the lender and each Student.

M.  "Policy Expiration Date" shall be the earlier of the final day of the Policy Period, as identified in Item 2 of the Declarations, or the date this Policy is commuted in accordance with Article IV, Section B, Paragraph 2 hereof.

N.  "Policy Inception date" shall be the first day of the Policy Period, as identified in Item 2 of the Declarations.

O.  "Policy Period" shall mean the period of time from the Policy Inception Date to the Policy Expiration Date.

P.  "Servicer" shall mean Student Finance Corporation, or such other party as may from time to time be the servicer of the Student Loans subject to a Sub-Policy.

Q.  "Student" shall mean each obligor under the Student Loans and any successor thereto or other party having or assuming obligations under the Student Loans which entity, successor or party is obligated to pay Obligations Insured under the Student Loans.

R.  "Student Loan" shall mean each student loan agreement listed on Schedule I attached to a Sub-Policy, as amended from time to time.

S.  "Sub-Policy" shall mean a Credit Risk Insurance Policy issued by the Insurer pursuant hereto, substantially in the form of Exhibit A attached hereto with such changes, additions or deletions thereto as shall be approved by Insurer in its reasonable discretion.

T.  "Termination Date" shall mean the date on which the obligation to issue Sub-Policies hereunder terminates, as identified in Item 3 of the Declarations.

U.  "WAC" shall mean the weighted average interest rate payable on the Student Loans, as a percentage per annum.

III.  ISSUANCE OF SUB-POLICIES

A.  REQUEST FOR ISSUANCE

Either SFC Finance I, LLC or SFC Finance II, LLC may request the issuance of a Sub-Policy hereunder by delivery of a Request for Issuance in the form of Exhibit B attached hereto not less than three (3) Business Days prior to the requested Issuance Date, provided that such Issuance Date must be prior to the Termination Date. The Request for Issuance shall specify the estimated policy amount for the Sub-Policy and shall enclose the preliminary Student Loan Schedule for such Sub-Policy.

-4-

B.   **ISSUANCE BY INSURER**

Insurer shall issue a requested Sub-Policy on the Issuance Date specified in the Request for Issuance, subject only to Insurer's receipt of (i) the definitive Student Loan Schedule to be attached as Annex 1 to such Sub-Policy as amended from time to time, (ii) a certificate in the form of Exhibit D attached hereto demonstrating that the Net Margin for the pool of Student Loans to be subject to the Sub-Policy is not less than 7% per annum, (iii) a fully executed Escrow Agreement covering such Student Loans, (iv) evidence of crime, fraud and fidelity insurance of the Servicer in an amount equal to the aggregate Experience Accounts under all Sub-Policies for which such party is the Servicer, and (v) payment of the Policy Premium due with respect to such Sub-Policy.

IV.   **GENERAL CONDITIONS**

A.   **PAYMENT OF PREMIUM**

The premium *for each Sub-Policy, in an amount* equal to eight and one-half percent (8½%) of the Initial Balance of the Student Loans covered by such Sub-Policy, shall be due and payable as provided in the applicable Sub-Policy.

B.   **TERMINATION AND COMMUTATION**

1.   **TERMINATION.**

The obligation to issue Sub-Policies under this Master Policy will terminate automatically on the Termination Date; and this Master Policy shall automatically terminate in full on the later of (i) the Termination Date, or (ii) twelve (12) months after all Obligations Insured under all Sub-Policies have been repaid in full to the Insureds or the Beneficiary.

2.   **COMMUTATION**

This Policy may also be commuted by the Insureds on sixty (60) days prior written notice at any time provided that each Beneficiary, each Insured and all other parties to this Policy and any Sub-Policy have consented to such commutation.

V.   **LIMIT OF LIABILITY**

A.   The limit of liability stated in Item 4 of the Declarations and this Article V, Limit of Liability, is the aggregate limit of the Insurer's liability for all payments under all Sub-Policies issued under this Master Policy, and the aggregate Caps as defined in the respective Sub-Policies shall not exceed the Cap hereunder. In connection with moving Student Loans from coverage under one Sub-Policy to coverage under another Sub-Policy, the Cap may be reduced with respect to such Sub-Policy.

B.   The aggregate Initial Balance of all Student Loans covered by all Sub-Policies shall not exceed the Cap, provided, that (i) Student prepayments of principal for a Student Loan within the period commencing with the Issuance Date for the applicable Sub-Policy and ending on the last day of the twelfth month after such date shall be deducted from the Initial Balance with respect to such Sub-Policy for these purposes and shall be available for coverage under such Sub-Policy or another Sub-Policy, and (ii) Student Loans that are moved from coverage under one Sub-Policy to

PHLEGAL: #792623 v5 gzB041 WPD

coverage under another Sub-Policy shall not be counted again as newly added Student Loans against the aggregate Limit of Liability.

C. The aggregate Limit of Liability under the Sub-Policies shall be the sum of (i) the Initial Balance of the Student Loans subject to the Sub-Policies, not to exceed the Cap, less the amount of principal repayments on the Student Loans by the Student directly to the Insured or Beneficiary other than prepayments subject to Article V, (subject to re-increase in the event of any return of such payment on account of bankruptcy) plus (ii) three months of interest at the stated interest rate contained in the Student Loans.

VI. **CANCELLATION**

THIS MASTER POLICY MAY NOT BE CANCELED BY EITHER THE INSUREDS OR THE INSURER, EXCEPT AS PROVIDED IN ARTICLE IV, SECTION B HEREOF.

VII. **ASSIGNMENT**

This Policy and any rights hereunder may not be assigned, other than to each Beneficiary or each Insured, without the written consent of the Insurer. The Insurer acknowledges that each of the Insureds may assign any and all of its rights under this Policy to the Beneficiary and another Insured, and a Beneficiary may assign its rights to any successor Beneficiary by notice to Insurer, and the Insurer consents to each such assignment, if and when it occurs.

VIII. **INSPECTION**

The Insurer shall have the right to inspect and examine, at any time, the Insureds' or the Beneficiary's books, files and records relating to the Student Loans.

IX. **CHANGES**

Notice to any representative of the Insurer or knowledge possessed by any representative or by any person shall not effect a waiver or change in any part of this Policy, including the Student Loans; nor shall the terms of this Policy be waived, changed, modified or amended unless agreed to in writing by an authorized representative of the Insurer, the Insureds and consented to in writing by the Beneficiary. Insurer understands and acknowledges that there may be changes required to be made to the policy in the future for the addition or deletion of Insureds, the changes of Beneficiaries and such other changes as may be required by a rating agency rating an instrument for which the Student Loans are collateral or which represents a participation in the Student Loans.

X. **CHOICE OF LAW**

The construction, validity and performance of this Policy shall be governed by the internal laws of the State designated in Item 6 of the Declarations.

XI. **ARBITRATION**

It is hereby understood and agreed that all disputes or differences which may arise under this Policy, whether arising before or after termination of this Policy, including any determination of the amount of Loss, shall be submitted to the American Arbitration Association under and in accordance with its then prevailing commercial arbitration rules. The arbitrators shall be chosen in the manner and within the time frames provided by such rules. If permitted under such rules, the arbitrators shall be three disinterested

individuals having knowledge of the legal, corporate management or insurance issues relevant of the matters in dispute.

The written decision of the arbitrators shall be provided to all parties and shall be binding of them.

Each party agrees: (i) to bear the expense of the arbitrator chosen by it; (ii) to share equally the expense of the other arbitrator; and (iii) that the arbitration panel shall allocate any remaining costs of the arbitration proceeding between the parties.

XII.     RIGHT TO RECEIVE PAYMENT SUBJECT ONLY TO LIMIT OF LIABILITY

**NOTWITHSTANDING ANY OTHER PROVISION OF THIS POLICY OR ANY SUB-POLICY TO THE CONTRARY, THE RIGHT OF THE BENEFICIARY TO RECEIVE PAYMENT FOR LOSS UNDER ANY SUB-POLICY AFTER PAYMENT OF THE INITIAL PREMIUM BY THE INSURED SHALL BE ABSOLUTE AND UNCONDITIONAL, AND NO FAILURE ON THE PART OF THE INSURED OR THE BENEFICIARY TO OBSERVE OR PERFORM ANY COVENANT OR CONDITION CONTAINED IN THIS POLICY OR ANY SUB-POLICY (INCLUDING WITHOUT LIMITATION THOSE CONTAINED IN ARTICLE III, ARTICLE IV AND ARTICLE V) SHALL ENTITLE THE INSURER TO ANY RIGHT OF SET-OFF, COUNTERCLAIM OR DEFENSE AGAINST THE BENEFICIARY OR ANY OTHER PARTIES OR OTHERWISE RELIEVE THE INSURER OF ANY LIABILITY TO MAKE ANY SUCH PAYMENT FOR LOSS TO THE BENEFICIARY UNDER THIS POLICY OR ANY SUB-POLICY, SUBJECT ONLY TO THE LIMIT OF LIABILITY.**

PHLEGAL #792623 v5 gzlb041.WPD

Exhibit A

**FORM OF POLICY**

**(Attached)**

PHLEGAL: #792623 v5 gz:lb04! WPD

**EXHIBIT A**

<u>DRAFT 12/3/99</u>

# *ROYAL INDEMNITY COMPANY*
### (A Delaware Capital Stock Insurance Company)
P.O. Box 472488
Charlotte, North Carolina 28247-2488

Policy Number RST_____

# CREDIT RISK INSURANCE POLICY

## DECLARATIONS

| | | | |
|---|---|---|---|
| Item 1. | Insured: | | _____ or any successor or assignee of the Student Loans as designated by _____ on Schedule II by notice to the Insurer executed by the current Insured. |
| | Address: | | _____<br>_____<br>_____<br>_____ |
| | Beneficiary: | | _____and any successor holder of the Student Loans designated on Schedule III by notice to the Insurer executed by the current Beneficiary. |
| | Address: | | _____<br>_____<br>_____<br>_____ |
| Item 2. | Policy Period: | Policy Inception Date: | _____, 1999 |
| | | Policy Expiration Date: | When all of the Obligations Insured have been repaid to the Insured or the Beneficiary in full, plus twelve (12) months subject in any event to commutation pursuant to Article IV, Section D, Paragraph 2. |
| | | | (in each case at 12:01 A.M. at the address of the Insured stated herein). |

**EXHIBIT A**

| | | |
|---|---|---|
| Item 3: | Limit of Liability: | The Initial Balance of Student Loans covered by this Policy shall not exceed $_____ (the "Cap"), in the absolute aggregate for the Policy Period, subject to adjustment for prepaid Student Loans during the period commencing with the Policy Inception Date and ending on the last day of the twelfth month after such date as provided in Article VI, Section B. The Limit of Liability under this Sub-Policy at any time shall be the sum of (i) the Initial Balance of the Student Loans subject to this Policy, not to exceed the Cap, less the amount of principal repayments on the Student Loans by the Student directly to the Insured or Beneficiary other than prepayments subject to Article VI, Section B, (subject to re-increase in the event of any return of such payment on account of bankruptcy) plus (ii) three months of interest at the stated interest rate contained in the Student Loans. |
| Item 4: | Student: | Each obligor under the Student Loans and any successor thereto or other party having or assuming obligations under the Student Loans which entity, successor or party is obligated to pay Obligations Insured under the Student Loans. |
| Item 5: | Student Loans: | The student loan agreements listed on Schedule I attached hereto, as amended from time to time, to add Student Loans meeting the credit underwriting criteria of Student Finance Corporation during the period commencing with the Policy Inception Date and ending twelve (12) months thereafter up to the Limit of Liability and to delete any Student Loan that is prepaid by the Student during the period commencing with the Policy Inception Date and ending with last day of the twelfth month after such date. |
| Item 6: | Principal State: | Delaware |
| Item 7: | Endorsements: | Endorsements attached at Policy Inception Date and at various times during the Policy Period as provided herein. |
| Item 8: | Premium: | Eight and one-half percent (8½%) of the Initial Balance of the Student Loans, fully earned and payable at the time the Student Loans are added to the Policy as provided herein, subject to credit for premiums already paid as provided in Article IV, Section A. |
| Item 9: | Exclusions: | None |
| Item 10: | Insurance: | The Servicer shall have procured crime, fraud and fidelity insurance in an amount equal to the Experience Account naming Insurer as an additional insured and providing annual evidence thereof for so long as the Experience Account is in existence. |

**EXHIBIT A**

By acceptance of this Policy the Insured agrees that the statements in this Policy (including the Declarations and the attachments hereto) are the agreements and representations of the Insured and that this Policy embodies all agreements existing between the Insured and the Insurer or any of its representatives relating to this insurance.

PHLEGAL #793074 v1 GZX%01' WPD

**EXHIBIT A**

### CREDIT RISK INSURANCE POLICY

In consideration of the payment of the premium and in accordance with this Policy, the Declarations, the Student Loans listed on Schedule I hereto, as amended from time to time, and any endorsements(s) hereto, which together shall constitute the Credit Risk Insurance Policy ( the "Policy"), Royal Indemnity Company (the "Insurer") agrees as follows:

I.     INSURING AGREEMENT

Subject to the Limit of Liability and the terms and conditions set forth hereunder, the Insurer hereby agrees to pay on behalf of the Insured to the Beneficiary, from the Insurer's own funds, for Loss caused by a Default during the Policy Period. The amount payable by the Insurer will be paid in accordance with Article III, Payment; Notice and Proof of Loss and Recoveries after Payment.

II.     DEFINITIONS

A.     "Beneficiary" shall mean any holders of the Student Loans designated on Schedule III, which may be amended from time to time by notice to the Insurer executed by the current Beneficiary provided during the Policy Period.

B.     "Cap" shall mean the dollar amount set forth in Item 3 of the Declarations, and shall be the maximum aggregate Initial Balance of the Student Loans covered by this Policy issued hereunder in the absolute aggregate for the Policy Period.

C.     "Claim" shall mean a written Claim by or on behalf of the Beneficiary submitted to the Insurer for payment of a Loss pursuant to delivery of a Notice and related proof of loss form in accordance with Article III.

D.     "Credit Agreement" shall mean any and all loan, loan purchase, security, pooling and servicing, certificate, note, note purchase or other agreements between a Beneficiary and an Insured.

E.     "Default" shall mean (i) a Student Loan becoming more than ninety (90) days delinquent (treating payments made by a Student but paid over to a bankruptcy court having jurisdiction over the Student as a preference item as not having been paid by the Student), with payments made after a delinquency applied to the earliest delinquency, or (ii) any impairment or avoidance of the rights of the Beneficiary or the Insured in a Student Loan arising out of the bankruptcy or similar event or proceedings with respect to Student Finance Corporation or the Insured, including without limitation pursuant to Section 362 of the United States Bankruptcy Code.

F.     "Default Date" shall mean the first date on which a Default occurs.

G.     "Escrow Agent" shall mean the Escrow Agent under the Escrow Agreement.

H.     "Escrow Agreement" shall have the meaning set forth in Article IV, Section E, below.

I.     "Excess Spread Reserve Account" shall mean the escrow fund established under that certain Excess Spread Reserve Escrow Agreement as amended from time to time and as more fully described in Article IV, Section E, below.

-4-

J.     "Experience Account" shall have the meaning set forth in Article IV, Section G, below.

K.     "Initial Balance" shall mean, as to each Student Loan, the outstanding principal balance of such Student Loan on the date such Student Loan is added to the Policy as set forth on Schedule I attached hereto.

L.     "Insured" shall mean the entity listed in Item 1 of the Declarations, its successors and permitted assigns.

M.     "Limit of Liability" shall mean the limit of liability calculated as provided in Item 3 of the Declarations and Article VI hereof, and shall be the maximum payment obligation of the Insurer under this Policy for all Obligations Insured for the entire Policy Period.

N.     "Loss" shall mean for any Student Loan as to which a Claim is made in accordance herewith the Value as of the Default Date with respect to such Student Loan. Loss shall not include penalties, taxes, or any other liability incurred by the Insured with respect to such Student Loan.

O.     "Master Policy" shall mean the Master Credit Risk Insurance Policy issued by Insurer, Policy Number RST 293308 pursuant to which this Policy is issued as a Sub-Policy.

P.     "Notice" shall mean the notice to be provided by the Servicer or Beneficiary to the Insurer directing payment of a Claim as described in Article III, Section B.

Q.     "Obligations Insured" shall mean the full amount of the principal and interest due to the Insured pursuant to the Student Loans between the lender and each Student.

R.     "Policy Expiration Date" shall be the earlier of the final day of the Policy Period, as identified in Item 2 of the Declarations, or the date this Policy is commuted in accordance with Article IV, Section D, Paragraph 2 hereof.

S.     "Policy Inception date" shall  be the first day of the Policy Period, as identified in Item 2 of the Declarations.

T.     "Policy Period" shall mean the period of time from the Policy Inception Date to the Policy Expiration Date.

U.     "Servicer" shall mean Student Finance Corporation or its successor(s).

V.     "Student" shall mean each obligor under the Student Loans and any successor thereto or other party having or assuming obligations under the Student Loans which entity, successor or party is obligated to pay Obligations Insured under the Student Loans.

W.     "Student Loan" shall mean each student loan agreement listed on Schedule I attached hereto, as amended from time to time, to add additional student loans meeting the credit underwriting criteria of Student Finance Corporation during the period commencing with the Policy Inception Date and ending twelve (12) months thereafter up to the Limit of Liability and to delete any Student Loan that is prepaid by the Student during the period commencing with the Policy Inception Date and ending with last day of the twelfth month after such date.

    X.    "Sub-Policy" shall mean any policy, substantially in the form of this Policy, issued under the Master Policy.

    Y.    "Underwriting Policies" shall mean the policies of Student Finance Corporation with respect to underwriting of Student Loans as reflected in the policy manual dated December 31, 1997 and the credit scoring model revised March 25, 1998, as amended or modified from time to time subject to Article IV, Section F, Paragraph 4.

    Z.    "Value" shall mean the principal balance outstanding under a Student Loan as of the Default Date plus accrued interest thereon (at the stated interest rate (exclusive of any penalty interest, late payment fees and prepaid financing charges) as set forth in such Student Loan) to the Default Date.

### III.    PAYMENT; NOTICE AND PROOF OF LOSS AND RECOVERIES AFTER PAYMENT

    A.    **PAYMENT**

        Payments of Losses under this Policy shall be made by the Insurer to a Beneficiary or to the Escrow Agent as set forth in the Notice from the Servicer or Beneficiary and shall be due and payable upon receipt of the Notice. Any Claim set forth in the Notice shall be paid by the Insurer within sixty (60) days of the receipt of the Notice by wire transfer of immediately available funds. Each payment made by the Insurer hereunder shall reduce the Limit of Liability.

    B.    **NOTICE**

        The Notice shall be in the Form attached hereto, containing the following information: (a) the amount of the Loss to be paid by the Insurer; (b) the amount to be paid each Beneficiary as provided in any Credit Agreement between an Insured and such Beneficiary on Student Loans owned or held by them; and (c) the balance to be paid to the Escrow Agent for deposit in the Excess Spread Reserve Account. The Notice shall be sent by certified mail, return receipt requested, hand delivery, facsimile transmission or overnight courier, addressed to 11111 Carmel Commons Boulevard, Charlotte, North Carolina 28226, Attention: Tony McKenzie, fax number (704) 543-3566 or his representative. The Notice will be presumed to have been received on the date of the execution of receipt for certified mail, on the date of delivery if by hand delivery or facsimile transmission or the next business day if sent by overnight courier.

    C.    **PROOF OF LOSS AND RECOVERIES AFTER PAYMENT**

        1.    The Insured or Beneficiary agrees to deliver or cause to be delivered with each Notice a written proof of loss form setting forth (a) a schedule detailing the Claims incurred under this Policy due to a Default during the current monthly period by identifying the applicable Student Loans and setting forth the outstanding principal balance and accrued and unpaid interest with respect thereto; and (b) if such claim is in excess of the remaining balance of the Experience Account as notified by the Insurer pursuant to Article IV, Section G, a copy of the notice from the Escrow Agent in accordance with Section 4(e) of the Escrow Agreement to the effect that no funds remain in the Excess Spread Reserve Account or of notice from the Escrow Agent of its refusal to disburse funds from the Excess Spread Reserve Account on account of a bankruptcy of

Servicer or an Insured.  Upon request of the Insurer, the Insured shall request the Servicer or the Escrow Agent to provide evidence reasonably available with respect to circumstances surrounding a Loss.

2.       After payment of a Loss, all funds or salvage ("Recoveries") received by the Insurer, the Insured or the Beneficiary from the Student or from any other source whatsoever as or toward payment of the Student's obligations under the Student Loan on which the Insurer has paid a Claim, shall be deposited to the Excess Spread Reserve Account, and the Insurer shall have the right to receive distributions from the Excess Spread Reserve Account on account of Losses it has paid which have not been covered by the Experience Account, as set forth in the Escrow Agreement.

3.       No failure to comply with the provisions of this Article III shall in any way impair or limit the right of the Beneficiary to receive payment of any Loss under this Policy.

## IV.    GENERAL CONDITIONS

### A.    PAYMENT OF PREMIUM

1.       Subject to subsection A.2 below, the premium for the Policy in an amount equal to 8½% of the Initial  Principal balance of all Student Loans added to this Policy on the Policy Inception Date or thereafter as provided in Article IV, Section F.4, shall be payable at or before the time such Student Loans are added to this Policy.

2.       In the event that Student Loans are removed from this Policy on account of prepayments on or prior to the last day of the twelfth month following the Policy Inception Date as provided in Article IV, Section F.4, no additional premium shall be payable on Student Loans added to this Policy in substitution therefor, up to an Initial Balance for such substitute Student Loans equal to the balance of the removed Student Loans prior to the prepayment that resulted in such removal. In the event that Student Loans are added to this Policy upon transfer from coverage under another Sub-Policy issued under the Master Policy, no additional premium shall be payable hereunder with respect thereto.

### B.    ADDITIONAL INSUREDS

The initial Insured hereunder shall have the right to add additional or successor Insureds to which Student Loans have been transferred after the Policy Inception Date by sending a written notice to the Insurer from time to time that a new Insured is to be added.  The new Insured shall be a party to this Policy effective as of the date of the written notice sent to the Insurer by facsimile transmission, electronic mail or courier or the next business day if sent by overnight delivery.  The Insurer shall prepare an endorsement to the Policy, which shall be effective as of the date the Insured is added as provided herein. An Insured may not be removed or have the amount of insurance to which it relates reduced unless the Notice of Change in Insured is signed by the Insured to be removed or with respect to which the amount of insurance is to be reduced.

**C.   BENEFICIARY DESIGNATIONS**

Any Insured hereunder shall have the right to designate new beneficiaries hereunder by sending a written notice to the Insurer from time to time that a new Beneficiary is to be added. The new Beneficiary shall be added to this Policy effective as of the date of the written notice sent to the Insurer by facsimile transmission, electronic mail or courier or the next business day if sent by overnight delivery. The Insurer shall prepare an endorsement to the Policy, which shall be effective as of the date the Beneficiary is added as provided herein. A Beneficiary may not be removed or have the amount of insurance to which it relates reduced unless the Notice of Change in Beneficiary is signed by the Beneficiary to be removed or with respect to which the amount of insurance is to be reduced.

**D.   TERMINATION AND COMMUTATION**

**1.   TERMINATION**

The Policy will be terminated automatically twelve (12) months after all Obligations Insured under this Policy have been repaid in full to the Insured or the Beneficiary.

**2.   COMMUTATION**

This Policy may also be commuted by the Insured on sixty (60) days prior written notice at any time provided that each Beneficiary, each Insured and all other parties to this Policy have consented to such commutation.

**E.   EXCESS SPREAD RESERVE ACCOUNT**

The Insured, the Beneficiary or their respective agent shall pay to the Escrow Agent the Monthly Reserve Amount as that term is defined in the Excess Spread Reserve Escrow Account Agreement (the "Escrow Agreement") between the Insured, Insurer and the Beneficiary and others, as amended form time to time. The Escrow Agent will pay the sums held in the Excess Spread Reserve Account in accordance with the terms of the Escrow Agreement.

**F.   AGREEMENTS WITH RESPECT TO STUDENT LOANS**

**1.   MAINTENANCE OF FILES**

The Beneficiary or the Insured shall maintain a copy of each Student Loan on file with each Servicer. Each Servicer shall provide the Insurer with information in the form provided to the Beneficiary as to the Excess Spread Reserve Account and the Defaults and payments under the Student Loans on a monthly basis, or on a quarterly basis, if requested by the Insurer. The Servicer shall supply to the Insurer annual financial statements audited by a certified public accounting firm.

**EXHIBIT A**

2.    **AMENDMENTS TO STUDENT LOANS**

No amendment or change to any Student Loans after the Policy Inception Date shall have the effect of increasing or accelerating the amount of Obligations Insured or the Insurer's obligations under this Policy, or otherwise changing any rights the Insurer has under this Policy.

3.    **ASSIGNMENTS OF CONTRACTS**

The Beneficiary shall not consent to the transfer of, assignment to, or assumption by, any other party of a Student's obligations under any Student Loans without the written consent of the Insurer, which consent shall not be unreasonably withheld.

4.    **ADDITION AND REMOVAL OF STUDENT LOANS**

The Insured may add additional student loans which comply with the Underwriting Policies of Student Finance Corporation as they exist from time to time (subject to the last sentence hereof) for a period commencing with the Policy Inception Date and ending on the last day of the twelfth month after such date; provided, that (i) on or before such student loan becomes a Student Loan any additional premium due with respect thereto shall be paid, and (ii) the aggregate Initial Balance of all Student Loans subject to this Policy shall not exceed the Limit of Liability. In addition, the Insured may at any time remove Student Loans hereunder in order to transfer them to another Sub-Policy, and may add Student Loans under this Policy upon transfer from another Sub-Policy, subject to the Limit of Liability. The Insured shall add student loans by sending to the Insurer an amended Schedule I listing the additional student loans to be added to the Policy, which Schedule I shall become effective five days after receipt by the Insurer unless the Insurer notifies the Insured that the student loans listed exceed the limitation set forth in clause (ii) above within such five day period. Any Student Loan which is prepaid by the Student or removed for lack of proper documentation within twelve (12) months of the Policy Inception Date shall be deleted from Schedule I upon notice to Insurer. No change in the Underwriting Policies which has the effect of loosening the criteria for the extension of Student Loans shall be given effect for purposes of the Underwriting Policies required to be followed hereunder unless such change has been approved by Insurer. The Insurer's obligation to pay any Claim made under this Policy is absolute and shall not in anyway be affected, mitigated or eliminated by (y) a breach of any representation or warranty made by the Insured or the Beneficiary, or (z) the failure of the Insured to comply with the Underwriting Policies.

5.    **SERVICING STANDARDS**

The Servicer shall employ all reasonable collection methods in collecting on the Student Loans, including, but not limited to, collecting from any collateral securing the Student Loans.

-9-

G.    EXPERIENCE ACCOUNT

The Insurer shall create an experience account (the "Experience Account") with a starting balance equal to 18% of the principal balance of the Student Loans on the date the Student Loans are added to the Policy, as reduced and increased as hereinafter provided. The Experience Account shall be funded by the Insured assigning a note of a member of Insured in the face amount of $_____ received by Insured from an assignment from an affiliate of the Insured, which note was originally received as a capital contribution to the affiliate (the "Note"). The Note is payable on demand, with interest accruing at the Applicable Federal Rate, as defined in Section 1274 (d) of the Internal Revenue Code of 1986 as amended. The Experience Account will only be credited with actual cash received by the Insurer under the Note. The starting balance of the Experience Account shall be increased by (1) all interest and dividends earned on the cash held and invested by the Insurer in the Experience Account or interest paid under the Note and (2) any principal demanded and received from the Note and shall be reduced by (a) any Claims paid by the Insurer and (b) payments made to the Insured, but not below zero. Through 24 months after Policy Inception Date, the Insurer may withdraw from any funds held in the Experience Account (exclusive of any interest earned on said funds) or make a demand on the principal of the Note for any Claims to be paid by the Insurer under the Policy. The Insurer shall pay to the Insured from funds held in the Experience Account or received after a demand is made and paid by the borrower on the Note on the fifth day of each month (or the next business day if it is a holiday) (i) all interest earned on the Experience Account for the preceding month and (ii) beginning the 5th day of the month after expiration of 12 months after Policy Inception Date], an amount equal to one-twelfth of 18% of the principal balance of the Student Loans on the date the Student Loans are added to the Policy (or a portion thereof if the amount remaining in the Experience Account or the principal balance of the Note is less than one-twelfth of the principal balance of the Student Loans on the date the Student Loans are added to the Policy) until the funds in the Experience Account or the principal balance of the Note are reduced to zero; provided, however, in no event shall the Insurer pay to the Insured any amounts due under this sentence unless there are actual funds in the Experience Account or the Insurer has received amounts demanded under the Note. The Insurer shall assign or cause to be assigned any defaulted Student Loans for which a Claim is paid from the Experience Account that may come into its possession to the Insured within ten days after the Claim is paid and any Recoveries on such defaulted Student Loan shall be retained by the Insured. The Insurer's obligation to pay any Claim made under this Policy is absolute and shall not in anyway be effected, mitigated or eliminated by (x) a default under the Note or (y) the failure to fund the Experience Account. The Insurer shall deliver to the Insured and the Servicer monthly, on or before the third Business Day of each month, notice of the remaining balance of the Experience Account as of the last day of the prior month.

V.    SUBROGATION

A.    Subject to Article III, Section C, paragraph 2, upon payment of any Claim under this Policy, the Insurer shall be subrogated to the extent of such payments to all of the Beneficiary's and the Insured's rights against the Students or other liable party to the extent of its obligations to pay Obligations Insured. In addition to and without limiting any rights under the preceding sentence, upon payment of a Claim on account of the Escrow Agent's refusal to distribute any funds under the Excess Spread Reserve Account, the Insurer shall be subrogated to all rights of the Beneficiary to which such Claim was paid to any amounts payable directly or indirectly to such Beneficiary from funds from the Excess Spread Reserve Account on account of the Obligations Insured which were

-10-

EXHIBIT A

the subject of such Claim. The Insured shall also execute and deliver, during regular business hours and upon reasonable request by the Insurer, all instruments and papers and do whatever else is necessary to transfer, assign, secure and enforce such rights. The Insured shall do nothing to prejudice such rights. The Insured will supply the Insurer with any information reasonably requested by the Insurer relating to the subject of this insurance. The execution by the Insured of a release, satisfaction or waiver of the right to collect the unpaid balance of any amounts due under the Student Loans shall equally release the Insurer from any obligation under this Policy. The Insured's duties with respect to cooperation hereunder shall be performed at the request of the Insurer whether or not Notice has been given in accordance with Article III, Section B hereof.

VI.    LIMIT OF LIABILITY

   A.    AGGREGATE LIMIT.

        The limit of liability stated in Item 3 of the Declarations and in this Article VI, Limit of Liability, is the limit of the Insurer's liability for all payments under this Policy.

   B.    CAP ON INITIAL BALANCE.

        The aggregate Initial Balance of all Student Loans covered by this Policy shall not exceed the Cap, provided, that Student prepayments of principal for a Student Loan within the period commencing with the Policy Inception Date and ending on the last day of the twelfth month after such date shall be deducted from the Initial Balance with respect to this Policy for these purposes and shall be available for coverage under this Policy. In connection with moving Student Loans from coverage under this Policy to coverage under another Sub-Policy, the Cap may be reduced under this Policy by written notice acknowledged by the Insurer.

   C.    CALCULATION OF LIMIT OF LIABILITY.

        The Limit of Liability under this Policy at any time shall be the sum of (i) the Initial Balance of the Student Loans subject to this Policy (not including any Student Loans removed from this Policy as provided herein), not to exceed the Cap, less the amount of principal repayments on the Student Loans by the Student directly to the Insured or Beneficiary other than prepayments subject to Article V, (subject to re-increase in the event of any return of such payment on account of bankruptcy) plus (ii) three months of interest at the stated interest rate contained in the Student Loans.

VII.   CANCELLATION

      AFTER PAYMENT OF INITIAL PREMIUM SPECIFIED IN ARTICLE IV, SECTION A, CLAUSE (i), THIS POLICY MAY NOT BE CANCELED BY EITHER THE INSURED OR THE INSURER, EXCEPT AS PROVIDED IN ARTICLE IV, SECTION D HEREOF.

VIII.  ASSIGNMENT

      This Policy and any rights hereunder may not be assigned, other than to each Beneficiary or each Insured, without the written consent of the Insurer. The Insurer acknowledges that the Insured may assign any and all of its rights under this Policy to the Beneficiary and another Insured, and a Beneficiary may assign its

-11-

**EXHIBIT A**

rights to any successor Beneficiary by notice to Insurer, and the Insurer consents to each such assignment, if and when it occurs.

IX.    **INSPECTION**

The Insurer shall have the right to inspect and examine, at any time, the Insured's or the Beneficiary's books, files and records relating to the Student Loans.

X.    **CHANGES**

Notice to any representative of the Insurer or knowledge possessed by any representative or by any person shall not effect a waiver or change in any part of this Policy, including the Student Loans; nor shall the terms of this Policy be waived, changed, modified or amended unless agreed to in writing by an authorized representative of the Insurer, the Insured and consented to in writing by the Beneficiary. Insurer understands and acknowledges that there may be changes required to be made to the policy in the future for the addition or deletion of Insureds, the changes of Beneficiaries and such other changes as may be required by a rating agency rating an instrument for which the Student Loans are collateral or which represents a participation in the Student Loans.

XI.    **CHOICE OF LAW**

The construction, validity and performance of this Policy shall be governed by the internal laws of the State designated in Item 6 of the Declarations.

XII.    **ARBITRATION**

It is hereby understood and agreed that all disputes or differences which may arise under this Policy, whether arising before or after termination of this Policy, including any determination of the amount of Loss, shall be submitted to the American Arbitration Association under and in accordance with its then prevailing commercial arbitration rules. The arbitrators shall be chosen in the manner and within the time frames provided by such rules. If permitted under such rules, the arbitrators shall be three disinterested individuals having knowledge of the legal, corporate management or insurance issues relevant of the matters in dispute.

The written decision of the arbitrators shall be provided to all parties and shall be binding of them.

Each party agrees:  (i) to bear the expense of the arbitrator chosen by it; (ii) to share equally the expense of the other arbitrator; and (iii) that the arbitration panel shall allocate any remaining costs of the arbitration proceeding between the parties.

XIII.    **RIGHT TO RECEIVE PAYMENT SUBJECT ONLY TO LIMIT OF LIABILITY**

**NOTWITHSTANDING ANY OTHER PROVISION OF THIS POLICY TO THE CONTRARY, THE RIGHT OF THE BENEFICIARY TO RECEIVE PAYMENT FOR LOSS UNDER THIS POLICY AFTER PAYMENT OF THE INITIAL PREMIUM BY THE INSURED SHALL BE**

PHLEGAL #793074 v1 GZX%01° WPD

**EXHIBIT A**

ABSOLUTE AND UNCONDITIONAL, AND NO FAILURE ON THE PART OF THE INSURED
OR THE BENEFICIARY TO OBSERVE OR PERFORM ANY COVENANT OR CONDITION
CONTAINED IN THIS POLICY (INCLUDING WITHOUT LIMITATION THOSE CONTAINED
IN ARTICLE III, ARTICLE IV AND ARTICLE V) SHALL ENTITLE THE INSURER TO ANY
RIGHT OF SET-OFF, COUNTERCLAIM OR DEFENSE AGAINST THE BENEFICIARY OR
ANY OTHER PARTIES OR OTHERWISE RELIEVE THE INSURER OF ANY LIABILITY TO
MAKE ANY SUCH PAYMENT FOR LOSS TO THE BENEFICIARY UNDER THIS POLICY,
SUBJECT ONLY TO THE LIMIT OF LIABILITY.

-13-

**EXHIBIT A**

Schedule I

**Student Loans**

See attached.

-14-

**EXHIBIT A**

Schedule II

Insureds

-15-

PHLEGAL: #793074 v1 GZX%01!.WPD

**EXHIBIT A**

Schedule III

Beneficiaries

-16-

PHLEGAL: #793074 v1 GZX9401' WPD

**EXHIBIT A**

FORM OF NOTICE OF CLAIM

To:     Royal Indemnity Company
        11111 Carmel Commons Boulevard
        Charlotte, North Carolina  28226
        Attention:  Tony McKenzie
        Fax Number: (704) 543-3566

        Re:     Credit Risk Insurance Policy, Policy Number RST

        The undersigned, being a duly appointed officer of [specify Servicer/Beneficiary] hereby provides the Notice of Claim pursuant to the above referenced Policy, and in connection therewith certifies the information set forth herein.  Capitalized terms used and not otherwise defined herein shall have the meanings ascribed thereto in the Policy.

        1.      A Default has occurred with respect to the Student Loans listed on Annex A attached hereto.

        2.      Either (check as applicable)

                ____    The amount of the Claim hereunder does not exceed the remaining balance of the Experience Account as set forth in the most recent notice from you pursuant to Article IV, Section G; or

                ____    The amount of the Claim hereunder in excess of the remaining balance of the Experience Account was requested from the Escrow Agent, and the Escrow Agent has delivered a notice that no funds remain in the Excess Spread Reserve Account, or notice of refusal to disburse funds from the Excess Spread Reserve Account on account of the bankruptcy of Servicer or an Insured.

        3.      Either (check as applicable):

                ____    [To the knowledge of the Beneficiary,] after application of available funds in accordance with the Servicing Agreement, the outstanding principal balance of the Student Loans listed on Annex A has not been paid to the Beneficiary; or

                ____    The Default results from an impairment or avoidance of the rights of the undersigned Beneficiary or of the Insured in such Student Loans arising out of the bankruptcy or similar event or proceedings with respect to Student Finance Corporation or the Insured, including without limitation pursuant to Section 362 of the United States Bankruptcy Code.

        In accordance with the Policy, you are hereby given notice that a Loss has occurred on account of the Student Loans listed on Annex A as described above, and instructed to make payment in accordance with the Policy as follows:

PHLEGAL #193074 v1 OZX%01'.WPD

**EXHIBIT A**

Aggregate amount of Loss (aggregate principal amount
of Student Loans, and accrued and unpaid interest to the
Default Date):                                          $_____

Amount to be paid to Beneficiary:                        $_____
       Wire instructions for Beneficiary

       _____

       _____

       _____

Amount to be paid to Escrow Agent:                       $_____
       (Wire instructions set forth in Escrow Agreement)

      IN WITNESS WHEREOF, the undersigned has executed this Notice of Claim as of the date
indicated below.

               _____, as [Servicer/Beneficiary]

               By:_____
                   Name:
                   Title:

               Date:_____

-18-

EXHIBIT B

FORM OF

REQUEST FOR ISSUANCE

Date: _____

To:    Royal Indemnity Company
       P.O. Box 472488
       Charlotte, North Carolina  28247-2488

       Re:    Master Credit Risk Insurance Policy Number RST 293308 (the "Master Policy")

              Pursuant to the Master Policy, we hereby request the issuance of a Sub-Policy in the form attached hereto as Annex I, with the preliminary Student Loan Schedule attached thereto.

              As set forth in the Sub-Policy, the Cap on liability thereunder shall be $_____.

              The date of issuance of the Sub-Policy, subject to satisfaction of the conditions set forth in Article III, Section B of the Master Policy, is _____.


                              [SFC FINANCIAL I or II, LLC]
                              By:    _____, its
                                     Manager


                              By:_____
                                 Name:
                                 Title:

EXHIBIT C

**FORM OF**

## EXCESS SPREAD RESERVE ESCROW AGREEMENT

Attached.

<u>**Exhibit C**</u>

<u>**DRAFT 11/16/99**</u>

**FORM OF**

<u>**EXCESS SPREAD RESERVE ESCROW AGREEMENT**</u>

THIS EXCESS SPREAD RESERVE ESCROW AGREEMENT, dated as of _____ ___, _____ ("Escrow Agreement"), is by and among ROYAL INDEMNITY COMPANY, a Delaware insurance company ("Royal"); the Insured parties as defined in that certain Policy issued by Royal referenced below and who are from time to time parties hereto as provided herein (individually and collectively, the "Depositors"); those entities or persons who are Beneficiaries (as defined in the Policy) from time to time of the Policy and who are from time to time parties hereto as provided herein (individually and collectively, the "Beneficiaries"); and WILMINGTON TRUST COMPANY, a Delaware banking corporation, as Escrow Agent hereunder ("Escrow Agent").

WHEREAS, Depositors and Beneficiaries have entered into certain Warehouse Credit Agreements, Loan Agreements, Note or Certificate Purchase Agreements or Notes or other documents dated of even date herewith or as of the date that such Depositor or Beneficiary becomes a party to this Agreement by execution hereof as provided herein (as amended from time to time, the "Credit Agreements"), pursuant to which the Beneficiaries have advanced or agreed to advance funds to a Depositor on the terms and conditions set forth in the applicable Credit Agreement.

WHEREAS, pursuant to the Credit Agreements, each Depositor has agreed to deposit with the Escrow Agent on the terms set forth herein a portion of the monthly payments received from the Student Loans (as defined hereinafter) securing the Credit Agreements, which funds the Escrow Agent is to hold, invest and deliver pursuant to this Agreement.

WHEREAS, Escrow Agent has agreed to accept, hold and disburse the Escrow Funds deposited and the earnings thereof in accordance with the terms of this Escrow Agreement.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual agreements hereinafter set forth, intending to be legally bound, the parties hereto agree as follows:

    1.    <u>Definitions</u>. The following terms have the following meanings when used herein:

**Exhibit C**

"**Approved Account**" means the disbursement or similar account used by a Servicer on behalf of a Depositor and Related Beneficiary, as designated by the Depositor and Related Beneficiary in accordance with the applicable joinder hereto pursuant to Section 8.

"**Business Days**" means any day other than (a) a Saturday or Sunday, or (b) a day on which the Escrow Agent is closed for business.

"**Cut-Off Date**" means the last day of each calendar month.

"**Defaulted Student Loan(s)**" means a Student Loan which has a payment more than ninety (90) days past due applying any payments received after a Delinquent Payment to the earliest delinquency.

"**Delinquent Payments**" means all payments received from or on behalf of the obligor with respect to a Student Loan after the Cut-Off Date following the due date for such payment.

"**Delinquent Student Loan(s)**" means a Student Loan with a past due payment which is not a Defaulted Student Loan.

"**Escrow Funds**" means the funds deposited with Escrow Agent pursuant to this Agreement, together with any interest and other income thereon.

"**Escrow Settlement Date**" means the ninth (9th) Business Day after each Cut-Off Date.

"**Joint Written Direction**" means a written notice to the Escrow Agent executed by Royal, all of the Depositors and all of the Beneficiaries directing Escrow Agent to disburse all or a portion of the Escrow Funds in complete or partial termination of this Agreement.

"**Lender Balance**" means, as to any Student Loan at any time, the initial unpaid principal balance thereof, as of the Cut-Off Date preceding the date such Student Loan became subject to this Agreement, less any payments to the applicable Beneficiary on account of principal with respect to such Student Loan.

"**Lender Direction**" means a written direction executed by a Beneficiary (i) stating that there has been an impairment or avoidance of the rights of such Beneficiary or of the Depositor as to which it is the Related Beneficiary in the Student Loans specified in such Lender Direction arising out of the bankruptcy or similar event or proceedings with respect to Student Finance Corporation or such Depositor, including without limitation pursuant to Section 362 of the United States Bankruptcy Code and (ii) certifying, and directing the Escrow Agent to pay to

-2-

**Exhibit C**

such Beneficiary, the unpaid Lender Balance with respect to such Student Loans and all accrued and unpaid interest, fees and expenses with respect thereto.

"Master Policy" means the Master Credit Risk Insurance Policy issued by Royal, policy number _____, pursuant to which the Policy is issued as a Sub-Policy (as defined in such Master Policy).

"Maximum Reserve Amount" means an amount equal to fifty percent (50%) of the principal balance of the Student Loans, excluding Defaulted Student Loans.

"Minimum Escrow Amount" means the minimum balance of Escrow Funds required to be maintained by any rating agency in connection with a rated transaction, which shall be established pursuant to any Addendum to this Agreement executed by the Depositor signatory to the Credit Agreement in the rated transaction, the Related Beneficiary and Escrow Agent establishing such a Minimum Escrow Amount and establishing the basis for distribution of funds from such Minimum Escrow Amount.

"Monthly Reserve Amount" means, as of any Settlement Date, as applied to each Servicer, the Remaining Collection Balance.

"Monthly Valuation" means the valuation of the Escrow Funds pursuant to the monthly statement from the Escrow Agent as required pursuant to Section 7(b) hereof.

"Policy" means that certain Credit Risk Insurance Policy issued by Royal dated as of the date hereof, Policy Number _____, including any amendments, endorsements or changes, beneficiary designations or other alterations thereto.

"Recoveries" means all payments received from or on behalf of the obligor on account of Defaulted Student Loans which have not been transferred to the Insurer as a consequence of payment of a claim with respect thereto by the Insurer.

"Related Beneficiary" means, as to any Depositor, the Beneficiary that is a party to a Credit Agreement with such Depositor, as certified to Escrow Agent in accordance herewith.

"Related Escrow" means any escrow established pursuant to an escrow agreement relating to a pool of student loans covered by a sub-policy under the Master Policy.

"Related Escrow Deficiency" means the amount by which the balance in any Related Escrow is less than fifty percent (50%) of the principal balance of the related student loans, excluding student loans that have a payment more than ninety (90) days past due (applying any payments received after a delinquency to the earliest delinquency).

**Exhibit C**

"Remaining Collection Balance" means, as of any Settlement Date, the balance, if any, remaining in the disbursement account or similar account maintained by a Servicer after payment: (i) to the Escrow Agent, all Recoveries with respect to Defaulted Student Loans, (ii) to the appropriate party, any Servicing Fees, and any custody account fees, trustee fees and any other fees and expenses associated with the servicing and holding of the Student Loans, (iii) to the applicable Beneficiaries, interest, fees and expenses due to such Beneficiaries for the Settlement Period, (iv) to the applicable Beneficiary, payments of principal due to such Beneficiaries for the Settlement Period, and (v) to the appropriate party, such other payments as shall be provided for pursuant to the applicable Servicing Agreement.

"Servicer" means any servicer designated by a Depositor and its Related Beneficiary initially in the applicable joinder, which may be changed by a certificate with respect thereto delivered by Depositor and such Related Beneficiary to Escrow Agent.

"Servicer Written Direction" means a written direction executed by a Servicer with respect to any Settlement Period (a) listing (i) all Delinquent Student Loans and all Defaulted Student Loans as of the Cut-Off Date; (ii) for each listed Delinquent Student Loan, the aggregate amount of delinquent principal payments with respect thereto and the aggregate amount of delinquent interest payments with respect thereto for the applicable Settlement Period, (iii) for each Defaulted Student Loans, the aggregate unpaid balance and accrued and unpaid interest with respect thereto as of the Cut-Off Date, and (b) certifying, and instructing the Escrow Agent to pay to the Approved Account with the Servicer the aggregate principal amount and accrued and unpaid interest on the Defaulted Student Loans, and the aggregate delinquent principal and interest payments with respect to Delinquent Student Loans. A separate Servicer Written Direction shall be delivered for each group of Student Loans as to which there is a different Insured or Related Beneficiary.

"Settlement Date" means the eleventh (11th) Business Day after each Cut-Off Date.

"Settlement Period" means, with respect to each Student Loan (a) the period from the first day that such Student Loan is subject to this Agreement to the first Cut-Off Date, and (b) thereafter, each period from the date of the preceding Cut-Off Date to the next Cut-Off Date or, if earlier, the date that such Student Loan ceased to be subject to this Agreement.

"SFC Servicing Fees" means servicing fees payable to Student Financial Corporation or any of its affiliates.

**Exhibit C**

"Student Loan(s)" means the student loans set forth on Schedule I of the Policy as such Schedule is amended from time to time to remove Student Loans or add Student Loans as provided in the Policy.

"Third Party Servicing Fees" means any servicing fees other than SFC Servicing Fees.

"Unreimbursed Insurer-Paid Losses" means Losses (as defined in the Policy) which have been paid by Royal and which have not previously been reimbursed pursuant to Section 4(f) hereto or under the Experience Account as defined in the Policy.

2.    Appointment of and Acceptance by Escrow Agent. Depositors and Beneficiaries hereby appoint Escrow Agent to serve as escrow agent hereunder. Escrow Agent hereby accepts such appointment and, upon receipt of the Escrow Funds in accordance with Section 3 below, agrees to hold, invest and disburse the Escrow Funds in accordance with this Escrow Agreement.

3.    Creation of Escrow Funds. On each Settlement Date, the Depositors will cause the Servicer to transfer to the Escrow Agent (a) the Monthly Reserve Amount, and (b) all Recoveries with respect to Defaulted Student Loans, by wire transfer of immediately available funds to the following account:

> Wilmington Trust Company
> ABA Number: 031100092
> Account: Excess Spread Reserve Account 1999-___
> Account Number:
> Attention:

4.    Disbursements of Escrow Funds.

(a)    Escrow Agent shall disburse Escrow Funds pursuant to a Joint Written Direction.

(b)    On each Escrow Settlement Date, Escrow Agent shall disburse Escrow Funds in accordance with Lender Directions received on or before the Business Day prior to such Escrow Settlement Date, subject to subparagraph (e) below.

(c)    On each Escrow Settlement Date, Escrow Agent shall disburse Escrow Funds to the Approved Account(s) in accordance with Servicer Written Directions received in accordance with Section 5 hereof, subject to subparagraph (e) below.

-5-

**Exhibit C**

(d)    If, as of any Escrow Settlement Date, the value of the Escrow Funds after payment of all amounts pursuant to Servicer Written Directions, any Lender Direction and any Joint Written Direction, and payment of all amounts required to be paid to Royal pursuant to subparagraph (f) below, exceeds the Maximum Reserve Amount, based on the most recent Monthly Valuation Report pursuant to Section 7, the Escrow Agent shall on the fifth (5th) Business Day following such Escrow Settlement Date distribute from the Escrow Fund the amount of such excess, first, to the applicable Related Escrow to the extent of any Related Escrow Deficiency of which the Escrow Agent has notice in accordance with Section 7(d) hereof, and then to the Depositors in proportion to the aggregate principal balance of the Student Loans of which they are the owner based on the Servicer reports delivered pursuant to Section 7(a).

(e)    In the event that compliance with all of the Joint Written Directions, Lender Directions, Servicer Written Directions as of any Escrow Settlement Date would result in the balance of the Escrow Funds being less than the Minimum Escrow Amount, if any, or less than zero (0), if no Minimum Escrow Amount has been established, then (i) the Joint Written Directions shall be complied with to the extent there are available Escrow Funds, and then the remaining balance of the Escrow Funds shall be distributed pro rata amongst the various Servicers and Beneficiaries in accordance with the respective amounts to which they would otherwise have been entitled pursuant to such Servicer Written Directions and Lender Written Directions, and (ii) the Escrow Agent shall deliver a statement to Royal, each Depositor and each Beneficiary that no Escrow Funds remain available for distribution, and setting forth a copy of the Joint Written Directions, Lender Directions, Servicer Written Directions marked to show the allocation of the Escrow Funds as aforesaid.

(f)    If Escrow Agent has received notice from Royal of Unreimbursed Insurer-Paid Losses pursuant to Section 7(c) hereof, Escrow Agent shall pay to Royal on the Escrow Settlement Date all Escrow Funds that remain after payment in accordance with all Joint Written Directions, Lender Directions and Servicer Written Directions up to the aggregate amount of the Unreimbursed Insurer-Paid Losses as set forth in the notice from Royal.

(g)    Escrow Funds below the Minimum Escrow Amount, if any has been established, shall be distributed in accordance with the Addendum establishing such Minimum Escrow Amount.

All disbursements of funds from the Escrow Funds shall be subject to the claims of Escrow Agent and the Indemnified Parties (as defined below) pursuant to Section 9 below.

5.    Certain Procedures. Lender Directions and Servicer Written Directions for any Escrow Settlement Date shall be delivered not later than the seventh (7th) Business Day following the Cut-Off Date, and a copy hereof shall be delivered to the Depositor and to Royal.

PHLEGAL #628356 v10 (dg%c10' WPD)

**Exhibit C**

6. **Investment of Funds.** Escrow Agent shall invest and reinvest the Escrow Funds from time to time as Depositors shall direct in writing, provided, that no investment or reinvestment shall be made except in the following investments:

(a)    commercial paper which is rated A1 or better by Standard & Poor's Corporation or P1 or better by Moody's Investors Services, Inc.;

(b)    direct obligations of the United States of America or obligations of any agency thereof which are guaranteed by the United States of America;

(c)    certificates of deposits issued by a bank or trust company organized under the laws of the United States or any state thereof, having capital, surplus and undivided profits aggregating at least $500,000,000 and the long-term deposits of which are rated A1 or better by Moody's Investors Services, Inc. or equivalent by Standard & Poor's Corporation;

(d)    money market funds registered under the Investment Company Act of 1940, as amended, whose shares are registered under the Securities Act of 1933, as amended, and having a rating by Standard & Poors Corporation of AAAm-G, AAAm or Aam; or

(e)    the US Government Portfolio of the Rodney Square Fund, a mutual fund managed by Rodney Square Management Corp., an affiliate of Escrow Agent.

Each of the foregoing investments shall be made in the name of Escrow Agent. Notwithstanding anything to the contrary contained herein, Escrow Agent may, without notice to Depositors or Beneficiaries, sell or liquidate any of the foregoing investments at any time if the proceeds thereof are required for any release of funds permitted or required hereunder, and Escrow Agent shall not be liable or responsible for any loss, cost or penalty resulting from any such sale or liquidation. With respect to any Escrow Funds, or investment instructions regarding Escrow Funds, received by Escrow Agent after ten o'clock (10:00), a.m. Eastern Time on any Business Day, or at any time on a day other than a Business Day, Escrow Agent shall not be required to invest such funds or to effect such investment instruction until the next Business Day. In the absence of written direction, the Escrow Agent shall invest the Escrow Funds in the Rodney Square Fund provided in subparagraph (e) above.

7. **Certain Reports.**

(a)    On or before the seventh (7th) Business Day following each Cut-Off Date, each Servicer shall deliver to the Escrow Agent a statement as of the Cut-Off Date, with respect to the Student Loans serviced by such Servicer, of the aggregate outstanding principal balance of the Student Loans, the aggregate outstanding principal balance of all

-7-

__Exhibit C__

Defaulted Student Loans included therein, and the difference. Escrow Agent shall provide a copy of any such statement received from a Servicer to any Depositor or Beneficiary on request.

(b)    Within two (2) Business Days after each Escrow Settlement Date, Escrow Agent shall prepare or cause to be prepared, and deliver to each Servicer, with copies to Royal and each Beneficiary, a statement (a "Monthly Valuation Report") setting forth (i) the aggregate fair market value of the Escrow Funds as of such Escrow Settlement Date, after giving effect to all payments from the Escrow Funds pursuant to Section 4 hereof as of such Escrow Settlement Date, (ii) the aggregate balance of the Student Loans (excluding Defaulted Student Loans) based on all reports received from the Servicers pursuant to subparagraph (a) above, and (iii) the Maximum Reserve Amount. Escrow Agent shall provide a copy of such statement to any Depositor or Beneficiary on request. Escrow Agent (and any preparer of the Monthly Valuation Report) shall be entitled to rely upon all information provided by the Servicers without any requirement that such information be verified.

(c)    At any time that Royal shall have paid any Losses under the Policy on account of Defaulted Student Loans, Royal shall on or before the first (1st) Business Day of each month give notice to the Escrow Agent, with copies to each Servicer, Insured and Beneficiary, of the date and amount of each such payment, and the aggregate balance of all such payments which have not been reimbursed pursuant to Section 4(f) hereof or under the Experience Account as defined in the Policy.

(d)    Monthly, not later than three (3) Business Days after each Escrow Settlement Date, Royal may deliver to Escrow Agent, with copies to each Servicer, Insured and Beneficiary, a notice setting forth the amount of any Related Escrow Deficiency then existing and the applicable Escrow Agent (including wire or other payment instructions) to which any excess amounts hereunder should be distributed in accordance with Section 4(d) hereof and if more than one Related Escrow Deficiency exists the order in which such amounts should be applied.

8.    __Addition and Removal of Depositors and Beneficiaries__. At any time, in connection with the addition of insureds or beneficiaries under the Policy pursuant to the establishment of new Credit Agreements, such Insureds and Beneficiaries may become party to this Escrow Agreement by delivery to Escrow Agent of a joinder hereto in form and substance satisfactory to Escrow Agent providing for the joinder of such Insureds as Depositors hereunder and the addition of such beneficiaries as Beneficiaries hereunder, and certifying that the Beneficiary designated therein is the Related Beneficiary with respect to such Depositor. At any time, Depositors and/or Beneficiaries may be removed as parties to the Agreement, and a new Beneficiary may be substituted for a Beneficiary being removed, by written notice to the Escrow Agent in form and substance satisfactory to Escrow Agent executed by (i) in the case of removal

Exhibit C

of a Depositor, such Depositor and the related Beneficiary, and (ii) in the case of removal or substitution of a Beneficiary, the Beneficiary being removed.

9.     Fees. Depositors, jointly and severally, shall pay to Escrow Agent compensation for its services hereunder as set forth on Schedule A. Escrow Agent shall have a first lien against the escrow account to secure the obligations of Depositors hereunder. The terms of this paragraph shall survive termination of this Escrow Agreement. Escrow Agent is authorized to, and may, disburse to itself from the Escrow Funds, from time to time, the amount of any compensation and reimbursement due and payable hereunder (including any amount to which Escrow Agent or any Indemnified Party is entitled to seek indemnification pursuant to Section 13 hereof.) Escrow Agent shall notify Depositors, Beneficiaries and Royal of any disbursement from the Escrow Funds to itself or any Indemnified Party in respect of any compensation or reimbursement hereunder and shall furnish to the Depositors copies of all related invoices and other statements. Depositors hereby grant to Escrow Agent and the Indemnified Parties a security interest in and lien upon the Escrow Funds and all funds therein to secure all obligations hereunder to Escrow Agent and the Indemnified Parties, and Escrow Agent and Indemnified Parties shall have the right to offset the amount of any compensation or reimbursement due to any of them hereunder (including any claim for indemnification pursuant to Section 13 hereof) against the Escrow Funds. If for any reason funds in the Escrow Funds are insufficient to satisfy and fully pay such compensation and reimbursement, Depositors shall promptly pay such amounts to Escrow Agent or the applicable Indemnified Party upon receipt of an itemized invoice. The obligations of Depositors under this Section 9 shall survive any termination of this Escrow Agreement and the resignation or removal of Escrow Agent.

10.     Resignation and Removal of Escrow Agent. Escrow Agent may resign as Escrow Agent by giving notice in writing of such resignation to Royal, Depositors and Beneficiaries, which notice shall specify a date upon which such resignation shall take effect. Upon the resignation of Escrow Agent, Insurer and Depositors shall, within thirty (30) days after receiving the foregoing notice from Escrow Agent, designate a substitute escrow agent (the "Substitute Escrow Agent") with the consent of Beneficiaries which shall not be unreasonably withheld, which Substitute Escrow Agent shall, upon its designation and notice of such designation to Escrow Agent, succeed to all of the rights, duties and obligations of Escrow Agent under this Escrow Agreement. In addition, Escrow Agent may be removed by agreement of Royal, the Depositors or the Beneficiaries on not less than thirty (30) days written notice specifying a Substitute Escrow Agent. The retiring Escrow Agent shall transmit all records pertaining to the Escrow Funds and shall pay all funds held by it in the Escrow Funds to the Substitute Escrow Agent, after making copies of such records as the retiring Escrow Agent deems advisable and after deduction and payment to the retiring Escrow Agent of all fees and expenses (including court costs and attorneys' fees) payable to, incurred by, or expected to be incurred by the retiring Escrow Agent in connection with the performance of its duties and the

Exhibit C

exercise of its rights hereunder. Upon its resignation on removal, Escrow Agent shall thereupon be discharged from any and all further duties and obligations under this Agreement.

    11. Suspension of Performance: Disbursement Into Court. If, at any time, there shall exist any dispute between Royal, Depositors and Beneficiaries with respect to the holding or disposition of any portion of the Escrow Funds or any other obligations of Escrow Agent hereunder, or if at any time Escrow Agent is unable to determine, to Escrow Agent's sole satisfaction, the proper disposition of any portion of the Escrow Funds or Escrow Agent's proper actions with respect to its obligations hereunder, or if the Depositors and Insurer have not within 30 days of the furnishing by Escrow Agent of a notice of resignation pursuant to Section 10 hereof, appointed a successor Escrow Agent to act hereunder which has been consented to by Beneficiaries, then Escrow Agent may, in its sole discretion, take either or both of the following actions:

    (a) suspend the performance of any of its obligations (including without limitation any disbursement obligations) under this Escrow Agreement until such dispute or uncertainty shall be resolved to the sole satisfaction of Escrow Agent or until a successor Escrow Agent shall have been appointed (as the case may be); *provided however,* that Escrow Agent shall continue to invest the Escrow Funds in accordance with Section 6 hereof; and/or

    (b) petition (by means of an interpleader action or any other appropriate method) any court of competent jurisdiction in any venue convenient to Escrow Agent, for instructions with respect to such dispute or uncertainty, and to the extent required by law, pay into such court, for holding and disposition in accordance with the instructions of such court, all funds held by it comprising the Escrow Funds, after deduction and payment to Escrow Agent of all fees and expenses (including court costs and attorneys' fees) payable to, incurred by, or expected to be incurred by Escrow Agent in connection with the performance of its duties and the exercise of its rights hereunder.

Escrow Agent shall give written notice to all parties hereunder on any Escrow Settlement Date or other date that a disbursement has been requested hereunder if Escrow Agent is not making such disbursement pursuant to this Section. Escrow Agent shall have no liability to Royal Depositors, Beneficiaries, their respective shareholders or any other person with respect to any such suspension of performance or disbursement into court, specifically including any liability or claimed liability that may arise, or be alleged to have arisen, out of or as a result of any delay in the disbursement of funds comprising the Escrow Funds or any delay in or with respect to any other action required or requested of Escrow Agent.

**Exhibit C**

12.     **Liability of Escrow Agent.**

(a)     Escrow Agent shall have no liability or obligation with respect to the Escrow Funds except for Escrow Agent's gross negligence or willful misconduct. Escrow Agent's sole responsibility shall be for the safekeeping, investment and disbursement of the Escrow Funds in accordance with the terms of this Escrow Agreement. Escrow Agent shall have no implied duties or obligations and shall not be charged with knowledge or notice of any fact or circumstance not specifically set forth herein. Escrow Agent may rely upon any instrument, not only as to its due execution, validity and effectiveness, but also as to the truth and accuracy of any information contained therein, which Escrow Agent shall in good faith believe to be genuine, to have been signed or presented by the person or parties purporting to sign the same and to conform to the provisions of this Escrow Agreement. In no event shall Escrow Agent be liable for incidental, indirect, special, consequential or punitive damages. Escrow Agent shall not be obligated to take any legal action or commence any proceeding in connection with the Escrow Funds, any account in which Escrow Funds are deposited, or this Escrow Agreement, or to appear in, prosecute or defend any such legal action or proceeding. Escrow Agent may consult legal counsel selected by it in the event of any dispute or question as to the construction of any of the provisions hereof or of any other Agreement or of its duties hereunder, or relating to any dispute involving any party hereto, and shall incur no liability and shall be fully indemnified and held harmless from and against any liability, expense or loss whatsoever in acting in accordance with the opinion or instruction of such counsel. Depositors shall promptly pay, upon demand, the reasonable fees and expenses of any such counsel.

(b)     The Escrow Agent is authorized, in its sole discretion, to comply with orders issued or process entered by any court with respect to the Escrow Funds, without determination by the Escrow Agent of such court's jurisdiction in the matter. If any portion of the Escrow Funds is at any time attached, garnished or levied upon under any court order, or in case the payment, assignment, transfer, conveyance or delivery of any such property shall be stayed or enjoined by any court order, or in case any order, judgment or decree shall be made or entered by any court affecting such property or any part thereof, then and in any such event, the Escrow Agent is authorized, in its sole discretion, to rely upon and comply with any such order, writ, judgment or decree which it is advised by legal counsel selected by it is binding upon it without the need for appeal or other action; and if the Escrow Agent complies with any such order, writ, judgment or decree, it shall not be liable to any of the parties hereto or to any other person or entity by reason of such compliance even though such order, writ, judgment or decree may be subsequently reversed, modified, annulled, set aside or vacated.

(c)     Escrow Agent shall not be required to use its own funds in the performance of any of its obligations or duties or the exercise of any of its rights or powers and shall not be required to take any action which, in Escrow Agent's sole and absolute judgment,

-11-

**Exhibit C**

could involve it in expense or liability unless furnished with security and indemnity which it deems, in its sole and absolute discretion, to be satisfactory.

(d)     Escrow Agent shall be authorized (but not required) to seek confirmation of all funds transfer instructions by telephone callback, and Escrow Agent may rely upon such confirmation of anyone purporting to be the person designated in the instructions. The parties acknowledge that such security procedure is commercially reasonable. The Escrow Agent may, however, disburse any funds in the Escrow Fund without any separate instructions, if such disbursements are in accordance with the terms of this Escrow Agreement.

13.     Indemnification of Escrow Agent. From and at all times after January 22, 1999, Depositors shall, to the fullest extent permitted by law and to the extent provided herein, indemnify and hold harmless Escrow Agent and each director, officer, employee, attorney, agent and affiliate of Escrow Agent (collectively, the "Indemnified Parties") against any and all actions, claims (whether or not valid), losses, damages, liabilities, costs and expenses of any kind or nature whatsoever (including without limitation reasonable attorneys' fees, costs and expenses) incurred by or asserted against any of the Indemnified Parties from and after January 22, 1999, whether direct, indirect or consequential, as a result of or arising from or in any way relating to any claim, demand, suit, action or proceeding (including any inquiry or investigation) by any person, including without limitation Depositors, Beneficiaries or Royal, whether threatened or initiated, asserting a claim for any legal or equitable remedy against any person under any statute or regulation, including, but not limited to, any federal or state securities laws, or under any common law or equitable cause or otherwise, arising from or in connection with the negotiation, preparation, execution, performance or failure of performance of this Escrow Agreement or any transaction contemplated herein, whether or not any such Indemnified Party is a party to any such action, proceeding, suit or the target of any such inquiry or investigation; *provided, however,* that no Indemnified Party shall have the right to be indemnified hereunder for any liability finally determined by a court of competent jurisdiction, subject to no further appeal, to have resulted solely from the gross negligence or willful misconduct of such Indemnified Party. If any such action or claim shall be brought or asserted against any Indemnified Party, such Indemnified Party shall promptly notify Depositors in writing, and Depositors shall assume the defense thereof, including the employment of counsel and the payment of all expenses. Such Indemnified Party shall, in its sole discretion, have the right to employ separate counsel (who may be selected by such Indemnified Party in its sole discretion) in any such action and to participate in the defense thereof, and the fees and expenses of such counsel shall be paid by such Indemnified Party, except that Depositors shall be obligated to pay such fees and expenses if (a) Depositors agree to pay such fees and expenses, or (b) Depositors shall fail to assume the defense of such action or proceeding or shall fail, in the sole discretion of such Indemnified Party, to employ counsel satisfactory to the Indemnified Party in any such action or proceeding, or (c) Depositors are the plaintiffs in any such action or proceeding, or (d) the named or potential parties to any such action or proceeding (including any potentially impleaded parties) include

-12-

**Exhibit C**

both Indemnified Party and Depositors, and Indemnified Party shall have been advised by counsel that there may be one or more legal defense available to it which are different from or additional to those available to Depositors. All such fees and expenses payable by Depositors pursuant to the foregoing sentence shall be paid from time to time as incurred, both in advance of and after the final disposition of such action or claim. All of the foregoing losses, damages, costs and expenses of the Indemnified Parties shall he payable by Depositors upon demand by such Indemnified Party. The obligations of Depositors under this Section 13 shall survive any termination of this Escrow Agreement and the resignation or removal of Escrow Agent, and shall be independent of any obligation of the Escrow Agent.

14.    Representations and Warranties. Depositors, Royal and Beneficiaries (the "Parties") hereby make the following representations and warranties to Escrow Agent:

(a)    Each Party is duly organized, validly existing, and in good standing under the laws of the State of such Party's formation and has full power and authority to execute and deliver this Escrow Agreement and to perform its obligations hereunder;

(b)    This Escrow Agreement has been duly approved by all necessary corporate or other action of such Party, including any necessary shareholder, member or other approval, has been executed by duly authorized officers, members, partners or authorized person of the Parties, and constitutes a valid and binding Agreement of each Party, enforceable in accordance with its terms.

(c)    The execution, delivery, and performance by each Party of this Escrow Agreement will not violate, conflict with, or cause a default under the articles of incorporation, bylaws, certificate of formation, operating agreement, partnership agreement or other organizing document of the Parties, any applicable law or regulation, any court order or administrative ruling or decree to which the Parties is a party or any of its property is subject, or any agreement, contract, or other binding arrangement to which the Party is a party or any of its property is subject.

(d)    No party other than Escrow Agent and the other parties hereto have, or shall have, any lien, claim or security interest in the Escrow Funds or any part thereof. No financing statement under the Uniform Commercial Code is on file in any jurisdiction claiming a security interest in or describing (whether specifically or generally) the Escrow Funds or any part thereof, except those in favor of the parties hereto.

(e)    All of the representations and warranties of the Parties contained herein are true and complete as of the date hereof and will be true and complete at the time of any disbursement from the Escrow Funds.

-13-

**Exhibit C**

15. <u>Mistaken Payments</u>. Escrow Agent shall have no duty to investigate the validity or correctness of any notice or instruction delivered hereunder, and shall have no liability for distribution of funds as provided hereunder in accordance with any such notice or instruction. If any such notice or instruction shall prove to have been in error, the other parties hereto shall have recourse to the party that received an erroneous payment and shall have no recourse against Escrow Agent.

16. <u>Consent to Jurisdiction and Venue</u>. In the event that any party hereto commences a lawsuit or other proceeding relating to or arising from this Agreement, the parties hereto agree that the United States District Court for the District of Delaware shall have the sole and exclusive jurisdiction over any such proceeding. If all such courts lack federal subject matter jurisdiction, the parties agree that the appropriate court in the State of Delaware shall have sole and exclusive jurisdiction. Any of these courts shall be proper venue for any such lawsuit or judicial proceeding and the parties hereto waive any objection to such venue. The parties hereto consent to and agree to submit to the jurisdiction of any of the courts specified herein and agree to accept service of process to vest personal jurisdiction over them in any of these courts.

17. <u>Notice</u>. All notices and other communications hereunder shall be in writing and shall be deemed to have been validly served, given or delivered five (5) days after deposit in the United States mails, by certified mail with return receipt requested and postage prepaid, when delivered personally, one (1) day after delivery to any overnight courier, or upon receipt by the transmitter of written confirmation of proper transmission by telecopier (provided that a hard copy is sent concurrently by hand delivery or overnight courier as aforesaid) and addressed to the party to be notified as follows:

If to Royal:

Royal Indemnity Company
1111 Carmel Commons Boulevard
Charlotte, North Carolina 28226
Attention: Tony McKenzie
Telecopier Number: (704) 543-3566

If to the Escrow Agent, at:

Wilmington Trust Company, as Escrow Agent
Rodney Square North
1100 North Market Street
Wilmington, DE 19890
Attention: Corporate Trust Administration
Telecopier Number: (302) 427-4749

PHLEGAL #628356 v10 (dg%c10! WPD)

**Exhibit C**

If to a Depositor or Beneficiary, to their respective address or telecopier numbers as set forth in the applicable joinder in accordance with Section 8 hereof;

or to such other address as each party may designate for itself by like notice.

18.     Amendment or Waiver. This Escrow Agreement may be changed, waived, discharged or terminated only by a writing signed by Depositors, Beneficiaries, Royal and Escrow Agent. No delay or omission by any party in exercising any right with respect hereto shall operate as a waiver. A waiver on any one occasion shall not be construed as a bar to, or waiver of, any right or remedy on any future occasion.

19.     Severability. To the extent any provision of this Escrow Agreement is prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Escrow Agreement.

20.     Governing Law. This Escrow Agreement shall be construed and interpreted in accordance with the internal laws of the State of Delaware without giving effect to the conflict of laws principles thereof.

21.     Entire Agreement. This Escrow Agreement constitutes the entire Agreement between the parties relating to the holding, investment and disbursement of the Escrow Funds and sets forth in its entirety the obligations and duties of Escrow Agent with respect to the Escrow Funds.

22.     Binding Effect. All of the terms of this Escrow Agreement, as amended from time to time, shall be binding upon, inure to the benefit of and be enforceable by the respective heirs, successors and assigns of Depositors, Beneficiaries, Royal and Escrow Agent.

23.     Execution in Counterparts. This Escrow Agreement and any Joint Written Direction may be executed in two or more counterparts, which when so executed shall constitute one and the same Agreement or direction.

24.     Termination. This Escrow Agreement shall terminate and Escrow Agent shall have no further obligation or liability whatsoever with respect to this Escrow Agreement or the Escrow Funds at such time as the Policy has terminated, and all amounts shall have been distributed in accordance with Section 4.

25.     Dealings. The Escrow Agent and any affiliate, stockholder, director, officer or employee of the Escrow Agent, may buy, sell, and deal in any of the securities of the Depositors, Royal or Beneficiaries and become pecuniarily interested in any transaction in which

PHLEGAL: #628356 v10 (dg%c101.WPD)

Exhibit C

the Depositors, Royal or Beneficiaries may be interested, and contract and lend money to the Depositors, Royal or Beneficiaries and otherwise act as fully and freely as though it were not Escrow Agent under this Agreement. Nothing herein shall preclude the Escrow Agent from acting in any other capacity for the Depositors or Beneficiaries or for any other entity. Without limiting the foregoing, it is understood and agreed that Wilmington Trust of Pennsylvania, an affiliate of Escrow Agent, is an initial Beneficiary hereunder, and it is understood and agreed that the relationship between Escrow Agent and such Beneficiary shall not in any manner affect the duties or obligations of Escrow Agent nor in any manner affect the rights of such Beneficiary.

**[SIGNATURES ON FOLLOWING PAGE]**

-16-

**Exhibit C**

      IN WITNESS WHEREOF, the parties hereto have caused this Escrow Agreement to be executed under seal as of the date first above written.

                           **WILMINGTON TRUST COMPANY**, as Escrow Agent

                           **By:**_____
                           Name:
                           Title:

                           **ROYAL INDEMNITY COMPANY**

                           **By:**_____
                           Name:
                           Title:

-17-

**Exhibit C**

### DEPOSITOR AND RELATED BENEFICIARY JOINDER
To Excess Spread Reserve Escrow Agreement dated January 22, 1999
(the "Escrow Agreement")

The undersigned, being the owner of one or more Student Loans (as defined in the Escrow Agreement) and an insured under the Policy (as defined in the Escrow Agreement) hereby: (1) Confirms that it has received a complete copy of the Escrow Agreement; (2) joins in the Escrow Agreement as a Depositor thereunder; (3) agrees to be bound by all of the terms and conditions thereof; (4) confirms that the Beneficiary designated below is its Related Beneficiary (as defined in the Escrow Agreement), (5) designates the Servicer and Approved Collection Account set forth below, and (6) instructs that notices be sent to it at the address and telecopier number set forth below.

IN WITNESS WHEREOF, the undersigned, intending to be legally bound, has executed this Joinder as of the date indicated below.

Address for notices:                    DEPOSITOR:

_____            [_____]

_____

_____

Attention:_____            By:_____

Telecopier: _____            Name:

                                        Title:

                                        Date:

The undersigned, being party to a Credit Agreement (as defined in the Escrow Agreement) with the above Depositor, hereby: (1) Confirms that it has received a complete copy of the Escrow Agreement; (2) joins in the Escrow Agreement as a Beneficiary thereunder; (3) agrees to be bound by all of the terms and conditions thereof; (4) confirms that it is the Related Beneficiary (as defined in the Escrow Agreement) with respect to the above Depositor (5)

**Exhibit C**

designates the Servicer and Approved Collection Account set forth below, and (6) instructs that notices be sent to it at the address and telecopier number set forth below.

Address for notices:                    BENEFICIARY:

_____                    [_____]
_____
_____                    By:_____
Attn: _____                    Name:
Telecopier:_____                 Title:
                                       Date:


Name of Servicer:  STUDENT FINANCE CORPORATION

Approved Account:

                        _____
                        _____
                        _____
                        _____


RECEIVED AND ACCEPTED THIS ___ DAY OF
_____, _____ BY THE ESCROW AGENT:

WILMINGTON TRUST COMPANY


By:_____
Name:
Title:

<u>EXHIBIT D</u>

FORM OF

<u>CERTIFICATION OF NET MARGIN</u>

Reference is made to the Master Credit Risk Insurance Policy RST 293308 (the "Master Policy") and to the Request for Issuance dated _____ thereunder.

Capitalized terms used and not otherwise defined herein shall have the meanings ascribed thereto in the Master Policy.

In connection with the Request for Issuance, the undersigned hereby certifies as follows:

The WAC for the Student Loans that will be
covered by the Sub-Policy requested by the
Request for Issuance (the "Initial Pool") is:                     _____%

The Aggregate Annual Funding Costs with respect to
the Initial Pool is:                                             _____%

The Net Margin is:                                              _____%

IN WITNESS WHEREOF, the undersigned has executed this Certification of Net Margin this ___ day of _____, _____.

[SFC FINANCIAL I or II, LLC]

By:      _____, its Member

By:_____
    Name:
    Title: