# Exhibit M

Not Reported in A.2d  
(Cite as: 1988 WL 116423 (Del.Super.))  
<KeyCite History>

Page 341

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Delaware, New Castle County.

J.E. RHOADS & SONS, INC., a Delaware corporation, Plaintiff,
v.
AMMERAAL, INC., a Delaware corporation, and Ammeraal Conveyor Belting B.V., a foreign corporation, Defendants.
AMMERAAL, INC., Third-Party Plaintiff,
v.
Edward K. MOL, Third-Party Defendant.

Submitted: April 14, 1988.
Decided: Oct. 21, 1988.

Upon defendants Ammeraal, Inc. and Ammeraal Conveyor Belting B.V.'s motion for reargument. Denied.

Richard R. Wier, Jr., and Walter P. McEvilly, Jr., Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for plaintiff.

William D. Bailey, Jr., and Charles Gruver, III, Bayard, Handelman & Murdoch, P.A., Wilmington, and Gerard B. Gallagher, and David L. Joslyn, Gallagher & Joslyn, Oakbrook, Ill., for defendants Ammeraal, Inc. and Ammeraal Conveyor Belting, B.V..

MEMORANDUM OPINION

GEBELEIN, Judge.

*1 Before this Court is defendants' Ammeraal Conveyor Belting B.V. (Belting) and Ammeraal, Inc.'s (Ammeraal) motion for reargument of that portion of this Court's March 30, 1988 opinion denying defendants' motion to strike and dismiss Counts II and III of the Third Amended Complaint. Counts II and III allege that defendants violated Delaware's Deceptive Trade Practices Act, 6 Del.C. § 2531 et. seq., and its Uniform Trade Secrets Act, 6 Del.C. § 2001 et. seq., respectively. Defendants argue that to apply these acts to conduct allegedly occurring exclusively outside of the State violates Delaware law and the Commerce and Due Process Clauses of the U.S. Constitution.

Pertinent facts are as follows. J.E. Rhoads & Sons, Inc. (Rhoads) alleged in Count II that defendants violated the Deceptive Trade Practices Act by contacting Rhoads' customers and luring them away via a series of misrepresentations concerning plaintiff. Defendants assert that all contact was made via phone calls from Michigan to customers throughout the U.S.

Count III charges defendants with misappropriating Rhoads' trade secrets, in violation of the Trade Secrets Act. Trade Secrets were listed as the Rhoads' customer list, information on Rhoads' customers, pricing, and the like and secrets and information on the MARS account. All items allegedly were used to take away Rhoads' customers. Defendants assert that "the acts complained of occurred in the State of Michigan". For support, defendants cite the fact that defendants' employees divided up the customer list and called Rhoads' customers from Grand Rapids. (Depo. John C. Spicer, pp. 241-244, Defendants' Opening Brief, Ex.D). Evidently, the argument is that the information was not misappropriated, if at all, until defendants contacted Rhoads' customers; i.e., the information was rightfully in defendants' hands, but was misappropriated when used for an improper purpose.

Defendants first argue that to apply the Delaware Trade Practices and the Uniform Trade Secrets Acts to their conduct violates Delaware law. They base this assertion on the premise that all of the purported misrepresentations and other conduct occurred physically outside of Delaware, in Michigan. Because the legislature did not express its intent to apply the applicable laws to actions occurring outside of the jurisdiction, defendants reason that the acts should not apply.

In deciding that the Delaware Acts were applicable to defendants' alleged conduct, this Court examined several factors. First and foremost was the contention that the alleged misrepresentations and misuse of information occurred when defendants contacted Rhoads' customers throughout the U.S.; i.e., the misconduct occurred when and where the customers answered the phone or letter. See, J.E.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Rhoads & Sons, Inc. v. Ammeraal, Inc., et al., Del.Super., C.A. No. 83C-NO-98, Gabelein, J. (March 30, 1988). [FN1]

This Court determined that because there was no clear, single situs for the alleged wrongful acts, the law of the place of injury, Delaware, should apply. Id. See also, Autrey v. Chemitrust Industries Corp., Inc., D.Del., 362 F.Supp. 1085 (1973) (wrong is deemed to occur where misrepresentation operated to cause loss.) This is in keeping with Delaware's adherence to the lex loci delecti rule for negligent torts. It is in seeming contrast to the holdings of Data General Corp. v. Digital Computer Controls, Inc., Del.Ch., 357 A.2d 105 (1975) and Johnston Associates, Inc. v. Rohm & Haas Co., D.Del., 560 F.Supp. 916 (1983), wherein the Courts applied the law of the place of defendant's conduct, rather than injury, to intentional torts. Neither case expressly overruled Autrey. See also, Hill v. Equitable Trust Co., D.Del., 562 F.Supp. 1324 (1983) (in case of intentional torts, the law of the place of defendant's conduct is applied). In both Johnston and Data General, the situs of the conduct was clear and singular. The Hill securities law case involved in part non-resident plaintiffs complaining of conduct centered in Maryland. Hill, 562 F.Supp. at 1135. Such conduct included making and accepting payment of the loans in question, bribing defendant's employees, and failing to disclose material information, all taking place within Maryland. Id. The Court noted that Maryland limitations law was even more compelling under the "most significant relationship test." Id. The Johnston Court also noted that its holding was in accord with the modern trend to apply the law of the state with the most significant relationship to the occurrence in a contract case.

*2 This Court found that the same results would apply in the Rhoads case under the modern trend, as follows:

The Restatement of Conflict of Laws 2d, § 145, outlines contacts to be taken into account in determining the law applicable to an issue in an interests analysis. They are: 1) place of injury, 2) place of conduct, 3) domicile, residence, place of incorporation and business, 4) place where relationship entered. In the instant case, the place of injury is Delaware. The place of conduct is not clearly ascertainable, although if it were, it would be heavily weighed. Ammeraal and plaintiff are incorporated in Delaware; Belting is a foreign corporation, with a foreign domicile. Plaintiff's principal place of business is Delaware; Ammeraal's is Michigan. The relationship does not appear to be centered in one particular place, as plaintiff placed orders with defendants and then distributed the merchandise to their customers. The letter agreement originated with defendants, but was mailed to defendants in Delaware, and presumably was accepted there. From the foregoing, it appears that Delaware has the most significant relationship to the issue.

Rhoads, C.A. No. 83C-NO-98 at 40.

In addition to the foregoing, plaintiffs compiled the customer list and MARS information for Ammeraal in Delaware. When the relationship began, Rhoads was the exclusive sales agent for Ammeraal products in the U.S.; its principal place of business is in Delaware. Thus, defendants' stateside business was for many years conducted solely via a Delaware business.

Defendants argue that this Court's holding is in conflict with the principle of law that in the absence of legislative intent, as established on the face of legislation, State law applies only to actions occurring within a State's borders. They assert that mere residency or incorporation in the State is not enough to alter this territorial limitation.

Defendants first cite for support Carter v. Department of Public Safety, Del.Super., 290 A.2d 652 (1972). The Court there held that it was impermissible to punish an individual under Delaware law for an action occurring exclusively in another state. Therefore, it was improper to revoke a Delaware motor vehicle license under Delaware's driving under the influence statute based upon a like conviction in Maryland. The Court reasoned that revocation of the license was improper without due process protections; i.e., notice and an opportunity to be heard.

Here, conduct did not lie exclusively in another state, and defendants have full notice and opportunity to be heard.

Defendants also point to Singer v. Magnavox Co., Del.Supr., 380 A.2d 969 (1977) as confirming

territorial limits on State law. In Singer, plaintiffs unsuccessfully attempted to apply the Delaware Securities Act (prohibiting fraud or deceit in the offer or sale of securities) to defendants' alleged misrepresentation in the solicitation of proxies. Id. at 981. Plaintiffs were Pennsylvania residents. The proxies were not solicited in Delaware. The contract leading to the merger was not made in Delaware, but in New York, and the sale did not occur in Delaware. Id. at 981-982. Finally, materials disseminated in connection with the tender offer and merger originated outside Delaware. Id. The Court ruled that the fact that the corporate merger vote occurred in Delaware was insufficient contact with the alleged fraud to permit plaintiffs to invoke the Delaware Act. Id. at 982. It was too fragile a basis to establish subject matter jurisdiction over alleged fraud in Pennsylvania, or a contract in New York. Plaintiff's arguments regarding the registration of the merger documents in Delaware and the statutory situs of the stock likewise were found to be tenuous. Id.

*3 The Court viewed the Securities Act as a Blue Sky law governing transactions subject to Delaware jurisdiction under traditional tests. Id. at 981. It did not read the Act as an attempt to introduce Delaware commercial law into the internal affairs of a corporation merely because it was chartered in the State. Id.

Unlike in Singer, the instant case involves a Delaware situs as the place of contract, as plaintiff's residence and principal place of business, as the place of alleged economic injury, and as the place of incorporation for Ammeraal, Inc. and Rhoads. Further, the material constituting the allegedly misappropriated trade secrets originated here. There is no clear situs for the targeted conduct, as neither party has plead or proved the locales of customer contact, except that they were "nationwide". Looking to the traditional tests for jurisdiction, this Court finds nothing to change its original opinion.

Next, defendants point to State ex rel. Walker v. Harrington, Del.Supr., 30 A.2d 688 (1943). That case held unconstitutional an act which authorized qualified military personnel absent from the district to vote at encampments outside of the State, as the Constitution requires polling places for the reception of ballots to be located within State limits. The Court noted, therefore, that the laws of a State have no binding effect beyond its territorial limits, and that one who swears or affirms falsely when challenged for bribery during out-of-state voting cannot be prosecuted here for perjury. Id. at 692. Unlike in the present case, Walker did not involve the question of purportedly extraterritorial conduct with an impact in this State. Rather, it addressed the constitutionality of a law establishing out-of-state polling places for Delaware elections.

Defendants are correct in their assertion that territorial limitation is unaltered by Delaware residency or incorporation alone. But that is not the case here.

The Delaware Supreme Court has not had the opportunity to address the issue of whether the State's two relevant Acts would apply in multi-state misrepresentation or unfair trade practices cases with significant ties to Delaware. In any event, this Court need not choose between the "lex loci delecti" and more modern "most significant relationship rule", as the same result should obtain from either test, as discussed supra. Courts facing a similar issue have resolved the question accordingly. See, Engine Specialties, Inc. v. Bombardier, Ltd., 1st Cir., 605 F.2d 1 (1979); American Rockwool, Inc. v. Owens-Corning Fiberglas, D.E.N.C., 640 F.Supp. 1411 (1986); but see, American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., 2d Cir., 439 F.2d 428 (1971).

Under the lex loci delecti rule, Delaware law should apply. In general, courts have found that the law to apply to an intentional tort is the law of the place where the conduct comprising the tortious act occurs. See, Data General, supra; Johnston Associates, supra; Marra v. Bushee, D.Vt., 317 F.Supp. 972, 974 (1970), aff'd in relevant part, reversed in part, 2d Cir., 447 F.2d 1282 (1971). The purpose of the law against intentional torts is more punitive than the compensatory purpose of laws against negligent torts. Because of these divergent purposes, the law of the place of the injury is more logical for negligent torts, and the law of the place of the conduct is more sensible for intentional torts. See, e.g., Marra v. Bushee, 2d Cir., 447 F.2d 1282 (1971); Autrey, supra.

*4 This Court has found no Delaware cases which state the purpose of either the Unfair Trade Practices

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Act or Uniform Trade Secrets Act. However, as these Acts are Uniform Acts, the interpretation of these Acts by courts of sister states may be useful to this Court. In Kozuch v. Cra-Mar Video Center, Inc., Ind.App., 478 N.E.2d 110 (1985), the Indiana Court of Appeals found that the Uniform Trade Secrets Act was enacted "to serve the public interest by giving protection to trade secrets, valuable assets to any business." Id. at 114. This Court adopts the position of the Indiana Court that the primary purpose of the Uniform Trade Secrets Act is for protection of a business's assets. It follows logically that the purpose is compensatory.

The Unfair Trade Practices Act has been construed in Gross-Haentjens v. Leckenby, Ore.App., 589 P.2d 1209 (1979). In Gross-Haentjens, the Oregon Court of Appeals found that the purpose of the Act is to provide for restitution for economic loss. Id. at 1210. Support for the Act's compensatory purpose can be drawn from Delaware case law as well. In Air Reduction Co. v. Airco Supply Co., Del.Ch., 258 A.2d 302, the Court of Chancery found that the plaintiff did not need to show intent to injure by the defendant in order to recover. If intent does not need to be shown to recover damages, a fortiori the purpose of the Act is to compensate.

Both of these Acts have as a primary purpose compensation for losses. Because the primary purpose is compensation, the rationale for negligent torts choice of law decisions should apply rather than the rationale for intentional torts. Therefore, the place of the injury should control which state law should apply under a lex loci delecti approach. Using a "most significant relationship" test, the same result would obtain, because the purpose for the law is a factor in the analysis.

The defendants next argue that to apply Delaware law to them would violate both the Commerce Clause and the Due Process Clause of the United States Constitution. They cite correctly the principle that a forum state may not apply its law when the factual and legal situations have little or no contact with the State. But that is not the case here. The Court has reviewed the numerous and significant contacts that Delaware shares with this case, supra. The activities giving rise to this lawsuit did not occur wholly outside the State's borders, as the defendants maintain. The application of Delaware laws to these defendants who have acted, in part, in Delaware, does not offend the Commerce Clause of the United States Constitution. The defendants' due process argument rests on the ground that a forum state may not exercise its laws over cases with little or no connection to it. While the Court agrees with this principle, it does not agree that Delaware has such a small connection with this case. The Court has reviewed the connections, and finds that they are sufficient to withstand a due process challenge to the application of Delaware law.

*5 Therefore, the defendants' motion for reargument is hereby DENIED.

IT IS SO ORDERED.

> FN1. The most widely accepted conflicts rule is that a tort is governed by the law of the place where it occurred. 4 Callman, Unfair Competition, Trademarks & Monopolies, "Jurisdiction of the Courts", § 23.20 (1983). The tort is complete where the "last act" necessary to complete the tort took place. "[S]uch torts as false advertisement, disparagement and the like are not committed where the statement is conceived, mailed or published, but where it reaches an audience." (cites omitted) Id. at p. 83. Each deception is a distinct and separate act. The tort does not occur where the preparatory steps are taken. Id.

1988 WL 116423 (Del.Super.)

END OF DOCUMENT