# Exhibit O

Not Reported in F.Supp.2d
RICO Bus.Disp.Guide 10,232
(Cite as: 2002 WL 321797 (E.D.Pa.))
<KeyCite Citations>

Page 194

United States District Court, E.D. Pennsylvania.

Michael McHALE, Marcia McHale, BMM, Inc.,
Plaintiffs,
v.
NuENERGY GROUP, Paul Hydok, Leonard
Chylack, John Tobelman, Defendants.

No. CIV.A. 01-4111.

Feb. 27, 2002.

MEMORANDUM

GILES, C.J.

*1 Plaintiffs Michael McHale, Marcia McHale,
and BMM, Inc., filed a complaint in the Court of
Common Pleas of Chester County seeking damages
for violation of the Racketeer Influenced & Corrupt
Organizational Act (RICO) 18 U.S.C. § 1962(c)
(Count I), and for state law fraud (Count II),
negligent misrepresentation (Count III), breach of
contract (Count IV), breach of the covenant of good
faith and fair dealing (Count V), breach of fiduciary
duty (Count VI), and unjust enrichment (Count
VII). Defendants NuEnergy Group, Paul Hydok,
Leonard Chylack, and John Tobelman filed a Notice
of Removal, based upon federal question jurisdiction
and diversity jurisdiction. They have moved to
dismiss certain of plaintiffs' claims in their entirety
and to dismiss other claims in regard to particular
defendants based on Rules 12(b)(6) and 12(e) of the
Federal Rules of Civil Procedure. For the reasons
that follow, the motion is granted in part and denied
in part.

I. Facts

The facts in the light most favorable to plaintiffs
are as follows:

Defendant NuEnergy is in the business of
marketing and selling natural gas and electric energy
produced by energy suppliers to end users.
(Compl.¶ 7.) NuEnergy is owned and operated by
three persons: (1) Paul Hydok, the President of
NuEnergy; (2) Len Chylack, an investor in
NuEnergy who participates in the management of
the company; and (3) John Tobelman, a

Commodities Manager responsible for maintaining
the reconciliations for NuEnergy sales
representatives. (Compl.¶¶ 8-10.) In December
1998, NuEnergy entered into an Independent Sales
Representative Agreement with Marcia McHale for
plaintiffs to act as NuEnergy's "non-exclusive
independent sales representative" for the sale and
marketing of gas and electricity ("NuEnergy
Agreement"). (Id.¶ 4. Ex. A.) In January of 2001,
plaintiffs established BMM, Inc., a New York
Corporation that allegedly became the assignee of
the NuEnergy Agreement. (Id.¶ 4.) The NuEnergy
Agreement sets forth the amount of commission to
be paid by NuEnergy for the sale of natural gas and
electricity. (Compl.¶¶ 21-22.)

In practice, under the NuEnergy Agreement only
plaintiff Michael McHale was responsible for
executing hundreds of contracts with customers for
electricity on behalf of NuEnergy and energy
suppliers. (Id.¶ 5.) It was NuEnergy's responsibility
to bill and collect commissions paid by energy
suppliers and to distribute the agent's portion of
such commissions. (Id.¶ 15.)

In March 2000, NuEnergy entered into an
agreement to sell electricity for Keyspan and as an
independent sales representative of NuEnergy,
McHale sold electricity that was supplied by
Keyspan to various customers in New York. (Id.¶
23.) NuEnergy provided Keyspan with
reconciliations which detailed the accounts held by
NuEnergy, including Mr. McHale's accounts, and
the commissions owed by Keyspan to NuEnergy on
these accounts. ("Keyspan Reconciliations"). (Id.¶
30.) Plaintiffs have obtained both a computer disc
copy and a hard copy of a Keyspan Reconciliation
which reflects the actual commissions that Keyspan
owed to NuEnergy in connection with Mr.
McHale's accounts as of December 2000. (Id.¶ 31.)

Plaintiffs allege that defendants maintained two
sets of reconciliation statements with respect to the
calculations of NuEnergy commissions. (Compl.¶
17.) One set of reconciliations, which reflected the
actual commissions owed by energy suppliers in
connection with Mr. McHale's accounts, was
prepared by defendants and presented to energy
suppliers. A second set of false reconciliations,
showing lower rates of commissions than those

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



charged to the energy suppliers, was prepared by defendants allegedly for the purpose of defrauding Mr. McHale of the actual commissions earned ("McHale Reconciliations"). (Id.) Mr. McHale received six separate statements that cover the period from May 2000 to April 2001 and he received commission payments from NuEnergy that were based upon these McHale Reconciliations. (Id.¶ 26.)

**\*2** Numerous oral representations were made to Mr. McHale by Messrs. Hydok, Chylack, and Tobelman that the McHale Reconciliations were accurate accountings of the commissions owed under the NuEnergy Agreement in response to Mr. McHale's inquiries. (Compl.¶ 27.) In particular, Mr. Hydok told Mr. McHale, "We're not screwing you; everything is correct." (Id.¶ 28.)

Plaintiffs allege that according to the Keyspan Reconciliation defendants were collecting significantly higher commissions from Keyspan on Mr. McHale's accounts than the amounts defendants disclosed to plaintiffs. (Id.¶ 32.) The Keyspan Reconciliation was created by Mr. Tobelman allegedly at the direction of Messrs. Hydok and Chylack on behalf of NuEnergy. (Id.¶ 33.)

In addition, plaintiff alleges that misrepresentations were made by the defendants with respect to commissions that defendants owed to Mr. McHale with regard to the following accounts: (a) PSE & G in New Jersey (Compl.¶ 42); (b) Cushman & Wakefield in New York (Compl.¶¶ 46-50); and (c) Columbia Presbyterian in New York (Compl.¶¶ 53-56.).

Plaintiffs filed their complaint in the Court of Common Pleas of Chester County on July 23, 2001. Defendants filed their notice of removal on August 13, 2001, based upon federal question jurisdiction and diversity jurisdiction. Defendants filed their motion to dismiss on August 20, 2001.

## II. Discussion

### Legal Standard for 12(b)(6) Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), this court must "accept as true the facts alleged in the complaint and all

reasonable inferences that can be drawn from them." Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir.1990). The court will only dismiss the complaint if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 249-50, 109 S.Ct. 2893, 106 L.Ed.2d 195, (1989).

### Legal Standard for 9(b) of the Federal Rules of Civil Procedure

**\*3** Rule 9(b) of the Federal Rules of Civil Procedure requires that an allegation of fraud be pled with specificity. "In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The third circuit has explained that Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir.1984). Allegations of "date, place, or time" fulfill these functions, but nothing in the rule requires them. A plaintiff is free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud. Id. Further, courts should be "sensitive" to the fact that application of the Rule 9(b) prior to discovery "may permit sophisticated defrauders to successfully conceal the details of their fraud." They should also respect the "general simplicity and flexibility" of the Federal Rules of Civil Procedure. Shapiro v. UJB Fin. Corp., 964 F.2d 272, 284 (3d Cir.1992).

### Count I: The RICO Claim as to all Defendants

When bringing a civil RICO cause of action, 18 U.S.C. § 1961 et seq., a plaintiff must plead and prove the following elements: 1) the conducting of 2) an enterprise affecting interstate commerce 3) through a pattern of 4) racketeering activity. See Sedima v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). The definitions section of the RICO statute states in relevant part:
(1) "Racketeering activity" means ... (B) any act which is indictable under any of the following provisions of title 18, United States Code:....

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Not Reported in F.Supp.2d
(Cite as: 2002 WL 321797, *3 (E.D.Pa.))

Section 1341 (relating to mail fraud), ... Section 1343 (relating to wire fraud) ...; (3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property; (4) "enterprise" includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity; (5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding the period of imprisonment) after the commission of a prior act of racketeering. 18 U.S.C. § 1961

18 U.S.C. § 1962(c) states that it is unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." Not only does a plaintiff have to establish that a defendant meets all of the requirements of § 1962(c), but the plaintiff must properly allege that a defendant committed the elements of the predicate acts that form the basis for the "pattern of racketeering activity." See Spitzer v. Adelhak, No. CIV.A. 98-6476, 1999 WL 1204352, at *2 (E.D.Pa.1999).

Defendants argue that plaintiffs' complaint fails to state a RICO claim in that (1) it fails to allege the required predicate acts with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure (Mem. in Supp. of Mot. to Dismiss at 4); (2) it fails to establish the required continuity of racketeering activity to sustain a claim for RICO (Id. at 9) [FN1]; and (3) NuEnergy cannot be both an "enterprise" and liable "person" under RICO (Id. at 6.).

FN1. Defendants do not dispute that the relatedness prong has been met in the present case.

*4 The federal mail and wire fraud statutes prohibit the use of mails or interstate wire for the purpose of carrying out any scheme or artifice to defraud. 18 U.S.C. §§ 1341 & 1343. Here, it is alleged that defendants used interstate mail and wires in furtherance of their scheme to defraud. Plaintiffs allege that false reconciliations and checks

were sent from NuEnergy in Pennsylvania to plaintiffs' business in New York through the mail. (Com pl.¶¶ 62-65.) Similarly, plaintiffs allege that defendants misrepresented the commissions that were due to plaintiffs through multiple interstate faxes and e-mails. (Compl.¶¶ 68-71.)

The court finds that the mail fraud paragraphs (Compl.¶¶ 61-66) and wire fraud paragraphs (Compl.¶¶ 67-75) state with sufficient detail the date, place, and conduct in which mail and wire communications were made by defendants in furtherance of an alleged scheme to defraud plaintiffs to satisfy the pleading requirement of Rule 9(b). Plaintiffs make numerous specific allegations concerning defendants' fraudulent conduct, and then describe specific examples of how defendants committed such conduct using the mails and wires. See Perlberger v. Caplan & Luber, LPP, 152 F.Supp.2d 650, 654-55 (E.D.Pa.2001).

The fact that plaintiffs have not pled which individual defendants mailed, faxed, or e-mailed particular checks, reconciliations, faxes, and e-mails at issue in this case is not fatal to the mail fraud, wire fraud, and subsequent RICO claim. In order to plead mail or wire fraud as a predicate act, as to which each defendant must have participated two or more times, plaintiffs must allege facts giving rise to a strong inference of scienter on the part of each defendant. Spitzer, 1999 WL 1204352, at *6. Plaintiffs can establish scienter by pleading facts showing conscious or reckless behavior to defraud. Knowledge concerning a company's key businesses or transactions may be attributable to the company, its officers and directors. Id. (citing In re Aetna Inc. Sec. Litigation, 34 F.Supp.2d 935, 953 (E.D.Pa.1999). As discussed above, each of the defendants was instrumental in the everyday running of the company and made assurances that the commissions paid to Mr. McHale were accurate. Therefore, at this point in the proceedings, each defendant can have attributed to him knowledge of the fraud alleged by plaintiff for purposes of the predicate acts of mail and wire fraud.

In H.J., Inc. v. Northwestern Bell Tel. Co.., the Supreme Court analyzed the meaning of the term "pattern of racketeering activity," and found that "to prove a pattern of racketeering activity a plaintiff ... must show that the racketeering predicates ... are related, and that they amount to or pose a threat of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



continued criminal activity." H.J., 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). In H.J., the Supreme Court stated that Congress had a commonsense approach to RICO's pattern element in mind, "intending a more stringent requirement than proof simply of two predicates, but also envisioning a concept of sufficient breadth that it might encompass multiple predicates within a single scheme that were related and that amounted to, or threatened the likelihood of, continued criminal activity." Id. at 237. "What a plaintiff or prosecutor must prove is continuity of racketeering activity, or its threat, simpliciter." Id. at 241.

**\*5** In explaining how a plaintiff can make this continuity showing, the Supreme Court described continuity as "both a closed and open-ended concept" referring either to a "closed period of repeated conduct" or "past conduct that by its nature projects into the future with a threat of repetition." Tabas v. Tabas, 47 F.3d 1280, 1292 (3d Cir.1995) (quoting H.J., 492 U.S. at 241). A party may establish "closed end continuity" by proving a series of related predicate acts extending over a substantial period of time. Id. at 1293. "Open ended continuity" may be demonstrated where it is shown that the predicate acts are a regular way of conducting defendant's ongoing legitimate business, or of conducting or participating in an ongoing and legitimate RICO "enterprise." Id. The ambit of RICO may encompass a "legitimate" businessman who regularly conducts his business through illegitimate means, that is, who repeatedly defrauds those with whom he deals and in the process commits predicate acts, which may include using the postal service as a means of accomplishing his scheme. Tabas, 147 F.3d at 1292. The court does not reach the issue of "open-ended continuity" since it finds that plaintiffs have sufficiently pled "closed-ended continuity."

Plaintiffs have alleged that defendants have participated in a scheme to defraud plaintiffs since 1998 and have continued until the filing of this complaint. (Compl.¶ 60.) The first predicate act stated in the complaint occurred in November 1999 (Compl.¶ 62) and the last predicate act detailed in the complaint occurred on June 8, 2001, a period of one year and eight months. (Compl.¶ 65.) While the third circuit has found that "closed end continuity" cannot be satisfied by pleading predicate acts that occur over a period of less than twelve

months, Tabas, 47 F.3d at 1293, third circuit case law supports the proposition that predicate acts over a nineteen month period of time may establish "closed ended continuity." See Tabas, 47 F.3d at 1294 (quoting United States v. Pelullo, 964 F.2d 193, 209 (3d Cir.1993) (a nineteen month period of racketeering activity is sufficient to satisfy the continuity requirement); Swistock v. Jones, 884 F.2d 755, 759 (3d Cir.1989 (a fourteen month period of conduct may be sufficient to establish a closed period of repeated conduct)). The court finds that plaintiffs have pled predicate acts that occurred over a substantial period of time and, in doing so, have sufficiently pled a pattern of racketeering activity.

NuEnergy is alleged to be the RICO "enterprise" through which the defendant "persons," Messrs. Hydock, Chylack, and Tobelman, acted. (Compl.¶¶ 59-60.) Because § 1962(c) requires a "person" acting through an "enterprise," the third circuit has held that the person subject to liability cannot be the same entity as the enterprise. See Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., 46 F.3d 258, 262 (3d Cir.1995). "[W]hile corporate officers may be held liable for conducting a pattern of racketeering activity through a corporate enterprise, the corporation itself cannot be held liable under § 1962(c) unless it engages in racketeering activity as a 'person' in another distinct enterprise." Oglesby v. Saint Gobain Corp., 1997 WL 570925, at \*4 (E.D.Pa.1997). Plaintiffs have not pled another distinct enterprise. Therefore, the RICO claim is dismissed with prejudice as to NuEnergy. Plaintiffs' RICO claim as to defendants Messrs. Hydok, Chylack, and Tobelman survives.

Count II: Fraud as to all Defendants

**\*6** Defendants argue that the claims of fraud (and negligent misrepresentation) against Mr. Chylack and Mr. Tobelman should be dismissed for failure to provide any particularity regarding their individual involvement in the alleged fraudulent or negligent conduct; specifically, defendants argue that plaintiffs do not allege any specific statements by Mr. Chylack and Mr. Tobelman in furtherance of this alleged fraud. (Mem. in Supp. of Mot. to Dismiss at 11.) The complaint alleges that NuEnergy was owned and operated by three persons: (1) Paul Hydok, the President of NuEnergy; (2) Len Chylack, an investor in NuEnergy who participates in the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Not Reported in F.Supp.2d
(Cite as: 2002 WL 321797, *6 (E.D.Pa.))

management of the company; and (3) John Tobelman, a Commodities Manager responsible for maintaining the reconciliations for NuEnergy sales representatives. (Compl.¶¶ 8-10.) Therefore, it can be inferred that Mr. Chylack and Mr. Tobelman were in a small closely-held corporation where each defendant participated in the management of the daily operations of the corporation and that all of the defendants created, maintained, or directed the maintenance of NuEnegy records, including the direction and preparation of the Keyspan and McHale Reconciliations. (Pls.' Resp. at 16.) Plaintiffs argue that, "[g]iven the size and hierarchy at NuEnergy, the inference that Messrs. Hydok and Chylack were aware of and directed the creation of separate fraudulent reconciliations is more than reasonable." (Pls.' Resp. at 8.)

As discussed supra, the third Circuit has explained that Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. Seville, 742 F.2d at 791. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud. Id. With these standards in mind, the court finds that plaintiffs have stated a common law fraud claim against all of the defendants with sufficient particularity to comply with Rule 9(b) of the Federal Rules of Civil Procedure.

The complaint also alleges that Mr. McHale repeatedly demanded from Messrs. Hydok, Chylack, and Tobelman, proper reconciliations of his commissions and in response to his inquiries, NuEnergy provided Mr. McHale with the McHale Reconciliations. (Compl.¶ 25.) The complaint further alleges that Messrs. Hydok, Chylack, and Tobelman made numerous oral representations to Mr. McHale that the McHale Reconciliations were accurate accountings of the commissions owed to him. (Id.¶ 27.) However, plaintiffs allege that according to the Keyspan Reconciliations, defendants were collecting significantly higher commissions from Keyspan on Mr. McHale's accounts than the amounts defendants disclosed to plaintiffs. (Id.¶ 32.)

*7    Plaintiffs    allege    that    the    Keyspan

Reconciliations were created by Mr. Tobelman at the direction of Messrs. Hydok and Chylack on behalf of NuEnergy. (Compl. at 33.) Plaintiffs base this assertion on the fact that the document profile information contained within the computer disc copy of a Keyspan Reconciliation, states that John Tobelman was the author of it. (Id.) As discussed supra, given the size and hierarchy of NuEnergy, it is reasonable to infer that defendants Messrs. Chylack and Tobelman knew that the McHale Reconciliations were false because of their knowledge of the correct Keyspan Reconciliations. Plaintiffs have stated a claim for fraud as to all defendants.

Count III: Negligent Misrepresentation as to all Defendants

Plaintiffs correctly note that the pleading requirements of Rule 9(b) do not apply to claims of negligent misrepresentation. See Small v. Provident, No. CIV.A.98-2034, 1998 WL 848112, at *3 (E.D.Pa. Dec.4, 1998) ("Because a claim of negligent misrepresentation is distinct from a claim of fraud under Pennsylvania law, Rule 9(b) does not apply to the former according to its terms."). Plaintiffs have complied with the liberal pleading requirement under Federal Rule of Civil Procedure 8(a) that a plaintiff's complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."

The complaint alleges that throughout the course of plaintiffs' business relationship with defendants, Mr. McHale made good faith inquiries as to the true and accurate commissions due. (Compl.¶ 85.) Defendants negligently, carelessly, or recklessly represented to Mr. McHale, through various means of communications including the McHale Reconciliations, that plaintiffs were entitled to commissions or margins that were significantly lower than those reflected in the Keyspan Reconciliation. (Id.¶ 86.) Further, since December 1998, plaintiffs justifiably have relied on the representations and omissions by defendants. (Id.¶ 87.) Plaintiffs have stated a claim for negligent misrepresentation as to all defendants.

Count IV: Breach of Contract as to Defendant NuEnergy

*8 Plaintiffs allege NuEnergy has materially and



substantially breached the express terms of the NuEnergy Agreement by failing to provide the plaintiffs with commission payments as set forth in Section 6.1, Section 6.5, and in Exhibit C of the NuEnergy Agreement and by not paying commissions for the Cushman & Wakefield and Columbia Presbyterian accounts. (Compl.¶¶ 91-93.) Defendants argue that there is no valid agreement between plaintiffs Michael McHale and BMM, Inc., and defendants since the Independent Sales Representative Agreement is not signed and the Agreement was not properly assigned to BMM, Inc., plaintiffs' company. (Mem. in Supp. of Mot. to Dismiss at 13-14.) Paragraph 13.2 of the Agreement states that "[t]his entire Agreement will inure to and bind the permitted successors and assigns of the Parties; provided (a) Agent may not assign this Agreement without the prior written consent of the Company ..."

Defendants concede that for purposes of a 12(b)(6) motion the court must assume that the NuEnergy Agreement existed between Marcia McHale and NuEnergy, even though the copy attached to the complaint is not signed. Plaintiffs allege a fully executed copy exists in the defendants' files. Defendants dispute that the Agreement was properly assigned to BMM, Inc., and allege, therefore, that the only party who may claim under the written contract is Marcia McHale. (Mem.  in Supp. of Mot. to Dismiss at 13-14.)

Plaintiffs respond that under Pennsylvania law, even when an assignment requires consent, "a party can waive its rights or otherwise ratify the assignment by words or conduct." Wyatt v. Mount Airy Cemetery, 209 Pa.Super.  250, 224 A.2d 787, 791 (Pa.Super.Ct.1966); National Data Payment Systems Inc v. Meridian Bank, No. Civ. A. 97-6724, 1998 WL 655544, at *4 (E.D.Pa. Sept.22, 1998). Since January 2001, NuEnergy has made payments under the NuEnergy Agreement to BMM, Inc. for the work performed by Michael McHale. (Compl.¶  20.) Whether defendants have either waived the assignment-by-consent provisions in the NuEnergy Agreement or implied ratification of an assignment of the NuEnergy Agreement to BMM, Inc. is an issue of fact for the jury. At this stage of the proceedings the court must assume, as pled, that there was a binding contract between BMM, Inc. and defendant NuEnergy. Accordingly, plaintiffs have stated a claim for breach of contract as to

defendant NuEnergy.

Count V: Breach of the Covenant of Good Faith and Fair Dealing as to Defendant NuEnergy

Defendants argue that plaintiffs' claims for (1) breach of the covenant of good faith and fair dealing and (2) breach of fiduciary duties are precluded under the contractual language of the NuEnergy Agreement. (Mem. in Supp. of Mot. to Dismiss at 14.) Article 9.2 of the Agreement states as follows:

... nothing in this Agreement is intended or will be construed to constitute or imply a joint venture, partnership, association, or fiduciary duty, obligation or liability between the Company and the Agent. The Company is interested only in the results obtained under this Agreement. The manner and means of performing the work are subject to Agent's sole control. Agent cannot obligate the Company or commodity, energy products, or service supplier to any contract or service to any third party ...

Plaintiffs' claim for breach of the covenant of good faith and fair dealing must be dismissed. This court finds that Pennsylvania law would not recognize a claim for breach of covenant of good faith and fair dealing as an independent cause of action separate from the breach of contract claim since the actions forming the basis of the breach of contract claim are essentially the same as the actions forming the basis of the bad faith claim. See King of Prussia Equipment Corp., v. Power Curbers, Inc., 158 F.Supp.2d 463, 466-67 (E.D.Pa.2001) (citing Northview, Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78 (3rd Cir.2000)). Plaintiffs cite Somers v. Somers, 418 Pa.Super.  131, 613 A.2d 1211, 1213 (Pa.Super.Ct.1992) in support of the claim for breach of implied covenant of good faith and fair dealing. However, the majority in Somers only stated that the general duty of good faith and fair dealing in the performance of a contract has been adopted in this Commonwealth, and that a party may bring a claim for breach of contract. A breach of such covenant is a breach of contract action, not an independent action for breach of a duty of good faith and fair dealing. Drysdale v. Woerth, No. CIV.A. 98-3090, 1998 WL 966020, at *3 (E.D.Pa. Nov.18, 1998) (quoting Equal Employment Opportunity Commission v. Pathmark Inc., No. Civ.A.97-3994, 1998 WL 57520, at *6 (E.D.Pa. Feb.12, 1998)). Therefore, the claim for breach of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Not Reported in F.Supp.2d
(Cite as: 2002 WL 321797, *8 (E.D.Pa.))

covenant of good faith and fair dealing is dismissed.

### Count VI: Breach of Fiduciary Duties as to all Defendants

**\*9** Plaintiffs argue that by virtue of the fact that defendants received commissions from energy suppliers for the benefit of plaintiffs and that such funds were to be distributed to plaintiffs, defendants held a specific and particular relationship of trust and confidence with plaintiffs. As a result of the relationship between defendants and plaintiffs, defendants owed plaintiffs certain fiduciary duties which included the duty to monitor and remit the proper distribution of commissions received by energy suppliers for the benefit of plaintiffs. (Compl.¶¶ 99-100.) Defendants argue that the contractual language discussed above, "... nothing in this Agreement is intended or will be construed to constitute or imply a joint venture, partnership, association, or fiduciary duty, obligation or liability between the Company and the Agent," precludes a breach of fiduciary duty claim. (Mem. in Supp. of Mot. to Dismiss at 14-15.)

Under Pennsylvania law, "[t]o demonstrate the existence of a fiduciary duty, plaintiff must show a relationship in which trust and confidence were reposed on one side, and domination and influence exercised by the other." Lazin v. Pavilion Partners, No. C.I.V.A.95-601, 1995 WL 614018, at *5 (E.D.Pa. Oct.11, 1995); see also Com., Dep't of Transp. v. E-Z Parks, 153 Pa.Cmwlth. 258, 620 A.2d 712, 717 (Pa.Commw.Ct.1993) ("A confidential relationship exists when 'one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side, or weakness, dependence or justifiable trust, on the other.") However, placing confidence in another party in and of itself is not sufficient to create a fiduciary relationship. "A business association may be the basis of a confidential relationship 'only if one party surrenders substantial control over some portion of his affairs to the other.'" Lazin, 1995 WL 614018, at *5 (citing E-Z Parks, 620 A.2d at 717). The court finds that for purposes of the 12(b)(6) motion, the court assumes that Mr. McHale was in a fiduciary relationship with NuEnergy and the contractual language does not negate that relationship. Plaintiffs have stated a claim for breach of fiduciary duty as to

all defendants.

### Count VII: Unjust Enrichment as to all Defendants.

**\*10** Plaintiffs allege that a portion of the commissions received by NuEnergy from Keyspan and other energy suppliers was received as a direct result of the services rendered by plaintiffs for NuEnergy. They argue that because NuEnergy benefitted by receiving commissions issued from Keyspan and other energy suppliers at the expense of plaintiffs, defendants have become unjustly enriched. (Compl.¶¶ 106-107.) Defendants argue that plaintiffs' unjust enrichment complaint does not pertain to Messrs. Chylack and John Tobelman. The court finds, given that only three people own and operate the company, that it is reasonable to infer that all three would benefit from diverting plaintiffs' commissions to NuEnergy. Thus, plaintiffs have stated a claim for unjust enrichment against all defendants.

### IV. Conclusion

For the above reasons, defendants' motion to dismiss is granted in part and denied in part. The court also denies defendants' request, pursuant to Rules 9(b) and 12(e) of the Federal Rules of Civil Procedure, for a RICO case statement.

An appropriate order follows.

### ORDER

AND NOW, this ___ day of February 2002, upon consideration of defendants' motion to dismiss, Docket # 2, and the responses thereto, it hereby is ORDERED as follows:
(1) The motion to dismiss the RICO claim (Count I) of plaintiffs' complaint is GRANTED as to defendant NuEnergy and DENIED as to defendants Paul Hydok, Len Chylack, and John Tobelman;
(2) The motion of defendants Leonard Chylack and John Tobelman, to dismiss the Fraud claim (Count II) and Negligent Misrepresentation claim (Count III) is DENIED;
(3) The motion of defendant NuEnergy to dismiss the Breach of Contract claim (Count IV) as to plaintiffs Michael McHale and BMM, Inc., is DENIED;

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



(4) The motion of defendants to dismiss the Breach of Covenant of Good Faith claim as to defendant NuEnergy is GRANTED;

(5) The motion of defendants to dismiss the Breach of Fiduciary Duty claim (Count VI) is DENIED;

(6) The motion of defendants Leonard A. Chylack and John Tobelman to dismiss the Unjust Enrichment claim (Count VII) is DENIED.

It is further ORDERED that the claims remaining before this court are as follows:

(1) The RICO claim (Count I) as to defendants Paul Hydok, Len Chylack, and John Tobelman;

(2) The Fraud claim (Count II) as to all defendants;

(3) The Negligent Misrepresentation claim (Count III) as to all defendants;

(4) The Breach of Contract claim (Count IV) as to defendant NuEnergy;

(5) The Breach of Fiduciary Duty claim (Count VI) as to all defendants; and

(6) The Unjust Enrichment claim (Count VII) as to all defendants.

2002 WL 321797 (E.D.Pa.), RICO Bus.Disp.Guide 10,232

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Not Reported in F.Supp.
(Cite as: 1992 WL 165817 (E.D.Pa.))
<KeyCite History>

Page 862

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

Wilbur W. PIERCE
v.
ROSSETTA CORPORATION, et al.
CITICORP INDUSTRIAL CREDIT, INC. et al.
v.
The FINANCIAL SYSTEMS GROUP, INC. et al.

Civ. A. No. 88-5873.

June 12, 1992.

Gilbert B. Abramson, Thomas S. McNamara, Bruce L. Thall, Abramson, Cogan, Kogan, Freeman & Thall, P.C., Philadelphia, Pa., for plaintiff.

Michael F.R. Harris, Fred T. Magaziner, Emily McKillip, Ellen J. Sokol, Dechert, Price & Rhoads, Philadelphia, Pa., for defendants.

Michael F.R. Harris, Fred T. Magaziner, Emily McKillip, Gerald D. Wixted, Ellen J. Sokol, Dechert, Price & Rhoads, Philadelphia, Pa., for third-party plaintiffs.

Thomas E. Groshens, Steven L. Friedman, Camille J. Wolf, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for third-party defendants.

## MEMORANDUM AND ORDER

DUBOIS, District Judge.

**\*1** Plaintiff, Wilbur W. Pierce ("Pierce" or "Plaintiff"), brought this stockholder derivative action on behalf of the Rossetta Corporation ("Rossetta") and Automated Credit Acquisitions, Inc. ("Automated") [FN1] against defendants, Citicorp Industrial Credit, Inc. ("CIC"), John Dewey, William Urban, and Stephen Rosenthal. [FN2] The complaint before the Court at this time, the Second Amended Complaint, contains four counts: two based on the Federal Racketeer Influenced Corrupt Organizations ("RICO") Act, and state claims of civil conspiracy and fraud.

Ancillary to this central action, CIC, Dewey,

Urban, and Rosenthal filed a third-party action against the Financial Systems Group ("FSG") and several of its officers [FN3] for indemnification, and counterclaimed against Pierce for fraud. [FN4]

Presently before the Court is plaintiff's Motion for Leave to File a Third Amended Complaint.

### I. Background

In late 1984, CIC was searching for a way to better apply computer technology to its processing of leases and loans with a low dollar value. CIC considered a proposal by two related corporations, Rossetta and Automated. Plaintiff Pierce, a computer software inventor, and third-party defendant Eric Blum, a long-time associate of Pierce's, were corporate officers of both Rossetta and Automated. The Rossetta/Automated group, including plaintiff Pierce and third-party defendant Blum, demonstrated a prototype system called CLASS to a large group of CIC managers and technical staff on October 4, 1984. This presentation consisted of a series of "demonstration screens" displayed on a small computer, illustrating the CLASS system's potential applications.

In late November of 1984, defendant Rosenthal, an officer of CIC, contacted Blum and advised him that CIC would not deal with Rossetta/Automated so long as Pierce was involved. [FN5] Pierce then resigned as an officer and director of both Rossetta and Automated, while retaining his significant stock holdings in both corporations.

Despite Pierce's actions, CIC rejected the proposal made by Rossetta/Automated in December of 1984, and instead contracted with FSG, which had submitted a proposal on January 11, 1985. FSG, incorporated in January of 1985, was formed primarily by former associates of Pierce's, including Blum. [FN6] Plaintiff alleges that the FSG proposal was substantially similar to the CLASS proposal previously submitted by Rossetta/Automated. On February 9, 1985, FSG and CIC signed a Memorandum of Understanding in which FSG agreed to provide CIC with a computer system, and a contract was entered into on May 17, 1985. Lacking potential clients, Pierce and Blum agreed to dissolve Rossetta and Automated on January 28, 1985.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.
(Cite as: 1992 WL 165817, *1 (E.D.Pa.))

Pierce first sued CIC on February 9, 1987 in district court, as Civil Action No. 87-0714 (the complaint in that action is hereinafter referred to as "the 1987 Complaint"). On July 2, 1987, Judge Cahn dismissed without prejudice the claims that Pierce brought on behalf of Rossetta and Automated and dismissed without prejudice Pierce's individual claims with leave to amend.

**\*2** On June 30, 1988, Pierce filed suit against CIC in the Montgomery County Court of Common Pleas (the complaint in that action is hereinafter referred to as "the 1988 Complaint"). CIC removed that case to this Court on July 29, 1988, as Civil Action No. 88-5873. Pierce filed an Amended Complaint in the 1988 action on October 12, 1988.

On April 5, 1991, the Court granted summary judgment on the counts of plaintiff's Amended Complaint alleging RICO claims (Count I and II) and on the count alleging interference with contractual relations (Count V). The Court denied summary judgment as to the counts alleging civil conspiracy (Count III) and fraud (Count IV).

After Pierce had apparently done all the amending he needed to do and after the Court had sorted out which of the claims in Pierce's Amended Complaint were triable and which were not, the case was, it seemed, ready for trial. Accordingly, at the request of all the parties, the case was specially listed for trial on December 9, 1991, four years and ten months after Pierce began his first lawsuit against CIC.

On the afternoon of December 6, 1991, the last business day before the start of trial, Pierce filed a Motion for Leave to File a Second Amended Complaint. The Second Amended Complaint changed the fraud claim from what Pierce had alleged in his 1987 Complaint, from what he had alleged in his original Complaint in the 1988 case, and from what he had alleged in the Amended Complaint in the 1988 case.

Pierce had not finished complicating matters on the eve of trial, however. On December 9, 1991, during the oral argument on plaintiff's Motion for Leave to File a Second Amended Complaint, Pierce's attorney articulated a fraud claim that was not even the same as the claim set forth in the proposed Second Amended Complaint he was

seeking leave to file. As the Court stated:

What you [Mr. Abramson] said in court today is still another version or maybe it's version number three, if I count the original complaint, the amended complaint and the second amended complaint. Version three with spin, because the Court doesn't read into the second amended complaint what you say is now at the core of your case and that is, the deal is dead was a fraudulent misstatement.

(Transcript (hereinafter referred to as "Tr."), December 9, 1991, at 87.)

After lengthy argument on December 9th, Pierce's attorney withdrew that portion of his Motion for Leave to File a Second Amended Complaint which sought leave to amend the fraud claim. The Court then granted plaintiff's motion with respect to some minor changes in the factual allegations of his Amended Complaint. A Second Amended Complaint reflecting these changes was filed December 16, 1991.

On December 9, 1991, due to the numerous problems raised by the parties at the argument, the Court reluctantly issued a Third Amended Scheduling Order which continued the trial to January 6, 1992, the Court's schedule permitting, or otherwise to March 9, 1992. The scheduling order also granted leave to the defendants to file a short memorandum of law on the question whether the Pennsylvania "saving statute", 42 Pa.Cons.Stat.Ann. § 5535, is applicable to this case and detailed, inter alia, how the parties were to complete discovery and finish preparing this case for trial.

**\*3** On December 11, 1991, plaintiff filed an Amended Complaint in the 1987 case, four years and five months after Judge Cahn granted him leave to do so. Then, on December 13th, Pierce filed a Motion for Leave to File a Third Amended Complaint in the 1988 case which was nearly identical to the Amended Complaint he had just filed in the 1987 case.

The proposed Third Amended Complaint would make the following changes to the Second Amended Complaint: (1) corrections of words and phrases in ¶¶ 17, 18, and 44 of the Second Amended Complaint allegedly made in order to more accurately reflect the facts now known to the

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Not Reported in F.Supp.
(Cite as: 1992 WL 165817, *3 (E.D.Pa.))

plaintiff; (2) the addition of a new ¶ 45 setting forth facts which allegedly establish the nature and concealment of CIC's wrongdoing, the complicity of CIC in the breaches of fiduciary duty owed to plaintiff, and plaintiff's discovery of these facts; (3) the deletion of the fraud theory of recovery contained in the Second Amended Complaint (Second Amended Complaint, Count IV at ¶¶ 62-66); (4) the addition of ¶ 67 and ¶ 68 which describe and clarify the damages suffered by Pierce, Rossetta, and Automated; and (5) the addition of two counts, Counts IV and V, containing new theories of recovery allegedly based on the facts, transactions and occurrences set forth in the prior pleadings.    Count IV is entitled "Knowing Inducement or Participation in Breach of Fiduciary Duty" and sets forth a claim of knowing inducement or participation by the defendants in the breach of fiduciary duties allegedly owed by the third-party defendants to Rossetta, Automated and Pierce. Count V, which has no title, sets forth what the plaintiff refers to as a claim for aiding and abetting the breach of such fiduciary duties.    In both counts plaintiff alleges that third-party defendants were caused to breach their fiduciary duties in two ways: (1) by usurping a corporate opportunity and (2) by misappropriating trade secrets.

On December 19, 1991, following a telephone conference with the parties, the Court issued a Fourth Amended Scheduling Order continuing the trial to April 20, 1992, and detailing again, inter alia, how the parties were to complete discovery and finish preparing this case for trial.

On February 21, 1992, the 1987 case was transferred to the docket of this Court.    On March 19, 1992, the Court granted the third-party defendants request for a two day postponement of the trial to April 22, 1992.

On April 7, 1992, the Court held a hearing/status conference in the 1987 and 1988 cases on numerous motions that had been filed since the argument on December 9, 1991.    At the outset, lead counsel for the third-party defendants reluctantly moved for a 90 day continuance on the grounds that his co-counsel had recently been informed that her husband had a very serious ailment which made it impossible for her to meaningfully participate in the trial set to start April 22, 1992. (Tr., April 7, 1992, at 4.)    In addition lead counsel for third-party defendants

informed the Court that replacement counsel was not an option because of his clients' financial constraints.    (Tr., April 7, 1992, at 7.)    There being no objection, the Court reluctantly continued the trial from April 22, to the only time the Court's calendar permitted, September 14, 1992.    After the granting of this continuance, most of the remainder of the hearing was devoted to argument on the Motion for Leave to File a Third Amended Complaint.

*4 Plaintiff's Motion for Leave to File a Third Amended Complaint raises the following issues which this Court will address:    (1) whether the motion should be denied because plaintiff's delay in filing it was undue, motivated by bad faith, or prejudicial to the defendants or third-party defendants;    (2) whether the part of plaintiff's motion which requests leave to:    (a) correct the words and phrases in ¶ 17, ¶ 18, and ¶ 44 of the Second Amended Complaint, (b) delete the fraud count contained in the Second Amended Complaint, (c) add a new ¶ 45 dealing with the nature and concealment of CIC's wrongdoing and the complicity of CIC in the breaches of fiduciary duties owed to plaintiff, and (d) add ¶ 67 and ¶ 68 which describe and clarify damages sustained by Pierce, Rossetta, and Automated should be granted;    (3) whether the part of plaintiff's motion which requests leave to assert the two new claims set forth in Counts IV and V of the proposed Third Amended Complaint should be denied as futile because either (a) the claims are not recognized under Pennsylvania law or (b) the claims are barred by the statute of limitations as a matter of law;    and (4) whether the Court should reconsider the ruling it made on April 5, 1991, granting summary judgment on the interference with contractual relations claim set forth in plaintiff's Amended Complaint in the 1988 action. [FN7]

The Court concludes that:    (1) plaintiff's delay in filing the Motion for Leave to Amend was neither undue, motivated by bad faith, nor prejudicial to the defendants or third-party defendants; (2) the part of plaintiff's motion which requests leave to:    (a) correct the words and phrases in ¶ 17, ¶ 18, and ¶ 44 of the Second Amended Complaint, (b) delete the fraud count contained in the Second Amended Complaint, (c) add a new ¶ 45 dealing with the nature and concealment of CIC's wrongdoing and the complicity of CIC in the breaches of fiduciary

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Not Reported in F.Supp.
(Cite as: 1992 WL 165817, *4 (E.D.Pa.))

Page 865

duties owed to plaintiff, and (d) add ¶ 67 and ¶ 68 which describe and clarify damages sustained by Pierce, Rossetta, and Automated will be granted; (3) the part of plaintiff's motion which requests leave to assert the claim set forth in Count V of the proposed Third Amended Complaint is not futile and therefore will be granted but the part of plaintiff's motion which requests leave to assert the claim set forth in Count IV of the proposed Third Amended Complaint will be denied as futile because the Pennsylvania Supreme Court has not recognized, and this Court predicts would not recognize, such a claim; and (4) its previous ruling granting summary judgment with respect to plaintiff's interference with contractual relations claim was incorrect.

Accordingly, plaintiff's motion for leave to amend the complaint will be granted in part and denied in part. Plaintiff will be granted leave to file a Third Amended Complaint including all of his proposed amendment's with the exception of the claim for the knowing inducement or participation in the breach of a fiduciary duty which is asserted in Count IV. In addition, plaintiff will be granted leave to include in his Third Amended Complaint the claim for intentional interference with contractual relations which was set forth in his Amended Complaint in the 1988 action. Because the Court granted summary judgment on RICO claims identical to those contained in the Third Amended Complaint by Order dated April 5, 1991, plaintiff will not be granted leave to include the RICO claims in his Third Amended Complaint.

II. Plaintiff's Motion for Leave to File a Third Amended Complaint

A. The Requirements of Federal Rule of Civil Procedure 15(a)

*5 The plaintiff seeks leave of this Court to amend his complaint pursuant to Fed.R.Civ.P. 15(a). This rule states, inter alia, that a pleading may be amended once as a matter of right and thereafter "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a) (emphasis added).

The Third Circuit summarized the law governing Rule 15(a) amendments as follows:
Fed.R.Civ.P. 15 embodies the liberal pleading

philosophy of the federal rules ... This liberal amendment philosophy limits the district court's discretion to deny leave to amend. The district court may deny leave to amend only if a plaintiff's delay is undue, motivated by bad faith, or prejudicial to the opposing party.
Adams v. Gould, Inc., 739 F.2d 858, 864 (3rd Cir.1984) (citations omitted) (emphasis added), cert. denied, 469 U.S. 1122 (1985). The Third Circuit has also held that a district court may deny leave to amend when allowing such an amendment would be futile. Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292 (3rd Cir.1988) (citing Froman v. Davis, 371 U.S. 178, 182 (1962)).

The Third Circuit has explained the concepts of undue delay, undue prejudice, and bad faith as follows:
The passage of time without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue', placing an unwarranted burden on the court, or will become 'prejudicial', placing an unfair burden on the opposing party ... The question of undue delay, as well as the question of bad faith, requires that we focus on the plaintiffs motives for not amending their complaint to assert this claim earlier; the issue of prejudice requires we focus on the effect on the defendants.
Adams v. Gould, Inc., 739 F.2d 858, 868 (3rd Cir.1984) (citations omitted), cert. denied, 469 U.S. 1122 (1985).

The Third Circuit has explained the concept of futile amendments as follows:
Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss.
Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292 (3rd Cir.1988).

In determining the futility of a proposed amendment to a complaint the Court applies the same standard governing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 292 (3d.Cir.1988); Ward v. Cheltenham Township, No. 89-6833, 1990 WL 122952, at * 1-2, 1990 U.S.Dist. LEXIS 10983, slip op. at *2-*3 (E.D.Pa. August 21,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Not Reported in F.Supp.
(Cite as: 1992 WL 165817, *5 (E.D.Pa.))

Page 866

1990). Thus, amendment is futile where "it appears beyond doubt that the plaintiff can pose no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In addition, a court may properly deny a motion to amend a complaint as "futile" when the claim is barred by a statute of limitations. Jablonski, 863 F.2d at 292.

**B. Plaintiff's Delay in Filing the Motion For Leave to Amend Was Neither Undue, Motivated by Bad Faith, Nor Prejudicial to the Defendants or Third-Party Defendants**

**\*6** Although this Court is not pleased with the tortured way this case has been conducted by the plaintiff, it concludes that plaintiff's delay in filing the Motion for Leave to Amend, without more, is sufficient to establish either bad faith or undue delay. Cf. Adams, 739 F.2d at 868.

In addition, in light of the grant of a continuance to September 14, 1992, this Court finds that there would be no prejudice to the defendants or the third-party defendants by granting plaintiff leave to amend the complaint at this time. The parties have over three months in which to complete any additional discovery if in fact it is necessary.

Having concluded that none of plaintiff's amendments will be denied on the grounds of undue delay, bad faith, or prejudice, the Court turns to the issue of whether any of plaintiff's amendments are futile. Because there is no issue of futility with respect to any of the plaintiff's proposed amendments except for the addition of the two new claims, the Court will allow those amendments which seek to: (1) correct the words and phrases in ¶ 17, ¶ 18, and ¶ 44 of the Second Amended Complaint, (2) delete the fraud count contained in the Second Amended Complaint, (3) add a new ¶ 45 dealing with the nature and concealment of CIC's wrongdoing and the complicity of CIC in the breaches of fiduciary duties owed to plaintiff, and (4) add ¶ 67 and ¶ 68 which describe and clarify damages sustained by Pierce, Rossetta, and Automated.

The Court must now address the issue of whether leave to add either of the two new claims, which are contained in Count IV and Count V of the proposed Third Amended Complaint, should be granted.

**C. The Part of Plaintiff's Motion Which Requests Leave to Assert the Claim Set Forth in Count V of the Proposed Third Amended Complaint Is Not Futile and Therefore Will Be Granted But the Part of Plaintiff's Motion Which Requests Leave to Assert the Claim Set Forth in Count IV of the Proposed Third Amended Complaint Will Be Denied as Futile Because the Pennsylvania Supreme Court Has Not Recognized, and this Court Predicts Would Not Recognize, Such a Claim**

1. The Court Predicts That the Pennsylvania Supreme Court Would Recognize a Claim Such As That Set Forth in Count V of the Proposed Third Amended Complaint But Would Not Recognize a Claim Such As That Set Forth in Count IV of the Proposed Third Amended Complaint

Count IV of the proposed Third Amended Complaint sets forth a claim for the knowing inducement or participation in the breach of a fiduciary duty. This claim is based on the Restatement (Second) of Torts § 874, comment c, [FN8] standing alone and, as alleged by the plaintiff, would not require a showing of substantial assistance for liability to attach. In asserting such a claim, plaintiff primarily relies on the law of New York. See, e.g., S & K Sales Co. v. Nike, Inc., 816 F.2d 843, 847-48 (2d Cir.1987) ("the 'well settled' elements of a New York claim for inducing or participating in a breach of fiduciary duty: [t]he claimant must prove (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that the plaintiff suffered damages as a result of the breach.") (citations and footnotes omitted).

**\*7** Count V of the proposed Third Amended Complaint sets forth a claim for aiding and abetting the breach of a fiduciary duty. In this count plaintiff alleges that defendants knowingly gave substantial assistance and/or encouragement to third-party defendants in the breach of their fiduciary duties. In contrast to the claim set forth in Count IV which is based on the Restatement (Second) of Torts § 874, comment c, the claim set forth in Count V is based on that section of the Restatement and § 876(b) [FN9] and would require a showing of substantial assistance for liability to attach.

The Pennsylvania Supreme Court has not spoken on the issue of whether claims for knowing

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.
(Cite as: 1992 WL 165817, *7 (E.D.Pa.))

inducement or participation in the breach of a fiduciary duty or aiding and abetting the breach of a fiduciary duty would be recognized in Pennsylvania in a case such as this one. When the Pennsylvania Supreme Court has not spoken on an issue, a federal court sitting in a diversity action is required to predict how the Supreme Court would rule. Rolick v. Collins Pine Co., 925 F.2d 661, 664 (3rd Cir.1991). In resolving that question "proper regard must also be given to the decisions of its [Pennsylvania's] intermediate appellate court." Rolick, 925 F.2d at 664.

An examination of the decisions of the Pennsylvania intermediate appellate court, the Superior Court, reveals that it has not explicitly recognized either of the new claims plaintiff is asserting. However, support for the recognition of a claim based on § 874, comment c, and § 876(b) of the Restatement (Second) of Torts such as the claim set forth in Count V of plaintiff's proposed Third Amended Complaint can be found in at least three Superior Court decisions. No such support can be found for the recognition of a separate claim based solely upon Restatement § 874, comment c, such as the claim set forth in Count IV of the proposed Third Amended Complaint.

First, there is a decision in a personal injury case in which the Pennsylvania Superior Court stated in dicta that: "we are inclined to feel that appellant's argument from the Restatement of Torts 2d has merit, and that on facts similar to those of the instant matter, § 876 might well prove applicable." Kline v. Ball, 306 Pa.Super. 284, 452 A.2d 727, 728 (1982).

Second, there is a decision in a products liability case in which the Pennsylvania Superior Court stated in the context of a discussion of Kline that:

A cause of action for concerted activity under Section 876 of the Restatement (Second) of Torts has been recognized only recently by the courts in Pennsylvania.

Burnside v. Abbott Laboratories, 351 Pa.Super. 264, 505 A.2d 973, 982 (1985); [FN10] see also Friedman v. F.E. Myers Co., 706 F.Supp. 376, 382-84 (E.D.Pa.1989) (a products liability action in which the Court, citing Burnside, considered a claim under § 876(b) but concluded that under the facts presented there was no duty which the defendant could have assisted in breaching).

*8 Third, there is decision in a case involving the duty of confidentiality between physician and patient in which Judge Cirillo stated in a concurring and dissenting opinion that a claim exists for "inducing" a breach of confidentiality between a physician and a patient. Moses v. McWilliams, 379 Pa.Super. 150, 549 A.2d 950, 971 (1988). In reaching this conclusion Judge Cirillo cited § 874, comment c, and § 876(b) of the Restatement (Second) of Torts and concluded that subsection b of § 876, which requires a showing of substantial assistance or encouragement, was controlling. Moses, 549 A.2d at 971. The majority in Moses never addressed the issue directly because it concluded that "[b]ecause we find that appellant has not stated a cause of action for breach of confidentiality under the facts of the instant case, her claims for inducement of that breach must necessarily fail." Moses, 549 A.2d at 960.

An examination of the decisions of the federal courts applying Pennsylvania law reveals a Third Circuit opinion in which the Circuit predicted that the Pennsylvania Supreme Court would recognize civil aider and abettor liability for those who aid minors in the consumption of alcohol. [FN11] Fassett v. Delta Kappa Epsilon, 807 F.2d 1150, 1162 (3rd Cir.1986), cert. denied, Turgiss v. Fassett, 481 U.S. 1070 (1987). Having concluded that civil aiding and abetting liability would be recognized, the Third Circuit stated that in determining the nature and amount of aid or assistance that is required of an accomplice before civil liability is imposed: "the Pennsylvania courts, which in general follow the Restatement of the Law, would once again look to the restatement for instruction." Fassett, 807 F.2d at 1162. The Third Circuit then looked to section 876 and concluded that substantial assistance, the requirement of § 876(b), must be found in order for civil as opposed to criminal aiding and abetting liability to attach and that "the Pennsylvania Supreme Court would look to [the factors set forth in comment d to § 876(b) ] to determine substantiality of assistance where the civil liability of an accomplice is at issue." Fassett, 807 F.2d at 1164.

In Counts IV and V of the proposed Third Amended Complaint the plaintiff alleges that defendants caused third-party defendants to breach their fiduciary duties in two ways: (1) by usurping a corporate opportunity and (2) by misappropriating

Not Reported in F.Supp.
(Cite as: 1992 WL 165817, *8 (E.D.Pa.))

Page 868

trade secrets. Causes of action for the usurpation of a corporate opportunity and the misappropriation of trade secrets are well established in Pennsylvania. See, e.g., In re Gailey, Inc., 119 B.R. 504, 512 (Bankr.W.D.Pa.1990) (setting forth a summary of Pennsylvania law on the tort of usurpation of a corporate opportunity); Rohm & Haas Co. v. Adco Chemical Co., 689 F.2d 424, 429-30 (3rd Cir.1982) (setting forth the elements of a misappropriation of trade secret claim in Pennsylvania).

Given the forgoing authority and the fact that Restatement (Second) of Torts § 874, comment c, cites to § 876, [FN12] this Court predicts that the Pennsylvania Supreme Court would recognize a claim for aiding and abetting the breach of a fiduciary duty in a case such as this one but would not recognize a separate claim for knowing inducement or participation in the breach of a fiduciary duty. This prediction is based on the Court's determination that the Pennsylvania Supreme Court would find Restatement (Second) of Torts § 874, comment c, and § 876(b), not New York case law or § 874, comment c, standing alone, controlling and therefore would require a showing of substantial assistance in order to establish liability for aiding and abetting the breach of a fiduciary duty. [FN13] The Court also predicts that the elements of a claim for aiding and abetting the breach of a fiduciary duty under Pennsylvania law would be: (1) a breach of a fiduciary duty owed to another, (2) knowledge of the breach by the aider or abettor, and (3) substantial assistance or encouragement by the aider or abettor in effecting that breach. Cf. Restatement (Second) of Torts § 876 (1979); Kranzdorf v. Green, 582 F.Supp. 335, 337 (E.D.Pa.1983).

*9 By reason of the foregoing, the Court concludes Count IV of plaintiff's proposed Third Amended Complaint, which sets forth a claim for the knowing inducement or participation in a breach of a fiduciary duty and does not require a showing of substantial assistance, could not withstand a renewed motion to dismiss. The Court therefore will deny plaintiff leave to Amend the Second Amended Complaint by adding a new Count IV. Jablonski, 863 F.2d at 292.

The Court now turns to the issue of whether plaintiff's aiding and abetting claim is barred by the statute of limitations.

2. The Statute of Limitations Does Not Bar Plaintiff's Aiding and Abetting Claim as a Matter of Law

(a) Plaintiff's Aiding and Abetting Claim Relates Back To the Filing of the 1988 Complaint On June 30, 1988, Pursuant To Federal Rule of Civil Procedure 15(c)

Federal Rule of Civil Procedure 15(c) states, inter alia, that:

An amendment of a pleading relates back to the date of the original pleading when ...
(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading ...

Fed.R.Civ.P. 15(c). [FN14]

In order to determine whether the aiding and abetting claim asserted in the proposed Third Amended Complaint arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in plaintiff's 1988 Complaint, the Court must examine the history of the amendments to plaintiff's complaint in this litigation. The Court will focus on the evolution of plaintiff's civil conspiracy claim because this claim is most like plaintiff's aiding and abetting claim.

The civil conspiracy claim included in both the 1987 and 1988 Complaints addressed only usurpation of a corporate opportunity. (Complaint, No. 87-0714, Count II; Complaint, No. 88-5873, Count II.)

Plaintiff, without leave of Court, filed an Amended Complaint in the 1988 action on October 12, 1988, in which he expanded the civil conspiracy claim to include two additional allegations-- allegations of interference with the contractual relations between Automated and Rossetta and its employees and misappropriation of trade secrets. In doing so, the plaintiff changed a one prong civil conspiracy claim as set forth in the 1987 Complaint and the 1988 Complaint into a three prong conspiracy claim. Pursuant to Rule 15(c) this amendment related back to the filing of the original pleading in 1988 because the two new prongs of the civil conspiracy claim arose out of the same conduct, transaction, or occurrence as the original one prong civil conspiracy claim. [FN15]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Because of the similarity between the aiding and abetting claim and the civil conspiracy claim, and the fact that the two prongs of the aiding and abetting claim are identical to two of the three prongs in the civil conspiracy claim, the Court finds that plaintiff's aiding and abetting claim arises out of the same conduct, transaction, or occurrence as plaintiff's original one prong civil conspiracy claim. The Court therefore concludes that the proposed addition of Count V relates back to the date of the original pleading which was filed on June 30, 1988.

**\*10** The Court predicts that the Pennsylvania Supreme Court would apply the 2 year statute of limitations found in 42 Pa.Cons.Stat.Ann. § 5524(7) to the aiding and abetting claim because it involves the breach of a fiduciary duty and a breach of fiduciary duty claim has typically been subject to a two-year statute of limitations. See, e.g., Zimmer v. Gruntal & Co., 732 F.Supp. 1330, 1336 (W.D.Pa.1989).

Because more than two years has passed between the plaintiff's alleged date of discovery, April 4, 1985, [FN16] and the date that the original pleading in the 1988 action was filed, June 30, 1988, plaintiff is time barred from bringing his aiding and abetting claim unless the Court concludes that Pennsylvania's "saving statute" applies to this claim. [FN17] As a result, the Court must now address the issue of whether the Pennsylvania "saving statute" applies to the aiding and abetting claim.

(b) The Pennsylvania "Saving Statute" Applies to Plaintiff's Aiding and Abetting Claim

The Pennsylvania "saving statute" provides, inter alia, that:
(1) If a civil action or proceeding is timely commenced and is terminated, a party, or his successor in interest, may ... commence a new action or proceeding upon the same cause of action within one year after the termination and any other party may interpose any defense or claim which might have been interposed in the original action or proceeding.
42 Pa.Cons.Stat.Ann. § 5535 (1981) (emphasis added).

In order to determine whether the proposed filing of plaintiff's aiding and abetting claim would be timely pursuant to the "saving statute", the Court

must address two issues: (1) whether the 1987 action was terminated within the meaning of the "saving statute"; and (2) whether plaintiff's aiding and abetting claim is properly characterized as part of the "same cause of action" as was pled in plaintiff's 1987 complaint.

With respect to the first issue, the Court concludes that the 1987 action was terminated within the meaning of the "saving statute" on July 1, 1987, when it was dismissed without prejudice, notwithstanding the grant of leave to amend with respect to plaintiff's individual claims. That holding was implicit in this Court's Memorandum and Order dated April 5, 1991, (Memorandum and Order, April 5, 1991, at 13), and the Court does not deviate from that implicit holding here.

With respect to the second issue, there being no case law in Pennsylvania defining the language "cause of action" in the context of the "saving statute", the Court must predict how the Supreme Court would interpret this language if confronted with the issue. Rolick, 925 F.2d at 664. The Court looks to how the Pennsylvania Supreme Court has defined "cause of action" in related contexts for guidance in determining the meaning of this term in the "saving statute". On that issue the Supreme Court in Kuisis stated: "This Court has never adopted a comprehensive definition of what constitutes a cause of action, for the excellent reason that no such definition exists." Kuisis v. Baldwin-Lima-Hamilton Corporation, 457 Pa. 321, 319 A.2d 914, 918 n. 7 (1974).

**\*11** In discussing the impact of the statute of limitations on the allowance or disallowance of amendments pursuant to Rule 1033 of the Pennsylvania Rules of Civil Procedure, the Pennsylvania Supreme Court has held that:
An amendment introducing a new cause of action will not be permitted after the Statute of Limitations has run in favor of a defendant ... However, if the proposed amendment does not change the cause of action but merely amplifies that which has already been averred, it should be allowed even though the Statute of Limitations has already run.
Connor v. Allegheny General Hospital, 501 Pa. 306, 461 A.2d 600, 602 (1983) (citations omitted) (emphasis added).

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Not Reported in F.Supp.
(Cite as: 1992 WL 165817, *11 (E.D.Pa.))

Applying that rule, the Pennsylvania Supreme Court has gone so far as to allow an amendment to add a § 402A strict liability claim to a complaint after the statute of limitations had run because it found that the allegations of plaintiff's original complaint, which plead only negligence, compromised 'the material facts' on which the § 402A claim is based. In reaching its conclusion the Supreme Court explained:

Appellant's claim under § 402A was clearly implicit in his allegations of negligence in the design and manufacture of the crane. The principle of strict liability in torts adds nothing to Kuisis' [plaintiff's] theory of how the accident occurred; it operates merely to simplify his proof problem by eliminating the issue of negligence from the case ... 8 Thus, it is of no moment that the theories of negligence and strict liability may be subject to different defenses and require different measures of proof. Assuming arguendo that two different causes of action are involved here, for purposes of the statute of limitations, both were stated in the original complaint.

Kuisis, 319 A.2d at 918. In footnote eight of that same decision, contained in the quote cited above, the Supreme Court stated, inter alia, that:

The notion that a complaint weds a plaintiff to a particular theory of liability is foreign to Pennsylvania pleading. Ours is a system of fact pleading, not "theory" pleading; a plaintiff is free to proceed on any theory of liability the facts alleged in his complaint will support.

Kuisis, 319 A.2d at 918 n. 8.

In light of the foregoing authority, the Court concludes that, in defining the language "same cause of action" in the "saving statute" the Pennsylvania Supreme Court would emphasize whether the material facts alleged are the same and not whether the legal theories alleged are the same. An examination of the original Complaint filed in 1987 reveals that the material facts upon which plaintiff bases the proposed claim for aiding and abetting the breach of a fiduciary duty with respect to the usurpation of a corporate opportunity and the misappropriation of trade secrets can be found in, inter alia, ¶ 2, ¶ 14, ¶ 16, ¶¶ 21-26, ¶ 34, ¶ 38, ¶¶ 41-43, ¶¶ 49-54. The Court therefore concludes that plaintiff's aiding and abetting claim is properly characterized as part of the "same cause of action" as was pled in the 1987 action.

*12 Because the 1987 action was terminated within the meaning of the "saving statute" and plaintiff's aiding and abetting claim is properly characterized as part of the "same cause of action" as was pled in the 1987 action, the "saving statute" allowed plaintiff to commence the 1988 action in state court on June 30, 1988, within one year of the July 1, 1987, termination of plaintiff's 1987 action. Accordingly, the Court holds that, pursuant to the Pennsylvania "saving statute", plaintiff's aiding and abetting claim is not barred by the statute of limitations as a matter of law and is, therefore, not futile. [FN18] As a result, the amendment seeking its addition will be granted.

III. The Court's Previous Ruling Granting Summary Judgment With Respect to Plaintiff's Interference with Contractual Relations Claim Was Incorrect

The Court granted summary judgment on plaintiff's interference with contractual relations claim by Order dated April 5, 1991, because it concluded that "the Complaint before Judge Cahn did not include interference with contractual relations as a cause of action, and thus it has not been preserved under 42 Pa.C.S.A. § 5535, the saving clause." (Memorandum and Order, April 5, 1991, at 19.) In footnote 13 of its memorandum the Court stated: "[w]hile intentional interference with contractual relations was an underlying tort in the civil conspiracy count, this is a distinct cause of action from the same claim raised outside of the conspiracy context." (Memorandum and Order, April 5, 1991, at 19 n. 13.)

Given the Court's discussion, infra, of the meaning of the language "same cause of action" in Pennsylvania's "saving statute", the Court now concludes that the implicit definition of cause of action upon which the Court's previous decision rested was too narrow. Applying the broader definition of cause action set forth above, the Court concludes that plaintiff's interference with contractual relations claim was based on the same material facts as plaintiff's conspiracy to interfere with contractual relations claim and therefore defendants' Motion for Summary Judgment should not have been granted as to that claim on the ground that it was time barred.

The Court must now address the issue of whether

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.
(Cite as: 1992 WL 165817, *12 (E.D.Pa.))

Page 871

there were other grounds for granting defendant's motion for summary judgment on plaintiff's interference with contractual relations claim. Other than the statute of limitations argument, defendants asserted, in their Memorandum in Support of their Motion for Summary Judgment, that plaintiff had presented no evidence that Rossetta had an "employment contract" with Blecherman, Loro, Rees or Waser and therefore plaintiff could not make out an interference with contractual relations claim. [FN19] The Court rejects this argument for two reasons. First, the premise of defendant's argument is flawed. The existence of an "employment contract" as opposed to any other type or contractual relation is not an element of an interference with contractual relations claim. Pawlowski v. Smorto, 403 Pa.Super. 71, 588 A.2d 36, 39-40 (1991). Second, the Court finds that there is evidence of some sort of contractual relationship between Rossetta and Automated, on the one hand, and Blecherman, Loro, Rees, and Waser on the other, (Pierce Dep. 143-44, Ex. Q to Def.s' Memo. in Support of Motion for Sum.J. (Doc. No. 46).)

**\*13** The Court therefore concludes that CIC was not entitled to summary judgment on plaintiff's intentional interference with contractual relations claim and as a result vacates its previous ruling granting summary judgment on that claim.

## IV. Conclusion

The Court holds that: (1) plaintiff's delay in filing the Motion for Leave to Amend was neither undue, motivated by bad faith, nor prejudicial to the defendants or third-party defendants; (2) the part of plaintiff's motion which requests leave to: (a) correct the words and phrases in ¶ 17, ¶ 18, and ¶ 44 of the Second Amended Complaint, (b) delete the fraud count contained in the Second Amended Complaint, (c) add a new ¶ 45 dealing with the nature and concealment of CIC's wrongdoing and the complicity of CIC in the breaches of fiduciary duties owed to plaintiff, and (d) add ¶ 67 and ¶ 68 which describe and clarify damages sustained by Pierce, Rossetta, and Automated will be granted; (3) the part of plaintiff's motion which requests leave to assert the claim set forth in Count V of the proposed Third Amended Complaint is not futile and therefore will be granted but the part of plaintiff's motion which requests leave to assert the

claim set forth in Count IV of the proposed Third Amended Complaint will be denied as futile because the Pennsylvania Supreme Court has not recognized, and this Court predicts would not recognize, such a claim; and (4) its previous ruling granting summary judgment with respect to plaintiff's interference with contractual relations claim was incorrect.

Accordingly, plaintiff's motion for leave to amend the complaint will be granted in part and denied in part. Plaintiff will be granted leave to file a Third Amended Complaint including all of his proposed amendment's with the exception of the claim for the knowing inducement or participation in the breach of a fiduciary duty which is asserted in Count IV. In addition, plaintiff will be granted leave to include in his Third Amended Complaint the claim for intentional interference with contractual relations which was set forth in his Amended Complaint in the 1988 action. Because the Court granted summary judgment on RICO claims identical to those contained in the Third Amended Complaint by Order dated April 5, 1991, plaintiff will not be granted leave to include the RICO claims in his Third Amended Complaint.

An appropriate order will follow.

### ORDER

AND NOW, to wit, this 10th day of June, 1992, upon consideration of the Motion of plaintiff, Wilbur W. Pierce, for Leave to File a Third Amended Complaint (Document No. 126), and the responses of the parties, IT IS ORDERED that the Motion of plaintiff, Wilbur W. Pierce, for Leave to File a Third Amended Complaint is GRANTED IN PART AND DENIED IN PART, as follows:

1. That part of plaintiff's Motion which seeks leave to correct the words and phrases in paragraphs 17, 18 and 44 of the Second Amended Complaint is GRANTED;

2. That part of plaintiff's Motion which seeks leave to delete the fraud count contained in the Second Amended Complaint is GRANTED;

**\*14** 3. That part of plaintiff's Motion which seeks leave to add a new paragraph 45 dealing with the conduct of CitiCorp Industrial Credit, Inc., in connection with the breaches of fiduciary duties

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Not Reported in F.Supp.
(Cite as: 1992 WL 165817, *14 (E.D.Pa.))

Page 872

owed to plaintiff, Rossetta Corporation and Automatic Credit Acquisitions, Inc., is GRANTED;

4. That part of plaintiff's Motion which seeks to add new paragraphs 67 and 68 which describe and clarify the damages sustained by plaintiff, Rossetta Corporation and Automatic Credit Acquisitions, Inc., will be GRANTED;

5. That part of plaintiff's Motion which seeks leave to assert the claims set forth in Count V will be GRANTED; and,

6. That part of plaintiff's Motion which seeks leave to assert the claims set forth in Count IV will be DENIED.

IT IS FURTHER ORDERED that the part of this Court's April 5, 1991, Order granting summary judgment on Count V of plaintiff's Amended Complaint, which sets forth a claim for intentional interference with contractual relations, is VACATED. Plaintiff is granted leave to include in the Third Amended Complaint the allegations contained in Count V of the Amended Complaint.

IT IS FURTHER ORDERED that, because the Court granted summary judgment on plaintiff's claims under the Racketeer Influenced Corrupt Organizations Act by Order dated April 5, 1991, plaintiff is not granted leave to include such claims in the Third Amended Complaint.

FN1. Rossetta and Automated are named as nominal defendants in order to maintain the suit as a stockholder derivative action. Plaintiff also presses his claims in an individual capacity.

FN2. John Dewey, William Urban, and Stephen Rosenthal were corporate officers of CIC at the time of the events central to this case.

FN3. The FSG officers named as third-party defendants are Eric L. Blum, Alexander Murphy, Randy L. Rissman, Bruce Weber, Barry Blecherman, A. Vincent Loro, Edward L. Rees, and Mark Waser. Each was a former associate of Pierce at Rossetta/Automated.

FN4. CIC also counterclaimed against Pierce under a breach of warranty theory. This counterclaim was dismissed by the Court by Order of December

3, 1990, for failure to state a claim upon which relief can be granted.

FN5. There is a factual dispute between the parties on this point. Pierce testified at deposition that he was led to believe by Rosenthal that Rossetta/ Automated would receive the contract if Pierce stepped down as an officer and board member of Rossetta/Automated. (Pierce Dep. at 10-13, Ex. Q to Def.s' Memo. in Support of Motion for Sum.J. (Doc. No. 46)). The defendants claim that Rosenthal merely expressed CIC's disinclination to deal with Rossetta/Automated so long as Pierce was involved at any level.

FN6. At least four programmers (Barry Blecherman, A. Vincent Loro, Edward Rees and Mark Waser) formerly associated with Rossetta/ Automated began working with FSG on the CIC project.

FN7. This Court's Order of April 5, 1991 granting partial summary judgment was interlocutory and therefore is subject to revision at any time. See Fed.R.Civ.P. 54(b).

FN8. Section § 874 states as follows: One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation. Restatement (Second) of Torts § 874 (1979). Comment c of § 874 states, inter alia, as follows: A person who knowingly assists a fiduciary in committing a breach of trust is himself guilty of tortious conduct and is subject to liability for the harm thereby caused. (See § 876). Restatement (Second) of Torts § 874 cmt. c (1979).

FN9. Section § 876 states, inter alia, as follows: For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he ... (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself ... Restatement (Second) of Torts 876 (1979).

FN10. The Court in Burnside went on to recognize a limitation on this kind of liability when it held that "the law of this Commonwealth forecloses the assertion of a cause of action for concerted action were the plaintiff is unable to isolate a particular

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Westlaw.

Not Reported in F.Supp.
(Cite as: 1992 WL 165817, *14 (E.D.Pa.))

Page 873

manufacturer [defendant] as a causative agent of his injuries." Burnside, 505 A.2d at 984 (bracketed material added). Such a limitation on liability under § 876 clearly would not apply to the case at bar. CIC has always been identified as the person acting in concert with the alleged wrongdoers, the third-party defendants.

FN11. Defendants argue that the Pennsylvania courts that have looked to section 876(b) for guidance in fashioning "aiding and abetting" analogues to criminal accomplice liability do so only where criminal statutes have given rise to civil causes of action. In light of the decisions in Burnside, Kline, and Friedman, cited above, in which aiding and abetting liability has been recognized outside of the criminal context this Court rejects defendant's contention.

FN12. See supra note 8.

FN13. Plaintiff's argument that New York Law should apply to plaintiff's proposed Count IV if the Court concludes that such a claim would not be recognized in Pennsylvania is rejected. This Court has already determined that Pennsylvania law should apply to the state law claims and defenses in this case. (Memorandum and Order, April 5, 1991, 13-14.)

FN14. Rule 15(c) was amended on April 30, 1991. In the Amending Order, the United States Supreme Court stated that the "changes in the Federal Rules of Civil Procedure ... shall take effect on December 1, 1991, and shall govern all proceedings in civil actions thereafter commenced, and insofar as just and practicable, all proceedings in civil actions then pending." Order Amending Federal Rules of Civil Procedure, April 30, 1991. The instant matter was filed before December 1, 1991. Because the Court finds that plaintiff's aiding and abetting claim would relate back under both the old Rule 15(c) and the amended Rule 15(c), the Court need not address whether applying the amended rule would be "just and practicable."

FN15. This Court concluded in its April 5, 1991, decision that plaintiff's three prong civil conspiracy claim was timely pursuant to the operation of the Pennsylvania "saving statute" and discovery rule. Defendants did not raise the issue of whether the new prongs of the civil conspiracy claim were

separately barred. In any event, the additional two prongs of the civil conspiracy claim were treated by the Court as part of the same cause of action for purposes of the "saving statute" because they were amplifications of the plaintiff's preexisting civil conspiracy claim and therefore did not state a new or different cause action. Connor v. Allegheny General Hospital, 501 Pa. 306, 461 A.2d 600, 602 (1983). In its April 5, 1991, opinion the Court identified one of the underlying torts in the civil conspiracy claim as being fraud. (Memorandum and Order, April 5, 1991, at 12.) A careful reading of the Amended Complaint and the preceding complaints discloses that that statement was incorrect. Fraud is not, and was not, one of the underlying torts in the civil conspiracy claim.

FN16. In this Court's opinion dated April 5, 1991, the Court concluded that there was a issue of fact as to when plaintiff "discovered" the activity which forms the basis of his claims. (Memorandum and Order, April 5, 1991, at 12-13.) For purposes of this Motion for Leave to Amend, the Court will accept plaintiff's testimony that he did not become aware of FSG's agreement with CIC until April 4, 1985, when he was told of the CIC/FSG deal by his sister. (Memorandum and Order, April 5, 1991, at 13.)

FN17. If the "saving statute" applies, this claim will be treated as if it were commenced on February 9, 1987, the date that the action before Judge Cahn was filed, which is within the two-year statute of limitation period following April 4, 1985.

FN18. See supra notes 16 & 17.

FN19. In their motion for summary judgment defendants also asserted in a footnote that plaintiff had presented no evidence of inducements offered by CIC to Blum to secure the services of the Rossetta programmers. (Def.s' Memo. in Support of Motion for Sum.J. (Doc. no. 46), at 44 n. 44.) Even if this assertion is true, it is not a ground for granting summary judgment because evidence of such an inducement is not an essential element of the tort of intentional interference with contractual relations. Pawlowski v. Smorto, 403 Pa.Super. 71, 588 A.2d 36, 39-40 (1991).

1992 WL 165817 (E.D.Pa.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Not Reported in F.Supp.                                                    **Page 874**
**(Cite as: 1992 WL 165817, \*14 (E.D.Pa.))**

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo