# Exhibit Q

Westlaw.

Not Reported in F.Supp.  Page 1
1992 WL 165817 (E.D.Pa.)

(Cite as: 1992 WL 165817 (E.D.Pa.))

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
Wilbur W. PIERCE
v.
ROSSETTA CORPORATION, et al.
CITICORP INDUSTRIAL CREDIT, INC. et al.
v.
The FINANCIAL SYSTEMS GROUP, INC. et al.
Civ. A. No. 88-5873.

June 12, 1992.

Gilbert B. Abramson, Thomas S. McNamara, Bruce L. Thall, Abramson, Cogan, Kogan, Freeman & Thall, P.C., Philadelphia, Pa., for plaintiff.

Michael F.R. Harris, Fred T. Magaziner, Emily McKillip, Ellen J. Sokol, Dechert, Price & Rhoads, Philadelphia, Pa., for defendants.

Michael F.R. Harris, Fred T. Magaziner, Emily McKillip, Gerald D. Wixted, Ellen J. Sokol, Dechert, Price & Rhoads, Philadelphia, Pa., for third-party plaintiffs.

Thomas E. Groshens, Steven L. Friedman, Camille J. Wolf, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, Pa., for third-party defendants.

*MEMORANDUM AND ORDER*

DUBOIS, District Judge.

*1 Plaintiff, Wilbur W. Pierce ("Pierce" or "Plaintiff"), brought this stockholder derivative action on behalf of the Rossetta Corporation ("Rossetta") and Automated Credit Acquisitions, Inc. ("Automated") [FN1] against defendants, Citicorp Industrial Credit, Inc. ("CIC"), John Dewey, William Urban, and Stephen Rosenthal. [FN2] The complaint before the Court at this time, the Second Amended Complaint, contains four counts: two based on the Federal Racketeer Influenced Corrupt Organizations ("RICO") Act, and state claims of civil conspiracy and fraud.

Ancillary to this central action, CIC, Dewey, Urban, and Rosenthal filed a third-party action against the Financial Systems Group ("FSG") and several of its officers [FN3] for indemnification, and counterclaimed against Pierce for fraud. [FN4]

Presently before the Court is plaintiff's Motion for Leave to File a Third Amended Complaint.

I. Background

In late 1984, CIC was searching for a way to better apply computer technology to its processing of leases and loans with a low dollar value. CIC considered a proposal by two related corporations, Rossetta and Automated. Plaintiff Pierce, a computer software inventor, and third-party defendant Eric Blum, a long-time associate of Pierce's, were corporate officers of both Rossetta and Automated. The Rossetta/Automated group, including plaintiff Pierce and third-party defendant Blum, demonstrated a prototype system called CLASS to a large group of CIC managers and technical staff on October 4, 1984. This presentation consisted of a series of "demonstration screens" displayed on a small computer, illustrating the CLASS system's potential applications.

In late November of 1984, defendant Rosenthal, an officer of CIC, contacted Blum and advised him that CIC would not deal with Rossetta/Automated so long as Pierce was involved. [FN5] Pierce then resigned as an officer and director of both Rossetta and Automated, while retaining his significant stock holdings in both corporations.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1992 WL 165817 (E.D.Pa.)

(Cite as: 1992 WL 165817 (E.D.Pa.))

Page 2

Despite Pierce's actions, CIC rejected the proposal made by Rossetta/Automated in December of 1984, and instead contracted with FSG, which had submitted a proposal on January 11, 1985. FSG, incorporated in January of 1985, was formed primarily by former associates of Pierce's, including Blum. [FN6] Plaintiff alleges that the FSG proposal was substantially similar to the CLASS proposal previously submitted by Rossetta/Automated. On February 9, 1985, FSG and CIC signed a Memorandum of Understanding in which FSG agreed to provide CIC with a computer system, and a contract was entered into on May 17, 1985. Lacking potential clients, Pierce and Blum agreed to dissolve Rossetta and Automated on January 28, 1985.

Pierce first sued CIC on February 9, 1987 in district court, as Civil Action No. 87-0714 (the complaint in that action is hereinafter referred to as "the 1987 Complaint"). On July 2, 1987, Judge Cahn dismissed without prejudice the claims that Pierce brought on behalf of Rossetta and Automated and dismissed without prejudice Pierce's individual claims with leave to amend.

*2 On June 30, 1988, Pierce filed suit against CIC in the Montgomery County Court of Common Pleas (the complaint in that action is hereinafter referred to as "the 1988 Complaint"). CIC removed that case to this Court on July 29, 1988, as Civil Action No. 88-5873. Pierce filed an Amended Complaint in the 1988 action on October 12, 1988.

On April 5, 1991, the Court granted summary judgment on the counts of plaintiff's Amended Complaint alleging RICO claims (Count I and II) and on the count alleging interference with contractual relations (Count V). The Court denied summary judgment as to the counts alleging civil conspiracy (Count III) and fraud (Count IV).

After Pierce had apparently done all the amending he needed to do and after the Court had sorted out which of the claims in Pierce's Amended Complaint were triable and which were not, the case was, it seemed, ready for trial. Accordingly, at the request of all the parties, the case was specially listed for trial on December 9, 1991, four years and ten months after Pierce began his first lawsuit against CIC.

On the afternoon of December 6, 1991, the last business day before the start of trial, Pierce filed a Motion for Leave to File a Second Amended Complaint. The Second Amended Complaint changed the fraud claim from what Pierce had alleged in his 1987 Complaint, from what he had alleged in his original Complaint in the 1988 case, and from what he had alleged in the Amended Complaint in the 1988 case.

Pierce had not finished complicating matters on the eve of trial, however. On December 9, 1991, during the oral argument on plaintiff's Motion for Leave to File a Second Amended Complaint, Pierce's attorney articulated a fraud claim that was not even the same as the claim set forth in the proposed Second Amended Complaint he was seeking leave to file. As the Court stated:

What you [Mr. Abramson] said in court today is still another version or maybe it's version number three, if I count the original complaint, the amended complaint and the second amended complaint. Version three with spin, because the Court doesn't read into the second amended complaint what you say is now at the core of your case and that is, the deal is dead was a fraudulent misstatement.

(Transcript (hereinafter referred to as "Tr."), December 9, 1991, at 87.)

After lengthy argument on December 9th, Pierce's attorney withdrew that portion of his Motion for Leave to File a Second Amended Complaint which sought leave to amend the fraud claim. The Court then granted plaintiff's motion with respect to some minor changes in the factual allegations of his Amended Complaint. A Second Amended Complaint reflecting these changes was filed December 16, 1991.

On December 9, 1991, due to the numerous problems raised by the parties at the argument, the Court reluctantly issued a Third Amended Scheduling Order which continued the trial to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1992 WL 165817 (E.D.Pa.)

**(Cite as: 1992 WL 165817 (E.D.Pa.))**

Page 3

January 6, 1992, the Court's schedule permitting, or otherwise to March 9, 1992. The scheduling order also granted leave to the defendants to file a short memorandum of law on the question whether the Pennsylvania "saving statute", 42 Pa.Cons.Stat.Ann. § 5535, is applicable to this case and detailed, *inter alia*, how the parties were to complete discovery and finish preparing this case for trial.

*3 On December 11, 1991, plaintiff filed an Amended Complaint in the 1987 case, four years and five months after Judge Cahn granted him leave to do so. Then, on December 13th, Pierce filed a Motion for Leave to File a Third Amended Complaint in the 1988 case which was nearly identical to the Amended Complaint he had just filed in the 1987 case.

The proposed Third Amended Complaint would make the following changes to the Second Amended Complaint: (1) corrections of words and phrases in ¶¶ 17, 18, and 44 of the Second Amended Complaint allegedly made in order to more accurately reflect the facts now known to the plaintiff; (2) the addition of a new ¶ 45 setting forth facts which allegedly establish the nature and concealment of CIC's wrongdoing, the complicity of CIC in the breaches of fiduciary duty owed to plaintiff, and plaintiff's discovery of these facts; (3) the deletion of the fraud theory of recovery contained in the Second Amended Complaint (Second Amended Complaint, Count IV at ¶¶ 62-66); (4) the addition of ¶ 67 and ¶ 68 which describe and clarify the damages suffered by Pierce, Rossetta, and Automated; and (5) the addition of two counts, Counts IV and V, containing new theories of recovery allegedly based on the facts, transactions and occurrences set forth in the prior pleadings. Count IV is entitled "Knowing Inducement or Participation in Breach of Fiduciary Duty" and sets forth a claim of knowing inducement or participation by the defendants in the breach of fiduciary duties allegedly owed by the third-party defendants to Rossetta, Automated and Pierce. Count V, which has no title, sets forth what the plaintiff refers to as a claim for aiding and abetting the breach of such fiduciary duties. In both counts plaintiff alleges that third-party defendants were caused to breach their fiduciary duties in two ways: (1) by usurping a corporate opportunity and (2) by misappropriating trade secrets.

On December 19, 1991, following a telephone conference with the parties, the Court issued a Fourth Amended Scheduling Order continuing the trial to April 20, 1992, and detailing again, *inter alia*, how the parties were to complete discovery and finish preparing this case for trial.

On February 21, 1992, the 1987 case was transferred to the docket of this Court. On March 19, 1992, the Court granted the third-party defendants request for a two day postponement of the trial to April 22, 1992.

On April 7, 1992, the Court held a hearing/status conference in the 1987 and 1988 cases on numerous motions that had been filed since the argument on December 9, 1991. At the outset, lead counsel for the third-party defendants reluctantly moved for a 90 day continuance on the grounds that his co-counsel had recently been informed that her husband had a very serious ailment which made it impossible for her to meaningfully participate in the trial set to start April 22, 1992. (Tr., April 7, 1992, at 4.) In addition lead counsel for third-party defendants informed the Court that replacement counsel was not an option because of his clients' financial constraints. (Tr., April 7, 1992, at 7.) There being no objection, the Court reluctantly continued the trial from April 22, to the only time the Court's calendar permitted, September 14, 1992. After the granting of this continuance, most of the remainder of the hearing was devoted to argument on the Motion for Leave to File a Third Amended Complaint.

*4 Plaintiff's Motion for Leave to File a Third Amended Complaint raises the following issues which this Court will address: (1) whether the motion should be denied because plaintiff's delay in filing it was undue, motivated by bad faith, or prejudicial to the defendants or third-party defendants; (2) whether the part of plaintiff's motion which requests leave to: (a) correct the words and phrases in ¶ 17, ¶ 18, and ¶ 44 of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1992 WL 165817 (E.D.Pa.)  
(Cite as: 1992 WL 165817 (E.D.Pa.))

Page 4

Second Amended Complaint, (b) delete the fraud count contained in the Second Amended Complaint, (c) add a new ¶ 45 dealing with the nature and concealment of CIC's wrongdoing and the complicity of CIC in the breaches of fiduciary duties owed to plaintiff, and (d) add ¶ 67 and ¶ 68 which describe and clarify damages sustained by Pierce, Rossetta, and Automated should be granted; (3) whether the part of plaintiff's motion which requests leave to assert the two new claims set forth in Counts IV and V of the proposed Third Amended Complaint should be denied as futile because either (a) the claims are not recognized under Pennsylvania law or (b) the claims are barred by the statute of limitations as a matter of law; and (4) whether the Court should reconsider the ruling it made on April 5, 1991, granting summary judgment on the interference with contractual relations claim set forth in plaintiff's Amended Complaint in the 1988 action. [FN7]

The Court concludes that: (1) plaintiff's delay in filing the Motion for Leave to Amend was neither undue, motivated by bad faith, nor prejudicial to the defendants or third-party defendants; (2) the part of plaintiff's motion which requests leave to: (a) correct the words and phrases in ¶ 17, ¶ 18, and ¶ 44 of the Second Amended Complaint, (b) delete the fraud count contained in the Second Amended Complaint, (c) add a new ¶ 45 dealing with the nature and concealment of CIC's wrongdoing and the complicity of CIC in the breaches of fiduciary duties owed to plaintiff, and (d) add ¶ 67 and ¶ 68 which describe and clarify damages sustained by Pierce, Rossetta, and Automated will be granted; (3) the part of plaintiff's motion which requests leave to assert the claim set forth in Count V of the proposed Third Amended Complaint is not futile and therefore will be granted but the part of plaintiff's motion which requests leave to assert the claim set forth in Count IV of the proposed Third Amended Complaint will be denied as futile because the Pennsylvania Supreme Court has not recognized, and this Court predicts would not recognize, such a claim; and (4) its previous ruling granting summary judgment with respect to plaintiff's interference with contractual relations claim was incorrect.

Accordingly, plaintiff's motion for leave to amend the complaint will be granted in part and denied in part. Plaintiff will be granted leave to file a Third Amended Complaint including all of his proposed amendment's with the exception of the claim for the knowing inducement or participation in the breach of a fiduciary duty which is asserted in Count IV. In addition, plaintiff will be granted leave to include in his Third Amended Complaint the claim for intentional interference with contractual relations which was set forth in his Amended Complaint in the 1988 action. Because the Court granted summary judgment on RICO claims identical to those contained in the Third Amended Complaint by Order dated April 5, 1991, plaintiff will not be granted leave to include the RICO claims in his Third Amended Complaint.

II. Plaintiff's Motion for Leave to File a Third Amended Complaint

A. The Requirements of Federal Rule of Civil Procedure 15(a)

*5 The plaintiff seeks leave of this Court to amend his complaint pursuant to Fed.R.Civ.P. 15(a). This rule states, *inter alia,* that a pleading may be amended once as a matter of right and thereafter "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and *leave shall be freely given when justice so requires."* Fed.R.Civ.P. 15(a) (emphasis added).

The Third Circuit summarized the law governing Rule 15(a) amendments as follows:
> Fed.R.Civ.P. 15 embodies the liberal pleading philosophy of the federal rules ... This liberal amendment philosophy limits the district court's discretion to deny leave to amend. The district court may deny leave to amend only if a plaintiff's delay is undue, motivated by bad faith, or prejudicial to the opposing party.

*Adams v. Gould, Inc.,* 739 F.2d 858, 864 (3rd Cir.1984) (citations omitted) (emphasis added), *cert. denied,* 469 U.S. 1122 (1985). The Third Circuit has also held that a district court may deny leave to amend when allowing such an amendment would be futile. *Jablonski v. Pan American World*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
1992 WL 165817 (E.D.Pa.)

(Cite as: 1992 WL 165817 (E.D.Pa.))

Page 5

*Airways, Inc.,* 863 F.2d 289, 292 (3rd Cir.1988) (citing *Froman v. Davis,* 371 U.S. 178, 182 (1962)).

The Third Circuit has explained the concepts of undue delay, undue prejudice, and bad faith as follows:
> The passage of time without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue', placing an unwarranted burden on the court, or will become 'prejudicial', placing an unfair burden on the opposing party ... The question of undue delay, as well as the question of bad faith, requires that we focus on the plaintiffs motives for not amending their complaint to assert this claim earlier; the issue of prejudice requires we focus on the effect on the defendants.

*Adams v. Gould, Inc.,* 739 F.2d 858, 868 (3rd Cir.1984) (citations omitted), *cert. denied,* 469 U.S. 1122 (1985).

The Third Circuit has explained the concept of futile amendments as follows:
> Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss.

*Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 292 (3rd Cir.1988).

In determining the futility of a proposed amendment to a complaint the Court applies the same standard governing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). *Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 292 (3d.Cir.1988); *Ward v. Cheltenham Township,* No. 89-6833, 1990 WL 122952, at * 1-2, 1990 U.S.Dist. LEXIS 10983, slip op. at *2-*3 (E.D.Pa. August 21, 1990). Thus, amendment is futile where "it appears beyond doubt that the plaintiff can pose no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). In addition, a court may properly deny a motion to amend a complaint as "futile" when the claim is barred by a statute of limitations.

*Jablonski,* 863 F.2d at 292.

B. Plaintiff's Delay in Filing the Motion For Leave to Amend Was Neither Undue, Motivated by Bad Faith, Nor Prejudicial to the Defendants or Third-Party Defendants

*6 Although this Court is not pleased with the tortured way this case has been conducted by the plaintiff, it concludes that plaintiff's delay in filing the Motion for Leave to Amend, without more, is sufficient to establish either bad faith or undue delay. *Cf. Adams,* 739 F.2d at 868.

In addition, in light of the grant of a continuance to September 14, 1992, this Court finds that there would be no prejudice to the defendants or the third-party defendants by granting plaintiff leave to amend the complaint at this time. The parties have over three months in which to complete any additional discovery if in fact it is necessary.

Having concluded that none of plaintiff's amendments will be denied on the grounds of undue delay, bad faith, or prejudice, the Court turns to the issue of whether any of plaintiff's amendments are futile. Because there is no issue of futility with respect to any of the plaintiff's proposed amendments except for the addition of the two new claims, the Court will allow those amendments which seek to: (1) correct the words and phrases in ¶ 17, ¶ 18, and ¶ 44 of the Second Amended Complaint, (2) delete the fraud count contained in the Second Amended Complaint, (3) add a new ¶ 45 dealing with the nature and concealment of CIC's wrongdoing and the complicity of CIC in the breaches of fiduciary duties owed to plaintiff, and (4) add ¶ 67 and ¶ 68 which describe and clarify damages sustained by Pierce, Rossetta, and Automated.

The Court must now address the issue of whether leave to add either of the two new claims, which are contained in Count IV and Count V of the proposed Third Amended Complaint, should be granted.

C. The Part of Plaintiff's Motion Which Requests Leave to Assert the Claim Set Forth in Count V of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 6
1992 WL 165817 (E.D.Pa.)
(Cite as: 1992 WL 165817 (E.D.Pa.))

the Proposed Third Amended Complaint Is Not Futile and Therefore Will Be Granted But the Part of Plaintiff's Motion Which Requests Leave to Assert the Claim Set Forth in Count IV of the Proposed Third Amended Complaint Will Be Denied as Futile Because the Pennsylvania Supreme Court Has Not Recognized, and this Court Predicts Would Not Recognize, Such a Claim

1. The Court Predicts That the Pennsylvania Supreme Court Would Recognize a Claim Such As That Set Forth in Count V of the Proposed Third Amended Complaint But Would Not Recognize a Claim Such As That Set Forth in Count IV of the Proposed Third Amended Complaint

Count IV of the proposed Third Amended Complaint sets forth a claim for the knowing inducement or participation in the breach of a fiduciary duty. This claim is based on the Restatement (Second) of Torts § 874, comment c, [FN8] standing alone and, as alleged by the plaintiff, would not require a showing of substantial assistance for liability to attach. In asserting such a claim, plaintiff primarily relies on the law of New York. *See, e.g., S & K Sales Co. v. Nike, Inc.,* 816 F.2d 843, 847-48 (2d Cir.1987) ("the 'well settled' elements of a New York claim for inducing or participating in a breach of fiduciary duty: [t]he claimant must prove (1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that the plaintiff suffered damages as a result of the breach.") (citations and footnotes omitted).

*7 Count V of the proposed Third Amended Complaint sets forth a claim for aiding and abetting the breach of a fiduciary duty. In this count plaintiff alleges that defendants knowingly gave substantial assistance and/or encouragement to third-party defendants in the breach of their fiduciary duties. In contrast to the claim set forth in Count IV which is based on the Restatement (Second) of Torts § 874, comment c, the claim set forth in Count V is based on that section of the Restatement and § 876(b) [FN9] and would require a showing of substantial assistance for liability to attach.

The Pennsylvania Supreme Court has not spoken on the issue of whether claims for knowing inducement or participation in the breach of a fiduciary duty or aiding and abetting the breach of a fiduciary duty would be recognized in Pennsylvania in a case such as this one. When the Pennsylvania Supreme Court has not spoken on an issue, a federal court sitting in a diversity action is required to predict how the Supreme Court would rule. *Rolick v. Collins Pine Co.,* 925 F.2d 661, 664 (3rd Cir.1991). In resolving that question "proper regard must also be given to the decisions of its [Pennsylvania's] intermediate appellate court." *Rolick,* 925 F.2d at 664.

An examination of the decisions of the Pennsylvania intermediate appellate court, the Superior Court, reveals that it has not explicitly recognized either of the new claims plaintiff is asserting. However, support for the recognition of a claim based on § 874, comment c, and § 876(b) of the Restatement (Second) of Torts such as the claim set forth in Count V of plaintiff's proposed Third Amended Complaint can be found in at least three Superior Court decisions. No such support can be found for the recognition of a separate claim based solely upon Restatement § 874, comment c, such as the claim set forth in Count IV of the proposed Third Amended Complaint.

First, there is a decision in a personal injury case in which the Pennsylvania Superior Court stated in dicta that: "we are inclined to feel that appellant's argument from the Restatement of Torts 2d has merit, and that on facts similar to those of the instant matter, § 876 might well prove applicable." *Kline v. Ball,* 306 Pa.Super. 284, 452 A.2d 727, 728 (1982).

Second, there is a decision in a products liability case in which the Pennsylvania Superior Court stated in the context of a discussion of *Kline* that:
> A cause of action for concerted activity under Section 876 of the Restatement (Second) of Torts has been recognized only recently by the courts in Pennsylvania.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1992 WL 165817 (E.D.Pa.)  
(Cite as: 1992 WL 165817 (E.D.Pa.))

Page 7

*Burnside v. Abbott Laboratories,* 351 Pa.Super. 264, 505 A.2d 973, 982 (1985); [FN10] *see also Friedman v. F.E. Myers Co.,* 706 F.Supp. 376, 382-84 (E.D.Pa.1989) (a products liability action in which the Court, citing *Burnside,* considered a claim under § 876(b) but concluded that under the facts presented there was no duty which the defendant could have assisted in breaching).

*8 Third, there is decision in a case involving the duty of confidentiality between physician and patient in which Judge Cirillo stated in a concurring and dissenting opinion that a claim exists for "inducing" a breach of confidentiality between a physician and a patient. *Moses v. McWilliams,* 379 Pa.Super. 150, 549 A.2d 950, 971 (1988). In reaching this conclusion Judge Cirillo cited § 874, comment c, and § 876(b) of the Restatement (Second) of Torts and concluded that subsection b of § 876, which requires a showing of substantial assistance or encouragement, was controlling. *Moses,* 549 A.2d at 971. The majority in *Moses* never addressed the issue directly because it concluded that "[b]ecause we find that appellant has not stated a cause of action for breach of confidentiality under the facts of the instant case, her claims for inducement of that breach must necessarily fail." *Moses,* 549 A.2d at 960.

An examination of the decisions of the federal courts applying Pennsylvania law reveals a Third Circuit opinion in which the Circuit predicted that the Pennsylvania Supreme Court would recognize civil aider and abettor liability for those who aid minors in the consumption of alcohol. [FN11] *Fassett v. Delta Kappa Epsilon,* 807 F.2d 1150, 1162 (3rd Cir.1986), *cert. denied, Turgiss v. Fassett,* 481 U.S. 1070 (1987). Having concluded that civil aiding and abetting liability would be recognized, the Third Circuit stated that in determining the nature and amount of aid or assistance that is required of an accomplice before civil liability is imposed: "the Pennsylvania courts, which in general follow the Restatement of the Law, would once again look to the restatement for instruction." *Fassett,* 807 F.2d at 1162. The Third Circuit then looked to section 876 and concluded that substantial assistance, the requirement of § 876(b), must be found in order for civil as opposed to criminal aiding and abetting liability to attach and that "the Pennsylvania Supreme Court would look to [the factors set forth in comment d to § 876(b) ] to determine substantiality of assistance where the civil liability of an accomplice is at issue." *Fassett,* 807 F.2d at 1164.

In Counts IV and V of the proposed Third Amended Complaint the plaintiff alleges that defendants caused third-party defendants to breach their fiduciary duties in two ways: (1) by usurping a corporate opportunity and (2) by misappropriating trade secrets. Causes of action for the usurpation of a corporate opportunity and the misappropriation of trade secrets are well established in Pennsylvania. *See, e.g., In re Gailey, Inc.,* 119 B.R. 504, 512 (Bankr.W.D.Pa.1990) (setting forth a summary of Pennsylvania law on the tort of usurpation of a corporate opportunity); *Rohm & Haas Co. v. Adco Chemical Co.,* 689 F.2d 424, 429-30 (3rd Cir.1982) (setting forth the elements of a misappropriation of trade secret claim in Pennsylvania).

Given the forgoing authority and the fact that Restatement (Second) of Torts § 874, comment c, cites to § 876, [FN12] this Court predicts that the Pennsylvania Supreme Court would recognize a claim for aiding and abetting the breach of a fiduciary duty in a case such as this one but would not recognize a separate claim for knowing inducement or participation in the breach of a fiduciary duty. This prediction is based on the Court's determination that the Pennsylvania Supreme Court would find Restatement (Second) of Torts § 874, comment c, and § 876(b), not New York case law or § 874, comment c, standing alone, controlling and therefore would require a showing of substantial assistance in order to establish liability for aiding and abetting the breach of a fiduciary duty. [FN13] The Court also predicts that the elements of a claim for aiding and abetting the breach of a fiduciary duty under Pennsylvania law would be: (1) a breach of a fiduciary duty owed to another, (2) knowledge of the breach by the aider or abettor, and (3) substantial assistance or encouragement by the aider or abettor in effecting

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 8
1992 WL 165817 (E.D.Pa.)
**(Cite as: 1992 WL 165817 (E.D.Pa.))**

that breach. *Cf. Restatement (Second) of Torts* § 876 (1979); *Kranzdorf v. Green,* 582 F.Supp. 335, 337 (E.D.Pa.1983).

**\*9** By reason of the foregoing, the Court concludes Count IV of plaintiff's proposed Third Amended Complaint, which sets forth a claim for the knowing inducement or participation in a breach of a fiduciary duty and does not require a showing of substantial assistance, could not withstand a renewed motion to dismiss. The Court therefore will deny plaintiff leave to Amend the Second Amended Complaint by adding a new Count IV. *Jablonski,* 863 F.2d at 292.

The Court now turns to the issue of whether plaintiff's aiding and abetting claim is barred by the statute of limitations.

**2. The Statute of Limitations Does Not Bar Plaintiff's Aiding and Abetting Claim as a Matter of Law**

**(a) Plaintiff's Aiding and Abetting Claim Relates Back To the Filing of the 1988 Complaint On June 30, 1988, Pursuant To Federal Rule of Civil Procedure 15(c)**

Federal Rule of Civil Procedure 15(c) states, *inter alia,* that:
> An amendment of a pleading relates back to the date of the original pleading when ...
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading ...

Fed.R.Civ.P. 15(c). [FN14]

In order to determine whether the aiding and abetting claim asserted in the proposed Third Amended Complaint arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in plaintiff's 1988 Complaint, the Court must examine the history of the amendments to plaintiff's complaint in this litigation. The Court will focus on the evolution of plaintiff's civil conspiracy claim because this claim is most like plaintiff's aiding and abetting claim.

The civil conspiracy claim included in both the 1987 and 1988 Complaints addressed only usurpation of a corporate opportunity. (Complaint, No. 87- 0714, Count II; Complaint, No. 88-5873, Count II.)

Plaintiff, without leave of Court, filed an Amended Complaint in the 1988 action on October 12, 1988, in which he expanded the civil conspiracy claim to include two additional allegations--allegations of interference with the contractual relations between Automated and Rossetta and its employees and misappropriation of trade secrets. In doing so, the plaintiff changed a one prong civil conspiracy claim as set forth in the 1987 Complaint and the 1988 Complaint into a three prong conspiracy claim. Pursuant to Rule 15(c) this amendment related back to the filing of the original pleading in 1988 because the two new prongs of the civil conspiracy claim arose out of the same conduct, transaction, or occurrence as the original one prong civil conspiracy claim. [FN15]

Because of the similarity between the aiding and abetting claim and the civil conspiracy claim, and the fact that the two prongs of the aiding and abetting claim are identical to two of the three prongs in the civil conspiracy claim, the Court finds that plaintiff's aiding and abetting claim arises out of the same conduct, transaction, or occurrence as plaintiff's original one prong civil conspiracy claim. The Court therefore concludes that the proposed addition of Count V relates back to the date of the original pleading which was filed on June 30, 1988.

**\*10** The Court predicts that the Pennsylvania Supreme Court would apply the 2 year statute of limitations found in 42 Pa.Cons.Stat.Ann. § 5524(7) to the aiding and abetting claim because it involves the breach of a fiduciary duty and a breach of fiduciary duty claim has typically been subject to a two-year statute of limitations. *See, e.g., Zimmer v. Gruntal & Co.,* 732 F.Supp. 1330, 1336 (W.D.Pa.1989).

Because more than two years has passed between the plaintiff's alleged date of discovery, April 4, 1985, [FN16] and the date that the original pleading

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1992 WL 165817 (E.D.Pa.)  
**(Cite as: 1992 WL 165817 (E.D.Pa.))**

Page 9

in the 1988 action was filed, June 30, 1988, plaintiff is time barred from bringing his aiding and abetting claim unless the Court concludes that Pennsylvania's "saving statute" applies to this claim. [FN17] As a result, the Court must now address the issue of whether the Pennsylvania "saving statute" applies to the aiding and abetting claim.

(b) The Pennsylvania "Saving Statute" Applies to Plaintiff's Aiding and Abetting Claim

The Pennsylvania "saving statute" provides, *inter alia,* that:
> (1) If a civil action or proceeding is timely commenced and is terminated, a party, or his successor in interest, may ... commence a new action or proceeding upon *the same cause of action* within one year after the termination and any other party may interpose any defense or claim which might have been interposed in the original action or proceeding.

42 Pa.Cons.Stat.Ann. § 5535 (1981) (emphasis added).

In order to determine whether the proposed filing of plaintiff's aiding and abetting claim would be timely pursuant to the "saving statute", the Court must address two issues: (1) whether the 1987 action was terminated within the meaning of the "saving statute"; and (2) whether plaintiff's aiding and abetting claim is properly characterized as part of the "same cause of action" as was pled in plaintiff's 1987 complaint.

With respect to the first issue, the Court concludes that the 1987 action was terminated within the meaning of the "saving statute" on July 1, 1987, when it was dismissed without prejudice, notwithstanding the grant of leave to amend with respect to plaintiff's individual claims. That holding was implicit in this Court's Memorandum and Order dated April 5, 1991, (Memorandum and Order, April 5, 1991, at 13), and the Court does not deviate from that implicit holding here.

With respect to the second issue, there being no case law in Pennsylvania defining the language "cause of action" in the context of the "saving statute", the Court must predict how the Supreme Court would interpret this language if confronted with the issue. *Rolick,* 925 F.2d at 664. The Court looks to how the Pennsylvania Supreme Court has defined "cause of action" in related contexts for guidance in determining the meaning of this term in the "saving statute". On that issue the Supreme Court in *Kuisis* stated: "This Court has never adopted a comprehensive definition of what constitutes a cause of action, for the excellent reason that no such definition exists." *Kuisis v. Baldwin-Lima-Hamilton Corporation,* 457 Pa. 321, 319 A.2d 914, 918 n. 7 (1974).

*11 In discussing the impact of the statute of limitations on the allowance or disallowance of amendments pursuant to Rule 1033 of the Pennsylvania Rules of Civil Procedure, the Pennsylvania Supreme Court has held that:
> An amendment introducing a new cause of action will not be permitted after the Statute of Limitations has run in favor of a defendant ... *However, if the proposed amendment does not change the cause of action but merely amplifies that which has already been averred, it should be allowed even though the Statute of Limitations has already run.*

*Connor v. Allegheny General Hospital,* 501 Pa. 306, 461 A.2d 600, 602 (1983) (citations omitted) (emphasis added).

Applying that rule, the Pennsylvania Supreme Court has gone so far as to allow an amendment to add a § 402A strict liability claim to a complaint after the statute of limitations had run because it found that the allegations of plaintiff's original complaint, which plead only negligence, compromised 'the material facts' on which the § 402A claim was based. In reaching its conclusion the Supreme Court explained:
> Appellant's claim under § 402A was clearly implicit in his allegations of negligence in the design and manufacture of the crane. The principle of strict liability in torts adds nothing to Kuisis' [plaintiff's] theory of how the accident occurred; it operates merely to simplify his proof problem by eliminating the issue of negligence from the case ... 8 Thus, it is of no moment that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1992 WL 165817 (E.D.Pa.)  
**(Cite as: 1992 WL 165817 (E.D.Pa.))**

Page 10

the theories of negligence and strict liability may be subject to different defenses and require different measures of proof. Assuming arguendo that two different causes of action are involved here, for purposes of the statute of limitations, both were stated in the original complaint.
*Kuisis,* 319 A.2d at 918. In footnote eight of that same decision, contained in the quote cited above, the Supreme Court stated, *inter alia,* that:
> The notion that a complaint weds a plaintiff to a particular theory of liability is foreign to Pennsylvania pleading. Ours is a system of fact pleading, not "theory" pleading; a plaintiff is free to proceed on any theory of liability the facts alleged in his complaint will support.

*Kuisis,* 319 A.2d at 918 n. 8.

In light of the foregoing authority, the Court concludes that, in defining the language "same cause of action" in the "saving statute" the Pennsylvania Supreme Court would emphasize whether the material facts alleged are the same and not whether the legal theories alleged are the same.

An examination of the original Complaint filed in 1987 reveals that the material facts upon which plaintiff bases the proposed claim for aiding and abetting the breach of a fiduciary duty with respect to the usurpation of a corporate opportunity and the misappropriation of trade secrets can be found in, *inter alia,* ¶ 2, ¶ 14, ¶ 16, ¶¶ 21-26, ¶ 34, ¶ 38, ¶¶ 41-43, ¶¶ 49-54. The Court therefore concludes that plaintiff's aiding and abetting claim is properly characterized as part of the "same cause of action" as was pled in the 1987 action.

*12 Because the 1987 action was terminated within the meaning of the "saving statute" and plaintiff's aiding and abetting claim is properly characterized as part of the "same cause of action" as was pled in the 1987 action, the "saving statute" allowed plaintiff to commence the 1988 action in state court on June 30, 1988, within one year of the July 1, 1987, termination of plaintiff's 1987 action. Accordingly, the Court holds that, pursuant to the Pennsylvania "saving statute", plaintiff's aiding and abetting claim is not barred by the statute of limitations as a matter of law and is, therefore, not futile. [FN18] As a result, the amendment seeking its addition will be granted.

III. The Court's Previous Ruling Granting Summary Judgment With Respect to Plaintiff's Interference with Contractual Relations Claim Was Incorrect

The Court granted summary judgment on plaintiff's interference with contractual relations claim by Order dated April 5, 1991, because it concluded that "the Complaint before Judge Cahn did not include interference with contractual relations as a cause of action, and thus it has not been preserved under 42 Pa.C.S.A. § 5535, the saving clause." (Memorandum and Order, April 5, 1991, at 19.) In footnote 13 of its memorandum the Court stated: "[w]hile intentional interference with contractual relations was an underlying tort in the civil conspiracy count, this is a distinct cause of action from the same claim raised outside of the conspiracy context." (Memorandum and Order, April 5, 1991, at 19 n. 13.)

Given the Court's discussion, *infra,* of the meaning of the language "same cause of action" in Pennsylvania's "saving statute", the Court now concludes that the implicit definition of cause of action upon which the Court's previous decision rested was too narrow. Applying the broader definition of cause action set forth above, the Court concludes that plaintiff's interference with contractual relations claim was based on the same material facts as plaintiff's conspiracy to interfere with contractual relations claim and therefore defendants' Motion for Summary Judgment should not have been granted as to that claim on the ground that it was time barred.

The Court must now address the issue of whether there were other grounds for granting defendant's motion for summary judgment on plaintiff's interference with contractual relations claim. Other than the statute of limitations argument, defendants asserted, in their Memorandum in Support of their Motion for Summary Judgment, that plaintiff had presented no evidence that Rossetta had an "employment contract" with Blecherman, Loro, Rees or Waser and therefore plaintiff could not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 11
1992 WL 165817 (E.D.Pa.)
**(Cite as: 1992 WL 165817 (E.D.Pa.))**

make out an interference with contractual relations claim. [FN19] The Court rejects this argument for two reasons. First, the premise of defendant's argument is flawed. The existence of an "employment contract" as opposed to any other type or contractual relation is not an element of an interference with contractual relations claim. *Pawlowski v. Smorto,* 403 Pa.Super. 71, 588 A.2d 36, 39-40 (1991). Second, the Court finds that there is evidence of some sort of contractual relationship between Rossetta and Automated, on the one hand, and Blecherman, Loro, Rees, and Waser on the other, (Pierce Dep. 143-44, Ex. Q to Def.s' Memo. in Support of Motion for Sum.J. (Doc. No. 46).)

*13 The Court therefore concludes that CIC was not entitled to summary judgment on plaintiff's intentional interference with contractual relations claim and as a result vacates its previous ruling granting summary judgment on that claim.

IV. Conclusion

The Court holds that: (1) plaintiff's delay in filing the Motion for Leave to Amend was neither undue, motivated by bad faith, nor prejudicial to the defendants or third-party defendants; (2) the part of plaintiff's motion which requests leave to: (a) correct the words and phrases in ¶ 17, ¶ 18, and ¶ 44 of the Second Amended Complaint, (b) delete the fraud count contained in the Second Amended Complaint, (c) add a new ¶ 45 dealing with the nature and concealment of CIC's wrongdoing and the complicity of CIC in the breaches of fiduciary duties owed to plaintiff, and (d) add ¶ 67 and ¶ 68 which describe and clarify damages sustained by Pierce, Rossetta, and Automated will be granted; (3) the part of plaintiff's motion which requests leave to assert the claim set forth in Count V of the proposed Third Amended Complaint is not futile and therefore will be granted but the part of plaintiff's motion which requests leave to assert the claim set forth in Count IV of the proposed Third Amended Complaint will be denied as futile because the Pennsylvania Supreme Court has not recognized, and this Court predicts would not recognize, such a claim; and (4) its previous ruling granting summary judgment with respect to plaintiff's interference with contractual relations claim was incorrect.

Accordingly, plaintiff's motion for leave to amend the complaint will be granted in part and denied in part. Plaintiff will be granted leave to file a Third Amended Complaint including all of his proposed amendment's with the exception of the claim for the knowing inducement or participation in the breach of a fiduciary duty which is asserted in Count IV.
In addition, plaintiff will be granted leave to include in his Third Amended Complaint the claim for intentional interference with contractual relations which was set forth in his Amended Complaint in the 1988 action. Because the Court granted summary judgment on RICO claims identical to those contained in the Third Amended Complaint by Order dated April 5, 1991, plaintiff will not be granted leave to include the RICO claims in his Third Amended Complaint.

An appropriate order will follow.

*ORDER*
AND NOW, to wit, this 10th day of June, 1992, upon consideration of the Motion of plaintiff, Wilbur W. Pierce, for Leave to File a Third Amended Complaint (Document No. 126), and the responses of the parties, IT IS ORDERED that the Motion of plaintiff, Wilbur W. Pierce, for Leave to File a Third Amended Complaint is GRANTED IN PART AND DENIED IN PART, as follows:

1. That part of plaintiff's Motion which seeks leave to correct the words and phrases in paragraphs 17, 18 and 44 of the Second Amended Complaint is GRANTED;

2. That part of plaintiff's Motion which seeks leave to delete the fraud count contained in the Second Amended Complaint is GRANTED;

*14 3. That part of plaintiff's Motion which seeks leave to add a new paragraph 45 dealing with the conduct of CitiCorp Industrial Credit, Inc., in connection with the breaches of fiduciary duties owed to plaintiff, Rossetta Corporation and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1992 WL 165817 (E.D.Pa.)

**(Cite as: 1992 WL 165817 (E.D.Pa.))**

Page 12

Automatic Credit Acquisitions, Inc., is GRANTED;

4. That part of plaintiff's Motion which seeks to add new paragraphs 67 and 68 which describe and clarify the damages sustained by plaintiff, Rossetta Corporation and Automatic Credit Acquisitions, Inc., will be GRANTED;

5. That part of plaintiff's Motion which seeks leave to assert the claims set forth in Count V will be GRANTED; and,

6. That part of plaintiff's Motion which seeks leave to assert the claims set forth in Count IV will be DENIED.

IT IS FURTHER ORDERED that the part of this Court's April 5, 1991, Order granting summary judgment on Count V of plaintiff's Amended Complaint, which sets forth a claim for intentional interference with contractual relations, is VACATED. Plaintiff is granted leave to include in the Third Amended Complaint the allegations contained in Count V of the Amended Complaint.

IT IS FURTHER ORDERED that, because the Court granted summary judgment on plaintiff's claims under the Racketeer Influenced Corrupt Organizations Act by Order dated April 5, 1991, plaintiff is not granted leave to include such claims in the Third Amended Complaint.

> FN1. Rossetta and Automated are named as nominal defendants in order to maintain the suit as a stockholder derivative action. Plaintiff also presses his claims in an individual capacity.
>
> FN2. John Dewey, William Urban, and Stephen Rosenthal were corporate officers of CIC at the time of the events central to this case.
>
> FN3. The FSG officers named as third-party defendants are Eric L. Blum, Alexander Murphy, Randy L. Rissman, Bruce Weber, Barry Blecherman, A. Vincent Loro, Edward L. Rees, and Mark Waser. Each was a former associate of Pierce at Rossetta/Automated.
>
> FN4. CIC also counterclaimed against Pierce under a breach of warranty theory. This counterclaim was dismissed by the Court by Order of December 3, 1990, for failure to state a claim upon which relief can be granted.
>
> FN5. There is a factual dispute between the parties on this point. Pierce testified at deposition that he was led to believe by Rosenthal that Rossetta/Automated would receive the contract if Pierce stepped down as an officer and board member of Rossetta/Automated. (Pierce Dep. at 10-13, Ex. Q to Def.s' Memo. in Support of Motion for Sum.J. (Doc. No. 46)). The defendants claim that Rosenthal merely expressed CIC's disinclination to deal with Rossetta/Automated so long as Pierce was involved at any level.
>
> FN6. At least four programmers (Barry Blecherman, A. Vincent Loro, Edward Rees and Mark Waser) formerly associated with Rossetta/Automated began working with FSG on the CIC project.
>
> FN7. This Court's Order of April 5, 1991 granting partial summary judgment was interlocutory and therefore is subject to revision at any time. *See* Fed.R.Civ.P. 54(b).
>
> FN8. Section § 874 states as follows:
> One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation.
> *Restatement (Second) of Torts* § 874 (1979)
>
> Comment c of § 874 states, *inter alia*, as follows:
> A person who knowingly assists a fiduciary in committing a breach of trust is himself guilty of tortious conduct and is

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 13

1992 WL 165817 (E.D.Pa.)

**(Cite as: 1992 WL 165817 (E.D.Pa.))**

subject to liability for the harm thereby caused. (See § 876).
*Restatement (Second) of Torts* § 874 cmt. c (1979).

FN9. Section § 876 states, *inter alia,* as follows:
For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he ...
(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself ...
*Restatement (Second) of Torts* 876 (1979).

FN10. The Court in *Burnside* went on to recognize a limitation on this kind of liability when it held that "the law of this Commonwealth forecloses the assertion of a cause of action for concerted action were the plaintiff is unable to isolate a particular manufacturer [defendant] as a causative agent of his injuries." *Burnside,* 505 A.2d at 984 (bracketed material added). Such a limitation on liability under § 876 clearly would not apply to the case at bar. CIC has always been identified as the person acting in concert with the alleged wrongdoers, the third-party defendants.

FN11. Defendants argue that the Pennsylvania courts that have looked to section 876(b) for guidance in fashioning "aiding and abetting" analogues to criminal accomplice liability do so only where criminal statutes have given rise to civil causes of action. In light of the decisions in *Burnside, Kline,* and *Friedman,* cited above, in which aiding and abetting liability has been recognized outside of the criminal context this Court rejects defendant's contention.

FN12. *See supra* note 8.

FN13. Plaintiff's argument that New York Law should apply to plaintiff's proposed Count IV if the Court concludes that such a claim would not be recognized in Pennsylvania is rejected. This Court has already determined that Pennsylvania law should apply to the state law claims and defenses in this case. (Memorandum and Order, April 5, 1991, 13-14.)

FN14. Rule 15(c) was amended on April 30, 1991. In the Amending Order, the United States Supreme Court stated that the "changes in the Federal Rules of Civil Procedure ... shall take effect on December 1, 1991, and shall govern all proceedings in civil actions thereafter commenced, and insofar as just and practicable, all proceedings in civil actions then pending."
*Order Amending Federal Rules of Civil Procedure,* April 30, 1991. The instant matter was filed before December 1, 1991.
Because the Court finds that plaintiff's aiding and abetting claim would relate back under both the old Rule 15(c) and the amended Rule 15(c), the Court need not address whether applying the amended rule would be "just and practicable."

FN15. This Court concluded in its April 5, 1991, decision that plaintiff's three prong civil conspiracy claim was timely pursuant to the operation of the Pennsylvania "saving statute" and discovery rule. Defendants did not raise the issue of whether the new prongs of the civil conspiracy claim were separately barred.
In any event, the additional two prongs of the civil conspiracy claim were treated by the Court as part of the same cause of action for purposes of the "saving statute" because they were amplifications of the plaintiff's preexisting civil conspiracy claim and therefore did not state a new or different cause action. *Connor v. Allegheny General Hospital,* 501 Pa. 306, 461 A.2d 600, 602 (1983).
In its April 5, 1991, opinion the Court identified one of the underlying torts in the civil conspiracy claim as being fraud.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1992 WL 165817 (E.D.Pa.)  
**(Cite as: 1992 WL 165817 (E.D.Pa.))**

Page 14

(Memorandum and Order, April 5, 1991, at 12.) A careful reading of the Amended Complaint and the preceding complaints discloses that that statement was incorrect. Fraud is not, and was not, one of the underlying torts in the civil conspiracy claim.

FN16. In this Court's opinion dated April 5, 1991, the Court concluded that there was a issue of fact as to when plaintiff "discovered" the activity which forms the basis of his claims. (Memorandum and Order, April 5, 1991, at 12-13.) For purposes of this Motion for Leave to Amend, the Court will accept plaintiff's testimony that he did not become aware of FSG's agreement with CIC until April 4, 1985, when he was told of the CIC/FSG deal by his sister. (Memorandum and Order, April 5, 1991, at 13.)

FN17. If the "saving statute" applies, this claim will be treated as if it were commenced on February 9, 1987, the date that the action before Judge Cahn was filed, which is within the two-year statute of limitation period following April 4, 1985.

FN18. *See supra* notes 16 & 17.

FN19. In their motion for summary judgment defendants also asserted in a footnote that plaintiff had presented no evidence of inducements offered by CIC to Blum to secure the services of the Rossetta programmers. (Def.s' Memo. in Support of Motion for Sum.J. (Doc. no. 46), at 44 n. 44.) Even if this assertion is true, it is not a ground for granting summary judgment because evidence of such an inducement is not an essential element of the tort of intentional interference with contractual relations. *Pawlowski v. Smorto,* 403 Pa.Super. 71, 588 A.2d 36, 39-40 (1991).

1992 WL 165817 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

- 2:88CV05873 (Docket)  
(Jul. 29, 1988)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.