# Exhibit U

Not Reported in F.Supp.2d  
RICO Bus.Disp.Guide 9810  
(Cite as: 1999 WL 1204352 (E.D.Pa.))  
<KeyCite Citations>

Page 443

United States District Court, E.D. Pennsylvania.

Stanley SPITZER, M.D., Daniel Mason, M.D.;
Jerrold Schwaber, Ph.D. and Donald
Fox, M.D., on behalf of themselves and all others
similarly situated,
Plaintiffs,
v.
Sherif ABDELHAK, Donald Kaye, M.D., David
McConnell, Leonard L. Ross, Ph.D,
Nancy A Wynstra, ESQ. Dwight Kasperbauer,
Anthony M. Sanzo, William P. Snyder,
III, Douglas D. Danforth, J. David, Barnes, Frank
Cahouet, Harry R., Edelman,
III, Robert L. Fletcher, Francis B. Nemick, Jr.,
Thomas, O'Brien, Robert B.
Palmer, and John Does 1-100, Defendants.

No. CIV. A. 98-6475.

Dec. 15, 1999.

MEMORANDUM

BUCKWALTER.

*1 Presently before the Court are the Motions to Dismiss of various Defendants. [FN1] Separate motions to dismiss have been submitted by Officer Defendants Abdelhak, Kaye, McConnell, Wynstra and Sanzo, as well as by Trustee Defendant O'Brien. Defendants Kasperbauer and Ross submitted a joint motion and the Trustee Defendants submitted a group motion [FN2]. For the reasons stated below, the Motions of all Defendants are denied in part and granted in part.

> FN1. Seven of the defendants were officers of the various entities discussed throughout the memo ("Officer Defendants"). The remaining defendants were trustees of the same entities, specifically AHERF (the "Trustee Defendants"). The Officer Defendants are as follows: Sherif Abdelhak ("Abdelhak") was at all relevant times, the President and CEO of AHERF; Donald Kaye ("Kaye") was President and CEO of Allegheny University Hospitals-East and the Allegheny University of the Health Sciences ("AUHS"); David C. McConnell ("McConnell") was Vice-President and Chief Financial Officer ("CFO") of AHERF; Leonard Lester Ross, Ph.D ("Dr.Ross") served as Provost of AUHS and previously was the dean of MCP Hahnemann School of Medicine; Nancy Ann Wynstra, Esq. ("Wynstra") was at all relevant times the Executive Vice President, General Counsel and Secretary of AHERF; Dwight L. Kasperbauer ("Kasperbauer") was at all relevant times Executive Vice President and Chief Human Resources Officer at AHERF; Anthony M. Sanzo ("Sanzo") replaced Abdelhak as AHERF CEO in June, 1998 and before that had held several key positions within AHERF and related entities. The Trustee Defendants include William P. Snyder ("Snyder"), Douglas D. Danforth ("Danforth"), J. David Barnes ("Barnes"), Frank Cahouet ("Cahouet"), Harry R. Edelman, III ("Edelman"), Robert L. Fletcher ("Fletcher"), Francis B. Nemick ("Nemick"), Thomas O'Brien ("O'Brien") and Robert B. Palmer ("Palmer").

> FN2. The Court will refer throughout this memorandum to the various Defendants' Motions to Dismiss as the "Defendants' Motion to Dismiss". When applicable, it will refer to the specific Defendant's Motion.

I. FACTUAL BACKGROUND

This action for civil violations of the RICO statute, as well as claims for intentional interference with contractual relations and civil conspiracy, arises from the demise of Allegheny Health Education and Research Foundation, a now bankrupt charitable foundation. ("AHERF"). AHERF consisted of many separate legal entities which operated through several subsidiaries. See Compl. ¶ 13. The two main subsidiaries relevant to this case are Allegheny East and Allegheny West. Allegheny East consisted of the following facilities:
a. Allegheny University of the Health Sciences ("AUHS")
b. Allegheny University Medical Practices ("AUMP")
c. Allegheny University Hospitals, Centennial including Graduate, City Avenue and Parkview Hospitals
d. Allegheny University Hospitals East including Bucks County, Elkins Park, Hahnemann, MCP and St. Christopher's Hospital for Children Hospitals.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



e. Rancocas General Hospital in New Jersey
All of the Allegheny East entities, with the exception of Rancocas General Hospital, filed for Chapter 11 bankruptcy in July, 1998.

The path to bankruptcy began in 1988 when, under the leadership of Abdelhak, AHERF began to create the Allegheny East network with the purchase of the Medical College of Pennsylvania ("MCP"). The rationale behind this move was to affiliate Allegheny General Hospital ("AGH") in Pittsburgh with a teaching hospital in order to continue the stream of federal money that AGH had been receiving to train medical interns. Compl. ¶ 17. Throughout the 1990's, Allegheny East continued to grow by acquiring hospitals in the Philadelphia area. It also began purchasing the private practices of physicians. Compl. ¶ 21. However, by early 1998, Allegheny East was losing a great deal of money, up to $1 million a day. Although several attempts were made to salvage the division, they all ultimately failed. Therefore, on July 21, 1998 AHERF filed under Chapter 11 for itself and Allegheny East. The hospitals operated through the Allegheny West subsidiary were exempted from the bankruptcy. Compl. ¶ 41.

II. PROCEDURAL BACKGROUND

This action was originally filed on December 14, 1998. The proceedings were stayed by this Court on March 25, 1999 pending a determination by the Bankruptcy Court whether this action would violate the automatic stay of the related bankruptcy proceedings. However, on August 17, 1999, this Court's stay was lifted for the limited purpose of allowing the parties to proceed with motions to dismiss. Thereupon the Officer and Trustee Defendants submitted the present Motions to Dismiss.

III. LEGAL STANDARD

*2 When deciding to dismiss a claim pursuant to Rule 12(b)(6) a court must consider the legal sufficiency of the complaint and dismissal is appropriate only if it is clear that "beyond a doubt ... the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." McCann v. Catholic Health Initiative, 1998 WL 575259 at *1 (E.D.Pa. Sep.8, 1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The court assumes the truth of plaintiff's allegations, and draws all favorable inferences therefrom. See, Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d. Cir.1989). However, conclusory allegations that fail to give a defendant notice of the material elements of a claim are insufficient. See Sterling v. SEPTA, 897 F.Supp. 893, 895 (E.D.Pa.1995). The pleader must provide sufficient information to outline the elements of the claim, or to permit inferences to be drawn that these elements exist. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d. Cir.1993).

IV. DISCUSSION

The Plaintiffs assert a substantive RICO claim as well as RICO conspiracy by Defendants under 18 U.S.C. §§ 1962(c) and (d) respectively (Count I). In addition, they allege intentional interference with current and prospective contractual relations (Count II), and civil conspiracy (Count III), under state law. Pursuant to § 1962(c), it is unlawful "for any person employed by or associated with any enterprise engaged in or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ...." § 1962(d) dictates that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." [FN3] Not only does the Defendant have to meet all the requirements of § 1962(c), but the Plaintiff must properly allege that the Defendant committed the elements of the predicate acts that form the basis for the "pattern of racketeering activity".

> FN3. Under the Definitions section of the statute set forth at 18 U.S.C. § 1961; (1) "Racketeering activity" means (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical ... which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of > title 18, United States Code:....Section 1341 (relating to mail fraud), ... Section 1343 (relating to wire fraud) ...; (3) "person" includes any individual or entity capable of holding a legal or beneficial interest in property; (4) "enterprise" includes any individual,

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity; (5) "pattern of racketeering activity" requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding the period of imprisonment) after the commission of a prior act of racketeering.

A. Rico Standing

The Defendants' first challenge the Plaintiffs' standing to bring this suit. In order to have RICO standing, a plaintiff must allege facts sufficient to establish that the RICO pattern complained of is the proximate cause of one's injury. Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268-70, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). A plaintiff fails to satisfy RICO standing requirements if his injury merely flows from that incurred by a third party. Id. at 271. The Holmes Court found that it was unlikely that Congress intended an expansive reading of RICO. Id. Therefore, "but for" causation is not enough to confer standing under RICO. See In re Phar Mor, Inc. Securities Litigation, 900 F.Supp. 777, 781-83 (W.D.Pa.1994) (plaintiff's injury caused by fraud considered derivative when fraud was not directed towards plaintiffs and damages sustained were incidental to the injuries suffered by the corporation). The directness relationship of injury to fraud has been central to the analysis of proximate causation for several reasons. See Assoc. Gen. Contractors of Calif. v. Calif. St.. Council of Carpenters, 459 U.S. 519 540, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983). First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors. Holmes, 503 U.S. at 269-270. Second, distinct from the problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. Blue Shield of Virginia v. McCready, 457 U.S. 465, 473-475, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982). Third, directly injured individuals can generally vindicate the law without raising these two problems. Holmes, 503 U.S. at 270.

*3 Applying these factors to the present case shows that Plaintiffs have standing to assert their RICO claims. The Plaintiffs in this case allege that the requisite predicate acts were directed towards them. See Compl. ¶¶ 18-19, 21, 27. They claim that the Defendants, as a necessary part of the fraudulent scheme, defrauded them in order to profit from Plaintiffs' businesses and professional reputations. Following the current pleadings as now alleged, a trier of fact could trace the cause of Plaintiff's loss directly to Defendants' actions. Since they now allege injuries to both their property and reputation, the injury is direct. Second,, the Plaintiffs are not seeking the same damages for the same injury as other parties. AHERF could not possibly make a claim for loss of "professional reputation", as can the Plaintiffs. Therefore, the claims by Plaintiffs could not be raised by AHERF or any other third party.

It is clear that Plaintiffs do not have automatic standing under RICO merely because of their status as employees. See Rehkop v. Berwick Healthcare Corp. 95 F.3d 285 (3d Cir.1996) (hospital employee did not have standing because hospital's alleged racketeering did not substantially cause his termination). However, this holding does not establish a black letter rule against any employee bringing suit alleging RICO injuries. See Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1170 (3d Cir.1989) (loss of earnings, benefits, and reputation were sufficient injuries to state claim under section 1962(d)). So long as the plaintiffs can allege a direct relationship between their injury and the racketeering activity engaged in by the Defendants, standing can be conferred. See Mruz v. Caring, Inc., 991 F.Supp. 701, 712 (D.N.J.1998) (plaintiff had standing because his termination was a direct result of the enterprise's racketeering activity).

Plaintiffs allege that their injuries would have resulted even without the insolvency of AHERF and Allegheny East. See Compl. ¶ 43. This helps distinguish this case from many other cases where Plaintiffs incurred losses only as a result of an entity's insolvency. See, e.g. Kaiser v. Stewart, 965 F.Supp. 684 (E.D.Pa.1997) (Policyholders of failed insurance company had no standing because the fraud was directed at Insurance Commission and no injuries would have resulted if the company had

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Westlaw

not failed). In the long run, Plaintiffs may not be able to prove direct damages unrelated to the insolvency of AHERF and Allegheny East. The facts may clearly show that Plaintiffs' injuries resulted only from the demise of the entities that provided their income. If that becomes the case, then their injuries would be derivative and their RICO claim would have to be dismissed because of a lack of standing. However, at this point, the Court can not find that there is no set of facts under which the Plaintiffs could prove that their injuries are directly related to the alleged fraud perpetrated by the Defendants. Therefore, the motion to dismiss must be denied on the standing issue.

B. Elements of a RICO Claim

*4 The Defendants challenge every element of the Plaintiffs' substantive RICO claim. In order to state a RICO claim under 1962(c), Plaintiffs' must allege the existence of an enterprise, that the person was associated with the enterprise and participated in its affairs, through a pattern of racketeering activity.

1. Enterprise:

RICO requires that Plaintiffs plead the existence of an enterprise (affecting interstate commerce), comprised of a group of persons or entities associated together, formally or informally, for the purpose of engaging in a course of conduct. An enterprise is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). The Plaintiff's have pleaded four alternative enterprises. For example, one alleged enterprise, consists of AHERF and Allegheny East, formed and operated for the common purpose of benefitting the individual Defendants and AHERF's western operations. See Compl. ¶¶ 61(c). Plaintiffs have alleged that it was controlled by Defendants and operated as a continuing unit. At this stage of the proceedings Plaintiffs have alleged enough information for Defendants to understand which enterprise was used to conduct racketeering activity. The Court also disagrees with the Trustee Defendants assertion that the Plaintiffs have failed to allege the five elements necessary to plead the existence of a RICO enterprise found by the district court in *Lujan v. Mansmann,* 956 F.Supp. 1218, 1231 (E.D.Pa.1997). See Trustees' Memo at 15. The Court also finds that an enterprise which controlled 10 hospitals in Pennsylvania and one in New Jersey would likely have an effect on interstate commerce.

2. Control:

In order to state a claim for violation of § 1962(c), a plaintiff must allege that defendants participated directly or indirectly in the conduct or affairs of the enterprise. The Supreme Court has clarified this prerequisite to liability as requiring that the defendant participate in the operation or management of the enterprise itself. *Reves v. Ernst & Young,* 507 U.S. 170, 183, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). The Reves Court held that operation and control could extend beyond the upper levels of management to anyone who exerts control over its affairs. Id. The Officer Defendants were top management and are alleged to have played active roles in the management of AHERF and Allegheny East. See *Jaguar Cars v. Royal Oak Motor Car Co.,* 46 F.3d 258, 264 (3d Cir.1995) (corporate officers and directors managing affairs are no longer shielded from liability after Reves). The Trustee Defendants were members of the key committees within AHERF. These Defendants voted on compensation and other crucial matters that are alleged to be part of the overall fraudulent scheme behind this action. Liability under § 1962(c) is not limited to those with primary responsibility for the enterprise's affairs, and while defendants must have participated in the enterprise's affairs, the level of that participation need not be substantial. Reves, 507 U.S. at 179. The Plaintiffs have adequately plead control by all Defendants.

3. Predicate Acts:

*5 In the instant case, the predicate acts alleged are mail fraud in violation of 18 U.S.C. § 1341; wire fraud (18 U.S.C. § 1343), money laundering (18 U.S.C. § 1957) and interstate transportation of fraudulently obtained money (§ 18 U.S.C. 2314). All of these predicate acts contain an element of fraud. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The Third Circuit has held that Rule 9(b) requires plaintiffs to plead with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. See Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir.1984), cert denied, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985). Allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Id. The rule is satisfied where some precision and some measure of substantiation is present in the pleadings. See Killian v. McCulloch, 850 F.Supp. 1239, 1254 (E.D.Pa.1994).

The Defendants argue that the Plaintiffs have not adequately plead the requisite predicate acts as to each of the individual Officer and Trustee Defendants. The federal mail and wire fraud statutes prohibit the use of mails or interstate wire for the purpose of carrying out any scheme or artifice to defraud. 18 U.S.C. §§ 1341 and 1343. Wholly intrastate use of the mails for fraud violates the mail fraud statute. In re Burzynski, 989 F.2d 733, 742 (5th Cir.1993). However, the wire fraud statute is only violated through the interstate use of the wire. See Smith v. Ayrees, 845 F.2d 1360, 1366 (5th Cir.1988). Since mere intrastate use of the wire in furtherance of fraud can not constitute wire fraud, it follows that these same acts cannot serve as predicate acts for a RICO Complaint. Id.

In the present Complaint, it is alleged that the defendants used interstate wires and/or the mails in furtherance of their scheme to defraud the Plaintiffs because by these mediums the Plaintiffs received their pay. See Compl. ¶ 47. The Plaintiffs do not state which wire transfers in furtherance of the fraud were made interstate. They also do not explain how "mailing or wiring salary checks" furthered the fraudulent scheme. For purposes of the motion to dismiss, though, the Plaintiffs do not need to further explain how the mailing or wiring of checks contributed to fraud. See Tabas v. Tabas, 47 F.3d 1280, 1295 n. 18 (3d. Cir.1995) (wholly innocent mailings can satisfy the making element). "Mailings designed to lull victims into a false sense of security .... and therefore make the apprehension of defendants less likely than if no mailings had taken place" can constitute actionable fraud. See Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1416 n. 3 (3d Cir.1991). The law of this Circuit suggests that if Plaintiffs received any mail or interstate wires which are remotely connected to a concurrent scheme to defraud, the predicate acts of mail and wire fraud are met. Since in this case the Plaintiffs have alleged both a scheme to defraud and that they received mailings and wires from the Defendants, the Plaintiffs have adequately plead "predicate acts".

*6 Defendants argue that Plaintiffs have failed to connect the fraud to the mailing or wirings. But that is not true, even if the connection is somewhat nebulous. The Plaintiffs allege that the Defendants' fraud of portraying Allegheny East as a viable health care system would have been exposed earlier if the Defendants had not used the mail and wires to send paychecks to them. The inference that could be drawn is that Plaintiffs would have realized much sooner the precarious position of Allegheny East if they had not received their pay by wire or mail.

In order to plead mail or wire fraud as a predicate act of which each Defendant must have participated two or more times, the Plaintiff must allege facts giving rise to a strong inference of scienter on the part of each Defendant. See, e.g., Beck v. Manufacturer's Hanover Trust, Co., 820 F.2d 46, 49-50 (2d Cir.1987), cert. denied 484 U.S. 10005, overruled on other grounds by, United States v. Indelicato, 865 F.2d 1370, (2d Cir.1989). Plaintiffs can establish scienter by pleading facts showing conscious or reckless behavior to defraud. Knowledge concerning a company's key businesses or transactions may be attributable to the company, its officers and directors. See, In re Aetna Inc. Sec. Litigation, 34 F.Supp.2d 935, 953 (E.D.Pa.1999) (Padova, J.); Epstein v. Itron, 993 F.Supp. 1314, 1325 (E.D.Wash.1998) ("facts critical to a business' core operation or an important transaction generally are so apparent that their knowledge may be attributed to the company and its officers"). The major purchases engaged in by AHERF during the 1990's were important transactions and the precarious state of the foundations finances were facts critical to such transactions. Therefore, each of the Officer Defendants, all of who are alleged to have played a key role in the operations of AHERF and Allegheny East, could probably have attributed to them the knowledge of the fraud alleged by Plaintiffs, as could many of the Trustee Defendants.

Another method for establishing a strong inference of scienter is to allege facts showing a motive for

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



committing fraud and a clear opportunity for doing so. See Goldman v. Belden, 754 F.2d 1059, 1070 (2d Cir.1985). Plaintiffs have pleaded facts establishing motive for each of the Defendants. In essence, the Plaintiffs allege that Abdelhak and the other Defendants defrauded the Plaintiffs in order to "raid the assets" of Allegheny East so as to increase their wealth and prestige. That the "mailing" part of the fraud was "routine" does not affect its qualification as a predicate act. The Plaintiffs have alleged fraud that was at least incidentally assisted by the use of the mails and the wires. The motive for all Defendants to engage in this fraud was to increase their salary and prestige in the community. The Plaintiffs specifically allege that the Defendants voted to increase their own salaries even in the face of bankruptcy. Compl. ¶¶ 7, 26, 34. Since Plaintiffs also allege that the misleading statements concerning the goals and health of the Allegheny system were made in order to increase prestige, a favorable inference towards Plaintiffs' position could be made that by increasing the size of the enterprise they controlled, the Trustee Defendants and Officer Defendants expected to increase their professional prestige. Prestige and wealth could also be inferred to be the motivations behind the misrepresentations made both to Plaintiffs and in AHERF's financial statements concerning the financial health of the organization.

*7 The opportunity prong of the "motivation and opportunity" scienter analysis essentially asks whether each of the Defendants played a part or had the opportunity to defraud Plaintiffs. The Plaintiffs have not, in each instance, alleged specific acts against each individual defendant. However, such an absence, at this stage of the proceedings is not fatal to a complaint. The Plaintiffs state, and we accept as true, that the information before them at this point is not adequate to more fully detail their fraud allegations against the individual defendants. [FN4] When Defendants remain in control of the necessary details, the requirements of Rule 9(b) can be more leniently met. See S & W Contracting Services, Inc., 1998 U.S. Dist. LEXIS 3966 at *10-12. (Plaintiff's complaint met 9(b) requirements despite failure to provide date, time or details of alleged frauds where that information lay within the sole possession of the defendants.) The Plaintiffs do make specific allegations against the Defendants as a group. For example, they allege that the Defendants caused the removal of large amounts of funds from restricted accounts in order to cover Allegheny East's pitiful financial state. Compl. ¶¶ 27-30. The Plaintiffs also state that every Officer Defendant signed the fraudulent 1997 Annual Report. As for the Trustee Defendants, even if their position within AHERF were not central enough to attribute knowledge of the fraudulent scheme to them, they at least had the opportunity to participate in the fraud through the positions that they held. Trustee Defendants Snyder, Barnes and Edelman also allegedly signed the 1997 Annual Report. The named Trustees are members of the Executive, Compensation and Ethics Committee of the Boards. According to the Complaint, they quadrupled AHERF's D & O insurance in the Spring of 1998 with the intention of protecting themselves and the officers against disaster in the coming collapse of Allegheny East. See Compl. ¶ 10. The unique position that these individuals held within the larger group of trustees gave them an opportunity to participate in the continuing fraud. Therefore, on the basis of the Complaint, the Court finds that Plaintiffs have adequately plead predicate acts against each of the Officer and Trustee Defendants.

> FN4. The situation here is distinguishable from Saporito v. Combustion Eng'g, Inc., in which the Court found no indication by Plaintiffs that the evidence needed to flesh out its allegations were not available to them at the time of the Complaint.

4. Pattern:

In order to show a pattern of racketeering activity, the Plaintiffs must show that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 241, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The H.J. Court described continuity as referring to either a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. Id. at 241. A party may establish closed end continuity by proving a series of related predicates extending over a substantial period of time. Id. at 242. The Third Circuit has consistently held that periods of less than one year are not "substantial periods of time" for purposes of forming a RICO pattern. Tabas, 47 F.3d at 1293. Defendants argue that Plaintiff only has alleged fraudulent statements that were made after the beginning of 1998 (thereby extending over less than

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Not Reported in F.Supp.2d                                                                                           Page 449
(Cite as: 1999 WL 1204352, *7 (E.D.Pa.))

a twelve-month period). However, this does not recognize that what Plaintiffs have alleged is that the Defendants have engaged in a fraudulent scheme since 1994, and used the mails to conduct the fraud by mailing salary checks to Plaintiffs and others. Activity extending over four years satisfies the continuity requirement. See United States v. Pelullo, 964 F.2d 193, 209 (3d Cir.1992) (holding that a jury could find nineteen month period sufficient to establish continuity). Even so the Plaintiffs have clearly stated that the June 1997 Annual Report contained misrepresentations. See Compl. ¶ 22. Therefore, contrary to Defendant's position, the Plaintiff's have alleged specific fraudulent acts extending beyond the twelve month limit needed to satisfy the continuity requirement. In determining continuity, the Court looks beyond the mailing prong of the mail fraud predicate to the duration of the "scheme to defraud". Tabas, 47 F.3d at 1293. The Plaintiffs have sufficiently alleged that Defendants planned to defraud them since 1994 by falsely stating the goals and viability of the Allegheny System. The Plaintiffs have plead continuity.

5. Relatedness:

*8 Predicate acts are sufficiently related when they have similar purposes, results, participants, victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated events. H.J. Inc., 492 U.S. at 240. As the Third Circuit has stated, the "relatedness" test as outlined in H.J. is broad. See Bank v. Wolk, 918 F.2d 418, 422 (3d Cir.1990). Plaintiffs have alleged that the same Officer and Trustee Defendants committed a series of illegal predicate acts for the same purpose, to enrich themselves personally and professionally. That is sufficient to show relatedness. Therefore, Plaintiffs have adequately plead a pattern of racketeering activity.

C. RICO Conspiracy

In order to state a claim under RICO's § 1692(d), a plaintiff must allege (1) an agreement to commit the predicate acts of fraud, and (2) knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate § 1962(a), (b), or (c). Odesser v. Continental Bank, 676 F.Supp. 1305, 1312 (E.D.Pa.1987). "Allegations of conspiracy are not measured under the ... [Fed.R.Civ.P.] 9(b) standard, which requires greater particularity of allegation of fraud, but are measured under the more liberal ... Fed.R.Civ.P. 8(a) pleading standard." Rose v. Bartle, 871 F.2d 331, 366 (3d. Cir.1989). To plead conspiracy adequately, a plaintiff must set forth the period and objective of the conspiracy as well as certain actions taken by the defendants to achieve its purpose. See Shearin v. Hutton, 885 F.2d 1162, 1166 (3d Cir.1989). The Plaintiffs have stated that the time of the conspiracy was from 1994 to the present (the time of the filing of the Complaint). See Compl. ¶ 51. The objective alleged by Plaintiffs was to expand and operate Allegheny East by fraudulently representing its financial stability in order to reap benefits on the Defendants. See Compl. 2-3. Finally, Plaintiffs allege many acts committed by Defendants in furtherance of the conspiracy, including expansion through the purchase of hospitals and physician practices, falsifying financial statements and misrepresenting the viability of the organization. See Compl. ¶¶ 16-34. It is also necessary for the Plaintiffs to allege an agreement among the conspirators. See United States v. Boffa, 688 F.2d 919, 937 (3d Cir.1982) (individual, by his words or actions, must have objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise through the commission of two or more predicate crimes). The Plaintiffs specifically allege that all of the Defendants agreed to participate in the fraudulent scheme. See Compl. ¶ 63. Therefore, the Plaintiffs have adequately plead conspiracy under § 1962(d).

D. State Law Claims

This Court has subject matter jurisdiction over the federal claims of the Plaintiffs under 28 U.S.C. § 1331. Now having determined that the Plaintiffs have stated federal RICO claims under § 1962(c)-(d), the Court can have supplemental subject matter jurisdiction over the Plaintiffs state law claims as well. See 28 U.S.C. § 1367(a).

1. Civil Conspiracy:

*9 A cause of action for civil conspiracy requires that two or more persons combine or enter an agreement to commit an unlawful act or to do an otherwise lawful act by unlawful means. Slaybaugh v. Newman, 330 Pa.Super. 216, 221, 479 A.2d 517 (1984). Proof of malice is an essential part of a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.2d
(Cite as: 1999 WL 1204352, *9 (E.D.Pa.))

Page 450

cause of action for conspiracy. Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 211, 412 A.2d 466 (1979). However, an action will lie only where the sole purpose of the conspiracy is to cause harm to the party who claims to be injured. Id. ("Proof of malice, i.e., an intent to injure, is essential in proof of conspiracy ... There are no facts of record which indicate that [appellee] acted solely to injury appellants"). See Sim Kar Lighting Fixture Co. v. Genlyte, Inc. 906 F.Supp. 967, 977 (D.N.J.1995) (claim dismissed when plaintiff failed to allege facts suggesting that conspiracy's objective was solely to harm plaintiff). Civil conspiracy becomes actionable when some overt act is done in pursuance of the common purpose or design held by the conspirators, and actual damage results. See Cohen v. Pelagatti, 364 Pa.Super. 573, 528 A.2d 657 (Pa.Super.1987). The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred. See Flanagan v. Shively, 783 F.Supp. 922, 928 (M.D.Pa.1992). But plaintiffs are not required to allege exactly where, when and with what words an agreement was made. Id. at 929.

As discussed above with regard to the RICO conspiracy, Plaintiffs have alleged an agreement by the Defendants to conduct unlawful acts and that Defendants took actions in furtherance of the conspiracy. However, the state law differs from the federal law in its requirement that the Plaintiffs also allege malice. Merely describing something as malicious is not sufficient to give the proper inference of malice, meaning an intent to injure. As described above, malice requires an allegation that the sole purpose of the conspiracy was to injure the Plaintiffs. See Thompson, 488 Pa. at 211, 412 A.2d 466 (the Pennsylvania Supreme Court held that where the facts show that a person acted to advance his own business interests, those facts constituted justification and negate any alleged intent to injure ) As Plaintiffs have stated elsewhere, the Defendant's purpose of the conspiracy was to benefit themselves personally and professionally. The fact that it may have been necessary to deceive Plaintiffs in order to carry out their scheme in no way indicates that they acted with malice solely to injure Plaintiffs. Therefore, the Defendants Motion to dismiss Count III for Civil Conspiracy is granted.

2. Intentional Interference with Contractual Relations:

To maintain an action for intentional interference with contractual relations a plaintiff must allege:
(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party;
*10 (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring;
(3) the absence of a privilege or justification on the part of the defendant; and
(4) the occasioning of actual legal damage as a result of the defendant's conduct.
Shiner v. Moriarty, 706 A.2d 1228, 1238 (Pa.Super.1998).

Plaintiffs adequately allege existing contractual relations with third parties. See Compl. ¶ 66. The Plaintiffs also allege that Defendants acted purposefully, with knowledge that their actions would damage Plaintiffs' contractual relations. See Compl. ¶ 67. The issue remains whether Defendants had the specific intent to harm the Plaintiffs existing and prospective contractual relations. But intent may be shown "where the actor knows an injury is certain or substantially certain to occur as a result of his action. Total Care Sys., Inc. v. Coons, 860 F.Supp. 236, 241 (E.D.Pa.1994). Since Plaintiffs have alleged that Defendants had knowledge that Plaintiffs would be injured, they have satisfied the intent requirement [FN5]. The third element of a tortious interference claim is met by Plaintiffs claim that Defendants improper conduct was without justification or privilege. Compl. ¶ 68.

> FN5. The Plaintiffs allegations survive here because knowledge can be used to show intent and they allege knowledge by defendants. However, in the civil conspiracy context, the malice element requires the higher showing that the motivation behind the conspiracy be to injure the Plaintiffs. They have not alleged this set of facts.

The gravamen of this tort is the lost pecuniary benefits flowing from the contract itself; other losses, such as emotional distress and loss of reputation, are consequential harms. Shiner, 706 F.2d at 1239. Although non-pecuniary harms are recoverable in an intentional interference action, such an action cannot be maintained in the absence

of pecuniary loss flowing from the interference. Pelagatti v. Cohen, 370 Pa.Super. 422, 435, 536 A.2d 1337 (1987). Plaintiffs do claim injury to both their reputations and incomes. See Compl. ¶ 69. As long as some pecuniary loss has been alleged, non-pecuniary damages can be granted as well. See Shiner, 706 A.2d at 1239. The Court disagrees with Defendant Abdelhak's assertion that Plaintiffs have not alleged direct pecuniary loss. See Abdelhak Mem. at 29. Although Plaintiffs do not state how their patient income decreased as a direct result of Defendants' illegal conduct, they do allege that the income has decreased as an injury separate from their loss of professional reputation. See Compl. ¶ 69. Therefore, Plaintiffs claim for intentional interference with contractual relations will not be dismissed.

V. CONCLUSION

The Defendants' Motions to Dismiss are denied with respect to Count I (violations of 18 U.S.C. § 1962(c)-(d)-substantive RICO claim and RICO conspiracy) and Count II (intentional interference with contractual relations). However, Defendants' Motions are granted with respect to Count III (Civil Conspiracy).

An appropriate order follows.

ORDER

AND NOW, this 15th day of December, 1999, after consideration of the Defendants' Motions to Dismiss (Docket Nos. 34, 35, 36, 38, 39, 40, 41 and 45) and the Plaintiffs' response to the Motion to Dismiss (Docket No. 46), as well as the Defendants' Reply (Docket No. 47, 48, 49, 50, 51, 52, 57, and 64) and Plaintiffs' Sur-Reply (Docket No. 63), it is hereby ORDERED that:
  *11 1. The Motions to Dismiss of all Defendants are DENIED as to Counts I & II; and
  2. The Motions to Dismiss of all Defendants are GRANTED as to Count III.

1999 WL 1204352 (E.D.Pa.), RICO Bus.Disp.Guide 9810

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo