# EXHIBIT V

Not Reported in F.Supp.
(Cite as: 1993 WL 197031 (E.D.Pa.))
<KeyCite Yellow Flag>

Page 751

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

B. Ray THOMPSON, Jr., et al.
v.
GLENMEDE TRUST COMPANY, et al.

No. CIV. A. 92-5233.

June 8, 1993.

MEMORANDUM AND ORDER

HUTTON.

*1 Presently before the Court is a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 23.1, 12(b)(6) and 9(b), the plaintiffs' response and the defendants' reply. The Motion is filed on behalf of defendants Glenmede Trust Company, Glenmede Corporation, Thomas W. Langfitt, Albert E. Piscopo, J. Howard Pew, J. N. Pew, III, J. N. Pew, IV, R. Anderson Pew, John G. Pew, Jr., G. Thompson Pew, Jr., Francis M. Richards, Jr., Karin E. Myrin and Samuel W. Morris, Sr..

I. BACKGROUND

A. Parties

The plaintiffs in this matter include seven individual members of the Thompson family. [FN1] In addition, three plaintiffs have sued in their capacity as trustees of five Thompson family trusts. [FN2] The individual plaintiffs, in addition to their common bond in the Thompson family name, all hold shares of stock in Oryx Energy Corporation ("Oryx"). In addition, the five Thompson family trusts each hold shares of Oryx stock for the benefit of members of the Thompson family. Collectively, the plaintiffs were the second largest shareholder of Oryx. All plaintiffs shall be commonly referred to as the "Thompson Family" or "plaintiffs."

The plaintiffs have named as defendants the Glenmede Trust Company ("Glenmede Trust") and its parent Glenmede Corporation. Glenmede Trust is Glenmede Corporation's wholly owned subsidiary. The plaintiffs have also named J. Howard Pew, II, J. N. Pew, III, J. N. Pew, IV, R. Anderson Pew, John G. Pew, Jr., and G. Thompson Pew, Jr., as defendants (hereinafter "Pew Defendants"). These defendants are shareholders of Glenmede Corporation and have for the most part been directors of one or both of Glenmede Corporation and Glenmede Trust during the times relevant to the events complained of in the complaint. John G. Pew, Jr. was also a director of Oryx.

The complaint also names Thomas W. Langfitt. Mr. Langfitt is the president, chief executive officer and a director of both Glenmede Corporation and Glenmede Trust. Mr. Langfitt is also the president of seven trusts commonly known as the Pew Charitable Trusts. [FN3] In addition, the plaintiffs have named Albert E. Piscopo. Mr. Piscopo is the executive vice president and chief financial officer of Glenmede Corporation and Glenmede Trust. He was also a director of Oryx.

The plaintiffs have also named Glenmede Trust in its capacity as trustee of nine trusts. These trusts include the seven Pew Charitable Trusts and The Waldorf Educational Foundation, and The J. Howard Pew Fund for Presbyterian Uses. The remaining trustees of these trusts have also been named in the capacity as trustee. Defendants, J. Howard Pew, II, J. N. Pew, III, J. N. Pew, IV, and R. Anderson Pew, have been members of the board that assists in managing the Pew Charitable Trusts. Francis M. Richard, Jr. is sued in his capacity as co-trustee for the Medical Trust, one of the Pew Charitable Trusts. Karin E. Myrin and Samuel W. Morris, Sr. are sued in their capacities as co-trustees for the Waldorf Educational Foundation. The plaintiff has referred to all these trusts and trustees as the "Defendant Trusts."

*2 Finally, the plaintiffs have named Robert P. Hauptfuhrer. Mr. Hauptfuhrer is the chairman of the board, a director, and chief executive officer of Oryx.

B. Plaintiffs' Claims

The triggering event which prompted the filing of this diversity action involves a stock buy-back transaction in which Oryx purchased approximately 25.3 million shares held by the trusts of which

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.
(Cite as: 1993 WL 197031, *2 (E.D.Pa.))

Page 752

Glenmede Trust was trustee. Glenmede Trust held shares of Oryx as trustee for the previously named nine trusts. Oryx purchased the 25.3 million shares for $1.36 billion. As a result of the purchase, the market for Oryx shares began to fall. From the date of the purchase, September 11, 1990 to the filing of the complaint on December 7, 1992, Oryx stock fell from a high of approximately $54 a share to the low to mid $20 range. The Thompson Family alleges a loss of approximately $80 million as a result of the buy-back transaction.

The plaintiffs contend that the goals of the transaction were: (1) to divert funds improperly out of Oryx and into the Defendant Trusts; (2) to liquidate or diversify the Defendant Trusts' holdings of Oryx stock and to maximize the value received for the Defendant Trusts' holdings in Oryx; (3) to entrench and protect defendant Hauptfuhrer in his executive position at Oryx; and (4) to allay his concerns that the Glenmede/Pew defendants might act unilaterally in a way that would threaten his position.

Plaintiffs have alleged that the transaction was instigated, devised and executed by Glenmede Trust, its parent, defendant Glenmede Corporation, and the Pew Defendants and the Defendant Trusts. (Complaint ¶¶ 3, 34). The plaintiffs allege that Glenmede Trust and Glenmede Corporation are controlled by the Pew family. Allegedly, the stock transaction was detrimental to Oryx and the plaintiffs and was extremely lucrative for Glenmede Corporation, Glenmede Trust, the Defendant Trusts and the Pew Defendants. (Complaint ¶ 43). Plaintiffs allege that Glenmede Trust failed to advise them before and after the transaction of its consequences to Oryx.

According to the allegations of the complaint, Glenmede owed fiduciary duties to plaintiffs (the Thompson family interests) at the same time as it owed duties to the Pew family interests. Plaintiffs allege that Glenmede and the Pew family interests are commonly controlled and indivisible, making the duties owed to plaintiffs even clearer. Those duties were allegedly breached when the Pew family interests were advanced by the buy-back transaction, and the Thompsons were ignored by Glenmede and harmed by the transaction it precipitated.

All defendants named in this action with the exception of defendant Robert P. Hauptfuhrer have collectively joined in this motion to dismiss.

II. DISCUSSION

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief ... " Fed.R.Civ.P. 8(a). Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). When considering this motion, the Court shall take all allegations in the complaint as true and construe them in the light most favorable to the plaintiffs. H.J. Inc. v. Northwest Bell Tel. Co., 109 S.Ct. 2893, 2906 (1989). The complaint shall only be dismissed if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Id. (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

*3 As a special pleading matter, a count for fraud must be stated with particularity. Fed.R.Civ.P. 9(b). Rule 9(b) provides:

(b) Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b). To meet the requirement of Rule 9(b), the complaint must allege sufficient detail as to the circumstances of the alleged fraud so that the defendant will have notice of the precise misconduct charged. Seville Industrial Machinery Corp. v. Southmost Machinery Corp., 742 F.2d 786, 791 (3d Cir.1984), cert. denied, 469 U.S. 1211 (1985); In re Scott Paper Securities Litigation, 138 F.R.D. 56, 58 (E.D.Pa.1991); Antinoph v. Laverell Reynolds Securities, Inc., 703 F.Supp. 1185, 1188 (E.D.Pa.1989) (Hutton, J.).

The defendants have also moved to dismiss pursuant to Federal Rule of Civil Procedure 23.1. The defendants contend that some of the plaintiffs' claims are derivative and must be filed on behalf of Oryx. However, they argue that since the plaintiffs have not complied with the pleading requirements of a derivative action under Rule 23.1, these "derivative claims" must be dismissed. Rule 23.1,

Not Reported in F.Supp. Page 753
(Cite as: 1993 WL 197031, *3 (E.D.Pa.))

entitled "Derivative Actions by Shareholders," in pertinent part provides:
> In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort.

The Court will address each count separately.

A. Count One: Breach of Fiduciary Duty

Count one alleges violations of fiduciary duties owed to the Thompson Family. The count seeks relief against Glenmede Corporation, Glenmede Trust, the Pew Defendants, the Defendant Trusts, Defendant Langfitt and Defendant Piscopo. The plaintiffs' fiduciary allegations can be classified as: (1) the fiduciary relationship arising from Glenmede Trust's oral and written agreement to provide financial guidance to the Thompson Family (Complaint ¶ 21); and (2) the fiduciary relationship arising from the defendants' status as dominant and controlling shareholders and/or directors of Oryx. (Complaint ¶ 24).

*4 The plaintiffs have asserted that the defendants violated their fiduciary duties by:
> (a) failing to advise plaintiffs that Oryx shares should be sold prior to the buy-back transaction;
> (b) participating in the scheme and conspiracy [improperly diverting funds out of Oryx to the benefit of the Defendant trusts and entrenching defendant Hauptfuhrer at Oryx];
> (c) entering into the buy-back transaction; and
> (d) failing to advise plaintiffs at the time of or following the transaction of the detrimental effect of the transaction on Oryx and plaintiffs and to advise plaintiffs *to sell their Oryx stock.*

(Complaint ¶ 44).

1. Agreement for Financial Guidance--Defendant Glenmede Trust Company

The plaintiffs contend that Glenmede Trust owed fiduciary duties to them in its capacity as the plaintiffs' investment advisor. (Complaint ¶¶ 1 and 20). This contractual fiduciary relationship allegedly covered the plaintiffs' ownership interest in Oryx. The defendant Glenmede Trust does not challenge the plaintiffs' claim of violation of this particular fiduciary relationship in this motion.

2. Defendant Glenmede Corporation, Defendant Trusts, Defendant Langfitt, Defendant Piscopo and the Pew Defendants

The plaintiffs' complaint, although recognizing a distinction between Glenmede Trust and Glenmede Corporation, has commonly referred to both Glenmede Trust and Glenmede Corporation. The plaintiffs' reasoning behind this common reference is the allegation that "[b]oth entities have substantially similar management and directors and have each acted interchangeably ... " (Complaint ¶ 11). Although not entirely clear, it is apparent from the complaint and the parties' briefs that the fiduciary relationship with respect to the investment agreement is solely between defendant Glenmede Trust and the plaintiffs. (Complaint ¶¶ 1 and 20). The complaint states that the professional fiduciary is Glenmede Trust. (Complaint ¶ 1).

Nevertheless, with respect to Glenmede Corporation as well as the Pew defendants, the Defendant Trusts, Defendant Piscopo, and Defendant Langfitt, the plaintiffs have not alleged a fiduciary relationship. "A fiduciary relationship exists where there is 'a relationship involving trust and confidence, and the proof must show confidence reposed by one side and domination and influence exercised by the other." *Antinoph v. Laverell Reynolds Sec. Inc.,* 703 F.Supp. 1185, 1188 (E.D.Pa.1988), (Hutton, J.), (quoting, *Lehner v. Crane Co.,* 448 F.Supp. 1127, 1131 (E.D.Pa.1978)); See also *City of Harrisburg v. Bradford Trust,* 621 F.Supp. 463, 473 (M.D. Pa.1985). "It is not enough to show that the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Case 1:05-cv-00165-JJF    Document 33-24    Filed 06/10/2005    Page 5 of 12

Not Reported in F.Supp.
(Cite as: 1993 WL 197031, *4 (E.D.Pa.))

Page 754

plaintiff reposed its trust in the defendant; the latter must also have accepted the fiduciary relationship." City of Harrisburg, 621 F.Supp. at 473; Antinoph, 703 F.Supp. at 1188.

The plaintiffs' complaint does not allege that plaintiffs have reposed their trust in these particular defendants nor does it allege that these particular defendants accepted a fiduciary relationship with the plaintiffs.  Antinoph, 703 F.Supp at 1188; Bradford Trust, 621 F.Supp. at 473-474.  The plaintiffs have only alleged the investment advisory fiduciary relationship with respect to Glenmede Trust.  Accordingly, the plaintiffs' complaint does not allege a claim against these defendants for violation of a fiduciary duty.

3. Status as Shareholder and Director of ORYX

*5 To the extent that the plaintiffs have raised claims for breach of fiduciary duties arising from the defendants' status as dominant and controlling shareholder and/or directors of Oryx in count one, the plaintiffs' claim shall be dismissed.  The plaintiffs freely admit that they have not complied with the requirements of Fed.R.Civ.P. 23.1. (Plaintiffs' Memorandum in Opposition at 9).  In particular, the plaintiffs have not alleged that they have made efforts to obtain the desired action from the directors or comparable authority and from the shareholders or members, or the reasons for the failure to obtain the action or for not making the effort.  Instead, they contend that Rule 23.1 does not apply to their complaint because it only seeks relief for claims which are individual.  The defendants contend that these claims are derivative.

Under Delaware law, the state of incorporation of Oryx, the court must examine the nature of wrongs alleged in the body of the complaint rather than the plaintiffs' designation or stated intention in determining whether a claim is derivative or individual. [FN4] Brug v. The Enstar Group, Inc., 755 F.Supp. 1247, 1257 (D.Del.1991), (citing, Lipton v. News Int'l, Plc, 514 a.2d 1075, 1078 (Del.1986)).  A stockholder can maintain an individual action if he has sustained a "special injury." Lipton, 514 A.2d at 1078.  A special injury is defined as a wrong inflicted upon a stockholder alone or a wrong affecting any particular right which he is asserting such as preemptive rights, rights involving control of the corporation, or a wrong affecting the stockholders and not the corporation.  Id. (quoting Elster v. American Airlines, Inc., 100 A.2d 219, 223 (Del.Ch.1953)).  "A shareholder who suffers an injury peculiar to itself should be able to maintain an individual action, even though the corporation also suffers an injury from the same wrong." Lipton, 514 A.2d at 1079.  However, "[w]hen an injury to corporate stock falls equally upon all stockholders, then an individual stockholder may not recover for the injury to his stock alone, but must seek recovery derivatively on behalf of the corporation." Bokat v. Getty Oil Co., 262 A.2d 246, 249 (Del.1970).

The plaintiffs' claims arising from the particular breach of the fiduciary duty existing as a result of the defendants' status as dominant and controlling shareholder and/or directors of Oryx are not individual.  These claims are derivative.  See MacAndrews & Forbes Holdings, Inc. v. Revlon, Inc., 1985 WL 21129 (Del.Ch.), (citing, Gearhart Industries, Inc. v. Smith International, 741 F.2d 707, 721 (5th Cir.1984); Bokat v. Getty Oil Co., 262 A.2d 246, 249 (Del.Sup.1970).

The plaintiffs have not identified any wrong peculiar to them with respect to this violation.  The plaintiffs' injuries are common to all shareholders of Oryx and to Oryx itself.  The complaint states that the buy-back transaction was "inimical to the best interests of Oryx and its remaining shareholders, including the Thompson plaintiffs ... " (Complaint ¶ 36).  The plaintiffs' complaint primarily articulates that the fiduciary breach of the defendants resulted in the decline in value of their shareholdings in Oryx. (Complaint ¶ 47).  The best summary of the plaintiffs' injuries appears in the plaintiffs' complaint at paragraph 4. It provides:

> *6 As a result of the buy-back transaction, the Oryx shareholders remaining after the transaction (including plaintiffs) have seen the apparent value of their company shares plummet from a high of over $53 per share on the day of the transaction, to the low to mid-$20's per share today.  The loss in value of the plaintiffs' Oryx shares since the buy-back transaction is over $80 million.

Further, the relief which the plaintiffs are requesting in their complaint confirms this determination.  The relief sought may be an indicator as to the derivative nature of a claim. Kramer v. Western Pac. Indus., Inc., 546 A.2d 348,

Case 1:05-cv-00165-JJF   Document 33-24   Filed 06/10/2005   Page 6 of 12

Not Reported in F.Supp.
(Cite as: 1993 WL 197031, *6 (E.D.Pa.))

Page 755

352 (Del.1988). The complaint in this case includes the request for the following relief with respect to count one:
  B) ... Rescission of the buy-back transaction;

\* \* \*

  D) ... Disgorgement of any consideration derived by any defendant from the buy-back transaction, and imposition of a constructive trust on any such consideration.

Rescission of a contract as a remedy is only available to a party to the contract. Paul S. Mullin & Assocs., Inc. v. Bassett, 632 F.Supp. 532, 537 (D.Del 1986). The plaintiffs were not a party to the buy-back transaction between Glenmede Trust and Oryx. Rescission could only be available to one of those parties. Further, the plaintiffs recognized that they would not be personally entitled to disgorgement consideration by requesting a constructive trust. These remedies are the type of remedies expected to be pled in a derivative action seeking relief on behalf of the corporation.

Since the violation of this fiduciary relationship is derivative, the plaintiffs may not maintain this claim without first complying with Federal Rule of Civil Procedure 23.1. Plaintiffs have admitted that they have not complied with the rule's requirements. Accordingly, this claim is dismissed with respect to all defendants who have been named in this count for failure to meet the requirements of Rule 23.1.

B. Count Two

1. Civil Conspiracy

Count two seeks liability for civil conspiracy against all defendants. In Burnside v. Abbott Laboratories, 505 A.2d 973 (Pa.Super.1985), the Pennsylvania court stated:
  To state a cause of action for civil conspiracy under Pennsylvania law, a complaint must allege the existence of all elements necessary to such a cause of action. A cause of action for conspiracy requires that two or more persons combine or enter an agreement to commit an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice is an essential part of a cause of action for conspiracy.
Id. at 980. (citations omitted). See also Murphy v. Villanova Univ., 547 F.Supp. 512, 522 (E.D.Pa.1982), aff'd without op., 707 F.2d 1402 (3d Cir.1983); Swartzbauer v. Lead Industries Ass'n, Inc., 794 F.Supp. 142 (E.D.Pa.1992).

The plaintiffs' complaint provides:

The primary goals of the scheme and conspiracy were:
  (a) to divert funds improperly out of Oryx into the Defendant Trusts; to liquidate or diversify the Defendant Trusts' holdings of Oryx stock out of Oryx, preferably into cash or other diversified assets; and to maximize the value received for the Defendant Trusts' holdings in Oryx; and
  *7 (b) to entrench and protect Hauptfuhrer in his executive position at Oryx and allay his concerns that the Glenmede/Pew defendants might act unilaterally in a way that would threaten his position.
(Complaint ¶ 32). The complaint fails to plead a cause of action for civil conspiracy. Noticeably absent from the plaintiffs' conspiracy allegations is the essential element of malice. The complaint is devoid of any allegation that the defendants acted with the intent to injure the plaintiffs. Accordingly, the plaintiffs' conspiracy allegations are dismissed.

2. Aiding and Abetting

Count two of the plaintiffs' complaint alleges aiding and abetting against all defendants. In support of their claim, the plaintiffs cite section 876 of the Restatement (Second) of Torts. Section 876, entitled "Persons Acting in Concert," provides:
  For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
  (a) does a tortious act in concert with the other or pursuant to a common design with him, or
  (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
  (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.
Restatement (Second) of Torts § 876. The plaintiffs contend that the defendants are jointly and severely liable for the fiduciary breach of Glenmede Trust because they acted in concert. Apparently, the plaintiffs are proceeding under 876(b).

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Westlaw

Not Reported in F.Supp.
(Cite as: 1993 WL 197031, *7 (E.D.Pa.))

Page 756

A claim for aiding and abetting in a breach of a fiduciary duty as described by § 876(b) of the Restatement, although not specifically provided for by the Pennsylvania Supreme Court, has been recognized as a cognizable claim in the Eastern District of Pennsylvania. In Pierce v. Rossetta Corp., Civil Action No. 88-5873, 1992 WL 165817 (E.D. Pa. June 12, 1992), anticipating the acceptance of the claim by Pennsylvania courts the district court held:

> the elements for a claim for aiding and abetting breach of a fiduciary duty under Pennsylvania law would be: (1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider and abettor; and (3) substantial assistance or encouragement by the aider and abettor in effecting that breach.

Id. at *8 (citing, Restatement (Second) Torts § 876 (1979); Kranzdorf v. Green, 582 F.Supp. 335, 337 (E.D.Pa.1983)). The Pierce court based the decision on a thorough examination of relevant Pennsylvania authority.

The defendants do not take issue with the Pierce decision. However, the defendants' contend that this aiding and abetting liability does not extend to the officers or directors of a corporation for a breach committed by the corporation. The defendants contend that the reasoning which bars a claim of conspiracy between officers and directors of a corporation and the corporation itself necessarily prevents the plaintiffs' aiding and abetting claim.

*8 It is clear that officers and directors of a corporation cannot conspire with a corporation. Nix v. Temple Univ, 596 A.2d 1132, 1137 n.3 (Pa.Super 1991) (citing, Daniel Adams Assoc. v. Rimbach Pub., Inc., 519 A.2d 997 (Pa.Super.1987)); Accord, e.g., Scott v. Township of Bristol, Civil Action No. 1412, 1990 WL 178556 (E.D.Pa.1990), (Hutton, J.). Generally, the acts of the agents of a corporation are the acts of the corporation itself. Since a individual cannot conspire without another party, a corporation cannot conspire with its agents, officers and directors. Jaqielski v. Package Mach. Co., 489 F.Supp. 232, 233 (E.D.Pa.1980).

The plaintiffs have not cited any Pennsylvania authority for the proposition that a director or officer of a corporation could be liable for aiding and abetting a fiduciary breach by the corporation. However, this is not surprising given that no Pennsylvania court has yet held any individual liable for aiding and abetting a fiduciary breach. Nor do the cases which the plaintiffs cite support the conclusion that officers and directors of a corporation can be liable for aiding and abetting a breach of a fiduciary duty by the corporation.

The plaintiffs' reliance on Seaboard Industries, Inc. v. Monaco, 276 A.2d 305 (1971), is not persuasive. Seaboard involved the liability of a director for joint participation of, approving of, acquiescing in, or concealing a breach of a fiduciary of another director owed to the corporation. Id. Thus, it involved a breach committed by a director. It did not involve liability of a director for a corporate breach of a fiduciary duty. Nothing in the opinion would lead this court to the conclusion that aiding and abetting could be established against a director for assisting the corporation in a fiduciary breach.

Plaintiffs' remaining cases are also not persuasive. Kransdorf v. Green, 582 F.Supp. 335 (E.D.Pa.1983) (aiding and abetting liability claim permitted against a non-agent of the corporation); Ging v. Parker-Hunter Inc., 544 F.Supp. 49 (W.D. Pa.1982) (permitting corporation to be liable for aiding and abetting securities fraud of a third party); Hickman v. Taylor, 75 F.Supp. 528 (E.D.Pa.1947) (non-agent alleged to have participated in corporation's negligence).

Nevertheless, under existing Pennsylvania law it appears that the Pennsylvania Supreme Court would not permit an "aiding and abetting" claim against the officers and directors of a corporation for the wrong of the corporation. A claim for a breach of a fiduciary duty although arising from a contract, is an allegation of tortious conduct. See Zimmer v. Guntal & Co. Inc., 732 F.Supp. 1330, 1336 (W.D.Pa.1989); Restatement (Second) of Torts, § 874 (1979). Under Pennsylvania law, officers and directors are not liable for tortious conduct of the corporation in the absence of affirmative participation in the conduct. Wicks v. Milzoco Builders, Inc., 470 A.2d 86, 90 (Pa.1983); Chester-Cambridge Bank & Trust Co. v. Rhodes, 31 A.2d 128, 131 (Pa.1943). Under this participation theory, the defendant directors and officers can be liable for knowingly participating in the tortious act. Wicks, 470 A.2d at 90; Chester-Cambridge Bank &

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Not Reported in F.Supp.  
(Cite as: 1993 WL 197031, *8 (E.D.Pa.))

Page 757

Trust Co., 31 A.2d at 131; see also Newman v. Forward Lands, Inc., 418 F.Supp. 134, 137 (E.D.Pa.1976).

*9 In Chester-Cambridge Bank & Trust Co. v. Rhodes, the Supreme Court of Pennsylvania, in addressing the issue of officer and director liability stated:
> It is true that a director or officer of a corporation may have personal liability for damages suffered by third persons when he knowingly participates in a wrongful act. See Malone v. Pierce, 231 Pa. 534, 80 A. 979; Warner v. McMullin, 131 Pa. 370, 18 A. 1056. But where, as in this case, directors or officers are charged with nonfeasance, no individual liability attaches. This has always been the rule in this jurisdiction. See Spering's Appeal, 71 Pa. 11, 10 Am.Rep. 684; Swentzel v. Penn Bank, 147 Pa. 140, 23 a. 405, 415, 15 L.R.A. 305, 30 A.m.St.Rep. 718; Cohen, et al. v. Maus, et al., 297 Pa. 454, 147 A.103. In the latter case we held that directors of a corporation could not be charged with individual liability for conversion of property by the corporation of which they had no actual knowledge. However (297 Pa. at page 458, 147 A. 103), Justice Schaffer, afterwards Chief Justice, pointed out that a director who participated actively in the conversion would have been personally liable.

31 A.2d at 131. The Court in a more recent discussion of the participation theory stated:
> Pennsylvania law recognizes the participation theory as a basis of liability. The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein. (citations omitted)

Wicks, 470 A.2d at 90.

Accordingly, this Court will apply Pennsylvania's participation theory to the plaintiffs' aiding and abetting claim in Count II with respect to the acts of directors and officers of Glenmede Trust. Therefore, if the plaintiffs have alleged that the directors and officers knowingly participated in, cooperated or directed the corporation's breach of fiduciary duty, Count II against these individuals will survive a motion to dismiss.

With respect to the defendant directors and officers of the corporation, the plaintiffs have not specifically alleged that these individuals have participated in the breach of the fiduciary duty. The plaintiffs must plead that each defendant director or officer "active[ly] participat[ed] in a positively wrongful act intendedly and directly operating injuriously to the prejudice of the [plaintiffs]." See Newman v. Forward Lands Inc., 418 F.Supp. 134, 136 (E.D.Pa.1976).

In addition, the Court recognizes that a claim for aiding and abetting a breach of a fiduciary duty would exist against non-agents of Glenmede Trust under Pennsylvania law. Pierce v. Rossetta Corp., Civil Action No. 88-5873, 1992 WL 165817 (E.D.Pa. June 12, 1992). However, the Court finds that based upon the allegations in the complaint, plaintiffs have not sufficiently stated claims for aiding and abetting with respect to the remaining defendants. The plaintiffs have not alleged the requirements of aiding and abetting as set forth in Pierce v. Rossetta Corp., 1992 WL 165817 at *8. The complaint does allege a breach of a fiduciary duty by Glenmede Trust as discussed above. The complaint also alleges that all the defendants had knowledge of the fiduciary relationship. (Complaint ¶ 46). However, the plaintiffs have not alleged substantial assistance or encouragement in effecting the breach by the remaining defendants who were not acting as officers and directors of the Glenmede Trust. Accordingly, Count II with respect to non-agents of Glenmede Trust is dismissed.

3. Glenmede Corporation

*10 The plaintiffs seek to extend liability to Glenmede Corporation as the parent for the acts of Glenmede Trust on the basis of aiding and abetting liability. The defendant Glenmede Corporation contends that it cannot be liable for aiding and abetting a breach of a fiduciary duty owed by its wholly owned subsidiary for the same reasons that a director or officer cannot be liable for aiding and abetting the corporation of which they control. Glenmede Corporation, citing Copperweld Corp. v. Independance Tube Corp., 467 U.S. 752, 777 (1984), contends that a parent corporation cannot

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo 

Case 1:05-cv-00165-JJF Document 33-24 Filed 06/10/2005 Page 9 of 12

Not Reported in F.Supp.
(Cite as: 1993 WL 197031, *10 (E.D.Pa.))

Page 758

conspire with a wholly-owned subsidiary because they have a single conscience and are run by a "single driver.". Thus, it argues that it cannot be liable for aiding and abetting its subsidiary.

Pennsylvania law provides the circumstances for which a parent corporation may be liable for the acts of its subsidiary within the doctrine of piercing the corporate veil. Parker v. Bell Asbestos Mines, Ltd., 607 F.Supp. 1397 (D.C. Pa.1985); McCarthy v. Ference, 58 A.2d 49 (Pa.1948). In First Realvest Inc. v. Avery Builders, Inc., 600 A.2d 601 (Pa.Super.1991), the court stated:

> The Pennsylvania Supreme Court has held that the corporate form "will be disregarded only when the entity is used to defeat public convenience, justify wrong, protect fraud or defend crime." In applying the test (for piercing the corporate veil), ... any court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception ... Care should be taken on all occasions to avoid making "the entire theory of the corporate entity ... useless ... "

Id. at 604, (citations omitted). In determining whether to pierce the corporate veil, courts are basically concerned with determining if equity requires that the shareholder's traditional insulation from personal liability be disregarded and with ascertaining if the corporate form is a sham, constituting a facade for the operation of the dominant shareholder. Carpenter's Health and Welfare Fund v. Ambrose, 727 F.2d 279 (3d Cir.1983); Village at Camelback Property Owners Assn. Inc. v. Carr, 538 A.2d 528 (Pa.Super.1988); Wicks v. Milzoco Builders Inc., 470 A.2d 86, 90-91 (Pa.1983).

In this case, Glenmede Trust is the wholly owned subsidiary of Glenmede Corporation. The plaintiffs have alleged that the entities have "substantially similar management and directors and have each acted interchangeably with the other with respect to the matters described in [the] complaint." (Complaint ¶ 11). However, this alone is not sufficient to allege that Glenmede Trust is a sham or alter ego of the Glenmede Corporation. Allegations of joint action is not sufficient to justify piercing the corporate veil between a parent and subsidiary corporation. Nobers v. Crucible, Inc., 602 F.Supp. 703 (W.D. Pa.1985). The complaint must allege facts sufficient to support a finding that Glenmede Trust was dominated by Glenmede Corporation to an extent that Glenmede Trust was a sham or alter ego. Relevant facts for piercing under an alter ego theory would be:

*11 (a) insufficient capitalization;
(b) intermingling of funds;
(c) other officers and directors were not functioning;
(d) failure to observe corporate formalities;
(e) failure to pay dividends;
(f) the fact that the corporation is a facade for the operations of the dominant stockholder;

Nobers v. Crucible, Inc., 602 F.Supp. at 707; Village at Camelback Property Owners Assn. Inc., 538 A.2d at 535; United States v. Pisani, 646 F.2d 83, 88 (3d Cir.1981). The complaint does not meet these requirements.

However, the plaintiffs contend that the existence of fraud in the complaint is sufficient for purposes of piercing the corporate veil. The complaint has alleged that Glenmede Trust was used to perpetrate common law fraud. See infra, at 23-24. Considering the complaint in light most favorable to the plaintiffs as the Court must do, the plaintiffs may have the potential for piercing the corporate veil of Glenmede Trust for this fraud. Accordingly, Glenmede Corporation's motion to dismiss count two is denied.

C. Count Three

In count three, the plaintiffs allege common law fraud against all defendants. A claim for common-law fraud requires a misrepresentation made for the purpose of inducing reliance on the false statement. Antinoph v. Laverell Reynolds Securities Inc., 703 F.Supp. 1185, 1187 n.1. A claim of fraud based upon failure to disclose information is actionable if there exists a confidential or fiduciary relationship. See Id.; City of Harrisburg v. Bradford Trust Co., 621 F.Supp. 463, 473 (D.C. Pa.1985); see e.g. Federal Land Bank of Baltimore v. Fetner, 410 A.2d 344 (Pa.Super.1979), cert. denied, 446 U.S. 918 (1980).

As the Court has previously discussed, the plaintiffs' complaint has alleged a confidential/ fiduciary relationship with respect to Glenmede Trust. The complaint provides that the "[d]efendants concealed the pendency of the buy-back transaction until it was consummated and

announced on September 11, 1990." (Complaint ¶ 37). The defendants also allegedly concealed knowledge and information regarding Oryx's inability to generate capital needed to ultimately allow Oryx to create value for its shareholders and their knowledge that the buy-back transaction would operate to depress the value of the plaintiffs' stock. (Complaint ¶¶ 37, 38). Therefore, the complaint states a common law claim against Glenmede Trust.

However, the complaint does not allege a claim against defendants, Glenmede Corporation, the Pew Defendants, the Defendant Trusts, Defendants Piscopo and Defendant Langfitt. As explained in the Court's discussion of count one, no fiduciary relationship between these defendants and the plaintiffs has been alleged. Accordingly, the plaintiffs' common law fraud claim is dismissed against these defendants.

D. Count Four

Count four seeks relief against Glenmede Trust, Glenmede Corporation and the Defendant Trusts for unjust enrichment. In Burgettstown-Smith Township Joint Sewage Authority v. Langeloth Townsite Company, 588 A.2d 43 (Pa.Super.1991), the court noted that:

*12 [e]ssential elements of "unjust enrichment" are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.

Id. at 44, (quoting, Wolf v. Wolf, 514 a.2d 901, 905-06 (Pa.Super.1986), overruled on other grounds by Van Buskirk v. Van Buskirk, 590 A.2d 4, 8 (Pa.1991)). "A necessary element of unjust enrichment is that a benefit must have been conferred for which no compensation was given." Meyers Plumbing & Heating Supply Co. v. West End Fed. Sav. & Loan Ass'n, 498 A.2d 966, 969 (Pa.Super.1985). The plaintiffs' complaint fails to allege the requisites of such a claim. Accordingly, Count four of the complaint is dismissed.

E. Count Five

The fifth count of the plaintiffs' complaint alleges breach of contract by both Glenmede Trust and Glenmede Corporation. As the Court has previously discussed, the complaint alleges an investment advisory agreement in which Glenmede Trust accepted the position as the plaintiffs' professional fiduciary. (Complaint ¶¶ 1, 17 and 20). Glenmede Trust does not oppose the claim in the motion. However, Glenmede Corporation contends that it is not a party to the investment advisory contract and, therefore, it can not be liable on the contract simply due to its parent subsidiary relationship. The plaintiffs contend that liability extends pursuant to the equitable doctrine of piercing the corporate veil. As the Court has found that the complaint alleges a claim for piercing the corporate veil, Glenmede Corporations motion to dismiss count five is denied.

F. Count Six The last count of the plaintiffs' complaint alleges negligence against both Glenmede Trust and Glenmede Corporation. The plaintiffs are contending that Glenmede Trust is liable for professional negligence with respect to its oral and written agreement to act as the plaintiffs' investment advisor and that the Glenmede Corporation is liable for both its participation in the negligence and under the plaintiffs' theory of piercing the corporate veil.

To state a claim for professional negligence, the plaintiffs must allege: (1) employment by a person or entity giving rise to a duty to the plaintiffs; (2) the failure of the defendant to exercise ordinary skill and knowledge; and (3) that this negligence proximately caused damages to the plaintiff. See Schenkel v. Nonheit, 405 A.2d 493, 494 (Pa.Super.1979), (Essential elements for cause of action against attorney for professional negligence).

The plaintiffs' complaint alleges that the plaintiffs contracted with Glenmede Trust to provide investment advise and guidance with respect to the plaintiffs' holdings in Oryx stock. Allegedly, the defendants breached their duty to exercise ordinary skill and knowledge by:
(a) failing to advise plaintiffs that Oryx shares should be sold prior to the buy-back transaction;
*13 (b) participating in the scheme and conspiracy [improperly diverting funds out of Oryx to the benefit of the Defendant trusts and entrenching defendant Hauptfuhrer at Oryx];
(c) entering into the buy-back transaction; and
(d) failing to advise plaintiffs at the time of or following the transaction of the detrimental effect of the transaction on Oryx and plaintiffs and to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo



Not Reported in F.Supp.                                                                                              Page 760
(Cite as: 1993 WL 197031, *13 (E.D.Pa.))

advise plaintiffs to sell their Oryx stock. (Complaint ¶ 44). Finally, the plaintiffs contend that their injuries were proximately caused by Glenmede Trust. Accordingly, the complaint states a claim for negligence against the defendant Glenmede Trust.

However, Glenmede Trust contends that its agreement with the plaintiffs specifically excludes liability for negligence. Glenmede Trust cites an exculpatory clause of its agreement with the plaintiffs. The clause provides:
> Glenmede shall not be liable for any loss or damage or any costs and expenses associated with such loss or damage resulting from any act, omission or mistake or judgment in the course of, or connected with, the performance of its responsibilities hereunder, or that of its representatives, agents or employees, except for its own gross negligence or bad faith.

(Complaint ¶ 23).

In Topp Copy Products Inc. v. Singletary, 591 A.2d 298 (Pa.Super.1991), the Pennsylvania court recently discussed the issue of the application of exculpatory clauses under Pennsylvania law. The Court stated:
> Our Supreme Court has held that an exculpatory clause is generally valid where three conditions are satisfied. The three conditions are: (1) the clause "does not contravene any policy of law, that is, ... it is not a matter of interest to the public or State"; (2) the "contract is between persons relating entirely to their own private affairs"; and (3) "each party is a free bargaining agent ... [in that the agreement] is not in effect a mere contract of adhesion."
> If these conditions are met, and the clause is determined to be valid, the contract must still meet four additional standards in order to be "interpreted and construed to relieve a person of liability for his own ... acts of negligence." The four standards are: (1) the contract immunizing a party from liability for negligence must be construed strictly, "since they are not favorites of the law"; (2) the contract must state the intention of the parties "with the greatest particularity, ... beyond doubt by express stipulation, [and] no inference from words of general import can establish it"; (3) the contract must be construed against the party seeking immunity from liability; and (4) the burden of establishing the immunity is upon the party seeking protection of the clause.
> These seven considerations demonstrate that contracts providing for the immunity of parties from their own negligent acts are not regarded positively under the law of the Commonwealth.

Id. at 301 (citations omitted).

*14 While Glenmede Trust may be immune from liability for negligence pursuant to the clause, the Court cannot determine from the face of the complaint the specific application of the clause under Pennsylvania's teachings. Therefore, Glenmede Trust's motion to dismiss count six is denied.

With respect to Glenmede Corporation, it is clear that the plaintiffs' complaint does not allege that the corporation was the professional advisor of the plaintiffs. However, the plaintiffs contend that Glenmede Corporation as the parent of Glenmede Trust is liable for the negligence under the piercing theory discussed above. Since the Court has found that the plaintiffs may have a claim against Glenmede Corporation under the Pennsylvania doctrine, the plaintiffs' claim for negligence shall not be dismissed against Glenmede Corporation.

An appropriate Order follows.

### ORDER

AND NOW, this 8th day of June, 1993, upon consideration of the Defendants' Motion to Dismiss, the Plaintiffs' Response and the Defendants' Reply, IT IS HEREBY ORDERED that:
(1) Count I of the Plaintiffs' Complaint against Glenmede Corporation, J. Howard Pew, II, J. N. Pew, III, J. N. Pew, IV, R. Anderson Pew, John G. Pew, Jr., G. Thompson Pew, Jr., Thomas W. Langfitt, Albert E. Piscopo, Francis M. Richards, Jr., Karin E. Myrin and Samuel W. Morris Sr. is DISMISSED;
(2) Count II of the Plaintiffs' Complaint for civil conspiracy against all defendants is DISMISSED;
(3) Count II of the Plaintiffs' Complaint for aiding and abetting a breach of fiduciary duty against Glenmede Trust, J. Howard Pew, II, J. N. Pew, III, J. N. Pew, IV, R. Anderson Pew, John G. Pew, Jr., G. Thompson Pew, Jr., Thomas W. Langfitt, Albert E. Piscopo, Francis M. Richards, Jr., Karin E. Myrin and Samuel W. Morris Sr. is DISMISSED;

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo

Not Reported in F.Supp.  
(Cite as: 1993 WL 197031, *14 (E.D.Pa.))

Page 761

(4) Count III of the Plaintiffs' Complaint against Glenmede Corporation, J. Howard Pew, II, J. N. Pew, III, J. N. Pew, IV, R. Anderson Pew, John G. Pew, Jr., G. Thompson Pew, Jr., Thomas W. Langfitt, Albert E. Piscopo, Francis M. Richards, Jr., Karin E. Myrin and Samuel W. Morris Sr. is DISMISSED;

(5) Count IV of the Plaintiffs' Complaint against Glenmede Trust, Glenmede Corporation, J. Howard Pew, II, J. N. Pew, III, J. N. Pew, IV, R. Anderson Pew, Francis M. Richards, Jr., Karin E. Myrin and Samuel W. Morris Sr. is DISMISSED; and

(6) The Motion to Dismiss Count V and Count VI of the Plaintiffs' Complaint is DENIED.

IT IS FURTHER ORDERED that Plaintiffs are granted leave to file an amended complaint within twenty (20) days of the date of this Order.

> FN1. The plaintiffs are as follows: B. Ray Thompson, Jr., Juanne J. Thompson, Catherine V. Thompson, Adella S. Thompson, B. Ray Thompson, III, Sarah Thompson Tarver, Rebekah L. Thompson.
>
> FN2. The trustees of the five trusts are as follows: B. Ray Thompson, Jr., Juanne J. Thompson, Dale A. Keasling.
>
> FN3. The seven trusts are as follows: the Pew Memorial Trust, the J. Howard Pew Freedom Trust, The Mabel Pew Myrin Trust, The J. N. Pew Jr. Charitable Trust, The Medical Trust, Mary Anderson Trust, and The Knollbrook Trust.
>
> FN4. In a diversity action, state law applies to the determination of whether an action is individual or derivative under Federal Rule of Civil Procedure 23.1. Sax v. World Wide Press, Inc., 809 F.2d 610, 613 (9th Cir.1987); Brown v. Ferro Corp. 763 F.2d 798, 803 (6th Cir.) ("Shareholder's derivative actions are governed by Rule 23.1 of the federal Rules of Civil Procedure, and federal courts apply the law of the state in which the company is incorporated."), cert. denied, 474 U.S. (1985).

1993 WL 197031 (E.D.Pa.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Wo