IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ROYAL INDEMNITY COMPANY | : | |
| Plaintiff, | : | |
| v. | : | Civil No. 05-165 (JJF) |
| PEPPER HAMILTON LLP, ET AL. | : | |
| Defendants. | : | |

## BRIEF IN SUPPORT OF THE MOTION OF W. RODERICK GAGNÉ
## FOR THE DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT

MORRIS, NICHOLS, ARSHT & TUNNELL
William H. Sudell, Jr. (No. 0463)
Donna L. Culver (No. 2983)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200

*Counsel for Defendants Pepper Hamilton LLP
and W. Roderick Gagné*

OF COUNSEL:

SCHNADER HARRISON SEGAL & LEWIS LLP
Elizabeth K. Ainslie, Esq.
Nicholas J. LePore, III, Esq.
Theresa E. Loscalzo, Esq.
Bruce P. Merenstein, Esq.
Stephen J. Shapiro, Esq.
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2000

June 10, 2005

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF CITATIONS |  | ii |
| STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING |  | 1 |
| SUMMARY OF ARGUMENT |  | 2 |
| STATEMENT OF FACTS |  | 3 |
| ARGUMENT |  | 6 |
| | I. STANDARD OF REVIEW | 6 |
| | II. ROYAL'S RICO CLAIMS IN COUNTS I AND II ARE PREDICATED ON ALLEGATIONS OF SECURITIES FRAUD AND ARE THEREFORE PRECLUDED BY THE PRIVATE SECURITIES LITIGATION REFORM ACT. | 8 |
| | III. COUNT I SHOULD BE DISMISSED FOR FAILURE TO ADEQUATELY PLEAD A RICO ENTERPRISE. | 14 |
| | IV. COUNT I SHOULD BE DISMISSED BECAUSE ROYAL HAS NOT, AS A MATTER OF LAW, PLED FACTS SUFFICIENT TO ESTABLISH THAT GAGNÉ TOOK PART IN THE OPERATION OR MANAGEMENT OF THE ALLEGED ENTERPRISE. | 19 |
| | V. COUNT II SHOULD BE DISMISSED BECAUSE ROYAL HAS NOT ALLEGED THE ELEMENTS OF A CLAIM UNDER SECTION 1962(D). | 24 |
| | VI. COUNTS III THROUGH VIII SHOULD BE DISMISSED FOR THE REASONS SET FORTH IN PEPPER'S BRIEF. | 26 |
| CONCLUSION |  | 27 |

ii.

## TABLE OF CITATIONS

<u>Cases</u>                                                              <u>Page(s)</u>

*ALA, Inc. v. CCAIR, Inc.*,
    29 F.3d 855 (3d Cir. 1994)                                      7

*Allstate Transp. Co. v. SEPTA*,
    No. 97-1482, 1997 U.S. Dist. LEXIS 16638, at *29 (E.D.
    Pa. Oct. 20, 1997)                                              6

*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*,
    189 F.3d 321 (3d Cir. 1999)                                    9, 11, 12

*Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.L.*,
    832 F. Supp. 585 (E.D.N.Y. 1993)                                22

*Brass v. American Film Tech., Inc.*,
    987 F.2d 142 (2d Cir. 1993)                                      7

*Breslin v. Brainard*,
    No. 01-CA-7269, 2003 U.S. Dist. LEXIS 19609 (E.D. Pa.
    Oct. 10, 2003), *aff'd*, 2005 U.S. App. LEXIS 5661 (3d Cir.
    April 7, 2005)                                                  25

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)                                     6

*Burton v. Ken-Crest Services, Inc.*,
    127 F. Supp. 2d 673 (E.D. Pa. 2001)                            9, 10, 12

*Caldwell Trucking PRP Group v. Spaulding Composites Co.*,
    890 F. Supp. 1247 (D.N.J. 1995)                                  7

*City of Phila. V. Beretta U.S.A. Corp.*,
    277 F.3d 415 (3d Cir. 2002)                                      6

*Dianese, Inc. v. Commonwealth of Pennsylvania*,
    No. 01-CV-2520, 2002 U.S. Dist. LEXIS 10917 (E.D. Pa.
    June 19, 2002)                                                 15, 16

*Dow Chem. Co. v. Exxon Corp.*,
    30 F. Supp. 2d 673 (D. Del. 1998)                             15, 18, 25

*Fed. Ins. Co. v. Ayers*,
    741 F. Supp. 1179 (E.D. Pa. 1990)                               16

## TABLE OF CITATIONS (continued)

Page(s)

*Fidelity Fed. Sav. & Loan Ass'n. v. Felicetti,*
    830 F. Supp. 257 (E.D. Pa. 1993) — 23

*First Nationwide Bank v. Gelt Funding Corp.,*
    820 F. Supp. 89 (S.D.N.Y. 1993), *aff'd,* 27 F.3d 763 (2d
    Cir. 1994) — 16, 17

*Freed v. Universal Health Servs., Inc.,*
    No. 04-1233, 2005 U.S. Dist. LEXIS 7789, at *12 (E.D. Pa.
    May 3, 2005) — 7, 10

*Gates v. Ernst & Young,*
    No. 9302332, 1994 U.S. Dist. LEXIS 11456 (E.D. Pa. Aug.
    15, 1994) — 14

*Gatz v. Ponsoldt,*
    297 F. Supp. 2d 719 (D. Del. 2003) (Robinson, J.) — 9, 10, 13, 25

*Gilmore v. Berg,*
    820 F. Supp. 179 (D.N.J. 1993) — 21, 23

*Goldin v. Primavera Familienstiftung Tag Assoc. (In re Granite Partners, L.P.),*
    194 B.R. 318 (Bankr. S.D.N.Y. 1996) — 6

*Granite Partners, L.P. v. Bear, Stearns & Co.,*
    17 F. Supp. 2d 275 (S.D.N.Y. 1998) — 7

*Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison,*
    955 F. Supp. 248 (S.D.N.Y. 1997) — 20, 24

*Hirsch v. Arthur Andersen & Co.,*
    72 F.3d 1085 (2d Cir. 1995) — 6, 7

*Howard v. America Online, Inc.,*
    208 F.3d 741 (9th Cir.), *cert. denied,* 531 U.S. 828 (2000) — 13

*In re Ikon Office Solutions, Inc. Sec. Litig.,*
    86 F. Supp. 2d 481 (E.D. Pa. 2000) — 10, 12

*Jeffreys v. Exten,*
    No. 86-32-SLR, 1993 U.S. Dist. LEXIS 18537 (D. Del. Dec.
    30, 1993) — 16, 18

*Kotteakos v. United States,*
    328 U.S. 750 (1946) — 17

TABLE OF CITATIONS (continued)

Page(s)

*Leveto v. Lapina*,
    258 F.3d 156 (3d Cir. 2001) ............................................................................ 7

*Lightning Lube, Inc. v. Witco Corp.*,
    4 F.3d 1153 (3d Cir. 1993) ............................................................................ 25

*MBIA Ins. Corp. v. Royal Indem. Co.*,
    286 F. Supp. 2d 347 (D. Del. 2003) (Farnan, J.) ........................................ 10

*Morin v. Trupin*,
    832 F. Supp. 93 (S.D.N.Y. 1993) ................................................................ 24

*New York Auto. Ins. Plan*,
    1998 U.S. Dist. LEXIS 15645 ...................................................................... 18

*New York Automobile Ins. Plan v. All Purpose Agency & Brokerage, Inc.*,
    No. 97-3164, 1998 U.S. Dist. LEXIS 15645 (S.D.N.Y. Oct. 6, 1998) .......... 17

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v.*
    *Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003) .......................................................................... 7

*Reves v. Ernst & Young*,
    494 U.S. 56 (1990) ...................................................................................... 12

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) .............................................................................. passim

*Reynolds v. Condon*,
    908 F. Supp. 1494 (N.D. Iowa 1995) ...................................................... 21, 22

*Rose v. Bartle*,
    871 F.2d 331 (3d Cir. 1989) ........................................................................ 24

*Salinas v. United States*,
    522 U.S. 52 (1997) ...................................................................................... 25

*Schuylkill Skyport Inn, Inc. v. Rich*,
    No. 95-3128, 1996 U.S. Dist. LEXIS 12655 (E.D. Pa. Aug.
    20, 1996) ................................................................................................ 20, 21

*SEC v. Zandford*,
    535 U.S. 813 (2002) .................................................................................... 13

v.

## TABLE OF CITATIONS (continued)

Page(s)

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*,
    742 F.2d 786 (3d Cir. 1984)    16, 18

*Smith v. Berg*,
    247 F.3d 532 (3d Cir. 2001)    25, 26

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*,
    181 F.3d 410 (3d Cir. 1999)    6, 10

*United States v. Riccobene*,
    709 F.2d 214 (3d Cir. 1983)    16

*United States v. Turkette*,
    452 U.S. 576 (1981)    15, 16

*University of Maryland v. Peat, Marwick, Main & Co.*,
    996 F.2d 1534 (3d Cir. 1993)    20, 21, 23

*Vandenbroeck v. CommonPoint Mortg. Co.*,
    210 F.3d 696 (6th Cir. 2000)    17


## STATUES AND OTHER AUTHORITIES

141 Cong. Rec. H2771    9

15 U.S.C. § 78j(b) (2005)    8

17 C.F.R. § 240.10b-5 (2003)    9

18 U.S.C. § 1961(4)    15

18 U.S.C. § 1962(c)    *passim*

18 U.S.C. §1962    1

18 U.S.C. §1964    2

Federal Rule of Civil Procedure 12(b)(6)    6

Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-
    67, 109 Stat. 737 (1995)    *passim*

1.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Royal Indemnity Company ("Royal") filed a Complaint against Pepper Hamilton LLP ("Pepper"), W. Roderick Gagné (collectively, the "Pepper Defendants") and others on March 18, 2005 asserting several common law state tort claims. On April 12, 2005, Royal filed an Amended Complaint. The Amended Complaint added two new civil RICO claims – violations of 18 U.S.C. §1962(c) (Count I) and conspiracy to violate the civil RICO statute, 18 U.S.C §1962(d) (Count II) – against Gagné (but not against Pepper) and another individual defendant. The Amended Complaint also retained the six state law tort claims against all defendants – civil conspiracy to commit fraud (Count III), fraud, fraudulent inducement and fraudulent concealment (Count IV), aiding and abetting fraud (Count V), negligence and negligent misrepresentation (Count VI), deepening insolvency (Count VII) and aiding and abetting breach of fiduciary duty (Count VIII). In the instant motion, Gagné moves for dismissal of all counts against him. The RICO claims against Gagné (Counts I and II) should be dismissed for the reasons set forth below. The remaining counts against Gagné should be dismissed for the reasons set forth in the Brief in Support of the Motion of Pepper Hamilton LLP for the Dismissal of Plaintiff's First Amended Complaint, which is being filed concurrently and which is incorporated by reference.

## SUMMARY OF ARGUMENT

1.      Royal's RICO claims (Counts I-II) are barred by the Private Securities Litigation Reform Act, 18 U.S.C. §1964(c), because the predicate acts upon which Royal bases those claims involve alleged fraud in the purchase or sale of securities.

2.      Royal's RICO claim (Count I) fails to state a claim because Royal has failed to plead a viable associated-in-fact enterprise which exists separate from the pattern of racketeering activity alleged.  Specifically, Royal alleges that the enterprise was no more than a common law conspiracy and that the enterprise's only purpose was to engage in the alleged racketeering activities.

3.      Royal's RICO claim (Count I) also fails to state a claim because Royal has not, as a matter of law, pled facts sufficient to establish that Gagné took part in the operation or management of the alleged enterprise.  Instead, the Amended Complaint alleges that SFC retained Gagné's legal services which he supplied in his capacity as an outside professional, which is insufficient to state a claim under *Reves v. Ernst & Young,* 507 U.S. 170, 179 (1993).

4.      Royal's RICO claim (Count II) fails to state a claim because Royal has failed to allege the elements of a claim under section 1962(d), in particular that there was a substantive violation of section 1962(c).

5.      Royal's state law tort claims against Gagné (Counts III-VIII) should be dismissed for the reasons set forth in the Brief in Support of the Motion of Pepper Hamilton LLP for the Dismissal of Plaintiff's First Amended Complaint.

### STATEMENT OF FACTS[1]

*SFC's business model.* SFC was a Pennsylvania corporation in the business of originating or acquiring loans made to students enrolled in truck driving schools. *See* Am. Compl. ¶¶ 1, 18. Andrew Yao owned and controlled SFC. *See id.* ¶ 20.

SFC operated by borrowing money that it used to purchase student loans from truck driving schools or to originate loans to students. *See id.* ¶ 37. An SFC affiliate would hold the loans pending securitization. *See id.* The SFC affiliate also would obtain a credit risk insurance policy that named the lender to SFC as the beneficiary of the policy. *See id.* When the SFC affiliate gathered a sufficient number of loans, it would pool the loans together and transfer them to a trust, which would, in turn, conduct private placements through which it would sell certificates or notes backed by the pooled loans to institutional investors. *See id.* SFC would repay its lender with the funds collected through the securitization process, and the investors would be repaid from the students' payments on the loans. *See id.* The credit risk insurance policies, which provided coverage if a student loan became more than 90 days delinquent, played an important role in the securitization process. *See id.* ¶¶ 1, 49. Royal issued numerous credit risk insurance policies to the SFC affiliates between 1999 and 2001. *See id.* ¶ 51. Gagné, a partner at Pepper, and other Pepper attorneys provided general legal services to SFC. *See id.* ¶ 72. In particular, the Pepper Defendants assisted SFC in the preparation of private placement memoranda (the "PPM's") issued in connection with the

---

[1]   Because defendants have yet to answer the complaint, and as is required on a motion to dismiss, the defendants rely on the facts alleged in the complaint but in no way adopt or concede the validity of any of those alleged facts.

4.

securitizations. *See id.* ¶ 53. Defendants Freed Maxick & Battaglia CPAs PC ("Freed"),

McGladrey & Pullen LLP ("McGladrey") and Michael Aquino provided accounting

services to SFC. *See id.* ¶ 95.

*SFC's demise.* SFC's business allegedly developed into a "loan mill,"

through which SFC supposedly conspired with trucking schools to generate as many

loans as possible irrespective of the borrowers' ability to repay the loans. *See id.* ¶ 62.

Because SFC was making loans to or acquiring them from non-creditworthy borrowers,

the loans defaulted at high rates. *See id.* ¶ 77. In order to conceal this high default rate

from prospective investors, SFC developed a scheme whereby it used its own funds to

make "ghost payments" on behalf of the defaulting students. *See id.* ¶ 38. SFC

represented that these payments were made by the students, not by SFC. *See id.* ¶ 64.

SFC eventually collapsed under the weight of these "ghost payments" and escalating

defaults, and, in March 2002, Yao disclosed his scheme to Royal. *See id.* ¶ 8, 44, 68.

*Royal's allegations against Gagné.* Royal, throughout its Amended

Complaint, alleges that Gagné knew about SFC's "ghost payments" and knew that SFC

was misrepresenting the default rates on the student loans but that Gagné failed to

disclose this information to Royal. *See, e.g., id.* ¶ 42. Yet when it comes time for Royal

to allege the actual wrongdoing in which Gagné supposedly engaged with respect to

Royal, Royal only is able to muster two specific allegations. First, Royal alleges that

Gagné transmitted to Royal PPM's that supposedly contained material omissions about

the default rates of the student loans. *See id.* ¶ 160(a).[2]    Second, Royal alleges that

---

[2]    Although the Amended Complaint contains conclusory allegations that Royal
relied on the PPM's when it decided to issue credit risk insurance policies to the
SFC affiliates (*see id.* ¶ 53), Royal alleges that it issued at least two insurance
(continued . . .)

5.

Gagné "on information and belief" was present at a meeting attended by representatives of Royal during which an officer of SFC allegedly made misstatements about student loan delinquencies. Royal alleges that Gagné remained silent and did not correct these supposed misrepresentations. *See id.* ¶ 58. Based on these allegations, Royal attempts to make out a RICO claim against Gagné. Interestingly, Royal did not think enough of its RICO argument to include it in its initial Complaint.

---

(. . . continued)

       policies providing in excess of $50 million in coverage to the SFC affiliates months *before* Gagné sent the first PPM. *Compare Am. Compl.* ¶¶ 39 and 51(a) (Royal issued policies on January 22, 1999 and December 3, 1999) *to* ¶ 160(a) (Gagné sent the first PPM on April 19, 2000). Noticeably absent from Royal's Amended Complaint is a description of the due diligence in which Royal engaged before it issued those first two policies.

6.

**ARGUMENT**

I.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed where a plaintiff fails to state a claim upon which relief can be granted. Dismissal is appropriate where, accepting as true all of the well-pleaded allegations in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff still is not entitled to relief. *See City of Phila. V. Beretta U.S.A. Corp.*, 277 F.3d 415, 420 (3d Cir. 2002).

Although a court must accept as true for purposes of a Rule 12(b)(6) motion all factual allegations in a complaint, "[g]eneral, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995). *See also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (stating that, in considering a motion to dismiss, a court need not credit a complaint's "bald assertions" or "legal conclusions"); *Allstate Transp. Co. v. SEPTA*, No. 97-1482, 1997 U.S. Dist. LEXIS 16638, at *29 (E.D. Pa. Oct. 20, 1997) (holding that a court considering a motion to dismiss may disregard conclusory allegations where they are contradicted by other allegations in plaintiff's complaint); *Goldin v. Primavera Familienstiftung Tag Assoc. (In re Granite Partners, L.P.)*, 194 B.R. 318, 326 (Bankr. S.D.N.Y. 1996) ("We do not credit conclusory allegations that are belied by more specific allegations.").

In addition, "[t]o resolve a 12(b)(6) motion, a court may properly look at public records, including judicial proceedings, in addition to the allegations in the complaint." *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999) (upholding dismissal of claim after taking

7.

judicial notice of opinion in another case); *see also Freed v. Universal Health Servs., Inc.*, No. 04-1233, 2005 U.S. Dist. LEXIS 7789, at \*12 (E.D. Pa. May 3, 2005). Therefore, although a court normally must convert a motion to dismiss to a motion for summary judgment when it relies upon matters outside of the complaint, a court may rely upon public records such as pleadings without converting the motion. *See Caldwell Trucking PRP Group v. Spaulding Composites Co.*, 890 F. Supp. 1247, 1252 (D.N.J. 1995) (relying upon publicly available pleadings filed in another court when granting a 12(b)(6) motion to dismiss). *Cf. Hirsch*, 72 F.3d at 1092 (holding that, on a 12(b)(6) motion, "[w]e may consider . . . any matters of which judicial notice may be taken"); *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 285 (S.D.N.Y. 1998) (holding that, in addition to considering the factual allegations in the complaint, a court also may rely on "'matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or which plaintiff[] had knowledge and relied on in bringing suit'" (*quoting Brass v. American Film Tech., Inc.*, 987 F.2d 142 (2d Cir. 1993)).

Finally, "'a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face.'" *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (*quoting ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994)) (affirming dismissal of complaint because affirmative defense of immunity appeared on the face of the complaint). *See also Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (affirming dismissal of breach of fiduciary duty action against accounting firm because *in pari delicto* defense appeared on the face of the complaint).

8.

II.    ROYAL'S RICO CLAIMS IN COUNTS I AND II ARE
       PREDICATED ON ALLEGATIONS OF SECURITIES
       FRAUD AND ARE THEREFORE PRECLUDED BY
       THE PRIVATE SECURITIES LITIGATION REFORM
       ACT.

The Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67,

109 Stat. 737 (1995) ("PSLRA") provides that "no person may rely upon any conduct

that would have been actionable as fraud in the purchase or sale of securities to establish

a violation of section 1962." In its Amended Complaint, Royal admits that the "object of

the agreement or plan was to securitize, through the use of insurance, *and then sell as a*

*security*, as many pools of student loans as possible . . . ." Am. Compl. ¶ 170 (emphasis

added). Furthermore, Royal alleges that "[t]he goal of the RICO Persons' racketeering

conspiracy and activity was to generate, securitize, and then sell to investors as many

student loans as possible . . . ." Am. Compl. ¶ 138. Because, as Royal admits, the alleged

underlying scheme in which all of the RICO Persons purportedly engaged involved the

sale of securities, Royal cannot, as a matter of law, maintain an action under RICO.[3]

---

[3]    Securities fraud is defined by section 10(b) of the Securities Exchange Act of
       1934 and related regulations. Specifically, section 10(b) states that it is illegal:

              to use or employ, in connection with the purchase or sale of
              any security registered on a national securities exchange or
              any security not so registered . . . any manipulative or
              deceptive device or contrivance in contravention of such
              rules and regulations as the Commission may prescribe as
              necessary or appropriate in the public interest or for the
              protection of investors.

       15 U.S.C. § 78j(b) (2005). Subsequently, the Securities Exchange Commission
       promulgated Rule 10b-5, which provides that it is unlawful for any person to use
       interstate commerce (1) to employ any device, scheme, or artifice to defraud, (2)
       to make any untrue statement of material fact or to omit or to state a material fact,
       and (3) to engage in any act practice, or course of business which operates as a
                                                                      (continued . . .)

9.

Section 107 of the PSLRA amended RICO to remove from its purview any conduct actionable as fraud in the purchase or sale of securities, eliminating the possibility that such conduct could establish a predicate act under the RICO provisions. *See Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999) (affirming dismissal of RICO suit). Before this amendment, a plaintiff could allege a private civil RICO claim for securities laws violations sounding in fraud because "fraud in the sale of securities" was among the listed predicate offenses. *Id.* But the stated purpose of the PSLRA was to "completely eliminate[] the so-called 'treble damage blunderbuss of RICO' in securities fraud cases." *Id.* at 328 (*quoting* 141 Cong. Rec. H2771); *Gatz v. Ponsoldt*, 297 F. Supp. 2d 719, 731-32 (D. Del. 2003) (Robinson, J.) (applying PSLRA to dismiss RICO claims).

The amendment was intended to apply broadly to exclude not only those claims that principally involve securities fraud, but also those that touch on such conduct. That is, if the misconduct that is alleged is characterized by the plaintiff as wire, mail, or bank fraud, but also "amounts to securities fraud," the court should not permit a "surgical presentation" of the cause of action to "undermine the congressional intent behind the RICO Amendment." *Bald Eagle*, 189 F.3d at 329-30; *Burton v. Ken-Crest Services, Inc.*, 127 F. Supp. 2d 673, 677 (E.D. Pa. 2001). In *Burton*, a case in which the plaintiff alleged that the defendant pension plan officials chose low-yield investments in order to reap personal benefits, the plaintiff attempted to escape the PSLRA bar by characterizing his claims as embezzlement and theft. The court rejected this notion holding that "there is no

_____

(. . . continued)
      fraud in connection with the purchase or sale of any security.    17 C.F.R.
      § 240.10b-5 (2003).

question that the whole of Plaintiff's allegations concern a fraudulent transaction of securities. Plaintiff cannot magically revive his claim by picking out discrete details of his allegations and then claiming that they are not actionable as securities fraud." *Burton*, 127 F. Supp. 2d at 677. *See also In re Ikon Office Solutions, Inc. Sec. Litig.*, 86 F. Supp. 2d 481, 486-87 (E.D. Pa. 2000) (since alleged predicate acts of accounting improprieties had the effect of inflating stock prices, the acts were actionable as securities fraud requiring dismissal of the claim under the PSLRA amendment "regardless of the injury alleged").

Because Royal affirmatively alleges throughout its Amended Complaint that the "goal" of the RICO Persons' fraudulent racketeering activity was to "securitize" and sell to "investors" as many student loans as possible, there is no question that Royal has alleged conduct that, if it is actionable as fraud, is securities fraud. *See* Am. Compl. ¶ 138; *Gatz*, 297 F. Supp. 2d at 731-32 ("The PSLRA acts as an absolute bar to RICO claims predicated upon conduct which could have been actionable as securities fraud."). In fact, Royal has alleged that the ***primary purpose*** of the RICO Persons' racketeering activity was to pool student loans and sell them to investors. *See* Am. Compl. ¶ 138. Moreover, as this Court already determined in *MBIA Ins. Corp. v. Royal Indem. Co.*, 286 F. Supp. 2d 347, 348 (D. Del. 2003) (Farnan, J.), Royal provided credit risk insurance coverage to SFC in order to make SFC's sale of asset-backed "securities in the private securities markets" more attractive.[4] Royal cannot avoid the PSLRA bar simply by

---

[4]    In resolving a Rule 12(b)(6) motion this Court may "look at public records, including judicial proceedings, in addition to the allegations in the complaint." *Southern Cross Overseas Agencies, Inc.*, 181 F.3d at 426-27 (upholding dismissal of claim after taking judicial notice of opinion in another case); *see also Freed*, 2005 U.S. Dist. LEXIS 7789, at *12.

pleading mail or wire fraud as predicate offenses where the conduct giving rise to those predicate offenses could have been actionable as securities fraud. *See Bald Eagle Area School Dist.*, 189 F.3d at 330 ("Consequently, a plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud.").

   Even if Royal had not affirmatively alleged that the defendants' supposed wrongful conduct related to SFC's issuance of securities, it is clear from the allegations present in the Amended Complaint taken as a whole that Royal is alleging fraud in connection with the purchase or sale of securities. Royal has gone out of its way to plead that Gagné, Aquino, Yao and Hawthorne were all involved in a scheme to mislead investors in connection with the purchase and sale of securities, and in the process misled Royal as well. Royal alleges that on at least six occasions Gagné sent PPM's with material omissions to potential investors and to Royal by means of interstate commerce. *See* Am. Compl. ¶¶ 81, 160. The PPM's, Royal alleges, were drafted to attract investors and were issued so SFC could "make required disclosures to potential investors." *See id.* ¶ 81. As to Aquino, Royal alleges that he, through McGladrey and Freed, reviewed student loan files and loan servicer reports and prepared misleading independent auditor's and accountant's reports that SFC needed in order to issue its securities. *See* Am. Compl. ¶¶ 97, 104, 109, 128 & 138. As to Yao and Hawthorne, Royal alleges that SFC and SLS, through Yao and Hawthorne, manipulated default rates and made numerous misrepresentations to "Royal and to SFC's lenders and investors." *See* Am. Compl. ¶ 155.

12.

A defendant's actions "concern a fraudulent transaction of securities" when the alleged conduct is "so closely connected with the purchase and sale of securities that it is actionable as securities fraud." *Burton,* 127 F. Supp. 2d at 673 & 677. *See also Reves v. Ernst & Young,* 494 U.S. 56, 61 (1990) (noting that Congress enacted a broad definition of "security" that encompasses "virtually any instrument that might be sold as an investment."). In Royal's own words "Student Finance Corporation, SLS and SMS [through Yao and Hawthorne] could not have conducted their business without Pepper, McGladrey, and Freed [through the assistance of Gagné and Aquino.]" *See* Am. Compl. ¶ 142. And, the business in which Yao, Hawthorne, Gagné, and Aquino allegedly engaged was the creation, securitization, and sale to investors of student loans portfolios. *See* Am. Complaint ¶¶ 138, 170. *See also Bald Eagle,* 189 F.3d at 330 (observing that "conduct undertaken to keep securities fraud Ponzi scheme alive is conduct undertaken in connection with the purchase and sale of securities."). If otherwise adequately pled, the conduct alleged in this case – (a) the preparation of supposedly fraudulent or misleading investment documents by an attorney, or (b) the preparation of allegedly fraudulent and misleading audit and financial reports by an accountant that are sent to or relied upon by investors, or (c) the perpetration of fraudulent conduct in the sale of securities by an officer or director of a corporation – could in theory be actionable by a purchaser or seller of securities, as securities fraud. *See In re Ikon Office Solutions, Inc.,* 277 F.3d 658, 666 (3d Cir. 2002) (stating that elements of securities fraud are: (1) making of misstatement or an omission of material fact, (2) with scienter, (3) in purchase or sale of security, (4) upon which plaintiff relies, and (5) proximate causation).[5]

---

[5]    Royal's Amended Complaint includes allegations touching on each of these five
(continued . . .)

13.

Moreover, the bar of the PSLRA applies even if the plaintiff would otherwise lack standing to sue under the securities laws: "Whether plaintiffs were purchasers or sellers of securities would only be relevant to the inquiry of their standing to bring a securities fraud claim, whereas the PSLRA's exclusion of securities fraud as a RICO predicate act applies regardless of whether a particular plaintiff has standing to bring a civil action under § 10b and Rule 10b-5." *Gatz*, 297 F. Supp. 2d at 731. *See also Howard v. America Online, Inc.*, 208 F.3d 741, 749 (9th Cir.), *cert. denied*, 531 U.S. 828 (2000) (dismissing RICO claims under § 1962(c) & (d) despite fact that plaintiff would lack standing to bring a securities fraud action).

To plead securities fraud one need only allege that a scheme to defraud coincides with the sale of securities. *SEC v. Zandford*, 535 U.S. 813, 822 (2002). Royal has alleged much more than that here. Royal cannot escape and, in fact, does not even attempt to hide, that its policies were issued to cover the student loan defaults – that is, to make the sale of securities based on student loans more attractive by protecting the purchasers of the securities against defaults by student borrowers. *See* Am. Compl. ¶ 138

---

(. . . continued)

elements as to each of the RICO Persons: Gagné, Aquino, Yao and Hawthorne respectively: (1) misstatement or omission (Am. Compl. ¶¶ 82 , 46 & 155), (2) scienter (Am. Compl. ¶¶ 79, 98 & 155), (3) purchase or sale of a security (Am. Compl. ¶¶ 138, 170 & 155), (4) reliance (Am. Compl. ¶¶ 53 & 54; 138 &164, 155-158), and (5) proximate causation (Am. Compl. ¶¶ 165-166).  While Royal did not purchase or sell the notes, and therefore lacks standing to bring a claim for securities fraud in connection with the purchase or sale of the notes, Royal has attempted to plead facts that a party with standing to assert a securities fraud claim would plead in asserting such a claim.  In other words, the conduct underlying Royal's RICO claim may be actionable as securities fraud by a proper plaintiff who adequately meets the stringent pleading requirements for pleading a securities fraud claim, and Royal is therefore barred from pursuing the claim by the PSLRA.  Royal cannot recast its claims as mail or wire fraud in order to avoid the PSLRA.

("The RICO Persons accomplished their objective by ... convincing insurers, specifically Royal, to issue insurance policies insuring the student loans to facilitate the securitization and sale of the loans."). Royal comes right out and alleges that Gagné and Aquino prepared misleading documents that were necessary in order for SFC to engage in its securitization transactions. *See, e.g.,* Am. Compl. ¶¶ 81 & 138. *See* Am. Compl. ¶ 81 ("To better attract investors – thereby generating fees for Pepper – Pepper and Gagné, with the participation of SFC and others, prepared Private Placement Memoranda ("PPM's"), and distributed them to potential investors and to Royal."). Royal cannot support a civil RICO claim after enactment of the PSLRA.

Because the allegations asserted in Counts I and II of the Amended Complaint are premised on the alleged provision of false, fraudulent, and misleading information in connection with the purchase or sale of securities, these claims are precluded by the PSLRA amendment to RICO and must be dismissed in their entirety.

III.    COUNT I SHOULD BE DISMISSED FOR FAILURE TO ADEQUATELY PLEAD A RICO ENTERPRISE.

Royal's initial Complaint contained no RICO allegations, but instead primarily pled a conspiracy by and between the defendants including Pepper, McGladrey, and Freed (all members of the alleged RICO enterprise). When it amended its Complaint to add RICO claims, Royal continued to rely upon allegations that it previously used to support its common law conspiracy action rather than pleading traditional facts necessary to comply with RICO's more demanding requirements. *See Gates v. Ernst & Young,* No. 9302332, 1994 U.S. Dist. LEXIS 11456, at *4 (E.D. Pa. Aug. 15, 1994) ("An enterprise is not merely a conspiracy and it should not be confused with an agreement to commit the alleged racketeering activity."); *see also* Am. Compl. ¶ 6 ("SFC and the Defendants acted

in concert to ensure that the ghost payments and the true default rates of SFC's loans were not disclosed to Royal."); Am. Compl. ¶ 137 (alleging as part of section 1962(c) violation that "the RICO Persons unlawfully, knowingly, and intentionally conspired to conduct . . . the affairs of the RICO Enterprise . . . .").[6]  Royal's failure to even attempt to plead anything more than a general civil conspiracy is fatal to its RICO claims.

Under RICO, an enterprise includes any union or group of individuals associated in fact although not a legal entity. *See* 18 U.S.C. § 1961(4). The Supreme Court has defined an association in fact as: (1) a group of persons associated together for a common purpose of engaging in a course of conduct with some sort of framework or superstructure for making or carrying out decisions; (2) an ongoing organization, formal or informal with various associates functioning as a continuing unit with established duties; and (3) an enterprise that must be separate and apart from the pattern of racketeering. *United States v. Turkette*, 452 U.S. 576, 583 (1981); *Dianese, Inc. v. Commonwealth of Pennsylvania*, No. 01-CV-2520, 2002 U.S. Dist. LEXIS 10917, at *35-36 (E.D. Pa. June 19, 2002); *Dow Chem. Co. v. Exxon Corp.,* 30 F. Supp. 2d 673, 702 (D. Del. 1998).

In order to establish liability under section 1962(c), the plaintiff must allege the existence of an enterprise that is distinct from the pattern of racketeering activity. In *Turkette*, the United States Supreme Court held that a RICO enterprise must be an ongoing association that functions as a continuing unit, and not merely through the alleged acts of racketeering. 452 U.S. at 583. As the court stated in *Dianese*, "[a]n

---

[6]     Moreover, as discussed in the brief in support of Pepper's Motion to Dismiss, which is being filed concurrently, Royal has failed to plead all of the necessary elements of a civil conspiracy claim.

enterprise is not merely a conspiracy and it should not be confused with an agreement to commit the alleged racketeering activity." 2002 U.S. Dist. LEXIS 10917, at *36-37. In examining whether a plaintiff has alleged an enterprise separate from its underlying racketeering allegations, the court will look first at the alleged pattern of racketeering and contrast that with the activities engaged in by the alleged associated-in-fact enterprise. *Jeffreys v. Exten*, No. 86-32-SLR, 1993 U.S. Dist. LEXIS 18537, at *51-52 (D. Del. Dec. 30, 1993). If the allegations are the same, the plaintiff has failed to plead a RICO claim. The complaint must allege that the enterprise has "an existence beyond that which is necessary merely to commit each of the acts charged as predicate racketeering offenses." *United States v. Riccobene*, 709 F.2d 214, 223-24 (3d Cir. 1983).

        If the allegations of a complaint affirmatively negate one of the *Turkette* factors, the RICO claim is properly dismissed. *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 790 n.5 (3d Cir. 1984) (dismissal proper when allegations amount to conspiracy not RICO enterprise); *Dianese*, 2002 U.S. Dist. LEXIS 10917, at *35-38 (dismissing claim where separateness negated); *Fed. Ins. Co. v. Ayers*, 741 F. Supp. 1179, 1184 (E.D. Pa. 1990) (dismissal appropriate when the allegations of a complaint preclude the existence of one or more of the *Riccobene* elements); *see also First Nationwide Bank v. Gelt Funding Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993), *aff'd,* 27 F.3d 763 (2d Cir. 1994) (dismissing a RICO action where the plaintiff failed to specify how various entities joined together to form an enterprise).

        Here, the allegations in Royal's Amended Complaint fail to properly allege the existence of an enterprise because Royal has failed to allege that an enterprise existed separate and apart from the pattern of alleged racketeering activity. In fact, Royal

17.

alleges just the opposite – that the enterprise was the alleged conspiracy and that the underlying racketeering activity also was the alleged conspiracy. Indeed, the allegations in Royal's complaint amount to no more than an attempt to plead a common law conspiracy.

Specifically, Royal alleges that the pattern of racketeering activity consisted of Gagné's preparation and transmission of the allegedly fraudulent PPM's and Aquino's separate preparation and transmission of allegedly fraudulent and misleading audit and accountant's reports. *See* Am. Compl. ¶ 160. There are no allegations that the named enterprise was organized in any real way and, specifically, that Gagné had any connection or dealings with Aquino. Indeed, Royal merely alleges that Yao and SFC had independent relationships with Aquino and Gagné.[7] The only facts that in any way

---

[7]   Numerous courts have held that Royal's alleged conspiracy – which is commonly referred to as a hub and spoke conspiracy – is not enough to satisfy the RICO enterprise requirement. *Vandenbroeck v. CommonPoint Mortg. Co.*, 210 F.3d 696, 699 (6th Cir. 2000) (granting 12(b)(6) motion because plaintiffs failed to allege a proper RICO enterprise); *New York Automobile Ins. Plan v. All Purpose Agency & Brokerage, Inc.*, No. 97-3164, 1998 U.S. Dist. LEXIS 15645, at *13 (S.D.N.Y. Oct. 6, 1998) ("This is a classic 'hub and spoke' conspiracy . . . [s]uch a scheme is not one true common law conspiracy nor is it a RICO enterprise."); *Gelt Funding Corp.*, 820 F. Supp. at 98 (holding that hub-and-spoke scheme is not an enterprise). The United States Supreme Court coined the phrase hub-and-spoke conspiracy in *Kotteakos v. United States*, 328 U.S. 750 (1946) where it characterized the alleged conspiracy as a "wheel" with one defendant as the "hub" and the other defendants as the "spokes." The Court observed that because of the lack of connection between the spokes, the wheel lacked a rim. *Id.* at 755. Although it involved a criminal conspiracy charge, the rationale behind the *Kotteakos* decision is instructive here: that a defendant has "the right not to be tried en masse for the conglomeration of distinct and separate offenses committed by others . . . ." *Id.*

Taking Royal's allegations as true, all that it has alleged here is a traditional hub-and-spoke conspiracy with Yao acting as the hub and Pepper, McGladrey, and Freed acting as the spokes. Such allegations can not establish a "group of persons associated together for a common purpose of engaging in a course of conduct . . . ." *Dow Chem. Co.*, 30 F. Supp. 2d at 702. Royal's hub-and-spoke conspiracy allegations are insufficient to establish a RICO enterprise under section 1962(c). The alleged wheel lacks a rim.

18.

associate SFC, Pepper, Freed, and McGladrey are the alleged racketeering activities of the individual defendants, Gagné and Aquino, and there are no allegations that specifically tie those acts together. *Jeffreys*, 1993 U.S. Dist. LEXIS 18537, at *50-51 (denying RICO claim where only activities of record of alleged enterprise were same as alleged racketeering activities).

Royal does not allege that the enterprise did anything other than engage in the alleged racketeering activity. Royal fails to allege any facts that would establish that the purported enterprise had usual and daily activities that were separate from the alleged pattern of racketeering activity in which the RICO persons supposedly engaged. In short, the purported RICO enterprise fabricated by Royal – the combination of Pepper, McGladrey and Freed, along with a mutual client and several of its subsidiaries – had no existence apart from Royal's alleged conspiracy. *See Seville Indus. Mach. Corp.*, 742 F.2d at 790 n.5 (dismissing RICO claim because purported enterprises were not separate and apart from alleged conspiracies). Where as here, a plaintiff alleges two or more instances of independent fraudulent conduct by two separate parties (Aquino and Gagné) in connection with the same entity (SFC) the plaintiff has pled two or more "single 'two-party conspiracy[ies],'" but has not pled an enterprise. *New York Auto. Ins. Plan,* 1998 U.S. Dist. LEXIS 15645, at *15.

In sum, the supposed enterprise is not alleged to have done anything other than engage in the alleged racketeering activity. Royal's allegations establish that the purported RICO enterprise had no existence separate and apart from the alleged racketeering activity. Therefore, Count I of Royal's Amended Complaint should be dismissed for this reason as well.

IV.    COUNT I SHOULD BE DISMISSED BECAUSE ROYAL
       HAS NOT, AS A MATTER OF LAW, PLED FACTS
       SUFFICIENT TO ESTABLISH THAT GAGNÉ TOOK
       PART IN THE OPERATION OR MANAGEMENT OF
       THE ALLEGED ENTERPRISE.

Even if Royal had pled an adequate enterprise, which it has not, Royal's

RICO claim against Gagné still is patently deficient because Royal has not, as a matter of

law, pled facts sufficient to establish that Gagné took part in the operation or

management of the alleged enterprise. In order to maintain a cause of action under

section 1962(c), the plaintiff must establish that a "person employed by or associated

with any enterprise . . . conduct[ed] or participate[d], directly or indirectly, in the conduct

of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C.

§ 1962(c). In defining the words "conduct or participate," the United States Supreme

Court adopted the "operation or management test." *Reves,* 507 U.S. at 179. The Court

held that in order for a defendant to violate section 1962(c) the party "must have some

part in directing" the enterprise's affairs and "participate in the operation or management

of the enterprise itself." *Id.* at 183.

The Supreme Court's decision in *Reves* significantly limits the prospective

RICO liability of outside professionals, such as accountants and attorneys, who provide

advice and services to businesses. *Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison,*

955 F. Supp. 248, 254-55 (S.D.N.Y. 1997) (rejecting RICO claim against accountants

involving allegations of fraud in preparation of private placement memoranda); *Schuylkill*

*Skyport Inn, Inc. v. Rich,* No. 95-3128, 1996 U.S. Dist. LEXIS 12655, at *96-107 (E.D.

Pa. Aug. 20, 1996) (dismissing claims against attorneys despite allegations that they had

prepared and transmitted documents containing misleading financial information to

20.

bank). While it is clear that RICO liability is not limited solely to those in management positions or in the upper echelon of the enterprise it is equally well-established that one must, in some capacity, "direct the affairs of the enterprise." *University of Maryland v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1538 (3d Cir. 1993).

Not even actions involving a degree of decision making satisfy the "operation or management test." *See Peat Marwick*, 996 F.2d at 1539. In fact, in *Reves*, an accounting firm knowingly prepared misleading financial reports and ignored substantial evidence regarding the accuracy of statements they included in their reports. 507 U.S. at 173-75. Moreover, the accountants intentionally withheld their concerns about the accuracy of the report they had prepared. *Id.* at 175. The Court concluded that the defendants' failure to disclose that their representations were false did not constitute "participation" and did not give rise to liability under section 1962(c). *Id.* at 186. Likewise, the United States Court of Appeals for the Third Circuit in *Peat Marwick* found that providing indispensable services does not create the requisite nexus between one's conduct and the operations and affairs of the enterprise. *Peat Marwick*, 996 F.2d at 1539. In both cases, the courts determined that the provision of professional services to a purported RICO enterprise was insufficient to satisfy the participation requirement of section 1962(c) of RICO. *Reves*, 507 U.S. at 188; *Peat Marwick*, 996 F.2d at 1539.

On their face, Royal's allegations do not even rise to the level of those held insufficient in *Reves* and *Peat Marwick*, and are wholly insufficient to establish that Gagné "conducted" or "participated" in the affairs of the alleged RICO enterprise. Taking the allegations as a whole, Royal is claiming that Gagné knew of SFC's fraudulent practices but did nothing to reveal the fraud. *See* Am. Compl. ¶ 74.

Assuming, as we must on a motion to dismiss, that these allegations are true, the decision in *Reves* and the multitude of cases discussing *Reves* establish that knowledge of the alleged fraudulent practices undertaken by the members of a purported enterprise is not enough to satisfy the participation requirement. *See Peat Marwick*, 996 F.2d at 1538-39 (fact that Peat Marwick "ignored numerous signs of Mutual Fire's precarious financial condition" is not sufficient to satisfy "operation or management" test); *Reynolds v. Condon*, 908 F. Supp. 1494, 1530-31 (N.D. Iowa 1995) (dismissing RICO claims despite allegations that lawyer drafted documents that were part of extortionate scheme); *Gilmore v. Berg*, 820 F. Supp. 179, 183 (D.N.J. 1993) ("The preparation by [the lawyer and accountant] of allegedly misleading opinion and forecast letters merely constituted the rendition of professional services to Berg and the corporate entities he controlled.").

It also is not enough that an outside attorney is involved in the affairs of the alleged enterprise. *See Schuylkill Skyport Inn*, 1996 U.S. Dist. LEXIS 12655, at *103-104 (fact that attorney served as an officer of the corporations comprising the association in fact insufficient to allege that lawyer operated and managed a RICO enterprise); *Gilmore*, 820 F. Supp. at 183 (plaintiff failed to plead that lawyer operated or managed the enterprise and did not allege that the lawyer was directing the affairs of the entities he represented or causing them to engage in particular activities).

In an opinion addressing RICO allegations against a partner in a law firm and the law firm, the United States District Court for the District of Iowa dismissed a complaint for failure to allege the conduct or participation element. *Reynolds,* 908 F. Supp. 1494. There, the plaintiff alleged that a partner in a law firm participated in and conducted the affairs of the enterprise, which consisted of the firm and its clients. *Id.* at

1508.  The court dismissed the complaint as a matter of law, holding that "[s]imply by alleging that an attorney or partner in a law firm acted on behalf of a client, whether the means used were fair or foul, and that in doing so, the attorney or partner in the firm used the facilities of the firm, does not allege that the attorney has conducted the *affairs of the law firm* in which she is a partner *through racketeering activity*." *Id.* at 1508 (emphasis in original).  And, in *Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.L.,* 832 F. Supp. 585, 590-91 (E.D.N.Y. 1993), the court found no liability even though the alleged RICO enterprise was the attorney's *sole* client, the attorney incorporated two of the corporate defendants involved in the scheme, and the attorney *served* as a director and officer of both.  In fact, in that case, as here, the plaintiff pointed to a communication sent from the lawyer to his client which allegedly discussed the purported scheme.  *See* Am. Compl. ¶ 79.  The court dismissed the plaintiff's complaint finding that the lawyer's role was confined "to providing legal advice and legal services." *Id.* at 592.

Royal alleges no more than that Gagné was a "partner at Pepper" and that he worked as "de facto in-house counsel for SFC." *See* Am. Compl. ¶ 147.  Thus, even if this Court were to give any weight to Royal's conclusory statement that Gagné was SFC's de facto in-house counsel, the allegation is still not enough to establish that Gagné managed or controlled the enterprise as a whole, which here includes not only SFC and Pepper, but SMS, SLS, McGladrey and Freed as well – a fact Royal has not pled and cannot establish.

And, even allegations concerning the fraudulent presentation of material information that significantly influences decisions of or benefits the purported enterprise

is not sufficient to constitute "operation or management" of the enterprise for purposes of section 1962(c). *See Fidelity Fed. Sav. & Loan Ass'n. v. Felicetti*, 830 F. Supp. 257, 260 (E.D. Pa. 1993). In *Fidelity Federal*, the plaintiff alleged that an appraiser's submission of false and misleading appraisals constituted the operation or management of the enterprise. The court disagreed. In dismissing the action, the court held that "even where the wrongdoers provide misleading or fraudulent information which significantly influences a major decision of the enterprise, this still does not constitute 'operation or management' of the enterprise in order for 1962(c) liability to attach." *Id.* at 260; *see also Peat Marwick*, 996 F.2d at 1539 ("Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result.").

In fact, the District Court for the District of New Jersey expressly held that the preparation of allegedly misleading private placement memoranda by a lawyer does not constitute participation in the direction of the affairs of any of the entities involved in an alleged enterprise. *Gilmore,* 820 F. Supp. at 182-83 ("The preparation by [the lawyers] of the allegedly misleading opinion and forecast letters merely constituted the rendition of professional service to [the alleged enterprise]."). Several other courts have likewise held that the alleged preparation and transmittal of fraudulent PPM's is not sufficient to satisfy the *Reves* test. *Hayden*, 955 F. Supp. at 254-55 ("Plaintiffs allege only that Price misrepresented material facts . . . which were included in each of the PPMs . . . [t]aken in light of the 'operation or management' test of *Reves*, these allegations are clearly insufficient . . ."); *Morin v. Trupin*, 832 F. Supp. 93, 97-98 (S.D.N.Y. 1993) (granting motion to dismiss because allegation that lawyer prepared

fraudulent tax opinions and PPM's was insufficient to establish participation in operation and management of partnership).[8]

Royal alleges only that Yao and SFC engaged Gagné to represent them, Gagné prepared and transmitted PPM's that contained material omissions, and that Royal and various investors relied on the PPM's. Even if true, these allegations are insufficient to establish that Gagné operated or otherwise controlled the supposed RICO enterprise, which consisted of the accountants over whom Gagné had no control. Simply stated, Gagné provided legal services to a client and acted on behalf of that client. Accordingly, Count I of the Amended Complaint should be dismissed.

V.    COUNT II SHOULD BE DISMISSED BECAUSE ROYAL HAS NOT ALLEGED THE ELEMENTS OF A CLAIM UNDER SECTION 1962(d).

To state a claim under section 1962(d) of RICO, a plaintiff must allege, *inter alia*, (1) an agreement to commit the predicate acts of fraud, and (2) knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate section 1962(a), (b), or (c). *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989). Courts of this circuit have long held that where a RICO plaintiff's section 1962(a), (b), and (c) claims are legally insufficient a claim for conspiracy under section 1962(d) must also be dismissed. *Gatz*, 297 F. Supp. 2d at 732 ("It is axiomatic that in the absence of a valid substantive claim under RICO, a claim of conspiracy cannot lie."); *Dow Chem. Co.*, 30 F. Supp. 2d at 702 (granting motion to dismiss section 1962(d) claim after dismissing other RICO claims); *see also Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1188 (3d

---

[8]    Each of the cases discussed in this paragraph were decided prior to the PSLRA Amendment and therefore dismissal was not available on that basis.

25.

Cir. 1993) ("Inasmuch as Lightning Lube has not established a viable claim under any of those subsections, its section 1962(d) claim must also fail.").

In *Breslin v. Brainard*, No. 01-CA-7269, 2003 U.S. Dist. LEXIS 19609, at *38-46 (E.D. Pa. Oct. 10, 2003), *aff'd*, 2005 U.S. App. LEXIS 5661 (3d Cir. April 7, 2005) the plaintiff argued that recent decisions of the U.S. Supreme Court and the United States Court of Appeals for the Third Circuit permit a plaintiff to maintain an action under section 1962(d) absent any valid claim under one of the substantive provisions of the statute. *See Salinas v. United States,* 522 U.S. 52 (1997); *Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001). However, the *Breslin* court explained that those decisions actually held that "an individual defendant need not be found liable under one of the substantive provisions in order for that *same defendant* to be found liable for conspiracy under § 1962(d)." *Breslin*, 2003 U.S. Dist. LEXIS 19609, at *39 n.16 (emphasis added). Indeed, in both *Salinas* and *Smith*, violations of RICO's substantive provisions were sufficiently alleged or established. *See Salinas*, 247 U.S. at 478; *Berg*, 247 F.3d at 534-57; *Breslin*, 2003 U.S. Dist. LEXIS 19609, at *39 n.16. Therefore, Royal must assert a valid substantive RICO claim against at least one of the RICO persons under section 1962(c) in order to maintain its section 1962(d) claim. Because Royal has failed to allege conduct that would constitute a violation of section 1962(c) against any RICO person, its claim under section 1962(d) must be dismissed.

Furthermore, to allege a conspiracy to violate 1962(c), a plaintiff must allege that the defendant has "knowingly agree[d] to facilitate a scheme which includes the operation or management of a RICO enterprise." *Berg*, 247 F.3d at 538. As discussed above, Royal has failed to allege the existence of a RICO enterprise under

26.

1962(c) and therefore, it has failed to state a claim under section 1962(d).  For this reason, and for all of the additional reasons argued above, Count II of the Amended Complaint must be dismissed.

VI.    COUNTS III THROUGH VIII SHOULD BE DISMISSED
       FOR THE REASONS SET FORTH IN PEPPER'S BRIEF.

Royal's state law tort claims against Gagné (Counts III-VIII) should be dismissed for the reasons set forth in the Brief in Support of the Motion of Pepper Hamilton LLP for the Dismissal of Plaintiff's First Amended Complaint, which is being filed concurrently and is incorporated by reference.

27.

## CONCLUSION

For the foregoing reasons, Defendant Gagné respectfully requests that this

Court dismiss all of Royal's claims against him.

MORRIS, NICHOLS, ARSHT & TUNNELL

*William H. Sudell*

William H. Sudell, Jr. (No. 0463)
Donna L. Culver (No. 2983)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200

*Counsel for Defendants Pepper Hamilton LLP
and W. Roderick Gagné*

OF COUNSEL:

SCHNADER HARRISON SEGAL & LEWIS LLP
Elizabeth K. Ainslie, Esq.
Nicholas J. LePore, III, Esq.
Theresa E. Loscalzo, Esq.
Bruce P. Merenstein, Esq.
Stephen J. Shapiro, Esq.
1600 Market Street, Suite 3600
Philadelphia, PA  19103
(215) 751-2000

June 10, 2005

469330

## CERTIFICATE OF SERVICE

I, Laura V. McGeoch, Esquire, hereby certify I am not less than 18 years of age and that service of the foregoing **BRIEF IN SUPPORT OF THE MOTION OF W. RODERICK GAGNÉ FOR THE DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT** was caused to be served this 10th day of June, 2005, in the manner indicated upon the entities identifies below.

Laura V. McGeoch (#4655)

**VIA HAND DELIVERY**

Lawrence C. Ashby
Philip Trainer, Jr., Esq.
Tiffany Geyer Lydon, Esq.
Ashby & Geddes
222 Delaware Avneue
P.O. Box 1150
Wilmington, DE  19801
*(Counsel for Royal Indemnity)*

James L. Holzman
Prickett, Jones & Elliott, P.A.
1310 King St.
P.O. Box 1328
Wilmington, DE  19801
*(Counsel for Freed Maxick & Battaglia CPA's PC)*

Christopher M. Winter
Duane Morris, LLP
1100 North Market Street
Wilmington DE  19801
*(Counsel for Freed Maxick & Battaglia CPA's PC; McGladrey & Pullen LLP and Michael Auino)*

**VIA FIRST CLASS MAIL**

Elizabeth K. Ainslie
Nicholas J. LePore, III
Bruce P. Merenstein
Stephen J. Shapiro
Schnader, Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
*(Counsel for W. Roderick Gagne  & Pepper Hamilton)*

Veronica E. Rendon
Richard P. Swqnson
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022
*(Counsel for McGladrey & Pullen LLP and Michael Aquino)*

469532