IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROYAL INDEMNITY COMPANY | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 05-165 (JJF) |
| | : | |
| PEPPER HAMILTON LLP, ET AL. | : | |
| | : | |
| Defendants. | : | |

## BRIEF IN SUPPORT OF MOTION OF PEPPER HAMILTON LLP FOR THE DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT

MORRIS, NICHOLS, ARSHT & TUNNELL
William H. Sudell, Jr. (No. 0463)
Donna L. Culver (No. 2983)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
(302) 658-3989 (Facsimile)

*Counsel for Defendants Pepper Hamilton LLP
and W. Roderick Gagné*

OF COUNSEL:

SCHNADER HARRISON SEGAL & LEWIS LLP
Elizabeth K. Ainslie, Esq.
Nicholas J. LePore, III, Esq.
Bruce P. Merenstein, Esq.
Stephen J. Shapiro, Esq.
1600 Market Street, Suite 3600
Philadelphia, PA  19103
(215) 751-2000
(215) 751-2205 (Facsimile)

June 10, 2005

## TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | III |
| STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING | 1 |
| SUMMARY OF ARGUMENT | 1 |
| STATEMENT OF FACTS | 3 |
| ARGUMENT | 6 |
| I.   STANDARD OF REVIEW. | 6 |
| II.  PENNSYLVANIA LAW APPLIES TO THE CLAIMS AGAINST THE PEPPER DEFENDANTS. | 7 |
| III. ROYAL'S STATE LAW CLAIMS ARE TIME BARRED. | 10 |
| IV.  ROYAL'S CIVIL CONSPIRACY COUNT FAILS TO STATE A CLAIM BECAUSE ROYAL FAILS TO ALLEGE THAT THE PEPPER DEFENDANTS ACTED WITH THE "MALICE" REQUIRED BY PENNSYLVANIA LAW. | 11 |
| V.   COUNT V AND COUNT VIII SHOULD BE DISMISSED BECAUSE THE PENNSYLVANIA SUPREME COURT DOES NOT RECOGNIZE A CAUSE OF ACTION FOR AIDING AND ABETTING. | 13 |
| VI.  ROYAL'S DEEPENING INSOLVENCY CLAIM FAILS TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED. | 15 |
| A.   Deepening Insolvency Is Not a Recognized Cause of Action Under Pennsylvania Law. | 15 |
| B.   Royal Lacks Standing to Recover Damages Caused by the Alleged Deepening Insolvency of SFC. | 16 |
| C.   Royal's "Deepening Insolvency" Cause of Action Is Barred By the Automatic Stay Provisions of the Bankruptcy Code. | 18 |
| D.   Royal's Amended Complaint Fails to Allege Sufficient Facts to State a Claim for Deepening Insolvency. | 19 |

TABLE OF CONTENTS (continued)

Page

E.    Royal's Complaint Fails To Allege Fraud With Sufficient Particularity.    22

CONCLUSION    23

iii.

TABLE OF AUTHORITIES

Page(s)

Cases

*ALA, Inc. v. CCAIR, Inc.*,
    29 F.3d 855 (3d Cir. 1994)      6

*Allstate Transp. Co. v. SEPTA*,
    No. 97-1482, 1997 U.S. Dist. LEXIS 16638 (E.D. Pa. Oct.
    20, 1997)      6

*B. Lewis Productions, Inc. v. Bean*,
    No. 02-93-KAJ, 2005 U.S. Dist. LEXIS 1549 (D. Del. Jan.
    28, 2005) (Jordan, J.)      9

*Becker v. Chicago Title Ins. Co.*,
    No. 03-2292, 2004 U.S. Dist. LEXIS 1988 (E.D. Pa. Feb. 4,
    2004)      12

*Bristol Twp. v. Independence Blue Cross*,
    No. 01-4323, 2001 U.S. Dist. LEXIS 16594 (E.D. Pa. Oct.
    11, 2001)      12

*California Pub. Employees' Retirement Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004)      7

*Cedarbrook Plaza v. Gottfried*,
    No. 97-1560, 1997 U.S. Dist. LEXIS 8026, No. 97-1560
    (E.D. Pa. Jun. 4, 1997)      18, 19

*City of Phila. v. Beretta U.S.A. Corp.*,
    277 F.3d 415 (3d Cir. 2002)      6, 13

*Corporate Aviation Concepts, Inc. v. Multi-Service Aviation Corp.*,
    No. Civ-03-3020, 2004 U.S. Dist. LEXIS 17154 (E.D. Pa.
    Aug. 24, 2004)      17

*Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*,
    187 F. Supp. 2d 400 (W.D. Pa. 2002)      14, 15

*David B. Lilly Co. v. Fisher*,
    18 F.3d 1112 (3d Cir. 1994)      9

*Flood v. Makowski*,
    No. 03-1803, 2004 U.S. Dist. LEXIS 16957 (M.D. Pa. Aug.
    24, 2004)      14, 15

iv.

<u>TABLE OF CITATIONS</u> (continued)

<u>Case</u>                                                                                    <u>Page(s)</u>

*Goldin v. Primavera Familienstiftung Tag Assoc. (In re Granite
        Partners, L.P.),* 194 B.R. 318 (Bankr. S.D.N.Y. 1996)                              6

*Harbison-Walker Refractories Co. v. ACE Prop. & Cas. Ins. Co. (In re
        Global Indus. Techs.*), 303 B.R. 753 (Bankr. W.D. Pa. 2004)                       18

*Hirsch v. Arthur Andersen & Co.,*
        72 F.3d 1085 (2d Cir. 1995)                                                        6

*Homer Nat'l Bank v. Namie,*
        96 B.R. 652 (W.D. La. 1989)                                                       19

*In re Burlington Coat Factory Sec. Litig.,*
        114 F.3d 1410 (3d Cir. 1997)                                                       6

*In re International Forex of Cal., Inc.,*
        247 B.R. 284 (Bankr. S.D. Cal. 2000)                                              19

*In re Siciliano,*
        13 F.3d 748 (3d Cir. 1994)                                                        18

*Jeter v. Brown & Williamson Tobacco Corp.*
        294 F. Supp. 2d 681 (W.D. Pa. 2003), *aff'd,* 113 Fed. Appx. 465 (2004)           12

*Juran v. Bron,*
        No. 16464, 2000 Del. Ch. LEXIS 143 (Del Ch. Oct. 6, 2000)                          9

*Kingston Coal Co. v. Felton Mining Co.,*
        456 Pa. Super. 270, 690 A.2d 284, *app. denied* 549 Pa. 702
        A.2d 441 (1997)                                                                    10

*Kittay v. Atl. Bank* (*In re Global Serv. Group LLC*),
        316 B.R. 451 (Bankr. S.D.N.Y. 2004)                                               20

*Leo v. Kerr-McGee Chem. Corp.,*
        37 F.3d 96 (3d Cir. 1994)                                                         13

*Leveto v. Lapina,*
        258 F.3d 156 (3d Cir. 2001)                                                        6

*Lickman v. Henkel,*
        No. 01-2949, 2003 U.S. Dist. LEXIS 1338, No. 01-2949
        (E.D. Pa. Jan. 15, 2003), *aff'd,* 119 Fed. Appx. 427 (2004)                       19

v.

TABLE OF CITATIONS (continued)

Case                                                                          Page(s)

*Marks v. Messick & Gray Constr., Inc.,*
    No. 98C-09-032, 2000 Del. Super. LEXIS 131 (Del. Super.
    Apr. 18, 2000)                                                       8

*McRoberts v. S.I.V.I. (In re Bequette),*
    184 B.R. 327 (Bankr. S.D. Ill. 1995)                               19

*Murphy v. Villanova Univ.,*
    547 F. Supp. 512 (E.D. Pa. 1982),
    *aff'd,* 707 F.2d 1402 (3d Cir. 1983)                               12

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v.*
    *Coopers & Lybrand, LLP,*
    322 F.3d 147 (2d Cir. 2003)                                          7

*Official Comm. of Unsecured Creditors v. Credit Suisse First*
    *Boston,* (*In re Exide Techs., Inc.),*
    299 B.R. 732 (Bankr. D. Del. 2003)                              21, 22

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.,*
    267 F.3d 340 (3d Cir. 2001)                                      passim

*Oshiver v. Levin, Fishbein, Sedran & Berman,*
    38 F.3d 1380 (3d Cir. 1994)                                         11

*Pack v. Beech Aircraft Corp.,*
    132 A.2d 54 (Del. 1957)                                              9

*Rolick v. Collins Pine Co.,*
    925 F.2d 661 (3d Cir. 1991)                                         13

*Rolo v. City Investing Co. Liquidating Trust,*
    155 F.3d 644 (3d Cir. 1998)                                         22

*Ryan v. Lower Merion Twp.,*
    205 F. Supp. 2d 434 (E.D. Pa. 2002)                                 12

*Saudi Basic Indus. v. Mobil Yanbu Petrochemical Co.,*
    866 A.2d 1 (Del. 2005)                                            9, 10

*Schacht v. Brown,*
    711 F.2d 1343 (7th Cir.),
    *cert. denied* 464 U.S. 1002 (1983)                             21, 22

vi.

## TABLE OF CITATIONS (continued)

Case                                                                    Page(s)

*Sim Kar Lighting Fixture Co. v. Genlyte, Inc.*,
    906 F. Supp. 967 (D.N.J. 1995)                              12

*Simon v. UnumProvident Corp.*,
    No. 99-6638, 2002 U.S. Dist. LEXIS 9331 (E.D. Pa. May 23, 2002    12

*Spitzer v. Abdelhak*,
    No. 98-6475, 1999 U.S. Dist. LEXIS 19110 (E.D. Pa. Dec. 15, 1999)   12

*Stanziale v. Pepper Hamilton LLP*, et al.,
    No. 04-1551 (D. Del.)                                        9, 17, 18

*Thompson Coal Co. v. Pike Coal Co.*,
    488 Pa. 198, 412 A.2d 466 (1979)                             11, 12

*Toy v. Metropolitan Life Ins. Co.*,
    863 A.2d 1 (Pa. Super. Ct. 2004)                             10

*Travelers Indem. Co. v. Lake*,
    594 A.2d 38 (Del. 1991)                                      7

*United States v. Whiting Pools, Inc.*,
    462 U.S. 198 (1983)                                          18


STATUTES AND OTHER AUTHORITIES

10 Del. C. § 8121                                                        9

11 U.S.C § 362(a)(3)                                                     18

11 U.S.C. § 1109(b)                                                      19

11 U.S.C. § 362(h)                                                       19

11 U.S.C. § 541(a)(1)                                                    18

18 U.S.C § 1962(d)                                                       1

18 U.S.C. §1962(c)                                                       1

42 Pa. C.S. § 5524(7)                                                    10

Federal Rule of Civil Procedure 12(b)(6)                                6, 10

vii.

<u>TABLE OF CITATIONS</u> (continued)

| <u>Case</u> | <u>Page(s)</u> |
|---|---|
| Federal Rule of Civil Procedure 9(b) | 7, 22 |
| Restatement (Second) of Conflict of Laws § 145(1) | 7 |
| Restatement Second § 145(2) | 8 |

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Royal Indemnity Company ("Royal") filed a Complaint against Pepper Hamilton LLP ("Pepper"), W. Roderick Gagné (collectively, the "Pepper Defendants") and others on March 18, 2005. On April 12, 2005, Royal filed an Amended Complaint. The Amended Complaint alleges two new civil RICO claims -- violations of 18 U.S.C. §1962(c) (Count I) and conspiracy to violate the civil RICO statute, 18 U.S.C § 1962(d) (Count II) -- against Gagné (but not against Pepper) and another individual defendant. The Amended Complaint also pleads six state law tort claims against all defendants -- civil conspiracy to commit fraud (Count III), fraud, fraudulent inducement and fraudulent concealment (Count IV), aiding and abetting fraud (Count V), negligence and negligent misrepresentation (Count VI), deepening insolvency (Count VII) and aiding and abetting breach of fiduciary duty (Count VIII). In the instant motion, Pepper moves for dismissal of all counts against it.

## SUMMARY OF ARGUMENT

1.      Royal's state law claims (Counts III-VIII) are time barred.

2.      Royal's civil conspiracy count (Count III) fails to state a claim because Royal's own allegations demonstrate that Pepper did not act with the "malice" required to state a cause of action for civil conspiracy under Pennsylvania law.

3.      Aiding and abetting fraud (Count V) and aiding and abetting breach of fiduciary duty (Count VIII) are not recognized causes of action under Pennsylvania law.

4.      Royal's deepening insolvency claim (Count VII) fails because there is no such cause of action under Pennsylvania law. Even if such a cause of action

2.

existed, Royal's claim still should be dismissed because (1) Royal would lack standing to assert it; (2) the claim would be subject to the automatic stay provisions of the Bankruptcy Code; (3) Royal fails to allege sufficient facts to state a cause of action for deepening insolvency; and (4) Royal fails to allege the fraud component of a deepening insolvency claim with sufficient particularity.

## STATEMENT OF FACTS[1]

*SFC's business model*.  SFC was a Pennsylvania corporation in the business of originating or acquiring loans made to students enrolled in truck driving schools.  *See* Am. Compl. ¶¶ 1, 18.  Andrew Yao owned and controlled SFC.  *See id.* ¶ 20.

SFC operated by borrowing money that it used to purchase student loans from truck driving schools or to originate loans to students.  *See id.* ¶ 37.  An SFC affiliate would hold the loans pending securitization.  *See id.*  The SFC affiliate also would obtain a credit risk insurance policy that named the lender as the beneficiary of the policy.  *See id.*  When the SFC affiliate gathered a sufficient number of loans, it would pool the loans together and transfer them to a trust, which would, in turn, conduct private placements through which it would sell certificates or notes backed by the pooled loans to institutional investors.  *See id.*  SFC would repay its lender with the funds collected through the securitization process, and the investors would be repaid from the students' payments on the loans.  *See id.*  The credit risk insurance policies, which provided coverage if a student loan became more than 90 days delinquent, played an important role in the securitization process.  *See id.* ¶¶ 1, 49.  Royal issued numerous credit risk insurance policies to the SFC affiliates between 1999 and 2001.  *See id.* ¶ 51.

Gagné, a partner at Pepper, and other Pepper attorneys provided legal services to SFC.  *See id.* ¶ 72.  In particular, the Pepper Defendants assisted SFC in the

---

[1]    Because defendants have yet to answer the Amended Complaint, and as is required on a motion to dismiss, the defendants rely on the facts alleged in the Amended Complaint but in no way adopt or concede the validity of any of those alleged facts.

preparation of private placement memoranda (the "PPMs") issued in connection with the securitizations. *See id.* ¶ 53.

**SFC's demise.**  SFC's business allegedly developed into a "loan mill," through which SFC supposedly conspired with trucking schools to generate as many loans as possible irrespective of the borrowers' ability to repay the loans. *See id.* ¶ 62. Because SFC was making loans to or acquiring them from non-creditworthy borrowers, the loans defaulted at high rates. *See id.* ¶ 77.  In order to conceal this high default rate from prospective investors, SFC developed a scheme whereby it used its own funds to make "ghost payments" on behalf of the defaulting students. *See id.* ¶ 38.  SFC represented that these payments were made by the students, not by SFC. *See id.* ¶ 64. SFC eventually collapsed under the weight of these "ghost payments" and escalating defaults, and, in March 2002, Yao disclosed his scheme to Royal. *See id.* ¶¶ 8, 44, 68.

**Royal's allegations against the Pepper Defendants.**  Royal repeats throughout its Amended Complaint that the Pepper Defendants knew about SFC's "ghost payments" and knew that SFC was misrepresenting the default rates on the student loans but that the Pepper Defendants failed to disclose this information to Royal. *See, e.g, id.* ¶ 42.  Yet when it comes time for Royal to allege the actual wrongdoing in which the Pepper Defendants supposedly engaged with respect to Royal, Royal only is able to muster two specific allegations.  First, Royal alleges that Gagné transmitted to Royal PPMs that supposedly contained false information about the default rates of the student loans. *See id.* ¶ 160(a)).[2]  Second, Royal alleges that Gagné "on information and belief"

---

[2]    Although the Amended Complaint contains conclusory allegations that Royal relied on the PPMs when it decided to issue credit risk insurance policies to the SFC affiliates (*see id.* ¶ 53), Royal alleges that it issued at least two insurance (continued . . .)

5.

was present at a meeting attended by representatives of Royal during which an officer of SFC allegedly made misstatements about student loan delinquencies. Royal alleges that Gagné remained silent and did not correct these supposed misrepresentations. *See id.* ¶ 58.

---

(. . . continued)

policies providing in excess of $50 million in coverage to the SFC affiliates months *before* Gagné sent the first PPM. *Compare Am. Compl.* ¶¶ 39 and 51(a) (Royal issued policies on January 22, 1999 and December 3, 1999) *to* ¶ 160(a) (Gagné sent the first PPM on April 19, 2000). Noticeably absent from Royal's Amended Complaint is a description of the due diligence in which Royal engaged before it issued those first two policies.

## ARGUMENT

I.    **STANDARD OF REVIEW.**

*Rule 12(b)(6)*. Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed where a plaintiff fails to state a claim upon which relief can be granted. Dismissal is appropriate where, accepting as true all of the well-pleaded allegations in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff still is not entitled to relief. *See City of Phila. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 420 (3d Cir. 2002).

Although a court must accept as true for purposes of a Rule 12(b)(6) motion all factual allegations in a complaint, "[g]eneral, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995). *See also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (stating that, in considering a motion to dismiss, a court need not credit a complaint's "bald assertions" or "legal conclusions"); *Allstate Transp. Co. v. SEPTA*, No. 97-1482, 1997 U.S. Dist. LEXIS 16638, at *29 (E.D. Pa. Oct. 20, 1997) (holding that a court considering a motion to dismiss may disregard conclusory allegations where they are contradicted by other allegations in plaintiff's complaint); *Goldin v. Primavera Familienstiftung Tag Assoc. (In re Granite Partners, L.P.)*, 194 B.R. 318, 326 (Bankr. S.D.N.Y. 1996) ("We do not credit conclusory allegations that are belied by more specific allegations.").

Finally, "'a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face.'" *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (*quoting ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994))

(affirming dismissal of complaint because affirmative defense of immunity appeared on the face of the complaint). *See also Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (affirming dismissal of breach of fiduciary duty action against accounting firm because in pari delicto defense appeared on the face of the complaint).

> *Rule 9(b)*. Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Where a plaintiff fails to plead a fraud claim in compliance with the requirements of Rule 9(b), the claim must be dismissed. *See California Pub. Employees' Retirement Sys. v. Chubb Corp.*, 394 F.3d 126 (3d Cir. 2004) (upholding dismissal of complaint for failure to meet the Rule 9(b) standard of pleading).

## II.    PENNSYLVANIA LAW APPLIES TO THE CLAIMS AGAINST THE PEPPER DEFENDANTS.

Pennsylvania law governs the asserted claims in this case. Both federal common law and Delaware law follow the "most significant relationship" test set forth in § 145(1) of the Restatement (Second) of Conflict of Laws. *See Travelers Indem. Co. v. Lake*, 594 A.2d 38, 47 (Del. 1991). For choice of law questions sounding in tort, the Restatement provides that "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." Restatement (Second) of Conflict of Laws § 145(1) (1971); *Marks v.*

*Messick & Gray Constr., Inc.*, No. 98C-09-032, 2000 Del. Super. LEXIS 131, at *4 (Del. Super. Apr. 18, 2000).[3]

Restatement Second § 145(2) provides that a court should evaluate the following factors to determine which state has the most significant relationship to the tort and to the parties: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Marks*, 2000 Del. Super. LEXIS 131, at *4. The test is qualitative, not quantitative, and its inherent flexibility mandates that each case be decided on its unique facts. *Id.*

Here, a review of Royal's own allegations leaves no doubt that Pennsylvania has the most significant relationship to the occurrence and the parties. Royal alleges that:

- Pepper is a Pennsylvania Limited Liability Partnership (*see* Am. Compl. ¶ 13);

- Gagné is a resident of Pennsylvania (*id.* at ¶ 14);

- Gagné is a partner in Pepper's Philadelphia office (*id.* at ¶ 14);

- SFC is a Pennsylvania corporation (*id.* at ¶ 18);

- Yao is a resident of Pennsylvania (*id.* at ¶ 20);

---

[3]     Section 6 of the Restatement (Second) of Conflicts provides the following broad choice of law policy considerations:

(1)  the needs of the interstate and international systems,
(2)  the relevant policies of the forum,
(3)  the relevant policies of other interested states,
(4)  the protection of justified expectations,
(5)  the basic policies underlying the particular field of law,
(6)  certainty, predictability, and uniformity of result, and
(7)  ease in the determination and application of the law to be applied.

- Yao conducted business from an office in Pennsylvania (*id*. at ¶ 156(d) and (e)); and

- Gagné sent the PPMs that are the foundation of Royal's claims from Philadelphia. (*id*. at ¶ 160).

In light of these allegations, the court should apply Pennsylvania substantive law to decide the state law tort claims at issue in this case.[4]  In addition, because Pennsylvania has the most significant relationship to this case, Pennsylvania's statute of limitations also should apply to Royal's claims.  *See Juran v. Bron*, No. 16464, 2000 Del. Ch. LEXIS 143, *38 (Del Ch. Oct. 6, 2000) (applying California's statute of limitations where the cause of action had the most significant relationship with California).[5]

---

[4]    In *Stanziale v. Pepper Hamilton LLP*, et al., No. 04-1551 (D. Del.), which currently is pending before the Court, SFC's trustee in bankruptcy brought similar causes of action against the Pepper Defendants based on many of the same facts alleged by Royal.  In its motion to dismiss in that case, the Pepper Defendants argued that Pennsylvania law applies.  The trustee did not contest this position, thereby conceding that Pennsylvania law applies to the facts and claims alleged in these cases.

[5]    Pennsylvania's limitations period for tort claims (which is shorter than the limitations period in Delaware) also would apply under Delaware's "borrowing statute."  *See* 10 Del. C. § 8121 ("Where a cause of action arises outside of [Delaware], an action cannot be brought in a court of [Delaware] to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of [Delaware], or the time limited by the law of state . . . where the cause of action arose, for bringing an action upon such cause of action.").

Although the borrowing statute also provides that "[w]here the cause of action originally accrued in favor of a person who at the time of such accrual was a resident of [Delaware], the time limited by the law of [Delaware] shall apply," that provision does not change the result here.  Even assuming that a corporation such as Royal qualifies as both "a person" and a "resident" of Delaware for purposes of the borrowing statute, the statute is inapplicable where "literal construction . . . would subvert the statute's underlying purpose. . . . '[t]o prevent shopping for the most favorable forum.'"  *Saudi Basic Indus. v. Mobil Yanbu Petrochemical Co.*, 866 A.2d 1, 16 (Del. 2005) (*quoting Pack v. Beech Aircraft Corp.*, 132 A.2d 54 (Del. 1957)).  *See also B. Lewis Productions, Inc. v. Bean*, No. 02-93-KAJ, 2005 U.S. Dist. LEXIS 1549, *8-9 (D. Del. Jan. 28, 2005) (Jordan, J.) (refusing to apply the borrowing statute where to do so would "effectively encourage the forum shopping denounced by the Delaware Supreme Court . . . .").  To the extent that *David B. Lilly Co. v. Fisher*, 18 F.3d 1112 (3d Cir. 1994), suggests a contrary result, its prediction of Delaware state law has

(continued . . .)

### III. ROYAL'S STATE LAW CLAIMS ARE TIME BARRED.

All of Royal's causes of action against Pepper (Counts III through VIII) sound in tort. Under Pennsylvania law, the statute of limitations for tort claims is two years. *See* 42 Pa. C.S. § 5524(7) ("The following actions and proceedings must be commenced within two years: . . . [a]ny . . . action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud . . . ."). *See also Toy v. Metropolitan Life Ins. Co.*, 863 A.2d 1, 7 (Pa. Super. Ct. 2004) (statute of limitations on fraud, negligence and negligent misrepresentation actions under Pennsylvania law is two years); *Kingston Coal Co. v. Felton Mining Co.*, 456 Pa. Super. 270, 277, 690 A.2d 284, 287 n.1, *app. denied* 549 Pa. 702, 700 A.2d 441 (1997) ("[T]he statute of limitations for conspiracy is the same as that for the underlying action which forms the basis of the conspiracy.").[6]

A statute of limitations defense can be raised in the context of a Rule 12(b)(6) motion to dismiss "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 (3d

---

(. . . continued)

been supplanted by *Saudi Basic*, a subsequent decision of the Delaware Supreme Court.

[6]  As discussed in more detail below, Royal's claims for aiding and abetting fraud, aiding and abetting breach of fiduciary duty and deepening insolvency are not recognized causes of action under Pennsylvania law. *See infra*, §§ V and VI(A). Even if they were, there can be no question that the causes of action would be categorized as torts subject to the two year statute of limitations in 42 Pa. C.S. § 5524(7).

Cir. 1994). That is precisely the case here. In its own Amended Complaint Royal concedes that it learned about the fraud at SFC on March 20, 2002. *See* Am. Compl. ¶¶ 8, 44, 68. Royal did not file its Amended Complaint until March 18, 2005, almost three years after it was placed on inquiry notice. Although Royal alleges in wholly conclusory terms that it did not discover and could not reasonably have discovered the Pepper Defendants' supposed participation in SFC's fraud until the Fall of 2004, *see* Am. Compl. ¶ 71, Royal's own allegations demonstrate that it was on inquiry notice no later than the date Royal learned SFC was engaging in fraud -- March 20, 2002.[7] Indeed, if Pepper was SFC's "general counsel" as Royal apparently believes, *see* Am. Compl. ¶ 72, Royal clearly had a duty to inquire about any supposed involvement by Pepper no later than March 2002. Therefore, Royal's state law claims are time barred and Counts III through VIII should be dismissed.

## IV. ROYAL'S CIVIL CONSPIRACY COUNT FAILS TO STATE A CLAIM BECAUSE ROYAL FAILS TO ALLEGE THAT THE PEPPER DEFENDANTS ACTED WITH THE "MALICE" REQUIRED BY PENNSYLVANIA LAW.

Assuming as true all of the allegations in Royal's Amended Complaint and viewing them in the light most favorable to Royal, Royal still has failed to plead one of the elements -- malice -- necessary to state a cause of action for civil conspiracy under Pennsylvania law. "Proof of malice, *i.e.*, an intent to injure, is essential in proof of a conspiracy." *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 211, 412 A.2d 466, 472 (1979). An alleged conspirator only acts with malice where he acts "***solely*** to injure

---

[7]     On a motion to dismiss, the Court may ignore conclusory allegations that are contradicted by more specific allegations. *See supra*, § I.

[plaintiff]." *Thompson Coal Co.*, 488 Pa. at 211, 412 A.2d at 472 (emphasis added) (upholding entry of summary judgment on conspiracy claim where defendants acted to further their own interests). *See also Spitzer v. Abdelhak*, No. 98-6475, 1999 U.S. Dist. LEXIS 19110, *30-*31 (E.D. Pa. Dec. 15, 1999) ("[M]alice requires an allegation that the *sole* purpose of the conspiracy was to injure the Plaintiffs.").

Indeed, where a plaintiff alleges that a defendant acted in part or in whole to benefit itself, the plaintiff has failed to plead the "malice" element of the civil conspiracy tort: "An action for conspiracy will lie only where the sole purpose of the conspiracy is to cause harm to the party who claims to be injured. Thus, where the facts show that a person acted to advance his own business interests, those facts constitute justification and negate any alleged intent to injure." *Simon v. UnumProvident Corp.*, No. 99-6638, 2002 U.S. Dist. LEXIS 9331, *29 (E.D. Pa. May 23, 2002). *See also Spitzer*, 1999 U.S. Dist. LEXIS 19110, at *30-*31 (dismissing plaintiff's civil conspiracy count because "the Defendants' purpose of the conspiracy was to benefit themselves personally and professionally. The fact that it may have been necessary to deceive Plaintiffs in order to carry out their scheme in no way indicates that they acted with malice solely to injure Plaintiffs").[8]

---

[8]    Courts in this circuit repeatedly have dismissed civil conspiracy claims for failure to plead that the defendant acted with the sole intent of injuring the plaintiff. *See Becker v. Chicago Title Ins. Co.*, No. 03-2292, 2004 U.S. Dist. LEXIS 1988, at *39-*40 (E.D. Pa. Feb. 4, 2004) (granting motion to dismiss where plaintiff failed to allege that defendants acted solely to injure plaintiffs); *Jeter v. Brown & Williamson Tobacco Corp.* 294 F. Supp. 2d 681, 688 (W.D. Pa. 2003), *aff'd*, 113 Fed. Appx. 465 (2004); *Ryan v. Lower Merion Twp.*, 205 F. Supp. 2d 434, 440 (E.D. Pa. 2002); *Bristol Twp. v. Independence Blue Cross*, No. 01-4323, 2001 U.S. Dist. LEXIS 16594, *16-*17 (E.D. Pa. Oct. 11, 2001); *Sim Kar Lighting Fixture Co. v. Genlyte, Inc.*, 906 F. Supp. 967, 977 (D.N.J. 1995); *Murphy v. Villanova Univ.*, 547 F. Supp. 512, 522 (E.D. Pa. 1982), *aff'd*, 707 F.2d 1402 (3d Cir. 1983).

Here, the word "malice" does not appear in Royal's civil conspiracy count, nor, more importantly, does Royal allege that the Pepper Defendants acted with the **sole** intention of injuring Royal. *See* Am. Compl. ¶¶ 173-84. To the contrary, according to Royal's own allegations, the Pepper Defendants engaged in the alleged wrongdoing in order to further their own economic interests. *See* Am. Compl. ¶ 81 (allegation that the Pepper Defendants prepared PPMs and distributed them to Royal in order to "generat[e] fees for Pepper"); ¶ 85 ("Legal fees were not the only incentive Pepper and Gagné had to further SFC's fraud. Gagné's family made various loans at above-market rates to SFC . . . ."). These allegations are fatal to Royal's civil conspiracy claim, and Count III should be dismissed.

**V.    COUNT V AND COUNT VIII SHOULD BE DISMISSED BECAUSE THE PENNSYLVANIA SUPREME COURT DOES NOT RECOGNIZE A CAUSE OF ACTION FOR AIDING AND ABETTING.**

The Pennsylvania Supreme Court has never recognized a cause of action for aiding and abetting fraud (Count V) or aiding and abetting breach of fiduciary duty (Count VIII). Therefore, this Court must predict whether the Pennsylvania Supreme Court would recognize the causes of action if presented with the question. *See Rolick v. Collins Pine Co.*, 925 F.2d 661, 664 (3d Cir. 1991). However, "it is not the role of a federal court to expand state law in ways not foreshadowed by state precedent." *Beretta U.S.A. Corp.*, 277 F.3d at 421. "[F]ederal courts may not engage in judicial activism. Federalism concerns require that we permit state courts to decide whether and to what extent they will expand state common law . . . . Our role is to apply the current law of the jurisdiction, and leave it undisturbed." *Leo v. Kerr-McGee Chem. Corp.*, 37 F.3d 96, 101 (3d Cir. 1994).

Although the Third Circuit has not addressed whether the Pennsylvania Supreme Court likely would adopt an aiding and abetting tort, several federal district courts in Pennsylvania have. The two most recent district court decisions predicted that the Pennsylvania Supreme Court would decline to so expand Pennsylvania law. In *Flood v. Makowski*, No. 03-1803, 2004 U.S. Dist. LEXIS 16957 (M.D. Pa. Aug. 24, 2004), the court declined to recognize the existence of the cause of action:

> While some lower courts in Pennsylvania have recognized a cause of action for aiding and abetting breach of fiduciary duty, the number of cases is not overwhelming . . . [and] I am hesitant to create an entirely new cause of action on the basis of two cases from the lower courts in Pennsylvania and dictum from a third court . . . I am aware that the United States District Court for the Eastern District of Pennsylvania has been more willing to expand Pennsylvania law to include aiding and abetting breach of fiduciary duty. However, I am more persuaded by the caution urged by the Court of Appeals for the Third Circuit than I am by the non-binding decisions of the United States District Court for the Eastern District of Pennsylvania. Pennsylvania has not recognized a cause of action for aiding and abetting breach of fiduciary duty, and neither will I.

*Id.* at *111-*113 (citations omitted).[9] Similarly, in *Daniel Boone Area Sch. Dist. v. Lehman Bros., Inc.*, 187 F. Supp. 2d 400, 413 (W.D. Pa. 2002), the Court declined to recognize a cause of action under Pennsylvania law for aiding and abetting, noting that the "adoption of [the cause of action] would represent a significant expansion of Pennsylvania tort liability." Although, as the *Flood* court pointed about, the United States District Court for the Eastern District of Pennsylvania has recognized the cause of

---

[9]     Undersigned counsel from the Schnader firm represented plaintiffs in the *Flood* case and argued, unsuccessfully, that the court should recognize a cause of action for aiding and abetting breach of fiduciary duty.

action in a few cases, those cases all pre-date *Flood* and *Daniel Boone*.  Therefore, Count

V and Count VIII of Royal's Amended Complaint should be dismissed for failure to state

a claim.

## VI.  ROYAL'S DEEPENING INSOLVENCY CLAIM FAILS TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED.

Royal's deepening insolvency claim should be dismissed because there is

no such tort as "deepening insolvency" under Pennsylvania law.  Even if such a cause of

action existed, though, Royal's claim still should be dismissed because (1) Royal would

lack standing to assert it; (2) the claim would be subject to the automatic stay provisions

of the Bankruptcy Code; (3) Royal fails to allege sufficient facts to state a cause of action

for deepening insolvency; and (4) Royal fails to allege fraud with sufficient particularity.

### A.  Deepening Insolvency Is Not a Recognized Cause of Action Under Pennsylvania Law.

No Pennsylvania court has recognized a deepening insolvency cause of

action.  In *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340

(3d Cir. 2001), the Third Circuit considered whether the Pennsylvania Supreme Court

was likely to adopt deepening insolvency as a valid *theory of injury*, but significantly, the

plaintiff in *Lafferty* did not assert a separate cause of action for deepening insolvency,

and thus, whether or not to recognize one was not an issue before the Third Circuit.  *See*

*id*. at 345-46 (noting that plaintiff brought claims for "violations of federal securities

laws, as well as common law fraud and negligent misrepresentation, mismanagement and

breach of fiduciary duty, breach of contract, professional malpractice, and aiding and

abetting breach of fiduciary duty").  Before affirming the dismissal of the complaint on *in*

*pari delicto* grounds, the Third Circuit in *Lafferty* analyzed whether the plaintiff had standing to bring these tort claims. The alleged injury -- necessary to satisfy the "injury in fact" component of Article III standing -- was the "fraudulent expansion of corporate debt." *Id.* at 347. The court predicted that the Pennsylvania Supreme Court would accept such a theory of injury, but it did not address whether deepening insolvency could constitute a stand-alone cause of action.

In fact, in all seven of the cases cited by the Third Circuit in *Lafferty* in support of its belief that deepening insolvency was increasingly accepted as a theory of injury, the courts simply acknowledged that the damages suffered by a corporation from the well-accepted torts of negligence, fraud, professional malpractice, or breach of fiduciary duty might, under certain circumstances, be measured by the harm flowing from the corporation's incurring of additional debt. *See id.* at 350-51. None of these cases recognize a freestanding tort of deepening insolvency, and none of them include more than a perfunctory examination of whether deepening insolvency is even a proper measure of damages, let alone a separate cause of action. Thus, Royal's separate claim for an alleged tort of "deepening insolvency" should be dismissed for failure to state a claim, as no such claim exists under Pennsylvania law.

**B.    Royal Lacks Standing to Recover Damages Caused by the Alleged Deepening Insolvency of SFC.**

Royal lacks standing to recover damages allegedly incurred by SFC as a result of "deepening insolvency" because those damages are recoverable only by SFC's bankruptcy estate, not by individual creditors of SFC such as Royal. In *Lafferty*, the Third Circuit determined that only a debtor has standing to attempt to recover "deepening

insolvency" damages because any such damages are inflicted upon the debtor, not its creditors. *See Lafferty*, 267 F.3d at 349 (holding that any cause of action that seeks "recovery of damages to the Debtors' property from 'deepening insolvency' . . . belong[s] to the Debtors, rather than to the creditors").[10] *See also Corporate Aviation Concepts, Inc. v. Multi-Service Aviation Corp.*, No. Civ-03-3020, 2004 U.S. Dist. LEXIS 17154, at *12-13 (E.D. Pa. Aug. 24, 2004) (explaining that the *Lafferty* Court "cited numerous cases in which debtors or committees suing on behalf of debtors were the injured parties. . . . [T]he Third Circuit clearly imagined the 'injury' in a deepening insolvency case to be suffered by the debtor corporation itself . . .").

In fact, SFC's trustee is currently pursuing a claim against the Pepper Defendants for deepening insolvency. *See Stanziale v. Pepper Hamilton LLP*, et al., No. 04-1551 (D. Del.). In that case, SFC's trustee has taken the position that he has standing to bring a cause of action to recover for deepening insolvency because the claim belongs to SFC's estate. *See* Trustee's brief in response to the Pepper Defendants' motion to dismiss in the *Stanziale* case, § V(B). If ,as the trustee claims, he has standing to recover for damages to SFC caused by the alleged deepening insolvency because those damages are recoverable only by the estate, Royal cannot also have standing to recover for those same alleged damages.[11] Royal's deepening insolvency claim should be dismissed.

---

[10]     Notably, none of the additional debt that SFC incurred resulted from the purchase of Royal's insurance policies. According to Royal's own allegations, SFC did not purchase and was not the insured party on any of the Royal policies. *See* Am. Compl. ¶ 51. In other words, none of the additional debt incurred by SFC upon which Royal bases its deepening insolvency claim was debt owed to Royal, which further supports the conclusion that Royal lacks standing to pursue the claim.

[11]     In *Stanziale*, the Pepper Defendants agreed that SFC's trustee had standing to seek the recovery of damages for the alleged "deepening insolvency" of SFC, but moved to dismiss the trustee's deepening insolvency theory on other grounds.

**C.    Royal's "Deepening Insolvency" Cause of Action Is Barred By the Automatic Stay Provisions of the Bankruptcy Code.**

Section 362 of the Code provides that a bankruptcy filing "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or to exercise control over property of the estate." 11 U.S.C § 362(a)(3).  Property of the estate is defined as all legal or equitable interests of the debtor in property as of the commencement of the case.  *See* 11 U.S.C. § 541(a)(1).  Section 541(a)(1) is read broadly to include intangible property including a debtor's causes of action.  *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983).

Where a cause of action is the right of the corporation (such as a claim for deepening insolvency, *see supra* § VI), it is the property of the estate within the meaning of section 541(a)(1) and the automatic stay applies to prohibit a party from initiating that cause of action.  *Cedarbrook Plaza v. Gottfried*, No. 97-1560, 1997 U.S. Dist. LEXIS 8026, No. 97-1560, *24 (E.D. Pa. Jun. 4, 1997) (granting the defendant's motion to dismiss creditor's fraudulent transfer claim against him pursuant to automatic stay provision).[12]  In this circuit, actions filed in violation of the automatic stay are void *ab initio*.  *See In re Siciliano*, 13 F.3d 748, 750 (3d Cir. 1994); *Harbison-Walker Refractories Co. v. ACE Prop. & Cas. Ins. Co.* (*In re Global Indus. Techs.*), 303 B.R. 753, 755 (Bankr. W.D. Pa. 2004).  Therefore, even assuming that a "deepening insolvency" tort existed under Pennsylvania law, the *Lafferty* Court's determination that

---

[12]    In the *Stanziale* case, SFC's trustee argued that "[a] trustee's standing to bring such claims [like deepening insolvency] is necessary because the automatic stay imposed by  bankruptcy usually prohibits individual creditors from bringing claims."  *See* Trustee's brief in response to the Pepper Defendants' motion to dismiss in the *Stanziale* case, p. 11.

a debtor has exclusive standing to seek recovery for deepening insolvency damages requires the dismissal of Royal's deepening insolvency claim pursuant to the automatic stay provisions of the Code. *See Cedarbrook Plaza*, 1997 U.S. Dist. LEXIS 8026, *25 (a court must dismiss a claim brought in violation of the automatic stay provision; the cause of action may not be placed in civil suspense).[13]

> **D.   Royal's Amended Complaint Fails to Allege Sufficient Facts to State a Claim for Deepening Insolvency.**

Even if a deepening insolvency claim were viable under Pennsylvania law and even if Royal had standing to bring it, and even if Royal's claim was not subject to the automatic stay, Royal has failed to adequately plead the elements of such a claim. At a minimum, such a claim would require Royal to prove that defendants engaged in wrongful conduct that *proximately caused* SFC to incur additional debt that it should not have incurred and that the additional debt incurred caused harm *to SFC itself.* Royal instead alleges nothing more than that defendants' silence permitted SFC to remain in

---

[13]   Two provisions of the Code provide a creditor such as Pepper with standing to assert the automatic stay provision. Section 362(h) provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages . . . ." 11 U.S.C. § 362(h). Numerous courts have held that this section provides creditors with standing to seek relief for violations of the automatic stay. *See, e.g., In re International Forex of Cal., Inc.,* 247 B.R. 284, 289-91 (Bankr. S.D. Cal. 2000) ("Creditors have standing under § 362(h) to seek damages for alleged stay violations"); *McRoberts v. S.I.V.I. (In re Bequette)*, 184 B.R. 327, 332 (Bankr. S.D. Ill. 1995) ("[T]he remedy of § 362(h) extends to creditors as well as debtors who have sustained injuries from a violation of the stay."); *Homer Nat'l Bank v. Namie*, 96 B.R. 652, 654-56 (W.D. La. 1989) (holding that the remedies set forth in § 362(h) are available to creditors). *See also Lickman v. Henkel*, No. 01-2949, 2003 U.S. Dist. LEXIS 1338, No. 01-2949 at *10-12 (E.D. Pa. Jan. 15, 2003), *aff'd*, 119 Fed. Appx. 427 (2004) (granting motion to dismiss brought by third-party defendant on grounds that cause of action belonged exclusively to trustee and therefore violated automatic stay). Section 1109(b) of the Code also provides Pepper – as a creditor of SFC -- with standing to invoke the automatic stay: "A party in interest, including . . . a creditor . . . may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b).

existence and incur additional debt, and that *Royal* (not SFC) was harmed as a result.  *See Compl.* ¶ 208 ("While Defendants knew that SFC was in poor and declining fiscal health, they did not disclose this fact to Royal."); 209 ("The Defendants' actions . . . deepened SFC's insolvency, *harming Royal*" (emphasis added)).  These allegations fail to state a viable cause of action, even under the most generous version of a deepening insolvency claim.

        ***Proximate Cause.***    To recover damages for "deepening insolvency," Royal must allege that defendants induced SFC to incur additional debt and that **SFC** was harmed as a result.  As noted above, in *Lafferty* the plaintiff alleged that the defendants had fraudulently induced the corporation to issue bad debts, leading directly to the corporation's injury.  *See Lafferty*, 267 F.3d at 349-50.  Thus, the plaintiff had adequately pled a causal connection between the defendants' alleged wrongdoing and the harm inflicted upon the debtor by the deepening insolvency.  Here, Royal does not allege a causal link between Pepper's alleged wrongdoing in preparing the PPMs and any harm suffered *by SFC*.  Indeed, SFC could not have relied to its detriment on PPMs that the corporation itself had a hand in creating.  *See* Am. Compl. ¶ 53 (the PPMs were "drafted by SFC and Pepper").  As one court recently noted in rejecting a deepening insolvency claim under similar circumstances, "[w]hile it was arguably foreseeable that the [loans made after insolvency] would permit the debtor to continue to operate, the Complaint does not allege facts suggesting that [defendant] could have foreseen that the [insiders] would misappropriate the loan proceeds, or operate the insolvent debtor for an improper purpose."  *Kittay v. Atl. Bank* (*In re Global Serv. Group LLC*), 316 B.R. 451, 461 (Bankr. S.D.N.Y. 2004).  The same is true here.

*Harm to SFC.*   Even if a deepening insolvency claim is viable, it requires plausible allegations that the *corporation itself* has suffered some harm.   *Cf. Lafferty*, 267 F.3d at 347 (agreeing with district court's distinction between cases in which only harm to corporation was "unpaid obligations of the debtor to the creditors" and those in which corporation suffered an injury other than simply the expansion of its debt burden).   In the few cases that accept a deepening insolvency theory of damage, the harm to the corporation consisted of the improper squandering or diversion of corporate assets during the allegedly improper prolongation of corporate life.   *See Official Comm. of Unsecured Creditors v. Credit Suisse First Boston*, (*In re Exide Techs., Inc.*), 299 B.R. 732 (Bankr. D. Del. 2003).   Here, Royal alleges that *Royal*, not SFC, was harmed by the alleged deepening insolvency.   *See* Am. Compl. ¶ 209 ("The Defendants' actions . . . deepened SFC's insolvency, harming Royal.").   As for SFC, Royal alleges only that Pepper assisted SFC in incurring additional debt to fund operations -- and to pay off prior loans.   *See* Am. Compl. ¶ 1.   This is thus not a case like *Lafferty* in which the defendant was accused of inducing the corporation to take on additional debt so that corporate insiders could raid the company's coffers, or a case like *Exide* where the defendant was accused of forcing the company to take on additional debt so that the defendants could gain control of the corporation and its assets.   *See also Schacht v. Brown*, 711 F.2d 1343, 1350 (7th Cir.), *cert. denied* 464 U.S. 1002 (1983) (noting that the plaintiff had alleged "that with the smoke screen of the underlying mail fraud, [the corporation's] directors and other defendants were able to drain [defendant] of over $3,000,000 of income, and to drain [defendant] of its most profitable and least risky business, thereby deepening [defendant's] insolvency").   Thus, even if a plaintiff could allege separate and distinct

harm to a corporation from its improper incurring of additional debt, Royal has failed to allege sufficient facts to support such a claim here.

### E.    Royal's Complaint Fails To Allege Fraud With Sufficient Particularity.

In addition to the pleading deficiencies outlined above, the allegations underlying Royal's deepening insolvency claim fail to satisfy Rule 9(b)'s heightened pleading standard. To the extent a deepening insolvency claim is viable, it requires proof of the "fraudulent expansion of corporate debt." *Lafferty*, 267 F.3d at 347 (emphasis added). Thus, a party seeking to bring such a claim must set forth the basis for his fraud allegations, which Royal has not done.

Under Rule 9(b), Royal must plead with particularity the circumstances, subject, and nature of Pepper's alleged fraudulent expansion of SFC's debt. *See, e.g.*, *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998). But unlike the complaints in *Lafferty*, *Exide*, *Schacht*, and the handful of other cases recognizing a deepening insolvency theory, Royal's Amended Complaint does not describe with particularity -- or, really, at all -- how Pepper fraudulently induced SFC to incur additional debt. To the extent any fraud on Pepper's part is alleged in the Amended Complaint, it is simply the general allegation that Pepper did not reveal SFC's poor financial condition and use of forbearance payments to creditors. *See, e.g.*, Am. Compl. ¶ 209. No specific allegations sufficient to satisfy Rule 9(b) are alleged with regard to Pepper's fraudulently inducing *SFC* to incur additional debt and thereby deepen its insolvency.

## CONCLUSION

For the foregoing reasons, Pepper respectfully requests that this Court dismiss all of Royal's claims against it.

MORRIS, NICHOLS, ARSHT & TUNNELL

_____
William H. Sudell, Jr. (No. 0463)
Donna L. Culver (No. 2983)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
(302) 658-3989 (Facsimile)

*Counsel for Defendants Pepper Hamilton LLP
and W. Roderick Gagné*

OF COUNSEL:

SCHNADER HARRISON SEGAL & LEWIS LLP
Elizabeth K. Ainslie, Esq.
Nicholas J. LePore, III, Esq.
Bruce P. Merenstein, Esq.
Stephen J. Shapiro, Esq.
1600 Market Street, Suite 3600
Philadelphia, PA  19103
(215) 751-2000
(215) 751-2205 (Facsimile)

June 10, 2005

## CERTIFICATE OF SERVICE

I, Laura V. McGeoch, Esquire, hereby certify I am not less than 18 years of age

and that service of the foregoing **BRIEF IN SUPPORT OF THE MOTION OF PEPPER**

**HAMILTON LLP FOR THE DISMISSAL OF PLAINTIFF'S FIRST AMENDED**

**COMPLAINT** was caused to be served this 10th day of June, 2005, in the manner indicated

upon the entities identifies below.

_____
Laura V. McGeoch (#4655)

**VIA HAND DELIVERY**

Lawrence C. Ashby
Philip Trainer, Jr., Esq.
Tiffany Geyer Lydon, Esq.
Ashby & Geddes
222 Delaware Avneue
P.O. Box 1150
Wilmington, DE  19801
*(Counsel for Royal Indemnity)*

James L. Holzman
Prickett, Jones & Elliott, P.A.
1310 King St.
P.O. Box 1328
Wilmington, DE  19801
*(Counsel for Freed Maxick & Battaglia
CPA's PC)*

Christopher M. Winter
Duane Morris, LLP
1100 North Market Street
Wilmington DE  19801
*(Counsel for Freed Maxick & Battaglia
CPA's PC; McGladrey & Pullen LLP and
Michael Auino)*

**VIA FIRST CLASS MAIL**

Elizabeth K. Ainslie
Nicholas J. LePore, III
Bruce P. Merenstein
Stephen J. Shapiro
Schnader, Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
*(Counsel for W. Roderick Gagne  & Pepper
Hamilton)*

Veronica E. Rendon
Richard P. Swqnson
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022
*(Counsel for McGladrey & Pullen LLP and
Michael Aquino)*

469532