# EXHIBIT 18

Westlaw.

Not Reported in F.Supp.2d                                                                                                  Page 1
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
(Cite as: 2004 WL 1908221 (M.D.Pa.))

H

**Motions, Pleadings and Filings**

United States District Court,
M.D. Pennsylvania.
Stephen L. FLOOD, Luzerne County Controller, and
the Luzerne County Retirement
Board o/b/o the Luzerne County Employee
Retirement System, Plaintiffs,
v.
Thomas A. MAKOWSKI, et al., Defendants.
No. Civ.A. 3:CV-03-1803.

Aug. 24, 2004.

Albert S. Dandridge, III, Elizabeth Ainslie, Stephen J. Shapiro, Theresa E. Loscalzo, Wilbur L. Kipnes, Schnader Harrison Segal & Lewis LLP, Philadelphia, PA, Christopher P. Cullen, Dunmore, PA, for Plaintiffs.

Aaron Krauss, Cozen O'Connor, Andrew William Davitt, Denis C. Dice, Marshall, Dennehey, Warner, Coleman & Goggin, Brian E. Caine, Robert M. Cavalier, Lucas and Cavalier LLC, Anthony F. Zabicki, Jr., Stark and Stark, Charles J. Vinicombe, John B. Dempsey, Stephen C. Baker, Drinker Biddle & Reath LLP, Arlene Fickler, Lawrence T. Hoyle, Jr., Hoyle, Fickler, Herschel & Matthes LLP, David L. Braverman, Richard E. Miller, Ryan J. Durkin, Philadelphia, PA, Peter John Moses, John P. Moses, Moses & Gelso, LLP, Robert J. Gillespie, Jr., Mylotte, David & Fitzpatrick, Wilkes-Barre, PA, Adolfo Anzola, Luigi Spadafora, Matthew Tracy, Winget Spadafora & Schwartzberg, New York, NY, Cody H. Brooks, Kreder, Brooks, Hailstone & Ludwig, John J. Aponick, Jr., Marshall Dennehy Warner Coleman & Goggin, Scranton, PA, Allen M. Silk, Princeton, NJ, Jennifer A. Goaziou, Kevin M. Kinross, Randolph C. Wiseman, Bricker & Eckler, LLP, Columbus, OH, Jaime L. Theriot, James Kirk Quillian, Kevin A. Maxim, Troutman, Sanders, LLP, Atlanta, GA, Richard L. Bush, Powell, Trachtman, Logan, Carrle, Bowman & Lombardo, P.C., King of Prussia, PA, for Defendants.

*MEMORANDUM*

CAPUTO, J.

TABLE OF CONTENTS

FACTUAL BACKGROUND ................................................................. 2

PROCEDURAL BACKGROUND ............................................................... 6

LEGAL STANDARD ....................................................................... 8

DISCUSSION ........................................................................... 9

1) Justiciability .................................................................... 9

2) Racketeer Influenced and Corrupt Organizations Act Claims ........................ 11
    A) Statute of Limitations ...................................................... 12
    B) Enterprise .................................................................. 14
    C) Count III-- § 1962(c) Participating in an Enterprise Through a
Pattern of Racketeering Activity .................................................. 16
        i) Standing ............................................................... 18
        ii) Two Predicate Acts .................................................... 19
            a) ASCO Affiliates .................................................... 22
            b) The Wells Agreement ................................................ 23

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 46-10   Filed 07/29/2005   Page 3 of 15

Not Reported in F.Supp.2d                                                                                    Page 2
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
(Cite as: 2004 WL 1908221 (M.D.Pa.))

```
            c) Miscellaneous Defendants ................................ 24
      iii) Rule 9(b) .................................................. 26
      iv) Private Securities Litigation Reform Act .................... 29
            a) The Board didn't know about hidden fees ............... 36
            b) The Board knew about hidden fees ..................... 38
      v) Relatedness and Continuity of Predicate Acts ................ 40

            a) The Board Members .................................... 41
            b) The ASCO Affiliates .................................. 44
            c) The Provident Agreements ............................. 48
            d) The Manulife Agreements .............................. 49
            e) The Wells Agreement .................................. 50
            f) Miscellaneous Defendants ............................. 51
   D) Count IV-- § 1962(d) Conspiracy to Violate § 1962(c) .......... 53
   E) Count V-- § 1962(b) Interest or Control of an Enterprise ...... 56
   F) Count VI-- § 1962(d) Conspiracy to Violate § 1962(b) .......... 59

3) Count VII--Investment Advisor Act of 1940 .......................... 62

4) State Law Claims ................................................... 63
   A) Supplemental Jurisdiction ...................................... 64
   B) Count I--Breach of Fiduciary Duty .............................. 66
   C) Count II--Aiding and Abetting Breach of Fiduciary Duty ......... 69
   D) Count VIII--Unjust Enrichment .................................. 71

CONCLUSION ............................................................ 72
```

*1 Presently before the Court are nine separate motions to dismiss filed by various Defendants. (Docs. 46, 91, 93, 95, 96, 98, 100, 104, and 108.) In total, every Defendant except Linsco Private Ledger Corporation (hereinafter LPL) [FN1] filed a motion to dismiss. The motions challenge Plaintiffs' standing to bring the suit and argue that the claims are time barred and that the Complaint fails to state a claim upon which relief can be granted. For the reasons set forth below, I will grant the motions in part and deny the motions in part. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

> FN1. LPL filed a Motion to Compel Arbitration and to Stay Proceedings (Doc. 102), which I will address separately.

FACTUAL BACKGROUND

The present action focuses on the events leading up to and surrounding the investment contracts made by the Luzerne County Retirement Board (hereinafter the Board) and Board members during the period of 1988 and 2002. Plaintiffs allege that various Board members engaged in a pay-to-play scheme in which contracts to invest or manage pension plan assets were awarded in exchange for campaign contributions to various Board members' reelection campaigns.

Luzerne County maintains a pension plan for employees (hereinafter the Plan). The Plan is administered by the Board. In March, 1988, the Board retained ASCO Financial Group, Inc. (hereinafter ASCO) as an investment advisor to the Plan. ASCO remained the financial advisor until September 5, 2002. During the course of the relationship with ASCO, various Board members approved contracts to invest the Plan's money. The Complaint alleges that most of the contracts were not properly approved by the Board through a vote at a public meeting and were instead signed by individual Board members. The Board members allegedly involved are Thomas A. Makowski, Thomas P. Pizano, Frank Crossin, and Joseph Jones. [FN2] The following facts are alleged in the Complaint:

> FN2. The Complaint also alleges that Board members Joseph S. Tirpak, Jim Phillips, and Frank Trinisewski acted with the aforementioned Board members in approving certain contracts (see, e.g., Doc. 1 ¶ 46), but they are not named as defendants.

The Plan entered into four contracts with Provident

Not Reported in F.Supp.2d                                                                                                          Page 3
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
**(Cite as: 2004 WL 1908221 (M.D.Pa.))**

Mutual Life Insurance Company of Philadelphia (hereinafter Provident). The first contract was to manage $6 million of assets. The remaining three contracts were to purchase annuities totaling more than $60 million. The Plan paid more than $5 million in fees, which included commissions, over the course of the contracts. ASCO received commissions from Provident for each of these contracts, and certain ASCO officers received commissions for two of the Provident contracts. Joseph J. Joyce Associates, Inc. (hereinafter JJJA) also received commissions for each of the contracts. These contracts will be referred to throughout the opinion as the first, second, third, and fourth Provident Agreements. Nationwide Life Insurance Company (hereinafter Nationwide) is the successor-in-interest to Provident.

The Plan entered into two contracts with The Manufacturers Life Insurance Company (U.S.A.) (hereinafter Manulife). The contracts were for Manulife to manage a total of more than $20 million. The Plan paid nearly $1.9 million in fees and commissions over the course of the contracts. JJJA and Donald Williamson, ASCO's President and CEO, received commissions for both contracts. ASCO also received a commission for the first contract. These contracts will be referred to throughout the opinion as the first and second Manulife Agreements.

*2 The Plan entered into a contract with Wells Real Estate Funds, Inc. (hereinafter Wells). The contract called for two purchases into the Wells Real Estate Investment Trust, Inc. (hereinafter Wells REIT), the first for $1 million and the second for $9 million. The $10 million was given to FSC Securities Corporation (hereinafter FSC), which in turn transmitted the funds to Wells REIT. The Plan paid more than $300,000 in fees, which included commissions. Joseph C. Perfilio, Michael Joyce, and Donald Williamson all received commissions in relation to the Wells REIT purchases. This contract will be referred to throughout the opinion as the Wells Agreement.

The Plan entered into a contract with Rochdale Investment Management, Inc., [FN3] In which Rochdale invested $1.1 million through FSC. The Plan realized losses of more than $500,000 over the life of the investment. Joseph Perfilio and Donald Williamson received commissions related to the contract. This contract will be referred to throughout the opinion as the FSC Agreement.

FN3. Rochdale Investment Management, Inc. is not named as a defendant.

Donald Williamson signed a contract on behalf of the Plan in which First Security Investments, Inc. (hereinafter FSI) would manage $1.25 million of the Plan's assets. The funds were invested in FSI notes. The Plan realized a loss of more than $1.6 million over the life of the investment. Donald Williamson received a commission for his part in the contract. This contract will be referred to throughout the opinion as the FSI Agreement.

The Plan entered into a contract with LPL in which LPL would manage $1.5 million. The Plan paid $69,000 in fees, and realized a gain of more than $300,000. This contract will be referred to throughout the opinion as the LPL Agreement.

The Plan also entered into several contracts for investment advice and management. The Plan entered a contract with ASCO in 1988 for ASCO to act as an investment plan advisor. This arrangement lasted until 2002. In 1999, the Plan contracted with ASCO to administer the daily operations of the Plan. Maria Williamson, ASCO's Vice-President/Operations, was responsible for overseeing these daily operations. The Plan entered a contract with Safeco Life Insurance Corporation (hereinafter Safeco) in which it was given money to invest. Safeco also acted to collect the fees the Plan paid to ASCO. In September, 2002, the Board dissolved its relationship with ASCO.

Between 1988 and 2002 Donald Williamson, Maria Williamson, John J. Joyce, Joseph Joyce, Jr. (hereinafter Joseph Joyce), Jerome McHale, Joyce Jackman & Bell Insurers (hereinafter JJ & B), William Joyce, Joseph Perfilio, Gary Houseman, Steven Alinikoff, Michael Hirthler, ASCO, Safeco, Joseph Joyce Insurance (hereinafter JJI), and Devonshire Capital Management, LLC (hereinafter Devonshire) made campaign contributions to various Board members. [FN4]

FN4. Jerome McHale, Gary Houseman, Steven Alinikoff, and Michael Hirthler are not named as defendants.

PROCEDURAL BACKGROUND
On October 9, 2003, Plaintiffs filed a ninety-eight page Complaint raising eight claims against twenty-six Defendants. Plaintiffs bring the following claims against Defendants as listed below:

```
(1)   Count I   Breach of fiduciary duty--Defendants Makowski, Pizano,
                Crossin, Jones, ASCO, and Donald Williamson;
```

Not Reported in F.Supp.2d  
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742  
**(Cite as: 2004 WL 1908221 (M.D.Pa.))**

Page 4

(2) Count II — Aiding and abetting breach of fiduciary duty--Defendants Nationwide, Manulife, Wells, Wells Investment Securities, Inc. (hereinafter Wells Investment), Wells REIT, FSC, FSI, LPL, Safeco, Devonshire, Perfilio, Joyce Associates, Inc., JJI, JJJA, JJ & B, Joseph Joyce, William Joyce, Michael Joyce, John Joyce, and Maria Williamson;

(3) Count III — Arising from 18 U.S.C. § 1964(c) for violations of § 1962(c), conducting and participating in an enterprise by engaging in a pattern of racketeering activity--all Defendants;

(4) Count IV — Arising from 18 U.S.C. § 1964(c) for violations of § 1962(d), conspiring to violate § 1962(c)--all Defendants;

(5) Count V — Arising from 18 U.S.C. § 1964(c) for violations of § 1962(b), acquiring and maintaining an interest or control of an enterprise engaged in a pattern of racketeering activity--all Defendants;

(6) Count VI — Arising from 18 U.S.C. § 1964(c) for violations of § 1962(d), conspiring to violate § 1962(b)--all Defendants;

(7) Count VII — Violating the Investment Advisors Act--Defendants Donald Williamson and ASCO; and

(8) Count VIII — Unjust enrichment--Defendants ASCO, Donald Williamson, FSC, FSI, LPL, Manulife, Nationwide, Wells, Wells REIT, Wells Investment, Perfilio, JJI, JJJA, Joseph Joyce, Michael Joyce, and John Joyce.

\*3 All Defendants, with the exception of LPL, [FN5] filed a total of nine motions to dismiss. [FN6] (Docs. 46, 91, 93, 95, 96, 98, 100, 104, and 108.) In sum, the motions raised the following challenges: lack of standing, filing past the statute of limitations, lack of standing to bring the RICO claims, failure to state a claim upon which relief can be granted for the RICO claims, lack of supplemental jurisdiction to hear the state law claims, and failure to state a claim upon which relief can be granted for the state law claims of aiding and abetting breach of fiduciary duty and unjust enrichment. Plaintiffs filed a brief in opposition to one motion to dismiss (Doc. 46). (Doc. 85.) Because of the similarity of the issues among the motions, the Court permitted Plaintiffs to file a single brief in opposition to the remaining eight motions to dismiss. (Doc. 151.) The moving Defendants filed reply briefs. This matter is now ripe for disposition.

FN5. LPL filed a Motion to Compel Arbitration and to Stay Proceedings (Doc. 102) which I will address separately.

FN6. Safeco's motion was actually filed as a motion to dismiss or, in the alternative, a motion for summary judgment. (Doc. 93.) I chose not to convert the motion to one for summary judgment.

LEGAL STANDARD  
Rule 12(b)(6) of the Federal Rules of Civil Procedure

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 46-10   Filed 07/29/2005   Page 6 of 15

Not Reported in F.Supp.2d                                                                                          Page 5
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
(Cite as: 2004 WL 1908221 (M.D.Pa.))

provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. Dismissal is appropriate only if, accepting all factual allegations in the complaint as true and "drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations in the complaint." *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir.1998).

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993). The Court may also consider "undisputedly authentic" documents where the plaintiff's claims are based on the documents and the defendant has attached a copy of the document to the motion to dismiss. *Id.* The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. West Penn Power Co.*, 147 F.3d 256, 263 (3d Cir.1998), nor credit a complaint's "bald assertions" or "legal conclusions." *Morse v. Lower Marion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997).

When considering a Rule 12(b)(6) motion, the Court's role is limited to determining whether the plaintiff is entitled to offer evidence in support of the claims. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court does not consider whether the plaintiff will ultimately prevail. *See id.* In order to survive a motion to dismiss, the plaintiff must set forth information from which each element of a claim may be inferred. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir.1993). The defendant bears the burden of establishing that the plaintiff's complaint fails to state a claim upon which relief can be granted. *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir.2000).

DISCUSSION

*4 Defendants raise many challenges to the Complaint in their motions to dismiss and supporting briefs. Most of the arguments are raised by all Defendants, while others are raised by some Defendants. In summary, the arguments raised by Defendants fall into four categories: challenges to the entire action; challenges that apply to all of the RICO claims, challenges that apply to all of the state law claims, and challenges to individual claims. I will address the general challenges first, and then I will address all of the challenges applicable to the federal claims before moving to the state law claims.

1) Justiciability

The Board member Defendants first challenge Plaintiffs' ability to bring this action. Defendants raise two arguments. First, the Board members contend that Plaintiffs lack standing to bring the suit, suggesting instead that the Plan beneficiaries must bring the action. Next, the Board members contend that the suit lacks redressability because any damages awarded against a Board member would have to be paid by the Plan.

Defendant Board members contend that Plaintiffs lack standing to bring the suit on two grounds: the Board is the Plaintiff at the same time the Board is "suing itself" (Doc. 105 at 25); and the Board has not suffered any injury. (Doc. 105 at 26.) I find both of these arguments without merit. First, the Board members mis-classify the nature of the action. The Board is not the sole Plaintiff in this action; Stephen L. Flood, the Luzerne County Controller is also a named Plaintiff. Second, there is nothing in the Complaint that ever suggests the Board is suing itself. The Board is suing individual Board members, not the legal entity that is the Luzerne County Retirement Board.

Defendants cite *McCarrell v. Cumberland County Employees Retirement Board*, 120 Pa.Cmwlth. 94, 547 A.2d 1293 (Pa.Commonw.Ct.1988), as suggesting that the only proper plaintiffs are the Plan's beneficiaries. I find *McCarrell* inapposite to the present case. *McCarrell* does not address the question whether a Board member may bring suit against other Board members on behalf of the fund. *McCarrell* likewise does not limit the fiduciary obligations of Board members to the beneficiaries of the plan. In fact, a full reading of *McCarrell* shows the Commonwealth Court was expanding the parties to whom the Board members owed duties, not restricting those duties. Pennsylvania law is clear that board members are fiduciaries of *the fund.* 16 P.S. § 11659; 20 Pa. Conn. Stat. Ann. § 7301. Therefore, because the Board members owed obligations to the fund directly, it only stands to reason that the fund can use the Board to directly enforce those duties owed to it.

Defendant Board members' argument that Plaintiffs lack an injury is equally unconvincing. The argument seems premised on the notion that the Board did not suffer any injury, only the Plan suffered an injury. As I stated previously, the Board is suing on behalf of the Plan. The Complaint adequately alleges that the Plan suffered injuries. *See, e.g.*, discussion *supra* p. 18. Plaintiffs allege that the Board member Defendants entered into contracts which were unsound investments and which cost the Plan excessive management fees. The excessive fees allegation constitutes an actual, direct harm.

*5 Lastly, Defendant Board members suggest that the case against them lacks any available means of redress

Case 1:05-cv-00165-JJF   Document 46-10   Filed 07/29/2005   Page 7 of 15

Not Reported in F.Supp.2d                                                                                                          Page 6
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
(Cite as: 2004 WL 1908221 (M.D.Pa.))

because any award against them would be paid by the fund, to the fund. This notion is premised upon an unusual reading of title 16, section 11654 of the Pennsylvania Code, which provides that "[the board members] shall be reimbursed for all expenses necessarily incurred in the performance of their duty." [FN7] Pennsylvania law makes clear that "necessarily incurred" expenses are only those expenses which needed to be incurred in the interest of the fund. *In re Main, Inc.*, No. 98-158, 1999 WL 330239, at *6 (E.D.Pa. May 24, 1999) (discussing Pennsylvania law); *see also Schwartz v. Keystone Oil Co.,* 25 A. 1018, 287 (Pa.1893). Clearly, the expenditure of money to defend actions in direct violation of the act (i.e., violations of fiduciary duties) would not be necessary expenses within the meaning of section 11654. If Plaintiffs' claims succeed against the Board members, they will have an available means of redress.

> FN7. This sentence is interestingly juxtaposed to the sentences which require board members to take an oath of office that they will administer the fund fairly and without knowing violation of the provisions of the act. 16 P.S. § 11654.

2) Racketeer Influenced and Corrupt Organizations Act Claims

Plaintiffs raise four claims based on the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* (hereinafter RICO). Under RICO, "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor." 18 U.S.C. § 1964(c). Plaintiffs allege that Defendants violated § 1962(c), § 1962(b), and § 1962(d). Defendants challenge the RICO claims generally on the grounds that they are time-barred and that Plaintiffs do not allege the existence of an enterprise. Defendants also raise challenges to the individual RICO claims. I will address the general challenges first and then move to the claim-specific challenges.

A) Statute of Limitations

RICO has no explicit statute of limitations. Analogizing RICO to the Clayton Act, the Supreme Court adopted a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987). In 2000, the Court of Appeals for the Third Circuit adopted an injury discovery test for determining when the statute of limitations begins to run. *Forbes v. Engleson,* 228 F.3d 471, 484 (3d Cir.2000). Under the injury discovery rule, the statute of limitations begins to accure when a plaintiff knew or should have known that it suffered injuries and that the source of those injuries were the actions of another person. *Id.* at 485. [FN8] For determining the "injury" from which to analyze the statute of limitations, courts look to the allegations in the complaint. *See Prudential Ins. Co. of Amer. v. U.S. Gypsum,* 359 F.3d 226, 234 (3d Cir.2004).

> FN8. One unsettled point is whether the statute of limitations runs at the time plaintiffs should have known about the injury (the injury discovery rule), or at the time plaintiffs should have known about the injury and after all of the elements of a RICO claim exist (the injury discovery and pattern rule). *Matthews v. Kidder, Peabody & Co.,* 260 F.3d 239, 245 n. 7 (3d Cir.2000). Under the injury discovery and pattern rule, when a plaintiff knows or should know about an injury before the necessary RICO elements exist, the RICO claim does not accrue until after the final element occurs, including a pattern of racketeering activity. *Id.*

Plaintiffs argue that the doctrines of fraudulent concealment and adverse domination preserve their right to file suit beyond the four year statute of limitations. Under the fraudulent concealment doctrine, knowledge of an injury caused by another still accrues the statute of limitations, but the statute of limitations is tolled when a defendant actively misleads the victim about the cause of the injury. *Forbes,* 228 F.3d at 486. Plaintiffs are eligible for equitable tolling only if they exercised reasonable diligence in investigating their claims. *Prudential,* 359 F.3d at 283 (citing *Klehr v. A.O. Smith Corp.,* 521 U.S. 179, 194, 117 S.Ct. 1984, 138 L.Ed.2d 373 (1997)).

*6 Thus, ordinarily when plaintiffs seek to demonstrate a case for equitable tolling, and defendants seek *summary judgment* on the issue, a court must determine (1) whether there is sufficient evidence to support a finding that defendants engaged in affirmative acts of concealment designed to mislead the plaintiffs regarding facts supporting their [RICO] claim, (2) whether there is sufficient evidence to support a finding that plaintiffs exercised reasonable diligence, and (3) whether there is sufficient evidence to support a finding that plaintiffs were not aware, nor should they have been aware, of the facts supporting their claim until a time within the limitations period measured backwards from when the plaintiffs filed their complaint.

*Forbes,* 228 F.3d at 487 (emphasis added). When evaluating fraudulent concealment, it requires a fact-specific analysis which is best reserved for summary judgment, rather than a motion to dismiss. *Shapo v. O'Shaughnessy,* 246 F.Supp.2d 935, 951 (N.D.Ill.2002) (citing *Johnson Controls, Inc. v. Exide Corp.,* 129 F.Supp.2d 1137, 1142 (N.D.Ill.2001)).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
(Cite as: 2004 WL 1908221 (M.D.Pa.))

Page 7

Under the doctrine of adverse domination, the statute of limitations is tolled when the plaintiff is controlled or dominated by wrongdoers. See *Shapo,* 246 F.Supp.2d at 953 (citing *Resolution Trust Corp. v. Gallagher,* 800 F.Supp. 595, 600 (N.D.Ill.1992)). The principle underlying adverse domination is that officers or directors engaging in activities that harm an entity will not bring suit against themselves. *Id.;* see also *Resolution Trust Corp. v. Gardner,* 798 F.Supp. 790, 795 (D.D.C.1992) (adopting adverse domination and citing other federal jurisdictions that have). The statute of limitations does not begin to run until the entity is no longer controlled by the wrongdoers. *Shapo,* 246 F.Supp.2d at 953.

Reading the Complaint in the light most favorable to Plaintiffs, they allege the three elements necessary to prove fraudulent concealment: Defendants actively mislead Plaintiffs; the misleading prevented Plaintiffs from discovering the injury; and Plaintiffs did not fail to engage in reasonable due diligence. Plaintiffs allege that the investment companies conspired with the Board members to defraud the Plan, and in doing so they actively concealed the nature of the relationships between the Board, the investment companies, and ASCO employees. Plaintiffs also allege that the Board members adopted contracts outside of the public eye, without proper voting and not during public meetings. They further allege that the financial statements were concealed from the beneficiaries of the Plan by being sent to ASCO instead of the Board. All of these actions prevented the beneficiaries of the Plan from discovering the nature of the investment contracts in which the Plan's funds were being invested. Furthermore, because the Board was adversely dominated by the alleged wrongdoers, the statute of limitations was tolled until the Board was no longer controlled by those parties.

*7 Whether Plaintiffs will be successful in proving fraudulent concealment or adverse domination is a fact-specific analysis which is inappropriate for a motion to dismiss, *Shapo,* 246 F.Supp.2d at 951, but it is clear to the Court that Plaintiffs sufficiently pled fraudulent concealment and adverse domination to survive a motion to dismiss. Therefore, I will not dismiss Plaintiffs' action for failure to file within the prescribed statute of limitations.

B) Enterprise

An essential requirement of RICO is the existence of an enterprise. See, e.g., 18 U.S.C. § 1962(b) and (c). An enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An enterprise must be an "entity separate and apart from the pattern of racketeering activity in which it engages." *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

The existence of an enterprise can be proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* The Court of Appeals for the Third Circuit has expanded *Turkette* by requiring that the enterprise is an ongoing organization with a framework for making or carrying out decisions, that the various associates function as a continuing unit, and that the enterprise is separate and apart from the pattern of racketeering activity. *United States v. Irizarry,* 341 F.3d 273, 286 (3d Cir.2003) (quoting *United States v. Riccobene,* 709 F.2d 214, 222 (3d Cir.1983)). The ongoing nature of an enterprise does not require that all of the members participate from beginning to end. *United States v. Parise,* 159 F.3d 790, 795 (3d Cir.1998) (quoting *United States v. Feldman,* 853 F.2d 648, 659 (9th Cir.1988)). The enterprise must maintain a shared organizational pattern and system of authority. *Id.* (citing *United States v. Lemm,* 680 F.2d 1193, 1199 (8th Cir.1982)).

Plaintiffs argue that the enterprise consisted either of the Board (Doc. 1 ¶ 184), or an association-in-fact of the Board members. (Doc. 1 ¶ 185.) Plaintiffs' claims are that the Board, which is responsible for administering the Plan's funds, engaged in racketeering activity that victimized the Plan. The present action is not unlike a situation in which board members of a corporation rob the corporation of its assets. In such instances, the wrongdoers and the victim are both internal to the corporation. However, the Court of Appeals for the Third Circuit has made clear that a corporation can be either the victim or the enterprise, not both. *See discussion, Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 267 (3d Cir.1995) (resolving conflict between *Nat'l Org. for Women v. Scheidler,* 510 U.S. 1215, 114 S.Ct. 1340, 127 L.Ed.2d 688 (1994) and *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993)). Thus, in instances in which the racketeering activity is committed by people within the company and the victim of the racketeering activity is the corporation, the enterprise is not the corporation itself; an association-in-fact of the board members or corporate officers constitutes the enterprise. *Id.* In the present case, the Plan was the victim, therefore, the Board of the Plan could not also be the enterprise. Instead, the association-in-fact of the Board members as alleged in the Complaint constituted the enterprise.

*8 An association-in-fact can be separate from the

Not Reported in F.Supp.2d   Page 8
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
**(Cite as: 2004 WL 1908221 (M.D.Pa.))**

criminal activities by the fact that it engages in more than one scheme. See *Town of Kearny v. Hudson Meadows Urban Corp.*, 829 F.2d 1263, 1266 (3d Cir.1987). Thus, the twelve separate schemes alleged in the Complaint suggest that the Board members' association-in-fact was separate from the racketeering activities. Because the organizational pattern and system of authority remained the same, the enterprise alleged was continuous over the course of the fourteen years, even though some of the members of the Board changed. See *Parise*, 159 F.3d at 795.

C) Count III-- § 1962(c) Participating in an Enterprise Through a Pattern of Racketeering Activity

Count III is based in 18 U.S.C. § 1964(c) and alleges that Defendants violated 18 U.S.C. § 1962(c). Section 1962(c) prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." A pattern of racketeering activity is established by showing at least two predicate acts that occurred within ten years of each other. 18 U.S.C. § 1961(5).

Any crime enumerated in 18 U.S.C. § 1961(1) may constitute a predicate act, which includes mail and wire fraud. 18 U.S.C. § 1961(1)(B). Where fraud is alleged as a predicate act, the plaintiff must allege the fraud with particularity. See generally Fed. R. Civ. P. 9(b). Any crime which constitutes a securities fraud is expressly excluded by the Private Securities Litigation Reform Act. 18 U.S.C. § 1964(c). Although two predicate acts are necessary to establish a pattern of racketeering activity, they are not necessarily sufficient. *H.J. Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 237, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The predicate acts must be related and amount to or threaten to become continued criminal activity. *Id.* at 239.

Thus, to survive a motion to dismiss, Plaintiffs' Complaint must allege, with particularity where fraud is alleged, at least two non-securities-related predicate acts which can be attributed to each Defendant, and those acts must be related and amount to continued criminal activity. Furthermore, Plaintiffs must have suffered an injury as a result of the racketeering activity. 28 U.S.C. § 1964(c). Defendants argue that Plaintiffs do not allege an injury from a violation of § 1962, nor do they allege a violation of § 1962 itself. Defendants argue that Plaintiffs do not allege predicate acts, that any acts alleged are not alleged with particularity, that any acts alleged are barred by the Private Securities Litigation Reform Act, and that any acts alleged do not constitute a pattern of racketeering activity. I will address each of these challenges in turn.

i) Standing

Although Plaintiffs have established the threshold requirement that they have standing to bring the present action, there is an independent question whether they have standing to bring a claim under RICO's civil remedies provision § 1964(c). See, e.g., *Maio v. Aetna, Inc.*, 221 F.3d 472, 482 (3d Cir.2000) (citing *DeMauro v. DeMauro*, 115 F.3d 94, 96 (1st Cir.1997)). Standing to bring a RICO claim exists when there is an injury to a plaintiff's business or property and the injury was proximately caused by a violation of § 1962. *Maio*, 221 F.3d at 483; see also *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) ("[T]he plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation [of RICO]."). An injury must be a concrete financial loss to the plaintiff. *Maio*, 221 F.3d at 483-84. An out-of-pocket monetary loss satisfies this requirement. *Id.* Failure to perform a paid-for contractual right can constitute an injury. *Id.* at 490; see also *Mehling v. N.Y. Life Ins. Co.*, 163 F.Supp.2d 502, 507 (E.D.Pa.2001).

*9 In the present case, the Plan, through its Board, is suing Defendants for entering into contracts which resulted in the Plan paying excessive fees, as well as suffering economic losses through bad investments. The payment of excessive fees was a loss suffered by the Plan directly, which it paid for out of its pocket. Likewise, the Complaint alleges the injury is the direct result of the frauds stemming from Defendant Board members and Defendant investment managers' collusion to enter the Plan into inappropriate contracts. I find Plaintiffs sufficiently allege an injury resulting from a pattern of racketeering activity.

ii) Two Predicate Acts

Defendants next argue that Plaintiffs' RICO claims fail to state a claim upon which relief can be granted because they fail to allege a violation of § 1962(c). Section 1962(c) requires that a defendant engage in a pattern of racketeering activity. A pattern of racketeering activity requires at least two predicate acts that occurred within ten years of each other. 18 U.S.C. § 1961(5). Any crime enumerated in 18 U.S.C. § 1961(1) may constitute a predicate act, which includes mail and wire fraud. 18 U.S.C. § 1961(1)(B).

In the present case, Plaintiffs' Complaint alleges that various Defendants committed acts of mail or wire fraud.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 46-10   Filed 07/29/2005   Page 10 of 15

Not Reported in F.Supp.2d
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
(Cite as: 2004 WL 1908221 (M.D.Pa.))

Page 9

Mail and wire fraud occur when there is: (1) a scheme to defraud; (2) use of the mails (for mail fraud) or interstate wire communications (for wire fraud) in furtherance of the scheme; and (3) fraudulent intent. *United States v. Pharis,* 298 F.3d 228, 234 (3d Cir.2002) (citing *United States v. Strum,* 671 F.2d 749, 751 (3d Cir.1982)).

Mail and wire fraud schemes to defraud do not require an actual misrepresentation of fact. *See discussion, McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.,* 904 F.2d 786, 791 (1st Cir.1990). Fraudulent schemes include schemes to deprive another of the "intangible right of honest services." 18 U.S.C. § 1346. State and local officials and public employees can be held accountable under the statute when they deprive "the citizens they serve of their right to honest services." *United States v. Antico,* 275 F.3d 245, 262 (3d Cir.2001). This doctrine is applied when an official takes bribes for official decisions or actions, or when an official fails to disclose a conflict of interest. *See United States v. Panarella,* 277 F.3d 678, 690 (3d Cir.2002).

The mailing does not have to contain a misrepresentation. " '[I]nnocent' mailings--ones that contain no false information--may supply the mailing element." *Schmuck v. United States,* 489 U.S. 705, 715, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). Moreover, the scheme itself does not have to contemplate the use of mails. *Pharis,* 298 F.3d at 234. "All that is required is that the defendants knowingly participated in a scheme to defraud and caused a mailing to be used in furtherance of the scheme." *Id.* (citing *Strum,* 671 F.2d at 751 and *United States v. Pearlstein,* 576 F.2d 531, 534 (3d Cir.1978)). "Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can be reasonably foreseen, even though not actually intended, then he 'causes' the mails to be used." *Pereira v. United States,* 347 U.S. 1, 8-9, 74 S.Ct. 358, 98 L.Ed. 435 (1954) (citing *United States v. Kenofskey,* 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836 (1917)). Because the federal violation is the mailing, each use of the mails which is "incident to an essential part of the scheme" is a separate violation. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1413 (3d Cir.1991) (quoting *Pereira,* 347 U.S. at 8).

*10 Plaintiffs allege that Board members were induced to award management and investment contracts on the basis of campaign contributions made to the Board members by people affiliated with the contract recipients. Plaintiffs further allege that these contracts were improper for the fund and Defendants concealed the fees and costs of the contracts. These allegations of deceit are clearly sufficient to constitute a fraudulent scheme under the mail and wire fraud statutes. Particularly, there are at least two, if not three, separate fraudulent schemes occurring: a denial of honest dealings, intentional concealment of the contracts, and concealment of the terms of the contracts. Plaintiffs also allege more than fifty uses of mail or wire communications to further these schemes. Thus, Plaintiffs allege the basic elements of mail and wire fraud.

While Plaintiffs allege the basic elements of mail and wire fraud, it is less clear against which Defendants these allegations are made. Plaintiffs contend all Defendants conspired in the single scheme of pay-to-play contract granting, and, therefore, the actions of any party within the scheme constitutes mail or wire fraud committed by every Defendant. Plaintiffs base this argument on three separate allegations in the Complaint. First, the conclusory allegations in Paragraphs 196 and 213 that "defendants conspired to perpetuate a scheme" and the blanket allegations in Paragraph 188 which describe the scheme in general terms and refer to Defendants collectively as "the collaborators." These conclusory allegations in Plaintiffs' Complaint are insufficient to permit the Court to hold each Defendant accountable for the actions of every Defendant. The dealings alleged by Plaintiffs show a series of fraudulent schemes, each involving various Defendants.

As alleged in the Complaint, the schemes actually involved two sets of actors. First, there was a core group of participants who ran the pay-to-play schemes, these parties include the Board members, who approved the contracts, ASCO, which brokered the contracts and oversaw the daily financial operations of the Plan's funds, and various ASCO employees. The second set of actors were the parties who "purchased" contracts in the pay-to-play schemes. This includes the investment companies themselves, various people and entities who assisted in the purchase of the contract by making campaign contributions, as well as those who benefitted from the contract through commissions.

There is nothing in Plaintiffs' Complaint which alleges that defendants were universally involved with the activities of every contract, or that Defendants even were aware that the other contracts existed. In essence, each contract purchase was a separate fraudulent scheme. As such, the use of mail or wire communications by one Defendant did not necessarily forward a scheme in which all of the Defendants were implicated. When evaluating whether there are two predicate acts alleged, I will review the allegations according to the activities alleged against an individual Defendant. For ASCO, Donald Williamson, Nationwide, JJ & B, Joseph Joyce, John Joyce, William Joyce, Manulife, FSI, and Safeco, the Complaint alleges two or more acts of mail or wire fraud committed by each Defendant directly. (Doc. 1 ¶ 189.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF  Document 46-10  Filed 07/29/2005  Page 11 of 15

Not Reported in F.Supp.2d                                                                                                           Page 10
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
(Cite as: 2004 WL 1908221 (M.D.Pa.))

*11 For the remaining Defendants, although the Complaint does not allege that they personally used the mail or wires twice, the Complaint may allege two or more predicate acts of mail or wire fraud against a defendant. A defendant can be held accountable for each use of mail or wire communications that forwards a scheme in which the defendant participated, as long as the use of the mail or wires was reasonably foreseeable by the defendant. See Pereira, 347 U.S. at 8-9.

a) ASCO Affiliates

For the Board members (Defendants Makowski, Pizano, Crossin, and Jones), the Complaint alleges that each campaign contribution was mailed. Although these Defendants did not initiate the mailings, it is clear that the mailing of the contributions furthered the pay-to-play scheme. The use of the mail is reasonably foreseeable in a pay-to-play scheme. Additionally, because the Complaint alleges that the Board members were all involved in the scheme for each contract, any use of mail or wire communications in furtherance of the schemes is an allegation of mail fraud against all of the Board members. Plaintiffs' Complaint alleges at least two predicate acts committed by Defendants Makowski, Pizano, Crossin, and Jones.

In regards to Maria Williamson, the Complaint alleges that she used the mail only once. (Doc. 1 ¶ 189mm.) However, the Complaint clearly alleges that Maria Williamson acted as the Vice President/Operations for ASCO during the time in which ASCO administered the daily operations of the Plan. (Doc. 1 ¶ 53.) It is a reasonable inference that Maria Williamson was involved with ASCO in the alleged fraudulent schemes which took place during this time period, thus, the uses of the mail related to those schemes [FN9] constitutes mail fraud by Maria Williamson. Plaintiffs' Complaint alleges at least two predicate acts committed by Defendant Maria Williamson.

> FN9. For instance, ASCO mailed an administration agreement to Defendant Makowski allegedly in furtherance of a fraudulent scheme (Doc. 1 ¶ 189oo), and ASCO mailed a Special Agent's Agreement to Provident allegedly in furtherance of a fraudulent scheme. (Doc. 1 ¶ 189pp.)

b) The Wells Agreement

Perfilio is directly alleged to have committed a single act, in that he mailed a campaign contribution to Defendants Makowski and Pizano. (Doc. 1 ¶ 189gg.) Neither Michael Joyce nor FSC is directly alleged to have committed any acts. Wells, Wells REIT, and Wells Investment are directly alleged to have committed a single act, they mailed the Wells Agreement to the Plan. (Doc. 1 ¶ 189bb.) While the Complaint does not allege two acts against each of these Defendants directly, the Complaint clearly Implicates all of the these Defendants in the scheme to defraud the Plan related to the Wells Agreement. (Doc. 1 ¶¶ 116--125.)

The uses of the mails alleged were reasonably foreseeable as part of the Wells Agreement scheme. Because these Defendants are identified in a scheme together, the use of mail or wire to by any of these Defendants in furtherance of the scheme satisfies the use of mail or wire communications for all of these Defendants. Thus, the allegations that one Defendant used the mail or wires constitutes an allegation of mail or wire fraud against all of these Defendants. Plaintiffs' Complaint alleges at least two predicate acts committed by Defendants Perfilio, Michael Joyce, FSC, Wells, Wells REIT, and Wells Investment.

c) Miscellaneous Defendants

*12 For JJJA, there are no allegations that it directly used the mail or wires. The Complaint clearly implicates JJJA in the four Provident Agreements entered into between December, 1991, and June, 2000, (see, e.g., Doc. 1 ¶¶ 66, 75, 85, 93) and the two Manulife Agreements. (Doc. 1 ¶¶ 103 and 109.) These allegations create a foundation to substantiate the blanket allegation that JJJA acted with other Defendants in a scheme. In particular, it is a reasonable inference that JJJA acted with Defendants ASCO, Donald Williamson, Nationwide, Manulife, William Joyce, Makowski, Pizano, Crossin, and Jones. The Complaint alleges multiple uses of the mail and wires by these Defendants to further the schemes in which JJJA was involved. These uses of the mail were reasonably foreseeable in the course of the schemes. Plaintiffs' Complaint alleges at least two predicate acts committed by Defendant JJJA.

In regards to Devonshire, the Complaint alleges that the Devonshire mailed a campaign contribution to Defendants Makowski and Pizano. [FN10] The Complaint does create some tangential connection between Devonshire and other named Defendants. The Complaint alleges that Donald Williamson, who made campaign contributions to Defendants Makowski, Pizano, Crossin, and Jones, was affiliated with Devonshire. The Complaint also links Devonshire with Perfilio, who is alleged to be involved in the FSC transaction campaign contributions to Defendants Makowski and Pizano.

> FN10. The allegation that Devonshire mailed the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 46-10   Filed 07/29/2005   Page 12 of 15

Not Reported in F.Supp.2d                                                                                                           Page 11
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
(Cite as: 2004 WL 1908221 (M.D.Pa.))

campaign contribution is in itself questionable because the Complaint alleges "a mailing on or about April 9, 1999 by Perfilio or Devonshire...." (Doc. 1 ¶ 189gg.) This allegation arguably lacks specificity required under Rule 9(b), see, e.g., Lum v. Bank of Am., 361 F.3d 217, 224-25 (3d Cir.2004), but I don't need to reach that issue because the Complaint's allegations fail against Devonshire on other grounds.

Aside from these connections, the Complaint fails to explain how Devonshire was in anyway connected with any of the transactions between the Board, ASCO, and the investment companies. The Complaint also does not indicate that either Defendants Donald Williamson or Perfilio were acting on behalf of Devonshire at the time they made the campaign contributions. The fact that Devonshire was tangentially connected to two named Defendants who were allegedly involved in a scheme to defraud does not create any inference that Devonshire was involved in the scheme. While the fact that Devonshire made a political contribution may suggest its involvement in the pay-to-play scheme, the Complaint does not link Devonshire to a particular fraudulent scheme. Therefore, I cannot infer that it caused any mailings other than those which it made directly. I find that Plaintiffs' Complaint fails to allege two predicate acts and, consequently, fails to allege a pattern of racketeering activity by Defendant Devonshire.

JJI is alleged to have mailed a single campaign contribution. (Doc. 1 ¶ 188h.) Aside from this contribution, the Complaint fails to explain how JJI was in anyway connected with any of the transactions between the Board, ASCO, and the investment companies. While the fact that JJI made a political contribution may suggest its involvement in the pay-to-play scheme, the Complaint does not link JJI to a particular fraudulent scheme. Therefore, I cannot infer that it caused any mailings other than those which it made directly. I find that Plaintiffs' Complaint fails to allege two predicate acts, and, therefore, the Complaint fails to allege a pattern of racketeering activity by Defendant JJI.

*13 For Joyce Associates, Inc., I found no alleged connection between it and any criminal activity, let alone the requisite two predicate acts. The Complaint fails to allege that Joyce Associates, Inc. was in anyway connected with any of the allegedly fraudulent schemes between the Board, ASCO, and the investment companies. I find that Plaintiffs' Complaint fails to allege two predicate acts against Defendant Joyce Associates, Inc.

iii) Rule 9(b)

The next step in the analysis is to determine if the predicate acts alleged in the Complaint satisfy the requirements of Rule 9(b). Where fraud is alleged as a predicate act, Rule 9(b) requires that the plaintiff allege the fraud with particularity. Fed. R. Civ. P. 9(b). The particularity requirement can be satisfied through alleging the date, time, or place of the fraud, or by giving "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir.1984); see also Lum v. Bank of Am., 361 F.3d 217, 224 (3d Cir.2004). Plaintiffs must always allege who made the fraudulent representation, to whom the representation was made, and the general content of the misrepresentation. Saporito v. Combustion Eng'g Inc., 843 F.2d 666, 675 (3d Cir.1988), vacated on other grounds, 489 U.S. 1049, 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989).

Based on the above requirements, I find certain allegations are lacking in specificity. In particular, the allegation in Paragraph 189a lacks any specificity regarding who made the communication, to whom, or when the communication occurred. Similarly, the allegations in Paragraphs 189b, 189c, and 189d lack any specificity about when the conversations took place, and the allegations lack specificity about which fraudulent transaction was furthered by the communication. See Lum, 361 F.3d at 224. The allegations in Paragraphs 189e, 189f, 189n, and 189dd fail because they use the term "and/or" to identify the defendant initiating the communication. This connector does not identify who sent the communication, and it causes an ambiguity which does not satisfy Rule 9(b). Similarly, the allegations in Paragraphs 189y and 189gg fail to satisfy Rule 9(b) because they identify two Defendants as possible persons who initiated the communication. Like the use of "and/or" the use of "or" creates an ambiguity in the allegation that violates Rule 9(b). Paragraph 189tt fails to establish how the communication furthered the fraud, and it fails to establish the fraudulent nature of the statements in the communication.

The remainder of the allegations in Paragraph 189 satisfy the pleading requirements of Rule 9(b). The Complaint's allegations clearly define each of the campaign contributions, when they were mailed, by whom, and to whom. (See Doc. 1 ¶¶ 189 g, h, j, k, l, q, r, s, u, x, ee, ff, hh, ii, kk, mm, rr, and ss.) The Complaint also alleges with specificity the mailings in which the contracts were sent to the companies and the Board. These allegations include the date of the mailing, the contents of the mailing, who sent the mailing, and to whom it was sent. (See Doc. 1 ¶¶ 189 m, p, t, v, w, z, aa, bb, cc, jj, ll, nn,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 12
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
(Cite as: 2004 WL 1908221 (M.D.Pa.))

oo, pp, and qq.) There are further allegations that certain Defendants used wire communications in furtherance of the schemes. These allegations include the date of the call, the subject of the conversation, and the parties in the conversation. (*See* Doc. 1 ¶ ¶ 189 l and o.)

*14 Certain Defendants argue in their briefs that the allegations of fraud lack specificity because the allegations do not explain how the use of mail or wire communications furthered the fraudulent scheme. While Rule 9(b) requires pleading with specificity, it does not erase the general standard that the Court should draw reasonable inferences in favor of Plaintiffs. *See Lum,* 361 F.3d at 22 (analyzing allegations of mail fraud for particularity while still drawing reasonable inferences in favor of plaintiffs). Although Plaintiffs' Complaint does not expressly identify how each particular mail or wire communication furthered the scheme, the Complaint clearly alleges facts which create an unquestionable inference that the alleged communications furthered the scheme.

Throughout the Complaint, Plaintiffs clearly explain the fraudulent scheme and how each Defendant is involved with the various contracts. (*See* Doc. 1 ¶ ¶ 44-- 143 and 188.) Plaintiffs' Complaint goes so far as to identify each contract, the campaign contributions linked to that contract, and the Defendants involved in that contract's creation, execution, and commissions which were awarded. (Doc. 1 ¶ ¶ 44--143.) The Complaint then alleges that certain mail and wire communications furthered the fraudulent scheme and lists those communications in Paragraph 189. The details of each communication in Paragraph 189 are given in a manner that injects precision and some measure of substantiation into their allegations of fraud.

The purpose of Rule 9(b) is to give Defendants notice of the precise misconduct claimed and to prevent false or unsubstantiated charges. *Seville Indus. Machinery,* 742 F.2d at 791. There is no ambiguity that in a pay-to-play scheme, a campaign contribution furthers the scheme. Likewise, there is no confusion that a fraudulent scheme to gain a contract with the Plan is furthered by mailing the contract to the Plan. I find the allegations give Defendants notice of the misconduct and meet the specificity requirements of Rule 9(b).

iv) Private Securities Litigation Reform Act

The next argument advanced by Defendants is that the frauds alleged cannot constitute predicate acts under RICO because they are securities violations. Mail and wire frauds may constitute predicate acts under RICO, but there is an exception created by the Private Securities Litigation Reform Act (hereinafter PSLRA), which excludes frauds that constitute securities fraud. 18 U.S.C.1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court ... except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962."); *see also Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.,* 189 F.3d 321, 327 (3d Cir.1999) (citing *Matthews v. Kidder, Peabody & Co., Inc.,* 161 F.3d 156, 157 (3d Cir.1998)). Any conduct which is actionable as fraud in the purchase or sale of securities cannot constitute a predicate offense under RICO, whether or not the Complaint expressly alleges securities fraud. *Bald Eagle Area Sch. Dist.,* 189 F.3d at 330.

*15 Securities fraud is a scheme to defraud, a misleading statement, or an omission of a material fact in connection with the purchase or sale of securities. 15 U.S.C. § 78j(b). [FN11] Plaintiffs seeking relief for securities fraud under Rule 10b-5 must show:

> FN11. 15 U.S.C. § 78j reads in pertinent part:
> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange--
> ...
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement (as defined in section 206B of the Gramm-Leach-Bliley Act), any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
> The Securities and Exchange Commission has promulgated rules which clarify the meaning of 15 U.S.C. § 78j:
> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 46-10   Filed 07/29/2005   Page 14 of 15

Not Reported in F.Supp.2d  
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742  
(Cite as: 2004 WL 1908221 (M.D.Pa.))

Page 13

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5 (hereinafter Rule 10b-5).

(1) a misrepresentation or omission of a material fact in connection with the purchase or sale of a security;
(2) scienter on the part of the defendant;
(3) reliance on the misrepresentation; and
(4) damage resulting from the misrepresentation.

Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 173 (3d Cir.2001) (citing Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 135 F.3d 266, 269 (3d Cir.1998) and Semerenko v. Cendant Corp., 223 F.3d 165, 174 (3d Cir.2000)).

In addition, there is a second form of securities fraud, actionable under the Securities Act of 1933, 15 U.S.C. § 77, which permits recovery for certain misrepresentations in connection with a sale of securities:

Any person who--
(1) offers or sells a security in violation of section 77e of this title, or
(2) offers or sells a security ... by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable ... to the person purchasing such security from him....

15 U.S.C. § 77l. Under the Securities Act of 1933, this form of securities fraud involves either a prospectus or an oral communication. Because the alleged facts of this case indicate that no prospectus was involved in the transactions and all of the fraudulent actions involved written contracts rather than oral statements, this type of securities fraud is inapplicable to the present case. I will limit my analysis to the Rule 10b-5.

Plaintiffs contend that the alleged actions are not actionable as securities fraud, or, that the Court should not make an analysis at this time because of the fact-specific analysis required to determine if the alleged acts constitute securities fraud. I disagree that a fact-specific analysis prevents me from addressing this question at this time. Dismissal is appropriate only if, accepting all factual allegations in the complaint as true and "drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations in the complaint." Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir.1998). No relief could be granted under RICO if the predicate acts alleged are prohibited by the PSLRA. Because the Complaint is read in Plaintiff's favor, if the alleged facts can be read in a manner in which the allegations do not constitute a securities fraud, then I should rule in favor of Plaintiffs and permit the action to continue. Therefore, the question for me to decide is whether the allegations in the Complaint would always constitute a cause of action for securities fraud.

*16 There is an initial question whether the investments involved were actually securities.

The term "security" means any note, stock, treasury stock, security future, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

15 U.S.C. § 78c(a)(10) (Securities Act of 1934); see also United Housing Found., Inc. v. Forman, 421 U.S. 837, 847, n. 12, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975) (the definition of security is essentially the same for the Securities Act of 1934 and the Securities Act of 1933). In determining whether a transaction involves a security, "form should be disregarded for substance and the emphasis should be on economic reality." Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967) (citing SEC v. W.J. Howey Co., 328 U.S. 293, 298, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946)).

In the present case, the allegations refer to secured notes, REITs, annuities, and other unidentified investments. While notes are usually securities, there are instances in which the nature of a particular transaction labeled a "note" prevents it from being treated as a security, for

Case 1:05-cv-00165-JJF   Document 46-10   Filed 07/29/2005   Page 15 of 15

Not Reported in F.Supp.2d                                                                                                Page 14
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
(Cite as: 2004 WL 1908221 (M.D.Pa.))

instance, when it is issued as collateral for a loan. *Reves v. Emst & Young,* 494 U.S. 56, 65, 110 S.Ct. 945, 108 L.Ed.2d 47 (1990) (citing *Exch. Nat. Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126, 1138 (2d Cir.1976)). As for annuities, they are generally not treated as securities, although there are also exceptions to this. 15 U.S.C § 77c(a)(8) (exempting annuity contracts from definition of security); *but see SEC v. Variable Annuity Life Ins. Co. of Am.,* 359 U.S. 65, 79, 79 S.Ct. 618, 3 L.Ed.2d 640 (1959) (variable annuity which did not guarantee pay-out unless investments succeeded was a security); *SEC v. United Benefit Life Ins. Co.,* 387 U.S. 202, 211, 87 S.Ct. 1557, 18 L.Ed.2d 673 (1967) (flexible fund annuity which provided pay-out relative to investment success was a security). Contracts with brokers to invest in securities are not securities themselves, although they are often actionable because they are "in connection with" a security. *See Angelastro v. Prudential-Bache Sec., Inc.,* 764 F.2d 939, 943 (3d Cir.1985).

*17 It is apparent to me that whether the particular investments in the alleged frauds were securities would entail a fact-specific analysis of each particular investment. The facts alleged in the Complaint do not permit this analysis, nor do they need to. Plaintiffs' primary allegations relate to the manner in which contracts with the investment companies were entered into by the Board members. The specific investments resulting from those contracts do not need to be plead with particularity. Construing the Complaint in the light most favorable to Plaintiffs, at least some (e.g., transaction involving annuities), if not all, of the transactions in question did not involve securities and, thus, could not form the basis of a securities fraud claim.

Moreover, even if some of the investments constituted securities, this does not end the Court's analysis. Defendants argue that since the alleged scheme is related to securities, any related fraud is precluded from forming the basis of a RICO violation because of the PSLRA. Only fraud which is *actionable as securities fraud* is precluded from forming the basis of a RICO claim. 18 U.S.C. § 1964(c). A fraud related to the purchase or sale of a security is not always actionable as a securities fraud; there must be a misrepresentation or omission of a material fact in connection with the purchase or sale of a security, scienter, reliance on the misrepresentation (reliance causation), and an injury proximately caused by the fraudulent misrepresentation (loss causation). *Newton,* 259 F.3d at 173.

For all Defendants, the Complaint alleges variations of the same factual scenario, that Defendants engaged in a relationship wherein contracts to invest money in securities were entered into in exchange for campaign contributions to Board members' reelection funds. The generic transaction is alleged as follows:

(1) A person connected with ASCO or an investment company would make a campaign contribution to a Board member's reelection fund. [FN12]

> FN12. In some of the transactions, the campaign contribution was made after the Board members signed the contract.

(2) A contract to invest the Plan's funds would be presented to Board members. The contract contained inappropriately risky investment strategies considering the Plan's purpose as a pension fund.
(3) One or more Board members would sign the contract, without presenting the contract at a public meeting, without the contract being reflected on the minutes of any meeting, and without holding a formal vote on the contract.
(4) The investment company would receive the Plan's funds and invest it in accordance with the contract.
(5) Persons connected with the investment company and/or ASCO would receive commissions for the contract. The cost of the commissions were excessive and built into the contract price, in other words, hidden from the face of the contract.
(6) The investment manager or investment advisor would collect excessive fees.
(7) Interstate mails and/or wires were used in the furtherance or commission of the transaction.

*18 There are several steps to this transaction which are potentially fraudulent, and it is unclear from the Complaint which parties are involved in those fraudulent acts. [FN13] What is clear to the court is there are two possible scenarios:

> FN13. This would seemingly violate the pleading requirements of Rule 9(b), but that is not the case. Plaintiffs properly plead with particularity the fraudulent *acts* of mail and wire fraud. *See* discussion *supra* p. 27. Because Plaintiffs are not alleging securities fraud, they were not required to plead the *scheme* with particularity. However, this leaves the Court with slightly vague details about the exact nature of the fraudulent scheme, which is necessary to analyze whether the fraud is in connection with the purchase or sale of securities.

(1) The Board members were unaware of the excessive fees, hidden commissions, and inappropriate investment strategies.
(2) The Board members and the investment manager or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.