Case 1:05-cv-00165-JJF   Document 46-11   Filed 07/29/2005   Page 1 of 17

Not Reported in F.Supp.2d                                                                                                Page 15
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
(Cite as: 2004 WL 1908221 (M.D.Pa.))

investment advisor acted in complete unison, and the Board members were aware of the excessive fees, hidden commissions, and inappropriate investment strategies. [FN14]

> FN14. The Complaint states: "The Defendant Board Members permitted the Plan to pay excessive fees and commissions to the co-defendants in exchange for political contributions." (Doc. 1 ¶ 188c.) I am uncertain whether "permitted" expresses that the Board members knowingly adopted contracts with hidden fees, or that the Board members failed in their fiduciary obligations by not properly reviewing contracts before approving them because their approval was purchased in the pay-to-play scheme.

In both of the scenarios above, the allegations in the Complaint do not meet all of the elements of a securities fraud.

a) The Board didn't know about hidden fees

If the Board members were unaware of the hidden fees, then there were actually two separate frauds occurring simultaneously: (1) the investment companies were concealing the excessive fees, commissions and unsuitable investments from the Board and the beneficiaries; and (2) the Board members were concealing the pay-to-play scheme from the beneficiaries. In this scenario, the alleged fraudulent pay-to-play scheme does not constitute an actionable securities fraud because the misrepresentations or omissions were too attenuated to be in connection with the sale or purchase of securities.

A fraud is in connection with a purchase or sale of securities when there are "deceptive practices touching [upon the purchase or] sale of securities." *Superintendent of Ins. v. Bankers Life & Cas. Co.,* 404 U.S. 6, 12-13, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). Frauds involving the trading process can be actionable under 10b-5. *Angelastro,* 764 F.2d at 943; *see also Denison v. Kelly,* 759 F.Supp. 199, 207 (3d Cir.1991). Hidden commissions in broker contracts can constitute securities fraud. *Ettinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 835 F.2d 1031, 1033 (3d Cir.1987). Misrepresentations regarding the terms of margin accounts are actionable securities frauds. *Angelastro,* 764 F.2d at 945. Even broker mismanagement of an account through investments inconsistent with the stated goals of the investor can constitute securities fraud when accompanied by assurances from the broker that the goals are being met. *Brown v. E.F. Hutton Group, Inc.,* 991 F.2d 1020, 1031 (3d Cir.1992).

The brokerage relationships are not securities transactions, but they are actionable in the securities fraud context because the relationships touch upon a securities transaction. *Bankers Life,* 404 U.S. at 10, 12-13. In the present case, the connection is even more removed from securities purchase or sale than a simple broker contract. [FN15] The pay-to-play scheme is a fraud between the fiduciaries who entered into the brokerage contracts and the beneficiaries of the plan. While the Supreme Court demonstrated in *Bankers Life,* that "in connection with" a securities transaction would be read broadly, there is one limitation which the Court created--securities fraud should not be applied to internal corporate mismanagement. 404 U.S. at 12; *see also Landy v. Fed. Deposit Ins. Corp.,* 486 F.2d 139, 155 (3d Cir.1973). I have been unable to find any comparable factual scenario to the present case which suggests that fraudulent omissions in this relationship are in connection with the purchase or sale of a securities fraud. This twice-removed relationship from the purchase or sale of a security is too attenuated to constitute a connection with the purchase or sale of securities. Both the Board members and the investment companies are still responsible for the second fraud because, as alleged, the investment companies engaged in the pay-to-play scheme by "purchasing" the contracts.

> FN15. First, there was the purchase or sale of securities, which was done by the investment company and independent parties in the market. There was no fraud alleged in this transaction. Next, there was the contract between the Plan (represented by the Board) and the investment company. Clearly, if the investment companies concealed hidden commissions and other terms of the investment agreements, that fraud constitutes an actionable securities fraud. *See, e.g., Ettinger,* 835 F.2d at 1033. Any use of mail or wire communications in furtherance of this scheme is excluded by the PSLRA from acting as a RICO predicate act. Lastly, there was the Board members' denial of honest dealings scheme in the form of the alleged pay-to-play system of granting contracts.

b) The Board knew about hidden fees

*19 Alternatively, if the Board knew about the hidden fees, the allegations of mail and wire fraud are not actionable as a securities fraud because, as discussed in the previous section, the securities transactions are two transactions removed from any misrepresentations or omissions related to the pay-to-play scheme. [FN16] Arguably, the pay-to-play scheme is more closely related

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 46-11   Filed 07/29/2005   Page 2 of 17

Not Reported in F.Supp.2d                                                                                           Page 16
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
(Cite as: 2004 WL 1908221 (M.D.Pa.))

to the purchase or sale of securities in this scenario than if the Board didn't know about the hidden fees because the Board members were involved in the fraud of the concealed hidden fees. However, even if the pay-to-play scheme was connected with a securities transaction, the fraud would still not be actionable under securities laws because there is no reliance causation.

> FN16. First, there was the purchase or sale of securities, which was done by the investment company and independent parties in the market. There was no fraud alleged in this transaction. Next, there was the contract between the Plan (represented by the Board) and the investment company. Lastly, there was the Board members' denial of honest dealings scheme in the form of the alleged pay-to-play system of granting contracts.

Reliance causation requires that a plaintiff reasonably rely upon the fraudulent representation or omission when making the decision to purchase or sell a security. *EP Medsystems, Inc. v. Echocath, Inc.*, 235 F.3d 865, 882 (3d Cir.2000); *Newton*, 259 F.3d at 172 (using the term "reliance causation"). In the facts alleged, the beneficiaries made no decision to purchase or sell; it was the Board members who entered into the contracts. If the Board members knew about the hidden fees, neither party to the contract was misled or intentionally uninformed as to the terms of the contract. The omissions were not relied upon to enter into the contract, nor did that concealment cause any detrimental reliance. [FN17]

> FN17. The Court notes that the beneficiaries lack any ability to appoint, terminate, or otherwise control the Board members. Even if they were fully aware of the contracts' terms, the beneficiaries would have been unable to prevent the Board members from entering into the contracts.

One might see my present holding as conflicting with the Supreme Court's holding in *Bankers Life*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128. In *Bankers Life*, a new majority share holder installed a new president in the company, with the intent of defrauding the company of its assets. The president then convinced the board of directors to sell its nearly $5 million worth of bonds. The proceeds of that sale were eventually used to purchase a new bond for the company, but the president used that bond as collateral against a private loan. Although the deceit involved separate transactions from the sale of the bonds, the Supreme Court concluded that the actions were sufficiently connected with the securities sale to constitute securities fraud.

*Bankers Life* is distinguishable from the present case. In *Bankers Life*, the scheme influenced the board of directors' decision to sell the securities. The fraudulent actors induced the innocent company's board of directors to sell the securities on the misrepresentation that the company would receive the proceeds, when in fact the benefit was passed to a private party. In contrast, in the present case, the Board members were not induced to enter the investment management contract on the basis of a fraud. The Board members were completely aware of the terms of the contract, and the fraud was only perpetrated against the beneficiaries of the plan.

In sum, viewing the Complaint in the light most favorable to Plaintiffs, allegations in the Complaint are not actionable as securities fraud. Therefore, the Complaint's predicate acts of mail and wire fraud are not barred by the PSLRA. However, because the analysis above is based on assumptions about the nature of the fraudulent scheme, I may be willing to reevaluate the issue on a motion for summary judgment if the facts differ materially from the assumptions in my analysis.

v) Relatedness and Continuity of Predicate Acts

*20 Lastly, in determining whether a Complaint alleges a pattern of racketeering activity, I must evaluate whether the predicate acts alleged create a pattern. When evaluating whether a pattern exists, the Court of Appeals for the Third Circuit advises courts to look at "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Barticheck v. Fid. Union Bank/First Nat'l State*, 832 F.2d 36, 39 (3d Cir.1987); *see also Marshall-Silver Constr. Co. v. Mendel*, 894 F.2d 593, 596 (3d Cir.1990) (finding *Barticheck* factors still applicable after *H.J. Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989)). [FN18] The predicate acts must be related and amount to or threaten to become continued criminal activity. *H.J. Inc.*, 492 U.S. at 239.

> FN18. In *Tabas v. Tabas*, the Court of Appeals for the Third Circuit recognized that *Marshall-Silver* was overruled insofar as it required a societal threat to prove a pattern of racketeering activity. 47 F.3d 1280, 1293 n. 17 (3d Cir.1995). That holding has no impact on the issue discussed above.

Criminal conduct is related "if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or

Case 1:05-cv-00165-JJF   Document 46-11   Filed 07/29/2005   Page 3 of 17

Not Reported in F.Supp.2d                                                                                              Page 17
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
(Cite as: 2004 WL 1908221 (M.D.Pa.))

otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240 (applying definition of pattern from 18 U.S.C. § 3575(e) to RICO). In instances, such as the present case, where the conduct in question occurred in a closed period of time, continuity is established by showing conduct that occurred over a "substantial period of time." *Id.* at 242.

When the predicate acts are mail fraud, the mailings are less helpful in ascertaining continuity, and the underlying frauds are more determinative. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1414 (3d Cir.1991). The RICO statute does not require more than one scheme to establish continuity, but "proof of multiple schemes is 'highly relevant' to the question of continuity." *Id.* at 1412 (quoting *H.J. Inc.,* 492 U.S. at 240). In the Court of Appeals for the Third Circuit, schemes spanning up to one year have been found to be too short-term to establish continuity. *Tabas,* 47 F.3d at 1293; *see also Hughes v. Consol-Pa. Coal Co.,* 945 F.2d 594, 610-11 (3d Cir.1991) (conduct lasting twelve months); *Hindes v. Castle,* 937 F.2d 868, 875 (3d Cir.1991) (eight month period); *Kehr Packages,* 926 F.2d at 1413 (same); *Banks v. Wolk,* 918 F.2d 418, 422-23 (3d Cir.1990) (same); *Marshall-Silver Constr. Co.,* 894 F.2d at 597 (seven month period).

a) The Board Members

Plaintiffs allege that Defendants Makowski, Pizano, Crossin, and Jones used their positions on the Board to grant contracts in exchange for campaign contributions. They engaged in these activities in twelve separate contracts, spanning a time period of more than twelve years (from 1988 until 2001).

For Defendant Makowski, the Complaint alleges that he personally received at least nine campaign contributions (Doc. 1 ¶¶ 189 x, ee, ff, hh, ii, kk, mm, rr and ss) related to six different contracts. (Doc. 1 ¶¶ 77, 87, 105, 116, 126, 136 and 189kk.) In addition, because the Complaint alleges Makowski was involved in the scheme for every contract that the Board members entered into, there are potentially other legitimate allegations of mail fraud based on the uses of mail by other Board members which furthered the fraudulent scheme in which Makowski was involved. Regardless of these other mail frauds, the actions alleged are clearly related because they all share the same purpose, results (granting of contracts), participants (the Board members), victims (the Plan and its beneficiaries), and methods of commission (donations to campaign funds). Continuity between the acts is established by the repeat nature of the multiple contracts issued over a substantial period of time, in this case more than a decade. The Complaint sufficiently alleges that Makowski was engaged in a pattern of racketeering activity.

*21 For Defendant Pizano, he personally received at least nine campaign contributions (Doc. 1 ¶¶ 189 ee, ff, hh, ii, kk, mm, rr, and ss) related to six different contracts. (Doc. 1 ¶¶ 77, 87, 105, 116, 126, 136 and 189kk.) There are potentially other legitimate allegations of mail fraud because the Complaint also alleges Pizano was involved in the scheme for every contract that the Board members entered into. Regardless of these other mail frauds, the actions alleged are clearly related because they all share the same purpose, results (granting of contracts), participants (the Board members), victims (the Plan and its beneficiaries), and methods of commission (donations to campaign funds). Continuity between the acts is established by the repeat nature of the multiple contracts issued over a substantial period of time, in this case more than a decade. The Complaint sufficiently alleges that Pizano was engaged in a pattern of racketeering activity.

For Defendant Crossin, he personally received at least eight campaign contributions (Doc. 1 ¶¶ 189 j, k, l, q, r, s, u, and x) related to at least five different contracts. (Doc. 1 ¶¶ 48, 55, 68, 98, and 126.) There are potentially other legitimate allegations of mail fraud because the Complaint alleges Crossin was involved in the scheme for every contract that the Board members entered into. Regardless of these other mail frauds, the actions alleged are clearly related because they all share the same purpose, results (granting of contracts), participants (the Board members), victims (the Plan and its beneficiaries), and methods of commission (donations to campaign funds). Continuity between the acts is established by the repeat nature of the multiple contracts issued over a substantial period of time, in this case more than a decade. The Complaint sufficiently alleges that Crossin was engaged in a pattern of racketeering activity.

Although Jones did not personally receive campaign contributions, there are allegations of mail fraud against Defendant Jones. Because the Complaint alleges Jones was involved in the scheme for every contract that the Board members entered into, and because the mail was used to furthered the fraudulent schemes, those uses of the mail constitute allegations of mail fraud against Defendant Jones. See discussion *supra* p. 22. The campaign contributions alleged in Paragraph 189mm related to Jones' approval of the third Provident Agreement. (Doc. 1 ¶ 80.) The campaign contributions alleged in Paragraphs 189ee, 189ff, and 189hh related to Jones' approval of the Wells Agreement (Doc. 1 ¶ 118), and the campaign contributions alleged in Paragraph 189kk related to Jones' approval of the LPL Agreement. (Doc. 1 ¶ 136.)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 46-11   Filed 07/29/2005   Page 4 of 17

Not Reported in F.Supp.2d                                                                                            Page 18
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
(Cite as: 2004 WL 1908221 (M.D.Pa.))

For Defendant Jones, the actions alleged are clearly related because they all share the same purpose, results (granting of contracts), participants (the Board members), victims (the Plan and its beneficiaries), and methods of commission (donations to campaign funds). Continuity between the acts is established by the repeat nature of the multiple contracts issued over a substantial period of time, in this case nearly four years. The Complaint sufficiently alleges that Jones was engaged in a pattern of racketeering activity.

b) The ASCO Affiliates

*22 Plaintiffs allege that Defendant ASCO and its officers and affiliates acted in the scheme with the Board members and facilitated the pay-to-play scheme by making campaign contributions and brokering the contracts in exchange for collecting hidden fees. They engaged in these activities in twelve separate contracts, spanning a time period of more than twelve years (from 1988 until 2001).

For Defendant ASCO, the actions alleged are clearly related because they all share the same purpose (receiving commissions), results (brokering contracts), participants (the Board members), victims (the Plan and its beneficiaries), and methods of commission (donations to campaign funds). ASCO directly made at least three campaign contributions (Doc. 1 ¶ ¶ 189 g, r, and u) related to two different contracts. (Doc. 1 ¶ ¶ 48 and 68.) The Complaint also alleges that ASCO used mail or wire communications on at least three occasions (Doc. 1 ¶ ¶ 189 m, oo, and pp), which furthered three schemes. (Doc. 1 ¶ ¶ 56, 90, and 53, respectively.) In addition, because the Complaint alleges ASCO was involved in the scheme for every contract that the Board members entered into, there are potentially other legitimate allegations of mail fraud based on the uses of mail by the investment companies and related parties that furthered the fraudulent scheme in which ASCO was involved. [FN19] Regardless of these other mail frauds, continuity between the acts is established by the repeat nature of the multiple contracts issued over a substantial period of time, in this case more than a decade. The Complaint sufficiently alleges that ASCO was engaged in a pattern of racketeering activity.

> FN19. Most notably are the fourteen acts of mail and wire fraud alleged against Donald Williamson, the President and CEO of ASCO, Maria Williamson, the Vice President/Operations of ASCO, John Joyce, the Secretary of ASCO, and Joseph Joyce, the Treasurer of ASCO. (Doc. 1 ¶ ¶ 189 i, o, u, j, k, p, l, w, mm, aa, ff, hh, nn, and ss.)

Defendant Donald Williamson is by far the defendant who is accused of personal involvement in the most number of transactions. It is alleged that at various times between 1988 and 2002, Donald Williamson was the President and CEO of ASCO (Doc. 1 ¶ 7), a representative for Safeco (Doc. 1 ¶ 49), a broker for Provident (Doc. 1 ¶ 59), a broker representative for FSC (Doc. 1 ¶ 119), an account representative for FSC (Doc. 1 ¶ 141), and a broker for FSI. (Doc. 1 ¶ 128.) He personally made three campaign contributions (Doc. 1 ¶ ¶ 189 k, hh, and ss) related to four different contracts. (Doc. 1 ¶ ¶ 55, 87, 105, and 116.) The Complaint also alleges that Donald Williamson used mail or wire communications on at least five occasions (Doc. 1 ¶ ¶ 189 i, o, w, aa, and nn), which furthered five schemes. Aside from his direct actions, the Complaint alleges that Donald Williamson was involved in the scheme for every contract that the Board members entered into. The acts alleged are clearly related because they all share the same purpose (facilitating the pay-to-play scheme), results (brokering contracts), participants (the Board members and ASCO affiliates), victims (the Plan and its beneficiaries), and methods of commission (donations to campaign funds). Continuity between the acts is established by the repeat nature of the multiple contracts issued over a substantial period of time, in this case more than a decade. The Complaint sufficiently alleges that Donald Williamson was engaged in a pattern of racketeering activity.

*23 For Defendant Maria Williamson, the Complaint alleges that Maria Williamson acted as the Vice President/Operations for ASCO during the time in which ASCO administered the daily operations of the Plan. (Doc. 1 ¶ 53.) Thus, it is a reasonable inference that Maria Williamson was involved in the allegedly fraudulent schemes with ASCO from December, 1999, until October, 2002. During this time, ASCO was implicated in two schemes: the contract for ASCO to administer the daily operations of the Plan and the fourth Provident Agreement. [FN20] The Complaint also alleges that Maria Williamson committed an act of mail fraud related to the third Provident contract. (Doc. 1 ¶ 189mm.) The actions alleged are clearly related because they all share the same purpose (purchasing contracts), results (contracts with the Plan), participants (the Board members), victims (the Plan and its beneficiaries), and methods of commission (donations to campaign funds). Over a time span of approximately two years and ten months, Maria Williamson participated in three fraudulent schemes, and there were eight uses of mail communications to further those schemes, thus, the Complaint sufficiently establishes continuity and alleges that Maria Williamson was engaged in a pattern of racketeering activity.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 46-11   Filed 07/29/2005   Page 5 of 17

Not Reported in F.Supp.2d                                                                                                              Page 19
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
(Cite as: 2004 WL 1908221 (M.D.Pa.))

> FN20. Acts of mail fraud related to those schemes includ ASCO mailing an administration agreement to Defendant Makowski (Doc. 1 ¶ 189oo) and ASCO mailing a Special Agent's Agreement to Provident. (Doc. 1 ¶ 189pp.)

The Complaint alleges that Safeco committed one act of mail fraud (Doc. 1 ¶ 189q) and one act of wire fraud (Doc. 1 ¶ 189i), both of which were connected to Safeco's contract with the Plan. Plaintiffs also attempt to link Safeco with ASCO's schemes, because Safeco collected ASCO's fees from the Plan. However, the fact that Safeco collected ASCO's fees does sufficiently allege that Safeco was itself engaged in fraudulent conduct under the heightened pleading requirements of Rule 9(b). Thus, the only predicate acts alleged are the mail fraud and the wire fraud related to the single fraudulent scheme. These allegations do not establish the necessary. The Complaint fails to alleges that Safeco was engaged in a pattern of racketeering activity, and Count III will be dismissed against Safeco.

Joseph Joyce, ASCO's Treasurer, is alleged to be involved in two separate fraudulent schemes: the second Provident Agreement (Doc. 1 ¶ 68) and the ASCO contract. (See Doc. 1 ¶¶ 48 and 189u.) The Complaint alleges that Joseph Joyce used mail communications on at least two occasions to further these schemes. (Doc. 1 ¶¶ 189 j and u.) These transactions occurred over a period of nearly three years. (Id.) In addition, there are allegations that nine additional acts of mail fraud were committed to further the schemes in which Joseph Joyce participated. (Doc. 1 ¶¶ 189 h, g, l, o, r, s, w, z, and oo.) The actions alleged are clearly related because they all share the same purpose (inducing the Board members to grant contracts), results (contracts), participants (the Board members and ASCO), victims (the Plan and its beneficiaries), and methods of commission (donations to campaign funds). Eleven predicate acts to forward two schemes over the course of three years does sufficiently allege continuity in the predicate acts which suggests that Joseph Joyce was engaged in a pattern of racketeering activity.

*24 John Joyce, ASCO's Secretary, is alleged to be involved in two separate fraudulent schemes: the first Provident Agreement (Doc. 1 ¶ 55) and the second Provident Agreement. (See Doc. 1 ¶ 68.) The Complaint alleges that John Joyce used the mail twice to further these schemes. (Doc. 1 ¶¶ 189 p and l, respectively.) These transactions occurred over a period of less than five months. (Id.) In addition, there are allegations that eight additional acts of mail fraud were committed to further the schemes in which John Joyce participated. (Doc. 1 ¶¶ 189 j, k, m, p, r, s, w, and z.) Although the actions alleged are clearly related, the short time period over which the frauds occurred, five months, does not sufficiently allege continuity in the predicate acts to establish a pattern of racketeering activity. Count III will be dismissed against John Joyce.

c) The Provident Agreements

Defendant Nationwide is alleged to be involved with four separate fraudulent schemes, the four Provident Agreements created between December 18, 1991 and June 6, 2000. (Doc. 1 ¶¶ 58, 69, 80, and 89.) The Complaint alleges that Nationwide used mail or wire communications on at least three occasions (Doc. 1 ¶¶ 189 z, jj. and qq) which furthered three schemes. (Id.) There are allegations that thirteen additional acts of mail and wire fraud were committed to further the schemes in which Nationwide participated. (Doc. 1 ¶¶ 189 j, k, m, p, l, r, s, w, mm, aa, rr, ss, and pp.) The actions alleged are clearly related because they all share the same purpose (receiving contracts), results (contracts), participants (the Board members and ASCO), victims (the Plan and its beneficiaries), and methods of commission (third parties making donations to campaign funds). Continuity between the acts is established by the repeat nature of the multiple contracts issued over a substantial period of time, in this case nearly a decade. The Complaint sufficiently alleges that Nationwide was engaged in a pattern of racketeering activity.

JJJA is equally implicated in all of the Provident Agreements. [FN21] (See, e.g., Doc. 1 ¶¶ 65, 75, 81, and 90.) Like Nationwide, there are allegations that sixteen acts of mail and wire fraud were committed to further the schemes in which JJJA participated. (Doc. 1 ¶¶ 189 j, k, m, p, l, r, s, w, z, aa, jj, mm, pp, qq, rr, and ss.) The actions alleged are clearly related because they all share the same purpose (receiving commissions), results (contracts), participants (the Board members, ASCO), victims (the Plan and its beneficiaries), and methods of commission (third parties making donations to campaign funds). Continuity between the acts is established by the repeat nature of the multiple contracts issued over a substantial period of time. The Complaint sufficiently alleges that JJJA was engaged in a pattern of racketeering activity.

> FN21. In addition to the Provident Agreements, JJJA is implicated in the Manulife Agreements. (See Doc. 1 ¶¶ 103 and 109.) These additional schemes reaffirm the pattern of racketeering activity by JJJA alleged in relation to the Provident Agreements.

d) The Manulife Agreements

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 46-11   Filed 07/29/2005   Page 6 of 17

Not Reported in F.Supp.2d                                                                                                Page 20
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
**(Cite as: 2004 WL 1908221 (M.D.Pa.))**

Defendant Manulife is directly alleged to have committed three acts of mail fraud (Doc. 1 ¶ ¶ 189 v, cc, and ii) related to two separate transactions. (Doc. 1 ¶ ¶ 189v and 106.) These acts took place over almost six years. (Doc. 1 ¶ ¶ 189 v, cc, and ii.) In addition, there are four other acts of mail fraud related to the Manulife Agreements. (Doc. 1 ¶ ¶ 189 s, ee, ff, and hh.) The actions alleged are clearly related because they all share the same purpose (receiving contracts), results (contracts), participants (the Board members and ASCO), victims (the Plan and its beneficiaries), and methods of commission (third parties making donations to campaign funds). More than one scheme is not required to establish continuity, although "proof of multiple schemes is 'highly relevant.' " *Kehr Packages, Inc.*, 926 F.2d at 1412 (quoting *H.J. Inc.*, 492 U.S. at 240). The Complaint alleges that Manulife participated in two fraudulent schemes over the course of six years, which involved seven acts of mail fraud to further those schemes. I find that seven predicate acts committed to forward two schemes sufficiently alleges a continuity in the predicate acts. The Complaint sufficiently alleges that Manulife was engaged in a pattern of racketeering activity.

e) The Wells Agreement

*25 Defendant FSC is linked with two separate transactions, the FSC Agreement and the Wells Agreement. The Complaint does not list any related uses of mail or wire communications in furtherance of the FSC Agreement. (Doc. 1 ¶ ¶ 141-143.) Therefore, the only predicate acts alleged against FSC are the ones related to the Wells Agreement. Defendants Perfilio, Michael Joyce, Wells, Wells REIT, and Wells Investment will be analyzed the same as FCS because each Defendant is only implicated in the Wells Agreement scheme. The Wells Agreement lists four separate uses of mail or wire communications in furtherance of the fraudulent scheme which transpired between February 2, 1999, and April 12, 1999--two months and ten days. (Doc. 1 ¶ ¶ 189 bb, ee, ff, and hh.)

While these acts of mail and wire fraud are clearly related, they lack the necessary continuity to establish a pattern of racketeering activity. When ascertaining whether the predicate acts establish continuity, the specific acts of mail fraud are less determinative than the number of schemes. *Kehr Packages, Inc.*, 926 F.2d at 1414. Schemes lasting less than a year are too short-term to create continuity. *See Hughes*, 945 F.2d at 610-11 (conduct lasting twelve months). The allegations against Defendants fail on both counts. The Complaint alleges that Defendants were involved in a single scheme with acts of fraud only occurring over two months and ten days. The Complaint does not sufficiently allege that FSC, Perfilio, Michael Joyce, Wells, Wells REIT, or Wells Investment were engaged in a pattern of racketeering activity. Count III will be dismissed against Defendants FSC, Perfilio, Michael Joyce, Wells, Wells REIT, and Wells Investment.

f) Miscellaneous Defendants

FSI is in a situation similar to the Wells Agreement Defendants. The Complaint alleges that FSI engaged in two acts of mail fraud related to the FSI transaction. (Doc. 1 ¶ ¶ 189 t and x.) These transactions occurred over a period of seven months. (*Id.*) The Complaint does not link FSI to any other schemes. Because the alleged predicate acts occurred in a time period of less than a year and they were both related to a single fraudulent scheme, the allegations fail to establish the necessary continuity. The Complaint does not sufficiently allege that FSI was engaged in a pattern of racketeering activity. Count III will be dismissed against FSI.

JJ & B is alleged to be involved with four separate fraudulent schemes: the second Provident Agreement (Doc. 1 ¶ 68), both Manulife Agreements (Doc. 1 ¶ ¶ 98 and 105). and the Wells Agreement. (Doc. 1 ¶ 116.) The Complaint alleges that JJ & B used mail communications on at least two occasions to further these schemes. (Doc. 1 ¶ ¶ 189 s and ee.) These transactions occurred over a period of nearly five years. (*Id.*) In addition, there are allegations that nine additional acts of mail fraud were committed to further the schemes in which JJ & B participated. (Doc. 1 ¶ ¶ 189 *l*, r, w, v, z, bb, cc, ff, and hh.) The actions alleged are clearly related because they all share the same purpose (inducing the Board members to grant contracts), results (contracts), participants (the Board members and ASCO), victims (the Plan and its beneficiaries), and methods of commission (donations to campaign funds). Continuity between the acts is established by the repeat nature of the four schemes over nearly five years furthered by eleven acts of mail fraud. The Complaint sufficiently alleges that JJ & B was engaged in a pattern of racketeering activity.

*26 William Joyce is alleged to be involved with three separate fraudulent schemes: the fourth Provident Agreement (Doc. 1 ¶ 87), the second Manulife Agreement (Doc. 1 ¶ 105), and the Wells Agreement. (Doc. 1 ¶ 116.) The Complaint alleges that William Joyce used mail communications on at least two occasions to further these schemes. (Doc. 1 ¶ ¶ 189 ff and rr.) These transactions occurred over a period of more than fourteen months. (*Id.*) In addition, there are allegations that eight additional acts of mail and wire fraud were committed to further the schemes in which William Joyce participated.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 46-11   Filed 07/29/2005   Page 7 of 17

Not Reported in F.Supp.2d                                                                                                Page 21
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
(Cite as: 2004 WL 1908221 (M.D.Pa.))

(Doc. 1 ¶¶ 189 bb, cc, ee, hh, ii, pp, qq, and ss.) While the alleged acts are clearly related, the short duration of the acts, approximately fourteen months, does not establish the requisite continuity in the predicate acts. The Complaint fails to allege that William Joyce was engaged in a pattern of racketeering activity. Count III will be dismissed against William Joyce.

In summary, the RICO § 1964(c) claim for alleged violations of § 1962(c) will be dismissed against the following Defendants because the Complaint fails to allege a pattern of racketeering activity: FCS, Perfilio, Joyce Associates, Inc., JJI, John Joyce, William Joyce, Michael Joyce, Wells, Wells REIT, Wells Investment, FSI, Safeco, and Devonshire. The Complaint sufficiently alleges a pattern of racketeering activity for the RICO § 1964(c) claim for alleged violations of § 1962(c) against the following Defendants: Makowski, Pizano, Crossin, Jones, ASCO, Donald Williamson, Maria Williamson, JJJA, JJ & B, Joseph Joyce, Manulife, and Nationwide.

D) Count IV-- § 1962(d) Conspiracy to Violate § 1962(c)

In Count IV of the Complaint, Plaintiffs allege that all Defendants conspired to violate § 1962(c), in violation of 18 U.S.C. § 1962(d). To sustain an action under § 1962(d), a plaintiff must prove:
(1) that the defendant adopted the goal of furthering or facilitating the criminal endeavor, *Salinas v. United States*, 522 U.S. 52, 65, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997);
(2) that the conspiracy, if completed, would satisfy all of the elements of either § 1962(a), (b), or (c), *Rehkop v. Berwick Healthcare Corp.*, 95 F.3d 285, 290 (3d Cir.1996); and
(3) that an injury resulted from an act related to the conspiracy which is enumerated in § 1961(1). *Beck v. Prupis*, 529 U.S. 494, 505, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000).
See generally *Smith v. Berg*, 247 F.3d 532, 536 (3d Cir.2001).

The Supreme Court has been very clear that RICO conspiracy under § 1962(d) should be analyzed consistent with common law concepts of conspiracy.
"One can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense....
It makes no difference that the substantive offense under § 1962(c) requires two or more predicate acts. The interplay between subsection (c) and (d) does not permit us to excuse from the reach of conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense."

*27 *Salinas*, 522 U.S. at 65. Moreover, the complaint need not contain specifics allegations of overt acts committed by each defendant. See *id.* at 63-4 (explaining that federal conspiracy does not require an overt act, and comparing with RICO's even broader definition of conspiracy). All that is required is that the conspirator "adopt the goal of furthering or facilitating the criminal endeavor." *Id.* at 65.

"A conspiracy claim must also contain supportive factual allegations. The allegations must be sufficient to describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in that conspiracy." *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir.1989) (internal quotations and citations omitted). This analysis does not rise to the level of particularity required by Rule 9(b) for allegations of fraud. *Id.*

"All defendants conspired to violate 18 U.S.C. § 1962(c). Among other things, defendants conspired to perpetuate a scheme to intentionally defraud the Plan for their own monetary benefit. In furtherance of that Agreement, defendants engaged in at least the following overt acts: ..." (Doc. 1 ¶ 196.) "Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further their schemes." (*Id.* ¶ 197.) In Count IV, the Complaint not only alleges that Defendants adopted the goal of furthering or facilitating the criminal endeavor, it outlines the composition of the conspiracy (the Board members, ASCO and affiliates, and the contract companies and affiliates), the broad objectives of the conspiracy (the pay-to-play scheme), and what role Defendants played in the scheme.

The allegations in the Complaint are extremely thorough, with the exception of Defendant Joseph Associates, Inc. As I stated previously in my § 1962(c) analysis, the Complaint failed to allege that Joyce Associates, Inc. was in anyway connected with any of the allegedly fraudulent schemes between the Board, ASCO, and the investment companies. Aside from the similarity in names with other corporate and real Defendants, there is no connection between Joyce Associates, Inc. with any of the transactions, the companies involved in those transactions, the Board members, any campaign contributions, or any commissions. As such, I find that the Complaint does not sufficiently allege Defendant Joyce Associates, Inc.'s role in that conspiracy to sustain a claim under § 1964(c) for violations of § 1962(d). Count IV will be dismissed against Joseph Associates, Inc.

As I discussed in the previous section, the Complaint properly alleges a cause of action under § 1964(c) for violations of § 1962(c) against Defendants Makowski,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF    Document 46-11    Filed 07/29/2005    Page 8 of 17

Not Reported in F.Supp.2d                                                                                          Page 22
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
**(Cite as: 2004 WL 1908221 (M.D.Pa.))**

Pizano, Crossin, Jones, ASCO, Donald Williamson, Maria Williamson, JJJA, JJ & B, Joseph Joyce, Manulife, and Nationwide. Thus, because the Complaint alleges that all Defendants conspired with the aforementioned Defendants against whom violations of 1962(c) are alleged, the completed conspiracy would satisfy all of the elements of § 1962(c). [FN22]

> FN22. "Under our interpretation, a plaintiff could, through a § 1964(c) suit for a violation of § 1962(d), sue co-conspirators who might not themselves have violated one of the substantive provisions of § 1962." *Beck,* 529 U.S. at 507.

**\*28** The Complaint also alleges that Plaintiffs sustained an injury resulting from the § 1962(c) violations, specifically, the Plan had to pay excessive fees, as well as suffer economic losses through bad investments, as a direct result of the frauds committed by the Board member Defendants and the investment manager Defendants' collusion to enter the Plan into inappropriate contracts. I find Plaintiffs sufficiently allege an injury resulting from a predicate act enumerated in § 1961(1). I find that the Complaint sufficiently alleges a claim under § 1964(c) for violations of § 1962(d) against all Defendants except Joyce Associates, Inc.

E) Count V-- § 1962(b) Interest or Control of an Enterprise

Plaintiffs allege that all Defendants violated 18 U.S.C. § 1962(b), which states that "it shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." To establish a claim under § 1962(b), a plaintiff must allege that the defendant has an interest in control over an enterprise engaged in racketeering activity, that the defendant acquired the interest or control through racketeering, and that the plaintiff was injured from the defendant's interest or control of the enterprise. *See Lightning Lube, Inc., v. Witco Corp.,* 4 F.3d 1153, 1190-1191 (3d Cir.1993). To state a RICO claim, the Complaint must contain more than mere conclusory accusations that a defendant controlled an enterprise. *Glessner v. Kenny,* 952 F.2d 702, 714 (3d Cir.1991), *overruled on other grounds, Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.,* 46 F.3d 258 (3d Cir.1995); *see also Kaiser v. Stewart,* No. Civ. A. 96-6643, 1997 U.S. Dist. LEXIS 12788, at \*6 (E.D.Pa. Aug. 19, 1997) (citing *Glessner* ).

Control over a RICO enterprise requires more than participation in the operation or management of the enterprise. *Kaiser,* 1997 U.S. Dist. LEXIS 12788, at \*4 (E.D.Pa. Aug. 19, 1997) (mere managerial control not enough); *see also Browne v. Abdelhak,* No. Civ. A. 98-6688, 2000 U.S. Dist. LEXIS, at \*31-2 (E.D.Pa. Aug. 23, 2000). A person controls a RICO enterprise when he has significant power over the functioning of the enterprise, comparable to that of a majority shareholder or someone with managerial control. *See, e.g., T.I Construction v. Kiewit Eastern Co.,* No. Civ. A. 91-2638, 1992 U.S. Dist. LEXIS 11607, at \*22 (E.D.Pa. Aug. 6, 1992). An interest in an RICO enterprise must rise to the level of a proprietary Interest. *Kaiser,* 1997 U.S. Dist. LEXIS 12788, at \*9. "In addition, the plaintiff must establish that the interest or control of the RICO enterprise by the person is a result of racketeering .... it must be established firmly that there is a nexus between the interest and the alleged racketeering activities." *Lightning Lube,* 4 F.3d at 1190.

**\*29** Just as with the § 1964(c) claim stemming from a § 1962(c) violation, there is a threshold question whether Plaintiffs have standing to bring a claim for a violation of § 1962(b). In order to bring an action under § 1964(c) for a violation of § 1962(b), the injury must result from the acquisition or control of the enterprise, not merely a racketeering activity. *Lightning Lube,* 4 F.3d at 1190. "[A] plaintiff must show injury from the defendant's acquistion or control of an interest in a RICO enterprise, *in addition to* injury from the predicate acts." *Id.* (emphasis added). Merely repeating the same injuries that resulted from an alleged § 1962(c) violation is insufficient. *Id.* at 1191. The injury must be the result of the actions of the defendant in acquiring or maintaining control of the enterprise. The fact that a defendant could not have harmed the plaintiff "but for" the fact that he controlled the enterprise does not satisfy this test. *Casper v. Webber Group, Inc.,* 787 F.Supp. 1480, 1495 (D.N.J.1992).

While Plaintiffs allege a nexus between racketeering activity and control of an enterprise, they fail to establish how they were injured as a result of Defendants' control of the enterprise independent of the injuries from the racketeering activities. Plaintiffs repeated the same injury for both their § 1962(c) and § 1962(b) claims:

> 192. As a direct and proximate result of the defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), the Plan has been injured in its business and property, in that, without limitation:
> a. the Plan suffered a net loss of millions of dollars as a result of the performance of the inappropriate investments into which the defendants placed the Plan's funds;
> b. the Plan paid millions of dollars in excessive fees and commissions in connections with the inappropriate

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 46-11   Filed 07/29/2005   Page 9 of 17

Not Reported in F.Supp.2d                                                                                                     Page 23
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
(Cite as: 2004 WL 1908221 (M.D.Pa.))

investments into which the placed the Plan's funds; and
c. the Plan paid millions of dollars in expense recovery charges when the Plan liquidated the inappropriate investments into which the placed the Plan's funds.
193. As a result of the defendants' violations of 18 U.S.C. § 1962(c), the Plan has been damages in its business or property in an amount to be proven at trial, but not less than $25 million. claims.

* * *

209. As a direct and proximate result of the defendants' racketeering activities and violations of 18 U.S.C. § 1962(b), the Plan has been injured in its business and property, in that, without limitation:
a. the Plan suffered a net loss of millions of dollars as a result of the performance of the inappropriate investments into which the defendants placed the Plan's funds;
a. the Plan paid millions of dollars in excessive fees and commissions in connections with the inappropriate investments into which the placed the Plan's funds; and
b. the Plan paid millions of dollars in expense recovery charges when the Plan liquidated the inappropriate investments into which the placed the Plan's funds.
*30 210. As a result of the defendants' violations of 18 U.S.C. § 1962(b), the Plan has been damages in its business or property in an amount to be proven at trial, but not less than $25 million.
(Doc. 1.)

Repeating the same injury is insufficient. *Lightning Lube, 4 F.3d at 1191* ("Such an allegation is insufficient because it merely parrots the same injury that § 1962(c) is meant to remedy and fails to explain what *additional injury* resulted from the person's interest or control of the enterprise." (emphasis added)); *see also Cheatle v. Katz, No. Civ. A. 02-4405, 2003 WL 21250583, at *6 (E.D.Pa. April 1, 2003)*. Moreover, the Injuries alleged stem from the underlying racketeering activity committed by Defendants, i.e., the mail and wire frauds, not from Defendants' control of the enterprise. Plaintiffs have failed to plead a claim under § 1962(b). I will dismiss Count V against all moving Defendants.

F) Count VI-- § 1962(d) Conspiracy to Violate § 1962(b)

As I stated before in my discussion of Count IV, to sustain an action under § 1962(d), a Plaintiff must prove:
 (1) that the defendant adopted the goal of furthering or facilitating the criminal endeavor, *Salinas v. United States, 522 U.S. 52, 65, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997)*;
 (2) that the conspiracy if completed, would satisfy all of the elements of either § 1962(a), (b), or (c), *Rehkop v. Berwick Healthcare Corp., 95 F.3d 285, 290 (3d Cir.1996)*; and
 (3) that an injury resulted from an act related to the conspiracy which is enumerated in § 1961(1). *Beck v. Prupis, 529 U.S. 494, 505, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000)*.
*See generally Smith v. Berg, 247 F.3d 532, 536 (3d Cir.2001)*.

Although a conspiracy claim requires that the element of a § 1962(a), (b), or (c) violation are met, there does not need to be a successful claim under § 1962(a), (b), or (c) in order for a § 1962(d) claim to survive. *Beck, 529 U.S. at 507*. Moreover, In situations in which the claim for the substantive violation fails for failure to establish the injury requirement imposed by § 1964(c), the substantive allegations can still sustain a cause of action for a § 1962(d) violation. *Rehkop, 95 F.3d at 290*.

"A conspiracy claim must also contain supportive factual allegations. The allegations must be sufficient to describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in that conspiracy." *Rose v. Bartle, 871 F.2d 331, 366 (3d Cir.1989)* (internal quotations and citations omitted). However, this analysis does not rise to the level of particularity required by Rule 9(b) for allegations of fraud. *Id.*

"All defendants conspired to violate 18 U.S.C. § 1962(b). Among other things, defendants conspired to perpetuate a scheme to acquire and maintain interests in and control of the enterprise through a pattern of racketeering activity." (Doc. 1 ¶ 213.) "Defendants have intentionally conspired to acquire or maintain their interests in the enterprise through a pattern of racketeering activity. Defendants knew their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further their schemes." (*Id.* ¶ 214.) In Count VI, the Complaint not only alleges that Defendants adopted the goal of furthering or facilitating the criminal endeavor, it outlines the composition of the conspiracy (the Board members, ASCO and affiliates, and the contract companies and affiliates), the broad objectives of the conspiracy (the pay-to-play scheme), and what role Defendants played in the scheme.

*31 The allegations in the Complaint are extremely thorough, with the exception of Defendant Joseph Associates, Inc. As I stated previously in my § 1962(c) analysis, the Complaint failed to allege that Joyce Associates, Inc. was in anyway connected with any of the allegedly fraudulent schemes between the Board, ASCO, and the investment companies. Aside from the similarity in names with other corporate and real Defendants, there

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 46-11   Filed 07/29/2005   Page 10 of 17

Not Reported in F.Supp.2d                                                                                                   Page 24
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
**(Cite as: 2004 WL 1908221 (M.D.Pa.))**

is no connection between Joyce Associates, Inc. and any of the transactions, the companies involved in those transactions, the Board members, any campaign contributions, or any commissions. As such, I find that the Complaint does not sufficiently allege Defendant Joyce Associates, Inc.'s role in that conspiracy to sustain a claim under § 1964(c) for violations of § 1962(d).

As I discussed in the previous section, a § 1962(b) violation is established when the defendant has an interest in control over an enterprise engaged in racketeering activity which the defendant acquired the interest or control through racketeering. *See Lightning Lube,* 4 F.3d at 1190-1191. To state a RICO claim, the Complaint must contain more than mere conclusory accusations that a defendant controlled an enterprise. *Glessner,* 952 F.2d at 714, *overruled on other grounds, Jaguar Cars,* 46 F.3d 258; *see also Kaiser,* 1997 U.S. Dist. LEXIS 12788, at *6 (citing *Glessner* ).

Control over a RICO enterprise requires more than participation in the operation or management of the enterprise. *Kaiser,* 1997 U.S. Dist. LEXIS 12788, at *4 (mere managerial control not enough); *see also Browne,* 2000 U.S. Dist. LEXIS, at *31-2. A person controls a RICO enterprise when he has significant power of the functioning of the enterprise, comparable to that of a majority shareholder or someone with managerial control. *See, e.g., T.I Construction,* 1992 U.S. Dist. LEXIS 11607, at *22. An interest in an RICO enterprise must rise to the level of a proprietary interest. *Kaiser,* 1997 U.S. Dist. LEXIS 12788, at *9. "In addition, the plaintiff must establish that the interest or control of the RICO enterprise by the person is a result of racketeering ....it must be established firmly that there is a nexus between the interest and the alleged racketeering activities." *Lightning Lube,* 4 F.3d at 1190.

The Complaint properly alleges that the Board members, and possibly ASCO, controlled the enterprise or maintained a proprietary interest in the enterprise. Specifically, the Board members benefitted financially from the transactions of the enterprise, as did ASCO. Moreover, the Board members had the ability to grant or deny a contract at their whim. Therefore, they were in a position in which they controlled the very actions of the enterprise, comparable to that of a shareholder with a controlling interest. Even if the actions alleged do not themselves rise to the level of control, Plaintiffs allege facts which could support the inference that Defendants intended to control an enterprise, which satisfies the pleading requirements for a conspiracy. *See Salinas,* 522 U.S. at 478 ("It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues...."). Thus, the completed conspiracy satisfies all of the elements of § 1962(b).

*32 The Complaint also alleges that Plaintiffs sustained an injury resulting from the § 1962(b) violations, specifically, the Plan had to pay excessive fees, as well as suffer economic losses through bad investments, as a direct result of the frauds committed by the Board member Defendants and the investment manager Defendants' collusion to enter the Plan into inappropriate contracts. I find Plaintiffs sufficiently allege an injury resulting from a predicate act enumerated in § 1961(1). I find that the Complaint sufficiently alleges a claim under § 1964(c) for violations of § 1962(d) against all Defendants except Joyce Associates, Inc.

3) Count VII--Investment Advisor Act of 1940

Count VII alleges that ASCO and Donald Williamson violated the Investment Advisors Act of 1940, 15 U.S.C. § 80b-1 *et seq.* (hereinafter IAA). Defendants ASCO and Williamson challenge this claim on the grounds that it is untimely. The IAA does not contain an express statute of limitations. However, the Sarbanes-Oxley Act of 2002, 28 U.S.C. § 1658(b), created a statute of limitations applicable to the IAA.
 (a) Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues.
 (b) Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)) [which includes the IAA], may be brought not later than the earlier of--
 (1) 2 years after the discovery of the facts constituting the violation; or
 (2) 5 years after such violation.
28 U.S.C. § 1658(b).

In the present case, Plaintiffs allege that ASCO and Donald Williamson began acting as agents in 1988. (*See* Doc. 85 at 18-19 .) Typically, courts have held that violations of the IAA are not continuing crimes. *See discussion Kahn v. Kohlberg, Kravis, Roberts & Co.,* 970 F.2d 1030, 1040-42 (1992) ("[The unregistered investment advisor] harms the purchaser of his investment advice at the time he enters into a contract that commits the purchaser to pay for the advice."). However, the Complaint clearly alleges multiple violations committed during the course of the relationship between ASCO and the Board, each of which would create a separate time for the statute of limitations to accrue. The allegations of the

Case 1:05-cv-00165-JJF   Document 46-11   Filed 07/29/2005   Page 11 of 17

Not Reported in F.Supp.2d                                                                                                  Page 25
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
**(Cite as: 2004 WL 1908221 (M.D.Pa.))**

Complaint are not clear about the timing of each of the violations. Therefore, at the present time, I will not dismiss Count VII. I will reserve ruling on the matter of the statute of limitations until the facts are more clearly developed to permit an appropriate analysis of when the statute of limitations accrued for the IAA claims.

4) State Law Claims

Now that the federal law claims are resolved, I move to the state law claims. Plaintiffs raise a claim of breach of fiduciary duty against Defendants Makowski, Pizano, Crossin, Jones, ASCO, and Donald Williamson. They also raise a claim of aiding and abetting breach of fiduciary duty against Defendants Nationwide, Manulife, Wells, Wells REIT, Wells Investment, FSC, FSI, LPL, Safeco, Devonshire, Perfilio, Joyce Associates, Inc., JJI, JJJA, JJ & B, Joseph Joyce, William Joyce, Michael Joyce, John Joyce, and Maria Williamson, Finally, Plaintiffs raise a claim is for unjust enrichment against ASCO, Donald Williamson, FSC, Perfilio, JJI, JJJA, Joseph Joyce, John Joyce, Michael Joyce, LPL, Manulife, Nationwide, Wells, Wells REIT, Wells Investment, and FSI. All of these claims are governed by Pennsylvania law.

A) Supplemental Jurisdiction

*33 As a preliminary matter, Defendants argue either that the Court should decline to exercise jurisdiction.
> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental Jurisdiction shall include claims that involve the joinder or intervention of additional parties.
>
> 28 U.S.C. § 1367(a). Cases that "derive from a common nucleus of operative fact" with federal claims are part of the same case or controversy. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In the present case, Plaintiffs allege federal claims against every Defendant in Counts III thought VI. The state law claims raised by Plaintiffs derive from the same operative facts as the federal law claims, giving me Jurisdiction under § 1367(a). The fact that I dismissed the federal claims against some Defendants does not destroy my supplemental jurisdiction over the state law claims raised against those Defendants. *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1508 (3d Cir.1996); *see also Fralin v. County of Bucks*, 296 F.Supp.2d 609, 616-617 (E.D.Pa.2003).

While I have supplemental jurisdiction, I also have discretion to decline to exercise that jurisdiction in certain circumstances.
> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ...
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In deciding whether to retain supplemental jurisdiction, a court "should take into account generally accepted principles of "judicial economy, convenience, and fairness to the litigants." ' *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284 (3d Cir.1993) (quoting *Gibbs*, 383 U.S. at 726).

This case is principally a RICO case, and the state law claims do not substantially predominate over the RICO claims. Likewise, although I have dismissed the federal claims against one Defendant, Joyce Associates, Inc., twenty-five of the twenty-six Defendants continue to have at least one federal claim pending. Given the complexity of the case and the interconnected nature of the transactions involved, it would be wasteful to dismiss Joyce Associates, Inc. on the basis that no federal claims survive. Judicial economy dictates that the case should be decided in a single forum. As such, I will not decline to exercise my supplemental jurisdiction.

B) Count I--Breach of Fiduciary Duty

*34 In Count I, Plaintiffs raise a claim of breach of fiduciary duty against Defendants Makowski, Pizano, Crossin, Jones, ASCO, and Donald Williamson. All Defendants challenge the claim on the basis that it is time-barred. Defendants ASCO and Williamson further challenge Count I as failing to state a claim upon which relief can be granted because neither of them ever had a fiduciary relationship with the Plan. Breach of fiduciary duty has a statute of limitations of two years. 42 Pa. Conn. Stat. Ann. § 5524. As with the federal claims, Plaintiffs argue that the injuries occurred within the two-year statute of limitations, and, even if the injury occurred before then, the statute of limitations was tolled by fraudulent concealment and adverse domination. Assuming,

Case 1:05-cv-00165-JJF   Document 46-11   Filed 07/29/2005   Page 12 of 17

Not Reported in F.Supp.2d
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
(Cite as: 2004 WL 1908221 (M.D.Pa.))

Page 26

*arguendo,* that the injuries occurred outside of the two-year statute of limitations, Plaintiffs' claims survive because they have sufficiently pled grounds for fraudulent concealment, adverse domination, or both.

Pennsylvania applies a broader test [FN23] for fraudulent concealment than the federal test that I applied in the RICO analysis. *See* discussion *supra* p. 12.

> FN23. Pennsylvania's test, which is known as the "discovery rule" is broader than the RICO fraudulent concealment standard because it does not require active concealment. It only requires that a Plaintiff cannot discover the injury with the exercise of reasonable due diligence.

The "discovery rule" provides that where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. The "discovery rule" arises from the inability of the injured party, despite the exercise of reasonable diligence, to know of the injury or its cause.
*Hayward v. Med. Ctr. of Beaver County,* 530 Pa. 320, 608 A.2d 1040, 1043 (Pa.1992) (internal citations omitted). It is clear that the discovery rule applies to the present case given Plaintiffs' allegations that the Board members actively concealed the contracts from the public. Therefore, the conclusion from my fraudulent concealment analysis is unchanged; Plaintiffs' claims are not time-barred because they successfully allege facts that trigger the discovery rule.

It is less clear whether Pennsylvania has adopted the doctrine of adverse domination. *See* discussion *Resolution Trust Corp. v. Farmer,* 865 F.Supp. 1143, 1152 n. 7 (E.D.Pa.1994); *see also In re Lloyd Sec.,* No. 90-0985S, 1992 WL 119362, at *10 (Bankr.E.D.Pa. May 21, 1992).
> Considering the domination by Dahlen of the entire corporate management, as well as the confidence long placed in him by the members of the Association and later by the shareholders of Lutherland, it is natural that even when suspicion had been aroused it did not ripen into conviction in the minds of the dissident shareholders until an investigation by counsel revealed the true state of affairs and thereupon this action was promptly instituted.

*Lutherland, Inc. v. Dahlen,* 357 Pa. 143, 53 A.2d 143, 157 (Pa.1947). Some courts have read the language in *Lutherland* as Pennsylvania's recognition of adverse domination. *Harper v. Superior Tool and Die Co.,* Civ. A. No. 86- 4188, 1987 WL 18414, at *3 (E.D.Pa.1987). Other courts have read it as a variation of fraudulent concealment. *Resolution Trust Corp.,* 865 F.Supp. at 1152.

*35 Whatever name the principle in *Lutherland* takes, it is clear that the facts in Plaintiffs' Complaint allege a similar situation, where the Board was dominated by participants of the pay-to-play scheme who actively concealed the nature of the financial arrangements from the public view. These facts are sufficiently analogous to the facts in *Lutherland* to permit Plaintiffs to proceed. Thus, I will not dismiss Count I against Defendants Makowski, Pizano, Crossin, Jones because the claim is not time-barred. However, this decision is can be revisited on a motion for summary judgment because the analysis requires a fact-specific evaluation to determine the applicability to a case. *Hayward,* 608 A.2d at 1043.

ASCO and Donald Williamson further assert that Court I should be dismissed because they never owed a fiduciary obligation to the Plan. ASCO and Donald Williamson assert that they do not met the definition of a fiduciary under title 20, section 7301 of the Pennsylvania Code, [FN24] which regulates how fiduciaries make investments for a principal. Pennsylvania's title 20 also contains a broader definition of fiduciary which is applied more generally. That definition "[i]ncludes personal representatives, guardians, and trustees, whether domiciliary or ancillary, individual or corporate, subject to the jurisdiction of the orphans' court division." 20 Pa. Conn. Stat. Ann. § 102. ASCO and Donald Williamson meet neither of these definitions.

> FN24. "The term 'fiduciary' as used in this chapter shall include an administer of a municipal pension or retirement plan and any other person whose fiduciary duties are, by statute, governed by the principles of this chapter." 20 Pa. Conn. Stat. Ann. § 7301. "The term 'fiduciary', as defined in [20 Pa. Conn. Stat. Ann. § 102] does not expressly include an 'attorney-in-fact' or an 'agent'." *In re Estate of Nicely,* No. 184 OF 1995, 2003 WL 22183940, at *5 (Pa.Com.Pl. April 1, 2003).

Aside from the statutory fiduciaries, there is a long-standing common law definition of fiduciary in Pennsylvania. *Basile v. H & R Block, Inc.,* 563 Pa. 359, 761 A.2d 1115 (Pa.2000) (*Basile I*); *see* discussion *Basile v. H & R Block, Inc.,* 777 A.2d 95, 101 (Pa.Super.Ct.2001) (*Basile II*). "An agency relationship is a fiduciary one, and the agent is subject to the duty of loyalty to act only for the principal's benefit." *Basile I,* 761 A.2d at 1120 (quoting *Sutliff v. Sutliff,* 515 Pa. 393, 528 A.2d 1318, 1323 (Pa.1987)). The agent [FN25] has a duty to act "with the utmost good faith," which includes a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 46-11   Filed 07/29/2005   Page 13 of 17

Not Reported in F.Supp.2d
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
**(Cite as: 2004 WL 1908221 (M.D.Pa.))**

Page 27

duty to disclose "all relevant information" to the principal. *Id.* (citing *Sylvester v. Beck,* 406 Pa. 607, 178 A.2d 755, 757 (Pa.1962)).

> FN25. The three elements of agency are: (1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) understanding of the parties that the principal is to be in control of the undertaking. *Basile I,* 761 A.2d at 1120 (quoting *Scott v. Purcell,* 490 Pa. 109, 415 A.2d 56, 60 (Pa.1980)).

The Complaint alleges that ASCO and Donald Williamson were "agents" of the Board and "investment advisors." (Doc. 1 ¶ 171.) As alleged in the Complaint, ASCO and Donald Williamson acted as agents of the Board and the Plan in many, if not all, of the twelve contracts at issue in this case. The further allegations that ASCO and Donald Williamson received commissions and withheld information from the Board and/or the Plan (e.g., the investment account statements were sent to ASCO, not the Board) amount to allegations of breaches of their common-law fiduciary duties. I find that the Complaint alleges a claim for which relief can be granted for breach of fiduciary duty against ASCO and Donald Williamson.

C) Count II--Aiding and Abetting Breach of Fiduciary Duty

*36 In Count II, Plaintiffs allege that various Defendants "aided and abetted" the breaches of fiduciary duties allegedly committed by Defendants Makowski, Pizano, Crossin, Jones, ASCO, and Donald Williamson. All Defendants named in Count II challenge the claim on the grounds that the cause of action is not recognized in Pennsylvania. Plaintiffs acknowledge that the Pennsylvania Supreme Court has not recognized aiding and abetting breach of fiduciary duty, but they urge the Court to expand the law.

For issues of state law, the Court acts as if it were a state court, applying the state law as the state has constructed it, and interpreting novel questions in the manner the Court believes the state high court would interpret the issue. *Rolick v. Collins Pine Co.,* 925 F.3d 661, 664 (3d Cir.1991). However, "it is not the role of a federal court to expand state law in ways not foreshadowed by state precedent." *City of Philadelphia v. Beretta U.S.A. Corp.,* 277 F.3d 415, 421 (3d Cir.2002) (citing *Camden County Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.,* 123 F.Supp.2d 245 (D.N.J.2000)). "[F]ederal courts may not engage in judicial activism. Federalism concerns require that we permit state courts to decide whether and to what extent they will expand state common law.... Our role is to apply the current law of the jurisdiction, and leave it undisturbed." *Leo v. Kerr-McGee Chem. Corp.,* 37 F.3d 96, 101 (3d Cir.1994) (quoting *City of Philadelphia v. Lead Indus. Ass'n,* 994 F.2d 112, 123 (3d Cir.1993)).

While some lower courts in Pennsylvania have recognized a cause of action for aiding and abetting breach of fiduciary duty, the number of cases is not overwhelming. *Lichtman v. Taufer,* 2004 WL 1632574 (Pa.Com.Pl. July 13, 2004) and *Koken v. Steinberg,* 825 A.2d 723 (Pa.Com.Pl.2003); *see also Burnside v. Abbott Lab.,* 351 Pa.Super. 264, 505 A.2d 973, 982-83 (Pa.Super.Ct.1985) (favorably discussing aiding and abetting, but then holding "this case is an improper vehicle for the initial consideration of this cause of action by a court of this Commonwealth").

I am hesitant to create an entirely new cause of action on the basis of two cases from the lower courts in Pennsylvania and dictum from a third court. I am not alone in my hesitation. In 2002, the United States District Court for the Western District of Pennsylvania dismissed a claim of aiding and abetting a breach of fiduciary duty on the same grounds. *Daniel Boone Area Sch. Dist. v. Lehman Brothers, Inc.,* 187 F.Supp.2d 400, 413 (W.D.Pa.2002). I am aware that the United States District Court for the Eastern District of Pennsylvania has been more willing to expand Pennsylvania law to include aiding and abetting breach of fiduciary duty. *Adena, Inc. v. Cohn,* 162 F.Supp.2d 351, 357-58 (E.D.Pa.2001); *Stone Street Servs., Inc. v. Daniels,* Civ. A. No. 00-1904, 2000 WL 1909373, at *3 (E.D.Pa. Dec.29, 2000); *Kaiser v. Stewart,* Civ. A. No. 96-6643, 1997 U.S. Dist. LEXIS 12788, at *53 (E.D.Pa. Aug. 20, 1997); *Schuylkill Skyport Inn, Inc. v. Rich,* Civ. A. No. 95-3128, 1996 U.S. Dist. LEXIS 12655, at *120 (E.D.Pa. Aug.21, 1996); *Wilbur W. Pierce v. Rosetta Corp.,* Civ. A. No. 88-5873, 1992 U.S. Dist. LEXIS 9065, at *6-7 (E.D. Pa. June 12, 1992). However, I am more persuaded by the caution urged by the Court of Appeals for the Third Circuit than I am by the non-biding decisions of the United States District Court for the Eastern District of Pennsylvania. Pennsylvania has not recognized a cause of action for aiding and abetting breach of fiduciary duty, and neither will I. Count II will be dismissed against all moving Defendants.

D) Count VIII--Unjust Enrichment

*37 The last claim in this action is for unjust enrichment against ASCO, Donald Williamson, FSC, Perfilio, JJI, JJJA, Joseph Joyce, John Joyce, Michael Joyce, LPL, Manulife, Nationwide, Wells, Wells REIT, Wells Investment, and FSI.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 46-11   Filed 07/29/2005   Page 14 of 17

Not Reported in F.Supp.2d                                                                                           Page 28
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
(Cite as: 2004 WL 1908221 (M.D.Pa.))

Unjust enrichment is ... an equitable doctrine[, with the following elements:] benefits conferred on one party by another, appreciation of such benefits by the recipient, and acceptance and retention of these benefits under such circumstances that it would be inequitable [or unjust] for the recipient to retain the benefits without payment of value.
*Allegheny Gen. Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 447 (3d Cir.2000) (quoting 16 SUMMARY OF PA. JUR.2D COMMERCIAL LAW § 2.2 (1994)) (alterations in original). Whether unjust enrichment is appropriate in a particular case "depends on the unique factual circumstances of each case." *Styer v. Hugo*, 422 Pa.Super. 262, 619 A.2d 347, 350 (Pa.Super.Ct.1993).

Plaintiffs allege that the Plan conferred the benefit of fees and commissions upon Defendants in this claim, and they allege that Defendants received those benefits. Plaintiffs further contend that these benefits were received unjustly because of the fraud and bribery involved in their procurement. At this early stage in the case, I cannot make the factual analysis required to determine whether the circumstances constitute an inequity warranting unjust enrichment, but it would be inappropriate to dismiss the equitable claim at this time. [FN26]

  FN26. An unjust enrichment claim can be an equitable stand-in a tort claim. *Allegheny Gen. Hosp.*, 228 F.3d at 446-7 (discussing *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 917-18 (3d Cir.1999), *cert. denied*, 528 U.S. 1105, 120 S.Ct. 844, 145 L.Ed.2d 713, (2000)). In the present case, Plaintiffs properly allege multiple tort claims, which strongly suggest that the unjust enrichment claim should remain in the action.

## CONCLUSION

In summary, I will dismiss Count III against FCS, Perfilio, Joyce Associates, Inc., JJI, John Joyce, William Joyce, Michael Joyce, Wells, Wells REIT, Wells Investment, FSI, Safeco, and Devonshire because the Complaint fails to state a claim upon which relief can be granted. Counts IV and VI will be dismissed against Defendant Joyce Associates, Inc. because the Complaint fails to state a claim upon which relief can be granted. Count V will be dismissed against all moving Defendants because the Complaint fails to state a claim upon which relief can be granted. Count II will be dismissed against all moving Defendants because there is no such cause of action. The remaining claims will not be dismissed. Because of the complexity of the case, I include the summary of the remaining claims:

```
(1)    Count I      Breach of fiduciary duty--Defendants Makowski, Pizano,
                    Crossin, Jones, ASCO, and Donald Williamson;

(2)    Count II     Aiding and abetting breach of fiduciary duty--Defendant LPL;

(3)    Count III    Violating RICO §  1962(c), conducting and participating in an
                    enterprise by engaging in a pattern of racketeering activity -
                    Makowski, Pizano, Crossin, Jones, ASCO, Donald Williamson,
                    Maria Williamson, JJJA, JJ & B, Joseph Joyce, Manulife,
                    Nationwide, and LPL;

(4)    Count IV     Violating RICO §  1962(d), conspiring to violate §  1962(c)--all
                    Defendants except Joyce Associates, Inc.;

(5)    Count V      Violating RICO §  1962(b), acquiring and maintaining an
                    interest or control of an enterprise engaged in a pattern of
                    racketeering activity--Defendant LPL;

(6)    Count VI     Violating RICO §  1962(d), conspiring to violate §  1962(b)--all
                    Defendants except Joyce Associates, Inc.;

(7)    Count VII    Violating the Investment Advisors Act--Defendants Donald
                    Williamson and ASCO.
```

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 29
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
**(Cite as: 2004 WL 1908221 (M.D.Pa.))**

```
(8)   Count        Unjust enrichment--Defendants ASCO, Donald Williamson,
      VIII
                   FSC, FSI, LPL, Manulife, Nationwide, Wells, Wells REIT, Wells
                   Investment, Perfilio, JJI, JJJA, Joseph Joyce, Michael Joyce,
                   and John Joyce.
```

**\*38** An appropriate Order follows.

### ORDER

NOW, this *24th* day of August, 2004, IT IS HEREBY ORDERED that Defendants' nine motions to dismiss (Docs. 46, 91, 93, 95, 96, 98, 100, 104, and 108) are GRANTED in part and DENIED in part as follows:

(1) Count II is DISMISSED against Nationwide Life Insurance Company, The Manufacturers Life Insurance Company (U.S.A.), Wells Real Estate Funds, Inc., Wells Investment Securities, Inc., Wells Real Estate Investment Trust, Inc., FSC Securities Corporation, First Security Investments, Inc., Safeco Life Insurance Corporation, Devonshire Capital Management, LLC, Joseph C. Perfilio, Joyce Associates, Inc., Joseph Joyce Insurance, Joseph J. Joyce Associates, Inc., Joyce Jackman & Bell Insurers, Joseph Joyce, Jr., William Joyce, Michael Joyce, John J. Joyce, and Maria Williamson;

(2) Count III is DISMISSED against Defendants FCS Securities Corporation, Joseph C. Perfilio, Joyce Associates, Inc., Joseph Joyce Insurance, John J. Joyce, William Joyce, Michael Joyce, Wells Real Estate Funds, Inc., Wells Real Estate Investment Trust, Inc., Wells Investment Securities, Inc., First Security Investments, Inc., Safeco Life Insurance Corporation, and Devonshire Capital Management, LLC;

(3) Count IV is DISMISSED against Defendant Joyce Associates, Inc.

(4) Count V is DISMISSED against all Defendants except Linsco Private Ledger Corporation;

(5) Count VI is DISMISSED against Defendant Joyce Associates, Inc.

(6) The motions are otherwise DENIED.

2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742

### Motions, Pleadings and Filings (Back to top)

• 2004 WL 2151588 (Trial Motion, Memorandum and Affidavit) Defendants Joyce Associates, Inc., Joseph Joyce Insurance, Joseph J. Joyce Associates, Inc., Joyce Jackman & Bell Insurors, Joseph Joyce, Jr., John J. Joyce and William Joyce ("Moving Defendants") Reply Brief in Support of Their Motion to Dismiss P laintiffs' Complaint Pursuant to F.R.C.P. 12(b)(6) (Mar. 09, 2004)

• 2004 WL 2151592 (Trial Motion, Memorandum and Affidavit) Reply Brief of Defendant Fsc Securities Corporation in Support of its Motion to Dismiss the Complaint (Mar. 09, 2004)

• 2004 WL 2151597 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law of Asco Financial Group, Inc, Donald P. Williamson, Maria Williamson, Joseph C. Perfilio, Michael Joyce and Devonshire Capital Management, LLC in Response to Plaintiff's Consolidated Opposition (Mar. 09, 2004)

• 2004 WL 2151602 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of the Motion to Dismiss of Defendants Thomas A. Makowski, Thomas P. Pizano, Frank Crossin, And Joseph Jones (Mar. 09, 2004)

• 2004 WL 2151607 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of the Motion to Dismiss by Defendants Wells Real Estate Funds, Inc., Wells Real Estate Investment Trust, Inc., And Wells Investment Securities, Inc. (Mar. 09, 2004)

• 2004 WL 2151620 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of the Motion to Dismiss of the Manufacturers Life Insurance Company (U.S.A.) Pursuant to F.R.C.P. 12(b)(6) (Mar. 09, 2004)

• 2004 WL 2151623 (Trial Motion, Memorandum and Affidavit) Revised Reply in Support of Motion of Defendant Nationwide Life Insurance Company to Dismiss Plaintiff's Complaint (Mar. 09, 2004)

• 2004 WL 2151575 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of First Security Investments Inc.'s Motion to Dismiss (Mar. 08, 2004)

• 2004 WL 2151578 (Trial Motion, Memorandum and Affidavit) Reply Brief of Safeco Life Insurance Company to Plaintiffs' Consolidated Brief in Opposition to Motions to Dismiss Filed by Multiple Defendants (Mar. 08, 2004)

• 2004 WL 2151584 (Trial Motion, Memorandum and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 46-11   Filed 07/29/2005   Page 16 of 17

Not Reported in F.Supp.2d                                                                                                           Page 30
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
**(Cite as: 2004 WL 1908221 (M.D.Pa.))**

Affidavit) Defendants Joyce Associates, Inc., Joseph Joyce Insurance, Joseph J. Joyce Associates, Inc., Joyce Jackman & Bell Insurors, Joseph Joyce, Jr., John J. Joyce and William Joyce ("Moving Defendants") Reply Brief in Support of Their Motion to Dismiss P laintiffs' Complaint Pursuant to F.R.C.P. 12(b)(6) (Mar. 08, 2004)

• 2004 WL 2151564 (Trial Motion, Memorandum and Affidavit) Brief in Support of Plaintiffs' Motion to Strike Duplicative Motion to Dismiss Filed by Defendant Michael Joyce (Feb. 17, 2004)

• 2004 WL 2151569 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Consolidated Brief in Opposition to Motions to Dismiss Filed by Multiple Defendants (Feb. 17, 2004)

• 2004 WL 2151560 (Trial Motion, Memorandum and Affidavit) Response of Defendants Wells Real Estate Funds, Inc., Wells Real Estate Investment Trust, Inc., and Wells Investment Securities, Inc. to Plaintiffs' Emergency Motion for a Temporary Stay (Jan. 21, 2004)

• 2004 WL 2151553 (Trial Motion, Memorandum and Affidavit) Response of Defendants Thomas Makowski, Thomas Pizano, Frank Crossin, And Joseph Jones to Stephen Flood's Emergency Motion for a Temporary Stay (Jan. 20, 2004)

• 2004 WL 2151551 (Trial Motion, Memorandum and Affidavit) Brief in Support of Plaintiffs' Emergency Motion for Temporary Stay Pending Resolution of State Court Injunction Proceedings (Jan. 16, 2004)

• 2004 WL 2151545 (Trial Motion, Memorandum and Affidavit) Defendant Linsco Private Ledger Corporation's Reply in Support of its Motion to Compel Arbitration and to Stay Proceedings (Jan. 05, 2004)

• 2003 WL 23788233 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of the Motion to Dismiss of the Manufacturers Life Insurance Company (U.S.A.) Pursuant to F.R.C.P. 12(b)(6) (Dec. 29, 2003)

• 2003 WL 23788227 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief in Opposition to Defendant Linsco Private Ledger Corporation's Motion to Compel Arbitration and to Stay Proceedings (Dec. 24, 2003)

• 2003 WL 23788205 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Support of Motion to Dismiss of Asco Financial Group, Inc, Donald P. Williamson, Maria Williamson, Joseph C. Perfilio, Michael Joyce and Devonshire Capital Management, LLC Pursuant to Frcp 12(b)(6) (Dec. 22, 2003)

• 2003 WL 23788210 (Trial Motion, Memorandum and Affidavit) Brief in Support of the Motion to Dismiss by Defendants Wells Real Estate Funds, Inc., Wells Real Estate Investment Trust, Inc., And Wells Investment Securities, Inc. (Dec. 22, 2003)

• 2003 WL 23788217 (Trial Motion, Memorandum and Affidavit) Defendants Joyce Associates, Inc., Joseph Joyce Insurance, Joseph J. Joyce Associates, Inc., Joyce Jackman & Bell Insurors, Joseph Joyce, Jr., John J. Joyce, William Joyce and Michael Joyce's ("Moving Defendants") Memorandum of Law in Support of Th eir Motion to Dismiss Plaintiffs' Complaint Pursuant to F.R.C.P. 12(b)(6) (Dec. 22, 2003)

• 2003 WL 23788221 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion of Defendant Nationwide Life Insurance Company to Dismiss Plaintiff's Complaint (Dec. 22, 2003)

• 2003 WL 23788200 (Trial Motion, Memorandum and Affidavit) Safeco Life Insurance Company's Memorandum of Law in Support of its Motion to Dismiss Complaint or, Alternatively, For Summary Judgment (Dec. 19, 2003)

• 2003 WL 23788197 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of the Motion to Dismiss of Defendants Thomas A. Makowski, Thomas P. Pizano, Frank Crossin, And Joseph Jones (Dec. 12, 2003)

• 2003 WL 23788193 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief in Opposition to Motion to Dismiss of Defendants Asco Financial Group, Inc., Donald P. Williamson, Maria Williamson, Joseph C. Perfilio, Michael Joyce and Devonshire Capital Management, LLC (Dec. 05, 2003)

• 2003 WL 23788177 (Trial Pleading) Complaint (Oct. 09, 2003)

• 3:03cv01803 (Docket) (Oct. 09, 2003)

• 2003 WL 23788246 (Trial Motion, Memorandum and Affidavit) Defendant First Security Investments, Inc.'s Opposition to Plaintiff's Emergency Motion for a Temporary Stay (2003)

• 2003 WL 23788250 (Trial Motion, Memorandum and Affidavit) Defendants, Linsco Private Ledger Corporation and Fsc Securities Corporation's Response to Plaintiff's Emergency Motion for a Temporary Stay of Proceedings

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  Page 31
2004 WL 1908221 (M.D.Pa.), Fed. Sec. L. Rep. P 92,899, RICO Bus.Disp.Guide 10,742
**(Cite as: 2004 WL 1908221 (M.D.Pa.))**

(2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.