# EXHIBIT 24

Westlaw.

Not Reported in F.Supp.  
1997 WL 476455 (E.D.Pa.), RICO Bus.Disp.Guide 9379  
(Cite as: 1997 WL 476455 (E.D.Pa.))

Page 1

▷

**Motions, Pleadings and Filings**

United States District Court, E.D. Pennsylvania.  
Linda S. KAISER, et al.  
v.  
Allen W. STEWART, et al.  
**No. Civ. A. 96-6643.**

Aug. 19, 1997.

Gerald E. Arth, Ira B. Silverstein, Lisa A. Carney, Fox Rothschild, O'Brien & Frankel, LLP, Phila, PA, for Linda S. Kaiser, Insurance Commisioner of the Commonwealth of Pennsylvania, in her capacity as Liquidator of Summit National Life Insurance Company c/o Office of Liquidations and Special Funds, Linda S. Kaiser, Insurance Commisioner of the Commonwealth of Pennsylvania, in her capacity as Liquidator of EBL Life Insurance Company c/o Office of Liquidations and Funds, Plaintiff.

James A. Young, Mary Ellen Nepps, Timothy C. Russell, Kenneth I. Trujillo, Christie, Pabarue, Mortensen and Young, Phila, PA, Creed C. Black, Jr., Phila, PA, Elizabeth J. Chambers Cozen and O'Connor, Phila, PA, Daniel J. Digiacomo, Digiacomo & Baffa, Phila, PA, for Defendants.

Kenneth I. Trujillo, Christie, Pabarue, Mortensen and Young, Phila, PA, Linda Dale Hoffa, U.S. Attorney's Office, Phila, PA, Catherine M. Recker, Welsh and Recker, P.C., Phila, PA, Wiliam Kaufmann, United States of America, Robert E. Welsh, Jr., Movant.

Bruce R. Genderson, John W. Vardaman, Gregory B. Craig, George A. Borden, Steven M. Umin, Williams and Connolly, Washington, DC, John H. Lewis, Jr., Morgan, Lewis and Bockius, Phila, PA, Morgan, Lewis & Bockius, L.L.P., David L. Harbaugh, Defendant

Trust Under Agreement Dated January 1, 1993; Allen W. Stewart; Settlor F/B/O, Geofrey S. Stewart, Joseph A. O'Cannor, Trustee, Philadelphia, PA, Prose.

Trust Under Agreement Dated January 1, 1993; Allen W. Stewart, Settlor F/B/O William Tamaccio,

Joseph A. O'Cannor, Jr., Trustee, Philadelphia, PA, Prose.

**MEMORANDUM**

BARTLE, District Judge.

*1 This is a civil action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § § 1961 et seq., with several pendent state law claims.. Plaintiff Linda Kaiser, the Insurance Commissioner of Pennsylvania ("Insurance Commissioner"), alleges that defendant Allen Stewart ("Stewart"), with the help of the other defendants, masterminded a scheme to acquire and siphon-off the assets of Summit National Life Insurance Company ("SNLIC") and Equitable Beneficial Life Insurance Company ("EBL"), two Pennsylvania domiciled insurance companies now in liquidation.

**I**

In an Order dated May 21, 1997, this court dismissed the first amended complaint of the Insurance Commissioner who had brought suit in her capacity as Liquidator of the two insurance companies. We held that she did not have standing to pursue the RICO claims for the persons on whose behalf she was suing, namely creditors, policyholders, shareholders, and members of SNLIC and EBL. Any injuries suffered by these persons were not proximately caused by the defendants' alleged RICO violations. That is, these persons were not direct victims and consequently did not have a claim under RICO. See Holmes v. Sec. Investor Protection Corp., 503 U.S. 258, 268-69, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). As we explained, the only direct victims, as set forth in the amended complaint, were the two insurers themselves. Unfortunately, the Insurance Commissioner had not sued on their behalf. Since no federal claim existed, we declined to exercise supplemental jurisdiction over her state law claims. 28 U.S.C. § 1367; see Kaiser v. Stewart, 965 F.Supp. 684 (E.D.Pa.1997).

Presently before the court is the motion of the Insurance Commissioner for reconsideration of our May 21, 1997 Order. She does not now contest our analysis on standing. Instead, she argues that we misread her amended complaint because, in her view, the insurers were included as victims on whose behalf she had instituted the action. We disagree.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF    Document 46-15    Filed 07/29/2005    Page 3 of 19

Not Reported in F.Supp.    Page 2
1997 WL 476455 (E.D.Pa.), RICO Bus.Disp.Guide 9379
(Cite as: 1997 WL 476455 (E.D.Pa.))

Her amended complaint clearly stated that she sought "to prosecute any action which may exist on behalf of the creditors, members, policyholders or shareholders" of SNLIC and EBL. Reinforcing this averment, she cited the statutory provision under Pennsylvania law authorizing her to act for these specific classes of persons. See Pa.Stat.Ann. tit. 40, § 221.23(13) (West 1992). [FN1] In contrast, she neither named the insurers themselves as entities for whose benefit she was suing, nor referenced the separate Pennsylvania statutory provisions which authorize her to stand in the insurers' shoes. See id. §§ 221.23(6), 221.23(12), 221.26(b). [FN2]

> FN1. This statute states that "[t]he Liquidator shall have the power: ... (13) [t]o prosecute any action which may exist in behalf of the creditors, members, policyholders or shareholders of the insurer against any officer of the insurer, or any other person." Pa.Stat.Ann. tit. 40, § 221.23(13) (West 1992).
>
> FN2. Under § 221.23, the Liquidator has the power to:
> (6) collect all debts and moneys due and claims belonging to the insurer which it is economical to collect, wherever located, and for this purpose to institute timely action in other jurisdictions, in order to forestall garnishment and attachment proceedings against such debts; to do such other acts as are necessary or expedient to collect, conserve or protect its assets or property
> as well as to "(12) continue to prosecute and to institute in the name of the insurer or in his own name any and all suits and other legal proceedings, in this Commonwealth or elsewhere, and to abandon the prosecution of claims he deems unprofitable to pursue further." Section 221.26(b) states that:
> [t]he liquidator may, upon or after an order for liquidation, within two years or such additional time as applicable law may permit, institute an action or proceeding on behalf of the estate of the insurer upon any cause of action against which the period of limitation fixed by applicable law has not expired.

Nonetheless, plaintiff maintains a fall back position.. She requests the opportunity to amend her pleading for a second time to assert that she is suing on behalf of SNLIC and EBL. [FN3] Rule 15 of the Federal Rules of Civil Procedure states in pertinent part that:

> FN3. The Insurance Commissioner also claims that if given the chance to amend, she would "leave no doubt as to the identity of the enterprise(s) for each claim." Liquidator's Mot. for Reconsideration at 9-10. As the enterprises were clearly named in the first amended complaint, we see no need to address whether she can sufficiently identify the enterprises in another pleading.

[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served .... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

*2 It is within a district court's discretion to grant or deny the right to amend a complaint, but reasons must be given for a denial of that right. Forman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Reasons to deny an amendment include "undue delay, bad faith, dilatory motive, prejudice, and futility." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997).

We first examine whether the Insurance Commissioner's proposed amendment to her amended complaint would be futile. In assessing futility, we apply the standard of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Id. That is, we accept all well-pleaded facts of the proposed amended complaint as true and draw any reasonable inferences from such allegations in plaintiff's favor. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1391 (3d Cir.1994). An amendment would be futile if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" contained in the newly amended complaint. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

II

In accordance with 18 U.S.C. § 1964(c), the Insurance Commissioner has asserted civil RICO claims under 18 U.S.C. §§ 1962(b), 1962(c), and 1962(d). Thus, we must decide whether she would state any valid RICO claims if she were suing on behalf of the victim insurance companies.

A. § 1962(b)

Count I of the amended complaint alleges a violation of 18 U.S.C. § 1962(b) which states:

[i]t shall be unlawful for any person through a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Two key terms contained in § 1962(b), "interest" and "control," are not defined in the RICO statute. At least two circuits have opined that control connotes more than just formal control "by acquiring a majority of the stock of a corporation." *See Ikuno v. Yip,* 912 F.2d 306, 310 (9th Cir.1990); *Sutliff, Inc. v. Donovan Co.,* 727 F.2d 648, 653 (7th Cir.1984), *overruled on other grounds by, Hammes v. AAMCO Transmission. Inc.,* 33 F.3d 774, 782 (7th Cir.1994). Several courts have gone so far as to say that control may include involvement in management and designation as an officer or director. *Ikuno,* 912 F.2d at 310; *Cincinnati Gas & Elec. Co. v. General Elec. Co.,* 656 F.Supp. 49, 85 (S.D.Ohio 1986). However, according to one decision in our district, while the control need not be formal such as through ownership of a majority of corporate stock, it still must be similar to "that type of influence over the operation or management of an enterprise." *T.I. Constr. Co., Inc. v. Kiewit Eastern Co.,* No. CIV. A. 91-2638, 1992 WL 195425, at *6 (E.D.Pa. Aug.5, 1992). After an extensive analysis of the statutory language and legislative history, the district court for the Western District of Pennsylvania similarly explained that control under § 1962(b) must be in the "nature of the control one gains through the acquisition of sufficient stock to affect the composition of the board of directors." *Moffatt Enter., Inc. v. Borden, Inc.,* 763 F.Supp. 143, 147 (W.D.Pa.1990). Agreeing with the two district court decisions in this circuit, we conclude that control of an enterprise means more than simply being a manager or a corporate officer. In common parlance, control connotes domination. It signifies the kind of power that an owner of 51% or more of an entity would normally enjoy.

*3 Section 1962(b) also precludes the acquisition or maintenance of "any interest" in an enterprise through racketeering activity. "Interest" has been defined as a "proprietary one." *Guerrier v. Advest, Inc.,* No. CIV. A. 90-709, 1993 WL 90404, at *10 (D.N.J.1993); *T.I. Constr.,* 1992 WL 195425, at * 5; *Moffatt,* 763 F.Supp. at 147; *see also Northeast Jet Ctr., Ltd. v. Lehigh-Northampton Airport Auth.,* 767 F.Supp. 672, 683 (E.D.Pa.1991). In *Moffatt,* the court stated that an example of a proprietary interest would be the purchase of stock. *Moffatt,* 763 F.Supp. at 147. The Second Circuit uses a somewhat broader definition, stating that an interest "encompasses all property rights and is understood to refer to a right, claim, title or legal share in the enterprise." *Welch Foods, Inc. v. Gilchrist,* No. CIV. A. 93- 0641E(F), 1996 WL 607059, at *7 (W.D.N.Y. Oct.18, 1996); *accord Morin v. Trupin,* 832 F.Supp. 93, 99 (S.D.N.Y.1993).

Regardless of the exact definition of control or interest, "[m]ere participation in an enterprise does not plead a violation of subsection 1962(b)." *Welch,* 1996 WL 607059, at *7. After specifying a defendant's interest in or control of an enterprise, plaintiff must allege a "nexus between the interest [acquired] and the alleged racketeering activities," that is, it must be shown that the interest or control resulted from racketeering activity. *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1190-91 (3d Cir.1993). "It is not enough for the plaintiff merely to show that a person engaged in racketeering has an otherwise legitimate interest in an enterprise." *Id.* In addition, plaintiff needs to allege injury resulting from defendants' acquisition of any interest in or control of a RICO enterprise "independent from that caused by the pattern of racketeering." *Id.* This is labeled as an acquisition injury. Under § 1962(b), the enterprise typically is the victim of the racketeering activity. *National Org. for Women v. Scheidler,* 510 U.S. 249, 114 S.Ct. 798, 804, 127 L.Ed.2d 99 (1994).

The Insurance Commissioner alleges that defendant Stewart, along with defendants David Harbaugh ("Harbaugh"), Morgan, Lewis & Bockius ("ML & B"), Jeanne Fletcher ("Fletcher"), Nellie Morris ("Morris"), Lucille Werts Connors ("Connors"), and several Stewart-owned entities, acquired or maintained an interest in or control of the enterprise, SNLIC. [FN4] Through a pattern of racketeering activity, the defendants acquired or maintained an interest in or control of SNLIC. As a result of the acquisition, SNLIC was rendered insolvent. Afterwards, the defendants continued to disguise the insolvency of SNLIC, by defrauding SNLIC itself, and EBL, among others. To state a viable claim on behalf of SNLIC and EBL against these defendants under § 1962(b), the Insurance Commissioner must plead that through a pattern of racketeering activity, each defendant acquired or maintained an interest in or control of the enterprise, in this case SNLIC.

> FN4. The Stewart-owned entities named as defendants are: (1) Summit Company; (2) American Insurance Managers, Inc.; (3) Bankers Equity Life Insurance Company; (4) Bankers Equity Realty; (5) Erin Group

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Administrators, Inc.; (6) Cathedral Life Insurance Company; (7) Pacific Coast Underwriters, Inc.; (8) Covenant Realty, Ltd.; (9) Tartan Management Corporation; (10) Tsunami Corporation; and (11) Roe Corporations I-XXX, being unknown corporate entities owned and/or controlled by Stewart.

*4 In their response to the motion for reconsideration, all defendants assert that the Insurance Commissioner does not and cannot state a § 1962(b) claim against them because she fails to set forth what interest in or control of the enterprise they acquired or maintained and fails to aver a nexus between the racketeering acts and this interest or control. We will address the defendants separately.

The amended complaint asserts that Stewart possessed the kind of control "sufficient [ ] to affect the composition of the board of directors." *Moffatt,* 763 F.Supp. at 147. Paragraph 23 states that "SNLIC was owned and/or controlled by Stewart." Paragraph 29 alleges that "Stewart established an association of confederates, entities, partners and law firms for the purpose of **enabling Stewart** to acquire and maintain control over a complex amalgam of insurance companies and real estate-related interests." (emphasis added). According to the Insurance Commissioner, this association had multiple purposes, including **"to enable Stewart** to acquire and control the businesses," "to mask **Stewart's ownership and control** over the businesses and the association," and "to create high-paying jobs for his confederates." ¶ 29 (emphasis added). The Insurance Commissioner further avers that it was Stewart who "directed and controlled the association by making all strategic decisions which he then conveyed to the other named defendants. These defendants, in turn, directed and controlled the actions of the businesses' employees who carried out their directives." ¶ 30. In essence, the amended complaint claims that it was Stewart himself who dominated SNLIC. Because Stewart allegedly acquired SNLIC as a result of his racketeering acts of mail and wire fraud, he is a proper § 1962(b) defendant.

The Insurance Commissioner asserts that while Stewart was gaining control of SNLIC, he was acting in the "ordinary course of his partnership at ML & B," or "within the scope of [his] authority at ML & B." *See. e.g.* ¶¶ 33, 37. On the theory of respondeat superior liability, she contends that ML & B is also a proper § 1962(b) defendant. The Insurance Commissioner relies on *Petro-Tech, Inc. v. Western Company of North America,* 824 F.2d 1349, 1358, 1361 (3d Cir.1987), a case under §§ 1962(a) and (c), in which the Third Circuit stated that "the doctrine of respondeat superior may be applied under RICO where the structure of the statute does not otherwise forbid it." (emphasis added).

Respondeat superior liability, however, does not fit here. The Insurance Commissioner does not contend that Stewart was acting on behalf of, or at the behest of, ML & B when he was acquiring SNLIC. There is no allegation that ML & B, through Stewart, sought to acquire an interest in or control of SNLIC or that Stewart was merely its agent in this quest. The thrust of the amended complaint is quite to the contrary. Paragraphs 34-46, describing the acquisition of SNLIC, reveal that Stewart was out for himself. Originally, ML & B represented its client, Richard Fanslow ("Fanslow"), in the attempted acquisition of SNLIC. ¶ 35. When the Ohio Insurance Department would not approve the sale, Stewart, "who was then acting and continued to act as Fanslow's attorney in the ordinary course of his partnership at ML & B, proposed stepping into his client's shoes." ¶ 37. The amended complaint further alleges that when Stewart stepped into the transaction he "intended to consummate the scheme on his own behalf," and that he was the "ultimate acquiring principal ." ¶¶ 39, 44 (emphasis added). ML & B simply represented Fanslow, Virick, [FN5] and then SNLIC after Stewart acquired it. ¶ 44. Merely providing legal advice and services to a client does not equal acquiring or maintaining an interest in or control of it. *Morin,* 832 F.Supp. at 99; *Martin v. Brown,* 785 F.Supp. 313, 317-18 (W.D.Pa.1990). The Insurance Commissioner appears to be seeking to recover from ML & B solely because Stewart was an ML & B partner and used its resources at the time of his allegedly improper actions. This is not sufficient to create § 1962(b) liability. Plaintiff does not have a claim for relief against ML & B under Count I.

> FN5. Virick was a shell corporation established by Fanslow to acquire SNLIC. ¶ 35.

*5 The Insurance Commissioner also names Fletcher, Morris, and Connors as § 1962(b) defendants. Paragraph 153 of the amended complaint blanketly asserts that all the § 1962(b) defendants acquired and maintained interest in and control of the SNLIC enterprise while paragraph 143 states that SNLIC was "controlled by Stewart and his

associates until July 26, 1993." To state a RICO claim, however, a pleading must contain more than conclusory allegations of this kind. See _Glessner v. Kenny,_ 952 F.2d 702, 714 (3d Cir.1991), _overruled on other grounds by, Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.,_ 46 F.3d 258 (3d Cir.1995). The amended complaint simply avers that Fletcher was the treasurer and a director of SNLIC, that Morris was in-house counsel for SNLIC, as well as one of its directors and/or officers, and that Connors was the executive vice president, chief financial officer, and a director of SNLIC. ¶ ¶ 8-10. Nowhere are these defendants alleged to have owned any stock or otherwise possessed a proprietary interest in this insurance company. Nor is there anything to indicate that they had the type of control of the enterprise that a 51% owner would enjoy. While they may have had power over their subordinates, this is not the kind of control contemplated by § 1962(b). Officers and managers always have some supervisory authority over an enterprise's employees, but this does not mean that they control the enterprise. The amended complaint does not, and with the proposed amendment would not, state a § 1962(b) claim against Fletcher, Morris, and Connors.

As to the Stewart entities, only one allegedly acquired or maintained an interest in or control of SNLIC. Bankers Equity Life Insurance Company (now Bankers Equity Realty), one of the Stewart entities, owned SNLIC until January 1, 1993. ¶ 17c. [FN6] However, the Insurance Commissioner asserts no facts showing that there was a nexus between any racketeering acts and the party's interest in or control of SNLIC. The Stewart entities are not proper § 1962(b) defendants.

> FN6. One of the Insurance Commissioner's briefs asserts that SNLIC was ultimately owned by Summit Company, one of the Stewart entities. Plaintiffs' Omnibus Mem. of Law in Opp'n to the Motions to Dismiss the First Am. Complaint at 6. We cannot find this allegation in the amended complaint, which controls.

Finally, there is the defendant Harbaugh, an attorney with ML & B. According to the amended complaint, the Insurance Commissioner is suing him because he "represented and performed legal services for SNLIC, EBL [ ] and various other Stewart-owned or -controlled entities." ¶ 6. As noted above, the rendering of legal advice and services, by itself, is not enough to confer § 1962(b) liability. _Morin,_ 832 F.Supp. at 99; _Martin,_ 785 F.Supp. at 317-18. The amended complaint lacks any allegations that Harbaugh owned stock, possessed any other ownership rights, or exercised influence akin to that of a person owning the majority of SNLIC stock. [FN7] Mere participation in the enterprise does not suffice. _Welch,_ 1996 WL 607059, at *7. Further, even if Harbaugh had an interest in or control of SNLIC, there is no averment that this interest or control was a result of racketeering activity. There can be no valid § 1962(b) claim against Harbaugh.

> FN7. Harbaugh is included in ¶ 30 as one of the defendants who received instructions from Stewart and then controlled SNLIC employees in carrying out his directives.

*6 The defendants further contend that it would be futile to allow the Insurance Commissioner to amend her amended complaint to sue on behalf of SNLIC and EBL with respect to the § 1962(b) claim because she has failed to plead their reliance upon the predicate acts of mail and wire fraud. While it is not necessary to plead or prove reliance to recover under federal mail or wire fraud statutes, the plain language of 18 U.S.C. § 1964(c), which confers standing on civil RICO plaintiffs, seems to require reliance. _Brandenburg v.. Seidel,_ 859 F.2d 1179, 1188 n. 10 (4th Cir.1988). Section 1964(c) states that a person may sue if "injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c) (emphasis added). In other circuits, plaintiffs must plead and prove reliance to state a RICO case predicated on mail and wire fraud. See _Pelletier v. Zweifel,_ 921 F.2d 1465, 1499-1500 (11th Cir.), _cert. denied,_ 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991); _Brandenburg,_ 859 F.2d at 1188.

However, that does not appear to be the law in this circuit. It is true that courts in this district did require reliance prior to the Third Circuit's decision in _Tabas v. Tabas,_ 47 F.3d 1280 (3d Cir.), _cert. denied,_ 515 U.S. 1118, 115 S.Ct. 2269, 132 L.Ed.2d 275 (1995). See _Masnik v. Bolar Pharm. Co.,_ No. CIV. A. 90-4086, 1991 WL 138331, at *6 (E.D.Pa. July 18, 1991); _Rosenstein v. CPC Int'l, Inc.,_ No. CIV. A. 90-4970, 1991 WL 1783, at *4 (E.D.Pa. Jan.8, 1991). [FN8] But, in a footnote in _Tabas,_ the Third Circuit stated:

> FN8. These cases dealt with § § 1962(a) and (c) of RICO although their discussion of reliance was not limited to any particular section.

[d]efendants' assertion that the mailings involved

Case 1:05-cv-00165-JJF   Document 46-15   Filed 07/29/2005   Page 7 of 19

Not Reported in F.Supp.    Page 6
1997 WL 476455 (E.D.Pa.), RICO Bus.Disp.Guide 9379
(Cite as: 1997 WL 476455 (E.D.Pa.))

must themselves be relied upon by the victim of the fraud in order for a RICO claim to be established is inaccurate. As this Court stated in *Kehr Packages,* "completely 'innocent' mailings can satisfy the mailing element." Indeed, mailings "designed to lull [[[fraud] victims into a false sense of security, postpone their ultimate complaint to the authorities, and therefore make the apprehension of the defendants less likely than if no mailings had taken place" have been found to constitute actionable mail fraud.
*Tabas, 47 F.3d at 1294 n. 18.* [FN9] We can find only one court in this district which has discussed reliance after *Tabas.* It held that *Tabas* eliminated reliance on the underlying mailings in a RICO case. *Rodriguez v. McKinney,* 878 F.Supp. 744, 749 (E.D.Pa.1995).

> FN9. One district court did eliminate the reliance requirement prior to *Tabas.* See *Prudential Ins. Co. v. United States Gypsum Co.,* 828 F.Supp. 287, 294 (D.N.J.1993). And another agreed. *American Health Sys., Inc. v. Visiting Nurse Ass'n of Greater Philadelphia,* No. CIV. A. 93- 542, 1994 WL 314313, at *7 (E.D.Pa. June 29, 1994).

Defendants appear to be correct that the Insurance Commissioner does not allege reliance by SNLIC or EBL on any of the mailings or wires. Although these mailings and wires related to the financial operations of SNLIC, they were targeted primarily to insurance regulators and many were sent from SNLIC itself. One of the intended victims according to the amended complaint, however, was SNLIC. Obviously, SNLIC could not have been defrauded to the extent it originated the mailings or wires. Moreover, according to the appendix of predicate acts, no mails or wires were sent to EBL. Nonetheless, since reliance is not required in the Third Circuit, it is not necessary for a plaintiff to plead this element for a RICO claim.

*7 The defendants also claim that the § 1962(b) RICO claim is barred by the four year statute of limitations. See *Glessner,* 952 F.2d at 706. Such a contention is appropriate in a motion to dismiss only if the "complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Oshiver,* 38 F.3d at 1384 n. 1. Under the complicated factual allegations of this case it is certainly not clear on the face of the amended complaint that any defendant's interest in or control of SNLIC, to the extent it existed, occurred and ceased over four years ago.

In summary, it would be futile for the Insurance Commissioner, suing on behalf of SNLIC and EBL, to allege a § 1962(b) violation as to defendants ML & B, Fletcher, Morris, Connors, the Stewart entities, or Harbaugh. We conclude that the Insurance Commissioner would have a valid § 1962(b) claim on behalf of SNLIC and EBL against Stewart only. [FN10]

> FN10. The defendants asserted that the Insurance Commissioner failed to state an acquisition injury. *Lightning Lube,* 4 F.3d at 1190-91. This argument is without merit as the amended complaint clearly states that as a result of the acquisition, SNLIC was rendered insolvent. ¶ 154. Moreover, EBL was also rendered insolvent as a result of SNLIC's acquisition. ¶¶ 158a, 63.

**B. § 1962(c)**

Count III of the amended complaint contains a claim under § 1962(c) of RICO. That provision reads:
> [i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The § 1962(c) defendants are Stewart, Harbaugh, ML & B, Fletcher, Morris, Connors, Geoffrey Stewart ("G.S.Stewart"), June O'Brien ("O'Brien"), and the Stewart entities. Unlike the § 1962(b) count where SNLIC alone was named as the enterprise, the Insurance Commissioner identifies the § 1962(c) enterprise as SNLIC or EBL. As a backup, the Insurance Commissioner names as the enterprise an association in fact consisting of Stewart, Harbaugh, ML & B, Fletcher, Morris, Connors, G.S. Stewart, O'Brien, and the Stewart entities. Under RICO, the enterprise can be "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). [FN11]

> FN11. Injuries redressed under this section are caused by the predicate acts themselves. This is unlike § 1962(b) which required that a plaintiff plead an acquisition injury separate and apart from the predicate racketeering acts. *Lightning Lube,* 4 F.3d at 1190-91.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

While the enterprise and the victim may be the same for purposes of § 1962(b), this is not true for § 1962(c) claims. Here, the enterprise and the victim must be separate. *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258, 267 (3d Cir.1995). Hence, neither the victim SNLIC nor the victim EBL can be the enterprise. [FN12] We must therefore determine whether the Insurance Commissioner can state a viable § 1962(c) claim based on her alternative position that the association in fact constituted the enterprise.

> FN12. In the companion criminal case, we held that there could be some overlap between the victim and the enterprise. *United States v. Stewart,* 955 F.Supp. 385, 387 (E.D.Pa.1997). No such partial overlap exists here.

In addition to the requirement that the victim and the enterprise may not be the same, § 1962(c) dictates that the defendant "persons" be separate and distinct from the named enterprise. Section 1962(c) prohibits certain activity by a "person **employed by or associated with** any enterprise." [FN13] (emphasis added). Under this formulation those employed by or associated with the enterprise are necessarily different from the enterprise itself.

> FN13. A "person" under RICO is "any individual or entity capable of holding a legal or beneficial interest in property ." 18 U.S.C. § 1961(3).

*8 In *Jaguar Cars,* the Court of Appeals reexamined this distinctiveness requirement in light of two recent Supreme Court cases, *National Organization for Women v. Scheidler,* 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) and *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993). Plaintiff Jaguar Cars, Inc. alleged that it had been defrauded by the owners of its Royal Oaks Dealership into paying for warranty repairs which were never actually made. *Jaguar Cars,* 46 F.3d at 261. Naming the Royal Oaks Dealership as the enterprise, Jaguar sued the owners of that dealership under § 1962(c) of RICO. *Id.* at 260, 264-65. Under earlier Third Circuit cases, Royal Oaks Dealership could not have been considered a proper RICO enterprise because a corporation was not deemed to be separate from its owners or agents. *See Glessner,* 952 F.2d at 710; *Brittingham v. Mobil Corp.,* 943 F.2d 297, 302 (3d Cir.1991). However, after analyzing these and other prior decisions, the Court of Appeals declared that "this court's application of the distinctiveness requirement to shield corporate officers and directors from § 1962(c) liability does not survive *Reves.*" *Jaguar Cars,* 46 F.3d at 265. Nevertheless, the court did not otherwise eliminate the requirement that the defendant persons and the enterprise must be distinct. *Id.* at 268. The Court of Appeals stated:

> We are thus left with the question: what remains of the statutorily-based distinctiveness requirement after *Reves* and *Scheidler?* As we have stated, this requirement originates in the statute's textual directive that § 1962(c) liability requires conduct by defendant "persons" acting through an "enterprise." In this regard, we conclude that the essential holding of *Enright* [*B.F. Hirsch v. Enright Refining Co.,* 751 F.2d 628 (3d Cir.1984) ] remains undisturbed--a claim simply against one corporation as both "person" and "enterprise" is not sufficient. Instead, a viable § 1962(c) action requires a claim against **defendant "persons" acting through a distinct % 7 F'enterprise.'DDD'** But, alleging conduct by officers or employees who operate or manage a corporate enterprise satisfies this requirement.
> *Id.* (emphasis added).

Courts in our district have since grappled with the breadth of this modified distinctiveness requirement. Some have allowed a total overlap between the defendant persons and the association in fact enterprise. *See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,* No. CIV. A. 95-1698, 1995 WL 455969, at *6-7 (E.D.Pa. July 27, 1995); *Brown v. Siegel,* No. CIV. A. 94-1829, 1995 WL 66860, at *6 (E.D.Pa. Feb.13, 1995). Another court allowed no overlap at all. *Klein v. Boyd,* No. CIV. A. 95-5410, 1996 WL 230012, at *11 (E.D.Pa. May 3, 1996). Still another reached a midway point allowing some overlap between the defendants comprising the association in fact enterprise and the defendant persons. *Schuylkill Skyport Inn, Inc. v. Rich,* No. CIV. A. 95-3128, 1996 WL 502280, at *31-32 (E.D.Pa. Aug.21, 1996).

*9 The Insurance Commissioner here alleges that Stewart, Harbaugh, ML & B, Fletcher, Morris, Connors, G.S. Stewart, O'Brien and the Stewart entities were the defendant "persons." She also alleges that these very same persons constituted the association in fact enterprise. The overlap between the wrongdoers and the enterprise is complete. Where the wrongdoers and an association in fact enterprise are identical, we conclude that the Insurance Commissioner, by definition, cannot satisfy the distinctiveness requirement of § 1962(c).

See *Jaguar Cars,* 46 F.3d at 268.

Simply put, the enterprise under § 1962(c) cannot be either the victim or the wrongdoer. Since none of the three alleged enterprises (SNLIC, EBL, and the association in fact) would be separate and apart from *both* the victims (SNLIC and EBL) and the wrongdoers (those named as the association in fact), the Insurance Commissioner's proposed amendment to the § 1962(c) averments to sue on behalf of SNLIC and EBL would be futile. In short, the Insurance Commissioner cannot state a claim for relief under this count. As a result, we need not reach defendants' remaining arguments precluding a § 1962(c) claim.

### C. § 1962(d)

Counts II and IV of the amended complaint are conspiracy counts. They allege violations of § 1962(d) which states, "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." Count II alleges a conspiracy with respect to § 1962(b) while Count IV alleges a conspiracy with respect to § 1962(c).

A conspiracy claim predicated on § 1962(b) or § 1962(c) cannot stand if the underlying allegations under those sections do not set forth a valid claim. *Rehkop v. Berwick Healthcare Corp.,* 95 F.3d 285, 290 (3d Cir.1996); *Lightning Lube,* 4 F.3d at 1191. [FN14] Since plaintiff has not and cannot state a claim under § 1962(c) in Count III of the amended complaint, Count IV, which alleges a conspiracy under § 1962(c), falls. Any amendment thereto adding SNLIC and EBL as the beneficial plaintiffs would be futile.

> FN14. In *Rehkop,* 95 F.3d at 290, as well as *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1168-70 (3d Cir.1989), the Third Circuit held that a plaintiff who did not have standing under § 1962(c) could, under the facts of those cases, still maintain a claim under § 1962(d). However, where "the actions alleged to constitute violations of subsections 1962(a), (b), and (c) were not violations of these subsections," they could not support a § 1962(d) claim. *Rehkop,* 95 F.3d at 290. The Insurance Commissioner merely relies on her allegations in Counts I and III to support her conspiracy claims in Counts II and IV. Because Count III does not allege a § 1962(c) violation, there cannot be a conspiracy claim derived from it.

As explained above, Count I, alleging a § 1962(b) claim against defendant Stewart, remains viable. We turn now to the conspiracy claim based upon this alleged RICO violation, asserted in Count II. To state a valid RICO claim for conspiracy, the Insurance Commissioner must allege in her pleading: (1) an agreement to commit the predicate acts; (2) knowledge that those acts were part of a pattern of racketeering in violation of a RICO section; (3) the time period of the conspiracy; (4) the purpose of the conspiracy; (5) the actions taken to achieve the purpose of the conspiracy; and (6) proximate injury as a result of the conspiracy. *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166-69 (3d Cir.1989); *Rose v. Bartle,* 871 F.2d 331, 366 (3d Cir.1989). Plaintiff must have been harmed in "furtherance of" a conspiracy under a RICO section. *Rehkop,* 95 F.3d at 290. In at least general terms, the composition, objectives, and roles of each defendant in a conspiracy must be alleged even under the liberal pleading of Rule 8(a). *Rose,* 871 F.2d at 366.

*10 To state a RICO conspiracy under § 1962(d), however, the plaintiff must also aver that the defendants conspired *to* violate the underlying section, in this case § 1962(b). It is not sufficient that the defendants conspired *with* someone who was violating or attempting to violate that section of the statute. *See United States v. Antar,* 53 F.3d 568, 581 (3d Cir.1995). The defendant is only liable for "conspiring to do something for which, if the act was completed successfully, he or she would be liable." *Id.* The Court of Appeals declared that this distinction arose from the language of § 1962(d) itself which creates liability only when one conspires *to* violate a RICO section. *Id.*

Count II alleges that defendants Stewart, Harbaugh, ML & B, Fletcher, Morris, Connors, and several Stewart-owned entities, conspired "to violate RICO ... by agreeing to participate in the acquisition and maintenance of SNLIC through a pattern of racketeering." ¶ 163. In furtherance of this conspiracy, the defendants purportedly committed the predicate acts listed in Count I, with the ultimate goal of stripping SNLIC of its assets and then concealing its insolvency. According to the Insurance Commissioner, the defendants agreed to commit the predicate acts and knew that they were part of a pattern of racketeering activity.

Defendants argue that the *Antar* decision precludes a claim for conspiracy as alleged here. They maintain

Case 1:05-cv-00165-JJF    Document 46-15    Filed 07/29/2005    Page 10 of 19

Not Reported in F.Supp.    Page 9
1997 WL 476455 (E.D.Pa.), RICO Bus.Disp.Guide 9379
**(Cite as: 1997 WL 476455 (E.D.Pa.))**

that the Insurance Commissioner has only alleged that they participated or conspired *with* Stewart in his quest to acquire or maintain an interest in or control of SNLIC. According to them, she fails to aver that the defendants conspired *to* acquire or maintain an interest in or control of SNLIC for themselves.

We agree with defendants. While the Insurance Commissioner avers that they conspired to violate § 1962(b), she specifies that this conspiracy was an agreement "to participate in the acquisition and maintenance of SNLIC." ¶ 163. This simply connotes a conspiracy to assist Stewart with his violation of § 1962(b). Other paragraphs of the amended complaint support this interpretation. *See, e.g.,* ¶¶ 23, 29, and 30. As we explained in the discussion concerning § 1962(b), only defendant Stewart is said to have sought to acquire or maintain an interest in or control of SNLIC. The Insurance Commissioner does not allege in the conspiracy count or anywhere else that the remaining defendants sought unsuccessfully to do what if successful would have been a § 1962(b) violation. *Antar,* 53 F.3d at 581. In other words, she does not plead that any of these defendants ever attempted but failed to acquire or maintain for themselves an interest in or control of SNLIC. Therefore, her conspiracy claim in Count II falls. *Id.; accord* Heritage Bldg. Group v. Plumstead Township, No. CIV. A. 95-4424, 1996 WL 69397, at *3 (E.D.Pa. Feb.16, 1996). As discussed above in connection with § 1962(b), the respondeat superior allegations in relation to ML & B are not applicable here. Finally, because one cannot conspire with himself, defendant Stewart cannot be liable for conspiracy.

### D. Aiding and Abetting

*11 Count V alleges that defendants Fletcher, Morris, Connors, Harbaugh, ML & B, G.S. Stewart, and O'Brien aided and abetted Stewart in any viable RICO violations set forth in Counts I through IV. Defendants contend that the Supreme Court's decision in *Central Bank of Denver v. First Interstate Bank of Denver,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), precludes aiding and abetting liability.

In that case, the Supreme Court held that "[b]ecause the text of § 10(b) [of the Securities Exchange Act] does not prohibit aiding and abetting ... a private plaintiff may not maintain an aiding and abetting suit under § 10(b)." *Id.* at 1455. It reasoned that Congress knew how to proscribe aiding and abetting and had chosen not to do so under the plain language of the statute. *Id.* at 1448. "If ... Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text. But it did not." *Id.* The Court noted that "aiding and abetting a wrongdoer ought to be actionable in certain instances. The issue, however, is not whether imposing private civil liability on aiders and abettors is good policy but whether aiding and abetting is covered by the statute." *Id.*

Like the Securities Exchange Act, no provision of RICO authorizes a civil plaintiff to recover from a defendant who aids and abets a RICO violation. According to the rationale of *Central Bank,* it would seem that aiding and abetting liability under RICO is foreclosed. Yet, in a case decided shortly after *Central Bank,* the Court of Appeals of the Third Circuit stated that "a defendant may be liable under RICO if he [or she] aided or abetted the commission of at least two predicate acts of mail fraud." *Jaguar Cars,* 46 F.3d at 270. While it neither cited nor discussed *Central Bank,* that omission is easily explained. The defendants in *Jaguar Cars* did not question whether the plaintiff could sue them for aiding and abetting under RICO. The only issue before the Court of Appeals was whether the evidence at trial was sufficient to find one of the defendants liable as an aider and abettor. *Id.* Thus, *Jaguar Cars* does not support the Insurance Commissioner's position. In light of *Central Bank,* we hold that the Insurance Commissioner may not assert a civil claim for aiding and abetting liability under RICO.

### III

All defendants complain that the Insurance Commissioner failed to plead the predicate acts of wire and mail fraud with specificity as required by Rule 9(b) of the Federal Rules of Civil Procedure. They contend that for this reason the amended complaint fails to state a claim upon which relief can be granted and must be dismissed pursuant to Rule 12(b)(6).

This argument is without merit. It is true that Rule 9(b) requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Insurance Commissioner's 80 page amended complaint with attached exhibits, including an appendix of specific predicate acts supporting the RICO claims, certainly meets this requirement.

### IV

*12 In their original motion to dismiss the amended complaint, defendants argued that the McCarran-

Not Reported in F.Supp. Page 10
1997 WL 476455 (E.D.Pa.), RICO Bus.Disp.Guide 9379
**(Cite as: 1997 WL 476455 (E.D.Pa.))**

Ferguson Act barred the Insurance Commissioner's RICO claims. See 15 U.S.C. §§ 1011 *et seq.* We had no occasion to reach this issue previously because we dismissed the amended complaint for lack of standing. If her proposed amendment is allowed, the Insurance Commissioner will have standing as to the § 1962(b) RICO claim against Stewart. Thus, we now address whether the McCarran-Ferguson Act would make any amendment futile.

Prior to 1944, insurance regulation was solely within the domain of the states since insurance was not considered to be interstate commerce. See *Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 183, 19 L.Ed. 357 (1869). This long-standing legal principle was overturned by the Supreme Court in *United States v. South-Eastern Underwriters Association*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). That was a criminal antitrust case in which the Court held that insurance was a transaction of interstate commerce subject to federal regulation. In response, Congress passed the McCarran-Ferguson Act, which reaffirmed the primacy of state regulation of insurance. See *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 538-39, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978). The Act provides, "The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). With respect to federal regulation, the Act continues in pertinent part:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, ... unless such Act specifically relates to the business of insurance.
> 18 U.S.C. § 1012(b).

In a parallel criminal RICO case currently before the undersigned, defendant Stewart raised this same McCarran-Ferguson argument in support of a motion to dismiss the indictment. We denied the motion. See *United States v. Stewart*, 955 F.Supp. 385 (E.D.Pa.1997). Because our analysis in the criminal case is virtually the same for this action, we need not repeat it at length here.

To determine the McCarran-Ferguson issue, we ask four questions: (1) does the federal law specifically relate to the business of insurance? (2) has Pennsylvania enacted any law for the purpose of regulating the challenged activity? (3) does the challenged activity constitute the business of insurance? and (4) would application of the federal law invalidate, impair, or supersede the state law? *Cochran v. Paco, Inc.*, 606 F.2d 460, 464-66 (5th Cir.1979). [FN15]

> FN15. In *United States Department of Treasury v. Fabe*, 508 U.S. 491, 113 S.Ct. 2202, 2208, 124 L.Ed.2d 449 (1993), the United States Supreme Court stated that in non-antitrust cases a three prong test applied. In determining whether McCarran-Ferguson precludes a civil complaint we must ask: (1) whether the federal statute specifically relates to the business of insurance; (2) whether the state law is enacted for the purpose of regulating the business of insurance; and (3) whether application of the federal statute would invalidate, impair or supersede the state statute. *Id.* This test was identical to the *Cochran* test except that the third prong, whether the challenged activity constituted the business of insurance, was eliminated and appears as part of the *Fabe* second prong, which asks whether the relevant state statute had been enacted for the purpose of regulating the business of insurance. *Id.* For this reason, we see very little difference between the 3 or 4 prong test. This court used the four prong test in the *Stewart* criminal opinion. We are not the only court to have done so in a non-antitrust case, after *Fabe*. See *Kenty v. Bank One*, 92 F.3d 384, 391 (6th Cir.1996); *Merchants Home Delivery Serve. v. Frank B. Hall & Co., Inc.*, 50 F.3d 1486, 1489 (9th Cir.), *cert. denied*, 516 U.S. 964, 116 S.Ct. 418, 133 L.Ed.2d 335 (1995); *J.J. White, Inc. v. William A. Graham Co.*, No. CIV.A. 96-6131, 1997 WL 134896, at *2 (E.D.Pa. Mar.17, 1997); *Dornberger v. Metropolitan Ins. Co.*, 961 F.Supp. 506, 516 (S.D.N.Y.1997); *Everson v. Blue Cross and Blue Shield*, 898 F.Supp. 532, 543 (N.D.Ohio1994). Other circuits have completely adopted the three prong test of *Fabe*. See *Doe v. Norwest Bank Minnesota*, 107 F.3d 1297, 1305 (8th Cir.1997); *Villafane-Neriz v. FDIC*, 75 F.3d 727, 735 (1st Cir.1996). We will apply both tests here.

All parties agree that the only federal law at issue here, RICO, does not specifically relate to the business of insurance. See *Senich v. Transamerica Premier Ins. Co.*, 766 F.Supp. 339, 340

(W.D.Pa.1990). The Insurance Commissioner and the defendants are also in accord that there are Pennsylvania laws which govern the activity alleged in the amended complaint. [FN16] It is over the remaining two questions that the parties differ, that is, whether the challenged activity was the business of insurance and whether the application of RICO would invalidate, impair, or supersede state laws. Only if we answer both of these two questions in the affirmative will the McCarran-Ferguson Act bar plaintiff's RICO claim. Cochran, 606 F.2d at 464.

> FN16. SNLIC was originally an Ohio insurer and was allegedly acquired by Stewart in Ohio. The parties do not dispute that Ohio insurance laws exist which would apply to the allegations concerning the acquisition.

*13 For the same reasons as set forth in our opinion in the criminal case, the activity challenged here is not the business of insurance. As we said there, not every act of an insurer or its agents is the business of insurance for purposes of the McCarran-Ferguson Act. The Insurance Commissioner essentially asserts that the defendants, through acts of mail and wire fraud, siphoned funds from two companies which happened to be insurers. Various schemes were utilized to accomplish this "theft." They included the acquisition which rendered the insurers immediately insolvent, a relocation from Ohio to Pennsylvania, year-end financial transactions which made the insurers appear solvent when they were not, diversion of funds, and the sale of the insurers for no consideration. However, activities such as these are not the business of insurance since they are not limited to the insurance industry and are not an integral part of the policy relationship between an insured and its insurer. Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982). None of the transactions allegedly performed was between the insurance company and the insureds or policyholders. Nor do these activities have the effect of transferring or spreading the risk of a policyholder or directly affect the performance of an insurance contract. Id.; accord United States Dep't of Treasury v. Fabe, 508 U.S. 491, 504, 113 S.Ct. 2202, 124 L.Ed.2d 449 (1993).

Assuming, however, that the activities challenged by the Insurance Commissioner could be considered the business of insurance, we conclude that the pursuit of this civil RICO action will not "invalidate, impair or supersede" any Pennsylvania law. Cochran, 606 F.2d at 464. To the extent that Pennsylvania regulates the challenged activities, its laws are consistent with RICO. We follow the weight of authority holding that "state and federal laws proscribing identical conduct do not conflict with or displace each other, and may coexist under the McCarran-Ferguson Act." Merchants Home Delivery Serv. v. Frank B. Hall & Co., Inc., 50 F.3d 1486, 1492 (9th Cir.), cert. denied, 516 U.S. 964, 116 S.Ct. 418, 133 L.Ed.2d 335 (1995); accord NAACP v. American Family Mut. Ins. Co., 978 F.2d 287, 295-97 (7th Cir.1992), cert. denied, 508 U.S. 907, 113 S.Ct. 2335, 124 L.Ed.2d 247 (1993); Dornberger v. Metropolitan Life Ins. Co., 961 F.Supp. 506, 520 (S.D.N.Y.1997); Brownell v. State Farm Mut. Ins. Co., 757 F.Supp. 526, 536 (E.D.Pa.1991). As the Southern District of New York recently stated, "such a federal law tends only to supplement state law by providing another vehicle by which to carry forth the substantive policies which both the federal and state laws will further." Dornberger, 961 F.Supp. at 520. Moreover, the fact that the remedies available under RICO and state laws differ does not violate the McCarran-Ferguson Act. Merchants, 50 F.3d at 1491-92; American Family, 978 F.2d at 296-97; Dornberger, 961 F.Supp. at 520.

It is significant that the Insurance Commissioner herself has instituted this action. She is seeking to use RICO to obtain redress for insolvent insurance companies under her supervision. Pennsylvania law specifically empowers her, in her capacity as Liquidator of SNLIC and EBL, to institute "any and all suits and other legal proceedings" in the name of the insurer. Pa.Stat.Ann. tit. 40, § 221.23(12) (West 1992). She has the authority under Pennsylvania law to "collect all debts and moneys due and claims belonging to the insurer." Id. § 221.23(6). Under the circumstances, we do not believe the top official with regulatory authority over the Commonwealth's insurance industry is acting to invalidate, impair, or supersede state law in violation of the McCarran-Ferguson Act. See Corporacion Insular de Seguros v. Munoz, 896 F.Supp. 233, 237 (D.P.R.1995). [FN17]

> FN17. To the extent that any Ohio laws governed the acquisition of SNLIC, the prosecution of this case would also not invalidate, impair, or supersede them. The Insurance Commissioner is not seeking to undo the acquisition.

*14 Defendants rely on a recently decided decision of the Court of Appeals for the Eighth Circuit. See Doe v. Norwest Bank Minnesota, 107 F.3d 1297 (8th

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Cir.1997). In *Doe,* the plaintiffs were a class of vehicle purchasers who entered into installment sales agreements with a dealership, which assigned the agreements to Norwest Bank. *Id.* at 1299. The agreements provided that in the event the purchaser did not obtain insurance for the vehicle, the bank could obtain insurance and charge the premium to the purchaser. *Id.* at 1300. The bank had purchased such insurance on behalf of plaintiffs in that case. Plaintiffs claimed that the insurer, Voyager, charged them for unauthorized coverage and paid illegal kickbacks to the bank which purchased the insurance. *Id.* at 1306. The Eight Circuit, applying a three prong test, held that the civil action was prohibited by the McCarran-Ferguson Act because the case would invalidate, impair or supersede the insurance laws of Minnesota. *Id.* at 1305. The court noted that because Minnesota law did not provide for a private cause of action, attorney's fees, or treble damages as RICO does, private plaintiffs would avoid the "administrative remedial system" set forth by Minnesota and opt to pursue a RICO lawsuit instead. *Id.* at 1306-07. Because RICO would undermine and "supplant" Minnesota's regulations, the case could not proceed. *Id.* at 1308.

Unlike our case, *Doe* involved activities which clearly constituted the business of insurance. It is also noteworthy that the *Doe* action was brought by private plaintiffs. In contrast, this action was initiated by the Insurance Commissioner herself in her capacity as the Liquidator of SNLIC and EBL.

For the reasons set forth above, the McCarran-Ferguson Act does not preclude the RICO claims made here. [FN18]

> FN18. For similar reasons, the three-part *Fabe* test also does not require dismissal of the Insurance Commissioner's amended complaint. Under *Fabe,* we must consider whether a state statute has been enacted for the purpose of regulating the business of insurance. *Fabe,* 113 S.Ct. at 2208. Pennsylvania has enacted a comprehensive scheme to regulate its insurance industry and the business of insurance. But the application of RICO would not impair, invalidate, or supersede this Pennsylvania regulatory scheme.

V

Even if the Insurance Commissioner's proposed amendment to the § 1962(b) RICO claim would not be futile, we still must decide under Rule 15 whether or not the amendment would cause undue delay or prejudice or is motivated by bad faith or a dilatory motive. *In re Burlington Coat Factory,* 114 F.3d at 1434. If so, we may disallow any further amendments. In *Burlington,* the Third Circuit noted that where a plaintiff has already filed one amended pleading, had a substantial amount of time between the initial and revised pleadings, and the efforts of four different law firms were involved, a court may have sufficient basis to find undue delay or prejudice in the filing of yet another revised pleading. *Id.* at 1435. The Third Circuit, quoting a district court, has also stated:

> "three attempts at a proper pleading is enough," and a "plaintiff has to carefully consider the allegations to be placed in a complaint before it is filed." [Plaintiff] is not seeking to add claims it inadvertently omitted from its prior complaints or which it did not know about earlier. Rather, [[[plaintiff] is modifying its allegations in hopes of remedying factual deficiencies in its prior pleadings, even to the point of contradicting its prior pleadings.

*15 *Gasoline Sales, Inc. v. Aero Oil Co.,* 39 F.3d 70, 74 (3d Cir.1994).

There is no evidence that the proposed amendment is prompted by bad faith or a dilatory motive. Moreover, it would not cause undue delay as the case is still in the pleading stage. Finally, there would be no prejudice to any defendant in allowing this amendment. This is not to say that amendments should be allowed endlessly. This action was filed over ten months ago, on October 1, 1996. While we will allow plaintiff to file her third complaint to prosecute the § 1962(b) RICO claim in the name of SNLIC and EBL against defendant Stewart, this will be the final amendment. Three chances to formulate known claims are enough. As the Third Circuit aptly noted:

> We are concerned about the alacrity with which plaintiffs appear to grasp at any theory of alignment of parties which might withstand dismissal. A RICO complaint is not a mix and match game in which plaintiffs may artfully invoke magic words to avoid dismissal. Instead, to plead a claim under section 1962(c) the complaint must be capable of being read to satisfy the statutory requirement that persons were conducting a pattern of racketeering through a separate and distinct enterprise. That requirement does not do violence to the notion of notice pleading. It simply reinforces the renewed emphasis on the obligation of responsible pleading.
> *Glessner,* 952 F.2d at 714.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1997 WL 476455 (E.D.Pa.), RICO Bus.Disp.Guide 9379  
**(Cite as: 1997 WL 476455 (E.D.Pa.))**

Page 13

### VI

In addition to the RICO claims, the amended complaint set forth state law claims in Counts VI through XII. Additional defendants not named in the RICO counts were sued. Since we had previously dismissed the RICO claims, we declined supplemental jurisdiction over these related state law claims and the additional parties under 28 U.S.C. § 1367. [FN19]

> FN19. Title 28 U.S.C. § 1367(a) states in relevant part:
> Except as provided in subsections (b) or (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Now that the Insurance Commissioner will have standing to assert a § 1962(b) RICO claim on behalf of SNLIC and EBL, we will determine whether her state law claims are ones upon which relief can be granted. Where, as here, the same acts are alleged as the basis for the federal and state law counts, "federal courts routinely exercise supplemental jurisdiction over the state law claims." *Lyon v. Whisman,* 45 F.3d 758, 761 (3d Cir.1995).

#### A. Breach of Fiduciary Duty

Count VI alleges that defendants Stewart, Fletcher, Morris, Connors, Harbaugh and Mary Ann Stewart ("M.A.Stewart") breached fiduciary duties to SNLIC and EBL, in their capacity as owners, officers, and directors of these insurers. It also alleges that these defendants "functioned under conflicts of interest and engaged in self-dealing detrimental to SNLIC and EBL [ ] through the myriad of transactions between and among the Stewart entities" and other companies. ¶ 190.

M.A. Stewart asserts that Count VI is legally insufficient because it fails to allege that the Insurance Commissioner or either of the insurers placed their trust in M.A. Stewart or that she accepted a fiduciary relationship with the insurers. *See Thompson v. Glenmede Trust Co.,* No. CIV. A. 92-5233, 1993 WL 197031, at *4 (E.D.Pa. June 8, 1993). This argument fails. According to the amended complaint, M.A. Stewart was an owner, officer and/or director of the insurers. [FN20] Such positions create a fiduciary duty to the corporate insurers, on whose behalf the Insurance Commissioner is suing. This is unlike *Thompson* where certain defendants did not hold a comparable corporate position and the court determined that further facts must be pleaded before it could assume that a fiduciary duty had been created. *Id.*

> FN20. Specifically, she was an officer and director of EBL. ¶ 11.

*16 M.A. Stewart maintains that the amended complaint also does not state how she affirmatively participated in the fraud. She is correct. However, Count VI is not based upon fraud, but upon a breach of fiduciary duty. As such, the Insurance Commissioner is not subject to the more rigorous fraud pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Count VI, which alleges a fiduciary duty owed and breached by M.A. Stewart, is sufficient.

Defendant Harbaugh argues that the Insurance Commissioner fails to provide any information about his alleged fiduciary position. As to all other defendants named in this count, the Insurance Commissioner listed earlier in the amended complaint their various titles and the capacities in which they were being sued. According to Harbaugh, the Insurance Commissioner fails to allege what specific fiduciary position Harbaugh held. This is not so. Paragraph 188 is adequate to withstand the motion to dismiss because it alleges that Harbaugh is being sued in his capacity as owner, officer, or director of the insurers. [FN21] Count VI stands against defendants Stewart, Fletcher, Morris, Connors, Harbaugh and M.A. Stewart.

> FN21. This is the only count in which Harbaugh is being sued in his capacity as an owner, officer, or director of either insurer. The remainder of the complaint asserts that he performed legal services for the insurers and is being sued in his individual capacity as well as in his capacity as a partner at ML & B. ¶ 6.

#### B. Aiding and Abetting

Count VII alleges that defendants G.S. Stewart and O'Brien knowingly participated and/or aided and abetted the Count VI defendants in the breach of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

fiduciary duties. G.S. Stewart and O'Brien allegedly participated in schemes which siphoned money from the insurer SNLIC through companies in which they had an ownership interest. The Insurance Commissioner asserts that G.S. Stewart and O'Brien benefitted from the schemes because they received some of the siphoned funds.

G.S. Stewart and O'Brien maintain that there is no cause of action for knowing participation or aiding and abetting a breach of fiduciary duty under Pennsylvania law. The Insurance Commissioner concedes that Pennsylvania state courts have not adopted either of these causes of action. She concludes that it is for us to predict whether the Supreme Court of Pennsylvania would allow such claims. See Rolick v. Collins Pine Co., 925 F.2d 661, 664 (3d Cir.1991).

While no court of the Commonwealth has adopted either theory, at least one district court in the Eastern District of Pennsylvania has held that no cause of action for knowing participation in breach of fiduciary duty exists. See Pierce v. Rossetta Corp., No. CIV.A. 88-5873, 1992 WL 165817, at *8 (E.D.Pa. June 12, 1992). However, several courts in our district have opined that Pennsylvania would follow the Restatement (Second) of Torts § 876 and recognize the tort of aiding and abetting a breach of fiduciary duty. Thompson v.. Glenmede Trust Co., No. CIV. A. 92-5233, 1994 WL 675186, at *5 (E.D.Pa. Nov.23, 1994); Pierce, 1992 WL 165817, at *8. According to Pierce, the elements of this cause of action would be: "(1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider or abettor; and (3) substantial assistance or encouragement by the aider or abettor in effecting that breach." Pierce, 1992 WL 165817, at *8.

*17 We agree with the well-reasoned opinion in Pierce that Pennsylvania courts would recognize a tort for aiding and abetting a breach of fiduciary duty. The elements, as outlined by Pierce, have been met here. The fiduciary duties owed were set forth in Count VI. The Insurance Commissioner alleges that G.S. Stewart and O'Brien were knowledgeable participants. Count VII also avers that these defendants, as owners of three corporate entities, approved and participated in Stewart's schemes to siphon funds from SNLIC through these three corporations. This is sufficient, on a motion to dismiss, to raise an inference of substantial assistance. Count VII, construed as setting forth a tort for aiding and abetting a breach of fiduciary duties, will stand.

**C. Conflict of Interest/Breach of Fiduciary Duty**
Count VIII asserts that the attorney defendants, Stewart, Harbaugh, and ML & B breached their fiduciary duties and maintained an impermissible conflict of interest because they acted as counsel for SNLIC, EBL, and other Stewart entities simultaneously. [FN22]

> FN22. Morris was formerly a defendant in Counts VIII and IX, but the Insurance Commissioner has since withdrawn these causes of action against her.

Stewart claims that there is no separate cause of action for conflict of interest under Pennsylvania law. See Maritrans GP Inc. v. Pepper, Hamilton & Scheetz, 529 Pa. 241, 602 A.2d 1277 (Pa.1992). While a conflict of interest can serve as factual support for causes of action like breach of fiduciary duty or professional negligence, Stewart asserts that it is not a separate cause of action unto itself. Similarly, ML & B and Harbaugh argue that this count is subsumed in Count IX, which also alleges the same conflict of interest. According to the Insurance Commissioner, this count addresses the breach of the duty of undivided loyalty an attorney owes to his client. [FN23]

> FN23. Count IX claims that these same attorney defendants were professionally negligent and committed malpractice by serving as counsel for SNLIC, EBL and the Stewart entities simultaneously. According to the Insurance Commissioner, not only did they maintain an impermissible conflict of interest, but they also entered into impermissible business dealings with clients. The defendants do not address this count in their motions to dismiss. Therefore, Count IX remains a viable cause of action in the second amended complaint.

In Maritrans, the Pennsylvania Supreme Court held that under the common law, a client may sue his or her attorney for violating the fiduciary duty an attorney owes to a client. Id. at 1287. This "duty demands undivided loyalty and prohibits the attorney from engaging in conflicts of interest." Id. at 1283. A breach of this fiduciary duty subjects an attorney to civil liability, including injunctive relief. Id. at 1287-88.

Construed as a claim for breach of the fiduciary duty an attorney owes to a client, Count VIII asserts a

proper cause of action. The conflict of interest described in this count forms the basis for such breach. Count VIII differs from Count VI which sought damages for the breach of a fiduciary duty which the defendants owed in their capacity as directors, officers, and owners of the insurers. Count VIII may also be separate and distinct from Count IX which states a cause of action for professional negligence and malpractice . [FN24]

> FN24. The Pennsylvania Supreme Court did not address in *Maritrans* whether this fiduciary duty cause of action differs from one for professional negligence or malpractice.

### D. Fraud

The Insurance Commissioner avers in Count X that Stewart, Fletcher, Morris, Connors, Harbaugh, ML & B, G.S. Stewart, and O'Brien committed common law fraud against SNLIC and EBL through the schemes earlier described to siphon funds and assets from these insurers.

*18 Defendants contest the sufficiency of this count. Defendants Stewart, Fletcher, G.S. Stewart, and O'Brien claim that the Insurance Commissioner has failed to plead reliance on any misrepresentation. Similarly, defendants ML & B and Harbaugh allege that the count lacks any allegations of materiality, reliance, or proximate cause.

The Insurance Commissioner disputes these contentions. She states that the amended complaint reveals that
> each and every time these defendants took a valuable asset of SNLIC or EBL [[[ ] and replaced it with a worthless note, share of stock or other compensating 'asset,' they were implicitly representing to the company that value was being exchanged for value--they caused the company to accept that representation and release the valuable asset in reliance upon it.

The Liquidator's Omnibus Mem. of Law in Opp'n to the Defendants' Motions to Dismiss the Complaint at 71.

Under Pennsylvania law, the elements for a fraud cause of action are: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Gibbs v. Ernst*, 538 Pa. 193, 647 A.2d 882, 888 (Pa.1994). The fraudulent statements need not be made to the plaintiff. However, the plaintiff must be "a member of a class of persons whom the declarant has reason to expect will act in reliance upon his fraud." *Michael v. Shiley, Inc.*, 46 F.3d 1316, 1334-35 (3d Cir.1995). [FN25] The Insurance Commissioner has pleaded with specificity all the required elements for a fraud claim. Count X withstands the motion to dismiss and may be included in the second amended complaint.

> FN25. Unlike the common law action for fraud, any reliance required under RICO would be on the predicate acts of mail and wire fraud. Common law fraud requires reliance on any misrepresentation.

### E. Conversion

Count XI alleges that defendants Stewart, G.S. Stewart, and O'Brien converted the assets of SNLIC for their own use.

These defendants argue that the Insurance Commissioner has failed properly to allege the elements of this tort. They construe the facts, as alleged, to show that any property received was given with permission of the insurers, that is, they did not willfully deprive either company of its interest in the funds or assets. *See Norriton East Realty Corp. v. Central-Penn Nat'l Bank*, 435 Pa. 57, 254 A.2d 637, 638-39 (Pa.1969).

Under Pennsylvania law, conversion is "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Underhill Coal Mining Co. v. Hixon*, 438 Pa.Super. 219, 652 A.2d 343, 345 (Pa.Super.Ct.1994), *appeal denied*, 663 A.2d 693 (Pa.1995). The tort of conversion may be committed in several different ways such as "acquiring possession of the chattel with the intent to assert a right to it which is adverse to the owner," or "unreasonably withholding possession of the chattel from one who has the right to it," or "misusing or seriously damaging the chattel in defiance of the owner's rights." *Ft. Washington Resources, Inc. v. Tannen*, 846 F.Supp. 354, 361 (E.D.Pa.1994). Conversion has not occurred if the owner has consented to the use or possession of the chattel by another. *Norriton*, 254 A.2d at 639. The converter "need not have a conscious intent of wrongdoing to be liable for conversion, as long as he [or she] has exercised wrongful control over the goods." *Ft.*

Not Reported in F.Supp.  
1997 WL 476455 (E.D.Pa.), RICO Bus.Disp.Guide 9379  
**(Cite as: 1997 WL 476455 (E.D.Pa.))**

Page 16

*Washington,* 846 F.Supp. at 361. Even a person who purchases the converted goods from the converter without knowledge that they were wrongfully taken, a so-called good faith purchaser, is "also a converter and must answer in damages to the true owner." *Underhill,* 652 A.2d at 345. For this reason, conversion has been called a "strict liability offense." *Ft. Washington,* 846 F.Supp. at 362.

*19 The amended complaint, read in its entirety, sets forth a valid conversion cause of action. Count XI itself states that the defendants Stewart, G.S. Stewart, and O'Brien siphoned assets from SNLIC and EBL. The balance of the amended complaint details schemes in which assets were "siphoned" or "diverted" or "looted" from the insurers. This certainly implies that the taking was without consent. Paragraph 224 alleges that the defendants' actions were "intentional, malicious and wanton." Even if they did accept or take the assets in good faith, this is not a defense to conversion. *Underhill,* 652 A.2d at 345.

While paragraph 4 of the amended complaint asserts that Stewart was the "owner and/or controlling principal" of SNLIC and EBL during the actions giving rise to this amended complaint, his actions in removing the assets or funds from the insurers does not mean that these corporate insurers consented. A corporation is a legal entity separate and distinct from the actual shareholders, or owners. The amended complaint clearly alleges no consent by the insurers themselves. Moreover, some of the alleged siphoning and looting occurred after, or in connection with, the sale of the insurers in 1993. *See* ¶¶ 82-90, 103-05, 109-11. Count XI will stand against Stewart, G.S. Stewart, and O'Brien.

### F. Constructive Trust

Count XII seeks to impose a constructive trust on all the defendants [FN26] named in this action, even defendants not named in any other count of the amended complaint, on "those funds that can be reasonably traced to [[these defendants] as a result of the fraud perpetrated by Stewart, and those acting in concert with him, against SNLIC and EBL." ¶ 228.

> FN26. These defendants are Stewart, Summit Company, American Insurance Managers, Inc., Bankers Equity Life Insurance Company, Bankers Equity Realty, Erin Group Administrators, Cathedral Life Insurance Company, Pacific Coast Underwriters, Inc., Covenant Realty, Ltd., Tartan Management Company, Tsunami Corporation, Roe Corporations I-XXX, Fletcher, Morris, Connors, Harbaugh, M.A. Stewart, G.S. Stewart, O'Brien, Paul Tamaccio, Trust under Agreement dated January 1, 1993 for the benefit of William Tamaccio, Trust under Agreement dated January 1, 1993 for benefit of G.S. Stewart, Harbaugh, and ML & B.

All defendants argue that a constructive trust is an equitable remedy and not an independent cause of action. Moreover, they assert that this count is being used to keep in this case defendants Paul Tamaccio ("Tamaccio") and the two trusts established by Stewart, although they are not named in any other cause of action.

Under Pennsylvania law, a constructive trust is "one created by equity to prevent unjust enrichment or to redress a wrong." *Huber v. Wagner,* 284 Pa.Super. 133, 425 A.2d 456, 458 (Pa.Super.Ct.1981). "It exists whenever one holding title to property is subject to an equitable duty to convey it to another on the ground that he [or she] would be unjustly enriched if he [or she] were permitted to retain it." *Id.* The constructive trust arises most frequently in situations of "fraud, accident, mistake, duress or undue influence." *Id.* It is a remedy, not a separate cause of action. *Lerario v. Provident Life and Accident Ins. Co.,* No. CIV.A. 96-2100, 1996 WL 532491, at *4 (E.D.Pa. Sept.20, 1996). The Insurance Commissioner concedes as much.

She states that she requested the remedy in a separate cause of action, rather than list the request for relief at the end of each count, to simplify the amended complaint. We find that making the constructive trust a separate count confuses the issue. Moreover, the Insurance Commissioner already requests "such other relief as the court deems appropriate" at the end of each count. Such request includes a constructive trust.

*20 The remaining difficulty, however, is that three of the defendants, while named as defendants in the amended complaint, are not included as a defendant in any specific count. There are no specific allegations against them. Paragraph 14 lists Paul Tamaccio as a defendant and asserts that he is a stepson of Stewart and a partial owner of Summit Company, one of the Stewart entity defendants. It continues, "[u]pon information and belief, Tamaccio owned those shares [of Summit] as a straw party for Stewart. Tamaccio is apparently being sued pursuant to Fed.R.Civ.P. 19(a) so that complete relief

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

may be sought through a constructive trust on funds diverted to Tamaccio from SNLIC and EBL." The two trusts, established by Stewart, are described in paragraphs 15 and 16. The first trust is for the benefit of G.S. Stewart, and the second for William Tamaccio, another step-son of Stewart. Each of these trusts owns 24% of Summit Company. The Insurance Commissioner further avers that:

> [u]pon information and belief, the Trust was established solely to permit Stewart to hide and deny his control over the Summit Chain (a family of companies, including SNLIC, which Stewart owned or controlled ...). The [[[ ] Trust is being sued as a legal person and pursuant to Fed.R.Civ.P. 19(a) so that complete relief may be sought through a constructive trust on funds diverted to the [ ] Trust from SNLIC and EBL.

These paragraphs reveal that these three defendants, while not necessarily wrongdoers themselves, hold property of SNLIC and EBL which they are not entitled to possess. Construed as a cause of action for unjust enrichment, this Count is valid and may be asserted against all defendants in the second amended complaint. [FN27]

> FN27. To state a claim for unjust enrichment, one must allege: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; (3) retention of such benefits under circumstances where it would be inequitable for defendant to retain the benefit without providing value in return." *Mercante v. Preston Trucking Co.,* No. CIV.A. 96-5904, 1997 WL 288614, at *4 (E.D.Pa. May 21, 1997). To the extent that any Stewart entity possesses assets of SNLIC and EBL to which they are not entitled, they may also be included in this count for unjust enrichment.

### G. Statute of Limitations

Several of the defendants assert that the state claims are barred by the statute of limitations. M.A. Stewart asserts that Count VI should be dismissed because she has not been on the Board of Directors since 1989 and the statute of limitations under Pennsylvania law is only two years. *See* 42 Pa.Cons.Stat.Ann. § 5524(7) (West Supp.1997). The amended complaint does not state on what dates M.A. Stewart served as a director. The exact dates on which she held her position are issues of fact which are more appropriately resolved on a motion for summary judgment. On a motion to dismiss we may only consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver,* 38 F.3d at 1384 n. 2. A statute of limitations defense under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only where the amended "complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Id.* at 1384 n. 1. Defendants Morris and Connors similarly assert that the claims arise from events occurring in 1988 and 1989 and that the two year statute of limitations on the state law claims arising from these events are therefore barred. For the reasons set forth above, we will not dismiss the claims against M.A. Stewart, Morris, and Connors based upon the statute of limitations.

*21 Defendants not parties to a Tolling Agreement, G.S. Stewart, O'Brien, Tamaccio, and the Stewart entities, also complain that the statute of limitations expired prior to the filing of the amended complaint. They argue that because they did not enter into a Tolling Agreement with the Insurance Commissioner, as the other defendants did, the statute of limitations expired two years after the sale of the insurers--July 25, 1995, at the latest. The Insurance Commissioner asserts that the adverse domination theory applies to toll the statute of limitations, even in the absence of a Tolling Agreement. *See Resolution Trust Corp. v. Farmer,* 865 F.Supp. 1143 (E.D.Pa.1994).

We reject the defendants' argument. There are paragraphs in the amended complaint which allege improper activity by defendants O'Brien, and G.S. Stewart up through 1996. *See* ¶¶ 82-90. We have previously concluded that Tamaccio and the Stewart entities were not proper defendants. [FN28]

> FN28. The defendants also contend that the RICO claims are barred by reason of a prior binding release, or collateral estoppel as well as res judicata. We agree with the Insurance Commissioner that these fact-based defenses are not proper to consider on a motion to dismiss. An affirmative defense may only be argued on a motion to dismiss if "the affirmative defense clearly appears on the face of the pleading." *Oshiver,* 38 F.3d at 1384 n. 1. Moreover, defendants' argument directs us to documents outside the complaint and outside the public record, which we may not consider on a motion to dismiss unless we convert their motion into one for summary

judgment. See *id.* at 1384 n. 2. We decline to do so at this early stage of the proceeding.

## VII

In conclusion, the motion of the Insurance Commissioner asking this court to reconsider its Order of May 21, 1997, which we construe as a motion to amend, will be granted in part and denied in part. The Insurance Commissioner may amend her pleading as to RICO Count I and reassert Counts VI, VII, VIII, IX, X, XI, and XII containing state law claims, but only as to the defendants and causes of action identified herein. Counts II through V may not be set forth in a second amended complaint because even with the proposed amendment of the Insurance commissioner to sue on behalf of SNLIC and EBL these counts do not state claims upon which relief can be granted.

## ORDER

AND NOW, this 19th day of August, 1997, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) The motion of the plaintiff for reconsideration is GRANTED in part and DENIED in part;

(2) Plaintiff may file and serve a second amended complaint within fifteen days containing RICO Count I and state law counts VI through XII as set forth in the first amended complaint, with only such changes as permitted herein;

(3) Plaintiff may not replead Counts II through V of the first amended complaint;

(4) Plaintiff may sue on behalf of Summit National Life Insurance Company and Equitable Beneficial Life Insurance Company;

(5) The second amended complaint may name Allen W. Stewart only as the defendant under the § 1962(b) RICO count (previously denominated as Count I in the first amended complaint);

(6) Count XII may be repleaded as a claim for unjust enrichment only;

(7) Except as set forth herein, no other substantive amendments to plaintiff's pleading will be allowed;

(8) The defendants who remain as parties to this action shall file and serve their answers within fifteen days after being served with the second amended complaint; and

(9) The court will hold a status conference in chambers on Friday, September 26, 1997 at 4:00 p.m.

1997 WL 476455 (E.D.Pa.), RICO Bus.Disp.Guide 9379

**Motions, Pleadings and Filings (Back to top)**

• 2:96CV06643 (Docket) (Oct. 01, 1996)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.