# EXHIBIT 25

**C**
Only the Westlaw citation is currently available.

Pennsylvania Court of Common Pleas.
Harry W. KOCH, Alice M. Koch, and Joyce M. Meehan, on behalf of themselves and all others similarly situated, Plaintiffs,
v.
FIRST UNION CORPORATION, First Union National Bank of Delaware, Pennsylvania Resource Corporation, First Liberty Financial Services, Inc., and Does I-V
Defendants.
**Nos. CONTROL 100727, CONTROL 100746.**

May Term, 2001.
Jan. 10, 2002.

ORDER

HERRON, J.

*1 AND NOW, this 10th day of January, 2002, upon consideration of the Preliminary Objections of Defendants First Union Corp. ("First Union"), First Union National Bank of Delaware ("FUNBD"), First Liberty Financial Services, Inc. ("First Liberty") and Pennsylvania Resources Corporation ("PRC") to the Amended Complaint of Harry W. Koch, et al. and in accordance with the Memorandum Opinion being filed contemporaneously with this Order, it is hereby ORDERED and DECREED as follows:

1. The Preliminary Objection asserting failure to properly verify the Amended Complaint is SUSTAINED in part, and this court directs plaintiffs to file Amended Verifications to their Amended Complaint pursuant to Pa.R.C.P. 1024.

2. First Union is dismissed from the Amended Complaint because the plaintiffs have not alleged facts sufficient to pierce the corporate veil.

3. The Preliminary Objection asserting improper pleading of John Doe claims is OVERRULED.

4. The Preliminary Objection asserting legal insufficiency of a pleading of violations of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") based upon Real Estate Settlement Procedures Act ("RESPA") violations is SUSTAINED.

5. The Preliminary Objection asserting legal insufficiency of and insufficient specificity in a pleading of breach of fiduciary duty as to PRC and First Liberty is OVERRULED.

6. The Preliminary Objection asserting legal insufficiency of and insufficient specificity in a pleading of breach of fiduciary duty as to FUNBD is SUSTAINED.

7. The Preliminary Objection asserting insufficient specificity in a pleading and legal insufficiency of a pleading in Counts I, III, IV, and V is OVERRULED.

8. The Court cannot examine the plaintiffs' class action allegation in the context of Preliminary Objections.

9. The Preliminary Objections asserting an agreement for alternative dispute resolution is OVERRULED.

10. The Preliminary Objection asserting legal insufficiency of a pleading for punitive relief is OVERRULED.

11. The Preliminary Objection asserting legal insufficiency of a pleading of an accounting, rescission, and restitution is OVERRULED.

MEMORANDUM OPINION

Defendants First Union Corporation ("First Union"), First Union National Bank of Delaware ("FUNBD"), Pennsylvania Resource Corporation ("PRC"), and First Liberty Financial Services, Inc. ("First Liberty") filed these Preliminary Objections to the Amended Complaint of Plaintiffs Harry W. Koch, et al. For the reasons stated below, the preliminary objections are sustained in part.

BACKGROUND

The plaintiffs in the present action are homeowners. PRC is a contractor who provides home repairs and home improvement financing, through its broker First Liberty. The plaintiffs, through PRC and First Liberty, obtained home equity loans from FUNBD, a subsidiary of First Union.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The present action arises from allegations that all the defendants worked in concert to secure home equity loans on the basis of misleading "good faith cost estimates." The plaintiffs allege that these estimates were misleading in several ways. Am. Compl. ¶ 12. First, the same good faith estimates were given to all borrowers regardless of their financial status or creditworthiness. Id at ¶ 13. Second, the good faith estimates only identified closing costs totaling $470. However, the plaintiffs allege that these totals were far less then what they eventually paid. Id at ¶ 14. Third, the loan origination fee, listed in the estimate, was explained as "N/A" and therefore misleading. Id at ¶ 15. Further, the mortgage broker fee of 4-7% did not reveal what these percentages were based upon. Id. at ¶ 16. Finally, the settlement charges that the plaintiffs actually paid far exceeded the amounts specifically disclosed in the estimates. Specifically, prior to closing, the plaintiffs were given an estimated monthly repayment figure. Then, at closing, although the actual monthly figure equaled the previous estimated monthly figure, the plaintiffs allege that they had no way of knowing that the final settlement charges included in this monthly figure, would not equal the earlier good faith estimates. Id at ¶¶ 18, 19.

***2** In May 2001, the plaintiffs initiated this action, and after the case was removed to federal court, it was remanded, by stipulation of the parties, to this court. In August 2001, the plaintiffs filed an Amended Complaint asserting violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), breach of fiduciary duty, unjust enrichment, common law fraud and deceit, and civil conspiracy. The defendants timely filed these Preliminary Objections.

DISCUSSION

Preliminary objections may be brought based on insufficient specificity in a pleading. Pa.R.C.P. 1028(a)(3). Rule 1019(a) requires the plaintiff to state "[t]he material facts on which a cause of action ... is based ... in a concise and summary form." Pa .R.C.P. 1019(a). This rule requires that the complaint give notice to the defendant of an asserted claim and synopsize the essential facts to support the claim. *Krajsa v. Keypunch, Inc.*, 424 Pa.Super. 230, 235, 622 A.2d 335, 357 (1993). In addition, "[a]verments of time, place and items of special damage shall be specifically stated ." Pa.R.C.P. 1019(f). To determine if a pleading meets Pennsylvania's specificity requirements, a court must ascertain whether the facts alleged are "sufficiently specific so as to enable [a] defendant to prepare [its] defense." *Smith v. Wagner*, 403 Pa.Super. 316, 319, 588 A.2d 1308, 1310 (1991) (citation omitted). "In this Commonwealth, the pleadings must define the issues and thus every act or performance to that end must be set forth in the complaint." *Estate of Swift v. Northeastern Hosp. of Philadelphia*, 456 Pa.Super. 330, 337, 690 A.2d 719, 723 (1997).

Pa.R.C.P 1028(a)(4) also allows for preliminary objections based on legal insufficiency of a pleading. When reviewing preliminary objections in the form of a demurrer, "all well-pleaded material, factual averments and all inferences fairly deducible therefrom" are presumed to be true. *Tucker v. Philadelphia Daily News*, 757 A.2d 938, 941-42 (Pa.Super.Ct 2000). Preliminary objections, whose end result would be the dismissal of a cause of a cation, should be sustained only where "it is clear and free from doubt from all the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish [its] right to relief." *Bourke v. Kazara*, 746 A.2d 642, 643 (Pa.Super.Ct.2000) (citations omitted).

I. The Preliminary Objection Asserting Failure to Properly Verify Amended Complaint is Sustained in Part

The defendants argue that contrary to Pa.R.C.P.1024, the Amended Complaint averred new facts of record that were not stated in the original complaint. Defs' P.O. Mem. of Law at 3-4. Since the Amended Complaint was signed by counsel without further explanation as to why verification of these new facts were not made by one of the plaintiffs, the defendants assert that this pleading fails to conform to a rule of court. Id.

Pa.R.C.P 126 allows for the liberal construction of Pennsylvania's Rules of Civil Procedure. "[T]o secure the just, speedy, and inexpensive determination of every action or proceeding to which [these rules] are applicable," the court "may disregard any error or defect of procedure which does not affect the substantial rights of the parties." Pa.R.C.P. 126. Here, the court liberally construes Pa.R.C.P. 1024 which, *inter alia*, reads that "every pleading containing an averment of fact not appearing of record in the action ... shall state that the averment ... is true upon the signer's personal knowledge or information and belief and shall be verified." Pa.R.C.P. 1024(a).

***3** Although the Amended Complaint does contain newly alleged facts, this court will not dismiss the entire Amended Complaint as the error does not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

affect the substantial rights of the parties. Here, the plaintiffs allege in their Amended Complaint that they reasonably misunderstood the term "N/A" on the "Good Faith Estimates." Am. Compl. ¶ 15. The plaintiffs argue that this is not a new fact as it originated in the Answer of defendant First Liberty to the original Complaint. Pls' Reply Mem. of Law. at 21. However, since the plaintiffs here have not attached First Liberty's Answer to the original Complaint as an exhibit evidencing such a preexisting fact of record, and in the interest of securing the just, speedy and inexpensive determination of this case, this court directs the plaintiffs to file Amended Verifications to their Amended Complaint pursuant to Pa.R.C.P. 1024.

II. First Union is Dismissed from the Complaint Because Plaintiffs Have Not Alleged Facts

Sufficient to Pierce the Corporate Veil

The plaintiffs have alleged that FUNBD, a bank, and its parent, First Union, a bank holding company, are liable to them for the high closing costs associated with the loans. First Union, however, argues that since it is not a state chartered bank, or a national bank association, it lacks the capacity to be sued with respect to these loans. [FN1] Defs' Mem. of Law at 18. Furthermore, First Union argues that the plaintiffs have failed to allege facts sufficient to pierce the corporate veil and therefore, First Union avers that it has been misjoined as a defendant.

FN1. A bank is an institution which engages in the business of making "any loan other than a loan to an individual for personal, family, household, or charitable purposes" including "the purchase of retail installment loans or commercial paper, certificates of deposit, bankers' acceptances, and similar money market instruments." *Board of Governors of Federal Reserve System v. Dimension Financial Corp.*, 106 S.Ct. 681, 474 U.S. 361, 88 L.Ed.2d 691 (1986) citing 12 U.S.C.A. S 1841(c). Unlike a bank, a "bank holding company" means any company which has control over any bank or over any company that is or becomes a bank holding company. 12 U.S.C.A. S 1841(a)(1).

"A parent corporation possesses a separate existence and is treated separately from a subsidiary unless there are circumstances justifying disregard of the corporate entity," *Matter of Chrome Plate, Inc.*, 614 F.2d 990, 996 (5th Cir.), cert. denied, 449 U.S. 842, 101 S.Ct. 123, 66 L.Ed.2d 50 (1980). [FN2] Pennsylvania law allows the corporate form to be disregarded in situations where there is gross undercapitalization, failure to adhere to corporate formalities, substantial intermingling of personal and corporate affairs, and the use of the corporate form to perpetrate a fraud. *Saint Joseph Hospital v. Berks County Board of Assessments*, 709 A.2d 928 (Pa.Commw.Ct.1998) (citations omitted). "In applying this test, however, any court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception.... Care should be taken on all occasions to avoid making 'the entire theory of the corporate entity useless." ' *Wedner v. Unemployment Compensation Bd. of Rvw.*, 449 Pa. 460, 464, 296 A.2d 792, 794-95 (1972) (citation omitted). In Pennsylvania, there is a strong presumption against piercing the corporate veil. *Lumax Industries, Inc. v. Aultman*, 543 Pa. 38, 669 A.2d 893 (1995).

FN2. Federal court decisions are not binding on Pennsylvania state courts, but they are persuasive. *Hutchinson v. Luddy*, 763 A.2d 826, 837 n. 8 (Pa.Super.Ct.2000); *In re Insurance Stacking Litig.*, 754 A.2d 702, 705 (Pa.Super.Ct.2000). *See also Moore v. Sims*, 442 U.S. 415, 429 (1979) (stating that "[s]tate courts are the principal expositors of state law").

In the instant matter, the plaintiffs have not alleged sufficient facts to pierce the corporate veil and proceed with their action against First Union. Here, the identified lender of the particular loans at issue is FUNBD and not First Union. Am. Compl., Exh. B. However, in their Amended Complaint, the plaintiffs merely argue that because First Union "appears to dominate FUNBD in such a manner that their separate corporate entities may be disregarded" First Union can be held liable. Am. Compl. ¶ 20. However, no where in the Amended Complaint do plaintiffs allege that First Union engaged in gross undercapitalization, failed to adhere to corporate formalities, substantially intermingled personal and corporate affairs, nor that First Union used the corporate form to perpetrate a fraud. Absent these allegations, the plaintiffs cannot proceed against First Union. Since it is clear and free from doubt from all the facts pleaded that the plaintiffs will be unable to prove facts legally sufficient to establish First Union's liability, the court sustains the preliminary objection and further dismisses all counts as to First Union.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

III. The Preliminary Objections Asserting Improper John Doe Claims is Overruled.

***4** The defendants argue that this court should strike the Amended Complaint for failure to conform to Pa.R.C.P. 1018. In pertinent part, Pa.R.C.P. 1018 states, "The caption of a complaint shall set forth the form of the action and the names of all the parties...." Here, the defendants argue that the plaintiffs' attempt to join "Does I-V" should not be permitted because no allegations have been offered to identify the "Does."

The court in *Rummings v. Bd. of Probation and Parole,* 18 Pa. D. & C. 4th 278 (1992) was faced with a similar issue. In *Rummings,* the defendants argued that the plaintiff's use of the phrase "John Doe, an unidentified employee of the Board of Probation and Parole," was not a "sufficient designation" of a party defendant within the scope of Pa.R.C.P. 1018. *Rummings,* 18 Pa. D & C. 4th at 279-80. There, the "John Doe" was an employee of the Board of Probation and Parole and had allegedly acted in concert with two named individuals in committing a battery against the plaintiff. The court, based on the sparse precedent on this issue, concluded that

> [T]he evil to be prevented by this rule, as expressed by our esteemed colleague Thomas Raup, P.J., is the emersion of an individual in a lawsuit without "notice of the existence of the claim," nor an "opportunity to muster and preserve evidence...." *Rightmire v. Minier,* 12 Pa. D. & C.3d 234, 237 (1979); *see also* *Paulish v. Bakaitis,* 442 Pa. 434, 275 A.2d 318 (1971); *Boatman v. Thomas,* 320 F.Supp. 1079 (M.D.Pa.1971). Viewing the facts of the instant complaint in the light most favorable to the plaintiff, this court determines that the unnamed defendants were placed on notice of the existence of a claim and had been afforded an opportunity to muster and preserve evidence at the time of the battery perpetrated on the plaintiffs.

*Rummings,* 18 Pa. D & C. 4th at 279-80.

As in *Rummings,* here the Amended Complaint does provide notice of the existence of claims and further allows for the formulation of a defense. The plaintiffs' Amended Complaint reads in pertinent part:

> Defendant Does I-V are other contractors and/or mortgage brokers that solicit home equity loans for First Union based on the same, or substantially the same, materially misleading estimates of closing costs as were submitted to the Kochs, Mrs. Meehan, and the other members of the Class.

Am. Compl. at ¶ 7. Here, it is "easily ascertainable" that the Doe defendants named are those specific contractors and/or mortgage brokers that solicited certain home equity loans from FUNBD. Moreover, the "Doe" defendants are those contractors and/or mortgage brokers who submitted the same alleged misleading estimates of closing costs. Viewing the facts of the Amended Complaint in the light most favorable to the plaintiffs, this court determines that the "Doe" defendants were placed on notice of the existence of claims and have been afforded an opportunity to formulate a defense. Therefore, this preliminary objection is overruled.

IV. The Preliminary Objections To All Counts of the Amended Complaint

***5** Here, all the defendants have filed preliminary objections asserting legal insufficiency of all pleadings and insufficient specificity in all pleadings as to all counts. [FN3]

> FN3. Having determined above that defendant First Union is dismissed from the Amended Complaint, this court need only address the remaining preliminary objections as they apply to PRC, First Liberty, and FUNBD.

A. Violations of the UTPCPL Based Upon RESPA Violations

The plaintiffs contend that the defendants did not comply with the requirements of RESPA, since the defendants failed to provide them with a "good faith estimate" of the charges they would incur when settling their mortgages. Pls' Reply Mem. of Law at 15. Conversely, the defendants argue that since RESPA contains no private right of action for the plaintiffs' claim, the plaintiffs have failed "to explain how an alleged RESPA violation gives rise to a claim under the UTPCPL." Defs' P.O. Mem of Law at 6.

"A statute must be read in accordance with its plain and common meaning when it is clear and unambiguous on its face." *Paul J. Dooling Tire Co v. City of Philadelphia,* 2001 WL 1548730 *2 (Pa.Cmwlth) (citation omitted). Moreover, the "primary source of any private right of action is in the text of the statute itself." *Brophy v. Chase Manhattan Mortgage Co.,* 947 F.Supp. 879, 881 (E.D.Pa.1996). Here, Section 2604(c) of RESPA provides that:

> Each lender shall include with the booklet a good faith estimate of the amount or range of charges for specific settlement services the borrower is likely

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to incur in connection with the settlement as prescribed by the Secretary.

12 U.S.C. § 2604(c). The requirements for a good faith estimate are set forth in Regulation X, 24 C.F.R. § 3500.7(c):

> Content of good faith estimate. A good faith estimate consists of an estimate, as a dollar amount or range, of each charge which:
>
> * * * * *
>
> 2) That the borrower will normally pay or incur at or before settlement based upon common practice in the locality of the mortgaged property. Each such estimate must be made in good faith and bear a reasonable relationship to the charge a borrower is likely to be required to pay at settlement, and must be based upon experience in the locality of the mortgaged property ...

24 C.F.R. § 3500.7(c). Moreover, Section 2614 of RESPA, the only provision of the Act that provides for a private right of action, states:

> Any action pursuant to the provisions of section 2607 or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction ...

12 U.S.C.A. § 2614. Thus § 2614 allows for a private right of action for claims brought under § 2607 (prohibiting, *inter alia,* the giving or accepting of fees or kickbacks) and § 2608 (prohibiting the seller from requiring the buyer to purchase title insurance from any particular title company) but does not provide for a private right of action for claims brought under § 2604.

Here, although the plaintiffs concede in their Amended Complaint that "[§ 2604 (c) ] of RESPA has been held not to provide a private cause of action in and of itself," the plaintiffs argue that the good faith estimates provided to them by the defendants were not only inadequate, but were in fact intentionally misleading, thereby violating 12 U.S.C.A. § 2604(c) of RESPA and the relevant regulation, Regulation X, 24 C.F.R. § 3500.7(c). Am. Compl. at ¶ 48. However, this court finds that the plaintiffs do not have a private cause of action based upon § 2604(c) of RESPA. Not only does the statute explicitly not provide for one, but there is significant support in extensive legislative history for not allowing a private cause of action based on § 2604(c) of RESPA. *Brophy,* 947 F.Supp at 881. "In January 1976, Congress repealed ... the private right of action against lenders who failed to comply with the advance disclosure/good faith estimate provisions. [T]he legislative history reveals that Congress was well aware that it was eliminating a private right of action" under § 2604. *Id.* 947 F.Supp. at 883 (citing H.R.Rep. No. 667, 94th Cong., 1st Sess. 2 (1975), reprinted in 1975 U.S.C.C.A.N. 2448, 2449). Since RESPA specifically contains no private cause of action for alleged violations of "good faith estimates" provisions, this court will not construe the UTPCPL to provide relief for these alleged RESPA violations. However, this does not preclude the plaintiffs from finding a private cause of action from the UTPCPL. Therefore, the court sustains this preliminary objection.

B. Violations of UTPCPL

***6** The defendants argue that since the plaintiffs have not adequately alleged all the elements of fraud, they cannot recover under any of the provisions of the UTPCPL. Defs' P.O. Mem of Law at 8-10. Specifically, the defendants argue that the plaintiffs cannot allege violations of § 201- 2(4)(xxi) of the UTPCPL ("Catchall Provision") since their Amended Complaint "does not aver any 'ascertainable loss of money or property' suffered by Plaintiffs in reliance upon a misrepresentation by Defendants." [FN4] *Id* at 10. However, the plaintiffs contend that they "properly have alleged all of the requisite elements of a UTPCPL claim, including causation and damages and, to the extent it is required, reliance." Pls' Reply Mem of Law. at 16.

> FN4. The plaintiffs also allege violations of sections 201- 2(4)(iii) (causing the likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification of another); § 201-2(4)(v) (representing that their financial services have characteristics which they do not have); and § 201-2(4)(xiv)(failure to comply with the terms of any written agreement or warranty). However, the defendants argue that none of these apply to the plaintiffs' allegations and that the only UTPCPL provision that applies is the Catchall Provision. Def's Mem of Law at 8. Since the defendants have not met their burden of showing why these remaining alleged UTPCPL violations do not apply here, the court need only focus on whether the plaintiffs have averred facts necessary for a claim pursuant to the Catchall Provision.

Certain UTPCPL claims do require that a plaintiff prove all the elements of fraud. *See Weinberg v. Sun Co.,* 777 A.d 442, (2001) (a claim brought under the false advertising provision of the UTPCPL requires

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

traditional common law elements of reliance and causation). However, this court has held that in order to sustain a claim under the Catchall Provision a plaintiff need not plead all the elements of fraud. *Weiler v. SmithKline Beecham Corp.,* March 2001, No. 2422, slip op. at 3 (C.P. Phila October 8, 2001) (Since 201-2(4)(xxi) prohibits either fraudulent *or deceptive conduct,* this court concluded that the phrase "or deceptive" implies that either deceptive or fraudulent conduct constitutes a violation of the Catchall Provision and that deceptive conduct is not the same as fraudulent conduct. Therefore a plaintiff need not plead all the elements of fraud to sustain a claim under the Catchall Provision).

Here, however, the plaintiffs have plead all the elements of fraud. [FN5] In their Amended Complaint, the plaintiffs allege, *inter alia,* that defendants engaged in fraudulent and deceptive conduct which created a likelihood of confusion or misunderstanding. Am. Compl. at ¶ 47. Specifically, the plaintiffs have argued that they "detrimentally rel[ied]" upon the defendants' alleged misrepresentations. Id at ¶ ¶ 62, 63. Moreover, the plaintiffs specifically allege that they justifiably relied upon misrepresentations and non-disclosures which included:

FN5. To plead fraud the elements of material misrepresentation of an existing fact, scienter, justifiable reliance on the misrepresentation, and damages, must be proven. *Booze v. Allstate Ins. Co.,* 750 A.2d 877, 880 (Pa.Super.Ct.1999) (citation omitted).

> (1) closing costs associated with the home equity loans in suit would be approximately $470; and (2) Class members had no reason to suspect that the actual amount of closing costs associated with the home equity loans in suit were significantly greater than estimated because the amount of their monthly payments was substantially equal to that which they had been told to expect.

Id. at ¶ 64. Finally, the plaintiffs also argue that "as a result of defendants' violations of the UTPCPL, plaintiff and members of the class have suffered an ascertainable loss of property ." Id at ¶ 50. Having determined that the plaintiffs have sufficiently alleged the elements of fraud in support of an alleged violation of the Catchall Provision of the UTPCPL, this court overrules all the preliminary objections to this count. [FN6]

FN6. Having determined that the plaintiffs have plead all the elements of fraud, this court need not address whether, alternatively, deceptive conduct has been sufficiently pled to sustain a claim under the Catchall Provision.

C. Breach of Fiduciary Duty

*7 The defendants argue that since the Pennsylvania Mortgage Bankers and Brokers Act, 63 P.S. 456.01, et seq, imposes no fiduciary duty on mortgage brokers, the plaintiffs cannot allege that the defendants breached a fiduciary duty. Defs' P.O. Mem. of Law at 10. The plaintiffs disagree and argue that, here, a confidential relationship gave rise to a fiduciary duty which the defendants allegedly breached. Pls' Reply Mem. of Law at 25.

Our Superior Court has recognized that "[t]he concept of a confidential relationship cannot be reduced to a catalogue of specific circumstances, invariably falling to the left or right of a definitional line." *Basile v. Block,* 777 A.2d 95, 101 (Pa.Super.2001) (citing *In re Estate of Scott,* 455 Pa. 429, 316 A.2d 883, 885 (1974). "The essence of such a relationship is trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other." *Id.* Therefore, "[a confidential relationship] appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed [.]" *Frowen v. Blank,* 493 Pa. 137, 425 A.2d 412, 416-17 (1981).

As a result of this confidential relationship, a fiduciary duty arises which represents "the law's expectation of conduct between the parties and the concomitant obligations of the superior party." *Basile,* 777 A.2d at 101. "[T]he party in whom the trust and confidence are reposed must act with scrupulous fairness and good faith in his dealings with the other and refrain from using his position to the other's detriment and his own advantage." *Young v.. Kaye,* 443 Pa. 335, 279 A.2d 759, 763 (1971). Furthermore, the resulting fiduciary duty may attach "wherever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest." *Basile,* 777 A.2d at 102. Moreover, those offering business advice may have created a confidential relationship "if others, by virtue of their own weakness or inability, the advisor's pretense of expertise, or a combination of both, invest such a level of trust that they seek no

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

other counsel." *Id.* (citations omitted).

Here, the plaintiffs have sufficiently alleged the existence of a legally cognizable fiduciary duty of PRC and First Liberty. Specifically, the plaintiffs argue that a confidential relationship arose when the PRC and First Liberty acted as "the position of financial advisor and actively [sought] to inspire confidence that they will act in good faith for" the plaintiffs' interests. Am. Compl. at ¶ 23. Furthermore, the plaintiffs argue the following:

> Defendants entered the plaintiffs' homes armed with vastly superior knowledge of financing and home equity loans; sought extremely personal information from plaintiffs, including sources and debt factors; and promised to help take care of plaintiffs financial needs and desires.

***8** Pls' Reply Mem. of Law at 27. Finally, the plaintiffs allege that PRC and First Liberty breached their fiduciary duties by materially misrepresenting the closing costs associated with the home equity loans. Am. Compl. at ¶ 55. Since the plaintiffs have sufficiently alleged that a fiduciary duty has arisen from the confidential relationship between PRC, First Liberty and the plaintiffs and that this duty was allegedly breached, this court overrules the preliminary objection as to PRC and First Liberty.

However, the plaintiffs have not sufficiently alleged a fiduciary duty owed to them by FUNBD. "Under Pennsylvania law, the lender-borrower relationship ordinarily does not create a fiduciary duty ... unless a creditor 'gains substantial control over the debtor's business affairs." ' *I & S Assoc. Trusts v. LaSalle Nat'l Bank,* 2001 WL 1143319,*6 (E.D.Pa.) (citations omitted). Although the plaintiffs do argue that there was a "frequent presence of a First Union loan officer at PRC's place of business," no where in the Amended Complaint, do the plaintiffs allege that FUNBD was involved in the actual "day-to-day management and operations" of their affairs. Id. Unlike the plaintiffs' contact and reliance upon the financial advice and counsel of PRC and First Liberty, there is no such evidence of a similar relationship with FUNBD. Instead, FUNBD was merely the lender in this matter. Since the plaintiffs have not alleged a confidential relationship between them and FUNBD, there is no resulting fiduciary duty. Therefore, all the preliminary objections to the breach of fiduciary duty claim as to FUNBD are sustained.

D. Unjust Enrichment

The defendants allege that the plaintiffs have failed to plead a claim of unjust enrichment. Unjust enrichment is a quasi-contractual doctrine based in equity which requires the following elements: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under circumstances that it would be inequitable for defendant to retain the benefit without payment of value. *Wiernik v. PHH U.S. Mortgage Corp.,* 736 A.2d 616, 622 (Pa.Super.Ct.1999), *appeal denied,* 561 Pa. 700, 751 A.2d 193 (2000).

Here, the plaintiffs have sufficiently plead their claim of unjust enrichment. Specifically, plaintiffs have argued that the high amounts charged to and paid by the plaintiffs were conferred on the defendants. Am. Compl. at ¶ 58. Moreover, the plaintiffs assert that the defendants "wrongfully obtained money from" the plaintiffs in the form of high closing costs. Id at ¶ 59. Finally, the plaintiffs assert that it would be inequitable for the "defendants to retain the amounts charged" because they were obtained by "false representation and omissions." Id. at ¶ ¶ 58, 59. All the objections to the plaintiffs' unjust enrichment claim must therefore be overruled.

E. Common Law Fraud

***9** The defendants argue that the plaintiffs' Amended Complaint "fails to fulfill the elements of common law fraud and deceit." Defs' P.O. Mem of Law at 12. Pennsylvania courts have held that to plead a claim of common law fraud, the elements of material misrepresentation of an existing fact, scienter, justifiable reliance on the misrepresentation, and damages, must be proven. *Booze v. Allstate Ins. Co.,* 750 A.2d 877, 880 (Pa.Super.Ct.1999) (citation omitted). The pleadings need only "explain the nature of the claim to the opposing party so as to permit the preparation of a defense" and "be sufficient to convince the court that the averments are not merely subterfuge." *Martin v. Lancaster Battery Co.,* 530 Pa. 11, 18, 606 A.2d 444, 448 (1992) (citing *Bata v. Central-Penn National Bank of Philadelphia,* 423 Pa. 373, 380, 224 A.2d 174, 179 (1966)). In determining whether fraud has been averred with the requisite particularity the court considers the complaint as a whole. *Commonwealth by Zimmerman v. Bell Telephone Co. of Pa.,* 121 Pa. Commw. 642, 551 A.2d 602 (1988).

This court has already determined above that the plaintiffs have sufficiently plead the elements of fraud with regards to the alleged UTPCPL violations. Therefore, this court overrules all the preliminary

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

objections to the plaintiffs' common law fraud claim.

F. Civil Conspiracy

The defendants argue that because the Amended Complaint "fails to allege or show any facts leading to malice on the part of [the defendants]" the court should dismiss the civil conspiracy claims. Defs' P.O. Mem of Law at 13. To state a cause of action for conspiracy, plaintiffs must allege (1) a combination of two or more persons acting with a common purpose to do an unlawful act by unlawful means or for an unlawful purpose, (2) an overt act done in furtherance of the common purpose, and (3) actual legal damage. *Baker v. Rangos,* 229 Pa.Super. 333, 324 A.2d 498, 506 (1974). Malice and intent are required elements of this cause of action, however may be averred generally. *See Larsen v. Philadelphia Newspapers, Inc.,* 411 Pa.Super. 534, 602 A.2d 324, 339 (1991); Pa.R.C.P. 1019(b). Therefore, a complaint for conspiracy must either allege facts that are direct evidence of the combination and intent, or circumstantial evidence that, if proven, will support an inference of the combination and intent. *Baker,* 324 A.2d at 506.

Here, the plaintiffs have sufficiently alleged a claim of conspiracy for purposes of pleadings. Contrary to the defendants' argument, the plaintiffs have generally alleged malice. The plaintiffs claim that the "defendants have agreed to engage in a scheme to injure plaintiffs and other class members by misrepresenting and concealing facts concerning their loans, with the intent that plaintiffs would rely thereon, which caused them to pay unreasonably high closing costs." Pls' Reply Mem. of Law at 20. Whether the plaintiffs can prove that the defendants conspired to injure it will be determined by the evidence presented. For now, however, it is enough that the factual averments of the entire complaint are legally sufficient. Therefore, the court overrules all the defendants' preliminary objections.

V. The Court Cannot Examine the Plaintiffs' Class Action Allegation in the Context of Preliminary Objections

***10** The defendants argue that since factual disparities may exist among the plaintiffs, class certification should not be granted. This argument cannot be raised in the context of preliminary objection and must be overruled.

As this court held in *Weiler,*

Under Pennsylvania Rules of Civil Procedure ("Rules"), the class that the plaintiff claims to represent must be certified by the court. Pa.R.Civ.P. 1707. To certify a class, a court must find that the class meets the requirements of numerosity, predomination of common questions of law or fact, typicality of the named plaintiff's claims, ability of the named plaintiffs to fairly and adequately protect the interests of the class and fairness and efficiency. Pa.R.Civ.P. 1702.
While these five elements are important, a court may not address question of certification "until the pleading stage is concluded, [and] attacks on the form of the complaint or demurrers to attack the substance" have already been disposed of. *Niemiec v. Allstate Ins. Co.,* 721 A.2d 807, 810 (Pa.Super.1998). This is "to ensure that the class proponent is presenting a non-frivolous claim capable of surviving preliminary objections." *Janicik v. Prudential Ins.Co. of America,* 305 Pa.Super 120, 129 (1982). Thus, a trial court reviewing preliminary objections "should not ... concern[ ] itself with the preliminary objections to the class actions allegations at all." *Sherrer v. Lamb,* 319 Pa.Super. 290, 294, 466 A.2d 163, 165 (1983). *See also* Pa.R.Civ.P. 1705 (stating that issues of fact with respect to the class action allegations are not to be raised in preliminary objections); *Niemic,* 721 A.2d at 810 (distinguishing between the certification and the pleading states by stating that "upon a motion for class action certification the court considers whether a claim may be brought by a class of plaintiffs, whereas at the earlier, preliminary stage, the court must decide whether there exists a valid claim to be brought at all, no matter who the plaintiff"). [FN7]

> FN7. One case appears to be an isolated exception to this rule. In *Adamson v. Commonwealth,* 410 A.2d 392, 49 Pa. Commw. 54 (1980), the Superior Court thoroughly measured the proposed class against the class requirement and, based on the defendant's preliminary objections, concluded that the plaintiff's action would not benefit the class. This, however, is the only case where a Pennsylvania court has examined the class itself when reviewing preliminary objections and appears to violate the principle set forth in later cases.

*Weiler,* slip-op at 8-9. Here, the court must limit its current examination of those issues properly raised in preliminary objections, not at a certification hearing. Consequently, the ability of the plaintiffs to sustain

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

this suit in a class action cannot be considered now, and the objections attacking the class allegations must be overruled.

VI. The Preliminary Objections Asserting Agreement for Alternative Dispute Resolution is Overruled

Defendant PRC argues that the plaintiffs "agreed to resolve all claims between $5,000 and $35,000 in amount by submitting such claims to a single arbitrator for the American Arbitration Association." Defs' P.O. Mem of Law at 17. Therefore, PRC argues that "the existence of the arbitration provision divests this Court of jurisdiction." Id. The plaintiffs argue that the present action is beyond the scope of the arbitration provision, and therefore it does not apply here.

***11** The standard of review for a preliminary objection asserting an agreement for alternative dispute resolution is well established. [FN8] When there is a dispute as to whether arbitration should be compelled "judicial inquiry is limited to determining (1) whether a valid agreement to arbitrate exists between the parties and, if so, (2) whether the dispute involved is within the scope of the arbitration agreement." *Midomo Company, Inc. v. Presbyterian Housing Development Co.,* 739 A.2d 180, 186 (Pa.Super.1999). *See also* *Santiago v. State Farm Insurance Co.,* 453 Pa.Super. 343, 683 A.2d 1216, 1217-18 (1996). Thus, when considering a preliminary objection asserting an agreement to arbitrate, a court may not consider the merits of the dispute. *Mesa v. State Farm Insurance Co.,* 433 Pa.Super. 594, 641 A.2d 1167, 1168 (1994).

> FN8. Although the instant case is in the form of a preliminary objection asserting an agreement for alternative dispute resolution, this court applies the same standard to the present case as that for a petition to compel arbitration. *Midomo Company, Inc. v. Presbyterian Housing Development Co.,* 739 A.2d 180 (Pa.Super.1999) (holding that although appellants' preliminary objections are not precisely in the form of a petition to compel arbitration, nevertheless, "the court will not exalt form over substance." *Id .* at 186.)

As the Pennsylvania Supreme Court observed, agreements to settle disputes by arbitration are not only valid but favored by state statute. *Borough of Ambridge Water Authority v. Columbia,* 458 Pa. 546, 328 A.2d 498, 500 (1974). Furthermore, interpretation of an arbitration provision is controlled by rules of contractual construction. Therefore, proper interpretation of a contract "is a question of law. [T]he ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement." *Liddle v. Scholze,* 768 A.2d 1183, 1185 (Pa.Super 2001) (citations omitted).

Applying these standards to the present case, the court submits that, first, there exists a valid arbitration clause between PRC and the plaintiffs only, and, further, the dispute involved here is beyond the scope of this clause. To begin with, there exists a valid arbitration agreement. The Work Authorization Form, which contains the arbitration agreement, was entered into between PRC and the plaintiffs only. Defs' P.O. Mem of Law, Exhibit G (containing signatures of the plaintiffs and the representative of PRC). However, there is nothing in the record which reflects a valid and binding arbitration agreement between First Liberty and the plaintiffs.

Although there exists a valid arbitration agreement between the plaintiffs and PRC, the present dispute, a consumer fraud case, is beyond the scope of the agreement. Here, the agreement is printed on a construction contract for repairs to be completed by PRC on the plaintiffs' homes. The arbitration provision provides for:

> On all claims and/or cause of actions exceeding $5000 and which do not exceed $35,000, the contractor and owner shall submit said claims before a single arbitrator for the American Arbitration Association. The party initiating the claim shall pay the initial costs subject to the decision of the arbitrator to apportion costs. All decisions by the arbitrator shall be binding and enforceable by a court of law. This contract covers and supercedes conversations and agreements, expressed or implied, between the parties, their agents or representatives.

***12** Pls' Reply Mem. of Law at 28-29. Although this arbitration provision does not explicitly exclude the current dispute, [FN9] it is clear from the intent of the parties that it was meant to cover claims arising from the actual repairs to be completed on plaintiffs homes. *Liddle,* 768 A.2d 1183 (giving effect to the intent of the parties as reasonably manifested by the language of their written agreement); *Highmark, Inc. v. Hospital Service Ass'n of Northeastern Pa,* 785 A.2d 93 (Pa.Super.2001) ("[T]he issue of whether a particular dispute falls within a contractual arbitration

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

provision is a matter of law for the court to decide.") (citation omitted). Here, the plaintiffs have no claims against PRC for the construction done pursuant to the Work Authorization Form, but instead have claims based on the alleged fraudulent lending practices of the defendants. Since the current dispute is beyond the scope of the arbitration agreement, this court is not divested of its jurisdiction and therefore overrules the preliminary objection.

FN9. In support of their assertion that Pennsylvania courts refuse to impose a limitation of the scope of an arbitration agreement where no limitation was explicitly stated, the defendants direct this court to several cases. However, none of these are persuasive. In *Kardon v. Portare*, 466 Pa. 306, 333 A.2d 368 (1976), the court held that a controversy contractually assigned to arbitration should remain in arbitration for determination of procedural details. However, *Kardon* does not suggest that a dispute, distinct from the contract to which the arbitration clause was found, should be bound by the same arbitration agreement.
Furthermore, the present arbitration provision is distinguishable from that in *Goral v. Fox Ridge, Inc.* 453 Pa.Super. 316, 683 A.2d 931 (1996), and *Anderson v. Erie Ins. Group*, 384 Pa.Super. 387, 395, 558 A.2d 886, 890 (1989). Unlike the provision before the court presently, both the arbitration provisions in those cases contained language which clearly defined the scope of the arbitration agreement. *Goral*, 683 A.2d at 931 ("Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration"); *Anderson*, 558 A.2d at 888 ( "Disagreement over the legal right to recover damages or the amount of damages will be settled by arbitration ..."). Here, no such language exists. Therefore, the court must determine the scope of the agreement. *Highmark, Inc. v. Hospital Service Ass'n of Northeastern Pa*, 785 A.2d 93 (Pa. Super 2001) ("[T]he issue of whether a particular dispute falls within a contractual arbitration provision is a matter of law for the court to decide.") (citation omitted).

VII. The Court Overrules the Preliminary Objection to the Demand for Punitive Damages

The plaintiffs ask for punitive damages against the defendants. However, the defendants argue that the claim is legally insufficient and insufficiently specific. The court disagrees. In their Amended Complaint, the plaintiffs concede that their punitive damages demand relate only to the tort claims of breach of fiduciary duty, common law fraud and civil conspiracy. These are claims for which the plaintiffs may recover punitive damages. *Delahanty v. First Pennsylvania Bank*, 318 Pa.Super. 90, 130, 464 A.2d 1243, 1262-63 (1983) (stating that punitive damages are available only in tort actions where defendant's conduct was willful, malicious, wanton, reckless or oppressive). Whether the plaintiffs can prove that the defendants acted outrageously, willfully, maliciously, and intentionally, will be determined by the evidence presented. For now, however, it is enough that the factual averments of the entire complaint are legally sufficient to support a demand for punitive damages. Therefore, the preliminary objection is overruled and the plaintiffs' demand for punitive damages under Counts II, IV and V may stand.

VIII. The Court Overrules the Preliminary Objection to the Demand for an Accounting, Rescission, and Restitution

The defendants request that the plaintiffs' demands for an accounting, rescission and restitution be dismissed by this court. In requesting an accounting, a complaint "seeks to turn over to the party wrongfully deprived of possession all benefits accruing to defendant by reason if its wrongful possession." *Boyd & Mahoney v.. Chevron U.S.A.*, 419 Pa.Super. 24, 35, 614 A.2d 1191, 1197 (1992). In reviewing a request for an accounting, "it is reasonable for the court to permit some latitude since often times it is not certain what claims a plaintiff may have until the accounting is completed." *In re Estate of Hall*, 517 Pa. 115, 136, 535 A.2d 47, 58 (1987). An equitable accounting is proper where a fiduciary relationship exists between the parties, where fraud or misrepresentation (of the correct amount due) is alleged, or where the accounts are mutual or complicated, and plaintiff does not possess an adequate remedy at law. *Rock v. Pyle*, 720 A.2d 137, 142 (Pa.Super.Ct.1998) (citations omitted); *See also Pittsburgh's Airport Motel, Inc. v. Airport Asphalt and Excavating Co.*, 469 A.2d 226, 229 (Pa.Super.1983); *Meier v. Maleski*, 648 A.2d 595 (Pa.Commw.Ct.1994).

***13** Here, all the elements are met to withstand a demurrer to a request for an accounting. The

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

plaintiffs request an accounting for all monies paid to the defendants as a result of the alleged misleading closing cost estimates. Am.Compl. at ¶ 69. The plaintiffs also have alleged that a fiduciary relationship existed between themselves, PRC and First Liberty. Id. at ¶ ¶ 51-56. The request for an accounting may only survive if one or more of the other counts survive a demurrer as well. Since the claims of breach of fiduciary duty, common law fraud, and civil conspiracy, will withstand a demurrer, the demand for an accounting may also remain.

The plaintiffs also demand the remedies of rescission and restitution. The purpose of equitable rescission is to return the parties as nearly as possible to their original positions where warranted by the circumstances of the transaction. *Gilmore v. Northeast Dodge Co., Inc.*, 278 Pa.Super. 209, 420 A.2d 504 (1980) (citations omitted). Furthermore, if a plaintiff alleges fraud in a transaction, a right of rescission is established. *Baker v. Cambridge Chase, Inc.*, 725 A.2d 757 (Pa. Super 1999). Here, having already determined that the plaintiffs have sufficiently plead common law fraud, this court allows for the plaintiffs' demand for a rescission to be plead.

In addition to granting equitable relief, in the form of rescission, a court may also allow for the plaintiffs restitution of losses incurred. "Restitution ... is a remedy not inconsistent with rescission." *Baker*, 725 A.2d at 766 (citations omitted). Furthermore, "restitution being an equitable remedy is ... a permissible remedy under the [UTPCPL]." *Commonwealth by Corbett v. Ted Sopko Auto Sales and Locator*, 719 A.2d 1111, 1114 (Pa.Commw.1998). Moreover, the doctrine of unjust enrichment expresses the general principle that a party unjustly enriched at the expense of another should be required to make restitution for benefits received where it is just and equitable to do so and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly. *Crawford's Auto Center v. Pennsylvania State Police*, 655 A.2d 1064 (Pa.Cmwlth.1995). Here, the court has already determined that the plaintiffs have sufficiently alleged claims based on violations of the UTPCPL, and unjust enrichment. Therefore, the plaintiffs may plead a demand for restitution.

CONCLUSION

For the reasons stated above, this court sustains in part the preliminary objections of the defendants. Furthermore, this court directs plaintiffs to file Amended Verifications to their Amended Complaint pursuant to Pa.R.C.P. 1024.

2002 WL 372939 (Pa.Com.Pl.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.