# EXHIBIT 26

Westlaw.

Not Reported in B.R.                                                Page 1
2003 WL 22989669 (Bankr.S.D.N.Y.)
**(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))**

▷

Only the Westlaw citation is currently available.

United States Bankruptcy Court,
S.D. New York.
In re: RSL COM PRIMECALL, INC. and Rsl Com
U.S.A., Inc., Debtors.
THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF RSL COM PRIMECALL, INC.
and
RSL COM U.S.A., Inc., and RSL COM U.S.A., Inc.,
RSL COM Primecall, Inc., and
Ldm Systems, Inc., Plaintiffs,
v.
Joel BECKOFF, Nesim Bildirici, Gustavo Cisneros,
Paul Domorski, Avery Fischer,
Itzhak Fisher, Fred Langhammer, Leonard A. Lauder,
Ronald S. Lauder, Rolland
Mallcott, Michael Marino, Steven Schiffman, Eugene
Sekulow, Donald Shassian,
Jacob Schuster, Nir Tarlovsky, Nicholas Trollope,
and Richard E. Williams,
Defendants.
**Nos. 01-11457 (ALG), 01-11458(ALG), 01-
11459(ALG), 01-11460(ALG), 01-
11461(ALG), 01-11462(ALG), 01-11463(ALG), 01-
11464(ALG), 01-11465(ALG), 01-
11466(ALG), 01-11467(ALG), 01-11468(ALG), 01-
11469(ALG), ADV. 03-2176(ALG).**

Dec. 11, 2003.
Torys, LLP, By: William F. Gray, Jr., William F.
Kuntz, II, Steven R. Schoenfeld, New York, New
York, for the Plaintiffs.

Debevoise & Plimpton, Nesim Bildirici, Paul
Domorski, Avery Fischer, Itzhak Fisher, Ronald S.
Lauder, Rolland Mallcott, Steven Schiffman, Jacob
Schuster, and Eugene Sekulow, By: John S. Kiernan,
Sean Mack, Emily O. Slater, New York, New York,
for Defendants Joel Beckoff.

Loeb & Loeb LLP, By: P. Gregory Schwed, John
Lang, Eric S. Manne, New York, New York, for
Defendant Donald Shassian.

Kramer Levin Naftalis & Frankel LLP, Gustavo
Cisneros, Fred Langhammer, Leonard A. Lauder, and
Nicholas Trollope, By: Gary P. Naftalis, Alan R.
Friedman, Steven S. Sparling, New York, New York,

for Defendants.

Warshaw Burstein Cohen, Schlesinger & Kuh, LLP,
By: Robert Fryd, Donald M. Levinsohn, New York,
New York, for Defendant Michael Marino.

*MEMORANDUM OF DECISION*

GROPPER, Bankruptcy J.

**\*1** On March 15, 2003, RSL COM U.S.A., Inc.
("RSL USA"), RSL COM PRIMECALL, Inc., its
subsidiary, and LDM Systems, Inc., a third-tier
subsidiary (collectively the "Debtors"), together with
the Debtors' Official Committee of Unsecured
Creditors, filed an adversary proceeding against
eighteen individuals, some of whom were RSL
USA's officers or directors and some of whom were
officers or directors of affiliated companies. [FN1]
The complaint is in four counts and sets forth the
following claims for relief: (1) breach of fiduciary
duty, (2) aiding, abetting, inducing or participating in
a breach of fiduciary duty, (3) constructive fraud and
aiding and abetting constructive fraud, and (4)
alter/ego, piercing the corporate veil. Defendants
have moved to dismiss the complaint in its entirety.

> FN1. The defendants ("Defendants") are:
> Joel Beckoff, Nesim Bildirici, Gustavo
> Cisneros, Paul Domorski, Avery Fischer,
> Itzhak Fisher, Fred Langhammer, Leonard
> A. Lauder, Ronald S. Lauder, Rolland
> Mallcott, Michael Marino, Steven
> Schiffman, Eugene Sekulow, Jacob
> Schuster, Donald Shassian, Nir Tarlovsky,
> Nicholas Trollope and Richard E. Williams.
> According to the complaint, the following
> were affiliated with LTD: Messrs. Cisneros,
> Langhammer, L. Lauder, Schuster, Sekulow,
> Shassian and Trollope were directors of
> LTD (Shassian denies this); Messrs.
> Beckoff, Bildirici, Domorski, Fisher, R.
> Lauder, Schiffman, Shassian and Tarlovsky
> were officers of LTD. The following were
> affiliated with PLC: Messrs. Bildirici,
> Fisher, Schuster, Sekulow, Tarlovsky and
> Williams were directors of PLC; R. Lauder
> was Chairman. The following were affiliated
> with RSL USA: Messrs. Beckoff, Domorski,
> Fisher, Mallcott, Marino, Schiffman,
> Shassian and Tarlovsky were directors of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                        Page 2
2003 WL 22989669 (Bankr.S.D.N.Y.)
**(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))**

RSL USA at one time or another; Beckoff, A. Fischer, Fisher, Mallcott, Marino and Tarlovsky were officers of RSL USA. Two of the Defendants, Williams and Tarlovsky, did not appear in this proceeding; Plaintiffs were authorized to move to enter default judgments against them but have not done so.

### FACTS
*The Facts as Alleged in the Complaint*

The following facts alleged in the complaint, presented in the light most favorable to Plaintiffs on this motion to dismiss, are assumed to be true for purposes of this motion.

The Debtors were part of a telecommunications conglomerate that provided services to businesses and residential customers in the United States and abroad. At the top of the corporate structure was a holding company, RSL Communications, Ltd. ("LTD"), incorporated in Bermuda, where it is currently in liquidation proceedings. [FN2] According to the complaint, Ronald S. Lauder owned 28.4% of its stock and controlled 57.2% of the voting power. LTD in turn owned all the stock of RSL Communications PLC ("PLC"), an operating United Kingdom company that is currently in liquidation proceedings in the United Kingdom. PLC in turn owned RSL Com North America ("RSL North America"), an intermediate holding company whose only function was to hold 100% of the stock of RSL USA.

> FN2. LTD also brought a proceeding in this Court under § 304 of the Bankruptcy Code to stay its creditors from taking action against its assets in this country in derogation of the Bermuda proceeding. (Case No. 01-11506.) The § 304 proceeding was largely unopposed and a permanent injunction was entered.

The complaint categorizes Defendants primarily in two groups. Fourteen of the Defendants, a group Plaintiffs refer to as the "Lauder Control Group," are alleged to have controlled RSL USA for their own personal interests and to the detriment of the Debtors and their creditors. [FN3] The remaining four Defendants were directors of RSL USA, and are alleged to have supported and permitted the exercise of control by the Lauder Control Group. [FN4] The complaint alleges that the Lauder Control Group was able to exercise its control over RSL USA through

Ronald S. Lauder and Itzhak Fisher, who were Chairman of the Board and President of LTD, respectively, and were allegedly able to pick and choose the directors of LTD at will. These two individuals indirectly controlled the election of the directors of RSL USA.

> FN3. The Debtors allege the "Lauder Control Group" consisted of the following defendants: Messrs. Bildirici, Cisneros, A. Fischer, Fisher, Langhammer, L. Lauder, R. Lauder, Mallcott, Schuster, Sekulow, Shassian, Tarlovsky, Trollope and Williams.

> FN4. This group includes Messrs. Beckoff (Director and Treasurer/Secretary of RSL USA and Corporate Controller of LTD), Domorksi (Director of RSL USA and President/CEO of LTD), Marino (Director and President of RSL USA) and Schiffman (Director of RSL USA and CFO of LTD).

Against the backdrop of alleged control of RSL USA by the Lauder Control Group and acquiescence by the four other Defendants, the complaint charges wrongdoing that can generally be categorized in the following manner. First, the complaint charges that RSL USA was insolvent and undercapitalized from inception, and/or that it was from the start unable to pay its debts as they became due. (Complaint, ¶¶ 43-44.) By concealing RSL USA's insolvency from creditors, it is alleged, Defendants breached a fiduciary duty to RSL USA and to its creditors, who were unaware of the insolvency, relied on false information and continued to provide goods, services and credit to RSL USA. Thus, the complaint alleges that the fraud damaged the Debtors and all creditors alike. (Complaint, ¶¶ 72- 75.)

*2 Second, the complaint asserts that Defendants breached their fiduciary duties to creditors by wrongfully prolonging the corporate existence of RSL USA and operating it well past the point of insolvency. It is argued that Defendants, in deciding to keep RSL USA in business, were not independent and continued to incur massive amounts of debt when the company should have been liquidated. (Complaint, ¶¶ 46-47.) As the principal example of Defendants' wrongdoing, the complaint claims that Defendants caused RSL USA to guarantee a total of $1.6 billion of the debt of PLC in February, 2000, 13 months prior to RSL USA's chapter 11 filing. This guarantee was of debt issued under seven indentures between PLC as issuer, LTD as guarantor and J.P. Morgan Chase Bank as indenture trustee, pursuant to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                                               Page 3
2003 WL 22989669 (Bankr.S.D.N.Y.)
**(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))**

which PLC issued approximately $1.6 billion in public debt securities from October 1996 through May 1999. RSL USA was not a party to and did not originally guarantee the debt. In February 2000, the complaint alleges, the Lauder Control Group caused PLC and LTD to enter into two additional indentures to raise more capital for the companies (and, it is further charged, to increase the value of Defendants' ownership interest). But unlike practice in connection with the previous seven indentures, the Lauder Control Group allegedly caused RSL USA to guarantee all of the debt, both old and new. On February 14, 2000, Defendants Fisher, Shassian, Beckoff and Marino signed a "Unanimous Written Consent" of the Board of Directors of RSL USA authorizing the officers of RSL USA to execute documentation guaranteeing the full $1.6 billion of old PLC debt, assertedly against RSL USA's interests and without any independent analysis or evaluation. No other subsidiary of LTD had guaranteed the debt of PLC, making RSL USA the only operating subsidiary responsible for the PLC debt. (Complaint, ¶ 56.)

Plaintiffs charge that this guarantee was wrongful and occurred at a time when the RSL enterprise as a whole was suffering net losses in excess of $600 million, with further losses expected through 2001 and beyond. (Complaint, ¶ 53.) Furthermore, it is asserted that with declining revenue in all markets, PLC and/or LTD were unlikely to repay their obligations to the holders of the public debt securities. The complaint charges that Defendants who did not sign the "Unanimous Written Consent" and were not members of the Lauder Control Group also breached their fiduciary duty to the Debtors and their creditors by supporting the guarantees and by failing in their capacity as officers, directors and managers of the business of RSL USA.

Subsequent to the RSL USA guarantee of the $1.6 billion of PLC debt, the complaint further charges, the Lauder Control Group caused PLC, as borrower, and LTD and RSL USA as "guarantors," to enter into a Senior Standby Loan and Warrant Agreement ("the Lauder Loan Agreement"), dated July 6, 2000, with Ronald S. Lauder as lender. This agreement permitted PLC to borrow up to $100 million from Lauder and provided him with warrants to purchase up to 1.5 million shares of LTD stock. It is alleged that Defendant Itzhak Fisher signed the agreements on behalf of PLC, LTD and RSL USA, and that he authorized the guarantee by RSL USA without giving due regard to the interests of RSL USA and without the authorization of its Board of Directors. Plaintiffs

charge that the Lauder Loan Agreement was exclusively for the benefit of the Lauder Control Group and to the detriment of the Debtors and their "non-insider creditors." It is also alleged that the other Defendants either supported or assisted in the making of the guarantee of the Lauder Loan Agreement and thereby failed to carry out their duties to manage the business and affairs of the Debtors in a proper manner. [FN5]

> FN5. This includes Messrs. Joel Beckoff (Director and Treasurer/Secretary of RSL USA and Corporate Controller of LTD), Paul Domorksi (Director of RSL USA and President/CEO of LTD), Michael Marino (Director and President of RSL USA) and Steven Schiffman (CFO of LTD).

*3 The alleged wrongful acts by Defendants can thus generally be summarized as follows: (i) wrongful concealment of the fact that RSL USA was insolvent from its inception to the detriment of RSL USA and its creditors; (ii) wrongful prolongation of the corporate existence of RSL USA to the detriment of RSL USA and its creditors; (iii) wrongful imposition on RSL USA of guarantees totaling $1.7 billion of debt of its parent, PLC; and (iv) misuse of RSL USA's corporate form in a manner that would permit piercing the corporate veil from the American subsidiaries through PLC to LTD. Defendants have sought dismissal as to all counts for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction as to the constructive fraud claims. Alternatively, they seek dismissal on the ground that the complaint does not allege fraud, breach of duty and grounds for piercing the corporate veil with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure and applicable Delaware law.

## DISCUSSION
*The Rule 12(b)(6) Standard*

A complaint may not be dismissed under Federal Rule of Civil Procedure 12(b)(6), incorporated herein by Bankruptcy Rule 7012(b)(6) unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45- 46 (1957). Upon consideration of the allegations contained in the complaint, including any exhibits attached thereto, the Court is obligated to accept all of the allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Stuto v. Fleischman,* 164 F.3d 820, 824 (2d

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                                     Page 4
2003 WL 22989669 (Bankr.S.D.N.Y.)
**(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))**

Cir.1999). The scope of the court's review is limited as the "[i]ssue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511 (2002); *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995). In order to survive a motion to dismiss, a plaintiff only has to allege sufficient facts, not prove them. *Koppel v. 4987 Corp.,* 167 F.3d 125, 133 (2d Cir.1999).

It is with these legal standards in mind that this Court will consider the allegations of the complaint.

*Wrongful Concealment or Constructive Fraud*

The complaint charges that Defendants wrongfully concealed certain facts from RSL USA and its creditors and that Plaintiffs suffered harm as a consequence. Defendants have moved to dismiss the constructive fraud claims on the grounds that: (i) Plaintiffs have no standing to bring the claims, and (ii) even if Plaintiffs have standing, the complaint does not plead the claims with the requisite particularity required by Bankruptcy Rule 7009(b), incorporating Federal Rule of Civil Procedure 9(b).

Constructive fraud has been defined as "a breach of duty which, irrespective of moral guilt and intent, the law declares fraudulent because of its tendency to deceive, to violate a confidence or to injure public or private interests which the law deems worthy of special attention." *Grand Union Mount Kisco Employees Fed. Credit Union v. Kanaryk,* 848 F.Supp 446, 455 (S.D.N.Y.1994), citing *Brown v. Lockwood,* 76 A.D.2d 721, 730-31, 432 N.Y.S.2d 186, 193 (2d Dept.1980). *See also Klembczyk v. Di Nardo,* 265 A.D.2d 934, 936, 705 N.Y.S.2d 743, 744 (4th Dept.1999); *Callahan v. Callahan,* 127 A.D.2d 298, 301, 514 N.Y.S.2d 819, 821 (3d. Dept.1987). In order to establish a claim for constructive fraud, a plaintiff must establish the same elements as a claim for fraud, except that the element of *scienter* is not essential in view of the existence of a fiduciary or confidential relationship between the parties. *Burrell v. State Farm and Cas. Co.,* 226 F.Supp.2d 427, 438 (S.D.N.Y.2002). The elements of a cause of action for constructive fraud under New York law, which all parties agree is applicable on the constructive fraud claims, are the following: (1) a representation was made, (2) the representation was of a material fact, (3) the representation was false, (4) the representation was made with intent that the other party would rely upon it, (5) the other party did, in fact, rely on the representation without knowledge of its falsity, (6)

injury resulted and (7) the parties were in a fiduciary or confidential relationship. *See Northwestern Nat'l Ins. Co. of Milwaukee, Wisconsin v. Alberts,* 717 F.Supp. 148, 155 (S.D.N.Y.1989); *Brown v. Lockwood,* 76 A.D.2d at 730.

Standing

**\*4** Defendants first argue that Plaintiffs lack standing to pursue the constructive fraud claims. They contend that the constructive fraud charges (i) cannot be brought on behalf of all creditors generally because such claims, if they exist, belong to individual creditors, and (ii) cannot be brought on behalf of RSL USA because it was not harmed or injured by the alleged wrongdoing.

It is black letter law that a trustee in bankruptcy (including a debtor in possession) may only pursue claims that belong to the estate. *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 429 (1972). A claim may belong to a bankrupt company, such as RSL USA, only where the complaint can identify a direct injury to the debtor, or in limited circumstances where the claim is so generally for the benefit of all creditors as an undifferentiated group that the trustee can be considered to be acting for "creditors generally ." *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688, 696-700 (2d Cir.1989); *Murray v. Miner,* 876 F.Supp. 512, 516-17 (S.D.N.Y.1995), *aff'd,* 74 F.3d 402 (2d Cir.1996). Because standing is a jurisdictional matter, the burden is on the plaintiff "clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Thompson v. County of Franklin,* 15 F.3d 245, 249 (2d Cir.1994).

Whether a claim is property of the estate or of individual creditors depends on whether the claim is general or particular. "[I]f the claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." *Kalb, Voorhis & Co. v. American Fin. Corp.,* 8 F.3d 130, 132 (2d Cir.1993), quoting *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d at 701. The question whether a claim is general, so that it should be brought by a trustee, or particular, so that it belongs to individual creditors, is a question of state law, which in this case is New York law. *In re Mediators, Inc.,* 105 F.3d 822, 825 (2d Cir.1997).

In the instant complaint Plaintiffs charge Defendants

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                                    Page 5
2003 WL 22989669 (Bankr.S.D.N.Y.)
**(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))**

with failure to disclose certain facts, particularly that RSL USA was "insolvent from inception." Since RSL USA was in existence for approximately six years, Plaintiffs lump together creditors who allegedly relied on information made available by Defendants over a six-year period. In addition to a failure to plead fraud over such a long period with particularity (see below), there is no basis on which Plaintiffs' basic premise-that all creditors were damaged identically by a six-year course of non-disclosure-can be accepted, even on this motion to dismiss. Plaintiffs cannot be deemed to act as surrogates for all creditors who extended credit to the Debtors throughout this entire period and necessarily relied (or did not rely) on different information at different times. It is no answer that the failure to disclose insolvency was common throughout the period. A cause of action for fraudulent concealment requires, in addition to a misrepresentation and a fiduciary or confidential relationship, reliance and subsequent injury. *See Banque Arabe Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir.1995); *Congress Fin. Corp v. John Morrell & Co.*, 790 F.Supp. 459, 472 (S.D.N.Y.1992). In this case, charging a State law wrong, Plaintiffs are not relieved of their burden of alleging and proving individual reliance and damages. *Orderline Wholesale Distribs., Inc. v. Gibbons, Green, van Amerongen, Ltd.*, 675 F.Supp. 122, 129 (S.D.N.Y.1987). Fraud is a claim that peculiarly belongs to individual plaintiffs who had different access to information about RSL USA at different times, and in some cases may not have relied on any information. *In re Granite Partners*, 194 B.R. 318, 320 (Bankr.S.D.N.Y.1996).

**\*5** Defendants also challenge the standing of Plaintiffs on the ground that RSL USA was conferred a benefit and not harmed by the alleged wrongful concealment. The intentional distortion of a corporation's financial picture and its solvency, for the purpose of misleading creditors to extend goods and services, is undoubtedly wrongful. But absent an allegation of direct injury to the corporation, or a diversion of goods or services from the company, it cannot be presumed that the alleged wrongful concealment of RSL USA's insolvency from creditors harmed or injured RSL USA. *See Colotone Liquidating Trust v. Bankers Trust New York Corp.*, 243 B.R. 620 (S.D.N.Y.2000), where the court had before it claims for fraud and breach of fiduciary duty and held that there was no injury to the debtor Colotone where its controlling affiliate allegedly knowingly disseminated false financial information about it. "On the contrary, there is every reason to

suppose that Colotone was the beneficiary of any such deceit because it would have resulted in its receiving goods and services, the obligation to pay for which was discharged in bankruptcy." *Id. at 622.*

Plaintiffs cite several cases for the proposition that RSL USA was harmed by the non-disclosure. In these cases, the real harm suffered by the company was the self-dealing or looting engaged in by insiders during the period of non-disclosure. *See e.g., Schacht v. Brown*, 711 F.2d 1343 (7th Cir.1983), an action to recover for RICO violations against officers, directors and the parent corporation who allegedly kept an insurer in business past the point of insolvency; the court found that the corporation was harmed because the defendants looted the insurer of valuable business, not because of the non-disclosure; *Investors Funding Corp. of New York Sec. Litig. v. Dansker (In re Investors Funding Corp. Sec. Litig.)*, 523 F.Supp. 533 (S.D.N.Y.1980), where principal officers and directors created the false appearance of fiscal strength to raise capital for plundering.

Plaintiffs, in their papers responding to the instant motion, argue for the first time that all three alleged wrongful acts-the concealment of insolvency, the prolongation of the life of RSL USA and the guarantees of $1.7 billion of parent debt-are inextricably linked together and give the complaint any necessary allegations of looting. They argue that Defendants continued to sink RSL USA into deepening insolvency and hid RSL USA's insolvency from creditors so that they could wrongfully guarantee the $1.7 billion of parent company debt. Passing the fact that this new theory does not appear in the complaint, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir.1998), it does not bolster the Plaintiffs' standing to bring constructive fraud or wrongful concealment claims. First, there is no allegation that the fact of the guarantees was concealed. Second, the complaint is still insufficient for the Court to find that the constructive fraud claims can be brought on behalf of "creditors generally." Plaintiffs cannot bring the same constructive fraud claims on behalf of those creditors who may have extended credit after disclosure of the guarantees as they could on behalf of others who extended credit unknowingly.

**\*6** Accordingly, Plaintiffs do not have standing to bring the constructive fraud claims on behalf of "creditors generally" of RSL USA, and Defendants' motion to dismiss these claims is granted. *A fortiori*, Plaintiffs do not have standing to pursue claims for aiding and abetting any such constructive fraud.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                              Page 6
2003 WL 22989669 (Bankr.S.D.N.Y.)
(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))

*Constructive Fraud Not Pleaded With 9(b) Particularity*

In any event, the constructive fraud claims would have to be dismissed because they have not been pleaded with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Irrespective of whether a claim is for actual fraud or constructive fraud, Rule 9(b) applies. *See Burrell v. State Farm & Casualty Co., 226 F.Supp.2d at 438; Victor v. Riklis, 1992 WL 122911, at *5 n. 6 (S.D.N.Y.1992)* ("Rule 9(b)'s particularity requirements are not 'relaxed' for constructive fraud claim."); *Frota v. Prudential Bache Sec., Inc., 639 F.Supp. 1186, 1193 (S.D.N.Y.1986)* ("Rule 9(b) extends to all averments of fraud or mistake, whatever may be the theory of legal duty-statutory, common law, tort, contractual or fiduciary.").

Plaintiffs argue that cases assessing the pleading requirements for constructive fraudulent *transfer* claims have held that the heightened pleading requirements of Rule 9(b) do not apply. *See Securities Investor Protection Corp. v. Stratton Oakmont, Inc., 234 B.R. 293, 310 (Bankr.S.D.N.Y.1999); see also In re White Metal Rolling and Stamping Corp., 222 B.R. 417, 428 (Bankr.S.D.N.Y.1998); In re Allegheny Health, Educ. & Research Found., 253 B.R. 157, 162 n. 2 (Bankr.W.D.Pa.2000).* This argument is misplaced. The instant claims are for constructive fraud or wrongful concealment, not for a constructive fraudulent *transfer,* which is a separate and distinct cause of action with different elements. [FN6] Moreover, in the cases cited by Plaintiffs, Rule 9(b) has been "relaxed" where a trustee who had no direct knowledge of the case has been appointed and could not frame a detailed complaint without discovery and access to information. Such is not the case here. Plaintiffs have already had discovery and access to information, including the books and records of RSL USA and depositions of both Ronald S. Lauder and Itzhak Fisher, the primary members of the alleged Lauder Control Group. [FN7]

> FN6. A constructive fraudulent transfer claim has nothing to do with fraud, and instead is based on the transferor's financial condition and the sufficiency of the consideration provided by the transferee. *See In re White Metal Rolling and Stamping*

*Corp., 222 B.R. at 428-29* (noting also a split of authority as to whether Rule 9(b) applies to constructive fraudulent transfer claims).

> FN7. This also answers Plaintiffs' contention that if Rule 9(b) does apply, they should be entitled to leniency in the pleading requirement on the ground that courts sometimes grant such leniency to a trustee who has never had an opportunity to conduct discovery.

Thus, the complaint's allegations of fraudulent concealment must comply with Rule 9(b). "To pass muster [under Rule 9(b) ] in this Circuit, a complaint 'must allege with some specificity the acts constituting fraud' ... conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings, Ltd., 85 F.Supp.2d 282, 293 (S.D.N.Y.2000),* quoting *Lobatto v. Berney, 1999 WL 672994, at *9 (S.D.N.Y.1999).* This is particularly true where fraud is alleged against multiple defendants. *Ellison v. Am. Image Motor Co., Inc. 36 F.Supp.2d 628, 640-41 (S.D.N.Y.1999)* ("where a case involves multiple defendants F.R.C.P 9(b) requires that the complaint allege facts specifying each defendant's contribution to the fraud, identifying which defendant is responsible for which act.").

*7 Here, even if Plaintiffs could overcome the standing requirements, they have not adequately pleaded the constructive fraud claims pursuant to Rule 9(b). It is not enough, as Plaintiffs argue, merely to state the elements of a constructive fraud claim and assert generally that a fiduciary relationship was established with creditors and subsequently breached. The complaint lacks any specific misrepresentation that was made to creditors or any specific detrimental reliance and subsequent injury thereto. Simply stating that RSL USA was "insolvent from inception" and that Defendants-all eighteen of them-are somehow culpable does not comport with the requirements of Rule 9(b).

*Wrongful Prolongation of RSL USA's Corporate Life*

The second principal charge against Defendants is that they (i) breached their fiduciary duties to creditors by wrongfully prolonging the corporate existence of RSL USA when they should have liquidated it for the benefit of creditors, and (ii) cannot rely on the business judgment rule because

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                    Page 7
2003 WL 22989669 (Bankr.S.D.N.Y.)
**(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))**

they were not independent. Defendants argue that
these claims should be dismissed because (i) they did
not breach any fiduciary duty to creditors, as there is
no "duty to liquidate," and (ii) a decision by directors
to keep an insolvent corporation operating is subject
to the business judgment rule, and the complaint does
not set forth sufficient allegations to overcome the
presumption of validity that the business judgment
rule confers. The parties agree that Delaware law
applies, as RSL USA is a Delaware corporation and
the charges relate to the duties of its directors. *See
Walton v. Morgan Stanley Co.,* 623 F.2d 796, 798 (2d
Cir.1980); *H.S.W. Enters., Inc. v. Woo Lae Oak, Inc.,*
171 F .Supp.2d 135, 142 (S.D.N.Y.2001).

The Alleged Duty to Liquidate

The fiduciary duty of a director of a financially
troubled corporation has been the subject of much
analysis by both courts and commentators.
Traditionally, under Delaware law, directors owe
fiduciary duties to stockholders, and perhaps to the
corporation, and the relationship between directors
and creditors is not fiduciary but contractual in
nature. *See Katz v. Oak Indus., Inc.,* 508 A.2d 873
(Del. Ch.1986); *Mia Shoes v. Republic Factors
Corp.,* 1997 WL 525401 (S.D.N.Y.1997); *In re
Hechinger Inv. Co. of Delaware,* 274 B.R. 71, 88
(D.Del.2002). *See also,* 3A W. Fletcher, *Private
Corporations* § 1035.60 (2003). Insolvency,
however, changes the scope of a director's duties, and
upon insolvency directors owe fiduciary duties to
creditors or, stated differently, to the corporation and
to all of its interested constituencies, including
creditors and shareholders. *See Geyer v. Ingersoll
Publ'ns Co.,* 621 A.2d 784 (Del. Ch.1992); *In re
Subpoena Issued to Friedman,* 286 B.R. 505, 508
(S.D.N.Y.2002); *In re Kingston Square Assocs.,* 214
B.R. 713, 736 n. 24 (Bankr.S.D.N.Y.1997). The
rationale behind the "insolvency exception" is that
the fiduciary duties held ordinarily for the benefit of
shareholders should shift to creditors who "now
occupy the position of residual owners." *Geyer v.
Ingersoll Publ'ns Co.,* 621 A.2d at 787.

*8 In *Credit Lyonnais Bank Nederland, N.V. v.
Pathe Communications Corp.,* Civ. 12150, 1991 WL
277613, at *34 n. 55 (Del. Ch.1991), the Delaware
Chancellor held that when a corporation is "in the
vicinity of insolvency," the directors owe fiduciary
duties to the entire "community of interests" of those
involved with the corporation, including creditors.
Subsequent decisions have emphasized that when
managing a corporation "in the vicinity of
insolvency," directors must consider the best interests

of the corporation, and not just the interests of either
creditors or shareholders alone. "[W]hile this duty
does not necessarily place creditor interests ahead of
the interests of stockholders, it requires the board to
maximize the corporation's long-term wealth creating
capacity." *In re Hechinger Inv. Co. of Delaware,* 274
B .R. at 89; *In re Ben Franklin Retail Stores, Inc.,*
225 B.R. 646, 654 (Bankr.N.D.Ill.1998), *aff'd in part
by,* 1999 WL 982963 (N .D. Ill.1999), *rev'd in part
on other grounds,* 2000 WL 28266 (N.D. Ill 2000).
*See also,* Jonathan C. Lipson, *Directors' Duties to
Creditors: Power Imbalance and the Financially
Distressed Corporation,* 50 U.C.L.A. L. REV. 1189
(2003); Steven L. Schwarz, *Rethinking a
Corporation's Obligation to Creditors,* 17
CARDOZO L.REV. 647 (1996); Ann E. Conway
Stilson, *Reexamining the Fiduciary Paradigm at
Corporate Insolvency and Dissolution: Defining
Directors' Duties to Creditors,* 20 DEL. J. CORP. L.
1 (1995).

In the case at bar, the dispute between the parties as
to the wrongful prolongation claims does not center
around the abstract question whether directors of an
insolvent corporation have fiduciary duties to
creditors, but rather the scope of those duties. Most of
the Defendants do not seriously contend that directors
of an insolvent corporation are free of any fiduciary
duties to creditors. Defendants argue principally that
there is no absolute duty for directors of an insolvent
corporation to liquidate for the immediate benefit of
creditors. [FN8] Instead, in pursuance of their duties
to the entire corporate enterprise, directors facing the
decision whether to continue a corporation in
business or to file an insolvency petition must still
seek to "maximize the corporation's long-term wealth
creating capacity." Such a decision, Defendants
argue, is entitled to the protection of the business
judgment rule absent self-dealing, which they assert
has not been effectively alleged in this case.

> FN8. Several of the Defendants contend that
> even when the corporation is insolvent, the
> directors of a subsidiary corporation owe
> duties only to the parent company. This
> argument is dealt with below.

There is no authority that supports Plaintiffs' position
that there is a blanket duty to liquidate upon
insolvency, untempered by the business judgment
rule. Plaintiffs have not cited any case in the United
States that supports this bald proposition. It would
require directors to determine what standard of
insolvency might apply-two possibilities are inability
to pay debts as they come due (as used in §

Not Reported in B.R.                                                                                                 Page 8
2003 WL 22989669 (Bankr.S.D.N.Y.)
**(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))**

303(b)(1) of the Bankruptcy Code) and balance sheet insolvency (as defined in § 101(32)). *See Geyer v. Ingersoll Publ'ns Co.,* 621 A.2d. at 789, which refers to them both. It would then require them to make a determination as to the exact status of the corporation's financial affairs, on pain of liability to creditors. In the absence of the protection of the business judgment rule, a director would ordinarily have to opt for an insolvency filing, as the director could have little confidence that the corporation would not, in the bright light of hindsight, be deemed to have been insolvent under one definition or the other. It has never been the law in the United States that directors are not afforded significant discretion as to whether an insolvent company can "work out" its problems or should file a bankruptcy petition. *See Sanford Fork & Tool Co. v. Howe, Brown & Co.,* 157 U.S. 312, 319 (1895), where the Court said, in a different context, "Surely, a doctrine like that would stand in the way of the development of any new enterprise." *See also, In re Ben Franklin Retail Stores, Inc.,* 225 B.R. at 655, where the court rejected the notion of "a duty to liquidate and pay creditors when the corporation is near insolvency, provided that in the directors' informed, good faith judgment there is an alternative." [FN9]

> FN9. United States law differs markedly in this respect from the laws of many other countries, where by statute directors can be liable for corporate debts if they continue to trade after liquidation appears unavoidable. *See In re Ionica, PLC,* 241 B.R. 829, 839 (Bankr.S.D.N.Y.1999), citing § 214(2) of the English Insolvency Act that makes a director liable for the debts of a corporation if he "knew or ought to have concluded that there was no reasonable prospect that the company would avoid going into insolvent liquidation." *See also,* Carl Felsenfeld, *et al., International Insolvency* (2000), at vol. II, pp. U.K. 24-25 and U.S. 22-25 for a comparison of English and American law on this point.

*\*9* Plaintiffs cite four cases for the proposition that the business judgment rule is inapplicable to insolvent corporations. None is persuasive. In *Askanase v. Fatjo,* 1993 WL 208440 (S.D.Tex.1993), the court considered a claim to recover a preferential transfer by the Chapter 7 trustee, and discussed both Texas and Delaware law before ultimately concluding that it could not determine which state's law applied. In *dicta,* the court stated that the business judgment rule has no effect in the context of

insolvency. [FN10] In *Shultz v. Miramar Res., Inc.,* 208 B.R. 723 (M.D.Fla.1997), the court does not even discuss the business judgment rule. In *In re General Homes Corp.,* 199 B.R. 148 (Bankr.S.D.Tex.1996), the court-applying Texas-held that the business judgment rule has "no consequence in the context of a conservatorship." In *In re Performance Nutrition, Inc.,* 239 B.R. 93 (N.D.Tex.1999), another case applying Texas law, the court cited *In re General Homes Corp.* for the proposition that the business judgment rule *may* be wholly inapplicable where the corporation is insolvent.

> FN10. The court held there were outstanding questions as to whether or not Delaware law applied to the case, but that if Delaware law were applicable, it would apply the Delaware Trust Fund Doctrine. This doctrine provides that under certain circumstances, a corporation's assets are deemed a *res,* held in trust by corporate fiduciaries for the benefit of creditors. *See American Nat'l Bank of Austin v. Mortgage Am., (In re Mortgage Am.),* 714 F.2d 1266, 1268-69 (5th Cir.1983). The complaint contains no reference to the doctrine, and one commentator states it has been repudiated. 15A W. Fletcher, *Private Corporations* § 7373 (2003).

In sum, Plaintiffs have no substantial support for the proposition that a director's decision to postpone a bankruptcy filing and attempt to "work out" a financial problem is not subject to the business judgment rule, a rule that protects directors' decision-making in other situations.

The Business Judgment Rule

The business judgment rule in Delaware law creates a presumption that in making a business decision the disinterested directors of a corporation act on an informed basis, in good faith and in the honest belief that the action taken is in the best interests of the company. *See Aronson v. Lewis,* 473 A.2d 805, 812 (Del.1984); *Parnes v. Bally Entm't Corp.,* 722 A.2d 1243, 1246 (Del.1999); *Unocal Corp. v. Mesa Petroleum Co.,* 493 A.2d 946, 954 (Del.1985). The presumptive validity of an exercise of business judgment is rebutted in cases where the decision under attack is "so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith." *Ryan v. Aetna Life Ins. Co.,* 765 F.Supp. 133, 138

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
2003 WL 22989669 (Bankr.S.D.N.Y.)
(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))

Page 9

(S.D.N.Y.1991). A plaintiff bears the burden of alleging well-pleaded facts to overcome the presumption and survive a motion to dismiss. *Id.; Aronson v. Lewis,* 473 A.2d at 812.

In the instant case, Defendants argue that Plaintiffs have failed to plead any specific facts that would demonstrate that their decision not to file an insolvency petition for RSL USA earlier than in 2001 was not taken on an "informed basis, in good faith and in an honest belief that the action was in the best interest of RSL USA ." They argue further that courts that have actually addressed the issue of the duty of directors of insolvent corporations have uniformly found officers and directors not liable in the absence of self-dealing. *See In re Ben Franklin Retail Stores, Inc.,* 225 B.R. at 655-56, where the court-relying on Delaware law-dismissed a claim for wrongful prolongation of corporate life where the directors of an insolvent corporation were alleged to have manipulated accounts so that third parties would continue to lend money and supply inventory. The court found that the complaint was subject to dismissal because it did not allege specific facts demonstrating that the directors failed to use the corporate assets in an "informed, good faith effort to maximize the corporation's long-term wealth creating capacity", citing *Credit Lyonnais,* 1991 WL 277613, at *34. The court further noted, in dismissing the claim, that "All of the decisions in which courts have allowed creditors to recover for breach of fiduciary duty have involved directors of an insolvent corporation diverting corporate assets for the benefit of insiders or preferred creditors." *Id.* at 655, citing Laura Lin, *Shift of Fiduciary Duty Upon Corporate Insolvency: Proper Scope of Directors' Duty of Creditors,* 46 VAND. L.REV. 1485, 1512 (1993). [FN11] *See also, Bank of America v. Musselman,* 222 F.Supp.2d 792, 799-800 (E.D.Va.2002), where the court also cites and relies on the Lin article.

> FN11. In that article, on which the Defendants rely and which will be further discussed below, the author concludes that courts have permitted creditors to recover for breach of fiduciary duty in different contexts where self-dealing is alleged. The article includes, as one type of self-dealing, the situation where directors allegedly have "permitted the company to engage in transactions, usually without fair consideration to the company, for the benefit of its parent corporation or related entities". Lin, 46 VAND. L.REV. at 1514.

*10 Except for the transaction discussed below (the corporate guarantees), Plaintiffs have failed to allege any specific fact that would amount to self-dealing on the part of Defendants. One specific charge made by the complaint with respect to an "insider transaction" is that Ronald S. Lauder made a $100 million loan and received "valuable" warrants at a time when PLC, LTD and RSL USA were all insolvent. It appears that, as it turned out, the warrants were worthless, and Lauder received only a claim in two insolvency cases. [FN12] In any event, whether or not Lauder lost most of his investment, for present purposes it cannot be ignored that at a time when LTD, PLC and RSL USA were arguably insolvent and nearing collapse, Lauder put money into PLC on an unsecured basis, instead of taking it out. [FN13]

> FN12. The Court can take judicial notice of the fact that Lauder filed a claim for $100 million in the RSL USA Chapter 11 cases; according to the Disclosure Statement for the Debtors' First Amended Plan of Reorganization, he will receive at best a very small recovery.

> FN13. We discuss separately below the charge that RSL USA's guarantee of the Lauder Loan involved a breach of fiduciary duty.

As another example of alleged bad faith, Plaintiffs allege that Defendants should have sought equity infusions to fund RSL USA, rather than continuing to accumulate debt. It is, at best, an open question whether RSL USA could have attracted equity investors, given that Plaintiffs allege it was "insolvent from inception." In any case, absent well-pleaded allegations of specific acts of self-dealing or even bad faith, Plaintiffs cannot overcome the presumption afforded by the business judgment rule that the directors acted reasonably and in good faith in the manner in which they obtained funding for the business.

Nor have Plaintiffs shown that there was such a lack of independence on the part of the directors as to make the business judgment rule generally inapplicable. Plaintiffs have alleged that most if not all Defendants were not independent because they were close associates, "beholden" to Ronald S. Lauder and Itzhak Fisher, and that the other Defendants feared that the exercise of good faith judgment could compromise their employment or other relationships. But domination and control is not established by arguing that a director is not

Not Reported in B.R.                                                                                          Page 10
2003 WL 22989669 (Bankr.S.D.N.Y.)
(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))

independent because of selection by and ties to an interested director. This is a common and accepted way of becoming a corporate director. *In re Walt Disney Co. Derivative Litig.,* 731 A.2d 342, 355 (Del. Ch.1998), *aff'd in relevant part,* 746 A.2d 244 (Del.2000); *Aronson v. Lewis,* 473 at 816. Plaintiffs also assert that each defendant had a personal stake in LTD in that he possessed a stock ownership interest in it. This, too, is not enough; conclusory allegations, unaccompanied by specific factual allegations that directors were somehow controlled or dominated are insufficient to establish a lack of independence. *See Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Investcorp S.A.,* 1999 WL 754015, at *5 (S.D.N.Y.1999); *Polar Int'l Brokerage Corp. v. Reeve,* 108 F.Supp.2d 225, 247 (S.D.N.Y.2000).

Except in one respect, which will be discussed next, Plaintiffs have not in the instant complaint shown enough to rebut the presumptive validity of the business judgment of Defendants in continuing RSL USA's corporate existence.

*Wrongful Guarantee of Affiliate Debt*

**\*11** The one exception referred to above, and the principal specific act of wrongdoing alleged in the complaint, is RSL USA's guarantee of $1.6 billion of the outstanding debt of PLC at a time when both entities were insolvent. It is alleged, and presumed as true, that the Defendants who were directors of RSL USA at the time-Messrs. Fisher, Shassian, Beckoff and Marino-signed a Unanimous Written Consent of Directors approving the guarantees. They thereby authorized the assumption of $1.6 billion of the debt of the parent, allegedly amidst the backdrop of net losses of the corporate group in excess of $600 million. It is alleged that the guarantee was approved just days after the directors took office without any independent analysis or evaluation whatsoever. It is also alleged that, thereafter, RSL USA guaranteed the $100 million Lauder Loan, bringing the total amount of PLC debt guaranteed by RSL USA to $1.7 billion, and that defendant Fisher signed that guarantee on behalf of RSL USA without even obtaining the authorization of the RSL USA Board. Plaintiffs argue that the directors of RSL USA breached their direct fiduciary duty to RSL USA and that the other Defendants were *de facto* directors of RSL USA and directed and/or aided and abetted the breach of fiduciary duty of the RSL USA Board members. In short, Plaintiffs allege, all Defendants, in one way or another, breached a fiduciary duty to RSL USA in connection with the guarantees.

Defendants contend that these claims should be dismissed because (i) the guarantees embody decisions made by RSL USA officers and directors that are entitled to the protection of the business judgment rule, (ii) the complaint does not identify how any director benefited and that the guarantees accordingly did not reflect self-dealing, and (iii) Defendants who were not RSL USA board members had no fiduciary duties to RSL USA and certainly cannot be charged with the wrongdoing in connection with the guarantees.

As discussed above, decisions made by directors are protected by a presumption of validity under the business judgment rule. The allegations as to the guarantees, however, charge the directors with authorizing precisely that type of conduct which the courts have held is proscribed for a corporation operating in the vicinity of insolvency: "transactions, usually without fair consideration to the company, for the benefit of the parent corporation or related entities." *See* Lin, 46 VAND. L.REV. at 1514, citing *Federal Deposit Ins. Co. v. Sea Pines Co.,* 692 F.2d 973 (4th Cir.1982), *cert. denied,* 461 U.S. 928 (1983); *Clarkson v. Shaheen Co. Ltd.,* 660 F.2d 506 (2d Cir.1981), *cert. denied,* 455 U.S. 990 (1982); *Automatic Canteen Co. of Am. v. Wharton,* 358 F.2d 587 (2d Cir.1966); and *South Falls Corp. v. Rochelle,* 329 F.2d 611 (5th Cir.1964). These cases do not require that the plaintiffs allege that each defendant director was the recipient of a direct pecuniary benefit from a challenged transaction, but in each the transaction allegedly benefited only the affiliate and was patently inequitable to the subsidiary. Here, especially in view of the enormous size of the guarantees and the lack of any record of any review of their propriety, the Plaintiffs' have adequately alleged self-dealing. *In re Healthco Int'l Inc.,* 208 B.R. 288, 305 (Bankr.D.Mass.1997); *see also, Arwood v. Dunn (In re Caribbean),* 288 B.R. 908, 919 (Bankr.S.D.Fla.2002); *In re STN Enters.,* 779 F.2d 901, 902 (2d Cir.1985).

**\*12** Moreover, the business judgment rule does not protect conduct of directors where material decisions are made in the absence of any information and any deliberation. Allegations that the RSL USA directors abdicated all responsibility to consider action that was arguably of material importance to the corporation puts directly in question whether the board's decision-making processes were employed in a good faith effort to advance corporate interests. *See In re Walt Disney Co. Derivative Litig.,* 825 A.2d 275 (Del. Ch.2003); *see also Pereira v.Cogan,* 2001 WL 243537, at *13 (S.D.N.Y.2001). Based on the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

allegations in the complaint, a breach of fiduciary duty claim has been adequately pleaded against those RSL USA directors who signed the "Unanimous Written Consent" for the $1.6 billion guarantee, as well as against the director who purported to authorize the guarantee of the Lauder Loan without even obtaining Board approval.

These defendants argue that they are relieved from all potential liability on the facts alleged in the complaint by virtue of an exculpation clause in RSL USA's certificate of incorporation. RSL USA's exculpation clause eliminates directors' liability for all claims of breach of duty founded upon negligence, including gross negligence, but does not eliminate claims based on breach of loyalty and does not bar "[a]cts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law...." With respect to the guarantees, Plaintiffs have challenged the Defendants' good faith and this is enough, at this stage, to overcome the exculpation clause. *See* *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 286 (Del. Ch.2003), where there was a similar clause at issue. It has also been held that an exculpation clause allocates the risk of loss only between the parties to the articles of incorporation, *i.e.*, the shareholders and the directors, but not as among directors and third parties such as creditors, and that it therefore does not affect suits by creditors. *See* *Pereira v. Cogan*, 2001 WL 243537, at *10, *In re Ben Franklin Retail Stores, Inc.*, 2000 WL 28266, at *7-8.

The Defendants further contend that the facts alleged in the complaint, together with facts of record in the RSL USA Chapter 11 case, demonstrate that there could be no damages because RSL USA attempted to set aside the guarantees. But the Chapter 11 record shows that the Debtors were only partially successful in this effort. Moreover, it is premature to reach issues of damages on this motion. There may be defenses to the charges in the complaint, but at this stage a claim has been properly pleaded against four of the Defendants.

Finally, certain of these Defendants argue that they owed no duty to RSL USA because RSL USA was part of a larger corporate group and a subsidiary of another corporation. They advance this proposition by quoting out of context statements in several decisions where the actions of a parent corporation were challenged by the new shareholders of the subsidiary after the subsidiary had been spun off. *See Anadarko Petroleum Corp. v. Panhandle Eastern Corp.*, 545 A.2d 1171, 1174 (Del.1998), where the

court stated, "in a parent and wholly-owned subsidiary context, the directors of the subsidiary are obligated only to manage the affairs of the subsidiary in the best interests of the parent and its shareholders"; *see also* *Aviall v. Ryder System*, 913 F.Supp. 826, 832 (S.D.N.Y.1996), *aff'd on other grounds*, 110 F.3d 892 (2d Cir.1997). In those cases, however, the holding merely reflected the principle that directors of a solvent corporation are obligated to manage it in the interest of the shareholders-in those cases, the parent corporation. None of the cases involved the duty that directors owe to the corporation and its entire community of interests when the corporation is in the vicinity of insolvency.

**\*13** It would be absurd to hold that the doctrine that directors owe special duties after insolvency is inapplicable when the insolvent company is a subsidiary of another corporation. That is precisely when a director must be most acutely sensitive to the needs of a corporation's separate community of interests, including both the parent shareholder and the corporation's creditors. The Delaware courts have recognized that directors who hold dual directorships in the parent-subsidiary context may owe fiduciary duties to each corporation. *Weinberger v. UOP*, 457 A.2d 701, 710 (Del.1983); *In re Digex Inc. Shareholders Litig.*, 789 A.2d 1176, 1205-06 (Del. Ch.2000), citing *Warshaw v. Calhoun*, 221 A.2d 487, 492 (1966); *see Shaev v. Wyly*, 1998 WL 13858 (Del. Ch.1998), *aff'd*, 719 A.2d 490 (Del.1998). There is no basis for the principle propounded by a few of the Defendants that the directors of an insolvent subsidiary can, with impunity, permit it to be plundered for the benefit of its parent corporation.

The Other Defendants

Plaintiffs seek to impose liability not only on the directors of RSL USA who participated in the approval of the guarantees but also on additional defendants. These include the following:

*1. The "Non-Participating" Directors of RSL USA and Its Officers*

Plaintiffs have named as defendants four individuals who were directors of RSL USA at times that are not clearly stated in the complaint. This includes Domorski, a director starting "some time in 2000"; Mallcott, an officer starting February 3, 2000 and a director "in 2000"; Schiffman, a director from "on or about February 3, 2000"; and Tarlovsky, a director "at various times." Plaintiffs also name one individual, Avery Fischer, who was RSL USA's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                     Page 12
2003 WL 22989669 (Bankr.S.D.N.Y.)
**(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))**

Assistant Secretary and General Counsel. These Defendants also seek dismissal of the complaint as against them, and they are entitled to it. In brief, the complaint is simply too vague to retain these individuals as defendants in a $1.8 billion lawsuit, when Plaintiffs do not even clarify when they became directors so that it is clear what they did wrong. *See Goodrich v. E.F. Hutton Group, Inc., 542 A.2d 1200, 1201-02 (Del. Ch.1988); Jefferson Chemical Co. v. Mobay Chemical Co., 253 A.2d 512 (Del. Ch.1969). See also, Stevelman v. Alias Research Inc., et al., 174 F.3d 79, 84 (2d Cir.1999).* The same is true for defendant Fischer, who was not a director. Under Delaware law, officers as well as directors may owe fiduciary duties. *Harris v. Carter, 582 A.2d 222, 234 (Del. Ch.1990).* In order to sustain a claim against Fischer, however, Plaintiffs would have to allege more than that he held the office of Assistant Secretary and Legal Counsel. *See Lippe v. Bairnco Corp., 230 B.R. 906, 917 (S.D.N.Y.1999).*

These Defendants are entitled to an order dismissing the complaint as against them.

*2. The Non-RSL Officers and Directors*

That brings us to the Defendants who were only officers and directors of PLC and LTD. [FN14] Plaintiffs seek to impose liability on these Defendants on two principal theories: (i) that they had *de facto* or effective control over the affairs of RSL USA and its directors; and (ii) that they aided and abetted the breach of fiduciary duty committed by the directors of RSL USA.

> FN14. This includes Messrs. Bildirici, Cisneros, Langhammer, L. Lauder, R. Lauder, Schiffman, Schuster, Sekulow, Trollope, and Williams.

**\*14** As to the concept of *de facto* control, Plaintiffs' allegations are too vague as to any wrongdoing on the part of these Defendants. As discussed above, there is much in the complaint regarding the "Lauder Control Group," but insufficient specificity as to facts that the Lauder Control Group (or Lauder personally) so dominated the RSL USA Board that they became *de facto* directors. *See Odyssey Partners, L.P. v. Fleming Cos., Inc., 735 A.2d 386 (Del. Ch.1999); Aronson v. Lewis, 473 A.2d at 815-16.* Indeed, the parent corporation appointed at least several directors for RSL USA who were not directors of either PLC or LTD, and it was the responsibility of these and the other members of the Board of RSL USA to manage the corporation. [FN15]

> FN15. According to the complaint, two of the defendants who were RSL USA directors, Messrs. Mallcott and Marino, were not either officers or directors of LTD or PLC.

The Defendants who were not directors of RSL USA also rely on the authority cited above that indicates that a subsidiary corporation should be operated in the interests of its shareholder parent and that neither the directors of the parent nor the directors of the subsidiary can be faulted for such action. *See, e.g., Anadarko Petroleum Corp. 545, A.2d at 1174.* As discussed earlier, this line of authority cannot be applied blindly to immunize an insolvent subsidiary's Board from liability for action in disregard of its own interests and those of its creditors. By the same token, the directors of the parent cannot be compelled at such time to attend only to the interests of the subsidiary, especially where (as here) *both* were insolvent. To the extent American corporate law would have been applicable, PLC and LTD were entitled to have directors who had due regard for their respective interests and the interests of their creditors, just as was RSL USA. *Lippe v. Bairnco Corp., 230 B.R. at 916; Aviall, Inc. v. Ryder Sys. Inc., 913 F.Supp. 826, 832 (S.D.N.Y.1996), aff'd, 110 F.3d 892 (2d Cir.1997).*

Plaintiffs' alternative theory is that the other Defendants aided and abetted the breach of duty of the RSL USA directors. Aiding and abetting a breach of duty is usually used to impose liability on third parties and raises the question as to whether the wrongdoing of the corporation itself is not a bar to the action. *Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114 (2d Cir.1991); In re Mediators, Inc., 105 F.3d 822, 826 (2d Cir.1997).* Plaintiffs offer no authority that the doctrine has been used to impose wholesale liability on directors of an affiliate. Even if it could, aiding and abetting requires knowing participation in the wrongdoing, and Plaintiffs do not adequately plead specific facts demonstrating knowing participation by these other Defendants in the allegedly wrongful guarantees. *See In re Santa Fe Pacific Corp. Shareholder Litig., 669 A.2d 59, 72 (Del.1995); Kolbeck v. LIT America, 939 F.Supp. 240, 246 (S.D.N.Y.1996), aff'd, 152 F.2d 918 (2d Cir.1998).*

These Defendants are also entitled to an order dismissing the complaint as against them.

*Alter Ego/Piercing the Corporate Veil*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
2003 WL 22989669 (Bankr.S.D.N.Y.)
(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))

Page 13

*15 The complaint finally seeks to pierce the corporate veil of RSL USA and to hold PLC and LTD (and presumably their officers and directors) liable for all of the Debtors' debts. According to the complaint, Defendants exercised a degree of control over RSL USA that caused the Debtors to be mere instrumentalities or alter egos of the other corporations, and Defendants used their control to commit wrongs that resulted in loss and injury to Plaintiffs. Defendants have moved to dismiss this count, arguing that Plaintiffs fail to plead facts, which, if established, would show that piercing the corporate veils is warranted and that even if the veils were pierced, the affiliates' officers and directors would not become automatically liable for all of the debts of all of the companies.

In determining whether the corporate form will be disregarded and a corporate veil pierced, the law of the state of incorporation is applied. _Fletcher v. Atex, Inc.,_ 68 F.3d 1451, 1456 (2d Cir.1995); _Sunbeam Corp. v. Morgan Stanley & Co., (In re Sunbeam Corp.),_ 284 B.R. 355 (Bankr.S.D.N.Y.2002). Since RSL USA is a Delaware corporation, Delaware law applies. Under Delaware law, in order to pierce the corporate veil and establish alter ego liability, a party must show: (1) that the parent and the subsidiary operated as a single economic entity; and (2) that an overall element of injustice or unfairness was present. _Fletcher v. Atex, Inc.,_ 68 F.3d at 1457. Allegations of mere domination or control by one entity over another are insufficient; in the context of veil piercing, "it is not sufficient at the pleading stage to make conclusory allegations of control." _In re Sunbeam Corp.,_ 284 B.R. at 366. Rather, "[t]he extent of the domination and control must preclude the controlled entity from having legal or independent significance of its own. There must be an abuse of the corporate form to effect a fraud or an injustice-some sort of elaborate shell game." _Id._

To survive a motion to dismiss, a plaintiff must allege facts that the controlling owners operated the company as an "incorporated pocketbook" and used the corporate form to shield themselves from liability. _United States v. Golden Acres, Inc.,_ 702 F.Supp. 1097, 1105-07 (D.Del.1988); _In re Sunbeam Corp.,_ 284 B.R. at 368. Further, the plaintiff must plead facts showing that the "corporation [is] a sham and exist[s] for no other purpose than as a vehicle for fraud." _Wallace v. Wood,_ 752 A.2d 1175, 1184 (Del. Ch.1999); _see also Foxmeyer Drug Co. v. General Elec. Corp.,_ 290 B.R. 229, 236 (Bankr.D.Del.2003) ("the fraud or similar injustice that must be

demonstrated in order to pierce the corporate veil under Delaware law must, in particular, be found in the defendant's use of the corporate form.") (internal citations omitted). In determining whether the corporate form has been misused under Delaware law, courts have considered the following factors: (1) whether the corporation was adequately capitalized for the corporate undertaking; (2) whether the corporation was solvent; (3) whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; (4) whether the dominant shareholders siphoned corporate funds; and (5) whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*16 _Fletcher v. Atex, Inc.,_ 68 F.3d at 1458; _In re Sunbeam Corp.,_ 284 B.R. at 365.

In support of its argument that the corporate veil of RSL USA should be disregarded, the Debtor and Committee rely on six principal factors: (i) RSL USA was undercapitalized and insolvent since its inception; (ii) there was significant overlap in the directors and executive officers of RSL USA, PLC and LTD; (iii) certain directors of PLC and LTD had ownership interests in RSL USA; (iv) RSL USA was never able to sustain a financially viable business and thus was dependent on its parents for financing; (v) PLC and LTD provided managerial and other services to RSL USA, and PLC and LTD officers often became involved in and directed the day-to-day business of RSL USA; and (vi) RSL USA merely served as a tool to further the interests of Defendants.

These are insufficient allegations to state a claim that RSL USA and LTD operated as a single entity and that there was an overall element of injustice or unfairness present arising from abuse of the corporate form. If lack of adequate capitalization were alone enough to justify piercing the corporate veil, the veil of every insolvent subsidiary or failed start-up corporation could be pierced. _United States v. Golden Acres, Inc.,_ 702 F.Supp. at 1104. Plaintiffs have alleged (i) extensive overlapping officers and directors; (ii) managerial and other services that LTD provided to RSL USA; and (iii) unspecified involvement in the day-to-day business affairs of RSL USA by several officers and directors of LTD. These do not show that RSL USA was a mere sham. Rather than supporting a finding of domination, the allegations of the complaint describe a "typical" relationship between parent and subsidiary. _See Fletcher v. Atex, Inc.,_ 68 F.3d at 1459-60. Plaintiffs further argue that RSL USA merely served as a tool

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.
2003 WL 22989669 (Bankr.S.D.N.Y.)
(Cite as: 2003 WL 22989669 (Bankr.S.D.N.Y.))

Page 14

to further Defendants' interests, and that this indicates an overall element of injustice. This claim alone cannot support a finding that RSL USA was used improperly for the benefit of its parents or affiliates, nor does it show overall fraud or injustice from the use of the corporate form. There are insufficient allegations to show an "overall element of injustice or unfairness" which would have arisen from the sham nature of RSL USA's corporate identity. *Fletcher v. Atex, Inc.*, 68 F.3d at 1461; *see also LaSalle Nat'l Bank v. Perelman*, 82 F.Supp.2d. 279, 295 (D.Del.2000).

Moreover, the complaint recognizes that RSL USA operated three business units (some or all acquired as operating concerns) and had its own employees responsible for its day-to-day operations. (Complaint, ¶¶ 36, 38-39.) These allegations are inconsistent with the contention that RSL USA was a mere shell, and the existence of separate operating companies usually negates a piercing of the veils. *See Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc.*, 456 F.Supp. 831, 845-46 (D.Del.1978). Further, RSL USA, PLC and LTD were incorporated and doing business in three different nations. It is commonplace for subsidiaries governed by the laws of different legal systems to be separately incorporated, so that their corporate structure can address the potential differences between applicable corporate laws. *See* Lynn M. LoPucki, *Cooperation in International Bankruptcy: A Post-Universalist Approach*, 84 CORNELL L.REV. 696, 724-25, 750-51 (1999); *see also, supra*, n. 9. Plaintiffs have not cited to any authority in which courts have pierced the veils of affiliates doing business and incorporated in different countries.

**\*17** As discussed above, the Debtors have adequately pleaded a claim against certain Defendants related to the guarantees given by RSL USA with respect to the $1.7 billion debt of PLC already guaranteed by LTD. But this well pleaded claim is not enough to justify a general piercing of the corporate veil and, in fact, appears to cut just the other way. Prior to the guarantees, RSL USA was not liable for its affiliates' substantial debts, even though there are allegations that PLC and LTD financed their subsidiary. If the guarantee was a wrong, it was because the companies were separate; if the veil between PLC and RSL USA were pierced, it would be pierced for all purposes, making RSL USA and its parent one company, and in substance validating the guarantees. *Cf. Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d at 790; *Eagle Transp. Ltd. v. O'Connor*, 449 F.Supp. 58, 59-60 (S.D.N.Y.1978). Thus, the one

adequately pleaded claim cuts against the concept of piercing the corporate veils.

Plaintiffs' fourth count is dismissed on the ground that the allegations of the complaint are insufficient to support a claim for piercing the corporate veils between RSL USA, PLC and LTD. There is no need to consider the further issue as to the liability of the directors of PLC and LTD if the veils were pierced.

*CONCLUSION*

The allegations of the complaint with respect to the claims for wrongful concealment and constructive fraud, and for aiding and abetting constructive fraud, are dismissed. The allegations of the complaint with respect to breach of fiduciary duty are sustained only as to the claims relating to the guarantees by RSL USA and only as against Defendants Fisher, Shassian, Beckoff and Marino in their capacities as directors of RSL USA. The claims for aiding and abetting a breach of fiduciary duty are dismissed, as are the claims relating to piercing the corporate veil. Defendants shall settle an order consistent with this decision on five days' notice.

2003 WL 22989669 (Bankr.S.D.N.Y.)

END OF DOCUMENT