Not Reported in F.Supp.
1996 WL 502280 (E.D.Pa.), RICO Bus.Disp.Guide 9190
(Cite as: 1996 WL 502280 (E.D.Pa.))

Page 15

cannot grant the Corporate Defendants' Motion for Summary Judgment on the issue of whether the related party transactions constitute predicate acts. Defendants have leave to present arguments on this issue at the Rule 50(a) stage.

3. Reckless Acts

*18 Plaintiffs allege that RCG was involved in a "scheme to harm RAC and SER by engaging in a series of reckless and intentional acts." (Third Am.Compl. at 29; RICO Case Statement at 29.) Included here are (1) the Blount matter; (2) the Anthracite Health and Welfare Fund; (3) fraudulent reports to RAC's auditors; (4) waste of corporate assets; and (5) the fraudulent payment of legal expenses. [FN16] (Third Am.Compl. at 29-30.) Each of these alleged reckless or intentional acts will be discussed with the exception of the alleged fraudulent reports to RAC's auditors because that allegation concerns the purported fraudulent reporting to Price Waterhouse, which, as discussed above, is precluded.

> FN16. Included in these alleged reckless acts is "the scheme to divert RAC Sales to W.M.P.I." (Third Am.Compl. at 30.) This claim is examined in the discussion below on the alleged usurpation of corporate opportunities.

a. The Blount Matter

Plaintiffs allege that SER and RAC, while under the control of RCG, and members of a bank financing group, conspired against Blount International, Ltd. ("Blount") in August of 1990. Blount had been retained by SER to act as a general contractor in the construction of the SER cogeneration facility. (Third Am.Compl. ¶ 241.) The alleged purpose of this purported conspiracy was to cause Blount to fail the SER plant performance test. This was supposedly accomplished by the delivery of low quality culm fuel to Blount and by adding moisture to the fuel. Blount discovered this alleged conspiracy and sued RAC and SER. The result has been payment to Blount in excess of $4 million. Id.

Plaintiffs have failed to properly allege deceit sufficient to establish a claim for mail or wire fraud. Therefore, this court finds that the Blount matter is not a predicate act.

b. The Anthracite Health and Welfare Fund

Plaintiffs allege RCG engaged several mining companies to mine RAC's land. (Third Am.Compl. ¶ 243.) These companies and RAC failed to pay royalties to the Anthracite Health and Welfare Fund as required by RAC's agreement with the United Mine Workers of America. Id. ¶ 244. Subsequent to a suit brought by the Anthracite Health and Welfare Fund, RAC was ordered by the court to pay the amount due plus interest. Id. ¶ 250. Again, no element of deceit is alleged here. Therefore, this cannot be considered a predicate act.

c. Waste of Corporate Assets

Plaintiffs allege that since 1992 and continuing to the present members of RCG, in conspiracy with W.M.P.I., have caused RAC to convey the majority of its anthracite material to W.M.P.I. at below market prices and without notice to RAC's disinterested shareholders and/or directors. (Third Am.Compl. ¶¶ 279-80.) Plaintiffs contend that these sales are part of an ongoing scheme to "cripple RAC's ability to compete with W.M.P.I. in the cogeneration market by wasting its assets and diverting these assets to W.M.P.I." Id. ¶ 282. This is essentially a reiteration of Plaintiffs' claim against RCG members for related party transactions. See id. ¶¶ 192-198. As noted previously, Plaintiffs have adequately alleged a mail fraud scheme involving related party transactions.

*19 Plaintiffs also allege that RCG members have wasted corporate assets by causing RAC and SER to purchase security services from J.M.B., in which some members of RCG are shareholders, directors, or officers. (Third Am.Compl. ¶ 290.) This too has been discussed above in the examination of related party transactions. Plaintiffs further allege that W.M.P.I. does not pay RAC for drying its material in RAC's Silt Drying Facility despite the fact that this is costly to RAC, (Third Am.Compl. ¶¶ 287), and that a lease between Split Vein and RAC was disadvantageous to RAC. Id. ¶¶ 299-300. Plaintiffs also contend that RCG members "have caused RAC's equipment to be inadequately maintained and serviced," and "have caused RAC's personnel to abandon sound mining plans and procedures at the risk of causing severe economic consequences and short falls of coal for RAC." Id. ¶¶ 302-303.

Absent in the preceding are allegations of deceit. Therefore, Plaintiffs have failed to establish a violation of the mail or wire fraud statutes. Therefore W.M.P.I.'s failure to pay for the use of RAC's drying facility, the Split Vein lease, and the inadequate maintenance and poor mining procedures do not constitute predicate acts.

d. Fraudulent Payment of Litigation Expenses

Plaintiffs assert that RCG has engaged in

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"fraudulently diverting funds available for distribution into a 'litigation fund' directed against James Curran individually." (Third Am.Compl. at 51.) Plaintiffs assert that "Defendants have failed to make full and fair disclosures to James Curran regarding their indemnification by RAC and/or SER." (RICO Case Statement at 28.) Plaintiffs further assert that Tornetta and other members of RCG "concealed payments and reimbursements to" Tornetta from Curran and the directors of RAC and SER appointed by him. (Third Am.Compl. ¶ 306.) "A defendant's breach of a fiduciary duty may be a predicate for a violation of the mail fraud statute where the breach entails the violation of a duty to disclose material information." United States v. Waymer, 55 F.3d 564, 571 (11th Cir.1995) (citation omitted), cert. denied, 116 S.Ct. 1350 (1996). In the instant case Plaintiffs fail to provide the circumstances under which the alleged "concealment" occurred, making it impossible for this court to determine whether Defendants violated a duty to disclose. Plaintiff has the burden to provide such information surrounding the circumstances of any alleged fraud. In Seville Indus. Machinery v. Southmost Machinery, 742 F.2d 786 (3d Cir.1984), cert. denied, 469 U.S. 1211 (1985), the Third Circuit stated that "Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Id. at 791. Plaintiffs have failed to meet this standard, rendering it impossible for this court to determine if there is requisite deceit here. Therefore, the alleged fraudulent payment of litigation expenses does not constitute a predicate act.

4. Manipulation of Meridian Loan Agreements
*20 Plaintiffs contend that RCG manipulated the financing of the Meridian Bank loan "in such a manner that would preclude and prevent James Curran, and entities in which he has interests, from participating and competing with entities in which the Rich Control Group members have beneficial interests." (Third Am.Compl. ¶ 75.) Because Plaintiffs have failed to allege the element of deceit, this does not constitute a predicate act.

5. Manipulation of SER's Records
Plaintiffs maintain that RCG members have engaged in a scheme "to defraud and prevent James Curran and entities in which he has an interest from engaging in any transactions with SER through the SER refinancing documents." (Third Am.Compl. at 40.) Plaintiffs contend that RCG "manipulated the refinancing of SER in such a manner that would preclude and prevent James Curran, and entities in which he has interests, from participating and competing with entities in which the Rich Control Group members have beneficial interests." (Third Am.Compl. ¶ 77.) Because Plaintiffs have failed to allege the element of deceit, this does not constitute a predicate act.

6. Conversion of SSI Property
Plaintiffs allege that in furtherance of the alleged scheme to defraud SSI, "the Rich Control Group and the entities controlled by that Group, prepare and submit to SSI false and misleading reports of tonnage of anthracite waste material removed from banks subject to a continuing SSI royalty obligation with the intent that SSI rely on such reports and be deceived thereby." (Third Am.Compl. ¶ 83.) Thus, the necessary elements of deceit and deprivation are present.

Plaintiffs contend that these purported fraudulent reports were sent through the mail. Id. ¶ 84.) Because Plaintiffs are precluded from raising conversion claims related to the Oak Hill Nos. 73, 78, 235, 235R and Cambridge No. 241 banks prior to October 28, 1994, any mailing Plaintiffs produce in reference to these banks must be from after this date. Plaintiffs have failed to provide evidence of such mailings thus far. [FN17] However, because discovery has been stayed in the instant case, Plaintiffs will be allowed to present such evidence at trial, at which time the Defendants may argue against the sufficiency of the evidence at the Rule 50(a) stage.

FN17. In the RICO Case Statement Plaintiffs cite several letters in reference to the scheme to defraud SSI. (RICO Case Statement at 34-37.) Some of these letters refer to the Oak Hill banks, but only one is dated after October 28, 1994: the letter of Sean Curran to Gloria R. Curran dated December 2, 1994. Id. at 34. This letter, addressed to one of the Defendants, does not fulfill the mail fraud statute's requirement because it does not appear to be "incident to an essential part of the scheme." See Pereira v. United States, 347 U.S. 1, 8 (1954).

7. Concealing Monies
Plaintiffs assert that RCG members have concealed and diverted monies that SER owes Curran.

Not Reported in F.Supp.  
1996 WL 502280 (E.D.Pa.), RICO Bus.Disp.Guide 9190  
(Cite as: 1996 WL 502280 (E.D.Pa.))

Page 17

Basically, Plaintiffs allege that from 1992 to 1995 RCG members conducted a scheme wherein they have diverted and concealed monies which should have been distributed to SER shareholders. (Third Am.Compl. ¶ 116.) To this end, RCG allegedly created "phantom expenses" at SER, diverted funds into a litigation fund, transferred money to RAC for an ash pit, and concealed from Curran the amount of monies available for distribution from RAC and SER. Each allegation will be examined in turn except the litigation fund which has already been discussed.

a. Phantom Expenses

*21 Plaintiffs allege that in 1994 and 1995 and continuing to the present RCG members created "phantom expenses" and made intentional misrepresentations regarding other SER expenses. *Id.* ¶ 118. By making such misrepresentations Defendants allegedly reduced the amount of monies available for distribution. Plaintiffs allege that this misrepresentation has involved the use of the mail. *Id.*

It has been recognized that "[a] stockholder's right to monitor and to police the behavior of the corporation and its officers is a property interest." *United States v. Wallach,* 935 F.2d 445, 463 (2d Cir.1991), *aff'd,* 979 F.2d 912 (2d Cir.1992), *cert. denied,* 508 U.S. 939 (1993). Plaintiffs have adequately alleged deceit and deprivation of this interest. Plaintiffs assert that this scheme is accomplished by means of a monthly mailing of an "Officers Certificate." (Third Am.Compl. ¶ 118.) Therefore, Plaintiffs have adequately alleged the mailing element of a mail fraud violation.

b. Ash Pit

Plaintiffs contend that RCG has engaged in a scheme to defraud Curran and SER by "transferring one million dollars to RAC for a 'development fee' for an ash disposal pit which SER does not need and which SER cannot use." (Third Am.Compl. at 52.) Because Plaintiffs have failed to adequately allege deceit, this does not constitute the predicate act of mail fraud.

c. Concealing the Amount of Money Available for Distribution From SER and RAC

Plaintiffs assert that RCG has engaged a scheme to fraudulently conceal from Curran "the amount of monies available for distribution from RAC and SER to cause him to default on his contractual obligations pursuant to an April 20, 1994 Agreement with Tornetta." (Third Am.Compl. at 52.) Plaintiffs fail to articulate the nature of this alleged "fraudulent concealment." [FN18] Because this allegation is not in conformity with even a liberal construction of Rule 9(b), this general allegation of concealing the amount of money available for distribution does not constitute a predicate act.

> FN18. In their Brief in Support of Plaintiffs' Response to Defendants' Brief in Support of Motion to Strike Third Amended Complaint, Plaintiffs allege that "[d]espite the fact that James Curran and his representatives have made numerous requests to RAC's and SER's management and Cerullo for information, they have repeatedly been denied those requests because the defendants have contended that those matters are the subject of litigation." (Pls.' Br.Supp.Resp.Corp.Defs.' Br.Supp.Mot.Strike Third Am.Compl. at 16.) With one exception, Plaintiffs cite letters postdating the initiation of the ongoing litigation in the instant case. *Id.* As noted, discovery has been stayed in this action. Therefore, failure of the parties to provide discoverable material does not rise to the level of fraudulent concealment. Plaintiffs also cite to a letter dated May 3, 1993 from John Rich, Jr. to James and Sean Curran. *Id.* at Ex. 3. At most this letter provides evidence that John Rich, Jr. told them that he believed they had received all the information to which they were entitled.

8. Usurpation of Corporate Opportunities

Plaintiffs allege that RCG has usurped corporate opportunities of RAC, SER, and SSI. These allegations involve Ri-Corp, JMB Development, Inc. and W.M.P.I. Because the claim concerning Ri-Corp is precluded, the examination of these alleged predicate acts will be limited to JMB Development, Inc. and W.M.P.I.

a. JMB Development, Inc.

Plaintiffs maintain that J.M.B. Development, Inc. is in direct competition with SER for the solicitation of private "end-users" of both steam and electricity. (Third Am.Compl. ¶ 149.) RCG members allegedly have prevented SER from developing end-users and channel all opportunities to develop end-users to Gilberton Power Co. through JMB Development, Inc. *Id.* ¶ .152.

Plaintiffs allege that RCG and JMB Development, Inc. have fraudulently concealed these corporate opportunities. *Id.* ¶ 153. Under Pennsylvania law,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

directors have a duty to disclose corporate opportunities to the corporation before seizing them for personal gain. *CST, Inc. v. Mark,* 520 A.2d 469, 471 (Pa.Super.) (stating that an officer or director may seize a corporate opportunity if, inter alia, the opportunity is disclosed to the shareholders) (citations omitted), *appeal denied,* 529 A.2d 811 (Pa.1987). Thus, the element of deceit is present because there was an alleged lack of disclosure when such a duty existed. *See D'Iorio v. Adonizio,* 554 F.Supp. 222, 228 (M.D.Pa.1982) (finding adequate allegations of mail fraud where fraud alleged "appear[ed] to be predicated on a breach of fiduciary duty including the wrongful siphoning off of business opportunities and assets").

*22 Plaintiffs assert that this "diversion of SER's opportunities ... was contemplated and achieved in part through use of the United States mails and telecommunications in interstate commerce." (Third Am.Compl. ¶ 154.) Because of the preclusive effect of the October 28, 1994 dismissal of *Related Party Litigation,* Plaintiffs must provide evidence of use of the mails or wires incidental to an essential part of the scheme after this date or be subject to judgment in favor of Defendants at the Rule 50(a) stage.

b. W.M.P.I.  
Plaintiffs claim that RCG, acting in conspiracy with W.M.P.I., "fraudulently induced RAC to forego anthracite waste sales to the benefit of W.M.P.I." and RCG. *Id.* at 60. In service of this scheme, RCG members have caused RAC to divert customers to W.M.P.I. and caused RAC to forego contracts with area cogeneration facilities in order for W.M.P.I. to have the benefit of these contracts. *Id.* ¶ 163. Plaintiffs also contend that RCG members have directed RAC's sales of its anthracite waste material to W.M.P.I., *id.* ¶ 159, which has been addressed in the discussion of related party transactions.

The only element of deceit alleged by Plaintiffs concerns the lack of disclosures of RAC's sales to W.M.P.I. Because no deceit is alleged in relation to the purported diversion of customers and contracts to W.M.P.I., Plaintiffs have inadequately alleged a mail fraud scheme and thus these claims of diversion do not constitute predicate acts.

9. Scheme to Cause Curran to Default on the Agreement with Tornetta  
Plaintiffs claim that "[b]y depriving James Curran of cash distributions from RAC and SER, [RCG] members hope to cause James Curran to default on an agreement with Tornetta, a Rich Control Group member." (Third Am.Compl. at 30.) In furtherance of this scheme RCG members concealed the amount of monies available for distribution from RAC and SER, deprived RAC of corporate opportunities, depleted RAC's treasury through related party transactions, and engaged in willful and reckless acts of mismanagement to destroy the value of RAC and SER shares. Rather than alleging a predicate act, Plaintiffs here appear to discuss the purpose of some of the aforementioned predicate acts.

Tornetta argues that "[i]t is well established that when economic reality renders a party's claims so 'implausible' that 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " (Tornetta's Reply Br.Supp.Mot.Summ.J. at 4 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).) In *Matsushita,* the Court stated that "if the factual context renders [the plaintiffs'] claim implausible--if the claim is one that simply makes no economic sense--[plaintiffs] must come forward with more persuasive evidence to support their claim than would otherwise be necessary." *Matsushita,* 475 U.S. at 587.

*23 Tornetta contends that "Curran, Jr.'s allegation that Tornetta is a member of the Rich Control Group--which is the sole basis for his claims against Tornetta--rests upon the inherently implausible proposition that Tornetta would have given up $4 million in distributions from RAC and SER in order to obtain contracts and indemnification worth approximately $50,000." *Id.* at 4. Tornetta bases this contention on Curran's allegation that his share of the distributions from RAC and SER that were wrongly withheld amounts to over $10 million. *Id.* at 4-5. Curran alleges that he has approximately a thirty-five percent interest in these companies, (Third Am.Compl. ¶ 5), and Tornetta claims a fourteen percent stake in them. (Tornetta's Reply Br.Supp.Mot.Summ.J. at 5 n. 5.) Because "Tornetta lost 40% of whatever distribution Curran, Jr. lost [,] if Curran, Jr. lost $10 million in distributions, Tornetta lost $4 million." *Id.* at 5. Tornetta argues that these losses are not offset by the funds he allegedly derived from related party transactions ($50,000) or the amount of money RAC allegedly spent in indemnifying him for legal expenses incurred in *Tornetta RICO Litigation* ($40,000). *Id.* at 5-6.

Plaintiffs respond in two ways. First, they correctly assert that economic motivation is not a prerequisite for liability under RICO. *National Org. for Women,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Inc. v. Scheidler*, 114 S.Ct. 798, 803-04 (1994). Plaintiffs allege that the result of defaulting on his agreement with Tornetta would be "James Curran's loss of the RAC and SER pledged [stock], with the result that the Rich Control Group would obtain it." *Id.* Plaintiffs allege that control is part of Tornetta's motivation. (Plaintiff's letter to the court of 6/25/96, at 2.) Plaintiffs further allege that Tornetta has "personal and professional relationships with the Rich family, which relationships provide him with a motive to engage in racketeering activities with them against James Curran." (Pls.' Surreply to Tornetta's Mot.Summ.J. at 3.) Thus, Plaintiffs have alleged noneconomic motivations for Tornetta.

Second, Plaintiffs assert that they have provided sufficient evidence of an economic motivation to make it at least a triable issue. *Id.* at 3. Plaintiffs cite to the Stock Hypothecation, Transfer, Assignment and Security Agreement, by the terms of which Tornetta will gain stock with an alleged minimum value of $2.1 million if James Curran defaults on his financial obligations to Tornetta pursuant to the terms of the April 20, 1994 Settlement Agreement. *Id.* at 4-5. Tornetta responds that Lehigh Coal and Navigation Company ("LC & N") rather than Curran is obliged to pay Tornetta under the terms of that settlement agreement. (Letter of Lawrence Tornetta to the court of 5/9/96, at 3.) However, Tornetta acknowledges that Curran is the guarantor for LC & N's obligations under this settlement agreement. *Id.* Plaintiffs cite Curran's affidavit wherein Curran states that he relies on distributions from RAC and SER in order to meet the financial obligations under this agreement. (Pls.' Surreply to Tornetta's Mot.Summ.J. at 5.) Plaintiffs argue that Curran's reliance on distributions from RAC and SER to meet his obligations to Tornetta is a genuine issue of material fact. *Id.* Plaintiffs also provide evidence that Tornetta's indemnification from RAC may be larger than Tornetta suggests, that is, evidence that Tornetta is seeking $200,000 in indemnification from RAC and that such is being considered by RAC's management. *Id.*

*24 In light of the alleged noneconomic motivation for Tornetta's involvement and factual questions surrounding Tornetta's economic motivation, the court will not grant summary judgment in favor of Tornetta on this issue.

10. Tornetta's Involvement in the Predicate Acts
Tornetta alleges that Curran cannot implicate him in any predicate acts of mail fraud because of the absence of deceit on the part of Tornetta. (*See* Letter of Lawrence Tornetta to the court of 5/9/96, at 4 (stating that Plaintiffs have "completely failed to allege any fraud or misrepresentation with respect to Tornetta").) Plaintiffs allege that Tornetta, a director and shareholder of RAC and SER, was "a member of the Rich Control Group, [and agreed] to act in concert with the other members to commit predicate acts of mail and wire fraud." (Third Am.Compl. ¶ 20.) Plaintiffs assert that Tornetta is liable at least for aiding and abetting. *See Fidelity Fed. Sav. & Loan Ass'n v. Felicetti*, 830 F.Supp. 257, 261 (E.D.Pa.1993) (stating that "an aider and abettor of two predicate acts can be civilly liable under RICO") (citation omitted). Plaintiffs further assert that for § 1962(d) liability, Tornetta need not have committed the predicate acts; simply agreeing to the commission of these acts is sufficient for RICO liability. *See United States v. Adams*, 759 F.2d 1099, 1116 (3d Cir.) (stating that "to be convicted of a RICO conspiracy, a defendant must agree only to the commission of the predicate acts, and need not agree to commit personally those acts"), *cert denied,* 474 U.S. 906, and *cert. denied,* 474 U.S. 971 (1985). Because of the discovery stay and the dispute on these material facts, the court declines to grant summary judgment in favor of Tornetta on this issue. However, Tornetta has leave to resubmit this argument at the Rule 50(a) stage.

11. Summary of Predicate Acts
The court will consider the following as predicate acts because Plaintiffs have adequately alleged mail fraud schemes involving these acts: (1) the scheme to withhold distributions through the Meridian Bank Loan Agreement, (2) the related party transactions; (3) the conversion of SSI property; (4) the phantom expenses; and (5) the usurpation of corporate opportunities through J.M.B. Development. As noted, Defendants have leave to challenge the related party transactions, the conversion of SSI property, the diversion of corporate opportunities through J.M.B. Development, and Tornetta's involvement in the predicate acts at the Rule 50(a) stage.

Because Plaintiffs have alleged two or more predicate acts to establish a pattern of racketeering activity, [FN19] their RICO claims withstand the motions for summary judgment filed by Tornetta and the Corporate Defendants.

> FN19. A pattern of racketeering activity requires at least two acts of racketeering activity. 18 U.S.C. § 1961(5).

C. ESTOPPEL

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The Corporate Defendants argue that Curran is equitably estopped from seeking to compel distributions under the 1980 Stockholders Agreement because he never made any distributions pursuant to the formula contained in that agreement. (Corp.Defs.' Br.Supp.Mot.Summ.J. at 57.) The Corporate Defendants allege that "there were no distributions to the stockholders for any reason from 1987 through September 6, 1990, when Curran Jr. was Chief Executive Officer of RAC." *Id.* at 58 (emphasis deleted). Further, Defendants assert that a letter by Curran dated May 18, 1989 shows that he "did not believe that the 1980 Stockholders Agreement was mandatory or effective, nor required *any* distribution to the shareholders." *Id.* Plaintiffs respond that Curran abided by the terms of the 1980 Shareholders' Agreement while he was CEO of RAC and distributions were made to RAC Shareholders from 1980 through 1989. (Pls.' Resp.Corp.Defs.' Mot.Summ.J. at 35.)

*25 The doctrine of equitable estoppel is summarized as follows:
> Courts apply the doctrine of equitable estoppel to prevent a person from taking a position that is inconsistent with a position previously taken or acting differently than the manner in which that person induced another person by word or deed to expect.... There are two essential elements of equitable estoppel: inducement and justifiable reliance on that inducement. Such inducement may be words or conduct and a person may exhibit reliance by an act or forbearance "provided that a change in condition results causing disadvantage to the one induced." The party who asserts equitable estoppel must prove the elements of estoppel by "clear, precise and unequivocal evidence."

*Louis W. Epstein Family Partnership v. Kmart Corp.,* 828 F.Supp. 328, 342-44 (E.D.Pa.1993) (citations omitted), *aff'd in part and rev'd in part on other grounds,* 13 F.3d 762 (1994). The Corporate Defendants have not adequately alleged the elements of equitable estoppel. The Corporate Defendants' assertion that Curran's attempt to enforce the 1980 Stockholders Agreement is inconsistent with his previous behavior as the CEO of RAC might rise to the level of "inducement," but there is no claim that Defendants justifiably relied on such conduct to their disadvantage. Further, there is a factual dispute concerning whether Curran as a CEO paid dividends pursuant to the 1980 Shareholders Agreement which precludes granting a motion for summary judgment.

### D. THE ILLEGALITY OF THE 1980 SHAREHOLDERS AGREEMENT

The Corporate Defendants claim that the Pennsylvania Business Corporation Law does not permit the 1980 Stockholders Agreement. (Corp.Defs.' Br.Supp.Mot.Summ.J. at 59.) The Business Corporation Law provides that
> a distribution may not be made if ... the corporation would be unable to pay its debts as they become due in the usual course of business; or [if] the total assets of the corporation would be less than the sum of its total liabilities plus ... the amount that would be needed, if the corporation were to be dissolved at the time as of which the distribution is measured, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution.

15 Pa.Cons.Stat.Ann. § 1551(b)(1), (2). The Corporate Defendants assert that the violation consists of the 1980 Stockholders Agreement's mandate of distributions of all "net profits" unconditionally. [FN20] This, the Corporate Defendants claim, renders the 1980 Shareholders Agreement unenforceable.

> FN20. The Agreement reads in pertinent part:
> 2. The Stockholders herewith agree to vote for, vote to retain, and do nothing to interfere with Resolutions which shall remain in full force and effect from the date hereof until a written agreement is executed by all of the Stockholders to the contrary, which shall call for:
> (a) the distribution by Reading to the Stockholders of 100% of the income of Reading from all royalties and/or funds otherwise derived from the sale or lease of Reading's assets, without diminution for expenses directly or indirectly related thereto; such distribution to be made within thirty (30) days after receipt of any such funds by Reading.
> (b) the distribution, as promptly as practical after the end of every corporate tax year, but in no event no later than [the] final date on which distribution thereof must be made in order to obtain the most advantageous tax treatment for Stockholders in connection therewith, of 100% of the operating profits of Reading; provided that in arriving at the amount of said profits, funds distributed pursuant to the preceding subparagraph shall first be deducted.
> (1980 Shareholders Agreement, App.Corp.Defs.' Mot.Summ.J. at A1078.)

At most the Corporate Defendants have shown that there may be circumstances when actions in conformity with the 1980 Shareholders Agreement could violate the Business Corporation Law, that is, if RAC were unable to pay its debts or if its liabilities exceeded its assets. "An agreement will be considered void for illegality only where only where it 'cannot be performed without violating a statute.' " Rittenhouse v. Barclay White Inc., 625 A.2d 1208, 1211 (Pa.Super.1993) (citations omitted). Because there are presumably circumstances when performance of the 1980 Shareholders Agreement does not violate the Business Corporation Law, this agreement is not unenforceable per se.

E. STATUTE OF LIMITATIONS
*26 The Corporate Defendants contend that Plaintiffs' claim of usurpation of corporate opportunities involving Ri-Corp is time-barred. (Corp.Defs.' Br.Supp.Mot.Summ.J. at 64.) As discussed previously, this claim is completely precluded. The Corporate Defendants also argue that claims that Ri-Corp converted silt from SSI are time-barred. They contend that Ri-Corp's "initial 'capital contribution' of 200,000 tons of silt in 1985 was purchased from Gilberton/Lawrence Fuels, and no subsequent 'contribution' has been made." (Corp.Defs.' Br.Supp.Mot.Summ.J. at 66-67.) They argue that even if conversion had occurred in 1985, that claim "would be barred by Pennsylvania's two-year statute of limitations at 42 Pa.C.S.A. § 5524." Id. at 67.

Because a factual dispute exists as to whether conversion occurred in 1985, this cannot be resolved on a motion for summary judgment. Although Defendants correctly assert that there is a two-year statute of limitations for conversion, the limitations period for conspiracy does not begin to run until after the commission of the last act of the conspiracy. See Baker v. Rangos, 324 A.2d 498, 510 (Pa.Super.1974) (" '[W]here there are continuous and repetitious acts or trespasses as a part of a continuous conspiracy, it has been held that the statute of limitations does not begin to run until after the commission of the last act of the conspiracy.' ") (citations omitted). Plaintiffs allege that "[t]he Rich Control Group conspired to defraud RAC and SSI of their property by causing Ri-Corp. to receive and use anthracite materials stolen from SSI and to receive and use anthracite materials improperly taken from RAC," (Third Am.Compl. at 55) and also allege this is part of an "ongoing scheme." Id. ¶ 148. Plaintiffs contend that conversion of SSI material continues to the present. (Pls.' Resp.Corp.Defs.' Br.Supp.Mot.Summ.J. at 49; Third Am. Amended ¶ 85.) Therefore, Plaintiffs' state law claim that Defendants conspired to convert SSI material may include incidents of conversion of SSI material from 1985 (unless such incidents are barred by claim preclusion, as discussed previously).

The Third Circuit Court of Appeals has established the following rule for determining when actions accrue in Civil RICO:
> [T]he limitations period for a civil RICO claim runs from the date the plaintiff knew or should have known that the elements of a civil RICO cause of action existed, unless, as a part of the same pattern of racketeering activity, there is further injury to the plaintiff or further predicate acts occur which are part of the same pattern. In that case, the accrual period shall run from the time when the plaintiff knew or should have known of the last injury or the last predicate act which is part of the same pattern of racketeering activity. The last predicate act need not have resulted in injury to the plaintiff but must be part of the same "pattern."

Keystone Ins. Co. v. Houghton, 863 F.2d 1125, 1126 (3d Cir.1988). Plaintiffs allege that the acts of SSI conversion are part of an ongoing scheme continuing to the present. (Third Am.Compl. ¶ 115.) Thus, Plaintiffs have adequately alleged further predicate acts occurring after 1985 and up to the present that are part of the same pattern. Therefore, Plaintiffs' RICO claim for conversion of SSI material in 1985 is not time-barred.

F. FAILURE OF THE CONTROLLING DOCUMENTS TO SUPPORT PLAINTIFFS' CLAIMS ABOUT THE MANIPULATION OF SER'S FINANCING
*27 The Corporate Defendants challenge Curran's allegation that RCG has "manipulat[ed] the finances of SER to reduce or eliminate monies and profits which should be paid to James Curran." (Third Am.Compl. at 48.) The Corporate Defendants argue that the controlling documents do not support these allegations concerning the funding of an ash pit and a litigation fund. [FN21]

> FN21. The Corporate Defendants also challenge allegations made by Plaintiffs in the Second Amended Complaint but not included in the Third Amended Complaint concerning: the Construction Account, the Prior Lender Indemnification Account, the Company Litigation Account, Overfunding of Principal Accounts, the 1994

Distribution, and the Project Revenue Account. As these allegations have not been repeated in the Third Amended Complaint, they are not considered by the court.

### 1. The Ash Pit

Plaintiffs claim that RCG transferred from SER a million dollars to RAC for a development fee for an ash disposal pit "which SER does not need and which SER cannot use." (Third.Am.Compl. at 52.) The Corporate Defendants argue that if SER had access to this pit, it could avoid costlier disposal methods. (Corp.Defs.' Br.Supp.Mot.Summ.J. at 76.) The Corporate Defendants provide evidence that the use of this pit "would result in savings to SER of approximately $1,000,000 per year." *Id.* The Corporate Defendants argue assert that "[a]s the development fee was paid *from SER to RAC,* whose shareholders are virtually identical, the funds remained available to be distributed to the same shareholders, including Curran, Jr., at the discretion of the Board." *Id.* at 76-77. The Corporate Defendants also argue that the transfer of these funds to RAC subjects them to mandatory distribution for payment of taxes, which would benefit Curran, but that there would be no such benefit if the funds were left in SER. *Id.* at 77.

In their response, Plaintiffs provide enough evidence to render this issue a question for the jury. Plaintiffs present testimony that casts doubt on the financial benefit potentially resulting from the ash pit. (Pls.' Resp.Corp.Defs.' Br.Supp.Mot.Summ.J. at 45.) Plaintiffs also challenge the logic of the Corporate Defendants' suggestion that the money paid to RAC is not an actual loss to Curran due to the similarity between RAC's and SER's shareholders. Plaintiffs assert that requests to RAC by Curran or his nominees have been rejected. *Id.* at 45-46. Finally, Plaintiffs argue that a fee paid to RAC for development costs of the ash pit "would not be subject to mandatory distribution for payment of taxes or otherwise." *Id.* at 46. Therefore, there is an issue of material fact concerning whether the investment in an ash pit was part of an alleged attempt to hurt Curran through the diversion of funds that could have been used to pay dividends.

### 2. The Litigation Reserve Fund

Plaintiffs allege that Defendants also engaged in a scheme of "fraudulently diverting funds available for distribution into a 'litigation fund' directed against James Curran individually." (Third Am.Compl. at 51.) The Corporate Defendants assert that in 1994 the distribution made was in accordance with the formula established by the October 13, 1994 Settlement Agreement. (Corp.Defs.' Br.Supp.Mot.Summ.J. at 77-78.) Even if such is the case, Plaintiffs may still have a claim for diversion of money into a litigation fund in an intentional effort to reduce Curran's distributions in 1995. This court cannot now determine this based on the record before it.

### G. FAILURE TO ALLEGE A DISTINCT INJURY TO CURRAN

*28 The Corporate Defendants contend that Curran "has not alleged any injury separate and distinct from the alleged harm to RAC and SER" and that because "all the damages he claims are derived exclusively from Curran, Jr.'s status as a shareholder, his individual claims must be dismissed." (Corp.Defs.' Br.Supp.Mot.Summ.J. at 80.) Plaintiffs argue, inter alia, that "Plaintiff Curran has standing to sue by virtue of the fact that he is a Shareholder in close corporations (RAC and SER) where the directors have violated a fiduciary duty owed directly to him." (Pls.' Resp.Corp.Defs.' Mot.Summ.J. at 52-53.)

Pursuant to Pennsylvania law the general rule is that [a]n action to redress injuries to a corporation cannot be maintained by a shareholder in his own name but must be brought in the name of the corporation." *John L. Motley Assocs., Inc. v. Rumbaugh,* 104 B.R. 683, 686 (E.D.Pa.1989); *see also Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727, 732 (3d Cir.1970) ("A stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets.").

One exception to the general rule that claims for injuries to the corporation must be brought derivatively exists "where there is a special duty, such as a contractual duty, between the wrongdoer and the stockholders." *Temp-Way Corp. v. Continental Bank,* 139 B.R. 299, 317 (E.D.Pa.1992); *see also John L. Motley Assocs.,* 104 B.R. at 686 (stating that the aforementioned rule concerning bringing claims derivatively "does not apply in a case where the shareholder shows a violation of duty owed directly to him.") *Id.* at 686. In the instant case, Curran alleges that the Rich Control Group "refus[es] to make the distributions from RAC and SER which are required pursuant to the contract requirements of the December 12, 1980 Shareholder Agreement."

(Third Am.Compl. at 25.) This alleged breach of contractual duty between RCG members and Curran falls within this exception to the general rule regarding derivative claims. Therefore, Curran may raise individual claims based on RCG's alleged failure to distribute dividends according to the 1980 Shareholders Agreement.

The other general exception to the rule about derivative claims is when an individual has pled an injury separate and distinct from that incurred by the corporation. See *Adjusters, Inc. v. Computer Sciences Corp.*, 818 F.Supp. 120, 121 (E.D.Pa.1993). For example, in *Davis v. United States Gypsum Co.*, 451 F.2d 659 (3d Cir.1971), the plaintiff alleged harm not only to the corporation of which he was a minority shareholder, he also alleged that he lost money after the corporation went bankrupt and he became liable on notes which had been given by the corporation to suppliers and which he had guaranteed. *Id.* at 660. The plaintiff also alleged that he was induced to leave his job. *Id.* The kind of separateness between individual and corporate injuries present in *Davis* is lacking in the instant case.

*29 Therefore, with the exception of claims based on the 1980 Shareholders Agreement, all of Curran's state claims must be brought derivatively. This also applies to Curran's RICO claims. "[W]here a RICO violation injures only a corporation, a shareholder or employee of the corporation does not thereby obtain the right to sue under RICO." *A Pocono Country Place, Inc. v. Peterson*, 675 F.Supp. 968, 975 (M.D.Pa.1987) (citation omitted); *see also In re Sunrise Sec. Litigation*, 916 F.2d 874, 880 (3d Cir.1990) ("Federal courts that have considered the question in shareholder suits all have held that shareholders lack standing to assert RICO claims where their injuries are not direct and distinct from any injury sustained by the corporation and shareholders generally.").

### H. CURRAN'S LACK OF STANDING TO SEEK THE RESCISSION OR REFORMATION OF THE MERIDIAN LOAN AGREEMENT

The Corporate Defendants argue that "Curran, Jr. has no right to seek the rescission or reformation of Meridian's loan agreement with RAC," (Corp.Defs.' Br.Supp.Mot.Summ.J. at 63), because he is "neither a party nor privy to the Meridian loan agreement." *Id.* at 64. Plaintiffs have not contested this point. The law cited by the Corporate Defendants supports a finding that Curran, individually, has no standing to seek rescission or reformation of this agreement. *See Castle v. Cohen*, 676 F.Supp. 620, 627 (E.D.Pa.1987) ("Rescission ... is appropriate only under extraordinary circumstances when the complaining party has suffered a breach of such a fundamental and material nature that it affects the very essence of the contract and serves to defeat the object of the parties.") (citations omitted), *aff'd*, 840 F.2d 173 (3d Cir.1988); *Lachner v. Swanson*, 380 A.2d 922, 925 (Pa.1977) ("Reformation of an instrument may be had by the parties to the instrument and by those standing in privity with them, but not by persons not parties or privies.") (citation omitted). However, insofar as Curran seeks this remedy derivatively, he seeks it on behalf of RAC, one of the parties to the agreement. Therefore, this court will not strike this request for relief.

### III. THE CORPORATE ATTORNEYS' MOTION FOR SUMMARY JUDGMENT

The Corporate Attorneys raise several arguments in support of their motion for summary judgment on Counts III (SSI's claim for violation of 18 U.S.C. § 1962(c)) and VIII (Curran's claim for violations of 18 U.S.C. § 1962(b) and § 1962(c)). The Corporate Attorneys contend that they cannot be held liable for a violation of § 1962(c) because Plaintiffs have failed to fulfill § 1962(c)'s distinctiveness requirement and because the attorneys have not participated in the operation or management of a RICO enterprise. They also contend that Plaintiffs' RICO claims are insufficiently specific as to the involvement of the Corporate Attorneys. In response, Plaintiffs contend that Cerullo has concealed information, thereby limiting the factual record available to Plaintiffs and that, therefore, summary judgment should not be granted. After examining this charge of concealment, the specific defenses raised by the Corporate Attorneys will be addressed.

#### A. CERULLO'S ALLEGED CONCEALMENT

*30 Plaintiffs claim that in his September 21, 1995 and April 12, 1996 depositions, Cerullo refused to answer questions regarding his interaction with RCG members in the various RICO schemes, and that such information is relevant to determining whether the Corporate Attorneys engaged in the operation and management of the alleged RICO enterprises. (Pls.' Resp.Corp.Att'ys' Mot.Summ.J. at 3.) Therefore, Plaintiffs contend, the factual record is limited and the motion for summary judgment should not be granted. *Id.* at 4.

Plaintiffs have deposed Cerullo twice. The first deposition occurred on September 21, 1995.

Pursuant to a discussion with this court, this deposition was limited to the issue of the disqualification of Cerullo and his firm. Plaintiffs assert that in this deposition Cerullo concealed information about the following: (1) the conspiracy between RAC and the Bank of New York against Blount; (2) related party transactions; and (3) the litigation reserve account. (Pls.' Resp.Corp.Att'ys' Mot.Summ.J. at 2-5.)

This court notes, first, that with one exception, Plaintiffs declined to raise these issues before this court at the on-record conference on October 24, 1995 although other objections raised at the September deposition were addressed. Plaintiffs raised the issue of competitive bidding, which is pertinent to related party transactions. This court ruled that the attorney-client privilege barred Cerullo from answering questions about advice given on competitive bidding. (N.T., 10/24/95 at 66.)

Secondly, this court lifted the discovery stay to permit Plaintiffs to depose Cerullo on April 12, 1996 precisely for the purpose of determining the extent of the Cerullo's involvement in the operation or management of the alleged RICO enterprises. During that deposition Plaintiffs' counsel did not seek the information Plaintiffs now claim was concealed from them at the September deposition. Although counsel for RAC and SER did not withdraw objections asserted in the September deposition, (Dep. Cerullo, 4/12/96 at 117, attached to Corp.Att'ys' Mot.Summ.J.), he did note for the record that he was "not necessarily asserting the privilege in response to any questions [Plaintiffs' counsel] may ask until [he heard] what the questions [were]." Id. at 115. Also, counsel for RAC and SER withdrew all objections based on privilege at the April deposition. Id. at 116-17.

Therefore, this court finds there was no concealment as to any questions Plaintiffs raised in the September deposition. Rather, Plaintiffs' counsel failed to pursue these issues save for the issue of competitive bidding in reference to related party transactions, and this court found such information privileged.

Plaintiffs also contend that Cerullo concealed information relevant to the instant motion at the second deposition on April 14, 1996, when he refused to discuss a conversation with David Christ relating to whether or not the 1980 Shareholders Agreement had been followed. (Pls.' Resp.Corp.Att'ys' Mot.Summ.J. at 5.) In the April deposition Plaintiffs asked Cerullo what Christ's conclusions were with respect to whether the 1980 Shareholders' Agreement had been followed. (Dep. Cerullo, 4/12/96 at 49, attached to Corp.Att'ys' Mot.Summ.J.) Counsel for RAC and SER objected on the basis of attorney-client privilege, id., but later withdrew the objection. Id. at 117. Plaintiffs also contend that Cerullo engaged in concealment by refusing to provide his opinion as to the enforceability of the 1980 Shareholders Agreement at the present time and his opinion of a letter of May 17, 1989, written by his former partner, Abraham Frumkin, concerning the enforceability of the 1980 Shareholders Agreement. (Pls.' Resp.Corp.Att'ys' Mot.Summ.J. at 21 (citing Dep. Cerullo, 4/12/96 at 32-33, attached to Corp.Att'ys' Mot.Summ.J.).) This court finds that Cerullo's current opinion on these matters is not relevant to his operation or management of the alleged enterprises.

*31 Plaintiffs also allege that Cerullo "has actively concealed information [about RAC and SER] from James Curran and his directors, despite James Curran's contractual and property rights in this information." (Pls.' Resp.Corp.Att'ys' Mot.Summ.J. at 32.) This court does not find that Cerullo's actions rise to the level of concealment. Plaintiffs' evidence, at most, shows that Cerullo did not provide information related to the instant litigation after this court's stay of discovery and that Cerullo gave an opinion about the ownership of SSI banks with which Plaintiffs disagree.

Plaintiffs have not provided evidence of concealment of material information. Therefore, this court will address the merits of the defenses presented by the Corporate Attorneys' in their Motion for Summary Judgment.

B. 1962(c)
Plaintiffs allege that the Corporate Attorneys have violated § 1962(c) of the RICO statute. Section 1962(c) provides:
> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). The Corporate Attorneys argue that the claims against them based on § 1962(c) should be dropped because Plaintiffs' allegations do not fulfill § 1962(c)'s distinctiveness requirement and because Plaintiffs have failed to show that the Corporate Attorneys participated in the

conduct of the enterprise. Each of these arguments will be examined in turn.

1. The Distinctiveness Requirement

The Corporate Attorneys first argue that they are not properly distinct from one of the alleged RICO enterprises. Plaintiffs allege that the RICO enterprise is, alternatively, RAC, SER, or

> the association in fact of Rich, Jr., Rich, Sr., Brian Rich, Robert Ryan, Bonnie Ryan, Terrence Ryan, Gloria Curran, Maria Cantwell, David Christ, Tornetta, Cerullo, and FS & C, Gilberton Power, W.M.P.I., Ri-corp., JMB and the other Defendants, including but not limited to other entities in which Defendants may have or had an interest....

(Third Am.Compl. ¶ ¶ 338-340.) Concerning the alleged association in fact, the Corporate Defendants contend that by characterizing Cerullo and FS & C as both persons and part of the enterprise, Plaintiffs have failed to meet the distinctiveness requirement of § 1962(c). (Corp.Att'ys' Br.Supp.Mot.Summ.J. at 6.)

In *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.,* 46 F.3d 258 (3d Cir.1995), the Third Circuit Court of Appeals described the prevailing distinctiveness requirement:

> [T]his requirement originates in the statute's textual directive that § 1962(c) liability requires conduct by defendant "persons" acting through an "enterprise." ... [A] claim simply against one corporation as both "person" and "enterprise" is not sufficient. Instead, a viable § 1962(c) action requires a claim against defendant "persons" acting through a distinct "enterprise."

*32 *Id.* at 268. However, in *Jaguar Cars,* the court of appeals liberalized this distinctiveness requirement by adding that "alleging conduct by officers or employees who operate or manage a corporate enterprise satisfies this requirement" because "[a] corporation is an entity legally distinct from its officers or employees, which satisfies the "enterprise" definition of 18 [U.S.C.] § 1961(4)." *Id.* Prior to *Jaguar Cars* 's broadened interpretation of the distinctiveness requirement, the Third Circuit Court of Appeals had found the distinctiveness requirement was satisfied even where there was some overlap between the alleged "persons" and the "association in fact." *Petro-Tech, Inc. v. Western Co. of North America,* 824 F.2d 1349, 1361 (3d Cir.1987) (finding that the corporation could be liable as a defendant person where the enterprise was alleged to be an association in fact consisting of the corporation and individual defendants); *see also Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1165-66 (3d Cir.1989) (finding that the distinctiveness requirement is fulfilled where three corporations were alleged to be persons and where the enterprise was alleged to be an association in fact of the three corporations).

In the instant case, Plaintiffs' allegations that the Corporate Attorneys are both persons and part of the association in fact satisfies the distinctiveness requirement of § 1962(c).

2. Participation in the Conduct of the Enterprise

The United States Supreme Court has held that "one is not liable [under 18 U.S.C. § 1962(c) ] unless one has participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young,* 507 U.S. 170, 183 (1993). In its application of *Reves* to the involvement of professionals providing services to RICO enterprises, the Court of Appeals for the Third Circuit has found that "[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result." *University of Maryland v. Peat, Marwick, Main & Co.,* 996 F.2d 1534, 1539 (3d Cir.1993).

By way of general response to the Corporate Attorneys' arguments about liability under § 1962(c), Plaintiffs contend that the Corporate Attorneys were in the "chain of command through which the enterprise's affairs were conducted." (Pls.' Resp.Corp.Att'ys' Mot.Summ.J. at 14 (citing *United States v. Oreto,* 37 F.3d 739, 750 (1st Cir.1994), *cert. denied,* 115 S.Ct. 1161 (1995)).) In *Cohen v. Wolgin,* Civ. No. 87-2007, 1995 WL 33095 (E.D.Pa. Jan. 24, 1995), the court denied the defendant lawyer-accountant's motion for summary judgment because it found that the accountant was "clearly in the 'chain of command.' " *Id.* at *17. The court based this finding on the fact that the plaintiff had alleged that the lawyer-accountant had misrepresented the financial status of the enterprise to its creditors and to the plaintiff and had directed that others make similar misrepresentations. *Id.* In *Oreto* the court found that "one may 'take part in' the conduct of an enterprise by knowingly implementing decisions, as well as by making them." *Oreto,* 37 F.3d at 750. Plaintiffs assert that "[n]ot only do Cerullo [and] FS & C carry out the orders of the Rich Control Group and facilitate the schemes to defraud [Plaintiffs], they also devise these schemes." (Pls.' Resp.Corp.Att'ys' Mot.Summ.J. at 14.) Plaintiffs also contend that "[a]t the very least, a factual dispute exists regarding the role of Defendant Cerullo and the extent of his participation with the Rich Control Group in the management and control of the enterprises," and that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

therefore the 1962(c) claim against the Corporate Attorneys should not be dismissed. *Id.* at 16.

**\*33** In *Cohen,* the court found that "[t]here is evidence from which a jury could reasonably infer ... that [the lawyer-accountant's] role ... was not merely that of an independent entity providing accounting services to the enterprise." *Cohen,* 1995 WL 33095, at \*16. The critical question here is whether Plaintiffs have provided such evidence in this case. As noted earlier, in a motion for summary judgment the moving party bears the burden of showing that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). The non-moving party must then go beyond the pleadings to "establish the existence of each element on which it bears the burden of proof," *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990) (citation omitted), *cert. denied,* 499 U.S. 921 (1991), because "a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

In the instant case the evidence presented by Plaintiffs is insufficient to defeat the motion for summary judgment. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) (citation omitted). Because evidence that is "merely colorable" or "not significantly probative" cannot defeat a motion for summary judgment, *id.,* the motion is granted as to the 1962(c) claims against the Corporate Attorneys. An examination of the Corporate Attorneys' position in the corporations involved in the association in fact and the Corporate Attorneys' involvement in each of the predicate acts reveals that the Corporate Attorneys did not participate in the conduct of the alleged enterprises through a pattern of racketeering activity.

a. Cerullo's Position as an Officer of the Corporations Participating in the
Alleged Association-In-Fact

The Corporate Attorneys argue that Cerullo's alleged status as an officer of the corporations comprising the association in fact does not support the contention that he engaged in the operation or management of a RICO enterprise. The Corporate Attorneys provide evidence that Cerullo serves only as an assistant secretary of some of the corporate defendants and that his officer status, as such, is limited to attestation purposes only. (Corp.Att'ys' Br.Supp.Mot.Summ.J. at 7.)

This court finds that holding the position of assistant secretary is not enough, in and of itself, to satisfy § 1962(c)'s operation or management requirement. *See Webster v. Omnitrition Int'l, Inc.,* 79 F.3d 776, 789 (9th Cir.1996) (finding that attorney's "purely ministerial role as 'Assistant Secretary' in the corporation is insufficient to warrant liability under § 1962(c)"); *Biofeedtrac v. Kolinor Optical Enters., 832 F.Supp. 585, 591 (E.D.N.Y.1993)* (stating that "[t]he court places no weight on the facts that [an attorney] was the sole director, and later would become corporate secretary of [a defendant corporation]" because "[c]orporate counsel customarily fill such roles without becoming a part of the operation or management of the enterprise.").

b. The Scheme to Withhold Distributions through the Meridian Loan Agreement

Plaintiffs contend that "[t]hrough Defendant FS & C and Cerullo's affirmative actions to Meridian Bank, and the fraudulent concealment of the 1980 Shareholders Agreement, Defendants FS & C and Cerullo participated in the management of the enterprises." (Third Am.Compl. ¶ 68.) Plaintiffs base this allegation on a letter dated November 30, 1993, from a member of FS & C to Meridian. *Id.* ¶ 65; (*see also* Letter from Paul J. Datte of FS & C to Paul D. Cohn, Vice President of Meridian Bank, of 11/30/93, Ex. Q, Third Am.Compl.) According to Plaintiffs, "[t]his letter advised the Bank that RAC had the full corporate authority to enter into [a loan agreement with the bank] and failed to disclose to the Bank the existence of the 1980 Shareholders Agreement and 1992 Settlement Agreement." (Third Am.Compl. ¶ 65.)

**\*34** This letter appears to implicate exactly the type of behavior the *Reves* court determined did not constitute operation or management. In *Reves,* the Court found that the accounting firm had not engaged in the operation or management of the enterprise despite the fact that the firm had knowingly prepared misleading financial reports and knowingly presented an inaccurate picture of its clients' financial circumstances at the annual meeting and to the Board of Directors. *See Reves,* 113 S.Ct. at 1173-74. Even assuming that FS & C made misrepresentations in this letter, this alone does not rise to the level of "operation or management." *See also University of Maryland v. Peat, Marwick, Main & Co.,* 996 F.2d 1534, 1539 (3d Cir.1993) (finding that allegations that auditor prepared false and misleading financial

statements for insurer did not constitute operation or management); *Fidelity Fed. Sav. & Loan Ass'n v. Felicetti,* 830 F.Supp. 257, 260 (E.D.Pa.1993) (finding that a realty appraiser's submission of misleading and fraudulent appraisals does not rise to the level of operation or management); *Gilmore v. Berg,* 820 F.Supp. 179, 182-83 (D.N.J.1993) (finding that submission of tax opinion and forecast letters drafted by attorney and accountant and allegedly containing false statements did not constitute participation in directing the affairs of the RICO enterprise).

The instant case is distinguishable from *Cohen*. In *Cohen,* the court found that the plaintiff had adequately alleged liability under § 1962(c) on the part of the defendant accountant because the latter allegedly made misrepresentations about the financial status of the corporate enterprise to its creditors and to the plaintiff and *directed* that others make similar misrepresentations to creditors. *Cohen,* 1995 WL 33095 at *17. The opinion letter in the instant case does not demonstrate the same level of operation or management.

c. The Conversion Claims

Plaintiffs allege that the Corporate Attorneys and RCG "fraudulently concealed from SSI the removal of anthracite material owned by SSI from the Oak Hill Refuse Banks Nos. 235 and 235R and Oak Hill Slush Area No. 78." (Third Am.Compl. ¶ 85.) Plaintiffs contend that Cerullo misrepresented the ownership of the Oak Hill banks in a series of letters. *Id.* ¶¶ 87-90. The letters Plaintiffs have presented to the court reveal nothing more than Cerullo's opinion regarding the ownership of refuse banks. Even assuming, arguendo, that these letters contain misrepresentations, this does not rise to the level of operation and management for reasons already stated.

d. Related Party Transactions, Phantom Expenses, and the Usurpation of
Corporate Opportunities through JMB Development, Inc.

Plaintiffs have not alleged any specific behavior delineating the Corporate Attorneys' role in the related party transactions, the phantom expenses, or the usurpation of corporate opportunities through JMB Development, Inc. Nor have Plaintiffs provided any evidence as to the Corporate Attorneys' operation or management through these racketeering activities.

e. Aiding and Abetting

*35 Plaintiffs assert that the Corporate Attorneys are liable under § 1962(c) because they have aided and abetted the other Defendants involved in the operation and management of the RICO scheme. (Pls.' Resp.Corp.Att'ys' Mot.Summ.J. at 22; Third Am.Compl. ¶ 389.) The Corporate Attorneys contend that under *Central Bank of Denver v. First Interstate Bank of Denver,* 114 S.Ct. 1439 (1994), "a statute which [does] not include civil liability for aiders and abettors may not be construed to establish such liability," (Corp.Att'ys' Br.Supp.Mot.Dismiss at 10), and therefore there is no such liability under RICO. However, subsequent to *Central Bank of Denver,* the Third Circuit Court of Appeals held that "a defendant may be liable under RICO if he aided or abetted the commission of at least two predicate acts of mail fraud." *Jaguar Cars,* 46 F.3d at 270. [FN22] To establish liability of a defendant for aiding and abetting a predicate act under RICO the plaintiff must show "(1) that the substantive act has been committed, and (2) that the defendant alleged to have aided and abetted the act knew of the commission of the act and acted with intent to facilitate it." *Id.*

> FN22. In light of *Jaguar Cars,* other courts in this circuit have not extended *Central Bank of Denver* to RICO. *See Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.,* Civ.A. No. 95-1698, 1996 WL 135336, at *6 & n. 5 (E.D.Pa. Mar. 19, 1996) (stating that in that in spite of *Central Bank* "[t]his Court ... is bound by current Third Circuit law, which, again, provides that civil RICO aiding and abetting liability does exist"). Although this court is doubtful about the viability of aiding and abetting claims under RICO after *Central Bank,* it, too, in light of *Jaguar Cars,* is reluctant to dismiss Plaintiffs' aiding and abetting claims.

Assuming arguendo that Plaintiffs are able to show aiding and abetting by the Corporate Attorneys, this court finds that this theory cannot be used to circumvent the operation and management test. Courts within this circuit have distinguished aiding and abetting from operation and management. *See Rolo v. City Investing Co. Liquidating Trust,* 897 F.Supp. 826, 833 (D.N.J.1995) (finding it proper to dismiss aiding and abetting claims that did not meet the "operation or management" test of *Reves* ); *Fidelity Fed. Sav. & Loan Ass'n,* 830 F.Supp. at 261 (dismissing claims under 1962(c) because defendant did not operate or manage the alleged enterprise but declining to dismiss the aiding and abetting claims).

C. WHETHER THE ALLEGATIONS AGAINST

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 46-21   Filed 07/29/2005   Page 14 of 17

Not Reported in F.Supp.    Page 28
1996 WL 502280 (E.D.Pa.), RICO Bus.Disp.Guide 9190
(Cite as: 1996 WL 502280 (E.D.Pa.))

THE ATTORNEYS AS MEMBERS OF THE RICH CONTROL GROUP ARE INSUFFICIENTLY SPECIFIC

The Corporate Attorneys assert that "[t]he general allegations against the Rich Control group lack any measure of precision or substance regarding the [Corporate Attorneys'] acts," and that therefore the RICO claims against the [Corporate Attorneys] should be dismissed. (Corp.Att'ys' Mot.Summ.J. at 15.) In *Seville Indus. Machinery v. Southmost Machinery,* 742 F.2d 786 (3d Cir.1984), *cert. denied,* 469 U.S. 1211 (1985), the court stated that "Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Id.* at 791. This court has already determined that Plaintiffs have failed to make specific allegations concerning the Corporate Attorneys' involvement in the related party transactions, the phantom expenses, and the usurpation of corporate opportunities through JMB Development, Inc. Therefore, these claims are stricken as to the Corporate Attorneys, and Plaintiffs may not base RICO claims against the Corporate Attorneys on these two predicate acts. The Corporate Attorneys' involvement in the other predicate acts (the scheme to withhold distributions through the Meridian Loan Agreement and the conversion of SSI property) has been discussed already. This court finds that the allegations concerning the Corporate Attorneys' involvement in these predicate acts is sufficiently specific to satisfy the standard established in *Seville.*

IV. CORPORATE ATTORNEYS' MOTION TO DISMISS

*36 In deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), "all facts alleged in the complaint and all reasonable inferences that can be drawn from them must be accepted as true." *Malia v. General Elec. Co.,* 23 F.3d 828, 830 (3d Cir.) (citation omitted), *cert. denied,* 115 S.Ct. 377 (1994). The complaint should not be dismissed unless Plaintiffs allege "no set of facts in support of the claim that would entitle [them] to relief." *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994).

The Corporate Attorneys claim that Plaintiffs have failed to allege a claim against them under § 1962(a), § 1962(b), or § 1962(c), that the state fraud claims lack sufficient specificity, and that there is no cause of action for aiding and abetting a breach of fiduciary duty. [FN23]

> FN23. The Corporate Attorneys also challenge Curran's standing to seek relief from the Meridian Bank Loan Agreement. This issue has already been discussed previously and will not be addressed here.

A. 1962(a)

The Corporate Attorneys argue that Plaintiffs have failed to allege a claim under 1962(a). [FN24] The Corporate Attorneys contend that Plaintiffs fail to allege "either Cerullo or FS & C receive income, that such income arose from racketeering activities, or that such income was invested or used in any way." (Corp.Att'ys' Mem.Supp.Mot.Dismiss at 3.) However, in Counts I and VII of the Third Amended Complaint, which contain Plaintiffs' claims for violation of § 1962(a), Plaintiffs allege that Defendants, including the Corporate Attorneys, have derived income through a pattern of racketeering activity. (Third Am.Compl. ¶ ¶ 324, 371.) In Counts I and VII Plaintiffs allege that Defendants, including the Corporate Attorneys, have used or invested this income to acquire interests in or to operate the RICO enterprise. *Id.* ¶ ¶ 325, 372. Thus, Plaintiffs have adequately alleged a claim under § 1962(a).

> FN24. Section 1962(a) provides in pertinent part:
> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. 18 U.S.C. § 1962(a).

B. 1962(b)

In order for there to be a violation of § 1962(b), [FN25] a defendant's racketeering activities must result in the acquisition or maintenance of an interest in or control of a RICO enterprise. The Corporate Attorneys argue that the claims against them based on § 1962(b) should be dismissed for three reasons. First, they argue that Curran's claim against them for violating § 1962(b) fails to include the allegation that

Case 1:05-cv-00165-JJF    Document 46-21    Filed 07/29/2005    Page 15 of 17

Not Reported in F.Supp.                                                                                                               Page 29
1996 WL 502280 (E.D.Pa.), RICO Bus.Disp.Guide 9190
(Cite as: 1996 WL 502280 (E.D.Pa.))

the Corporate Attorneys acquired an interest in a RICO enterprise by means of a racketeering activity. Although Plaintiffs failed to make such an allegation in Count VIII (Curran's claim against Defendants based on § 1962(b)), (Third Am.Compl. ¶ 382), Plaintiffs did make this allegation in Count II (SSI's claim against Defendants based on § 1962(b)). (Third Am.Compl. ¶ 333.) This court will not dismiss Count VIII for a technical error when Plaintiffs have pled the elements of a § 1962(b) violation elsewhere in the Third Amended Complaint.

> FN25. Section 1962(b) states:
> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
> 18 U.S.C. § 1962(b).

Secondly, the Corporate Attorneys argue that their omission from the list of Defendants who allegedly committed the predicate acts is fatal to Plaintiffs' claims under § 1962(b). However, as noted previously, this court finds that Plaintiffs have alleged specific involvement on the part of the Corporate Attorneys in the following predicate acts: the scheme to withhold distributions through the Meridian Loan Agreement and the conversion of SSI property.

*37 Finally, the Corporate Attorneys claim that "the complaint does not assert how or when Cerullo or FS & C became members of the alleged association-in-fact, or any details of the existence of this association." (Corp.Att'ys' Mem.Supp.Mot.Dismiss at 4.) The Corporate Defendants have not briefed this argument nor presented to the court why, if such is true, this in and of itself should lead to a dismissal. This court finds Plaintiffs allegations of a § 1962(b) violation sufficient to overcome a motion for dismissal.

### C. 1962(d): CONSPIRACY

The Corporate Attorneys argue that because Plaintiffs fail to identify overt acts or predicate acts committed or promised by the Corporate Attorneys in furtherance of a conspiracy, claims against them based on § 1962(d) should be dismissed. (Corp.Att'ys' Mem.Supp.Mot.Dismiss at 9-10.) The Corporate Attorneys also contend that Plaintiffs' allegations in this regard are not sufficiently specific.

*Id.* at 9.

Although claims based on § 1962(c) are dismissed as to the Corporate Attorneys, this court notes that dismissal of claims under § 1962(d) after dismissal of claims under § 1962(c) is not automatic. *Fidelity Fed. Sav. & Loan Ass'n,* 830 F.Supp. at 261. Liability under § 1962(d) is based not on whether a defendant personally commits the predicate acts, but rather upon whether that defendant agrees to the commission of the predicate acts. *United States v. Adams,* 759 F.2d 1099, 1116 (3d Cir.1985). The Third Circuit Court of Appeals has established the following criteria for determining whether a violation of § 1962(d) has occurred:

> [I]n order to state a claim under RICO subsection [1962](d), a plaintiff must allege (1) agreement to commit the predicate acts of fraud, and (2) knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate section 1962(a), (b), or (c). [A]llegations of conspiracy are not measured under the ... [Fed.R.Civ.P.] 9(b) standard, which requires greater particularity of allegation of fraud, but are measured under the more liberal ... [Fed.R.Civ.P. 8(1) ] pleading standard." A conspiracy claim must also contain supportive factual allegations. The allegations must be sufficient to "describe the general composition of the conspiracy, some or all of its broad objective, and the defendant's general role in that conspiracy."

*Rose v. Bartle,* 871 F.2d 331, 366 (3d Cir.1989) (citations omitted).

This court finds that in addition to providing evidence of the Corporate Attorneys' involvement in two of the alleged predicate acts, Plaintiffs have properly alleged the elements of conspiracy under § 1962(d), and these allegations are sufficient to withstand a motion to dismiss.

### D. LACK OF SPECIFICITY OF STATE CLAIMS FOR FRAUD

The Corporate Attorneys argue that Plaintiffs' common law fraud claims are insufficiently specific to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b). As noted previously, in *Seville Indus. Machinery v. Southmost Machinery,* 742 F.2d 786 (3d Cir.1984), *cert. denied,* 469 U.S. 1211 (1985), the Third Circuit stated that "Rule 9(b) requires plaintiffs to plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and

fraudulent behavior." *Id.* at 791. The court found that although "allegations of 'date, place or time' fulfill these functions, ... nothing in the rule requires them." *Id.* The court stated that "[p]laintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.*

*38 The Corporate Attorneys also argue that Plaintiffs have failed to plead all the elements of common law fraud. "In order to establish a cause of action in fraud, a plaintiff must plead the following elements with particularity:

(1) a misrepresentation; (2) a fraudulent utterance thereof; (3) an intention by the maker to induce the recipient thereby; (4) justifiable reliance by the recipient on the misrepresentation; and (5) damage to the recipient as a proximate result of the misrepresentation.

*Rivello v. New Jersey Auto. Full Ins.*, 638 A.2d 253, 257 (Pa.Super.1994) (citations omitted).

The only specific allegations concerning misrepresentations made by the Corporate Attorneys pertain to FS & C's letter to Meridian Bank which failed to disclose the 1980 Shareholders Agreement and Cerullo's letters allegedly misrepresenting the ownership of SSI banks. With respect to the letter to Meridian Bank, Plaintiffs have failed to aver damage to the recipient as a proximate result of the misrepresentation. With respect to the letters about SSI banks, Plaintiffs have failed to aver that Cerullo intended to induce the recipient and that there was justifiable reliance on the alleged misrepresentation. Therefore, the state claims for fraud are dismissed as to the Corporate Attorneys.

E. BREACH OF FIDUCIARY DUTY

In Count XI of the Third Amended Complaint, Plaintiffs allege that the Corporate Attorneys aided and abetted breaches of fiduciary duty. (Third Am.Compl. ¶ 411.) The Corporate Attorneys argue that there is no cause of action under Pennsylvania law for aiding and abetting a breach of fiduciary duty.

The Pennsylvania Supreme Court has not spoken on whether a claim for aiding and abetting the breach of a fiduciary duty would be recognized in Pennsylvania. *Thompson v. Glenmede Trust Co.,* Civ.A. No. 92-5233, 1994 WL 675186, at *5 (E.D.Pa. Nov. 23, 1994). "When presented with a novel issue of law, or where applicable state precedent is ambiguous, absent or incomplete, [the federal court] must determine or predict how the highest state court would rule." *Rolick v. Collins Pine Co.,* 925 F.2d 661, 664 (3d Cir.1991), cert. denied, 507 U.S. 973 (1993). In *Pierce v. Rosetta Corp.,* Civ.A. No. 88- 5873, 1992 WL 165817 (E.D.Pa. June 12, 1992), the court predicted that the Pennsylvania Supreme court would recognize a claim for aiding and abetting a breach of a fiduciary duty. *Id.* at *8. Other courts in the Eastern District of Pennsylvania have entertained state law claims based on aiding and abetting a breach of fiduciary duty. *See, e.g., SDK Investments, Inc. v. Ott,* No. CIV.A. 94-1111, 1996 WL 69402, *12 (E.D.Pa. Feb. 15, 1996) (stating that "[t]o establish a claim for aiding and abetting breach of a fiduciary duty, plaintiffs must show (1) breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider or abettor, and (3) substantial assistance or encouragement by the aider or abettor in effecting that breach.") (citation omitted); *Thompson,* 1994 WL 675186, at *5 (allowing plaintiff to amend complaint to include claim under Pennsylvania law for aiding and abetting breach of fiduciary duty). Therefore, this court finds that there is no basis for dismissing Plaintiffs' aiding and abetting claim.

SUMMARY

*39 In summary, the Motion to Strike the Third Amended Complaint is denied, but Defendants have leave to further address new claims at the Rule 50(a) stage. The Corporate Defendants' and Tornetta's Motions for Summary Judgment are denied. However, Plaintiffs are prevented by claim preclusion from basing any claims on the transactions with Commonwealth Insurance Company, the alleged fraudulent reports to Price Waterhouse, the escrow fund, the failure to pay SSI royalties, and the usurpation of corporate opportunity relating to Ri-Corp, and from basing the following claims on incidents occurring before the following dates:

| CLAIM | DATE OF BAR |
|---|---|
| The failure to distribute dividends | 10/28/94 |
| Related party transactions | 10/28/94 |
| Defrauding the Anthracite Health & Welfare Fund | 4/20/94 for Tornetta |

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
1996 WL 502280 (E.D.Pa.), RICO Bus.Disp.Guide 9190  
**(Cite as: 1996 WL 502280 (E.D.Pa.))**

Page 31

```
                                                         3/5/93 for
                                                           Corporate
                                                           Defendants
W.M.P.I.'s failure to pay RAC for use of its silt drying facility  10/28/94
Litigation fund                                                    10/28/94
Conversion of Oak Hill # # 73, 78, 235, 235R & Cambridge 241       10/28/94
Usurpation of corporate opportunities                              10/28/94
```

Also, Defendants may address at the Rule 50(a) whether the claims of concealment of payments to Tornetta for litigation expenses and conversion of SSI materials (other than those listed above) are precluded.

Plaintiffs may base their RICO claims only on the following predicate acts: (1) the scheme to withhold distributions through the Meridian Bank Loan Agreement; (2) the related party transactions; (3) the conversion of SSI property; (4) the phantom expenses; and (5) the usurpation of corporate opportunities through J.M.B. Development, Inc. Defendants also have leave to challenge the related party transactions, the conversion of SSI property, the diversion of corporate opportunities through J.M.G. Development, and Tornetta's involvement in the predicate acts at the Rule 50(a) stage.

Curran may base his individual claims only upon the alleged failure to distribute in accordance with the 1980 Stockholders Agreement.

The Corporate Attorneys' Motion for Summary Judgment is granted in part and denied in part. The claims based on § 1962(c) are dismissed. Also, Plaintiffs may base RICO claims against the Corporate Attorneys only on the following predicate acts: the scheme to withhold distributions through the Meridian Bank Loan Agreement and the conversion of SSI property. The Corporate Attorneys' Motion to Dismiss is granted in part and denied in part. The state fraud claims are dismissed as to the Corporate Attorneys.

1996 WL 502280 (E.D.Pa.), RICO Bus.Disp.Guide 9190

**Motions, Pleadings and Filings (Back to top)**

• 2:95cv03128 _____ (Docket) (May. 23, 1995)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.