# EXHIBIT 33

Westlaw.

Not Reported in F.Supp.2d
2003 WL 924615 (E.D.Pa.), RICO Bus.Disp.Guide 10,443
(Cite as: 2003 WL 924615 (E.D.Pa.))

**H**

**Motions, Pleadings and Filings**

United States District Court, E.D. Pennsylvania.
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
v.
Anthanasios MAKRIS, ET AL.
**No. CIV.A. 01-5351.**

March 4, 2003.

*MEMORANDUM AND ORDER*

PADOVA.

**\*1** Plaintiff, State Farm Mutual Automobile Insurance Company ("State Farm"), has brought this action against fifteen individuals, two attorneys and their law firms, one paralegal, a doctor and her practice, and a chiropractor and her practice, alleging that they participated in a scheme to defraud State Farm by staging automobile accidents, submitting false and fraudulent insurance claims to State Farm arising out of those accidents, and initiating fraudulent third-party claims against State Farm's insureds seeking payment for pain and suffering allegedly suffered in those staged accidents. Before the Court are nine motions to dismiss Counts IX and X of the Third Amended Complaint which assert claims brought pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"). [FN1] For the reasons which follow, the Motions are DENIED.

> FN1. The Motions to Dismiss have been filed by fourteen of the twenty-six Defendants (the "Moving Defendants"): Andrew Gaber (Docket No. 100); Igor Avagimyan (Docket No. 102); Alan Vaisberg (Docket No. 103); Mitchell S. Greenspan, Mitchell S. Greenspan and Andrew H. Gaber, P.C., Greenspan & Gaber P.C., and Greenspan Law Firm (Docket No. 104); Nora Faynberg (Docket No. 106); Nina Allakhverdova (Docket No. 114); Alexandre Shmakov, Olena Khyzhnyak, and Dmitry Mirkin (Docket No. 115); Rennard Health Care, Inc. (Docket No. 118); and Dimitri Vozni (Docket No. 154). Although

some of these Motions were styled as motions to dismiss the entire Third Amended Complaint, the Moving Defendants agreed at the January 10, 2003 argument that they did not intend to move to dismiss the non-RICO counts of the Third Amended Complaint.

I. FACTUAL ALLEGATIONS

The Third Amended Complaint alleges the existence of a conspiracy to defraud State Farm through the staging of automobile accidents as follows: the accidents were staged by Defendants Igor Avagimyan, Peter Bratsis and Pete Papanicolau, who arranged for individuals to drive cars that would intentionally rear-end other vehicles. (3d Am.Compl.¶ ¶ 42-43.) The drivers of the striking vehicles were paid. (3d Am.Compl.¶ 44.) The passengers in the vehicles that were hit were referred to attorneys, in most cases Defendants Andrew Gaber, Mitchell Greenspan, and their law firms, Defendants Mitchell S. Greenspan and Andrew H. Gaber, P.C., Greenspan & Gaber P.C., and Greenspan Law Firm (collectively referred to as the "Law Firm"). (3d Am.Compl.¶ 44.) Gaber, Greenspan and the Law Firm helped the passengers make false and fraudulent insurance claims to State Farm for first party medical benefits, underinsured and/or uninsured motorist coverage and third-party claims for pain and suffering and property damage. (3d Am.Compl.¶ 44.) The passengers were also referred to medical facilities, mostly Defendants Rennard Health Care Inc. ("Rennard") and Philmont Chiropractic, Inc. ("Philmont"), for phony medical treatment. (3d Am.Compl.¶ 45.) Defendant Dr. Nora Faynberg, on behalf of Rennard, and Defendant Nataly Berdichevsky, on behalf of Philmont, prepared fraudulent medical reports, bills and other records and sent them to State Farm for payment. [FN2] (3d Am.Compl.¶ 45.) These reports, bills and records were false and fraudulent because they concerned physical examinations and treatments that were unnecessary or were never provided. (3d Am.Compl.¶ 45.) These false and fraudulent reports, bills and other records were produced "with the full knowledge and assistance of all defendants to assist individuals insured by State Farm in obtaining payment for injuries allegedly arising out of accidents involving uninsured/underinsured motorists and third party claimants allegedly injured by State Farm's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 2
2003 WL 924615 (E.D.Pa.), RICO Bus.Disp.Guide 10,443
(Cite as: 2003 WL 924615 (E.D.Pa.))

insureds." (3d Am.Compl.¶ 46.)

> FN2. Defendants Berdichevsky and Philmont were dismissed as Defendants in this action on January 30, 2003 (Docket No. 176).

The Third Amended Complaint describes five accidents which were allegedly staged as part of the fraudulent scheme. Those accidents occurred on December 19, 1996, November 18, 1997, April 20, 1998, April 30, 1999 and June 24, 1999.

*2 On December 19, 1996, Defendant George Mavroudis, driving an uninsured car, intentionally rear ended a car driven by Defendant Andrey Borovikov in which Defendant Nina Allakhverdova was a passenger. (3d Am.Compl.¶ 48.) The car driven by Borovikov was insured by State Farm at the time of the accident. (3d Am.Compl.¶ 49.) Borovikov and Allakhverdova were represented by Defendants Gaber, Greenspan and the Law Firm "who assisted Allakhverdova and Borovikov in the preparation and submission of phony bills and fraudulent insurance claims for first-party medical benefits and for uninsured motorist benefits." (3d Am.Compl.¶ 50.) After the accident, both Borovikov and Allakhverdova sought medical treatment with Defendants Rennard, Philmont, Faynberg and Berdichevsky for injuries they did not suffer. (3d Am.Compl.¶ 51.) Borovikov, Allakhverdova, Gaber, Greenspan, the Law Firm, Defendant Alan Vaisberg (a paralegal employed by the Law Firm), Rennard, Philmont, Faynberg and Berdichevsky prepared and submitted to State Farm false and fraudulent insurance claims for first-party medical payments and uninsured motorist benefits. (3d Am.Compl.¶ 52.)

On November 18, 1997, Defendant Mavroudis, driving an uninsured car, rear ended a car driven by Defendant Alexander Metlitsky in which Defendant Dimitri Vozni was a passenger. (3d Am.Compl.¶ 53.) Metlitsky's car was insured by State Farm at the time of the accident. (3d Am.Compl.¶ 54.) After the accident, both Metlitsky and Vozni sought medical treatment for injuries which they had not suffered from Rennard, Philmont, Faynberg and Berdichevsky. (3d Am.Compl. 55.) Metlitsky and Vozni were then directed to the Law Firm where Gaber, Greenspan and Vaisberg assisted them in the preparation and submission to State Farm of false insurance claims and bills for first-party medical payments for their medical treatment and for uninsured motorist benefits. (3d Am.Compl.¶ 56.) Metlitsky, Vozni, Gaber, Greenspan, the Law Firm,

Vaisberg, Rennard, Philmont, Faynberg and Berdichevsky prepared and submitted to State Farm false and fraudulent insurance claims for first-party medical payments and uninsured motorist benefits. (3d Am.Compl.¶ 57.) On April 26, 1999, Metlitsky and Vozni gave false testimony under oath during an arbitration held in connection with that accident. (3d Am.Compl.¶ 58.) Metlitsky and Vozni were represented by Gaber, Greenspan, and the Law Firm during the arbitration and provided false testimony with the knowledge, and at the direction, of counsel. (3d Am.Compl.¶ 58.)

On April 20, 1998, Defendant Athanasios Makris, who was driving a car insured by State Farm, intentionally rear-ended a vehicle owned and operated by Defendant Alexander Shmakov, which was also insured by State Farm, in which Defendants Olena Khyzhnyak and Dimitry Mirkin were passengers. (3d Am.Compl.¶ ¶ 59-61.) After the accident, Shmakov, Khyzhnyak and Mirkin sought medical treatment for injuries which they had not suffered and prepared and submitted false insurance claims to State Farm for first-party medical payments and for third-party benefits under the policy covering Makris' car. (3d Am.Compl.¶ ¶ 62- 63.) On May 10, 2000, in furtherance of the scheme to defraud State Farm, Shmakov, Khyzhnyak, and Mirkin gave false testimony under oath during a Philadelphia Court of Common Pleas arbitration hearing regarding the accident. (3d Am.Compl.¶ 64.)

On April 30, 1998, Makris, who was driving a car insured by State Farm, intentionally rear-ended a vehicle operated by Defendant Kirill Kouratnikov, which was also insured by State Farm, in which Defendants Larisa Kouratnikov and Eugenia Wells were passengers. (3d Am.Compl.¶ ¶ 65-68.) After the accident, Kirill Kouratnikov, Larisa Kouratnikov and Eugenia Wells sought medical treatment for injuries which they had not suffered. (3d Am.Compl.¶ 70.) The Kouratnikovs and Wells were represented by Gaber, Greenspan, and the Law Firm, who, along with Vaisberg, assisted them in preparing and submitting false insurance claims and bills to State Farm for first-party medical payments and for third-party benefits under Makris' State Farm insurance policy. (3d Am. Compl. ¶ ¶ 69 and 71.) On June 1, 2000, in furtherance of the scheme to defraud State Farm, Kirill and Larissa Kouratnikov and Eugenia Wells filed a civil complaint against Makris in the Philadelphia Court of Common Pleas which contained false sworn verifications. (3d Am.Compl.¶ 72.) The Complaint was prepared by Gaber, Greenspan and the Law Firm with full knowledge of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 3
2003 WL 924615 (E.D.Pa.), RICO Bus.Disp.Guide 10,443
**(Cite as: 2003 WL 924615 (E.D.Pa.))**

the fact that the accident was staged and that the alleged injuries and damages were false. (3d Am.Compl.¶ 72.)

**\*3** On June 24, 1999, Peter Bratsis was involved in a staged accident with a vehicle driven by Igor Avagimyan in which Nina Allakhverdova was a passenger. (3d Am.Compl.¶ 73.) After the accident, Allakhverdova and Avagimyan sought medical treatment for injuries allegedly suffered in the accident from Rennard, Philmont, Faynberg and Berdichevsky. (3d Am.Compl.¶ 74.) Avagimyan and Allakhverdova were represented by Gaber, Greenspan and the Law Firm who, along with Vaisberg, assisted them in the preparation and submission of bills and fraudulent insurance claims to State Farm for medical and uninsured motorist benefits. (3d Am.Compl.¶ ¶ 75-76.) On September 7, 2000, in furtherance of the scheme to defraud State Farm, Allakhverdova gave false testimony during a statement under oath regarding the June 24, 1999 accident. (3d Am.Compl.¶ 77.) When she gave her statement, she was represented by Gaber, Greenspan, Vaisberg and the Law Firm and the false testimony was given with their knowledge and at their direction. (3d Am.Compl.¶ 77.)

Plaintiff also alleges that Defendants participated in four additional accidents as part of the conspiracy: February 9, 1996, State Farm Automobile Insurance Company, Claim # 38-1607-282; March 10, 1996, Integron Insurance Company, Claim # 37196001045; March 28, 1996, Progressive Insurance Company, Claim # 960054943; and August 5, 1997, Harleysville Insurance Company, Claim # A02268137. (RICO Case Statement at 3.) Defendants Gaber, Greenspan and the Law Firm represented individuals involved in the March 28, 1996 and August 5, 1997 accidents. (RICO Case Statement at 4.)

The Third Amended Complaint alleges that, on numerous occasions, Defendants used the United States mails in furtherance of the conspiracy, including, but not limited, to the following specific acts of mail fraud:
(a) bills for medical care and treatment sent by Rennard Health Care, Inc. on or about February 11, 1998, and received by State Farm on or about February 13, 1998, for Alexander Metlitsky;
**\*4** (b) bills for chiropractic care and physical therapy services sent by Philmont Chiropractic, Inc. on or about February 11, 1998, and received by State Farm on or about February 13, 1998, for Alexander Metlitsky;

(c) bills for medical care and treatment sent by Rennard Health Care, Inc. on or about March 26, 1998, and received by State Farm on March 30, 1998, for Dimitri Vozni;
(d) bills for chiropractic care and physical therapy treatment sent by Philmont Chiropractic, Inc. on or about February 16, 1998, and received by State Farm on or about February 18, 1998 for Dimitri Vozni;
(e) letter from Andrew Gaber, Esquire, and Greenspan & Gaber sent on or about July 30, 1998 and received by State Farm on or about July 31, 1998, enclosing various documents relating to the claims of Dimitri Vozni and Alexander Metlitsky;
(f) bills for medical care, physical therapy treatment and durable medical equipment sent by Marina Kats, Esquire on or about February 23, 1999, and received by State Farm on or about February 26, 1999 on behalf of Alexandre Shmakov, Olena Khyzhnyak and Dmitry Mirkin;
(g) letter from Mitchell S. Greenspan and Greenspan & Gaber sent on or about May 5, 2000, and received by State Farm on or about May 9, 2000, enclosing a copy of a summons filed in the Philadelphia Court of Common Pleas in the matter of *Wells, Kouratnikov and Kouratnikov v. Makris*, Philadelphia Court of Common Pleas No. 0004-3566;
(h) bills for medical care and treatment sent by Nora Faynberg, M.D. on or about November 8, 1999, and received by State Farm on or about November 12, 1999 for Nina Allakhverdova;
(i) bills for chiropractic care and physical therapy services sent by Philmont Chiropractic, P.C. on or about November 8, 1999 and received by State Farm on or about November 12, 1999 for Nina Allakhverdova;
(j) letter from Andrew Gaber, Esquire and Greenspan & Gaber sent on or about August 5, 1999 and received by State Farm on or about August 10, 1999 enclosing an application for insurance benefits executed by Nina Allakhverdova.
(3d Am.Compl.¶ 78.)

II. LEGAL STANDARD

The Moving Defendants have moved to dismiss Counts IX and X of the Third Amended Complaint pursuant to <u>Federal Rules of Civil Procedure 12(b)(6)</u> and <u>9(b)</u>. When determining a Motion to Dismiss pursuant to <u>Rule 12(b)(6)</u>, the court may look only to the facts alleged in the complaint and its attachments. <u>*Jordon v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994)</u>. The court must

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 924615 (E.D.Pa.), RICO Bus.Disp.Guide 10,443
**(Cite as: 2003 WL 924615 (E.D.Pa.))**

accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the Plaintiff. *Angelastro v. Prudential-Bache Securities, Inc.,* 764 F.2d 939, 944 (3d Cir.1985). In considering the Motions to Dismiss, the Court may also consider the RICO Case Statement filed by Plaintiff which "is a pleading that may be considered part of the operative complaint for the purposes of a motion to dismiss." *Allen Neurosurgical Associates, Inc., v. Lehigh Valley Health Network,* Civ. A. No. 99-4653, 2001 W.L. 41143, at *3 n. 1 (E.D.Pa. Jan.18, 2001) (citing *Lorenz v. CSX Corp.,* 1 F.3d 1406, 1413 (3d Cir.1993)). A Rule 12(b)(6) motion will be granted when a Plaintiff cannot prove any set of facts, consistent with the complaint, which would entitle him or her to relief. *Ransom v. Marrazzo,* 848 F.2d 398, 401 (3d Cir.1988).

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). This rule "requires plaintiffs to plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *McHale v. NuEnergy Group,* Civ. A. No. 01-4111, 2002 WL 321979, * 3 (E.D.Pa. Feb.27, 2002) (citation omitted). There is no formula for pleading fraud with particularity: "Allegations of 'date, place, or time' fulfill these functions, but nothing in the rule requires them. A plaintiff is free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* (citations omitted).

## III. DISCUSSION

*5 Count IX of the Third Amended Complaint asserts a claim against all Defendants pursuant to Section 1962(c) of the RICO statute, 18 U.S.C. § 1962(c). [FN3] In order to state a claim pursuant to this section, Plaintiff must allege the following:

FN3. Section 1962(c) states as follows: "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

(1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, either directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that he or she participated through a pattern of racketeering activity that must include the allegation of at least two racketeering acts.
*Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1165 (3d Cir.1989) (citations omitted).

### A. The Enterprise

The Third Amended Complaint alleges that the defendants were associated in fact and, thus, constitute an enterprise within the meaning of Section 1962(c). (3d Am.Compl.¶ 129.) The Moving Defendants argue that Count IX should be dismissed pursuant to Rule 9(b) because the allegation that all Defendants formed an association in fact is not sufficiently specific. However, there is no impediment to naming an association in fact of all Defendants as the enterprise. A distinct enterprise may exist "even when the very same persons named as Defendants constitute the association-in-fact enterprise." *Perlberger v. Perlberger,* Civ. A. No. 97-4105, 1999 WL 79503, at *3 (E.D.Pa. Feb.12, 1999).

The RICO Case Statement describes the association-in-fact enterprise as follows:

The enterprise is an insurance fraud organization whose purpose was to coordinate the presentation of fraudulent insurance claims to insurers such as State Farm. Individual defendants involved in staged motor vehicle accidents were directed to Gaber, Greenspan and The Law Firm and were, in turn, referred to medical clinics most notably Rennard, Philmont, Faynberg and Berdichevsky. Fraudulent insurance claims and insurance claim papers were prepared, testimony was concocted and bogus legal papers were prepared and filed with the Philadelphia Court of Common Pleas. Individuals involved in staged motor vehicle accidents who were referred to medical clinics including Rennard, Philmont, Faynberg and Berdichevsky were instructed with respect to what injuries they should claim and for how long they should continue to appear for "treatment" notwithstanding the fact that they had no symptoms. Insurance companies were billed for medical treatment, and fraudulent insurance claims were made on behalf of various defendants in order to induce payment of insurance benefits. All defendants together associated in order to form the

Not Reported in F.Supp.2d                                                                                           Page 5
2003 WL 924615 (E.D.Pa.), RICO Bus.Disp.Guide 10,443
**(Cite as: 2003 WL 924615 (E.D.Pa.))**

enterprise, the sole purpose of which was to fabricate insurance claims and lawsuits.

(RICO Case Statement at 15.) A RICO enterprise must have the following three elements: "[i]t must be (1) an 'ongoing organization' (2) whose 'associates function as a continuing unit' and (3) whose identity is 'separate and apart from the pattern of activity in which it engages.' " *Federal Ins. Co. v. Ayers,* 741 F.Supp. 1179, 1183 (E.D.Pa.1990) (quoting *United States v. Riccobene,* 709 F.2d 214, 221 (3d Cir.1983)). The Moving Defendants also argue that Count IX should be dismissed because the Third Amended Complaint does not specifically allege the common purpose, continuing structure and separateness of the alleged enterprise.

*6 The Third Amended Complaint and RICO Case Statement allege that the association-in-fact enterprise has been ongoing from 1996 through the present, functions as a continuing unit for the purpose of engaging in insurance fraud, and has an identity separate and apart from the pattern of racketeering activity in which it has engaged. (3d Am. Compl. ¶ ¶ 129-136, RICO Case Statement at 12-15.) Moreover, although Plaintiff must prove each of these three elements at trial, Plaintiff need not specifically plead the first two of these elements in its complaint. *See Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 789-90 (3d Cir.1984) ("In the present case, Seville identified the four entities it believed were the enterprises that had been marshalled against it. The rules of pleading require nothing more at this early juncture than that bare allegation."). Plaintiff must, however, allege that the enterprise is separate from the pattern of racketeering activity. *Dianese, Inc. v. Com. of Pennsylvania,* Civ. A. No. 01-2520, 2002 WL 1340316, at *11 (E.D.Pa. June 19, 2002). In order to establish separateness, the complaint must allege that the enterprise has "an existence beyond that which is necessary merely to commit each of the acts charged as predicate racketeering offenses. The function of overseeing and coordinating the commission of several different predicate offenses and other activities on an on-going basis is adequate to satisfy the separate existence requirement." *United States v. Riccobene,* 709 F.2d 214, 223-34 (3d Cir.1983). The RICO Case Statement alleges that the enterprise is separate from the racketeering activity as follows: "[t]he enterprise functioned as a continuing unit during the time alleged in the complaint, separate and apart from the distinct acts of racketeering. There was a common structure to the enterprise during the time period alleged in the complaint beyond the mere acts of mailing insurance claim forms, medical bills and

legal papers." (RICO Case Statement at 16.) The Court finds that the Third Amended Complaint alleges the existence of an association-in-fact enterprise which complies with the separateness requirement set forth in *Riccobene* and, consequently, that the Third Amended Complaint pleads the existence of an association-in-fact enterprise with sufficient particularity to satisfy the requirements of Rule 9(b).

B. *The Pattern of Racketeering Activity*

*7 The Moving Defendants argue that Count IX should be dismissed pursuant to Rule 9(b) because it does not plead a pattern of racketeering activity, and each of the Moving Defendants' participation in such pattern of racketeering activity, with sufficient particularity. "A pattern of racketeering activity requires the occurrence of at least two acts of racketeering activity (i.e., predicate acts) within a ten year period." *Perlberger v. Perlberger,* 32 F.Supp.2d 197, 201 (E.D.Pa.1998) (citing 18 U.S.C.A. § 1961(5)). "[N]o defendant can be liable under RICO unless he participated in two or more predicate offenses sufficient to constitute a pattern." *Id.* (citing *Banks v. Wolk,* 918 F.2d 418, 421 (3d Cir.1990)). In addition, those acts must be related and "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tele. Co.,* 492 U.S. 229, 238, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989).

The Third Amended Complaint alleges that the ten specific instances of mail fraud alleged in paragraph 78 of the Third Amended Complaint constitute a pattern of racketeering activity. (3d Am.Compl.¶ 133.) The Moving Defendants argue that these allegations are inadequate because the Third Amended Complaint and RICO Case Statement fail to plead mail fraud with sufficient particularity. The elements of the predicate act of mail fraud, in violation of 18 U.S.C. § 1341, are: "(1) the existence of a scheme to defraud; (2) the participation by the defendant in the particular scheme charged with the specific intent to defraud; and (3) the use of the United States mails in furtherance of the fraudulent scheme. *United States v. Hannigan,* 27 F.3d 890, 892 (3d Cir.1994) (footnote omitted) (citing *United States v. Burks,* 867 F.2d 795, 797 (3d Cir.1989)). The scheme "need not be fraudulent on its face but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension. Proof of specific intent is required ... which may be found from a material misstatement of fact made with reckless disregard for the truth." *United States v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 924615 (E.D.Pa.), RICO Bus.Disp.Guide 10,443
(Cite as: 2003 WL 924615 (E.D.Pa.))

Page 6

*Coyle,* 63 F.3d 1239, 1243 (3d Cir.1995) (citations omitted). Use of the mails does not have to be an essential part of the fraudulent scheme. Rather, "it is sufficient if the mailings are incident to an essential part of the scheme or a step in [the] plot." *Id.* at 1244 (citation omitted). It is also not necessary that the mailings themselves be fraudulent: "[t]he mailings themselves need not contain any misrepresentations: 'innocent mailings--ones that contain no false information--may supply the mailing element.' " *Philadelphia Reserve Supply Co. v. Norwalk & Assoc., Inc.,* 864 F.Supp. 1456, 1470 (E.D.Pa.1994) (quoting *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734, (1989)). Moreover, liability for mail fraud does not require personal mailing or prior knowledge of the mailing: "the defendants need not have been the actual individuals who used the mails and wires, nor need they have known of the specific communications; it is sufficient under the mail and wire fraud statutes that the use of the mails and wires by others occurred in the ordinary course of business related to the fraudulent scheme, or was foreseeable as part of the furtherance of the fraudulent scheme." *Id.* at 1471 (citing *United States v. Bentz,* 21 F.3d 37, 40-41 (3d Cir.1994)).

The Moving Defendants claim that the Third Amended Complaint fails to allege specific predicate acts of mail fraud with the specificity required by Rule 9(b). The Moving Defendants maintain that neither the Third Amended Complaint nor the RICO Case Statement identify the individual responsible for issuing the mailings or how the mailings relate to the conspiracy, and impermissibly lump the Defendants together rather than identifying instances of mail fraud committed by each Defendant. Defendants rely on *Allen Neurosurgical Associates, Inc. v. Lehigh Valley Health Network,* Civ. A. No. 99-4653, 2001 W.L. 41143, at *3 (E.D.Pa. Jan.18, 2001), in which the District Court dismissed RICO claims because the predicate acts were not pled with the particularity required by Rule 9(b). In *Allen Neurosurgical Associates,* Plaintiff had not pled the date, place or time of the alleged misrepresentations, the individual who made the misrepresentations, the recipient of the misrepresentations, or the contents of the misrepresentations. *Id.* In this case, however, the Third Amended Complaint lists ten specific individual predicate acts of mail fraud and, for each such mailing, describes the sender, the contents of the mailing, the date of mailing, the recipient, and the date of receipt. (3d Am.Compl.¶ 78). In addition, the RICO Case Statement alleges that those ten mailings constitute mail fraud because the documents mailed "were fraudulent in that they described and sought payment for medical treatment that was unnecessary or never provided, sought payment for insurance claims based on staged accidents that resulted in no real injuries and initiated and advanced civil lawsuits for money damages where no real accidents occurred and no real injuries were sustained." (RICO Case Statement at 13-14.) The RICO Case Statement also alleges that the acts of mail fraud were part of a "related and continuous pattern of fraud" and were part of a common scheme to obtain payments from State Farm and other insurance companies. (RICO Case Statement at 14.) The RICO Case Statement also states that the acts of mail fraud "constitute a pattern since they involve numerous acts and have continued over several years." (RICO Case Statement at 14.) The Court finds that the Third Amended Complaint and RICO Case Statement plead mail fraud with sufficient particularity to comply with the requirements of Rule 9(b).

*8 The Moving Defendants also argue that the Third Amended Complaint and RICO Case Statement fail to specifically allege a pattern of racketeering activity because Plaintiff has failed to sufficiently plead the reasons why the listed predicate acts are related and continuous. Predicate acts are related "if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Tabas v. Tabas,* 47 F.3d 1280, 1292 (3d Cir.1995) (citing *H.J.,* 492 U.S. at 240). Continuity refers either to "a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J.,* 492 U.S. at 241. In considering the continuity of a RICO pattern based upon predicate acts of mail fraud, the United States Court of Appeals for the Third Circuit (the "Third Circuit") has instructed the courts to examine the underlying fraudulent scheme:

> The continuity test requires us to look beyond the mailings and examine the underlying scheme or artifice. Although the mailing is the actual criminal act, the instances of deceit constituting the underlying fraudulent scheme are more relevant to the continuity analysis. *Kehr Packages,* 926 F.2d at 1414. Consequently, in determining whether or not continuity has been established in the present case, we must focus on the duration of the underlying scheme.

*9 *Tabas,* 45 F.3d at 1294 (footnote omitted). In this case, the predicate acts of mail fraud are alleged to have had the same victim, State Farm; the same or similar purpose, defrauding State Farm; and many were carried out by the same participants, the attorneys, doctor and chiropractor. In addition, the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 7
2003 WL 924615 (E.D.Pa.), RICO Bus.Disp.Guide 10,443
**(Cite as: 2003 WL 924615 (E.D.Pa.))**

predicate acts are alleged to have taken place over more than two years, from February 11, 1998 until May 5, 2000 and were part of a scheme which allegedly began in 1996 and is still ongoing. The Court finds that the Third Amended Complaint and RICO Case Statement plead relatedness and continuity with sufficient particularity and, therefore, that the Third Amended Complaint, together with the RICO Case Statement, pleads the existence of a pattern of racketeering activity in conformance with the requirements of Rule 9(b).

The Moving Defendants further argue that Count IX should be dismissed pursuant to Rule 9(b) because the Third Amended Complaint does not specifically plead each Defendant's participation in the affairs of the enterprise through the pattern of racketeering activity. The Moving Defendants contend that the Third Amended Complaint is deficient because it does not allege that each of the Moving Defendants intended to commit mail fraud and personally mailed a fraudulent document. However, the mail fraud statute does not require such pleading. The "purpose of the mail fraud statute is 'to prevent the post office from being used to carry [fraudulent schemes] into effect.' " *United States v. Tiller,* 302 F.3d 98, 101 (3d Cir.2002) (citations omitted). The Third Circuit has explained the two statutory requirements for the mailing element as follows:

First, the mailing must be for the purpose of executing the scheme, as the statute requires," *Kann,* 323 U.S. at 94. However, "[i]t is not necessary that the scheme contemplate the use of the mails as an essential element;" the mailing suffices if it is "incident to an essential part of the scheme." *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954). We must therefore inquire whether the mailings in this case were "sufficiently closely related" to the scheme to bring the conduct within the statute. *United States v. Maze,* 414 U.S. 395, 399, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974).

Second, the defendant must "knowingly cause" the use of the mails. The *Pereira* Court clarified that the necessary intent in a mail fraud prosecution is the defendant's intent to engage in the scheme to defraud. Although a defendant must cause a mailing in furtherance of a fraud, that mailing may be incidental to the fraud, and the defendant need not personally send the mailing or even intend that it be sent. A defendant "causes" the mails to be used where the defendant "does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not

actually intended...." *Pereira,* 347 U.S. at 8-9. *Id.* (footnote omitted).

*10 Gaber, Greenspan, Vaisberg and the Law Firm argue that Count IX must be dismissed as against them because the Third Amended Complaint and RICO Case Statement do not contain sufficient specific factual allegations concerning their participation in the pattern of racketeering activity. The Third Amended Complaint and the RICO Case Statement allege that Gaber, Greenspan, Vaisberg and the Law Firm: (1) intended to defraud State Farm; (2) represented clients with respect to six automobile accidents that they knew had been staged; (3) assisted their clients in preparing false and fraudulent insurance claims which were submitted to State Farm; (4) assisted their clients in filing lawsuits and arbitrations in connection with the staged accidents, knowing that their clients had suffered no injuries; and (5) assisted their clients in falsely testifying in connection with these lawsuits or arbitrations. (*See* 3d Am. Compl. ¶¶ 44, 52, 56-58, 69, 71-72, 75-77, 78, RICO Case Statement at 3-7, 13- 14.) The Third Amended Complaint also lists three specific instances of mail fraud, committed in furtherance of the scheme to defraud State Farm, in which Gaber, Greenspan, Vaisberg and the Law Firm participated, either by preparing the document to be mailed, signing the cover letter and mailing the document, or assisting clients in preparing the fraudulent insurance claim forms which were then mailed by the Law Firm. (3d Am.Compl.¶ 78(e), (g) and (j).) These mailings were incident to essential parts of the scheme to defraud State Farm, i.e., the presentation of insurance claims and bills for State Farm's payment and the initiation of fraudulent law suits in order to recover monetary damages from State Farm's insureds. The Third Amended Complaint and RICO Cast Statement, therefore, allege that Gaber, Greenspan, Vaisberg and the Law Firm specifically intended to defraud State Farm, participated in specific predicate acts of mail fraud, and participated in a fraudulent scheme in which it could have reasonably been foreseen that the mails would be used on behalf of their clients to submit other, fraudulent, insurance claims, medical bills, and related documents to State Farm. Accordingly, the allegations that Defendants Gaber, Greenspan, Vaisberg and the Law Firm participated in the affairs of the enterprise through a pattern of racketeering activity, including at least two predicate acts, satisfy the requirements of Rule 9(b).

Defendant Avagimyan argues that Count IX should be dismissed as against him because the Third

Not Reported in F.Supp.2d
2003 WL 924615 (E.D.Pa.), RICO Bus.Disp.Guide 10,443
(Cite as: 2003 WL 924615 (E.D.Pa.))

Page 8

Amended Complaint does not allege that he personally participated in any of the predicate acts of mail fraud. He maintains that the Third Amended Complaint and RICO Case Statement allege only that he, Bratsis and Papanicolau arranged nine staged accidents, recruited the drivers, paid the drivers and passengers, and directed the participants to Gaber, Greenspan and the Law Firm. (3d Am. Compl. ¶ ¶ 42-43, RICO Case Statement at 2-3.) He argues that arranging staged accidents, recruiting and paying drivers, and referring them to counsel are not predicate acts of racketeering listed in 18 U.S.C. § 1961(1), and, therefore, that conduct does not constitute racketeering activity. *See Annulli v. Panikkar,* 200 F.3d 189, 200 (3d Cir.1999)("RICO's list of acts constituting predicate acts of racketeering activity is exhaustive.").

The Third Amended Complaint and RICO Case Statement allege that Avagimyan arranged the staged accidents for the purpose of presenting fraudulent insurance claims and initiating fraudulent lawsuits to recover money for property damage, medical bills and pain and suffering. (3d Am. Compl. ¶ ¶ 37-81, RICO Case Statement at 2-3). The Third Amended Complaint specifically alleges that the accidents were arranged by Avagimyan "for the purpose of making numerous false and fraudulent insurance claims for payment of medical bills for injuries never sustained as well as claims for pain and suffering under underinsured and uninsured motorist benefits, third-party claims for pain and suffering and property damage claims." (3d Am.Compl.¶ 42.) The RICO Case Statement lists nine staged accidents arranged by Avagimyan by date and insurance claim number, including the June 24,1999 accident in which he was a driver. (RICO Case Statement at 3.) The Third Amended Complaint lists ten separate, specific, mailings of insurance applications, medical bills and a legal document connected with these specific accidents which were sent to State Farm by various Defendants for the purpose of furthering the fraudulent scheme. These mailings were incident to essential elements of the scheme to defraud State Farm, i.e., the presentation of fraudulent insurance claims and medical bills and the filing of fraudulent lawsuits against State Farm's insureds to recover monetary damages from State Farm. It was reasonably foreseeable that the mails would be used to submit the intended fraudulent insurance claims, bills and legal documents to State Farm. Therefore, the allegations that Avagimyan participated in the affairs of the enterprise through a pattern of racketeering activity, including at least two predicate acts, satisfy the requirements of Rule 9(b).

*11 Defendants Faynberg and Rennard argue that Count IX must be dismissed as against them because the Third Amended Complaint and RICO Case Statement do not allege that they participated in the pattern of racketeering activity. They contend that the allegations regarding their conduct, i.e., that certain passengers were referred to them for medical treatment, that those passengers were provided with false examination findings to justify additional treatment and medical supplies, and that they failed to provide treatment which was billed to State Farm, do not state the commission of RICO predicate acts. (3d Am. Compl. ¶ ¶ 39-41, 45-46, RICO Case Statement at 7-8.)

The Third Amended Complaint alleges that Faynberg and Rennard participated in three acts of mail fraud. Faynberg personally mailed bills for Allakhverdova's medical treatment to State Farm on November 8, 1999. (3d Am.Compl.¶ 78(a). Rennard, a corporation in which Faynberg has an ownership interest and through which she practices, mailed bills for Faynberg's medical care and treatment of Metlitsky and Vozni to State Farm on February 11, and March 26, 1998 respectively. (3d Am.Compl.¶ ¶ 30-31, 78(c) and (h).) Faynberg argues that the one mailing directly attributable to her is not sufficient to constitute a pattern of racketeering activity. However, it was reasonably foreseeable to Faynberg that Rennard would mail bills for her treatment of Metlitsky and Vozni to State Farm in order to obtain payment for Faynberg's "medical care and treatment" of those individuals. The Third Amended Complaint and RICO Case Statement also allege that Faynberg participated in the scheme to defraud State Farm by treating passengers involved in the March 28, 1996, December 19, 1996, November 18, 1997, August 5, 1997 and June 24, 1999 accidents, even though she knew that the accidents had been staged and that the patients she treated had not been injured. (3d Am. Compl. ¶ ¶ 48-81, RICO Case Statement at 7-8.) The Third Amended Complaint and RICO Case Statement further allege that Faynberg prepared false and fraudulent medical reports and bills to support fraudulent insurance claims arising out of those accidents. (3d Amend. Compl. ¶ 40, 45-46, 52, 57, 76, RICO Case Statement at 8.) The Third Amended Complaint also alleges that Faynberg and Rennard intended to defraud State Farm by their participation in the conspiracy, and that the mailing by Faynberg, and by Rennard on Faynberg's behalf, of bills to State Farm were incident to an essential element of the scheme to defraud State Farm, i.e., the presentation of fraudulent medical bills to State Farm in order to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 924615 (E.D.Pa.), RICO Bus.Disp.Guide 10,443
**(Cite as: 2003 WL 924615 (E.D.Pa.))**

Page 9

obtain payment of those bills. (3d Am.Compl.¶¶ 45-46.) Accordingly, the allegations that Defendants Faynberg and Rennard participated in the affairs of the enterprise through a pattern of racketeering activity, including at least two predicate acts, satisfy the requirements of Rule 9(b).

Shmakov, Khyzhnyak and Mirkin argue that Count IX should be dismissed as against them because the Third Amended Complaint and RICO Case Statement do not allege that they participated in the pattern of racketeering activity. They maintain that the only predicate act of mail fraud to which they can be connected is the February 23, 1999 mailing of bills for medical care, physical therapy and durable medical equipment sent by Marina Kats, Esq. to State Farm. They argue that this one mailing is not sufficient to support a finding of a pattern of racketeering activity and that their participation in the staged accident is not, by itself, a RICO predicate act.

**\*12** The Third Amended Complaint and RICO Case Statement allege that Shmakov, Khyzhnyak and Mirkin intentionally participated in the scheme to defraud State Farm by participating in the April 20, 1998 staged automobile accident knowing that the accident was staged, by alleging phony injuries, by seeking medical treatment for phony injuries for the purpose of advancing fraudulent insurance claims, and by submitting false and fraudulent insurance claims to State Farm. (3d Am. Compl. ¶¶ 59-63, RICO Case Statement at 1-2 and 9-10.) Mirkin was also involved in the August 5, 1997 accident, for which he made an insurance claim against the Harleysville Insurance Company. (RICO Case Statement at 3 and 9-10.) The Third Amended Complaint also alleges that, in furtherance of the scheme to defraud, Shmakov, Khyzhnyak and Mirkin gave false testimony under oath during a Philadelphia Court of Common Pleas arbitration regarding the April 20, 1998 accident. (3d Am.Compl.¶ 64.)

The mailing of the false and fraudulent insurance claims, medical bills and other documents listed in the Third Amended Complaint, including those bills mailed specifically on behalf of these Defendants, was a reasonably foreseeable result of their fraudulent conduct and was incident to the essential elements of the fraudulent scheme against State Farm, i.e., presenting fraudulent insurance claims and medical bills and filing fraudulent lawsuits against State Farm's insureds to recover monetary payments from State Farm. Therefore, the allegations that Defendants Shmakov, Khyzhnyak, and Mirkin participated in the affairs of the enterprise through a pattern of racketeering activity, including at least two predicate acts, satisfy the requirements of Rule 9(b).

Allakhverdova argues that Count IX should be dismissed as against her because the Third Amended Complaint and RICO Case Statement do not allege that she participated in any predicate acts of racketeering. She states that the Third Amended Complaint and RICO Case Statement allege only that she was a passenger in two of the accidents, on December 19, 1996 and June 24, 1999, and that medical bills for her treatment were sent to State Farm on November 8, 1999 by Faynberg and Philmont. (3d Am.Compl.¶¶ 48, 73, 78(h)-(i) and RICO Case Statement at 9.) She argues that these allegations would not support a finding that she participated in a pattern of racketeering activity because the staging of accidents is not a predicate act.

The Third Amended Complaint and RICO Case Statement allege that Allakhverdova was employed by Rennard and was instrumental in maintaining the relationships between the medical clinics, the individual defendants and the law firm defendants. (3d Am. Compl. ¶ 14 and RICO Case Statement at 8.) She was a passenger in two of the accidents, following which she sought treatment at Rennard and Philmont and was represented by Gaber, Greenspan and the Law Firm. (3d Am. Compl. ¶¶ 48-52, 73-76, RICO Case Statement at 9.) In addition, her car was used in two more staged accidents, on March 28, 1996 and February 9, 1998. (RICO Case Statement at 9.) She also gave false information about the staged accidents during a statement under oath. (3d Am. Compl. ¶ 77, RICO Case Statement at 6.) The Third Amended Complaint further alleges that three acts of mail fraud were committed on Allakhverdova's behalf: the November 8, 1999 mailing of fraudulent medical bills for her treatment to State Farm by Faynberg; the November 8, 1999 mailing of fraudulent medical bills for her treatment to State Farm by Philmont; and the August 5, 1999 mailing of a fraudulent application for insurance benefits to State Farm by Gaber and the Law Firm on Allakhverdova's behalf. (3d Am.Compl.¶ 78(h)-(j).) The mailings by Faynberg, Philmont, Gaber and the Law Firm on Allakhverdova's behalf were a foreseeable result of her participation in the conspiracy. Moreover, these mailings were incident to the essential element of the fraudulent scheme against State Farm of presenting fraudulent medical bills and insurance claims to State Farm in order to obtain monetary payment. Accordingly, the allegations that Defendant Allakhverdova participated in the affairs of the enterprise through a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 924615 (E.D.Pa.), RICO Bus.Disp.Guide 10,443
**(Cite as: 2003 WL 924615 (E.D.Pa.))**

pattern of racketeering activity, including at least two predicate acts, satisfy the requirements of Rule 9(b).

*13 Vozni also argues that Count IX should be dismissed as against him because the Third Amended Complaint and RICO Case Statement do not allege that he participated in any predicate acts of racketeering. He states that the Third Amended Complaint and RICO Case Statement allege only that he participated in a staged accident on November 18, 1997 with Metlitsky and Mavroudis; that he was directed to Gaber, Greenspan and the Law Firm for legal representation; and that he was directed to Rennard for medical care. (3d Am. Compl. ¶ ¶ 53-58, RICO Case Statement at 2-3.) He argues that this alleged conduct does not constitute racketeering activity because the staging of accidents is not a predicate act of racketeering pursuant to 18 U.S.C. § 1961(1).

The Third Amended Complaint and RICO Case Statement allege that Vozni participated in the November 18, 1997 accident and alleged phony injuries as a result of that accident in order to advance a fraudulent insurance claim; sought treatment at Rennard and Philmont; was represented by Gaber, Greenspan and the Law Firm; and gave perjured testimony at the April 26, 1999 uninsured motorist arbitration hearing. (3d Am. Compl. ¶ ¶ 53, 55-58 and RICO Case Statement at 5.) The Third Amended Complaint also alleges three specific predicate acts of mail fraud which were performed on Vozni's behalf: the March 26, 1998 mailing of false medical bills for treatment of Vozni sent to State Farm by Rennard; the February 16, 1998 mailing of false medical bills for treatment of Vozni sent to State Farm by Philmont; and the July 30, 1998 mailing of fraudulent documents related to Vozni's insurance claim to State Farm by Andrew Gaber. (3d Am.Compl.¶ 78(c)-(e).) The Third Amended Complaint further alleges that Vozni intended to defraud State Farm by his participation in the conspiracy. (3d Am.Compl.¶ 37.) Moreover, the mailings by Rennard, Philmont, Gaber and the Law Firm on Vozni's behalf were a foreseeable result of his participation in the conspiracy and were incident to the essential element of the fraudulent scheme against State Farm of presenting fraudulent medical bills and insurance claims to State Farm in order to obtain monetary payment. Accordingly, the allegations that Defendant Vozni's participated in the affairs of the enterprise through a pattern of racketeering activity, including at least two predicate acts, satisfy the requirements of Rule 9(b).

The Court finds, therefore, that the Third Amended Complaint, considered together with the RICO Case Statement, states, the existence of a RICO enterprise with sufficient particularity to comply with the requirements of Rule 9(b). The Court further finds that the Third Amended Complaint, considered together with the RICO Case Statement, alleges, with sufficient particularity, that the Moving Defendants have participated, either directly or indirectly, in the conduct or affairs of that enterprise through a pattern of racketeering activity that included at least two related acts of mail fraud. The Court further finds that Count IX of the Third Amended Complaint states a claim pursuant to 18 U.S.C. § 1962(c) against each of the Moving Defendants upon which relief may be granted. Accordingly, the Moving Defendants' Motions to Dismiss Count IX of the Third Amended Complaint pursuant to Rules 9(b) and 12(b)(6) are denied.

### C. The RICO Conspiracy

*14 Count X of the Third Amended Complaint asserts a claim against all Defendants pursuant to 18 U.S.C. § 1962(d). [FN4] A "defendant may be held liable for conspiracy to violate section 1962(c) if he knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise." Smith v. Berg, 247 F.3d 532, 538 (3d Cir.2001). The Moving Defendants have asked the Court to dismiss Count X for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) because the Third Amended Complaint does not state a claim for violation of Section 1962(c) upon which relief may be granted. However, liability for violation of § 1962(c) is not "a prerequisite to § 1962(d) liability." Id. at 537. In order to state a claim pursuant to Section 1962(d), a complaint must allege an " 'agreement to commit the predicate acts of fraud, and (2) knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate section 1962(a), (b), or (c).' " Rose v. Bartle, 871 F.2d 331, 366 (3d Cir.1989) (quoting Odesser v. Continental Bank, 676 F.Supp. 1305, 1312 (E.D.Pa.1987)). A cause of action for RICO conspiracy must " 'describe the general composition of the conspiracy, some or all of its broad objectives, and the defendant's general role in that conspiracy.' " Id. (quoting Alfaro v. E.F. Hutton & Co., 606 F.Supp. 1100, 1117-18 E.D.Pa.1985)). A claim for RICO conspiracy must also allege that the plaintiff was injured by a predicate act of racketeering, rather than an overt act of the conspiracy which is not otherwise wrongful under RICO. Beck v. Prupis, 529 U.S. 494, 505-06, 120 S.Ct. 1608, 146 L.Ed.2d 561 (2000).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 924615 (E.D.Pa.), RICO Bus.Disp.Guide 10,443
(Cite as: 2003 WL 924615 (E.D.Pa.))

FN4. "18 U.S.C.A. § 1962(d) makes it unlawful for any person to conspire to violate either §§ 1962(a), (b), or (c)." *Leonard A. Fineberg, Inc. v. Central Asia Capital Corp., Ltd.,* 974 F.Supp. 822, 847 (E.D.Pa.1997).

The Third Amended Complaint alleges that all of the Defendants "agreed and conspired together to devise and participate in a scheme to defraud State Farm by means of false and fraudulent representations" and that "each defendant conspired and agreed between themselves and with other co-conspirators to violate 18 U.S.C. § 1962(c), that is to conduct or participate directly or indirectly in the conduct of the enterprise's affairs through a pattern of racketeering activity, including, but not limited to, the numerous acts of mail fraud as set forth above in paragraph 78." (3d Am. Compl. ¶ 37 and 144.) The RICO Case Statement alleges that "Defendants conspired and agreed among themselves to participate in a scheme to defraud State Farm and other insurance carriers. The defendants agreed to stage car accidents and to prepare and send through the mails fraudulent insurance claim papers, medical reports and bills and legal papers in an attempt to obtain payment from State Farm and other insurance carriers. All defendants were aware that the accidents underlying all phony insurance claims were staged and that [the] injuries alleged were false." (RICO Case Statement at 17.) The Third Amended Complaint also alleges that, as a result of the scheme to defraud, State Farm was "induced to spend substantial sums for false and fraudulent medical bills, claim investigation, legal bills defending third party, uninsured and underinsured motorist claims, and indemnity payments on third party claims." (3d Am.Compl.¶ 79.) The RICO Case Statement alleges that these damages were caused by Defendants' predicate acts of racketeering:

The racketeering activity of defendants proximately caused State Farm's injuries and damages. State Farm was obligated under insurance policies with its insureds to provide coverage for medical benefits, uninsured motorist benefits, underinsured motorist benefits and liability payments for injuries associated with automobile accidents. State Farm was directly induced by the presentation of fraudulent medical bills and reports and insurance claim forms and legal papers to provide payments to defendants even though all claims were based on staged accidents and phony injuries.

*15 (RICO Case Statement at 18-19.) These allegations are sufficient to state a claim against all Defendants for violation of Section 1962(d). Accordingly, the Moving Defendants' Motions to Dismiss Count X of the Third Amended Complaint are denied.

### D. *Claim Preclusion*

Defendant Vozni argues that State Farm's claims against him, arising from his participation in the November 18, 1997 accident, should be dismissed pursuant to the doctrine of claim preclusion. Vozni brought an uninsured motorist claim against State Farm as a result of the November 18, 1997 accident which was litigated in an uninsured motorist arbitration proceeding. That arbitration resulted in an award in Vozni's favor in the amount of $6,000 on April 26, 1999. The Report and Award of Arbitrators in the uninsured motorist arbitration proceeding states as follows:

AND NOW, this 26th day of April, 1999, we, the undersigned arbitrators in the above-captioned uninsured motorist case, find in favor of claimant, Dimitri Vozni, and against defendant, State Farm Insurance Company, in the amount of Six Thousand ($6,000.00) dollars. One arbitrator dissents as to this finding.

We, the undersigned arbitrators, further find in favor of claimant, Alexander Medlitsky [sic], and against defendant, State Farm Insurance Company, in the amount of Six Thousand Five Hundred ($6,500.00) dollars. One arbitrator dissents as to this finding.

(Vozni Mem., Ex. C.) Vozni maintains that State Farm did not appeal the Report and Award of Arbitrators. Vozni argues that State Farm could have alleged fraud as a defense in the arbitration proceeding but did not do so. He further argues that, since State Farm did not raise the affirmative defense of fraud in the arbitration proceeding, and did not appeal the award in his favor, State Farm is barred from re-litigating this matter by the doctrine of claim preclusion.

An award of arbitrators can have a preclusive effect in later proceedings:

Under Pennsylvania law, arbitration proceedings and their findings are considered final judgments for the purposes of collateral estoppel. See *Dyer v. Travelers,* 392 Pa.Super. 202, 572 A.2d 762, 764 (1990) ("An arbitration award from which no appeal is taken has the effect of a final judgment on the merits."); *Ottaviano v. Southeastern Pennsylvania Trans. Auth.,* 239 Pa.Super. 363, 370, 361 A.2d 810, 814 (1976); Restatement (Second)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 924615 (E.D.Pa.), RICO Bus.Disp.Guide 10,443
(Cite as: 2003 WL 924615 (E.D.Pa.))

of Judgments § 84 (1982) ("[A] valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court."); *Id.* § 13 ("[F]or purposes of issue preclusion ... 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.") *Witkowski v. Welch,* 173 F.3d 192, 199-200 (3d Cir.1999).

**\*16** Claim preclusion, also referred to as *res judicata,* " 'prohibits reexamination not only of matters actually decided in the prior case, but also those that the parties might have, but did not assert in that action.' " *Douris v. Schweiker,* 229 F.Supp.2d 391, 399-400 (E.D.Pa.2002) (quoting *Williams v. Lehigh County Dep't. of Corrections,* 19 F.Supp.2d 409, 411 (E.D.Pa.1998)). It is undisputed that State Farm did not litigate its RICO, insurance fraud, common law fraud, or conspiracy claims in the uninsured motorist arbitration proceeding.

Pennsylvania law requires the presence of the following four factors for the application of claim preclusion: "the two actions must share an identity of the: (1) thing sued upon or for; (2) cause of action; (3) persons and parties to the action; and (4) capacity of the parties to sue or be sued." *O'Leary v. Liberty Mutual Insurance Company,* 923 F.2d 1062, 1065 (3d Cir.1991). The parties do not dispute that both Vozni and State Farm were parties to the arbitration proceeding, that this suit involves the accident which was the subject of the uninsured motorist arbitration proceeding, or that both Vozni and State Farm have the capacity to sue or be sued. State Farm does dispute the identity of the causes of action. The Third Circuit has identified four criteria to be used in determining whether the causes of action in two suits are identical for purposes of claim preclusion:
> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.

*Id.* (quoting *United States v. Athlone Industries, Inc.,* 746 F.2d 977, 984 (3d Cir.1984)). These criteria are not met in the instant proceeding. The wrong for which redress is sought in this proceeding (a conspiracy to defraud State Farm in violation of the

RICO statute) is different from that addressed in the uninsured motorist arbitration proceeding (injuries suffered by Vozni in the accident); the theories of recovery are clearly different; the witnesses and documents necessary for trial in this case are not the same as those used in the uninsured motorist arbitration proceeding; and the material facts alleged in this case, with respect to the existence of the fraudulent scheme and violation of the Pennsylvania insurance fraud statutes and RICO statutes, are not the same as the facts alleged in the uninsured motorist arbitration proceeding. Accordingly, Vozni's Motion to Dismiss the claims against him pursuant to the doctrine of claim preclusion is denied.

The Court invited Vozni to submit a supplemental memorandum discussing the application of the doctrine of collateral estoppel to this proceeding, to determine whether State Farm could be collaterally estopped from relitigating certain issues regarding the November 18, 1997 accident which were litigated in the uninsured motorist proceeding. "Under Pennsylvania law, which adopts the requirements of the Restatement (Second) of Judgments, a prior determination of a legal issue is conclusive in a subsequent action between the parties on the same or a different claim when (1) the issue was actually litigated; (2) the issue was determined by a valid and final judgment; and (3) the determination was essential to the judgment." *Id.* at 1065-66 (citing Restatement (Second) of Judgments § 27 (1982); *Clark v. Troutman,* 509 Pa. 336, 340, 502 A.2d 137, 139 (1985)). Vozni has asked the Court to apply the doctrine of collateral estoppel to prevent State Farm from litigating the issue of whether he committed fraud in connection with the November 18, 1997 accident. As Vozni has admitted that the issue of fraud was not actually litigated in the prior arbitration proceeding, the doctrine of collateral estoppel does not apply to prevent State Farm from litigating its fraud claims against Vozni in this proceeding. Accordingly, Vozni's request that the Court find that State Farm is collaterally estopped from proceeding on its fraud claims against Vozni is denied.

IV. CONCLUSION

**\*17** The Third Amended Complaint, together with the RICO Case Statement, alleges a claim against each of the Moving Defendants for violation of 18 U.S.C. § 1962(c) upon which relief may be granted and which satisfies Rule 9(b). The Third Amended Complaint also states a claim against each of the Moving Defendants for violation of 18 U.S.C. ¶ 1962(d) upon which relief may be granted and which

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 924615 (E.D.Pa.), RICO Bus.Disp.Guide 10,443
(Cite as: 2003 WL 924615 (E.D.Pa.))

satisfies Rule 9(b). Accordingly, the Moving Defendants' Motions to Dismiss Counts IX and X of the Third Amended Complaint are denied. An appropriate order follows.

## ORDER

 AND NOW, this day of March, 2003, upon consideration of the Motions to Dismiss filed by Andrew Gaber (Docket No. 100); Igor Avagimyan (Docket No. 102); Alan Vaisberg (Docket No. 103); Mitchell S. Greenspan, Mitchell S. Greenspan and Andrew H. Gaber, P.C., Greenspan & Gaber P.C., and Greenspan Law Firm (Docket No. 104); Nora Faynberg (Docket No. 106); Nina Allakhverdova (Docket No. 114); Alexandre Shmakov, Olena Khyzhnyak, and Dmitry Mirkin (Docket No. 115); Rennard Health Care, Inc. (Docket No. 118); and Dimitri Vozni (Docket No. 154); Plaintiff's responses thereto; the argument of the parties held on January 10, 2003; and the supplemental memoranda filed by the parties, IT IS HEREBY ORDERED that the Motions are DENIED.

 2003 WL 924615 (E.D.Pa.), RICO Bus.Disp.Guide 10,443

**Motions, Pleadings and Filings (Back to top)**

- 2:01CV05351_____(Docket) (Oct. 22, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 34

**Westlaw**

Not Reported in F.Supp.2d                                                          Page 1
2000 WL 1909373 (E.D.Pa.)
**(Cite as: 2000 WL 1909373 (E.D.Pa.))**

▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
STONE STREET SERVICES, INC., Plaintiff,
v.
James L. DANIELS, in his Capacity as Curator of the
Estate of Joe P. Breaux,
Interdict, a/k/a Joseph P. Breaux, Defendant, Third
Party Plaintiff,
v.
STONE STREET CAPITAL, INC. and Mark E.
French, Third Party Defendants.
**No. CIV.A. 00-1904.**

Dec. 29, 2000.

*MEMORANDUM*

PADOVA.

  *1 This matter arises on Third Party Defendant
Stone Street Capital, Inc.'s Motion to Dismiss Third
Party Complaint Pursuant to <u>Fed.R.Civ.P. 12(b)(6)</u>.
Defendant and Third Party Plaintiff Joseph Breaux
[FN1] filed a response, and Third Party Defendant
filed a Reply. For the reasons that follow, the Court
denies the Motion with respect to Counts 7, 8, and 9,
and grants the Motion with respect to Count 10.
Accordingly, the Court dismisses Count 10 only.

> FN1. Subsequent to the filing of the
> Response, James L. Daniels was appointed
> curator of estate for Mr. Breaux, and was
> substituted in the case caption for this
> action.

  I. Background

  Joseph Breaux is a party to a settlement of a personal
injury lawsuit, pursuant to which he has been
receiving periodic settlement payments since 1985.
[FN2] (Third Party Compl. ¶ 15.) The settlement is
administered through an annuity issued by
Metropolitan Life Insurance Company ("MetLife"),
which has been named a stakeholder in this action.
(*Id.* ¶ 16.) On or about July 22, 1996, Breaux, then

residing in Kansas, allegedly entered into a written
agreement ("Annuity Agreement") with Stone Street
Capital ("Capital"), under which Capital purchased
from Breaux all of his right, title and interest in the
monthly payments of the settlement funds beginning
on October 1, 1996, through and including the
payment due on September 1, 2000. (Sec.Am.Compl.
¶ 15.) Capital is a Pennsylvania corporation that
regularly purchases rights to lottery winnings,
structured settlement payments, interests in estates
and probate transfers, and other payment streams, in
exchange for lump sum payments. (*Id.* ¶ 9.) On June
3, 1997, and March 11, 1998, the parties allegedly
executed amendments to the Agreement, under which
Plaintiff purchased additional monthly payments in
subsequent years. (*Id.* ¶¶ 16-17.) The terms of the
agreement were executed by Stone Street Services,
Inc., a corporation formed under the laws of
Maryland, and the agent and assignee of Capital. (*Id.*
¶¶ 2, 12.)

> FN2. As a result of the accident, Breaux
> suffered brain injury and has serious and
> substantial mental deficits. (Third Party Pl.'s
> Mem., at 5.)

  In 1998, Breaux moved from Kansas to Louisiana.
(Third Party Compl. ¶ 31.) After he had stopped
receiving his payments, Breaux discovered that the
payments were being directed to a post office box in
Washington, D.C. associated with Stone Street
Services or Capital. (*Id.* ¶ 33.) Through his
attorney, Breaux directed MetLife to redirect payments to
him. (*Id.* ¶ 34.) After Stone Street Services ceased
receiving the payments pursuant to the Annuity
Agreement, it filed this action on March 10, 2000, in
the Philadelphia County Court of Common Pleas,
alleging breach of contract and other related claims.
(*Id.* ¶ 37.) On April 12, 2000, Defendant removed
the action to this Court.

  On July 13, 2000, Defendant filed a Third Party
Complaint against Capital, the entity with which he
purportedly entered into the Annuity Agreement, and
Mark French, his brother-in-law. [FN3] Counts 7
through 10 state claims against Capital, and are the
subject of the instant Motion to Dismiss.

> FN3. Mark French is alleged to have held a
> limited power of attorney for Mr. Breaux
> beginning in March 1996, (Third Party

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 1909373 (E.D.Pa.)
(Cite as: 2000 WL 1909373 (E.D.Pa.))

Page 2

Compl. ¶ ¶ 25-26), and to have negotiated and finalized the agreements with Stone Street Capital. (*Id.* ¶ 58.) Mr. French also executed a "Consent of Advisor" appended to the Annuity Agreement. (Sec.Am.Compl. ¶ 28.)

## II. Legal Standard

*2 A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) only if the plaintiff can prove no set of facts in support of the claim that would entitle her to relief. *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994). The reviewing court must consider only those facts alleged in the complaint and accept all of the allegations as true. *Id.*

## III. Discussion

Defendant and Third Party Plaintiff James Daniels brings four counts against Stone Street Capital: (7) unjust enrichment; (8) aiding and abetting a breach of fiduciary duty; (9) violation of the Kansas Consumer Protection Act; and (10) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law. [FN4] The Court will consider each of these counts in turn.

> FN4. Counts 1 through 6 of the Third Party Complaint state claims against Third Party Defendant Mark French.

### A. Count 7: Unjust Enrichment [FN5]

> FN5. Counts 7 and 8 arise under Pennsylvania common law.

To state a claim for unjust enrichment, a plaintiff must set forth the following elements: (1) benefits conferred on the defendant by the plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefits under circumstances under which it would be inequitable for the defendant to retain the benefit without payment of value. *Allegheny Gen. Hosp. v. Philip Morris, Inc.,* 228 F.3d 429, 447 (3d Cir.2000). The most significant requirement is that the enrichment to the defendant be unjust. *Thompson v. Glenmede Trust Co.,* Civ.Act. No. 92-5233, 1996 U.S. Dist. LEXIS 16248, at *29 (E.D.Pa. Oct. 31, 1996) (*citing Myers-Macomber Eng'rs v. M.L.W. Constr. Corp.,* 271 Pa.Super. 484, 414 A.2d 357, 360 (Pa.Super.Ct.1979)).

The Third Party Plaintiff clearly pleads the existence

of benefits conferred on Capital by Breaux, and the appreciation of those benefits by Capital. Specifically, he alleges the existence of structured settlement payments worth $175,500 that are the property of Joseph Breaux, that Capital received those payments without legal right, and that Breaux therefore conferred the benefit upon Capital. (Third Party Compl. ¶ ¶ 85-86). He further alleges that Capital enjoyed the benefit of receipt of those payments, and that it would be unjust to permit Capital to retain the benefit without compensating Breaux. (*Id.* ¶ 87).

Capital disputes, however, that the third element--inequity--has been pleaded. Capital contends that Breaux's allegations against Third Party Co-Defendant Mark French constitute an admission that Stone Street Capital paid for whatever benefit it allegedly received. Thus, the retention of such benefits would not be inequitable. The Court disagrees. First, the crux of Plaintiff's allegations is that he did not even know about the agreement with Capital to sell his rights to the settlement payments until two years after it was allegedly executed. (Third Party Compl. ¶ ¶ 39-42). Second, the mere fact that Capital may or may not have paid for the benefits purchased under the Annuity Agreement does not mean that Breaux could not prove at trial that there was inequity.

Capital further contends that the existence of the written agreement bars the unjust enrichment claim. Generally, an unjust enrichment claim is inapplicable where the relationship between the parties is founded on either a written agreement or an express contract. *Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828 F.2d 989, 999 (3d Cir.1987). However, the central claim with respect to the agreement is that it was somehow invalid. This unjust enrichment claim therefore is not based upon the written agreement, and thus is not barred on the allegations made here.

*3 The Court denies the motion to dismiss Count 7.

### B. Count 8: Aiding and Abetting a Breach of Fiduciary Duty

No Pennsylvania state courts have addressed whether a claim for aiding and abetting a breach of fiduciary duty is actionable in Pennsylvania. However, most Pennsylvania federal courts have concluded that the state courts would recognize this tort. *See Kaiser v. Stewart,* No. 96-6643, 1997 U.S. Dist. LEXIS 12788, at *53 (E.D.Pa. Aug. 20, 1997); *Schuylkill Skyport Inn, Inc. v. Rich,* No. 95-3128,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 1909373 (E.D.Pa.)
(Cite as: 2000 WL 1909373 (E.D.Pa.))

Page 3

1996 U.S. Dist. LEXIS 12655, at *120 (E.D.Pa. Aug. 21, 1996). The elements of the claim would be: (1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider or abettor; and (3) substantial assistance or encouragement by the aider or abettor in effecting that breach. *Pierce v. Rossetta Corp.*, No. 88-5873, 1992 U.S. Dist. LEXIS 9065, at *28 (E.D.Pa. June 15, 1992). The parties agree that the tort exists in Pennsylvania, and that *Pierce* states the elements of such a claim. (Third Party Def.'s Mem. at 5-6; Third Party Pl.'s Resp. at 18.)

Capital contends that Breaux has failed to allege that Capital knew of the breach of fiduciary duty and that Capital provided substantial assistance or encouragement in effecting the breach of the duty. (Third Party Def.'s Mem. at 6). The Court disagrees. The Complaint specifically alleges that Capital knew or should have known that French lacked the authority to negotiate the sale of the payments, and that the dealings constituted breach of French's fiduciary duties to Breaux. (Third Party Compl. ¶ ¶ 90-91.) Furthermore, Breaux alleges several affirmative acts by Capital which assisted French in breaching his fiduciary duty, including carrying out negotiations, communicating with French instead of Breaux, and forwarding payment to French. Taking these allegations as true, they are sufficient to set forth substantial assistance or encouragement by Capital to aid and abet a breach of a fiduciary duty by French.

The Court denies the motion to dismiss Count 8.

*C. Count 9: Kansas Consumer Protection Act*

Count 9 brings a claim under the Kansas Consumer Protection Act, which prohibits unconscionable acts or practices in consumer transactions. Specifically, the Act prohibits a party from "tak[ing] advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor." Kan.Stat.Ann. § 50-627(b)(1) (1999). The rights under the Kansas Consumer Protection Act may not be waived. Kan.Stat.Ann. § 50-625(b) (1999). Section 50-634 provides for a private right of action by a consumer for violations of the Act. Kan.Stat.Ann. § 50-634 (1999).

Capital contends that this Court has already determined that Pennsylvania law applies, via the forum/choice of law selection clause, [FN6] and that

the Kansas Consumer Protection Act is therefore irrelevant to the action. On June 19, 2000, the Court denied Defendant Breaux's Motion to Dismiss for lack of personal jurisdiction, on the ground that personal jurisdiction existed by virtue of the forum selection clause, which named Pennsylvania as the forum for any actions under the contract. *Stone Street Svcs., Inc. v. Breaux*, No. Civ.A. 00-1904, 2000 WL 876886, at *3 (E.D.Pa. June 19, 2000). However, in determining that the forum selection clause provides personal jurisdiction over Breaux in Pennsylvania, the Court did not opine as to whether Pennsylvania law governs all or any of the claims asserted. Thus, with respect to the motion to dismiss the Kansas Consumer Protection Act claim, the Court first must examine whether the choice of law clause in the agreement governs the action. Then, if Kansas law applies, the Court must determine if dismissal is appropriate under 12(b)(6).

> FN6. The Annuity Agreement contains the following forum/choice of law selection clause:
> 11.2 *Governing Law; Venue.* The Purchaser is a corporation incorporated under the laws of the Commonwealth of Pennsylvania. This Agreement, the other Closing Documents, and the obligations of the parties hereunder and thereunder shall be governed, interpreted, construed, and enforced in accordance with the laws of the Commonwealth of Pennsylvania and the United States of America. The parties hereto waive the right to be sued elsewhere and agree and consent to the jurisdiction of any Court of competent jurisdiction located in the Commonwealth of Pennsylvania.
> (Compl. Ex. A ¶ 11.2.)

*4 A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Accordingly, Pennsylvania choice of law rules apply in this case. Pennsylvania courts generally honor the intent of contracting parties and enforce choice of law provisions in contracts executed by them. *Smith v. Commonwealth Nat'l Bank*, 384 Pa.Super. 65, 557 A.2d 775, 777 (Pa.Super Ct.1989), *appeal denied*, 524 Pa. 610, 569 A.2d 1369 (Pa.1990). An express choice of law provision in a contract will be upheld so long as: (1) the contract bears a reasonable relationship to the state whose law is chosen to govern and (2) application of the chosen law does not violate a "strong public policy" that would otherwise

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4
2000 WL 1909373 (E.D.Pa.)
(Cite as: 2000 WL 1909373 (E.D.Pa.))

protect a party. [FN7] *Cottman Transmission Sys., Inc. v. Melody,* 869 F.Supp. 1180, 1183 (E.D.Pa.1994). Here, there is no serious question that Pennsylvania bears a reasonable relationship to the parties, insofar as it is both the state of incorporation of Capital and a jurisdiction in which Capital regularly conducts business in Pennsylvania.

> FN7. The Court also concludes that the scope of the choice of law clause here encompasses actions relating to the validity of the contract. Where an agreement does not refer to a matter of contract validity, the selection clause does not govern the action. *Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.,* 94 F.Supp.2d 589, 593 (E.D.Pa.1999). Here, however, the clause provides that the "obligations of the parties ... shall be governed, interpreted, construed, and enforced" in accordance with Pennsylvania law. The language of the clause thus contemplates actions relating to the validity of the underlying agreement.

However, the Court does conclude that applying Pennsylvania law in lieu of the Kansas consumer protection law under the choice of law provision would violate the strong public policy of Kansas. Therefore, Kansas consumer protection law must apply to the claim here. In performing the public policy inquiry, the district court will uphold a choice of law provision unless the application of that chosen law would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in determination of a particular issue. *Id.* at 1183 (*citing* Restatement (Second) of Conflict of Laws § 187). To determine if the application of the chosen law would be contrary to a fundamental policy of the other state, the court examines whether (1) there are "significant differences" between the two states' laws, and (2) whether the choice of Pennsylvania law would cause a "substantial erosion" of the quality of protection afforded under the other state's law. *See id.* at 1186. A choice of law agreement should be upheld unless a "substantial erosion of the quality of protection" afforded under a "fundamental state policy" is shown. *Id.* at 1180 (*citing Banek Inc. v. Yogurt Ventures, U.S.A., Inc.,* 6 F.3d 357 (6th Cir.1993)).

Applying Pennsylvania law under the circumstances presented here would be contrary to a fundamental public policy of Kansas. *See Wright-Moore Corp. v. Ricoh Corp.,* 908 F.2d 128, 132 (7th Cir.1990) (concluding that enforcement of a choice of law

provision where Indiana franchise law prohibited waiver would be contrary to Indiana's express public policy). The "diminished capacity" unconscionability provision in the Kansas statute states a fundamental policy of the state of Kansas, particularly in light of the explicit non-waiver provision contained in the law. A fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power. Restatement (Second) of Conflicts of Laws § 187 cmt. g. Furthermore, applying Pennsylvania law would substantially erode the protections available under Kansas law. Pennsylvania's consumer protection law lacks a "diminished capacity" unconscionability provision comparable to that in the Kansas statute. [FN8] While Pennsylvania common law causes of action do provide for somewhat similar remedies of invalidating an unconscionable contract and collecting damages, [FN9] these common law actions do not speak as directly to the instant case as the heightened protections under the Kansas law.

> FN8. The closest parallel is 13 Pa. Cons.Stat. § 2302 (West 1993), which governs unconscionability in the context of sales of goods. This provision, however, does not apply to service contracts.

> FN9. "Pennsylvania has long followed the traditional principle that equity does not enforce unconscionable contracts." *In re Elkins-Dell Mfg. Co.,* 253 F.Supp. 864, 869 (E.D.Pa.1966); *Henderson v. Hays,* 2 Watts 148, 152 (Pa.1834). Unconscionability includes an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. *Witmer v. Exxon Corp.,* 495 Pa. 540, 434 A.2d 1222 (Pa.1981). One variety of unconscionable contract is similar to contracts of adhesion, and involves a party whose circumstances, perhaps his unworldliness or ignorance, when compared with the circumstances, make his knowing assent to the contract terms fictional. *Peoples Mortg. Co. v. Federal Nat'l Mortg. Ass'n,* 856 F.Supp. 910, 927 (E.D.Pa.1994).

*5 Furthermore, the bargaining power of the contracting entities here is very unequal. In cases in which the courts have been willing to hold that a choice of law provision applies, the equality or lack of equality of bargaining power between the parties

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 1909373 (E.D.Pa.)
(Cite as: 2000 WL 1909373 (E.D.Pa.))

Page 5

has been an important consideration. *See Tele-Save Merchandising Co. v. Consumers Distributing, Co., 814 F.2d 1120, 1123 (6th Cir.1987)* ("We think it important to our decision that the parties to this contract were not of unequal bargaining strength."). This case is therefore distinguishable from those in which the courts have upheld choice of law provisions, particularly where there is a non-waiver provision in the waived state's statute.

Finally, the Court concludes that Kansas has a materially greater interest than Pennsylvania in seeing that its consumer protection law be applied. The contract was negotiated and executed in Kansas. State consumer protection laws are designed to protect the residents of the states in which the statutes are promulgated. *Lyon v. Caterpillar, Inc., 194 F.R.D. 206, 216 (E.D.Pa.2000)*. In this case, the contract was negotiated and executed in Kansas, and was allegedly approved by Breaux, then a resident of Kansas. The "diminished capacity" provisions of the Kansas Consumer Protection Act were specifically designed to protect Kansas residents like Breaux.

Given all of these factors, including the purposes of the Kansas consumer protection law, the explicit non-waiver provision, the unequal bargaining power of the parties, and the materially greater interest of Kansas in having its consumer protection law applied in such circumstances, the Court concludes that the Agreement's choice of law provision cannot and should not be applied in this context. The Court therefore concludes that Kansas law, and not Pennsylvania law, applies to the claims asserted in Count 9 of the Third Party Complaint. The Court must now turn to the issue of whether the allegations in Count 9 state a claim upon which relief may be granted.

The Court concludes that Count 9 states a claim upon which relief may be granted. Section 50-627 of the Kansas Consumer Protection Act provides, in pertinent part:

**\*6** (a) No supplier shall engage in any unconscionable act or practice in connection with a consumer transaction. An unconscionable act or practice violates this act whether it occurs before, during or after the transaction.

(b) The unconscionability of an act or practice is a question for the court. In determining whether an act or practice is unconscionable, the court shall consider circumstances of which the supplier knew or had reason to know, such as, but not limited to the following that:

\* \* \*

(1) The supplier took advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical infirmity, ignorance, illiteracy, inability to understand the language of an agreement or similar factor.

Kan.Stat.Ann. § 50-627 (1999). Comment 1 explains further that unconscionability involves over-reaching, but not necessarily deception. Kan.Stat.Ann. § 50-627 cmt. 1 (1999).

Third Party Plaintiff has sufficiently alleged an unconscionable act in violation of § 50-627 of the Kansas statute. Specifically, he has alleged that Capital took advantage of Breaux's diminished mental capacity or inability to understand the language and complexities of the Agreement (Third Party Compl. ¶ 104(a)). He further alleges that Capital dealt exclusively with French even though it knew, or had reason to know, that French was not the appropriate legal representative for purposes of the transaction. (*Id.* ¶ 104(c-d)). Implicit among the allegations is that Capital knew or should have known that Breaux had diminished mental capacity.

For all the reasons above, the Court denies Capital's motion to dismiss Count 9 of the Third Party Complaint.

*D. Count 10: Pennsylvania Unfair Trade Practices and Consumer Protection Law*

Count 10 brings a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons.Stat.Ann. § 201-1 et seq. (West 1993). As the Court concludes that Kansas, and not Pennsylvania, statutory consumer protection law applies, the Court dismisses Count 10 of the Third Party Complaint.

IV. Conclusion

For the reasons stated, the Court grants Third Party Defendant Stone Street Capital Inc.'s Motion to dismiss with respect to Count 10, but denies the Motion to Dismiss with respect to Counts 7, 8, and 9. An appropriate Order follows.

*ORDER*

AND NOW, this day of December, 2000, upon consideration of Third Party Defendant Stone Street Capital, Inc.'s Motion to Dismiss Third Party Complaint (Doc. No. 29), and any responses thereto, IT IS HEREBY ORDERED that said Motion is GRANTED in part and DENIED in part.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 1909373 (E.D.Pa.)
**(Cite as: 2000 WL 1909373 (E.D.Pa.))**

Page 6

1. Counts 7, 8, and 9 of the Third Party Complaint may proceed.

2. Count 10 of the Third Party Complaint is DISMISSED.

2000 WL 1909373 (E.D.Pa.)

**Motions, Pleadings and Filings (Back to top)**

•      2:00CV01904     (Docket) (Apr. 12, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.