# EXHIBIT 37

Case 1:05-cv-00165-JJF    Document 46-27    Filed 07/29/2005    Page 1 of 14

Westlaw.

1989 WL 67821 Page 1
1989 WL 67821 (W.D.Pa.), 58 USLW 2025, Fed. Sec. L. Rep. P 94,335, RICO Bus.Disp.Guide 7159
(Cite as: 1989 WL 67821 (W.D.Pa.))

United States District Court, W.D. Pennsylvania.
WILDER, et al.
v.
WILLIAMS, et al.
CIV. A. No. 87-1043.

Feb. 7, 1989.

Opinion

BLOCH, District Judge.

*1 Plaintiffs, four individuals and two corporations, have filed a second amended complaint containing fifteen counts. Count I alleges securities fraud; Count II contains a breach of warranty claim; Count III alleges common-law fraud; Count IV, breach of contract; Count V, negligence; Count VI, fraud; Count VII, negligence; Count VIII, negligent misrepresentation; Counts IX through XIV, violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, et seq.; and Count XV, civil conspiracy. Defendants Carl V. Trosch and Mary Ellen Johnson have filed a motion to dismiss plaintiffs' second amended complaint. [FN1]

For purposes of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b), this Court must consider plaintiffs' allegations as true. Wisniewski v. Johns-Manville Corp., 759 F.2d 271, 273 (3d Cir.1985). This Court may dismiss the complaint only if it appears with certainty that plaintiffs cannot prove a set of facts entitling them to relief. D.P. Enterprises, Inc. v. Bucks County Community College, 725 F.2d 943 (3d Cir.1984). Thus, for purposes of this motion, the facts are as follows.

In 1984, plaintiff Duane Wilder received a letter from a merger and acquisition broker promoting his acquiring a successful, Pittsburgh-based leasing company, Anchor Leasing Corp. (Anchor Leasing). The letter represented Anchor Leasing as a company whose entire business was leasing various pieces of newly-purchased, "small ticket" office equipment, such as office furnishings, computers and photocopiers. Accompanying the letter were financial statements indicating that Anchor Leasing was a profitable company with approximately $2.5 million in equity and a bad debt allowance of only $20,000.

Plaintiff Wilder subsequently involved his business associate, plaintiff Ted D. Taubeneck, in negotiations with defendant Charles G. Williams, Jr. and third-party defendant James H. Rich, who together owned all of Anchor Leasing's issued and outstanding capital stock. Anticipating an agreement, Wilder organized Alwilco, Inc. (Alwilco) on February 25, 1985, to acquire Anchor Leasing. [FN2] Several persons, including the individual plaintiffs and plaintiff Wilder Deem Associates, Inc. (Wildeer Deem) invested in Alwilco. Pursuant to an Amended and Restated Stock Purchase Agreement dated as of June 3, 1985, Williams and Rich agreed to sell all of their Anchor Leasing capital stock to Alwilco for $2,105,000, with $700,000 payable at the closing on June 18, 1985.

After the closing, plaintiffs hired a certified public accountant in order to obtain a detailed analysis of Anchor Leasing's financial status. By September, 1985, this accountant had discovered that Anchor Leasing had a substantial number of delinquent accounts and that the total dollar value of Anchor Leasing's equity leasing portfolio was at least $1 million less than the financial statements had indicated. In addition, plaintiffs discovered that Anchor Leasing did not lease "small ticket" items, but instead engaged in sizeable financing transactions, each disguised as several small lease transactions.

*2 Plaintiffs have brought suit against Williams, the controller and office manager of Anchor Leasing, four members of the accounting firm which had prepared the Anchor Leasing financial statements which plaintiffs reviewed before the sale, and six individuals who are alleged to have been lease brokers for Anchor Leasing. Defendants Trosch and Johnson were two of the principals of the accounting firm which prepared the financial statements plaintiffs reviewed before buying Anchor Leasing.

*I. Allegations of a RICO "Pattern"*

Initially, Trosch and Johnson assert that plaintiffs fail to state a claim upon which relief can be granted in the RICO counts of their complaint because plaintiffs have not alleged a "pattern" of racketeering activity. Plaintiffs assert two RICO claims against

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 46-27   Filed 07/29/2005   Page 3 of 14

1989 WL 67821                                                                                                    Page 2
1989 WL 67821 (W.D.Pa.), 58 USLW 2025, Fed. Sec. L. Rep. P 94,335, RICO Bus.Disp.Guide 7159
(Cite as: 1989 WL 67821 (W.D.Pa.))

defendants Trosch and Johnson. At Count XII, plaintiffs assert a claim pursuant to 18 U.S.C. § 1962(c), and at Count XIV, plaintiffs assert a RICO "aiding and abetting" claim. [FN3]

To properly plead a RICO cause of action under 18 U.S.C. § 1962(c), plaintiffs must allege the following five elements: (a) that an enterprise existed; (b) that the enterprise affected interstate or foreign commerce; (c) that the defendants were associated with or employed by the enterprise; (d) that the defendants engaged in a pattern of racketeering activity; and (e) that the defendants conducted or participated in the conduct of the enterprise through that pattern of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479 (1985). The requirement of a "pattern" of racketeering activity is present in every RICO claim, including those of aiding and abetting RICO activity. *Petro-Tech,* 824 F.2d at 1356. A "pattern" consists of at least two acts of racketeering activity. 18 U.S.C. § 1961(5). A single scheme can be the basis of a pattern of racketeering activity. *Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36, 39 (3d Cir.1987). Furthermore, this scheme need not be potentially ongoing or open-ended in order to reveal a "pattern." *Id.*

Trosch and Johnson assert that plaintiffs have failed to allege the existence of a pattern of racketeering activity. To determine whether such a pattern has been alleged, this Court must consider the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity. *Id. See also Marshall-Silver Construction Co., Inc. v. Mendel,* 835 F.2d 63 (3d Cir.1987); *Saporito v. Combustion Engineering, Inc.,* 843 F.2d 666 (3d Cir.1988); *Environmental Tectonics v. W.S. Kirkpatrick, Inc.,* 847 F.2d 1052 (3d Cir.1988).

In *Barticheck,* the Third Circuit Court of Appeals held that a complaint alleging one scheme in which several individuals and two entities made similar misrepresentations to more than 20 investors stated a RICO claim. 832 F.2d at 39. In *Marshall-Silver,* however, the Court held that a single, short-lived scheme with a single victim, a single injury and only two active perpetrators did not constitute "criminal activity that, because of its organization, duration, and objectives, poses, or during its existence posed, a threat of a series of injuries over a significant period of time." 835 F.2d at 66-67.

*3 Defendants urge that the gravamen of plaintiffs' complaint is that defendants, as employees and officers of Anchor Leasing, induced plaintiffs to buy all of the stock of a company whose real value was substantially less than the value portrayed in its financial statements. Were this all that is at the heart of plaintiffs' second amended complaint, plaintiffs would not have alleged the existence of a pattern of racketeering activity. *Marshall-Silver,* 825 F.2d 63. *See, e.g., Reliance Insurance Co. v. Eisner & Lubin,* 685 F.Supp. 449 (D.N.J.1988) (allegations of a "one-shot" securities fraud violation with a single victim and a single perpetrator insufficient to state a RICO claim); *Lipin Enterprises, Inc. v. Lee,* 803 F.2d 322 (7th Cir.1986) (cited by the Third Circuit in *Marshall-Silver,* 835 F.2d at 67).

Plaintiffs, however, allege more than this. [FN4] They allege that defendants, from at least July, 1984, through October, 1985, perpetrated the existence of a sham business through numerous fraudulent misrepresentations to several financial institutions and potential investors, culminating in defendants' fraudulent misrepresentations to the plaintiffs, who were induced to acquire Anchor Leasing and thus lost money.

In determining whether a pattern of racketeering activity is alleged, this Court may consider victims beyond those who are bringing the suit. *See Environmental Tectonics,* 847 F.2d at 1063-64 (injuries to the citizens of Nigeria and the United States from a bribery scheme can be counted in determining the number of victims of a RICO pattern). Thus, this Court may count lending institutions who are not plaintiffs as victims of defendants' scheme. Taking plaintiffs' allegations as true, which this Court must do at this stage, numerous financial institutions have been victimized over a long period of time by the misrepresentation of Anchor Leasing's business.

Thus, plaintiffs have alleged a series of similar actions, accomplished through mail and wire communications, over at least a 15-month period, from July, 1984, through October, 1985; by 12 perpetrators to victimize not only the plaintiffs in this case but also at least those financial institutions which lent money for large financing deals disguised as small, "safe" lease transactions. The activities which the defendants are alleged to have undertaken can hardly have a legitimate purpose. [FN5] Plaintiffs have alleged the existence of a pattern of racketeering activity. Defendants' motion to dismiss Counts XII and XIV on this ground is denied.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 46-27   Filed 07/29/2005   Page 4 of 14

1989 WL 67821                                                                                               Page 3
1989 WL 67821 (W.D.Pa.), 58 USLW 2025, Fed. Sec. L. Rep. P 94,335, RICO Bus.Disp.Guide 7159
**(Cite as: 1989 WL 67821 (W.D.Pa.))**

*II. Privity*

Defendants Trosch and Johnson claim that Counts VII and VIII of the complaint must be dismissed because there was no privity between plaintiffs and defendants. At Count VII, plaintiffs attempt to state a claim for negligence against defendants Trosch and Johnson. At Count 8, they assert a claim for negligent misrepresentation.

Plaintiffs' claim of negligence against defendants Trosch and Johnson at Count VII must be dismissed. Plaintiffs' negligence claim, asserting a failure to exercise the degree of care generally accepted in the public accounting profession, amounts to a claim for professional malpractice. In Pennsylvania, a claim for such malpractice can only be brought by a party in privity with the defendants. _Landell v. Lybrand_, 264 Pa. 406, 107 A. 783 (1919). See _Pennine Resources, Inc. v. Dorwart Andrew & Co.,_ 639 F.Supp. 1071 (E.D.Pa.1986); _Hartford Accident & Indemnity Co. v. Parente, Randolph, Orlando, Carey & Associates,_ 642 F.Supp. 38 (M.D.Pa.1985). See also _Guy v. Liederbach,_ 501 Pa. 47, 459 A.2d 744 (1983) (legal "or other professional" malpractice is subject to privity requirement). Plaintiffs allege no such privity. In fact, they speak of the duty that defendants owed to their client when discussing duties owed to Anchor Leasing. See, e.g., second amended complaint ¶ 75.

*4 Plaintiffs argue that they should be viewed as third-party beneficiaries of Anchor Leasing's professional relationship with the defendants and thus should be permitted to sue for malpractice. In support of this proposition, plaintiffs cite _Coleco Industries, Inc. v. Berman,_ 423 F.Supp. 275 (E.D.Pa.1976); _Robert Wooler Co. v. Fidelity Bank,_ 330 Pa.Super. 523, 479 A.2d 1027 (1984); and _Lawall v. Groman,_ 180 Pa. 532, 37 A. 98 (1897). The Court in _Coleco_ did not rely on Pennsylvania law. 423 F.Supp. at 308-10. In _Wooler,_ the accounting firm held liable for negligence was in privity with the plaintiff. See 479 A.2d at 1029 (Touche Ross & Co. was "the accounting firm employed by Wooler"). Furthermore, although the Court in _Lawall_ stated that an attorney could be held liable for negligence on a third-party beneficiary theory, a later Pennsylvania Supreme Court decision has characterized this statement as dicta limited to situations in which the professional "specifically undertakes" a duty for the third party. See _Guy,_ 459 A.2d at 749. See also _Safeco Insurance Co. of America v. Stockton Bates & Co.,_ No. 83-6207 (E.D.Pa. June 12, 1985) (available on LEXIS GENFED file, DIST database). Count VII is dismissed for lack of privity.

At Count VIII, however, plaintiffs have asserted a claim for negligent misrepresentation against defendants Trosch and Johnson. Defendants argue that this claim should be dismissed for lack of privity also. In Pennsylvania, claims of negligent misrepresentation are governed by the Restatement (Second) of Torts § 552, which provides in relevant part:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability *for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.*

(2) ... [T]he *liability* stated in Subsection (1) *is limited to loss suffered*

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) *through reliance upon it in a transaction* that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

_Eisenberg v. Gagnon,_ 766 F.2d 770, 778 (3d Cir.1985), citing to Restatement (Second) of Torts § 552 (1977) (emphasis added). See also _Moffatt Enterprises, Inc. v. Borden, Inc.,_ 807 F.2d 1169, 1174 (3d Cir.1986). Privity is not required. _Eisenberg,_ 766 F.2d at 779-80. Therefore, defendants' motion to dismiss Count VIII for lack of privity is denied.

*III. Standing of the Individual Plaintiffs and Wilder Deem*

Defendants Trosch and Johnson argue that the individual plaintiffs and Wilder Deem lack standing to bring this action. [FN6] As noted previously, the individual plaintiffs and Wilder Deem are the investors in Alwilco, which bought all of the stock of Anchor Leasing. Defendants claim that as shareholders, the individual plaintiffs and Wilder

Case 1:05-cv-00165-JJF   Document 46-27   Filed 07/29/2005   Page 5 of 14

1989 WL 67821                                                                                                Page 4
1989 WL 67821 (W.D.Pa.), 58 USLW 2025, Fed. Sec. L. Rep. P 94,335, RICO Bus.Disp.Guide 7159
(Cite as: 1989 WL 67821 (W.D.Pa.))

Deem have no personal or individual cause of action for damages based solely on an injury to the corporation. They argue that the damage done by the actions alleged, if any, was damage to Alwilco, such as a decrease in the value of its stock.

*5 If all of the injury alleged is solely to the corporation, shareholders of the corporation would not have standing to sue. _Moffatt, 807 F.2d at 1176;_ _In Re Penn Central Securities Litigation,_ 347 F.Supp. 1324, 1326 (E.D.Pa.1972). Generally, if a corporation has been defrauded so as to bring about ultimate bankruptcy, a cause of action exists on the part of the corporation, not the shareholders, against the wrongdoer. _Warren v. Manufacturers National Bank of Detroit,_ 759 F.2d 542, 545 (6th Cir.1985).

On the other hand, however, an individual's status as a shareholder does not automatically preclude him or her from separate recovery. _Moffatt, 807 F.2d at 1176;_ _Warner v. Alexander Grant & Co.,_ 828 F.2d 1528, 1531 (11th Cir.1987). He or she has standing to sue for injuries suffered personally. 807 F.2d at 1176; 828 F.2d at 1531.

In this case, the plaintiffs have requested damages for, _inter alia:_

(a) The $700,000.00 purchase price paid by Alwilco at the time of the closing for the Anchor Leasing capital stock;

(b) Various expenses incurred in connection with the acquisition including, _inter alia,_ expenses of forming Alwilco, fees for lawyers, accountants, financial advisors and for a letter of credit needed for the closing. Said expenses total approximately $250,000;

(c) Their loss of bargain, as described more fully in Paragraph 46 below, and

(d) Various other damages.

(Second amended complaint ¶ 41). Some of these damages, such as the $700,000 purchase price, clearly represent injury to Alwilco, not to individual shareholders. After all, it was Alwilco, not the individual shareholders, who purchased the Anchor Leasing stock. (Second amended complaint ¶ 24). Similarly, loss of anticipated profits and a decrease in value of Alwilco shares (described in ¶ 46) represent injuries to the corporation, not to the individual plaintiffs. _Rand v. Anaconda-Ericsson, Inc.,_ 794 F.2d 843, 849 (2d Cir.1986).

Plaintiffs also claim damages for expenses of forming Alwilco, however. This can constitute an individual injury. If defendants fraudulently induced the individual plaintiffs and Wilder Deem to expend money to form Alwilco, then those plaintiffs who spent such money have suffered individual injury for which they have a cause of action. _See Moffatt,_ 807 F.2d at 1177 (loss of funds spent developing corporations and loss of jobs which plaintiffs resigned in order to operate corporations constituted individual injury).

Unfortunately, plaintiffs have not sufficiently specified which damages they seek in individual capacities and which damages Alwilco seeks. Plaintiffs specify the damages demanded in only two places in the complaint: paragraphs 41 and 46. It is impossible to ascertain which damages the individual plaintiffs claim and which the corporation claims on each of the 15 counts. This Court must be especially concerned with this matter because Alwilco is in bankruptcy. To a bankrupt corporation, a lawsuit is a corporate asset. Shareholders cannot bring actions belonging to bankrupt corporations in their own names without impairing the rights of prior claimants in bankruptcy to that corporate asset. _Rand,_ 794 F.2d at 849.

*6 In such situations, when this Court cannot determine which plaintiffs bring which count of the complaint and for which damages, this Court should permit the plaintiffs to amend their complaint. _See Moffatt,_ 807 F.2d at 1177; _Warner,_ 828 F.2d at 1531. This Court is reluctant to do so, it appearing that the plaintiffs have already had three chances to properly plead their causes of action. Plaintiffs filed their initial complaint on May 14, 1987; their amended complaint on May 22, 1987; and their second amended complaint on October 24, 1988. They have had the benefit of briefs concerning asserted pleading deficiencies since mid-1987. Nevertheless, this Court will allow plaintiffs a final chance to separate out the damages claimed and the specific plaintiffs asserting each count of the complaint.

Defendants' motion to dismiss the individual plaintiffs and Wilder Deem for lack of standing is granted, with leave given to plaintiffs to file a third amended complaint within thirty (30) days from the date of this opinion to correct these pleading defects.

_IV. Particularity of Allegations_

Defendants Trosch and Johnson finally claim that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 46-27   Filed 07/29/2005   Page 6 of 14

1989 WL 67821                                                                                                                Page 5
1989 WL 67821 (W.D.Pa.), 58 USLW 2025, Fed. Sec. L. Rep. P 94,335, RICO Bus.Disp.Guide 7159
(Cite as: 1989 WL 67821 (W.D.Pa.))

plaintiffs have failed to allege with the requisite particularity the actions complained of at Count I (securities fraud); Count III (common-law fraud); Count VIII (negligent misrepresentation); and Counts XII and XIV (RICO).

Fed.R.Civ.P. 9(b) requires that fraud be alleged with particularity. Rule 9(b) provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

This rule sets forth the pleading requirements in securities fraud and common-law fraud cases, *Christidis v. First Pennsylvania Mortgage Trust,* 717 F.2d 96 (3d Cir.1983); and RICO cases based upon allegations of mail and wire fraud. *Saporito,* 843 F.2d at 673. [FN7] Because the sufficiency of the allegations as to each claim may differ, however, this Court will consider each separately.

A. *Securities Fraud and Common-Law Fraud*

The Third Circuit in *Christidis* stated that securities fraud and common-law fraud claims must identify the following elements: (1) a specific false representation of material facts; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom the representation was made; (4) the intention that it should be acted upon; and (5) action upon it by the plaintiff, with damages resulting. 717 F.2d at 99. In applying Rule 9(b), however, this Court must not focus extensively on the particularity language and must take into account the general simplicity and flexibility contemplated by the Rules of Civil Procedure. *Id.* at 100. Strict application of Rule 9(b) prior to discovery "may permit sophisticated defrauders to successfully conceal the details of their fraud." *Id.*

*7 At Counts I and III, plaintiffs allege that defendants Trosch and Johnson, as principals of a certified public accounting firm, department from reasonable accounting practices by misrepresenting the financial condition and value of Anchor Leasing in various ways in seven specified sources of financial information. Defendants contend that plaintiffs have not complied with Rule 9(b) because they have not set forth the accounting principles which they contend defendants violated. The Third Circuit has indicated that when plaintiffs claim that defendants violated federal securities law by knowingly departing from reasonable accounting practices, plaintiffs must set forth "[w]hat those practices were and how they were departed from." *Christidis,* 717 F.2d at 100.

The Third Circuit has also stated, however, that Rule 9(b) is designed mainly to ensure that those defending fraud actions are protected from the filing of vague complaints to which no intelligent response is possible. *See Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 742 F.2d 786, 791 (3d Cir.1984); *Thomas v. Tramiel,* 105 F.R.D. 568, 571 (E.D.Pa.1985). Added specificity as to some of the circumstances surrounding the alleged fraud may lessen the need for detail concerning other circumstances. In *Seville,* for example, the Court held that a fraud complaint was sufficiently specific despite the plaintiffs' failure to list the date, place and time of phone calls and letters the defendants allegedly made in furtherance of their fraudulent scheme. 742 F.2d at 791. The Court found that, because plaintiffs had specifically identified items of machinery involved in the alleged fraud and the content of the alleged misrepresentations, plaintiffs had complied with Rule 9(b). *Id.* Thus, specificity as to some matters compensated for lack of specificity as to other matters. *See also In Re Fiddler's Woods Bondholders Litigation,* 102 F.R.D. 291 (E.D.Pa.1984).

In this case, plaintiffs have specifically listed the financial statements and reports about which they complain. (Second amended complaint ¶¶ 26, 83). Plaintiffs have specifically identified ways in which they allege the defendants deviated from generally accepted accounting principles in preparing that financial information. *See, e.g.,* ¶ 38(b) (financial information "grossly understated bad debt and grossly overstated items such as leases, profits, unearned income and shareholders' equity"); ¶¶ 38(d)-(e) (information misrepresented amounts and rates of delinquencies, repossessions, write offs and actual and/or projected growth of business); ¶ 29 (failure to disclose that total delinquency in installment payments per account exceeded $10,000 and overestimation of Anchor Leasing's lease portfolio by $1 million).

Plaintiffs have not specifically stated the reasons why such representations violate reasonable accounting practices. It hardly seems necessary that they do so, however. This is not a case involving alleged errors in technical accounting concepts and formulas. *See Christidis,* 717 F.2d at 100 (plaintiffs alleged departure from reasonable accounting

Case 1:05-cv-00165-JJF   Document 46-27   Filed 07/29/2005   Page 7 of 14

1989 WL 67821                                                                    Page 6
1989 WL 67821 (W.D.Pa.), 58 USLW 2025, Fed. Sec. L. Rep. P 94,335, RICO Bus.Disp.Guide 7159
(Cite as: 1989 WL 67821 (W.D.Pa.))

practices in the manner in which the accountants predicted the amount of future bad debts). In this case, the plaintiffs have alleged with specificity representations which, even to the unknowing reader, would violate reasonable accounting practices if true.

*8 Plaintiffs have alleged their securities fraud and common-law fraud claims at Counts I and III with sufficient specificity. Defendants' motion as to these counts on this ground is denied.

B. RICO Claims

Predicate acts of a RICO claim must meet the Rule 9(b) pleading requirements. Seville, 742 F.2d 786. As with other Rule 9(b) cases, however, in seeking particularity, this Court must also take into account the general simplicity and flexibility contemplated by the Rules. Id. at 791, as quoted in Saporito, 843 F.2d at 674. A RICO complaint which indicates who made representations to whom and the general content of those representations will suffice. Seville, 742 F.2d at 791. If some of the information required for sufficient particularity is in the exclusive control of one or more of the defendants, then the plaintiffs are relieved of some of the requisite particularity. Saporito, 843 F.2d at 675.

On their face, plaintiffs' RICO allegations at Counts XII and XIV concerning defendants Trosch and Johnson do not seem to have been pleaded with the requisite particularity. Defendants Trosch and Johnson are only mentioned in vague terms as being "involved [in] the commission ... of two or more acts of racketeering activity of offenses involving fraud in connection with the sale of securities" (second amended complaint ¶ 117); as participating "directly and indirectly in the conduct of the enterprise ... by furnishing the false financial statements which were furnished to plaintiffs in connection with the sale of the stock in Anchor Leasing" (second amended complaint ¶ 118); and "preparing, issuing and furnishing the financial statements described in this Complaint" (second amended complaint ¶ 128). These statements alone do not specify the content of the misrepresentations made or to whom they were made on which occasions, as required under Seville and Saporito.

Reading the complaint in conjunction with plaintiffs' RICO case statement, filed as required by this Court on November 2, 1988, however, the plaintiffs have adequately alleged particular facts concerning their RICO allegations. This Court is required to consider permitting the plaintiffs to amend their second amended complaint to cure such pleading defects. See Saporito, 843 F.2d at 675. As this Court is otherwise permitting plaintiffs to amend their second amended complaint (see supra § III), plaintiffs should incorporate those portions of their RICO statement which add particularity to their RICO allegations in their third amended complaint.

Thus, defendants' motion to dismiss Counts XII and XIV for failure to plead with sufficient particularity is granted, with leave given to plaintiffs to amend their complaint in order to cure such defects.

An appropriate Order will be issued.

FN1. These parties originally filed a motion to dismiss plaintiffs' amended complaint on July 31, 1987. After plaintiffs filed a second amended complaint, defendants Trosch and Johnson reasserted their earlier arguments for dismissal of the complaint against them. Defendants Trosch and Johnson are named as defendants in Counts I, III, VII, VIII, XII and XIV of plaintiffs' second amended complaint.

FN2. Alwilco has since filed in bankruptcy, and its trustee in bankruptcy has been substituted for Alwilco as a plaintiff in this action.

FN3. Defendants Trosch and Johnson point to plaintiffs' failure to specify a subsection of 18 U.S.C. § 1962 when pleading their RICO "aiding and abetting" claim. Plaintiffs may bring an "aiding and abetting" claim pursuant to RICO. Petro-Tech, Inc. v. Western Co. of Northern America, 824 F.2d 1349, 1356 (3d Cir.1987). Since 18 U.S.C. § 1962 does not state that aiding and abetting is a crime, however, plaintiffs could not have specified that defendants had violated any particular subsection with their aiding and abetting activity.

FN4. It is possible that plaintiffs only intend to implicate defendants Trosch and Johnson in that portion of the defendants' actions which involved inducing the plaintiffs to purchase the Anchor Leasing stock. If that is the extent to which defendants Trosch and Johnson were involved, then the allegations against them would appear not to implicate them in a pattern of racketeering activity. At this stage, however, accepting all of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF    Document 46-27    Filed 07/29/2005    Page 8 of 14

1989 WL 67821                                                                Page 7
1989 WL 67821 (W.D.Pa.), 58 USLW 2025, Fed. Sec. L. Rep. P 94,335, RICO Bus.Disp.Guide 7159
(Cite as: 1989 WL 67821 (W.D.Pa.))

plaintiffs' allegations as true as this Court must, the plaintiffs appear to be alleging that defendants Trosch and Johnson participated in the entire scheme alleged, from disguising financial transactions as small lease transactions throughout Anchor Leasing's existence to inducing plaintiffs to buy Anchor Leasing stock. Thus, plaintiffs survive a motion to dismiss. Depending upon what discovery reveals, of course, they may not survive a motion for summary judgment on this ground at Count XII.

FN5. The Court in *Saporito* indicated that in considering the character of the activity in determining whether a RICO claim has been properly alleged, this Court should examine whether the activity may have a legitimate purpose. *Saporito*, 843 F.2d at 677-78 n. 17.

FN6. Defendants also argue that plaintiff Wilder Deem is barred from entering this suit by the statute of limitations. Because the same issue will likely arise after the filing of the third amended complaint, which this Court will order, this Court now denies defendants' motion on this ground. Wilder Deem's claims arise from the same "conduct, transaction, or occurrence" as plaintiffs' original pleading. Thus, Wilder Deem's claims "relate back" to the original pleading and are not barred by the applicable statutes of limitations. Fed.R.Civ.P. 15(c). *See Allied International, Inc. v. Int'l. Longshoremen's Assoc., AFL-CIO*, 814 F.2d 32, 35-36 (1st Cir.1987).

FN7. As noted above, defendants Trosch and Johnson claim that Rule 9(b) mandates similar particularity in claims of negligent misrepresentation. Rule 9(b) does not list negligent misrepresentation as a cause of action requiring particularity. Moreover, the elements of fraud and negligent misrepresentation differ greatly. *See, e.g., Eisenberg*, 766 F.2d 770. Further, the burdens of proof differ. *See Moffatt*, 807 F.2d at 1175. This Court will not extend the strict pleading requirements of Rule 9(b) to causes of action for negligent misrepresentation without more legal support for such a step then defendants' argument, without citation, that the negligent misrepresentation alleged amounts to a claim of fraud.

FNDefendants Trosch and Johnson also argue that plaintiffs' claims of negligent misrepresentation are barred by Pennsylvania's two-year statute of limitations applicable to such claims. Plaintiffs first added their negligent misrepresentation claim in their second amended complaint, filed on October 24, 1988. This is more than two years after the alleged misrepresentations took place. However, plaintiffs' claims "relate back" to their earlier complaint. Fed.R.Civ.P. 15(c). Therefore, they are not barred by the statute of limitations.

1989 WL 67821 (W.D.Pa.), 58 USLW 2025, Fed. Sec. L. Rep. P 94,335, RICO Bus.Disp.Guide 7159

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 38

**Westlaw.**

Not Reported in A.2d  
1995 WL 571896 (Del.Ch.)  
(Cite as: 1995 WL 571896 (Del.Ch.))

Page 1

**H**  
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware, New Castle County.  
Anthony D. WOLF and Geraldine S. Wolf, Plaintiffs,  
v.  
MAGNESS CONSTRUCTION COMPANY, a Delaware corporation, New Castle County, a municipal corporation of the State of Delaware and the Delaware Department of Transportation, an agency of the State of Delaware, Defendants.  
**Civ. A. No. 13004.**

Submitted Sept. 5, 1995.  
Decided Sept. 11, 1995.

John H. Newcomer, Jr. of Bayard, Handelman & Murdoch, P.A., Wilmington, for plaintiffs.

Jeffrey M. Weiner of Law Offices of Jeffrey M. Weiner, Wilmington, for defendant Magness Construction Company.

Lydia C.F. Anderson of New Castle County Law Department, Wilmington, for defendant New Castle County.

Frederick H. Schranck of Department of Transportation, Dover, for defendant Department of Transportation.

MEMORANDUM OPINION

CHANDLER, Vice Chancellor.

*1 Plaintiffs, Anthony D. and Geraldine S. Wolf (the "Wolfs"), seek a court order compelling Magness Construction Company ("Magness") to improve the drainage in their backyard. In a December 20, 1994, memorandum opinion (the "Opinion"), the Court granted summary judgment to Magness as to the Wolfs' contract and fraud claims, denied the motion on the Wolfs' negligence claim, and asked for further briefing on the issue of negligent misrepresentation. This is the Court's decision on the parties cross motions for summary judgment on the Wolfs' negligent misrepresentation claims.

The undisputed facts described in the Opinion have not changed. Prior to purchasing their home, the Wolfs reviewed the sales contract and related documents. The Wolfs had concerns about the drainage easement described in these documents. The General Development Plan for Section III describes a drainage easement on the property with minimum swale dimensions of 2 feet in width and 1.15 feet in depth. The lot had not yet been developed, and the Wolfs were unsure about what the drainage would look like.

The Wolfs questioned Gilbert Brockson ("Brockson"), the real estate agent for Magness, about the drainage easement. Brockson told Mr. Wolf that the drainage would be a "gentle swale" substantially similar to the drainage behind the model home. Brockson's representation resembles the warranty provision of the sales contract. The warranty provides:

> It is understood that the subject property will be built and finished (excluding display house appointments, furnishing and decorations) of substantially the same quality and finish as the model on lot 33, except as modified in accordance with Addendum and/or drawing hereto attached and signed by purchaser and seller.

At the time Brockson made this representation, Magness planned to create a drainage easement on the Wolf's property that was similar to the drainage on the model lot. Yet, Magness reserved the right to alter the character of the drainage. The sales contract provides that "all decisions ... as to grading, drainage ... shall be at Seller's (Magness) sole and exclusive discretion."

Brockson reached his understanding of how the completed drainage would look by reading the sales contract and studying the maps and related documents. He believed that all aspects of the homes would be substantially similar to the model home. Magness did not teach Brockson the meaning of the terms of the contract. Magness relied on Brockson's ability to read and comprehend the agreement.

Brockson's statements led the Wolfs to believe that the sales contract guaranteed a drainage that was substantially similar to the gentle swale behind the model home. On that basis, the Wolfs agreed to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

purchase their home.

Magness provided the Wolfs with a drainage easement that is dramatically different from the gentle swale behind the model home. The drainage easement on the Wolfs property is a deep drainage ditch. The Wolfs are dissatisfied with the drainage and request a mandatory injunction ordering Magness to improve the drainage.

*2 Based on these undisputed facts, both parties have moved for summary judgment on the Wolfs' claim for negligent misrepresentation. The elements of a claim for negligent misrepresentation are: 1) a pecuniary duty to provide accurate information, 2) supplying false information, 3) failure to exercise reasonable care in obtaining or communicating the information, and 4) a pecuniary loss caused by justifiable reliance upon the false information. _Glosser v. Cellcor Inc.,_ Del.Ch., C.A. No. 12725, Allen, C. (Sept. 2, 1994), mem. op. at 28 (citing Restatement (Second) of Torts § 552 (1977)). Magness assumed a pecuniary duty to provide accurate information regarding the terms of the sales contract by providing an agent to explain the terms of the agreement to prospective buyers. _See Employers Liability Assurance Corp., LTD. v. Madric,_ Del.Super., 174 A.2d 809, 814 (1961), _rev'd on factual grounds,_ Del.Supr., 183 A.2d 181 (1962). The Wolfs contend that Magness breached this duty by misrepresenting the provisions of the sales contract that pertain to the drainage easement. Magness responds that Brockson did not provide the Wolfs with false information.

Magness argues that Brockson's representation that the drainage would be substantially similar to the gentle swale behind the model home was true at the time Brockson made it. Magness planned to design a drainage easement substantially similar to the gentle swale behind the model home. The conditions on the property forced Magness to change its plan and design a deeper, wider drainage ditch. Magness contends that when Brockson spoke with the Wolfs, his representation regarding the drainage easement was consistent with Magness' plans.

On a motion for summary judgment, the Court must accept the facts in the light most favorable to the non-moving party. _See Ebersole v. Lowengrub,_ Del.Supr., 180 A.2d 467, 470 (1962). For the purposes of the Wolfs' motion, I assume that Brockson's statement was technically true. However, "a statement may be true with respect to the facts stated, but may fail to include qualifying matters necessary to prevent the implication of an assertion that is false with respect to other facts." _Norton v. Poplos,_ Del.Supr., 443 A.2d 1, 5 (1982). Brockson's statement carried with it a false impression that the sales contract guarantees a drainage similar to the model home. Brockson did not differentiate between the house, which was guaranteed to be similar to the model pursuant to the sales contract, and the drainage easement, which could be altered at Magness' discretion. As a result of his statement, the Wolfs believed that the warranty provision applied to the drainage easement. Brockson did not make any other statements to explain that Magness planned to construct a gentle swale but did not guarantee that result.

Magness contends that it provided further qualifying information that dispelled the false impression created by Brockson's statement: the sales contract and the related maps. The sales contract and related maps do not adequately qualify Brockson's representation because Brockson gave the Wolfs a false impression of their meaning. Ordinarily, a party is obligated to read and understand a written agreement. However, that rule has no application "where one party gives evidence of non-comprehension and seeks advice in a business way from the agent of the other party, and said agent presumes to give such advice...." _Madric,_ 174 A.2d at 814. Magness' agent misrepresented the meaning of the sales contract. Therefore, it cannot rely on the sales contract itself to qualify that misrepresentation. Magness supplied the Wolfs with false information.

*3 Magness' misleading statement resulted from a failure to exercise ordinary care. Magness did not adequately train its agent. It relied on Brockson's untrained ability to comprehend the relevant materials and adequately explain them to prospective buyers. As a result of this inadequate training, Brockson provided the Wolfs' with false information about the sales contract.

The Wolfs justifiably relied on Brockson's misleading statement. The Wolfs expressed their concerns about the drainage easement to Magness' agent. They reasonably believed they could rely on his representations. The presence of the written standard form contract does not make their reliance on Brockson's explanation of its terms unjustified. _See Madric,_ 174 A.2d at 814.

The Wolfs have shown that they are entitled to judgment as a matter of law on the basis of undisputed facts with respect to Magness' liability,

Not Reported in A.2d  
1995 WL 571896 (Del.Ch.)  
**(Cite as: 1995 WL 571896 (Del.Ch.))**

Page 3

but the Court does not have an adequate factual record to consider a remedy. In their complaint, the Wolfs' request a mandatory injunction. The parties dispute whether Magness can feasibly provide the Wolfs with the remedy they request. The Court will have to hold a trial to determine whether to issue an injunction or to assess damages against Magness.

IT IS SO ORDERED.

1995 WL 571896 (Del.Ch.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2005, I electronically filed the attached **COMPENDIUM OF UNREPORTED CASES CITED IN ROYAL INDEMNITY COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** with the Clerk of Court using CM/ECF, which will send notification of such filing to the following:

William H. Sudell, Jr., Esquire
Morris Nichols Arsht & Tunnell
1201 North Market Street
Wilmington, DE 19899-1347

James L. Holzman, Esquire
J. Clayton Athey, Esquire
Prickett, Jones & Elliott, P.A.
1310 King Street
P.O. Box 1328
Wilmington, DE 19899

Michael R. Lastkowski, Esquire
Christopher M. Winter, Esquire
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801

I hereby certify that on July 29, 2005, I have forwarded by Federal Express, the attached document to the following non-registered participants:

John H. Eickemeyer, Esquire
Jonathan A. Wexler, Esquire
Vedder, Price, Kaufman & Kammholz, P.C.
805 Third Avenue
New York, NY 10022

Elizabeth K. Ainslie, Esquire
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103

2

Richard P. Swanson, Esquire
Veronica E. Rendon, Esquire
Arnold & Porter LLP
399 Park Avenue
New York, NY  10022-4690

           /s/ *Tiffany Geyer Lydon*
           Tiffany Geyer Lydon (I.D. # 3950)

155805.1