IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | : | |
|---|---|---|
| ROYAL INDEMNITY COMPANY | : | |
| | : | |
| Plaintiff, | : | Civil No. 05-165 (JJF) |
| | : | |
| vs. | : | |
| | : | |
| PEPPER HAMILTON LLP, ET AL. | : | |
| | : | |
| Defendants. | : | |
| | : | |

**REPLY BRIEF IN SUPPORT OF THE MOTION OF W. RODERICK
GAGNÉ FOR THE DISMISSAL OF PLAINTIFF'S FIRST AMENDED COMPLAINT**

MORRIS, NICHOLS, ARSHT & TUNNELL
William H. Sudell, Jr., Esq. (No. 0463)
Donna L. Culver, Esq. (No. 2983)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
(302) 658-3989 (facsimile)

*Counsel for Defendant W. Roderick Gagné*

OF COUNSEL:

SCHNADER HARRISON SEGAL & LEWIS LLP
Elizabeth K. Ainslie, Esq.
Nicholas J. LePore, III, Esq.
Theresa E. Loscalzo, Esq.
Bruce P. Merenstein, Esq.
Stephen J. Shapiro, Esq.
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
(215) 751-2000
(215) 751-2205 (facsimile)

August 16, 2005

## TABLE OF CONTENTS

INTRODUCTION. ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I.     THE PSLRA BARS ROYAL'S RICO CLAIMS IN THEIR ENTIRETY............................... 1

     A.     The Constellation Of Facts Alleged Is Actionable As Securities Fraud............. 1

     B     Royal's No-Injury Argument Is Illusory ........................................................ 4

II.     THE ALLEGATIONS IN ROYAL'S AMENDED COMPLAINT ESTABLISH THAT ITS PURPORTED RICO ENTERPRISE HAS NO EXISTENCE SEPARATE AND APART FROM THE ALLEGED PATTERN OF RACKETEERING ACTIVITY.................................................................................. 6

III.     ROYAL'S OPPOSITION BRIEF HIGHLIGHTS ITS INABILITY TO PLEAD OR OTHERWISE ESTABLISH THAT GAGNÉ TOOK PART IN THE OPERATION OR MANAGEMENT OF THE ALLEGED ENTERPRISE. ..................................... 8

IV.     ROYAL CANNOT MAINTAIN ITS RICO CONSPIRACY COUNT AGAINST GAGNÉ............................................................................................................................ 11

CONCLUSION ............................................................................................................................. 12

# TABLE OF AUTHORITIES

## *Cases*

*Allington v. Carpenter*, 619 F. Supp. 474 (C.D. Cal. 1985) .................................................................. 7

*Bald Eagle Area School Dist. v. Keystone Financial, Inc.*, 189 F.3d 321 (3d Cir. 1999) ........................ 2, 3

*Beck v. Prupis*, 529 U.S. 494 (2000) ...................................................................................................... 11

*Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*,
    832 F. Supp. 585 (E.D.N.Y. 1993) .................................................................................................... 9

*Breslin v. Brainard*, No. 01-CA-7269, 2003 U.S. Dist. LEXIS 19609 (E.D. Pa. Oct. 10, 2003) ............... 11

*Chang v. Chen*, 80 F.3d 1293 (9th Cir. 1996) ........................................................................................ 6, 7

*Dianese, Inc. v. Commonwealth of Pennsylvania*, No. 01-CV-2520,
    2002 U.S. Dist. LEXIS 10917 (E.D. Pa. June 19, 2002) ..................................................................... 6

*Fidelity Fed. Sav. & Loan Ass'n v. Felicetti*, 830 F. Supp. 257 (E.D. Pa. 1993) ..................................... 9

*Gilmore v. Berg*, 820 F. Supp. 179 (D.N.J. 1993) ................................................................................. 10

*Hemispherx Biopharma, Inc. v. Asensio*, No. 98-5204,
    1999 U.S. Dist. LEXIS 2849 (E.D. Pa. Mar. 15, 1999) ...................................................................... 4

*Howard v. America Online, Inc.*, 208 F.3d 741 (9th Cir. 2000) ............................................................... 5

*Musick, Peeler & Garrett v. Employers Ins.*, 508 U.S. 286 (1993) .......................................................... 5

*Reynolds v. Condon*, 908 F. Supp. 1494 (N.D. Iowa 1995) ................................................................. 10

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ................................................................................. 8-10

*SEC v. Zandford*, 535 U.S. 813 (2002) .................................................................................................. 3

*Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340 (S.D.N.Y. 1998) ................................................................. 6

*Schuylkill Skyport Inn, Inc. v. Rich*, No. 95-3128,
    1996 U.S. Dist. LEXIS 12655 (E.D. Pa. Aug. 20, 1996) .................................................................. 10

*Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786 (3d Cir. 1984) ............................ 6

*Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001) .......................................................................................... 11

*United States v. Bledsoe*, 674 F.2d 647 (8th Cir.) cert denied, 459 U.S. 1040 (1982) ............................ 7

*United States v. Parise*, 159 F.3d 790 (3d Cir. 1998) ............................................................................ 8

*Univ. of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534 (3d Cir. 1993) .......................... 8-10

### *Statutes*

18 U.S.C. § 1961(1) .................................................................................................................. 3, 11, 12

18 U.S.C. § 1962(d) .................................................................................................................. 7, 11

Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67,
    109 Stat. 737 (1995) ........................................................................................................... 6

## INTRODUCTION

Royal's RICO claims against Gagné should be dismissed because, based on Royal's own allegations: (1) the PSLRA bars Royal's claims; (2) Royal has not alleged the existence of an enterprise separate from the alleged pattern of racketeering activity; (3) Gagné is not alleged to have participated in the operation or management of the alleged enterprise; and (4) Royal cannot state a claim for RICO conspiracy because it cannot state a RICO claim against any of the alleged RICO persons. The Court need not, as Royal asks it to do, step outside the pleadings to decide the motion. The application of the law to the facts alleged by Royal in its Amended Complaint show that Royal's RICO claims against Gagné fail as a matter of law.

## ARGUMENT

### I.  THE PSLRA BARS ROYAL'S RICO CLAIMS IN THEIR ENTIRETY.

#### A.  The Constellation of Facts Alleged Is Actionable As Securities Fraud.

After filing an Amended Complaint that clearly and unequivocally states that the "goal of the RICO Persons' racketeering conspiracy and activity was to generate, *securitize*, and then *sell to investors as many student loans as possible*," see Am. Compl. ¶ 138; *see also* Am. Compl. ¶ 170 ("*The object of the agreement or plan* was to securitize, through the use of insurance, and then *sell as a security*, as many pools of student loans as possible . . . .") (emphasis added), Royal now attempts to avoid the impact of these clearly stated allegations and to pretend that the conduct it alleges would not be "actionable as securities fraud."

In its first such attempt, Royal isolates individual pieces of SFC's securitization process – SFC's loan transactions with Wilmington Trust and with PNC – and concludes that because no securities were sold or purchased during these interim transactions specifically, the PSLRA does not bar a RICO claim based on the entirety of the conduct alleged in the Amended Complaint. However, Royal refers to no allegations in its Amended Complaint that support its assertions regarding Wilmington Trust and PNC, probably for the reason that the sparse

references in the Amended Complaint to these interim transactions show clearly that these transactions were integral parts of the securitization process:

> The [Wilmington Trust] loan proceeds were supposed to be used either to purchase student loans from truck driving schools or to make loans to such students directly . . . . ***At the time of a securitization transaction***, the loans would be removed from the warehouse, pooled and transferred to a trust. ***The trust would then issue certificates or floating rate notes to investors through private placements.*** In theory, the investors would then be repaid from the pool of payments made by the students on the underlying student loans. ***SFC would pay down the warehouse loan with the funds it obtained from the securitization of the student loans.***

Am. Compl. ¶ 37 (emphasis added). *See also* ¶ 51(f) (PNC provided the warehouse loan used in connection with the securitization of one of SFC's loan pools).

The Third Circuit, in *Bald Eagle Area School District v. Keystone Financial, Inc.*, 189 F.3d 321 (3d Cir. 1999), rejected just such an attempt to escape the bar of the PSLRA by dissecting a securitization process into its component parts. The plaintiffs in *Bald Eagle*, on appeal from the lower court's dismissal of their RICO claims, argued (as Royal does here) that because only a portion of the defendant's overall securities scheme was actionable securities fraud, the "other portion" of the conduct constituted the predicate offense for purposes of RICO. *Id.* at 329. The court firmly rejected this argument: "the contention that the conduct alleged as predicate offenses was not in connection with the purchase or sale of securities completely ignores the hard reality that the [other portion of the] conduct was an integral part of [defendant's] securities fraud Ponzi scheme." *Id.* at 330. The court refused to allow "such surgical presentation of the cause of action" because to do so "would undermine the congressional intent behind the RICO Amendment." *Id.* at 330.

Just as the Third Circuit found impermissible in *Bald Eagle*, Royal here is attempting to have it both ways. On the one hand, Royal argues in its Amended Complaint that the purpose of the RICO enterprise was "convincing investors to purchase the loans and convincing insurers, specifically Royal, to issue insurance policies insuring the student loans ***to***

2

*facilitate the securitization and sale of the loans.*" Am. Compl. ¶ 138. Accordingly, Royal alleged that Gagné engaged in the predicate acts of transmitting false and misleading PPM's – PPM's that Royal alleges were issued as part of SFC's securitization process – "in order for SFC to make required disclosures to potential investors." Am. Compl. ¶ 81. On the other hand, in order to escape the bar of the PSLRA, Royal now tries to re-package its pattern of racketeering activity as insurance fraud only, by re-defining the alleged scheme solely on its insurance of the securitized pools. *See* Royal Br. at 67.

In its second attempt to avoid the consequences of its own initial pleadings, Royal argues that "Gagné and Aquino, among others, committed insurance fraud separate from, and at best as a prelude to, their *possible* commission of securities fraud in *some* of the transactions; and that *separate* insurance fraud qualifies as a RICO predicate act." Royal Br. at 68 (emphasis in original).[1] This argument ignores the obvious: the same set of facts may support a claim for securities fraud *and* a claim for insurance fraud, *and* a claim for wire or mail fraud. *See Bald Eagle Area School Dist.*, 189 F.3d at 330. Therefore, "a plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud. Allowing such surgical presentation of the cause of action here would undermine the congressional intent behind the RICO Amendment." *Id.*

Aside from the fact that insurance fraud is not a predicate act under the RICO statute, and in any event, was not pled, Royal's claim must be judged by the predicate acts that it *actually did* plead – the transmittal of allegedly false PPM's, which were used in connection with the sale of securities. *See* 18 U.S.C. § 1961(1) (setting forth predicate acts). Therefore, even

---

[1] In support of this argument, Royal cites only to *SEC v. Zandford,* 535 U.S. 813 (2002). However, that decision did not involve RICO or the PSLRA at all. Moreover, the factual scenarios discussed in footnote 4 of *Zandford*, quoted by Royal, do not support Royal's argument that in this particular case the alleged insurance fraud was separate from the alleged securities fraud.

3

though Royal now attempts to argue that the Wilmington Trust and PNC transactions individually did not involve securities at all, the fact of the matter is that each and every predicate act pled with respect to Gagné relates directly to the PPMs issued in connection with SFC's securitization process. *See* Am. Compl. ¶ 160. Thus, even if, as Royal now claims, it is relying upon non-securities fraud related conduct to support its RICO claims, it has alleged no such conduct with respect to Gagné. In other words, if Royal excises the securities fraud allegations from its Amended Complaint to escape the PSLRA bar, then no predicate acts involving Gagné remain, and Royal's RICO claims against him must be dismissed.

### B. Royal's No-Injury Argument is Illusory.

In its response brief, Royal knocks down a straw man. Royal asks rhetorically: "Would the predicate acts alleged by Royal be 'actionable as fraud in the purchase or sale of securities?'" (Royal Br. at 67) and then answers the question in the negative by arguing that since the investors were not injured, there are no actionable securities fraud claims because the investors would lack standing to assert the claims. *See* Royal Br. at 68. But whether the investors were injured is not the issue, and Gagné has not argued that they were injured in his motion to dismiss. Rather, the question is whether *someone* suffered an injury as a result of SFC's securities fraud, and the answer to that question is, unquestionably, "yes." Indeed, the Court need look no further than it own docket – to the very existence of the multiple SFC-related litigations pending before the Court – to conclude that SFC's securities fraud scheme caused injury.

Royal's contention that the investors were not injured because they were made whole by a guarantor of the loan pools would be of no relevance even if Royal had pled those facts in its Amended Complaint (it has not). The PSLRA bar applies whenever *someone* may have an actionable securities fraud claim under the facts pled by the plaintiff. *See Hemispherx Biopharma, Inc. v. Asensio*, No. 98-5204, 1999 U.S. Dist. LEXIS 2849, at *14 (E.D. Pa. Mar. 15, 1999) (finding that PSLRA required dismissal of RICO claim when someone could bring

securities fraud claim based on the alleged conduct). Thus, whether or not an investor who purchased the securities backed by student loans has a claim is irrelevant so long as the conduct alleged is actionable as securities fraud by *someone*. *See Howard v. America Online, Inc.*, 208 F.3d 741, 749 (9th Cir. 2000), *cert. denied*, 531 U.S. 828 (2000) (holding that PSLRA bars recovery as long as the "***claims implicate*** 'conduct that would have been actionable as [securities] fraud . . . .'") (emphasis added).

Assuming for the sake of argument that the investors were made whole by MBIA (a fact that Royal does not allege), the conduct that Royal alleges still would be actionable as securities fraud, thus barring Royal's RICO claims. It is clear that the investors were injured by the failure of SFC, and the fact that they may have been subsequently compensated for those injuries by a guarantor does not mean that the investors were not injured in the first place. When a guarantor compensates an injured investor, the guarantor acquires the investor's rights to compensation for his injuries; under the scenario set out in Royal's briefs (but not in its Amended Complaint), MBIA would be a subrogee standing in the shoes of the investor, and would have the right to assert a securities fraud claim under Rule 10b-5. *See Musick, Peeler & Garrett v. Employers Ins*, 508 U.S. 286 (1993) (subrogee can bring action against others liable for securities fraud). Once MBIA performed on its financial guaranty, it was thereafter subrogated to the rights of the investors, and if it had thought there was any credence in the allegations in Royal's Amended Complaint, could have brought a securities fraud claim based on those allegations. *See Musick*, 508 U.S. at 289 ("Subrogated to the rights of their insureds, respondents brought this lawsuit seeking contribution from petitioners, who were attorneys and accountants involved in the public offering.").

In sum, Royal has pled the purchase and sale of securities (*see* Am. Compl. ¶¶ 138 & 170), has also pled that SFC and the other defendants committed fraud with respect to the purchase and sale of those securities (*see* Am. Compl. ¶¶ 82-83), and finally has pled that Gagné transmitted allegedly fraudulent PPM's to investors in connection with the sale of those securities

5

(*see* Am. Compl. ¶81). The conduct alleged, if fraudulent, is actionable as securities fraud and the language of the PSLRA is dispositive: "no person may rely upon any conduct ***that would have been actionable*** as fraud in the purchase or sale of securities to establish a violation of Section 1962." Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (1995). The complaint here unquestionably alleges facts that would have been actionable as securities fraud, and for that reason, the bar of the PSLRA applies.

## II. THE ALLEGATIONS IN ROYAL'S AMENDED COMPLAINT ESTABLISH THAT ITS PURPORTED RICO ENTERPRISE HAS NO EXISTENCE SEPARATE AND APART FROM THE ALLEGED PATTERN OF RACKETEERING ACTIVITY.

"It is an essential element of the RICO cause of action that the 'enterprise' be apart from the underlying pattern of racketeering activity." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 787-88 (3d Cir.), *cert. denied*, 469 U.S. 1211 (1985); *see also Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 349 (S.D.N.Y. 1998) ("The enterprise cannot simply be the minimal association which surrounds the pattern of racketeering acts. In other words, the members of the group as a whole must have a common link other than the racketeering activity.").[2] Courts have identified three reasons why an alleged association-in-fact RICO enterprise must have a separate existence apart from the alleged pattern of racketeering activity. *See Chang v. Chen*, 80 F.3d 1293, 1298-99 (9th Cir. 1996) (collecting cases). First, as a matter of

---

[2] In attempting to defeat Gagné's motion to dismiss for failure to plead a RICO enterprise, Royal relies on what it refers to as a low pleading standard. *See* Royal Br. at 70-71. Royal fails to address the well-settled standard, whether characterized as "low" or not, in the Third Circuit that dismissal is proper where the allegations affirmatively negate the requirement that an enterprise be separate and apart from the alleged pattern of racketeering activity. *See Seville Indus. Mach. Corp.*, 742 F.2d at 790 n.5 (noting that motion to dismiss properly granted when allegations amount to conspiracy not RICO enterprise); *Dianese, Inc. v. Commonwealth of Pennsylvania*, No. 01-CV-2520, 2002 U.S. Dist. LEXIS 10917 (E.D. Pa. June 19, 2002) (dismissing RICO claim when claim of separateness negated by allegations of complaint). While Royal *could have* alleged the mere existence of an enterprise that was separate from the pattern of activity, it did more than that. Royal affirmatively described the enterprise in a fashion that negates the separateness requirement. Royal must live with its own allegations.

6

statutory interpretation, the alleged enterprise must have a separate existence from the pattern of racketeering activity, or the enterprise element would be superfluous and "every 'pattern of racketeering activity' would become an 'enterprise' whose affairs are conducted through the 'pattern of racketeering activity.'" *Id.* (citing *Allington v. Carpenter*, 619 F. Supp. 474, 479 (C.D. Cal. 1985)). Second, without the separateness requirement, RICO would be stripped of its focus on the special dangers presented by "the organizational nexus at the heart of the RICO scheme." *Chang*, 80 F.3d at 1298. Third, without the separateness requirement, proof of a simple conspiracy would suffice, thereby making § 1962(d), as a matter of statutory interpretation, an untenable "proscription of conspiracies to conspire." *Id.* Allegations of a conspiracy cannot satisfy the enterprise requirement because to do so would create "a danger of guilt by association." *See United States v. Bledsoe*, 674 F.2d 647, 664 (8th Cir.), *cert denied*, 459 U.S. 1040 (1982). Moreover, if conspiracy allegations alone could satisfy the federal standard under the RICO statute, garden variety state law conspiracies based on alleged fraud might be absorbed into the civil RICO territory, thereby vastly increasing, and diluting, the reach of the civil RICO statute.

To circumvent the difficulty presented by Gagné's argument, Royal says that it alleged in its Amended Complaint that SFC's business had a legitimate component, but in fact it has not. Royal asserts that it has "alleged that the normal business of the enterprise, the legitimate legal and financial advice given to SFC for legitimate loans – even though those loans were dwarfed by the fraudulent loans – was different from the acts of racketeering perpetrated by the RICO persons." Royal Br. at 72 (citing Am. Comp. ¶¶ 141-52; 153-66). But *nowhere* in the paragraphs Royal cites does its Amended Complaint identify any "legitimate" activities of the alleged enterprise. On the contrary, Royal flatly asserts in the opening paragraph of its Amended Complaint that "SFC was never a legitimate student loan financing business." Am. Compl. ¶ 1. Nowhere in its Amended Complaint does Royal draw any distinction between the enterprise it is attempting to create – SFC, Pepper, Freed, and McGladrey – and the activities of the RICO

7

persons it has accused – Yao, Hawthorne, Gagné and Aquino – and for that reason, if for no other, its RICO count must be dismissed.

### III. ROYAL'S OPPOSITION BRIEF HIGHLIGHTS ITS INABILITY TO PLEAD OR OTHERWISE ESTABLISH THAT GAGNÉ TOOK PART IN THE OPERATION OR MANAGEMENT OF THE ALLEGED ENTERPRISE.

Under the specific RICO requirements enunciated by the United States Supreme Court in 1993, Royal must show that Gagné, as an outside professional providing services to a client, had some part in directing the affairs of and participating in the operation or management of the alleged enterprise. *See Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993).

In its memorandum Royal attempts to recast the Supreme Court's test as dependent on whether a "nexus" between the RICO person and the affairs of the enterprise exists. Royal Br. at 73. The *Reves* test is not as easy to satisfy as Royal would have the Court believe. The Court of Appeals for the Third Circuit added this proviso to the "nexus" language quoted by Royal: "In other words, the person must knowingly engage in 'directing the enterprise's affairs' through a pattern of racketeering activity." *Univ. of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) (granting motion to dismiss based on *Reves*) (citing *Reves*, 507 U.S. at 183).[3]

---

[3] The primary case relied upon by Royal, *United States v. Parise*, 159 F.3d 790 (3d Cir. 1998), is factually distinguishable from the present case. To begin with, that was a criminal prosecution, and for a majority of the time involved in that case, the defendant was in an official position within the purported RICO enterprise. *See id.* at 797 ("Through his official position, he maintained and expanded his role in operating the NMU Enterprise."). Therefore, *Reves'* mandate as to outside professionals did not even apply to that portion of the criminal charges. As to that period of time before the defendant ascended to an official position of power, it was clear that he already was engaged in an unofficial position of control and power within the alleged enterprise. *See id.* The defendant was integral to the enterprise's scheme to funnel personal injury cases to a specific law firm, and, in fact, he traveled throughout the country to pay off union officials and inform them of the scheme. *See id.* The court had no problem concluding that the defendant played a "role in directing the affairs" of the enterprise as required by *Reves*. *See id.*

Although Royal alleges that Gagné acted as SFC's "de-facto in-house counsel," in-house counsel does not by definition direct the affairs of and participate in the operation and control of the company he works for; even if Gagné had been "de facto in-house counsel," specific allegations of management and control still would be required. *See Biofeedtrac, Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*, 832 F. Supp. 585, 590-91 (E.D.N.Y. 1993) (denying RICO liability even where RICO enterprise was attorney's sole client and lawyer served as officer and director of alleged enterprise). Here, Royal does not even assert generally, let alone specifically, that Gagné directed the affairs of the enterprise.

Indeed, Royal's Amended Complaint is devoid of any such allegations. Royal alleges, upon information and belief, that Gagné was present at a meeting where an SFC officer told Royal that "a high number of delinquencies was caused by students making advance payments of their loans prior to graduation." Am. Compl. ¶ 58. Royal further alleges that Gagné issued knowingly false and misleading Private Placement Memoranda ("PPM"). *See* Am. Compl. ¶ 74.[4] It is hard to see how Gagné's alleged attendance at a meeting where he allegedly remained silent as his client communicated a now-apparent falsehood could rise to the level of operation or management, under any version of that test, let alone the strict standard imposed by *Reves* and *Peat Marwick*. *See Peat, Marwick*, 996 F.2d at 1539; *see also Fidelity Fed. Sav. & Loan Ass'n v. Felicetti*, 830 F. Supp. 257, 260 (E.D. Pa. 1993) ("[E]ven where the wrongdoers provide misleading or fraudulent information which significantly influences a major decision of the enterprise, this still does not constitute 'operation or management' of the enterprise in order for 1962(c) liability to attach."). Moreover, the preparation of the allegedly fraudulent PPM's constituted the rendering of professional services, not the sort of decision-making that is required in order to satisfy *Reves*. *Peat, Marwick*, 996 F.2d at 1539 ("Simply because one provides goods

---

[4] The remaining allegations as to Gagné all attempt to establish simply that he had knowledge of SFC's alleged fraudulent scheme. *See, e.g.*, Am. Compl. ¶¶ 6, 42, 74-80.

9

or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result.").

Royal attempts to distinguish the extensive case law mounted against it by arguing that in those cases, the outside professional could not have operated or managed the enterprise because either the professional did not know of the alleged fraudulent activity engaged in by the enterprise, or the professional's firm was not pled as part of a RICO enterprise. *See* Royal Br. at 73. This is not true. First, in the *Reves* decision itself, the accounting firm was alleged to have knowingly prepared misleading financial reports and to have ignored evidence bringing into question the statements present in those reports. *Reves*, 507 U.S. at 186; *see also Peat Marwick*, 996 F.2d at 1538-39 (even though Peat Marwick "ignored numerous signs of Mutual Fire's precarious financial condition," court still found that its participation did not satisfy operation or management test); *Reynolds v. Condon*, 908 F. Supp. 1494, 1530-31 (N.D. Iowa 1995) ("Simply by alleging that an attorney or partner in a law firm acted on behalf of a client, whether the means used were fair or foul, and that in doing so, the attorney or partner in the firm used the facilities of the firm, does not allege that the attorney has conducted the affairs of the law firm in which she is a partner through racketeering activity."); *Gilmore v. Berg,* 820 F. Supp. 179, 183 (D.N.J. 1993) ("The preparation by [the lawyer and accountant] of allegedly misleading opinion and forecast letters merely constituted the rendition of professional services to Berg and the corporate entities he controlled."). Therefore, the case law does not support Royal's assertion that mere knowledge of the alleged fraudulent activity would satisfy the operation or management test.

Second, contrary to Royal's position, in many of the cases cited by Gagné in his initial brief, the law firm *had* been named as part of the alleged RICO enterprise. *Schuylkill Skyport Inn, Inc. v. Rich*, No. 95-3128, 1996 U.S. Dist. LEXIS 12655 (E.D. Pa. Aug. 20, 1996) (finding no operation or management on part of corporate attorney where corporation was named defendant and alleged part of RICO enterprise); *Reynolds*, 908 F. Supp. at 1499 ("The gravamen

10

of the RICO claim is that the Law Firm is a RICO 'enterprise,' and that defendants . . . conducted that enterprise . . . ."). Moreover, none of the remaining cases place any importance on whether the accountant's or lawyer's firm is a named member of the RICO enterprise.

In any event, Royal cannot escape the fact that Gagné and Pepper were outside professionals providing services to their client, within the meaning of *Reves*. Neither the length of Gagné's and Pepper's representation of SFC (*see* Am. Compl. ¶ 72), nor the allegation that some of Gagné's family members loaned money to SFC (*see* Am. Compl. ¶ 73), changes that fact. Regardless of whether Pepper is named as part of the enterprise, Royal must plead facts that establish that Gagné took part in the operation or management of the alleged racketeering enterprise. Royal's failure to plead such facts requires dismissal of its RICO claims.

## IV.  ROYAL CANNOT MAINTAIN ITS RICO CONSPIRACY COUNT AGAINST GAGNÉ.

The United States Supreme Court has expressly held that a plaintiff may only bring a claim for conspiracy under § 1962(d) if the plaintiff has pled that the injury was caused by an act of racketeering as defined by 1961(1). *Beck v. Prupis*, 529 U.S. 494, 505 (2000) ("[An] injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO . . . is not sufficient to give rise to a cause of action . . . for violation of 1962(d)."). In order for Gagné to be liable under § 1962(d), Royal must show that *at least one* of the RICO defendants violated RICO's substantive provisions – §§ 1962(a), (b) or (c). *Breslin v. Brainard*, No. 01-CA-7269, 2003 U.S. Dist. LEXIS 19609, at *38-46 (E.D. Pa. Oct. 10, 2003). Apart from predicate acts barred by the PSLRA, no such substantive violations have been pled.

Royal relies on *Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001) in support of its argument to the contrary. *Smith* was clear, however, that the plaintiffs must plead a substantive RICO violation by at least one of the RICO defendants. *See Smith*, 247 F.3d at 537 (issue decided by court was whether "a RICO conspiracy defendant need not himself commit or agree to commit predicate acts."); *Breslin*, 2003 U.S. Dist. LEXIS 19609, at *40. We have shown that the

only predicate acts alleged as to Gagné are barred by the PSLRA. As discussed above, Royal's allegations of predicate acts amount to conduct that is actionable as securities fraud and therefore barred by the PSLRA. Moreover, giving credence to Royal's new, and un-pled claim of insurance fraud does not help – such conduct is not a racketeering activity as defined in § 1961(1).

## CONCLUSION

For the foregoing reasons, the Defendant Gagné respectfully requests that this Court dismiss plaintiff's Amended Complaint.[5]

Dated: August 16, 2005
Wilmington, Delaware

*/s/ Donna L. Culver*
William H. Sudell, Jr., Esq. (No. 0463)
Donna L. Culver (No. 2983)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
(302) 658-3989 (facsimile)

*Counsel for Defendant W. Roderick Gagné*

OF COUNSEL:

SCHNADER HARRISON SEGAL & LEWIS LLP
Elizabeth K. Ainslie, Esq.
Nicholas J. LePore, III, Esq.
Theresa E. Loscalzo, Esq.
Bruce P. Merenstein, Esq.
Stephen J. Shapiro, Esq.
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
(215) 751-2000
(215) 751-2205 (facsimile)

---

[5] Gagné incorporates and adopts all arguments made in the reply brief filed by defendant Pepper Hamilton LLP in support of his motion to dismiss Royal's state law tort claims against him.