# EXHIBIT A

LEXSEE 2003 U.S. DIST. LEXIS 19609

**MICHAEL T. BRESLIN, Plaintiff v. NORTON BRAINARD, et. al., Defendants.**

**NO. 0l–CA–7269**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*2003 U.S. Dist. LEXIS 19609*

**October 10, 2003, Decided**
**October 14, 2003, Filed, Entered**

**SUBSEQUENT HISTORY:** Reconsideration denied by *Breslin v. Brainard, 2004 U.S. Dist. LEXIS 8594 (E.D. Pa., May 7, 2004)*
Affirmed by *Breslin v. Brainard, 2005 U.S. App. LEXIS 5661 (3d Cir. Pa., Apr. 7, 2005)*

**PRIOR HISTORY:** *Breslin v. Brainard, 2003 U.S. Dist. LEXIS 18147 (E.D. Pa., Sept. 15, 2003)*

**DISPOSITION:** [*1] Defendants' motions for partial summary judgment granted. Claims dismissed.

**LexisNexis(R) Headnotes**

**COUNSEL:** For MICHAEL T. BRESLIN, Plaintiff: JOHN F. INNELLI, LEAD ATTORNEY, MEDIA, PA.

For MICHAEL T. BRESLIN, Plaintiff: MICHAEL J. MOLDER, LEAD ATTORNEY, INNELLI AND MOLDER, PHILADELPHIA, PA.

For NORTON BRAINARD, WILLIAM OSWALD, CHARLES ARGEROS, SEAN HEIM, PAUL VANDERWOUDE, LEO REILLY, Defendants: SAMUEL L. SPEAR, LEAD ATTORNEY, SPEAR WILDERMAN BORISH ENDY SPEAR [*2] & RUNCKEL, PHILADELPHIA, PA.

For GERALD MCNAMARA, Defendant: ANDREW C. WHITE, LEAD ATTORNEY, LAW OFFICES OF ANDREW C. WHITE, LLC, CHARLES GILMAN, LEAD ATTORNEY, SILVERMAN & THOMPSON, BALTIMORE, MD.

For JAMES E. SMITH, JR., EDWARD F. KEYSER, JR., JAMES P. HOFFA, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Defendants: SUSAN BOYLE, LEAD ATTORNEY, BAPTISTE AND WILDER P.C., WASHINGTON, DC.

For JAMES E. SMITH, JR., EDWARD F. KEYSER, JR., JAMES P. HOFFA, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Defendants: THOMAS HERMAN KOHN, LEAD ATTORNEY, MARKOWITZ & RICHMAN, PHILADELPHIA, PA.

For EDWARD F. KEYSER, JR., JAMES P. HOFFA, CHARLES ARGEROS, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Defendants: ROBERT M. BAPTISTE, LEAD ATTORNEY, BAPTISTE AND WILDER P.C., WASHINGTON, DC.

For T.D.'S PUB, Respondent: JOHN M. CORCORAN, LEAD ATTORNEY, PHILADELPHIA, PA.

For JOSHUA JOHNSON, Respondent: MICHAEL J. MOLDER, LEAD ATTORNEY, INNELLI AND MOLDER, PHILADELPHIA, PA.

For WILLIAM G. ANDERSON, Respondent: JOHN F. INNELLI, LEAD ATTORNEY, MEDIA, PA.

For JEAN MORRIS, Movant: JOHN F. INNELLI, LEAD ATTORNEY, MEDIA, PA.

**JUDGES:** William H. Yohn, Jr., Judge.

**OPINIONBY:** William H. Yohn, Jr.

**OPINION:**

[*3] **MEMORANDUM AND ORDER**

YOHN, J.

Plaintiff Michael Breslin brings an action against numerous defendants, alleging a deprivation of his federal civil rights under *42 U.S.C. § 1983* (Count I) n1, a state law conspiracy claim (Count II); a

2003 U.S. Dist. LEXIS 19609, *3

substantive violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO") under *18 U.S.C. § 1962(c)* (Count III), and a RICO conspiracy claim under *18 U.S.C. § 1962(d)* (Count IV). The named defendants in Count II include Norton Brainard ("Brainard"), Gerald McNamara ("McNamara"), William Oswald ("Oswald"), James Smith ("Smith"), and Edward F. Keyser ("Keyser"). n2 The named defendants in Count III include Brainard, McNamara, Smith, Keyser, Charles Argeros ("Argeros"), Sean Heim ("Heim"), Paul Vanderwoude ("Vanderwoude") and Leo Reilly ("Reilly"). The named defendants in Count IV include Brainard, McNamara, Oswald, Smith, Keyser, Argeros, Heim, Vanderwoude, Reilly, James P. Hoffa ("Hoffa"), as well as the International Brotherhood of Teamsters.

n1 The court addressed Count I of plaintiff's complaint in a separate memorandum and order. Because none of the named defendants in that count is involved in the pending motions to dismiss, the court's decision as to Count I has no bearing on the outcome of these motions.

[*4]

n2 The plaintiff also named David Knorr ("Knorr") as a defendant in Count II. The court, however, granted summary judgment in Knorr's favor on that count in a separate memorandum and order.

Presently before the court are the following: (1) the motion of defendant McNamara for summary judgment pursuant to *Rule 56(c) of the Federal Rules of Civil Procedure* as to Counts II, III, and IV; (2) the combined motion of defendants Brainard, Reilly, Oswald, Argeros, Heim and Vanderwoude for summary judgment pursuant to *Rule 56(c)* as to Counts II, III, and IV; and (3) the combined motion of defendants IBT, Hoffa, Smith and Keyser for summary judgment pursuant to *Rule 56(c)* as to Counts II, III, and IV.

## BACKGROUND

The instant case involves allegations of a conspiracy among defendants to violate the substantive and conspiracy provisions of the civil RICO statute and the state's civil conspiracy law. The plaintiff, a union member, asserts that defendants plotted to harm him after he refused to support an opposition candidate during a battle for control of a local [*5] union. The undisputed facts of record are forth below; where a fact is in dispute, the court will recite the plaintiff's version. n3

n3 On a motion for summary judgment, where a fact is in dispute, the court must apply the non-moving party's version as true. See *infra* Standard of Review.

At all times relevant, plaintiff was serving parole as the result of a state court conviction for aggravated assault. (Depo. of Michael Breslin at 36) n4; Def. Knorr's Mot. for Summ. J., Exh. 2, at 1 (Pa. Commw. Ct. Opinion). n5 One of the conditions of parole was that plaintiff "refrain from any assaultive behavior." Def. Knorr's Mot. for Summ. J., Exh. 4, Knorr Exh. 1, at 1 (form entitled "Conditions Governing Parole/Reparole"); *see also* Def. Knorr's Mot. for Summ. J., Exh. 1, at 6 (Depo. of Michael Breslin). The "Conditions Governing Parole/Reparole" form contained other conditions, including that plaintiff "not leave the district [of Philadelphia] without prior written permission of the parole supervision staff" [*6] and that plaintiff "refrain from owning or possessing any firearms or other weapons." Def. Knorr's Mot. for Summ. J., Exh. 4, Knorr Exh. 1, at 1 (form entitled "Conditions Governing Parole/Reparole"). Furthermore, in consideration of being granted the privilege of parole, plaintiff "expressly consent[ed] to the search of [his] person, property and residence, without a warrant by agents of the Pennsylvania Board of Probation and Parole." *Id.* "Any items, in the possession of which constitutes a violation of parole/reparole shall be subject to seizure, and may be used as evidence in the parole revocation process." *Id.*

n4 Where a reference to the record is titled "Depo. of    " that deposition can be found in a document labeled "Deposition References" and attached to Doc. 118.

n5 He was also on supervised release at the time resulting from a separate federal offense.

Upon release from prison, plaintiff joined the Teamsters Local 115 as a member on February 28, 1999, and began working for the [*7] Huff Paper Co. on August 30, 1999. Pl.'s Opp. to Def.'s Joint Stmt. of Mat. Facts, n6 at P 6. When plaintiff joined Local 115, Johnny Morris ("Morris") was the Secretary–Treasurer and principal officer of the local. *Id.* P 7. Plaintiff, however, alleges that efforts were underway to oust Morris from certain leadership positions. Amend. Compl. at P 19. More specifically, plaintiff alleges that certain individuals within the local union struck a deal with Hoffa, the president of the International Brotherhood of Teamsters ("IBT"). *Id.* Under the arrangement, if Hoffa imposed an emergency trusteeship on Local 115, and thus enabled local union members and officers to oust Morris from his leadership

2003 U.S. Dist. LEXIS 19609, *7

positions, then Hoffa would be allowed to fill vacancies on the Philadelphia Regional Port Authority, the IBT Joint Council 53, and the IBT Pennsylvania Council with "his people." *Id.* Plaintiff was informed of the arrangement between Hoffa and certain union members shortly after he joined the union in February 1999. *Id.* He was asked to support the imposition of the emergency trusteeship, but declined to do so. *Id.* at PP 19, 20. Plaintiff's refusal to offer his support, however, [*8] did not thwart the plan. On November 15, 1999, the IBT imposed an emergency trusteeship on Local 115 and removed Johnny Morris from his position as Secretary-Treasurer and principal officer. Pl.'s Opp. to Def.'s Joint Stmt. of Mat. Facts, at P 7.

n6 In the document entitled "Joint Statement of Material Facts Not in Dispute of Defendants Brainard, Oswald, Argeros, Heim, Vanderwoude, Reilly, IBT, Hoffa, Smith and Keyser," the defendants present their summary of the relevant facts. In response, plaintiff filed a document entitled "Plaintiff's Opposition to the Joint Statement of Material Facts Not in Dispute of Defendants Brainard, Oswald, Argeros, Heim, Vanderwoude, Reilly, IBT, Hoffa, Smith and Keyser." In that document, plaintiff offers statement by statement admissions or denials to the facts presented by the defendants. For the sake of clarity and simplicity, the court will use this document in any instance where the plaintiff admits to the facts as presented by defendants.

One week after the change in leadership, [*9] on November 22, 1999, Heim, Argeros, Vanderwoude, and Reilly went to the Huff Paper Co., where plaintiff worked, to tell members about the trusteeship and to hand out papers. (Depo. of Michael Breslin at 143-144); Def.'s Joint Stmt. of Mat. Facts, at P 13 (stating that on November 22, 1999, Heim, Argeros, Vanderwoude, and Reilly went to the Huff Paper Co. to tell members about the trusteeship and to hand out papers). In response, the Huff Paper employees, including plaintiff, voiced their opposition to the trusteeship. Pl.'s Opp. to Def.'s Joint Stmt. of Mat. Facts, at P 13. Plaintiff and others told them: "Hey, we don't want you's down here. We don't want nothing to do with you. As far as we're concerned, what has happened is wrong." (Depo. of Michael Breslin at 144). Plaintiff alleges that Argeros responded by informing the Local 115 members who supported Morris that if they did not co-operate with the new IBT leadership they would "not get any representation whatsoever." Amend. Compl. at P 22. In addition, plaintiff alleges that Heim told Paul Bruhns, the grandson of Morris: "your grandfather f—up some

friends of mine, I been waiting a long time to f—you up." *Id.*

Two days [*10] later, on November 24, 1999, plaintiff and six other Local 115 members filed a grievance at the Local 115 Union Hall based on the above conduct. Pl.'s Opp. to Def.'s Joint Stmt. of Mat. Facts, at P 14. They presented their grievance to Smith, Brainard and a union attorney. *Id.* One week later, on December 1, 1999, plaintiff and two other Local 115 union members went to the Union Hall to ask Smith what was being done about the grievance they had filed on November 24, 1999. *Id.* at P 16. They were told by Smith that nothing further would be done with regard to their grievance. *Id.*.

On March 13, 2000, in response to the preceding events, plaintiff filed charges with the National Labor Relations Board ("NLRB"). Pl.'s Opp. to Def.'s Joint Stmt. of Mat. Facts, at P 17. The charges asserted that threats not to represent Huff Paper employees and a threat of bodily harm were made on November 22, 1999. *Id.* At the end of April 2000, plaintiff was told that the NLRB wanted plaintiff to appear in its office on May 5, 2000 at 9:00 a.m. to give a sworn statement in connection with the charges he had filed on March 13, 2000. Doc. 135, at 21.

After the trusteeship was imposed, plaintiff [*11] and others began demonstrating outside the local union hall. (Depo. of Michael Breslin at 85-86); Amend. Compl. at P 27. During the spring, the demonstrators and officers of the trusteeship would often yell at each other through a wire fence. (Video tapes). Plaintiff even admits making certain statements to Brainard: "I know where you go to church and I am going to come up there and visit you." Def. Knorr's Mot. for Summ. J., Exh. 1, at 21 (Depo. of Michael Breslin). He also admits telling Brainard: "I hope [your daughter] doesn't become a lying scumbag lawyer like you." Def. Knorr's Mot. for Summ. J., Exh. 1, at 11. (Depo. of Michael Breslin). In addition, plaintiff admits saying to McNamara: "How's [your daughter] doing?" and "I had [your daughter] when she was good." Def. Knorr's Mot. for Summ. J., Exh. 1, at 20-21 (Depo. of Michael Breslin).

As noted earlier, plaintiff was on federal supervised release and state parole for the time over which these events took place. Knowing that plaintiff was on supervised release and parole and believing that plaintiff was engaging in behavior in violation of such status, Brainard and McNamara sent several letters to plaintiff's federal [*12] probation officer. Pl. Exh. 22, Brainard Exh. 1, 2, 4, 5, 6 (letters to plaintiff's federal probation officer and the United States Attorney for the Eastern District of Pennsylvania from Brainard and McNamara). Those letters described Brainard and McNamara's concern for the

safety of their family members based on the statements made to them by plaintiff. Pl. Exh. 22, Brainard Exh. 1, 2, 4, 5, 6 (letters to plaintiff's federal probation officer and the United States Attorney for the Eastern District of Pennsylvania from Brainard and McNamara); Pl. Exh. 2, at 114-115 (Depo. of Norton Brainard) (admitting contacting plaintiff's federal probation officer to discuss his belief that plaintiff's conduct on the picket line outside the union hall was assaultive, and admitting sending letters to plaintiff's federal probation officer); Def. Knorr's Mot. for Summ. J., Exh. 4, at 45-46 (Depo. of David Knorr) (stating that he received telephone call from Brainard in which Brainard told Knorr his belief that plaintiff's conduct on the picket line outside the union hall was assaultive).

On May 3, 2000, plaintiff attended his regularly scheduled meeting with his federal probation officer, Magdelyn [*13] Baez ("Baez"). Amend. Compl. at P 31. At the meeting, Baez informed plaintiff that Brainard sent her a videotape of him on the picket line and that Brainard claimed that this behavior was a violation of plaintiff's federal supervised release. Id. Although Baez told plaintiff that she did not believe that plaintiff had violated the terms of his federal supervised release by picketing, she did caution him to be careful about what he said and did on the picket line. Id. She also stated to plaintiff that Brainard and McNamara had been seeking his arrest for the past six months. Id.

Also on May 3, 2000, plaintiff's state parole officer, Knorr, received information that plaintiff was harassing and threatening certain members of the union trusteeship. Knorr received a phone call from Brainard on May 3, 2000. Pl.'s Opp. to Def. Knorr's Stmt. of Mat. Facts, P 10 (plaintiff's acceptance of Knorr's version of facts). While the content of the conversation is in dispute, both sides agree that whatever was said caused Knorr to come to the Local 115 Union Hall on the following day. Pl.'s Opp. to Def. Knorr's Stmt. of Mat. Facts, P 15 (plaintiff's acceptance of Knorr's version of facts). [*14]

On May 4, 2000, Knorr came to the Local 115 Union Hall. He observed Breslin on the picket line and while it is undisputed that Breslin was engaged in the picket line on that day, Pl.'s Opp. to Def. Knorr's Stmt. of Mat. Facts, P 16 (plaintiff's acceptance of Knorr's version of facts), any characterization of Breslin's activities, either as threatening or assaultive or innocuous, is in dispute. Knorr then went into the union hall where he met with Brainard and Keyser as well as other members of the union trusteeship leadership group. Amend. Compl. P 32. While there, Knorr viewed a videotape of Breslin and others on the picket/demonstration line. Id. He then told Brainard and McNamara to prepare affidavits describing their complaints against Breslin. Id.

Later that afternoon, Knorr received and reviewed the affidavits of Brainard and McNamara. Def. Knorr's Mot. for Summ. J., Exh. 4, at 74 (Depo. of David Knorr); Def.'s Knorr's Stmt. of Mat. Facts, at P 22 (stating that Knorr received via fax the written affidavits of Brainard and McNamara); Pl.'s Opp. to Def. Knorr's Stmt. of Mat. Facts, P 22 (disputing when Knorr received McNamara's affidavit but stating that Knorr did have [*15] possession of the affidavit when he left the union hall); Pl.'s Memo. in Opp. to Def. Knorr's Mot. for Summ. J., at 6 (stating that Knorr "received affidavits prepared by Brainard and signed by Brainard and McNamara)." n7 Later that same day, May 4, 2000, Knorr left a citation at plaintiff's home directing him to appear at Knorr's office on the following day, May 5, 2000, which also happened to be the day that plaintiff was scheduled to provide testimony at the NLRB meeting. Amend. Compl. at P 32.

n7 It is undisputed that Knorr received the affidavits. While plaintiff contests the timing of the preparation and delivery of one of the affidavits, Pl.'s Opp. to Def. Knorr's Stmt. of Mat. Facts, P 22 (asserting that Brainard prepared McNamara's affidavit while Knorr waited and that Knorr took the affidavit with him when he left the union hall), such a dispute is not material to the resolution of whether the content of the affidavits provided Knorr with reasonable suspicion to believe that plaintiff had violated a condition of his parole.

[*16]

When plaintiff arrived at Knorr's office on May 5, 2000, he was arrested and put in a holding cell. Id. at P 33. Approximately ten minutes after plaintiff was placed in the holding cell, Knorr arrived and said. "You don't have a clue why I'm arresting you ... *** Because you are a f — goon and thug for Johnny Morris and you're a – is going to jail." Id. at P 34; Def. Knorr's Answer to Pl.'s Amend. Compl. at P 34. While plaintiff was in the holding cell, Knorr searched plaintiff's car. Id. at P 35. During that search, three utility knives and a cell phone were found. Id. At 2:00 p.m., Knorr and four parole officers took plaintiff to his home where they conducted a search of his house. Id. at P 36. Nothing was found during the search of plaintiff's home. Id. Plaintiff was then sent to Graterford Prison, where he remained for one week while Knorr prepared the parole violation charges against him. Id. at P 37. As a result of his re-incarceration, plaintiff lost his job with the Huff Paper Co. Amend. Compl. at P 40.

Plaintiff was subsequently charged with four violations of his state parole. Id. More specifically, he was charged with violation of the [*17] following condi-

2003 U.S. Dist. LEXIS 19609, *17

tions: (1) leaving the district of Philadelphia without the prior written permission of the parole supervision staff (Condition 1 n8 ); (2) owning or possessing any firearms or other weapons (Condition 5B); (3) engaging in assaultive behavior (Condition 5C); and (4) possessing a cell phone (Condition 7). Def. Knorr's Mot. for Summ. J., Exh. 3 (form entitled "Notice of Charges and Hearing") (attached to end of parole revocation hearing transcript).

> n8 The term "Condition      " refers to the conditions listed on the form entitled Conditions Governing Parole/Reparole. Def. Knorr's Mot. for Summ. J., Exh. 4 (Depo. of Knorr), Knorr Exh. 1, at 1 (form entitled "Conditions Governing Parole/Reparole").

Upon being informed of the charges, plaintiff requested a full parole panel hearing, which was granted and set for June 6, 2000. Amend. Compl. at P 38; *see also* Def. Knorr's Mot. for Summ. J., Exh. 3 (transcript of parole revocation hearing). Shortly before the hearing date, an additional count [*18]  was added to the charge that plaintiff had violated Condition 5C by engaging in assaultive behavior. Def. Knorr's Mot. for Summ. J., Exh. 3 (form entitled "Notice of Charges and Hearing Amended") (attached to end of parole revocation hearing transcript). The count was based on an allegation by William Oswald ("Oswald"), a member of Local 115, that plaintiff had threatened and harassed Oswald at work. *Id.;* Amend. Compl. at P 38.

At the June 6, 2000 parole hearing, Knorr offered the testimony of Brainard, McNamara and Oswald in support of the charge that plaintiff engaged in assaultive behavior. *Id.* at P 39. n9 Knorr also offered his own testimony and documentary evidence in support of the other charges against plaintiff. Def. Knorr's Mot. for Summ. J., Exh. 3 (transcript of parole revocation hearing). Plaintiff, who was represented by counsel, had the opportunity to cross-examine Knorr's witnesses and to present his case, which included testifying on his own behalf and calling several witnesses. Def. Knorr's Mot. for Summ. J., Exh. 3 (transcript of parole revocation hearing). After allowing each side to present its case, and upon review of the evidence presented, the Pennsylvania [*19] Board of Probation and Parole concluded that plaintiff had violated the conditions of his parole by: (1) leaving the district of Philadelphia without the prior written permission of the parole supervision staff (Condition 1); (2) owning or possessing any firearms or other weapons (Condition 5B); (3) engaging in assaultive behavior (Condition 5C); and (4) possessing a cell phone (Condition 7). Def. Knorr's Mot. for Summ. J., Exh. 2, at 1 (Pa. Commw. Ct. Opinion). The Board revoked plaintiff's parole and recommitted him for

one year and twenty-nine days. Def. Knorr's Mot. for Summ. J., Exh 2, at 1, 2 (Pa. Commw. Ct. Opinion). Plaintiff then filed a petition for administrative relief from the Board's decision, which the Board denied. *Id.* at 2. Upon denial, plaintiff filed a petition for review with the Commonwealth Court of Pennsylvania, which affirmed the Board's decision. *Id.* at 2, 11.

> n9 In his response to plaintiff's amended complaint, Knorr appears to admit that Oswald provided false testimony at the hearing. Amend. Compl. at P40; Def. Knorr's Answer to Pl.'s Amend. Compl. at P40. There is nothing in the record, however, to confirm this admission.

[*20]

While the above events were occurring, other developments were taking place in the court system. On November 18, 1999, John Morris and others filed a complaint in the United States District Court for the Eastern District of Pennsylvania challenging the emergency trusteeship. *Morris v. Hoffa,* 2001 1231741, at *1 (E.D. Pa. Oct. 12, 2001). On December 28, 1999, the court granted the plaintiff's motion for a preliminary injunction to enjoin the defendants from exercising the emergency trusteeship. *Id.* Two days later, on December 30, 1999, the Third Circuit stayed the injunction order pending appeal. *Id.* During the pendency of the appeal, the IBT conducted internal hearings during January, February and March of 2000, and based on those hearings, the president of the international union, Hoffa, issued a decision to continue the trusteeship. *Id.* n10 On June 12, 2000, the Third Circuit dismissed the appeal as moot and vacated the preliminary injunction order. *Id.* Defendants in the matter then filed a motion for summary judgment. *Id.* While the motion was pending, the international union conducted elections for officers of Local 115. *Id.* In the election, the membership [*21]  had the opportunity to nominate candidates and vote in a secret ballot election. Pl.'s Opp. to Def.'s Joint Stmt. of Mat. Facts, at P 10. As a result of that election, Smith was elected Secretary-Treasurer and Business Manager and Argeros was elected Trustee. *Id.* After the election, on June 13, 2001, the international union dissolved the trusteeship. *Morris, 2001 U.S. Dist. LEXIS 16692, 2001 WL 1231741, at *1.* Finally, on October 12, 2001, the district court refused Morris' request to overturn the trusteeship, holding that the post-hearing trusteeship "meets the requirements" of federal law and is entitled to a presumption of validity. *Id. 2001 U.S. Dist. LEXIS 16692, at * 6.*

> n10 These hearings were held in order to meet the IBT's requirements for imposing an emergency

2003 U.S. Dist. LEXIS 19609, *21

trusteeship. *Id.* P 26. During the pendency of these hearings, plaintiff and other Local 115 members, believing the trusteeship was imposed for inappropriate reasons and that the IBT hearings were "a kangaroo court," picketed outside the Local 115 Union Hall. *Id.* P 27.

[*22]

Based on the aforementioned events, on December 31, 2001, the plaintiff in the instant case, Breslin, filed a complaint against the defendants. On November 1, 2002, the court, upon defendants' various motions to dismiss pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure*, dismissed plaintiff's substantive and conspiracy claims under the RICO statute without prejudice to plaintiff's right to file an amended complaint and directed plaintiff to submit a RICO Case Statement Plaintiff filed an amended complaint on November 25, 2002. In it, plaintiff alleges that the defendants violated *§§ 1962(c) and 1962(d)* of the civil RICO statute as well as the state civil conspiracy law. Presently before the court are the defendants' motions for summary judgment pursuant to *Rule 56(c)* as to Counts II, III and IV of plaintiff's complaint.

## STANDARD OF REVIEW

Either party to a lawsuit may file a motion for summary judgment, and it will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving [*23] party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. "Facts that could alter the outcome are "material", and disputes are "genuine" if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 743 (3d Cir. 1996)* (citation omitted).

While the moving party bears the initial burden of showing that there is no genuine issue of material fact, *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*, *Rule 56(c)* "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," *Id. at 322*.

When a court evaluates a motion for summary judgment, "the evidence of the non-movant is to be believed." *Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*. Additionally, "all justifiable [*24] inferences are to be drawn in [the non-movant's] favor." *Id.* Moreover, "'summary judgment may

not be granted ... if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed.'" *Ideal Dairy, 90 F.3d at 744* (citation omitted). At the same time, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990)*. The nonmovant must show more than "the mere existence of a scintilla of evidence" for elements on which he bears the burden of production. *Anderson, 477 U.S. at 252*. Thus, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)* (citations omitted).

## DISCUSSION

### I. *18 U.S.C. § 1962(c)* Claim (Count III)

Count III of plaintiff's complaint alleges a civil cause of [*25] action under *§ 1962(c) of the RICO statute*. Amend. Compl at P 55–59. That section prohibits any person employed by or associated with an enterprise engaged in interstate commerce from conducting or participating in the affairs of the enterprise through a pattern of racketeering activity. *Tabas, 47 F.3d 1280, 1289*.

Plaintiff asserts that he suffered injury to the extent that he lost his job at the Huff Paper Co. and suffered the loss of a corruption-free union. "The RICO statute defines a 'pattern' of racketeering activity as requiring 'at least two acts of racketeering activity within a ten year period. *Id. at 1290* (citing *18 U.S.C. § 1961(5)*). Courts have since coined the two acts of racketeering activity the "predicate acts." In the instant case, plaintiff alleges that defendants committed the predicate acts of (1) witness tampering in violation of *18 U.S.C. § 1512(b)(3)*, and (2) attempted extortion in violation *18 U.S.C. § 1951(b)(2)*. Amend. Compl. at PP 57 and 58; Rico Case Stmt. at P 2. n11 "Racketeering activity," n12 as defined in the statute, includes both witness tampering [*26] and extortion.

> n11 Before assessing the validity of plaintiff's *§ 1962(c)* claim, the court notes that it will not treat plaintiff's mention of certain conduct in violation of *18 U.S.C. § 2341-2346* (relating to the illegal trafficking of contraband cigarettes) or *18 U.S.C. § 1955* (relating to the operation of an illegal gambling business) as predicate acts for purposes of his claim under *§ 1962(c)*. The court comes to this conclusion for several reasons.
>
> First, plaintiff did not initially pled these acts as predicate acts in his amended complaint. When

describing his claim under *18 U.S.C. § 1962(c)*, plaintiff listed only the witness tampering and extortion acts as predicate acts. Amend. Compl. at PP 57, 58. There was no mention of the illegal trafficking in contraband cigarettes or the operation of an illegal gambling business under Count III of the amended complaint. Amend Compl. at PP 55–59. Rather, the only mention of the cigarette and gambling acts is in plaintiff's Rico Case Statement and that mention does not make it clear that plaintiff is asserting these acts as predicate acts for purposes of his *§ 1962(c)* claim. When asked to described the predicate acts underlying his claim, plaintiff states "the predicate acts as they relate to plaintiff include witness intimidation and economic coercion," which the court assumes to be a reference to *18 U.S.C. § 1512* (relating to witness tampering) and *18 U.S.C. § 1951* (relating to extortion). Rico. Case Stmt. at 11. In describing the predicate acts of witness tampering and extortion, plaintiff mentions for the first time the cigarette and gambling acts:

> The purpose of these predicate acts [meaning the witness tampering and extortion acts] was to ensure plaintiff would not reveal the existence of the pre–Local 115 trusteeship agreement, the existence of which would cast into doubt the validity of the "emergency" trusteeship and possibly lead to the discovery of the predicate acts of trafficking in contraband cigarettes, in violation of *18 U.S.C. § 2341–2346*, operating illegal gambling businesses, in violation of *18 U.S.C. § 1955*, and submitting false claims to the Local 115 health and welfare fund, in violation of *18 U.S.C. § 664*.

Rico Case Stmt. at 11. Thus, the court finds that plaintiff never expressly listed the cigarette and gambling act violations as predicate acts in his amended complaint or RICO Case Statement.

There is a second problem with plaintiff's attempt to identify the cigarette and gambling violations as predicate acts. He offers no evidence that such acts in any way caused his injury. In order for a plaintiff to demonstrate a compensable injury under RICO, he must prove a causal connection between his injury and the criminal RICO violations — the predicate acts. *Sedima v. Imrex Co., 473 U.S. 479, 497, 87 L. Ed. 2d 346, 105 S. Ct. 3275 (1985)*. In other words, the act which allegedly caused the in-

jury to the plaintiff must itself be an overt act of racketeering that RICO defines as wrongful. *Beck v. Prupis, 529 U.S. 494, 505, 146 L. Ed. 2d 561, 120 S. Ct. 1608 (2000)*. It follows, therefore, that if a plaintiff cannot demonstrate a causal nexus between the predicate acts and his injury, he lacks standing to sue under RICO for that act. *Kramer v. Bachan Aerospace Corp., 912 F.2d 151, 154 (6th Cir. 1990)*.

In his amended complaint, plaintiff alleges that the defendants' RICO violations caused injury to the extent that he lost his job at the Huff Paper Co. Rico Case Stmt. at p15. Plaintiff has not, however, alleged nor can any reasonable inferences be drawn from the facts presented that violations of either the cigarette or gambling statutes caused plaintiff to lose his job. There is simply no basis upon which these two acts may be linked to the subsequent loss of plaintiff's job with the Huff Paper Co. Even the most generous reading of the record does not allow a reasonable inference that the decision of the Huff Paper Co. to terminate plaintiff's employment was caused by the acts of some of the defendants who allegedly engaged in cigarette trafficking and illegal gambling. Nor does plaintiff offer any facts in support of an allegation that these acts caused him to lose his job. Because plaintiff cannot demonstrate a causal nexus between the defendants' conduct in allegedly violating the cigarette and gambling statutes and the loss of his job, the court finds that plaintiff lacks standing to sue under RICO for these acts. *Kramer v. Bachan Aerospace Corp., 912 F.2d 151, 154 (6th Cir. 1990)*.

[*27]

n12 "Racketeering activity," as defined in the statute, includes "any act which is indictable under ... *section 1512* (relating to tampering with a witness, victim, or an informant) [and] ... *section 1951* (relating to interference with commerce, robbery, or extortion)." *18 U.S.C. § 1961(1)(B)*.

In order to prove a pattern of racketeering activity, a plaintiff must show more than the mere existence of the two predicate acts. *H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 237, 106 L. Ed. 2d 195, 109 S. Ct. 2893*, (noting that Congress intended showing of a pattern of racketeering activity to have a more stringent requirement than proof simply of two predicates acts). In addition, a plaintiff "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc., 492 U.S. at 239*. The

courts subsequently labeled these requirements the relatedness and continuity prongs. As the defendants assert that plaintiff is unable to satisfy either prong, the court will address each one separately.

**A. Relatedness**

Under the relatedness [*28] prong, "predicate acts are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Tabas, 47 F.3d at 1292* (quoting *H.J. Inc., 492 U.S. at 240*).

Moving defendants argue that Breslin's alleged predicate acts, extortion and tampering with a federal witness, are not related because each act involves different defendants. Doc. 118, at 26. Plaintiff's response is that all of the acts occurred at the direction of defendant Smith. Doc. 134. at 6–7. Although only two of the factors were in the plaintiff's favor, namely that the acts seemed to target the same victim and both acts were arguably aimed at preventing union members and plaintiff specifically from exercising their rights to challenge the trusteeship, the court finds this sufficient to satisfy the relatedness requirement. It is certainly reasonable to infer that the acts of Argeros, Heim, Vanderwoude and Reilly to threaten plaintiff had the same underlying purpose as the acts of Brainard and McNamara to have plaintiff arrested. Both predicate acts were [*29] intended for a similar purpose – to scare plaintiff into submission so that the transition in Local 115's leadership would be unchallenged.

**B. Continuity**

Under the continuity prong, a plaintiff must show that the "predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity." *H.J. Inc., 492 U.S. at 240*. In describing the concept, the Court offered the following description:

'Continuity' is both a closed-and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. It is, in either case, centrally a temporal concept—and particularly so in the RICO context, where *what* must be continuous, RICO's predicate acts or offenses, and the *relationship* these predicates must bear one to another, are distinct requirements.

*H.J. Inc., 492 U.S. at 241* (citation omitted). From this description, courts have further developed the concepts

of closed-and open-ended continuity.

1. Closed-ended Continuity

A party may establish continuity as a closed-ended concept [*30] by "proving a series of related predicates extending over a *substantial* period of time." *Tabas, 47 F.3d at 1292* (citing *H.J. Inc., at 242*). Although the Supreme Court has not explicitly defined what length of time qualifies as "substantial," it has stated that "predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." *H.J. Inc., at 241*. Moreover, the Third Circuit has held that "conduct lasting no more than twelve months does not meet the standard for closed-ended continuity." *Tabas, 47 F.3d at 1293* (citing numerous Third Circuit cases for same proposition) (citations omitted). n13

n13 Plaintiff does not contest the law as stated herein with reference to continuity, but rather belatedly adds the allegations of cigarette trafficking and illegal gambling to attempt to extend the period of time.

Defendants assert that plaintiff cannot [*31] establish the concept of closed-ended continuity as the acts alleged by plaintiff occurred over the course of less than six months, from November 22, 1999 (date of the alleged attempted extortion act at the Huff Paper Co.) until May 5, 2000 (date of the culmination of the alleged witness tampering act). Doc. 118, at 26; Doc. 119, at 20. Plaintiff asserts that the record shows predicate acts began in 1995 and continued through 2001. Doc. 134, at 6. Plaintiff makes this statement, however, in reliance on the conduct constituting the violations of the cigarette and gambling statutes, which allegedly first began in 1995. Pl. Exh. 12, at P 1–4 (aff. of Arlene Johnson). His reliance on these acts, however, is misplaced as the court has already decided that these acts do not constitute predicate acts for the purposes of plaintiff's *§ 1962(c)* claim. *See supra* pp. 16–17.

Thus, considering only the acts of attempted extortion and witness tampering, it is clear that the time between the acts was less than one year. There is no dispute that the alleged extortion conduct occurred on November 22, 1999. Pl. Exh. 17, at 54–59 (Depo. of Michael Breslin) (asserting that Argeros, Heim, Vanderwoude [*32] and Reilly went to Huff Paper Co. on November 22, 1999); Defs.' Joint Stmt. of Mat. Facts Not in Dispute (admitting that Argeros, Heim, Vanderwoude and Reilly went to Huff Paper Co. on November 22, 1999). Nor is there any dispute that the conduct constituting a violation of

2003 U.S. Dist. LEXIS 19609, *32

the witness tampering statute started in early 2000 and concluded on May 5, 2000 with the arrest of plaintiff for a violation of the conditions of his parole. Pl. Exh. 22, Brainard Exh. 1, 2, 4, 5, 6 (letters to plaintiff's federal parole officer and the United States Attorney for the Eastern District of Pennsylvania seeking to having plaintiff arrested); Pl. Exh. 2, at 114–115 (Depo. of Norton Brainard) (admitting contacting plaintiff's federal parole officer to discuss his belief that plaintiff's conduct on the picket line outside the union hall was assaultive, and admitting sending letters to plaintiff's federal parole officer); Def. Knorr's Mot. for Summ. J., Exh. 4, at 45–46 (Depo. of David Knorr) (stating that he received telephone call from Brainard in which Brainard told Knorr his belief that plaintiff's conduct on the picket line outside the union hall was assaultive). There are [*33] no additional assertions or factual evidence indicating that any other acts occurred beyond this time frame. Thus, the period of time across which the predicate acts occurred constituted only a six-month period of time. As noted previously, the Third Circuit has repeatedly held that acts occurring during a time period of less than a one year period are insufficient to qualify for purposes of closed-ended continuity under RICO. *Tabas, 47 F.3d at 1293* (suggesting that the period must be at least one year). Accordingly, the court concludes that plaintiff does not satisfy the requirements of closed-ended continuity, and thus plaintiff's only possible argument to save his claim under *§ 1962(c)* is that open-ended continuity exists.

2. Open-Ended Continuity

Noting that "often a RICO action will be brought before continuity can be established in [a closed-ended] way," the Supreme Court stated that "in such cases, liability depends on whether the *threat* of continuity is demonstrated." *H.J. Inc., at 241.* The open-ended concept of continuity refers to "conduct that by its very nature projects into the future with a threat of repetition." *Tabas, 47 F.3d at 1292;* [*34] *see also H.J. Inc., at 242* (noting that the continuity prong may still be met if a plaintiff can prove a threat of continued racketeering activity). "Whether the predicate acts constitute a threat of continued racketeering activity depends on 'the specific facts of each case.'" *Tabas, 47 F.3d at 1296* (quoting *H.J. Inc., at 242*). "Open-ended continuity may be satisfied 'where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business ... or of conducting or participating in an ongoing and legitimate RICO "enterprise."'" *Tabas, 47 F.3d at 1296* (quoting *H.J. Inc., at 242–3*).

Defendants assert plaintiff is unable to satisfy the requirements of open-ended continuity. Doc. 118, at 27; Doc. 119, at 20. Believing that he has satisfied the re-

quirements of closed-ended continuity, plaintiff provides no argument as to whether open-ended continuity exists. He suggests no allegations or supporting evidence in the record from which to conclude that there was a threat of repeated criminal conduct. The conduct constituting a violation of the witness tampering statute ceased upon plaintiff's arrest on May 5, 2000. Nor [*35] does plaintiff assert that it has continued. The alleged violation of *18 U.S.C. § 1512(b)(1)* related only to plaintiff's role as a witness in a May 5, 2000 NLRB hearing and there are no allegations that plaintiff continues to be or intends to be a witness in any further NLRB hearing or other federal proceeding. Moreover, plaintiff's NLRB complaint, for which he was supposed to testify, has been resolved in favor of the defendants and against plaintiff. Pl. Exh. 22, Brainard Exh. 15 (letter from NLRB to plaintiff stating that the charge filed by plaintiff on March 13, 2000 "lacks merit" and thus will not be pursued by the NLRB). Thus, the court simply cannot find a basis in plaintiff's pleading or the record for the argument that defendants intended to interfere with his ability to act as a federal witness in the future and plaintiff has asserted none. Likewise, there is no assertion or evidence that the conduct constituting the attempted extortion occurred after November 22, 2000. Moreover, considering that the alleged purpose of both acts, the witness tampering and the extortion, was to ensure that the change in leadership of Local 115 went smoothly and without [*36] challenge, it is simply illogical to infer that the named defendants' racketeering activities continue to this day, given that the validity of the trusteeship is no longer in question. n14

> n14 The complaint fails to mention that on December 30, 1999, two days after the preliminary injunction was issued, the Third Circuit stayed the injunction order pending appeal, and that on June 12, 2000, the Third Circuit dismissed the appeal as moot and vacated the preliminary injunction order. *Morris v. Hoffa, 2001 U.S. Dist. LEXIS 16692, 2001 WL 1231741 (E.D. Pa. Oct. 12, 2001).* The trusteeship was dissolved by IBT on June 13, 2001 and on October 12, 2001, the District Court refused Morris' request to overturn the trusteeship, holding that the post-hearing trusteeship "meets the requirements" of the federal law and is entitled to a presumption of validity. *Id. 2001 U.S. Dist. LEXIS 16692, at *6.*

Nor does plaintiff make any assertions or point to any evidence in the record from which the court could conclude that witness tampering and extortion are a regular [*37] way of conducting the defendants' ongoing legitimate businesses or of conducting or participating in an ongoing and legitimate RICO enterprise. Plaintiff made

no allegation that racketeering activity, in the form of witness tampering or extortion, was currently occurring at the enterprise.

Rather, the predicate acts alleged by plaintiff were part of a single-victim, single-injury, short-lived scheme with a distinct and finite purpose and no threat of continuation. *See Tarr v. Credit Suisse Asset Management, Inc., 958 F. Supp. 785, 800 (E.D.N.Y. 1997)* ("[A] series of predicate acts that, together, constitute a single scheme to accomplish 'one discrete goal' and are 'directed at one individual with no potential to extend to other persons or entities' does not satisfy the continuity requirement where there is no genuine threat of continuing illegal activity.") (citations omitted). Once achieved, the scheme would necessarily come to an end. Having failed to meet either test of continuity, plaintiff cannot support his claim that defendants engaged in the requisite pattern of racketeering activity. As such, the court will grant summary judgment in favor of the defendants [*38] as to claim stated in Count III of plaintiff's amended complaint under *§ 1962(c)*. n15

> n15 Defendants provided numerous other challenges to plaintiff's substantive RICO claim under *§ 1962(c)* in their motions for summary judgment. Because plaintiff failed to establish sufficient evidence to support the continuity element, the court finds it unnecessary to address the defendants' additional arguments or to parse the evidence as to each defendant. However, I do note that a number of these additional arguments have considerable force.

## II. *18 U.S.C. § 1962(d)* (Count IV)

In Count IV of his amended complaint, plaintiff asserts a claim under *§ 1962(d)* which states "it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

Plaintiff cites *Salinas v. United States, 522 U.S. 52, 139 L. Ed. 2d 352, 118 S. Ct. 469 (1997)* and *Smith v. Berg, 247 F.3d 532 (3d Cir. 2001)* for the proposition [*39] that a plaintiff may still bring a claim under *§ 1962(d)* absent any claim under one of the substantive provisions of the statute, *§ 1962(a), (b) or (c)*. The cases plaintiff cites do not support this conclusion because they do not reach the issue of whether substantive violations are required for a conspiracy claim under *§ 1962(d)*. n16

> n16 Rather than supporting plaintiff's proposition, the cases stand for the rule that an individual

defendant need not be found liable under one of the substantive provisions in order for that same defendant to be found liable for conspiracy under *§ 1962(d)*. The courts did not address the question whether there must be a violation of one of the substantive provisions by someone; they simply held that a particular defendant need not have violated the substantive provision in order to be liable himself or herself under the conspiracy provision so long as some other defendant is liable under the substantive provision. Thus, a plaintiff could bring a claim against defendant X for violating one of the statute's substantive provisions in Count I of his complaint, and could still bring a claim against defendants X and Y for conspiring to violate that substantive provision, in violation of *§ 1962(d)* under Count II of his complaint without naming defendant Y in Count I. However, in order to prevail on his conspiracy claim against defendant Y, plaintiff must still prove that defendant X violated one of the statute's substantive provisions.

A detailed review of the facts in the cases proves this to be true. In *Salinas*, the initial complaint was brought against Salinas and another defendant named Marmolejo; it alleged that Salinas and Marmolejo violated *§ 1962(c)* and *§ 1962(d)*. *United States v. Marmolejo, 89 F.3d 1185, 1187 (5th Cir. 1996)* (recounting the facts of the case). The jury convicted Marmolejo of violating both *§ 1962(c)* and *§ 1962(d)* but it convicted Salinas only for violating *§ 1962(c)*. *Id.* Salinas appealed his conviction, and eventually reached the Supreme Court which held that a defendant need not personally commit the two predicate acts of racketeering activity required by *§ 1962(c)* in order to be held liable for conspiracy under *§ 1962(d)*. In its opinion, the Court specifically noted that only the conviction of Salinas was before it and that Marmolejo had been convicted of violating one of the substantive provisions. *Salinas, 522 U.S. at 56, 66.* Thus, because there was a conviction of a defendant under one of the substantive provisions of the statute, this opinion cannot stand for the proposition that a *§ 1962(d)* conspiracy claim can be brought without any substantive claim at all.

Similarly, in *Berg*, there was a substantive RICO violation. The district court denied defendant's motion to dismiss plaintiff's claim pursuant to *§ 1962(c)*, and thus allowed that claim to go forward. *Smith v. Berg, 247 F.3d 532, 2000 WL 365949*, at * 2 (E.D. Pa. Apr. 10, 2000). The court identified the issue presented as whether "a RICO conspiracy defendant need not *himself commit* or

2003 U.S. Dist. LEXIS 19609, *39

agree to commit predicate acts." *Berg, 247 F.3d at 537* (emphasis added). Moreover, in describing the standard set forth in *Salinas,* the court stated:

> The plain implication of the standard set forth in Salinas is that one who opts into or participates in a conspiracy is liable for the acts of his co-conspirators which violate *section 1962(c)* even if the defendant did not personally agree to do, or to conspire with respect to, *any* particular element.

*Id.* (footnote omitted) (underlined emphasis added). As such, when the case reached the Third Circuit, there was a pending claim under one of the statute's substantive provisions, making it improbable, if not impossible, for the case to stand for the proposition that a plaintiff may still bring a claim under *§ 1962(d)* absent any viable claim against anyone under either *§§ 1962(a), (b) or (c).*

[*40]

Language from the Third Circuit initially suggested that a *§ 1962* substantive violation is a prerequisite for stating a conspiracy claim. In *Kehr Packages,* the Third Circuit stated without further analysis that "because we hold that plaintiffs did not state a valid claim under *§ 1962(c)* ... we need not consider whether the dependent *§ 1962(d)* claim has been properly alleged." *Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1411 n. 1 (3d Cir. 1991).* The court also noted briefly in *Lightning Lube* that "any claim under *section 1962(d)* based on a conspiracy to violate the other subsections of *section 1962* necessarily must fail if the substantive claims are themselves deficient." *Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993).* These statements have been cited repeatedly verbatim by our district courts for the proposition that a conspiracy count cannot stand without successfully bringing a claim under one of the *§ 1962* substantive provisions. *See e.g., Nanya-Nashut ex rel. Hand v. BankOne, 2003 U.S. Dist. LEXIS 15653 at *15; Dianese, Inc. v. Pennsylvania, 2002 U.S. Dist. LEXIS 10917* [*41] *at *38; Morris v. First Union Nat'l Bank, 2002 U.S. Dist. LEXIS 418 at *17; Teti v. Towamencin Twp., 2001 U.S. Dist. LEXIS 15600 at *29.*

This language, however, is not dispositive of Breslin's case. In *Rehkop,* the Third Circuit limited the sweep of the language *of Lightning Lube,* when it noted that "the problem in *Lightning Lube* was that "the actions alleged to constitute violations of subsections 1962(a), (b), and (c) were not violations of these subsections." *Rehkop v. Berwick Healthcare Corp., 95 F.3d 285, 290 (3d Cir.*

*1996). The Rehkop* court noted that because the actions alleged in *Lightning Lube* could not constitute a substantive violation, they "failed to serve as the object of a *section 1962(d)* conspiracy." *Id.*

In *Rehkop,* the Third Circuit distinguished the facts before it from those *of Lightning Lube. The Rehkop* court explained that unlike *Lightning Lube,* Rehkop's allegations constituted a substantive violation under *§ 1962(c)* because they alleged one of the specific racketeering acts enumerated in *§ 1961(1)* of the act. However, Rehkop could not pursue such a claim because he could [*42] not show that he was harmed by the *§ 1962(c)* violation. *Id.* Nonetheless, the *Rehkop* court allowed the acts alleged in violation of *§ 1962(c),* which were racketeering acts as defined in the statute, to serve as the object of a *§ 1962(d)* conspiracy claim, and permitted the conspiracy claim to go forward even though the substantive RICO charges had been dismissed. The predicate acts of witness tampering and attempted extortion alleged in *Breslin* do constitute substantive violations of *§ 1962.* Thus, under *Rehkop,* defendants' alleged actions here may also serve as the object of a *§ 1962(d)* conspiracy claim. Even after it has been established that Breslin is unable to bring a successful claim under *§ 1962(c),* the Third Circuit has found that a plaintiff may pursue his conspiracy claim so long as he can show that harm ensued from the conspiracy. *Id.*

After *Rehkop,* the Supreme Court resolved any doubt that even after the dismissal of all substantive claims, a plaintiff may bring a *§ 1962(d)* claim if plaintiff establishes that injury was caused by an act of racketeering under *§ 1961(1). Beck v. Prupis, 529 U.S. 494, 505, 146 L. Ed. 2d 561, 120 S. Ct. 1608 (2000).* [*43] n17 "[An] injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO ... is not sufficient to give rise to a cause of action ... for a violation of *§ 1962(d)." Id.* In *Beck,* the court found that termination of employment was not racketeering activity done in furtherance of respondents' conspiracy. *Id. at 499.* It is not within the statutory definition of racketeering activity at *§ 1961(1).* The Court also found that "a RICO conspiracy plaintiff must allege injury from an act that is analogous to an 'act of tortious character,' ... meaning an act that is independently wrongful under RICO." *Id. at 505.* The court noted that a plaintiff can bring a suit for civil conspiracy "only if he [has] been injured by an act that was itself tortious." n18 *Id. at 501.* Unlike termination of employment, acts of witness tampering and attempted extortion, as alleged by Breslin, are "racketeering acts" under the statute.

N17 In *Beck,* the claims under *1962(a), (b), (c)* had been decided in favor of the defendants and were not at issue.

2003 U.S. Dist. LEXIS 19609, *44

[*44]

n18 The agreement itself is not enough for liability and there must be acts of a tortious character in carrying it into execution.

Thus, where racketeering acts are alleged, the plaintiff may pursue a *§ 1962(d)* conspiracy claim where injury from the acts of racketeering may be shown. This seems to be the case in *Breslin,* where the predicate acts are based on witness tampering and attempted extortion—both violations of the designated predicate acts in the statute.

This, however, does not end our inquiry. The question remains whether plaintiff has met all of the requirements for establishing a *§ 1962(d)* conspiracy count, which makes it unlawful to "conspire to violate any of the provisions of subsections (a), (b) or (c)." As mentioned above, *section 1962(c)* makes it unlawful for certain persons "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a *pattern of racketeering activity." 18 U.S.C. § 1962 (2000)* (emphasis added). Even though a *1962(d)* conspiracy claim is not dependent upon successfully bringing a substantive [*45] claim under *1962(a), (b),* or *(c),* plaintiff's claim still fails because he cannot establish a *pattern* of racketeering activity due to lack of continuity.

"To plead conspiracy adequately, a plaintiff must set forth allegations that address the *period of the conspiracy,* the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Shearin v. E.F. Hutton Group, Inc., 885 F.2d 1162, 1166-67 (3d Cir. 1989)*(emphasis added)(wherein the alleged scheme took place within a two-year time frame). n19 Underlying a *§ 1962(d)* claim is the requirement that plaintiff must show that defendants agreed to the commission of a "pattern of racketeering." *Banks v. Wolk, 918 F.2d 418, 421 (3d Cir. 1990).* Continuity is a necessary element to establish a "pattern" as noted earlier. Because the Third Circuit has repeatedly held that conduct must last over one year to meet the standard for continuity, and the alleged conspiracy and its resulting actions did not, I find that the plaintiff, as discussed *supra* pp.16-21, has not met the continuity requirement.

n19 The Supreme Court did not affect this standard with its decision in *Beck v. Prupis,* which called *Shearin* into question on other grounds. *529 U.S. 494, 146 L. Ed. 2d 561, 120 S. Ct. 1608 (2000).*

[*46]

Thus, even if liability under *§ 1962(d)* is not dependent upon the successful showing of liability under one of the statute's substantive provisions, but only upon the allegation of a predicate act under this statute, the court must reject plaintiff's conspiracy claim pursuant to *§ 1962(d)* because the plaintiff has failed to demonstrate continuity. Accordingly, summary judgment in favor of the defendants will be granted as to Count IV.

### III. State Law Conspiracy Claim (Count II)

In Count II of plaintiff's amended complaint, he asserts a state law claim n20 for civil conspiracy against certain defendants. The court, however, will not reach the merits of this claim because it declines to exercise its supplemental jurisdiction pursuant to *28 U.S.C. § 1367.* Where a court rules against a plaintiff as to his federal claims prior to trial, the court has discretion to dismiss the non-federal claims over which it only has jurisdiction pursuant to the doctrine of supplemental jurisdiction. WILLIAM W. SCHWARZER, A. WALLACE TASHIMA & JAMES M. WAGSTAFFE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL, § 2.91.1 (1999). "The district courts may decline to exercise supplemental [*47] jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction." *28 U.S.C. § 1367(c)(3).* This is precisely the circumstance in the instant case. Here, subject matter jurisdiction rested initially on a federal question pursuant to *28 U.S.C. § 1331,* namely plaintiff's claims under the federal RICO statute. However, as set forth previously, summary judgment in favor of defendants will be granted as to both federal claims, thus removing the federal claims. Thus, because this court has dismissed the claims over which it had original jurisdiction, i.e., plaintiff's federal claims, n21 the court will, in its discretion, decline to exercise supplemental jurisdiction over plaintiff's state law claim. It will be dismissed without prejudice to the right of the plaintiff to bring it in another forum.

n20 The court concludes that this is a state law claim for two reasons. First, because plaintiff labels it as such in his amended complaint. *See* Amend. Compl. at 13 (labeling Count II "As to defendants Brainard, McNamara, Oswald, Smith, Keyser and Knorr For Conspiracy Under Pennsylvania Law"). Second, because the case cited by plaintiff in support of this count — *Progress Federal Savings Bank v. Lenders Assoc., Inc., 1995 U.S. Dist. LEXIS 11149, 1995 WL 464320 (E.D. Pa. Jul. 31, 1995)* — describes a state law civil conspiracy claim and recognizes that its subject matter jurisdiction is based on diversity. *Progress, 1995 U.S. Dist. LEXIS 11149, 1995 WL 464320,* at <*> 3, 4; Doc. 134, at

2003 U.S. Dist. LEXIS 19609, *47

23.

[*48]

n21 No diversity jurisdiction has been alleged nor could it be established as plaintiff and a number of defendants are both located in Pennsylvania. Thus, without the federal claims, the court is without subject matter jurisdiction.

### CONCLUSION

For the reasons set forth above, the court will grant the defendants' motions for summary judgment as to the substantive RICO claim and the conspiracy RICO claim and decline to exercise jurisdiction over the state law civil conspiracy claim. An appropriate order follows.

### ORDER

And now, this 10th day of October, 2003, upon consideration of the combined motion of defendants the International Brotherhood of Teamsters, James Hoffa, Edward Keyser and James Smith for summary judgment as to Counts II, III, and IV pursuant to *Rule 56(c) of the Federal Rules of Civil Procedure* (Doc. 118); the combined motion of defendants Norton Brainard, William Oswald, Charles Argeros, Sean Heim, Paul Vanderwoude, and Leo Reilly for summary judgment as to Counts II, III, and IV pursuant to *Rule 56(c) of the Federal Rules of Civil Procedure* [*49] (Doc. 119); the motion of defendant Gerald McNamara for summary judgment as to Counts II, III, and IV pursuant to *Rule 56(c) of the Federal Rules of Civil Procedure* (Doc. 120); the response of plaintiff thereto; the combined reply thereto of defendants International Brotherhood of Teamsters, James Hoffa, Edward Keyser and James Smith; the combined reply thereto of defendants Norton Brainard, William Oswald, Charles Argeros, Sean Heim, Paul Vanderwoude, and Leo Reilly; and the sur-reply of plaintiff thereto, it is hereby ORDERED that the combined motion of defendants International Brotherhood of Teamsters, James Hoffa, Edward Keyser and James Smith for summary judgment as to Counts III and IV pursuant to *Rule 56(c) of the Federal Rules of Civil Procedure* is GRANTED; that the combined motion of defendants Norton Brainard, William Oswald, Charles Argeros, Sean Heim, Paul Vanderwoude, and Leo Reilly for summary judgment as to Counts III and IV pursuant to *Rule 56(c) of the Federal Rules of Civil Procedure* is GRANTED; and that the motion of defendant Gerald McNamara for [*50] summary judgment as to Counts III and IV pursuant to *Rule 56(c)* is GRANTED and judgment is entered in favor of those defendants on Counts III and IV of the complaint and against plaintiff. It is further ordered that Count II of the complaint is dismissed without prejudice. It is further ordered that the Clerk is directed to mark this case closed for statistical purposes.

William H. Yohn, Jr. Judge