EXHIBIT B

LEXSEE 2002 U.S. DIST. LEXIS 10917

**DIANESE, INC., GAETANO DIANESE, and ROSEMARIE DIANESE, Plaintiffs, v. COMMONWEALTH OF PENNSYLVANIA, et al., Defendants.**

CIVIL ACTION NO. 01–2520

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*2002 U.S. Dist. LEXIS 10917*

**June 19, 2002, Decided**

**DISPOSITION:** Request for leave to amend amended complaint and motion for more definite statement denied. Motions for dismissal of defendants granted, and claims against Manufacturers & Traders Trust Bank Co. and Dryfoos dismissed. Amended complaint dismissed in entirety

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] GAETANO DIANESE, PLAINTIFF, Pro se, HAZLETON, PA USA.

ROSEMARIE DIANESE, PLAINTIFF, Pro se, HAZLETON, PA USA.

For ALBERT G. ALBERT, EDWARD J. ALBERT, GEORGE J. ALBERT, PETITIONERS: JOSEPH G. ALBERT, ALBERT & KAMAGE, FORTY FORT, PA USA.

For THE COMMONWEALTH OF PA, DEPT. OF GENERAL SERVICES, AND ITS OFFICIALS IN THEIR OFFICIAL CAPACITIES, MICHAEL PEAPOS, DAVID MCCARTY, MERLE H. RYAN, STEPHEN J. BUSTERNA, DEFENDANTS: RANDALL J. HENZES, OFFICE OF ATTORNEY GENERAL, PHILA, PA USA.

For MANUFACTURERS & TRADERS TRUST CO., DEFENDANT: DEBRA P. FOURLAS, MC NEES, WALLACE & NURICK, HARRISBURG, PA USA. NEDRIC L. NISSLY, HARRISBURG, PA USA. JAMES P. DEANGELO, MCNEES WALLACE & NURICK, HARRISBURG, PA USA.

For FIRST FEDERAL BANK, DEFENDANT: ANTHONY J. LUCADAMO, KENNEDY & LUCADAMO, PC, HAZLETON, PA USA.

For LAPUTKA, BAYLESS, ECKER & COHN, P.C.,

DEFENDANT: H. ROBERT FIEBACH, COZEN AND O'CONNOR, PHILADELPHIA, PA USA. JENNIFER M. MC HUGH, COZEN & O'CONNOR, PHILA, PA USA.

For VERIZON PENNSYLVANIA INC., MOVANT: LEE C. SWARTZ, HEPFORD, SWARTZ & MORGAN, HARRISBURG, PA USA. STEPHEN M. GREECHER, JR., HEPFORD, SWARTZ, MORGAN, HARRISBURG, PA USA.

For PNC FINANCIAL GROUP, INC. [*2] , (PNC BANK), DEFENDANT: TINA L. COLMAN, WIER & PARTNERS LLP, PHILADELPHIA, PA USA. SUSAN VERBONITZ, WEIR & PARTNERS, LLP, PHILADELPHIA, PA USA.

For NORTHEAST PA. FINANCIAL CORP., DEFENDANT: ANTHONY J. LUCADAMO, KENNEDY & LUCADAMO, PC, HAZLETON, PA USA.

For PARENTE, RANDOLPH ORLANDO, CAREY & ASSOCIATES, PC, DEFENDANT: ROBERT D. SCHAUB, ROSENN, JENKINS & GREENWALD, L.L.P., WILKES-BARRE, PA USA.

For DRYFOOS INSURANCE AGENCY, INC., DEFENDANT: WAYNE PARTENHEIMER, CAMPBELL O'KEEFE NOLAN & DALY, PHILADELPHIA, PA USA.

For BYERLY INSURANCE AGENTS AND BROKERS, INC., CENTRAL PENNSYLVANIA INDEMNITY SERVICES, DEFENDANTS: LORI A. ADAMCIK, MARSHALL & HADDICK, P.C., CAMP HILL, PA USA. CHARLES E. HADDICK, JR., MARSHALL & HADDICK, PC, CAMP HILL, PA USA.

2002 U.S. Dist. LEXIS 10917, *2

For SELECTIVE INSURANCE, SELECTIVE WAY INSURANCE COMPANY, SELECTIVE INSURANCE GROUP, INC., DEFENDANTS: ERIC A. WEISS, MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN, PHILADELPHIA, PA USA.

For MID–STATES SURETY CORP., DEFENDANT: CHARLES E. WASILEFSKI, PETERS & WASLIEFSKI, HARRISBURG, PA USA.

For WASHINGTON INTERNATIONAL SURETY CORP., DEFENDANT: KEVAN F. HIRSCH, KAPLIN STEWART MELOFF REITER & STEIN PC, BLUE BELL, PA USA.

For [*3] BOROUGH OF JIM THORPE, DEFENDANT: ANDREA L. BENNETT, DEVLINE & DEVINE, CONSHOHOCKEN, PA USA.

For PINNACLE ROOFING & SHEET METAL, INC., DEFENDANT: CHARLES A. SHAFFER, KINGSTON, PA USA.

For UNITED STATES OF AMERICA/DEPARTMENT OF THE ARMY @TOBYHANNA ARMY DEPOT, DEFENDANT: JAMES G. SHEEHAN, U.S. ATTORNEY'S OFFICE, PHILA, PA USA. ANNETTA FOSTER GIVHAN, UNITED STATES ATTORNEY'S OFFICE, PHILADELPHIA, PA USA.

**JUDGES:** LOWELL A. REED, JR., S.J.

**OPINIONBY:** LOWELL A. REED, JR.

**OPINION:**

### MEMORANDUM

This action arises out of various contractual disputes involving a number of construction projects. Plaintiffs acting pro se, except for the corporate plaintiff which proceeds without representation and without pro se status, n1 have brought suit against over twenty defendants, including unnamed John Does, asserting claims under the Racketeer Influence and Corrupt Organization ("RICO") Act, *18 U.S.C. §§ 1961* et seq., and federal civil rights statutes, *42 U.S.C. §§ 1981,* 1983, 1985, and 1986. This Court has jurisdiction over the action pursuant to *28 U.S.C. § 1331.* Now before the Court is the motion of Dryfoos Insurance [*4] Agency, Inc. ("Dryfoos") for a more definite statement pursuant to *Federal Rule of Civil Procedure 12(e)* (Doc. No. 13), the motion of Pinnacle Roofing & Sheet Metal, Inc. ("Pinnacle") for summary judgment or in the alternative for dismissal (Doc. No. 23), and the motions for dis-

missal by the following defendants: Selective Insurance, Selective Way Insurance, and Selective Insurance Group (the "Selective Defendants") (Doc. Nos. 14, 91); Byerly Insurance Agents and Brokers, Inc., ("Byerly") and Central Pennsylvania Indemnity ("Central") (Doc. Nos. 16, 17); PNC Financial Group, Inc. ("PNC") (Doc. No. 22); First Federal Bank and Northeast PA Financial ("First Federal") (Doc. No. 24); Mid–States Surety Corp. ("Mid–States") (Doc. Nos. 27, 28); the Borough of Jim Thorpe (Doc. No. 49); the Commonwealth of Pennsylvania, the Department of General Services, Michael Peapos, David McCarty, Merle H. Ryan, and Steven Busterna (Doc. Nos. 50, 94); Laputka Bayless Ecker & Cohn, PC ("Laputka") (Doc. Nos. 58, 73, 78); Washington International Surety Corp. ("Washington") (Doc. No. 74); Parente Rudolph Orlando Carey & Associates ("Parente") (Doc. Nos. 79, 80); the United States, the Department of the Army, [*5] the Tobyhanna Army Depot, Fred Beynon and Alice Fitzgerald (Doc. No. 98); and the responses thereto (Doc. Nos. 219–235) as well as plaintiffs' request for leave to amend as incorporated in their responses. n2 For the reasons set forth below, the request for leave to amend the amended complaint will be denied, the motion for a more definite statement will be denied, the motions for dismissal of the defendants will be granted, and the claims against Manufacturers & Traders Trust Bank Co. ("M&T") and Dryfoos and the amended complaint will be dismissed in their entirety.

n1 See Orders of August 16, 2001 (Doc. No. 84), and April 9, 2002 (Doc. No. 207).

n2 All of the described motions and the plaintiffs' motion to amend are directed toward the amended complaint.

**I. Background** n3

n3 All facts are taken as true from the amended complaint, as required by law.

[*6]

Plaintiff Dianese, Inc. is a contracting corporation that entered into several public works contracts with the Department of General Services ("DGS") of the Commonwealth of Pennsylvania (the "Commonwealth") between 1998 and 2000. Through a number of unresolved disputes that arose over the contracted projects in the Hamburg Center ("Hamburg project") and Eckley Miner's Village ("Eckley project"), plaintiffs have not yet received disputed payments for their com-

2002 U.S. Dist. LEXIS 10917, *6

pleted work. Through alleged misrepresentations by the Commonwealth and plaintiffs' own lawyers' law firm, plaintiffs were persuaded to settle their claims pursued in the Commonwealth grievance process, but have yet to receive the promised settlement funds. Due to the resulting financial difficulties, the plaintiff corporation and its personal guarantors, plaintiffs Gaetano and Rosemarie Dianese, have encountered troubles in satisfying their loans and in paying their creditors. Plaintiffs subsequently had further problems in gaining additional financing, insurance, or performance bonds to secure their operations. In addition, contract disputes similar to those encountered in the Commonwealth projects have arisen in the plaintiffs' [*7] public works contracts with defendants the Borough of Jim Thorpe and the Tobyhanna Army Depot. Plaintiffs allege that the defendants have participated in a conspiracy to bankrupt plaintiffs by withholding contractually owed funds and by creating financial difficulties to prevent plaintiffs from further pursuing the disputed funds. Plaintiffs assert claims under the RICO and federal civil rights statutes against the state and federal government, several officials therein, financial and insurance organizations, creditors, and plaintiff's former law and accounting firms.

Plaintiffs originally filed suit in January 2001 on behalf of Dianese, Inc., its sole shareholder Gaetano Dianese, and his wife Rosemarie Dianese, asserting claims under section 1983 against the Commonwealth and the DGS. See *Dianese, Inc. v. Commonwealth of Pennsylvania, C.A. No. 01-488, 2001 U.S. Dist. LEXIS 11491* (E.D. Pa. April 17, 2001). On March 13, 2001, this Court dismissed the previous action based on the defendants' Eleventh Amendment immunity. Id.

In June 2001, plaintiffs brought this action, adding more defendants and asserting claims under both constitutional tort law as well as the [*8] civil RICO statute. Plaintiffs filed an amended complaint on June 12, 2001. With the exception of defendant M&T who filed an answer to the amended complaint, and defendant Dryfoos who filed a motion for a more definite statement, all of the remaining named defendants filed motions for dismissal. Plaintiffs' response to these motions were considerably delayed as they consistently challenged this Court's orders directing them to retain and utilize counsel for their corporation as required under the federal rules. See *Rowland v. California Men's Colony, 506 U.S. 194, 202, 113 S. Ct. 716, 121 L. Ed. 2d 656 (1993)*. Although counsel for plaintiffs entered an appearance in September 2001, plaintiffs continued both to dispute the legal requirement for counsel to represent Dianese, Inc. and to file papers pro se rather than through their counsel of record. Similarly, plaintiffs persisted in continually and impermissibly removing actions from state court to join this action despite various remand orders instructing plaintiffs as to the proper grounds for removal. Finally, on March 1, 2001, having found that the accumulated meritless pro se filings by plaintiffs constituted [*9] an abuse of the litigation process, the Court was forced to enjoin plaintiffs from filing any further non-responsive papers absent leave of Court. On March 26, 2002, the Court held a hearing to consider the motion of plaintiffs' counsel to withdraw and plaintiffs' request to represent Dianese, Inc. pro se. On April 9, 2002, the Court granted the motion for counsel to withdraw and allowed plaintiffs Gaetano and Rosemarie Dianese to proceed pro se, but determined that Dianese, Inc. did not qualify for an exception to the long-standing rule requiring representation of corporations by attorneys. The Court thus ordered that if plaintiffs could not retain counsel to file responses to the pending motions on behalf of Dianese, Inc., the corporation would go unrepresented. Plaintiffs have failed to do so; consequently, the plaintiff corporation has not responded to the pending motions. The motions to dismiss the claims asserted by the plaintiff corporation thus stand unopposed. Any further reference to plaintiffs herein shall be construed as referring solely to plaintiffs Gaetano and Rosemarie Dianese.

## II. Legal Standard

*Rule 12(b) of the Federal Rules of Civil Procedure* [*10] provides that "the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted." In deciding a motion to dismiss under Rule 12(b)(6), a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. See *Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S. Ct. 1843, 23 L. Ed. 2d 404 (1969)*. Because the Federal Rules of Civil Procedure require only notice pleading, the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)*. A motion to dismiss should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)*. In considering a motion to dismiss, the proper inquiry is not whether a plaintiff will ultimately prevail, but rather whether a plaintiff is permitted to offer evidence to support its claim. See *Children's Seashore House v. Waldman, 197 F.3d 654, 658 (3d Cir. 1999)*, [*11] cert. denied, *530 U.S. 1275, 120 S. Ct. 2742, 147 L. Ed. 2d 1006 (2000)* (quoting *Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)*. The moving party bears the burden of showing that the non-moving party has failed to state a claim for which relief can be granted. See *Gould Elec. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000)*. While all facts in the complaint must be accepted

2002 U.S. Dist. LEXIS 10917, *11

as true, this Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 184 (3d Cir. 2000),* cert. denied, *532 U.S. 1038, 149 L. Ed. 2d 1003, 121 S. Ct. 2000 (2001)* (citations omitted).

This Court is mindful of the fact that pro se complaints are to be construed liberally to afford litigants all reasonable latitude. See *Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972).* Nevertheless, this leniency does not excuse a pro se plaintiff from conforming to the rules of civil procedure or from pleading the essential elements of his claim. [*12] See *Floyd v. Brown & Williamson Tobacco Corp., 159 F. Supp. 2d 823, 832 (E.D. Pa. 2001); Smith v. SSA, 54 F. Supp. 2d 451, 454 (E.D. Pa. 1999).*

## III. Analysis

### A. Motion for Leave to Amend

In addition to their responses and as incorporated therein, plaintiffs Gaetano and Rosemarie Dianese filed a document entitled "New Amended Complaint" (Doc. No. 236, Appendix A) ("New Am. Compl."). The Court construes the submission of the New Amended Complaint as a request for leave to file a second amended complaint. After amending a complaint once or after an answer has been filed, the plaintiff may amend only with leave of court or the written consent of the opposing party, but "leave shall be freely given when justice so requires." *Fed. R. Civ. P. 15(a).* "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)* (citations omitted). "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted. Id. (citing *Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)).* [*13] In assessing "futility," the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6). Id.

Several defendants have argued that granting leave to file the new amended complaint would be futile as it still fails to state a claim for relief. The 116-paged proposed new amended complaint provides 404 paragraphs outlining a detailed, sometimes confusingly circuitous, description of the alleged conspiracy. The proffered new amended complaint provides greater factual specificity to support plaintiffs' claims. Nevertheless, even reading it liberally in favor of the plaintiffs, for the reasons set forth below, I conclude that the new amended complaint would still fail to state a claim upon which relief can be granted. Because I find that further amendment of the amended complaint would be futile, the request of plaintiffs for

leave to amend will be denied.

### B. Motions to Dismiss

#### 1. Jurisdiction

##### a. The Commonwealth Defendants

Plaintiffs have brought suit against the Commonwealth and the DGS, an agency of the Commonwealth (collectively, "the Commonwealth Defendants"). Additionally, they have sued Michael Peapos, Regional Director [*14] of DGS; David McCarty, Director of the Bureau of Construction of the Commonwealth; Merle H. Ryan, Deputy Secretary for Public Works of the Commonwealth; and Steven Busterna, an attorney in the Office of the Chief Counsel for the Commonwealth (collectively, the "State Officers"). The State Officers have all been sued in their official and individual capacity.

The Commonwealth Defendants have moved for dismissal based on the Eleventh Amendment. The Eleventh Amendment bars federal courts from hearing actions by private parties against a state and its agencies. n4 See *Kimel v. Florida Board of Regents, 528 U.S. 62, 120 S. Ct. 631, 643-44, 145 L. Ed. 2d 522 (2000); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 116 S. Ct. 1114, 1122, 134 L. Ed. 2d 252 (1996).* This jurisdictional bar is both a testament to and protection of the sovereignty of each state as balanced against the power of the federal government. As part of the executive branch of the Commonwealth, the DGS is also protected by Eleventh Amendment immunity. See *71 Pa.C.S. § 61; Lavia v. Pennsylvania Dep't of Corrections, 224 F.3d 190, 195 (3d Cir. 2000).* Eleventh Amendment [*15] immunity is subject to two exceptions: congressional abrogation and state waiver. See *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670, 119 S. Ct. 2219, 144 L. Ed. 2d 600 (1999).* Accordingly, unless the Commonwealth has consented to suit or Congress has expressly abrogated Eleventh Amendment immunity in the statutes under which plaintiffs have brought suit, this action is barred as against the Commonwealth and the DGS.

n4 The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Despite this wording, the Amendment has been long been held to immunize states in actions by any private citizen, including their own. See *Alden v. Maine, 527 U.S.*

2002 U.S. Dist. LEXIS 10917, *15

*706, 729, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999).*

The Pennsylvania legislature has made [*16] clear its intent to retain sovereign immunity from suit. See *1 Pa. Cons. Stat. Ann. § 2310; 42 Pa. Cons. Stat. Ann. § 8521.* This immunity has been waived in only a few specific exceptions, none of which apply in this instance. See *42 Pa. Cons. Stat. Ann. § 8522(b).* n5

n5 The Commonwealth has waived sovereign immunity in negligence actions involving: (1) vehicle liability; (2) medical professional liability; (3) care, custody and control of personal property; (4) Commonwealth real estate; (5) potholes and other dangerous conditions; (6) care, custody and control of animals; (7) liquor store sales; (8) National Guard activity; and (9) toxoids and vaccines. *42 Pa.C.S. § 8522(b).*

Plaintiffs argue that this action falls within the exception involving personal property in the care, custody and control of the Commonwealth. See *42 Pa.C.S. § 8522(b)(3).* Nevertheless, for this exception to apply, the personal property must be the cause of the injury. See *Iseley v. Horn, Civ. No. 95-5389, 1996 U.S. Dist. LEXIS 13471* (E.D. Pa. September 3, 1996)(immunity not waived when improper confiscation, not property itself, caused injury); *Sugalski v. Commonwealth, 131 Pa. Commw. 173, 569 A.2d 1017, 1019 (1990)* (immunity not waived when improper handling of property caused injury). In contrast, plaintiffs have alleged that injury was caused by the improper retention of plaintiffs' property, rather than by the property itself. Accordingly, Pennsylvania has not waived its immunity in this action.

[*17]

Nor do the statutes under which plaintiffs have sued provide for suit against the Commonwealth. To abrogate the Eleventh Amendment, Congress must make its intention to do so "unmistakably clear in the language of the statute." *Kimel, 120 S. Ct. at 640.* Congress has not done so in RICO or in any of the federal civil rights statutes under which plaintiffs have brought suit. See *Will v. Michigan Dept. of State Police, 491 U.S. 58, 66, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)* ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); *Boykin v. Bloomsburg Univ. of Pa., 893 F. Supp. 378, 394 (M.D. Pa. 1995)* (no abrogation of sovereign immunity intended in *42 U.S.C.*

*§§ 1981,* 1983, 1985 and 1986), aff'd, *91 F.3d 122 (3d Cir. 1996); Bair v. Krug, 853 F.2d 672, 674–75 (9th Cir. 1988)*(no abrogation of sovereign immunity intended in civil RICO statute); *Gaines v. Texas Tech University, 965 F. Supp. 886 (N.D. Tx. 1997)* [*18] (citing *Bair, 853 F.2d at 674–675); Molina v. New York, 956 F. Supp. 257, 260 (E.D.N.Y. 1995)* (dicta); *McMaster v. Minnesota, 819 F. Supp. 1429, 1434 (D. Minn. 1993),* aff'd *30 F.3d 976 (8th Cir. 1994)).* n6 Because Pennsylvania has not waived its sovereign immunity and Congress expressed no intention of disturbing the states' sovereign immunity in enacting the RICO and federal civil rights statutes, this suit is barred by the Eleventh Amendment as against the Commonwealth and the DGS.

n6 Plaintiffs' reliance on *United States v. Burns, 683 F.2d 1056 (7th Cir. 1982),* involving the federal prosecution of an officer of a state agency for criminal RICO violations, is misplaced. A criminal prosecution by the United States against an individual state officer does not trigger the Eleventh Amendment, which protects states from suit by private citizens.

Plaintiffs have also brought suit against a number of state officers of the Commonwealth [*19] and the DGS in their official capacity. A suit against a state officer in his official capacity for monetary damages is the same as a suit against the state itself; thus, it too is barred by the Eleventh Amendment. See *Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989); Christy v. Pennsylvania Turnpike Comm'n, 54 F.3d 1140, 1143 n. 3 (3d Cir. 1995).* n7 Nevertheless, in their new amended complaint, plaintiffs also name the State Officers in their individual capacity. The Eleventh Amendment does not bar actions for monetary damages against state officers in their individual capacity. See *Hafer v. Melo, 502 U.S. 21, 27–31, 116 L. Ed. 2d 301, 112 S. Ct. 358 (1991).* Accordingly, plaintiffs' claims against the State Officers in their individual capacity are not jurisdictionally barred, but will be analyzed on their merits in the discussion below on the claims asserted.

n7 The Court notes that there is an exception under *Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908),* that allows suit against individual state officers in their official capacity for injunctive relief. Nonetheless, because I conclude that the purported request for injunctive relief would in effect require payment of funds from the state treasury for past violations of federal law in violation of the Eleventh Amendment, see *Edelman v. Jordan, 415*

2002 U.S. Dist. LEXIS 10917, *19

*U.S. 651, 668–69, 39 L. Ed. 2d 662, 94 S. Ct. 1347 (1974)*, and because the claims asserted by plaintiffs against the State Officers are untenable on their merits as discussed below, the Young exception will not save plaintiffs' complaint from dismissal.

[*20]

**b. The Federal Defendants**

Plaintiffs have brought suit against the United States, the Department of the Army, and the Tobyhanna Army Depot ("Tobyhanna") (collectively, the "Federal Defendants"). Additionally, they have sued Fred Beynon, Contract Administrator for Tobyhanna, and Alice Fitzgerald, Contracting Officer for Tobyhanna (collectively, the "Federal Officers"). The Federal Officers have been sued in their official and, as named in the new amended complaint, in their individual capacity.

The Federal Defendants have moved to dismiss the claims against them for lack of subject matter jurisdiction pursuant to *Federal Rule of Civil Procedure 12(b)(1)* and for failure to state a claim pursuant to Rule 12(b)(6). The United States and its agencies are shielded by sovereign immunity from suit, see *United States v. Mitchell, 463 U.S. 206, 211, 103 S. Ct. 2961, 77 L. Ed. 2d 580 (1983)*, but the federal government has provided for a limited waiver of its immunity under certain circumstances pursuant to the Federal Tort Claims Act ("FTCA") and the Tucker Act. *28 U.S.C. § 1346.*

Under the FTCA, the United States has consented to suit in [*21] federal district courts for certain torts committed by its employees. See *28 U.S.C. § 1346*(b) n8; *Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 476–77, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994)*. The FTCA does not waive immunity for all torts, however. To be actionable under the FTCA, the United States must be liable to the claimant, "in accordance with the law of the place where the act or omission occurred." *28 U.S.C. 1346*(b). Courts have construed the phrase "the law of the place" to refer to the law of the state; thus, for liability to arise under the FTCA, the source of substantive liability must be state and not federal law. See *Meyer, 510 U.S. at 477–78; Chen v. United States, 854 F.2d 622, 626 (2d Cir. 1988)*.

> By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right . . . . [The] United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims.

*Meyer, 510 U.S. at 477–78*. Plaintiffs' constitutional tort and civil RICO [*22] claims are based on federal law. I therefore conclude that they are not cognizable under the FTCA.

n8 Specifically, Section 1346(b) states, in relevant part:

> Subject to the provisions of chapter 171 of this title, the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death cause by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Under the Tucker Act, however, this Court has concurrent jurisdiction with the U.S. Court of Federal Claims over claims against the United States not exceeding $10,000, brought pursuant to the Constitution, federal statute or federal regulation. [*23] See *28 U.S.C. § 1346*(a)(2); n9 *Mitchell, 463 U.S. at 211 n. 10*. Original jurisdiction over such claims seeking more than $10,000 vests exclusively in the U.S. Court of Federal Claims. See *Chabal v. Reagan, 822 F.2d 349, 353–54 (3d Cir. 1987); 28 U.S.C. § 1491* (the "Big Tucker Act"). n10 Plaintiffs seek over $10,000 for their claims under the RICO and federal civil rights statutes. Thus, under the Big Tucker Act, jurisdiction over plaintiffs' claims against the Federal Defendants is exclusively within the U.S. Court of Federal Claims, and is therefore outside of this Court's jurisdiction.

n9 Specifically, Section 1346(a)(2) states, in relevant part:

> The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
>
> . . . . (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either

upon the Constitution, or any Act or Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort . . . .

[\*24]

n10 The Claims Court is given "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." *28 U.S.C. § 1491*(a)(1).

I conclude that the federal government has not waived its immunity in this forum against the claims asserted by plaintiffs. I therefore conclude that plaintiffs' claims against defendants the United States, U.S. Army and Tobyhanna, must be dismissed for lack of jurisdiction pursuant to *Federal Rule of Civil Procedure 12(b)(1)*.

Where suit is brought against officers in their official capacity, the real party in interest is the governmental entity; thus the immunities available to the officer are those of the governmental entity. See *Hafer v. Melo, 502 U.S. 21, 25, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991)*. Accordingly, the immunities available to the federal government are available to [\*25] the Federal Officers in their official capacity. I therefore conclude that plaintiffs' claims against Amy Fitzgerald and Fred Beynon in their official capacity must also be dismissed for lack of jurisdiction pursuant to *Federal Rule of Civil Procedure 12(b)(1)*. Nevertheless, as with the State Officers, plaintiffs' claims against the Federal Officers in their individual capacity are not jurisdictionally barred, and will be analyzed on their merits in the following discussion on the claims asserted.

## 2. Claims Asserted

### a. Civil RICO

The RICO statute authorizes civil suits by "any person injured in his business or property by reason of a violation of *[18 U.S.C. § 1962]*." *18 U.S.C. § 1964*(c). Section 1962 contains four separate subsections, each of which address a different problem. See *Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1411 (3d Cir. 1991)*, cert. denied, *501 U.S. 1222, 115 L. Ed. 2d 1007, 111 S. Ct. 2839 (1991)*.

As explained by the Third Circuit Court of Appeals:

Section 1962(a) prohibits "any person who has received any income derived . . . from a pattern of [\*26] racketeering activity" from using that money to acquire, establish or operate any enterprise that affects interstate commerce. Section 1962(b) prohibits any person from acquiring or maintaining an interest in, or controlling any such enterprise "through a pattern of racketeering activity." Section 1962(c) prohibits any person employed by or associated with an enterprise affecting interstate commerce from "conducting or participating . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity." Finally, section 1962(d) prohibits any person from "conspiring to violate any of the provisions of subsections (a), (b), or (c)."

Id. (alterations in original). In the new amended complaint, plaintiffs seek relief under each provision of section 1962; consequently, each will be considered in turn.

### i. Section 1962(a)

Plaintiffs assert section 1962(a) claims against the following defendants: the State and Federal Officers; PNC; First Federal; Dryfoos; Byerly; Central; Mid-States; Washington; Parente; Laputka; Pinnacle; and M&T. (New Am. Compl. at Count XII.) Section 1962(a) provides in relevant part:

It shall be unlawful for any person [\*27] who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise . . . .

*18 U.S.C. § 1962*(a). Under Section 1962(a), a plaintiff must allege that he suffered an injury specifically from the use or investment of income in the named enterprise. See id.; *Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1188 (3d Cir. 1993); Moore v. Reliance Standard Life Ins. Co., C.A. No. 98-4610, 1999 U.S. Dist. LEXIS 6699*, at \*3 (E.D. Pa. May 10, 1999); *Lim v. New York Life Ins. Co., C.A. No. 97-1972, 1998 U.S. Dist. LEXIS 318*, at \*3 (E.D. Pa. Jan. 13, 1998). "This provision was primarily directed at halting the investment of racketeering proceeds

into legitimate business, including the practice of money laundering." *Lightning Lube, 4 F.3d at 1188.* The injury resulting from the use or investment of the racketeering income must be separate from any injury resulting from the [*28] racketeering acts themselves. See id. An allegation that the "use and investment of racketeering income keeps the defendant alive so that it may continue to injure plaintiff [] is insufficient to meet the injury requirement of section 1962(a)." Id.

Plaintiffs here generally allege that all the named defendants diverted the proceeds of the racketeering activity to support a "select group of persons . . . in the [public works] arena while denying that support to the plaintiffs." (New Am. Compl. at Count XII.) Plaintiffs proceed to allege more specifically that the State and Federal Officers used "the public funds at their disposal to invest back in government owned properties, through government contracts which generate income for all participants . . ., furthering the [enterprise's] activities, increasing their control on the market and subsequently enabling the participants to continue to invest that income for the continuation of the cycle." (Id.) Plaintiffs further allege that defendants PNC, First Federal, Dryfoos, Byerly, Central, Mid-States, Washington and Parente committed the section 1962(a) violation by investing their resources to maintain a monopoly over [*29] the public works arena and to further extend their control over the market. (Id.) Finally, plaintiffs allege that Laputka was a co-conspirator as a legal/investment advisor to the enterprise.

Plaintiffs have cited no authority and have made no logical showing that public funds available for public works projects constitute racketeering proceeds. I conclude that they are not. Additionally, the allegations reflect no investment by any of the defendants to acquire an interest in or establish or operate an enterprise, as required under section 1962(a). Finally, the alleged "unfair advantage" enjoyed by the other contractors does not establish the requisite link between any alleged use or investment and the plaintiffs' asserted injury of failing to receive the contractually owed funds or the resulting financial problems with their creditors, insurers, bonds companies and banks. Plaintiffs thus fail to allege an injury resulting from the use or investment of racketeering income as opposed to injury from the alleged racketeering acts themselves. I therefore conclude that even a liberal reading of the allegations set forth in either the amended or new amended complaint fails to show that [*30] plaintiffs have stated a claim for relief under section 1962(a).

### ii. Section 1962(b)

Plaintiffs assert section 1962(b) violations by all of the defendants. Section 1962(b) provides, in relevant part,

"It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise . . . ." *18 U.S.C. § 1962*(b). Thus, section 1962(b) requires a plaintiff to allege that he suffered an injury from the defendant's acquisition or control of an interest in a RICO enterprise. See *Lightning Lube, 4 F.3d at 1190; Moore, 1999 U.S. Dist. LEXIS 6699,* at *3. For example, such an injury occurs when "the owner of an enterprise infiltrated by the defendant as a result of racketeering activities is injured by the defendant's acquisition or control of his enterprise." *Lightning Lube, 4 F.3d at 1190* (citation omitted). The injury must be incurred from the acquisition or control of an interest in the RICO enterprise rather than from the pattern of racketeering. *Id. at 1191.* The plaintiff must also show [*31] that the interest or control of the RICO enterprise by the person resulted from the racketeering. See *id. at 1190.* It is insufficient to merely demonstrate that a person engaged in racketeering has an otherwise legitimate interest in an enterprise. See id. Rather, the plaintiff must firmly show a "nexus between the interest and the alleged racketeering activities." Id.

The amended and new amended complaints herein fail to make such allegations. In support of their assertion of a violation of section 1962(b), plaintiffs make the following allegations: (1) the State Officers, Federal Officers and the Borough of Jim Thorpe "used their official positions to contrive 'contract disputes,' abuse the contract and grievance procedures, harass the plaintiffs and otherwise assure that the plaintiffs suffered grave financial difficulties;" (2) PNC, First Federal and M&T manipulated the financing of public works projects and structured loans to plaintiffs in a way that would enable the RICO enterprise to eliminate them; (3) Parente manipulated the financial statements of plaintiffs to compel them to seek additional financing and thereby "leave them vulnerable" to the RICO [*32] enterprise; (4) Pinnacle maintained an interest in the enterprise by benefitting from the monopoly that the enterprise created; (5) Laputka used its position as legal counsel to plaintiffs in the grievance process to assist the abuse of the system by the Commonwealth Defendants; and (6) Dryfoos, Byerly, Central, the Selective Defendants, Mid-States and Washington used their positions as the insurance and bonding agents to plaintiffs "to either grant or deny bonding lines, bond claim coverage and insurance and insurance claim coverage as well as manipulated [sic] premiums" to leave plaintiffs vulnerable to the RICO enterprise. (New Am. Compl. at Count XIII.)

The allegations simply fail to allege the acquisition or control by any of the defendants of an interest in a RICO enterprise. Nor have plaintiffs pleaded facts from which the Court can reasonably infer such allegation. Moreover,

2002 U.S. Dist. LEXIS 10917, *32

any injury incurred would have resulted from the alleged acts of racketeering, and not from the acquisition or control of an interest in a RICO enterprise. Accordingly, plaintiffs fail to state a claim under section 1962(b) against the defendants.

### iii. Section 1962(c)

Plaintiffs assert claims [*33] under section 1962(c) against the State and Federal Officers, M&T, PNC, First Federal, Parente, Laputka, Dryfoos, Byerly, Central, the Selective Defendants, and Mid-States. Section 1962(c) prohibits persons who are employed by or associated with an enterprise from conducting the enterprise's affairs through a pattern of racketeering. Plaintiffs allege that the named defendants conducted the enterprise's affairs through a pattern of racketeering as follows: (1) Michael Peapos committed at least two predicate acts of extortion and fraud in connection with the Hamburg and Eckley projects; (2) David McMarty committed at least two predicate acts of extortion and mail fraud in connection with the abuse of contract procedures in the Hamburg and Eckley projects; (3) Merle Ryan committed at least two predicate acts of extortion and fraud in connection with the withholding of liquidated damages on the Eckley project and of the settlement funds for the Hamburg project dispute; (4) Stephen Busterna committed at least two predicate acts of extortion and fraud in connection with the settlement agreement for the Hamburg project dispute; (5) M&T, PNC and First Federal each committed at least two predicate [*34] acts of extortion and fraud in connection with the preparation, execution, handling and collection process for plaintiff's loans; (6) Parente committed at least two predicate acts of extortion and fraud in connection with preparation, presentation and mailing of fraudulent financial statements and tax returns in connection with the loans from M&T; (7) Laputka committed at least two predicate acts of extortion and fraud in connection with its representation of plaintiffs in the Commonwealth grievance process and in the presentation of the fraudulent loan documents by M&T and First Federal; (8) Dryfoos committed at least two predicate acts of fraud in connection with the mishandling of insurance claims, over-billing and fraudulent insurance audits; (9) Byerly and Central committed at least two predicate acts of fraud in connection with the bonding line of plaintiffs for the Hamburg project and two other public works projects that were approved and then withdrawn; (10) the Selective Defendants committed at least two predicate acts of fraud in connection with over-billing and fraudulent insurance audits; (11) Mid-States committed at least two predicate acts of extortion and fraud in connection [*35] with invalid bond claims from the Eckley project and the project for the Borough of Jim

Thorpe; (12) Fred Beynon and Alice Fitzgerald committed at least two predicate acts of extortion and fraud in connection with the project at Tobyhanna by withholding funds due and contriving contract disputes by change orders and delays. (New Am. Compl. at Count XI.)

A RICO enterprise is an entity made up of a group of persons associated together for the common purpose of engaging in a course of conduct. See *United States v. Turkette, 452 U.S. 576, 583, 101 S. Ct. 2524, 69 L. Ed. 2d 246 (1981).* To establish the existence of an enterprise, the plaintiffs must demonstrate: (1) that the enterprise is an ongoing organization with some sort of framework or superstructure for making or carrying out decisions; (2) that the members of the enterprise function as a continuing unit with established duties; and (3) that the enterprise must be separate and apart from the pattern of activity in which it engages. See *Seville Industrial Machinery Corp. v. Southmost Machinery Corp. , 742 F.2d 786, 789-90.* Normally, such factors are to be proven at trial, and a bare allegation that the defendants constituted an enterprise is sufficient [*36] for the claim to survive a motion to dismiss. *Id. 742 F.2d at 790.* Plaintiffs here allege that defendants are members of an enterprise that maintains "a monopoly of the area through a closed system of financing, and control of industry, public office and even the legal system, which is used to thwart any development that would not benefit it." (New Am. Compl. at PP 1, 3.) Normally, this bare allegation should suffice for the claim to survive a motion to dismiss, no matter how seemingly implausible.

Nevertheless, it is well settled in RICO law that the alleged racketeering activity complained of by a plaintiff must be separate and distinct from the enterprise itself. See *Turkette, 452 U.S. at 583.* "[A] conspiracy to perform the underlying criminal offense, standing alone, is not sufficient to allege the existence of an enterprise." *Seville, 742 F.2d at 790 n.5.* "It is an essential element of the RICO cause of action that the 'enterprise' be apart from the underlying pattern of racketeering activity." Id. "An enterprise is not merely a conspiracy and it should not be confused with an agreement to commit the alleged racketeering activity. [*37] " *Gates v. Ernst & Young, C.A. No. 93-2332, 1994 U.S. Dist. LEXIS 11456,* at *4 (E.D. Pa. August 15, 1994) (quoting *Hartz v. Friedman, 919 F.2d 469, 471 (7th Cir. 1990)).* Within the new amended complaint, plaintiffs proceed to identify the enterprise as "made up of a group of individuals, associated in fact and not a legal entity, which controls various legal entities for the purpose of carrying out the predicate acts." (New Am. Compl. at P 387.) (emphasis added). The alleged racketeering activities involved the following: withholding fraudulently disputed payments from plaintiffs for public works contracts; forcing plaintiffs to obtain fi-

Case 1:05-cv-00165-JJF     Document 50-3     Filed 08/16/2005     Page 11 of 15

Page 10
2002 U.S. Dist. LEXIS 10917, *37

nancing to complete the projects; fraudulently delaying resolution of the grievance process; and forcing plaintiffs into bankruptcy by demanding payments for the loans. (Id. at PP 329–338.) By their own allegations, plaintiffs have pleaded that the named enterprise is indistinguishable from the alleged conspiracy between the defendants. Accordingly, plaintiffs have failed to allege an enterprise separate from the alleged underlying pattern of racketeering activity. I therefore conclude that plaintiffs fail to [*38] state a claim under section 1962(c).

**iv. Section 1962(d)**

Plaintiffs assert section 1962(d) claims against the Borough of Jim Thorpe, Pinnacle, the Federal Officers, Byerly, Central, the Selective Defendants, Mid-States, PNC, M&T, First Federal, Parent, Laputka, and Dryfoos. To state a claim under section 1962(d), plaintiffs must plead that the defendant: (1) knew of the RICO violations of the enterprise, and (2) agreed to facilitate those activities. See *Smith v. Berg, 247 F.3d 532, 538 (3d Cir. 2001).* The injury must have been caused by the RICO violation, rather than by any act in furtherance of the conspiracy. See *Beck v. Prupis, 529 U.S. 494, 505–507, 146 L. Ed. 2d 561, 120 S. Ct. 1608 (2000).* "Any claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient." *Lightning Lube, 4 F.3d at 1191.* I therefore conclude that because plaintiffs have failed in both the amended and new amended complaint to state a claim under any of the other subsections of section 1962, plaintiffs cannot pursue a claim under [*39] Section 1962(d).

**b. Federal Civil Rights Statutes**

**i. Section 1981**

Section 1981 of the federal civil rights provisions prohibits racial discrimination in the making and enforcement of contracts and property transactions. n11 See *Brown v. Philip Morris, Inc., 250 F.3d 789, 796 (3d Cir. 2001).* To state a claim under section 1981, plaintiffs must allege facts to support the following elements: "(1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts." *Brown, 250 F.3d at 797* (alternations in original) (citation omitted). Accepting as true the facts alleged in the amended and new amended complaints, plaintiffs have failed to state a cause of action pursuant to section 1981. Plaintiffs do not allege to belong to a racial minority. Although plaintiffs creatively claim to "belong to the 'race' of individuals who are ei-

ther unwilling or unwelcome to participate" in the alleged RICO enterprise, (New Am. Compl. at P 366), this attempt to qualify [*40] for protection under the statute clearly fails. Consequently, I conclude that plaintiffs' section 1981 claim will be dismissed.

n11 Section 1981(a) provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

*42 U.S.C. § 1981(a)*

**ii. Section 1983**

Section 1983 provides a remedy for the violation of a federal constitutional or statutory right by a person "acting under color of state law." *42 U.S.C. § 1983.* n12 To state a claim under section 1983, plaintiffs must plead that the allegedly unlawful conduct: (1) was committed by someone acting under color of state law, [*41] and (2) deprived plaintiffs of rights, privileges or immunities protected by the Constitution or federal law. See *Cohen v. City of Philadelphia, 736 F.2d 81, 83 (3d Cir. 1984),* cert. denied, *469 U.S. 1019, 83 L. Ed. 2d 360, 105 S. Ct. 434 (1984).* Nevertheless, "government officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne, 526 U.S. 603, 609, 143 L. Ed. 2d 818, 119 S. Ct. 1692 (1999)* (quoting *Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982)).* Where the defendant in a section 1983 action claims qualified immunity, the court must first determine whether the allegations are sufficient to establish the violation of a federal constitutional right, and if so, whether that right was clearly established at the time of the alleged violation. See id. If the plaintiffs' allegations cannot meet this two-fold threshold inquiry, defendants are entitled [*42] to qualified immunity and dismissal of the case. See *Doe v. Delie, 257 F.3d 309,*

2002 U.S. Dist. LEXIS 10917, *42

*314–15 (3d Cir. 2001).*

> n12 Section 1983 provides, in relevant part:

>> Every person, who under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

> *42 U.S.C. § 1983.*

Plaintiffs claim that the State Officers denied them both procedural and substantive due process in violation of the Fourteenth Amendment by withholding the contractual funds due to plaintiffs and wreaking financial devastation to prevent plaintiffs from pursuing the disputed balance. (New Am. Compl. at PP 367–69.) Because the State Officers assert a qualified [*43] immunity defense, the Court must first determine whether plaintiffs have alleged the violation of a federal constitutional right.

"Procedural" due process defends against arbitrary government action by ensuring that adequate procedures are used when a state action impacts a person's "life, liberty or property" as protected under the 14th Amendment. n13 The Third Circuit Court of Appeals has ruled that there is adequate procedural due process when the state provides "reasonable remedies to rectify a legal error by a local administrative body." *Bello v. Walker, 840 F.2d 1124, 1128 (3d Cir. 1988).* The Pennsylvania Board of Claims has exclusive jurisdiction over contract disputes between Commonwealth agencies and a contractor. See *62 Pa.C.S. § 1701,* et seq. Appeals from decisions by the Board of Claims may be made to the Pennsylvania Commonwealth Court. See *62 Pa.C.S. § 1726; 42 Pa.C.S. § 763(a)(1).* The availability of a "full judicial mechanism with which to challenge the administrative decision in question" provides adequate due process, regardless of whether the plaintiff utilized the appellate procedure. *DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 597* [*44] *(3d Cir.), cert. denied, 516 U.S. 937, 133 L. Ed. 2d 247, 116 S. Ct. 352 (1995)* (internal citation omitted). Thus, although plaintiffs may not have taken advantage of these measures, n14 because Pennsylvania provides a reasonable procedural method to correct any errors by the DGS grievance procedure, I conclude that there was sufficient procedural due process and plaintiffs cannot state a claim for the violation of their procedural due process rights.

> n13 Although it is unclear whether the property interest arising from plaintiffs' state contracts is protectible under procedural due process, see *Reich v. Beharry, 883 F.2d 239, 242–43 (3d Cir. 1989)* ("wholesale federalization of state public contract law" was not purpose of due process clause), the Court need not reach this issue because constitutionally adequate procedures were available. See *DeBlasio, 53 F.3d at 597 n.4* (courts may proceed directly to evaluation of process).

> n14 Plaintiffs allege that they commenced procedures under the Commonwealth's grievance process, but that the State Officers fraudulently persuaded plaintiffs to settle and then failed to pay the settlement offer as promised. (New Am. Compl. at PP 86–101.) They appear to have sought no recourse with the Board of Claims.

[*45]

"Substantive" due process "limits what government may do regardless of the fairness of procedures that it employs, and covers government conduct in both legislative and executive capacities." *Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 399 (3d Cir.), cert. denied, 531 U.S. 1011, 148 L. Ed. 2d 485, 121 S. Ct. 566 (2000)* (citing *County of Sacramento v. Lewis, 523 U.S. 833, 845–46, 140 L. Ed. 2d 1043, 118 S. Ct. 1708 (1998)).* Under certain circumstances, substantive due process claims may be brought when procedural fairness is not an issue. *Id. 215 F.3d at 402.* Nevertheless, "a substantive due process claim grounded in an arbitrary exercise of governmental authority may be maintained only where the plaintiff has been deprived of a 'particular quality of property interest.'" *Id. 215 F.3d at 402–03* (quoting *Indep. Enters., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1179 (3d Cir. 1997)).* Although the "precise contours of the 'particular quality of interest'" have not been clearly defined, id. (quoting *Indep. Enters., 103 F.3d at 1180),* courts look to see whether the property interest [*46] rises to the level of "'the fundamental interests that previously have been viewed as implicitly protected by the Constitution.'" Id. (quoting *Mauriello v. Univ. of Med. & Dentistry of N.J., 781 F.2d 46 50 (3d Cir. 1986)* (quoting *Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 229–30, 106 S. Ct. 507, 88 L. Ed. 2d 523 (1985)* (Powell, J. concurring))). The Third Circuit Court of Appeals has determined that not all property interests created by state contracts invoke substantive due process

concerns. See *Reich, 883 F.2d at 243–45* (citing cases).

With regard to the property interests asserted here, this Court finds persuasive the decision in *Vartan v. Nix, 980 F. Supp. 138, 142–43 (E.D. Pa. 1997)* (Bartle, J.). Vartan involved a terminated contract for the construction and lease to the Commonwealth of a new state courthouse in Harrisburg. The plaintiff sued the former Chief Justice of the Supreme Court of Pennsylvania for due process violations under section 1983, alleging that the former Chief Justice had intervened to cause the termination of the state contract. Judge Bartle compared the cases wherein the [*47] Third Circuit Court of Appeals had determined that substantive due process did not protect the state–created interest at issue, see *Ransom v. Marrazzo, 848 F.2d 398, 411–12 (3d Cir. 1988)* (right under state law to water and sewer services); *Reich, 883 F.2d at 239–40* (right to payment for legal services rendered to state), with the cases wherein the state–created interests were deemed protected, see *DeBlasio, 53 F.3d at 594–95* (right to seek variance for land use from local zoning law); *Neiderhiser v. Borough of Berwick, 840 F.2d 213* (3d Cir.), cert. denied, *488 U.S. 822, 102 L. Ed. 2d 44, 109 S. Ct. 67 (1988)* (right to seek exemption for land use from local zoning law). Finding that the property rights asserted by the plaintiff did not involve land use as those asserted in DeBlasio and Neiderhiser, and were not worthier than the rights asserted in Ransom and Reich, the Court concluded that the property rights arising under a commercial construction contract with the state did not trigger substantive due process protection. I approve and adopt the reasoning of Vartan, and similarly [*48] conclude that the alleged failure of the State Officers to pay plaintiffs disputed funds pursuant to public works contracts does not rise to level of a substantive due process violation.

Because plaintiffs cannot state a claim for due process violation under section 1983, and because they have not otherwise alleged the violation of a federal constitutional right, the State Officers are entitled to qualified immunity. Accordingly, their motion to dismiss the section 1983 claim will be granted.

Plaintiffs also assert section 1983 claims against the remaining defendants, alleging that they took joint action with the State Officers with a shared conspiratorial objective. (New Am. Compl. at P 371.) Private parties who willfully participate in a conspiracy with state officials to deprive a person of a constitutional right, act "under color of state law" for purposes of section 1983. See *Dennis v. Sparks, 449 U.S. 24, 27–28, 66 L. Ed. 2d 185, 101 S. Ct. 183 (1980)*. Nevertheless, because plaintiffs have failed to allege the deprivation of a constitutional right for the reasons I have set forth above, I conclude that they have

not stated a section 1983 claim against any of [*49] the remaining defendants on the asserted conspiracy theory .

### iii. Section 1985

Plaintiffs assert section 1985 claims against all of the defendants. Section 1985 of the federal civil rights provisions prohibits conspiracies to deprive a U.S. citizen of his constitutional rights based on invidious class–based discrimination. See *42 U.S.C. § 1985*. n15

> To state a claim under Section 1985 for private conspiracy, a plaintiff must allege: (a) that a racial or other class–based invidious discriminatory animus lay behind the coconspirators' actions, (b) that the coconspirators intended to deprive the victim of a right guaranteed by the Constitution against private impairment, and (c) that that right was consciously targeted and not just incidentally affected.

*Brown, 250 F.3d at 804.* Section 1985(3) is invoked to remedy discrimination based upon the plaintiff's "immutable characteristics, such as race or gender." *Rourke v. United States, 744 F. Supp. 100, 104–05 (E.D. Pa. 1988)*. As in their section 1981 claim, plaintiffs do not allege to be members of a racial minority or any other class based upon their [*50] immutable characteristics. I therefore conclude that plaintiffs have failed to state a claim under section 1985.

n15 Section 1985(3) provides, in relevant part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; . . . [and] in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for recovery of the damages, occasioned by such injury or deprivation against any one or more of the

2002 U.S. Dist. LEXIS 10917, *50

conspirators.

*42 U.S.C. § 1985*(3).

**iv. Section 1986**

Plaintiffs assert section 1986 [*51] claims against all of the defendants. Section 1986 constitutes an additional safeguard against the wrongs prohibited by section 1985. n16 *Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994).* It provides a cause of action for recovery against anyone who with knowledge of a section 1985 conspiracy and the power to prevent its violation, neglects or refuses to do so. To state a claim under section 1986, plaintiffs must show the existence of a section 1985 conspiracy. Id. As discussed above, plaintiffs have failed to state a cause of action under section 1985; consequently, their section 1986 claim is untenable. I conclude that plaintiffs' claim under section 1986 will therefore be dismissed.

> n16 Section 1986 provides, in relevant part:
>
> > Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . .
>
> *42 U.S.C. § 1986.*

[*52]

**c. State Law Claims**

Although not expressly pleaded, in Counts II, III, IX and X of the new amended complaint, plaintiffs request relief in the form of quantum meruit and expectation damages as against the Commonwealth Defendants and the Federal Defendants for breaches of contract in the public works projects. For the reasons I have explained above regarding the issues of sovereign immunity and Eleventh Amendment immunity, the Court lacks jurisdiction to entertain claims for breach of contract against the Commonwealth and the federal government.

Accordingly, any implied assertions of claims for breach of contract will be dismissed for lack of jurisdiction.

Although plaintiffs do not assert state law claims against any of the other defendants, to the extent any may be implied, the Court exercises its discretion to decline supplemental jurisdiction over them under *28 U.S.C. § 1367*(c)(3).

**C. Remaining Defendants and the Motion for a More Definite Statement**

Neither Manufacturers & Traders Trust Co. d/b/a M&T Bank ("M&T") nor Dryfoos have joined the other defendants in moving for dismissal. Dryfoos, though, has implicitly sought dismissal [*53] in the alternative by expressing its dissatisfaction with the amended complaint by filing a motion for a more definite statement. While neither vague nor ambiguous, see *FED. R. CIV. P. 12(e),* because the amended complaint will be dismissed as to Dryfoos for failure to state a claim, the motion of Dryfoos for a more definite statement will be denied as moot. The Third Circuit Court of Appeals has held that the "district court may on its own initiative enter an order dismissing the action provided that the complaint affords a sufficient basis for the court's action." *Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980)* (court may sua sponte dismiss complaint on the pleadings if no set of facts can be adduced to support claim for relief, all allegations are taken as true, and all inferences are drawn in favor of plaintiff); see also *McKnight v. School Dist., C.A. No. 00–573, 2000 U.S. Dist. LEXIS 13864 at **3–4* (E.D. Pa. Sept. 25, 2000); *Locke v. Medlab/General Chem., C.A. No. 99–2137, 2000 U.S. Dist. LEXIS 982 at *5* (E.D. Pa. Feb. 3, 2000); *Byrd v. Parris, C.A. No. 99–769, 1999 U.S. Dist. LEXIS 15957 [*54]* at **14–15* (E.D. Pa. Oct. 15, 1999). The above analysis of the insufficiency of the legal claims asserted against the moving defendants applies with equal force to the civil RICO and federal civil rights claims asserted against M&T and Dryfoos. Although the amended complaint is adequate for this Court to analyze, I conclude that plaintiffs have failed to state a claim for relief under the civil RICO and federal civil rights statutes against defendants Dryfoos and M&T; thus the complaint will be dismissed in its entirety. The failure of this Court to take this unilateral action would only prolong reaching the inevitable result reached here today and would add expense and energy–draining efforts to the lives of plaintiffs and these two defendants. *Federal Rule of Civil Procedure 1* provides that the rules " . . . shall be administered to secure the just, speedy, and inexpensive determination of every action."

**IV. Conclusion**

2002 U.S. Dist. LEXIS 10917, *54

The Court is sympathetic to plaintiffs' complaints of unfair treatment by the state public works department, their frustrations over their inability to secure a lawyer, and their valiant attempts to further what they believe are righteous and legally supportable [*55] claims. Nonetheless, the law requires this Court to conclude that it is barred by the Eleventh Amendment from entertaining jurisdiction over the state entities, that it lacks jurisdiction over the claims asserted against the federal government, and that plaintiffs have not stated claims for relief under the RICO and federal civil rights statutes against any of the remaining defendants.

For the reasons set forth above, all claims here asserted against the Commonwealth, the DGS, the State Officers, the Federal Defendants, the Federal Officers, Pinnacle, the Selective Defendants, Byerly, Central, PNC, First Federal, Mid-States, the Borough of Jim Thorpe, Laputka, Washington and Parente, as well as against Dryfoos and M&T, will be dismissed.

An appropriate Order follows.

**ORDER**

**AND NOW**, this 19th day of June, 2002, upon consideration of the motion of Dryfoos Insurance Agency, Inc. ("Dryfoos") for a more definite statement pursuant to *Federal Rule of Civil Procedure 12(e)* (Doc. No. 13), the motion of Pinnacle Roofing & Sheet Metal, Inc. for summary judgment or in the alternative for dismissal (Doc. No. 23), and the motions for dismissal by the following defendants: Selective [*56] Insurance, Selective Way Insurance, and Selective Insurance Group (Doc. Nos. 14, 91); Byerly Insurance Agents and Brokers, Inc., and Central Pennsylvania Indemnity (Doc. Nos. 16, 17); PNC Financial Group, Inc. (Doc. No. 22); First Federal Bank and Northeast PA Financial (Doc. No. 24); Mid-States Surety Corp. (Doc. Nos. 27, 28); the Borough of Jim Thorpe (Doc. No. 49); the Commonwealth of Pennsylvania, the Department of General Services, Michael Peapos, David McCarty,

Merle H. Ryan, and Steven Busterna (Doc. Nos. 50, 94); Laputka Bayless Ecker & Cohn, PC (Doc. Nos. 58, 73, 78); Washington International Surety Corp. (Doc. No. 74); Parente Rudolph Orlando Carey & Associates (Doc. Nos. 79, 80); the United States, the Department of the Army, the Tobyhanna Army Depot, Fred Beynon and Alice Fitzgerald (Doc. No. 98); and the responses thereto (Doc. Nos. 219-235) as well as plaintiffs' request for leave to amend as incorporated therein (Doc. No. 236, Appendix A), and for the reasons set forth in the foregoing memorandum, **IT IS HEREBY ORDERED** that (1) the request of plaintiffs to file their new amended complaint is **DENIED**, (2) the motion of Dryfoos for a more definite statement is [*57] **DENIED**, (3) all of the motions to dismiss are **GRANTED**, and (4) the Court sua sponte determines that the claims against Dryfoos and Manufacturers & Traders Trust Bank Co. and the amended complaint are **DISMISSED** in their entirety.

**JUDGMENT** is hereby **ENTERED** against plaintiffs Dianese, Inc., Gaetano Dianese and Rosemarie Dianese, and in favor of defendants Pinnacle Roofing & Sheet Metal, Inc., Selective Insurance, Selective Way Insurance, and Selective Insurance Group, Byerly Insurance Agents and Brokers, Inc., Central Pennsylvania Indemnity, PNC Financial Group, Inc., First Federal Bank, Northeast PA Financial, Mid-States Surety Corp., the Borough of Jim Thorpe, the Commonwealth of Pennsylvania, the Department of General Services, Michael Peapos, David McCarty, Merle H. Ryan, Steven Busterna, Laputka Bayless Ecker & Cohn, PC, Washington International Surety Corp., Parente Rudolph Orlando Carey & Associates, the United States, the Department of the Army, the Tobyhanna Army Depot, Fred Beynon, Dryfoos Insurance Agency, Inc., and Manufacturers & Traders Trust Bank Co. for failure to state a claim and for want of jurisdiction.

This is a final Order. [*58]

**LOWELL A. REED, JR., S.J.**