# EXHIBIT C

Case 1:05-cv-00165-JJF     Document 53-4     Filed 08/16/2005     Page 1 of 11

LEXSEE 1997 U.S. DIST. LEXIS 1934

AJITKUMAR R. BUTALA, GITA A. BUTALA, BHUPRENDA V. DUDHIA, SURENDRA D. MAHADEVIA, PANNA S. MAHADEVIA, PANKAJ MEHTA, SMITHA MEHTA, ALIAKBAR NOORANI, BIPIN PARIKH, DILIP J. PATEL, KALPANA D. PATEL, MAHENDRA D. PATEL, CHHAYA M. PATEL, RAJNIKANT PATEL, USHA PATEL, RAMACHANDRA G. PATEL, JASUMATI PATEL, RAJNIKANT SHAH, SUBODHCHANDRA TRIVEDI, and SUDHA TRIVEDI, Plaintiffs,-against-MAHESH AGASHIWALA and LOMA AGASHIWALA, Defendants.

95 Civ. 936 (JGK)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1997 U.S. Dist. LEXIS 1934

February 24, 1997, Decided
February 24, 1997, FILED

**SUBSEQUENT HISTORY:** [*1]

Reargument Denied March 24, 1997, Reported at: *1997 U.S. Dist. LEXIS 3648.*

**DISPOSITION:** Defendants' motion to dismiss granted with respect to Court II of Amended Complaint *(18 U.S.C. § 1962*(d)) without prejudice to filing of Second Amended Complaint repleading such claim. Defendants' motion to dismiss otherwise denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** APPEARANCES:

For Plaintiffs: Krishnan S. Chittur, Esq., New York, New York.

For Defendants: John M. Burns, III, Sheldon S. Lustigman, Andrew V. Lustigman, Esqs., The Lustigman Firm, New York, New York.

**JUDGES:** John G. Koeltl, United States District Judge

**OPINIONBY:** John G. Koeltl

**OPINION:**

### OPINION AND ORDER

**JOHN G. KOELTL, District Judge:**

This motion to dismiss the First Amended Complaint (the "Amended Complaint") arises in an action brought by twenty individual investors against two accountants, Mahesh and Loma Agashiwala. In *Butala v. Agashiwala, 916 F. Supp. 314 (S.D.N.Y. 1996)* ("Butala I"), the Court dismissed without prejudice the plaintiffs' original complaint. The Court dismissed the plaintiff's RICO claims pursuant to *Fed. R. Civ. P. 12(b)(6)* on the basis of the statute of limitations and, in the alternative, for failure to plead fraudulent concealment with particularity under Rule 9(b), see *id. at 320-22,* and [*2] declined supplemental jurisdiction over the plaintiffs' state law claims pursuant to *28 U.S.C. § 1367*(c)(3), see *id. at 322.*

On April 29, 1996, the plaintiffs filed the Amended Complaint. The plaintiffs assert two claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), *18 U.S.C. § 1961* et seq., and three supplemental claims under New York law for fraud, negligent misrepresentation and breach of fiduciary duty. The plaintiffs allege that the defendants made statements with respect to certain real estate investments that were fraudulent and form the basis for the underlying predicate acts of securities fraud under Sections 10(b) and 15(c) of the Securities Exchange Act of 1934, *15 U.S.C. §§ 78j*(b), 78o(c), and Sections 5, 12, and 17(a) of the Securities Act of 1933, *15 U.S.C. §§ 77e, 77l, 77q*, mail fraud, *18 U.S.C. § 1341,* wire fraud, *18 U.S.C. § 1343,* and fraud in the sale of securities, *18 U.S.C. § 1961*(1). The plaintiffs allege that the defendants conducted and participated in the conduct of an enterprise through a pattern of racketeering activity in violation of *18 U.S.C. § 1962*(c) (Count I), and conspired to do so in violation of [*3] *18 U.S.C. § 1962*(d) (Count II). The plaintiffs seek compensatory damages in the amount of their lost investments, treble damages, and attorneys' fees and expenses.

The defendants now move (i) to dismiss both RICO claims pursuant to *Fed. R. Civ. P. 12(b)(6)* as time barred, or, (ii) in the alternative, to dismiss the complaint for failure to plead fraud with particularity under *Fed. R. Civ. P. 9(b)*, or, finally, (iii) to dismiss the second RICO claim for failure to state a claim under *Fed. R. Civ. P. 12(b)(6)*. The plaintiffs also move to disqualify the defendants' attorneys on the grounds that the conduct of those attorneys violated Canons 4, 5, and 9 of the American Bar Association Code of Professional Responsibility ("the ABA Code").

## I.

On a motion to dismiss, the Court "'must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.'" *Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995)*(considering a motion to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)*)(quoting *Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), cert. denied, 130 L. Ed. 2d 63, 115 S. Ct. 117 (1994))*. In the present [*4] case, the Complaint alleges the following facts.

Some of the twenty plaintiffs in this action were accounting clients of the defendants, and the others were friends and co-investors of such clients. (Am. Compl. PP 1, 9, 15.) The defendants, with others, organized a real estate venture to build residential townhouses and condominiums in Newark, New Jersey through the creation of two limited partnerships, the Gouverneur Commons Townhouse Associates–1987, L.P. ("GCTA") and the New Jersey Townhouse Associates–1987, L.P. ("NJTA"). (Am. Compl. PP 10–11.) The defendants prepared financial projections that showed anticipated returns in excess of 140% for each of the limited partnerships. (Am. Compl. P 12.) The defendants also made oral representations to the plaintiffs including the following: (i) investors would realize at least a 15% annual return; (ii) investors would receive a full return of capital with substantial profits; (iii) the managers of the venture were experienced, reliable, and trustworthy; (iv) a performance bond of $1.5 million had been put up by the contractors; (v) the defendants were the accountants for the real estate venture; and (vi) the defendants were co-investors [*5] in the limited partnerships. (Am. Compl. PP 16–19.) Subsequently, between 1987 and 1988, the plaintiffs invested $840,000 in GCTA and NJTA. (Am. Compl. PP 1, 19–20, 35, 117.)

Shortly after each investment closed, the plaintiffs began to receive monthly distribution checks, which allegedly represented installments on their 15% annual return. (Am. Compl. P 36.) In April 1989, however, the monthly checks bounced. (Am. Compl. P 43.) No further checks were sent. Consequently, the plaintiffs did not recover their capital by February 1990, nor did they realize a 15% annual return or total returns in excess of 140%.

One defendant sent a letter to investors dated June 23, 1989, indicating that the real estate venture was having "problems." (Am. Compl. PP 46–47.) The plaintiffs allege that a meeting was held on June 29, 1989, which was attended by the defendants, several investors including six of the plaintiffs, and two of the defendants' alleged co-conspirators. (Am. Compl. P 51.) The defendants' co-conspirators made various commitments and representations to the investors. (Am. Compl. PP 51–55.) At that meeting, the plaintiffs, other investors, and the defendants formed an "Action committee" [*6] for managing the partnership. (Am. Compl. PP 54–56.)

The plaintiffs further allege that the defendants claimed to have been duped by the managers of the real estate venture and that the defendants coordinated lawsuits brought against those managers and took other actions to curtail the losses. The plaintiffs assert that on October 5, 1990, in response to the inquiry of two plaintiffs regarding the defendants' role in the fraud, the attorney hired by the Action Committee explained that "his investigations had not, as of then, uncovered any tangible evidence of [the] defendants' knowing participation in the fraud." (Am. Compl. PP 81–82 (emphasis in original).) The plaintiffs contend that the defendants concealed their own part in the fraud by controlling the lawsuits, and that the plaintiffs only learned of the defendants' fraudulent acts in February 1993. (Am. Compl. PP 73, 100–02.) Accordingly, the plaintiffs now sue the defendants for violations of RICO arguing that the defendants themselves, and in conspiracy with others, conducted an enterprise through a pattern of racketeering thereby inducing the plaintiffs to make the doomed investments and deliberately covered up the [*7] existence of claims against themselves.

## II.

The defendants move to dismiss the two RICO claims pursuant to *Fed. R. Civ. P. 12(b)(6)* on the basis of the statute of limitations. The defendants argue that RICO claims have a four-year statute of limitations which began to run when the plaintiffs discovered or with reasonable diligence should have discovered their injuries. The defendants assert that the plaintiffs' injuries occurred at the time they purchased their limited partnership interests and that they were placed on inquiry notice of their injuries by November 1989 by which time several events had occurred: (1) the GCTA plaintiffs had received a letter from their attorney in February 1989 that "advertee to irregularities in GCTA's management, and recommended litigation," (Am. Compl. P 58 n.3); (2) plaintiff Ramachandra Patel had "reported to the Action Committee about the lack of construction activity and neighbors' assertions about disputes concerning the sub-

Case 1:05-cv-00165-JJF    Document 53-4    Filed 08/16/2005    Page 4 of 11

Page 3
1997 U.S. Dist. LEXIS 1934, *7

ject property," (Am. Compl. P 57); (3) the NJTA plaintiffs had retained an attorney by the end of August 1989, (Am. Compl. PP 57, 63-64); and (4) the promises that the plaintiffs would receive replacement checks for [*8] the bounced April 1989 checks by July 7, 1989, that the plaintiffs would receive disbursement checks for May through July 1989 by July 1989, and that construction of five townhouses would be completed in 90 days and five more in 120 days were not honored, (Am. Compl. PP 52, 59). The defendants argue that these events put the plaintiffs on notice of their injuries and that, therefore, the statute of limitations began to run no later than November 1989. Since more than four years elapsed between November 1989 and the filing of this lawsuit on February 9, 1995, the suit is untimely. In response, the plaintiffs argue, first, that the statute did not begin to run until they acquired information in 1993 that suggested the probability that these particular defendants had participated in the fraud and that, therefore, their claims are timely. Second, the plaintiffs argue that, in any event, the statute was tolled on the basis of the defendants' fraudulent concealment.

### A.

The statute of limitations for civil enforcement actions under RICO is four years. See *Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143, 156, 97 L. Ed. 2d 121, 107 S. Ct. 2759 (1987)*. A cause [*9] of action under RICO accrues when the plaintiff suffers an injury, and the statute of limitations begins to run when the plaintiff discovers or should discover that injury. See *Bankers Trust Co. v. Rhoades, 859 F.2d 1096, 1102 (2d Cir. 1988)*, cert. denied, *490 U.S. 1007, 104 L. Ed. 2d 158, 109 S. Ct. 1642 (1989)*; see also *In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig., 850 F. Supp. 1105, 1117-18 (S.D.N.Y. 1993)*("The RICO limitations test here, then, is an objective one, to wit, when a reasonable person should have discovered the RICO injury, the RICO statute of limitations will start to run."); *Ackerman v. Nat'l Property Analysts, Inc., 887 F. Supp. 494, 503 (S.D.N.Y. 1992)*. In the case of the purchase of allegedly fraudulent limited partnerships, ordinarily the injury occurs at the time of purchase. See *Fisher v. Reich, No. 92 Civ. 4158, 1995 WL 23966, at *3 (S.D.N.Y. Jan. 10, 1995)*("Where, as here, plaintiffs acquired limited partnership interests based upon the defendants' alleged fraudulent statements and offering material, the injury to plaintiffs is the purchase of the partnership interests."); *Ackerman, 887 F. Supp. at 503-04* [*10] ("The injury to plaintiffs is the actual purchase of the partnership interest rather than each subsequent payment of that interest."); *Gould v. Berk & Michaels, P.C., 1990 U.S. Dist. LEXIS 3655, No. 89 Civ. 5036, 1990 WL 41706, at *5 (S.D.N.Y. Apr. 5, 1990)*("A [securities-based] RICO cause of action accrues on the date of the last sale to plaintiffs, subject to tolling for fraudulent concealment.").

In the present case, the plaintiffs' alleged injuries occurred when they purchased the limited partnership interests in late 1987 and early 1988. (Am. Compl. PP 19-20, 35.) The plaintiffs allege that these investments were fraudulent from their inception. Consequently, the plaintiffs were injured when they purchased them. Nothing is pleaded indicating that there was ever a question as to whether the plaintiffs were injured at all. The only issue the plaintiffs raise is the amount of their damages, not the existence of them. Accordingly, the plaintiffs' injuries occurred at the time the limited partnership interests were purchased.

### B.

"Once a court determines when the injury occurred, it must calculate the four-year RICO statute of limitations from the date when plaintiff discovered or should [*11] have discovered their injury." *Ackerman, 887 F. Supp. at 503*. Therefore, on a motion to dismiss, a RICO claim will be time-barred if the facts alleged in the complaint indicate that the plaintiff, with reasonable diligence, should have uncovered the alleged fraud prior to the limitations period. See *Kinley Corp. v. Integrated Resources Equity Corp. (In re Integrated Resources, Inc. Real Estate Ltd. Partnerships Sec. Litig.), 851 F. Supp. 556, 567-68 (S.D.N.Y. 1994)* ("The limitations period for a fraud-based RICO action commences when Plaintiffs are placed on notice of facts which should arouse suspicion."); *Integrated Resources, 850 F. Supp. at 1118; Griffin v. McNiff, 744 F. Supp. 1237, 1255 (S.D.N.Y. 1990)*, aff'd, *996 F.2d 303 (2d Cir. 1993)*. "The time from which the statute of limitations begins to run is not the time at which a plaintiff becomes aware of all of the various aspects of the alleged fraud, but rather the statute runs from the time at which the plaintiff should have discovered the general fraudulent scheme." *Dolan v. Rothschild Reserve Int'l, Inc., 1991 U.S. Dist. LEXIS 10831, No. 90 Civ. 1003, 1991 WL 155770, at *2 (S.D.N.Y. Aug. 6, 1991)* (quoting *Klein v. Bower,* [*12] *421 F.2d 338, 343 (2d Cir. 1970))*.

To determine when the plaintiff should have discovered the scheme requires a two part inquiry: first, whether the plaintiffs received information sufficient to alert a reasonable person to the probability that they had been misled, that is, whether the plaintiffs were on inquiry notice; and second, whether the plaintiffs responded to such notice with reasonable diligence. See *Lenz v. Associated Inns and Restaurants Co. of America, 833 F. Supp. 362, 370 (S.D.N.Y. 1993); In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig., 815 F. Supp. 620, 638-39 (S.D.N.Y. 1993)*. Where the undisputed facts set forth in the complaint establish inquiry notice and the lack of due diligence, "resolution of the issue on a motion to dismiss

Case 1:05-cv-00165-JJF    Document 53-4    Filed 08/16/2005    Page 5 of 11

Page 4
1997 U.S. Dist. LEXIS 1934, *12

is appropriate." *Dodds v. Cigna Sec. Inc., 12 F.3d 346, 352 n.3 (2d Cir. 1993)*, cert. denied, *114 S. Ct. 1401 (1994)*; see *Griffin, 744 F. Supp. at 1255* ("On a motion to dismiss, when the facts alleged in the complaint indicate that, with reasonable diligence, plaintiffs should have uncovered the alleged fraud prior to the limitations period, the claim will be time-barred."). However, [*13] "issues of due diligence and constructive knowledge depend on inferences drawn from the facts of each particular case similar to the type of inferences that must be drawn in determining intent and good faith... When conflicting inferences can be drawn from the facts ... summary judgment is inappropriate." *Robertson v. Seidman & Seidman, 609 F.2d 583, 591 (2d Cir. 1979)* (citations omitted).

The plaintiffs argue that although they had knowledge of various irregularities in 1989, they were not placed on inquiry notice as to the participation of these particular defendants in the fraud until 1993. Although a plaintiff may have knowledge of the underlying fraud, inquiry notice for statute of limitations purposes is only triggered when the plaintiff is placed on notice of the fraudulent activities of the particular defendants being sued. See *Robertson, 609 F.2d at 591-92*; *Dayton Monetary Assocs. v. Donaldson, Lufkin, & Jenrette Sec. Corp., 1992 U.S. Dist. LEXIS 12283, Nos. 91 Civ. 2050, 91 Civ. 4944, 91 Civ. 5000, 91 Civ. 5622, 91 Civ. 6432, 1992 WL 204374, at *3-*4 (S.D.N.Y. Aug. 11, 1992)*; *Stern v. Grossman, 1989 U.S. Dist. LEXIS 3751, No. 86 CIV. 0837, 1989 WL 38349, at *4 (S.D.N.Y. Apr. 12, 1989)*; *Huang v. Sentinel* [*14] *Gov't Sec., 709 F. Supp. 1290, 1300-01 (S.D.N.Y. 1989)*.

In this case, assuming the allegations in the Amended Complaint are true, there is ample evidence that the plaintiffs were on inquiry notice as to the fraudulent activities of these defendants at the latest by October 1990. By that time, many of the defendants' representations — that the real estate ventures were "solid and "fool-proof," and defendants' co-conspirators were "experienced professionals," "very reliable," and "trustworthy" real estate entrepreneurs (Am. Compl. P 16); that as accountants for GCTA and NJTA, the defendants would ensure the safekeeping as well as proper flow of funds, (Am. Compl. P 17); that the investments were completely safe (Am. Compl. P 17); and that the defendants personally, uniformly, and explicitly guaranteed each plaintiff immediate returns of at least 15% p.a. payable monthly, and a full return of capital with substantial profits within two years, (Am. Compl. P 18) — had proven untrue. See, e.g., *Lenz, 833 F. Supp. at 375* ("Clear evidence that an investment asset has declined in value or has been subject to an artificially inflated estimate of its value, in direct contradiction [*15] of representation made to the plaintiff at the time of sale, constitutes inquiry notice as to the probability of fraud."); *Griffin, 744 F. Supp. at 1256* (plaintiffs on notice when made aware of unfavorable estimates regarding oil reserves, conflicting with projections, and withdrawal of public accountants); *Henkind v. Brauser, 1989 U.S. Dist. LEXIS 5344, No. 87 Civ. 4072, 1989 WL 54109, at *7-*8 (S.D.N.Y. May 17, 1989)* (plaintiffs on notice where they had "gone through two reporting cycles without having received the promised information about the operation of the Partnership"); *Anisfeld v. Cantor Fitzgerald & Co., Inc., 631 F. Supp. 1461, 1466 (S.D.N.Y. 1986)* (inquiry notice triggered by financial reports showing partnership suffered losses since inception, rent revenues below projections, occupancy rates below projections, and condition of premises in disrepair); see also *Farr v. Shearson Lehman Hutton, Inc., 755 F. Supp. 1219, 1225 (S.D.N.Y. 1991)* (financial report showed risky, illiquid investment rather than promised conservative one, and put plaintiff on inquiry notice; § 10(b) claim); *Miller v. Grigoli, 712 F. Supp. 1087, 1092 (S.D.N.Y. 1989)* (letters from partnership indicating [*16] problems with investment put investor on inquiry notice; § 10(b) claim).

More importantly, by October 1990, the plaintiffs' suspicions regarding the defendants' role in the fraud had been raised to such a degree that plaintiffs Ramachandra and Rajani Patel asked the attorney hired by the Action Committee whether the defendants were involved in the fraud. (Am. Compl. P 81.) Thus, the plaintiffs were on inquiry notice regarding the defendants' role in the fraud no later than October 1990, and the statute of limitations began to run at least by that time.

C.

The plaintiffs next argue that, even if the statute of limitations had begun to run, the statute was tolled by the defendants' fraudulent concealment, and that the plaintiffs exercised due diligence once they became aware of the problems with their investments. The plaintiffs argue both that the defendants took affirmative steps to cover their tracks and that the nature of the fraud was self-concealing.

Under the doctrine of fraudulent concealment, the statute of limitations will be tolled if the plaintiff pleads, with particularity, either active concealment or passive concealment. In order to establish active concealment, [*17] the plaintiff must prove that the defendant took subsequent affirmative steps in addition to the original fraud to prevent the plaintiff from discovering the fraud. See *Borden, Inc. v. Spoor Behrins Campbell & Young, Inc., 778 F. Supp. 695, 700-01 & n.7 (S.D.N.Y. 1991)* (finding that there was a genuine issue of material fact with regard to active concealment where the plaintiff alleged that the defendants affirmatively denied, in numerous SEC filings and filings with the Federal Reserve Board, that they received payments from organizers and promoters of in-

Case 1:05-cv-00165-JJF    Document 53-4    Filed 08/16/2005    Page 6 of 11

Page 5
1997 U.S. Dist. LEXIS 1934, *17

vestment ventures as consideration for recommendations and sales of security interests to the plaintiffs and where the defendants made several knowingly false statements in an attempt to conceal the payments received); *Clute v. Davenport Co.*, 584 F. Supp. 1562, 1579 & n.4 (D. Conn. 1984) (finding the plaintiffs' allegations of concealment sufficient where they asserted a cover-up designed to prevent discovery of the earlier fraud as well as the initial deception); see also *Baskin v. Hawley*, 807 F.2d 1120, 1130-31 (2d Cir. 1986) (finding active concealment where a union misrepresented to a member that his employer [*18] was not bound to collective bargaining agreement); *Huang*, 709 F. Supp. at 1300 (finding active concealment to be a reasonable inference where the plaintiffs were unable to inspect the partnership records because the defendant's managing general partner misrepresented to them that he was taking all legal steps to get the records returned from the government when they had already been returned). Where there is active concealment, the plaintiff is not required to establish due diligence; the statute of limitations is tolled until the plaintiff has actual knowledge of the defendant's fraudulent conduct. See *Baskin*, 807 F.2d at 1131; *Robertson*, 609 F.2d at 593; *Borden*, 778 F. Supp. at 700; *Huang*, 709 F. Supp. at 1300; *Clute*, 584 F. Supp. at 1578.

"Passive concealment occurs when the defendant commits fraud but then takes no further action to disguise the fraud from the plaintiff." *Clute*, 584 F. Supp. at 1578 n.4; see also *Borden*, 778 F. Supp. at 700 n.7. In order to establish passive concealment, the plaintiff must prove that the defendant wrongfully concealed the fraud, that the plaintiff exercised due diligence in pursuing discovery of the fraud, [*19] and that the plaintiff failed to discover the fraud within the limitations period. See *Butala I*, 916 F. Supp. at 319; *Griffin*, 744 F. Supp. at 1256 (citing *Donahue v. Pendleton Woolen Mills, Inc.*, 633 F. Supp. 1423, 1443 (S.D.N.Y. 1986)); see also *Bankers Trust*, 859 F.2d at 1105 (applying standard tolling exceptions for civil RICO statute of limitations, and citing *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083-84 (2d Cir.), cert. denied, 488 U.S. 848, 102 L. Ed. 2d 101, 109 S. Ct. 128 (1988)).

In pleading either active or passive concealment, the plaintiff must comply with the particularity requirements of *Rule 9(b) of the Federal Rules of Civil Procedure*. See *Greenwald v. Manko*, 840 F. Supp. 198, 202 (E.D.N.Y. 1993); *Glick v. Berk & Michaels, P.C.*, 1991 U.S. Dist. LEXIS 10347, No. 90 Civ. 4230, 1991 WL 152614, at *9 (S.D.N.Y. July 26, 1991)(citing *Moviecolor Ltd. v. Eastman Kodak Co.*, 288 F.2d 80, 88 (2d Cir.), cert. denied, 368 U.S. 821, 7 L. Ed. 2d 26, 82 S. Ct. 39 (1961)); *Griffin*, 744 F. Supp. at 1256; *Moll v. U.S. Life Title Ins. Co. of New York*, 700 F. Supp. 1284, 1289-90 (S.D.N.Y. 1989). The allegations in the Amended Complaint [*20] are far more particular and extensive than those found insufficient in Butala I.

In the Amended Complaint, the plaintiffs allege that the defendants engaged in both active and passive concealment. The plaintiffs contend that the defendants actively concealed their wrongdoing through various affirmative actions. They argue that the defendants failed to reveal to the plaintiffs certain crucial facts: that the defendants received cash commissions of at least six percent for each unit they sold to the plaintiffs, that the defendants cloned the projections with reckless disregard for the truth, and that the defendants systematically falsified bank documents. n1 However, the defendants' failure to disclose these facts constitutes passive rather than active concealment. The plaintiffs, however, also allege a detailed active campaign calculated to cover up the defendants' alleged role in the fraud and to portray the defendants as innocent victims. The plaintiffs allege that the defendants distanced themselves from the other wrongdoers, empathically behaved as injured investors themselves, told investors that they had resigned as accountants for the partnerships, advised investors not [*21] to pay on the Notes, repeatedly assured the plaintiffs that the defendants would take care of everything, convened and conducted meetings purportedly for protecting investors, acted as co-investigators of the fraud, took charge of communications with the attorneys, bargained down attorneys' contingent fees, sent to the plaintiffs copies of the defendants' apparently indignant faxes to the other alleged wrongdoers, and actively shut out Action Committee member plaintiff Ramachandra Patel from important meetings. (Am. Compl. PP 43-99.) These actions raise at least a question of fact as to whether there was active concealment of the fraud.

> n1 The plaintiffs also allege that the defendants concealed the fact that they had not invested any of their own funds in the partnerships. However, not only is this fact contradicted in the response to the plaintiffs' motion to disqualify, (Bartfield Decl. P 16), but the plaintiffs assert the opposite in their motion to disqualify:
>> Defendant Mahesh Agashiwala appears to have cut a special deal — i.e., different from that he recommended to other investors (including the 14 plaintiffs herein) — with Chase Lincoln. Mr. Agashiwala also appears to have had ownership interests and was apparently representing the broker-dealer, Melvest, Inc., in the formation of the limited partnerships.

Case 1:05-cv-00165-JJF    Document 53-4    Filed 08/16/2005    Page 7 of 11

Page 6
1997 U.S. Dist. LEXIS 1934, *21

(Chittur Aff. P 30.)

[*22]

The plaintiffs also argue that the statute of limitations should be tolled because the defendants fraudulently concealed the crucial facts mentioned above despite the defendants' duty to disclose them to the plaintiffs or, in other words, engaged in passive concealment. Although it is doubtful that the defendants owed the plaintiffs a fiduciary duty in their capacity as accountants, see *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 545 F. Supp. 1314, 1356 (S.D.N.Y. 1982) ("Courts do not generally regard the accountant-client relationship as a fiduciary one."); see also *Greenblatt v. Richard Potasky Jewelers*, 1994 U.S. Dist. LEXIS 258, No. 93 Civ. 3652, 1994 WL 9754, at *4 (S.D.N.Y. Jan. 13, 1994); *Mishkin v. Peat, Marwick, Mitchell & Co.*, 658 F. Supp. 271, 273 & n.10 (S.D.N.Y. 1987), "it is nonetheless fundamental that a person who speaks has a duty to disclose enough to prevent his words from being misleading. A statement disclosing favorable information but omitting all reference to material unfavorable facts breaches that duty. This principle is plainly applicable to the question of whether a defendant has engaged in fraudulent concealment." *Baskin*, 807 F.2d at 1132 (citations omitted). [*23] Therefore, the plaintiffs' allegations that the defendants concealed the fact that they had received cash commissions of at least six percent for each unit they sold to the plaintiffs, that the defendants had cloned the projections with reckless disregard for the truth, and that the defendants had systematically falsified bank documents create factual issues as to whether there was passive concealment of the defendant's role in the fraud.

Furthermore, it cannot be decided as a matter of law that the plaintiffs failed to exercise due diligence when they consulted with their attorney concerning their suspicions about the defendants' role in the fraud. (Am. Compl. P 81.) Their attorney told them that he had not uncovered any tangible evidence of the defendants' participation in the fraud and that he would cease representing the defendants if his investigations showed otherwise. (Am. Compl. P 82.)

The plaintiffs also allege that they were unable to discover the defendants' role in the fraud until 1993, when they received tangible evidence of the defendants' falsification of bank documents, thus showing the defendants' alleged involvement in the fraud. The plaintiffs have therefore pleaded [*24] the elements of passive concealment with sufficient particularity to create an issue of fact as to whether they have established fraudulent concealment in order to toll the statute of limitations.

Accordingly, because there are issues of fact as to whether the statute of limitations should be tolled as a result of the defendants' active and passive concealment of their role in the fraud, dismissal of this action is inappropriate.

**III.**

In the alternative, the defendants move to dismiss the entire Complaint pursuant to *Fed. R. Civ. P. 9(b)* for failure to plead fraud with adequate specificity. Where the predicate acts of a civil RICO claim sound in fraud or mistake, the pleading of those predicate acts must satisfy the requirements Rule 9(b). *Butala I*, 916 F. Supp. at 321 (collecting cases). To comply with Rule 9(b), the complaint must allege specifically when and where the misrepresentations took place, the content of those misrepresentations, and the identity of the person or persons making them. See *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990); *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 [*25] (2d Cir. 1990). The plaintiff must also explain how the misrepresentations were fraudulent. See *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989); *Baxter v. A.R. Baron & Co., Inc.*, 1995 U.S. Dist. LEXIS 14882, No. 94 Civ. 3913, 1995 WL 600720, at *3-*5 (S.D.N.Y. Oct. 12, 1995). Although Rule 9(b) allows a plaintiff to allege fraudulent intent generally, a plaintiff must allege facts that give rise to a strong inference of fraudulent intent. See *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). This strong inference can be established either "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Id.

The defendants contend that although the plaintiffs have attempted to cure the deficiencies of their original complaint, n2 they have not shown how the alleged misrepresentations were fraudulent, that the defendants knew they were untrue, or that the plaintiffs reasonably relied on the misrepresentations. However, the plaintiffs have provided allegations that are sufficiently particularized to survive challenge [*26] under Rule 9(b). For example, the plaintiffs allege that the defendants' representations that induced them to invest in the partnerships were fraudulent because the defendants simply cloned the projections for the partnerships from preexisting documents, (Am. Compl. P 14), that the defendants doctored financial information given by the plaintiffs prior to submission to financial institutions in order to qualify them for financing under the lending guidelines, (Am. Compl. PP 28-34), and that the defendants used the invested money to purchase property that was substantially inferior to the property the defendants had represented they would develop,

(Am. Compl. P 38). The Amended Complaint contains adequate allegations of motive and opportunity given the alleged hidden commission coupled with the defendants' alleged participation in the preparation of allegedly fraudulent documentation. Moreover, the detailed allegations in the Amended Complaint provide strong circumstantial evidence of conscious misbehavior or recklessness by the defendants sufficient to survive a motion to dismiss. Finally, the Amended Complaint contains numerous allegations of the plaintiffs' reasonable reliance on [*27] the defendants' misrepresentations based on the defendants' superior knowledge of the transactions and the defendants' role as accountants and financial advisors for some of the plaintiffs. (Am. Compl. PP 1, 9, 15, 19, 20, 22, 23, 117, 136, 140.)

> n2 For example, the Amended Complaint does identify the specific plaintiffs to whom enumerated communications were made, the times and places for those communications, and what was said. (Am. Compl. PP 15-20.)

Given the number and specificity of the misrepresentations, the allegations of how they were fraudulent, the allegations of scienter by the defendants, and the reasonable reliance by the plaintiffs, the plaintiffs have alleged sufficient facts at this stage of the pleadings. Accordingly, the defendant's motion to dismiss the Amended Complaint based on a failure to plead fraud with sufficient particularity under Rule 9(b) is denied.

### IV.

The defendants also move to dismiss the second RICO count for conspiracy, *18 U.S.C. § 1962*(d), for failure to state the [*28] claim properly. Section 1962(d) provides that "it shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section." *18 U.S.C. § 1962*(d). In order to state a claim for conspiracy, the plaintiffs must claim that each alleged co-conspirator agreed to commit at least two predicate acts of racketeering activity. See *Hecht v. Commerce Clearing House, 897 F.2d at 25*.

The conclusory nature of the plaintiffs' allegations with respect to the alleged conspiracy requires dismissal of the plaintiffs' claim under § 1962(d). See *R.C.M. Executive Gallery Corp. v. Rols Capital Co., 1997 U.S. Dist. LEXIS 565, No. CIV. 8571, 1997 WL 27059, at *10 (S.D.N.Y. Jan. 27, 1997)*. Although the plaintiffs make a conclusory allegation of conspiracy in one paragraph of their Amended Complaint, (Am. Compl. P 132), the allegation falls short of that required to sustain a conspiracy claim. See *Hecht, 897 F.2d at 25* ("Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement.") (citations omitted); *Trautz v. Weisman, 809 F. Supp. 239, 246 [*29] (S.D.N.Y. 1992)* (at the very least, a plaintiff must allege facts that imply an agreement to commit two predicate acts to state a sufficient claim under § 1962(d); there must be actual knowing participation by the defendant; mere knowledge of the conspiracy is insufficient); *Laverpool v. New York City Transit Auth., 760 F. Supp. 1046, 1060 (E.D.N.Y. 1991)* ("Bare or conclusory allegations of participation in a conspiracy under section 1962(d) will not avail on a motion to dismiss, and the plaintiff must plead allegations that each defendant knowingly agreed to participate in the conspiracy, particularly when the predicate acts alleged are fraud." (citations omitted)); *Friedman v. Arizona World Nurseries Ltd. Partnership, 730 F. Supp. 521, 548-49 (S.D.N.Y. 1990)*, aff'd, *927 F.2d 594 (2d Cir. 1991)* (conclusory allegations that did not sufficiently allege that each defendant personally agreed to commit two or more predicate acts held insufficient). Therefore, plaintiffs' § 1962(d) claim is dismissed. This claim is dismissed without prejudice to repleading such a claim within thirty (30) days of the date of this Opinion. In Butala I, the Court did not reach the [*30] issue of the deficiency of the pleading of the conspiracy claim. See *Butala I, 916 F. Supp. at 322 n.2*. The plaintiffs have thus not attempted to replead this claim and should be afforded the opportunity to do so. See *Luce v. Edelstein, 802 F.2d 49, 52 (2d Cir. 1986)* ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend.").

### V.

The plaintiffs also move to disqualify the defendants' attorneys based on Canons 4, 5, and 9 of the ABA Code. In this Circuit, a motion to disqualify an attorney is committed to the discretion of the district court. See *Cheng v. GAF Corp., 631 F.2d 1052, 1055 (2d Cir. 1980)* (collecting cases), n3 vacated on other grounds, *450 U.S. 903 (1981)*; *Decora Inc. v. DW Wallcovering, Inc., 899 F. Supp. 132, 135 (S.D.N.Y. 1995)*. n4 Motions to disqualify are generally viewed with disfavor in this Circuit. *In re Maritima Aragua, S.A., 847 F. Supp. 1177, 1179 (S.D.N.Y. 1994)* (collecting cases); *Huntington v. Great Western Resources, Inc., 655 F. Supp. 565, 571 (S.D.N.Y. 1987)* ("The Second Circuit has emphasized in its most recent disqualification opinions that a court's ultimate objective in [*31] weighing disqualification questions is to ensure that the balance of presentations in a litigation will not be tainted by improper disclosures... Courts have been directed to take a 'restrained approach that focuses primarily on preserving the integrity of the trial process.'" (citations omitted)). "Such motions 'are often interposed for tactical reasons and result in unnecessary delay... Thus,

although doubts should be resolved in favor of disqualification, the party seeking disqualification must carry a heavy burden, and must meet a high standard of proof before a lawyer is disqualified." *April Broadcasting, Inc. v. Smith, 1996 U.S. Dist. LEXIS 3594, No. 95 Civ. 7664, 1996 WL 137487,* at *3 (S.D.N.Y. March 27, 1996) (quoting *Bennett Silvershein Assocs. v. Furman, 776 F. Supp. 800, 802 (S.D.N.Y. 1991)* (citations omitted)); see also *Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983); Maritima, 847 F. Supp. at 1180.*

n3 In *Baird v. Hilton Hotel Corp., 771 F. Supp. 24, 27 n.1 (E.D.N.Y. 1991)*, the court noted, "It is abundantly clear that the Second Circuit considers the reasoning of its first Cheng opinion to be sound, even though it recognizes, as a procedural matter, the opinion is not binding on the district courts of this circuit."

[*32]

n4 In *Evans v. Artek Sys. Corp., 715 F.2d 788 (2d Cir. 1983)*, the Court of Appeals set forth the competing interests that courts attempt to accommodate when deciding motions for disqualification by application of the substantial relationship test described below:

> The objective of the disqualification rule is to "preserve the integrity of the adversary process," *Board of Education of the City of New York v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979)*. However, while we have not hesitated to disqualify counsel when the circumstances warranted it, we have also noted that "there is a particularly trenchant reasons for requiring a high standard of proof on the part of one who seeks to disqualify his former counsel, for in disqualification matters we must be solicitous of a client's right freely to chose his counsel — a right which of course must be balanced against the need to maintain the highest standards of the profession." *Government of India v. Cook Industries, Inc., 569 F.2d 737, 739 (2d Cir. 1978)*. We have also noted that disqualification motions "are often interposed for tactical reasons," and that "even when made in the best of faith, such motions inevitably cause delay." *Board of Education v. Nyquist, supra,* 590 F.2d at 1246 (2d Cir. 1979); see *Allegaert v. Perot, 565 F.2d 246, 251 (2d Cir. 1977).*

*Evans, 715 F.2d at 791-92.*

[*33]

The plaintiffs argue that Joseph Bartfield, John Burns, III, the Lustigman firm, and all their associates/affiliates should be disqualified from representing the defendants because they have been privy to confidential attorney-client information and because disqualification is necessary to avoid any appearance of professional impropriety. See ABA Code Canon 4 ("A Lawyer should preserve the confidences and secrets of a client."); ABA Code Canon 5 ("A lawyer should exercise independent professional judgment on behalf of a client."); ABA Code Canon 9 ("A Lawyer should avoid even the appearance of professional impropriety."); New York Code of Professional Responsibility Disciplinary Rule 5-108 (providing that unless a lawyer obtains the consent of a former client, he cannot "thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client"); New York Code of Professional Responsibility Disciplinary Rule 5-105(D) ("While lawyers are associated in a law firm, none of them shall knowingly accept or continue employment when any one of them practicing alone would be prohibited [*34] from doing so under ... DR 5-108 ....").

"As a general rule, disqualification is necessary when an attorney's successive representation of adverse interests raises the possibility that in the present matter that attorney will improperly use confidences gained in the prior representation to the detriment of the former client." *Red Ball Interior Demolition Corp. v. Palmadessa, 908 F. Supp. 1226, 1239 (S.D.N.Y. 1995)*. Judge Weinfeld, addressing a lawyer's duty to preserve client confidences in subsequent representations in the seminal case of *T.C. Theatre Corp. v. Warner Bros. Pictures, 113 F. Supp. 265 (S.D.N.Y. 1953)*, stated that in order for former clients of an attorney to obtain the disqualification of the attorney when the attorney appears in an adverse position in a subsequent representation:

> The former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representa-

tion confidences were disclosed [*35] to the attorney bearing on the subject matter of the representation.

*Id. at 268.* The Court of Appeals for the Second Circuit has affirmed that T.C. Theatre Corp. provides the basis for the approach courts are to take when determining whether an attorney should be disqualified from a matter because of a representation of an adverse party in a related matter. An attorney may be disqualified in such circumstances if:

> (1) the moving party is a former client of the adverse party's counsel;
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and
> (3) the attorney whose disqualification is sought has access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client. n5

*Evans, 715 F.2d at 791;* see also *Cheng, 631 F.2d at 1055-56; Emle Indus., Inc. v. Patentex, Inc., 478 F.2d 562, 570-71 (2d Cir. 1973); Decora, 899 F. Supp. at 135.*

> n5 An attorney's access to privileged information is sufficient to warrant disqualification, because there is a presumption that access to privileged information will be accompanied by actual possession of such information. However, this presumption may be rebutted and disqualification avoided if an attorney can prove that he or she does not possess privileged information. See *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., 518 F.2d 751, 756-57 (2d Cir. 1975),* overruled on other grounds by *Armstrong v. McAlpin, 625 F.2d 433 (2d Cir. 1980),* vacated and remanded, *449 U.S. 1106 (1981); Cheng, 631 F.2d at 1056-57.* The rule's provision for disqualification in the absence of proof of actual possession of confidential information is further supported by Canon 9. However, the appearance of impropriety alone is not sufficient to warrant disqualification. See *Board of Educ. of City of New York v. Nyquist, 590 F.2d 1241, 1246-47 (2d Cir. 1979).*

[*36]

In this case, the plaintiffs allege that Mr. Bartfield should be disqualified because he represented fourteen of the twenty plaintiffs in a prior action by Chase Lincoln First Bank ("Chase") against the plaintiffs that arose out of the real estate ventures at issue in this action. The plaintiffs further allege that Mr. Bartfield received confidential information concerning those plaintiffs in the course of that representation. It is clear that at least some of the plaintiffs were his clients in a prior action, that the prior action is substantially related to the current action, and that he was likely to have had access to confidential information in the course of that representation. Although Mr. Bartfield attempts to rebut the presumption that he came into contact with confidential information regarding the plaintiffs, (Bartfield Decl. PP 10, 18), he admits that some investors did supply him with documents, records, and information concerning Chase and the partnerships at issue in this case, (Bartfield Decl. P 8), and that he received some personal information from at least some of the plaintiffs for purposes of settlement, (Bartfield Decl. PP 17-18). He denies that any of this [*37] information was confidential and alleges that the information was essentially information that was to be produced to Chase in the course of the litigation. However, Mr. Bartfield apparently does not seek to represent the defendants in this case, although he continues to represent the defendants in personal matters. (Lustigman Decl. P 9; Agashiwala P 5).

The plaintiffs argue that the plaintiffs' attorneys of record, Mr. Lustigman and Mr. Burns, should also be disqualified because they have consulted with Mr. Bartfield in connection with the defendants' case and the production of documents. n6 The defendants assert that Mr. Bartfield never received any confidential information from the plaintiffs, and they thus seek to rebut any presumption of the receipt of such information based on Mr. Bartfield's prior representation of the plaintiffs. The defendants also assert that Mr. Bartfield has never shared any confidential information relating to any plaintiff with the Lustigman firm, (Lustigman Decl. P 7), and that "if defendants are not successful in dismissing the amended complaint on motion and the case goes forward, we would not discuss the merits or the underlying factual basis of the [*38] case with attorney Bartfield." (Lustigman Decl. P 9.) However, the defendants admit that Mr. Lustigman and Mr. Burns have discussed the motions in this case as well as some of the underlying transactions alleged in the Amended Complaint with Mr. Bartfield. (Lustigman Decl. PP 8, 9; Burns Decl. P 5.) And the plaintiffs seek to present to the Court in camera information to show that confidential information was provided to Mr. Bartfield. There is therefore at least an issue of fact as to whether Mr. Bartfield received confidential information regarding some of the plaintiffs and whether he shared that information with Mr. Lustigman and Mr. Burns.

> n6 The plaintiffs also argue that the Lustigman

firm should be disqualified because of its association or affiliation with Mr. Bartfield. They point to the fact that Mr. Bartfield and the Lustigman firm share office space and have the same fax number with the sender's script on top of the faxes reading "Bartfield/Lustigman." However, the defendants assert that Mr. Bartfield and the Lustigman firm have totally separate and distinct legal practices, clients, telephone numbers, and legal stationery and maintain separate files. (Lustigman Decl. P 4.) The real issue is whether the Lustigman firm has received any confidential information from Mr. Bartfield regarding the plaintiffs.

[*39]

Accordingly, the Court will hold an evidentiary hearing to resolve any outstanding factual disputes on the motion for disqualification.

**CONCLUSION**

For the reasons explained above, the defendants' motion to dismiss is **granted** with respect to Court II of the Amended Complaint *(18 U.S.C. § 1962*(d)) without prejudice to the filing of a Second Amended Complaint repleading such a claim within thirty (30) days of the date of this Opinion. The defendants' motion to dismiss is otherwise **denied**. An evidentiary hearing will be scheduled on the plaintiffs' motion to disqualify the defendants' attorneys.

**SO ORDERED.**

**Dated: New York, New York**

**February 24, 1997**

**John G. Koeltl**

**United States District Judge**