# EXHIBIT H

LEXSEE 1996 U.S. DIST. LEXIS 13014

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Plaintiff, v. FORMAN 635 JOINT VENTURE, FRANK C. FOREST, JR., and MICHAEL BIERMAN, Defendants.

94 Civ. 1312 (LLS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*1996 U.S. Dist. LEXIS 13014*

**September 4, 1996, Decided**
**September 6, 1996, FILED**

**DISPOSITION:** [*1] Forest's motion to vacate the default judgment denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** For NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., plaintiff: Richard F. Russell, D'Amato & Lynch, New York, NY.

For FRANK C. FOREST, JR., defendant: John K. Popham, McGuire Craddock Strother & Lutes, P.C., Dallas, TX.

**JUDGES:** LOUIS L. STANTON, U. S. D. J.

**OPINIONBY:** LOUIS L. STANTON

**OPINION:**

### Memorandum and Order

National Union Fire Insurance Co. ("National Union") sued Frank Forest to enforce an indemnity agreement, and as subrogee on a note on which he had defaulted. Forest did not answer the complaint, and on March 7, 1995 a default judgment was entered against him.

He now moves to vacate it on the ground that he was not given the required notice that National Union was applying for the default judgment.

### BACKGROUND

Frank Forest was a co-venturer in Forman 635 Joint Venture (the "Venture"), which bought a limited partnership interest in Stringer/LBJ Industrial Partners ("Stringer") and paid for it with a promissory note (the "Note"). National Union issued a bond which guaranteed to Stringer and the bank n1 which financed it that the Venture would make the capital contributions required by the Note. In [*2] exchange for that guarantee, Forest and his co-venturer Michael Bierman agreed to indemnify National Union for any amounts it paid on the Venture's behalf under the bond. Later, the Venture defaulted. National Union made the required payments, and then sued for reimbursement.

> n1 Stringer assigned the Note to LaSalle National as Trustee for Credit Lyonnais in consideration for a loan Credit Lyonnais made to Stringer.

Through his counsel John Popham, Esq., Forest engaged in settlement negotiations with National Union, which several times agreed to extend his time to answer. In a letter to Popham dated May 11, 1994, National Union's counsel Liza Chafiian, Esq. stated: "In regards to your request for extensions of time to answer, I will agree not to move for default judgment in the subject actions and will provide you with a 30 day notice that an answer is due in the event that settlement negotiations fail."

After the parties exchanged information, Forest made a settlement offer. National Union rejected the offer, [*3] but agreed to extend Forest's time to answer to December 2, 1994. By letter dated November 22, 1994, Popham notified National Union that he no longer represented Forest and stated that Forest would soon be contacting National Union directly.

Because Forest's time to answer was set to expire on December 2, 1994, Chafiian wrote to Forest and offered to extend his time to answer to December 23, 1994. Forest spoke with Chafiian by telephone several times between early December and early January, 1995. The parties' accounts of those conversations and ensuing events differ.

Chafiian asserts that Forest told her he did not intend to file an answer and might file a bankruptcy petition if National Union obtained a judgment against him; Forest claims he never made those statements. Chafiian also says she sent a letter dated January 12, 1995 to Forest, stating: "Furthermore, please be advised that you are in default of the summons and complaint. It is my understanding from our last conversation that you do not intend to answer this complaint. Therefore, a judgment will be entered against you." Forest not having answered the complaint or otherwise responded by February 24, 1995, National Union [*4] applied for a default judgment against him.

Forest, on the other hand, says he made another settlement offer during one of his telephone conversations with Chafiian, and that she became angry and hung up without responding. He claims he did not receive Ms. Chafiian's January 12, 1995 letter. He says he thought settlement negotiations were still ongoing and did not believe National Union would seek a default judgment against him without first rejecting his offer, and giving the promised 30-day notice.

National Union's application for a default judgment against Forest was granted, and the judgment was entered on March 7, 1995.

## DISCUSSION

*Federal Rule of Civil Procedure 55(c)* provides, "For good cause shown, the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Rule 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could [*5] not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . . or (6) any other reason justifying relief from the operation of the judgment.

Forest argues that the default judgment should be vacated because National Union did not give him the three days' notice of its application for the judgment required by Rule 55(b)(2). n2

> n2 Rule 55(b)(2) provides, "If the party against whom judgment is sought has appeared in the action, the party . . . shall be served with written notice of the application for judgment at least three days prior to the hearing on such application." That rule does not provide Forest with an independent basis for vacating the judgment. Rather, Rule 55(c)—quoted in the first sentence above—requires a court to apply the standards set forth in Rule 60(b) when considering a motion to vacate a default judgment.

[*6]

Although he contends that the default judgment should be vacated on the ground of his excusable neglect (Rule 60(b)(1)) or National Union's fraud (Rule 60(b)(3)), the motion on those grounds is time-barred. Rule 60(b) requires that motions under those subsections be made within one year of the judgment's entry. The judgment was entered against Forest on March 7, 1995, the instant motion was filed more than one year later on March 18, 1996, and the court has no power to enlarge the one-year period. See *Fed. R. Civ. P. 6(b)*.

An argument that the judgment is void (Rule 60(b)(4)) would be unavailing. Failing to provide notice required by Rule 55(b)(2) does not render a default judgment void, but only voidable. See *Traveltown, Inc. v. Gerhardt Investment Group, 577 F. Supp. 155, 157 (N.D.N.Y. 1983); United States v. Martin, 395 F. Supp. 954, 960-61 (S.D.N.Y. 1975);* but see *Press v. Forest Laboratories, Inc., 45 F.R.D. 354, 357 (S.D.N.Y. 1968).*

Forest's argument can also be taken as falling under Rule 60(b)(6), as "any other reason justifying relief." Motions under that subsection are not subject to the one-year limitation period.

The Second Circuit requires a district [*7] court which is deciding whether to vacate a default judgment to consider whether: (1) the default was willful, (2) setting aside the judgment would prejudice the plaintiff, and (3) the defendant has a meritorious defense to the action. *Enron Oil Co. v. Diakuhara, 10 F.3d 90, 96 (2nd Cir. 1993).* The court must consider all three factors, *Commercial Bank of Kuwait v. Rafidain Bank, 15 F.3d 238, 243 (2nd Cir. 1994),* and should resolve any doubts in favor of the defaulting party. *Enron, 10 F.3d at 96.*

Forest's only defense is his argument that all of National Union's claims are governed by the Texas four-year statute of limitations for actions on a contract and are thus untimely: National Union's claim as subrogee under the Note accrued when the Venture failed to make the required payments (which were due on March 1, 1988 and March 1, 1989); and its claim under the indemnity agreement accrued no later than May 2, 1989, when it

Case 1:05-cv-00165-JJF    Document 53-9    Filed 08/16/2005    Page 4 of 5

Page 3
1996 U.S. Dist. LEXIS 13014, *7

made the last payment on the Venture's behalf. National Union filed the complaint in this action more than four years later on February 28, 1994.

With respect to its claim under the Note, National Union's opposition papers do not challenge Forest's [*8] analysis. The Note provides that it "shall be governed by and construed and enforced in accordance with the laws of the State of Texas." (Complaint, Ex. A, at 2.) Accordingly, it seems that Forest has a good defense to the Note, under the Texas statute of limitations.

With respect to the claim under the indemnity agreement, however, National Union urges that the New York six-year limitations period applies. See *N.Y. C.P.L.R. § 213*. The indemnity agreement provides that "the rights and liabilities of the parties hereto shall be determined in accordance with the laws of the State of New York." (Complaint, Ex. C, P 13.)

Forest counters that the indemnity agreement's choice of law provision is invalid under section 35.53 of Texas's Business and Commerce Code, which requires certain contractual provisions, including choice of law clauses, to be "set out conspicuously" to ensure they are noticed. However, that requirement applies only to contracts for the sale, lease, exchange or other disposition of goods for $50,000 or less. See *Tex. Bus. & Com. Code Ann. § 35.53(a)(1)*. The indemnity agreement was not a contract for the sale of goods, nor was the amount involved—$106,250.00—less [*9] than $50,000, so section 35.53 does not apply or invalidate the choice of law provision.

Forest also contends that New York's "borrowing statute" requires the application of Texas's four-year limitations period to the claim under the indemnity agreement. When federal jurisdiction is based on diversity of citizenship, a New York federal court must apply the substantive law of New York, including its borrowing statute. *Stafford v. International Harvester Co., 668 F.2d 142, 147 (2nd Cir. 1981)*. That statute provides:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

*N.Y. C.P.L.R. § 202* (McKinney 1990 & Supp. 1996).

The claim under the indemnity agreement accrued in favor of National Union, which is a Pennsylvania corporation with its principal place of business in New York.

There is authority which seems to hold that a corporation's residence is its state [*10] of incorporation: in American Lumbermen's Mutual Casualty Co v. Cochrane, the court stated, "A corporation is a resident of the state which creates it." See *129 N.Y.S.2d 489, 491* (Sup. Ct. N.Y. Cty.), aff'd without opinion, *134 N.Y.S.2d 473* (1st Dep't 1954), aff'd without opinion, *309 N.Y. 1017 (1956)*.

However, the actual holding in Lumbermen's is narrower the court's sweeping language suggests. In that case, the corporate plaintiff argued that it was a resident of New York for purposes of the borrowing statute because it had qualified to do business and maintained an office there; it did not claim that its principal place of business was in New York. See *129 N.Y.S.2d at 491*.

More recently, courts have stated that a corporation's state of incorporation is its domicile, and its principal place of business is its residence. See *McMahan & Co. v. Donaldson, Lufkin & Jenrette, 727 F. Supp. 833, 834 (S.D.N.Y. 1989)* (questioning continuing vitality of Lumbermen's); *Allegaert v. Warren, 480 F. Supp. 817, 820 (S.D.N.Y. 1979)* (distinguishing Lumbermen's). That approach does not thwart the purpose of the borrowing statute—preventing foreign plaintiffs from [*11] forum shopping, e.g., *Sack v. Low, 478 F.2d 360, 367 (2nd Cir. 1973)*—and is followed here.

Because National Union is a resident of New York, the borrowing statute does not compel application of another state's statute of limitations and the claim under the indemnity agreement is timely.

National Union seeks to recover the same principal amount—$56,250—on its claims under the Note and indemnity agreement. The amount of the default judgment included interest, calculated in the manner set forth in the indemnity agreement, and costs of collection (including attorneys' fees), recovery of which was authorized in the indemnity agreement. Thus, dismissal of the claim under the Note (if the judgment were vacated) would not reduce the amount National Union recovers in the default judgment.

* * * *

Since Forest does not have a meritorious defense to National Union's claim under the indemnity agreement, it is unnecessary to resolve the factual issues whether Forest's default was willful and whether National Union would be prejudiced if the judgment were vacated.

**CONCLUSION**

Forest's motion to vacate the default judgment is denied.

So ordered.

1996 U.S. Dist. LEXIS 13014, *11

Dated: New York, New [*12] York  
September 4, 1996

LOUIS L. STANTON  
U. S. D. J.