# EXHIBIT K

LEXSEE 1991 DEL. SUPER. LEXIS 229

**W & G Milford Associates, L.P., et al. v. Jeffcor, Inc., et al.**

C. A. No. 89C-JN-161

Superior Court of Delaware, New Castle

*1991 Del. Super. LEXIS 229*

**January 15, 1991, Submitted
April 12, 1991, Decided**

**COUNSEL:** [*1]

Peter C. Campbell, Esq., Morris, James, Hitchens & Williams, Wilmington, Delaware.

Robert C. Wolhar, Esq., Wolhar & Gill, Georgetown, Delaware.

**JUDGES:**

Jerome O. Herlihy, Judge.

**OPINIONBY:**

HERLIHY

**OPINION:**

Decision After Inquisition

This is the Court's decision following an inquisition hearing on the issue of damages. Plaintiffs W & G Milford Associates, L.P., and W & G Seaford Associates, L.P., [plaintiffs] are landlords who have sued for unpaid rent for two liquor stores. The defendants are the tenants, Jeffcor, Inc., t/a James' Package Store and Chriscor, Inc. t/a James' Package Store and the two individual lease guarantors, Jeffrey E. and Christopher R. James [defendants]. Defendants still occupy both stores as plaintiffs did not seek dispossession.

Plaintiffs obtained a default judgment against defendants on December 15, 1989. An inquisition hearing was ordered to set damages. Defendants' motion to vacate the default judgment was later denied. W & G Milford Associates, L.P., et al. v. Jeffcor, Inc., et al., Del.Super., C.A.No. 89C-JN-161, Babiarz, J. (September 14, 1990). In that ruling, the Court indicated that any defenses relating to the amount of damages owed were preserved for the inquisition. [*2] Id. at 5.

The inquisition hearing occurred on January 15, 1991 and consumed most of that day.

I. FACTS

After listening to the witnesses, reviewing their testimony and the exhibits introduced, the following constitutes the Court's factual findings.

Milford Store *

  * Any paragraphs marked with an asterisk will be factual findings applicable to both leases.

1. Plaintiff W & G Milford Associates, L.P., leased a portion of a shopping center it owned to Jeffcor, Inc., t/a James' Package Store. The area leased was for a liquor store and consists of approximately 2,500 square feet. The original lease was for three years. That term has expired and the lease is now on a month-to-month basis.

2. Defendants Jeffrey and Christopher James were and are guarantors on the lease.

3. The initial rent for this store was $1,562.50 per month. It is now $2,085.334 for rent only and $2,360.61 per month, including such items as pro rata insurance, taxes and maintenance.

*4. There was a change in the owner's (plaintiffs') property [*3] managers around April 1, 1988.

5. There was apparently a rental arrearage as of that date amounting to $25,600. Plaintiffs' prior manager charged late charges totaling $5,265.88 n1 of April 1, 1988 and unpaid maintenance and insurance charges totaling $6,720 as of the same date. At the inquisition hearing plaintiffs withdrew their request for the $6,720. The Court finds that due to the incompleteness of proof, plaintiffs have not met their burden of proof as to the nonpayment of the other charges of $5,266.

  n1 As to the final award, all figures will be rounded off to the nearest dollar.

6. The Court finds that plaintiffs have met their burden as to the unpaid rent as of April 1, 1988 in the amount of $25,600.

7. Since April 1, 1988, plaintiffs have not debited defendants for late charges and none are sought in plaintiffs' claim. Plaintiffs have continued to charge defendants for pro rata insurance, taxes and maintenance fees. The Court is satisfied that these charges have been properly calculated, charged and [*4] proven.

8. Plaintiffs are entitled to unpaid rent prior to and after April 1, 1988 to date and with the deductions noted that amount to a gross sum of $101,063.

*9. Defendants claim certain credits and setoffs from this sum.

*10. Defendants ask for credit for $6 per square yard in using carpeting, as opposed to tile, as provided in paragraph 8 of exhibit C of the lease. The Court is satisfied that defendants have not received that credit [2,500 / 9 = 278 sq. yards, 278 x 6 = $1,668].

*11. Defendants next seek credit for what amounts to a bridge loan to cover certain start-up expenditures they had to make but were unable to use when needed due to the store not being available when indicated.

*12. Defendants claim the shopping center did not open when promised and this caused them to pay interest longer than they would have. Their loan was from Sussex Trust and six and one-half months of interest paid (starting January 1, 1985) came to $8,398. Occupancy started sooner than July 1985 and some of the equipment had to be paid for up front and ordered for in advance. The dates of delivery and order were unclear. With the necessary lag time and lack of clarity of proof and the date of [*5] occupancy, the Court finds defendants are entitled to a credit of $3,202 ($ 8,398 less the May through July payments divided by 2 – loan covered both stores involved).

*13. Defendants next seek a credit against rent due because they had to hire and keep an employee who, due to plaintiffs' delay in building the shopping center, was unable to work in the Milford store or the Seaford store. (See para. 33, infra).

14. The lease was signed June 29, 1984. The shopping center was not complete. Defendants did not prove specific times plaintiffs indicated the store would be open and what the specific delay was in opening the store. Defendants' employee was kept on another liquor store's payroll starting September 30, 1984. The Court is convinced, as defendant Jeffrey James said, that this employee was a good employee and continuing her employment was a way to keep her for the new stores rather than risking a gap in employment and possible loss to another employer.

*15. The Court finds that any unnecessary cost to defendants for keeping this employee relates only to three months. Payroll and taxes for those months would be $3,003 for both stores, thus, $1,502 for the Milford store.

*16. [*6] Defendants also seek a setoff against rent due under addendum #4, § 3.1F(b) which states tenant will pay, in addition to the annual fixed rate, 5% of all sales in excess of $408,000 in each of the first four years of the lease. Defendants claim that plaintiffs promised this amount of annual return and that they entered this lease based on that representation.

*17. Defendants claim they have never achieved this level of sales. They claim they are entitled to a setoff of their losses or shortfall of sales under $408,000.

*18. Defendants have the burden of proving that the discussion of the $408,000 prior to the lease execution constituted a premise for entering into the lease. The Court finds that the lease provision in question is a frequent provision in commercial leases allowing the landlord to share in the proceeds of a tenant when sales exceed a certain sum.

*19. The discussion of $408,000 prior to executing the lease was designed to encourage defendants to sign the lease, not induce them to sign it in a fashion where they can now claim material misrepresentation entitling them to a setoff of losses on the balance between actual sales and $408,000.

*20. Defendants also claim [*7] that they were induced to sign the Milford lease by promises of full rental of stores in the Milford Crossroads Shopping Center and that certain tenants would be present. The Court finds that the defendants were not materially misled into signing the lease when it later developed that not all stores were rented and some major tenants left after opening. In this instance, defendants would elevate commercial puffery to ironclad guarantees.

*21. Defendants next contend they reached an agreement with plaintiffs for rent abatement and credit against rent arrearage for losses incurred, the loan interest, the employee's salary and other expenses. They claim this entitlement as a result of a meeting in the summer of 1988 between Jeffrey James, Edwin James (the manager and real operator of this and the Seaford store) and a representative of plaintiffs' shopping center manager.

*22. After hearing the testimony of those persons, the Court finds that there was a discussion of the possibility of such action or adjustment. However, plaintiffs' repre-

sentative made it clear he would have to take any proposal back to the owners for their approval. Jeffrey James understood that any discussion in that [*8] meeting was subject to the owner's approval.

*23. The owners never approved. There was no meeting of the minds.

*24. The Court finds that plaintiffs' representative at that meeting requested defendants to document their losses in order for plaintiffs to consider abatement. They never did so.

*25. The underlying lease commitments remain.

Seaford Store

26. Plaintiff W & G Seaford Associates, L.P., entered into a lease on June 28, 1984 with defendants Chriscor, Inc., t/a James Package Store, lessee, and Jeffrey and Christopher James, as guarantors.

27. The terms of this lease were for three years and covered space of approximately 2,500 square feet in the Seaford Village Shopping Center. The lease is now on a month-to-month basis.

28. The initial rent for the stores was $1,562 per month. Without pro rata insurance, taxes and maintenance fees, the current monthly rental is $2,043.63 and with those items it is $2,292.72.

29. As of April 1, 1988, there was a rental arrearage for this store of $27,273. There was also accumulated late payment fees and delinquent tax and other charges as of that date. For the reasons set out in para. 5, supra, these items will be excluded from [*9] plaintiffs' claim.

30. The Court finds that plaintiffs have met their burden of showing $27,273 in back rent was due as of April 1, 1988.

31. As with the Milford lease (para. 7, supra), plaintiffs have not charged late fees to defendants since April 1, 1988. Plaintiffs have properly calculated and charged defendants since that date with their pro rata share under the lease of insurance, taxes and maintenance fees.

32. After making the above adjustments, plaintiffs are entitled to recover unpaid rent, before and after April 1, 1988, and the pro rata charges since that date of a gross sum of $102,882.

33. The Court's findings as to the Milford lease relating to credits due the defendants apply to the Seaford lease with appropriate adjustments, where necessary (paras. 10-25, supra).

Summary

34. With credits as noted above, plaintiff W & G Milford Associates, L.P., is awarded judgment against defendants Jeffcor, Inc. t/a James' Package Store, and Jeffrey and Christopher James in the amount of $94,691.

35. With credits as noted above, plaintiff W & G Seaford Associates, L.P., is awarded judgment against defendants Chriscor, Inc. t/a James' Package Store, and Jeffrey and Christopher [*10] James in the amount of $96,510.

Plaintiffs seek an award of court costs against the defendants. The individual defendants reside in Sussex County. The corporate defendants have their principal place of business in Kent and Sussex Counties. This suit was filed in New Castle County. Based on *10 Del. C. § 5102*; Rayne v. Greely, Del.Super., C.A.No. 79C-MY-37, Taylor, J. (February 20, 1981) and Zazanis v. Jarman, Del.Super., C.A.No. 87C-SE-63, Herlihy, J. (March 20, 1990), plaintiffs' request for costs is *DENIED*.

*IT IS SO ORDERED.*