# EXHIBIT L

LEXSEE 2005 U.S. DIST. LEXIS 12064

**WM HIGH YIELD FUND, et al., Plaintiffs, v. MICHAEL A. O'HANLON, et al., Defendants.**

**CIVIL ACTION NO. 04-3423**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

*2005 U.S. Dist. LEXIS 12064*

**May 13, 2005, Decided**
**May 13, 2005, Filed; May 16, 2005, Entered**

**DISPOSITION:** [*1] Defendants' Motions to Dismiss GRANTED with respect to Counts III (as it pertains to securities purchased prior to July 19, 2001), V, VI, VII, VIII, IX and X, and DENIED with respect to Counts I, II, III (as it pertains to purchases on or subsequent to July 19, 2001), and IV.

**LexisNexis(R) Headnotes**

**COUNSEL:** For WM HIGH YIELD FUND, WM INCOME FUND, AT HIGH YIELD FUND, WM VT INCOME FUND, AT INCOME FUND, EVERGREEN FUNDING LTD/EVERGREEN FUNDING CORP., STELLAR FUNDING, LTD., Plaintiffs: JOHN A. CURSEADEN, LAUREN E. WAGNER, STUART M. GRANT, GRANT & EISENHOFER, P.A., WILMINGTON, DE.

For MICHAEL A. O'HANLON, Defendant: RICHARD L. SCHEFF, MONTGOMERY MCCRACKEN WALKER & RHOADS LLP, PHILADELPHIA, PA; JEFFREY S. FELDMAN, MONTGOMERY MCCRACKEN WALKER & RHOADS, PHILA, PA.

For STEVEN R. GARFINKEL, Defendant: MAURA E. FAY, DILWORTH PAXSON LLP, PHILADELPHIA, PA.

For RICHARD MILLER, Defendant: JAMES J. ROHN, PATRICIA M. HAMILL, PAUL J. GRECO, CONRAD O'BRIEN GELLMAN & ROHN, P.C., PHILADELPHIA, PA.

For ANTHONY J. TUREK, Defendant: KEVIN F. BERRY, WILLIAM J. TAYLOR, COZEN O'CONNOR, PHILADELPHIA, PA; STUART M. GRANT, GRANT & EISENHOFER, P.A., WILMINGTON, DE.

For JOHN P. BOYLE, Defendant: KELLY D. ECKEL, MATTHEW [*2] A. TAYLOR, ROBERT E. KELLY, PATRICK LOFTUS, DUANE MORRIS LLP, PHILADELPHIA, PA.

For TERRY W. CADY, MATTHEW COLASANTI, Defendants: BRUCE S. HAINES, DANIEL SEGAL, MATTHEW HAMERMESH, PAUL W. KAUFMAN, HANGLEY, ARONCHICK, SEGAL & PUDLIN, PHILADELPHIA, PA.

For RAYMOND FEAR, Defendant: PATRICK LOFTUS, DUANE MORRIS LLP, PHILADELPHIA, PA.

For GERALD COHN, Defendant: THOMAS A. LEONARD, WILLIAM J. LEONARD, OBERMAYER, REBMANN, MAXWELL & HIPPEL, LLP, PHILADELPHIA, PA.

For HARRY T.J. ROBERTS, Defendant: DAVID M. LAIGAIE, MILLER ALFANO & RASPANTI, PHILADELPHIA, PA; GREGORY P. MILLER, MICHAEL A. MORSE, STEPHEN G. STROUP, MILLER, ALFANO & RASPANTI, PC., PHILA, PA.

For WILLIAM S. GOLDBERG, JOHN E. MCHUGH, NATHAN SHAPIRO, Defendants: DAVID W. MARSTON, JR., KAREN PIESLAK POHLMANN, MARC J. SONNENFELD, MORGAN, LEWIS & BOCKIUS LLP, PHILADELPHIA, PA.

For DELOITTE & TOUCHE, LLP, HAROLD NEAS, Defendants: DAVID L. COMERFORD, EDWARD F. MANNINO, JEFFERY A. DAILEY, AKIN GUMP STRAUSS HAUER & FELD LLP, PHILADELPHIA, PA; SUZANNE MARIE SWEENEY, AKIN GUMP STRAUSS HAUER & FELD, PHILADELPHIA, PA.

For ONCURE TECHNOLOGIES CORPORATION, JEFFREY GOFFMAN, Defendants: DAVID S. HOFFNER, DECHERT [*3] LLP, NEW YORK, NY; ALESSANDRO MARTUSCELLI, DECHERT LLP, PHILA, PA.

For PRESGAR IMAGING, LLC, Defendant: ROBERT L. HICKOK, PEPPER HAMILTON LLP, PHILADELPHIA, PA.

For DOLPHIN MEDICAL, INC., Defendant: JEFFREY S. SALTZ, LAW OFFICE OF JEFFREY S. SALTZ P.C., PHILADELPHIA, PA; LEAH J. DOMITROVIC, KATTEN, MUCHIN, ZAVIS, ROSENMAN, CHICAGO, IL.

**JUDGES:** Davis, J.

**OPINIONBY:** Davis

**OPINION:**

**AMENDED MEMORANDUM**

Davis, J.

**I. INTRODUCTION**

This Amended Memorandum corrects a typographical error in the Court's Memorandum of April 29, 2005 (Doc. No. 108). It does not alter the accompanying Order.

Presently before the Court are Defendants' Motions to Dismiss (Doc. Nos. 37, 38, 39, 40, 41, 42, 43, 45, 47, 49, 50, 51, 52, 53, and 55) ("Mots. to Dismiss"), Plaintiffs' Omnibus Response in Opposition (Doc. No. 63) ("Pls.' Opp."), and Defendants' Replies thereto (Doc. Nos. 66, 67, 68, 69, 71, 73, 74, 75, 78, 79, 80, 86, and 87) ("Defs.' Replies"). For the reasons set forth herein, Defendants' motions to dismiss are granted in part and denied in part.

**II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This action is brought by purchasers of certain bonds issued by DVI, Inc. ("DVI") [*4] who were allegedly damaged by Defendants' violations of the federal securities laws and state law with regard to the financial condition and results of operations of DVI, Inc., which artificially inflated the prices of DVI's publicly-traded securities. Defendants in this action are: (1) DVI Executives Michael O'Hanlon, former President and Chief Executive Officer of DVI, a director of subsidiary DVI FS, and Member of DVI's Executive Committee; Stephen Garfinkel, former Executive Vice President and Chief Financial Officer of DVI and Member of the DVI Executive Committee; Richard Miller, Executive Vice President of DVI, President of subsidiary DVI FS, and a Member of the DVI Executive Committee; Anthony Turek, Executive Vice President, Chief Credit Officer, and a Member of the Executive Committee of DVI; John Boyle, Vice President and Chief Accounting Officer of DVI; Terry Cady, Senior Vice President of DVI and President and Director of subsidiary DVI BC; Matthew Colisanti, internal consultant at DVI and head of its loan workout group; Raymond Fear, Vice President of credit for DVI; (2) Members of DVI's Board of Directors Gerald Cohn, a Member of Compensation and Credit Committees and [*5] an employee of DVI; Harry Roberts, a Member of Compensation Committee, a Director of other DVI companies, and an Employee of DVI; William Goldberg, a Member of the Audit and Compensation Committees; John McHugh, a Member of Audit Committee; Nathan Shapiro, a Member of Audit Committee; and (3) outside entities and individuals Deloitte & Touche, DVI's Auditor; Harold Neas, lead auditor from Deloitte & Touche on the DVI matter; Oncure Technologies Corp., an owner of radiology/oncology facilities; Jeffrey Goffman, Chief Executive Officer of OnCure; PresGar Imaging LLC, an owner and operator of imaging facilities; and Dolphin Medical Inc., an owner of cancer treatment centers. n1

n1 Adopting the language used by the parties, named executives and board members may be collectively referred to as "the Individual Defendants," while Oncure, PresGar, and Dolphin may be collectively referred to as "the Special Relationship Entities."

Nonparty DVI is a now-bankrupt Delaware corporation that, through its subsidiaries, DVI [*6] FS and DVI BC, operated as a finance company for healthcare providers. (Compl. PP3, 45.) DVI FS and DVI BC secured the financing they provided to borrowers with liens on substantially all of a healthcare provider's assets, as well as a provider's accounts receivable. (Compl. P3.)

Plaintiffs allege that beginning in at least 1999 and continuing until DVI's August 2003 bankruptcy filing, Plaintiffs allege DVI's directors and officers issued "false and misleading statements regarding DVI's business and operations; revenue and earnings; and the liquidity and overall growth of the Company's business," (Compl. P4) as well as "engaged in a fraudulent scheme to deceive Plaintiffs and the investing public as to the true financial condition of DVI to artificially inflate and maintain the market price of DVI's securities and enable DVI to raise new capital to fund its growth" by making "material misrepresentations and omissions regarding adverse facts and the financial condition of DVI's business." (Compl. P6.)

Case 1:05-cv-00165-JJF    Document 53-13    Filed 08/16/2005    Page 4 of 15

Page 3
2005 U.S. Dist. LEXIS 12064, *6

Throughout the perpetration of the allegedly fraudulent scheme, DVI's financial statements were audited by Defendant Deloitte & Touche LLP ("Deloitte"), which "issued unqualified opinions [*7] on DVI's financial statements for fiscal years 1999, 2000, 2001, and 2002." (Compl. P5.) Deloitte resigned in May 2003 over an accounting dispute "concerning DVI's accounting treatment for a series of transactions at a Corpus Christi, Texas radiology facility ("the Corpus Christi Facility") from September 2001 to June 2002." (Compl. P7.) Deloitte further indicated that DVI's accounting improprieties were not limited to the Corpus Christi Facility, cited material weaknesses in the Company's internal controls, and refused to certify DVI's March 2003 10-Q financial statement. (Id.) "Deloitte had previously erroneously and recklessly approved DVI's improper accounting for the Corpus Christi–related transactions." (Id.)

Deloitte's refusal to certify, and the SEC's refusal to accept, the March 2003 10-Q financial statement "triggered a number of defaults" and on August 1, 2003, DVI revealed "that it would not be able to make interest payments on the Senior Notes due to severe liquidity constraints" and "that it had depleted its available credit facilities." (Id.) On August 13, 2003, DVI disclosed that it intended to file for Chapter 11 bankruptcy protection in light of "recent [*8] discovery of apparent improprieties in its prior dealings with lenders involving misrepresentations as to the amount and nature of collateral pledged to lenders." (Compl. P8 (quotation marks omitted).)

The Bankruptcy Court appointed an Examiner, R. Todd Neilson (the "Examiner"), to investigate the circumstances surrounding DVI's demise. The Examiner "investigated the financial transactions dealing with the assets, liabilities, operations, and financial condition and accounting practices of DVI" and "concluded that DVI, at the direction of [Defendant Michael] O'Hanlon [DVI's CEO] and other officers and directors, attempted 'to meet pressing liquidity needs and compensate for inadequate capitalization by various improper or highly suspect measures.'" (Compl. P11.)

On July 19, 2004, Plaintiffs filed a Complaint alleging violations of the federal securities laws, state common law, and the securities laws of Washington against the Individual Defendants, Deloitte and Harold Neas, and the three Special Relationship Entities, with whom DVI entered into transactions allegedly to improperly obfuscate delinquent or troubled loans. (Compl. P91.)

## III. LEGAL STANDARD

When determining [*9] a Motion to Dismiss pursuant to *Rule 12(b)(6)*, the court may look only to the facts alleged in the complaint and its attachments. *Jordan v. Fox Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994)*. Dismissal for failure to state a claim is appropriate when it clearly appears that plaintiff can prove no set of facts in support of the claim which would entitle him to relief. See *Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*; *Robb v. City of Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984)*. Such a motion tests the legal sufficiency of a claim while accepting the veracity of the claimant's allegations. See *Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)*; *Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987)*; *Winterberg v. CNA Ins. Co., 868 F. Supp. 713, 718 (E.D. Pa. 1994)*, aff'd, *72 F.3d 318 (3d Cir. 1995)*. A court, however, need not credit conclusory allegations or legal conclusions in deciding a motion to dismiss. See *General Motors Corp. v. New A.C. Chevrolet, Inc., 263 F.3d 296, 333 (3d Cir. 2001)*; *Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)*; [*10] *L.S.T., Inc. v. Crow, 49 F.3d 679, 683-84 (11th Cir. 1995)*. A claim may be dismissed when the facts alleged and the reasonable inferences therefrom are legally insufficient to support the relief sought. See *Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc., 836 F.2d 173, 179 (3d Cir. 1988)*.

## IV. DISCUSSION

### A. Count I: Section 10(b) Claim

#### 1. Section 10(b) and Rule 10b-5 Legal Standards

Defendants move to dismiss Count I of the Complaint, which asserts a securities fraud claim against all of the Defendants pursuant to *Section 10(b) of the Exchange Act* and *Rule 10b-5* promulgated thereunder.

Section 10(b) of the Exchange Act makes it unlawful to "use or employ, in connection with the purchase or sale of any security, . . . any manipulative device or contrivance in contravention of such rules and regulations as the Commission may prescribe." *15 U.S.C. § 78j(b)*. "*Section 10(b)* is enforced through *Rule 10b-5*, which [among other things] creates a private cause of action for investors harmed by materially false or misleading statements." *In re Alpharma, Inc. Sec. Litig., 372 F.3d 137, 147 (3d Cir. 2004)*. [*11] *Rule 10b-5* makes it illegal for any person,

> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course

Case 1:05-cv-00165-JJF   Document 53-13   Filed 08/16/2005   Page 5 of 15

Page 4
2005 U.S. Dist. LEXIS 12064, *11

of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

*17 C.F.R. § 240.10b-5.*

### 2. Rule 10b-5(b) Claim

Though the Complaint does not so specify, it appears that Plaintiffs contend that only the Individual Defendants and Deloitte violated *Rule 10b-5(b)*. The Special Relationship Entities are not alleged to have made any misstatements or omissions and are too far removed from the statements at issue to be held liable therefor.

To state a securities fraud claim under *Section 10(b)* and *Rule 10b-5(b)*, a plaintiff must plead that a defendant (1) made a misrepresentation or omission of material fact; (2) with scienter; (3) in connection with the purchase or sale of a security; (4) upon which plaintiff [*12] reasonably relied; and (5) that plaintiff's reliance was the proximate cause of their injury. *In re Alpharma, 372 F.3d 137, 147 (3d Cir. 2004)* (citation and quotation marks omitted).

Further, Plaintiffs must meet the heightened pleading requirements of the Private Securities Litigation Reform Act, *15 U.S.C. § 78u-4 et seq.* ("PSLRA"), which is applicable to actions brought under *Section 10(b)*, as well as the heightened pleading requirements of *Federal Rule of Civil Procedure 9(b)*, which applies to averments of fraud.

The PSLRA was enacted in 1995 to curb abuses in private class action securities litigation. See H.R. Conf. Rep. No. 104-369, at 32-37 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 730-32. It implemented a host of procedural and substantive reforms, including "more stringent pleading requirements to curtail the filing of meritless lawsuits." *In re Advanta Sec. Litig., 180 F.3d 525, 532 (3d Cir.1999)* (quoting H.R. Conf. Rep. No. 104-369, at 37). Under the PSLRA, a *Rule 10b-5(b)* claim must "specify each statement alleged to have been misleading, the reason or reasons why [*13] the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, state with particularity all facts on which that belief is formed." Moreover, to properly plead scienter the complaint must, "with respect to each act or omission[,] . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *15 U.S.C. § 78u-4(b)*. "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, n2 or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *In re Burlington Coat Factory, 114 F.3d 1410, 1418 (3d Cir. 1997)* (citation omitted). Plaintiffs in the instant matter do not rely upon allegations of motive and opportunity. (Pls.' Opp. at 27 n.10.) Therefore, to properly plead scienter, Plaintiffs must allege at least recklessness, that is, "an extreme departure from the standards of ordinary care." *In re Burlington Coat Factory, 114 F.3d at 1418* (citation and quotation [*14] marks omitted).

> n2 "Plaintiffs pleading scienter through motive and opportunity must support their allegations with 'facts stated with particularity' that 'give rise to a strong inference of scienter.'" *In re Alpharma Inc. Sec. Litig., 372 F.3d 137, 149 (3d Cir. 2004)* (citations and internal quotation marks omitted).

Further, *Federal Rule of Civil Procedure 9(b)* requires that plaintiffs allege with particularity the "who, what, when, where and how" elements necessary to establish the alleged misstatement or manipulation. See *Advanta, 180 F.3d at 525, 537 (3d Cir. 1999)*.

In sum, to survive the instant Motions to Dismiss, Plaintiffs must identify: (1) specific misrepresentations or omissions of material fact, (2) the reason or reasons why the statements are misleading, and (3) specific facts that demonstrate who made them, when they were made, what was said, and that they were made knowingly or recklessly. If Plaintiffs have insufficient [*15] knowledge to so do, they must make sufficient allegations on information and belief and aver that more specific information is in the exclusive control of the Defendants. See *Marra v. Tel-Save Holdings, Inc., 1999 U.S. Dist. LEXIS 7303, 1999 WL 317103, at *5 (E.D. Pa. May 18, 1999)*.

Defendants argue that (1) Plaintiffs have not properly attributed statements to specific Defendants; (2) Plaintiffs' allegations of fraud are insufficient under the *Rule 9(b)* and the PSLRA; and (3) the Complaint does not adequately plead the scienter element of a *Rule 10b-5(b)* claim.

### a. Attribution of statements or omissions to defendants

#### i. The Group Pleading Doctrine

Under *Rule 10b-5(b)*, "plaintiffs must first establish that the defendants made a materially false or misleading statement, or that the defendants omitted to state a fact such that other statements of fact actually made were rendered materially misleading." *Marra v. Tel-Save Holdings, Inc., 1999 U.S. Dist. LEXIS 7303, 1999 WL 317103, at *4 (E.D. Pa. May 18, 1999)*. Defendants argue that Plaintiffs have not properly attributed statements

to them because the group pleading doctrine, on which Plaintiffs rely, is not valid in the Third Circuit subsequent [*16] to the enactment of the PSLRA.

Plaintiffs' 10b-5 claim alleges that the Individual Defendants as a group are liable for false or misleading statements and omissions contained in several different press releases issued by DVI and in DVI's quarterly and annual earnings reports that were filed with the SEC. To attribute the alleged misleading statements and omissions to the Individual Defendants, Plaintiffs allege the following:

> It is appropriate to treat defendants O'Hanlon, Garfinkel, Miller, Turek, Boyle, Cady, Colasanti, Fear, Roberts, Goldberg, McHugh, Shapiro, and Cohn **as a group for pleading purposes** and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of these defendants who participated in the day-to-day management of DVI, and by virtue of their high-level positions within the company, were privy to confidential information regarding DVI and its business and operations, including its undisclosed impaired assets and delinquent accounts. Each of these defendants was responsible for or participated in drafting, producing and disseminating [*17] the false and misleading statements alleged herein and orchestrating the deceptive scheme to manipulate the Company's credit and accounting practices and policies.

(Pl.'s Compl. P44 (emphasis added).)

Under the group pleading doctrine, the identification of the individual sources of statements is unnecessary when the fraud allegations arise from the misstatements or omissions in documents, such as annual reports, prospectuses, registration statements, press releases or other "group-published information" that presumably constitute the collective actions of those individuals involved in the day-to day affairs of the corporation. *In re Aetna Inc. Sec. Litig., 34 F. Supp. 2d 935, 949 (E.D. Pa. 1999)*. While the Third Circuit has not yet addressed the question, the majority of district courts in this Circuit to address the issue have held that the group pleading doctrine did not survive the PSLRA. See *Winer Family Trust v. Queen, 2004 U.S. Dist. LEXIS 19244, 2004 WL 2203709, at *6 (E.D. Pa. Sept. 27, 2004); Jones v. IntelliCheck, Inc., 274 F. Supp. 2d 615, 646 (D.N.J. 2003); In re Digital Island Sec. Litig., 223 F. Supp. 2d 546, 553 (D. Del. 2002);* [*18] *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp, 142 F. Supp. 2d 589, 620 (D.N.J. 2001); Marra v. Tel-Save Holdings, Inc., 1999 U.S. Dist. LEXIS 7303, 1999 WL 317103 (E.D. Pa. May 18, 1999)* (all holding that the group pleading doctrine does not survive the PSLRA). n3 Courts holding that the doctrine does not survive have reasoned that "to permit a judicial presumption as to particularity simply cannot be reconciled with the statutory mandate that plaintiffs must plead specific facts as to each act or omission by the defendant." *Marra, 1999 U.S. Dist. LEXIS 7303, [WL] at *5*. In light of the prevailing case law in this Circuit and the strong policy reasons elucidated therein, the Court concludes that Plaintiffs cannot rely on the group pleading doctrine to plead a *Rule 10b-5* claim.

> n3 But see *In re U.S. Interactive, Inc. Sec. Litig., 2002 U.S. Dist. LEXIS 16009, 2002 WL 1971252, at *4 (E.D. Pa. Aug. 23, 2002); In re Rent-Way Sec. Litig., 209 F. Supp. 2d 493, 517-18 (W.D. Pa. 2002); In re Aetna Inc. Sec. Litig., 34 F. Supp. 2d 935 (E.D. Pa. 1999)* (all holding that the group pleading doctrine *does* survive the PSLRA).

[*19]

### ii. Allegations of Statements or Omissions made on "Information and Belief"

Plaintiffs assert they have set forth sufficient allegations against each Defendant such that reliance on the Group Pleading Doctrine is unnecessary. (Pls.' Opp. at 51-55.) The PSLRA does permit a plaintiff who alleges that a defendant made a misstatement or omission to so assert on information and belief, but requires that "the complaint . . . state with particularity all facts on which that belief is formed." *15 U.S.C.A. § 78u-4(b)(1)*. In the Third Circuit, pleadings made on information and belief satisfy the PSLRA when a plaintiff pleads with particularity sufficient facts to support alleged beliefs. *Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp., 394 F.3d 126 (3d Cir. 2004)*. Nevertheless, the *10b-5(b)* claim against many of the individual defendants fails to plead with particularity alleged misstatements or omissions attributable each of them.

A review of the Complaint elucidates that the following Individual Defendants are not alleged to have made any statements: Turek, Cady, Colisanti, Fear, and Miller. Plaintiffs assert that these Defendants are liable [*20] for statements made because they were "involved in the day-to-day business of DVI's lending and credit departments, . . . which created the underlying fraudulent documentation that was eventually incorporated into DVI's financial statements and then disseminated to the public." (Pls.'

Case 1:05-cv-00165-JJF    Document 53-13    Filed 08/16/2005    Page 7 of 15

Page 6
2005 U.S. Dist. LEXIS 12064, *20

Opp. at 50.) Defendants contend that such assertions are an improper attempt to maintain a claim for aiding and abetting material misstatements.

### iii. Defendants who have not made Statements cannot be Liable as Primary Participant under 10b-5(b) or for Aiding and Abetting

Defendants not alleged to have made statements, but whom Plaintiffs seek to hold liable n4 under *Rule 10b-5(b)* argue that (1) Plaintiffs have failed to demonstrate that they are "primary" participants in any violations and (2) as a matter of law, they cannot be held liable for aiding and abetting primary violators.

> n4 Neither Plaintiffs' Complaint nor their Memorandum in Opposition clearly delineates which *Rule 10b-5* claim Plaintiffs are asserting against which Defendants. To the best of the Court's ability to untangle these documents, it appears that Plaintiffs argue that, though they did not make any actionable statements, Defendants Turek, Cady, Colisanti, Fear, and Miller should be held responsible for statements made by others under *Rule 10b-5(b)*.

[*21]

While the Third Circuit has not yet held whether a person can be a primary violator of *§ 10(b)* on the basis of substantial participation in the creation of a company's statements, most courts have adopted a "bright line" test for primary participation, that is, in order to be liable, a person must actually make the material misstatement or omission, which must be attributed to him or her when disseminated. See *Wright v. Ernst & Young LLP, 152 F.3d 169, 174 (2d Cir. 1998)* (holding that "secondary actors . . . may no longer be held primarily liable under *§ 10(b)* for mere knowledge and assistance in the fraud"); *Shapiro v. Cantor, 123 F.3d 717, 720 (2d Cir. 1996)* (quoted in *Ravens v. Republic N.Y. Corp., 2002 U.S. Dist. LEXIS 12162, 2002 WL 1969651, at *11 (E.D. Pa. 2002))* ("Secondary actors" can only be primary violators when they make material misstatements or omissions that they "know or should know" will reach investors.); *SEC v. Lucent Techs., Inc., 363 F. Supp. 2d 708, 2005 WL 771228, at *12 (D.N.J. 2005)* ("this Court concludes that the 'bright line' test is the appropriate standard"). In so holding, the Lucent court reasoned, [*22] "Not only is this test consistent with the statutory language of *Section 10(b)*, but it more clearly delineates which types of behavior will give rise to primary liability versus secondary liability." *363 F. Supp. 2d 708, 2005 WL 771228, at *12.* This Court finds the above-cited cases more persuasive than the line that Plaintiffs argue the Court should adopt.

The "substantial participation" test n5 not only undercuts the Supreme Court's holding in Central Bank, discussed below, but it does not follow the language of the rule, which requires that one make a "statement or omission" in order to be liable. Therefore, Defendants who have not been alleged to have made any statements, Defendants Turek, Cady, Colisanti, Fear, and Miller, cannot be held liable therefore and Plaintiffs' *Rule 10b-5(b)* claim must be DISMISSED as to them.

> n5 See, e.g., *Howard v. Everex Sys., Inc., 228 F.3d 1057, 1061-62 (9th Cir. 2000)* (discussing and adopting the substantial participation test).

To the extent that Plaintiffs seek [*23] to hold these or any of the Defendants liable for aiding and abetting DVI's alleged violation of the securities laws, such a claim is precluded by *Central Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 128 L. Ed. 2d 119, 114 S. Ct. 1439 (1994)*. In Central Bank, the Supreme Court held that there is no private right of action for aiding and abetting a violation of *§ 10(b)*. *511 U.S. at 177.* The Court stated that *§ 10(b)* "does not itself reach those who aid and abet . . . [but] prohibits only the making of a material misstatement (or omission) or the commission of a manipulative act." Id. To the extent Plaintiffs seek to hold Deloitte, Neas, or the Special Relationship Entities liable as "secondary" violators of *Section 10(b)*, such claims must likewise be dismissed.

### b. Demonstrating that the statements were fraudulent or misleading

### i. Relaxing the Heightened Pleading Standard.

The Third Circuit has noted, even in cases brought under the PSLRA, that in applying *Rule 9(b)*, and its particularity requirement for pleading fraud, "courts should be 'sensitive' to situations in which 'sophisticated defrauders' may 'successfully conceal the details of their [*24] fraud.' Where it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control, the rigid requirements of *Rule 9(b)* may be relaxed." *In re Rockefeller Center Properties, Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir. 2002)* (citation omitted). While Defendants argue that a "relaxed pleading standard" does not apply to claims under the PSLRA, their reliance on *In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1328 (3d Cir. 2002)*, is misplaced. n6 Cf. *Special Situations Fund, III, L.P. v. Cocciola (In re Suprema Specialties, Inc. Sec. Litig.), 334 F. Supp. 2d 637, 648 (D.N.J. 2004); Jones v. Intelli-Check, 274 F. Supp. 2d 615 (D.N.J. 2003).*

> n6 In NAHC, the Third Circuit held only that *Rule 9(b)* does not require a relaxed pleading stan-

dard in securities fraud actions brought under the PSLRA; in the sense that the PSLRA requires particularity in pleading scienter, it conflicts with, and supercedes, *Rule 9(b)*'s provision permitting state of mind to be averred generally. *306 F.3d at 1328*. Further, following its decision in NAHC, the Third Circuit highlighted the permissibility of a relaxed standard in In re Rockefeller Center Properties, Inc., discussed above. *311 F.3d at 216*.

[*25]

"However, in order to obtain the benefit of this relaxed standard in the Third Circuit, plaintiffs must plead that the information missing from their complaint is in the exclusive control of defendants, and must also plead the extent of their efforts to obtain the information prior to filing their complaint." Id. As in *Jones*, Plaintiffs in this case have made no such allegations in their Complaint. Moreover, Plaintiffs had access to far more information than the majority of securities litigation plaintiffs by virtue of the lengthy and thorough investigation of the Bankruptcy Examiner. Accordingly, "their claims are not entitled to a relaxed pleading standard." *Jones, 274 F. Supp. 2d at 629*.

### ii. Plaintiffs have adequately pled a number of false and misleading statements made with scienter

Plaintiffs have set forth the statements they allege to be misleading at pages 36-67 of their Complaint. (Compl. PP104-81.) As required, the Complaint identifies to whom each statement is attributable, what was said, and when it was said. Though it is not interwoven with Plaintiffs' recitation of the allegedly false and misleading statements, Plaintiffs also assert [*26] facts sufficient to satisfy the pleading standard requirement that the statement be misleading and be made with at least extreme recklessness.

However, as discussed above, this Court adopts the bright line test for attribution. Therefore, only Defendants to whom a misleading statement is attributable may be held liable. While there is some question whether signatories to financial statements can be held to have adopted that document as a statement, at this stage of the litigation the Court will permit claims to proceed on that basis. See *In re Reliance Sec. Litig., 135 F. Supp. 2d 480, 503 (D. Del. 2001)* (finding that signing financial statements constitutes a statement). Therefore, the Court concludes that Plaintiffs' *Rule 10b-5(b)* claims may proceed against the following Defendants: O'Hanlon, Garfinkel, Boyle, Cohn, Roberts, Goldberg, McHugh, Shapiro, and Deloitte.

### 3. Plaintiffs' Rule 10b-5(a) and (c) Market Manipulation Claims against the SREs

Plaintiffs assert that even where a Defendant did not make a false or misleading statement, he may still be held liable as a "secondary actor" where he committed primary violations of the securities laws through manipulative [*27] or deceptive acts pursuant to *Rule 10b-5(a)* and *(c)*. See *17 C.F.R. § 240.10b-5*; *SEC v. U.S. Envt'l, Inc., 155 F.3d 107, 111 (2d Cir. 1998)*; *In re Global Crossing, Ltd. Sec. Litig., 322 F. Supp. 2d 319, 336 (S.D.N.Y. 2004)*.

Third Circuit case law on claims brought under *Rule 10b-5(a)* and *(c)* is sparse. To state a claim, a plaintiff must plead (1) that in connection with the purchase or sale of securities (2) defendant engaged in deceptive or manipulative conduct; (3) that plaintiff reasonably relied on the stock price affected by the deceptive or manipulative conduct; (4) that plaintiff's reliance proximately caused plaintiff's damages; and (5) that defendant acted with the requisite scienter. See *GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189 (3d Cir. 2001)*; *In re Global Crossing, Ltd. Sec. Litig., 322 F. Supp. 2d 319, 336 (S.D.N.Y. 2004)*; *Jones v. Intelli-Check, 274 F. Supp. 2d 615 (D.N.J. 2003)*. Further, because the second element is an averment of fraud, plaintiffs must comply with *Federal Rule of Civil Procedure 9(b)* [*28] 's requirement of particularity and, therefore, must specify what deceptive or manipulative acts were performed and what effect the scheme had on the market for the securities at issue. See *In re Blech Sec. Litig., 961 F. Supp. 569, 579-80 (S.D.N.Y. 1997)*.

Plaintiffs argue that they have stated with sufficient specificity the fraudulent acts engaged in by all of the Defendants under *10b-5(a)* and *(c)*. Indeed, given the massive fraudulent scheme set forth by Plaintiffs in their Complaint, (see Pls. Opp. at 64-65) it appears that they have set forth sufficient facts to survive a Motion to Dismiss as to all Defendants on the basis of *Rule 10b-5(a)/(c)* liability. Therefore, in this respect, Defendants' Motions to Dismiss are DENIED as to Count I.

### 4. The OnCure Defendants' Statute of Limitations Assertion

Defendants OnCure and Goffman ("the OnCure Defendants") argue that Plaintiffs' claim against them in Count I hinges entirely on the allegation that OnCure's March 1999 purchase of a Corpus Christi facility was designed to facilitate DVI's fraud by allowing DVI to cover-up "the Corpus Christi problem" and avoid a write-down. This allegedly fraudulent transaction [*29] took place in March 1999, more than five years prior to the filing of this action against the OnCure Defendants. The OnCure Defendants further argue that to the extent Plaintiffs allege fraudulent conduct other than the Corpus Christi transaction, that Plaintiffs are barred by the statute of limitations because they were on inquiry notice outside of the limitations period.

Prior to enactment of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 (2002), the limitation period required that actions under *Rule 10b-5* be "brought within one year after the discovery of the facts constituting the violation and within three years after such violation." See *15 U.S.C. § 78i(e)*. The Sarbanes-Oxley Act, which became effective July 30, 2002, extends that period and provides that "in a private right of action that involves a claim of fraud, deceit, manipulation or contrivance in contravention of a regulatory requirement concerning the securities laws" an action may be brought "not later than the earlier of—(1) two years after the discovery of the facts constituting the violation; or (2) five years after such violation." *28 U.S.C. § 1658 (b)* [*30] . OnCure argues that, while Count I is barred under either limitations period, it is the pre-Sarbanes-Oxley period that applies. (OnCure Dismiss at 12-15.)

Plaintiffs argue (1) that their assertions relate conduct other than the Corpus Christi transaction; (2) that because DVI's course of conduct was continuing, that the Court should permit them to base their action on conduct occurring outside the applicable limitations period; (3) that they were not on inquiry notice; and (4) that the Sarbanes-Oxley limitations period applies.

The Third Circuit has adopted the "continuing violation doctrine" only in the context of employment discrimination/civil rights cases. See, e.g., *Cardenas v. Massey, 269 F.3d 251, 257-58 (3d Cir. 2001)*. Therefore, this Court declines to extend the continuing violation doctrine to a totally distinct area of the law. Without the benefit of the continuing violation doctrine, it is clear that on Sarbanes-Oxley's effective date, July 30, 2002, the cause of action for the March 1999 Corpus Christi transaction had expired and could not be revived by the extended limitations period of the Act. See *Lieberman v. Cambridge Partners, LLC, 2004 U.S. Dist. LEXIS 11553, 2004 WL 1396750, at *3 (E.D. Pa. June 21, 2004)* [*31] (it is impermissible to utilize the limitation period enacted by the Sarbanes-Oxley Act to revive claims that were time-barred when the Act took effect). Therefore, Plaintiffs may not maintain claims based upon any causes of actions arising from the Corpus Christi transaction or to which the same limitations period is applicable and which arose prior to July 30, 1999.

The question of whether Plaintiffs were on inquiry notice with regard to their other claims against the OnCure Defendants prior to July 19, 2003, however, cannot be resolved without making findings of fact. Therefore, the Court declines to dismiss Count I against them under *Rule 12(b)(6)* on that ground. See *In re Lucent Technologies, Inc. Sec. Litig., 217 F. Supp. 2d 529, 542 (D.N.J. 2002)*.

**B. Count II: Section 20(a) Claim**

*Section 20(a) of the Exchange Act* establishes liability for "controlling persons" based upon violations of *Section 10(b)*. *Copland v. Grumet, 1998 U.S. Dist. LEXIS 22466, 1998 WL 256654, at *7 (D.N.J. Jan. 9, 1998)*. A plaintiff must allege (1) a violation by a controlled person or entity; (2) control of the violating person or entity by the defendant; and [*32] (3) culpable participation by the defendant in the primary violation. *In re Ravisent Techs., Inc. Sec. Litig., 2004 U.S. Dist. LEXIS 13255, 2004 WL 1563024, at *15 (E.D. Pa. July 13, 2004)*. *15 U.S.C. § 78t*.

Plaintiffs allege that the Individual Defendants "acted as controlling persons of DVI within the meaning of *Section 20(a)*." (Compl. P301). Defendants have moved for dismissal of this claim on the grounds that there cannot be liability under *§ 20(a)* where Plaintiffs have failed to allege a primary violation under *§ 10(b)*. This argument fails both because, as discussed above, Plaintiffs have sufficiently stated a *§ 10(b)* claim against the Individual Defendants and, Plaintiffs have sufficiently alleged a violation of *§ 10(b)* by nonparty DVI, Inc.. (See Compl. PP68-103.) Moreover, because Plaintiffs have sufficiently alleged a *§ 10(b)* claim against all of the Individual Defendants, Plaintiffs have likewise established the culpable participation element of a *§ 20* claim. Finally, various Individual Defendants also assert that Plaintiffs have not adequately pled that they are "controlling persons." These arguments likewise fail.

To establish that a defendant is a control person, [*33] "a plaintiff must demonstrate that 'the defendant had actual power or influence over the allegedly controlled person.'" *In re Mobile Media Sec. Litig., 28 F. Supp. 2d 901, 940 (D.N.J. 1998)* (citation omitted). "The pleading of facts that 'support a reasonable inference that [defendants] had the potential to influence and direct the activities of the primary violator' will survive a motion to dismiss." *In re Loewen Group Inc. Sec. Litig. 2004 U.S. Dist. LEXIS 16601, 2004 WL 1853137, at *26 (E.D. Pa. Aug. 18, 2004)* (citation omitted). The Complaint alleges that the Individual Defendants possessed control over the company due to their executive, managerial and/or directorial positions in the company. (Compl. PP301-02.) It also alleges that the Individual Defendants exercised the control to cause the company to commit securities fraud. (Id. at 301-303.) These allegations of "actual power" or "influence" over the company are sufficient to survive a Motion to Dismiss. See *In re Ravisent Techns., Inc. Sec. Litig., 2004 U.S. Dist. LEXIS 13255, 2004 WL 1563024, at *15 (E.D. Pa. July 13, 2004)*. Therefore, Defendants' Motions to Dismiss Count II are DENIED.

**C. Count III: Section 18 Claim**

[*34] **1. Sufficiency of the Pleading**

Case 1:05-cv-00165-JJF   Document 53-13   Filed 08/16/2005   Page 10 of 15

Page 9
2005 U.S. Dist. LEXIS 12064, *34

*Section 18 of the Exchange Act* grants a right of action to any person who purchases or sells a security in reliance on a false or misleading statement of a material fact included in any application, report or document filed with the SEC pursuant to the Exchange Act. *15 U.S.C. § 78r; Special Situations Fund, III, L.P. v. Cocciola (In re Suprema Specialties, Inc. Sec. Litig.), 334 F. Supp. 2d 637, 654 (D.N.J. 2004)*. Defendants argue that Plaintiffs have failed to demonstrate reliance.

Plaintiffs respond that they have sufficiently pled viable *§ 18* claims by alleging in the Complaint that they read and relied upon SEC filings in connection with their purchases of DVI's securities. (Pls.' Opp. 73-75.) Plaintiffs' Complaint alleges that "In connection with the purchase of the Senior Notes, Plaintiffs and their agents specifically read and relied on the financial information contained in the Company's Form 10-K filings, including Deloitte's audit opinions, as well as DVI's Form 8-K filings, not knowing that they were false and misleading." (Compl. P308; see also PP309-11.)

While Defendants assert that Plaintiffs must link specific [*35] misstatements to specific securities purchases in order to demonstrate reliance, the better position is set forth in *Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp., 315 F. Supp. 2d 666, 678, 685 (E.D. Pa. 2004)*. Argent rejected that argument, reasoning that "Requiring plaintiffs to link particular misrepresentations with particular trades in their allegations of direct reliance would impose additional burdens without significantly improving the quality of notice to defendants and without affording much added protection from reputation-endangering and extortionate frivolous suits." *Id. at 678*. This Court agrees and finds that Plaintiffs' allegations are sufficient to make out a *Section 18* claim.

**2. Statute of Limitations**

*Section 18(c)* provides that "No action shall be maintained to enforce any liability created under this section unless brought within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action is accrued." *15 U.S.C. § 78r(c)*. "A cause of action accrues . . . when the purchase of securities for which damages are sought has taken place." *Lindner Dividend Fund, Inc. v. Ernst & Young, 880 F. Supp. 49, 53 (D. Mass. 1995)*; [*36] see also *In re Phar-Mor, Inc., Secs. Litig., 892 F. Supp. 676 (W.D. Pa. 1995)*. Defendants Deloitte & Touche, Neas, and Roberts assert that Plaintiffs are outside the limitations period.

Deloitte & Touche and Harold Neas argue that Plaintiffs' *§ 18* claim is barred by the applicable one year statute of limitations because Plaintiffs were on inquiry notice as to the existence of their claim when DVI notified the SEC of a material dispute with Deloitte in May 2003. Plaintiffs filed suit on July 19, 2004, more than one year later. (Deloitte & Touche and Neas Dismiss at 16).

Plaintiffs assert that they did not discover, and could not have discovered, the facts constituting their cause of action under *Section 18* prior to July 19, 2003, because prior disclosures by Defendants were not sufficient to constitute a "storm warning." See *In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1326 (3d Cir. 2002)*. Plaintiffs further note that mixed messages in disclosures are insufficient to trigger inquiry notice, *In re DaimlerChrysler AG Sec. Litig., 269 F. Supp. 2d 508, 515 (D. Del. 2003)*, and that prior to July 19, 2003, the disclosures revealed only [*37] a disagreement between DVI and Deloitte, as opposed to the massive fraud that was subsequently revealed.

As noted above with regard to the OnCure Defendants' statute of limitations argument, the question of whether Plaintiffs were on inquiry notice prior to July 19, 2003 cannot be resolved without making findings of fact. Therefore, the Court declines to dismiss the action under *Rule 12(b)(6)* on that ground.

Defendant Roberts argues that Plaintiffs' *§ 18* claim is barred, in part, by the statute of limitations for purchases that occurred more than three years prior to the filing of the initial complaint (i.e. Senior Notes purchased prior to July 19, 2001). (Roberts Dismiss at 33-34).

As with the OnCure Defendants, Plaintiffs argue that because DVI's course of conduct was continuing, that the Court should permit them to base their action on conduct occurring more than three years before the Complaint was filed. However, as previously stated, this Court declines to extend the continuing violation doctrine to a totally distinct area of the law. Moreover, the limitations period of the Sarbanes-Oxley Act does not apply to Plaintiffs' *Section 18* claims. As Plaintiffs themselves note, [*38] "no federal court has yet applied the limitation period contained in the Sarbanes-Oxley Act to a *Section 18* claim." (Pls.' Opp. at 97.) While Plaintiffs do not seek to revive claims that were time-barred when the Sarbanes-Oxley Act took effect on July 30, 2002, as Defendants argue, there is persuasive authority for the proposition that the Act's limitations period was not intended to apply to *Section 18* claims. (See Roberts Reply at 8.) In *In re Global Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d 189 (S.D.N.Y. 2003)*, the court held that Sarbanes-Oxley extends the statute of limitations only for actions under securities laws that require proof of fraudulent intent. *Id. at 197*. It is well settled that intent of any kind is not an element of a *Section 18* claim. See *Magna Inv. Corp. v. John Does One Thought Two Hundred, 931 F.2d 38, 40 (11th Cir. 1991); In re Suprema Specialties, Inc. Sec. Litig., 334 F. Supp. 2d 637, 654 (D.N.J. 2004)*. Because *Section*

Case 1:05-cv-00165-JJF    Document 53-13    Filed 08/16/2005    Page 11 of 15

Page 10
2005 U.S. Dist. LEXIS 12064, *38

*18* does not require proof of fraud, Sarbanes-Oxley does not extend the statute of limitations and Plaintiffs' *Section 18* claims, as they relate to purchases of Securities [*39] prior to July 19, 2001, are barred by the applicable three year limitations period.

Therefore, Defendants' Motion to Dismiss is GRANTED with respect to Count III as it pertains to securities purchased before July 19, 2001.

### D. Counts IV and V: Common Law Fraud Claims

Plaintiffs' Count IV asserts Common Law Fraud against Defendants O'Hanlon, Garfinkel, Boyle, Cohn, Roberts, Goldberg, McHugh, Shapiro and Deloitte. n7 (Compl. PP317-18.). Count V asserts Common Law Fraud for Inducing Plaintiffs to Hold the Senior Notes against those same nine Defendants. (Compl. PP325-29.)

> n7 Defendant O'Hanlon has not moved to dismiss the common law fraud claims against him. However, a court may dismiss claims sua sponte where the inadequacy of a claim is apparent as a matter of law. See *Erie City Retirees Ass'n v. City of Erie, 838 F. Supp. 1048, 1050 (E.D. Pa. 1993)*.

#### 1. Adequacy of Pleadings

Defendants argue that Counts IV and V of Plaintiffs' Complaint do not allege with the necessary particularity [*40] under *Rule 9(b)* the elements of a fraud claim under Pennsylvania law: (1) a material misrepresentation; (2) scienter; (3) justifiable reliance by Plaintiffs thereon; and (4) damages. See *Fed. R. Civ. P. 9(b)* (requiring that averments of fraud be made with particularity); *Booze v. Allstate Ins. Co., 2000 PA Super 112, 750 A.2d 877, 880 (Pa. Super. 2000)* (citing *Hammer v. Nikol, 659 A.2d 617, 620 (Pa. Commw. Ct. 1995))*. Specifically, Defendants argue that Plaintiffs have failed to plead the reliance element of fraud. Plaintiffs counter that because the elements of a common law fraud claim under Pennsylvania law are essentially the same as those of a claim under *Rule 10b-5*, that they have adequately pled a claim for common law fraud.

As discussed above with respect to Plaintiffs' *Rule 10b-5* claim, Plaintiffs have, in some instances, adequately pled fraud. While Pennsylvania law does require a material misrepresentation to set forth a prima facie cause of action, all Defendants against whom Plaintiffs assert Count IV are Defendants who, as discussed above, are alleged to have made a misstatement. Therefore, Defendants' Motions [*41] to Dismiss Plaintiffs' claims for common law fraud are DENIED.

#### 2. Count V: Common Law Fraud for Inducing Plaintiffs to Hold the Senior Notes

In their Motions to Dismiss, Defendants argue that Count V must likewise be dismissed because inducing plaintiffs to hold—rather than sell—securities is not a cause of action for fraud. See *Weinstein v. Ebbers (In re WorldCom, Inc. Sec. Litig.), 336 F. Supp. 2d 310, 2004 WL 2075173, at *7-11 (S.D.N.Y. 2004)* (surveying the law on claims by "holders" and noting that numerous jurisdictions have rejected these claims). (See Shapiro, Goldberg, McHugh Reply at 12; Deloitte Dismiss at 21-22; Deloitte Reply at 8.) In their Omnibus Response in Opposition, Plaintiffs admit that no Pennsylvania court has found a cause of action for common law fraud on behalf of an investor who held, rather than purchased or sold, a security in reliance upon fraud. (Pls.' Opp. at 89.)

Pennsylvania has never recognized a cause of action for "holders" of securities and, in the face of the strong policy reasons against recognition of such a claim, and the weight of authority in other jurisdictions either rejecting or severely limiting such a claim, there is no basis to predict [*42] that it will do so. While it is true that where the state supreme court has not had occasion to address a particular issue of law the district court must carefully predict how that court would rule, *Robertson v. Allied Signal, Inc., 914 F.2d 360, 378 (3d Cir. 1990)*, here the Court declines to find that the Pennsylvania Supreme Court would find a cause of action in fraud for investors who were allegedly injured by holding securities.

In declining to permit "holder" actions, other courts have elucidated the policy problems therewith. See *In re WorldCom, Inc. Sec. Litig., 336 F. Supp. 2d 310, 318-23 (S.D.N.Y. 2004)*. The Supreme Court, in reaching its decision that "holder" claims were not permissible in actions brought under *Rule 10b-5*, explained that holder claims are virtually impossible to verify because they are based on a plaintiff's representation that he would not have purchased or sold the securities had he known about the misrepresentation. *Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 742-43, 44 L. Ed. 2d 539, 95 S. Ct. 1917 (1975)*. The same rationale is applicable to a common law "holder" claim. Other courts have rejected holder claims as being too [*43] speculative. See *Chanoff v. United States Surgical Corp., 857 F. Supp. 1011 (D. Conn. 1994)*. As the Chanoff court explained, "holder" claims violate "the established principle that a plaintiff cannot recover profits which might have been realized if he had not been deceived, unless there is evidence by which such profits can be estimated with reasonable certainty." *Id. at 1018*. Finally, it is notable, that a plaintiff's damages in "holder" cases arise, not from misrepresentations, but from the eventual disclosure of accurate information and its effect on the market. As the court noted in Arent v. Distribution

Sciences, Inc., "Plaintiffs were not harmed because they were unable to realize the true value of their stock—they were harmed because the true value of their stock was zero." *975 F.2d 1370, 1374 (8th Cir. 1992)*.

Plaintiffs have submitted no persuasive authority that the Supreme Court of Pennsylvania would permit "holder" claims in *any* common law causes of action. n8 As the Worldcom court stated, "Many other jurisdictions that have considered 'holder' claims based on their common law have rejected them because of [*44] the inherent difficulty in pleading and proving reliance, loss causation, and/or damages. With one exception, those few jurisdictions that have recognized the claim, have imposed heightened pleading requirements that are virtually impossible to meet in the context of a class action." *In re WorldCom, Inc. Sec. Litig., 336 F. Supp. 2d 310, 323 (S.D.N.Y. 2004)*. Given the weight of authority by other courts, and the sound policy reasons articulated therein, there is no basis to predict that the Pennsylvania Supreme Court would countenance a fraud action brought by holders. Therefore, Plaintiffs' Count V is DISMISSED.

> n8 Plaintiffs assert that Pennsylvania cases permitting forbearance actions are persuasive. (Pls.' Opp. at 89-90.) These cases, however, are inapposite. They do not involve securities and are too far removed therefrom to be persuasive.

### E. Count VI: Civil Conspiracy Claim

To make out a claim for common law civil conspiracy under Pennsylvania law, Plaintiffs must allege: "(1) a [*45] combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage." *Chantilly Farms, Inc. v. West Pikeland Twp., 2001 U.S. Dist. LEXIS 3328, 2001 WL 290645, at *12 (E.D. Pa. Mar. 23, 2001)* (quoting *Smith v. Wagner, 403 Pa. Super. 316, 588 A.2d 1308, 1311-12 (Pa. Super. 1991)*). "Proof of malice, i.e., an intent to injure, is an essential proof of a conspiracy." *Skipworth v. Lead Industries Ass'n, Inc., 547 Pa. 224, 690 A.2d 169, 174 (Pa. 1997)* (citation omitted).

Defendants argue that (1) Plaintiffs have failed to plead a prima facie case with particularity; (2) Plaintiffs have failed to make specific allegations that Defendants acted with the required "malicious intention" solely to injure Plaintiffs; (3) a corporation cannot conspire with its employees and agents; and (4) the conspiracy count must be dismissed because the underlying tort must be dismissed. Further, Defendant OnCure argues that Counts VI and VII are time-barred under the applicable Pennsylvania Statute of Limitations of two years. (OnCure Dismiss at 14.) [*46]

In light of the finding, below, that Pennsylvania does indeed require that the sole purpose of a conspiracy be to harm the plaintiffs, and that Plaintiffs did not sufficiently demonstrate such a sole purpose, the Court does not reach Defendants' other objections. It is notable, however, that Count VI does appear to suffer from additional deficiencies, including failure to plead with the requisite heightened specificity n9 and failure to allege an agreement.

> n9 Plaintiffs argue that they have pled this cause of action with sufficient particularity, asserting that where a conspiracy claim "is premised on an intent to commit common law fraud, the fraud claim is subject to the requirements of *Rule 9(b)* but the conspiracy claim need only satisfy the notice pleading standards of *Rule 8*." (Pls.' Opp. at 77.) To support this proposition, Plaintiffs cite *Jairett v. First Montauk Securities Corp., 203 F.R.D. 181 (E.D. Pa. 2001)*. However, in Jairett, Judge Reed specifically noted the split among the District Courts in the Third Circuit as to whether conspiracy claims sounding in fraud need comply with *Rule 9(b)* and declined to base his decision thereon, ruling instead that under the specific facts of that case that relaxing the *Rule 9(b)* particularity requirement was in order as "the facts underlying [plaintiffs'] claim are particularly within the defendant's knowledge." *203 F.R.D. at 187-88*. Further, the Third Circuit resolved this question in *Lum v. Bank of America, 361 F.3d 217 (3d Cir. 2004)*. In Lum, the Third Circuit stated, "Because plaintiffs allege that the defendants accomplished the goal of their conspiracy through fraud, the Amended Complaint is subject to *Rule 9(b)*." *361 F.3d at 228* (citing *Fed. R. Civ. P. 9(b)* and emphasizing its requirement that "*all* averments of fraud . . . shall be stated with particularity."). Further, for the reasons discussed above in Part IV.A.2.b.i, supra, a relaxed pleading standard is not appropriate under the facts of this case. Therefore, Plaintiffs must plead with the particularity required by *Rule 9(b)*, a burden Plaintiffs contend they have met. (Pls.' Opp. at 77.)

As discussed above, to meet the *9(b)* standard, Plaintiffs' Complaint must plead the entire factual basis—the "who, what, when, where and how" elements—underlying their claim of conspiracy to commit fraud. See *In re Advanta Sec. Litig., 180 F.3d at 537*. At a minimum, Plaintiffs must plead a description of the alleged conspiracy, namely "the general composition of the conspiracy, some or

all of its broad objectives, and [each defendant's] general role in the conspiracy." *Mowrer v. Armour Pharmaceutical Co., 1993 U.S. Dist. LEXIS 18367, 1993 WL 542541, at *3 (E.D. Pa. Dec. 30, 1993)* (citation omitted).

[*47]

Defendants assert that the element of malice requires a showing that "the sole purpose of the conspiracy is to cause harm to the party who has been injured." *Becker v. Chi. Title Ins. Co., 2004 U.S. Dist. LEXIS 1988, 2004 WL 228672, at *13 (E.D. Pa. Feb. 4, 2004)* (citing *Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A.2d 466, 472 (Pa. 1979))*. Plaintiffs respond that the holding of Thompson Coal has been misconstrued and does not stand for the proposition that an intent to injure the plaintiff must be the *sole* purpose and objective of the conspiracy and that, therefore, they have demonstrated "malice" by setting forth the actions and inaction taken by the Individual Defendants' without just cause or excuse. (Pls.' Opp. at 76-80.) However, Plaintiffs cite no authority supportive of their reading of Thompson Coal. By contrast, a number of courts in this district have construed the *Thompson Coal* holding as creating a "sole purpose" requirement. See, e.g., *Becker v. Chi. Title Ins. Co., 2004 U.S. Dist. LEXIS 1988, 2004 WL 228672, at *13 (E.D. Pa. Feb. 4, 2004); Watkins v. Pa. Bd. of Prob. & Parole, 2002 U.S. Dist. LEXIS 23504, 2002 WL 32182088, at *9 (E.D. Pa. Nov. 25, 2002); Ryan v. Lower Merion Twp., 205 F. Supp. 2d 434, 440 (E.D. Pa. 2002);* [*48] *Simon v. Unumprovident Corp., 2002 U.S. Dist. LEXIS 9331, 2002 WL 1060832, at *9 (E.D. Pa. May 23, 2002); Bristol Twp. v. Independence Blue Cross, 2001 U.S. Dist. LEXIS 16594, 2001 WL 1231708, at *5 (E.D. Pa. Oct. 11, 2001); Am. Indep. Ins. Co. v. Lederman, 2000 U.S. Dist. LEXIS 12351, 2000 WL 1209371, at *20 (E.D. Pa. Aug. 25, 2000); Spitzer v. Abdelhak, 1999 U.S. Dist. LEXIS 19110, 1999 WL 1204352, at *9 (E.D. Pa. Dec. 15, 1999)*. In light of the significant amount of persuasive authority so holding, this Court concludes that Plaintiffs must demonstrate that the sole purpose and objective of any conspiracy among the Defendants must have been a malicious intent to injure Plaintiffs. See id.

In Thompson the Supreme Court of Pennsylvania held that where the facts show that a person acted to advance his own business interests, those facts constituted justification and negate any alleged intent to injure. Likewise, here, as Plaintiffs themselves have stated, the Defendants' purpose of the conspiracy was to "enable DVI to raise new capital to fund its growth." (Compl. P6 (also describing DVI's fraudulent scheme to artificially inflate and maintain the market price of DVI's securities). See also, Compl. P335 (alleging a [*49] conspiracy of engaging in sham transactions to avoid an adverse impact on DVI's reported financial condition); Compl. P336 (alleging a scheme to "artificially inflate the value of DVI's securities and insure its continued access to the Securitizations market").) The fact that it may have been necessary to deceive Plaintiffs in order to carry out their scheme in no way indicates that they acted with malice solely to injure Plaintiffs. Therefore, the Defendants' Motions to Dismiss are GRANTED with regard to Count VI for Civil Conspiracy to Commit Fraud.

### F. Count VII: Aiding and Abetting Claim

Defendants argue, and Plaintiffs admit, that no Pennsylvania court has recognized cause of action Aiding and Abetting Fraud.

Plaintiffs argue that this Court should allow Count VII to go forward because the claim is substantially similar to a cause of action for Aiding and Abetting a Breach of Fiduciary Duty, which has been recognized by several Pennsylvania lower courts. See, e.g., *Koken v. Steinberg, 825 A.2d 723 (Pa. Commw. Ct. 2003); Lichtman v. Taufer, 2004 Phila. Ct. Com. Pl. LEXIS 68, 2004 WL 1632574 (P.C.C.P. July 13, 2004); Adena, Inc. v. Cohn, 162 F. Supp. 2d 351, 357-58 (E.D. Pa. 2001).* [*50] (Pls.' Opp. at 80.)

However, this Court follows the lead of the majority of other courts in this district, in declining to expand Pennsylvania law, and holds that the Pennsylvania Supreme Court would not permit such an action. See *Klein v. Boyd, 1996 U.S. Dist. LEXIS 17153, 1996 WL 675554, at *33 (E.D. Pa. Nov. 19, 1996); S. Kane & Son Profit Sharing Trust v. Marine Midland Bank, 1996 U.S. Dist. LEXIS 8023, 1996 WL 325894, at *9 (E.D. Pa. June 13, 1996)*. Therefore, Defendants' Motions to Dismiss are GRANTED with respect to Count VII, which is hereby DISMISSED.

### G. Count VIII: Negligent Misrepresentation Claim

Defendants argue that (1) Plaintiffs lack standing to maintain this claim because they cannot satisfy the limited group requirement; (2) Plaintiffs have failed to allege a prima facie case; (3) the economic loss doctrine bars this claim; (4) the requisite privity does not exist between the parties; and (5) Plaintiffs cannot maintain this claim because Defendants are not in the business of selling information. Because the Court concludes that the limited group requirement is applicable, it does not address Defendants' other arguments.

#### 1. The Limited Group Requirement

The parties do not [*51] dispute that Pennsylvania has adopted the Restatement (Second) of Torts view with respect to negligent misrepresentation. See *Gibbs v. Ernst, 538 Pa. 193, 647 A.2d 882, 890 (Pa. 1994)*. n10

n10 *Restatement (Second) of Torts § 552* provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
>
> (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

[*52]

Defendants argue that under Pennsylvania law, liability for negligent misrepresentation extends only when information is supplied to a limited group and, because any alleged misrepresentations at issue were made to the public at large, and not to a limited group, that Plaintiffs do not have standing to maintain this cause of action. See *Restatement (Second) of Torts § 552(2)* (limiting liability to loss suffered by the limited group of persons for whose benefit and guidance it was supplied).

Plaintiffs respond that, "While Pennsylvania state courts have not yet determined whether investors qualify as a limited group under *Section 552*" they "would adopt the view that negligent misrepresentation liability will be imposed where a false representation is made to the investing public." (Pls.' Opp. at 86, n.46.) In the alternative, Plaintiffs argue that they fall within the purview of *Restatement § 552(3)* which sets forth an exception to the "limited group" concept where the defendant is under a public duty to supply the information in question. This Court finds neither argument persuasive.

In both *Wallace v. Systems & Computer Tech. Corp., 1997 U.S. Dist. LEXIS 14677, 1997 WL 602808 (E.D. Pa. Sept. 23, 1997)* [*53], and *In re Westinghouse Sec. Litig., 832 F. Supp. 948 (W.D. Pa. 1993)*, the court concluded that a class of securities investors do not qualify as a "limited group" under *§ 552(2)*. See *Wallace, 1997 U.S. Dist. LEXIS 14677, 1997 WL 602808, at *23* (concluding that "public disclosures made pursuant to the federal securities laws are made to an undefined and potentially unlimited class of investors and not to 'a limited group.'"); *In re Westinghouse, 832 F. Supp. at 988* (same). As stated in Wallace, "the limited group requirement would be meaningless if any member of [the] public who might choose to invest in [a] company's common stock could qualify as part of [a] protected class." *Wallace, 1997 U.S. Dist. LEXIS 14677, [WL] at *23*. This Court finds the reasoning set forth above to be both persuasive and applicable to the facts of the matter presently before this Court. Therefore, Plaintiffs cannot maintain this claim under *§ 552(2)*.

Likewise, this Court agrees with the reasoning of *Wallace* and *In re Westinghouse* with regard to Plaintiffs' *§ 552(3)* claim. While it is true that public corporations are required by law to accurately report their financial [*54] results, "the application of *Section 552(3)* to alleged misrepresentations in public corporations' SEC reports would threaten such firms with the prospect of liability to an almost unlimited class of persons, i.e., all potential investors in the corporation's stock." Id. The court in In re Westinghouse noted, "this position requires an assumption about the Restatement drafters' view of liability that one federal district court has disapprovingly termed 'extraordinary,' *In re Crazy Eddie Sec. Litig, 812 F. Supp. 338, 359 (E.D.N.Y. 1993)*, and that another has rejected outright. See *In re Delmarva Sec. Litig., 794 F. Supp. 1293, 1310-11*." *In re Westinghouse, 832 F. Supp. at 989*.

In light of the persuasive reasoning of the above-cited decisions and the sound public policy discussed therein, this Court concludes that the Pennsylvania Supreme Court would not permit Plaintiffs, a group of bondholders, to maintain a cause of action for Negligent Misrepresentation absent a showing that Defendants disclosed information specifically to Plaintiffs' limited group, as opposed to the securities market or the public as a whole. Therefore, Plaintiffs' [*55] claim for Negligent Misrepresentation is DISMISSED.

### H. Count IX: Negligent Misrepresentation Inducing Plaintiffs to Hold the Senior Notes

As discussed in Part IV.D.2, supra, Pennsylvania has never recognized a cause of action for "holders" of securities and, in the face of the strong policy reasons against recognition of such a claim, and the weight of authority in other jurisdictions either rejecting or severely limiting such a claim, discussed above, this Court declines to expand Pennsylvania law. Therefore, Count IX is DISMISSED.

### I. Count X: Securities Act of Washington Claim

Count X asserts that all of the Defendants violated *sections 21.20.430* and *21.20.010* of the Securities Act of Washington.

Defendants argue that this claim should be dismissed because (1) Plaintiffs have not alleged that they tendered or otherwise disposed of their securities; (2) Plaintiffs have failed to allege facts to support a violation of a Washington Statute, as no Plaintiffs claim to be citizens of the State of Washington and no allegation is made that a sale of securities or a misrepresentation occurred in Washington; (3) Defendants are not sellers under the Act; and (4) the state [*56] claim must fail for the same reasons the federal securities violations must fail. As discussed below, the Court concludes that Plaintiffs have not pled a sufficient nexus to the state of Washington and, therefore, do not reach the other arguments set forth by Defendants.

#### 1. Disposal Requirement

*Section 21.20.430 of the Securities Act of Washington* (WSA) provides, in relevant part, that a person who has purchased securities "may sue either at law or in equity . . . upon the tender of the security, or for damages if he or she no longer owns the security." Plaintiffs argue that they have made some sales of the DVI securities and, to the extent they continue to hold DVI securities, they have met or will meet any alleged requirement of a tender of their shares.

The Washington Court of Appeals has held that "There is no liability for an illegal or fraudulent sale under this statute where the buyer chooses to retain the stock . . . ." *Windswept Corp. v. Fisher*, 683 F. Supp. 233, 239 (W.D. Wash. 1988) (quoting *Garretson v. Red-Co, Inc.*, 9 Wn. App. 923, 516 P.2d 1039 (1973)); see also *Burgess v. Premier Corp.*, 727 F.2d 826, 839 (9th Cir.1984) ("the [*57] purpose of the Washington Securities Act, *RCW 21.20.430(1)*, is only to reimburse a purchaser for his actual out-of-pocket loss" (citing *Garretson v. Red-Co, Inc., supra*)).

In the present case, Plaintiffs have alleged some amount of tender of the securities back to the seller and seek rescission and/or rescissionary damages in their Prayer for Relief, which has been held to be an implicit tender. *Wigand v. Flo-Tek, Inc.*, 609 F.2d 1028, 1035 (2d Cir. 1979). Therefore, Plaintiffs claim under the WSA will not fail on this ground.

#### 2. Nexus to Washington

Plaintiffs argue that a sufficient nexus to the state of Washington exists because (1) the funds are a series of business trusts whose principal place of business is located in Washington; (2) the investment advisor for Plaintiffs, nonparty WM Advisors, Inc., is a resident of Washington, and (3) DVI mailed its allegedly fraudulent annual reports to Plaintiffs in Washington.

However, recalling that in deciding a Motion to Dismiss pursuant to *Rule 12(b)(6)*, the court may look only to the facts alleged in the complaint and its attachments, *Jordan v. Fox Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994), [*58] it is clear that nowhere in the Complaint do Plaintiffs allege sufficient contacts to Washington. Plaintiffs have brought all of their other state law claims under Pennsylvania law; they do not allege that they are residents of Washington; no Defendant is alleged to be a resident of Washington; and, as alleged in the Complaint, many, if not all, of Defendants' actions at issue took place in Pennsylvania. That a nonparty received mail from Defendants in Washington is not sufficient to apply Washington's securities law in this action. See *Atlantic Richfield Co. v. Arco-Globus Int'l Co.*, 1996 U.S. Dist. LEXIS 19155, 1996 WL 742863 (S.D.N.Y. Dec. 31, 1996) (dismissing state law counterclaim where defendants failed to establish its applicability). Therefore, Count X must be DISMISSED.

### V. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are GRANTED with respect to Counts III (as it pertains to securities purchased prior to July 19, 2001), V, VI, VII, VIII, IX and X, and DENIED with respect to Counts I, II, III (as it pertains to purchases on or subsequent to July 19, 2001), and IV. An appropriate order follows.