IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROYAL INDEMNITY COMPANY,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>PEPPER HAMILTON LLP, RODERICK GAGNÉ, FREED MAXICK & BATTAGLIA CPAs, PC, McGLADREY & PULLEN, LLP, and MICHAEL AQUINO,<br><br>　　　　　Defendants. | C.A. No. 05-165<br><br>Hon. Joseph J. Farnan, Jr. |

**DEFENDANT FREED MAXICK & BATTAGLIA CPAs, PC's
<u>REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS</u>**

James L. Holzman (Bar ID #663)
J. Clayton Athey (Bar ID #4378)
PRICKETT, JONES & ELLIOTT, P.A.
1310 King Street
Wilmington, Delaware  19801
(302) 888-6500
jlholzman@prickett.com
jcathey@prickett.com

*Attorneys for Defendants
　Freed Maxick & Battaglia CPAs, PC*

OF COUNSEL:

John H. Eickemeyer (JE-8302)
Jonathan A. Wexler (JW-5587)
VEDDER, PRICE, KAUFMAN
　& KAMMHOLZ, P.C.
805 Third Avenue
New York, New York  10022
(212) 407-7700
jeickemeyer@vedderprice.com
jwexler@vedderprice.com

Dated: August 18, 2005

19631.1.\282633v1

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT .................................................................................................. 1
ARGUMENT .................................................................................................................................. 2
POINT I    ROYAL FAILS TO STATE A RICO CLAIM AGAINST FMB ......................... 2
POINT II    ROYAL'S COMMON LAW CLAIMS AGAINST FMB ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS ................................... 4
POINT III    ROYAL FAILS TO STATE A COMMON LAW CLAIM UPON WHICH RELIEF MAY BE GRANTED AGAINST FMB .................................. 8
    A.    Pennsylvania Law Governs Royal's Common Law Claims ................................. 8
    B.    Royal's Common Law Claims Should Be Dismissed .......................................... 9
        1.    Royal Cannot Maintain a Fraud Cause of Action ..................................... 9
        2.    Royal's Civil Conspiracy Claim Lacks Merit .......................................... 10
        3.    Royal's Claim for Aiding and Abetting a Breach of Fiduciary Duty is Legally Insufficient ................................................................... 10
        4.    Royal's Negligence Claims Should Be Dismissed ................................. 11
        5.    Royal's Deepening Insolvency Claim is Legally Insufficient ................. 11
POINT IV    FMB IS NOT A PROPER PARTY TO THIS ACTION ..................................... 11
CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Cerullo v. Harper Collins Publishers*, 2002 WL 243387 (Del. Super. Ct. Feb. 19, 2002) ............ 4

*Cochran v. GAF Corp.*, 633 A.2d 1195 (Pa. Super. 1993), *aff'd*, 666 A.2d 245 (Pa. 1995).......... 5

*Devaney v. Chester*, 1989 WL 52375 (S.D.N.Y. May 10, 1989) ...................................................... 9

*Guenther v. Quartucci*, 1996 WL 67616 (E.D.Pa. Feb. 12, 1996) .................................................. 5

*Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983) ............................................................................... 11

*Koke v. Stifel, Nicklaus & Co., Inc.*, 620 F.2d 1340 (8th Cir. 1980) ............................................... 6

*Molineux v. Reed*, 532 A.2d 792 (Pa. 1987) .................................................................................. 6

*Royal Indemnity Company v. T.E. Moor & Co., et al.*, District Court of
    Jefferson County, Texas, No. D-167370 ................................................................................. 7

*United States v. Smith*, 82 F.3d 1261 (3d Cir. 1996) ..................................................................... 3

**STATUTES**

18 U.S.C. §1962(c) .......................................................................................................................... 2

18 U.S.C. §1962(d) ................................................................................................................. 1, 2, 3

**OTHER AUTHORITIES**

Restatement (Second) of Conflicts of Laws § 148 ......................................................................... 8

## **PRELIMINARY STATEMENT**

Defendant Freed Maxick & Battaglia, CPAs, P.C. ("FMB") submits this Reply Memorandum in further support of its motion to dismiss the First Amended Complaint (the "Complaint"), Docket Item No. ("D.I.") 14 as against it. As demonstrated in Point IV, *infra*, nothing contained in the opposition papers of plaintiff Royal Indemnity Company ("Royal") contradicts FMB's assertion that it is not a proper party to this action. Royal does not contend, because it cannot, that FMB ever audited any financial statement of Student Finance Corporation ("SFC") or that defendant Michael Aquino ("Aquino"), who supervised all of the SFC audits at issue here, was ever a member of FMB. FMB recognizes that to the extent the circumstances surrounding the formation of FMB and the role and continuing existence of Freed Maxick Sachs & Murphy, P.C. ("FMSM") are pertinent to the issue of whether FMB should be a party to this action, facts will have to be presented and considered in a manner inappropriate for this motion to dismiss. If it becomes necessary, FMB is prepared to present the relevant facts for consideration at an early stage of these proceedings.

But the Court need never reach such an inquiry because the fatal defects in Royal's complaint, which are not remedied by its opposition papers, require dismissal on the merits. For example, nowhere does Royal attempt to address, much less rectify, the pleading subterfuge by which it seeks to sweep FMB within the scope of Count II, its RICO conspiracy claim under 18 U.S.C. §1962(d). (Point I, *infra*) Moreover, Royal's common law claims are barred under the applicable Pennsylvania statute of limitations. While Royal asserts that it is a Delaware resident and so is entitled to avail itself of that state's statute of limitations, its assumption of Delaware residence based simply on

Delaware incorporation is unsupported by caselaw and should not be adopted by this Court. Even if Delaware law were to be applied, the disclosure of the forbearance payments in SFC's financial statements – not to mention documents from Royal's files (recently quoted in pleadings in another SFC-related action) – show that the existence and effect of the "forbearance payments" was hardly unknown, much less unknowable, to Royal. Royal certainly was not "blamelessly ignorant" and so is not entitled to a tolling of the Delaware limitations period. Dismissal of Royal's common law claims as untimely is therefore appropriate. (Point II, *infra*) Finally, as demonstrated in Point III, *infra*, and in the accompanying reply papers of co-defendant McGladrey & Pullen LLP ("McGladrey"), Royal's opposition papers fail to remedy the facial insufficiency of its common law claims, each of which must be dismissed.

## ARGUMENT

### POINT I

### ROYAL FAILS TO STATE A RICO CLAIM AGAINST FMB

Royal's effort to sweep up FMB within its assertion of a RICO claim against Aquino under 18 U.S.C. §1962(d) is not salvaged by its opposition papers. As demonstrated at pp. 8-10 of the FMB Mem.,[1] even if such a claim with respect to FMB is assumed to be based – however improperly – on Aquino's conduct while he was affiliated with FMSM, Royal must allege facts from which it could be inferred that the co-conspirators (1) shared a common design, and (2) the particular defendant knowingly agreed to facilitate a scheme including the operation or management of a RICO enterprise. The lack of any such primary scheme is demonstrated in both the McGladrey

---

[1] "FMB Mem." refers to FMB's Memorandum Of Law In Support Of Its Motion To Dismiss, D.I. 30. As noted at pp. 8-9 of the FMB Mem., Count I of the Complaint, which purports to assert a claim under 18 U.S.C. §1962(c), is specifically not pled against FMB.

2

Mem., D.I. 31, and the McGladrey Reply Mem.,[2] to which the Court is respectfully referred.

Royal suggests that it need only allege that the activities of the various co-conspirators were "mutually supportive to any degree." (Royal Mem. at 76-77) As demonstrated in the McGladrey Reply Mem. (to which FMB respectfully refers the Court and which FMB adopts), Royal distorts the applicable Third Circuit cases in an effort to establish a watered-down standard that it can meet. But *United States v. Smith*, 82 F.3d 1261 (3d Cir. 1996), on which Royal relies, involves an entirely different factual situation, in which the government sought to attribute the acts of one set of conspirators to a second set. The *Smith* decision expressly reaffirms the requirement that a defendant be aware of, and have an interest in, the objective of the supposed conspiracy for a RICO claim to be maintained. Aquino's actions in seeking assurance that Royal understood the forbearance payments – which Royal itself acknowledges (Complaint, ¶124) – are entirely inconsistent with a design to deceive or defraud Royal. Royal does not abandon its admission of Aquino's request for such assurances nor does it provide any effective rejoinder – aside from its misleading quotation of *Smith* – to McGladrey's and FMB's description of the standard for maintaining a §1962(d) claim established by the Third Circuit. Accordingly, to the extent that Royal purports to be maintaining Count II of the Complaint against FMB, that claim must be dismissed.

---

[2] "McGladrey Reply Mem." refers to McGladrey & Pullen, LLP's and Michael Aquino's Reply Memorandum Of Law In Support Of Their Motion To Dismiss.

3

**POINT II**

**ROYAL'S COMMON LAW CLAIMS AGAINST FMB ARE
BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS**

Royal's efforts to fit itself within the Delaware statute of limitations, and then within the exception allowing tolling of that statute under limited circumstances, consists of reliance on cases that do not address the key issue before the Court and a portrayal of itself as a victimized innocent that is at odds with documented facts properly before this Court. These issues are discussed in the McGladrey Reply Mem., to which the Court is respectfully referred and which FMB adopts.

As Royal acknowledges (Royal Mem. at 23-24), this Court must use Delaware's statute of limitations, including its borrowing statute if applicable. Royal contends that the borrowing statute is inapplicable because Royal, as a Delaware corporation, is a Delaware resident. (*Id.* at 24-25) But the cases on which Royal relies do not address whether a Delaware corporation is a Delaware resident where its principal place of business is outside the state. In these cases, Delaware residence was simply assumed and, for whatever reason, the principal place of business of the company was not discussed. But, as noted in the McGladrey Reply Mem., the only Delaware case addressing the meaning of residency under the borrowing statute, *Cerullo v. Harper Collins Publishers*, 2002 WL 243387 (Del. Super. Ct. Feb. 19, 2002) (Exhibit A), referred to New York law to give content to the term because the language of the statute was similar to an analogous New York statute.[3] New York holds a corporation to be a resident of the state in which its principal place of business is located rather than where it

---

[3] Contrary to Royal's description (Royal Mem. at 25), the *Cerullo* court did *not* base its holding on a principle that the law of the state whose substantive law applied would be the state whose statute of limitations would govern.

is incorporated. (*See* cases cited at Point I.A. of the McGladrey Reply Mem.) Royal alleges that its principal place of business is in North Carolina. (Complaint, ¶12) Royal is therefore not a Delaware resident and so it is subject to the Delaware borrowing statute.

Pennsylvania's statute of limitations should govern the timeliness of Royal's common law claims since that is the state in which Royal's claim arose, as demonstrated by the discussion in the McGladrey Reply Mem. at Point I.B. Under Pennsylvania's two-year statute, Royal's claims are time-barred since it had notice of the SFC fraud as of March 20, 2002, when Yao confessed its existence. Royal suggests that it did not have notice of its claims until the fall of 2004 (Royal Mem. at 18, 28). But as a matter of law and of fact, Royal's argument is insupportable. Courts have routinely held that a plaintiff need not have notice of all details of a fraud or of each participant's role in order to be sufficiently on inquiry notice to commence the running of the limitations period. *See Cochran v. GAF Corp.*, 633 A.2d 1195, 1198 (Pa. Super. 1993), *aff'd*, 666 A.2d 245 (Pa. 1995); *Guenther v. Quartucci*, 1996 WL 67616 (E.D.Pa. Feb. 12, 1996) (Exhibit B); and other cases cited at Point I.B.4 of the McGladrey Reply Mem. Yao's confession in March 2002 that he had been engaged in a fraud certainly provided Royal with ample notice to trigger a duty to inquire as to whether it had claims against the various parties involved with SFC. For Royal to suggest that it could wait passively for more than two years to discover whether it had claims against any parties simply is not the law.

Moreover, as the McGladrey Reply Mem. shows, Royal was by no means passive or ignorant of potential claims against SFC's auditors until the fall of 2004. Royal complained of McGladrey's supposed "failure" to disclose the forbearance payments in a counterclaim it filed in this Court on April 18, 2003 – nearly 18 months before it now

5

claims it had reason to know of a claim against SFC's auditors. Royal also makes no effort to show the fraudulent concealment by FMB that it would be required to demonstrate – by clear and convincing evidence – in order to toll the Pennsylvania limitations period. *See Molineux v. Reed*, 532 A.2d 792, 794 (Pa. 1987), and cases cited at Point I.B.4 of the McGladrey Reply Mem. The two-year limitations period under Pennsylvania law thus began to run on March 20, 2002, and Royal's claims against FMB – filed almost three years later to the day – are therefore untimely.

Even if Delaware law could be deemed applicable, Royal's claims would, as demonstrated in FMB's moving papers (FMB Mem. at 12) be time-barred since the Delaware statute runs from the date of the alleged wrong, which in this case would be the issuance of 12/31/99 SFC Financial Statement on or about July 26, 2000. Royal tries to claim the benefit of the limited exception to this rule, which tolls the running of the limitations period for "blamelessly ignorant" plaintiffs. But Royal fails to meet the requirements for tolling under Delaware law. Given that the 12/31/00 SFC Financial Statements specifically referred to forbearance payments and to the growth of such to payments from $2 million to $9.5 million during 2000, Royal can hardly claim that the injury of which it complains – non-disclosure of such payments – was "inherently unknowable." Royal complains that it could not be expected to understand the meaning or effect of the entry. (Royal Mem. at 16, 44) But this contention is as unfounded as its claim that it was entitled to passively wait for the situation to reveal itself before being on inquiry notice. If Royal did not understand the financial statements, it was required to make inquiries, particularly given its sophistication. *See Koke v. Stifel, Nicklaus & Co., Inc.*, 620 F.2d 1340 (8th Cir. 1980), and discussion at Point I.B.4 of the McGladrey Reply

Mem. Delaware's three-year statute, to the extent it applies at all, began to run upon the issuance of the 12/31/99 SFC Financial Statements in July 2000.

Finally, Royal's depiction of itself as blamelessly ignorant is nothing short of laughable in light of the facts recently revealed in a filing in *Royal Indemnity Company v. T.E. Moor & Co., et al.*, District Court of Jefferson County, Texas, No. D-167370. As described in the McGladrey Reply Mem., one of the counterclaims filed in that action quoted an internal Royal e-mail, dated September 28, 2000, which was recently produced in that litigation. That e-mail discusses SFC's practice of using funds on hand that had been earmarked for future use to pay current costs, a practice which the Royal employee who authored the e-mail described as a "Ponzi scheme," and which led him to wonder about the effect of this practice on SFC's ability to continue in business through the period of the loans that Royal would be insuring. Far from being "blamelessly ignorant" of the situation at SFC, it appears that Royal knowingly chose to gamble that it could ride out the SFC scheme and retain the benefit of its premiums.

As demonstrated above and in the McGladrey Reply Mem., Royal has not made the factual or legal showing required to gain the benefit of the Delaware tolling exception. While Pennsylvania law should govern here and bar Royal's common law claims against FMB, even if the Delaware limitations period is applied, Royal's claims against FMB are still untimely and must be dismissed.

## POINT III

## ROYAL FAILS TO STATE A COMMON LAW CLAIM UPON WHICH RELIEF MAY BE GRANTED AGAINST FMB

### A.   Pennsylvania Law Governs Royal's Common Law Claims

Despite Royal's contrived argument which improperly invokes § 148 of the Restatement (Second) of Conflicts of Laws (Royal Mem. at 29-39), the law of Pennsylvania, and not of Delaware or North Carolina, should guide the Court's analysis of the legal sufficiency (and timeliness) of Royal's common law claims against FMB. Pennsylvania has the most significant relationship to the claims against FMB (assuming that those claims are based upon the actions of FMSM, as discussed above), in view of the interest that Pennsylvania has in regulating the conduct of professionals licensed there (including Aquino and the Philadelphia-based office of FMSM with which Aquino became associated in January 2000), and Aquino's issuance of the financial statements in question from Philadelphia to SFC (which is incorporated in Pennsylvania) and Yao in Radnor, Pennsylvania.

Moreover, this Court should reject Royal's suggestion to lump Delaware and North Carolina together for purposes of the choice-of-law analysis because their law is the same (Royal Mem. at 29, 32-33). Royal makes this sweeping assertion – without any discussion or analysis whatever of the relevant aspects of each state's law – in order to accommodate its improper reliance on § 148 of the Restatement of Conflicts. But as demonstrated in the McGladrey Reply Mem. in Point I.B.3, the laws of Delaware and North Carolina with respect to the claims at issue are not identical for purposes of § 148, even if that section were appropriately applied here – which it is not since Delaware never adopted that section. Accordingly, FMB joins the arguments in the McGladrey

Mem. and the McGladrey Reply Mem. which establish that Pennsylvania law properly governs the Court's analysis of Royal's common law claims herein.

### B. Royal's Common Law Claims Should Be Dismissed

#### 1. Royal Cannot Maintain a Fraud Cause of Action

Royal's fraud claim is defective for several reasons, including Royal's failure to plead facts to support a finding of the essential element of *scienter*, and Royal's striking inability to show reliance upon the financial statements in question here. Royal does little more than attempt to convert its professional malpractice claim (essentially one for the violation of GAAP and GAAS) into a fraud claim by tossing in some vague and conclusory allegations of malice and recklessness. This, however, does not satisfy the requirement to plead *scienter*, without which no fraud action can be stated.

In addition, Royal cannot escape the inevitable conclusion, apparent from its own arguments herein, that it can in no way demonstrate that it relied on the financial statements at issue in this case. In that regard, Royal cannot avoid the reality that it committed to issuing hundreds of millions of dollars in insurance policies ***before it even saw*** any of the financial statements in this case. That undisputed and inarguable fact is sufficient in and of itself to require the dismissal of Royal's fraud claim. The fact that Royal was clearly aware of the forbearance payments, that the financial statements timely disclosed the same, and that documents recently produced by Royal in another SFC-related litigation show that a Royal analyst viewed SFC as a "Ponzi scheme" as long ago as September 2000 further strips Royal of the ability to claim detrimental reliance. Essentially, Royal is complaining that FMSM, McGladrey and Aquino failed to inform it of something it already knew, which is fatal to its reasonable reliance theory. *See, e.g., Devaney v. Chester*, 1989 WL 52375 (S.D.N.Y. May 10, 1989) (claim against

9

accountants dismissed where financial statement recipients were already aware of dire financial condition of company they were acquiring) (Exhibit C). FMB thus joins the argument set forth in Point II of the McGladrey Reply Mem. that Royal's fraud claim should be dismissed as legally insufficient.

### 2. Royal's Civil Conspiracy Claim Lacks Merit

Royal's claim for conspiracy to commit fraud must fail because it does not allege that the sole purpose of the supposed conspiracy was to damage Royal or that FMB (or FMSM) had a common purpose with SFC or Yao to deceive Royal. This claim must also be dismissed because civil conspiracy is not an independent cause of action. FMB thus further joins McGladrey's argument in Point IV.A. of its reply brief for the dismissal of Royal's civil conspiracy claim.

### 3. Royal's Claim for Aiding and Abetting a Breach of Fiduciary Duty is Legally Insufficient

Royal's claim for aiding and abetting should be dismissed for several reasons. First, there is considerable question whether the tort that Royal seeks to assert exists at all. Second, Royal's pleading does not properly allege that FMB (or FMSM) gave "substantial assistance" to anyone who was engaged in a breach of fiduciary duty that may have been owed to Royal by SFC's directors and officers. The mere performance of professional accounting services does not constitute the requisite "substantial assistance," and Royal's assertion that it does is but another example of Royal's improper effort to exaggerate an accounting engagement into a fraud and conspiracy.

For the reasons set forth in the McGladrey Reply Mem., Point IV.B., in which FMB joins, Royal's aiding and abetting claim should be dismissed.

10

### 4. Royal's Negligence Claims Should Be Dismissed

Under Pennsylvania law, Royal cannot maintain negligence and negligent misrepresentation claims against FMB (or FMSM) because Royal lacks privity[4] with the accounting firms, and does not allege anything different in the amended complaint herein. Moreover, as discussed in connection with Royal's fraud claim, Royal falls woefully short in its attempt to show that it relied in any way, let alone reasonably, on any of the financial statements at issue in this case. For these reasons, and for those set forth in the McGladrey Reply Mem., Point IV.D., which FMB joins, Royal's negligence claims should be dismissed.

### 5. Royal's Deepening Insolvency Claim is Legally Insufficient

Finally, FMB joins in McGladrey's argument (Point IV.C.) that "deepening insolvency" is more akin to a measure of damages or type of injury, and is not an independent cause of action. As such, that claim should be dismissed.

## POINT IV

## FMB IS NOT A PROPER PARTY TO THIS ACTION

Without contradicting a single factual assertion made in FMB's moving papers, Royal nonetheless asserts that "Freed is a proper party to this action." (Royal Mem. at 77) Since a determination that FMB is not a proper party would require the Court to consider facts outside the allegations of the Complaint, FMB does not now move to be dismissed from the case on this ground – though it fully intends to do so at an appropriate early date in the event the current motions to dismiss are not granted. But FMB does

---

[4] Contrary to Royal's suggestion (Royal Mem. at 64-65), the Pennsylvania Supreme Court's decision in *Guy v. Liederbach*, 459 A.2d 744 (Pa. 1983), which requires privity in negligence-based actions against professionals, has never been overruled. In the absence of a ruling from Pennsylvania's highest court, this holding, and the policy it represents, should not be disregarded simply because Royal brings its claim based on professional negligence under a different name.

11

wish to point out the misleading statements in Royal's brief that attempt to imply a link between FMB and the conduct of which Royal complains – a link that simply does not exist.

Royal attempts to find significance in the fact that FMB and FMSM share the same address and the same "Chairman or Chief Executive Officer" (Royal Mem. at 77-78) – facts that were revealed to the Court in FMB's own moving papers. (FMB Mem., Appendix A) While the New York Department of State papers submitted by FMB, which may properly be considered by the Court on this motion, do not conclusively establish FMB's non-involvement with the SFC financial statements on which Royal claims to have relied, they do establish that FMSM and FMB are both still existing corporations in good standing under New York law. Moreover, while Royal inappropriately chides FMB for citing public records (Royal Mem. at 77), Royal itself relies on court filings and newspaper clippings to imply that FMB was not "born pure" (*id.* at 78) when that entity was created in 2001.

"Purity" is not the issue. The issue to be decided at some later date is whether FMB had anything at all to do with the SFC financial statements about which Royal complains. Given that FMB did not come into existence until after all of those financial statements had been issued, FMB cannot possibly have any responsibility for those statements, one of which was in fact audited by the still-existing FMSM. Moreover, nowhere does Royal challenge FMB's assertion that Aquino remained with McGladrey after the other FMSM partners – who, unlike Aquino, were all located in upstate New York (with Aquino at all times operating out of offices in Philadelphia) – ended their

affiliation with McGladrey, and that Aquino thus was never affiliated with FMB. Indeed, the Complaint itself acknowledges that very fact. (Complaint, ¶95)

Of course, FMB submits that the Court need never reach the issue of whether FMB is a proper party here since the Complaint's defects require dismissal of this action in its entirety. If this action does survive, though, the uncontested facts presented above establish that FMB had nothing to do with the financial statements on which Royal bases its claims. Accordingly, should the current motions be denied, FMB will seek to bring before the Court at an early stage facts that will demonstrate that it should be dismissed as a party to this action.

## CONCLUSION

For all the foregoing reasons, FMB's motion to dismiss the Complaint against it with prejudice should be granted in all respects.

Dated: August 18, 2005

                                            Respectfully submitted,

                                            PRICKETT, JONES & ELLIOTT, P.A.

                                      By: /s/ _____
                                        James L. Holzman (Bar ID #663)
                                        J. Clayton Athey (Bar ID #4378)
                                        1310 King Street
                                        Wilmington, Delaware 19801
                                        (302) 888-6500
                                        jlholzman@prickett.com
                                        jcathey@prickett.com

                                        *Attorneys for Defendant*
                                            *Freed Maxick & Battaglia, CPAs, PC*

OF COUNSEL:

John H. Eickemeyer (JE-8302)
Jonathan A. Wexler (JW-5587)
VEDDER, PRICE, KAUFMAN
   & KAMMHOLZ, P.C.
805 Third Avenue
New York, New York 10022
(212) 407-7700
jeickemeyer@vedderprice.com
jwexler@vedderprice.com

## CERTIFICATE OF SERVICE

I, J. Clayton Athey, hereby certify that service of the foregoing **Defendant Freed Maxick & Battaglia CPAs, PC's Reply Memorandum of Law In Support of Its Motion To Dismiss** was caused to be made on August 18, 2005 in the manner indicated upon the following:

**VIA CM/ECF**

Lawrence C. Ashby, Esquire
Philip Trainer, Jr., Esquire
Tiffany Geyer Lyndon, Esquire
Ashby & Geddes
222 Delaware Avenue
Wilmington, DE 19801

Christopher M. Winter, Esquire
Duane Morris, LLP
1100 North Market Street
Wilmington, DE 19801

William H. Sudell, Jr., Esquire
Donna L. Culver, Esquire
Morris Nichols Arsht & Tunnell
1201 N. Market Street
Wilmington, DE 19801

**VIA FIRST CLASS MAIL**

John I. Grossbart, Esquire
Soinnenschein Nath & Rosenthal LLP
800 Sears Tower, 233 S. Wacker Drive
Chicago, IL 60606

Elizabeth K. Ainslie, Esquire
Nicholas J. LePore, III, Esquire
Bruce P. Merenstein, Esquire
Stephen J. Shapiro, Esquire
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103

Veronica E. Rendon, Esquire
Richard P. Swanson, Esquire
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022

J. Clayton Athey (No. 4378)

15