**EXHIBIT A**

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MBIA INSURANCE CORPORATION, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | C.A. No. 02-1294-JJF |
| vs. ) | |
| ) | |
| ROYAL INDEMNITY COMPANY, ) | |
| ) | |
| Defendant. ) | |

| |
|---|
| ROYAL INDEMNITY COMPANY, ) |
| ) |
| Counterclaim ) |
| Plaintiff, ) |
| ) |
| vs. ) |
| ) |
| MBIA INSURANCE CORPORATION and ) |
| WELLS FARGO, ) |
| Counterclaim ) |
| Defendants, ) |

| |
|---|
| ROYAL INDEMNITY COMPANY, ) |
| ) |
| Third-Party Plaintiff, ) |
| ) |
| vs. ) |
| ) |
| PNC BANK, N.A., STUDENT LOAN ) |
| SERVICING, LLC, ANDREW N. YAO, ) |
| SFC ACCEPTANCE II, LLC, SFC ) |
| ACCEPTANCE III, LLC, SFC ACCEPTANCE ) |
| IV, LLC, SFC ACCEPTANCE V, LLC, ) |
| SFC ACCEPTANCE VI, LLC, SFC ) |
| ACCEPTANCE VII, LLC, SFC ) |
| ACCEPTANCE VIII, LLC, SFC ) |
| ACCEPTANCE IX, LLC, SFC FINANCIAL ) |
| I, LLC, and SFC FINANCIAL II, LLC, ) |
| ) |
| Third-Party ) |
| Defendants. ) |

**ANSWER, DEFENSES, COUNTERCLAIMS
AND THIRD-PARTY CLAIMS
OF DEFENDANT ROYAL INDEMNITY COMPANY**

Defendant Royal Indemnity Company ("Royal"), by its attorneys Ashby & Geddes and

Sonnenschein Nath & Rosenthal, for its Answer, Defenses, Counterclaims and Third-Party

Claims to the Complaint filed by MBIA Insurance Company ("MBIA") and WF Bank

Minnesota, N.A. as Trustee ("WF"), states as follows:

## ANSWER

1.      Royal admits that it issued credit risk insurance policy numbers RST293334, RST293309, RST147522, RST147524, RST147525, RST147526, RST147536, and RST147538 to Student Finance Corporation ("SFC"), with WF as a named beneficiary (the "SFC Policies"). Royal also admits that some student loans originated or purchased by SFC were pooled and transferred to trusts, that the trusts issued trust certificates or floating rate notes to investors, that the payment obligations under the trust certificates or notes were unconditionally and irrevocably guaranteed by MBIA, and that WF is the trustee of the trusts at issue in this lawsuit. Royal denies the remaining allegations contained in paragraph 1 of the Complaint.

2.      Royal admits that it is a Delaware Capital Stock Insurance Corporation, that the SFC Policies provide that their construction, validity and performance will be governed by the law of Delaware, and that two of the eight SFC Policies (RST147536 and RST147538) contain clauses by which the parties agreed that the United States District Court for the District of Delaware has jurisdiction over any disputes relating to or arising out of those two policies. Royal also admits that it has pending in Texas two lawsuits in which Royal has asked the court to rescind the SFC Policies because of SFC's fraud and to issue a declaratory judgment that Royal is not obligated to pay claims made under the SFC Policies. Royal refers to its complaints in those Texas lawsuits for a full and accurate explanation of the basis for Royal's claims. Royal also admits that it has asserted other claims against other parties in the Texas lawsuits, that MBIA is not a party to the Texas lawsuits, and that Royal has not pleaded as a basis for its relief in the Texas lawsuits that WF or MBIA committed a fraud, breach of contract, or other wrongdoing. Royal denies the remaining allegations contained in paragraph 2 of the Complaint.

3.      Paragraph 3 contains argument and characterizations of plaintiffs' claims, to which no response is required. To the extent a response is required, Royal denies those

2507982\V-8

characterizations and that argument. Royal denies the remaining allegations contained in paragraph 3 of the Complaint.

4.    Royal lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4, and therefore denies them.

5.    Royal admits the allegations contained in paragraph 5 of the Complaint.

6.    Royal admits the allegations contained in paragraph 6 of the Complaint.

7.    Paragraph 7 contains conclusions of law to which no response is required. To the extent that a response is required, Royal denies those allegations.

8.    Royal admits that it "is a Delaware corporation" and that two of the eight SFC Policies contain clauses by which the parties agreed that the United States District Court for the District of Delaware has jurisdiction over disputes relating to or arising out of the policies. The remaining allegations contained in paragraph 8 of the Complaint contain conclusions of law to which no response is required. To the extent a response is required, Royal denies those allegations.

9.    The first sentence of Paragraph 9 contains characterizations of plaintiffs' claims, to which no response is required. To the extent a response is required, Royal denies those characterizations. Royal admits that it issued the SFC Policies, the purpose of which was to provide insurance coverage for potential Defaults under covered Student Loans (as those terms and conditions are defined in the SFC Policies). Royal also admits that SFC paid premiums for the SFC Policies and that the Student Loans covered in the SFC Policies were purported to be pooled, transferred to trusts, and securitized. Royal denies the remaining allegations contained in paragraph 9 of the Complaint.

10.    Royal admits that SFC is a party to a bankruptcy proceeding pending in the United States Bankruptcy Court for the District of Delaware, that SFC is or was in the business

2307982?\V-8

of originating and/or acquiring student loans, that SFC pooled some of its student loans and transferred them to a trust, that a different trust was organized for each transaction, that the trusts issued trust certificates or floating rate notes to investors, that the certificates and notes were sold to investors in private placements, and that the placement memorandum in each transaction at issue in this case mentioned the specific SFC Policy issued in the transaction. Royal lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 10 of the Complaint, and therefore denies them.

11.    Royal admits that WF is the trustee of each of the trusts involved in this case, that student loan payments are supposed to be made to an account controlled by the trustee, and that WF is supposed to distribute the funds received in the manner specified in the transactional documents. Royal lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 11 of the Complaint, and therefore denies them.

12.    Royal admits that it issued the SFC Policies, the purpose of which was to provide insurance coverage for potential Defaults under covered Student Loans (as those terms and conditions are defined in the SFC policies). Royal also admits that SFC paid all premiums due for the SFC Policies until March, 2002. Royal denies the remaining allegations contained in paragraph 12 of the Complaint.

13.    Royal admits paragraph 13 of the Complaint.

14.    Royal admits that the SFC Policies define when a default occurs, that they define when a claim may be made on behalf of the trustee, that they define a covered loss, and that they each contain a limit of liability. Royal refers to the SFC Policies for a full and complete explication of these terms, phrases, and requirements. Royal denies the remaining allegations contained in paragraph 14 of the Complaint.

23075827v-8

15.    Royal admits that, pursuant to the SFC Policies and transactional documents, Claims for covered Defaults (as those terms are defined in the SFC Policies) were to be satisfied first from the reserve accounts created by the SFC Policies and the transactional documents. Royal also admits that the SFC Policies and the transactional documents required Royal to pay covered Claims for Defaults (as those terms are defined in the policies) only after all of the money in all of the reserve accounts was exhausted. Royal denies the remaining allegations contained in paragraph 15 of the Complaint.

16.    Royal denies the allegations contained in paragraph 16 of the Complaint.

17.    Royal admits that each of the provisions quoted in paragraph 17 of the Complaint appear in one or more of the SFC Policies. Royal denies the remaining allegations contained in paragraph 17 of the Complaint.

18.    Royal denies the allegations contained in paragraph 18 of the Complaint. Answering further, Royal states that it issued credit risk insurance policies to SFC, the purpose of which was to provide insurance coverage for potential defaults under covered student loans (as set forth in the SFC Policies) and that MBIA issued financial guarantees to the trusts to guarantee payment of principal and interest on the certificates and notes sold to investors in the Trusts.

19.    Royal admits that when it issued the SFC Policies it was aware that MBIA was issuing financial guarantees to the trusts. Royal also admits that the SFC Policies mention MBIA, that the SFC Policies provide that they shall not be waived, changed, modified or amended without the consent of MBIA, that MBIA was rated triple-A by the major credit rating agencies at the time the SFC Policies were issued, that Royal was not rated triple-A at that time, and that one of the purposes of the MBIA policies was to obtain a triple-A rating on the Certificates. Royal denies the remaining allegations contained in paragraph 19 of the Complaint.

2507982/V-8

20.     Royal denies the allegations contained in paragraph 20 of the Complaint.

21.     Royal admits that on or about March 30, 2001, MBIA representatives had a meeting with Royal representatives, including from Royal, Gil Chandler, Bill Hibberd, and others. Royal denies the remaining allegations contained in paragraph 21 of the Complaint.

22.     Royal admits that MBIA issued financial guarantees guaranteeing monthly payment of interest, and payment of the unpaid principal balance, on each of the Certificates, that one of the reasons for obtaining the MBIA policies was to enable SFC to obtain a triple-A rating on the Certificates, and that a trust was a named beneficiary in each of the MBIA guarantees. Royal denies the remaining allegations contained in paragraph 22 of the Complaint.

23.     Royal admits that MBIA, SFC, WF, and others entered into so-called Insurance Agreements, to which Royal was not a party, in some or all of the securitization transactions involving SFC student loans where WF was a trustee. Royal refers to those so-called Insurance Agreements for a full and complete explication of the terms, phrases, and requirements of those Agreements. Royal lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 23 of the Complaint, and therefore denies them.

24.     Due to SFC's fraud in inducing Royal to issue the SFC Policies, Royal denies that any of the SFC student loans were still insured by the SFC Policies on May 31, 2002 or June 28, 2002. Royal lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 24 of the Complaint, and therefore denies them.

25.     Royal lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the Complaint, and therefore denies them. Answering further, Royal states that it was informed that the reserve accounts meant to cover defaulted SFC student loans allegedly have been exhausted.

25079627\V-8

26.     Royal admits that on June 21, 2002, WF submitted notices of claim requesting Royal to pay alleged claims totaling approximately $137,643,434.00 for supposedly-defaulted SFC student loans. Royal lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 26 of the Complaint, and therefore denies them.

27.     Royal admits that on June 28, 2002, WF submitted notices of claim requesting Royal to pay alleged claims totaling approximately $132,208,092.50 for supposedly-defaulted SFC student loans. Royal lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 27 of the Complaint, and therefore denies them.

28.     Royal denies the allegations contained in paragraph 28 of the Complaint.

29.     Royal admits that WF has submitted additional notices of claim after June 28, 2002. Royal lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 29 of the Complaint, and therefore denies them.

30.     Royal admits that before receiving the notices of claims referred to in paragraphs 26 and 27, Royal filed lawsuits in Jefferson County, Texas and Harris County, Texas on June 7, 2002 and June 11, 2002 respectively. Royal also admits that it ultimately dismissed the Harris County lawsuit. Royal denies the remaining allegations contained in paragraph 30 of the Complaint.

31.     Royal admits that the allegations in the Harris County lawsuit were similar to the allegations made in the Second-Amended Petition in the Jefferson County lawsuit, that Royal asked both the Jefferson County and Harris County courts to issue declaratory judgments that Royal is not obligated to pay on the SFC Policies, and that Royal asked both courts to rescind the SFC Policies because of SFC's fraud. Royal also admits that WF was named as a defendant in

- 8 -

25079827v-8

both cases, that Royal has not pleaded as a basis for its relief in those cases that WF committed a fraud, breach of contract, or other wrongdoing, and that Royal did not name MBIA as a defendant in either lawsuit. Royal also admits that by filing the lawsuits it indicated its intention to rescind the SFC Policies that SFC had fraudulently induced Royal to issue. Royal denies the remaining allegations contained in paragraph 31 of the Complaint.

32.    Royal admits that the SFC Policies are void because SFC fraudulently induced Royal to issue them. Royal also admits that it has pleaded breach of contract claims against SFC Financial II, LLC, SFC Acceptance II, LLC, SFC Acceptance III, LLC, SFC Acceptance IV, LLC, SFC Acceptance V, LLC, SFC Acceptance VI, LLC, SFC Acceptance VII, LLC, SFC Acceptance VIII, LLC, and SFC Acceptance IX, LLC, and a breach of fiduciary duty claim against T.E. Moor & Company and MAC Insurance Agency, among other causes of action, in the Beaumont litigation. With respect to the remaining allegations contained in paragraph 32, Royal refers to its Third Amended Petition in the Beaumont litigation and the March 5, 2003 Consolidated Memorandum of Defendant Royal Indemnity Company in Renewed Opposition to Plaintiffs' Motion for Partial Summary Judgment in this case for a full and accurate explanation of the basis for Royal's assertion that the SFC Policies are void because SFC fraudulently induced Royal to issue them. Royal denies the remaining allegations of paragraph 32 of the Complaint.

33.    Royal admits that it is incorporated in Delaware, that two of the eight policies at issue in this lawsuit contain clauses by which the parties agreed that the United States District Court for the District of Delaware has jurisdiction over disputes relating to or arising out of the policies, and that the SFC Policies provide that their construction, validity and performance will be governed by the law of Delaware. Royal also admits that the Harris County and Jefferson County lawsuits named as parties some of the entities involved in the SFC transactions and some

- 9 -

of the truck driving schools whose students obtained loans from SFC. Royal also admits that the Harris County and Jefferson County lawsuits sought or seek to rescind the SFC Policies because of SFC's fraud. Royal denies the remaining allegations contained in paragraph 33 of the Complaint.

34.     Royal admits that MBIA issued financial guarantees guaranteeing payments to trust certificate and note holders, that MBIA's guarantees are absolute and unconditional, and that MBIA has stated that it will make payments under those guarantees. Royal lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 34 of the Complaint, and therefore denies them.

35.     Royal denies the allegations contained in paragraph 35 of the Complaint.

### First Claim For Relief

36.     Royal incorporates by reference its responses to paragraphs 1 through 35 of the Complaint as if fully restated herein.

37.     Royal denies the allegations contained in paragraph 37 of the Complaint.

38.     Royal denies the allegations contained in paragraph 38 of the Complaint.

39.     Royal admits that the SFC Policies, as issued, purported to insure against certain defaults on certain SFC student loans, as explicated in each policy. Royal denies the remaining allegations contained in paragraph 39 of the Complaint.

40.     Royal admits that two of the eight SFC Policies contain clauses by which the parties agreed that the United States District Court for the District of Delaware has jurisdiction over any disputes relating to or arising out of the policies.

41.     Royal admits that by filing the Texas lawsuits it has indicated its intention to rescind the SFC Policies that SFC fraudulently induced Royal to issue and that, therefore, Royal

has no obligation to pay claims under the SFC Policies. Royal denies the remaining allegations contained in paragraph 41 of the Complaint.

42.     Royal denies the allegations contained in paragraph 42 of the Complaint.

43.     Royal lacks knowledge or information as to what actions MBIA will have to take and therefore denies those allegations. Royal denies the remaining allegations contained in paragraph 43 of the Complaint.

44.     Royal denies the allegations contained in paragraph 44 of the Complaint.

### Second Claim for Relief

45.     Royal incorporates by reference its responses to paragraphs 1 through 44 of the Complaint as if fully restated herein.

46.     Royal denies the allegations contained in paragraph 46 of the Complaint.

47.     Royal admits that the SFC Policies, as issued, purported to issue against certain defaults on certain SFC student loans, as explicated in each policy. Royal denies the remaining allegations contained in paragraph 47 of the Complaint.

48.     Royal denies that WF has substantially performed its obligations under the SFC Policies. Royal lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 48 of the Complaint, and therefore denies them.

49.     Royal admits that by filing the Texas lawsuits it has indicated its intention to rescind the SFC Policies that SFC fraudulently induced Royal to issue and that, therefore, Royal has no obligation to pay claims under the SFC Policies. Royal denies the remaining allegations contained in paragraph 49 of the Complaint.

50.     Royal denies the allegations contained in paragraph 50 of the Complaint.

- 11 -

51.    Royal lacks knowledge or information as to what actions WF will have to take and therefore denies those allegations. Royal denies the remaining allegations contained in paragraph 51 of the Complaint.

52.    Royal denies the allegations contained in paragraph 52 of the Complaint.

### Third Claim for Relief

53.    Royal incorporates by reference its responses to paragraphs 1 through 52 of the Complaint as if fully restated herein.

54.    Royal denies the allegations contained in paragraph 54 of the Complaint.

55.    Royal denies the allegations contained in paragraph 55 of the Complaint.

56.    Royal admits that the SFC Policies, as issued, purported to issue against certain defaults on certain SFC student loans, as explicated in each policy. Royal denies the remaining allegations contained in paragraph 56 of the Complaint.

57.    Royal admits that by filing the Texas lawsuits it has indicated its intention to rescind the SFC Policies that SFC fraudulently induced Royal to issue and that, therefore, Royal has no obligation to pay claims under the SFC Policies. Royal denies the remaining allegations contained in paragraph 57 of the Complaint.

58.    Royal denies the allegations contained in paragraph 58 of the Complaint.

59.    Royal denies the allegations contained in paragraph 59 of the Complaint.

### Fourth Claim for Relief

60.    Royal incorporates by reference its responses to paragraphs 1 through 59 of the Complaint as if fully restated herein.

61.    Royal denies the allegations contained in paragraph 61 of the Complaint.

15079827:V-8

62.    Royal admits that the SFC Policies, as issued, purported to issue against certain defaults on certain SFC student loans, as explicated in each policy.  Royal denies the remaining allegations contained in paragraph 62 of the Complaint.

63.    Royal denies that WF has substantially performed its obligations under the SFC Policies.  Royal lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 63 of the Complaint, and therefore denies them.

64.    Royal admits that by filing the Texas lawsuits it has indicated its intention to rescind the SFC Policies that SFC fraudulently induced Royal to issue and that, therefore, Royal has no obligation to pay claims under the SFC Policies.  Royal denies the remaining allegations contained in paragraph 64 of the Complaint.

65.    Royal denies the allegations contained in paragraph 65 of the Complaint.

66.    Royal denies the allegations contained in paragraph 66 of the Complaint.

### Fifth Claim for Relief

67.    Royal incorporates by reference its responses to paragraphs 1 through 66 of the Complaint as if fully restated herein.

68.    Royal denies the allegations contained in paragraph 68 of the Complaint.

69.    Royal denies the allegations contained in paragraph 69 of the Complaint.

70.    Royal denies the allegations contained in paragraph 70 of the Complaint

71.    Royal admits that by filing the Texas lawsuits it has indicated its intention to rescind the SFC Policies that SFC fraudulently induced Royal to issue and that, therefore, Royal has no obligation to pay claims under the SFC Policies.  Royal denies the remaining allegations contained in paragraph 71 of the Complaint.

72.    Royal denies the allegations contained in paragraph 72 of the Complaint.

73.    Royal denies the allegations contained in paragraph 73 of the Complaint.

25079827\V-8

In response to the "WHEREFORE" paragraph, Royal denies that Plaintiffs are entitled to judgment against Royal, denies that Plaintiffs are entitled to any of the relief they request, prays that judgment be entered in favor of Royal instead of Plaintiffs, and prays that Royal be awarded its costs and attorneys' fees incurred in defending this action and such other relief as this Court deems equitable and just.

## DEFENSES, COUNTERCLAIMS AND THIRD-PARTY CLAIMS

For its defenses and counterclaims against MBIA and WF, and its third-party claims against various parties described herein, Royal avers as follows:

## FACTUAL BACKGROUND

### Summary

1.      SFC and its affiliates (collectively "SFC") purportedly were in the business of originating or purchasing tuition loans made to students of trade schools, including, primarily, truck driving schools, and selling such loans to investors through securitization transactions.

2.      Beginning in 1999, SFC purchased credit risk insurance for these student loans from Royal (the "SFC Policies"). The general purpose of the SFC Policies was to provide coverage, according to the terms and conditions of the insurance policies, for loan defaults caused by students failing to make loan payments. The insurance policies were written to cover student defaults in excess of the expected rate of such defaults for the group of specific loans covered by each policy. Student defaults at the expected rates, up to about 25% over the life of the loans, were to be paid from reserve funds SFC established pursuant to the insurance policies. These reserve funds were supposed to function like a deductible on the policies.

3.      SFC fraudulently induced Royal to issue the SFC Policies by misrepresenting, omitting, or concealing numerous material facts about the operation of its business and the historical performance of its student loans. Specifically, to convince Royal to issue the first policies, SFC understated the historical default rates of its student loans, concealed its history of making secret "forbearance payments" on those loans to keep them from defaulting and being reported as defaulted loans, and misrepresented the quality of the loans and the underwriting criteria used in writing them. Absent these misrepresentations, Royal never would have issued any policies to SFC.

- 15 -

4.    After Royal issued the initial policies, SFC fraudulently induced Royal to issue additional policies. SFC's use of secret "forbearance payments" grew to massive proportions and its misrepresentations grew with them. SFC went to great lengths to hide from Royal the fact, scale, and effect of the "forbearance payments" (even excising references to them from documents given to Royal). SFC concealed the reality that, without those payments, a substantial number of loans would have been in immediate default. SFC sent Royal monthly "servicer reports" that grossly understated the true default and delinquency rates of the loans. Behind the scenes, student default rates soared as SFC's underwriting practices deteriorated. All of this was hidden by SFC from Royal, even as SFC was applying to Royal for additional credit risk insurance policies.

5.    Royal did not learn of SFC's fraud until March 20, 2002, when SFC exhausted its sources of capital and was no longer able to make the enormous "forbearance payments". Since then, the truth has slowly emerged. Perhaps the most startling discovery was that, while SFC was reporting its student default rates to Royal at under 20%, which, if true, would have been covered by SFC's reserves and not triggered any payments by Royal under the SFC Policies, SFC was in reality experiencing student default rates of approximately 60%. The actual rate has only continued to increase over the last year, and now stands at higher than 83%.

### The Parties

6.    Defendant, Counterclaim Plaintiff, and Third-Party Plaintiff Royal is a Delaware Capital Stock Insurance Company with its principal place of business in Charlotte, North Carolina.

7.    Plaintiff and Counterclaim Defendant WF is a national banking association duly organized and existing under the laws of the United States and whose home office address is Sixth and Marquette, Minneapolis, Minnesota 55479. WF is a party here in its capacity as the

25079827IV-8

Trustee of various trusts that purchased SFC student loans through securitization transactions,

SFC Grantor Trust Series 2000-1, the SFC Grantor Trust Series 2000-2, the SFC Grantor Trust

Series 2000-3, the SFC Grantor Trust Series 2000-4, the SFC Grantor Trust Series 2001-1, the

SFC Grantor Trust Series 2001-2, the SFC Owner Trust Series 2001-1, and the SFC Grantor

Trust Series 2001-3. WF is the beneficiary under Royal Policy Nos. RST293334, RST293309,

RST147522, RST147524, RST147525, RST147526, RST147536, and RST147538, which were

entered into to provide credit risk insurance for the student loans in each of the above trusts.

8.    Plaintiff and Counterclaim Defendant MBIA is a New York insurance company

with its principal place of business at 113 King Street, Armonk, New York 10504. MBIA issued

financial guarantees that unconditionally guaranteed payment of the interest and principal on the

notes purchased by investors in the above trusts that held SFC student loans.

9.    Wilmington Trust Company of Pennsylvania ("Wilmington Trust") is a state

chartered bank organized and existing under the laws of Pennsylvania, with its principal place of

business located at 795 Lancaster Avenue, Second Floor, Suite 6, Villanova, Pennsylvania

19085. Wilmington Trust provided loans to SFC to originate and purchase student loans and is

named as the beneficiary of Royal Policy Nos. RST321276 and RST147533, which were entered

into to provide credit risk insurance for the student loans SFC originated or purchased with

Wilmington Trust funds.

10.    Third-Party Defendant PNC Bank, N.A. ("PNC Bank") is a national banking

association duly organized and existing under the laws of the United States, and whose home

office address is One PNC Plaza, 249 Fifth Avenue, Pittsburgh, Pennsylvania 15222. PNC Bank

is being sued in its capacity as deal agent and collateral agent for itself, PNC Bank, Delaware,

and Fleet National Bank, as the successors in interest to Market Street Funding Corporation and

Eagle Funding Capital Corporation, the original lenders to SFC Financial II, LLC. PNC Bank

provided loans to SFC to originate and purchase student loans and is named as the beneficiary of Royal Policy Number RST 147529, which was entered into to provide credit risk insurance for the student loans SFC originated or purchased with PNC Bank funds.

11.     Student Finance Corporation is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principal place of business at 170 Lukens Drive, New Castle, Delaware 19720. It was at all times pertinent to this action in the business of originating, purchasing and selling to investors tuition loans made to truck driving school students. Student Finance Corporation was the subject of an involuntary petition under Chapter 7 of the Bankruptcy Code filed by four petitioning creditors in the United States Bankruptcy Court for the District of Delaware on June 5, 2002. The Chapter 7 bankruptcy case against Student Finance Corporation was converted on consent to a Chapter 11 case on November 4, 2002. Student Finance Corporation is not named as a party to this action.

12.     Third-Party Defendant Student Loan Servicing, LLC ("SLS") is a limited liability company organized and existing under the laws of Delaware, and whose principal office address is, upon information and belief, 170 Lukens Drive, New Castle, Delaware, 19720. SLS was responsible for servicing the student loans in the SFC programs and providing information on the performance and status of the SFC student loans to Royal, PNC Bank, WF and MBIA.

13.     Student Marketing Services, LLC ("SMS") is a limited liability company organized and existing under the laws of Delaware, and whose principal office address is, upon information and belief, 170 Lukens Drive, New Castle, Delaware, 19720. SMS was at all times pertinent to this action responsible for recruiting schools into the SFC student loan programs, and managing the relationships between SFC and the schools.

14.     Third-Party Defendant Andrew N. Yao ("Yao") is a resident of Pennsylvania. Yao at all times pertinent to this action owned and controlled SFC. Yao at all times pertinent to

- 18 -

this action was the 100% owner of Student Finance Corporation and Student Marketing Services. He was also at all times pertinent to this action the 70% direct owner of SLS and indirectly owned the remaining 30% that was owned by Student Finance Corporation. He was at all times pertinent to this action an officer and director of, and controlled, all three entities. He was also at all times pertinent to this action the President and a director of each of the SFC Acceptance Entities and each of the SFC Financial Entities described below and controlled those entities.

15.    Third-Party Defendant SFC Acceptance II, LLC is a limited liability company organized and existing under the laws of Delaware, and whose principal office address is 170 Lukens Drive, New Castle, Delaware, 19720. SFC Acceptance II, LLC is the insured under Royal Policy No. RST293334.

16.    Third-Party Defendant SFC Acceptance III, LLC is a limited liability company organized and existing under the laws of Delaware, and whose principal office address is 170 Lukens Drive, New Castle, Delaware, 19720. SFC Acceptance III, LLC is the insured under Royal Policy No. RST293309.

17.    Third-Party Defendant SFC Acceptance IV, LLC is a limited liability company organized and existing under the laws of Delaware, and whose principal office address is 170 Lukens Drive, New Castle, Delaware, 19720. SFC Acceptance IV, LLC is the insured under Royal Policy No. RST293522.

18.    Third-Party Defendant SFC Acceptance V, LLC is a limited liability company organized and existing under the laws of Delaware, and whose principal office address is 170 Lukens Drive, New Castle, Delaware, 19720. SFC Acceptance V, LLC is the insured under Royal Policy No. RST293524.

19.    Third-Party Defendant SFC Acceptance VI, LLC is a limited liability company organized and existing under the laws of Delaware, and whose principal office address is 170

23079827\V-8

Lukens Drive, New Castle, Delaware, 19720. SFC Acceptance VI, LLC is the insured under Royal Policy No. RST293525.

20.     Third-Party Defendant SFC Acceptance VII, LLC is a limited liability company organized and existing under the laws of Delaware, and whose principal office address is 170 Lukens Drive, New Castle, Delaware, 19720. SFC Acceptance VII, LLC is the insured under Royal Policy No. RST293526.

21.     Third-Party Defendant SFC Acceptance VIII, LLC is a limited liability company organized and existing under the laws of Delaware, and whose principal office address is 170 Lukens Drive, New Castle, Delaware, 19720. SFC Acceptance VIII, LLC is the insured under Royal Policy No. RST293538.

22.     Third-Party Defendant SFC Acceptance IX, LLC is a limited liability company organized and existing under the laws of Delaware, and whose principal office address is 170 Lukens Drive, New Castle, Delaware, 19720. SFC Acceptance IX, LLC is the insured under Royal Policy No. RST293536.

23.     Third-Party Defendant SFC Financial I, LLC is a limited liability company organized and existing under the laws of Delaware, and whose principal office address is 111 Continental Drive, Suite 408, Newark, Delaware 19713. SFC Financial I, LLC is the insured under Royal Policy Nos. RST321276 and RST147533.

24.     Third-Party Defendant SFC Financial II, LLC is a limited liability company organized and existing under the laws of Delaware, and whose principal office address is 111 Continental Drive, Suite 408, Newark, Delaware 19713. SFC Financial II, LLC is the insured under Royal Policy No. RST147529.

25.     SFC Acceptance II, LLC, SFC Acceptance III, LFC, SFC Acceptance IV, LLC, SFC Acceptance V, LLC, SFC Acceptance VI, LLC, SFC Acceptance VII, LLC, SFC

- 20 -

Acceptance VIII, LLC, and SFC Acceptance XI, LLC are collectively referred to herein as the

"SFC Acceptance Entities." SFC Financial I, LLC and SFC Financial II, LLC are collectively

referred to herein as the "SFC Financial Entities." Student Finance Corporation, SLS, SMS, the

SFC Acceptance Entities and the SFC Financial Entities were at all times pertinent to this action

under common ownership and control and are collectively referred to herein as "SFC".

**SFC Fraudulently Induces Royal to Provide**
**Credit Risk Insurance for SFC Loans**

26.     SFC completed its first securitization transaction in 1996. Royal was not

involved in that transaction. On information and belief, the 1996 transaction involved the

offering of trust certificates backed by a pool of truck driving school student loans which had

been either purchased or originated by SFC. SFC obtained a credit risk insurance policy for the

loans issued by AIU Insurance Company, an affiliate of AIG.

27.     In 1998 SFC sought to expand its student loan programs, and to that end, began

looking for other potential insurers to provide credit risk insurance for the increasing number of

loans SFC planned to purchase or originate.

28.     In the summer of 1998, Joe Domal of International Business Group ("IBG"), an

insurance broker acting on behalf of SFC, contacted Ted Moor III, President of T.E. Moor & Co.

("T.E. Moor"), another insurance broker, about the possibility of Royal issuing credit risk

insurance to SFC. T.E. Moor, in turn, contacted Bill Hibberd of Royal.

29.     Soon after the initial conversations between employees of T.E. Moor and Mr.

Hibberd, SFC sent Royal numerous documents regarding SFC's business and history.

Throughout the negotiation of the initial coverage, SFC continued to forward Royal information

regarding its programs. Those communications contained numerous material misrepresentations.

30.     Specifically, through IBG, SFC sent Royal a letter and attachments to Mr.

Hibberd on November 13, 1998, including (a) a proposed term sheet; (b) an "historical

2507982 7\V-8

performance" chart, (c) a "loss reserve" chart; (d) the AIU credit risk insurance policy; and (e) an "information summary" regarding SFC. IBG sent the letter on behalf of SFC, with SFC's knowledge, at the direction of SFC and Yao, and with information SFC and Yao supplied.

31.    The "historical performance" chart showed zero net losses incurred by the previous insurer, low default rates for the insured student loans, and delinquency figures consistently under 20% for the same loans. These representations were false.

32.    The "information summary" regarding SFC stated that SFC's program offered "100% recovery on defaults" and that the transaction's reserves would "protect[] the insurer" by growing in value to three times the expected defaults. These representations were also false.

33.    In reality, default rates for students' failure to pay SFC's loans were much higher, but had been artificially understated through SFC's use of undisclosed "forbearance payments," i.e., payments SFC made on loans nearing default to prevent them from actually going into default. In addition, SFC and Yao knew when it made the representations to Royal that it did not offer "100% recovery" on the actual student defaults and that it did not "protect the insurer with 3x expected default coverage." SFC and Yao made these false representations to induce Royal to issue credit risk insurance to SFC in reliance upon the representations.

34.    After reviewing the SFC materials, Royal posed a series of written questions to SFC, Yao, and their agents concerning the SFC student loan program. On or about November 30, 1998, IBG, on behalf of SFC, sent Royal answers to these questions. The answers had been prepared on behalf of SFC and Yao by its investment advisor, Loofbourrow & Associates, in the form of a memorandum that had been sent to IBG, with copies to Yao.

35.    In responding to Royal's questions, SFC and Yao represented:

   a.    That SFC's historic maximum cumulative default rate (before recoveries) on student loans was 25%;

b.    In five years of originations, SFC had obtained nearly 100% recovery on loan defaults, across all credit classes, and obtained recoveries immediately, from reserves that it retained from schools;

c.    There was considerable loss coverage protection to Royal throughout the life of an SFC loan pool through reserves SFC established; and

d.    Royal would have a loss coverage protection to Royal ratio of 3.4 times the defaults.

36.    SFC and Yao knew each of these representations was false when made. In reality, SFC's historic default rates were much higher than represented, but had been masked by SFC's secret "forbearance payments". In the loans it had originated, SFC had not obtained 100% recovery on defaults from the school reserve funds. SFC and Yao knew that Royal would not have a loss coverage protection to Royal of 3.4 times the size of the defaults. And SFC and Yao knew there would not be considerable loss coverage protection to Royal throughout the life of the loan pool.

37.    SFC sent to Royal the underwriting guidelines it supposedly used in writing student loans. SFC represented that the guidelines had been used and would be used for loans insured by Royal. The guidelines required all schools whose students received SFC loans to, *inter alia*, maintain 67% graduation and job placement rates, have a CPA conduct an annual compliance audit of the school's financial aid policies and procedures, and comply with standards published by the United States Department of Education. In reality, most schools for which SFC provided student loans did not then comply with these guidelines -- a fact well known to SFC and Yao. SFC had not enforced the guidelines and did not intend to enforce them.

38.    The foregoing misrepresentations and omissions were material and were made with the intention that Royal rely on them. At the time SFC made these misrepresentations to Royal and withheld material information from Royal, SFC and Yao knew that these misrepresentations were false and that material omissions were made.

- 23 -

39.   Justifiably relying on the information and documents provided to it by SFC, Yao and their agents, Royal decided to provide credit risk insurance for student loans under SFC's student loan program.

40.   Effective January 22, 1999, Royal issued its first credit risk insurance policy to SFC, Policy No. RST321276 ("No. 276"), which was written to cover $75 million in student loans originated and purchased by SFC with funds from Wilmington Trust. SFC and Yao created an affiliate, SFC Acceptance I, LLC, to hold the loans and to act as the insured under the Royal policy. The student loans were said to be "warehoused" with SFC Acceptance I, LLC and Wilmington Trust was said to be the "warehouse lender".

41.   When a sufficient number of student loans were warehoused, SFC and SFC Acceptance I, LLC packaged those student loans into a pool to be sold to a trust established to sell investors interests in the student loans.

### SFC Makes "Forbearance Payments" on Student Loans Under the Royal Policies

42.   SFC concealed defaults on the student loans under the Royal policies by making "forbearance payments." If a borrower was 90 days delinquent in his repayment obligations, the loan was considered to be in default under the insurance policies, and had to be reported to Royal as a defaulted loan. SFC wanted Royal to issue future policies insuring its student loans and, thus, did not want Royal to know that many of the student loans were not performing well. Thus, as loans approached 90 days delinquency, SFC made secret "forbearance payments" on behalf of the borrowers.

43.   In reports provided to Royal, SFC treated these "forbearance payments" as having been made by the student borrowers, even though they had really been made by SFC itself. In its reporting systems, SFC did not treat the loans that had received "forbearance payments" as

- 24 -

defaulted loans. In reports provided to Royal, SFC did not treat these loans as defaulted loans either or inform Royal that SFC was making payments to keep the loans from defaulting.

44.    The "forbearance payments" were made at the direction of Yao.

45.    SFC and Yao represented to Royal that the student loans under the Royal policies that were receiving "forbearance payments" were performing and were not defaulting. SFC did not disclose to Royal that it was making the "forbearance payments" or that the "forbearance payments" were preventing massive amounts of otherwise-defaulting loans from being reported as defaults. The decision to conceal from Royal the true default rates, the "forbearance payments" and their effect on the default rates was made by Yao.

46.    SFC's and Yao's use of "forbearance payments" to conceal defaults was not disclosed to Royal before the negotiation and issuance of subsequent policies. Consequently, Royal continued to believe that the SFC student loan program was performing as originally represented by SFC.

47.    Prior to Royal agreeing to issue credit risk insurance coverage to SFC, SFC had provided Royal with form agreements regarding student loans between SFC and individual schools. These agreements did not mention "forbearance payments." Upon information and belief, later versions of the agreements between SFC and the schools included references to "forbearance payments." These revised forms were not provided to Royal.

### In Reports SFC Was Required to Provide Royal, SFC Fails to Disclose the "Forbearance Payments" and Understates Its Default Rates

48.    SFC, through SLS, provided Royal with monthly "servicer reports." These servicer reports, which were prepared under the supervision and at the direction of Yao, contained detailed information about, among other things, the performance of the SFC student loans, the default and delinquency rates of the loans, and the payments received on the loans.

23079827\V-8

49.    The servicer reports misrepresented the actual performance of the SFC student loans by: (a) reporting as non-defaulted loans those loans that would have defaulted but for the "forbearance payments", (b) not disclosing the "forbearance payments", and (c) not disclosing that the "forbearance payments" were preventing otherwise defaulted loans from being reported as defaulting loans.

50.    SFC's servicer reports did not report as defaults those loans where the student had missed payments, but SFC had secretly made "forbearance payments" on the loans. Instead, the servicer reports listed these "forbearance payments" in the general "payments received" column, thereby creating the false impression that these loans, some of which had received no student payments for years, were actually performing as expected (or better than expected). The servicer reports created the false impression that student default rates generally were low and in line with SFC's initial representations.

51.    The servicer reports SFC issued to Royal were designed to give the impression that the student loans were performing according to SFC's initial and continuing misrepresentations. SFC and Yao knew that the reports misrepresented the actual performance of SFC's student loans and intended by sending the false reports to induce Royal to continue to provide credit risk insurance to SFC and to issue new credit risk insurance policies to SFC.

25079827\V-8

**SFC and Yao Induce Royal to Issue Credit**
**Risk Insurance for Securitization Transactions**

52.     Based on the above material misrepresentations and omissions, including monthly servicer reports received from January, 1999 forward, SFC and Yao induced Royal to issue a credit risk insurance policy for $50,000,000 of the Wilmington Trust warehouse student loans that were being sold to investors through a trust for which WF's predecessor, Norwest Bank Minnesota, was trustee.

53.     Accordingly, on April 19, 2000 Royal issued its first policy with Norwest Bank Minnesota as beneficiary (later, WF).  The Policy Number was RST 293334 ("Policy No. 334"), the insured was SFC Acceptance II, LLC, and the policy had an inception date of January 22, 1999.  The policy insured against loss caused by "a Student Loan becoming more than ninety (90) days delinquent" (as those terms were further defined in the Policy).  The limit of liability under the policy was the $50,000,000 principal amount of the listed SFC student loans, plus three months interest.

54.     Upon information and belief, because of SFC and Yao's fraudulent scheme set forth above, a significant percentage of the warehouse student loans that were included in Policy No. 334 and the other subsequent policies where WF, or its predecessor Norwest Bank Minnesota, was beneficiary were already delinquent and/or in default at the time each such policy was written.

55.     Because of SFC's fraudulent misrepresentations, Royal was not aware at the time Policy No. 334 or any of the other SFC Policies where WF was beneficiary was written that loans in that policy were already delinquent or in default.

**The Misrepresentations Continue as SFC
Induces Royal to Issue More Insurance**

56.     Yao continued to expand SFC's student loan purchase and origination program

through 2001.  SFC and Yao fraudulently induced Royal to issue additional credit risk insurance

to SFC's Financial Entities for warehoused student loans and seven more of SFC's specially

created Acceptance Entities to allow SFC to engage in additional securitization transactions with

the warehoused student loans.

57.     SFC and Yao fraudulently induced Royal to issue, *inter alia*, the following

additional credit risk insurance policies to cover defaulted SFC student loans :

a.      Policy Number RST 293309 ("Policy No. 309"), effective December 3, 1999.
        Policy No. 309 was originally issued in connection with a warehouse loan
        obtained by SFC Financial I, LLC and SFC Financial II, LLC from Wilmington
        Trust, but was subsequently amended to cover a securitization transaction.  As
        amended, the insured under Policy No. 309 was SFC Acceptance III, LLC, the
        beneficiary was WF, and the policy was written to cover $53,053,642 in SFC
        student loans.

b.      Policy Number RST 147522 ("Policy No. 522"), effective April 30, 2000.  Policy
        No. 522 was originally issued in connection with a warehouse loan obtained by
        SFC Financial I, LLC from Wilmington Trust, but was subsequently amended to
        cover a securitization transaction.  As amended, the insured under Policy No. 522
        was SFC Acceptance IV, WF was the beneficiary, and the policy was written to
        cover $48,459,255 in SFC student loans.

c.      Policy Number RST 147524 ("Policy No. 524"), effective August 20, 2000.
        Policy No. 524 was also originally issued in connection with a warehouse loan
        obtained by SFC Financial I, LLC from Wilmington Trust, and was subsequently
        amended to cover a securitization transaction.  As amended, the insured under
        Policy No. 524 was SFC Acceptance V, LLC, the beneficiary was WF, and the
        policy was written to cover $29,999,999.94 in SFC student loans.

d.      Policy No. RST 147525 ("Policy No. 525"), effective November 27, 2000.  Policy
        No. 525 was also originally issued in connection with a warehouse loan obtained
        by SFC Financial I, LLC from Wilmington Trust, and was subsequently amended
        to cover a securitization transaction.  As amended, the insured under Policy No.
        525 was SFC Acceptance VI, LLC, the beneficiary was WF, and the policy was
        written to cover $55,616,550 in SFC student loans.

e.      Policy No. RST 147526 ("Policy No. 526"), effective January 31, 2001.  Policy
        No. 526 was also originally issued in connection with a warehouse loan obtained

25079427\V.8

by SFC Financial I, LLC from Wilmington Trust, and was subsequently amended to cover a securitization transaction. As amended, the insured under Policy No. 526 was SFC Acceptance VII, LLC, the beneficiary was WF, and the policy was written to cover $48,286,713 in SFC student loans.

f.    Policy No. RST 147529 ("Policy No. 529"), effective June 19, 2001. Policy No. 529 was issued in connection with a warehouse loan obtained by SFC Financial II, LLC from PNC Bank, N.A. The insured under Policy No. 529 was SFC Financial II, LLC, the beneficiary was PNC Bank, N.A., and the policy was written to cover $150,000,000 in SFC student loans.

g.    Policy No. RST 147533 ("Policy No. 533"), effective August 17, 2001. Policy No. 533 was issued in connection with a warehouse loan obtained by SFC Financial I, LLC from Wilmington Trust. The insured under Policy No. 533 was SFC Financial I, LLC, the beneficiary was Wilmington Trust, and the policy was written to cover $5,518,459 in SFC student loans.

h.    Policy No. RST 147538 ("Policy No. 538"), effective October 19, 2001. The insured under Policy No. 538 was SFC Acceptance IX, LLC, the beneficiary was WF, and the policy was written to cover $100,000,000 in SFC student loans.

i.    Policy No. RST 147536 ("Policy No. 536"), effective November 15, 2001. The insured under Policy No. 536 was SFC Acceptance VIII, LLC, the beneficiary was WF, and the policy was written to cover $80,000,000 in SFC student loans.

58.    When issuing each of these policies, Royal continued to rely upon SFC's and Yao's continuing misrepresentations and material omissions set forth above, which created the false impression that SFC's student loan program was operating at a low default level as originally represented.

59.    In connection with the issuance of Policy No. 529, SLS entered into a separate "Insurance Agreement" with Royal, Student Financial Corporation, and SFC Financial II, LLC as parties. In that agreement, SLS agreed to "employ reasonable collection methods and standards." SLS failed to comply with this obligation in the manner discussed below.

60.    In connection with the issuance of Policy Nos. 536 and 538, SLS entered into separate "Insurance Agreements" with Royal, Student Finance Corporation, and SFC Acceptance VIII, LLC and SFC Acceptance IX, LLC as parties. In these agreements, SLS and and SFC Acceptance VIII and IX agreed to comply with the duties and obligations imposed upon them in

- 29 -

2507942HV-8

various Policy and Service Agreements ("PSA's").  SLS also agreed to "employ reasonable collection methods and standards."  SFC Acceptance VIII and IX and SLS failed to comply with these obligations in the manner discussed below.

### Yao and SFC Continue to Conceal the Truth
### About the SFC Student Loans

61.     On March 23, 2000, Yao and his officers discussed the possibility of disclosing the existence of the "forbearance payments" to Royal and other parties, and the possibility of amending the servicer reports to disclose the existence of the "forbearance payments".  Yao decided that SFC would continue to conceal the payments, their effect on the default rates, and the true default rates of the loans.  Royal issued eight more credit risk insurance policies to the SFC insureds after this decision was made.

62.     In October 2000, Yao prepared a Cash Flow Projection for 2001, which contained a column providing for $19 million in "Royal Forebearance" (sic) payments for the year.  Not long after Yao prepared the Cash Flow Projection for 2001, Royal requested a copy of SFC's Cash Flow Projections for 2001.  Yao provided Royal a copy of that Cash Flow Projection, but excised all reference to the "forbearance payments" from the document, thereby continuing to conceal the payments and their enormity from Royal.  Royal issued five more credit risk insurance policies to the SFC insureds after Yao provided this altered document to Royal.

63.     In early 2001, Royal became concerned about the growing number of loans that were being reported as delinquent.  Royal asked SFC and Yao to provide an explanation for the increasing percentage of delinquencies.  In truth, the reports provided to Royal showed a high percentage of delinquencies because, unbeknownst to Royal, they included not only loans that were actually delinquent but also the enormous number of non-performing loans upon which SFC was making "forbearance payments".  Thus, the delinquency reports were including not only all delinquent loans, but also the loans that would have defaulted but for the "forbearance

- 30 -

payments". Rather than admitting the truth, in response, an SFC officer asserted that the high number of delinquencies was caused by students making advance payments on their loans prior to graduation. These students purportedly would then forget to begin making monthly payments after graduation and would always remain thirty to sixty days delinquent once they resumed making payments. This response was false and Yao knew it was false.

64.    In or around June of 2001, Tony McKenzie of Royal again asked SFC to review and affirm the accuracy of the 25% maximum default rates SFC and Yao had originally represented for the SFC student loan program. In response, an SFC officer provided its financial modeling to Royal, which reaffirmed the earlier representations by using the same 25% maximum default rates.

65.    On or about October 22, 2001, a collection supervisor for an SFC affiliate prepared a memorandum for SFC's Credit Committee that raised serious questions regarding the integrity of SFC's student loan application process and demonstrated that some of the truck driving schools were inventing large numbers of loan applications. This memorandum also detailed suspected fraud on the part of the truck driving schools, including,

    a.    promising students that their employer would repay the loan, or that they would not be required to repay the loan if they failed to find employment;

    b.    issuing loans to students with criminal records and physical or mental handicaps;

    c.    submitting loan applications with signatures of school employees and false co-signors;

    d.    issuing loans to students who were not creditworthy or employable;

    e.    failing to maintain adequate graduation and placement rates; and

    f.    charging tuitions exceeding what any student, even if successfully placed, could be expected to repay on a truck driver's salary.

66.    The memorandum also noted that numerous loans were going into default immediately, on the due date of their first payment.

67.    Neither this memorandum nor its contents were disclosed to Royal.

68.    The schools' abuses of SFC's underwriting criteria were known to Yao and SFC. Upon information and belief, Yao decided not to enforce SFC's underwriting guidelines and to conceal this decision and the underwriting abuses from Royal.

69.    In or about October 2000, SFC decided to further weaken its underwriting standards by allowing less creditworthy individuals to serve as student loan co-signors. Upon information and belief, this decision was made by Yao. It was not disclosed to Royal.

70.    SFC and Yao made the above misrepresentations to Royal with the intention that Royal would rely upon them in determining whether to continue to issue credit risk insurance covering the student loans. Royal in fact relied upon them.

71.    At the time SFC and Yao made these misrepresentations, they knew they were false.

72.    Upon information and belief, a small number of SFC employees expressed concern with SFC's practice of making secret "forbearance payments" and rightfully characterized the practice as a fraud. Upon information and belief, Yao had those employees summarily fired and, in order to keep the scheme a secret, he had the employees sign confidentiality agreements as a condition of receiving severance packages from SFC.

73.    Upon information and belief, on or around March 5, 2002, Yao admitted to a third party lender that he had concealed the "forbearance payments" and the true default rates from Royal, that Royal was, and had been, entitled to that information, and that Yao and SFC were under obligations to provide that information to Royal.

15079827\V-8

74.     While the SFC student loan warehouse and securitization transactions were taking place, Yao was taking unusually large amounts of money out of SFC in the form of distributions of equity. Between June 2001 and February 2002 alone, Yao took $9.25 million in distributions of equity from Student Finance Corporation and an additional $7.13 million in distributions from other SFC affiliates. From January 1, 1995 through April 6, 2002, Yao took at least $26 million out of Student Finance Corporation in the form of distributions of equity, plus additional money out of other SFC affiliates.

### SFC's Fraud Is Revealed

75.     On or about March 20, 2002, Yao admitted to Royal for the very first time that SFC had been making the secret "forbearance payments" to prevent student loans from being reported as defaults and that a large number of student loans would be defaulting in the coming months if SFC stopped making those payments.

76.     Royal was shocked by these revelations. Until this disclosure, Royal had always believed that the loans were experiencing relatively low default rates in line with SFC's initial representations. This belief was based on SFC's original representations to that effect, on SFC's re-affirmations of those representations, and on the monthly servicer reports which indicated that default rates were well below 25%.

77.     On or about April 10, 2002, an SFC officer sent Royal a facsimile in which SFC admitted that it had made a total of more than $50 million in "forbearance payments" between January 2001 and March 2002 on student loans covered by Royal policies.

### WF's Knowledge of SFC's Fraud

78.     In connection with each securitization transaction, WF entered into a Pooling and Servicing Agreement ("PSA") with Student Finance Corporation, the SFC Acceptance Entity for that transaction and SLS.

- 33 -

79.    Royal was a third party beneficiary under each PSA.

80.    In each PSA, WF agreed to review every student loan involved in the securitization transaction and the supporting credit application for each such loan to make sure that they were in existence and properly signed. WF was also required to report to Royal whether it received those documents.

81.    After the SFC program collapsed, Royal learned that the signatures of borrowers and co-signors had been forged on numerous loans and credit applications. Despite its review of these signatures, WF never informed Royal of any problems with the signatures on those documents.

82.    After the SFC program collapsed, Royal learned of the following additional problems with the student loan applications and credit applications that WF was required to have reviewed: (a) schools submitted false information in the student reference section on numerous loan and/or credit applications, (b) schools provided their own addresses as the students' addresses on numerous applications, (c) schools listed their own employees as the references on applications, (d) the same people appeared again and again as co-signors on loans, sometimes with and sometimes without their consent (one individual co-signed more than 30 loans), (e) schools used former students as co-signors, and (f) false contact information was given for borrowers.

83.    WF should have noticed (and perhaps did notice) that the loan applications and credit applications contained false information. It should have noticed (and perhaps did notice) that many of the loan applications and credit applications were not properly signed by a legitimate borrower or a legitimate co-signor.

84.    WF never reported any of these problems to Royal.

- 34 -

85.     WF received from SFC, through SLS, both weekly and monthly computer data transmissions containing detailed current financial information on the student loans ("Servicer Tapes"). The Servicer Tapes contained more detailed information than Royal received by way of SFC's monthly servicer reports.

86.     In the PSA's, WF agreed to compare the data in the Servicer Tapes with the information contained in the corresponding monthly servicer reports sent to Royal. WF agreed to report to Royal any discrepancies between the Servicer Tapes and the monthly servicer reports.

87.     WF never reported any discrepancies between the Servicer Tapes and the monthly service reports to Royal.

88.     After the collapse of the SFC program, Royal obtained the March 22, 2002 Servicer Tape that had been sent to WF. This Servicer Tape segregated the "forbearance payments" SFC had made from the bona fide loan payments students had made. The Servicer Tape also showed that all of the "forbearance payments" were made at the end of the month, on or about the same day, while most student payments were received at the beginning of the month.

89.     Upon information and belief, the March 22, 2002 Servicer Tape was in the same format as the previous Servicer Tapes WF had received.

90.     Upon information and belief, WF, therefore, had, on a current basis, information showing that SFC was making the "forbearance payments", the massive size of those payments, and their effect on the false default and delinquency rates being reported to Royal. WF did nothing to alert Royal of these problems.

23019827/V-8

91.     If WF had properly reviewed the Servicer Tapes, it would and should have been suspicious of the number of end-of-the-month "forbearance payments", received so much later than most legitimate payments.

92.     WF never disclosed to Royal that a large proportion of reported loan payments were "forbearance payments" received at the end of the month.

93.     The PSA's required the retention of an auditor to analyze the servicer reports, compare them to the underlying data that supposedly supported them, and confirm the accuracy of the information in the servicer reports.

94.     WF and SFC jointly retained the accounting firm of McGladrey & Pullen ("McGladrey"), who already was SFC's auditor, to perform these audits.

95.     McGladrey reviewed the servicer reports that Royal received, which did not disclose "forbearance payments", as well as the weekly Servicer Tapes which were sent to WF alone (and which segregated the "forbearance payments" by a specific code).  Notwithstanding this review, McGladrey's audit reports do not mention the "forbearance payments" anywhere, let alone note that the "forbearance payments" were not distinguished from the student borrower payments in the servicer reports.  The audit reports also did not mention that SFC was falsely recording the "forbearance payments" in the "payments received" column of the servicer reports.  Instead, McGladrey's reports gave SFC a clean bill of health, and WF gave copies of those reports to Royal.

96.     By March 2000, McGladrey was aware of the nature, size, and effect of the "forbearance payments".  On information and belief, McGladrey had communicated their existence, nature, and effect to WF.

97.     WF never disclosed to Royal the "forbearance payments" or their effect on default rates.

25079827\V-8

98.    If WF had disclosed to Royal the "forbearance payments" and their effect on default rates reported to Royal, Royal would not have issued any further insurance policies to SFC.

### First Additional Defense
### (SFC Policies Are Void Due to SFC's Material Misrepresentations and Concealment of Material Facts)

99.    Paragraphs 1 through 98 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

100.    As is described above, SFC applied for and fraudulently induced Royal to issue credit risk insurance policies. SFC had a duty to disclose the truth about its student loan program to prevent the statements it made to Royal from being misleading.

101.    SFC made these misrepresentations and material omissions to Royal with the intention that Royal rely on them in determining whether to issue credit risk insurance coverage to SFC.

102.    At the time SFC made these representations to Royal, SFC knew these representations were false, and knew that it was concealing from Royal material information about the huge student default rates in its student loan program.

103.    Royal justifiably relied on SFC's representations and information SFC provided in determining whether to issue policies to cover risk of default of the SFC student loans.

104.    The misrepresentations and omissions SFC made were material because they formed the basis of Royal's determination of whether to issue credit risk insurance to SFC. Moreover, the historical default rates of the student loans was the single most important factor in Royal's determination to issue credit risk insurance to SFC.

105.    Because SFC fraudulently induced Royal to issue policies in reliance upon the above material misrepresentations and omissions, the policies are void, and WF and MBIA may not recover under the policies.

### Second Additional Defense
### (Policies Are Void Due to SFC's Violations
### of Law and Public Policy)

106.    Paragraphs 1 through 98 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

107.    SFC represented to Royal that Royal was issuing insurance in connection with a bona fide student loan program, when in fact the SFC enterprise was an illegal fraudulent scheme designed to enrich SFC's principals, affiliates and insiders through the systematic diversion and misappropriation of funds. This fraudulent scheme was accomplished through material misrepresentations and concealment of material facts.

108.    The SFC Policies are void as against public policy because Royal may not issue insurance to cover intentional wrongful or unlawful conduct, and WF and MBIA may not recover under those void policies.

### Third Additional Defense
### (Known Loss/Loss Not Unforeseeable)

109.    Paragraphs 1 through 98 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

110.    As is described above, SFC sought insurance to cover future defaults on student loans.

111.    At the time it applied for the insurance, SFC knew that the default rates of the student loans involved in the SFC student loan programs were well in excess of what was represented to Royal.

25079827\V-8

112.    At the time it applied for insurance, SFC knew that its reserves would not build up and be maintained as had been represented to Royal. Thus, SFC knew that a high percentage of the loans would default and that SFC would not have sufficient reserves to cover the defaulted loans.

113.    At the time the policies in which WF was a beneficiary were written, a number of the student loans covered by the policies were in default or delinquent.

114.    Royal did not intend to cover the losses which were known to SFC at the time the policies were issued.

115.    Royal is not obligated to indemnify WF with respect to a known loss ab initio under the policy, and WF and MBIA may not recover.

<u>Fourth Additional Defense</u>
(WF Was on Notice of SFC's Fraud)

116.    Paragraphs 1 through 98 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

117.    As is described above, WF received weekly and monthly Servicer Tapes from SFC which contained detailed information regarding payments made on the SFC student loans. WF also received copies of the monthly servicer reports sent to Royal which contained less detailed information regarding payments made on the loans.

118.    WF was obligated to review and compare the Servicer Tapes with the monthly servicer reports and alert Royal to any discrepancies contained therein.

119.    Upon information and belief, the Servicer Tapes showed that SFC was making enormous "forbearance payments" on many of the loans to keep them from appearing as defaulted loans. The monthly servicer reports did not show the existence of "forbearance payments".

- 39 -

120.    WF, therefore, knew or should known of SFC's misrepresentations regarding the student default rates, and concealment of the "forbearance payments".

121.    Under the Pooling and Servicing Agreement, as the custodian of the student loan underwriting files, WF was charged with the responsibility of reviewing such files to ascertain whether, on their face, they were bona fide signed original student loan contracts and original credit applications for such loans.

122.    Upon information and belief, many of those student loan underwriting files showed that the trucking schools were submitting loan applications with fraudulent signatures, signatures of school employees and false co-signors.

123.    By virtue of the documents in its possession which it was charged with reviewing, WF knew or should have known that SFC and the truck driving schools were not following the underwriting criteria in issuing student loans.

124.    Despite having notice of SFC's misrepresentation of the default rates, of SFC's concealment of material facts, and of SFC's and the trucking schools' failure to follow underwriting criteria, WF failed to notify Royal of these matters.

125.    WF's failure to provide proper notice of these matters bars its recovery.

### Fifth Additional Defense
#### (MBIA Was on Notice of SFC's Fraud)

126.    Paragraphs 1 through 98 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

127.    Upon information and belief, MBIA was aware that the default and delinquency rates of the SFC student loans had been misrepresented, and had made inquiries regarding the high default and delinquency rates.

2507982RV-8

128. Despite having notice of SFC's material misrepresentations, concealment of material facts and failure to follow the underwriting criteria, MBIA failed to notify Royal of these matters.

129. To the extent that MBIA claims it is a third party beneficiary under the policies, MBIA's failure to provide proper notice of these matters bars its recovery.

### Sixth Additional Defense
### (Offset and Payment)

130. Paragraphs 1 through 98 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

131. To the extent that WF has received, is entitled to receive, or expects to receive payments from MBIA or any other source in connection with the losses claimed under the policies, Royal's obligation to pay is reduced or eliminated in accordance with those payments.

### Seventh Additional Defense
### (Reserves)

132. Paragraphs 1 through 98 of these Defenses, Counterclaims and Third-Party Claims are incorporated by references as if set forth in full herein.

133. To the extent that any of the SFC Policies provided coverage for the losses claimed by WF and MBIA, such coverage applies only after the exhaustion of reserves established under the Policies.

### Eighth Additional Defense
### (Underlying Facts Do Not Give Rise
### to a Claim under the SFC Policy)

134. Paragraphs 1 through 98 of these Defenses, Counterclaims and Third-Party Claims are incorporated by references as if set forth in full herein.

135. As is described above, upon information and belief, the trucking schools failed to follow the underwriting criteria.

136.    The credit risk insurance policies Royal issued to SFC were written to cover defaults by students on bona fide student loans.  It was never contemplated among the parties that the SFC Policies were intended to cover defaults on loans obtained by fraud or misconduct on the part of the trucking companies.

137.    To the extent the losses claimed by WF and MBIA were caused by fraud and/or misconduct of the trucking schools, such losses do not give rise to a claim under the SFC Policies.  WF and MBIA may not recover for those losses under the SFC Policies.

### Ninth Additional Defense
### (Failure to Provide Evidence of a Claim Arising Under the Policies)

138.    Paragraphs 1 through 98 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

139.    The credit risk insurance policies Royal issued were written to insure against "loss caused by a default during the policy period."  The relevant portion of the definition of "default" provides that a default shall mean "a Student Loan becoming more than ninety (90) days delinquent."  Royal only agreed to insure losses actually incurred as a result of students defaulting on their SFC student loans.

140.    WF and MBIA have failed to provide evidence that the losses they claim under the policies were caused by bona fide student loans that have become more than ninety days delinquent.  Given the manner in which SFC conducted its business, at least a portion of the losses WF claims to have experienced were likely caused by reasons other than students becoming delinquent on their loans.

141.    To the extent the losses WF and MBIA claim arose from reasons other than the covered risk, student loan defaults, WF and MBIA may not recover under the SFC Policies.

2507982RV-8

### Tenth Additional Defense
### (Breach of Covenant of Good Faith and Fair Dealing)

142.    Paragraphs 1 through 98 and 126-129 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

143.    As is described above, SFC fraudulently induced Royal to issue the SFC Policies.

144.    As is described above, WF was aware that SFC had grossly understated the historical default rates of the student loans involved in the SFC programs and that SFC had made and was continuing to make secret "forbearance payments" which concealed the true default rates of the student loans. WF failed to bring these facts to Royal's attention.

145.    As is described above, upon information and belief, MBIA was aware that the default and delinquency rates were greater than what was being reported to Royal. MBIA failed to bring these facts to Royal's attention.

146.    The Royal policies included an implied covenant of good faith and fair dealing.

147.    By failing to bring the above facts to Royal's attention, WF breached the implied covenant of good faith and fair dealing in the SFC Policies, and its recovery is barred.

148.    To the extent that MBIA claims it is a beneficiary under the SFC Policies, by failing to bring the above facts to Royal's attention, MBIA breached the implied covenant of good faith and fair dealing in the SFC Policies, and its recovery is barred.

### Eleventh Additional Defense
### (MBIA Does Not Have Standing to Sue)

149.    Paragraphs 1 through 98 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

150.    MBIA is not named as a third party beneficiary of the SFC Policies.

151.    Royal did not intend to confer third party benefits on MBIA by issuing the SFC Policies.

25079827\V-8

152. The SFC Policies did not confer upon MBIA any benefit in satisfaction of a pre-existing obligation or as a gift.

153. The SFC Policies were not issued for MBIA's direct benefit. MBIA is only an indirect or incidental beneficiary of the SFC Policies.

154. Because MBIA is not a third party beneficiary, MBIA lacks standing to bring these claims against Royal.

## Twelfth Additional Defense
### (Failure to Mitigate/Minimize Damages)

155. Paragraphs 1 through 98 and 126-129 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

156. As is described above, WF had in its possession documentation showing that: (a) SFC had grossly understated the historical default rates on the SFC student loans, (b) SFC had made and was continuing to make enormous "forbearance payments" which concealed the true default rates of the SFC student loans, and (c) the loans were, at least, underwritten improperly, and possibly, were being written fraudulently.

157. Upon information and belief, WF knew or should have known that SFC had grossly understated the historical default rates on the SFC student loans, that SFC had made and was continuing to make enormous "forbearance payments" which concealed the true default rates of the student loans, and that the schools were making fraudulent or improperly underwritten loans.

158. As is described above, upon information and belief, MBIA was aware that SFC had grossly understated the historical default rates on the SFC student loans, and that SFC had made and was continuing to make enormous "forbearance payments" which concealed the true default rates of the SFC student loans.

159. WF and MBIA failed to alert Royal of these facts.

- 44 -

15079827JV-4

160.    By failing to alert Royal or SFC, WF and MBIA failed to mitigate and/or minimize the losses caused by SFC's fraudulent misrepresentations and concealment of material facts.

161.    When SFC was removed as the servicer of the SFC student loans, WF became the new servicer.  On information and belief, WF has not been properly servicing those loans, has not been pursuing collection actions when proper, and/or has not been attempting to collect payments due under the loans.  In the future, WF may fail to properly service the SFC student loans, fail to pursue collection actions when proper, and/or fail to attempt to collect payments due under the loans.

162.    Any past, present, or future failure to service the SFC student loans properly would constitute a failure by WF to mitigate and/or minimize the losses caused by SFC's conduct.

163.    Such failure to mitigate/minimize damages bars WF's and MBIA's recovery under the SFC Policies.

### Thirteenth Additional Defense
### (Unclean Hands and Estoppel)

164.    Paragraphs 1 through 98 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

165.    WF and MBIA may not recover under the doctrines of unclean hands and estoppel.

### Fourteenth Additional Defense
### (No Punitive Damages)

166.    Paragraphs 1 through 98 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

- 45 -

167. Applicable law does not allow a claim for punitive damages against Royal under the facts of this case. In light of the enormity of the fraud here -- a fraud that WF and MBIA knew had occurred -- Royal had a right to conduct a thorough and complete investigation of the facts giving rise to the claims made under the SFC Policies. This right precludes any claim for punitive damages.

**Fifteenth Additional Defense**
**(Aider and Abettor)**

168. Paragraphs 1 through 98 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

169. As is described above, WF was aware that SFC had grossly understated the historical default rates of the student loans and was continuing to make secret "forbearance payments" in order to conceal the true student default rates from Royal.

170. Despite its knowledge of SFC's past and on-going fraud, WF failed to make Royal aware of SFC's fraudulent conduct.

171. By failing to make Royal aware of SFC's fraudulent conduct, WF aided and abetted SFC's fraud. As an aider and abettor of SFC's fraud, WF is barred from recovery under the SFC Policies.

**Sixteenth Additional Defense**
**(Mutual Mistake)**

172. Paragraphs 1 through 98 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

173. Royal and WF exchanged mutual promises under which Royal agreed to pay for losses caused by covered defaulting loans and WF agreed to perform its monitoring duties as trustee.

25079827V-8

174.    These mutual promises were based upon the misrepresentations of SFC which are described above. The parties' mutual promises, including Royal's obligation to pay, are voidable due to the mutual mistake of the parties.

**Seventeenth Additional Defense**
**(Equitable Fraud Defense)**

175.    Paragraphs 1 through 98 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

176.    As is described above, SFC induced Royal to issue the SFC Policies through misrepresentations.

177.    SFC made these misrepresentations and omissions to Royal with the intention that Royal rely on them in determining whether to issue credit risk insurance coverage to cover the SFC student loans.

178.    Royal justifiably relied on SFC's misrepresentations and omissions and information provided by SFC in determining whether to issue SFC Policies with WF as the beneficiary.

179.    SFC's misrepresentations and omissions were material because they formed the basis of Royal's determination of whether to issue credit risk insurance to SFC. Moreover, the historical default rates of the student loans was the single most important factor in Royal's determination.

180.    In addition, WF, as the beneficiary of the policies, misrepresented and failed to disclose its knowledge of the insureds' misrepresentations. WF made such misrepresentations and omissions with the knowledge and intent that Royal would rely on them in determining whether to continue to issue insurance to cover the SFC student loans. Royal justifiably relied on WF's misrepresentations and omissions in determining whether to continue to issue future SFC Policies with WF as the beneficiary. These misrepresentations and omissions were material

- 47 -

because they formed a basis for Royal's determination that the SFC programs were performing as represented by the insureds.

181.    Because SFC made material misrepresentations to and concealed material facts from Royal during SFC's application for credit risk insurance, and because WF made misrepresentations and omissions regarding its knowledge of the insureds' misrepresentations, Royal may rescind the policy, and is under no obligation to indemnify either WF or MBIA.

### Eighteenth Additional Defense
**(Failure to State a Claim)**

182.    Paragraphs 1 through 98 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein

183.    The Complaint fails, in whole and in part, to state a claim upon which relief can be granted and should be dismissed under Fed. R. Civ. P. 12(b)(6).

- 48 -

25079827\V-8

## ROYAL'S COUNTERCLAIMS AND THIRD-PARTY CLAIMS

### Jurisdiction

184.    This Court has subject matter jurisdiction over the counterclaims and third-party claims in this action pursuant to 28 U.S.C. §§ 1332 and 1367(a).  The counterclaims and third-party claims form part of the same case or controversy as the claims brought by Plaintiffs.  The Plaintiffs' claims are within this Court's federal diversity jurisdiction pursuant to 28 U.S.C. §1332 and are so related to Royal's claims as to form part of the same case or controversy under Article III of the United States Constitution.

185.    This Court has personal jurisdiction over Third-Party Defendants SLS, the SFC Acceptance Entities, and the SFC Financial Entities because they are all Delaware corporations. This Court has personal jurisdiction over Third-Party Defendant Andrew N. Yao pursuant to 10 Del. C. § 3104(c)(1)-(5).  This Court has personal jurisdiction over Third-Party Defendant PNC Bank pursuant to 10 Del. C. § 3104(c)(1), (2) and (5).

186.    Venue is proper in this Court as the majority of the acts undertaken by all parties alleged herein occurred in Delaware.

### COUNT I
**(Declaratory Judgment against WF,
MBIA, the SFC Acceptance Entities,
SFC Financial II, and PNC Bank)**

187.    Paragraphs 1 through 98 and 184-186 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein are incorporated by reference as if set forth in full herein.

188.    Royal seeks a declaration pursuant to 28 U.S.C. §§ 2201, et seq., that Royal may rescind the SFC Policies (other than Policy Nos. 276 and 533 with Wilmington Trust as beneficiary) due to the insureds' material misrepresentations, and is under no obligation to

indemnify WF, PNC Bank, or MBIA (to the extent that the latter claims it is a beneficiary under SFC Policies).

189.    There is an actual, justiciable controversy between Royal and WF, MBIA, PNC Bank, the SFC Acceptance Entities, and SFC Financial II in that, despite the insureds' material misrepresentations, WF and PNC Bank claim that they are entitled to be indemnified for alleged losses under SFC Policies.  MBIA also claims that it is entitled to indemnification because it is an alleged third party beneficiary under SFC Policies.

190.    As is described above, SFC fraudulently induced Royal to issue the SFC policies.

191.    SFC made these misrepresentations and omissions to Royal with the intention that Royal rely on them in determining whether to issue credit risk insurance coverage to cover the SFC student loans.

192.    At the time SFC made these representations to Royal, SFC knew these representations were false, and knew that it was concealing material information from Royal that it had a duty to disclose.

193.    The misrepresentations and omissions made by SFC were material for the reasons discussed above.

194.    Royal justifiably relied on SFC's representations and omissions and the information provided by SFC in determining whether to issue the SFC Policies.

195.    Because SFC made material misrepresentations and concealed material facts from Royal during SFC's initial and subsequent applications for credit risk insurance, Royal may rescind SFC Policy Nos. 334, 309, 522, 524, 525, 526, 538, 529, and 536, and Royal is under no obligation to indemnify WF, PNC Bank, or MBIA thereunder.

196.    Further, SFC represented to Royal that Royal was issuing insurance in connection with a bona fide student loan program, when in fact the SFC enterprise was an illegal fraudulent

- 50 -

25079827/V-8

scheme designed to enrich SFC's principals, affiliates and insiders through the systematic diversion and misappropriation of funds. This fraudulent scheme was accomplished through material misrepresentations and concealment of material facts.

197.    The SFC Policy Nos. 334, 309, 522, 524, 525, 526, 529, 538, and 536 are void as against public policy because Royal may not issue insurance to cover intentional wrongful or unlawful conduct, and WF, PNC Bank and MBIA may not recover under those void policies.

## COUNT II
### (Equitable Fraud against WF, PNC Bank, the SFC Acceptance Entities, and the SFC Financial Entities)

198.    Paragraphs 1 through 98 and 184-186 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

199.    Royal seeks a declaration pursuant to 28 U.S.C. §§ 2201, et seq., that Royal may rescind the SFC Policies (other than Policy Nos. 276 and 533 with Wilmington Trust as beneficiary) due to the equitable fraud of the insureds in their application for insurance, and that Royal is under no obligation to indemnify WF, PNC Bank, and, to the extent that it claims it is also a beneficiary under the SFC Policies, MBIA.

200.    There is an actual, justifiable controversy between Royal and WF, PNC Bank, the SFC Acceptance Entities, the SFC Financial Entities, and MBIA in that, despite the equitable fraud of the insureds in applying for insurance, WF and PNC Bank claim that they are entitled to be indemnified for alleged losses under the policies. MBIA also claims that it is a third party beneficiary under the policies, and is entitled to be indemnified for alleged losses.

201.    As is described above, the insureds induced Royal to issue SFC Policies.

202.    The insureds made these misrepresentations and omissions to Royal with the intention that Royal rely on them in determining whether to issue credit risk insurance coverage to cover the student loans.

25079927\V-8

203.    Royal justifiably relied on the insureds' representations and omissions and information provided by SFC in determining whether to issue SFC Policies with WF and PNC Bank as beneficiary.

204.    The insureds' misrepresentations and omissions were material for the reasons discussed above.

205.    In addition, as described above, WF, as the beneficiary of certain of the SFC policies, misrepresented and failed to disclose its knowledge of the insureds' misrepresentations. WF made such misrepresentations and omissions with the knowledge and intent that Royal would rely on them in determining whether to continue to issue insurance coverage to cover the SFC student loans. Royal justifiably relied on WF's misrepresentations and omissions in determining whether to continue to issue future SFC Policies with WF as the beneficiary. These misrepresentations and omissions were material because they formed a basis for Royal's determination that the SFC student loans were performing as represented by the insureds.

206.    Because the insureds made misrepresentations to and concealed material facts from Royal during their application for credit risk insurance, and because WF made misrepresentations and omissions regarding its knowledge of the insureds' misrepresentations, Royal may rescind the SFC Policies, and is under no obligation to indemnify WF, PNC Bank, or MBIA.

## COUNT III
### (Breach of Contract Against WF)

207.    Paragraphs 1 through 98, 155-164 and 184-186 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

208.    WF breached its duties to Royal under the PSA's as set forth above.

25079827\V-8

## COUNT IV
### (Negligent and Fraudulent Misrepresentation or Omission against Yao, the SFC Acceptance Entities, the SFC Financial Entities, and SLS)

209.   Paragraphs 1 through 98 and 184-186 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

210.   As is described above, when applying for insurance from Royal, Yao and SFC made material misrepresentations and omissions to Royal and concealed material facts from Royal. Additionally, in connection with applying for additional insurance in the future, Yao and SFC re-affirmed their previous misrepresentations, and continued to conceal the truth.

211.   As is described above, at numerous times in connection with the issuance of additional insurance to SFC, Yao and SFC were given the opportunity to correct their earlier misrepresentations and failed to do so. Instead, Yao and SFC continued to maintain that their initial representations were correct, and continued to go to great lengths to hide the truth of the default rates from Royal.

212.   Yao and SFC made these misrepresentations and material omissions to Royal with the intention that Royal rely on them in determining whether to issue credit risk insurance coverage to SFC.

213.   At the time Yao and SFC made these representations to Royal, they knew these representations were false, and they knew that they were concealing from Royal material information about the huge student default rates in SFC's student loan program.

214.   Royal justifiably relied on these representations and the information that Yao and SFC provided in determining whether to issue policies to cover the risk of default of the SFC student loans. The misrepresentations and omissions made by Yao and SFC were material for the reasons discussed above.

- 53 -

215.    As is described above, SFC, through its service entity, SLS, provided Royal with monthly "servicer reports." These servicer reports, which were prepared under the supervisions and at the direction of Yao, contained information about, among other things, the performance of the loans, the default and delinquency rates of the loans, and the payments received on the loans.

216.    Yao and SLS knew that the servicer reports did not disclose the "forbearance payments" and knew that the reports did not disclose the true default rates of the loans. Yao and SLS also knew that the servicer reports misrepresented the actual performance of the loans. Nevertheless, SLS continued to prepare the servicer reports in this misleading manner.

217.    The servicer reports prepared by SLS and provided to Royal were designed to give the impression that the student loans were performing according to Yao's and SFC's initial and continuing misrepresentations.

218.    Royal justifiably relied on the servicer reports in making a determination of whether to continue to issue credit risk insurance coverage for the SFC loans.

219.    As a consequence of material misrepresentations of Yao, the SFC Acceptance Entities, and SLS, Royal has been damaged in an amount to be determined at trial.

### COUNT V
**(Breach of Contract against the SFC Acceptance Entities)**

220.    Paragraphs 1 through 98 and 184-186 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

221.    As is described above, each of the SFC Acceptance Entities individually entered into one of eight Pooling and Servicing Agreements ("PSA's") that were created in connection with the eight trusts in which WF is Trustee. The PSA's set forth and described certain duties of the SFC Acceptance Entities as the Settlors under the agreements.

222.    The PSA's defined Royal as an intended third party beneficiary of the PSA. The PSA's also described Royal as the "Insurer."

- 54 -

223.  Under the PSA's, the SFC Acceptance Entities made certain representations and warranties, including but not limited to, those discussed below.

224.  The SFC Acceptance Entities breached their representations and warranties under the PSA's in the manner described above.

225.  Pursuant to the PSA's, the SFC Acceptance Entities, as Settlors, were obligated to repurchase student loans if it was discovered by the Settlor, Servicer, WF, MBIA or Royal that the representations and warranties made by the Settlors in connection with any student loan were incorrect at the time they were made or if any of the student loans contained a material defect that could not be cured in a certain amount of time.

226.  The SFC Acceptance Entities breached the PSA's by failing to repurchase student loans which it and the Servicer knew contained material defects, and student loans about which the SFC Acceptance Entities had made misrepresentations.

227.  SFC Acceptance VIII and SFC Acceptance IX failed to comply with their obligations under the Insurance Agreements they entered into described in paragraphs 58-59 above.

228.  If the SFC Acceptance Entities had performed their obligations under the PSA's and the Insurance Agreements, Royal would have been alerted to, among other things, the enormous number of loans which contained material defects and would not have issued additional policies to cover the SFC Student Loans.

229.  Because of the SFC Acceptance Entities' breaches of the PSA's, Royal has been damaged in an amount to be determined at trial.

### COUNT VI
### (Breach of Contract against SLS)

230.  Paragraphs 1 through 98 and 184-186 of these Defenses, Counterclaims and Third-Party Claims are incorporated by reference as if set forth in full herein.

25079927\V-3

231.    SLS breached its duties under the PSA's in the manner described above.

232.    If SLS had performed its duties in accordance with the PSA's, Royal would have stopped writing additional insurance policies for SFC.

233.    In addition, by failing to follow normal and usual procedures and failing to use its best efforts to collect amounts owed under the student loans, SLS failed to minimize or mitigate the damage done by Yao's and SFC's fraudulent misrepresentations.

234.    SLS failed to employ reasonable collection methods and standards while servicing the loans covered by Policy Nos. 529, 536, and 538 as required under the Insurance Agreements it entered into by, among other things, failing to provide notice to the other parties that it knew many of the student loans contained material defects and had not been originated in accordance with the underwriting criteria, failing to use its best efforts to collect payments due and owing under the student loans, failing to provide accurate and complete servicer reports to Royal, and failing to follow procedures that are normal and usual for responsible holders of consumer loans of a similar nature to the student loans.

235.    SLS also failed to comply with the other duties imposed upon it by the PSA for the reasons discussed above.

236.    As a consequence of SLS's breach of its duties under the PSA's and the Insurance Agreements, Royal has been damaged in amount to be determined at trial.


WHEREFORE, Defendant, Counterclaim Plaintiff and Third-Party Plaintiff Royal Indemnity Company respectfully requests that this Court:

a.      On the claims of MBIA and WF:

1.  dismiss the plaintiffs' claims with prejudice;

- 56 -

2.  enter an order declaring the SFC Policies with WF as beneficiary void and
rescinded;

3.  enter judgment in favor of Royal and against WF and MBIA;

4.  award Royal its costs and disbursements incurred in defending this action; and

5.  grant such other relief as the Court may deem just and proper.

b.  On the claims of Royal:

1.  enter an order declaring the SFC Policies other than Policy Nos. 276 and
533 void and rescinded;

2.  award damages to Royal in an amount to be proven at trial;

3.  award Royal pre-judgment interest at the maximum legal rate;

4.  award Royal its costs and disbursements incurred in prosecuting this
action.

5.  grant such other relief as the Court may deem just and proper.

25079827\V-8

ASHBY & GEDDES

*Tiffany L. Geyer*

Lawrence C. Ashby (I.D. #468)
Philip Trainer, Jr. (I.D. #2788)
Tiffany L. Geyer (I.D. #3950)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19899
(302) 654-1888
(302) 654-2067 (Fax)

*Attorneys for Defendant Royal Indemnity Company*

Michael H. Barr
Kenneth J. Pfaehler
SONNENSCHEIN NATH & ROSENTHAL
1221 Avenue of the Americas
New York, New York 10020-1089
(212) 768-6700
(212) 768-6800 (fax)

        - and -

Alan S. Gilbert
SONNENSCHEIN NATH & ROSENTHAL
8000 Sears Tower
233 S. Wacker Drive
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934 (fax)

Dated: April 28, 2003
125608.1

25079827\V-8

## CERTIFICATE OF SERVICE

On this 28th day of April, 2003, I personally caused to be served true and correct copies of

**ANSWER, DEFENSES, COUNTERCLAIMS AND THIRD-PARTY CLAIMS OF**

**DEFENDANT ROYAL INDEMNITY COMPANY** to counsel of record listed below in the

manner indicated:

John W. Shaw, Esquire                              *HAND DELIVERY*
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899


Ronald S. Rauchberg, Esquire                      *FEDERAL EXPRESS*
Proskauer Rose LLP
1585 Broadway
New York, NY 10036-8299


Tiffany L. Geyer