# EXHIBIT E

# Westlaw.

Not Reported in A.2d                                                                                             Page 1

Not Reported in A.2d, 2004 WL 2827887
(Cite as: Not Reported in A.2d)

**H**
Not Reported in A.2d, 2004 WL 2827887
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Delaware.
Richard V. ANDERSON, et. ux. Plaintiffs,
v.
AIRCO, INC., et al. Defendants.
No. Civ.A. 02C-12-091HDR.

Submitted Sept. 24, 2004.
Decided Nov. 30, 2004.

Upon Plaintiffs' Motion for Relief from Judgment Denied.
Upon Reargument of Defendants' Motion to Dismiss Counts 6 and 7 Granted As to Count 6 Denied as to Count 7 Stay of Discovery Dissolved.

Robert Jacobs, and David A. Arndt, Jacobs & Crumplar, P.A., Wilmington, Delaware, for Plaintiffs.
Matthew P. Donelson, and Joel M. Doner, Wilbraham, Lawler & Buba, P.C., Wilmington, Delaware for Defendant Airco, Inc.
James W. Semple, Morris, James, Hitchens & Williams, LLP, Wilmington, Delaware for Defendant Air Products & Chemicals, Inc.
Albert Manwaring, IV, and Joseph S. Naylor, Pepper Hamilton, LLP, Wilmington, Delaware for Defendant Allied Signal, Inc.
John L. Reed, and Gary W. Lipkin, Duane Morris, Wilmington, Delaware for Defendants American Chemistry Council, B.F. Goodrich Corp., Conoco Inc., The Dow Chemical Company, Epec Polymers Inc., ICI Americas, Inc., PPG Industries, Inc., Pactiv Corp., PolyOne Corporation, Shell Oil Co., Tenneco Inc., Tenneco Automotive, Inc., Union Carbide Corp., Uniroyal Inc. and Zeneca, Inc.
Michael P. Kelly, McCarter & English, LLP, Wilmington, Delaware for Defendant Bayer CropScience Inc.
Randall E. Robbins, Ashby & Geddes, Wilmington, Delaware for Defendant Borden Chemical, Inc.
Adam C. Balick, Balick & Balick, Wilmington, Delaware for Defendant Bridgestone/Firestone, Inc.
John D. Balaguer, and William L. Doerler, White & Williams, Wilmington, Delaware for Defendants Chevron USA Inc., Gulf Oil Corp. and Monsanto Company.
Frederick L. Cottrell, II, and Alyssa Schwartz, Richards, Layton & Finger P.A., Wilmington, Delaware for Defendant Occidental Oxychem.
Jeffrey L. Moyer, and Anne Shea Gaza, Richards, Layton & Finger P.A., Wilmington, Delaware for Defendant Formosa Plastics Corporation.
Somers S. Price, Jr., and W. Harding Drane, Jr., Potter, Anderson & Corroon LLP, Wilmington, Delaware for Defendant Gencorp and Olin Corp.
Donald E. Reid, Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware for Defendant Georgia-Pacific Corp.
Kevin J. Connors, Marshall, Dennehey, Warner, Coleman & Goggin, Wilmington, Delaware for Defendant The Goodyear Tire & Rubber Company.
James P. Hall, Phillips, Goldman & Spence, Wilmington, Delaware for Defendant Society of Plastics Industry, Inc.
Richard D. Allen, Morris, Nichols, Arsht & Tunnell, for Defendant Westlake Vinyls Inc.
David C. Malatesta, Jr., Kent and McBride, P.C., Wilmington, Delaware, for Defendant Whittaker Corporation.

OPINION

RIDGELY, J. FN*

   FN* Sitting by Special Designation pursuant to Del. Const. Art. IV § 13(2).

*1 On June 30, 2004 this Court dismissed the Plaintiffs' fraud claims, among others, but left intact their claims of negligence, aiding and abetting, and civil conspiracy. FN1 The Court then granted

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

http://print.westlaw.com/delivery.html?dest=atp&format=HTMLE&dataid=B0055800000...    8/17/2005

Not Reported in A.2d
Not Reported in A.2d, 2004 WL 2827887
(Cite as: Not Reported in A.2d)

Page 2

Consolidated Defendants' FN2 motion for reargument in part, reserving decision on the issue of whether negligence may properly underlie a claim of civil conspiracy. FN3 In response, the Andersons filed a motion for relief from judgment, asserting that the Court's June 30 decision erroneously dismissed the fraud claims as applied to all defendants. FN4

> FN1. *Anderson v. Airco, Inc.*, 2004 Del.Super. LEXIS 210. Given the well-documented history of this litigation, a full recitation of the facts is unnecessary.
>
> FN2. Consolidated Defendants include the American Chemistry Council, Conoco, Inc., B.F. Goodrich Company, ICI Americas, Inc., PolyOne Corporation, PPG Industries, Inc., Shell Oil Company, Uniroyal, Inc., and Zeneca, Inc. All other Supplier and Non-Supplier Defendants, as defined in the June 30 decision, have filed joinders to the motion for reargument.
>
> FN3. *Anderson v. Airco, Inc.*, 2004 Del.Super. LEXIS 270.
>
> FN4. Pl. Mot. for Relief from J., E-File 4164471 (September 3, 2004) (filed pursuant to Super Ct. Civ. R. 60(b)).

The Court reaffirms its dismissal of Counts Four and Five because the Plaintiffs' have failed to raise any issues warranting reexamination of these fraud claims. I conclude that the conspiracy claim must be dismissed because the tort of negligence cannot provide a foundation for conspiracy. However, aiding and abetting is a distinct cause of action from conspiracy and Plaintiffs have stated a cause of action under that theory of liability.

I. Standard of Review

Under Superior Court Civil Rule 59, parties may make a motion for reargument within five days of the filing of the Court's decision. FN5 When considering whether to reopen an issue previously decided, the Court must consider whether it overlooked a precedent or legal principle that would have controlling effect, or that it is has misapprehended the law or facts such as would affect the outcome of the decision. FN6 A motion for reargument "properly seeks only a reexamination of the facts in record at the time of decision or the law as it applies to those facts." FN7 It is not intended, however, "to rehash the arguments already decided." FN8

> FN5. Super. Ct. Civ. R. 59(e).
>
> FN6. *Gass v. Truax*, 2002 Del.Super. LEXIS 442.
>
> FN7. *Merendino v. Kupcha*, 2002 Del.Super. LEXIS 520, at *8.
>
> FN8. *McElroy v. Shell Petroleum, Inc.*, 1992 Del. LEXIS 449, at *2.

II. Motion for Relief from Judgment

Because the disposition of the Plaintiffs' motion for relief from judgment affects the viability of their conspiracy claim, the Court will address this motion first. Plaintiffs' contend that the Court failed to distinguish between the Supplier and Non-Supplier Defendants in dismissing the fraud claims. According to Plaintiffs, the order which dismissed Counts Four and Five incorrectly applied to all defendants in the litigation.

The rationale and analysis of the Court's decision of June 30, 2004 applies equally to both the Supplier Defendants and the Non-Supplier Defendants. Counts Four and Five fail to allege how any of the defendants intended Anderson to act or refrain from acting and the Counts do not indicate any reliance on a specific representation. The Andersons' fraud narrative recounts in detail VCM-related actions allegedly taken by many, but not all, defendants and other industry representatives from the 1950s on, including alleged agreements to make false statements, conduct fraudulent medical testing and misleading scientific studies, and otherwise conceal the ill effects of VCM exposure. According to the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                   Page 3
Not Reported in A.2d, 2004 WL 2827887
(Cite as: Not Reported in A.2d)

Andersons, these actions "caused inaccurate and insufficient information regarding [VCM] to be available[,] and but for this, [Anderson] would not have been injured." FN9

> FN9. Pl. Compl., E-File 3029206, ¶ 76, at 42.

*2 Count Five alleges efforts by a sampling of defendants to distort the findings of an industry-sponsored VCM study and accuses these same defendants of failing to order additional testing. As a result, based on this allegedly incomplete and fraudulent information, Anderson claims he "relied on the information available to him when he worked at the [plant] and as a result of the misinformation and suppression by the defendants, he was injured." FN10

> FN10. *Id.* ¶ 91, at 48.

Neither count describes what specific representations that Defendants, whether Supplier or Non-Supplier, intended Anderson to act on. The Andersons, moreover, allege only a general reliance on unspecified, industry-generated information that was filtered through the trade for a period encompassing more than five decades. Although the complaint's chronology of events is historically detailed, the time, place, and contents of the alleged misrepresentations, as they relate to Anderson, are left to conjecture. Counts Four and Five, which do not distinguish between suppliers and non-suppliers, fail to state a cause of action for fraud with particularity against all defendants. Plaintiffs' motion for relief from judgement must be denied.

III. Civil Conspiracy and Aiding-Abetting Claims

Accountability for concerted tortious action stems from common-law principles of vicarious liability. "All persons who acted in concert to commit a trespass," for example, "were held liable for the entire result" when conducted "in pursuance of a common design." FN11 Two variations have developed: (1) conspiracy, or concerted action by agreement; and (2) aiding and abetting, or concerted action by substantial assistance. FN12

> FN11. Prosser, Law of Torts § 46, at 291 (4th ed.1971).
>
> FN12. *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C.Cir.1983).

The second *Restatement of Torts* reflects this distinction:
> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he:
> (a) does a tortious act in concert with the other or pursuant to a common design with him; or
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself; or
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person. FN13

> FN13. Restatement (Second) of Torts § 876 (1979) [hereinafter Restatement].

The "common design" in subsection (a) and "substantial assistance" in subsection (b) reflect the conceptual distinction between conspiring to perform a wrongful act and aiding in its commission. Put another way:
> The prime distinction between civil conspiracies and aiding-abetting is that a conspiracy involves an agreement to participate in wrongful activity. Aiding-abetting focuses on whether a defendant knowingly gave "substantial assistance" to someone who performed wrongful conduct, not on whether the defendant agreed to join the wrongful conduct. FN14

> FN14. *Halberstam*, 705 F.2d at 478.

With these variations in mind, the Court turns to the Andersons' civil conspiracy and aiding-abetting

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                Page 4
Not Reported in A.2d, 2004 WL 2827887
(Cite as: Not Reported in A.2d)

claims.

### A. Civil Conspiracy

*3 Consistent with the language of *Restatement* Section 876(a), civil conspiracy is defined in Delaware as the combination of two or more persons or entities either for an unlawful purpose, or for the accomplishment of a lawful purpose by unlawful means, resulting in damage. FN15 It is not an independent cause of action. FN16 "The gravaman [sic] of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which would be actionable absent the conspiracy." FN17 An allegation of conspiracy is important for two purposes: "To hold responsible in damages persons other than those who actually committed the tort relied on[, and to] increase the measure of damages because of the deliberate and intentional character of the act alleged to have been committed." FN18 An actionable tort must accompany any conspiracy in order for there to be a recovery. FN19

FN15. *Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690 (Del.Super.Ct.1986). In addition, civil conspiracy is recognized in the fiduciary duty context, *see, e.g., Gilbert v. El Paso Co.*, 490 A.2d 1050, 1057 (Del. Ch.1984), and is also a ground for asserting personal jurisdiction over certain out-of-state defendants. *See, e.g., Mktg. Prods. Mgmt. v. Healthhandbeautydirect.com, Inc.*, 2004 Del.Super. LEXIS 26.

FN16. *Connolly v. Labowitz*, 519 A.2d 138, 143 (Del.Super.Ct.1986) ; *Phoenix Canada Oil Co. v. Texaco, Inc.*, 560 F.Supp. 1372, 1388 (D.Del.1983). As far back as early eighteenth-century England, civil conspiracy has been considered an auxiliary pleading device, rather than a primary cause of action. *See Jones v. Gwynn*, 10 Mod. 148, 214 (K.B.1713).

FN17. *McLaughlin v. Copeland*, 455 F.Supp. 749, 752 (D.Del.1978), *aff'd* 595 F.2d 1213 (3d Cir.1979). *See also Levin v. Upper Makefield Twp.*, 90 Fed. Appx. 653, 667 (3d Cir.2004) ("[T]he established rule is that a cause of action for civil conspiracy requires a separate underlying tort as a predicate for liability. Thus, one cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant. Instead, actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor."), *citing In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir.1999) (citations and internal quotations omitted).

FN18. *Diver v. Miller*, 148 A. 291, 292 (Del.1929). A third may be the psychological effect a claim of conspiracy imprints on the trier of fact. *See* Thomas J. Leach, *Civil Conspiracy: What's the Use?*, 54 U. Miami L.Rev. 1, 14 (1999) ("It ... can be of great use to a plaintiff to argue the themes of conspiracy: the secret cabals, the clandestine plottings, the combination of concealed forces aimed at a single victim. It is an effective variant on the David versus Goliath theme.").

FN19. *See Beck v. Prupis*, 529 U.S. 494, 501-502 (2000) (surveying American civil conspiracy jurisprudence). *See also* Restatement § 876, cmt. a(b) ("The mere common plan, design[,] or even express agreement is not enough for liability in itself, and there must be acts *of a tortious character* in carrying it into execution.") (emphasis added); Prosser, Law of Torts § 46 ("It is only where means are employed, or purposes are accomplished, which are themselves tortious, that the conspirators who have not acted but have promoted the act will be held liable.") (footnotes omitted); *Cohen v. Bowdoin*, 288 A.2d 106, 110 (Me.1972) ("Conspiracy fails as the basis for the imposition of civil liability absent the actual commission of some

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                           Page 5
Not Reported in A.2d, 2004 WL 2827887
(Cite as: Not Reported in A.2d)

independently recognized tort; and when such separate tort has been committed, it is that tort, and not the fact of combination, which is the foundation of the civil liability.") (quotation marks omitted); *Earp v. Detroit,* 167 N.W.2d 841, 845 (1969) ("Recovery may be had from parties on the theory of concerted action as long as the elements of the separate and actionable tort are properly proved"); *Mills v. Hansell,* 378 F.2d 53 (5th Cir.1967) (per curiam) (affirming dismissal of conspiracy to defraud claim because no defendant committed an actionable tort); *J. & C. Ornamental Iron Co. v. Watkins,* 152 S.E.2d 613, 615 (Ga.App.1966) ("[The plaintiff] must allege all the elements of a cause of action for the tort the same as would be required if there were no allegation of a conspiracy"); *Lesperance v. North American Aviation Inc.,* 217 Cal.App.2d 336, 345 (Cal.App.1963) ("Conspiracy cannot be made the subject of a civil action unless something is done which without the conspiracy would give a right of action") (internal quotation marks omitted); *Middlesex Concrete Products & Excavating Corp. v. Carteret Indus. Assn.,* 181 A.2d 774, 779 (N.J.1962) ("[A] conspiracy cannot be made the subject of a civil action unless something has been done which, absent the conspiracy, would give a right of action"); *Chapman v. Pollock,* 148 F.Supp. 769, 772 (W.D.Mo.1957) (holding that a plaintiff who charged the defendants with "conspiring to perpetrate an unlawful purpose" could not recover because the defendants committed no unlawful act); *Olmsted, Inc. v. Maryland Casualty Co.,* 253 N.W. 804 (Iowa 1934) ("[A] conspiracy cannot be the subject of a civil action unless something is done pursuant to it which, without the conspiracy, would give a right of action"); *Adler v. Fenton,* 65 U.S. 407 (1861) ("The act must be tortious, and there must be consequent damage.").

A review of some of the caselaw sets the foundation for my conclusion that negligence cannot be the basis for a conspiracy claim. In *Nicolet v. Nutt,* several employees of a Delaware industrial plant brought a claim of fraudulent concealment against various manufacturers after sustaining asbestos-related injuries. FN20 Defendant Nicolet moved for summary judgment, contending that Nutt's claims of conspiracy, as framed, were unsustainable as a matter of law. FN21 After the Superior Court denied Nicolet's motion, the manufacturer filed an interlocutory appeal. The Supreme Court characterized the question for decision as follows:

FN20. 525 A.2d 146 (Del.1987).

FN21. *In re Asbestos Litig.,* 509 A.2d 1116 (Del.Super.Ct.1986).

The sole issue here ... is whether a cause of action exists against a party whose asbestos products did not cause the purported injury, but who allegedly conspired with other asbestos manufacturers to actively suppress and intentionally misrepresent medical evidence warning of the health hazards of asbestos. FN22

FN22. *Nutt,* 525 A.2d at 147.

Citing the "well-settled law of civil conspiracy," the Court affirmed, holding:
[I]f competent medical evidence as to the dangers of asbestos was intentionally misrepresented and suppressed in order to cause plaintiffs to remain ignorant thereof ... the alleged tort [fraudulent concealment] is established. FN23

FN23. *Id.*

Ultimately, the conspiracy in *Nutt* would not have been actionable if it were not based on an independent tort. FN24 The plaintiffs there accused Nicolet and others of fraudulently concealing the dangers of asbestos, a tort which, unlike other actionable variations of fraud, requires either a deliberate concealment or silence in the face of a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                   Page 6
Not Reported in A.2d, 2004 WL 2827887
(Cite as: Not Reported in A.2d)

duty to speak. FN25 In the context of fraudulent concealment, the *Nicolet* court was asked to decide whether Delaware's conspiracy jurisprudence was flexible enough to admit an industry-wide campaign to conceal the ill effects of asbestos. But in answering in the affirmative, the Court did not address whether fraudulent concealment, another variation of fraud, or any other intentional tort must underlie a cause of action in conspiracy.

> FN24. *See id.* at 150.
>
> FN25. *Stephenson v. Capano Development, Inc.*, 462 A.2d 1069, 1074 (Del.1983).

*4 There is, however, authority for the proposition that the tort of negligence cannot provide a foundation for conspiracy. "There is no such thing as a conspiracy to commit negligence or, more precisely, to fail to exercise due care." FN26 Since conspiracy requires an agreement or understanding to commit a wrong against another, its commission necessarily "involves some mutual mental action coupled with an intent to commit the act which results in the injury." FN27 Moreover, whether its means are lawful or not, perpetrators of a civil conspiracy must act with a purpose. FN28 Subsequent decisions, however, have palliated this requirement by recognizing that knowledge of the conspiracy is sufficient to trigger liability. FN29

> FN26. *Ryan v. Eli Lilly & Co.*, 514 F.Supp. 1004, 1012 (D.S.C.1981).
>
> FN27. *Adam v. Mt. Pleasant Bank & Trust Co.*, 387 N.W.2d 771, 773 (Iowa 1986), citing *Basic Chemicals Inc. v. Benson*, 251 N.W.2d 220, 233 (Iowa 1977).
>
> FN28. *See* Prosser, Law of Torts § 41 (discussing civil conspiracy's origins in criminal law as basis for its characterization as intentional tort); 16 Am.Jur. 2d *Conspiracy* § 51 ("[C]ivil conspiracy is an intentional tort requiring a specific intent to accomplish the contemplated wrong and, because negligence is, by definition, not an intentional wrong, the parties cannot engage in civil conspiracy to be negligent."). *But see* Restatement (Second) of Torts § 876 Caveat (stating "[t]he [American Law] Institute takes no position on whether the rules stated in [the "Persons Acting in Concert" section] are applicable when the conduct of either the actor or the other is free from intent to do harm *or negligence* but involves strict liability for the resulting harm.") (emphasis added).
>
> FN29. *See, e.g., In re Asbestos Litig.*, 509 A.2d at 1120 (requiring at least "knowing participation").

Delaware courts have addressed civil conspiracy in a variety of contexts but no authority exists to support a civil conspiracy claim proceeding on the shoulders of a negligence claim. FN30 Elsewhere, it has been recognized that "[a]ccidental, inadvertent, or negligent participation in a common scheme does not amount to a conspiracy." FN31 A specific intent is required. FN32

> FN30. *See, e.g., Ramunno v. Cawley*, 705 A.2d 1029 (Del.1998) (defamation as underlying tort); *Nicolet*, 525 A.2d 146 (fraud); *Istituto Bancario Italiano SpA v. Hunter Engineering Co.*, 449 A.2d 210 (Del.1982) (fraud); *Davis v. W. Ctr. City Neighborhood Planning Advisory Comm.*, 2003 Del.Super. LEXIS 81 (defamation); *Atamian v. Nemours Health Clinic*, 2001 Del.Super. LEXIS 438 (dismissed for no underlying tort); *Local No. 98 IBEW v. First USA*, 2001 Del.Super. LEXIS 427 (assault); *Lipson v. Anesthesia Servs., P.A.*, 790 A.2d 1261 (Del.Super.Ct.2001) (defamation, constructive discharge, and intentional interference with contractual relations); *Manley v. Assocs. in Obstretrics & Gynecology, P.A.*, 2001 Del.Super. LEXIS 314 (breach of contract); *Savor, Inc. v. FMR Corp.*, 2001 Del.Super. LEXIS 170 (misappropriation of trade

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
Not Reported in A.2d, 2004 WL 2827887
(Cite as: Not Reported in A.2d)

Page 7

secrets); *Zerby v. Allied Signal, Inc.*, 2001 Del.Super. LEXIS 16 (all claims dismissed except conspiracy and aiding and abetting); *Fahey-Hosey v. Capano*, 1999 Del.Super. LEXIS 351 (intentional infliction of emotional distress); *Diver v. Miller*, 148 A. 291 (Del.Super.Ct.1929) (fraud); *Tristate Courier & Carriage, Inc. v. Barryman*, 2004 Del. Ch. LEXIS 43 (breach of contract); *Chandler v. Ciccoricco*, 2003 Del. Ch. LEXIS 47 (shareholders' suit for declaration).

FN31. *In re Methyl Butyl Ether Prods. Liab. Litig.*, 175 F.Supp.2d 593, 634 (S.D.N.Y.2001). *See also Adcock*, 645 N.E.2d at 894 ("There is no such thing as accidental, inadvertent, or negligent participation in a conspiracy."), citing *Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir.1988).

FN32. *See Triplex Communications v. Riley*, 900 S.W.2d 716, 720 (Tex.1995) ("Given the requirement of specific intent, parties cannot engage in a civil conspiracy to be negligent.").

*Restatement* Section 876 supports this conclusion by reading "in concert" to mean "agreement to cooperate." FN33 Although the agreement "need not be expressed in words," conspirators must still all act together to further a tortious end. FN34 "It is essential that the conduct of the actor be in itself tortious." FN35 Where one party is negligent, and where others assist in that conduct, subsection (b)'s provisions of *Restatement* Section 876 on aiding and abetting are applicable. However, conspiracy cannot be based on negligence under subsection (a) because subsection (b) already provides for that factual scenario. To read negligence into subsection (a) and Delaware's common-law conspiracy jurisprudence would blur the distinctions between conspiracy and aiding and abetting, distinctions that both caselaw and the *Restatement* expressly isolate. I therefore conclude that the civil conspiracy claim based upon negligence must be dismissed. FN36

FN33. Restatement § 876 cmt. a(a).

FN34. *Id.*

FN35. *Id.* cmt. a(c).

FN36. *See also Rodriguez v. State*, 1994 WL 679731 (Del. Nov. 29, 1994) (As a matter of Delaware criminal law, one cannot commit a conspiracy to commit a crime which is defined in terms of reckless or negligent conduct.)

*B. Aiding and Abetting*

Whereas civil conspiracy has deep common-law roots, the concept of tortious assistance separate from an express agreement is a more recent phenomenon in the civil, non-fiduciary arena, FN37 both within and outside of Delaware. FN38 Elementally borrowed from its criminal counterpart, civil liability for aiding and abetting tortious conduct stems from the provisions of *Restatement* Section 876(b). Because it focuses on assistance, rather than agreement, aiding-abetting rests on a broader conceptual base, FN39 one which may overlap conspiratorial conduct, or exist independent of it. FN40 Liability for aiding and abetting requires proof of three elements: underlying tortious conduct, knowledge, and substantial assistance. FN41 Like civil conspiracy, then, liability is predicated on independent tortious action.

FN37. Aiding-abetting liability is well established under equitable principles. *See, e.g., Zirn v. VLI Corp.*, 1989 Del. Ch. LEXIS 83, at *16 (recounting standard for stating claim of aiding and abetting a breach of fiduciary duty). *See also McGowan v. Ferro*, 2002 Del. Ch. LEXIS 3; *Nebenzahl v. Miller*, 1996 Del. Ch. LEXIS 113. The Court's present analysis of tortious concerted action is restricted to the legal, rather than equitable, aspects of vicarious liability.

FN38. *See Patton v. Simone*, 1992 Del.Super. LEXIS 316, at *23 n .6 ("No

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                              Page 8
Not Reported in A.2d, 2004 WL 2827887
(Cite as: Not Reported in A.2d)

Delaware court has addressed liability under this section."). *See also FDIC v. S. Prawer & Co.*, 829 F.Supp. 453, 457 (Me.1993) (commenting that in Maine, aiding-abetting liability did not exist under common law); *In re Asbestos School Litig.*, 1991 U.S. Dist. LEXIS 10471, *34 (E.D.Pa.1991) (noting that Section 876 liability yet to be adopted by Pennsylvania courts).

FN39. In the criminal context, see *Pereira v. United States*, 347 U.S.1, 11 (1954) (" Aiding, abetting, and counseling are not terms which presuppose the existence of an agreement. Those terms have a broader application, making the defendant a principal when he consciously shares in a criminal act, regardless of the existence of a conspiracy."); *Nye & Nissen v. United States*, 336 U.S. 613, 620 (1949) ("And if a conspiracy is also charged, it makes no difference so far as aiding and abetting is concerned whether the substantive offense is done pursuant to the conspiracy."); *Direct Sales Co. v. United States*, 319 U.S. 703, 709 (1943) ("[O]ne does not become a party to a conspiracy by aiding and abetting it ... unless he knows of the conspiracy....").

FN40. *Halberstam*, 705 F.2d at 478 (" Most commonly, courts have relied on evidence of assistance to the main tortfeasor to infer an agreement, and then attached the label 'civil conspiracy' to the resultant amalgam. Sometimes, although not always, the inference has been factually justified; many tort defendants have both conspired with and substantially assisted each other.").

FN41. *Simone*, 1992 Del.Super. LEXIS 316, at *23.

Unlike conspiracy, however, aiding-abetting liability may flow from negligent conduct. The *Restatement'*s comment to subsection (b) provides:
  *5 [I]f the act encouraged is known to be tortious[,] it has the same effect upon the liability of the adviser as participation or physical assistance. If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act. This is true both when the act done is an intended trespass and *when it is merely a negligent act*. The rule applies whether or not the other knows his act is tortious.... FN42

FN42. Restatement § 876, cmt. b(d) (emphasis added and illustration references omitted).

The comments further note the following illustration of negligent conduct:
  A and B are members of a hunting party. Each of them in the presence of the other shoots across a public road at an animal, which is negligent toward persons on the road. A hits the animal. B's bullet strikes C, a traveler on the road. A is subject to liability to C. FN43

FN43. *Id.* Illust. 6.

In the negligence-concerted action context, knowledge is imputed to each actor by virtue of participation in the common scheme. Unlike civil conspiracy's emphasis on explicit agreement to commit a wrong, aiding-abetting liability is elastic enough to admit a common, negligent course of action. While it is "difficult to conceive of how a conspiracy could establish vicarious liability where the primary wrong is negligence, [ ] a secondary defendant could substantially aid negligent action." FN44 Accordingly, for purposes of consolidated Defendants' motion to dismiss, the Andersons have sufficiently pled a claim of aiding and abetting.

FN44. *Halberstam*, 705 F.2d at 478.

IV.

For these reasons I conclude that the Andersons' civil conspiracy claim in Count Six fails to state a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                 Page 9
Not Reported in A.2d, 2004 WL 2827887
(Cite as: Not Reported in A.2d)

claim as a matter of law. However, because negligence may provide a foundation for aiding-abetting liability, the Andersons have stated a cause of action upon which relief may be granted under Count Seven. Accordingly, consolidated Defendants motion to dismiss Count Six is granted and their motion to dismiss Count Seven is denied. The stay of discovery previously imposed is dissolved.

IT IS SO ORDERED.

Del.Super.,2004.
Anderson v. Airco, Inc.
Not Reported in A.2d, 2004 WL 2827887

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.