**EXHIBIT P**



Not Reported in F.Supp.                                    Page 1

Not Reported in F.Supp., 1997 WL 727484
(Cite as: Not Reported in F.Supp.)

**H**
Not Reported in F.Supp., 1997 WL 727484
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
THE INVESTIGATIVE GROUP, INC., Plaintiff,
v.
BROOKE GROUP LTD., INC., and BGLS, Inc., as
successor in interest to Brooke Partners L.P.,
Defendants.
No. 95 CIV. 3919(CSH).

Nov. 21, 1997.

*MEMORANDUM OPINION AND ORDER*

HAIGHT , Senior District J.
*1 In a Memorandum Opinion and Order dated
September 11, 1997 ("the September Opinion"),
familiarity with which is assumed, the Court granted
defendants' motion for summary judgment on the
ground that plaintiff's action is untimely under New
York's borrowing statute, N .Y. CPLR § 202.

Plaintiff filed a timely motion for reargument,
pointing out correctly that the September Opinion
mistakenly applied the minimum contacts standard
to the plaintiff, rather than to defendants. The
parties filed further submissions. The Court has
considered the matter *de novo*. For the reasons that
follow, defendants' motion will again be granted.

STANDARD OF REVIEW

A motion for summary judgment may be granted
only when there is no genuine issue of material fact
remaining for trial and the moving party is entitled
to judgment as a matter of law. *See* Fed.R.Civ.P.
56(c) ; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106
S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining
whether summary judgment is appropriate, the
Court resolves all ambiguities and draws all

reasonable inferences against the moving party. *See
Matsushita Elec. Industry Co. v. Zenith Radio*, 475
U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538
(1986) ; *Schwapp v. Town of Avon*, 118 F.3d 106,
110 (2d Cir.1997) ; *Horn & Hardart Co. v.
Pillsbury Co.*, 888 F.2d 8, 10 (2d Cir.1989).

FACTS

Plaintiff, The Investigative Group, Inc. ("IGI"),
brought this action in May 1995 to recover
monetary damages based on an alleged breach of
contract. Plaintiff is a private investigation firm
incorporated under the laws of the District of
Columbia. Its principal place of business is
Washington, D.C., but it maintains offices in New
York, Chicago, Los Angeles, and other cities.
Plaintiff often acts through its alter-ego, the
Washington, D.C. law firm of Terry F. Lenzer
Chartered P.C.

Defendants Brooke Group Ltd., Inc. and BGLS,
Inc. are corporations organized under the laws of
Delaware and New York respectively. BGLS, Inc.
is a wholly owned subsidiary of defendant Brooke
Group Ltd., Inc., and is successor in interest to
Brooke Partners L.P. At all times relevant to
plaintiff's claims, the principal place of business of
Brooke Partners L.P., Brooke Group Ltd., Inc., and
BGLS, Inc. was New York City.

Plaintiff alleges that defendants were members of a
larger group including MAI Basic Four, Inc. that
sought to acquire control of Prime Computers, Inc.
of Massachusetts in 1989. According to plaintiff,
each member of this group retained the New York
law firm of Fried, Frank, Harris, Shriver &
Jacobson ("Fried, Frank") as their attorneys and
agents, and Fried, Frank subsequently retained
plaintiff's investigative services in its capacity as
agent for each member of the group. Complt. Para.
8-10; Lenzer Aff. Para. 5-6. Defendants have
consistently denied that Fried, Frank acted as their

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                    Page 2

Not Reported in F.Supp., 1997 WL 727484
(Cite as: Not Reported in F.Supp.)

agent, but they ask the Court to assume the existence of such agency for purposes of disposing of this motion, a reasonable request given that plaintiff cannot prevail on the merits without proving that an agency relationship existed between defendants and Fried, Frank.

**\*2** Plaintiff's Chairman Terry F. Lenzer testified in a related case that he first learned about the bid for Prime Computers, Inc. in 1989 when he received a call from Harvey Pitt, a senior partner in the Washington, D.C. office of Fried, Frank. Reply Aff. of Michael Hirschfeld, para. 2 and Ex. 9 at 18-19. During this telephone conversation, Pitt told Lenzer that he had recommended to his partners and his client that they retain plaintiff to investigate in connection with the takeover bid. *Id.* Pitt also told Lenzer that he should expect to receive a call from William G. McGuinness, a partner in Fried, Frank's New York office. *Id.* The parties agree that McGuinness subsequently called plaintiff's Washington, D.C. office and entered into an agreement for the performance of professional investigative services in connection with the bid for Prime Computers, Inc.

Lenzer also stated under oath that "[o]ne of the cardinal principles of our work is to stay in contact with clients" and therefore "[o]n a regular basis we kept [McGuinness and his colleagues] advised and informed of the status of the [[[Prime Computers, Inc. takeover] investigation and where we were going with it and how much it was costing." Reply Aff. of Michael Hirschfeld, Ex. 9 at 21-22. According to plaintiff, Lenzer presented Fried, Frank with a first invoice for $33,688.28 for services rendered on April 20, 1989, and defendant BGLS, Inc. paid this invoice in full in May 1989 with a check made out to Lenzer at his Washington, D.C. address. Lenzer Aff. Para. 7. The parties agree that Lenzer provided Fried, Frank with invoices in July and August 1989 in the amounts of $137,799.55 and $140,188.33 respectively and that defendants never made any payments on these invoices. All of the invoices are printed on the Washington, D.C. letterhead of Terry F. Lenzer Chartered P.C. and do not specify that payment should be made to any other recipient at any other address. Complt., Ex. A & B; Lenzer Aff. Exh. 2.

Time reports attached to the July and August invoices indicate that more than half of the invoices' dollar value relates to the efforts of "D.C. investigators." Complt. Ex. A & B.

In 1991, plaintiff sued MAI Basic Four, Inc. on the July and August invoices in the District Court for the District of Columbia. In 1993, with plaintiff's Washington, D.C. litigation against MAI Basic Four, Inc. still pending, MAI Basic Four, Inc. (then known as MAI Systems Corporation) filed a petition under Chapter 11 of the Bankruptcy Code in the bankruptcy court for the District of Delaware. Plaintiff then filed a proof of claim in MAI Basic Four, Inc.'s bankruptcy case. In 1995, the bankruptcy court entered an order allowing plaintiff a general unsecured claim in the amount of $63,889.77.

In May 1995, plaintiff initiated this action seeking recovery for breach of contract, quantum meruit, and account stated. In their answer, defendants claimed that the doctrine of judicial estoppel bars plaintiff's claims because plaintiff had alleged in its District of Columbia action that the contract at issue was between plaintiff and MAI Basic Four, Inc. rather than plaintiff and defendants. Defendants' answer also asserted that plaintiff's claims are barred in whole or in part by the doctrines of res judicata and collateral estoppel based on the earlier bankruptcy proceeding.

**\*3** In October 1996, defendants filed the instant motion, seeking dismissal of the complaint as untimely under New York's borrowing act and the District of Columbia's statute of limitations.

## DISCUSSION

Because jurisdiction is based on diversity of citizenship, this Court is bound to apply the substantive law of New York, *see Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including New York's applicable statute of limitations and borrowing statute, *see Block v. First Blood Assoc.,* 988 F.2d 344, 349 (2d Cir.1993).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                        Page 3

Not Reported in F.Supp., 1997 WL 727484
**(Cite as: Not Reported in F.Supp.)**

The parties agree that the period of limitations applicable to plaintiff's claims under New York law is six years, *see* N.Y. CPLR § 213(2), and that plaintiff filed its complaint within this period. Defendants contend, however, that plaintiff's action is time-barred because the District of Columbia's three year statute of limitations applies pursuant to New York's borrowing statute. D.C.Code Ann. § 12-301(7) ; N.Y. CPLR § 202.

The borrowing statute provides that in actions brought by nonresidents, the shorter of the New York statute of limitations and that of the state where the cause of action accrued applies. N.Y. CPLR § 202. The statute provides:

An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

*Id.* For purposes of the borrowing statute, plaintiff is not a resident of New York because a corporation's residence is its principal place of business. *See McMahan & Co. v. Donaldson, Lufkin & Jenrette Securities Corp.,* 727 F.Supp. 833, 834 (S.D.N.Y.1989). The New York borrowing statute applies to actions for breach of contract. *See Maslan v. American Airlines, Inc.,* 885 F.Supp. 90, 93 (S.D.N.Y.1995).

Plaintiff resists the application of the borrowing statute in this case on two grounds. First, plaintiff argues that defendants have not shown that the cause of action accrued in Washington, D.C. Under New York law, a party seeking to borrow a foreign statute of limitations has the burden of showing that the cause of action accrued outside New York. *See Maslan,* 885 F.Supp. at 93. There is some uncertainty as to whether the place of claim accrual, for borrowing statute purposes, is determined by the "grouping of contacts" approach applied to substantive choice-of-law problems in New York, or by a "place of injury" construction. *See, e.g., Maslan,* 885 F.Supp. at 93-94; *Callazo v. American Airlines, Inc. .,* 919 F.Supp. 110, 113 (E.D.N.Y.1996) (noting uncertainty in this area of

law). However, the Second Circuit has predicted that New York's highest court would adopt a "place of injury" rule for borrowing statute purposes. *See Stafford v. International Harvester Co.,* 668 F.2d 142, 149-50 (2d Cir.1981); *see also Walsh v. Maryland Bank, N.A.,* 806 F.Supp. 437, 444 (S.D.N.Y.1992).

**\*4** For economic damages, the "place of injury" rule dictates that the cause of action accrues "where the economic impact of the defendant's conduct is felt." *Walsh,* 806 F.Supp. at 444. Plaintiff could only have felt the economic impact of defendants' conduct in Washington, D.C. Plaintiff's principal place of business is Washington, D.C., and the invoices plaintiff sent to Fried, Frank were printed on letterhead with a Washington, D.C. address and no indication that payment was expected at a different location. Thus, plaintiff's cause of action accrued in Washington, D.C., if at all.

Plaintiff's second argument is that the borrowing statute does not apply because defendants have not shown that they were subject to in personam jurisdiction in Washington, D.C. It is undoubtedly the case that defendants must have been amenable to suit in Washington, D.C. for the borrowing statute to apply. *See Stafford,* 668 F.2d at 152. " Because the borrowing statute was designed to prevent a plaintiff from forum shopping, 'it makes no sense at all to apply the shorter limitation of a state where the defendant could not have been sued. " ' *Walsh,* 806 F.Supp. at 445 (citing *Stafford,* 668 F.2d at 152). Under New York law, defendants bear the burden of showing that they were subject to in personam jurisdiction in the District of Columbia. *See Cuccolo v. Lipsky, Goodkin & Co.,* 826 F.Supp. 763, 768 (S.D.N.Y.1993) ; *Walsh,* 806 F.Supp. at 448.

Defendants claim that they would have been subject to in personam jurisdiction pursuant to the District of Columbia long-arm statute, which provides in pertinent part that "[a] District of Columbia court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim for relief arising from the person's (1) transacting any business in the District of Columbia." D.C.Code Ann. Section 13-423(a). The District of Columbia

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                    Page 4

Not Reported in F.Supp., 1997 WL 727484
(Cite as: Not Reported in F.Supp.)

Court of Appeals and the Court of Appeals for the D.C. Circuit have held that "the sweep of the ' transacting any business' provision of D.C.Code 1973, section 13-423(a)(1), covers any transaction of business in the District of Columbia that can be reached jurisdictionally without offending the due process clause." *Mouzavires v. Baxter,* 434 A.2d 988, 993 (D.C.1981), *cert. denied,* 455 U.S. 1006, 102 S.Ct. 1643, 71 L.Ed.2d 875 (1982); *see also Koteen v. Bermuda Cablevision,* 913 F.2d 973, 974 (D.C.Cir.1990). Whether the statute can reach the conduct at issue thus depends on whether defendants had sufficient contacts with the District of Columbia such that traditional notions of fair play and substantial justice are not offended by requiring the parties to defend their case in the forum state. *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980) ; *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) ; *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Interpreting the "transacting any business" provision in this manner, the District of Columbia Court of Appeals has held that a defendant's contacts with the forum must be "voluntary and deliberate, rather than fortuitous" and must be evaluated qualitatively rather than quantitatively. *Mouzavires,* 434 A.2d at 995. It has also concluded that:

*5 the 'transacting any business' provision embraces those contractual activities of a nonresident defendant which cause a consequence here. Moreover, to fall within the purview of section 13-423(a)(1), a nonresident defendant need not have been physically present in the District. Indeed, we have acknowledged that, under certain circumstances, a single act may have been sufficient to constitute transacting business.

*Mouzavires,* 434 A.2d at 992.

Applying these principles, a line of cases in the District of Columbia holds that seeking out, retaining, and doing business with a Washington lawyer establishes sufficient contacts of a voluntary and deliberate nature to subject the client to long-arm jurisdiction in the District on the

attorney's suit to collect his fee. *See, e.g., Koteen v. Bermuda Cablevision, Ltd.,* 913 F.2d 973 (D.C.Cir.1990) ; *Chase v. Pan-Pacific Broadcasting, Inc.,* 617 F.Supp. 1414 (D.D.C.1985) ; *Fisher v. Bander,* 519 A.2d 162 (D.C.1986) ; *Hummel v. Koehler,* 458 A.2d 1187 (D.C.1983) ; *Mouzavires v. Baxter,* 434 A.2d 988 (D.C.1981) (en banc). In accordance with the Supreme Court's decision in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), the District of Columbia Court of Appeals has identified three justifications for exercising jurisdiction in such cases: that the District has "a substantial interest in providing a forum to redress wrongs inflicted upon its citizens by clients who fail to pay for professional services supplied in the District of Columbia by District of Columbia law firms," that defendant "availed himself of the special benefits of doing business with a Washington, D.C. law firm," and that "it can hardly be said that litigation of a fee dispute [in the District of Columbia] poses any undue burden on the client." *Fisher,* 519 A.2d at 164, quoted in *Koteen,* 913 F.2d at 209.

Given these precedents, defendants have shown that they had sufficient contacts with the District of Columbia to meet the requirements imposed by the Due Process Clause and establish jurisdiction under the D.C.Code's "transacting any business" provision. A partner from Fried, Frank's Washington, D.C. office initially contacted plaintiff's Washington, D.C. office to discuss retaining plaintiff to investigate in connection with a takeover of Prime Computers, Inc. A partner from Fried, Frank's New York office subsequently called plaintiff's Washington, D.C. office and entered into an agreement for professional services during the course of that conversation. Although plaintiff undoubtedly performed some work for defendants outside the District of Columbia, plaintiff's time sheets indicate that a substantial percentage of plaintiff's work was done by D.C. investigators and that a non-trivial portion of plaintiff's work involved research at Washington, D.C. institutions such as the U.S. Tax Court and the Library of Congress. This is not surprising given that Washington, D.C. is plaintiff's principal place of business. Moreover, plaintiff cannot claim that defendants did not know

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 5

Not Reported in F.Supp., 1997 WL 727484
(Cite as: Not Reported in F.Supp.)

that plaintiff was performing services for them in
the District because plaintiff sent Fried, Frank
detailed time sheets and Lenzer stated under oath
that his firm kept Fried, Frank informed about the
nature of its investigative work. According to
plaintiff, defendant BGLS, Inc. remitted a check for
$33,688.28 made out to Lenzer at his Washington,
D.C. address after receiving the first invoice. These
contacts provide a sufficient basis from which to
conclude that defendants voluntarily and
deliberately availed themselves of the privilege of
doing business in the District of Columbia and
accordingly were subject to in personam
jurisdiction in Washington, D.C.

*6 Defendants have met their burden. New York's
borrowing statute applies in this case because the
plaintiff's cause of action accrued to a non-resident
outside New York and defendants would have been
subject to in personam jurisdiction in the state
where the cause of action accrued. Because the
District of Columbia limitation period is three
years, plaintiff's action is untimely pursuant to New
York CPLR § 202. Defendants' motion for summary
judgment is therefore granted.

The Clerk of the Court is directed to dismiss the
action with prejudice.

It is SO ORDERED.

S.D.N.Y.,1997.
Investigative Group, Inc. v. Brooke Group Ltd., Inc.
Not Reported in F.Supp., 1997 WL 727484

Briefs and Other Related Documents (Back to top)

• 1:95cv03919 (Docket) (May. 31, 1995)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.