# EXHIBIT Q





**H**
Not Reported in A.2d, 1994 WL 30529, 19 Del. J. Corp. L. 1260

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Court of Chancery of Delaware, New Castle County.
Doris and Sydney LITMAN and David and Lillian Zelitch, Plaintiffs,
v.
PRUDENTIAL-BACHE PROPERTIES, INC., Related Tax-Exempt Bond Associates, Inc., and Bache Group, Inc. a/k/a Prudential Securities Group, Inc., Defendants.
**Civ. A. No. 12137.**

Submitted: Dec. 30, 1993.
Decided: Jan. 14, 1994.

R. Bruce McNew , Carolyn D. Mack , and Robert J. Kriner, Jr. , of Chimicles, Burt & Jacobsen , Wilmington, and Michael J. Pucillo of Chimicles, Burt & Jacobsen, West Palm Beach, FL, for plaintiffs.
Stephen P. Lamb of Skadden, Arps, Slate, Meagher & Flom , Wilmington, and Timothy A. Nelsen , and Miriam G. Bahcall of Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for defendants Prudential-Bache Properties, Inc. and Bache-Group, Inc. a/k/a Prudential Securities Group, Inc.
James F. Burnett of Potter, Anderson & Corroon , Wilmington of counsel: Joel S. Weiss , Joseph Evall of Esanu Katsky Korins & Siger, New York City, for defendant Related Tax-Exempt Bond Associates, Inc.

MEMORANDUM OPINION

CHANDLER, Vice Chancellor.
*1 This case comes before me on remand from the Supreme Court. Plaintiffs, Doris and Sydney Litman, David and Lillian Zelitch, and all others similarly situated, instituted this proceeding against defendants, Prudential-Bache Properties, Inc., Related Tax-Exempt Bond Associates, Inc., and Bache Group, Inc. Plaintiffs, owners of limited partnership interests in the Summit Tax Exempt Bond Fund, L.P. (the "Summit Partnership" or the " Partnership") asserted that defendants, creators and general partners of the Summit Partnership, breached their fiduciary duties in regard to the Partnership. On February 13, 1992, I found that plaintiffs' claims were derivative, and as such, pursuant to the Delaware Revised Uniform Limited Partnership Act, plaintiffs were required to make a demand upon the general partners or adequately plead that demand was excused. *Litman v. Prudential-Bache Properties, Inc.,* Del.Ch., C.A. No. 12137, Chandler, V.C. (Feb. 13, 1992), Op. at 10 (the "Dismissal Order I"). Upon my finding that plaintiffs failed to do this, I dismissed their complaint. *Id.* at 12. On April 29, 1992, I granted plaintiffs leave to amend their complaint so as to adequately comply with the demand requirements for derivative claims. *Litman v. Prudential-Bache Properties, Inc.,* Del.Ch., C.A. No. 12137, Chandler, V.C. (April 29, 1992), Op. at 5 (the " Amendment Order").

Thereafter, defendants moved to dismiss plaintiffs' claims pursuant to Chancery Court Rule 12(b)(6), alleging that plaintiffs failed to plead adequately demand futility and that plaintiffs' claims are time barred. *Litman v. Prudential-Bache Properties, Inc.,* Del.Ch., C.A. No. 12137, Chandler, V.C. (Jan. 4, 1993) (the "Dismissal Order II"). I granted defendants' motion to dismiss on the basis that plaintiffs did not allege adequate facts to demonstrate demand futility. *Id.* at 12-13. Based on this result, I declined to address defendants' allegations that plaintiffs' claims are time barred.

Subsequently, plaintiffs appealed my decision to the Supreme Court. By Order dated November, 18, 1993, the Supreme Court remanded the case to this Court "to determine whether plaintiffs' claims are barred by the statute of limitations." *Litman v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Prudential-Bache Properties, Inc. et. al.,* Del.Supr., C.A. No. 12137, Moore, J. (Nov. 18, 1993), Order at 3 (the "Remand Order"). Due to the fact that plaintiffs have admitted their claims were filed after the three year limitations period, this opinion will address whether plaintiffs have met their "burden of alleging facts which would support the tolling of the statute of limitations." *Id.* at 2-3.

I. BACKGROUND

The history of this dispute is set forth in the Dismissal Order II. Plaintiffs filed their complaint June 10, 1991. For the sake of completeness and clarity, I reiterate that plaintiffs have admitted their claims were filed "after the three year limitations period had run." Remand Order at 2. As a result, the issue before this Court is whether the limitations period was tolled so as to permit plaintiffs to continue their claims against defendants.

II. THE PARTIES' CONTENTIONS

*2 Plaintiffs allege that their claims are timely because the statute of limitations was tolled in this instance. The doctrine of fraudulent concealment, or alternatively, the doctrine of equitable tolling, assert plaintiffs, tolled the three year time limit within which they had to assert their claims against defendants. These doctrines permit tolling of limitations periods if the defendants concealed their wrongs so that a reasonable plaintiff could not timely discover them. *See, e.g., Shockley v. Dyer,* Del.Supr., 456 A.2d 798 (1983). According to the doctrine of equitable tolling, argue plaintiffs, no affirmative act of concealment by defendants need be pleaded, thus rendering plaintiffs' claims inappropriate for Rule 12(b)(6) dismissal. In addition, plaintiffs contend, they adequately pleaded acts of fraudulent concealment by the defendants such that the statute of limitations was tolled until the plaintiffs actually discovered defendants' alleged wrongs. Notwithstanding, argue plaintiffs, they should be permitted to amend their Amended Complaint to clarify and more adequately plead the doctrine of fraudulent concealment.

Defendants, on the other hand, assert that plaintiffs have not met their burden of pleading facts that would support the tolling of the statute of limitations. They contend that plaintiffs have failed to allege any facts with particularity that would permit tolling of the limitations period. In addition, defendants allege that plaintiffs should not be permitted to amend their complaint because such an amendment would be untimely and prejudicial at this stage of the proceedings. Moreover, defendants argue, plaintiffs should not be permitted to amend their complaint because doing so would be futile.

III. LEGAL ANALYSIS

One of the arguments asserted against plaintiffs is that they should be denied leave to amend their complaint because such an amendment would be futile. A determination of futility requires inquiry into the substance of the "perfect" complaint. Plaintiffs have provided the Court with their proposed amendment to the Amended Complaint (the "Second Amended Complaint"). FN1 For the purposes of this opinion, I will assume the Second Amended Complaint is plaintiffs' "perfect" complaint. As such, I will address the adequacy of plaintiffs' pleadings in regard to the statute of limitations issue as stated in the Second Amended Complaint. Doing so will permit me to determine whether the Second Amended Complaint adequately pleads tolling of the statute of limitations, which will in turn permit me to determine whether such amendment would be futile.

FN1. The Second Amended Complaint is a recitation of the Amended Complaint with the exception of added paragraphs 68 through 89. As a result, a determination of whether the Second Amended Complaint adequately pleads tolling of the statute of limitations necessarily includes consideration of the Amended Complaint.

A. *The Dismissal Standard*

The issue before me is whether plaintiffs' complaint

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

should be dismissed because their claims are time barred. Under Chancery Court Rule 12(b)(6),

> a court must accept all well-pleaded allegations of the complaint as true, must construe all inferences in favor of the plaintiff and must not dismiss the complaint unless it appears that the plaintiff would not be entitled to relief under any set of facts which could be proved in support of his claim.

*3 The Dismissal Order I at 4 (citations omitted).
In evaluating a motion to dismiss, conclusory statements of law or fact which are unsupported by allegations of specific fact should not be considered. *Weinberger v. UOP, Inc.*, Del.Ch., 409 A.2d 1262, 1264 (1979), rev'd on other grounds, 457 A.2d 701 (1983).

B. *The Statute of Limitations*

Defendants assert that neither plaintiffs' Amended Complaint nor Second Amended Complaint adequately plead tolling of the statute of limitations. In fact, they assert, given the facts of this case, it is not possible to plead adequate facts that would toll the limitations period, because plaintiffs were on notice of defendants' alleged wrongs more than three years before plaintiffs filed their complaint. As such, defendants contend, no set of facts would support plaintiffs' claim that the limitations period has been tolled.

Plaintiffs, on the other hand, contend that the limitations period has been tolled by the doctrines of equitable tolling or fraudulent concealment. Both doctrines rest on the same premise-that defendants should not be permitted to use a limitations period as a shield when they have engaged in fraudulent acts that have denied plaintiffs the opportunity to timely discover the alleged wrongs.

Plaintiffs rely heavily on *Kahn v. Seaboard Corp.*, Del.Ch., 625 A.2d 269 (1993). In that case, Chancellor Allen, applying the doctrine of equitable tolling, stated that in some circumstances, even without an affirmative act of concealment by the defendants, a limitations period can be tolled. *Id.* at 276. Plaintiffs assert that *Kahn* stands for the proposition that when the doctrine of equitable tolling arises, no affirmative fraudulent act by the defendant need be shown. I do not read *Kahn* quite so broadly.

The facts in *Kahn* involved a fiduciary relationship between the defendants and the plaintiffs. In addition, the plaintiffs alleged self-dealing by the defendants. Allegations of self-dealing significantly taint the fiduciary relationship. They implicate serious breaches of loyalty and often raise the legal analysis to a higher level than ordinary breaches of care. *See, e.g., In re Tri-Star Pictures, Inc., Litig.*, Del.Supr., Cons.C.A. No. 9577, Moore, J. (Nov. 24, 1993), Op. at 4 ("a breach of the duty of loyalty requir[es] that the defendants' actions be judged by principles of entire fairness.... [T]his shifts the burden to the defendants to prove 'the most scrupulous inherent fairness of the bargain' " (citations omitted)). As a result, I cannot read *Kahn* as holding that, in every situation in which it is implicated, the doctrine of equitable tolling will serve to toll a limitations period, regardless of whether affirmative acts of fraud by the defendants are shown. Rather, I think the better rule, and the one Chancellor Allen intended, is that a limitations period may be tolled absent allegations of affirmative acts of concealment by the defendants, where the parties to the litigation stand in a fiduciary relationship to each other *and* where the plaintiff alleges self-dealing. This does not take away from the fact that the doctrine of equitable tolling still acts to toll a limitations period. In situations that do not involve self-dealing, equitable tolling operates in much the same way as the doctrine of fraudulent concealment. Both theories operate to toll a limitations period when the defendant has engaged in certain acts that would prevent the plaintiff from discovering the alleged wrongs.

*4 Notwithstanding that *Kahn* is instructive for the general proposition that a limitations period can be tolled by certain acts of the defendant, it does not control in the fact situation here. In the Dismissal Order II, I specifically found that, "Plaintiffs do not allege that the directors of defendant general partners received any added personal benefits (other than salaries) from the transactions.... [T]here is no

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

allegation here of self-dealing. The loans in question were made in arms-length transactions to persons not affiliated with the general partners." Dismissal Order II at 9, 10. Due to the absence of self-dealing, plaintiffs cannot avail themselves of the rule in *Kahn.*

In fact, had plaintiffs pleaded self-dealing, they still would not be able to avail themselves of equitable tolling principles. Plaintiffs have simply failed to allege facts that show defendants committed any acts of concealment. And, plaintiffs have failed to plead facts necessary to uphold their duty, "once the key information is discovered or should have been discovered, to promptly file suit before the statute of limitations has run." Remand Order at 3 (citing *Bradley v. Maryland Casualty Co.,* 563 F.Supp. 602, 607 (D.Del.1983)).

The doctrine of fraudulent concealment tolls a limitations period when the defendant conceals the facts constituting plaintiffs' cause of action through the commission of affirmative acts of misrepresentation or failure to disclose facts when there is duty to disclose. *See Riddell v. Riddell Washington Corp.,* 866 F.2d 1480 (D.C.Cir.1989) (affirmative misrepresentations toll a limitations period under the doctrine of fraudulent concealment); *Shane v. Shane,* 891 F.2d 976 (1st Cir.1989) ("where the plaintiff owes the defendant a fiduciary duty, the failure to disclose facts tolls the statute of limitations"). Fraudulent concealment, however, tolls a limitations period only "until the [plaintiffs'] rights are discovered or until they could have been discovered by the exercise of reasonable diligence." *Ewing v. Beck,* Del.Supr., 520 A.2d 653, 667 (1987). Finally, plaintiffs carry the burden of pleading facts that would amount to fraudulent concealment. *See, e.g.,* Remand Order at 3.

Plaintiffs allege that several disclosures made by the defendants as well as defendants' failure to disclose certain information amounted to fraudulent concealment and thereby tolled the three year statute of limitations until plaintiffs discovered defendants' wrongs. Specifically, plaintiffs assert that defendants' manner of paying distributions to plaintiffs was a ruse intended to lull plaintiffs into the belief that the Partnership was operating normally. In addition, plaintiffs contend that certain of defendants' disclosures on the Partnership's financial filings and annual reports were intended to downplay adverse information about the Partnership and mislead plaintiffs into believing that the Partnership was performing as expected.

*5 Defendants contend that plaintiffs have not identified any facts that were withheld or misrepresented to plaintiffs. In fact, they argue, plaintiffs' pleadings demonstrate that defendants correctly disclosed the facts pertinent to the operation of the Partnership. They assert that they disclosed facts known to the Partnership promptly and fully in the Partnership's SEC filings and annual reports. Moreover, they argue, the facts that plaintiffs allege as the basis of their complaint were obtained from defendants' disclosures. Thus, defendants argue, everything of which plaintiffs complain was previously disclosed to them. Finally, defendants assert, plaintiffs are not, as a matter of law, entitled to tolling of the limitations period by the doctrine of fraudulent concealment because plaintiffs failed to satisfy their duty, "once the key information was discovered or *should have been discovered,* to promptly file suit." Remand Order at 3 (emphasis added).

Based on the Second Amended Complaint, I am persuaded that defendants are entitled to dismissal as a matter of law. Plaintiffs initiated their suit about June 10, 1991. Their action is governed by the three year statute of limitation period specified in 10 *Del.C.* § 8106 (1992). *Kahn,* 625 A.2d 274-75. Unless the limitations period was tolled, if the facts giving rise to plaintiffs' complaint were discovered prior to June 10, 1988, plaintiffs' complaint is time barred. Plaintiffs have not only failed to meet their burden of alleging facts that would support tolling of the limitations period, but they have also failed to satisfy their duty of filing suit once the key information forming the basis of their complaint was or should have been discovered.

The basis of plaintiffs' fraudulent concealment argument has essentially two elements. First, plaintiffs contend that defendants' manner of paying

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

distributions to them was intended to lull plaintiffs into a sense of "normalcy." According to plaintiffs' allegations, the Partnership continued to pay out a quarterly distribution of $.40 per BUC$ FN2 as a means of downplaying adverse information disclosed by the Partnership. Second Amended Complaint ¶¶ 74, 76. And, plaintiffs contend, it was not until September, 1988, that defendants reduced the quarterly distribution to $.35 per BUC$, and not until June, 1989, that the Partnership disclosed that funding for the distribution was not primarily from net income. *Id.* at ¶¶ 81, 83. Both of these allegations are refuted by the very documents upon which plaintiffs rely: the Partnership's public filings and annual reports. The Partnership's annual report for 1987 disclosed certain adverse information about the Partnership and also stated that due to the Partnership's belief about its long-term prospects, a $.40 distribution per BUC$ would be paid from cash from operations *and reserves* (emphasis added). *Id.* at ¶ 76. In fact, each time the Partnership made a distribution to the BUC$ holders, it disclosed that the distribution was funded, in part, from the Partnership's reserves. *Id.* at ¶ ¶ 70, 73, 74, 76. Thus, plaintiffs had actual notice from the *outset* of the Partnership's operations in 1986 that net income was not the sole source of the quarterly distribution. They were not first apprised of that fact in June, 1988, as they allege. *See Id.* at ¶ 83. Moreover, defendants had no duty, under Delaware law, to reduce distributions at the first sight of trouble in the Partnership. Indeed, imposing such a duty on general partners would produce an unfavorable result: it would require a partnership to reduce its distributions at the first sign of a setback. Not only are setbacks often temporary, but they also take a period of time to assess. Executives and managers should not be bound by a strict rule requiring a decrease in distributions every time negative information surfaces. Rather, they should be entitled to employ their business judgment at least until a point where they have or should have noticed that the negative information is of a permanent or significant nature. *(See, e.g., Gabelli v. Liggett Group, Inc.*, Del.Supr., 479 A.2d 276, 280 (1984)) ( "the declaration and payment of a dividend rests in the discretion of the corporation's board of directors in the exercise of its business judgment ... [b]efore the courts will interfere with the judgment of the board of directors in such matter, fraud or gross abuse of discretion must be shown").

FN2. A BUC$ is essentially a unit of the partnership.

*6 The second element of plaintiffs' allegations concerns disclosures by the Partnership that portrayed managements' beliefs about the future of the Partnership. Plaintiffs point to several disclosures made by the Partnership whereby the General Partners allegedly downplayed negative information concerning the Partnership through the use of opinion and forward-looking statements about the continued viability and stability of the Partnership as well as through the use of statements about aspects of the Partnership that were operating favorably. *See, e.g.,* Second Amended Complaint ¶¶ 73, 74-76, 81. Plaintiffs' argument in this regard fails as a matter of law. Plaintiffs do not assert that defendants failed to provide them with negative information regarding the Partnership. In fact, they allege in their complaint that the Partnership disclosed problems that certain of the projects in which the Partnership invested were experiencing. *See, e.g., id.* at ¶¶ 28-31. As early as September, 1987, the Partnership disclosed cash flow problems and defaults in regard to some of its projects. *Id.* at ¶ 28. The disclosure of these cash flow problems and project defaults was enough to put a reasonable investor on notice that some aspects of the Partnership were not performing as expected. Such information should prompt a reasonable investor concerned about her investment to inquire into the extent of project failures and defaults suffered by the Partnership. Plaintiffs, however, allege that the positive information disclosed by the Partnership had the effect of downplaying this negative information. *See, e.g., id.* at ¶ 73.

Partnerships have not only a duty to disclose negative information about which investors might reasonably want to be aware, but a right to disclose positive information regarding operations. Disclosure rules, while intending to prohibit

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

non-disclosure of material information, do not prohibit disclosure of positive information. In instances where the positive information is egregiously overstated, disclosure may amount to an affirmative misrepresentation. However, this is not the case here. Rather, the Partnership disclosed information about the projects that were operating successfully as well as information about those that were experiencing troubles. *See, e.g., id.* at ¶¶ 28-31.

Plaintiffs' allegations concerning defendants' statements of opinion are likewise insufficient to show fraudulent concealment as a matter of law. The law in Delaware has not directly addressed statements of opinion or forward-looking statements as a basis for alleging fraudulent concealment. However, the law in regard to fraudulent misrepresentations under the securities acts is particularly instructive on this point. Under the Federal Securities Laws, mere allegations that a forecast turned out to be inaccurate are not actionable. *See, e.g., Brug v. The Enstar Group, Inc.,* 755 F.Supp. 1247, 1250 (D.Del.1991) (citing *Eisenberg v. Gagnon,* 766 F.2d 770, 776 (3d Cir.1985)). Our Supreme Court has also stated that "[a]n optimistic prediction regarding a company's future prospects is not a 'falsehood' absent evidence that it was not made in good faith (*i.e.,* not genuinely believed to be true) or that there was no reasonable foundation for the prediction." *Hubbard v. Hibbard Brown & Co.,* Del.Supr., C.A. No. 12451, Veasey, C.J. (Nov. 22, 1993), Op. at 13 (citations omitted). These rules are based on the policy considerations that, in making her investment decisions, a reasonable investor should be permitted to avail herself of management forecasts and predictions, provided other material factual information is fully disclosed. Because the same considerations exist here, where disclosures are challenged on a basis other than the securities laws, policy would dictate application of the same rule. For purposes of fraudulent concealment then, an opinion or forward-looking statement should toll the limitations period only when it is not made in good faith or grounded on fact.

*7 Plaintiffs have not alleged any facts that would show that defendants did not, in good faith, believe the opinions propounded in the Partnership's public filings and annual reports. Likewise, plaintiffs have not alleged any facts that would show defendants' opinions and forecasts were not grounded in fact. While plaintiffs have made several conclusory statements in the Second Amended Complaint, from which an inference could be made that plaintiffs alleged the statements made by the Partnership were not in good faith, conclusory allegations, unsupported by allegations of specific facts, are not properly considered on a motion to dismiss. *Weinberger v. UOP, Inc.,* Del.Ch., 409 A.2d 1262, 1264 (1979), *rev'd on other grounds,* 457 A.2d 701 (1983). In fact, the hard information included in the Partnership's filings and annual reports provide a sufficient basis for the Partnership to make the soft disclosures it did. Again, prohibiting the Partnership from making these types of disclosures would have the unwanted effect of depriving an investor of management's assessment of operations. Provided, as here, that the statements are clearly delineated as managements' beliefs or opinions, *see, e.g.,* Second Amended Complaint ¶¶ 74, 76, a reasonable investor will take these statements for what they are-mere opinions and forecasts-and evaluate her investment by taking into account all factors disclosed by management, including negative information.

One further point regarding plaintiffs' Second Amended Complaint should be made. In it, plaintiffs include reference to the massive settlement agreement reached by the SEC and certain Prudential entities, including defendant Bache Group, Inc. *Id.* at ¶¶ 87-88. Apparently, plaintiffs allege that the liability of those Prudential entities implicates the liability of defendants. There are two problems with plaintiffs' allegations. First, it is a basic rule of evidence that prior bad or illegal acts of a party in one instance cannot be used to infer bad acts in a different situation. *See* D.R.E. 404(b). Second, the type of claims in the SEC settlement differs from the claims alleged in this action. In the SEC settlement, the majority of the claims against the Prudential entities are suitability claims. True, some of the claims involved accusations of inflating the expected return of certain investments in promotional materials;

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

however, both this type of claim and a suitability claim are different from the claims alleged against defendants in this action. As a result, ¶¶ 87-88 add little, if any, substance to plaintiffs' allegations.

Based on the allegations in the Second Amended Complaint, plaintiffs were on notice as early as 1987, which notice continued throughout the period of plaintiffs' complaint, that quarterly distributions were not being paid solely from net income. In addition, plaintiffs had actual notice of the problems experienced by certain of the Partnership's projects as early as September 1987. The three year statute of limitations period for filing a complaint based on these facts therefore expired in 1990. Plaintiffs, however, failed to file a complaint in this action until June of 1991. As such, their claim is barred by the statute of limitations. The limitations period was not tolled by the doctrine of fraudulent concealment because plaintiffs have failed to allege that the defendants affirmatively misrepresented or failed to disclose facts which they had a duty to disclose. Moreover, in light of the fact that plaintiffs were, at a minimum, on inquiry notice as to the Partnership's problems in 1987, plaintiffs have failed to satisfy their burden of alleging facts that they promptly filed their complaint upon becoming aware of the pertinent facts. FN3

FN3. The Second Amended Complaint includes the Amended Complaint in its entirety. As a result, my findings above that plaintiffs have failed to adequately plead compliance with the limitations period apply to the Amended Complaint as well.

C. *The Motion To Amend*

*8 I will now address plaintiffs' motion for leave to amend the complaint and take further discovery. Defendants argue that plaintiffs' request to amend is untimely because it was not filed within 10 days of judgment as required by Chancery Court Rule 59(e) and that, regardless, an amendment would be futile. Plaintiffs argue that they should freely be permitted to amend their complaint pursuant to Chancery Court Rule 15(a). I have previously addressed this same argument between plaintiffs and defendants. *See* Amendment Order. Here, plaintiffs are not seeking to alter a judgment; rather, they are seeking to amend their complaint so as to clarify their position and more adequately plead compliance with the statute of limitations. As a result, Rule 15(a), which freely permits amendments when justice so requires, should govern this situation. Amendment Order at 3-4. Moreover, the Supreme Court has indicated that it intended the Remand Order to encompass an expansion of the record.

Nevertheless, it is well-settled that plaintiffs should not be granted leave to amend in situations where there is evidence of bad faith, undue delay, dilatory motive, undue prejudice or futility of amendment. *Foman v. Davis,* 371 U.S. 178, 182 (1962). Based on the above statute of limitation analysis, it is clear that it would be a futile act on plaintiffs' part to amend the complaint. They simply cannot plead allegations sufficient to show compliance with the statute of limitations because, based on plaintiff's " ideal" allegations of fact, defendants did not conceal anything. As a result, I deny plaintiffs' motion to amend the complaint.

IV. CONCLUSION

Plaintiffs had notice of the facts that constitute the basis of their complaint in 1987. The statute of limitations period governing plaintiffs' action is three years. 10 *Del.C.* § 8106. This limitations period was not tolled by the doctrines of equitable tolling or fraudulent concealment because plaintiffs are unable to allege facts showing that defendants affirmatively misrepresented information or failed to disclose information they had a duty to disclose. Thus, the time period within which plaintiffs had to file their complaint expired in 1990. Plaintiffs, however, did not file their complaint until 1991. Accordingly, their claims are barred by the limitations period and must be dismissed pursuant to Chancery Court Rule 12(b)(6).

IT IS SO ORDERED.

Del.Ch.,1994.
Litman v. Prudential-Bache Properties, Inc.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d, 1994 WL 30529, 19 Del. J. Corp. L. 1260

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.