**EXHIBIT R**

Westlaw.

Not Reported in F.Supp.2d                                          Page 1

Not Reported in F.Supp.2d, 2001 WL 243537
**(Cite as: Not Reported in F.Supp.2d)**

▷
Not Reported in F.Supp.2d, 2001 WL 243537
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
John S. PEREIRA, as Trustee of Trace International
Holdings, Inc. and Trace Foam Sub, Inc., Plaintiff,
v.
Marshall S. COGAN, Saul S. Sherman, Andrea
Farace, Frederick Marcus, Robert H. Nelson, Philip
Smith, Karl Winters, Tambra King Defendants.
**No. 00 CIV. 619(RWS).**

March 08, 2001.

LeBoeuf, Lamb, Greene, & MacRae, L.L.P. , New
York, By John P. Campo, Esq. , Theodore J.
Fischkin, Esq. , Amy S. Zabetakis, Esq., Of
Counsel, for Plaintiff.
Salomon Green & Ostrow, P.C. , Attorneys for
Defendant Marshall S. Cogan, New York, By
Chester B. Salomon, Of Counsel, for Defendants.
Swidler Berlin Shereff Friedman, LLP , New York,
By Andrew J. Levander, Esq. , Shalom Jacob, Esq. ,
Adam B. Rowland, Esq. , Lorri Staal Rosen, Esq.,
Of Counsel, for Defendants Andrea Farace, Saul S.
Sherman, and Frederick Marcus.
Piper Marbury Rudnick & Wolfe, LLP , New York,
By Theodore Altman, Esq. , Robert A. Meister, Esq.
, Of counsel, for Defendants Robert H. Nelson,
Philip Smith, Karl Winters, and Tambra King.

### OPINION

SWEET , D.J.
*1 Defendants Saul S. Sherman ("Sherman"),
Andrea Farace ("Farace"), Frederick Marcus ("
Marcus") (collectively the "Directors") have moved
to dismiss the Second Amended Complaint filed by
plaintiff John S. Pereira, as trustee (the "Trustee")
of debtors Trace International Holdings, Inc. and
Trace Foam Sub, Inc. (collectively, "Trace"), for
lack of notice and a hearing, pursuant to Section

363 of the Bankruptcy Code , 11 U.S.C. § 363(b)(1)
, and to dismiss Counts IV and V for failure to state
a claim, pursuant to Federal Rule of Civil Procedure
12(b)(6), and defendant Marshall S. Cogan ("Cogan
") has moved to dismiss Counts II, IV, FN1 and VI
for failure to state a claim, pursuant to Rule 12(b)(6)
, and to dismiss Count VI for lack of subject matter
jurisdiction, pursuant to Rule 12(b)(1). For the
reasons set forth below, the motions are denied.

> FN1. Cogan seeks dismissal of certain
> portions of Count IV only, namely, those
> entitled "Imprudent Loans And Gifts To
> Insiders," "Cogan Employment Agreement,
> " and "The Cogan Loans."

#### The Parties

The Trustee is the Chapter 7 bankruptcy trustee for
Trace.

Cogan was at all relevant times the majority and
controlling shareholder and Chief Executive Officer
("CEO") of Trace and Chairman of Trace's Board
of Directors (the "Board").

Sherman, Farace, and Marcus were at all relevant
times members of the Board.

#### Prior Proceedings

On July 21, 1999, Trace filed for protection under
Chapter 11 of the Bankruptcy Code with the United
States Bankruptcy Court for the Southern District of
New York. On or about August 6, 1999, the Office
of the United States Trustee appointed an official
unsecured Creditors' Committee. See 11 U.S.C. §
1102(a) and (b). On October 18, 1999, the
Creditors Committee, with permission of the
Bankruptcy Court, initiated an adversary
proceeding by filing a complaint asserting certain
causes of action belonging to Trace against Cogan,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 2

**Not Reported in F.Supp.2d, 2001 WL 243537**
**(Cite as: Not Reported in F.Supp.2d)**

the Directors, and other parties. On January 18, 2000, the Directors moved to dismiss that complaint. On January 24, 2000, the Bankruptcy Court converted Trace's Chapter 11 case to a Chapter 7 case. On January 25, 2000, the Trustee was appointed. Shortly thereafter, the parties agreed to extend the time for the Trustee to respond to the pending motion to dismiss and, subsequently, that the Trustee would respond by filing an amended complaint.

On January 28, 2000, the Directors filed a motion to withdraw the bankruptcy reference of the adversary proceeding from the Bankruptcy Court, pursuant to 28 U.S.C. § 157(d). On May 15, 2000, the Trustee filed an amended complaint, and on July 31, 2000, the Trustee filed the Second Amended Complaint. On or about August 28, 2000, the motion to withdraw the bankruptcy reference was granted, pursuant to a stipulation by the parties.

The instant motions to dismiss were filed on August 23, 2000, and oral argument was heard on October 11, 2000, at which time the matter was deemed fully submitted.

*Facts*

The following facts are as alleged in the Second Amended Complaint and do not constitute findings by the Court.

Trace has been insolvent since at least 1995. Trace's audited financial statements show that it had incurred net losses of $11.2 million and $51.7 million in 1994 and 1995, respectively. The Trace 1995 audited financial statements show a negative stockholders' equity of approximately $29.6 million, and the 1996 audited financial statements reflect a net loss that year of approximately $72 million and negative stockholders' equity of approximately $104 million. At the time Trace filed its Chapter 11 proceedings, according to its own summary of schedules filed on October 25, 1999, Trace's liabilities exceeded its assets by approximately $121 million. FN2

FN2. Documents of which judicial notice can be taken, such as the Chapter 11 filings, may be considered in determining a motion to dismiss on the pleadings. *See Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir.1995).

*2 Cogan was the majority common stockholder and CEO of Trace, chairman of the Board, and the beneficiary of voting trusts relating to the stock. Through these positions, Cogan controlled the management and operations of Trace. The Directors were all members of the Board. The Directors attained their positions by virtue of the authority exercised by Cogan. They uncritically supported Cogan with respect to the decisions which are the subject of the Second Amended Complaint, failed to exercise independent judgment and to keep themselves informed about the affairs of Trace as required of corporate directors under Delaware law, and failed to exercise reasonable supervision and control over Trace's policies and practices. The last time the Board convened for a meeting was in September of 1995.

Farace and Marcus have also been officers of Trace, position which they held by virtue of the authority exercised by Cogan and board members appointed by Cogan. Farace and Marcus uncritically supported Cogan and engaged in actions or made decisions that were not supported by business judgment but, instead, personally benefitted directors, officers or employees of Trace without justification.

Count I, which is not attacked in the present motions, seeks recovery against Cogan on $14 million of unsecured promissory notes borrowed from Trace, and as to which Cogan is in default.

Counts II asserts a breach of fiduciary duty claim and Count III asserts a fraudulent conveyance claim against Cogan based on the August 1997 ten-year renewal of Cogan's employment agreement (the "Cogan Employment Agreement") and millions of dollars in excessive compensation accorded Cogan by that agreement.

The Cogan Employment Agreement, originally entered into in 1987, had a ten-year "Initial Term"

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                  Page 3

Not Reported in F.Supp.2d, 2001 WL 243537
(Cite as: Not Reported in F.Supp.2d)

and provided for four additional ten-year "Renewal Terms" through 2037 (at which time Cogan would be 100 years old). Under the terms of the agreement each Renewal Term became effective at each ten-year interval unless the Board voted to the contrary or Cogan declined to renew. The process for blocking renewal was burdensome, requiring a super-majority vote of the Board members. When the agreement came up for its first renewal in 1997, Cogan did not decline renewal and the Board did nothing, failing even to consider the matter. This occurred even though Trace, under Cogan's leadership, had been insolvent since 1995. Due to the renewal, Cogan's status and excessive compensation were perpetuated for another ten years without regard to performance.

Once renewed, the Cogan Employment Agreement imposed severe financial penalties upon Trace if the Board, in the exercise of its otherwise customary discretion, should terminate Cogan or even reduce or otherwise change his duties at any time during the ten-year renewal term. For example, if during the first year the Board discharged Cogan or terminated the contract by changing his duties, Trace was nonetheless obligated to pay him for each of the next nine years at an annual salary of $3.6 million. This sum included a 50% increase which Cogan had previously awarded to himself. Furthermore, even if Cogan were terminated for cause he was still entitled under the agreement to five years' salary.

*3 Count IV asserts a claim for multiple breaches of fiduciary duty against all the Defendants.

The Defendants *inter alia* allowed Trace, at a time when Trace was insolvent: to be treated by Cogan as his personal bank; to make imprudent loans and/or gifts to corporate insiders, Cogan family members and Cogan's cook, without a proper business purpose, including by using corporate funds to pay his daughter a six-figure salary for a non-existent job, paying a $558,000 "bonus" to Cogan's secretary, making a $14 million loan to Cogan; and throwing a $1 million birthday party for Cogan; to increase Cogan's compensation in 1991 and subsequent years; to renew the Cogan Employment Agreement; and to make a $3 million non-recourse loan to Cogan to redeem certain of Trace's preferred shares held by Dow Chemical Company ("Dow").

Count V asserts a claim under the Delaware General Corporation Law for the Defendants' approval of the payment of dividends and redemption of Trace shares. Although Trace was insolvent, Trace regularly paid quarterly dividends to Dow and redeemed shares of its preferred and common stock

Count VI seeks to pierce Trace's corporate veil and to hold Cogan individually liable for Trace's legitimate obligations, based on an alter ego theory. Cogan used Trace as his personal bank, not only for himself but for his wife, daughter, and cook. The Cogan officers and directors did not function properly, but instead subordinated the interests of Trace and its creditors to Cogan's personal interests. Under Cogan's dominance, Trace ignored or attempted to evade the requirements of Delaware law concerning corporate governance and corporate formalities, and Trace was insolvent and inadequately capitalized. FN3

> FN3. These allegations are further detailed by making reference to certain allegations made pursuant to Counts I-V, and described herein.

*Discussion*

The Defendants seek dismissal of the Second Amended Complaint on the grounds that: the Trustee failed to comply with the notice and hearing requirement of § 363(b) of the Bankruptcy Code; insolvency, which the Defendants contend is a required element for the breach of fiduciary claim, has not been properly plead; the breach of fiduciary claim is barred by the Trace certificate of incorporation and the statute of limitations; the claim for violation of the Delaware General Corporation Law has been inadequately pled; and the Trustee lacks standing to assert an alter ego claim.

I. *The Legal Standard*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 4

Not Reported in F.Supp.2d, 2001 WL 243537
**(Cite as: Not Reported in F.Supp.2d)**

On a Rule 12(b)(6) motion to dismiss, the factual allegations of the complaint are presumed to be true and all factual inferences must be drawn in the plaintiff's favor and against the defendant. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ; *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir.1989) ; *Dwyer v. Regan*, 777 F.2d 825, 828-29 (2d Cir.1985).

Rule 12(b)(6) imposes a substantial burden of proof upon the moving party. A court may not dismiss a complaint unless " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." ' *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249-50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (citation omitted); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984) ; *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). FN4

> FN4. Cogan's motion to dismiss Count VI for lack of standing is brought pursuant to Rule 12(b)(1). As with a 12(b)(6) motion, in deciding such a motion all well-pleaded facts must be accepted as true and the complaint must be construed in the light most favorable to the plaintiff. *Hirsch*, 72 F.3d at 1088.

*4 "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules requires is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (quoting *Conley*, 355 U.S. at 47; *see* Fed.R.Civ.P. 8(a)(1).

*II. Notice And A Hearing Were Not Required In Order For The Trustee To Prosecute This Action*

The Directors contend that dismissal is required because the Trustee failed to provide notice of the instant lawsuit to creditors and other interested parties, pursuant to § 363 of the Bankruptcy Code, which provides in relevant part:

> The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

11 U.S.C. § 363(b)(1); *see also* 11 U.S.C. § 102(1)(A) ("[A]fter notice and a hearing ... means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances ....")

According to the Directors, the Trustee was required to comply with § 363(b)(1) because a cause of action is a form of property of the debtor's estate, and a trustee's decision to prosecute the cause of action constitutes a "use ... other than in the ordinary course of business." 11 U.S.C. § 363(b)(1).

The Trustee, for his part, points to § 323(b) of the Bankruptcy Code and Rule 6009 of the Federal Rules of Bankruptcy Procedure as support for his contention that notice and a hearing were not required in order to initiate this suit. Section 323(b) provides that "[t]he trustee in a case under this title has capacity to sue and be sued." 11 U.S.C. § 323(b). Rule 6009 provides that:

> With or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.

Fed. R. Bankr.P. 6009; *see also* 3 *Collier On Bankruptcy* ¶ 323.03, at 323-6 (Lawrence P. King ed., 15th ed. 2000) (Section 323(b) "must be read with ... Bankruptcy Rule 6009"); 15 *id.* ¶ 6009.01, at 6009-1 to 6009-2 ("Rule 6009 has a single and straightforward purpose. It permits a trustee ... to prosecute or defend any action on behalf of the estate in any tribunal without the need to obtain bankruptcy court approval. Rule 6009's authority stems from the Bankruptcy Code section 323(b), which gives the trustee the power to sue and be sued. "). FN5

> FN5. Although Rule 6009 refers to "court

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5

Not Reported in F.Supp.2d, 2001 WL 243537
(Cite as: Not Reported in F.Supp.2d)

approval," rather than to the concepts of notice and a hearing, those concepts will be discussed interchangeably here because court approval is the necessary concomitant of a notice and hearing requirement.

The case law in this area is sparse. Indeed, neither the Directors nor the Trustee have identified a case that explicitly addresses whether the § 363(b)(1) notice and hearing requirement applies to a bankruptcy trustee's commencement of litigation on behalf of the estate. The Trustee's position finds sufficient support, however, in the existing case law.

*5 Most similar to the situation here is *In re Al-Cam Dev. Corp.,* 99 B.R. 573, 578-79 (Bankr.S.D.N.Y.1989). In that case, a creditor sought to prevent the trustee from continuing an arbitration proceeding regarding a claim against the debtor, and which had commenced before the bankruptcy filing. Id. at 574. The basis for the creditor's motion was the contention that the bankruptcy court, as compared with an arbitration, was the proper forum for the dispute, rather than a lack of notice and a hearing. *See id.* at 574-75. However, those steps had not, in fact, been undertaken. *See id.* Most importantly, in denying the motion the court relied on the rule that "the trustee ... is authorized under Bankruptcy Rule 6009 'to commence and prosecute any action or proceeding in behalf of the estate before any tribunal ' without court approval." *Id.* at 578.

In addition, several decisions have recognized a bankruptcy trustee's authority to commence litigation without court approval, as set forth in Rule 6009. *See Parker v. Bain,* 68 F.3d 1131, 1136 (9th Cir.1995) (Rule 6009 "clarifies that the trustee ... has standing to, and may, litigate appropriate actions on behalf of the estate without prior approval of the bankruptcy court," although this rule "does not trump" automatic stay pursuant to § 362 of Bankruptcy Code ); *In re El San Juan Hotel Corp.,* 841 F.2d 6, 8-9 (1st Cir.1988) (stating in dicta that bankruptcy court acted without authority in reassigning trustee's power to sue on behalf of estate to someone else, given trustee's authority to sue on behalf of the estate with or without court

approval, pursuant to § 323(b) and Rule 6009 ); *In re Capgrow Leasing Assocs.,* 169 B.R. 305, 312-13 (Bankr.E.D.N.Y.1994) (Rule 6009 "plainly furnishes a trustee with the discretion to decide *whether* to litigate actions as it sets forth, and to do so with or without court approval," though § 362 automatic stay provision "properly leaves with the bankruptcy judge the discretion and authority to decide *when* to let such action go forward") (emphasis in original). FN6

> FN6. The Directors maintain that the fact that courts have held that a Trustee is bound by the automatic stay provision, which has its own notice and hearing requirement, *see* 11 U.S.C. § 362 , means that § 323(b) applies. However, the Directors' motion is addressed to *whether* the Trustee may bring the instant suit without court approval. Thus, this contention obviates the distinction between a rule governing when suit may be brought and a rule governing whether it may be brought. *See In re Capgrow Leasing,* 169 B.R. at 312-13.

Furthermore, § 323 of the Bankruptcy Code and Rule 6009 are derived from former Bankruptcy Rule 610, which was itself adopted to eliminate the previously-existing requirement of the Bankruptcy Act of 1898 that a trustee obtain court approval in order to prosecute or defend an action in which the estate has an interest. *In re Capgrow Leasing,* 169 B.R. at 312; 3 *Collier On Bankruptcy* ¶ 323.LH[2][a], at 323-12.1 (Lawrence P. King ed., 15th ed.2000); 10 *id.* ¶ 6009.RH, at 6009-8. This legislative history, together with the repeal of the Bankruptcy Act of 1898, is inconsistent with the proposition that in order to commence a lawsuit on behalf of a bankruptcy estate the trustee must first obtain court approval, after notice and a hearing pursuant to § 363(b)(1).

The Directors insist, however, that the Trustee's commencement of this suit constitutes a use of an estate asset "other than in the ordinary course of business," and therefore that notice and hearing requirement must apply. 11 U.S.C. § 353(b)(1).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 6

Not Reported in F.Supp.2d, 2001 WL 243537
(Cite as: Not Reported in F.Supp.2d)

*6 A cause of action is a form of property of a bankruptcy estate, *see United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 9, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) ; *In re Betty Owens Schs., Inc.,* No. 96 Civ. 3576, 1997 WL 188127, at *2 (S.D.N.Y. Apr.17, 1997) , and at least one court has characterized the pursuit of an estate's cause of action by a trustee as "use" of that asset within the meaning of § 363. *See In re Olympia Holding Corp.,* 188 B.R. 287, 295 (M.D.Fl.1994) ("It is ... without question that the trustee is able to 'use' those assets by pursuing the causes of action in court as section 363(1) would protect."), *aff'd on other grounds,* 68 F.3d 1304 (11th Cir.1995). FN7

> FN7. *In re Olympia Holding* did not touch on whether such use is "outside of the ordinary course of business." *See* 188 B.R. at 295. Indeed, in referring to the trustee's " use" of an estate asset through the commencement of litigation, the court cited § 323 and Rule 6009, which provisions, as just discussed, speak of the trustee's authority to commence litigation with or without court approval. *See id.*

The Trustee has not directly addressed the contention that his pursuit of the instant litigation is a "use" of an estate asset under § 323. Assuming that it· is, however, whether or not such use is outside the course of ordinary business within the meaning of that provision is another question. The authorities relied upon by the Directors fail to demonstrate that commencement of the instant lawsuit is such a use and indeed, are not on point. *See In re Lavigne,* 114 F.3d 379, 384-85 (2d Cir.1997) (discussing two tests of whether a transaction is "ordinary," and concluding that debtor's cancellation of liability policy was not); *In re Kashani,* 190 B.R. 875, 885-85 (9th Cir.1995) (" Section 323 ... indicates the proper party to sue for purposes of standing" but does not contravene general rule that court approval required for trustee to be sued, absent limited exception under 28 U.S.C. § 959(a) ); *In re DeLorean Motor Co.,* 991 F.2d 1236, 1241 (6th Cir.1993) (same). FN8

> FN8. The Directors also contend that § 323 and Rule 6009 do no more than confer standing on the Trustee to bring suit-or to be the object of suit. Therefore, they maintain, § 323 does not obviate any otherwise applicable requirement for court approval. However, the language of Rule 6009 and *Collier On Bankruptcy,* a leading academic authority, supports a contrary view. On the one hand, *Collier* explains that, while § 323(b) provides that the trustee has the capacity to be sued, generally suit may not be maintained against trustee without leave of the bankruptcy court. 3 *Collier On Bankruptcy* ¶ 323.03[3], at 323-9 (Lawrence P. King ed., 15th ed.2000). On the other hand, this same authority explains that Rule 6009 , the "explanatory rule" for § 323(b) , *id.* ¶ 323.LH[2][a], at 323-12.1, "permits a trustee ... to prosecute or defend any action on behalf of the estate in any tribunal without the need to obtain bankruptcy court approval"), 15 *id.* ¶ 6009.01, at 6009-1 to 6009-2. To the extent there is some tension between these views, it may be explainable in part by the language of Rule 6009, which is phrased in terms of the trustee's authority to choose to bring suit-or to defend one-rather than others' rights to sue the trustee. Fed. R. Bankr.R. 6009.

In sum, the case law as well as the text and legislative history of § 323 and Rule 6009 lead to the conclusion that the § 363(b) notice and hearing requirement does not bar the instant suit. There are two theories upon which this conclusion could be based: one, that the Trustee's pursuit of this litigation is an ordinary use of estate property; two, that the § 363 provisions governing the use of estate property are inapposite, and the relevant provisions are § 323 and Rule 6009 only. The former theory is the one adopted herein.

The Directors also assert that the fact that the Trustee is incurring attorney's fees and disbursements in connection with this litigation renders it a transaction outside the ordinary course

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 7

Not Reported in F.Supp.2d, 2001 WL 243537
(Cite as: Not Reported in F.Supp.2d)

of business. However, the authority to retain and pay counsel is inherent in the authority to pursue litigation. Moreover, no fees or disbursements are paid by a trustee without a prior order of the court that allows and awards fees in an amount determined by the court to be reasonable, *see* 11 U.S.C. § 503(b), and after filing of a fee application, notice to all interested parties, and a hearing, *see* 11 U.S.C. §§ 330 , 331 ; Fed. R. Bankr.P.2002(a)(6) , 2016(a). Thus, the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure provide adequate safeguards against the unreasonable use of estate property in connection with litigation by the Trustee.

*7 Finally, the Directors aver that the Trustee's prosecution of this action is a "use" outside the ordinary course of business of Trace's officers and directors liability insurance policies (the "D & O Policies"). The D & O Policies purportedly provide coverage to reimburse the defendants' defense costs and to satisfy any judgment the Trustee may seek to obtain in this action. Through this lawsuit, the Directors maintain, the Trustee is forcing this estate asset to be depleted because he is causing each of the Defendants to incur defense costs which, when reimbursement is provided under the D & O Policies, will reduce the amounts available thereunder.

The Trustee concedes that the D & O Policies are property of the bankruptcy estate. *See, e.g., In re Minoco Group of Companies, Ltd.,* 799 F.2d 517, 519 (9th Cir.1986) (D & O policy is property of bankruptcy estate because it increases value of estate); *see also MacArthur Co. v. Johns-Manville Corp.,* 837 F.2d 89, 92 (2d Cir.1988) (debtor's insurance policies are property of bankruptcy estate). However, the Trustee avers that, because the proceeds will not be available to pay creditors' claims except to the extent that there is a recovery from the Defendants, he is engaging in an ordinary " use" of these policies by seeking such recovery through this action. Thus, the § 363(b) notice and hearing requirement does not apply. *See* 11 U.S.C. § 363(b) (non-ordinary use) and (c) (ordinary use).

The Trustee's pursuit of this litigation satisfies the standard for an ordinary use of an estate asset

vis-a-vis the D & O Policies. The touchstone of this standard is "the interested parties' reasonable expectations of what transactions the debtor in possession is likely to enter in the course of its business." *In re Lavigne,* 114 F.3d at 384-85 (describing two-part analysis, involving "creditor's expectation test" and "industry-wide test," of ordinariness) (citation omitted). Seeking recovery for the estate through these policies comports with the reasonable expectations of a hypothetical creditor, because it does not "subject[ ][him] to economic risks of a nature different from those he accepted when he decided to enter into a contract with the debtor," *id.* at 385 (describing "creditor's expectation test") (internal quotation marks and citation omitted), but, indeed, accrues to his benefit, *see Federal Ins. Co. v. Sheldon,* 167 B.R. 15, 19 (Bankr.S.D.N.Y.1994) (where trustee had obtained judgment against officers and directors, if determination made that D & O policy covered that liability then proceeds would pay portion of their liability to bankruptcy estate, which would otherwise be unsatisfied); *cf. In re Weisse Eyecare,* 245 B.R. 844, 849-50 (Bankr.N.D.Ill.2000) (agreement between trustee and debtor's former officer/shareholder to litigate jointly debtor's liability causes of action and share litigation proceeds equally was not ordinary use of estate asset but rather was "extraordinary transaction[ ] which might harm the positions of unsecured creditors" requiring notice and hearing). FN9 Similarly, this effort is of a type of transaction that similar businesses could be expected to engage in. *See In re Lavigne,* 114 F.3d at 385 (describing " industry-wide test"). Therefore, notice and a hearing pursuant to § 363(b) were not required based on the Trustee's "use" of the D & O Policies.

> FN9. The Directors do not concede that Trace's estate has an interest in the proceeds of the D & O Policies. No conclusion is reached regarding that issue here.

III. *The Complaint Satisfies Rule 12(b)(6) and Rule 12(b)(1)*

A. *Trace's Insolvency Since 1995 Has Been*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Page 8

Not Reported in F.Supp.2d, 2001 WL 243537
(Cite as: Not Reported in F.Supp.2d)

### *Adequately Pleaded*

**\*8** The Directors contend that the Trustee has failed to adequately plead Trace's insolvency, an essential fact underlying both Count IV, the breach of fiduciary duty claim, and Count V, the Delaware General Corporation Law claim, and therefore that these counts must be dismissed. Although the Directors' argument is less than entirely clear, they appear to raise two objections: first, that the Trustee was obligated to, and has not, alleged insolvency with sufficient particularity, and second, that the Trustee has not adequately alleged that Trace was insolvent at the time of the Directors' alleged misdeeds.

With respect to the first objection, the Directors contend that the Trustee has only conclusorily alleged that Trace was insolvent, while instead he is required to allege that Trace was insolvent within the meaning of § 101(32) of the Bankruptcy Code, i.e., that its liabilities exceeded its assets, *see* 11 U.S.C. § 101(32), or that Trace was unable to pay its debts as they matured, and to set forth specific facts supporting such allegations.

This argument overlooks the basic tenet that a complaint must be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. The Trustee's allegations regarding insolvency meet this standard. *See Thomson Kernaghan & Co. v. Global Intelicom, Inc.,* 99 Civ. 3005, 99 Civ. 3015, 2000 WL 640653, at \*13 (S.D.N.Y. May 17, 2000) (accepting plaintiff's explicit allegations concerning insolvency even though "allegations which would support the argument that [the defendant] was insolvent at the time ... are implicit at best" because the court must " take [ ] the allegations in the light most favorable to the plaintiff"); *Contempri Homes, Inc. v. Amertik Real Estate & Dev. Corp.,* 88 Civ. 8408, 1989 WL 153030, at \*1–\*2 (S.D.N.Y. Dec.5, 1989) (accepting allegation of fraudulent asset transfers as satisfying requirement to plead insolvency although plaintiff did not explicitly allege insolvency and no other facts relating to allegation set forth). Moreover, Counts IV and V do not assert a cause of

action which is required to be pled with particularity. *See* Fed.R.Civ.P. 9 (setting forth particularity requirement for *inter alia* fraud claims).

Moreover, there is no requirement that the Trustee plead insolvency within the meaning of the Bankruptcy Code. The Trustee maintains, and the Directors do not dispute, that Count IV is governed by Delaware law because Trace is a Delaware corporation. *See Walton v. Morgan Stanley & co.,* 623 F.2d 796, 798 n. 3 (2d Cir.1980) ("New York law dictates that the law of the state of incorporation governs an allegation of breach of fiduciary duty owed to a corporation"). Under Delaware law, the fiduciary duty owed to creditors arises at a point short of actual insolvency, that is, when the corporation is "in the vicinity of insolvency." *See Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.,* Civ. A. No. 12150, 1991 WL 277613, at \*34 (Del.Ch. Dec.30, 1991); *see also Weaver v. Kellogg,* 216 B.R. 563, 583–84 (Bankr.S.D.Tex.1997) (under Delaware law fiduciary duty of corporate insiders to corporation's creditors may arise even where corporation not insolvent but is at the time of wrongful transactions in the vicinity of insolvency) (*citing Credit Lyonnaise,* 1991 WL 277613). Delaware law does not define insolvency in this context as "insolvency due to a statutory filing," such as a bankruptcy proceeding. *Geyer v. Ingersoll Publ'ns Co.,* 621 A.2d 784, 787 (Del.Ch.1992). FN10

> FN10. In their reply brief, the Directors change their argument, asserting that their position is not that the Trustee has failed to meet a requirement to plead insolvency within the meaning of the Bankruptcy Code but, rather, that he has failed to plead insolvency under any definition. In any event, as explained here, the insolvency allegations are sufficient under the relevant definition.

**\*9** In addition, the Second Amended Complaint sets forth specific facts relating to the allegation of insolvency, including *inter alia* that Trace's 1995 audited financial statements showed a negative stockholder's equity of approximately $29.6 million

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 9

Not Reported in F.Supp.2d, 2001 WL 243537
(Cite as: Not Reported in F.Supp.2d)

and that by the next year the negative equity increased to $72 million. These factual allegations are sufficient to show that Trace was in the vicinity of insolvency. FN11

> FN11. In their reply brief the Directors raise the argument that the Trustee's allegations are insufficient because they are based on consolidated financial statements for Trace and its many subsidiaries, and cite authorities for the proposition that consolidated financial statements are not sufficient to prove the insolvency, for purposes of bankruptcy proceedings, of any one entity included in such a statement. *See In re Goodman Indus. Inc.,* 21 B.R. 512, 520-21 (Bankr.D.Mass.1982) ; *In re Total Technical Servs.,* 150 B.R. 893, 899-900 (Bankr.D.Del.1993); *see also Askanase v. Fatjo,* 130 F.3d 657, 670 (5th Cir.1997). None of these authorities concern insolvency as it is defined under Delaware law, and none of them involve the generous standard applicable on a 12(b)(6) motion to dismiss. Thus, this argument is unavailing.

Finally, with respect to the issue of whether Trace was insolvent at the time of the Directors' alleged wrongdoing, the Second Amended Complaint alleges not only that Trace was insolvent since at least 1995 but also, more specifically, that Trace was insolvent at various points at which the Defendants' alleged misdeeds occurred. Moreover, the Trustee is entitled to the favorable inferences that Trace's unhealthy financial condition continued until it went into bankruptcy. *See Weaver, Dunbar v. Commissioner of Internal Revenue,* 119 F.2d 367, 370 (7th Cir.1941) ("[A] condition of insolvency shown to exist at a particular time will be presumed to continue in the absence of a showing to the contrary."). Therefore, Counts IV and V will not be dismissed for failure to adequately plead insolvency.

### B. *Count IV Is Adequately Pleaded*

### 1. *The Claim For Breach Of Fiduciary Duty Is Not Barred By The Exculpatory Clause In Trace's Articles of Incorporation*

The Defendants contend that insofar as Count IV asserts a claim for breach of the fiduciary duty of care it is barred by an exculpatory provision (the " Exculpatory Clause") contained in Trace's Restated Certificate of Incorporation (the "Certificate of Incorporation"): FN12

> FN12. Cogan, though not the Directors, distinguishes between that aspect of the claim which is based on breach of the duty of care and that aspect which is based breach of the duty of loyalty, as appropriate under the Exculpatory Clause.

To the fullest extent permitted by the General Corporation Law, as the same presently exists or may hereafter be amended, *a director of the Corporation shall not be liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty* as a director except for liability (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of the law; (iii) under Section 174 of the General corporation Law, or (iv) for any transaction from which the director derived an improper benefit. Any repeal or modification of this Article IX shall not adversely affect any right or protection of a director of the corporation with respect to any act or omission occurring prior to such repeal or modification.

Certificate of Incorporation, Art. IX (emphasis added). FN13

> FN13. This language tracks Del.Code Ann. tit. 8, § 102(b)(7).

According to the Defendants, the Second Amended Complaint does not allege facts from which any of the four exceptions to the shield from liability could be inferred. The Trustee points out, however, that

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 10

Not Reported in F.Supp.2d, 2001 WL 243537
(Cite as: Not Reported in F.Supp.2d)

the Exculpatory Clause only shields the Defendants from liability to the corporation or its stockholders, and contends that the clause is inapplicable by its own terms because he has brought this action for the benefit of Trace's creditors.

*10 *Steinberg v. Kendig (In re Ben Franklin Retail Stores, Inc.),* No. 97 C. 7934, 97 C. 6043, 2000 WL 28266 (N.D.Ill. Jan.11, 2000), is directly on point. In that case, the court, applying Delaware law, held that an exculpatory provision identical in relevant part to the Trace Exculpatory Clause did not preclude a Chapter 7 trustee from bringing breach of fiduciary duty claims against the directors of the corporate debtor. *Id.* at *7-*8 (analyzing articles of incorporation provision that "[a] director of the Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages"). The court reasoned that the trustee was bringing these claims for the benefit of the creditors, and the "creditors should not be bound by the exculpatory provision because they were not parties to the contract," i.e., the articles of incorporation. *Id.* at *8. The court also noted that the exculpatory provision was addressed only to claims brought by the corporation or its stockholders, that "[n]o mention [was] made of the potential liability to creditors that directors may incur, and that "[n]othing in the exculpatory provision prevents suits brought by the creditors or those acting on their behalf." *Id.* Under the reasoning of *In re Ben Franklin,* 2000 WL 28266, the claim against the Defendants for breach of the duty of care, brought for the benefit of Trace's creditors, is not barred by the Exculpatory Clause.

This conclusion finds further support in Section 102(b)(7) of the Delaware General Corporation Law, which is the statutory basis for the Exculpatory Clause, and is itself based on Section 2.02(b)(4) of the Model Business Corporation Act. *See* Del.Code Ann. tit. 8, § 102(b)(7); *Model Business Corporation Act Annotated* § 2.02 at 2-16, official comment i (3d ed.1997); *see generally* R. Franklin Balotti and Jesse A. Finkelstein, *The Delaware Law of Corporations and Business Organizations* § 4.19 (discussing enactment of and purposes behind section 102(b)(7) (1988). Section 2.02 of the Model Business Corporation Act was

developed in response to *Smith v. Van Gorkom,* 488 A.2d 858 (Del.1985), in which the directors of a corporation were held personally liable to shareholders for a breach of the fiduciary duty of due care. *See Smith,* 488 A.2d at 864; *Model Business Corporation Act Annotated* § 2.02 at 2-16, official comment i (3d ed.1997). This decision was viewed as creating reluctance on the part of qualified individuals to serve as corporate directors, and the solution developed was to allow corporations to shield directors from such suits by including liability limitation or exculpatory provisions in their articles of incorporation. *See Model Business Corporation Act Annotated* § 2.02 at 2-16, official comment i (3d ed.1997). Inclusion of these clauses was justified on the ground that:

> So long as any such liability-limitation provision does not extend to liability to third parties, shareholders should be permitted-except when important societal values are ·at stake-to decide how to allocate the economic risk of the directors' conduct between the corporation and the directors.

*11 *Id.* Thus, the development of such clauses was premised on the rationale that shareholders should have the ability to contract with the corporation and its directors, via the articles of incorporation, regarding the directors' liability to the corporation or the shareholders. *See id.; see also Morris v. American Pub. Utils. Co.,* 122 A. 696, 700 (Del.Ch.1923) ("[A] corporate charter is a contract .. . [is] a dual contract-one between the state and the corporation and its stockholders, the other between the corporation and its stockholders.") (internal citation and quotation marks omitted).

Thus, the Exculpatory Clause, both by its terms and in accordance with the underlying policy rationale, allocates the risk of loss between the parties to the articles of incorporation, i.e., the shareholders and directors. The clause does not allocate this risk with respect to third parties, such as the creditors for whose benefit the Trustee has brought the instant suit.

The Defendants insist that the ·Trustee cannot escape the Exculpatory Provision because he stands in the shoes of the corporation, Trace, and lacks standing to bring suit on behalf of the third-party creditors. However, the case law relied upon by the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 11

Not Reported in F.Supp.2d, 2001 WL 243537
(Cite as: Not Reported in F.Supp.2d)

Defendants is inapposite.

A bankruptcy trustee lacks standing to bring an action on behalf of an individual creditor with a particularized injury. *See, e.g., Steinberg v. Buczynski,* 40 F.3d 890 (7th Cir.1994) (trustee lacked standing to bring claim where only injured party was specific creditor, not corporation and, in that sense, creditors as class); *Shearson Lehman Hutton, Inc. v. Wagoner,* 944 F.2d 114, 118 (2d Cir.1991) (claim against third party, a brokerage house, for defrauding corporation with cooperation of corporate management, accrued only to creditors and trustee lacked standing). However, where the injury is to all creditors as a class, it is the creditors who lack standing and the Trustee who may bring a claim based on that generalized injury. *See Kalb, Voorhis & Co. v. American Fin. Corp.,* 8 F.3d 130, 132-33 (2d Cir.1993) (applying Texas law and holding, in context of alter ego claim, that bankruptcy trustee has exclusive standing because acts alleged "harmed all creditors equally, [and] such claims are property of the bankruptcy estate and are not assertable by individual creditors"); *St. Paul Fire and Marine Ins. Co. v. Pepsico, Inc.,* 884 F.2d 688, 696-99 (2d Cir.1989) (analyzing various circuit court decisions regarding standing of bankruptcy trustee to bring alter ego claims, and holding that such claim could be asserted exclusively by trustee under Ohio law because of generalized nature of injury). Indeed, *In re Ben Franklin* relied on this doctrine, observing that " [t]he Trustee is vested with the power to bring suit which represents the interests of the creditors as a class," though not "the personal claims, those claims that allege the creditor has suffered a unique harm," and that the trustee therefore had standing because the breach of fiduciary claim was general rather than personal. *See* 2000 WL 28266, at *7-*8. FN14

FN14. The Defendants point out that the bankruptcy court's decision reveals that the creditors had specifically assigned their claims to the trustee, *see In re Ben Franklin Retail Stores, Inc.,* 225 B.R. 646, 649 n. 3 (Bankr.N.D.Ill.1998), *aff'd in part and rev'd in part, In re Ben Franklin,* 2000

WL 28266, and maintain that this was the reason the trustee had standing. However, the district court's holding did not rely on this peculiarity. *See In re Ben Franklin,* 2000 WL 28266, at *7-*8.

*12 Finally, although *Kalb* and *St. Paul* both pertain to alter ego claims, their reasoning is not limited to such claims. *See Kalb,* 8 F.3d at 132-33; *St. Paul,* 884 F.2d at 696-701. As the Second Circuit observed in *St. Paul:*

   [t]his reasoning extends to common claims against the debtor's alter ego or others who have misused the debtor's property in some fashion. If a claim is a general one ... and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim.

884 F.2d at 701.

This doctrine is grounded in the underlying policy goals of the bankruptcy law, which is to protect the estate property from being distributed to creditors on a first-come, first-serve basis, i.e., based simply on the fact that certain creditors may act before others to obtain payment of their claims, even where the claim is common to all creditors. *See St. Paul,* 884 F.2d at 700-01; *see also Steinberg,* 40 F.2d at 892-94 (though trustee "has no right to enforce entitlements of a creditor [,][h]e represents the unsecured creditors of the corporation; and in that sense when he is suing on behalf of the corporation he is really suing on behalf of the creditors of the corporation").

Therefore, Count IV is not barred by the Exculpatory Clause.

*(2) Breach Of Fiduciary Duty Has Been Adequately Pleaded As To The Directors*

Under Delaware law, in order to bring a claim for breach of fiduciary duty, a plaintiff must allege (1) the existence of a fiduciary duty and (2) a breach by the fiduciary of that duty. *York Linings v. Roach,* No. 16622-NC, 1999 WL 608850, at *2 (Del.Ch. July 28, 1999). FN15 A breach may consist of a failure to comply with the fiduciary's obligations to exercise reasonable supervision and control over a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 12

Not Reported in F.Supp.2d, 2001 WL 243537
(Cite as: Not Reported in F.Supp.2d)

corporation. *See Lutz v. Boas,* 171 A.2d 381, 395-96 (Del.Ch.1961) (outside directors liable for breach of fiduciary duty where misdeeds committed by president of corporation and outside directors " gave scant attention to the [company's] management, " thereby "fail[ing] to discharge their duties and responsibilities as directors").

FN15. The Directors, citing *Rabkin v. Phillip A. Hung Chem. Corp.,* 547 A.2d 963 (Del.Ch.1986) contend that the elements of a breach of fiduciary claim under Delaware law are (1) existence of the duty, (2) breach of the duty, and (3) knowing participation in the breach. *Id.* at 967. However, this formulation pertains to the elements of a claim for aiding and abetting a breach of fiduciary duty, or otherwise facilitating and participating in the breach of a fiduciary duty owed by someone else. *See, e.g., Nash v. Schock,* No. 15721-NC, 1998 WL 474161, at *2 (Del.Ch. July 23, 1998) (elements of claim for aiding and abetting breach of fiduciary duty are (1) existence of fiduciary relationship, (2) breach by fiduciary, (3) knowing participation by non-fiduciary defendant in the breach); *Gilbert v. The El Paso Co.,* 490 A.2d 1050, 1057 (Del.Ch.1984) (stating same elements in relation to claim against non-fiduciary for civil conspiracy to participate in breach of fiduciary duty). *Rabkin*'s formulation is not crystal clear on this point, but the case itself is consistent with the distinction just made, as it involved a claim that an acquiring corporation was "secondarily liable" for a breach of fiduciary duty by a majority stockholder. *See* 547 A.2d at 967. Moreover, the authority relied upon by *Rabkin* concerned a claim, not against the holder of the fiduciary duty, but rather against other parties for allegedly joined with the fiduciary in committing the breach. *See id.* at 968 (*citing Penn Mart Realty Co. v. Becker,* 298 A.2d 349, 351 (1972)).

The Directors contend that the breach of fiduciary duty claim has been inadequately pleaded as to them because the alleged misdeeds were actually committed by Cogan, and it is not alleged that the Directors knew of and approved those acts, i.e., that they knowingly participated. They further contend that, even if they had actually approved any of the alleged transactions, liability would be barred because the allegations in the Second Amended Complaint fail to give rise to an inference of bad faith or other basis for overcoming the business judgment rule. *See Brehm,* 746 A.2d at 244 (under business judgment rule, corporate directors entitled to the presumption of proper business judgment).

As just stated, the contention that the Directors must have knowingly participated in Cogan's alleged breach misapprehends the elements required to prove the claim. Indeed, the Delaware General Corporation Law commands that "[t]he business and affairs of every corporation ... shall be managed by or under the direction of a board of directors." Del.Code Ann. tit. 8, § 141(a). It has been noted with respect to the management obligations of corporate directors under various state corporation codes, such as the one at issue here, that:

*13 [A]n important theme in recent cases has been the need for directors "to exercise reasonable supervision and control over the policies and practices of a corporation. The institutional integrity of a corporation depends on the proper discharge by directors of those duties." These cases make clear that sustained patterns of inattention to obligations by directors or officers or unreasonable blindness to problems that later cause substantial harm will create exposure to liability.

American Law Institute, *Principles of Corporate Governance: Analysis and Recommendations* § 401 at 155 (1994) (citations omitted); *see also Hanson Trust PLC v. ML SCM Acquisition, Inc.,* 781 F.2d 264, 274 (2d Cir.1986) (applying New York law and stating, "the duty of due care requires that a director's decision be made on the basis "of ' reasonable diligence' in gathering and considering material information. In short, a director's decision must be an informed one.").

It is "[a] fundamental precept of Delaware

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 13

Not Reported in F.Supp.2d, 2001 WL 243537
(Cite as: Not Reported in F.Supp.2d)

corporation law ... that it is the board of directors ... that has ultimate responsibility for management of the enterprise." *Grimes v. Donald*, No. Civ. A. 13358, 1995 WL 54441, at *8 (Del.Ch. Jan.11, 1995). One of the prime responsibilities of directors is to supervise and evaluate the CEO. *See Abercrombie v. Davies*, 35 Del.Ch. 599, 611, 123 A.2d 893, 899-900 (Del.Ch.1956). While powers may be delegated to a CEO or other officers of the company, "[t]he board may not either formally or effectively abdicate its statutory power and fiduciary duty to manage and direct the management of the business and affairs of the corporation." *Grimes*, 1995 WL 54441, at *9.

Thus, the fact that it is Cogan who is alleged to have committed the improper acts does not warrant dismissal of Count IV as to the Directors. Just as Cogan had a duty not to engage in self-dealing, so the Directors had a duty to exercise due care to prevent self-dealing from happening. Dismissal is not warranted on the ground that the Second Amended Complaint fails to allege that the Directors knew about Cogan's improper acts and affirmatively approved them.

Nor is it required that the Directors be alleged to have acted in bad faith. The Directors rely for this proposition on *Lippe v. Bairnco Corp.*, 230 B.R. 906 (S.D.N.Y.1999), which held under the New York version of the business judgment rule that the business judgment rule protects corporate directors from liability absent fraud or bad faith. *Id.* at 916-17. FN16 As *Lippe* itself notes, the business judgment rule applies to "actions of corporate directors" or "business decisions" that they make. *Id.* at 916. Here, however, the claim is not that the Directors made bad decisions but, rather, that they neglected to carry out, or abdicated, their responsibility to make management decisions in the first place. Under Delaware law, the business judgment rule does not apply in such a situation:

> FN16. Although the Directors rely on New York, rather than Delaware, law, a bad faith standard has also been articulated in this context by the Delaware supreme court. *See Brehm*, 746 A.2d at 264 and n.

66 ("[G]ood faith ... is a key ingredient of the business judgment rule.").

*14 [I]t should be noted that the business judgment rule operates only in the context of director action. Technically speaking, it has no role where directors have either abdicated their functions, or absent a conscious decision, failed to act.*Rabkin v. Philip A. Hunt Chem. Corp.*, Civ. A. No. 7547, 1987 WL 28436, at *1 (Del.Ch. Dec.17, 1987) (*quoting Aronson v. Lewis*, 473 A.2d 805, 813 (Del.1984) (*overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 253 (Del.2000))). Thus, the Directors may not seek the protection of the business judgment rule on the ground that they made no decisions and took no actions, rendering the "bad faith" standard they invoke inapposite. FN17

> FN17. In their reply brief the Directors raise the argument that, where the theory for a breach of fiduciary duty claim is abdication of management responsibilities, there must be allegations of "gross negligence." The fact that this argument is raised for the first time in a reply brief is alone grounds for disregarding it. Moreover, the Directors misstate the law. Although some commentators have observed that "[g]ross negligence is *probably* the law of Delaware" in this context, R. Franklin Balotti and Jesse A. Finkelstein, *The Delaware Law of Corporations and Business Organizations* § 4.8 (1988) (emphasis added), the Court of Chancery, after analyzing the Delaware case law in depth, has applied an ordinary negligence standard to a claim alleging director abdication or neglect of managerial duties, *see Rabkin*, 1987 WL 28436, at *2-*3. The issue of the proper negligence standard not having been fully briefed, the better course is not to resolve it if possible. Resolution is not required because the allegations in the Second Amended Complaint satisfy either negligence standard under the liberal reading required by Rule 12(b)(6).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 14

Not Reported in F.Supp.2d, 2001 WL 243537
(Cite as: Not Reported in F.Supp.2d)

An examination of the specific allegations further exposes the shortcomings of the Directors' position.

#### (a) *Imprudent Loans And Gifts To Insiders*

The Second Amended Complaint alleges that the Defendants allowed Trace to make imprudent loans and/or gifts to corporate insiders, Cogan family members and Cogan's cook, without a proper business purpose, including a $14 million loan to Cogan himself. The Directors' response is that they cannot be held liable because they played no part in considering or determining to make these loans.

Delaware law provides that a loan or other assistance may be provided by a corporation to an officer or employee when "in the judgment of the directors, such loan, guaranty or assistance may reasonably be expected to benefit the corporation." Del.Code Ann. tit. 8, § 143. As explained above, the Directors are not protected from liability for failing to exercise their duties as directors by admitting that they did not do so.

#### (b) *The Dow Preferred Stock Redemption*

The Second Amended Complaint alleges a sham transaction between Trace and Cogan to evade the statutory requirement that "no corporation shall ... [p]urchase or redeem its own shares of capital stock ... when the capital of the corporation is impaired." Del.Code Ann. tit. 8, § 160(a)(1). Specifically, it is alleged that in 1998, at a time when Trace's capital was already impaired, Trace made a $3 million non-recourse loan to Cogan, FN18 and that he used this $3 million to satisfy a redemption obligation that Trace had to Dow concerning the Trace preferred shares held by Dow. It is further alleged that, after Cogan obtained the shares with Trace's funds, he gave the shares in pledge to Trace, which thus had not only possession of the shares but also the right to any dividends.

FN18. A non-recourse loan is a loan that allows the lender to attach only the collateral, and not the borrower's personal

assets, if the loan is not repaid. *Black's Law Dictionary* 947 (7th ed.1999).

Section 174 of the Delaware General Corporation Code renders directors "jointly and severally liable" to creditors, among others for "wilful or negligent" violations of Section 160. Del.Code Ann. tit. 8, § 174. The purpose of this provision is to protect creditors against corporate expenditures that impair the integrity of the corporation's capital because capital constitutes a fund for the payment of indebtedness. *See Johnston v. Wolf*, 487 A.2d 1132, 1134-35 (Del.1985) (construing Section 174).

*15 The Directors contend that they cannot be held liable because it was Cogan, and not Trace, that redeemed the shares. However, they have cited no authority for the proposition that the Delaware Court of Chancery, a court of equity, would permit the statute to be evaded by the subterfuge of the nominal purchase by Cogan, using funds provided by Trace. The Directors further contend that they cannot be held liable absent an allegation that they knew of the Dow transaction. However, the claim may be sustained at this pleading stage on the theory that they knew or should have known of this alleged illegal redemption transaction, and either participated in or failed in their duty to prevent it. FN19

FN19. The Directors also maintain, based on an unsworn affirmation of counsel, that Farace was not a Board member when the Dow shares redemption took place. Such material is not competent in the context of a 12(b)(6) motion, and to the extent there is a dispute regarding this or similar issues it is a matter for a motion under Rule 56. The same is true for the Directors' contention that Sherman and Marcus were not directors during the second half of 1999 and therefore cannot be held liable for events occurring during that period.

Finally, this transaction also involves an allegation that the Directors failed to satisfy their responsibility to evaluate the propriety of a sizable, non-recourse loan to Cogan, which is itself a basis

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 243537
(Cite as: Not Reported in F.Supp.2d)

for liability. *See* Del.Code Ann. tit. 8, § 143.

### (c) The Renewal of Cogan's Employment Contract

The Second Amended Complaint alleges that the Directors abdicated their responsibilities by allowing the ten-year renewal, in August 1997, of Cogan's employment contract. The Directors respond that there was no practical means for them to prevent the renewal because it was "automatic" and because of the severe financial penalties for Trace that would have resulted. The Directors also maintain that, even accepting the Trustee's allegations, there was no reasonable basis prior to August 1997 for terminating the agreement.

The Directors' first argument is misplaced because, while the initial 1987-97 term may have already been established, any subsequent "Renewal Term" was subject to veto by the Board. Moreover, the financial penalties to which the Directors allude were associated, not with a failure to renew, but, rather, with termination of the agreement after its renewal. Thus, according to the allegations in the Second Amended Complaint, there was in fact a means available to the Directors to prevent the renewal.

The Directors' second argument also fails. Self-dealing contracts, such as the one alleged here, are not strictly prohibited by Delaware law. However, where such a contract is involved the proponents of that contract have the burden of demonstrating the "entire fairness" of the transaction to an independent body, whether it be a court, disinterested directors, or disinterested ratifying shareholders. *Merritt v. Colonial Foods, Inc.,* 505 A.2d 757, 763-65 (Del.Ch.1986) (*citing* Del.Code. Ann. tit. 8, § 144); *see Delta Star, Inc. v. Patton,* 76 F.Supp.2d 617, 632-34 (W.D.Pa.1999) (Delaware law requires "complete fairness" of self-dealing contract) (*citing Merritt,* 505 A.2d at 764).

The Second Amended Complaint alleges *inter alia* that the agreement perpetuated Cogan in office for an inordinate period of time without regard to performance, and in spite of Trace's financial

troubles under his leadership, afforded Cogan an extremely high salary, imposed severe financial penalties upon Trace for termination of Cogan, deprived the Board of its customary discretion regarding a CEO, and imposed overly burdensome processes for blocking automatic renewal. These allegations are strikingly similar to the facts of *Delta Star,* in which a CEO was held liable for breach of fiduciary duty where he unilaterally determined his own salary increases and bonuses, and caused the adoption of generous retirement benefit plans, but failed to demonstrate the complete fairness of these self-dealing transactions. 76 F.Supp.2d at 632-33. Thus, the allegations are sufficient to support the inference that the "entire fairness" test cannot be met and, therefore, that dismissal is not warranted.

### (d) Other Improper Uses Of Trace Funds

**\*16** The Second Amended Complaint also alleges other improper uses of Trace funds, including to pay extravagant salaries and bonuses, and to make gifts, to Cogan and his family members, cook, and secretary. The Directors object that they were not involved in these transactions. It is their very lack of supervisory involvement, however, which provides the basis for the breach of fiduciary claim, and which precludes dismissal.

### (3) Breach Of Fiduciary Duty Has Been Adequately Pleaded As To Cogan

Counts II and IV assert breach of fiduciary duty claims against Cogan based on numerous acts of alleged self-dealing. Cogan contends, first, that the complaint reveals that these transactions were approved by a majority of disinterested board members, and second, that the business judgment rule therefore applies and bars the claims. *See Healthco Int'l, Inc. v. Hicks, Muse & Co., Inc.,* 208 B.R. 288, 302 (Bankr.D.Mass.1997) (under Delaware law, director's self-interested transaction " is not protected by the business judgment rule ... absent approval of the transaction by a majority of disinterested directors"); *Nixon v. Blackwell,* 626 A.2d 1366, 1375-76 (Del.1993) (entire fairness test,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 16

Not Reported in F.Supp.2d, 2001 WL 243537
(Cite as: Not Reported in F.Supp.2d)

rather than business judgment rule, applies to self-dealing transactions).

With respect to the issue of board approval, the Second Amended Complaint alleges that the Directors uncritically supported Cogan with respect to the decisions challenged, and utterly failed to exercise reasonable supervision and control. It is also alleged, variously, that there was "no indication" of Board approval, or "no Board approval," of Cogan's self-dealing transactions.

The allegation that the Directors uncritically supported Cogan is not tantamount to an allegation that a majority of disinterested directors approved the transaction and, therefore, such an allegation does not trigger the business judgment rule. Indeed, the inference to be drawn from the Second Amended Complaint is that four out the five Board members were not disinterested, because they consisted of Cogan and three Trace officers and employees-Nelson, Farace, and Marcus-who held their positions by virtue of Cogan's authority.

In addition, Delaware law provides that whenever a board of directors acts without a formal meeting such action must be evidenced by a "writing or writings ... filed with the minutes of proceedings of the board," Del.Code ann. tit. 8, § 141(f), and the Trustee maintains without contradiction that Trace's by-laws contain an equivalent requirement. Therefore, under both Delaware law and Trace's by-laws, "no indication" of Board action is equivalent to no action at all, rather than implying that the Board actually approved the transactions. The business judgment rule is thus inapposite.

Finally, Cogan contends that Count II must be dismissed insofar as it seeks to recover for alleged excess compensation paid on or after July 31, 1993, but before 1995 when Trace's insolvency is alleged to have begun. Cogan's theory is that shareholder ratification precludes recovery for compensation-even if excessive-paid during a period when Trace was solvent. *Cf. Healthco.*, 208 B.R. at 300 (where transaction renders corporation insolvent, creditors' rights become paramount, and recovery may be had from directors who thereby breached fiduciary duties notwithstanding shareholder consent) (*citing McCandless v. Furlaud*, 296 U.S. 140, 159-60, 56 S.Ct. 41, 80 L.Ed. 121 (1935) ("No consent of shareholders could make ... conduct [whereby corporation rendered insolvent] lawful ...."). Shareholder ratification occurred in that Cogan himself was the majority shareholder.

*17 Shareholder ratification of a self-dealing transaction, however, must be done by a majority of "disinterested" shareholders. *Fliegler v. Lawrence*, 361 A.2d 218, 221 (Del.1976). Cogan was not disinterested with respect to a transaction involving compensation to himself. Moreover, Cogan's ratification argument is an affirmative defense that goes beyond the allegations of the complaint, and therefore does not support dismissal under Rule 12(b)(6). Therefore, dismissal of this aspect of Count II is not warranted.

### C. Count IV Is Not Barred On Statute Of Limitations Grounds

The Defendants urge dismissal of the claims for breach of fiduciary duty to the extent they accrued prior to July 21, 1996, i.e., more than three years before the filing of Trace's Chapter 11 petition on July 21, 1999, pursuant to Delaware's three-year statute of limitations for such claims. *See* Del.Code. Ann. tit. 10, § 8106; *In re Dean Witter P'ship Litig.*, No. Civ. A. 14816, 1998 WL 442456, at *14 (Del.Ch. July 17, 1998), *aff'd*, 725 A.2d 441 (Del.1999). FN20 The Trustee objects that New York's six-year statute of limitations for breach of fiduciary duty claims is the applicable rule, and that therefore a claim for breach of fiduciary duty may include conduct as far back as July 21, 1993. *See* N.Y. C.P.L.R. § 213(7) (McKinney 2000); *Pereira v. Centel Corp. (In re Argo Communications Corp.)*, 134 B.R. 776, 785-89 (Bankr.S.D.N.Y.1991) (C.P.L.R. § 213(7) applies to breach of fiduciary claim asserted by bankruptcy trustee on behalf of Delaware corporation even though statute "does not contemplate actions commenced by a bankruptcy trustee per se"); *see also Lippe*, 230 B.R. at 913-14 (accord).

FN20. There is no dispute that the period

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 243537
**(Cite as: Not Reported in F.Supp.2d)**

of limitations is measured from when Trace filed its Chapter 11 petition on July 21, 1999.

The parties concur that, as in a case based on diversity jurisdiction, a federal court exercising its " related to" bankruptcy jurisdiction over state law claims applies the choice of law rules of the forum state in order to determine the applicable statute of limitations. *See* 28 U.S.C. § 1334(b) ( "related to" jurisdiction); *Whitney Holdings, Ltd. v. Givotovsky,* 988 F.Supp. 732, 741 n. 53 (S.D.N.Y.1997) (applying New York borrowing statute to diversity jurisdiction case).

New York's choice of law rule for statutes of limitation is set forth in its "borrowing statute," which provides that where a plaintiff is a New York resident the New York statute of limitations applies, and where a plaintiff is not a New York resident the court should apply the shorter of (1) New York's period of limitations or (2) the statute of limitations applicable where the plaintiff resides. N.Y. C.P.L.R. § 202 (McKinney 2000). When a bankruptcy trustee sues as a representative of the estate of a bankrupt corporation it is the residency of the corporation which is applicable. *See Allegaert v. Warren,* 480 F.Supp. 817, 820 n. 7 (S.D.N.Y.1979).

The parties also concur that Trace is incorporated in Delaware, but has its principal place of business in New York. They disagree, however, regarding the consequences of these facts for the determination of Trace's "residence" and, therefore, the applicable statute of limitations.

**\*18** District courts in this circuit applying New York law have held that the residence of a corporation for purposes of New York's borrowing statute is the corporation's principal place of business. *See National Union Fire Ins. Co. of Pittsburgh, PA. v. Forman* 635 Joint Venture, No. 94 Civ. 1312, 1996 WL 507317, at \*4 (S.D.N.Y. Sept.6, 1996) ; *Allegaert,* 480 F.Supp. at 820; *see also McMahan & Co. v. Donaldson, Lufkin & Jenrette,* 727 F.Supp. 833, 834 (S.D.N.Y.1989) (stating same rule, in dicta).

The Defendants maintain that New York law determines a corporation's residence based on the state of incorporation, citing a New York state case, *American Lumbermen's Mutual Casualty Co. v. Cochrane,* 129 N.Y.S.2d 489 (N.Y.Sup.Ct.1954), in which the court stated that "a corporation is a resident of the state which creates it." *Id.* at 491. However, as other district courts have recognized, *Lumbermen's* actual holding was narrower than this language suggests, as the corporate litigant argued in that case that it was a New York resident based merely on the fact that it was qualified to do business and maintained an office there, as opposed to maintaining its principal place of business. *See Forman,* 1996 WL 507317, at \*3; *Allegaert,* 480 F.Supp. at 820 (same).

Therefore, Trace's state of residence for purposes of the borrowing statute is New York, where it maintains its principal place of business, and New York's six-year statute of limitations applies. FN21 Thus, the motion to dismiss on statute of limitations grounds is denied.

> FN21. The Directors, in their reply brief, raise the argument that Trace International is a holding company and, therefore, that its residence is located where its subsidiaries conducted business, including Pennsylvania and Texas, both of which are asserted to have two-year statutes of limitation for breach of fiduciary duty claims. Under New York law, the statute of limitations is an affirmative defense, which means that the defendant bears the burden of establishing by *prima facie* proof that the statutory period has expired. *Overall v. Estate of L.H.P. Klotz,* 52 F.3d 398 403 (2d Cir.1995) (*citing Hoosac Valley Farmers Exchange, Inc. v. AG Assets, Inc.,* 168 A.D.2d 822, 563 N.Y.S.2d 954 (N.Y.App.Div.1990)). The Directors' argument, which is based on factual allegations not contained in the complaint and asserted by counsel in a legal brief, is insufficient to meet their burden on a 12(b)(6) motion. Moreover, the Directors neither cite cases applying

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 18

Not Reported in F.Supp.2d, 2001 WL 243537
(Cite as: Not Reported in F.Supp.2d)

New York law regarding the residence of a holding company nor justify their failure to do so.

### D. *The Claims Under The Delaware General Corporation Law Are Adequately Pleaded*

Count V asserts claims under the Delaware General Corporation Law, which prohibits a corporation from paying dividends or redeeming its shares when its capital is impaired, *see* Del.Code. Ann. tit. 8, §§ 160 , 170 , 173, and which imposes liability for " wilful or negligent" violation of these provisions on "directors under whose administration the same may happen," Del.Code. Ann. tit. 8, § 174.

The Directors contend that dismissal is warranted because the Trustee has not set forth each and every date on which an unlawful dividend payment occurred. Such detail, however, is a matter for discovery. No authority has been cited by the Directors for their theory, and it is countered by the requirement of Federal Rule of Civil Procedure 8 that all that must be contained in a complaint is a " short and plain statement of the claim." Fed.R.Civ.P. 8(a)(2).

The Directors also insist that the Trustee has failed to allege that they actually approved of or even knew of the allegedly wrongful dividend payments and, therefore, that the Second Amended Complaint does not give rise to an inference of willfulness or negligence. *See* Del.Code. Ann. tit. 8, § 170. However, the Second Amended Complaint alleges that the Directors knew or should have known about the illegality of these transactions. Moreover, dividends are not declared without board action. *See* Del.Code Ann. tit. 8, § 170(a)); *see also* Del.Code Ann. tit. 8, § 174 (assigning liability against directors based on unlawful dividend payments occurring "under [their] administration").

**\*19** Finally, the Directors urge that the impairment of Trace's capital has not been alleged with enough detail to sustain a claim under Sections 170 or 173 of the Delaware General Corporation Law. *See* Del.Code. Ann. tit. 8, §§ 170 , 173. However, the allegations regarding Trace's net losses of $11.2 million and $51.7 million in 1994 and 1995,

respectively, negative stockholders' equity of approximately $29.6 million and $104 million in 1995 and 1996, respectively, and a net loss of approximately $72 million in 1996, in conjunction with the presumption of continuance of Trace's unsound financial condition and the fact of Trace's own bankruptcy filing, are sufficient at the pleading stage.

Therefore, Count V has been adequately pleaded and will not be dismissed.

### E. *The Veil-Piercing Claim Will Not Be Dismissed*

Count VI asserts a veil-piercing claim against Cogan, based on an alter ego theory, and seeks to hold him personally liable for the legitimate obligations of Trace. Cogan contends that the Trustee lacks standing to assert this claim and, therefore, that dismissal is required for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) . Cogan further contends that even if the Trustee has standing the claim has not been adequately pleaded under Rule 12(b)(6) because the Trustee does not allege fraud or its equivalent.

### (1) *The Trustee Has Standing*

A trustee of a corporate debtor has standing to pierce the corporate veil, based on an alter ego theory, as against the controlling stockholder if: (1) under governing state law the debtor could have asserted an alter ego claim to pierce its own corporate veil," *Kalb,* 8 F.3d at 132, and; (2) " 'the claim is a general one ... [which] could be brought by any creditor,' " *id.* (quoting *St. Paul,* 884 F.2d at 700-01).

The Delaware courts have not yet addressed whether a corporate debtor may pierce its own corporate veil. However, in *Murray v. Miner,* 876 F.Supp. 512, 517 (S.D.N.Y.1995), *aff'd,* 74 F.3d 402 (2d Cir.1996) , another district court in this circuit held that such a claim is permitted under Delaware law, *id.* at 516-17. In reaching this conclusion the court analogized such claims to claims for breach of fiduciary duty brought by a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 19

Not Reported in F.Supp.2d, 2001 WL 243537
(Cite as: Not Reported in F.Supp.2d)

subsidiary against its parent, which are recognized under Delaware law. *See id.* (citing cases).

The analogy drawn in *Murray,* 74 F.3d at 516-17, is persuasive, as the acts which give rise to a veil-piercing claim are also acts which give rise to a claim for breach of the fiduciary duties of loyalty and fair dealing: here, for example, Cogan is alleged to have disregarded Trace's corporate identity and to have used Trace as his "personal piggy bank" even though Trace was insolvent and undercapitalized. This claims go both to the claim for breach of fiduciary duty, *see* Part III.B, *supra,* and to the factors relevant to determining alter ego status, *see Harco Nat'l Ins. Co. v. Green Farms, Inc.,* Civ. A. No. 1131, 1989 WL 110537, at *4 (Del.Ch. Sept.19, 1989) (alter ego claim factors " ' include whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder" ') (quoting *United States v. Golden Acres, Inc.,* 702 F.Supp. 1097, 1104 (D.Del.1988)).

**\*20** *Murray* further held that a veil-piercing claim is a general one which could be brought by any creditor and, therefore, that a party with standing to bring the claim is the bankruptcy trustee. *See* 74 F.3d at 517. This holding was based on the reasoning of the Second Circuit in *Kalb,* 8 F.3d 130, and *St. Paul,* 884 F.2d 688, and bankruptcy policy, as described in those cases. *See Murray,* 74 F.3d at 517. As the Second Circuit stated in *Kalb:*

> granting the bankruptcy trustee exclusive standing to assert alter ego claims furthers the bankruptcy policy of ensuring that all similarly situated creditors are treated fairly; the alter ego action is based upon allegations that if proven would benefit all [the debtor's] creditors, i.e., making more assets available to satisfy [the debtor's] debts .... If [the individual creditor's] action is not stayed it would collect its claim from a pool of assets that should be available to all creditors.

8 F.3d at 132; *see St. Paul,* 884 F.2d at 700-01.

The Third Circuit has also provided the following helpful explanation of the policy reasons in support of allowing a bankrupt corporation to pierce its own corporate veil:

> It may seem strange to allow a corporation to pierce its own veil, since it cannot claim to be either a creditor that was deceived or defrauded by the corporation fiction, or an involuntary tort creditor. However piercing the corporate veil and alter ego actions are allowed to prevent unjust or inequitable results; they are not based solely on a policy of protecting creditors..... [Therefore] it is not incompatible with the purposes of the doctrines to allow a debtor corporation to pursue a claim based upon such a theory.

*Phar-Mor, Inc. v. Coopers & Lybrand,* 22 F.3d 1228, 1240 n. 20 (3d Cir.1994).

Cogan points out that the Eighth Circuit, applying Arkansas law, and the Eastern District of Missouri, applying Missouri law, have held that a bankruptcy trustee lacks standing to assert an alter ego claim. *See Mixon v. Anderson (in re Ozark Restaurant Equip. Corp.),* 816 F.2d 1222, 1225 (8th Cir.1987) ; *Mann v. Michael Indus., Inc.,* 90 B.R. 981, 985-86 (Bankr.E.D.Mo.1988). However, the weight of the authority is to the contrary. See, e.g., *Kalb,* 8 F.3d at 133 (applying Texas law) ; *St. Paul,* 884 F.2d at 696-99 (analyzing various circuit court decisions regarding bankruptcy trustee's standing to bring alter ego claim upholding such claim under Ohio law); *Steyr-Daimler-Puch of America Corp. v. Pappas,* 852 F.2d 132, 135-36 (4th Cir.1988) (applying Virginia law); *Koch Refining v. Farmers Union Central Exch.,* 831 F.2d 1339, 1342-43 (7th Cir.1987) (applying Illinois and Indiana law); *Tsai v. Buildings by Jamie, Inc. (In re Buildings by Jamie, Inc.),* 230 B.R. 36, 43-44 (Bankr.D.N.J.1998) (applying New Jersey law); *Gosconcert v. Hillyer,* 158 B.R. 24, 28-29 (S.D.N.Y.1993) (applying New York law). *Murray* reached the same conclusion under Delaware law, and the analysis therein is persuasive here. *See* 74 F.3d at 516-17. Therefore, the Trustee has standing to bring this claim against Cogan.

*(2) The Alter Ego Claim Is Adequately Pleaded*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                  Page 20

Not Reported in F.Supp.2d, 2001 WL 243537
(Cite as: Not Reported in F.Supp.2d)

*21 Cogan stresses that it is an oft-repeated observation that "persuading a Delaware court to disregard the corporate veil is a difficult task," *Harco,* 1989 WL 110537, at *4; *see LaSalle Nat'l Bank v. Perelman,* 82 F.Supp.2d 279, 295 (D.Del.2000) (same), and urges that the Second Amended Complaint does not satisfy the Delaware standard. Specifically, Cogan urges that the Trustee is required, and has failed, to allege facts giving rise to an inference of fraud or equivalent injustice or unfairness.

The Second Circuit has explained the Delaware law of veil-piercing, in the different but related context of a subsidiary seeking to pierce the veil of its parent corporation, as follows:

Delaware law permits a court to pierce the corporate veil of a company 'where there is fraud or where [it] is in fact a mere instrumentality or alter ego of its owner.' ... Thus, under an alter ego theory, there is no requirement of a showing of fraud.... To prevail on an alter ego claim under Delaware law, a plaintiff must show (1) that the parent and the subsidiary 'operated as a single economic entity' and (2) that an 'overall element of injustice or unfairness ... [is] present.'

*Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1457 (2d Cir.1995) (citations omitted).

In other words, veil-piercing may occur where, first, alter ego factors are shown, including a lack of corporate formalities, commingling of assets between the shareholders and the corporation, and undercapitalization, *see Harco,* 1989 WL 110537, at *6, FN22 and second, there is an element of injustice or unfairness. This standard has been applied in cases involving veil piercing as between a corporation and its shareholders or directors. *See Golden Acres,* 702 F.Supp. at 1104-06 (applying federal veil-piercing standard, which court concluded were compatible with Delaware law, to pierce corporate veil as between corporation and shareholders, directors, and officers, based on alter ego theory); *see Harco,* 1989 WL 110537, at *6 (following *Golden Acres* and holding that factors pertaining to operation of corporation and defendant's relationship to corporation, plus showing that injustice occurred because defendant directors "siphon[ed] off corporate assets" to themselves, would suffice); *see also David v. Mast,* Civ. A. No. 1369-K, 1999 WL 135244, at *2 (Del.Ch. Mar.2, 1999) (piercing corporate veil as between corporation and sole shareholder and observing that, in addition to issue of whether corporate formalities observed, "the cases inevitably tend to evaluate the specific facts with a standard of 'fraud' or 'misuse' or some other general term of reproach in mind"). FN23

> FN22. Cogan concedes that the Trustee has alleged alter ego factors, namely, failure to observe corporate formalities, commingling of assets, and inadequate capitalization.

> FN23. Some Delaware cases have not articulated the element of injustice as a separate requirement, but instead have subsumed it within the notion that where a corporation is in fact a mere alter ego it would be inequitable not to permit veil-piercing. *See, e.g., Mabon, Nugent & Co. v. Texas American Energy Corp.,* Civ. A. No. 8578, 1990 WL 44267, at *5 (Del.Ch. Apr.12, 1990) ("[W]hether [parent corporation] was [subsidiary's] alter ego or mere instrumentality may be restated to be whether [the two corporations] operated as a single economic entity such that it would be inequitable for this Court to uphold a legal distinction between them."). However, the *Fletcher* formulation has the advantage of clarity.

The Second Amended Complaint alleges that Cogan engaged in numerous instances of self-dealing which stripped Trace of its corporate assets, in effect using Trace as his "incorporated pocketbook." *Golden Acres,* 702 F.Supp. at 1106. These allegations are satisfy the requirement of pleading an "overall element of injustice or unfairness." *Fletcher,* 68 F.3d at 1457 (citation omitted). *See Golden Acres,* 702 F.Supp. at 1106; *Harco,* 1989 WL 110537, at *6 (element of injustice would be satisfied if shown that corporate directors " siphon[ed] off corporate assets" to themselves).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 243537
**(Cite as: Not Reported in F.Supp.2d)**

Therefore, the veil-piercing claim is adequately pleaded.

*Conclusion*

**\*22** Therefore, for the reasons set forth above, the motions to dismiss are denied.

It is so ordered.

S.D.N.Y.,2001.
Pereira v. Cogan
Not Reported in F.Supp.2d, 2001 WL 243537

Briefs and Other Related Documents (Back to top)

• 2003 WL 23951403 (Trial Motion, Memorandum and Affidavit) Plaintiff's Post-Trial Memorandum of Law (Feb. 03, 2003)
• 2002 WL 32595459 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Opposition to Defendant Frederick Marcus' Motion for Leave to Amend (Nov. 07, 2002)
• 2002 WL 32595458 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Opposition to Defendants Marshall S. Cogan's Motion for a Protective Order (Oct. 31, 2002)
• 2002 WL 32595457 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Defendant Frederick Marcus in Support of His Motion for Leave to Amend His Answer Pursuant to Rule 15(a) (Oct. 24, 2002)
• 2002 WL 32595456 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion to Lift Restraint (Oct. 23, 2002)
• 2002 WL 32595455 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law of Defendant Saul S. Sherman in Further Support of Motion Pursuant To Rule 43(a) To Appear at Trial By Video-Link (Jun. 14, 2002)
• 2002 WL 32768987 (Trial Pleading) Plaintiff's Reply Brief in Support of Motion to Strike (Jun. 14, 2002)
• 2002 WL 32768978 (Trial Pleading) Answer of Defendant Robert H. Nelson (Apr. 29, 2002)
• 2002 WL 32768980 (Trial Pleading) Answer of Defendant Philip Smith (Apr. 29, 2002)
• 2002 WL 32768984 (Trial Pleading) Answer of

Defendant Karl Winters (Apr. 29, 2002)
• 2002 WL 32768986 (Trial Pleading) Answer of Defendant Tambra King (Apr. 29, 2002)
• 2002 WL 32768967 (Trial Pleading) Amended Answer (Apr. 26, 2002)
• 2002 WL 32768970 (Trial Pleading) Amended Answer (Apr. 26, 2002)
• 2002 WL 32768972 (Trial Pleading) Answer of Marshall S. Cogan to Trustee's Third Amended Complaint (Apr. 26, 2002)
• 2002 WL 32768975 (Trial Pleading) Amended Answer (Apr. 22, 2002)
• 2002 WL 32768964 (Trial Pleading) Third Amended Complaint (Apr. 16, 2002)
• 2002 WL 32595454 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Opposition to Defendants' Motion in Limine (Apr. 01, 2002)
• 2002 WL 32595450 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Motion in Limine to Exclude The Report and Testimony of Irving Kagan (Mar. 18, 2002)
• 2002 WL 32768961 (Trial Pleading) Reply Brief in Support of Plaintiff's Motion to Strike Defendants' Demand for a Jury Trial with Respect to Counts Two, Four, and Five (Mar. 12, 2002)
• 2002 WL 32595447 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Strike the Jury Demand (Mar. 04, 2002)
• 2002 WL 32595448 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment (Mar. 04, 2002)
• 2002 WL 32768620 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment (Mar. 04, 2002)
• 2002 WL 32768619 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Opposition to Palintiff's Motion to Strike Jury Demand (Mar. 01, 2002)
• 2002 WL 32595445 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Defendant Marshall S. Cogan in Opposition to Plaintiff's Motion for Partial Summary Judgment (Feb. 22, 2002)
• 2002 WL 32768618 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Defendant

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 22

Not Reported in F.Supp.2d, 2001 WL 243537
(Cite as: Not Reported in F.Supp.2d)

Marshall S. Cogan in Opposition to Plaintiff's Motion for Partial Summary Judgment (Feb. 21, 2002)
• 2002 WL 32595441 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiff's Motion to Strike Defendants' Demand for a Jury Trial with Respect to Counts Two, Four, and Five of the Trustee's Second Amended Complaint (Feb. 13, 2002)
• 2002 WL 32768617 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Plaintiff's Motion to Strike Defendants' Demand for a Jury Trial with Respect to Counts Two, Four, and Five of the Trustee's Second Amended Complaint (Feb. 13, 2002)
• 2002 WL 32595438 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment (Feb. 01, 2002)
• 2002 WL 32768616 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment (Jan. 22, 2002)
• 2001 WL 34727449 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Defendant Marshall S. Cogan in Opposition to Plaintiff's Motion for Partial Final Judgment (Dec. 29, 2001)
• 2001 WL 34727450 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Motion for Final Judgment (Dec. 07, 2001)
• 2001 WL 34611415 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of Defendant Marshall S. Cogan in Opposition to Plaintiff's Motion for Partial Final Judgment (Nov. 29, 2001)
• 2001 WL 34611404 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion of Defendant Tihi Family Partnership, L.P. for Withdrawal of the Reference of the Adversary Proceeding for Cause and Consolidation with Action Pending Before This Court (Nov. 05, 2001)
• 2001 WL 34611405 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion of Defendant Stephanie Cogan Golfinos for Withdrawal of the Reference of the Adversary Proceeding for Cause and Consolidation with Action Pending before this Court (Nov. 05, 2001)
• 2001 WL 34611408 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of

Motion of Defendant Maureen Cogan for Withdrawal of the Reference of the Adversary Proceeding for Cause and Consolidation with Action Pending Before This Court (Nov. 05, 2001)
• 2001 WL 34611412 (Trial Motion, Memorandum and Affidavit) Motion of Defendant Marshall S. Cogan for Withdrawal of the Reference of the Adversary Proceeding for Cause and Consolidation With Action Pending Beford This Court (Nov. 05, 2001)
• 2001 WL 34611401 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Opposition to Defendant Marshall S. Cogan's Motion for Reconsideration (Oct. 30, 2001)
• 2001 WL 34611399 (Trial Motion, Memorandum and Affidavit) Affirmation of Laurie J. Slosberg, Esq. in Support of Motion (Oct. 19, 2001)
• 2001 WL 34611394 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Motion of Defendant Marshall S. Cogan for Reconsideration of This Court's Opinion and Order Dated September 25, 2001, as Amended (Oct. 16, 2001)
• 2001 WL 34611391 (Trial Motion, Memorandum and Affidavit) Dedendant Marshall S. Cogan's Memorandum of Law in Opposition to Plaintiff's Motion to Compel Production of Documents and for an in Camera Review of Certain Documents (Sep. 24, 2001)
• 2001 WL 34727448 (Trial Motion, Memorandum and Affidavit) Defendant Marshall S. Cogan's Memorandum of Law in Opposition to Plaintiff's Motion to Compel Production of Documents and for an in Camera Review of Certain Documents (Sep. 24, 2001)
• 2001 WL 34727447 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Compel Production of Documents and for an in Camera Review of Certain Documents (Aug. 31, 2001)
• 2001 WL 34611390 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of Defendant Cogan's Motion for Order Compelling Discovery and for Attorneys Fees (Aug. 30, 2001)
• 2001 WL 34611386 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Opposition to Defendant Marshall S. Cogan's Motion for a Protective Order (Jun. 05, 2001)
• 2001 WL 34727446 (Trial Motion, Memorandum

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                    Page 23

Not Reported in F.Supp.2d, 2001 WL 243537
(Cite as: Not Reported in F.Supp.2d)

and Affidavit) Plaintiff's Reply Memorandum of
Law in Support of Plaintiff's Motion for Partial
Summary Judgment (May. 31, 2001)
• 2001 WL 34611382 (Trial Motion, Memorandum
and Affidavit) Memorandum of Law in Support of
Defendant Cogan's Motion for A Protective Order
(May. 30, 2001)
• 2001 WL 34611378 (Trial Motion, Memorandum
and Affidavit) Memoeandum of Law of Defendant
Marshall S. Cogan in Opposition to Trustee's
Motion for Partial Summary Judgment (May. 23,
2001)
• 2001 WL 34727445 (Trial Motion, Memorandum
and Affidavit) Memorandum of Law of Defendant
Marshall S. Cogan in Opposition to Trustee's
Motion for Partial Summary Judgment (May. 23,
2001)
• 2001 WL 34611376 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Memorandum of Law in
Support of Plaintiff's Motion for Partial Summary
Judgment (Apr. 23, 2001)
• 2001 WL 34727444 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Memorandum of Law in
Support of Plaintiff's Motion for Partial Summary
Judgment (Apr. 23, 2001)
• 2001 WL 34611372 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Memorandum of Law in
Opposition to Motion of Defendant Marshall S.
Cogan for Certification, Pursuant to 28 U.S.C.
|1292(b), of Order and Opinion of March 8, 2001
(Apr. 05, 2001)
• 2001 WL 34611369 (Trial Motion, Memorandum
and Affidavit) Memorandum of Law in Support of
Motion of Defendant Marshall S. Cogan for
Certification of This Court's Opinion and Order
Dated March 8, 2001 for Immediate Interlocutory
Appeal (Mar. 22, 2001)
• 2000 WL 34403230 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Memorandum of Law in
Opposition to Defendants Marshall S. Cogan,
Andrea Farace, SAUL S. Sherman and Frederick
Marcus's Motions to Dismiss the Second Amended
Complaint (Sep. 18, 2000)
• 1:00cv00619 (Docket) (Jan. 28, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.