**EXHIBIT S**

Westlaw.

Not Reported in F.Supp.                                                                                                    Page 1

Not Reported in F.Supp., 1992 WL 311193
(Cite as: Not Reported in F.Supp.)

**H**
Not Reported in F.Supp., 1992 WL 311193
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, D. Maryland.
QUEST MEDICAL, INC.
v.
KIRSCHNER MEDICAL CORP., et al.
Civ. A. Nos. WN-90-858, WN-90-2409.

July 29, 1992.

George M. Church, R. Thomas Radcliffe, Jr., and Church & Houff of Baltimore, Md., and Pamela S. Tikellis, James C. Strum, and Greenfield & Chimicles of Wilmington, Del., for plaintiff.
Wilbur D. Preston, Jr., William F. Ryan, Jr., and Whiteford, Taylor & Preston of Baltimore, Md., and Alan S. Fox, Asst. General Counsel for KPMG Peat Marwick of New York City, for defendant KPMG Peak Marwick.

MEMORANDUM

NICKERSON, District Judge.
*1 Before the Court is Defendant KPMG Peat Marwick's ("Marwick") Motion to Dismiss Second Amended Complaint filed March 11, 1992 (Paper No. 55). Plaintiff Quest Medical ("Quest") has filed an opposition (Paper No. 57) and Marwick has replied (Paper No. 59). Upon a review of the motion and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Marwick's motion should be granted.

*I. BACKGROUND*

On December 11, 1991, Quest filed its Second Amended Complaint in this action, adding Marwick as a defendant, and alleging causes of action against Kirschner Medical Corporation ("Kirschner"), certain directors and/or officers of Kirschner, Alex.

Brown & Sons and Alex. Brown. The lawsuit arises out of Quest's purchase (at allegedly artificially inflated prices) of approximately 112,220 shares of Kirschner common stock in October, 1989. Quest alleges that defendants made material misrepresentations and omissions in connection with the sale of Kirschner securities, and sues for violations of federal securities laws, the Racketeer Influenced and Corrupt Organizations Act and state law.

Quest's action against Marwick arises out of Marwick's role as the outside auditor for Kirschner, and specifically focuses on the annual audit Marwick performed for Kirschner for year ending December 31, 1988 ("1988 audit"). FN1 In the 1988 audit, Marwick issued an unqualified opinion that Kirschner's consolidated financial statements " present fairly [ ] in all material respects [ ] the financial position of Kirschner." Complaint at 12. Moreover, Marwick stated that its audit was performed in accordance with "generally accepted auditing standards" ("GAAS"), and that Kirschner's consolidated financial statements were prepared in accordance with "generally accepted accounting principles" ("GAAP"). Complaint at 11-12. Quest alleges that it purchased Kirschner securities in reliance on the above mentioned statements by Marwick, statements Quest contends were material misrepresentations.

Quest's allegation against Marwick are two-fold. First, Quest alleges that Marwick did not appropriately and/or independently test Kirschner's inventory balances (contrary to GAAP and GAAS), resulting in a substantial portion of inventory being materially overvalued. Quest alleges that Marwick either "knew or recklessly disregarded" the true worth of Kirschner's assets. Complaint at 36, ¶ 57. Quest's allegation centers around Marwick's alleged failure to test adequately inventory located at Kirschner's Timonium, Maryland and Fairlawn, New Jersey sites. The gravamen of Quest's complaint is that:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                           Page 2
Not Reported in F.Supp., 1992 WL 311193
(Cite as: Not Reported in F.Supp.)

During the first quarter of 1989, Peat Marwick conducted its year-end audit of Kirschner in which it identified $4.7 million of inactive domestic product lines.... *Although there were indications that Kirschner should have taken write-downs or write-offs of this inventory* at [the time of the 1988 Audit], Peat Marwick considered the inventory reserve of $1.2 million adequate based on a so-called domestic and international sales program through which Kirschner planned to sell approximately $2.7 million of its excess and obsolete inventory [ ]. However, the sales projections used to justify Kirschner's delay in taking the write-downs and write-offs *were overly optimistic and not based on sound financial analysis*. Thus, Peat Marwick recklessly permitted Kirschner to utilize the domestic and international sales program to delay timely recognition of the write-downs or write-offs, instead of acknowledging that a substantial portion of Kirschner's inventory was materially overvalued, and that it would not likely be sold at anywhere near its stated value, if at all.

*2 Complaint at 31, ¶ 45 (emphasis added). Quest alleges that inventories were materially overstated in order to artificially inflate stock prices, and to allow Kirschner to comply with its debt covenants.

Second, Quest alleges that Marwick gained actual knowledge of Kirschner's "excessive" inventory quantities at some point after the issuance of the 1988 audit, FN2 and that Marwick failed to "require Kirschner to post additional inventory reserves, and . . . fail[ed] to withdraw its unqualified opinion for 1988." Complaint at 72, ¶ 123.

Quest alleges that after issuance of the 1988 Audit, Marwick learned of Kirschner's financial difficulties through: (1) performing interim review work in 1989; (2) becoming aware (on September 11, 1989) of accounting rumors published in the Washington Business Journal regarding Kirschner's poor accounting practices; and (3) becoming aware (in March, 1989) of an SEC investigation into Kirschner's financial practices. Quest also points to a management letter from Marwick to Kirschner's Board of Directors (dated April 14, 1989) in which Marwick notes "excessive" inventory quantities and recommends improvement in the analysis and documentation of inventory value.

In its audit for year ending December 31, 1989, Marwick required Kirschner to post an additional $1.1 million to the company's existing inventory reserves. This audit, in contrast to the 1988 Audit, also contained a going concern qualification. Complaint at 61, ¶¶ 105-06. Quest contends, essentially, that these disclosures of Kirschner's troubled financial condition were too little too late.

In the Second Amended complaint, Quest alleges three causes of action against Marwick: (1) aiding and abetting under Section 10(b) of the Securities and Exchange Act of 1934 ("1934 Act") (Count I); (2) negligent misrepresentation (Count II); and (3) common law fraud (Count III). Marwick now moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons stated below, the Court grants Marwick's motion.

*II. LEGAL STANDARD*

A claim may be dismissed under Fed.R.Civ.P. 12(b)(6) "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ; *Faulkner Advertising Assoc. v. Nissan Motor Corp*, 905 F.2d 769, 771-72 (4th Cir.1990). A motion to dismiss tests the legal sufficiency of the plaintiff's claim. *Chertkof v. Baltimore*, 497 F.Supp. 1252, 1258 (D.Md.1980). In ruling on a motion to dismiss the Court must accept the properly pleaded allegations contained in the complaint as true, and must liberally construe the complaint as a whole. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) ; *Finlator v. Powers*, 902 F.2d 1158 (4th Cir.1990) ; *Herlihy v. Ply-Gem Indus., Inc.*, 752 F.Supp. 1282, 1285 (D.Md.1990).

To properly plead a claim in federal court, a plaintiff need only set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Allegations of fraud, of course, must be pled with greater specificity, such that all "averments of fraud

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                 Page 3

Not Reported in F.Supp., 1992 WL 311193
(Cite as: Not Reported in F.Supp.)

... [and] the circumstances constituting fraud ... [are] stated with particularity." Fed.R.Civ.P. 9(b). This heightened pleading requirement is less stringent concerning facts particularly within the knowledge of the non-moving party, such that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." *Id.*

### III. ANALYSIS

#### 1. Common Law Fraud

*3 Quest alleges that Marwick made false representations of fact in the 1988 Audit, and that Marwick failed to disclose material facts. Marwick argues that Quest has failed to plead knowledge with the level of specificity required by Fed.R.Civ.P. 9(b). Moreover, Marwick alleges that Quest has not identified any misrepresentations.

To plead fraud, a plaintiff must allege: (1) that defendant made a false representation to plaintiff (or failed to disclose a material fact); (2) that defendant knew the representation was false or made the representation with such reckless indifference to the truth as to impute knowledge and an intent to defraud; (3) that the representation was made for the purpose of deceiving plaintiff; (4) that plaintiff reasonably relied upon the false representation; and (5) that plaintiff suffered damages resulting directly from the false representation. *Martens Chevrolet, Inc. v. Seney,* 292 Md. 328, 333, 439 A.2d 534 (1982) (quoting *Gittings v. Von Dorn,* 136 Md. 10, 15-16, 109 A. 553 (1920)). If the plaintiff's claim is based on a failure to disclose, plaintiff must show that defendant had a duty to disclose. Marwick argues that Quest's claim fails on the first two prongs.

Regarding affirmative misrepresentations, Quest identifies three alleged misrepresentations in the 1988 Audit. First, Quest alleges that Marwick misrepresented that the audit was performed in accordance with GAAS. Complaint at 12, ¶ 11(b). Second, Quest alleges that Marwick misrepresented that Kirschner's financial statements were presented in accordance with GAAP. *Id.* at 35, ¶ 54(c). Third, Quest alleges that the complaint misrepresented that Kirschner's financial statements "present fairly [ ] in all material respects" Kirschner's financial condition, because inventory was materially overstated. *Id.* at ¶ 56.

Even accepting these statements as false representations of material fact, Quest has failed to allege adequately any facts that would take these misrepresentations out of the realm of negligence and into the realm of fraud. For example, Quest has failed to meet the legal requirements in alleging knowledge and scienter, *i.e.,* that "defendant knew the representation was false or made the representation with such reckless indifference to the truth as to impute knowledge and an intent to defraud." *Martens,* 292 Md. at 333; *see Cosmas v. Hassett,* 886 F.2d 8, 12-13 (2d Cir.1989) (complaint must allege facts "which give rise to a strong inference that the defendants possessed the requisite fraudulent intent").

Quest's basic allegation is that at the time the 1988 Audit was issued, Marwick failed to comply with certain GAAS and GAAP standards concerning testing of inventory at Fairlawn and Timonium, and thus Marwick "knew or should have known" that the audit did not "present fairly" Kirschner's financial condition. Quest alleges that subsequent to the issuance of the 1988 Audit, Marwick actually learned (through the media and its own interim accounting work) that the Audit contained misrepresentations. Thus, Quest's allegation that Marwick knew that certain representations in the audit were false *at the time the audit was issued* must turn on an allegation that Marwick performed the audit with such a reckless indifference to the truth as to impute knowledge and an intent to defraud. FN3 *Id.*

*4 Although condition of mind may be averred generally, a plaintiff must state with particularity the circumstances surrounding fraud. Fed.R.Civ.P. 9(b). As stated by the Seventh Circuit: "the ' circumstances' must be [pled] in detail. This means the who, what, when, where, and how...." *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.), *cert. denied,* 498 U.S. 941, 111 S.Ct. 347 (1990) ; *Dubowski v. Dominion Bankshares Corp.,* 763

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                Page 4

Not Reported in F.Supp., 1992 WL 311193
(Cite as: Not Reported in F.Supp.)

F.Supp. 169, 172-73 (W.D.Va.1991). FN4 At the least, the complaint must provide a reason to infer that a defendant's conduct was in some way the product of fraud, and not merely the product of negligence.

Quest alleges that Marwick transgressed certain GAAS and GAAP principles in testing inventory at Fairlawn and Timonium. But as Judge Harvey has stated: "If an accounting firm could be charged with fraud every time that its audit did not conform to generally accepted accounting principles, then every claim of malpractice would also constitute a claim of fraud." *E.F. Hutton Mortgage Corp. v. Pappas,* 690 F.Supp. 1465, 1471 (D.Md.1988). Without allegations sufficient to permit an inference of recklessness or intent to deceive, a claim for fraud cannot lie.

Although Quest's allegation that Marwick failed to test certain inventories independently may amount to negligence, Quest has not adequately alleged facts to support an inference of recklessness. Paraphrasing the Seventh Circuit in *DiLeo,* one cannot tell from reading the complaint why Quest believes that problems were so apparent that inventories at Timonium and Fairlawn should have been subject to write-downs or write-offs for year ending December 31, 1988-why failure to write-down or write-off amounted to fraud. *DiLeo,* 901 F.2d at 627; *Dubowski,* 763 F.Supp. at 172-73.

Quest states in its complaint only that "there were indications" that Kirschner should have adjusted its inventory reserves because Kirschner's sales projections were "overly optimistic and not based on sound financial analysis." Complaint at p. 31, ¶ 45. Such allegations, while indicating an exercise of bad judgment, or maybe even negligence, do not form the stuff of reckless indifference. Nowhere in its eighty page complaint FN5 does Quest allege why it believes that Marwick should have known that reserves were overstated, or stated another way, why failure to know was reckless, and not merely negligent or an error in judgment. *See Dubowski,* 763 F.Supp. at 172.

Although Marwick's audit for year ending December 31, 1989, did post a going concern qualification, Quest cannot allege "fraud by hindsight." *Denny v. Barber,* 576 F.2d 465, 470 (2d Cir.1978). The mere change in Kirschner's financial condition as of December 31, 1989, does not imply that the 1988 Audit was the product of fraud.

Quest also alleges that Marwick failed to make certain disclosures in conjunction with the 1988 Audit. First, Quest alleges that the 1988 Audit should have: (1) contained "a qualification for the material amounts of inventory subject to write-downs and/or write-offs"; and (2) contained an "indication of the extremely tenuous nature of the so-called domestic and international sales program purportedly designed to sell the [excess and obsolete] inventory." Complaint at 34, ¶ 54(a) & (b). Second, Quest alleges that Marwick should have disclosed the true nature of Kirschner's financial condition once Marwick learned that its unqualified opinion was no longer accurate in light of existing information.

*5 Regarding Quest's claim that certain statements should have appeared in the 1988 Audit, Quest's claim must fail for lack of fraudulent intent, as stated above. Regarding Quest's claim that Marwick should have disclosed the true nature of Kirschner's financial condition after the 1988 Audit was issued, Quest's claim must also fail. Quest has alleged no facts indicating that Marwick's failure to disclose was the product of fraud, or of reckless indifference. Accordingly, Marwick's motion is granted as to Quest's claim for common law fraud.

*2. Aiding and Abetting under § 10(b)*

Marwick alleges that Quest's claim for aiding and abetting under § 10(b) of the 1934 Act should be dismissed for several reasons. First, Marwick alleges that Quest's claim is barred by the statute of limitations pursuant to the Supreme Court's decision in *Lampf v. Gilbertson,* 501 U.S. 350, 111 S.Ct. 2773 (1991). Second, Marwick alleges that Quest has not pled the elements of a prima facie violation with the requisite specificity. Specifically, Marwick alleges that Quest has not adequately pled scienter and substantial assistance under the Fourth

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.     Page 5

Not Reported in F.Supp., 1992 WL 311193
**(Cite as: Not Reported in F.Supp.)**

Circuit's ruling in *Schatz v. Rosenberg,* 943 F.2d 485 (4th Cir.1991), *cert. denied,Schatz v. Weinberg & Green,* 503 U.S. 936, 112 S.Ct. 1475 (1992). Marwick also alleges that Quest has not adequately stated a primary violation.

Quest, in opposition, argues that the statute of limitations was tolled because Marwick did not provide relevant discovery until May, 1991. FN6 Quest argues further that the holding in *Schatz* does not apply to this case. Moreover, Quest contends it has adequately stated an aiding and abetting violation, even if *Schatz* applies.

A cause of action for aiding and abetting a securities violation is comprised of three elements: "(1) a primary violation by another person; FN7 (2) the aider and abettor's knowledge of the primary violation [scienter]; and (3) substantial assistance by the aider and abettor in the achievement or consummation of the primary violation." *Schatz,* 943 F.2d at 495.

The parties argue over the standard for scienter in this case. Marwick contends that, pursuant to the reasoning in *Schatz,* Quest must allege that Marwick possessed a "high conscious intent" and a "conscious and specific motivation" to aid and abet the fraud. *Schatz,* 943 F.2d at 496. Quest contends that it need only allege recklessness. *See IIT v. Cornfeld,* 619 F.2d 909, 923 (2nd Cir.1980). Assuming *arguendo* that Quest is correct, Quest has failed to allege recklessness, as discussed by the Court in conjunction with Quest's claim for common law fraud. Accordingly, Marwick's motion to dismiss is granted as to Quest's claim for aiding and abetting under the federal securities laws.

### 3. Negligent Misrepresentation

Marwick argues that Quest's claim for negligent misrepresentation must be dismissed because there is no privity of contract between Quest and Marwick. Marwick argues further that Quest has failed to allege reliance. Quest, in opposition, contends that privity is not required in this case because the purchasers of Kirschner's stock are identifiable. Moreover, Quest argues that, as a third party beneficiary to the contract between Kirschner and Marwick, the privity requirement is met.

#### a. legal standard

*6 To make out a prima facie case for negligent misrepresentation, a plaintiff must allege that:
 (1) the defendant, *owing a duty of care to the plaintiff,* negligently asserts a false statement;
 (2) the defendant intends that his statement will be acted upon by the plaintiff;
 (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;
 (4) the plaintiff, justifiably, takes action in reliance on the statement; and
 (5) the plaintiff suffers damage proximately caused by the defendant's negligence.
*See Weisman v. Connors,* 312 Md. 428, 444, 540 A.2d 783 (1988) (emphasis added) (quoting *Martens,* 292 Md. at 336-37. The parties disagree primarily over whether Marwick owed a duty of care to Quest.

In determining when a tort duty should be recognized, Maryland cases have created a dichotomy between cases involving the risk of economic loss on the one hand, and cases involving the risk of personal injury on the other. In *Jacques v. First Nat'l. Bank,* 307 Md. 527, 515 A.2d 756 (1986), the Maryland Court of Appeals stated:
> Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of liability. *This intimate nexus is satisfied by contractual privity or its equivalent.*

*Jacques,* 307 Md. at 534-35 (emphasis added). In reaching this holding, the Court relied on two seminal cases from the New York Court of Appeals. *See Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275 (1922) (public weigher of beans owes a duty to buyer of beans because buyer was the known and intended beneficiary of contract between weigher and seller) (Cardozo, J.); *Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441, 446 (public accountant who carelessly prepared a balance sheet

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1992 WL 311193
(Cite as: Not Reported in F.Supp.)

owes no duty to a factor who made loans to the corporation in reliance on balance sheet because " there was [no] contractual relation, or even one approaching it, at the root of any duty that was owing from the defendants ... to the indeterminate class of persons who ... might deal with the [corporation] in reliance on the audit"). FN8

In *Village of Cross Keys, Inc. v. United States Gypsum Co.*, 315 Md. 741, 556 A.2d 1126 (1989), the Maryland Court of Appeals analyzed duty in the specific context of a negligent misrepresentation claim. FN9 In *Village*, the Court recognized an " intimate nexus" between a manufacturer that developed and published a design for the construction of exterior walls, and persons who relied on such publications. The Court recognized such a relationship in the absence of face-to-face interaction between the parties. The Court's reasoning was circumscribed, however, by the fact that the publication was, practically speaking, directed to a very specific audience, and not to the general public. The Court stated:

> *7 Although the group of persons who may be expected to rely upon information of this kind may be large, they are identifiable, particularly if the group is limited to architects and structural engineers. That their names cannot be known in advance is of no consequence. A trier of fact could find that the architects and engineers are the very persons whom [the publisher] intended to act on the information supplied.

*Village*, 315 Md. at 758-59 (emphasis added). The Court notes that *Village* did not expressly hold that the manufacturer owed a duty to plaintiff, as plaintiff's claim was decided on the more narrow ground of reliance. *Id.* at 759.

### b. analysis

The Court concludes that Quest's tort claim for negligent misrepresentation should be dismissed because there is no "intimate nexus" between Quest and Marwick. Although Quest argues strenuously that the above quoted language in *Village* provides it with a cause of action, this Court does not read *Village* quite so broadly. FN10 In *Village*, the statements at issue were specifically directed to architects and engineers, and were made in a publication circulated amongst those trades. Conversely, the 1988 audit, prepared by Marwick for Kirschner, was directed to the public at large. Moreover, as the statements in *Village* were targeted, the specific group of persons to whom defendant manufacturer owed a duty was ascertainable before the alleged injury took place. Again, in the case *sub judice*, the statements were made to the public at large. Under these circumstances, a conclusion that Marwick owed a duty to Quest would impose liability "in an indeterminate amount for an indeterminate time to an indeterminate class." *See Weisman*, 312 Md. at 447 (quoting *Glanzer*, 174 N.E.2d at 444). In effect, Quest would have this Court use a broadsword, where the Maryland Court of Appeals used a rapier. This is clearly prohibited under Maryland law. *See Tischler v. Baltimore Bancorp*, --- F.Supp. ----, 1992 U.S.Dist LEXIS 10102 (D.Md. July 10, 1992) (Garbis, J.) (rejecting claim of negligent misrepresentation under Maryland law in securities fraud context when allegedly fraudulent statements issued to the general public).

Nor can Quest prevail on a third party beneficiary theory. Relying on *Flaherty v. Weinberg*, 303 Md. 116, 492 A.2d 618 (1985), Quest argues that it was an intended third party beneficiary of the contract between Kirschner and Marwick, and that the " intimate nexus" requirement from *Jacques* is thus satisfied. The Court disagrees. *See Gray & Son, Inc. v. Maryland Deposit Insur. Fund Corp.*, 83 Md.App. 584, 592, 575 A.2d 1272 (1990) (third party beneficiary satisfied when contracting parties intend to recognize third party as "the primary party in interest and as privy to the promise"). Indeed, as Judge Young stated in a factually similar case:

> In *Flaherty*, the Court specifically applies the third party beneficiary exception to the strict privity rule in attorney malpractice cases. This Court is not persuaded that this narrow exception is applicable to accounting firms and shareholders.

*8 *In Re Jiffy Lube Sec. Litig.*, Civil No. Y-89-1939 (D.Md. Addendum to Memorandum dated October 26, 1990). Accordingly, Marwick's motion is granted as to Quest's claim for negligent misrepresentation.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 7
Not Reported in F.Supp., 1992 WL 311193
(Cite as: Not Reported in F.Supp.)

### IV. CONCLUSION

For the above stated reasons, the Court concludes that Marwick's Motion to Dismiss (Paper No. 55) should be granted.

The Court concludes that Marwick's motion should be granted with prejudice, and Quest will not be permitted to replead. Quest had two cuts of discovery from Marwick before Marwick was named as a party, and Quest has already amended its complaint-which now stands at eighty pages-twice. As the District Court for the Southern District of New York stated in *Schick v. Ernst & Whinney,* 1991 Fed.Sec.L.Rep. (CCH) ¶ 95,764 (S.D.N.Y. January 18, 1991) in dismissing a claim with prejudice under Fed.R.Civ.P. 9(b):

> Given the amount of time that the [plaintiffs] have had ... to unearth facts sufficient to support these claims, the problem is not one which is likely to be remedied by granting additional time in which to replead. Just as "leave to amend should not be granted where it is futile," *Bruce v. Martin,* 702 F.Supp. 66, 69 (S.D.N.Y.1988), permission to replead should not be granted where the plaintiffs have already had ample opportunity to frame their claims and have failed to do so properly.

*Schick,* at 98,666. Accordingly, Marwick's motion is granted with prejudice.

A separate order will issue.

### ORDER

In accordance with the foregoing Memorandum and for the reasons stated therein, IT IS this 29th day of July, 1992, by the United States District Court for the District of Maryland, ORDERED:

1. That Defendant KPMG Peat Marwick's Motion to Dismiss Second Amended Complaint filed March 11, 1992 (Paper No. 55) is GRANTED with prejudice;

2. That the Clerk of Court shall mail copies of the foregoing Memorandum and this Order to all counsel of record.

FN1. This audit was issued on March 1, 1989. Opp. at 3.

FN2. *See* Complaint at ¶¶ 11(c), 11(d)(1)-(6) and 123 (alleging that Marwick failed to correct earlier statements "that were *no longer true* in light of existing information it knew or recklessly disregarded").

FN3. Although Quest alleges that Marwick "knew" at the time of issuance that the 1988 Audit contained misrepresentations, Quest offers no facts to support that allegation. The only facts offered or alleged by Quest show that: (1) Marwick failed to independently test Kirschner's inventory (and thus *failed to learn* its true value); and (2) Marwick gained actual knowledge subsequent to issuing the 1988 audit that Kirschner's financial condition was not as optimistic as presented in its financial statements.

FN4. There is support for the proposition that "[c]ourts in th[e] [Fourth] Circuit have adopted a less strict application of Rule 9(b), requiring only that fraud actions are to state with particularity the circumstances constituting fraud." *In Re Jiffy Lube Sec. Litig.,* 772 F.Supp. 258, 261-62 (D.Md.1991) (citing *DiLeo* with approval). Nothing the Court says today contravenes this "less strict application" of 9(b). *See Hershey v. MNC Financial, Inc.,* 774 F.Supp. 367, 372-74 (D.Md.1991) (Motz, J.) (eschewing liberal interpretation of 9(b) as applied to claims arising under the federal securities laws); *Schwartz v. NCNB Corp.,* 768 F.Supp. 164, 165-66 (W.D.N.C.1991) (court noting that there is no binding precedent in the Fourth Circuit as to how to apply 9(b) to security cases, but requiring greater specificity because of the potential for strike suits); *Gollump v. MNC Financial, Inc.,* 756

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 8
Not Reported in F.Supp., 1992 WL 311193
(Cite as: Not Reported in F.Supp.)

F.Supp. 228, 231-32 (D.Md.1991) (Motz, J.) (court noting that 9(b) mandates that " fraud cannot be alleged merely on the basis of suspicion and that a fraud suit cannot itself be the vehicle for initially uncovering the fraud").

FN5. Quest had two cuts of discovery from Marwick before Marwick was added as a party.

FN6. The Court need not address the statute of limitations issue in light of its conclusion that an aiding and abetting violation has not adequately been pled.

FN7. To state a primary violation, plaintiff must allege that defendant "(1) made an untrue statement of material fact or omitted a material fact that rendered the statements misleading, (2) in connection with the purchase or sale of a security, (3) with scienter, and (4) which caused plaintiff's losses." *Schatz*, 943 F.2d at 489.

FN8. For post-*Jacques* case expounding on the requirement of "contractual privity or its equivalent" when only economic loss is alleged, see *Weisman*, 312 Md. at 449 (face-to-face interaction during pre-contractual business discussions "more closely resembles the intimacy of the *Glanzer* parties" and is equivalent to contractual privity), *Giant Food, Inc. v. Ice King, Inc.*, 74 Md.App. 183, 191, 536 A.2d 1182 (1988) (business relationship extending over seven months is a "special relationship" that "indicates the presence of an 'intimate nexus' akin to a contractual relationship or its 'equivalent' "), and *Flow Indus., Inc. v. Fields Constr. Co.*, 683 F.Supp. 527, 529 (D.Md.1988).

FN9. Liability for negligent misrepresentation resulting only in pecuniary loss (the type of injury alleged in the present case) is not broad. As the Court of Appeals has stated: "liability for negligent misrepresentation is more restricted than that for fraudulent misrepresentation, and liability for negligent misrepresentation resulting only in pecuniary loss is more restricted than that for negligent misrepresentation resulting in physical harm." *Village*, 315 Md. at 756-57.

FN10. The instant case seems more akin to *Ultramares* than *Village*.

D.Md.,1992.
Quest Medical, Inc. v. Kischner Medical Corp.
Not Reported in F.Supp., 1992 WL 311193

Briefs and Other Related Documents (Back to top)

• 1:90cv02409 (Docket) (Sep. 13, 1990)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.