# EXHIBIT U

Westlaw.

Slip Copy                                                                                                  Page 1

Slip Copy, 2005 WL 974933
(Cite as: Slip Copy)

Slip Copy, 2005 WL 974933
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,E.D. Pennsylvania.
SCANSOURCE, INC.
v.
DATAVISION-PROLOGIX, INC., et al.
No. Civ.A. 04-CV-4271.

April 26, 2005.

Carl W. Hittinger, Philadelphia, PA, for Scansource, Inc.
Michele D. Hangley, Philadelphia, PA, for Datavision-Prologix, Inc., et al.

*MEMORANDUM & ORDER*

SURRICK, J.
*1 Presently before the Court are the Motions to Dismiss Plaintiff's Complaint of Defendant Paul J. Speese ("Speese") (Doc. No. 7) and Defendant Edward Barr ("Barr") (Doc. No. 8). For the following reasons, Defendants' Motions will be granted.

I. BACKGROUND

Plaintiff ScanSource, Inc. ("ScanSource") is a South Carolina corporation that distributes various specialty technologies, including automatic data capture and point-of-sale products. (Verified Compl. ¶¶ 6-7.) Defendant Datavision-Prologix, Inc. ("Datavision") is a Pennsylvania corporation that resold various ScanSource products. (*Id.* ¶¶ 12-13.) Defendant Speese was the President and Chief Executive Officer of Defendant Datavision. (*Id.* ¶ 15.) Defendant Barr was Datavision's Chief Financial Officer. (*Id.* ¶ 16.)

In February, 1995, ScanSource extended a line of credit to Datavision. (*Id.* ¶ 19.) During the summer of 2001, Datavision requested an increase of this credit line to $2,000,000. (*Id.* ¶ 20.) In exchange for the additional credit, Datavision entered into a Security Agreement ("Agreement") with ScanSource. (*Id.* ¶ 21.) Under the terms of this Agreement, Datavision agreed to: (1) provide ScanSource with audited financial statements within 120 days of the end of each fiscal year; (2) provide ScanSource with unaudited, quarterly financial statements within thirty (30) days of the end of each fiscal quarter; (3) provide ScanSource with a copy of the borrower base certificate that it sends to its primary lender, as well as appropriate accounts receivable and inventory data, on a monthly basis; and (4) maintain a tangible net worth of either at least $2,000,000 or the amount owed to ScanSource, whichever is greater. (*Id.* ¶ 22.)

Plaintiff alleges that Datavision did not comply with the terms of the Agreement and that Defendants made misrepresentations to ScanSource. Specifically, Plaintiff ScanSource avers that the Defendants misrepresented the value of their accounts receivable and inventory. (*Id.* ¶¶ 91-92, 98-99.) In March, 2004, Datavision reported in its Borrower's Certificate that it had a collateral base of $9,672,907 in accounts receivable and $8,093,793.41 of inventory. (*Id.* ¶ 40.) This certificate was signed by Defendant Speese (*id.* ¶ 42, Ex. D), and was provided to ScanSource on or about April 5, 2004. (*Id.* 43, Ex. D.) ScanSource avers that it "believed and justifiably relied upon these representations." (*Id.* ¶ 95.)

ScanSource filed the instant Complaint on September 9, 2004. (Doc. No. 1.) The Complaint contains four counts: Count I alleges breach of contract against Defendant Datavision only (Verified Compl. ¶¶ 74-82 ); Count II alleges breach of the implied covenant of good faith and fair dealing against Defendant Datavision only (*id.* ¶¶ 83-89); Count III alleges fraud against all Defendants (*id.* ¶¶ 90-96); and Count IV alleges

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 2

Slip Copy, 2005 WL 974933
(Cite as: Slip Copy)

negligent misrepresentation against all Defendants (*id.* ¶¶ 97-102). On December 13, 2004, ScanSource requested an entry of default against Datavision. (Doc. No. 13.) The default was entered by the Clerk the same day. Default judgment against Datavision in the amount of $1,480,932.34 was entered by the Court on March 2, 2005. (Doc. No. 16).

*2 In their Motions to Dismiss, Defendants Speese and Barr seek dismissal of Count III charging them with fraud and Count IV charging them with negligent misrepresentation.

## II. LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss, we must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). The court may dismiss a complaint only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." ' *H. J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). When considering a motion to dismiss, we need not credit a plaintiff's "bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997) (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429-30 (3d Cir.1997)).

## III. LEGAL ANALYSIS

### A. Count III-Plaintiff's Fraud Claim

To plead a cause of action for fraud under Pennsylvania law, a plaintiff must show: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to its truth or falsity; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. FN1 *Gibbs v. Ernst,* 538 Pa. 193, 647 A.2d 882, 889 (Pa.1994) (citing W. Page Keeton, Prosser & Keeton on Torts § 105 (5th ed.1984); Restatement (Second) of Torts § 525 (1977)).

FN1. In a diversity case such as this one, a district court must determine which state's substantive law will govern. To make this determination, we must apply the conflict of law rules of the forum state. *Kirschbaum v. WRGSB Assocs.,* 243 F.3d 145, 150 (3d Cir.2001). Pennsylvania's choice of law analysis incorporates elements of both the "government interest" and "significant relationship" tests. *Id.* at 151.
Either Pennsylvania or South Carolina law applies to Plaintiff's fraud claim. The elements of fraud in Pennsylvania and South Carolina are very similar. *Compare Gibbs,* 647 A.2d at 889, *with Cheney Bros. v. Batesville Casket Co., Inc.,* 47 F.3d 111, 114-15 (4th Cir.1995), *and Florentine Corp., Inc. v. PEDA I, Inc.,* 287 S.C. 382, 339 S.E.2d 112, 114 (S.C.1985). Both states require justifiable reliance, which is what is at issue here. Under the circumstances, we will "presume that the law of the forum state shall apply." *Financial Software Sys., Inc. v. First Union Nat'l Bank,* Civ. A. No. 99-CV-623, 1999 U.S. Dist. LEXIS 19479, at *8 (E.D. Pa. Dec. 16, 1999); *see also Air Prods. & Chemicals, Inc. v. Eaton Metal Prods. Co.,* 272 F.Supp.2d 482, 490 n. 9 (E.D.Pa.2003); *Gallup, Inc. v. Talentpoint, Inc.,* Civ. A. No. 00-5523, 2001 U.S. Dist. LEXIS 18560, at *25 n. 3 (E.D.Pa. Nov. 15, 2001).

Defendants contend that Plaintiff has not pled fraud with the particularity required by Federal Rule of Civil Procedure 9(b). Greater particularity in pleading is required whenever fraud is averred. Under Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy	Page 3

Slip Copy, 2005 WL 974933
**(Cite as: Slip Copy)**

mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b) . The purpose of Rule 9(b) is " 'to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum v. Bank of Am.,* 361 F.3d 217, 223-24 (3d Cir.2004) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.,* 742 F.2d 786, 791 (3d Cir.1984)).

Plaintiff argues that "Rule 9(b) does not require that the detrimental reliance element of a fraud claim be pleaded with particularity." (Doc. No. 14 at 12.) Plaintiff cites *Williams Controls, Inc. v. Parente, Randolph, Orlando, Carey & Assocs.,* 39 F.Supp.2d 517, 534 (M.D.Pa.1999), and asserts that the issue of justifiable reliance should be decided by a jury, and that it is not readily susceptible of disposition through a motion to dismiss. (Doc. No. 14 at 15). *Williams Controls* is inapposite. In *Williams Controls,* the Court did not deal with or discuss the pleading requirements of Rule 9(b) as they relate to justifiable reliance. Moreover, the clear weight of authority requires that the detrimental reliance element of a fraud claim be pleaded with particularity under Rule 9(b). *Gutman v. Howard Savings Bank,* 748 F.Supp. 254, 257 (D.N.J.1990); *see also Learning Works, Inc. v. Learning Annex, Inc.,* 830 F.2d 541, 546 (4th Cir.1987) (stating " reliance must be pleaded with particularity" and dismissing fraud claim for failure to plead reliance with particularity); *Bank of Am. v. Lemgruber,* No. 02 Civ. 1041, 2005 U.S. Dist. LEXIS 61, at *77 (S.D.N.Y. Jan. 5, 2005) ("[J]ustifiable reliance must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b)."); *Amzak Corp. v. Reliant Energy, Inc.,* No. 03 C 0877, 2004 U.S. Dist. LEXIS 16514, at *16-17 (N.D.Ill. Aug. 19, 2004) ("To sufficiently plead reliance, plaintiffs would have to link one or more of the alleged misrepresentations with a specific act of reliance.").

*3 In support of its fraud claim, Plaintiff's Verified Complaint alleges that Defendants made false representations of fact on March 31, 2004, when they misrepresented the value of Datavision's accounts receivable and inventory. (Verified Compl. ¶¶ 91-92.) ScanSource also alleges that it "believed and justifiably relied upon" these asserted misrepresentations made by Defendants. (*Id.* ¶ 95.) However, Plaintiff offers no details whatsoever about the contours of this asserted justifiable reliance and it avers nothing regarding the decisions that it made as a result of Defendants' asserted misrepresentations. The Verified Complaint never avers that ScanSource took or declined to take action in reliance on Defendants' asserted misrepresentations, nor is there any suggestion in the Verified Complaint that any reliance on the part of ScanSource was justifiable. In Plaintiff's Response to Defendants' Motions to Dismiss, Plaintiff argues that "[d]iscovery will show that following the fraudulent misrepresentations of Datavision, Speese and Barr, ScanSource continued to extend substantial additional credit to Datavision in reliance thereon." (Doc. No. 14 at 15.) Given this unequivocal statement, Plaintiff presumably could have either included this assertion in its Verified Complaint or sought to amend it in an attempt to satisfy the pleading requirements of Rule 9(b). It did not.

"To survive a 9(b) motion, plaintiff must show that [it] acted upon the fraud or misrepresentation complained of." *Gutman,* 748 F.Supp. at 258. Because Plaintiff does not plead justifiable reliance with the particularity required by Rule 9(b), we are compelled to dismiss the Count III fraud claim against Defendants Speese and Barr.

B. Count IV-Plaintiff's Negligent Misrepresentation Claim

Defendants argue that Count IV alleging negligent misrepresentation should be dismissed under the economic loss doctrine. Pennsylvania courts exhibit "a 'lack of hospitality to tort liability for purely economic loss." ' FN2 *Werwinski v. Ford Motor Co.,* 286 F.3d 661, 680 (3d Cir.2002) (quoting *Aloe Coal Co. v. Clark Equip. Co.,* 816 F.2d 110, 119 (3d Cir.1987)). As a result, Pennsylvania courts have fashioned the economic loss doctrine, which " 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." ' *Id.* at 671 (quoting

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 4

Slip Copy, 2005 WL 974933
**(Cite as: Slip Copy)**

*Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 618 (3d Cir.1995)); *see also Brunson Communications, Inc. v. Arbitron, Inc.,* 266 F.Supp.2d 377, 383 (E.D.Pa.2003) ("[A] plaintiff cannot recover on a negligence theory for purely economic damages.") (citing *David Pflumm Paving & Excavating, Inc. v. Found. Servs. Co.,* 816 A.2d 1164, 1168 (Pa.Super.Ct.2003)).

> FN2. South Carolina law also recognizes that the economic loss rule applies "in a commercial transaction governed by a contract where the alleged loss is purely economic and the cause of action is for mere negligent misrepresentation...." *Bishop Logging Co. v. John Deere Industrial Equip. Co.,* 317 S.C. 520, 455 S.E.2d 183, 189 (S.C.Ct.App.1995) (citing *S.C. Elec. & Gas Co. v. Westinghouse Elec. Co.,* 826 F.Supp. 1549 (D.S.C.1993)); *see also Laidlaw Envtl. Servs. v. Honeywell, Inc.,* 966 F.Supp. 1401, 1414-15 (D.S.C.1996). Since Pennsylvania and South Carolina both recognize the applicability of the economic loss doctrine, we will apply the law of Pennsylvania.

The economic loss doctrine applies to a plaintiff's negligent misrepresentation claim. *I & S Assocs. Trust v. LaSalle Nat'l Bank,* Civ. A. No. 99-4956, 2001 U.S. Dist. LEXIS 15225, at *9-10 (E.D.Pa. Sept. 27, 2001) (citing *N. Am. Roofing & Sheet Metal Co., Inc. v. Bldg. & Constr. Trades Council of Phila. & Vicinity,* Civ. A. No. 99-2050, 2000 U.S. Dist. LEXIS 2040 (E.D.Pa. Feb.29, 2000)). In its Verified Complaint, Plaintiff alleges that Defendants made misrepresentations about certain financial data in breach of Datavision's Agreement with ScanSource regarding a line of credit for the sale of various specialty technologies. (Verified Compl. ¶¶ 98-99 (asserting that all Defendants negligently misrepresented the value of Datavision's accounts receivable and inventory).) This negligent misrepresentation claim seeks purely economic damages: (1) compensatory and consequential damages; (2) punitive damages; and (3) pre-judgment and post-judgment interest. FN3

(Verified Compl. at 17.) Thus, absent an applicable exception to the economic loss doctrine, Plaintiff is barred from pursuing its negligent misrepresentation claim against Defendants Speese and Barr. *See I & S Assocs. Trust,* 2001 U.S. Dist. LEXIS 15225, at *9 (concluding that "the economic loss doctrine bars a plaintiff from bringing a negligence action solely for economic losses absent physical injury or property damage") (citing *Ellenbogen v. PNC Bank,* 731 A.2d 175, 188 (Pa.Super.Ct.1999)).

> FN3. The averments in this count arise from some of the same asserted misrepresentations which form the basis of Plaintiff's breach of contract claim. (Verified Compl. ¶ 77 (Defendant Datavision breached its contract with Plaintiff, in part, when it "misrepresented the amount of both its inventory and its accounts receivable....").) In Plaintiff's breach of contract claim against Defendant Datavision, it also seeks similar economic damages: (1) compensatory and consequential damages; and (2) pre-judgment and post-judgment interest. (*Id.* at 13.)

*4 Under two narrow exceptions, a plaintiff may recover purely economic loss which resulted from a defendant's misrepresentation when: (1) the misrepresentation is intentionally false; or (2) the defendant is " 'in the business of supplying information for the guidance of others." ' *N. Am. Roofing & Sheet Metal Co., Inc.,* 2000 U.S. Dist. LEXIS 2040, at *27 (quoting *Palco Linings, Inc. v. Pavex, Inc.,* 755 F.Supp. 1269, 1274 (M.D.Pa.1990)). The first exception deals with intentionally false misrepresentations and obviously has no application to the negligent misrepresentation alleged in Count IV. The second exception "is rigidly applied and narrowly construed to except only claims which explicitly involve suppliers of information for guidance of others in business transactions...." *Palco Linings, Inc.,* 755 F.Supp. at 1274; *see also id.* (explaining that exception only applies "to those *in the business* of selling information on which its customers rely upon in taking additional action"

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Page 5

Slip Copy, 2005 WL 974933
(Cite as: Slip Copy)

such as attorneys, surveyors, and inspectors of goods); *S.C. Elec. & Gas Co. v. Westinghouse Elec. Co.*, 826 F.Supp. 1549, 1557 (D.S.C.1993) ("Most courts which have rejected the economic loss rule in negligent misrepresentation cases have limited recovery to a misrepresentation in giving information by someone hired to advise.").

The second exception also does not apply to Plaintiff ScanSource's negligent misrepresentation claim against Defendants Speese and Barr. Defendant Datavision is not in the business of supplying information for the assistance of others. (*Id.* ¶¶ 11-13.) Rather, Datavision distributes automatic data capture and point-of-sale products, as well as other peripheral technologies. (*Id.* ¶ 11.) Because Datavision is not in the business of providing information for the guidance of others, its corporate officers cannot engage in conduct that falls within this second exception to the economic loss doctrine. *See LaSalle Bank Nat'l Assoc. v. Epstein*, No. 99 C 7820, 2001 U.S. Dist. LEXIS 12016, at *30-31 (N.D.Ill. Aug. 15, 2001). Plaintiff may not pursue the negligent misrepresentation claim against Defendants Speese and Barr.

An appropriate Order follows.

### ORDER

AND NOW, this 26th day of April, 2005, upon consideration of the Motions to Dismiss Plaintiff's Complaint of Defendants Paul J. Speese and Edward Barr, and all papers submitted in support thereof and in opposition thereto, it is ORDERED as follows:
 1. Defendant Paul J. Speese's Motion to Dismiss (Doc. No. 7) is GRANTED; and
 2. Defendant Edward Barr's Motion to Dismiss (Doc. No. 8) is GRANTED.

IT IS SO ORDERED.

E.D.Pa.,2005.
ScanSource, Inc. v. Datavision--Prologix, Inc.
Slip Copy, 2005 WL 974933

Briefs and Other Related Documents (Back to top)

• 2:04cv04271 (Docket) (Sep. 09, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.