# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROYAL INDEMNITY COMPANY,      :
                              :
          Plaintiff,          :
                              :
     v.                       :      Civil Action No. 05-165-JJF
                              :
PEPPER HAMILTON LLP, et al.,  :
                              : .
          Defendants.         :

## O R D E R

WHEREAS, the Court held a Status Conference on June 9, 2005;

NOW THEREFORE, IT IS HEREBY ORDERED that:

1) All briefing for motions to dismiss shall be completed **no later than Tuesday, August 16, 2005;**

2) The parties shall confer and submit an agreed-upon schedule for written discovery **no later than Tuesday, August 16, 2005;**

3) Written discovery shall commence on **Wednesday, September 7, 2005;**

4) The parties shall submit, **no later than Tuesday, August 16, 2005,** their preferences for trial dates: December 2006, late January 2007, or March 2007.

June 13, 2005
   DATE

UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROYAL INDEMNITY COMPANY, )
)
Plaintiff, )
)    C.A. No. 05-165-JJF
vs. )
)    Judge Joseph J. Farnan, Jr.
PEPPER HAMILTON LLP, W. RODERICK )
GAGNÉ, FREED MAXICK & BATTAGLIA )
CPAs PC, MCGLADREY & PULLEN LLP and )
MICHAEL AQUINO, )
Defendants. )

## SCHEDULING ORDER

This 31 day of August, 2005, the Court having conducted an initial status conference

on June 9, 2005, and the parties having determined after discussion that the matter cannot be

resolved at this juncture by settlement, voluntary mediation, or binding arbitration;

IT IS ORDERED that:

1.    Written discovery may commence on September 7, 2005.

2.    The parties shall serve Rule 26(a)(1)(A) disclosures on or before

October 3, 2005.

3.    The Court shall hold a discovery conference on November 18, 2005 at 9:00 a.m.,

in Courtroom No. 4B on the 4th floor, United States Courthouse, Boggs Federal

Building, Wilmington, Delaware. The parties shall meet and confer at least three

days prior to that conference.

4.    The Court shall hold a second discovery conference, if necessary, on a date to be

determined.

5.    Unless otherwise ordered by the Court, contention interrogatories shall not be served until after the Court enters a decision on the pending Rule 12(b)(6) motions to dismiss made by the defendants in this action.

6.    Nothing contained herein shall preclude the parties from seeking further written discovery at later points in the litigation, including the period during which depositions are being taken.

7.    A Pretrial Conference will be held on **Thursday, February 8, 2007 at 1:00 p.m.**, in Courtroom No. 4B on the 4th floor, United States Courthouse, Boggs Federal Building, Wilmington, Delaware.   Trial shall be scheduled during the pretrial conference to commence within 120 of the pretrial conference.

HONORABLE JOSEPH J. FARNAN, JR.
UNITED STATES DISTRICT JUDGE

11928538

-2-

# EXHIBIT B

# In The Matter Of:

*MBIA Insurance Corp., et al.   v.*
*Royal Indemnity Co.*

---

*Hearing*
*June 9, 2005*

---

*Hawkins Reporting Service*
*715 N. King Street, Suite 3*
*Wilmington, DE  19801*
*(302) 658-6697*

*Original File 05CT009.TXT, 39 Pages*
*Min-U-Script® File ID: 3858572198*

# Word Index included with this Min-U-Script®

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MBIA INSURANCE CORP., :
ET AL., :
   Plaintiffs, : C.A. Nos. 02-1294 JJF,
   : 04-1551 JJF, 05-72 JJF,
   : 05-165 JJF
   v. :
ROYAL INDEMNITY CO., :
   Defendant, :
   v. :
McGLADREY & PULLEN LLP, :
MICHAEL AQUINO, PEPPER :
HAMILTON, :
   Potential Third-Party :
   Defendants. :

United States District Court
844 King Street
Wilmington, Delaware
Thursday, June 9, 2005
3:30 p.m.
** Conference **

BEFORE: THE HONORABLE JOSEPH J. FARNAN, JR.
United States District Court Judge

**Page 2**

APPEARANCES:
   KENNETH J. PFAEHLER, ESQ.
    SONNENSCHEIN NATH & ROSENTHAL LLP
    and
   PHILIP TRAINER, JR., ESQ.
    ASHBY & GEDDES
    for Royal Indemnity
   CHARLENE D. DAVIS, ESQ.
   CHRIS A. WARD, ESQ.
    THE BAYARD FIRM
    and
   CHARLES STANZIALE, ESQ.
   DONALD J. CRECCA, ESQ.
    SCHWARTZ TOBIA
    and
   JAMES J. RODGERS, ESQ.
    DILWORTH PAXSON LLP
    for Chapter 7 Trustee
   VERONICA E. RENDON, ESQ.
    ARNOLD & PORTER LLP
    and
   CHRISTOPHER M. WINTER, ESQ.
    DUANE MORRIS LLP
    for McGladrey & Pullen
   ELIZABETH K. AINSLIE, ESQ.
    SCHNADER HARRISON SEGAL & LEWIS LLP
    and
   WILLIAM H. SUDELL, JR., ESQ.
    MORRIS NICHOLS ARSHT & TUNNELL
    for Pepper Hamilton and Gagne
   KAREN LEE TURNER, ESQ.
   NEIL G. EPSTEIN, ESQ.
    ECKERT SEAMANS CHERIN & MELLOTT LLC
    for Gagne (individually) and family and
    trusts
   JOHN W. SHAW, ESQ.
    YOUNG CONAWAY STARGATT & TAYLOR LLP
    and
   STEVEN E. OBUS, ESQ.
    PROSKAUER ROSE LLP
    for Wells Fargo

**Page 3**

APPEARANCES, cont'd:
   JONATHAN A. WEXLER, ESQ.
    VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
    and
   J. CLAYTON ATHEY, ESQ.
    PRICKETT JONES & ELLIOTT, P.A.
    for Freed, Maxick & Battaglia

**Page 4**

[1] THE COURT: All right. Be seated, [2] please. Good afternoon.

[3] Do you want to announce your appearances [4] of the Court Reporter.

[5] MS. DAVIS: Good afternoon, Your Honor. [6] Charlene Davis with The Bayard Firm, appearing on [7] behalf of Charlie A. Stanziale, Jr., the Chapter 7 [8] Trustee of Student Finance Corporation.

With me in [9] the courtroom is Mr. Stanziale —

[10] THE COURT: Good afternoon. [11] MS. DAVIS — and Donald Crecca of [12] Mr. Stanziale's firm —

[13] MR. CRECCA: Nice to meet you, sir.

[14] THE COURT: Good afternoon.

[15] MS. DAVIS — and Jim Rodgers of the firm [16] of Dilworth Paxson —

[17] MR. RODGERS: Good afternoon, Your [18] Honor.

[19] THE COURT: Good afternoon.

[20] MS. DAVIS: — and my colleague, Chris [21] Ward. We're all appearing on behalf of Mr. Stanziale.

[22] THE COURT: Good afternoon. Thank you.

[23] MR. TRAINER: Good afternoon, Your [24] Honor. Philip Trainer, Ashby & Geddes, on behalf of

**Page 5**

[1] Royal Indemnity Company.

[2] With me in the courtroom today is Ken [3] Pfaehler of the Sonnenschein firm.

[4] MR. PFAEHLER: Good afternoon.

[5] THE COURT: Good afternoon.

[6] MR. TRAINER: Thank you, Your Honor.

[7] THE COURT: Thank you.

[8] MR. TRAINER: Mr. Pfaehler has been [9] admitted pro hac vice, Your Honor.

[10] THE COURT: All right.

[11] MR. WINTER: Good afternoon, Your Honor. [12] Chris Winter here for McGladrey & Pullen and Michael [13] Aquino. Veronica Rendon of Arnold & Porter is here [14] with me today.

[15] MS. RENDON: Good afternoon, Your Honor.

[16] THE COURT: Good afternoon.

[17] MR. ATHEY: Good afternoon, Your Honor.

[18] THE COURT: Good afternoon.

[19] MR. ATHEY: Clayton Athey with Prickett [20] Jones & Elliott on behalf of Freed Maxick & Battaglia. [21] With me is Jonathan Wexler of the Vedder Price firm [22] who has a pro hac motion pending.

[23] THE COURT: All right. I think I saw [24] that and I think it's been put back through that

**Page 6**

[1] system, so you should get that.

[2] MR. ATHEY: Okay. Thank you.

[3] THE COURT: You're welcome.

[4] MR. SUDELL: Good afternoon, Your Honor. [5] William Sudell, Morris Nichols Arsht & Tunnell, for [6] Pepper Hamilton

and Mr. Gagne. My co-counsel, [7] Elizabeth Ainslie, expected to be here but she is not [8] as yet, Your Honor. I expect she's on her way and has [9] been delayed.

[10] THE COURT: All right. Thank you.

[11] MR. SUDELL: Thank you.

[12] MS. TURNER: Good afternoon, Your Honor. [13] Karen Lee Turner of Eckert Seamans. We represent [14] Mr. Gagne individually, Pamela Gagne, Robert Bast and [15] various family trusts. With me from our Philadelphia [16] office is Neil Epstein.

[17] THE COURT: Good afternoon.

[18] MR. SHAW: Good afternoon, Your Honor. [19] John Shaw from Young Conaway Stargatt & Taylor for [20] Wells Fargo, and with me is Steve Obus from Proskauer [21] Rose.

[22] MR. OBUS: Good afternoon.

[23] THE COURT: Good afternoon.

[24] Okay. We're here to discuss how this

**Page 7**

[1] case moves forward. Who wants to begin on the [2] Plaintiff's side?

[3] MS. DAVIS: Your Honor, the Court issued [4] an Order in the case of Charles Stanziale versus [5] McGladrey Pullen setting this conference today and [6] it's our belief, correctly or incorrectly, that it was [7] in response to a letter written by Mr. Crecca to the [8] Court in which he suggested that the Court consider [9] and the parties consider consolidating four cases, or [10] five cases actually, for certain purposes of Discovery [11] since there is a tremendous amount of overlap in the [12] issues in the Discovery that will be necessary with [13] respect to those cases and that's precisely what the [14] Trustee would like the Court to consider doing.

[15] THE COURT: All right. And what is the [16] Trustee's thoughts concerning time frames roughly, or [17] generally?

[18] MR. CRECCA: Your Honor, we had a short [19] meeting before we came here today and Mr. Rodgers, my [20] co-counsel here, who represents the Trustee in the [21] Dilworth matter, we have the Form of Order that the [22] Court uses for case management and we just penciled in [23] some dates among ourselves to see if there could be [24] any agreement among counsel as to time frames.

**Page 8**

[1] MR. RODGERS: Candidly, we have not [2] discussed scheduling with the other side yet, Your [3] Honor, because of the kind of the large diversity in [4] parties. We weren't sure whether the Court had any [5] particular ideas at this point. We were thinking [6] generally in

terms of having written Discovery [7] concluded around the end of this year and then working [8] toward trial dates late next year, and there are —

[9] I think the issues that we're going to [10] have to grapple with principally will involve [11] coordination with regard to deposition Discovery [12] because there are going to be a lot of witnesses. The [13] core of witnesses here as I certainly understand it [14] are common to most, if not all, of these cases, and [15] the challenge that we will have is to get those people [16] deposed in a sufficient a manner as possible without [17] duplicating effort, wasting time and expense. But [18] beyond that we have not given specific thought to [19] detail except perhaps to set expert witness deadlines [20] for late next spring.

[21] THE COURT: When you say written [22] Discovery by the end of the year, are you talking [23] about document production, Interrogatories?

[24] MR. RODGERS: Correct, Your Honor.

---

Page 9

[1] Complete document production and Interrogatory [2] Discovery.

[3] THE COURT: By the end of the year. And [4] then you're thinking that you would sometime in the [5] first six months of 2006 conduct and complete your [6] deposition effort?

[7] MR. RODGERS: That's right, Your Honor. [8] We wouldn't necessarily provide that you couldn't [9] commence any depositions until the end of the year, [10] but the notion being to focus on the written Discovery [11] initially.

[12] THE COURT: And then your thought is a [13] trial by or toward the end of 2006?

[14] MR. RODGERS: Correct, Your Honor.

[15] THE COURT: Is it the Trustee's view [16] that that trial would separate issues ... parties? [17] How do you envision a trial?

[18] MR. RODGERS: Well, Your Honor, I think [19] it may be a little early for us to reach that [20] conclusion. I think there's certainly a possibility [21] that there will be the opportunity to try all or parts [22] of some of these cases together, but we think it may [23] be premature to finally resolve that at this point.

[24] THE COURT: So you want consolidated

---

Page 10

[1] Discovery and have an open trial plan that basically [2] is open to any efficient effort to get the issues and [3] parties tried.

[4] MR. RODGERS: That's our view at this [5] point, Your Honor.

---

[6] THE COURT: Okay. All right. Thank [7] you.

[8] MR. RODGERS: Thank you.

[9] THE COURT: All right. Let's hear from [10] the other side.

[11] Oh, I'm sorry.

[12] MR. PFAEHLER: Your Honor, I was going [13] to speak for Royal, unless you'd rather hear from the [14] Defendants.

[15] THE COURT: No. Go ahead. Do you [16] disagree with the Trustee?

[17] MR. PFAEHLER: Just some modifications [18] on it. We would agree to written Discovery cutting [19] off toward the end of the year, but we don't want to [20] wait to start depositions till the end of the year. [21] We see no reason in postponing Discovery at this point [22] and if depositions are appropriate, we think they [23] should begin. We also think this case — we agree [24] with the Trustee. It should be consolidated, all four

---

Page 11

[1] cases, for Discovery purposes. We also believe it [2] should be consolidated for trial, and we'll be filing [3] a motion shortly toward that end.

[4] THE COURT: Now with regard to [5] depositions and there being no stay on the [6] commencement of depositions, typically in these kinds [7] of cases it's one shot at deposition only, and is what [8] you're saying is you're satisfied to go forward on [9] depositions you notice with no exchange of [10] Interrogatory, no receipt of Interrogatory responses [11] and without the full document production being [12] completed, understanding that once you have your [13] deposition, if something comes up in later-produced [14] documents or supplemental Interrogatory Answers, that [15] you won't be able to go back at the witness?

[16] MR. PFAEHLER: Your Honor, in our view [17] it depends on the witness. There's obviously some [18] witnesses, and the major ones here, where it makes [19] sense to wait for the Interrogatories and the document [20] production. There may be some witnesses who could be [21] started on early. We think there's going to be a [22] large number of depositions in the case and we are [23] just opposed to a firm rule saying that we can't start [24] noticing depositions or trying to agree consensually

---

Page 12

[1] on dates until all written Discovery is complete.

[2] THE COURT: All right. I understand [3] your position. Thank you.

[4] MR. CRECCA: Your Honor, please, if I [5] just may on behalf of the Trustee. We

---

represent the [6] Trustee in the McGladrey litigation and I would prefer [7] to have written Discovery completed before I begin [8] depositions. I don't want to be in a situation where [9] I've taken the deposition and then Interrogatories or [10] documents come back and I've already deposed the [11] witness, so as far as I'm concerned I would like [12] written Discovery, document production, Requests for [13] Admissions, et cetera, completed before I begin my [14] oral deposition.

[15] THE COURT: All right. Thank you. All [16] right. We'll go to the Defendant's side and you've [17] been drug in here on the idea of consolidation and [18] getting a trial date, I guess, and some Discovery [19] before you get to trial. So who wants to go first?

[20] MS. RENDON: Good afternoon, Your Honor. [21] Veronica Rendon on behalf of McGladrey & Pullen and [22] Michael Aquino.

[23] I have a number of reactions to what [24] Your Honor just heard, the first of which is this is

---

Page 13

[1] just moving way too quickly. McGladrey & Pullen and [2] Mr. Aquino were only sued in March of this year. They [3] do not have the level of knowledge of a party such as [4] Royal, they do not have the level of knowledge of a [5] party such as the Trustee who have been involved in [6] Student Finance litigation for quite some time. You [7] even hear some disagreement amongst the Plaintiffs [8] themselves as a result of Royal's highest level of [9] knowledge as resulting from it, having broad [10] litigations all over the country and already having [11] engaged in written Discovery in many of those [12] litigations as well as a lot of deposition Discovery.

[13] The Trustee as well has been involved in [14] 2004 Discovery, written Discovery, has received [15] documents, and all of this just has not happened for [16] McGladrey & Pullen and Mr. Aquino who are brand new to [17] these litigations. We do not have the heightened [18] level of knowledge of these parties. We are not [19] prepared to contemplate Discovery on the massive level [20] that's being considered here.

[21] What I would suggest to the Judge is [22] this: McGladrey & Pullen and Michael Aquino, as I [23] say, were sued only in March, 2005 of this year. They [24] were sued by the Trustee as well as by Royal Indemnity

---

Page 14

[1] in separate lawsuits. McGladrey & Pullen has a [2] fully-submitted Motion to Dismiss the Trustee claim. [3] It is a very

---

**Min-U-Script®**

strong motion, Your Honor. Without [4] patting ourselves too much on the back, we are very [5] confident in our ability to succeed on that motion, [6] and the thought of being dragged through this level of [7] Discovery while we have a Motion to Dismiss that we [8] believe is extremely meritorious pending is very [9] distasteful.

[10] The type of Discovery that's being [11] contemplated, just the document Discovery alone, would [12] be a substantial cost and humongous burden for a party [13] that may well be dismissed very soon. The same can be [14] said in the Royal litigation.

[15] McGladrey & Pullen and Mr. Aquino will [16] be filing a Motion to Dismiss tomorrow. Royal will be [17] opposing that motion at the end of July and we will [18] file a Reply Brief very soon thereafter. We believe [19] that no Discovery should occur until those motions [20] have been decided by the Court. If McGladrey & Pullen [21] and Mr. Aquino are to be dismissed from these actions, [22] as we believe they will be, and I'll describe for Your [23] Honor quickly and very briefly the substance of our [24] motions.

---
Page 15

[1] THE COURT: Don't do that today.

[2] MR. CRECCA: Your Honor, may I just be [3] heard for a second? I think we're getting into [4] something right now, commenting on motions that are [5] before the Court.

[6] THE COURT: Right. I can take care of [7] that. I don't need you to help me.

[8] MS. RENDON: Your Honor, I don't mean [9] to —

[10] THE COURT: So don't. Don't talk about [11] the substance of any motions.

[12] MS. RENDON: I don't mean to.

[13] THE COURT: We're only here about [14] scheduling. I understand what you're saying. You [15] think your motions have merit.

[16] MS. RENDON: Right. And I didn't mean [17] to prematurely get into any argument on the motions. [18] I simply wanted to explain to Your Honor that while [19] the procedural complexities of this matter are great, [20] the bases for the Motion to Dismiss are very simple [21] and we believe will be meritorious. I won't speak [22] further because I don't want to go against what Your [23] Honor just asked me not to do, but I simply would say [24] that it's apparent to us that we may well get out of

---
Page 16

[1] these litigations.

[2] The type of Discovery that Royal has [3] discussed, even that the Trustee is contemplating, is [4] written Discovery of

an incredible amount of [5] parties — MBIA, Wells Fargo, PNC, Royal, Andrew Yow, [6] Student Finance Corp., Student Marketing Services, [7] Student Loan Services, the Trustee, Pepper, Pepper [8] Hamilton, Rod Gagne, SWH, all of the truck schools [9] which are located throughout this country, in Kentucky [10] and Tennessee, Sonnenschein perhaps itself, Lufboro, [11] the brokers for Student Finance Corp. — and that's [12] just who I can guess looking at just the face of these [13] Complaints.

[14] The thought of engaging in a massive [15] amount of written Discovery and possibly deposition [16] Discovery while we believe we'll be dismissed very [17] soon from this case is overwhelming, and yet that's [18] exactly what we would have to launch into, and I [19] suspect that given the heightened level of knowledge [20] and the uneven playing field here, both Royal and the [21] Trustee will be able to proceed and will want to [22] proceed with guns blazing and come out and do very [23] hard-core Discovery in these matters, and McGladrey & [24] Pullen should be able to at least get up to speed.

---
Page 17

[1] Your Honor, in all candor, we are simply [2] trying to get our arms around all of the litigations [3] that have been filed and in which we're contemplating [4] consolidation here, and while we believe that there [5] might be some core facts that overlap, it is apparent [6] to us, even on the level of knowledge that we have [7] now, that there are huge differences in these [8] litigations.

[9] For instance, in the MBIA/Wells Fargo [10] litigation, there's a portion up on the Third Circuit [11] right now as I'm sure Your Honor is aware that [12] basically you have insurance coverage issues in [13] dispute and what the bounds of insurance policies are. [14] That's not in dispute in the McGladrey & Pullen [15] matter.

[16] In the other cases you have questions as [17] to Wells Fargo contractual responsibilities under [18] securitization transactions. Those are not at issue [19] in the McGladrey & Pullen litigation.

[20] In the Pepper/Pepper Hamilton and Rod [21] Gagne litigation there are allegations that relate [22] solely to Pepper Hamilton and Rod Gagne that [23] complicate the litigation, and I don't comment one way [24] or the other on the merits of that litigation but

---
Page 18

[1] simply that there are a lot of facts going on even in [2] that case that have nothing to do with the McGladrey & [3] Pullen and Michael Aquino litigation, and so to say [4] simply and to believe

simply that there is just this [5] kind of neatly packaged overlapping facts is not [6] true.

[7] To the extent that's true, it relates to [7] just Student Finance and Mr. Yow, and those likely are [8] those big ticket depositions that even Royal says it [9] wouldn't want to proceed with at this early point in [10] time.

[11] What we would ask, Your Honor, [12] respectfully is that no Discovery occur with respect [13] to any of this until McGladrey & Pullen and [14] Mr. Aquino's Motions to Dismiss are decided.

[15] In asking Your Honor that, what I'm [16] asking is also for you to recognize that Freed Maxick, [17] another accounting Defendant, has also made Motions to [18] Dismiss in the — will also make a Motion to Dismiss [19] in the litigation brought against it, and I understand [20] that Pepper Hamilton and Mr. Gagne will also bring a [21] Motion to Dismiss in the Royal litigation that also [22] will try to dismiss out all of the claims. Pepper [23] Hamilton and Rod Gagne have also sought to dismiss in [24] its entirety the Trustee's litigation and I guess,

---
Page 19

[1] Your Honor, from where I sit a smart thing to do would [2] be simply allow those motions to play out to see if [3] these parties are, in fact, removed from the [4] litigation before we're forced to go forward in very [5] expensive and time-consuming litigation.

[6] The other thing, Your Honor, that I [7] would point out and certainly that occurs to me is [8] that we're talking about scheduling orders and [9] possible approaches to Discovery that have never been [10] discussed informally amongst the parties.

[11] I understood actually walking in today [12] that what we were responding to was an initial [13] conference in front of Your Honor where there might be [14] talk about scheduling, a Rule 16(b) type scheduling [15] conference. That never occurred.

[16] The parties — there's a Scheduling [17] Order now that I'm aware of that have penciled-in [18] dates that have never even been discussed with the [19] other side.

[20] It might be that the parties could [21] negotiate some type of sensible Discovery plan, but it [22] seems to me that maybe a good place to start in [23] contemplating whether that's true is to allow the [24] parties to go forward the way they should under the

---
Page 20

[1] rules and allow them to meet and have a discussion and [2] see if there is some kind of sensible way to approach [3]

Discovery which may well in include, certainly at [4] least our preliminary thinking, might include staying [5] Discovery until there is a decision on the Motions to [6] Dismiss, but if that's not the case and there's some [7] reason why that's not the sensible way to proceed, I [8] believe the appropriate thing to do is to allow the [9] parties to discuss amongst themselves those issues [10] and see if they can come up with a reasonable and [11] rational Discovery and trial plan that makes sense and [12] that all the parties can agree to instead of trying to [13] do it in some ad hoc fashion right now in front of. [14] Your Honor and to burden the Court with those types of [15] considerations.

[16] Your Honor, frankly being as new to the [17] litigation as we are, to contemplate whether [18] consolidation is appropriate is very difficult to do. [19] To get the level of knowledge that these other parties [20] have, that Plaintiffs have, really we're just not [21] there. We have not been involved for years and years [22] and years in the litigation as these other parties [23] have. We're not as familiar with all of the claims [24] and the counterclaims and the motions and the

Page 21

[1] decisions on the motions that have issued in all of [2] these cases and to kind of be thrust into the position [3] of trying to make these difficult decisions being this [4] new to the litigation is very difficult to do and what [5] we would ask is just slow down a little bit, allow us [6] some time to get up to speed, at least to try to make [7] up for some of the differential here in the levels of [8] knowledge of the parties and then to have a meet and [9] confer where we can consider all of these thoughts and [10] come up with a rational Discovery plan.

[11] The parties have proven up and to this [12] point in my mind very able to have real negotiations [13] amongst themselves. We've worked through scheduling [14] Motions to Dismiss and in my mind all the parties were [15] very reasonable in their approach and very practical [16] in their approach to that and were able to carve out [17] schedules that made sense and that did not involve an [18] extraordinary amount of delay at all. In fact, I [19] shouldn't even use the word "extraordinary." It was [20] an expeditious way of proceeding.

[21] So I'm not trying to suggest that we [22] just have delay, delay, delay everywhere. I'm simply [23] saying that being brand new to the litigation as many [24] of these parties are, it seems to me the better

Page 22

[1] approach may well be to allow the

parties to discuss [2] amongst themselves, see if they can figure something [3] out informally and only come back to Your Honor after [4] that type of discussion has occurred and if there are [5] issues that Your Honor then needs to address and those [6] issues at that point will be much more crystallized [7] and certainly we will be in a better position to [8] discuss with you these types of things that the Court [9] is contemplating.

[10] THE COURT: All right. Thank you.

[11] MR. PFAEHLER: May I respond?

[12] THE COURT: No. Let's get through the [13] Defendants first.

[14] MS. AINSLIE: Good afternoon, Your [15] Honor. I'm Elizabeth Ainslie. I'm here for Pepper [16] Hamilton. I apologize. I was a few minutes late.

[17] THE COURT: No problem.

[18] MS. AINSLIE: I won't take much of the [19] Court's time. It does seem to me that much of what [20] has already been said makes sense.

[21] I hesitate to put the burden at this [22] point on the Court, but it does seem to me that from [23] the perspective of our clients' pocketbooks, it makes [24] sense for us not to engage in expensive Discovery if

Page 23

[1] the Court is going to examine, and I'm sure you will, [2] the Motions to Dismiss which do seem to me to have at [3] least substance. They raise substantial issues.

[4] We do have — all of our documents, [5] Pepper Hamilton's documents, are already in the hands [6] of the Trustee and I'm fairly certain that Royal has [7] had access to those documents as well, but we would be [8] opposed to Deposition discovery until after the [9] Motions to Dismiss have been decided.

[10] I also think that consolidation is [11] premature until we know how the various legal issues [12] are going to sort themselves out, what the Third [13] Circuit is going to do with Your Honor's decision on [14] the MBIA litigation and so on, so I think some of [15] these issues are thorny, but we need not address them [16] at this point. I think if we can address the Motions [17] to Dismiss first and perhaps simultaneously do some [18] document Discovery while waiting for deposition [19] Discovery until after Your Honor has ruled. That's [20] all I have to say.

[21] If Your Honor has questions I'm happy to [22] try to address them, but I thought I should let you [23] know how we feel.

[24] THE COURT: All right. Thank you.

Page 24

[1] MS. AINSLIE: Thank you very much.

[2] MR. WEXLER: Good afternoon, Your Honor. [3] Jonathan Wexler for Freed Maxick & Battaglia. We come [4] to these proceedings even more recently than the [5] McGladrey firm. We are not defendants in the [6] Trustee's action. We agree with Miss Rendon in that [7] in view of the substance of our Motion to Dismiss, [8] which will be similar to the arguments made by [9] Miss Rendon on behalf of McGladrey and Mr. Aquino, we [10] think that consolidation is way premature. We think [11] going forward with Discovery, which will be of a huge [12] volume in this case, is way premature for parties like [13] Freed Maxick & Battaglia who we believe will have a [14] decent chance of at least prevailing on a Motion to [15] Dismiss, so we would encourage that those motions be [16] considered by Your Honor well in advance of any [17] precipitous entry into discovery. Thank you, Judge.

[18] THE COURT: All right. Thank you.

[19] MR. EPSTEIN: Good afternoon, Your [20] Honor. Neil Epstein of Eckert Seamans. We represent [21] Rod Gagne individually, not in his role as an [22] attorney. We also represent his wife, his uncle and [23] several family trusts.

[24] These are primarily individuals and

Page 25

[1] trusts which would bear an enormous expense to have to [2] go through Discovery at this point when we have [3] motions pending before Your Honor to dismiss virtually [4] all counts against them in the suit by the Trustee [5] against those Defendants. So we join in the request [6] that Your Honor hold off with respect to even document [7] Discovery until after the motions have been resolved.

[8] We, too, are very confident in the [9] motions that we filed and to put us through the [10] expense of having to go through that Discovery, and [11] particularly depositions, would at this point we think [12] be terribly unfair to these people. Thank you.

[13] THE COURT: All right. Thank you.

[14] MR. OBUS: Good afternoon, Your Honor. [15] Steven Obus from Proskauer Rose for Wells Fargo Bank [16] as Trustee.

[17] At this point there is only a single [18] claim that remains that relates to either Wells Fargo, [19] or MBIA for that matter, and that is a single breach [20] of contract counterclaim by Royal against Wells Fargo.

[21] There actually has been a Motion to [22] Dismiss that claim pending. It was briefed in a way [23] that was interspersed with all of the Summary Judgment [24] briefing that wound up in the ruling that is on appeal

Page 26.

[1] at the moment, but it does have implications for both [2] scheduling and for consolidation.

[3] Although we are very differently [4] situated than the other parties that are categorized [5] as defendants at this point, we are anxious to have [6] the Motion to Dismiss addressed and would, if the [7] Court would permit it, like to actually file a single [8] Brief that addresses this remaining point that has [9] remained outstanding.

[10] If, as we think will happen, the Third [11] Circuit affirms the rulings that are up now, that last [12] claim is all by itself, Wells Fargo has participated [13] in document Discovery, we haven't sought to block it, [14] and presumably the parties will want some documents [15] from us in either case, but we would like to have that [16] motion decided just as the other Defendants, if that's [17] possible.

[18] And certainly in terms of consolidation, [19] the claim against Wells Fargo is so different from the [20] claims against parties like McGladrey or Pepper, that [21] even at this early stage it's hard to see how it could [22] make sense from the point of you'll have jury [23] confusion, if nothing else, to try a breach of [24] contract claim against Wells Fargo together with all

Page 27.

[1] these other ones. That claim simply has to do with [2] whether certain duties were or were not a part of [3] Wells Fargo's obligation under the applicable [4] agreements, very different than the other claims. So [5] that's our position on scheduling and consolidation.

[6] THE COURT: Do you know the status of [7] the appeals?

[8] MR. OBUS: You know, they were argued on [9] January 19th I believe. I would have guessed they [10] would be decided by now but they haven't, and so any [11] day I expect a decision.

[12] THE COURT: There was nothing [13] supplemental requested?

[14] MR. OBUS: No. The only thing that [15] happened subsequent to the argument was that there was [16] a settlement between PNC and Royal, so one of the [17] appeals was withdrawn, but it has no effect on ours at [18] all. And we just haven't heard anything since the [19] argument in January.

[20] THE COURT: Were you at the argument?

[21] MR. OBUS: Yes.

[22] THE COURT: Who was on that panel?

[23] MR. OBUS: Judge McKee. We were just [24] trying to remember. John Shaw might be able to help

Page 28.

[1] with that.

[2] MR. SHAW: Judge McKee and Judge [3] Scirica.

[4] MR. PFAEHLER: And then a New Jersey [5] District Court Judge, Your Honor, Judge Smith, Your [6] Honor.

[7] THE COURT: Okay. Thank you.

[8] MR. PFAEHLER: May I respond, Your [9] Honor?

[10] THE COURT: Yes. This is your chance.

[11] MR. PFAEHLER: We don't think the [12] Motions to Dismiss have anything to do with whether [13] Discovery should be stayed or not. Pepper, McGladrey, [14] Freed Maxick, as we understand it they're all making [15] motions and if they're successful, and we don't think [16] they will be, but if they are, Royal will still have [17] the same third party Discovery needs from them in the [18] Wells Fargo case and in our claims not just against [19] Wells Fargo but against Mr. Yow, SLS and the SFC [20] Defendants that we have otherwise. We will have the [21] same document needs in either case and will either be [22] needing the documents from them as a party or we'll be [23] needing the documents from them as third-party [24] witnesses.

Page 29.

[1] We don't think Rule 26 applies any [2] differently to a party or third-party witnesses in [3] terms of what has to be produced. The documents are [4] relevant. The testimony is relevant. It comes into [5] play either way.

[6] All the other counsel here have been [7] talking about starting with documents and [8] Interrogatories anyway. There have been some [9] statements that they have just been getting up to [10] curve.

[11] Actually my understanding is that [12] tolling agreements were entered into and discussion of [13] this lawsuit was started with the Trustee last Fall. [14] Certainly the claims were filed early this year, but [15] it shouldn't be a hardship at this point in time for [16] them to produce documents, and even if Your Honor were [17] to decide, and again we think the Motions to Dismiss [18] have no merit, but even if Your Honor were to grant [19] them, we would still need essentially the same [20] Discovery from these parties. So we don't see that [21] any point is served by staying the Discovery during [22] the pendency of the Motions to Dismiss, Your Honor.

[23] THE COURT: All right.

[24] MR. PFAEHLER: Thank you.

Page 30.

[1] MR. RODGERS: Your Honor, very

briefly. [2] I think the key issue for the Court clearly is whether [3] Discovery may proceed or may not proceed while the [4] Motions to Dismiss are pending.

[5] If the Court is of a view that Discovery [6] may commence, I think certainly the parties would be [7] happy to sit down and talk about the particulars of [8] trying to get that moving and, as Ms. Rendon [9] suggested, if that were your view, we could then come [10] back to you if we had a problem in terms of how it was [11] going to be structured, but the basic position of the [12] Trustee and this side of the table is that we should [13] be at least able to begin and get things rolling.

[14] THE COURT: Okay.

[15] MR. CRECCA: Just briefly, Your Honor. [16] This side of the table, we're the Plaintiffs, and we [17] would like to move this because we feel we have viable [18] causes of action here and it's our obligation to move [19] it. We feel there would be no harm in starting this [20] now. There's a gargantuan amount of Discovery to be [21] completed and obviously it's in the best interest of [22] the Defendants to hold off, wait and delay, but for [23] the Plaintiffs, it's our obligation to move these [24] cases and respectfully I hope Your Honor will let us

Page 31.

[1] permit to start the Discovery. Thank you.

[2] THE COURT: Okay. Anyone else want to [3] have a response?

[4] (No audible response).

[5] THE COURT: Okay. What I'm going to do [6] is first because I'm not sure what the status of the [7] various Motions to Dismiss might be, but it seems to me [8] that they ought to be submitted by a date certain, [9] meaning that all the briefing that's going to occur [10] should be completed and I'm going to arbitrarily [11] select, because once it's completed we'll try to get [12] you a decision in a reasonably short amount of time [13] and I know we're not able to work on those motions [14] until sometime in late August going into September, so [15] I'm going to say that your briefing has to be complete [16] by August the 3rd, which is sometime in that first [17] week of August, and then we'll have them under [18] advisement. If I need oral argument, we'll have oral [19] argument in the first part of September, and we'll [20] look for in the range of a thirty-day turnaround for a [21] decision to you.

[22] Second, it seems to me that it's [23] premature to discuss and decide consolidation other [24] than for the purposes of limited Discovery at this

### Page 32

[1] juncture. What I'm going to have you do is submit by [2] I'm going to say August 16th an agreed-upon Discovery [3] schedule that should last no more than four months, or [4] a hundred and twenty days, unless the parties agree [5] otherwise, for document production and [6] Interrogatories. That Discovery will start, and again [7] I'm being arbitrary, but I'll say September the 7th [8] that Discovery can commence.

[9] For purposes of that Discovery, this [10] will be a consolidated case without formally [11] consolidating it, and in your discussions about that [12] document Discovery you should select somewhere in the [13] middle of the time frame you elect one day, it won't [14] last a day, it will last an hour, for a Discovery [15] dispute conference, and that will be pre-arranged, and [16] if you're going to start up in September, probably [17] sometime in November would be a good date because you [18] will have your requests out and you'll be arguing and [19] you'll need a decision and you can pick a week for [20] that date, whether it's the first week in November or [21] the second week or the third week in November and give [22] me some suggestions that you're all available and then [23] I'll pick one of them within the schedule that I have [24] at that time.

### Page 33

[1] Hopefully by the time we get to the end [2] of the document production we'll have, because I think [3] it would be a little bit helpful, a decision on the [4] cases now on appeal, we'll have decisions on your [5] Motions to Dismiss and we'll have complete document [6] production and we'll be able to get together again and [7] have a discussion about further Discovery, most [8] particularly the deposition Discovery, and I think [9] what we can do as part of your discussion over [10] documents is you can select either a — I can give you [11] some help now.

[12] If it were to be a consolidated trial, [13] which I doubt it will be, which would mean all issues, [14] all parties, you would be allowed fifteen trial days. [15] Anything short of a full consolidation you'll be [16] allotted a certain amount of hours to try the cases, [17] assuming it would be two or three separate cases, [18] whether it's separated by issue or by parties.

[19] You should contemplate in your [20] discussions whether you want to try this case in [21] December of 2006, late January of 2007, or if you want [22] to, because you'll be committed to the case whether it [23] goes in one case or two or three cases, if you want to [24] reserve on my calendar the month of March of 2007 and

### Page 34

[1] then we'll sit down and divide that month up, but this [2] case will be the only case I'll schedule in March of [3] 2007 if you pick that; otherwise you can pick a month [4] and you'll be subject to other cases, and depending [5] how the calendar works out some weeks you'll have the [6] full attention of the courtroom, and other weeks you [7] might have to share the courtroom because we have [8] split trial days. You might have a morning session or [9] an afternoon session.

[10] So the only time you can really get a [11] time you can divide up among yourselves is that March [12] of 2007. But if you can agree to earlier dates, I'll [13] accommodate you in the time that's available.

[14] There are patent cases that are [15] scheduled way out in advance, so they already have [16] locked-in trial dates in some of those time frames, so [17] we'd have to work around them because they've been [18] working towards those dates already, but you can [19] discuss that and tell me that when you submit what [20] your preference is for a trial date. It's good to [21] have that trial date out in front so we all know what [22] you're working to, because one thing in this district, [23] trial dates, I guess absent my demise or infirmity, I [24] guess it would be since I'm getting older infirmity or

### Page 35

[1] demise, and so it will be a firm date, whatever you [2] select, and you should be able to discuss them among [3] yourselves and your schedules.

[4] I think that pretty much gives you a [5] road map of where you gotta go. We'll put a Short [6] Order in place that memorializes what I told you on [7] the record here so there's an Order in each case.

[8] The one thing you can consider that I [9] won't order at this point because my experience with [10] these cases hasn't been such that it's an unruly [11] group, but if you were to request a Special Master, I [12] would agree to that from a panel of Masters we have. [13] They're randomly assigned. So if you thought that [14] Discovery would be facilitated by someone dedicated to [15] your cause where you would share the expense equally, [16] I'm willing to let you have a Special Master off the [17] panel, or we can wait until we have our first [18] get-together in that November time frame and if it's [19] unruly, I may order you to a Special Master on the [20] panel. It's your choice. If you want to have one up [21] front, you can have one up front, not for the Motion [22] to Dismiss. That would be just for Discovery [23] disputes.

### Page 36

[24] MR. PFAEHLER: Your Honor, may I?

[1] THE COURT: Sure.

[2] MR. PFAEHLER: We served the Complaints [3] on McGladrey, Pepper, et cetera, on March 18th. There [4] was an Amended Complaint served on April 12th. We [5] agreed among ourselves, as Ms. Rendon mentioned, that [6] their motions would be due tomorrow, June 10th, and we [7] also agreed on follow-up deadlines for our opposition [8] and their Reply Briefs. I just want to be clear that [9] the August 3rd deadline is set.

[10] THE COURT: Doesn't impact it. That's [11] why I said I don't know the dates you — I know [12] there's a myriad of dates in place and I don't have [13] them in any way under my grasp, but what I want is [14] that August date to be the outside date by which [15] everything is done. There shouldn't be any disturbing [16] of what's already in place.

[17] MR. PFAEHLER: Thank you, Your Honor.

[18] THE COURT: That was my thought.

[19] MS. RENDON: Your Honor, just on that [20] same point, I believe the schedule that we've [21] stipulated to provides for Royal to respond to our [22] motion on July 27th which wouldn't give us a very long [23] time for a Reply Brief. Would it be possible either [24] now to push the August 3rd date to August 10th, let's

### Page 37

[1] say, just to give us a little bit more time?

[2] THE COURT: We can make them [3] simultaneous with that — what is it, August 16th I [4] gave you?

[5] MS. RENDON: Yes.

[6] THE COURT: Move it to August 16th.

[7] MS. RENDON: Thank you, Your Honor.

[8] THE COURT: That's not a problem. As I [9] said, I'm not going to be able to address them until [10] late August into September anyway, so August 16th will [11] be the completion of all briefing on Motions to [12] Dismiss as well as the submission date for the [13] schedule and document production.

[14] MS. RENDON: Thank you, Your Honor.

[15] MR. OBUS: Your Honor, I just wasn't [16] clear whether the Court would entertain an additional [17] submission from Wells Fargo on its pending Motion to [18] Dismiss which I really do think —

[19] THE COURT: Absolutely.

[20] MR. OBUS: Thank you.

[21] THE COURT: And as long as it's within [22] the time frame. So you're not barred from having an [23] additional

submission.

[24] **MR. PFAEHLER:** Your Honor, you would

---

Page 38

[1] accept an additional submission from Royal in [2] opposition?

[3] **THE COURT:** Absolutely. Yep.

[4] **MR. PFAEHLER:** Thank you.

[5] **THE COURT:** Okay. I think that's the [6] extent that I was prepared to address today. Is there [7] anything further that the Plaintiffs want to take up?

[8] **MR. CRECCA:** Nothing, Your Honor.

[9] **THE COURT:** Defendants?

[10] **MS. RENDON:** No.

[11] **THE COURT:** Okay. Thank you very much. [12] We'll be in recess.

[13] (Court recessed at approximately 4:15 [14] p.m.).

---

Page 39

STATE OF DELAWARE          )
                          : SS.
NEW CASTLE COUNTY          )
        CERTIFICATION
    I, CAROL DISERAFINO, Professional Reporter and Notary Public, do hereby certify that the foregoing record is a true and accurate transcript of my stenographic notes taken on Thursday, June 9, 2005, in the above-captioned matter.
    WITNESS my hand at Wilmington, Delaware, this 10th day of June, 2005.
        CAROL DISERAFINO
        COURT REPORTER-NOTARY PUBLIC
        Cert. No. 182-PS

# 1

10th 36:6, 24
12th 36:4
16(b 19:14
16th 32:2; 37:3, 6, 10
18th 36:3
19th 27:9

# 2

2004 13:14
2005 13:23
2006 9:5, 13; 33:21
2007 33:21, 24; 34:3, 12
26 29:1
27th 36:22

# 3

3rd 31:16; 36:9, 24

# 4

4:15 38:13

# 7

7 4:7
7th 32:7

# A

ability 14:5
able 11:15; 16:21, 24; 21:12, 16; 27:24; 30:13; 31:13; 33:6; 35:2; 37:9
absent 34:23
Absolutely 37:19; 38:3
accept 38:1
access 23:7
accommodate 34:13
accounting 18:17
action 24:6; 30:18
actions 14:21
actually 7:10; 19:11; 25:21; 26:7; 29:11
ad 20:13
additional 37:16, 23; 38:1
address 22:5; 23:15, 16, 22; 37:9; 38:6
addressed 26:6
addresses 26:8
Admissions 12:13
admitted 5:9
advance 24:16; 34:15
advisement 31:18
affirms 26:11

afternoon 4:2, 5, 10; 17, 19, 22, 23; 5:4, 5, 11, 15, 16, 17, 18; 6:4, 12, 17, 18, 22, 23; 12:20; 22:14; 24:2, 19; 25:14; 34:9
again 29:17; 32:6; 33:6
against 15:22; 18:19; 25:4, 5, 20; 26:19, 20, 24; 28:18, 19
agree 10:18, 23; 11:24; 20:12; 24:6; 32:4; 34:12; 35:12
agreed 36:5, 7
agreed-upon 32:2
agreement 7:24
agreements 27:4; 29:12
ahead 10:15
Ainslie 6:7; 22:14, 15, 18; 24:1
allegations 17:21
allotted 33:16
allow 19:2, 23; 20:1, 8; 21:5; 22:1
allowed 33:14
alone 14:11
Although 26:3
Amended 36:4
among 7:23, 24; 34:11; 35:2; 36:5
amongst 13:7; 19:10; 20:9; 21:13; 22:2
amount 7:11; 16:4, 15; 21:18; 30:20; 31:12; 33:16
Andrew 16:5
announce 4:3
anxious 26:5
apologize 22:16
apparent 15:24; 17:5
appeal 25:24; 33:4
appeals 27:7, 17
appearances 4:3
appearing 4:6, 21
applicable 27:3
applies 29:1
approach 20:2; 21:15, 16; 22:1
approaches 19:9
appropriate 10:22; 20:8, 18
approximately 38:13
April 36:4
Aquino 5:13; 12:22; 13:2, 16, 22; 14:15, 21; 18:3; 24:9
Aquino's 18:14
arbitrarily 31:10
arbitrary 32:7
argued 27:8
arguing 32:18
argument 15:17; 27:15, 19, 20; 31:18, 19
arguments 24:8
arms 17:2

around 8:7; 17:2; 34:17
Arsht 6:5
Ashby 4:24
assigned 35:13
assuming 33:17
ATHEY 5:17, 19, 19; 6:2
attention 34:6
attorney 24:22
audible 31:4
August 31:14, 16, 17; 32:2; 36:9, 14, 24, 24; 37:3, 6, 10, 10
available 32:22; 34:13
aware 17:11; 19:17

# B

back 5:24; 11:15; 12:10; 14:4; 22:3; 30:10
Bank 25:15
barred 37:22
bases 15:20
basic 30:11
basically 10:1; 17:12
Bast 6:14
Battaglia 5:20; 24:3, 13
Bayard 4:6
bear 25:1
begin 7:1; 10:23; 12:7, 13; 30:13
behalf 4:7, 21, 24; 5:20; 12:5, 21; 24:9
belief 7:6
best 30:21
better 21:24; 22:7
beyond 8:18
big 18:8
bit 21:5; 33:3; 37:1
blazing 16:22
block 26:13
both 16:20; 26:1
bounds 17:13
brand 13:16; 21:23
breach 25:19; 26:23
Brief 14:18; 26:8; 36:23
briefed 25:22
briefing 35:24; 31:9, 15; 37:11
briefly 14:23; 30:1, 15
Briefs 36:8
bring 18:20
broad 13:9
brokers 16:11
brought 18:19
burden 14:12; 20:14; 22:21

# C

calendar 33:24; 34:5
came 7:19
can 14:13; 15:6; 16:12; 20:10, 12; 21:9; 22:2; 23:16; 32:8, 19; 33:9, 10, 10; 34:3, 10, 11, 12, 18; 35:8, 17, 21; 37:2
Candidly 8:1
candor 17:1
care 15:6
carve 21:16
case 7:1, 4, 22; 10:23; 11:22; 16:17; 18:2; 20:6; 24:12; 26:15; 28:18, 21; 32:10; 33:20, 22, 23; 34:2, 2; 35:7
cases 7:9, 10, 13; 8:14; 9:22; 11:1, 7; 17:16; 21:2; 30:24; 33:4, 16, 17, 23; 34:4, 14; 35:10
categorized 26:4
cause 35:15
causes 30:18
certain 7:10; 23:6; 27:2; 31:8; 33:16
certainly 8:13; 9:20; 19:7; 20:3; 22:7; 26:18; 29:14; 30:6
cetera 12:13; 36:3
challenge 8:15
chance 24:14; 28:10
Chapter 4:7
Charlene 4:6
Charles 7:4
Charlie 4:7
choice 35:20
Chris 4:20; 5:12
Circuit 17:10; 23:13; 26:11
claim 14:2; 25:18, 22; 26:12, 19, 24; 27:1
claims 18:22; 20:23; 26:20; 27:4; 28:18; 29:14
Clayton 5:19
clear 36:8; 37:16
clearly 30:2
clients 22:23
co-counsel 6:6; 7:20
colleague 4:20
commence 9:9; 30:6; 32:8
commencement 11:6
comment 17:23
commenting 15:4
committed 33:22
common 8:14
Company 5:1
Complaint 36:4
Complaints 16:13; 36:2
Complete 9:1, 5; 12:1;

completed 11:12; 12:7, 13; 30:21; 31:10, 11
completion 37:11
complexities 15:19
complicate 17:23
Conaway 6:19
concerned 12:11
concerning 7:16
concluded 8:7
conclusion 9:20
conduct 9:5
confer 21:9
conference 7:5; 19:13, 15; 32:15
confident 14:5; 25:8
confusion 26:23
consensually 11:24
consider 7:8, 9, 14; 21:9; 35:8
considerations 20:15
considered 13:20; 24:16
consolidated 9:24; 10:24; 11:12; 32:10; 33:12
consolidating 7:9; 32:11
consolidation 12:17; 17:4; 20:18, 23; 24:10; 26:2, 18; 27:5; 31:23; 33:15
contemplate 13:19; 20:17; 33:19
contemplated 14:11
contemplating 16:3; 17:3; 19:23; 22:9
contract 25:20; 26:24
contractual 17:17
coordination 8:11
core 8:13; 17:5
Corp 16:6, 11
Corporation 4:8
correctly 7:6
cost 14:12
counsel 7:24; 29:6
counterclaim 25:20
counterclaims 20:24
country 13:10; 16:9
counts 25:4
COURT 4:1, 4, 10, 14, 19, 22; 5:5, 7, 10, 16, 18, 23; 6:3, 10, 17, 23; 7:3, 8, 8, 14, 15, 22; 8:4, 21; 9:3, 12, 15, 24; 10:6, 9, 15; 11:4; 12:2, 15; 14:20; 15:1, 5, 6, 10, 13; 20:14; 22:8, 10, 12, 17, 22; 23:1, 24; 24:18; 25:13; 26:7; 27:6, 12, 20, 22; 28:5, 7, 10; 29:23; 30:2, 5, 14; 31:2, 5; 36:1, 10, 18; 37:2, 6, 8, 16, 19, 21; 38:3, 5, 9, 11, 13
Court's 22:19
courtroom 4:9; 5:2; 34:6, 7
coverage 17:12

Crecca 4:11, 15; 7:7, 18; 12:4; 15:2; 30:15; 38:8
crystallized 22:6
curve 29:10
cutting 10:18

# D

date 12:18; 31:8; 32:17, 20; 34:20, 21; 35:1; 36:14, 14, 24; 37:12
dates 7:23; 8:8; 12:1; 19:18; 34:12, 16, 18, 23; 36:11, 12
DAVIS 4:5, 6, 11, 15, 20; 7:3
day 27:11; 32:13, 14
days 32:4; 33:14; 34:8
deadline 36:9
deadlines 8:19; 36:7
December 33:21
decent 24:14
decide 29:17; 31:23
decided 14:20; 18:14; 23:9; 26:16; 27:10
decision 20:5; 23:13; 27:11; 31:12, 21; 32:19; 33:3
decisions 21:1, 3; 33:4
dedicated 35:14
Defendant 18:17
Defendant's 12:16
Defendants 10:14; 22:13; 24:5; 25:5; 26:5, 16; 28:20; 30:22; 38:9
delay 21:18, 22, 22; 30:22
delayed 6:9
demise 34:23; 35:1
depending 34:4
depends 11:17
deposed 8:16; 12:10
deposition 8:11; 9:6; 11:7, 13; 12:9, 14; 13:12; 16:15; 23:8, 18; 33:8
depositions 9:9; 10:20, 22; 11:5, 6, 9, 22, 24; 12:8; 18:8; 25:11
describe 14:22
detail 8:19
differences 17:7
different 26:19; 27:4
differential 21:7
differently 36:3; 29:2
difficult 20:18; 21:3, 4
Dilworth 4:16; 7:21
disagree 10:16
disagreement 13:7
Discovery 7:10, 12; 8:6, 11, 22; 9:2, 10; 10:1, 18, 21; 11:1; 12:1, 7, 12, 18; 13:11, 12, 14, 14, 19; 14:7, 10, 11, 19; 16:2, 4, 15, 16,

discuss 6:24; 20:9; 22:1, 8; 31:23; 34:19; 35:2
discussed 8:2; 16:3; 19:10, 18
discussion 20:1; 22:4; 29:12; 33:7, 9
discussions 32:11; 33:20
Dismiss 14:2, 7, 16; 15:20; 18:14, 18, 18, 21, 22, 23; 20:6; 21:14; 23:2, 9, 17; 24:7, 15; 25:3, 22; 26:6; 28:12; 29:17, 22; 30:4; 31:7; 33:5; 35:22; 37:12, 18
dismissed 14:13, 21; 16:16
dispute 17:13, 14; 32:15
disputes 35:23
distasteful 14:9
District 28:5; 34:22
disturbing 36:15
diversity 8:3
divide 34:1, 11
document 8:23; 9:1; 11:11, 19; 12:12; 14:11; 23:18; 25:6; 26:13; 28:21; 32:5, 12; 33:2, 5; 37:13
documents 11:14; 12:10; 13:15; 23:4, 5, 7; 26:14; 28:22, 23; 29:3, 7, 16; 33:10
Donald 4:11
done 36:15
doubt 33:13
down 21:5; 30:7; 34:1
dragged 14:6
drug 12:17
due 36:6
duplicating 8:17
during 29:21
duties 27:2

# E

earlier 34:12
early 9:19; 11:21; 18:9; 26:21; 29:14
Eckert 6:13; 24:20
effect 27:17
efficient 10:2
effort 8:17; 9:6; 10:2
either 25:18; 26:15; 28:21, 21; 29:5; 33:10; 36:23
elect 32:13
Elizabeth 6:7; 22:15

else 26:23; 31:2
encourage 24:15
end 8:7, 22; 9:3, 9, 13; 10:19, 20; 11:3; 14:17; 33:1
engage 22:24
engaged 13:11
engaging 16:14
enormous 25:1
entered 29:12
entertain 37:16
entirety 18:24
entry 24:17
envision 9:17
Epstein 6:16; 24:19, 20
equally 35:15
essentially 29:19
et 12:13; 36:3
even 13:7; 16:3; 17:6; 18:1, 8; 19:18; 21:19; 24:4; 25:6; 26:21; 29:16, 18
everywhere 21:22
exactly 16:18
examine 23:1
except 8:19
exchange 11:9
expect 6:8; 27:11
expected 6:7
expeditious 21:20
expense 8:17; 25:1, 10; 35:15
expensive 19:5; 22:24
experience 35:9
expert 8:19
explain 15:18
extent 18:6; 38:6
extraordinary 21:18, 19
extremely 14:8

# F

face 16:12
facilitated 35:14
fact 19:3; 21:18
facts 17:5; 18:1, 5
fairly 23:6
Fall 29:13
familiar 20:23
family 6:15; 24:23
far 12:11
Fargo 6:20; 16:5; 17:9, 17; 25:15, 18, 20; 26:12, 19, 24; 28:18, 19; 37:17
Fargo's 27:3
fashion 20:13
feel 23:23; 30:17, 19
few 22:16
field 16:20
fifteen 33:14
figure 22:2

filed 17:3; 25:9; 29:14
filing 11:2; 14:16
finally 9:23
Finance 4:8; 13:6; 16:6, 11; 18:7
Firm 4:6, 12, 15; 5:3, 21; 11:23; 24:5; 35:1
first 9:5; 12:19, 24; 22:13; 23:17; 31:6, 16, 19; 32:20; 35:17
five 7:10
focus 9:10
follow-up 36:7
forced 19:4
Form 7:21
formally 32:10
forward 7:1; 11:8; 19:4, 24; 24:11
four 7:9; 10:24; 32:3
frame 32:13; 35:18; 37:22
frames 7:16, 24; 34:16
frankly 20:16
Freed 5:20; 18:16; 24:3, 13; 28:14
front 19:13; 20:13; 34:21; 35:21, 21
full 11:11; 33:15; 34:6
fully-submitted 14:2
further 15:22; 33:7; 38:7

# G

Gagne 6:6, 14, 14; 16:8; 17:21, 22; 18:20, 23; 24:21
gargantuan 30:20
gave 37:4
Geddes 4:24
generally 7:17; 8:6
get-together 35:18
given 8:18; 16:19
gives 35:4
goes 33:23
Good 4:2, 5, 10, 14, 17, 19, 22, 23; 5:4, 5, 11, 15, 16, 17, 18; 6:4, 12, 17, 18, 22, 23; 12:20; 19:22; 22:14; 24:2, 19; 25:14; 32:17; 34:20
gotta 35:5
grant 29:18
grapple 8:10
grasp 36:13
great 15:19
group 35:11
guess 12:18; 16:12; 18:24; 34:23, 24
guessed 27:9
guns 16:22

# H

hac 5:9, 22
Hamilton 6:6; 16:8; 17:20, 22; 18:20, 23; 22:16
Hamilton's 23:5
hands 23:5
happen 26:10
happened 13:15; 27:15
happy 23:21; 30:7
hard 26:21
hard-core 16:23
hardship 29:15
harm 30:19
hear 10:9; 13; 13:7
heard 12:24; 15:3; 27:18
heightened 13:17; 16:19
help 15:7; 27:24; 33:11
helpful 33:3
hesitate 22:21
highest 13:8
hoc 20:13
hold 25:6; 30:22
Honor 4:5, 18, 24; 5:6, 9, 11, 15, 17; 6:4, 8, 12, 18; 7:3, 18; 8:3, 24; 9:7, 14, 18; 10:5, 12; 11:16; 12:4, 20, 24; 14:3, 23; 15:2, 8, 18, 23; 17:1, 11; 18:11, 15; 19:1, 6, 13; 20:14, 16; 22:3, 5, 15; 23:19, 21; 24:2, 16, 20; 25:3, 6, 14; 28:5, 6, 9; 29:16, 18, 22; 30:1, 15, 24; 35:24; 36:17, 19; 37:7, 14, 15, 24; 38:8
Honor's 23:13
hope 30:24
Hopefully 33:1
hour 32:14
hours 33:16
huge 17:7; 24:11
humongous 14:12
hundred 32:4

# I

idea 12:17
ideas 8:5
impact 36:10
implications 26:1
include 20:3, 4
incorrectly 7:6
incredible 16:4
indemnity 5:1; 13:24
individually 6:14; 24:21
individuals 24:24
infirmity 34:23, 24
informally 19:10; 22:3
initial 19:12
initially 9:11
instance 17:9

**instead** 6:22; 20:9, 12, 19, 22; 21:8, 11, 14, 24; 22:1; 24:12; 26:4, 14, 20; 29:20; 30:6; 32:4; 33:14, 18
**insurance** 17:12, 13
**interest** 30:21
**Interrogatories** 8:23; 11:19; 12:9; 29:8; 32:6
**interrogatory** 9:1; 11:10, 10, 14
**interspersed** 25:23
**into** 15:3, 17; 18:1; 21:2; 24:17; 29:4, 12; 31:14; 37:10
**involve** 8:10; 21:17
**involved** 13:5, 13; 20:21
**issue** 17:18; 30:2; 33:18
**issued** 7:3; 21:1
**issues** 7:12; 20:9; 22:5, 6; 23:3, 11, 15; 33:13

**J**

**January** 27:9, 19; 33:21
**Jersey** 28:4
**Jim** 4:15
**John** 6:19; 27:24
**join** 25:5
**Jonathan** 5:21; 24:3
**Jones** 5:20
**Jr** 4:7
**Judge** 13:21; 24:17; 27:23; 28:2, 2, 5, 5
**Judgment** 25:23
**July** 14:17; 36:22
**juncture** 32:1
**June** 36:6
**jury** 26:22

**K**

**Karen** 6:13
**Ken** 5:2
**Kentucky** 16:9
**key** 30:2
**kind** 8:3; 18:5; 20:2; 21:2
**kinds** 11:6
**knowledge** 13:3, 4, 9, 18; 16:19; 17:6; 20:19; 21:8

**L**

**large** 8:3; 11:22
**last** 26:11; 29:13; 32:3, 14, 14
**late** 8:8, 20; 22:16; 31:14; 33:21; 37:10
**later-produced** 11:13
**launch** 16:18
**lawsuit** 29:13
**lawsuits** 14:1
**least** 16:24; 20:4; 21:6; 23:3; 24:14; 30:13

**legal** 23:11
**letter** 7:7
**level** 13:3, 4, 8, 18, 19; 14:6; 16:19; 17:6; 20:19
**levels** 21:7
**likely** 18:7
**limited** 31:24
**litigation** 12:6; 13:6; 14:14; 17:10, 19, 21, 23, 24; 18:3, 19, 21, 24; 19:4, 5; 20:17, 22; 21:4, 23; 23:14
**litigations** 13:10, 12, 17; 16:1; 17:2, 8
**little** 9:19; 21:5; 33:3; 37:1
**Loan** 16:7
**located** 16:9
**locked-in** 34:16
**long** 36:22; 37:21
**look** 31:20
**looking** 16:12
**lot** 8:12; 13:12; 18:1
**Lufboro** 16:10

**M**

**major** 11:18
**makes** 11:18; 20:11; 22:20, 23
**making** 28:14
**management** 7:22
**manner** 8:16
**many** 13:11; 21:23
**map** 35:5
**March** 13:2, 23; 33:24; 34:2, 11; 36:3
**Marketing** 16:6
**massive** 13:19; 16:14
**Master** 35:11, 16, 19
**Masters** 35:12
**matter** 7:21; 15:19; 17:15; 25:19
**matters** 16:23
**Maxick** 5:20; 18:16; 24:3, 13; 28:14
**may** 9:19, 22; 11:20; 12:5; 14:13; 15:2, 24; 20:3; 22:1, 11; 28:8; 30:3, 3, 6; 35:19, 24
**maybe** 19:22
**MBIA** 16:5; 23:14; 25:19
**MBIA/Wells** 17:9
**McGladrey** 5:12; 7:5; 12:6, 21; 13:1, 16, 22; 14:1, 15, 20; 16:23; 17:14, 19; 18:2, 13; 24:5, 9; 26:20; 28:13; 36:3
**McKee** 27:23; 28:2
**mean** 15:8, 12, 16; 33:13
**meaning** 31:9
**meet** 4:13; 20:1; 21:8
**meeting** 7:19

**mentioned** 36:5
**merit** 15:15; 29:18
**meritorious** 14:8; 15:21
**merits** 17:24
**Michael** 5:12; 12:22; 13:22; 18:3
**middle** 32:13
**might** 17:5; 19:13, 20; 20:4; 27:24; 31:7; 34:7, 8
**mind** 21:12, 14
**minutes** 22:16
**Miss** 24:6, 9
**modifications** 10:17
**moment** 26:1
**month** 33:24; 34:1, 3
**months** 9:5; 32:3
**more** 22:6; 24:4; 32:3; 37:1
**morning** 34:8
**Morris** 6:5
**most** 8:14; 33:7
**motion** 5:22; 11:3; 14:2, 3, 5, 7, 16, 17; 15:20; 18:18, 21; 24:7, 14; 25:21; 26:6, 16; 35:21; 36:22; 37:17
**motions** 14:19, 24; 15:4, 11, 15, 17; 18:14, 17; 19:2; 20:5, 24; 21:1, 14; 23:2, 9, 16; 24:15; 25:3, 7, 9; 28:12, 15; 29:17, 22; 30:4; 31:7, 13; 33:5; 36:6; 37:11
**move** 30:17, 18, 23; 37:6
**moves** 7:1
**moving** 13:1; 30:8
**much** 14:4; 22:6, 18, 19; 24:1; 35:4; 38:11
**myriad** 36:12

**N**

**neatly** 18:5
**necessarily** 9:8
**necessary** 7:12
**need** 15:7; 23:15; 29:19; 31:18; 32:19
**needing** 28:22, 23
**needs** 22:5; 28:17, 21
**negotiate** 19:21
**negotiations** 21:12
**Neil** 6:16; 24:20
**new** 13:16; 20:16; 21:4, 23; 28:4
**next** 8:8, 20
**Nice** 4:13
**Nichols** 6:5
**notice** 11:9
**noticing** 11:24
**notion** 9:10
**November** 32:17, 20, 21; 35:18
**number** 11:22; 12:23

**O**

**obligation** 27:3; 30:18, 23
**Obus** 6:20, 22; 25:14, 15; 27:8, 14, 21, 23; 37:15, 20
**obviously** 11:17; 30:21
**occur** 14:19; 18:12; 31:9
**occurred** 19:15; 22:4
**occurs** 19:7
**off** 10:19; 25:6; 30:22; 35:16
**office** 6:16
**older** 34:24
**once** 11:12; 31:11
**one** 11:7; 17:23; 27:16; 32:13, 23; 33:23; 34:22; 35:8, 20, 21
**ones** 11:18; 27:1
**only** 11:7; 13:2, 23; 15:13; 22:3; 25:17; 27:14; 34:2, 10
**open** 10:1, 2
**opportunity** 9:21
**opposed** 11:23; 23:8
**opposing** 14:17
**opposition** 36:7; 38:2
**oral** 12:14; 31:18, 18
**Order** 7:4, 21; 19:17; 35:6, 7, 9, 19
**orders** 19:8
**otherwise** 28:20; 32:5; 34:3
**ought** 31:8
**ours** 27:17
**ourselves** 7:23; 14:4; 36:5
**out** 15:24; 16:12; 18:22; 19:2, 7; 21:16; 22:3; 23:12; 32:18; 34:5, 15, 21
**outside** 36:14
**outstanding** 26:9
**over** 13:10; 33:9
**overlap** 7:11; 17:5
**overlapping** 18:5
**overwhelming** 16:17

**P**

**p.m** 38:14
**packaged** 18:5
**Pamela** 6:14
**panel** 27:22; 35:12, 17, 20
**part** 27:2; 31:19; 33:9
**participated** 26:12
**particular** 8:5
**particularly** 25:11; 33:8
**particulars** 30:7
**parties** 7:9; 8:4; 9:16; 10:3; 13:18; 16:5; 19:3, 10,

**O**

(continued first column of O at top right)
parts 9:21
**party** 13:3, 5; 14:12; 28:17, 22; 29:2
**patent** 34:14
**patting** 14:4
**Paxson** 4:16
**penciled** 7:2
**penciled-in** 19:17
**pendency** 29:22
**pending** 5:22; 14:8; 25:3, 22; 30:4; 37:17
**people** 8:15; 25:12
**Pepper** 6:6; 16:7, 7; 17:22; 18:20, 22; 22:15; 23:5; 26:20; 28:13; 36:3
**Pepper/Pepper** 17:20
**perhaps** 8:19; 16:10; 23:17
**permit** 26:7; 31:1
**perspective** 22:23
**Pfaehler** 5:3, 4, 8; 10:12, 17; 11:16; 22:11; 28:4, 8, 11; 29:24; 35:24; 36:2, 17; 37:24; 38:4
**Philadelphia** 6:15
**Philip** 4:24
**pick** 32:7, 19, 23; 34:3, 3
**place** 19:22; 35:6; 36:12, 16
**Plaintiff's** 7:2
**Plaintiffs** 13:7; 20:20; 30:16, 23; 38:7
**plan** 10:1; 19:21; 20:11; 21:10
**play** 19:2; 29:5
**playing** 16:20
**please** 4:2; 12:4
**PNC** 16:5; 27:16
**pocketbooks** 22:23
**point** 8:5; 9:23; 10:5, 21; 18:9; 19:7; 21:12; 22:6, 22; 23:16; 25:2, 11, 17; 26:5, 8, 22; 29:15, 21; 35:9; 36:20
**policies** 17:13
**Porter** 5:13
**portion** 17:10
**position** 12:3; 21:2; 22:7; 27:5; 30:11
**possibility** 9:20
**possible** 8:16; 19:9; 26:17; 36:23
**possibly** 16:15
**postponing** 10:21
**practical** 21:15
**prearranged** 32:15
**precipitous** 24:17
**precisely** 7:23
**prefer** 12:6

preference 34:21
preliminary 20:4
premature 9:23; 23:11; 24:10, 12; 31:23
prematurely 15:17
prepared 13:19; 38:6
presumably 26:14
pretty 35:4
prevailing 24:14
Price 5:21
Prickett 5:19
primarily 24:24
principally 8:10
pro 5:9, 22
probably 32:16
problem 22:17; 30:10; 37:8
procedural 15:19
proceed 16:21, 22; 18:9; 20:7; 30:3, 3
proceeding 21:20
proceedings 24:4
produce 29:16
produced 29:3
production 8:23; 9:1; 11:11, 20; 12:12; 32:5; 33:2, 6; 37:13
Proskauer 6:20; 25:15
proven 21:11
provide 9:8
provides 36:21
Pullen 5:12; 7:5; 12:21; 13:1, 16, 22; 14:1, 15, 20; 16:24; 17:14, 19; 18:3, 13
purposes 7:10; 11:1; 31:24; 32:9
push 36:24
put 5:24; 22:21; 25:9; 35:5

## Q

quickly 13:1; 14:23
quite 13:6

## R

raise 23:3
randomly 35:13
range 31:20
rather 10:13
rational 20:11; 21:10
reach 9:19
reactions 12:23
real 21:12
really 20:20; 34:10; 37:18
reason 10:21; 20:7
reasonable 20:10; 21:15
reasonably 31:12
receipt 11:10
received 13:14

recently 24:5
recess 38:12
recessed 38:13
recognize 18:16
record 35:7
regard 8:11; 11:4
relate 17:21
relates 18:6; 25:18
relevant 29:4, 4
remained 26:9
remaining 26:8
remains 25:18
remember 27:24
removed 19:3
Rendon 5:13, 15; 12:20, 21; 15:8, 12, 16; 24:6, 9; 30:8; 36:5, 19; 37:5, 7, 14; 38:10
Reply 14:18; 36:8, 23
Reporter 4:4
represent 6:13; 12:5; 24:20, 22
represents 7:20
request 25:5; 35:11
requested 27:13
Requests 12:12; 32:18
reserve 33:24
resolve 9:23
resolved 25:7
respect 7:13; 18:12; 25:6
respectfully 18:12; 30:24
respond 22:11; 28:8; 36:21
responding 19:12
response 7:7; 31:3, 4
responses 11:10
responsibilities 17:17
result 13:8
resulting 13:9
right 4:1; 5:10, 23; 6:10; 7:15; 9:7; 10:6, 9; 12:2, 15, 16; 15:4, 6, 16; 17:11; 20:13; 22:10; 23:24; 24:18; 25:13; 29:23
road 35:5
Robert 6:14
Rod 16:8; 17:20, 22; 18:23; 24:21
Rodgers 4:15, 17; 7:19; 8:1, 24; 9:7, 14, 18; 10:4, 8; 30:1
role 24:21
rolling 30:13
Rose 6:21; 25:15
roughly 7:16
Royal 5:1; 10:13; 13:4, 24; 14:14, 16; 16:2, 5, 20; 18:8, 21; 23:6; 25:20; 27:16; 28:16; 36:21; 38:1
Royal's 13:8
rule 11:23; 19:14; 29:1
ruled 23:19

ruling 25:24
rulings 26:11

## S

same 14:13; 28:17, 21; 29:19; 36:20
satisfied 11:8
saw 5:23
saying 11:8, 23; 15:14; 21:23
schedule 32:3, 23; 34:2; 36:20; 37:13
scheduled 34:15
schedules 21:17; 35:3
scheduling 8:2; 15:14; 19:8, 14, 14, 16; 21:13; 26:2; 27:5
schools 16:8
Scirica 28:3
Seamans 6:13; 14:20
seated 4:1
second 15:3; 31:22; 32:21
securitization 17:18
seem 22:19, 22; 23:2
seems 19:22; 21:24; 31:7, 22
select 31:11; 32:12; 33:10; 35:2
sense 11:19; 20:11; 21:17; 22:20, 24; 26:22
sensible 19:21; 20:2, 7
separate 9:16; 14:1; 33:17
separated 33:18
September 31:14, 19; 32:7, 16; 37:10
served 29:21; 36:2, 4
Services 16:6, 7
session 34:8, 9
set 8:19; 36:9
setting 7:5
settlement 27:16
several 24:23
SFC 28:19
share 34:7; 35:15
SHAW 6:18, 19; 27:24; 28:2
short 7:18; 31:12; 33:15; 35:5
shortly 11:3
shot 11:7
side 7:2; 8:2; 10:10; 12:16; 19:19; 30:12, 16
similar 24:8
simple 15:20
simply 15:18, 23; 17:1; 18:1, 4, 4; 19:2; 21:22; 27:1
simultaneous 37:3
simultaneously 23:17

single 25:17; 29:16, 7
sit 19:1; 30:7; 34:1
situated 26:4
situation 12:8
six 9:5
slow 21:5
SLS 28:19
smart 19:1
Smith 28:5
solely 17:22
someone 35:14
sometime 9:4; 31:14, 16; 32:17
somewhere 32:12
Sonnenschein 5:3; 16:10
soon 14:13, 18; 16:17
sorry 10:11
sort 23:12
sought 18:23; 26:13
speak 10:13; 15:21
Special 35:11, 16, 19
specific 8:18
speed 16:24; 21:6
split 34:8
spring 8:20
stage 26:21
Stanziale 4:7, 9, 21; 7:4
Stanziale's 4:12
Stargatt 6:19
start 10:20; 11:23; 19:22; 31:1; 32:6, 16
started 11:21; 29:13
starting 29:7; 30:19
statements 29:9
status 27:6; 31:6
stay 11:5
stayed 28:13
staying 20:4; 29:21
Steve 6:20
Steven 25:15
still 28:16; 29:19
stipulated 36:21
strong 14:3
structured 30:11
Student 4:8; 13:6; 16:6, 6, 7, 11; 18:7
subject 34:4
submission 37:12, 17, 23; 38:1
submit 32:1; 34:19
submitted 31:8
subsequent 27:15
substance 14:23; 15:11; 23:3; 24:7
substantial 14:12; 23:3
succeed 14:5
successful 28:15
SUDELL 6:4, 5, 11
sued 13:2, 23, 24
sufficient 8:16

suggest 13:21; 21:21
suggested 7:8; 30:9
suggestions 32:22
suit 25:4
Summary 25:23
supplemental 11:14; 27:13
sure 8:4; 17:11; 23:1; 31:6; 36:1
suspect 16:19
SWH 16:8
system 6:1

## T

table 30:12, 16
talk 15:10; 19:14; 30:7
talking 8:22; 19:8; 29:7
Taylor 6:19
Tennessee 16:10
terms 8:6; 26:18; 29:3; 30:10
terribly 25:12
testimony 29:4
thereafter 18:1
thinking 8:5; 9:4; 20:4
Third 17:10; 23:12; 26:10; 28:17; 32:24
third-party 28:23; 29:2
thirty-day 11:24
thorny 23:15
thought 8:18; 9:12; 14:6; 16:14; 23:22; 35:13; 36:18
thoughts 7:16; 21:9
three 33:17, 23
throughout 16:9
thrust 21:2
ticket 18:8
till 10:20
time-consuming 19:5
today 5:2, 14; 7:5, 19; 15:1; 19:11; 38:6
together 9:22; 26:24; 33:6
told 35:6
tolling 29:12
tomorrow 14:16; 36:6
toward 8:8; 9:13; 10:19; 11:3
towards 34:18
TRAINER 4:23, 24; 5:6, 8
transactions 17:18
tremendous 11:4
trial 8:8; 9:13, 16, 17; 10:1; 11:2; 12:18, 19; 20:11; 33:12, 14; 34:8, 16, 20, 21, 23
tried 10:3
truck 16:8
true 18:5, 6; 19:23
Trustee 4:8; 7:14, 20; 10:16, 24; 12:5, 6; 13:5,

Min-U-Script®

13, 24; 14:2; 16:3, 7, 21;
23:6; 25:4, 16; 29:13;
30:12
**Trustee's** 7:16; 9:15;
18:24; 24:6
**trusts** 6:15; 24:23; 25:1
**try** 9:21; 18:22; 21:6;
23:22; 26:23; 31:11;
33:16, 20
**trying** 11:24; 17:2; 20:12;
21:3, 21; 27:24; 30:8
**Tunnell** 6:5
**turnaround** 31:20
**TURNER** 6:12, 13
**twenty** 32:4
**two** 33:17, 23
**type** 14:10; 16:2; 19:14,
21; 22:4
**types** 20:14; 22:8
**typically** 11:6

# U

**uncle** 24:22
**under** 17:17; 19:24; 27:3;
31:17; 36:13
**understood** 19:11
**uneven** 16:20
**unfair** 25:12
**unless** 10:13; 32:4
**unruly** 35:10, 19
**up** 11:13; 16:24; 17:10;
20:10; 21:6, 7, 10, 11;
25:24; 26:11; 29:9; 32:16;
34:1, 11; 35:20, 21; 38:7
**use** 21:19
**uses** 7:22

# V

**various** 6:15; 23:11; 31:7
**Vedder** 5:21
**Veronica** 5:13; 12:21
**versus** 7:4
**viable** 30:17
**vice** 5:9
**view** 9:15; 10:4; 11:16;
24:7; 30:5, 9
**virtually** 25:3
**volume** 24:12

# W

**wait** 10:20; 11:19; 30:22;
35:17
**waiting** 23:18
**walking** 19:11
**wants** 7:1; 12:19
**Ward** 4:21
**wasting** 8:17
**way** 6:8; 13:1; 17:23;
19:24; 20:2, 7; 21:20;

24:10, 12; 25:22; 29:5;
34:15; 36:13
**week** 31:17; 32:19, 20,
21, 21
**weeks** 34:5, 6
**welcome** 6:3
**Wells** 6:20; 16:5; 17:17;
25:15, 18, 20; 26:12, 19,
24; 27:3; 28:18, 19; 37:17
**weren't** 8:4
**Wexler** 5:21; 24:2, 3
**what's** 36:16
**wife** 24:22
**William** 6:5
**willing** 35:16
**WINTER** 5:11, 12
**withdrawn** 27:17
**within** 32:23; 37:21
**without** 8:16; 11:11; 14:3;
32:10
**witness** 8:19; 11:15, 17;
12:11
**witnesses** 8:12, 13;
11:18, 20; 28:24; 29:2
**word** 21:19
**work** 31:13; 34:17
**worked** 21:13
**working** 8:7; 34:18, 22
**works** 34:5
**wound** 25:24
**written** 7:7; 8:6, 21; 9:10;
10:18; 12:1, 7, 12; 13:11,
14; 16:4, 15

# Y

**year** 8:7, 8, 22; 9:3, 9;
10:19, 20; 13:2, 23; 29:14
**years** 20:21, 21, 22
**Yep** 38:3
**Young** 6:19
**Yow** 16:5; 18:7; 28:19

**Lawyer's Notes**

# EXHIBIT C

AO 88 (Rev. 1/94) Subpoena in a Civil Case

### Issued by the
# UNITED STATES DISTRICT COURT
### For The District of Delaware

| | |
|---|---|
| ROYAL INDEMNITY COMPANY, | |
| Plaintiff, | |
| v. | **SUBPOENA IN A CIVIL CASE** |
| PEPPER HAMILTON LLP, W. RODERICK GAGNÉ, FREED MAXICK & BATTAGLIA CPAs PC, MCGLADREY & PULLEN, LLP and MICHAEL AQUINO, | CASE NUMBER:    **05-0165** |
| Defendants. | |
| | JUDGE JOSEPH J. FARNAN, JR. |

TO:       Charles A. Stanziale
          c/o Donald J. Crecca, Esq.
          McElroy, Deutsch, Mulvaney & Carpenter, LLP
          Three Gateway Center
          100 Mulberry Street
          Newark, NJ  07102

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case:

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

**X** YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  **See Exhibit A (attached hereto) for listing of documents sought herein.**

| PLACE | DATE AND TIME |
|---|---|
| Ashby & Geddes | **October 18, 2005 (10 a.m.)** |
| 222 Delaware Avenue, 17th Floor | |
| Wilmington, Delaware 19899 | |
| (302) 654-1888 | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Robert W. Gifford* | **October 7, 2005** |
| (Counsel for Plaintiff Royal Indemnity Company) | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Robert W. Gifford, Esq.
Sonnenschein Nath & Rosenthal LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 398-4886

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

| Executed on_____ | |
| DATE | SIGNATURE OF SERVER |
| | ADDRESS OF SERVER |
| | |

---

*Rule 45, Federal Rules of Civil Procedure, Parts C & D:*

(c)  *PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.*

(1)  A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)  (A)  A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)  Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)  (A)  On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance;

(ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)  subjects a person to undue burden.

(B)  If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  *DUTIES IN RESPONDING TO SUBPOENA.*

(1)  A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)  When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

- 2 -

9947649JV-2

## EXHIBIT A

## INSTRUCTIONS

For purposes of this request for production, the following instructions shall apply:

(a)       In producing the Documents requested, furnish all Documents within the Trustee's possession, custody or control, regardless of whether such Documents are possessed directly by the Trustee or by his attorneys, agents, employees or representatives.

## DEFINITIONS

In this request for production, the following terms shall have the following meanings:

1. The term "pertaining to" means analyzing, addressing, concerning, consisting of, regarding, referring to, refuting, discussing, describing, evidencing, constituting, compromising, containing, setting forth, showing, disclosing, explaining, summarizing, memorializing, reflecting, commenting on, having to do with, relating to, or otherwise having any logical or factual connection with the subject matter of the document request. All the terms included in the definition of "pertain to" and any of their derivations are themselves used synonymously with "pertain to" when used in this request.

2. "Document" or "Documents" shall have the broadest possible meaning pursuant to the Federal Rules of Evidence, including, but not limited to, tangible objects and records and includes, without limitation, correspondence, communications, computer printouts, data on computers or computer diskettes of any nature (e.g., whether hard drive, floppy disks, CD-ROMS or DVDS), including e-mail communications, reports, memoranda (internal and otherwise) and/or records of conversations, audio and video tape recordings, diaries, calendars, scheduling books, notes, notebooks, drafts, contracts, agreements, invoices, checks, deposit slips, and all other tangible or intangible written or printed or otherwise recorded material of whatever kind known to be in your possession, custody or control and of anyone under your control including any or all persons or entities acting on your behalf at your direction.

3. "Aquino" shall mean Michael Aquino, including his agents, representatives, and all other persons or entities acting or purporting to act on his behalf, whether authorized to do so or not, including any consultants, associates, brokers, or attorneys.

4. "Freed" shall mean Freed Maxick & Battaglia CPAs, Freed Maxick Sachs & Murphy, P.C., and their current or former principals, officers, directors, employees, agents, representatives and attorneys, each person acting on its behalf or under its control and any parent, subsidiary, predecessor or affiliated corporation.

5. "McGladrey & Pullen" shall mean McGladrey & Pullen, LLP and its current or former principals, directors, officers, employees, agents, representatives and attorneys, each person acting on its behalf or under its control and any parent, subsidiary, predecessor or affiliated corporation.

6. "SFC" shall mean Student Finance Corporation, Student Marketing Services, LLC ("SMS"), Student Loan Servicing, LLC ("SLS"), SFC Financial I, LLC, SFC Financial II, LLC, SFC Acceptance I, SFC Acceptance II, SFC Acceptance III, SFC Acceptance IV, SFC Acceptance V, SFC Acceptance VI, SFC Acceptance VII, SFC Acceptance VIII, SFC Acceptance IX, and their current or former principals, owners, officers, directors, partners, stockholders, shareholders, associates, employees, staff members, agents, representatives, attorneys, parents, subsidiaries, affiliates, divisions, successors, and predecessors, and all Persons or entities currently or formerly acting or purporting to act on its behalf, whether authorized to do so or not.

9947649\V-2

## DOCUMENTS REQUESTED

1.    All Documents produced to or received by the Trustee, directly or indirectly, from Aquino, McGladrey, or Freed, pertaining to SFC.

2.    All Documents produced to or received by the Trustee, directly or indirectly, from Aquino, McGladrey, or Freed, in the course of, or concerning, any litigation or other legal proceeding to which SFC is or was a party, specifically including all bankruptcy proceedings pertaining to SFC, its debtors, or its creditors.

3.    All Documents produced to or received by the Trustee pertaining to Acquino, McGladrey, or Freed.

9947649\V-2