# EXHIBIT E

# ARNOLD & PORTER LLP

**Veronica E. Rendon**
Veronica.Rendon@aporter.com

212.715.1165
212.715.1399

399 Park Avenue
New York, NY 10022-4690

November 8, 2005

**VIA FACSIMILE AND U.S. MAIL**

John I. Grossbart, Esquire
Sonnenschein Nath & Rosenthal LLP
8000 Sears Tower
233 S. Wacker Drive
Chicago, Illinois 60606

      Re:    *Royal Indemnity Co. v. Pepper Hamilton LLP et al.*

Dear John:

      We write to renew our request for clarification about Royal Indemnity Company's ("Royal") approach to document production in this matter. As you know, neither Royal nor any other party has produced documents in this matter. The questions below will help focus the parties' discussions regarding Royal's search for and production of responsive documents.

      Once the motions to dismiss are decided, the parties will need to resolve discovery disputes regarding any remaining claims. To that end, we address a host of improper objections lodged by Royal in response to McGladrey's discovery requests. We propose further conference on these matters on a mutually convenient date, and would be prepared to discuss these items on Monday, November 14.

      Royal's Document Production

      As your email of November 3, 2005 reveals, many questions remain regarding Royal's proposed document production in this matter.

      First, you indicate that Royal has imaged "the bulk of Royal's SFC-related materials," which you estimate to be about 100,000 pages, although Royal has not completed its imaging. Given that Royal has previously represented in related litigation that it produced over

# ARNOLD & PORTER LLP

John I. Grossbart, Esq.
November 8, 2005
Page 2

500,000 pages of documents,[1] this initial production of one-fifth of that production appears to be woefully incomplete. Please explain why Royal is not making the complete production available in this matter.

We have inquired on a number of occasions what was meant by Royal's "middle of the plate" production, and still are unsure what concrete body of documents is being referred to by that expression. Our Rule 34 requests sought both general and specific items, and we would appreciate more clarity regarding what Royal intends on producing in response to our Rule 34 requests, especially if it intends on making some form of rolling production. Our concern is that Royal's 100,000 page production is only the first-cut of what it has produced previously, and even then is not responsive to McGladrey's Rule 34 requests. We are aware that productions made by Royal in other litigation have provoked motions to compel, leading to the production of additional documents and we wish to avoid having to engage in that exercise here.

Moreover, you have not addressed how Royal intends to handle production of documents other than the production of documents it had imaged for use in other litigation. McGladrey and Aquino have requested many categories of documents that may not be covered by productions made in prior litigation. Please confirm that Royal is commencing searches for these responsive documents and will in fact produce them.

Second, please clarify the relationship between Royal's "paper depository" in Washington DC, and the 100,000 images above. Are all documents in the paper depository imaged? If not, what is the remainder, and how was the decision made as to what to image?

Third, thank you for agreeing to produce depositions and associated exhibits in electronic format. For those depositions and exhibits that have not been designated "Confidential," you should be able to produce them immediately. For all other depositions and exhibits, we have received the confidentiality stipulation entered into with Wells Fargo and are reviewing it. We will provide you with our comments shortly. Once we finalize the stipulations, it should render moot Royal's objections to McGladrey's requests based upon confidentiality.

Fourth, you indicate you are investigating whether Royal is obligated to produce electronic documents in native electronic format "under applicable law and rules." We attach for your review the Default Standard for Discovery of Electronic Documents, prepared by the Ad-

---

[1] *See* Royal Opposition to MPIII's Amended Motion for Sanctions, in *Royal Indemnity Co. v. MPIII Holdings, Inc. et al.*, Cause No. D167370 in the District Court of Jefferson County, Texas.

# ARNOLD & PORTER LLP

John I. Grossbart, Esq.
November 8, 2005
Page 3

Hoc Committee for Electronic Discovery of the United States District Court of the District of Delaware. We suggest that a conference on e-discovery envisioned by these default rules be conducted before Thanksgiving. Please note that under these default rules, even if Royal produced documents in .tiff format, it must "preserve the integrity of the electronic document's contents, i.e., the original formatting of the document, its metadata and, where applicable, its revision history." McGladrey is particularly interested in metadata relating to the emails produced by Royal, including those identified in McGladrey's requests for production.

In this regard, we also note that Royal apparently provided data to its experts in the related litigation in native format, including without exception a "laptop computer with hard drive with SFC loan database as of April 5, 2002." Certainly, it must do so here as well.

Fifth, we agree that it makes sense to confer again regarding the production by the Trustee. Please let us know what additional "checking" you need to conduct prior to our conference.

Resolution of these matters will greatly facilitate document production at the appropriate time. As the list above demonstrates, however, the parties have significant matters to discuss regarding the scope and method of document production.

### Royal's Discovery Objections

Royal's objections to McGladrey's discovery requests also raise a host of concerns. Please understand that this letter is our effort to address McGladrey's concerns with objections in Royal's responses, in the hopes that the parties can resolve these matters pursuant to L.R. 7.1.1. To the extent the parties are not able to resolve these matters through the meet and confer process, we plan to raise the matters with the Court at the appropriate time.

As a preliminary matter, Royal has asserted objections based on confidentiality. While we are not convinced that such objections are appropriate, in order to avoid further disputes, we are prepared to enter into an appropriate confidentiality agreement. As noted above, we are reviewing the confidentiality stipulation you sent over and will provide comments shortly.

1. <u>Objections to definitions.</u> Royal purports to exclude from the definition of "Related Royal Litigation" several cases in which Royal was not a named party. Royal is obligated to produce documents in its possession, custody or control relating to that litigation, regardless of whether Royal was a party.

# ARNOLD & PORTER LLP

John I. Grossbart, Esq.
November 8, 2005
Page 4

2. **Request 6: Reinsurance.** Royal purports to limit its response to Request 6 to "applicable reinsurance treaties." This limitation is improper. McGladrey is entitled to any communications about reinsurance (whether consummated in a "treaty" or not) concerning the policies issued by Royal concerning SFC.

3. **Requests 15-18: Audit or Accounting Reports.** As these requests relate to the Audit and Accounting Reports and AUP's that are at the center of Royal's allegations against the accountants, it is difficult to fathom why Royal believes it should not produce the full panoply of documents on these subjects in its possession, custody, or control.

4. **Request 44: School/Student Loan Information.** We presume that execution of a protective order addresses your concern with this request calling for what you term "confidential and proprietary" information. Please explain your form objections ("vague" and "overbroad").

5. **Request 46-47, 106-107: Royal Underwriting Manuals/Organizational Structure.** Royal purports to limit these requests to Royal's "Financial Enhancement Unit," which you represent "wrote the SFC Policies at issue in this case." This limitation is not appropriate. These requests are narrowly tailored to reach policies, manuals, etc. "applicable or potentially applicable" to SFC or credit risk insurance and documents describing the organization of Royal. These documents must be produced regardless of the business unit that is the subject or user of such documents.

6. **Request 48: Royal Plans re: Credit Risk Insurance.** Royal refuses to produce business plans or marketing studies related to asset-backed securities, student loans, or credit risk insurance. This refusal is unjustified. Such business plans are potentially relevant to Royal's experience with this industry and its conduct with respect to SFC. These documents are particularly relevant given the allegations that Royal discontinued this line of business in the United States.

7. **Request 50: Rating Agencies.** The request seeks documents concerning any rating agency "related to SFC," but Royal agrees only to produce documents "related to any rating of the Transactions or SFC." It is not clear whether Royal intends to narrow the scope of the request with this response. Please explain Royal's position.

8. **Request 53: Royal's Fees/Premiums.** Royal agrees to produce only documents "sufficient to show" the amount of premiums or other income received by Royal on the SFC policies. Yet documents *concerning* such fees are also responsive, and McGladrey is

# ARNOLD & PORTER LLP

John I. Grossbart, Esq.
November 8, 2005
Page 5

entitled to such. As but one example, McGladrey is entitled to communications about such fees, either internally, or with SFC.

        9.     <u>Request 55: Professional Services re: SFC</u>. Request 55 requests services, advice, reports etc. concerning SFC given to Royal by certain professionals. Because the scope is limited in subject matter (i.e. concerning SFC), and by service provider (the listed professionals), the request is not overbroad.

        10.    <u>Request 89: Grant Thornton documents</u>. McGladrey believes its request for the entirety of Grant Thornton documents is appropriate and seeks relevant documents; however, McGladrey would be willing, as an initial matter, to limit its request to exclude documents regarding projects for which Grant Thornton was retained unrelated to SFC, McGladrey's work with respect to SFC, or any of the events or subject matters of the Amended Complaint. We would reserve our right to seek additional Grant Thornton documents at a later time should it be appropriate to do so.

        11.    <u>Request 90: Communications re: SFC</u>. Royal's response is unclear. Please confirm that Royal will produce responsive documents in its possession, custody, or control.

        12.    <u>Request 91: Royal Affiliates' reports</u>. *See* Paragraph 6 above. There is no justification for withholding such documents in the possession, custody, or control of Royal, especially with respect to entities under joint management or control with Royal.

        13.    <u>Request 92-94: SFC/Royal Action documents</u>. Royal is obligated to produce responsive documents related to the allegations in the SFC/Royal litigation regarding Royal's conduct. Royal cannot escape production simply because a party other than Royal described the conduct. The events described are inescapably relevant, so Royal must produce the documents related thereto.

        14.    <u>Request 95: Related Royal Litigation Documents</u>. Royal purports to limit the response to "interrogatory answers and answers to requests to admit served by Royal and deposition testimony." While this is a starting point, McGladrey is also entitled to other litigation documents including without limitation documents produced by Royal, any affidavits or declarations executed by Royal witnesses, court filings, hearing transcripts (including any Royal witness testimony), pre-trial filings (including witness lists, exhibit lists, deposition designations). The limitation to the few discovery documents listed in Royal's response is plainly inadequate.

# ARNOLD & PORTER LLP

John I. Grossbart, Esq.
November 8, 2005
Page 6

15. <u>Request 96-101: Related Royal Litigation Documents</u>. Given that the subject matters addressed in these requests are relevant, the gripe that the requests are based on allegations made by a party other than Royal rings hollow.

16. <u>Request 102: Settlement Documents</u>. Royal's attempt to restrict disclosure of settlement agreements is off base. McGladrey is, of course, willing to execute a protective order to safeguard the confidentiality of these agreements. If Royal believes confidentiality concerns of third parties prevent disclosure, please notify such third parties and provide them an opportunity to address the concern with Judge Farnan. It is not sufficient to identify the amounts of the payments by the settling parties. Royal must produce all terms of such agreements and all related documents.

17. <u>Request 105: Reserves by Royal</u>. The amount and timing of reserves set by Royal is highly relevant in this action (e.g. to Royal's understanding of the viability of the SFC business model), and not burdensome to produce. Please produce these immediately.

18. <u>Request 108: Employee files</u>. The files, calendars, etc. for these employees are easily found and produced. They are relevant, or may lead to the discovery of admissible evidence, e.g. by confirming the date of particular meetings described in the litigation. Given that Royal pleads ignorance, it can hardly hide from disclosure the calendars and files of the employees involved in the SFC account.

19. <u>Request 109: Annual/Quarterly Reports</u>. Royal limits its response to reports filed with the State of Delaware. McGladrey is also entitled to any other quarterly or annual financial reports, including any reports given to Royal's US and/or UK parents.

20. <u>Requests 110-111: Surplus/Regulatory Requirements</u>. Royal cannot refuse to produce documents that relate to whether Royal exceeded statutory surplus or other regulatory requirements in issuing the SFC policies. Please produce all documents responsive to these requests.

21. <u>Request 112: SEC/Regulatory Documents</u>. Again Royal cannot limit its response to reports filed with the State of Delaware if other responsive reports exist. Please confirm whether Royal is excluding any documents based on its objections.

22. <u>Request 113: Inquiry of Royal</u>. Regulatory inquiries of Royal cannot be withheld on the basis of Royal's objections. If Royal is concerned about overbreadth, McGladrey will limit the request to any inquiries relating to Royal concerning the policies issued concerning SFC, any other credit risk insurance policies, and reinsurance relating to any credit risk insurance policy.

# ARNOLD & PORTER LLP

John I. Grossbart, Esq.
November 8, 2005
Page 7

      23.    <u>Form objections.</u> Royal has raised what amount to form objections (e.g. "vague") to Requests 1, 2, 3, 4, 5, 7, 8, 9, 10, 36, 43, 50, 60, 62, 63, 66, 69, 73, 79, 80, 81, 82, 83, 104, 114, 116. These boilerplate objections provide no information on which to judge the objection. If Royal intends to assert any of these objections to justify withholding documents, please advise us of the substantive basis of the objection.

      We are available on November 14 to confer with you at your suggestion.

Very truly yours,

Veronica E. Rendon

cc:    Christopher M. Winter, Esq.
        Thomas H. L. Selby, Esq.

## DEFAULT STANDARD FOR DISCOVERY OF
## ELECTRONIC DOCUMENTS ("E-DISCOVERY")

1. **Introduction.** It is expected that parties to a case will cooperatively reach agreement on how to conduct e-discovery. In the event that such agreement has not been reached by the Fed. R. Civ. P. 16 scheduling conference, however, the following default standards **shall apply** until such time, if ever, the parties conduct e-discovery on a consensual basis.

2. **Discovery conference.** Parties shall discuss the parameters of their anticipated e-discovery at the Fed. R. Civ. P. 26(f) conference, as well as at the Fed. R. Civ. P. 16 scheduling conference with the court, consistent with the concerns outlined below. More specifically, prior to the Rule 26(f) conference, the parties shall exchange the following information:

- A list of the most likely custodians of relevant electronic materials, including a brief description of each person's title and responsibilities (see ¶ 6).

- A list of each relevant electronic system that has been in place at all relevant times[1] and a general description of each system, including the nature, scope, character, organization, and formats employed in each system. The parties

---

[1] For instance, in a patent case, the relevant times for a patent holder may be the date the patent(s) issued or the effective filing date of each patent in suit.

should also include other pertinent information about their electronic documents and whether those electronic documents are of limited accessibility. Electronic documents of limited accessibility may include those created or used by electronic media no longer in use, maintained in redundant electronic storage media, or for which retrieval involves substantial cost.

- The name of the individual responsible for that party's electronic document retention policies ("the retention coordinator"), as well as a general description of the party's electronic document retention policies for the systems identified above (see ¶ 6).

- The name of the individual who shall serve as that party's "e-discovery liaison" (see ¶ 2).

- Provide notice of any problems reasonably anticipated to arise in connection with e-discovery.

To the extent that the state of the pleadings does not permit a meaningful discussion of the above by the time of the Rule 26(f) conference, the parties shall either agree on a date by which this information will be mutually exchanged or submit the issue for resolution by the court at the Rule 16 scheduling conference.

3. **E-discovery liaison.** In order to promote communication and cooperation between the parties, each party to a case shall designate a single individual through which all e-discovery

2

requests and responses are made ("the e-discovery liaison").
Regardless of whether the e-discovery liaison is an attorney (in-house or outside counsel), a third party consultant, or an employee of the party, he or she must be:

- Familiar with the party's electronic systems and capabilities in order to explain these systems and answer relevant questions.

- Knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues.

- Prepared to participate in e-discovery dispute resolutions.

The court notes that, at all times, the attorneys of record shall be responsible for compliance with e-discovery requests. However, the e-discovery liaisons shall be responsible for organizing each party's e-discovery efforts to insure consistency and thoroughness and, generally, to facilitate the e-discovery process.

4. **Timing of e-discovery**. Discovery of electronic documents shall proceed in a sequenced fashion.

- After receiving requests for document production, the parties shall search their documents, other than those identified as limited accessibility electronic documents, and produce responsive electronic documents in accordance with Fed.

3

R. Civ. P. 26(b)(2).

- Electronic searches of documents identified as of limited accessibility shall not be conducted until the initial electronic document search has been completed. Requests for information expected to be found in limited accessibility documents must be narrowly focused with some basis in fact supporting the request.

- On-site inspections of electronic media under Fed. R. Civ. P. 34(b) shall not be permitted absent exceptional circumstances, where good cause and specific need have been demonstrated.

    5. **Search methodology.** If the parties intend to employ an electronic search to locate relevant electronic documents, the parties shall disclose any restrictions as to scope and method which might affect their ability to conduct a complete electronic search of the electronic documents. The parties shall reach agreement as to the method of searching, and the words, terms, and phrases to be searched with the assistance of the respective e-discovery liaisons, who are charged with familiarity with the parties' respective systems. The parties also shall reach agreement as to the timing and conditions of any additional searches which may become necessary in the normal course of discovery. To minimize the expense, the parties may consider limiting the scope of the electronic search (e.g., time frames,

4

fields, document types).

6. **Format.** If, during the course of the Rule 26(f) conference, the parties cannot agree to the format for document production, electronic documents shall be produced to the requesting party as image files (e.g., PDF or TIFF). When the image file is produced, the producing party must preserve the integrity of the electronic document's contents, i.e., the original formatting of the document, its metadata and, where applicable, its revision history. After initial production in image file format is complete, a party must demonstrate particularized need for production of electronic documents in their native format.

7. **Retention.** Within the first thirty (30) days of discovery, the parties should work towards an agreement (akin to the standard protective order) that outlines the steps each party shall take to segregate and preserve the integrity of all relevant electronic documents. In order to avoid later accusations of spoliation, a Fed. R. Civ. P. 30(b)(6) deposition of each party's retention coordinator may be appropriate.

The retention coordinators shall:

- Take steps to ensure that e-mail of identified custodians shall not be permanently deleted in the ordinary course of business and that electronic documents maintained by the individual custodians shall not be altered.

5

- Provide notice as to the criteria used for spam and/or virus filtering of e-mail and attachments; e-mails and attachments filtered out by such systems shall be deemed non-responsive so long as the criteria underlying the filtering are reasonable.

Within seven (7) days of identifying the relevant document custodians, the retention coordinators shall implement the above procedures and each party's counsel shall file a statement of compliance as such with the court.

8. **Privilege.** Electronic documents that contain privileged information or attorney work product shall be immediately returned if the documents appear on their face to have been inadvertently produced or if there is notice of the inadvertent production within thirty (30) days of such.

9. **Costs.** Generally, the costs of discovery shall be borne by each party. However, the court will apportion the costs of electronic discovery upon a showing of good cause.

10. **Discovery disputes and trial presentation.** At this time, discovery disputes shall be resolved and trial presentations shall be conducted consistent with each individual judge's guidelines.

6

11/08/2005 19:48 FAX                                                                             ☒001

```
            *********************
            ***   TX REPORT   ***
            *********************

    TRANSMISSION OK

    TX/RX NO              2156
    RECIPIENT ADDRESS     913128767934
    DESTINATION ID
    ST. TIME              11/08 19:45
    TIME USE              03'12
    PAGES SENT            14
    RESULT                OK
```



# ARNOLD & PORTER LLP

212.715.1000
212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

## Fax Transmittal
November 8, 2005

| RECIPIENT NAME(S) | RECIPIENT FAX NUMBER(S) | RECIPIENT TELEPHONE NUMBER(S) |
|---|---|---|
| John Grossbart | 312.876.8000 | 312.876.7934 |
| **SENDER** | **SENDER'S TELEPHONE NUMBER** | |
| Veronica E. Rendon | (212) 715-1165 | |
| **CLIENT/MATTER NUMBER** | **TIMEKEEPER NUMBER** | **NUMBER OF PAGE(S)** |
| 20109-002 | 5395 | We are transmitting 14 page(s) (including this cover sheet) |

If you experience difficulty receiving this fax transmission, please contact the operator at 212.715.1330.

**MESSAGE**