# Exhibit B

# NYS Department of State

## Division of Corporations

### Entity Information

---

Selected Entity Name: FREED MAXICK SACHS & MURPHY, P.C.

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | FREED MAXICK SACHS & MURPHY, P.C. |
| **Initial DOS Filing Date:** | JUNE 06, 1978 |
| **County:** | ERIE |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC PROFESSIONAL CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
FREED MAXICK SACHS & MURPHY, P.C.
800 LIBERTY BUILDING
BUFFALO, NEW YORK, 14202-3508

**Chairman or Chief Executive Officer**
ROBERT M GLASER
800 LIBERTY BLDG
BUFFALO, NEW YORK, 14202-3508

**Principal Executive Office**
FREED MAXICK SACHS & MURPHY, P.C.
800 LIBERTY BUILDING
BUFFALO, NEW YORK, 14202-3508

**Registered Agent**
NONE

NOTE: New York State does not issue organizational identification numbers.

Search Results                                    New Search

Division of Corporations, State Records and UCC Home Page    NYS Department of State Home Page

W3C HTML 4.01    W3C CSS    508 Bobby APPROVED

# NYS Department of State

## Division of Corporations

## Entity Information

---

Selected Entity Name: FREED MAXICK & BATTAGLIA, CPAS, P.C.

Selected Entity Status Information

|  |  |
|---|---|
| Current Entity Name: | FREED MAXICK & BATTAGLIA, CPAS, P.C. |
| Initial DOS Filing Date: | AUGUST 22, 2001 |
| County: | ERIE |
| Jurisdiction: | NEW YORK |
| Entity Type: | DOMESTIC PROFESSIONAL CORPORATION |
| Current Entity Status: | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
FREED MAXICK & BATTAGLIA, CPAS, P.C.
800 LIBERTY BUILDING
BUFFALO, NEW YORK, 14202

**Chairman or Chief Executive Officer**
ROBER GLASER
800 LIBERTY BLDG
BUFFALO, NEW YORK, 14202

**Principal Executive Office**
RONALD SOLURI SR
800 LIBERTY BLDG
BUFFALO, NEW YORK, 14202

**Registered Agent**
NONE

NOTE: New York State does not issue organizational identification numbers.

Search Results          New Search

Division of Corporations, State Records and UCC Home Page    NYS Department of State Home Page

W3C HTML   W3C CSS   508 Bobby

# Exhibit C

%AO 440 (Del Rev. 10/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of _____ DELAWARE

ROYAL INDEMNITY COMPANY,

        Plaintiff,

        V.

PEPPER HAMILTON LLP, et al.

        Defendants.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

                5

TO: (Name and address of Defendant)

Freed Maxick & Battaglia CPAs PC    c/o Delaware Secretary of State
The Corporation    401 Federal Street, Suite 4
800 Liberty Building    Dover, DE  19901
Buffalo, NY  14202-3508

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Philip Trainer, Jr., Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

PETER T. DALLEO

MAR 1 8 2005

CLERK                               DATE

(By) DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROYAL INDEMNITY COMPANY,                    )
                                            )
                    Plaintiff,              )
                                            )
            v.                              )    C.A. No. 05-165
                                            )
PEPPER HAMILTON, LLP, W. RODERICK           )
GAGNE, FREED MAXICK & BATTAGLIA             )
CPAs PC, MCGLADREY & PULLEN, LLP and        )
MICHAEL AQUINO                              )
                                            )
                    Defendants.             )

## AFFIDAVIT OF MAILING AS TO FREED MAXICK & BATTAGLIA CPAS PC

STATE OF DELAWARE           )
                            )    SS:
COUNTY OF NEW CASTLE        )

Tiffany Geyer Lydon, having been duly sworn according to law, deposes and says as follows:

1.      I am an associate at the firm of Ashby & Geddes and am an attorney of record for Plaintiff Royal Indemnity Company.

2.      Upon information and belief, the address of defendant Freed, Maxick & Battaglia CPAs PC is The Corporation, 800 Liberty Building, Buffalo, NY 14202-3508.

3.      On March 21, 2005, I caused to be sent to defendant Freed, Maxick & Battaglia CPAs PC, via Registered Mail Return Receipt Requested, at the address indicated in Paragraph 2 above, a Notice consisting, among other things, of a copy of the process and complaint served upon the Delaware Secretary of State, and a statement that:

        (a)     service of the original of such process has been made upon the Secretary of State; and

        (b)     under the provisions of 10 *Del. C.* § 3104, such service is as effectual for

all intents and purposes as if it had been made upon him personally within this state.

A copy of the foregoing Notice is attached hereto as Exhibit A.

4.    The registered mail receipt, which is attached to this Affidavit as Exhibit B, is the original of the return receipt executed on March 24, 2005 on behalf of defendant Freed, Maxick & Battaglia CPAs PC.

5.    The foregoing is true and correct to the best of my knowledge, information and belief.

_____
Tiffany Geyer Lydon

SWORN TO AND SUBSCRIBED before me this 28th day of March 2005.

_____
Notary Public

155130.1

2

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROYAL INDEMNITY COMPANY,           )
                                   )
            Plaintiff,             )
                                   )
      v.                           )    C.A. No. 05-165
                                   )
PEPPER HAMILTON, LLP, W. RODERICK  )
GAGNE, FREED MAXICK & BATTAGLIA    )
CPAs PC, MCGLADREY & PULLEN, LLP and )
MICHAEL AQUINO                     )
                                   )
            Defendants.            )

## NOTICE

TO:    FREED MAXICK & BATTAGLIA CPAs PC
       THE CORPORATION
       800 LIBERTY BUILDING
       BUFFALO, NY  14202-3508

PLEASE TAKE NOTICE that service of process directed to you in the captioned matter

has been made upon the Delaware Secretary of State pursuant to 10 *Del. C.* § 3104.  Copies of

said process and Plaintiff Royal Indemnity Company's Complaint are enclosed herewith.  Under

the provisions of 10 *Del. C.* § 3104, such service is as effectual to all intents and purposes as if it

had been made upon you personally within this State.

ASHBY & GEDDES

Lawrence C. Ashby (I.D. #468)
Philip Trainer, Jr. (I.D. #2788)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
(302) 654-1888

*Attorneys for Plaintiff Royal Indemnity
Company*

Michael H. Barr
Kenneth J. Pfaehler
SONNENSCHEIN NATH & ROSENTHAL
1221 Avenue of the Americas
New York, New York  10020-1089
(212) 768-6700
(212) 768-6800 (fax)

        - and -

Alan S. Gilbert
John Grossbart
SONNENSCHEIN NATH & ROSENTHAL
8000 Sears Tower
233 S. Wacker Drive
Chicago, Illinois  60606
(312) 876-8000
(312) 876-7934 (fax)

Dated:  March 21, 2005

**ORIGINAL BY REGISTERED MAIL NO. RA 122 365 297 US,
RETURN RECEIPT REQUESTED;
COPY BY FIRST CLASS U.S. MAIL**

154748.1

# EXHIBIT B

| Registered No. | | Date Stamp |
|---|---|---|
| RA 122 365 297 US | | |

| Reg. Fee $ 7.50 | Special Delivery $ |
| Handling Charge $ | Return Receipt $ 1.75 |
| Postage $ 2.44 | Restricted Delivery $ |
| Received by Kem | |

*To Be Completed By Post Office*

Customer Must Declare Full Value $ 0

☐ With Postal Insurance
☒ Without Postal Insurance

*(See Reverse)*

Domestic Insurance is Limited to $25,000. International Indemnity is Limited

**FROM**

Tiffany Geyer Lydon, Esquire

Ashby & Geddes

222 Delaware Avenue, 17th Floor

Wilmington, DE 19899

**TO**

Freed Maxick & Battaglia CPAs

The Corporation

800 Liberty Building

Buffalo, NY 14202-3508

*To Be Completed By Customer (Please Print) All Entries Must Be In Ballpoint or Typed*

PS Form 3806, June 2000    **Receipt for Registered Mail**    *(Customer Copy)*
*(See Information on Reverse)*

---

**SENDER** COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Freed Maxick & Battaglia CPAs
The Corporation
800 Liberty Building
Buffalo, NY 14202-3508

A. Signature

X Ann Lusvaldo    ☐ Agent  ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Ann Logalbo    3/24/05

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

RECEIVED
MAR 28 2005

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☒ Registered    ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    RA 122 365 297 US

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

# Exhibit D

**Executive Risk Indemnity Inc.**
Home Office
The Prentice-Hall Corporation System, Inc.
1013 Centre Road
Wilmington, DE 19805-1297

*Administrative Offices/Mailing Address:*
82 Hopmeadow Street
Simsbury, Connecticut 06070-7683



**THIS IS A CLAIMS MADE INDEMNITY POLICY WITH DEFENSE EXPENSES INCLUDED
IN THE LIMIT OF LIABILITY. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

## DECLARATIONS

## ACCOUNTANTS PROFESSIONAL LIABILITY POLICY

| POLICY NUMBER | RENEWAL OF |
|---|---|
| 8168-4014 | 8168-4014 |

**NOTICE: THIS IS A CLAIMS MADE POLICY WHICH APPLIES, SUBJECT TO ITS TERMS, ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD," OR, IF PURCHASED, ANY EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED, AND MAY BE EXHAUSTED, BY "DEFENSE EXPENSES," AND "DEFENSE EXPENSES" WILL BE APPLIED AGAINST THE RETENTION. THE UNDERWRITER WILL HAVE NO DUTY TO DEFEND ANY "CLAIM."**

| ITEM 1. INSURED FIRM ADDRESS: | ITEM 2. POLICY PERIOD: |
|---|---|
| FREED MAXICK & BATTAGLIA CPAS PC<br>800 LIBERTY BUILDING<br>BUFFALO, NY 14202 | (a) Inception Date: September 1, 2003  *amended,*<br>(b) Expiration Date: September 1, 2004  *see schedule*<br>at 12:01 a.m. all dates at the Principal Address first<br>stated in ITEM 1. |

**ITEM 3. LIMIT OF LIABILITY (inclusive of Defense Expenses):**
(a)   Each and every Claim: $5,000,000.00
(b)   Aggregate: $5,000,000.00

**ITEM 4. RETENTION:**
(a)   Each and every Claim: $250,000.00
(b)   Aggregate: N/A

**ITEM 5. PREMIUM:**
(a)   Premium: $209,625.00
(b)   Due 45 days from the end of the month in which the premium is effective

**ITEM 6. EXTENDED REPORTING PERIOD:** 365 day
**ADDITIONAL PREMIUM FOR EXTENDED REPORTING PERIOD: $419,250**

**ITEM 7. NOTICE REQUIRED TO BE GIVEN TO THE UNDERWRITER MUST BE ADDRESSED TO:**
Vice President of Claims
Executive Risk Management Associates
P.O. Box 2002
Simsbury, CT 06070

**ITEM 8. ENDORSEMENTS:**
C29471 (7/99 ed.)
C29491 (1/00 ed.)
C30183 (12/99 ed.)
C30211 (1/00 ed.)
D25382 (11/97 ed.)
QFREEDMX (12/01-
ed.)

These Declarations, the completed signed Application and the Policy with Endorsements shall constitute the
contract between the Underwriter and the Insureds.

EXECUTIVE RISK INDEMNITY INC. by (Authorized Company Representative):

Form C23744 (12/97 ed.)                                                                                    Catalog No. APL1d-I



# Accountants Professional Liability Policy

**Executive Risk Indemnity Inc.**
*Home Office:*
2711 Centerville Road, Suite 400
Wilmington, Delaware  19808

*Administrative Offices/Mailing Address:*
82 Hopmeadow Street
Simsbury, Connecticut 06070-7683
Phone: 860.408.2000
Fax: 860.408.2002
Email:  cber-info@chubb.com
Web Site:  http://cber.chubb.com

**THIS IS A CLAIMS MADE POLICY
WITH DEFENSE EXPENSES INCLUDED IN THE LIMIT OF LIABILITY.
PLEASE READ THE ENTIRE POLICY CAREFULLY.**

## EXECUTIVE RISK INDEMNITY INC.

## ACCOUNTANTS PROFESSIONAL LIABILITY POLICY

**Executive Risk Indemnity Inc. (the "Underwriter") and the Insureds, subject to all of the terms, conditions and limitations of, and endorsements to, this Policy, agree as follows:**

## I.    INSURING AGREEMENT

The Underwriter will pay on behalf of the **Insureds** all **Loss**, in excess of the applicable retention, resulting from any **Claim** first made against any **Insured** during the **Policy Period** or, if applicable, the Extended Reporting Period, for any **Wrongful Act** occurring before the expiration of the **Policy Period**.

## II.    DEFINITIONS

(A)    "**Affiliated Firm**" means any person or entity with which the **Insured Firm** has entered into a professional relationship and/or agreement, and which is performing **Professional Services** at the direction of or on behalf of the **Insured Firm** for clients of the **Insured Firm**.

(B)    "**Application**" means the application attached to and forming part of this Policy, including any materials submitted by the **Insured Firm** in connection with such application, all of which are on file with the Underwriter and are a part of this Policy, as if physically attached.

(C)    "**Claim**" means:

(1)    a written notice received by an **Insured** that it is the intention of any person or entity to hold any **Insured** responsible for the results of a **Wrongful Act**;

(2)    a civil, judicial or administrative adjudicatory proceeding or an arbitration proceeding, including any appeal therefrom, against any **Insured**; provided, however, that "**Claim**" does not include any criminal proceeding;

(3)    a written request received by an **Insured** to toll or waive a statute of limitations relating to any **Claim** described in clauses (1) or (2) above against an **Insured**; and

(4)    subject to Section III EXCLUSIONS (I), any written notice received by an **Insured** that any governmental authority has commenced or intends to

commence an investigation of an **Insured**, or that any institute of accountants or formal, duly constituted standards board or similar professional body has commenced or intends to commence an investigation or disciplinary review of an **Insured**.

(D)  "**Defense Expenses**" means reasonable legal fees and expenses incurred to defend the **Insureds** against any **Claim**, including costs of appeal, attachment or similar bonds, provided that the Underwriter shall have no obligation to procure or furnish any such bond. **Defense Expenses** shall include charges by the **Named Insured** for time spent by its own personnel in participating with its counsel in the defense of a **Claim** covered hereunder if, and only to the extent, approved, in the Underwriter's sole discretion, in advance in writing by the Underwriter. Except as specifically approved by the Underwriter, **Defense Expenses** shall not include salaries, wages, fees, overhead or benefit expenses of any **Insured**.

(E)  "**Insured**" means:

(1)  the **Insured Firm**;

(2)  any person who is, was, or in the future becomes a partner, principal, shareholder, officer, director, member, retired partner or employee of the **Insured Firm**, but only in the capacity of, and when performing, **Professional Services** for others in the name of or on behalf of the **Insured Firm**; or

(3)  the estate, heirs, executors, administrators and legal representatives of any person described in clause (2) above, in the event of such person's death, disablement, incapacity, insolvency or bankruptcy, but only with respect to liability arising out of **Professional Services** rendered by such person on behalf of the **Insured Firm** prior to such person's death, disablement, incapacity, insolvency, or bankruptcy.

An **Affiliated Firm** is not an **Insured** under this Policy.

(F)  "**Insured Firm**" means the **Named Insured** or any **Predecessor Firm**.

(G)  **"Loss"** means damages, including punitive damages (if insurable under the law pursuant to which this Policy is construed), judgments, awards, settlements and **Defense Expenses** which an **Insured** is legally obligated to pay as a result of a **Claim**. Loss shall also include fines and penalties assessed against clients of the **Insured** by the Internal Revenue Service, or by any state or municipal tax authority. Loss shall not include:

(1)  any multiplied damage award which is in excess of the damage award so multiplied;

(2)  fines, sanctions, taxes or penalties imposed by law, except with respect to fines and penalties assessed against clients of the **Insured** by the Internal Revenue Service, or by any state or municipal tax authority, as set forth above;

(3)  matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed; or

(4)  the value of any **Professional Services** rendered or expenses incurred by the **Insured** for modification or correction of previous work for a client of the **Insured**.

(H)  **"Named Insured"** means the entity designated in ITEM 1 of the Declarations.

(I)  **"Policy Period"** means the period from the Inception Date to the Expiration Date in ITEM 2 of the Declarations, or to any earlier cancelation date.

(J)  **"Predecessor Firm"** means a sole proprietorship, partnership, professional corporation or other organization:

(1)  properly established under state law and operated for the purpose of rendering **Professional Services**; and

(2)  which has undergone a change in name or organizational structure; and

(3)  of which the owners, partners, members or officers responsible for producing in excess of fifty percent (50%) of the gross annual billings have become owners, partners, members or officers of the **Named Insured**; provided such billings have been assigned to or otherwise obtained by the **Named Insured**.

(K)     "Professional Services" means:

    (1)     advice given or services performed of whatsoever nature for others by or
        on behalf of the **Insured Firm** by any **Insured** or by any **Affiliated Firm** or
        any other person or entity for whose conduct the **Insured Firm** is legally
        responsible (whether assumed by contract or otherwise), provided that all
        or any portion of the fee accruing from such work inures to the benefit of
        the **Insured Firm** (unless such work is performed on a pro bono basis with
        the knowledge and consent of the **Insured Firm**); and

    (2)     advice given or services performed by an **Insured** solely in connection
        with the evaluation, by members of any institute of accountants or any
        formal, duly constituted standards board or similar professional body, of
        any individual or entity, whether or not on behalf of the **Insured Firm**.

In clarification and not in limitation of the foregoing, **Professional Services** shall
include the provision to clients of computer software packages and products
prepared by an **Insured**, or publications prepared or written by an **Insured**.

(L)     "Related Claims" means all **Claims** for **Wrongful Acts** based on, arising out of,
directly or indirectly resulting from, in consequence of, or in any way involving the
same or related facts, circumstances, situations, transactions or events, or the
same or related series of facts, circumstances, situations, transactions or events.

(M)     "Wrongful Act" means any actual or alleged act, error or omission, breach of
contract or duty, or libel or slander, committed by an **Insured**, or by any
**Affiliated Firm** or by any person other than an **Insured** for whose actions the
**Insured Firm** is legally responsible, but only in connection with the rendering of
or failure to render **Professional Services**.

III.     **EXCLUSIONS**

The Underwriter shall not pay **Loss** in connection with any **Claim**:

(A)     arising out of any **Wrongful Act** or any matter, fact, circumstance, transaction or
event which has been the subject of any **Claim** or **Related Claims** made prior to
the effective date of this Policy or of any notice given under any prior policy of
which this Policy is a successor, or which was described in the **Application** or an
application for any policy of which this Policy is a renewal or a replacement;

(B)    where it is established by an admission of an **Insured** or by a finding in any judicial or administrative proceeding that the **Insured** committed or personally acquiesced in any dishonest, fraudulent or criminal **Wrongful Act**; provided that this EXCLUSION (B) shall not apply to any other **Insured** who has neither admitted nor been found in any such proceeding to have committed or personally acquiesced in such dishonest, fraudulent or criminal act; except that the Underwriter shall, in such event, pay **Loss** only in excess of the full extent of the assets in the **Insured Firm** of any individual **Insured** who has admitted or been found in any such proceeding to have committed or personally acquiesced in such fraud, dishonest or criminal act as described above; and any assets of such **Insured** recovered by the **Insured Firm** (or any other **Insured**) shall inure to the benefit of the Underwriter to the extent of the amount paid by the Underwriter under this Policy;

(C)    for any bodily injury, emotional distress, mental anguish, sickness, disease or death of any person, or loss of consortium, support, companionship or services of any kind resulting therefrom;

(D)    for damage to, or destruction of, or loss of use of, tangible property; provided, that this EXCLUSION (D) shall not apply to damage to, or destruction of, or loss of use of, client records in the possession of any **Insured**;

(E)    for any actual or alleged act, error, omission, breach of contract or duty, or libel or slander committed by any **Insured** in his, her or its capacity as a "fiduciary," as defined and described in the Employee Retirement Income Security Act of 1974 and any amendments thereto or any regulations or orders promulgated thereunder or similar provisions of any federal, state or local statute or common law;

(F)    arising out of the service of any **Insured** in his or her capacity as a member, partner, principal, shareholder, regent, governor, director, officer or employee of any entity, organization, association or other business enterprise, other than the **Named Insured**;

(G)    subject to EXTENSIONS OF COVERAGE (B), arising out of a **Wrongful Act** by such **Insured** committed or allegedly committed prior to the time that such **Insured** became a member, partner, principal, shareholder, director, officer or employee of the **Insured Firm**; provided that this EXCLUSION (G) shall not apply to any **Claim** arising out of a **Wrongful Act** committed or allegedly committed by a **Predecessor Firm**;

(H)     arising out of any brokerage, offer or sale by the **Insured** of securities, ownership interests, real estate or other investment vehicles, or any solicitation by the **Insured** to offer, sell or purchase securities, ownership interests, real estate or other investment vehicles; provided that this EXCLUSION (H) shall not apply to any **Claim** arising out of financial planning, investment advice or the preparation of a prospectus or pro forma financial statements, rendered in connection with the performance of **Professional Services**;

(I)     arising out of a governmental investigation, or an investigation or disciplinary review conducted by any institute of accountants or any formal, duly constituted standards board or similar professional body; provided that this EXCLUSION (I) shall not apply to **Defense Expenses** incurred in connection with any such **Claim**;

(J)     with respect to property of which an **Insured** is, or is alleged to be, an owner or operator in a fiduciary or any other capacity, arising out of:

      (1)     any actual, alleged or threatened exposure to, or generation, storage, transportation, discharge, emission, release, dispersal, escape, treatment, removal or disposal of, any smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials (including materials which are intended to be or have been recycled, reconditioned or reclaimed) or other irritants, pollutants or contaminants; or

      (2)     any regulation, order, direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any of the foregoing, or any action taken in contemplation or anticipation of any such regulation, order, direction or request; or

(K)     by or on behalf of, or in the name or right of:

      (1)     any **Insured**; or

      (2)     any entity in which the **Insureds**, individually or collectively, own or control a fifty percent (50%) or greater ownership interest.

**IV.     EXTENSIONS OF COVERAGE**

(A)     **Extended Reporting Period:**

      (1)     In the event that the **Named Insured** cancels, declines or refuses to renew this Policy, or if the Underwriter declines or refuses to renew this Policy, the **Named Insured** shall have the right to an Extended Reporting Period as follows:

           (a)     AUTOMATIC EXTENDED REPORTING PERIOD

Without any additional premium being required, the **Insureds** shall have sixty (60) days after the effective date of such cancelation or, in the event of non-renewal, after the date upon which the **Policy Period** ends, to report any **Claim** first made against the **Insureds** during such sixty (60) day period; provided that this EXTENSION OF COVERAGE (A)(1) shall not apply, and the **Insureds** shall not be entitled to any such Extended Reporting Period, in the event that any new professional liability insurance policy is obtained by the **Insured**.

(b)    OPTIONAL EXTENDED REPORTING PERIOD

The **Named Insured** may purchase an Extended Reporting Period for the additional premium and period set forth in ITEM 6 of the Declarations. The **Named Insured** must notify the Underwriter in writing by certified mail at the address set forth in the Declarations of its decision to purchase such an Extended Reporting Period, and must pay the additional premium, within thirty (30) days after (i) the effective date of cancelation; or, (ii) in the event of non-renewal, the date the **Policy Period** ends. Payment of the full additional premium by the due date is a strict condition precedent to the right to purchase an Extended Reporting Period. The full additional premium shall be deemed fully earned upon commencement of the Extended Reporting Period.

(2)    The coverage otherwise afforded under this Policy will be extended to apply for any Extended Reporting Period, subject to all of this Policy's terms, conditions, limitations and endorsements, to **Loss**, including **Defense Expenses** from **Claims** first made against any **Insured** during such Extended Reporting Period for **Wrongful Acts** before the effective date of such cancelation or, in the event of non-renewal, before the date upon which the **Policy Period** ends.

(3)    Any **Claim** made during an Extended Reporting Period shall be deemed to have been made during the **Policy Period**. The maximum aggregate limit of liability set forth in ITEM 3 of the Declarations shall be the maximum aggregate limit of liability for the **Policy Period** and, if applicable, the Extended Reporting Period. The Policy's maximum aggregate limit of liability is not increased, reinstated or renewed by virtue of the applicability of any Extended Reporting Period.

(B)    **Acquisitions or Mergers - Adjustments:**

(1)    ADDITIONAL COVERAGE AT OPTION OF NAMED INSURED

If, after the effective date of this Policy, the **Named Insured** acquires another entity or merges with another entity such that the **Named Insured** is the surviving entity and (a) the gross annual billings of the acquired or merged entity do not exceed ten percent (10%) of the gross annual billings of the **Named Insured** as reflected in the **Named Insured's** most recent consolidated financial statements prior to such acquisition or merger, and (b) the **Named Insured** gives written notice to the Underwriter of such acquisition or merger, in the form of a completed merger or acquisition questionnaire so designated by the Underwriter, within thirty (30) days after the effective date of such acquisition or merger, then (i) coverage shall be provided under this Policy, subject to its terms, conditions, limitations and exclusions, for any **Claim** against the **Insureds** arising from **Professional Services** provided by the acquired or merged entity, and (ii) such acquired or merged entity, and the members, partners, shareholders, principals, directors, officers and employees of such entity who join the **Named Insured** as a result of such acquisition or merger, shall be deemed to be **Insureds** as of the effective date of such acquisition or merger. No coverage will be available under this Policy for **Loss** from any **Claim** against any such acquired or merged entity, or the members, partners, shareholders, principals, directors, officers and employees of such entity, arising out of any **Wrongful Act** or any matter, fact, circumstance, transaction or event which was (i) the subject of any notice given under any policy of insurance in effect prior to the effective date of such acquisition or merger, or (ii) known to such entity, or any member, partner, shareholder, principal, director or officer of such entity, prior to the effective date of such acquisition or merger, and which such entity or member, partner, shareholder, principal, director or officer of such entity knew or reasonably should have expected would result in a **Claim**.

(2)    OPTIONAL COVERAGE

If, after the effective date of this Policy, the **Named Insured** acquires another entity or merges with another entity such that the **Named Insured** is the surviving entity and the gross annual billings of the acquired or merged entity exceed ten percent (10%) of the gross annual billings of the **Named Insured** as reflected in the **Named Insured's** most recent consolidated financial statements prior to such acquisition or merger, then the **Named Insured** must promptly give the Underwriter written notice thereof, in the form of a completed merger or acquisition questionnaire so designated by the Underwriter, together with such additional information as the Underwriter may require, and the Underwriter will be entitled to impose such additional coverage terms and charge such additional

premium in connection therewith as the Underwriter, in its sole discretion, may require. No coverage will be available under this Policy for **Loss** from any **Claim** against any such acquired or merged entity, or the members, partners, shareholders, principals, directors, officers and employees of such entity, for any **Wrongful Act** committed or allegedly committed before the date of such acquisition or merger unless explicitly agreed to by the Underwriter.

## V.    CONDITIONS

### (A)    Territory:

This Policy applies to any **Wrongful Act** occurring, and any **Claim** made, anywhere in the world.

### (B)    Notice; Timing and Interrelationship of Claims:

(1)    As a condition precedent to any right to payment in respect of any **Claim**, including any **Claim** for a **Wrongful Act** of which notice was previously given under CONDITION (B)(2), the **Insured** must give the Underwriter written notice of such **Claim**, with full details, as soon as practicable after it is first made, but in no event later than ninety (90) days after such **Claim** is first made. A **Claim** is first made when any **Insured** receives a written notice or request with respect to such **Claim**, or when any **Insured** first becomes aware, through service of process or otherwise, of the filing of a complaint, motion for judgment, notice of charges, formal investigative order or similar document or pleading commencing a civil, administrative, regulatory or other proceeding against an **Insured**.

(2)    If, during the **Policy Period**, the **Insured** first becomes aware of a **Wrongful Act** which may subsequently give rise to a **Claim** and as soon as practicable thereafter, but before the expiration or cancelation of the Policy:

    (a)    gives the Underwriter written notice of such **Wrongful Act**, including a description of the **Wrongful Act** in question, the identities of the potential claimants, the consequences which have resulted or may result from such **Wrongful Act**, the damages which may result from such **Wrongful Act** and the circumstances by which the **Insured** first became aware of such **Wrongful Act**; and

    (b)    requests coverage under this Policy for any subsequently resulting **Claim** for such **Wrongful Act**;

then the Underwriter will treat any such subsequently resulting **Claim** as if it had been first made during the **Policy Period**.

(3)    All notices under CONDITIONS (B)(1) and (2) must be in writing and sent to the Underwriter at the address of the Underwriter set forth in the Declarations.

(4)    All **Related Claims** will be treated as a single **Claim** made when the earliest of such **Related Claims** was first made, or when the earliest of such **Related Claims** is treated as having been made in accordance with CONDITION (B)(2), whichever is earlier.

(C)    **Defense and Settlement of Claims:**

(1)    The **Insureds**, and not the Underwriter, shall have the right, duty and obligation to investigate and defend all **Claims**, including the selection and retention of qualified counsel to represent the **Insureds** in defense of any **Claim**. The Underwriter shall have the right to consent to the **Insureds'** selection of counsel, such consent not to be unreasonably withheld. If more than one **Insured** is involved in a **Claim**, it shall not be unreasonable for the Underwriter to withhold its consent to separate counsel for one or more of such **Insureds** unless there is a material, actual or potential conflict of interest among such **Insureds**.

(2)    The Underwriter will, upon written request, pay on a current basis **Defense Expenses** for which this Policy provides coverage. Except for **Defense Expenses** advanced in accordance with this CONDITION (C)(2), the Underwriter shall have no obligation to pay any **Loss** before the final disposition of a **Claim**.

(3)    As a condition of any payment of **Defense Expenses** under CONDITION (C)(2), the Underwriter may require a written undertaking on terms and conditions satisfactory to the Underwriter guaranteeing the repayment of any **Defense Expenses** paid to or on behalf of any **Insured** if it is finally determined that **Loss** incurred by such **Insured** would not be covered under this Policy.

(4)    Except as expressly provided in this CONDITION (C)(4), no **Insured** may admit any liability or consent to any judgment, or settle any **Claim**, without the Underwriter's prior written consent, such consent not to be unreasonably withheld. However, the **Insureds** may settle any **Claim** without the Underwriter's prior written consent if the total **Loss** resulting from such **Claim**, together with the total **Loss** resulting from all prior **Claims** made during the **Policy Period**, in the aggregate, does not exceed fifty percent (50%) of the retention stated in ITEM 4(a) of the Declarations; provided that the **Insureds** must promptly advise the Underwriter of any such settlement and provide the Underwriter with any information that the Underwriter may request in connection therewith. If the total **Loss** resulting from any such **Claim**, when aggregated with the total **Loss** resulting from all prior **Claims** made during the **Policy Period** will exceed fifty percent (50%) of such retention, the **Insureds** must obtain the written consent of the Underwriter prior to entering into the settlement, such consent not to be unreasonably withheld.

(5)    The Underwriter will maintain the right to make investigations and conduct negotiations and, with the consent of the **Insureds**, to enter into such settlement of any **Claim** as the Underwriter deems appropriate. If the **Insureds** refuse to consent to a settlement acceptable to the claimant in accordance with the Underwriter's recommendation, the Underwriter's liability for such **Claim** will not exceed the amount for which the **Claim** could have been settled plus any **Defense Expenses** incurred with the Underwriter's consent up to the date the **Insureds** refused to settle such **Claim**.

(D)    **Limit of Liability:**

(1)    The amount stated in ITEM 3 of the Declarations shall be the maximum aggregate limit of liability of the Underwriter under this Policy for all **Loss**, including **Defense Expenses**, from all **Claims** first made or deemed made during the **Policy Period**, regardless of the time of payment by the Underwriter, the number of **Claims**, the number of persons or entities included within the definition of "**Insured**," the number of claimants who make **Claims** against the **Insureds**, or the number of **Insureds** named as defendants in any **Claim**.

(2)    **Defense Expenses** will be part of and not in addition to the Underwriter's limit of liability, and payment of **Defense Expenses** by the Underwriter will reduce, and may exhaust, its limit of liability.

(3)     The obligation of the Underwriter to pay **Loss** in connection with any **Claim** will only be in excess of the applicable retention stated in ITEM 4 of the Declarations. The **Insureds** must pay the full amount of the retention at their own expense. The Underwriter shall have no obligation whatsoever, to the **Insureds** or to any other person or entity, to pay all or any portion of the retention amount on behalf of an **Insured**. The Underwriter shall, however, at its sole discretion, have the right and option to do so, in which event the **Insureds** must repay the Underwriter any such amounts promptly upon demand.

(E)     **Cancelation:**

(1)     The Underwriter may cancel this Policy for non-payment of any premium when due by providing to the **Named Insured** written notice stating when, not less than twenty (20) days thereafter, such cancelation shall be effective.

(2)     The **Named Insured** may cancel this Policy on behalf of all of the **Insureds** by mailing to the Underwriter written notice stating when thereafter such cancelation will be effective. Notice of cancelation must be sent to the Underwriter by certified mail to the address set forth in the Declarations. In such event, the earned premium will be computed in accordance with the customary short rate table and procedure. Premium adjustment may be made either at the time cancelation is effective or as soon as practicable after cancelation becomes effective, but payment or tender of unearned premium is not a condition of cancelation.

(3)     The Underwriter will not be required to renew this Policy upon its expiration. If the Underwriter elects not to renew this Policy, the Underwriter will deliver or mail to the **Named Insured** written notice to that effect, including the reason(s) for such non-renewal, at least sixty (60) days before the Expiration Date set forth in ITEM 2(b) of the Declarations.

(F)     **Other Insurance:**

All **Loss** payable under this Policy will be specifically excess of and will not contribute with other valid insurance (whether collectible or not), including but not limited to any insurance under which there is a duty to defend, or any risk retention plan available to the **Insureds**, unless such other insurance or risk retention plan is specifically in excess of this Policy. This Policy will not be subject to the terms of any other insurance.

(G)    **Cooperation and Subrogation:**

(1)    In the event of a **Claim**, or after giving the Underwriter notice of a **Wrongful Act** which may subsequently give rise to a **Claim**, the **Insureds** must provide the Underwriter with all information, assistance and cooperation as the Underwriter reasonably may request. The **Insureds** will do nothing that may prejudice the Underwriter's position or potential or actual rights of recovery.

(2)    In the event of payment under this Policy, the Underwriter will be subrogated to, and entitled to an assignment of, all of the rights of recovery of the **Insureds**. The **Insureds** shall execute all papers and do everything that may be necessary to secure such rights, including the execution of such documents as may be necessary to enable the Underwriter effectively to pursue and enforce such rights and to bring suit in the name of the **Insureds** or any of them.

Notwithstanding the foregoing, no right of subrogation shall accrue to the Underwriter against any **Insured** unless such **Insured** shall have been adjudged, or has admitted, to have committed or personally acquiesced in, active and deliberate fraud or dishonesty with actual fraudulent or dishonest purpose and intent in relation to the **Claim** in question.

(3)    The obligations of the **Insureds** under this CONDITION (G) shall survive the Policy.

(H)    **Representations; Severability:**

The **Insureds** represent that the particulars and statements contained in the **Application** are true, accurate and complete, and agree that this Policy is issued in reliance upon the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and to constitute a part of this Policy, are the basis of this Policy and are material to the Underwriter's acceptance of this risk. This Policy shall not, however, be avoided as to any **Insured** on account of the untruth of the particulars or statements contained in the **Application** unless:

(1)    such **Insured** knew of the untruth of such particular or statement, in which event such knowledge shall be imputed only to such **Insured**; or

(2)    the person providing such particular or making such statement in the **Application** knew of its untruth, in which event such knowledge shall be imputed to all **Insureds**.

(I)    **Dispute Resolution:**

All disputes which may arise between the Underwriter and the **Insureds** out of or in relation to the Policy, including disputes as to its validity, construction or enforceability, or for breach of its terms or conditions, shall be submitted to non-binding mediation before a mutually agreeable mediator. If the parties cannot agree to a mutually agreeable mediator, or if a dispute is not resolved through non-binding mediation, it is agreed that either party may commence an action in any court of competent jurisdiction in the United States.

(J)    **No Action Against the Underwriter:**

(1)    No action may be taken against the Underwriter unless, as conditions precedent thereto, there has been full compliance with all of the terms of this Policy, and the amount of the **Insureds'** obligation to pay has been finally determined either by judgment against the **Insureds** after adjudicatory proceedings, or by written agreement of the **Insureds**, the claimant and the Underwriter.

(2)    No person or entity shall have any right under this Policy to join the Underwriter as a party to any **Claim** to determine the liability of an **Insured**, nor may the Underwriter be impleaded by an **Insured** or legal representative in any such **Claim**.

(K)    **Authorization and Notices:**

(1)    The entity first named in ITEM 1 of the Declarations is designated by the **Insureds** to act on their behalf with respect to all matters under this Policy, including, but not limited to, giving and receiving notices and other communications, effecting or accepting any endorsements to or cancelation of this Policy, the payment of premiums and the receipt of any return premiums, and the purchase of any Extended Reporting Period.

(2)    Unless otherwise specified, all notices permitted or required by this Policy shall be given in writing and shall be sent by first class or certified mail to the respective addresses of the entity first named in ITEM 1 of the Declarations, if to the **Insureds**, or of the Underwriter, if to the Underwriter, as set forth in the Declarations.

**(L)   Changes:**

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Underwriter will not effect a waiver or change in any part of this Policy or estop the Underwriter from asserting any right under the terms, conditions and limitations of this Policy. The terms, conditions, limitations and endorsements of this Policy may not be waived or changed except by written endorsements issued to form a part of this policy.

**(M)   No Transfer or Assignment of Insured Interest:**

No assignment of interest under this Policy or of any cause of action against the Underwriter arising out of its performance of, or alleged failure to perform in accordance with, the terms and conditions of this Policy will be effective without the Underwriter's written consent.

**(N)   Exhaustion:**

If the Underwriter's limit of liability is exhausted by the payment of **Loss**, including **Defense Expenses**, the premium will be fully earned, all obligations of the Underwriter under this Policy will be completely fulfilled and exhausted, and the Underwriter will have no further obligations of any kind or nature whatsoever under this Policy.

**(O)   Entire Agreement:**

The Insureds agree that this Policy, including the **Application**, Declarations, and any endorsements, constitutes the entire agreement existing between them and the Underwriter or any of its agents relating to this insurance.

**(P)   Headings:**

The descriptions in the headings and sub-headings of this Policy are solely for convenience and form no part of the terms, conditions and limitations of the Policy.

**In Witness Whereof, the Underwriter has caused this Policy to be executed by its authorized officers.**

_____          _____
Secretary                                     President

## ENDORSEMENT NO. 1
Addendum for New York Policies, Applications and Declarations

## NOTICE

THE LIMIT OF LIABILITY CONTAINED IN THE POLICY SHALL BE REDUCED, AND MAY BE COMPLETELY EXHAUSTED, BY THE PAYMENT OF DEFENSE EXPENSES AND, IN SUCH EVENT, THE UNDERWRITER SHALL NOT BE LIABLE FOR DEFENSE EXPENSES OR FOR THE AMOUNT OF ANY JUDGMENT OR SETTLEMENT IN EXCESS OF THE LIMIT OF LIABILITY. DEFENSE EXPENSES SHALL ALSO BE APPLIED AGAINST THE RETENTION AMOUNT.

There are several items related to Claims Made policies which, according to the laws of the State of New York, must be disclosed to prospective insureds considering purchase of such policies.

PRIOR ACTS:   If a Claims Made policy contains a retroactive date, that policy provides no coverage for claims arising out of incidents, occurrences or alleged wrongful acts which took place prior to that retroactive date.

CLAIMS MADE DURING POLICY PERIOD:   This policy covers only claims actually made or incidents reported against the insured while the policy remains in effect or any applicable extended reporting period. All coverage under the policy ceases upon the termination date, except for the automatic extended reporting period coverage, unless the insured purchases additional extended reporting period coverage.

EXTENDED REPORTING PERIOD:   The automatic extended reporting period is sixty (60) days from the termination or expiration date of the policy. The additional extended reporting period, if purchased, shall be one (1), two (2), or three (3) years. If this extended reporting period is not purchased and the subsequent policy does not provide full prior acts coverage or is an occurrence policy, there may be gaps in coverage.

CLAIMS MADE POLICY MATURITY:   When the retroactive date on a claims made policy is concurrent with the effective date of the policy or less than five years prior to the effective date, there is considered to be a reduced level of exposure in relation to an occurrence policy. For this reason, claims-made rates are comparatively lower than occurrence rates. As the claims-made relationship matures, the insured can expect substantial annual premium increases independent of overall rate level increases. If, however, the retroactive date on a claims-made policy is more than five years prior to the effective date of the policy, that claims-made relationship is considered mature and rate levels will not increase for this reason.

ENDORSEMENT NO. 2
NEW YORK STATE AMENDATORY

This Endorsement, effective at 12:01 a.m. on September 1, 2003, forms part of

Policy No.    8168-4014
Issued to    FREED MAXICK & BATTAGLIA CPAS PC
Issued by    Executive Risk Indemnity Inc.

In consideration of the premium charged:

1.    Section II. DEFINITIONS (C) is amended to read as follows:

"(C)    'Claim' means:

(1)    a written notice received by an Insured that it is the intention of any person or
entity to hold any Insured responsible for the results of a Wrongful Act;

(2)    a civil or judicial adjudicatory proceeding or an arbitration proceeding,
including any appeal therefrom, against any Insured; provided, however, that
"Claim" does not include any criminal proceeding;

(3)    subject to Section III EXCLUSIONS (I), an administrative proceeding against
any Insured; provided that no coverage will be available under this Policy for
claims of entitlement to non-employment related benefits, provided either
directly or indirectly, from any government, governmental agency or political
subdivision pursuant to any entitlement program.

(4)    a written request received by an Insured to toll or waive a statute of limitations
relating to any Claim described in clauses (1), (2) or (3) above against an
Insured; and

(5)    subject to Section III EXCLUSIONS (I), any written notice received by an
Insured that any governmental authority has commenced or intends to
commence an investigation of an Insured, or that any institute of accountants
or formal, duly constituted standards board or similar professional body has
commenced or intends to commence an investigation or disciplinary review of
an Insured."

2.    Section II. DEFINITIONS (G) is amended to read as follows:

"(G)    'Loss' means damages, judgments, awards, settlements and Defense Expenses
which an Insured is legally obligated to pay as a result of a Claim.  Loss shall also
include fines and penalties assessed against clients of the Insured by the Internal
Revenue Service, or by any state or municipal tax authority.  Loss shall not include:

(1)    any multiplied damage award which is in excess of the damage award so
multiplied;

(2)    fines, sanctions, taxes or penalties imposed by law, except with respect to
fines and penalties assessed against clients of the Insured by the Internal
Revenue Service, or by any state or municipal tax authority, as set forth
above;

(3)    matters which may be deemed uninsurable under the law pursuant to which

this Policy shall be construed, provided that, for purposes of determining whether "Loss" is insurable under the law pursuant to which this Policy shall be construed, the law of the jurisdiction most favorable to the Insured shall apply;

    (4)    the value of any Professional Services rendered or expenses incurred by the Insured for modification or correction of previous work for a client of the Insured."

3.    Section III. EXCLUSIONS (I) is amended to read as follows:

"(I)    for an administrative proceeding, or arising out of a governmental investigation, or an investigation or disciplinary review conducted by any institute of accountants or any formal, duly constituted standards board or similar professional body; provided that this EXCLUSION (I) shall not apply to Defense Expenses incurred in connection with any such claim;"

    (1)    Defense Expenses covered under this EXCLUSION (I) shall be subject to a separate retention. Any retention paid by the Insured in accordance with this EXCLUSION (I) shall be deducted from the amount of retention, if any, paid by such Insured for any Related Claim.

    (2)    The Underwriter's obligation to pay Defense Expenses under this EXCLUSION (I) shall not exceed twenty-five percent (25%) of the maximum aggregate Limit of Liability set forth ITEM 3 of the Declarations. Once the payment of Defense Expenses pursuant to this EXCLUSION (I) exceeds twenty-five percent (25%) of the maximum aggregate Limit of Liability set forth in ITEM 3 of the Declarations, then the Underwriter shall have no further obligation to pay Defense Expenses under this EXCLUSION (I)."

4.    Section IV. EXTENSIONS OF COVERAGE (A) is amended to read as follows:

"(A)    Extended Reporting Period:

    (1)    In the event that the Named Insured cancels, declines or refuses to renew this Policy, or if the Underwriter cancels or declines or refuses to renew this Policy or renews this Policy on less favorable terms (in which event, such Extended Reporting Period will be effective only as to those terms and conditions of coverage not renewed); the Named Insured shall have the right to an Extended Reporting Period as follows:

No later than thirty (30) days after the Termination Date, the Underwriter will advise the person or entity named in ITEM 1 of the Declarations of the automatic Extended Reporting Period described in paragraph (a) below, and the availability of, the premium for, and importance of purchasing an optional Extended Reporting Period as set forth in paragraph (b) below.

    (a)    AUTOMATIC EXTENDED REPORTING PERIOD

Without any additional premium being required, the Insureds shall have sixty (60) days after the effective date of such cancelation or, in the event of non-renewal, after the date upon which the Policy Period ends, to report any Claim first made against the Insureds during such sixty (60) day period; provided that this EXTENSION OF COVERAGE (A)(1) shall not apply, and the Insureds shall not be entitled to any

such Extended Reporting Period, in the event that any new professional liability insurance policy is obtained by the Insured.

(b) .     OPTIONAL EXTENDED REPORTING PERIOD

The Named Insured may purchase an Extended Reporting Period for the additional premium and for a period of one (1), two (2), or three (3) years, as set forth in ITEM 6 of the Declarations. The Named Insured must notify the Underwriter in writing by certified mail at the address set forth in the Declarations of its decision to purchase such an Extended Reporting Period, and must pay the additional premium, within sixty (60) days after (i) the effective date of cancelation; or, (ii) in the event of non-renewal, the date the Policy Period ends. . If the person or entity named in ITEM 1 of the Declarations has been placed in liquidation or bankruptcy or has permanently ceased operations and neither it nor its designated trustee has purchased such optional Extended Reporting Period, then the persons entitled to coverage under this Policy may purchase such optional Extended Reporting Period by paying the additional premium set forth above within one hundred twenty (120) days of the Termination Date. Payment of all premium owed for the Policy Period and the full additional premium for the Extended Reporting Period by the due date is a strict condition precedent to the right to purchase an Extended Reporting Period.

(2)     The coverage otherwise afforded under this Policy will be extended to apply for any Extended Reporting Period, subject to all of this Policy's terms, conditions, limitations and endorsements, to Loss, including Defense Expenses from Claims first made against any Insured during such Extended Reporting Period for Wrongful Acts before the effective date of such cancelation or, in the event of non-renewal, before the date upon which the Policy Period ends.

(3)     Any Claim made during an Extended Reporting Period shall be deemed to have been made during the Policy Period. The maximum aggregate limit of liability set forth in ITEM 3 of the Declarations shall be the maximum aggregate limit of liability for the Policy Period and the automatic Extended Reporting Period. The Policy's maximum aggregate limit of liability is not increased, reinstated or renewed by virtue of the applicability of the automatic Extended Reporting Period.

(4)     The Underwriter's limit of liability for Loss and Defense Expenses from Claims as to which coverage is extended during an optional Extended Reporting Period, if applicable, will be in addition to, and not part of, the maximum aggregate Limit of Liability set forth in ITEM 3 of the Declarations, and the amount of the Underwriter's additional limit of liability for the additional Extended Reporting Period will be:

(a)     one hundred percent (100%) of the maximum aggregate Limit of Liability set forth in ITEM 3 of the Declarations, if a claims-made relationship between the Underwriter and the person or entity named in ITEM 1 of the Declarations has continued for at least three years, or

(b)      the greater of fifty percent (50%) of the maximum aggregate Limit of Liability set forth in ITEM 3 of the Declarations or the amount of coverage remaining in such maximum aggregate Limit of Liability as of the Termination Date, if a claims-made relationship between the Underwriter and the person or entity named in ITEM 1 of the Declarations has continued for less than three years.

If any Claim gives rise both to the coverage afforded under this Policy in respect of Claims first made during the Policy Period and to any coverage purchased in respect of Claims first made during an optional Extended Reporting Period, the Underwriter's maximum aggregate limit of liability under this Policy for Loss and Defense Expenses in connection with such Claim will not exceed the larger single limit of liability then available under either of such coverages.

(5)      No coverage will be available under this Policy for Loss or Defense Expenses from any Claim made during any Extended Reporting Period, automatic or otherwise, based on, arising out of, directly or indirectly resulting from, in consequence of or in any way involving:

(a)      any Wrongful Act actually or allegedly occurring on or after the Termination Date; or

(b)      any fact, circumstance, situation, transaction, event or Wrongful Act underlying or alleged in any prior and/or pending litigation as of the Termination Date."

5.    Paragraph (3) of section V.(B), CONDITIONS, Notice, Timing and Interrelationship of Claims, is amended to read as follows:

"(3)      All notices under CONDITIONS (B)(1) and (2) must be in writing and sent to the Underwriter at the address of the Underwriter set forth in the Declarations.

(a)      Notice of any Claim or of any circumstances which may give rise to a Claim, whether by or on behalf of any person or entity entitled to coverage under this Policy or by or on behalf of any claimant against any such person or entity, will be deemed written notice to the Underwriter if given to any licensed agent of the Underwriter in this state, with particulars sufficient to identify the person or entity entitled to coverage.

(b)      Failure by any person or entity entitled to coverage under this Policy to give any notice required to be given within any prescribed time will not invalidate any coverage that would otherwise have been available if it is shown that (a) it was not reasonably possible to give such notice within the prescribed time and (b) notice was given as soon as reasonably possible. Notice given during any applicable Extended Reporting Period will be deemed notice during the Policy Period."

6.    Paragraphs one (1) and two (2) of Section V.(D), CONDITIONS, Defense and Settlement of Claims, are amended to read as follows:

"(1)      The Underwriter shall have the right, duty and obligation to investigate and defend all Claims, even if such Claims are groundless. The Named Insured shall have the right to (a) consent to the Underwriter's choice of defense attorney, which consent shall not be unreasonably withheld, and (b) participate in, and assist in the direction of, the

defense of any Claim, unless the Named Insured notifies the Underwriter, in writing, of it's election to assume the right, duty and obligation to investigate and defend all Claims. If the Named Insured so notifies the Underwriter, then the Insureds shall have the right, duty and obligation to investigate and defend all Claims, including the selection and retention of qualified counsel to represent the Insureds in defense of any Claim. The Underwriter shall have the right to consent to the Insureds' selection of counsel, such consent not to be unreasonably withheld. If more than one Insured is involved in a Claim, it shall not be unreasonable for the Underwriter to withhold its consent to separate counsel for one or more of such Insureds unless there is a material, actual or potential conflict of interest among such Insureds.

(2)   In the event that the Insureds assume the right, duty and obligation to investigate and defend all Claims, pursuant to CONDITION (C)(1), the Underwriter will, upon written request, pay on a current basis Defense Expenses for which this Policy provides coverage. Except for Defense Expenses advanced in accordance with this CONDITION (C)(2), the Underwriter shall have no obligation to pay any Loss before the final disposition of a Claim."

7.   Paragraph five (5) of Section V.(C), CONDITIONS, Defense and Settlement of Claims, is amended to read as follows:

"(5)   The Underwriter will maintain the right to make investigations and conduct negotiations and, with the consent of the Insureds, to enter into such settlement of any Claim as the Underwriter deems appropriate. If the Insureds refuse to consent to a settlement acceptable to the claimant in accordance with the Underwriter's recommendation, the Insureds shall thereafter negotiate or defend such Claim at the Insureds' own expense independently of the Underwriter, and, subject to the applicable limits of liability of this Policy, the Underwriter's liability for such Claim will not exceed the amount for which the Claim could have been settled plus any Defense Expenses incurred with the Underwriter's consent up to the date the Insureds refused to settle such Claim."

8.   Section V.(E), CONDITIONS, Cancelation, is amended to read as follows:

"(E)   Cancelation:

(1)   The Underwriter may not cancel this Policy except for failure to pay a premium when due, and then only by mailing or delivering to the entity named in ITEM 1 of the Declarations, at the address shown on the Policy, written notice stating when, not less than twenty (20) days thereafter, such cancellation will be effective. Copies of such notice will also be mailed or delivered to the insurance agent or broker of record on this Policy.

(2)   The Named Insured may cancel this Policy on behalf of all of the Insureds by mailing to the Underwriter written notice stating when thereafter such cancelation will be effective. Notice of cancelation must be sent to the Underwriter by certified mail to the address set forth in the Declarations. In such event, the earned premium will be computed in accordance with the customary short rate table and procedure. Premium adjustment may be made either at the time cancelation is effective or as soon as practicable after cancelation becomes effective, but payment or tender of unearned premium is not a condition of cancelation.

(3)   The Underwriter may:

(a)    non-renew this Policy, or

(b)    condition its renewal upon a change in limits, change in the type of coverage, reduction of coverage, increased deductibles or retentions or addition of exclusions, or upon increased premiums in excess of ten percent (10%) of the expiring rate (exclusive of premiums commensurate with insured value added subsequent to issuance of this Policy or at the request of the entity named in ITEM 1 of the Declarations or as a result of experience rating or retrospective rating);

by mailing or delivering to the entity named in ITEM 1 of the Declarations, at the address shown on the Policy, at least sixty (60) days but not more than one hundred twenty (120) days before the Expiration Date in ITEM 2(b) of the Declarations, written notice containing the specific reason or reasons for non-renewal or conditional renewal, and setting forth the amount of any premium increase and the nature of any other proposed changes. Any notice of non-renewal will advise the entity named in ITEM 1 of the Declarations of any rights to coverage and the duration thereof. Copies of notices required under this paragraph will also be mailed or delivered to the insurance agent or broker of record on this Policy.

The Limit of Liability set forth in ITEM 3 of the Declarations will not be increased by any non-renewal or conditional renewal notification requirements except that it will be increased in proportion to the extension of the Policy.

(4)    Paragraph (3) above will not apply when the entity named in ITEM 1 of the Declarations or an agent or broker authorized by such entity has mailed or delivered written notice that this Policy has been replaced or is no longer desired.

(5)    If before the Expiration Date in ITEM 2(b) of the Declarations the Underwriter provides an incomplete or late conditional renewal notice, coverage hereunder will remain in effect on the same terms and conditions and at the lower of the current rates or the rates for the prior period until sixty (60) days after proper notice is mailed, unless the entity named in ITEM 1 of the Declarations elects to cancel sooner; provided, however, that if the entity named in ITEM 1 of the Declarations elects to accept the terms, conditions and rates of the conditional renewal notice and renews this Policy on that basis, such terms, conditions and rates will govern upon expiration of such sixty (60) day period.

(6)    If the Underwriter provides notice of non-renewal and subsequently extends the Policy Period for ninety (90) days or less, no additional notice of non-renewal will be required.

(7)    Failure to provide notice of non-renewal prior to the Expiration Date in ITEM 2(b) of the Declarations will result in coverage remaining in effect on the same terms and conditions as this Policy for another Policy Period at the lower of the proposed or expiring Policy Period premium rates."

9.    Section V.(F), CONDITIONS, Other Insurance, is amended to read as follows:

    "(F)    Other Insurance:

All Loss payable under this Policy will be specifically excess of and will not contribute with other valid and collectible insurance, including but not limited to any insurance under which there is a duty to defend, or any risk retention plan available to the Insureds, unless such other insurance or risk retention plan is specifically in excess of this Policy. This Policy will not be subject to the terms of any other insurance."

10. Section V.(H), CONDITIONS, Representations; Severability, is amended to read as follows:

"(H)    Representations; Severability:

The Insureds represent that the particulars and statements contained in the Application are true, accurate and complete, and agree that this Policy is issued in reliance upon the truth of that representation, and that such particulars and statements, which are deemed to be incorporated into and to constitute a part of this Policy, are the basis of this Policy and are material to the Underwriter's acceptance of this risk. Coverage will be available under this Policy as to any Insured on account of the untruth of material particulars or statements contained in the Application unless:

(1)    such Insured knew of the untruth of such particular or statement, in which event such knowledge shall be imputed only to such Insured; or

(2)    the person providing such particular or making such statement in the Application knew of its untruth, in which event such knowledge shall be imputed to all Insureds."

11. Section V.(J) of the policy is amended to read as follows:

"(J)    No Action Against the Underwriter; Insolvency of Insured:

(1)    No action may be taken against the Underwriter unless, as conditions precedent thereto, there has been full compliance with all of the terms of this Policy, and the amount of the Insureds' obligation to pay has been finally determined either by judgment against the Insureds after adjudicatory proceedings, or by written agreement of the Insureds, the claimant and the Underwriter.

(2)    No person or entity shall have any right under this Policy to join the Underwriter as a party to any Claim to determine the liability of an Insured, nor may the Underwriter be impleaded by an Insured or legal representative in any such Claim.

(3)    If judgment against any person or entity entitled to coverage under this Policy remains unsatisfied thirty (30) days after the serving of notice of entry of judgment upon such person or entity (or his, her or its attorney) and upon the Underwriter, then, except during a stay or limited stay of execution against such person or entity on such judgment, an action may be maintained against the Underwriter under this Policy for the amount of such judgment. Nothing in this paragraph (3) is intended, however, nor shall it be construed, to obligate the Underwriter to make any payment it would not otherwise be obligated to make under the terms, conditions, limitations and endorsements of this Policy, or to pay any Loss in excess of the then-available Limit of Liability under this Policy.

(4)    The Underwriter shall not be relieved of any of its obligations under this Policy by the bankruptcy or insolvency of any Insured."

12.    To the extent that any of the terms, conditions or limitations of this Policy, including any endorsement, may be inconsistent with the foregoing, the provisions of this endorsement will govern.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*Robert Hamburger*

Authorized Representative

ENDORSEMENT NO. 3
Notice of Loss Control Services

RE:    Errors and Omissions Liability

Since you are a valued policyholder, we want to let you know that we have loss prevention information available to you.

Available to you is a copy of a booklet entitled *What is E and O Liability Insurance?* This booklet discusses general principles governing E&O liability and potential exposures facing you as professionals in the performance of your profession. It also contains information that may be helpful to you in your loss prevention efforts.

As is always the case when legal issues are involved, it is important that you consult competent counsel to design and implement your loss control programs.

If you have any questions or would like to obtain a copy of the booklet, please call 800-432-8168 and press 3 to reach our Marketing Department.

C30183 (12/1999 ED.)

ENDORSEMENT NO. 4
TRANSFER OF DUTIES ENDORSEMENT - NEW YORK

This Endorsement, effective at 12:01 a.m. on September 1, 2003, forms part of

Policy No.        8168-4014
Issued to         FREED MAXICK & BATTAGLIA CPAS PC
Issued by         Executive Risk Indemnity Inc.

In consideration of the premium charged:

The following Section is added to Section V. CONDITIONS:

"(Q)      TRANSFER OF DUTIES WHEN LIMIT IS EXHAUSTED

1.      If the Underwriter concludes that, based on Claims which have been reported to the Underwriter and to which this Policy may apply, the Limit of Liability in ITEM 3 of the Declarations is likely to be exhausted by the payment of judgments or settlements, the Underwriter will notify the entity named in ITEM 1 of the Declarations, in writing, to that effect.

2.      When the Limit of Liability set forth in ITEM 3 of the Declarations has been exhausted by the payment of judgment or settlements:

(a)      The Underwriter will notify the entity named in ITEM 1 of the Declarations, in writing, as soon as practicable, that such Limit of Liability has been exhausted and our duty to defend Claims subject to that limit has also ended.

(b)      The Underwriter will initiate and cooperate in the transfer of control, to any appropriate Insured, of all Claims which are subject to the Limit of Liability and which are reported to the Underwriter before the Limit of Liability is exhausted. The Insured must cooperate in the transfer of control of said Claims.

The Underwriter agrees to take such steps as deemed appropriate to avoid default in, or to continue the defense of, such Claims until such transfer is completed, provided the appropriate Insured is cooperating in completing such transfer.

The Underwriter will take no action whatsoever with respect to any Claim that would have been subject to the Limit of Liability, had it not been exhausted, if the Claim is reported to the Underwriter after the Limit of Liability has been exhausted.

(c)      The entity named in ITEM 1 of the Declarations will reimburse the Underwriter for expenses incurred in taking steps deemed appropriate in accordance with paragraph (2)(b) above.

The duty of the entity named in ITEM 1 of the Declarations to reimburse the Underwriter will begin on:

(a)      the date on which the Limit of Liability is exhausted, if the Underwriter sent notice in accordance with paragraph (1) above; or

(b)      the date on which the Underwriter sent notice in accordance with paragraph (2)(a) above, if the Underwriter fails to send notice in accordance with paragraph (1) above.

3.    The exhaustion of the Limit of Liability by the payment of judgments or settlements, and the resulting termination of the Underwriter's duty to defend, will not be affected by the Underwriter's failure to comply with any of the provisions of this Condition."

All other terms, conditions and limitations of this Policy shall remain unchanged.

_____
Authorized Representative

ENDORSEMENT NO. 5
AMEND DEFINITION OF INSURED

This Endorsement, effective at 12:01 a.m. on September 1, 2003, forms part of

Policy No. .    8168-4014
Issued to      FREED MAXICK & BATTAGLIA CPAS PC
Issued by      Executive Risk Indemnity Inc.

In consideration of the premium charged, the term "Insured," as defined in Section II Definitions (F) of the Policy, is amended to include the following persons and/or entities:

BAM Business Services
Freed Maxick ABL Services, Inc.
HRB Business Services
H&R Block Group, Inc.
H&R Block, Inc
BDO Seidman/ABL Practice - Philadelphia Office
Freed Maxick Sachs & Murphy, PC & Affiliates.

All other terms, conditions and limitations of this Policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

ENDORSEMENT NO. 7
AMENDMENT OF DECLARATIONS ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on September 1, 2003, forms part of

    Policy No.      8168-4014
    Issued to       FREED MAXICK & BATTAGLIA CPAS PC
    Issued by       Executive Risk Indemnity Inc.

In consideration of the premium charged:

ITEM 2 of the Declarations is amended to read as follows:

Effective Date: September 1, 2003

Expiration Date: July 1, 2004

All other terms, conditions and limitations of this Policy shall remain unchanged.

_Robert Hamburger_

_____
Authorized Representative

D21856 (9/94)                    Page 1

**Chubb & Son**, div. of Federal Insurance Company
as manager of the member Insurers of the
Chubb Group of Insurance Companies

# POLICYHOLDER
## DISCLOSURE NOTICE OF
## TERRORISM INSURANCE COVERAGE
### (for policies with no terrorism exclusion or sublimit)

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, this policy makes available to you insurance for losses arising out of certain acts of international terrorism.   Terrorism is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act.  Under this formula, the United States pays 90% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage.  The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ -0-.

If you have any questions about this notice, please contact your agent or broker.