**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

_____
                               :

ROYAL INDEMNITY COMPANY     :
                               :

              Plaintiff,     :     Civil No. 05-165 (JJF)
                               :

     vs.                             :
                               :

PEPPER HAMILTON LLP, ET AL.     :
                               :

              Defendants.     :
_____:

**ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANTS**
**PEPPER HAMILTON, LLP AND W. RODERICK GAGNÉ**
**TO THIRD AMENDED COMPLAINT**

Pepper Hamilton LLP ("Pepper") and W. Roderick Gagné ("Gagné") (collectively, "Answering Defendants") hereby answer the Third Amended Complaint of plaintiff Royal Indemnity Company ("Royal"). Answering Defendants generally deny each and every allegation of the Third Amended Complaint that is not expressly addressed herein. Answering Defendants respond to the numbered paragraphs of the Third Amended Complaint and assert affirmative defenses as follows:

1.       It is admitted that Student Finance Corporation ("SFC") is a corporation that is now in bankruptcy proceedings and that it claimed to be in the business of originating and purchasing tuition loans made to students enrolled at truck-driving schools. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph about misrepresentations or omissions that SFC supposedly made to Royal. The remaining allegations in this paragraph are denied.

By way of further answer, Answering Defendants made no misrepresentations or omissions and Royal did not justifiably rely upon anything that Answering Defendants said or did. To the contrary, because Royal held itself out as experienced in the evaluation of credit risks such as those dealt in by SFC, and because Royal, through its credit risk insurance policies, assumed the ultimate risk associated with SFC's business model, every party that participated in SFC's securitization process – the institutional investors, the investment bankers, the rating agencies, the lawyers, etc. – relied upon Royal and justifiably assumed that, before Royal issued insurance policies covering hundreds of millions of dollars worth of student loans, it had conducted full, complete and detailed due diligence on SFC and had determined that SFC was operating as represented and was financially sound.

Royal's due diligence, however, was woefully inadequate. Royal disregarded it own underwriting guidelines. On information and belief, although Royal's insurance contracts with SFC gave Royal complete access to SFC's financial, accounting and operating records, Royal, among other things, failed to carefully review SFC's financial statements, failed to perform an independent investigation of SFC's financial health, failed to analyze and test the loan default rates that SFC reported, failed to reconcile SFC's banking records with the financial information SFC was reporting, failed to analyze SFC's loan underwriting process or monitor whether SFC and the trade schools were complying with the process, and failed to investigate and monitor SFC's loan servicing practices. Royal failed to pick up on warning signs that it now admits were "hidden in plain sight." Royal also failed to obtain reinsurance in violation of 18 Del. C. § 909.

Moreover, despite the fact that Royal concluded by September 2000 that SFC was "a kind of Ponzi scheme" that was relying on Royal's insurance policies to stay afloat but was heading for inevitable financial ruin, Royal continued to issue insurance policies covering hundreds of millions of dollars in student loans. Contrary to Royal's allegations, it either knew or should have known about SFC's scheme long before it claims to have discovered it in March 2002. Specifically:

- On or before January 6, 1999, Royal chose to issue insurance policies to SFC because it concluded that "[e]ven if we model it [the SFC transactions] with no recoveries . . . it will take extreme default frequencies for us to go into the toilet." Royal performed calculations in 1999 to show that, under the deal it had negotiated with SFC, it could handle student loan default rates of up to almost sixty percent. In other words, Royal anticipated and expected that student loan default rates were or were likely to be higher than represented.

- By February 11, 2000, Royal was aware that student loan delinquencies were "a point of concern." Nevertheless, Royal continued to issue insurance policies to SFC.

- By March 6, 2000, Royal was aware that certain "students . . . are in forbearance" and that payments made on their behalf "distort[] the default curve." Nevertheless, Royal continued to issue insurance policies to SFC.

- By September 15, 2000, Royal believed that SFC was using the Institutional Reserve Account to "cover[] all of their operating costs and to some extent their securitization/financing costs and distributions to Yao," but did not know for sure because Royal "never asked for [that information in] the past two deals." Nevertheless, Royal continued to issue insurance policies to SFC.

- By September 28, 2000, Royal knew that SFC was not receiving enough cash from its loan portfolios to run the business and instead was "using money, which should be held for tomorrow, to pay costs today and [is] hoping for fresh money coming in tomorrow until the securitizations finally start generating cash." Nevertheless, Royal continued to issue insurance policies to SFC.

- By September of 2000, Royal was concerned whether, if Royal stopped insuring the student loans, SFC would be able to stay in business: "I guess the question is, 'Can they stay in business about one year after we add the last loan that we are going to ensure?" Nevertheless, Royal continued to issue insurance policies to SFC.

- In October of 2000, Royal again discussed internally whether SFC had "[t]he ability to continue doing business" if Royal did not agree to issue additional insurance policies and acknowledged that it would be very difficult for SFC to continue to stay afloat unless SFC could find an insurer to replace Royal quickly. Nevertheless, Royal continued to issue insurance policies to SFC.

- By December 2000, Royal was discussing fraud at SFC in explicit terms. Royal discussed internally the fact that it did not have "any audit or similar investigation of SFC where fraud prevention was evaluated." Nevertheless, Royal continued to issue insurance policies to SFC.

- Royal acknowledged that it had "a real problem with the excess spread account . . . . We also have a credit risk on the inforce (sic) policy . . . there is a pretty big theoretical risk . . . ." Nevertheless, Royal continued to issue insurance policies to SFC.

- By April 5, 2001, at the latest, Royal was aware of "the extremely high delinquency rate on these notes . . . it looks to be in the range of 65% . . . This account is a new revelation every day."

- By April 20, 2001, Royal was aware that the amount of money SFC was collecting from students did not correlate with the percentage of loans that SFC represented were performing: "Why are these amounts [delinquencies for the Current and Prior month] so drastically different from what is shown on the servicer reports. . . . 74% of the loans were current at April month end implying $852,000 should have been received. The Servicer reports indicate only $120,000. It seems to continue that way through the rest of the months. . . . Grantor Trust 3 [is e]specially troublesome. The statistics indicate virtually all loans current at August 31, yet the actual flows show a substantial shortfall. Grantor Trust 4 [is m]ore of the same, perhaps worse than Grantor 3."

- On April 24, 2001, a Royal executive conceded that he had had "[a]nother sleepless night" because of the SFC account and stated that "If we don't go forward [with providing further insurance coverage to SFC], we will surely get whacked."

4

- By April 2001, Royal knew that SFC's "[d]elinquency Data does not seem to match the cash flows." Nevertheless, Royal continued to issue insurance policies to SFC.

- By April 25, 2001, Royal concluded that SFC's explanation for the discrepancies in its financial data "[did] not leave [Royal] with a comfortable feeling." Nevertheless, Royal continued to issue insurance policies to SFC.

- By May 7, 2001, a Royal executive was aware of "the harsh reality of policy #2 all too well. It is what I think about every night when I wake up."

- By July 10, 2001, Royal understood that "[i]f they [SFC] cannot find someone else to insure their securitizations, they will be dead in the water and so very well may we." Nevertheless, Royal continued to issue insurance policies to SFC.

- By December 4, 2001, Royal was asking "are we idiots?" for continuing to keep SFC in business.

Royal knew that SFC was a time bomb waiting to implode and was attempting to hang in as long as possible in the desperate hope that it could figure out some way to extricate itself from the multi-million dollar hole into which it had dug itself, or, at best, was recklessly indifferent to the situation at SFC and the harm that would befall SFC's creditors when SFC eventually collapsed.

      2.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

      3.     It is admitted that SFC used student loans that it had purchased as collateral to borrow money and that it sold through a securitization process pools of student loans to institutional investors. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

4.      Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

5.      It is admitted that Answering Defendants were hired by and paid by SFC.  The allegation that Defendants were "SFC insiders" is a conclusion of law to which no response is required.  To the extent a response is deemed required, the allegation that Answering Defendants were "SFC insiders" is denied.  Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph as they relate to parties other than the Answering Defendants.  The remaining allegations in this paragraph are denied.

6.      The allegations in this paragraph are conclusions of law to which no response is required.  To the extent a response is deemed required, the allegations in this paragraph that are directed toward Answering Defendants are denied.  Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph as they relate to parties other than the Answering Defendants.

7.      The allegation that Royal never knew that SFC's student loans were defaulting at high rates and that SFC was making payments on behalf of students is denied.  The allegation that none of the eight private placement memoranda ("PPMs") drafted by Pepper revealed the nature of SFC's "ghost payments" or their effect on the default rates reported to Royal is denied as stated because (a) Pepper assisted in drafting the PPMs using information provided by SFC and (b) Answering Defendants were not aware that SFC was making "ghost payments" as that term is defined in the Third

Amended Complaint and, therefore, could not have revealed the existence or nature of such payments. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

8.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph. By way of further answer, Answering Defendants were not aware that SFC was making "ghost payments," as that term is defined in the Third Amended Complaint, except that Answering Defendants understand that in March 2002, Yao told Royal that SFC was not able to continue making forbearance payments as it had in the past.

9.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

10.     The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is deemed required, the allegations in this paragraph are denied.

11.     The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is deemed required, the allegations in this paragraph are denied.

12.     Admitted on information and belief.

13.     It is denied that Pepper provided legal services to SFC until it was forced into bankruptcy. The remaining allegations in the paragraph are admitted.

14.     The allegations in the last sentence of this paragraph are conclusions of law to which no response is required. To the extent a response is deemed required, the allegations in the last sentence of this paragraph are denied. Answering Defendants cannot respond to the allegation that Gagné was a partner in the Philadelphia office of Pepper "at all pertinent times" because the phrase "at all pertinent times" is vague and undefined. To the extent a response is deemed required to the allegation that Gagné was a partner in the Philadelphia office of Pepper "at all pertinent times," the allegation is denied. Gagné was the trustee of trusts that, along with relatives of Gagné, were shareholders of SFC between February 2000 and January 2001, but the trusts and Gagné's relatives were lenders to, not shareholders of, SFC at other times. The remaining allegations in this paragraph are admitted.

15.     Admitted on information and belief.

16.     Admitted on information and belief.

17.     The allegations in the last sentence of this paragraph are conclusions of law to which no response is required. To the extent a response is deemed required, Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of this paragraph. The remaining allegations in the paragraph are admitted on information and belief.

18.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the last sentence of this paragraph. Answering Defendants cannot respond to the allegation that SFC was "at all times pertinent to this action ostensibly in the business of originating, purchasing and

selling to investors tuition loans made primarily to truck driving school student" because
the phrase "at all times pertinent to this action" is vague and undefined. To the extent a
response is deemed required to the allegation that SFC was "at all times pertinent to this
action ostensibly in the business of originating, purchasing and selling to investors tuition
loans made primarily to truck driving school students," the allegation is admitted on
information and belief. The remaining allegations in this paragraph are admitted on
information and belief.

   19. Admitted on information and belief.

   20. Answering Defendants cannot respond to the allegations that "Yao
at all times pertinent to this action owned and controlled SFC," that "Yao at all times
pertinent to this action was the sole owner of Student Finance Corporation and Student
Marketing Services," that Yao "was also at all times pertinent to this action the 70%
direct owner of SLS and indirectly owned the remaining 30% that was owned by Student
Finance Corporation," and that Yao "was at all times pertinent to this action an officer
and director of all three entities" because the phrase "at all times pertinent to this action"
is vague and undefined. To the extent a response is deemed required, the allegations that
"Yao at all times pertinent to this action owned and controlled SFC," that "Yao at all
times pertinent to this action was the sole owner of Student Finance Corporation and
Student Marketing Services," that Yao "was also at all times pertinent to this action the
70% direct owner of SLS and indirectly owned the remaining 30% that was owned by
Student Finance Corporation," and that Yao "was at all times pertinent to his action an
officer and director of all three entities," are admitted on information and belief. The
remaining allegations in this paragraph are admitted on information and belief.

21.     Answering Defendants cannot respond to the allegation that "[a]t all times pertinent to this action Hawthorne was an officer and/or director of SLS and/or SFC" because the phrase "at all times pertinent to this action" is vague and undefined. To the extent a response is deemed required, the allegation that "[a]t all times pertinent to this action Hawthorne was an officer and/or director of SLS and/or SFC," is admitted on information and belief. The remaining allegations in this paragraph are admitted on information and belief.

22.     Answering Defendants cannot respond to the allegation in this paragraph because the phrase "at all times pertinent to this action" is vague and undefined. To the extent a response is deemed required, the allegation is admitted on information and belief.

23.     Admitted on information and belief.

24.     It is admitted that Pepper was providing legal services to SFC by 1998. The remaining allegations in this paragraph are admitted on information and belief.

25.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

26.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

27.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

28.     No response is required to the allegations in the first sentence of this paragraph as the letter is a writing that speaks for itself. To the extent a response is deemed required the allegations in the first sentence of this paragraph are denied. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

29.     No response is required to the allegations in the first sentence of this paragraph as the letter is a writing that speaks for itself. To the extent a response is deemed required the allegations in the first sentence of this paragraph are denied. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

30.     The allegation that Answering Defendants referred to "undisclosed ghost payments" as "'forbearance payments,'" is denied because Answering Defendants were not aware that SFC was making "undisclosed ghost payments" and/or "forbearance payments" as those terms are defined in the Third Amended Complaint and, therefore, did not "refer" to those payments. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

31.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

32.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

33.    Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

34.    Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

35.    The allegations in this paragraph are conclusions of law to which no response is required.  To the extent a response is deemed required, Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

36.    The allegation that Royal justifiably relied on information and documents provided to it by SFC is a conclusion of law to which no response is required. To the extent a response is deemed required, the allegation that Royal justifiably relied on information and documents provided to it by SFC is denied.  The remaining allegations in this paragraph are admitted on information and belief.

37.    Admitted on information and belief.

38.    The allegation that Answering Defendants "wanted Royal to issue future policies insuring SFC's student loans and thus did not want Royal to know that  a large number of student loans were not performing" is denied.  Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

39.    The allegation that SFC kept its practice of making "ghost payments" secret from Royal is denied on information and belief.  The allegation that

Answering Defendants "were aware of the ghost payments and the 'distorting,' 'manipulative' effect they had on the loan default rates in the pools" is denied. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

   40. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

   41. The allegation that Defendants aided and abetted in the making of "ghost payments" is a conclusion of law to which no response is required. To the extent a response is deemed required, the allegation that Answering Defendants aided and abetted the making of "ghost payments" is denied. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

   42. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of this paragraph. The allegation in the second sentence of this paragraph that SFC did not disclose to Royal that SFC was making "ghost payments" is denied on information and belief. The allegation in the second sentence of this paragraph that Answering Defendant did not disclose to Royal that "SFC was making ghost payments or that ghost payments were preventing massive amounts of otherwise-defaulting loans from being reported as defaults," is denied as stated because Answering Defendants were not aware that SFC was making "ghost payments" as that term is defined in the Third Amended Complaint. Answering Defendants are without knowledge or information sufficient to form a belief

13

as to the truth of the remaining allegations in the second sentence of this paragraph. The allegations in the third sentence of this paragraph are denied. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the fourth sentence of this paragraph. The allegation in the fifth sentence of this paragraph that Pepper did not disclose the "ghost payments" to Royal is denied as stated because Answering Defendants were not aware that SFC was making "ghost payments" as that term is defined in the Third Amended Complaint and, as soon as Answering Defendants learned that SFC was making "ghost payments" as that term is defined in the Third Amended Complaint, Answering Defendants insisted that SFC disclose them. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the fifth sentence of this paragraph. The allegations in the sixth sentence of this paragraph are denied as they relate to Answering Defendants. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the sixth sentence of this paragraph.

43.    The allegations in the first and second sentences of this paragraph are denied on information and belief. The allegation in the third sentence of this paragraph that "[n]one of the documents drafted, verified or issued by the Defendants in 2000 or 2001 ever disclosed the ghost payments" is denied as stated as to the Answering Defendants because Answering Defendants were not aware that SFC was making "ghost payments" as that term is defined in the Third Amended Complaint and, therefore, could not have disclosed them. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the third sentence

14

of this paragraph. The allegations in the fourth sentence of this paragraph that

Defendants "knowingly aided and abetted" SFC and "intentionally failed to disclose"

information are conclusions of law to which no response is required. To the extent a

response is deemed required, the allegations in the fourth sentence of this paragraph that

Answering Defendants "knowingly aided and abetted" SFC and "intentionally failed to

disclose" information is denied. Answering Defendants are without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations in the

fourth sentence of this paragraph. By way of further answer, see response to ¶ 1, *supra*.

44.     Answering Defendants are without knowledge or information

sufficient to form a belief as to the truth of the allegations in this paragraph.

45.     It is admitted on information and belief that servicer reports were

sent to Royal. Answering Defendants are without knowledge or information sufficient to

form a belief as to the truth of the allegations in the second and third sentences of this

paragraph. The allegation in the fourth sentence of this paragraph that Answering

Defendants were aware that servicer reports were sent to Royal is admitted. The

allegation in the fourth sentence of this paragraph that Defendants knew or should have

known that Royal relied on the servicer reports is a conclusion of law to which no

response is required. To the extent a response is deemed required, Answering

Defendants are without knowledge or information sufficient to for a belief as to the truth

of the allegation that Royal relied on the servicer reports.

46.     Answering Defendants are without knowledge or information

sufficient to form a belief as to the truth of the allegations in this paragraph.

47.     Admitted on information and belief.

48.     The allegations that "material misrepresentations and omissions" were made to Royal and that Defendants knowingly aided and abetted SFC and Yao to induce Royal to issue a credit risk insurance policy are conclusions of law to which no response is required. To the extent a response is deemed required, the allegations that Answering Defendants made "material misrepresentations and omissions" to Royal and knowingly aided and abetted SFC and Yao to induce Royal to issue a credit risk insurance policy are denied. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

49.     No response is required to the allegations in the third sentence of this paragraph as the policy is a writing that speaks for itself. To the extent a response is deemed required the allegations in the third sentence of this paragraph are admitted on information and belief. The remaining allegations in this paragraph are admitted on information and belief.

50.     The allegation that Defendants aided and abetted Yao is a conclusion of law to which no response is required. To the extent a response is deemed required, the allegation that Answering Defendants aided and abetted Yao is denied. The allegation that SFC and the Defendants "fraudulently induced Royal to issue additional credit risk insurance" is a conclusion of law to which no response is required. To the extent a response is deemed required, the allegation that Answering Defendants "fraudulently induced Royal to issue additional credit risk insurance" is denied. The

16

allegation that Yao "continued to expand SFC's student loan purchase and origination program through 2001" is admitted on information and belief.  Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

      51.    The allegation that "SFC and Yao fraudulently induced Royal to issue the . . . additional credit risk insurance policies" set forth in subparagraph "a" through subparagraph "i" is a conclusion of law to which no response is required.  To the extent a response is deemed required, Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation that "SFC and Yao fraudulently induced Royal to issue . . . additional credit risk insurance policies."

            a-i.    Admitted on information and belief, except as qualified by the response to the preceding two sentences of this paragraph.

      52.    The allegation that Answering Defendants made any misrepresentations or omissions or that Royal relied on anything Answering Defendants said or did is denied.  The allegation that Royal relied on "continuing representations and omissions of SFC" is denied on information and belief.  By way of further answer, see response to ¶ 1, *supra*.

      53.    The allegation that "Royal also relied on the fraudulent and misleading Private Placement Memorandums" is denied.  The allegation that the PPMs were fraudulent or misleading is denied.  The allegation that Pepper knew about the "ghost payments" is denied.  The allegation that Pepper did not "disclose SFC's practice

of making ghost payments" is denied as stated because Pepper was not aware that SFC was making "ghost payments" as that term is defined in the Third Amended Complaint and, therefore, could not have disclosed such information. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph. By way of further answer, see response to ¶ 1, *supra*.

54.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

55.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

56.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

57.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

58.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the first four sentences of this paragraph. The description of what transpired at the meeting described in the fifth and sixth sentences of this paragraph is denied as stated. The May 11, 2001 meeting was requested by Royal and attended by Perry Turnbull, Gary Hawthorne, David Schneider, Robert Van Epps and Gagné (and perhaps others). One of the purposes of the meeting was to discuss several changes that Royal wanted to make to the policy it issued to SFC

Financial II for the benefit of PNC Bank as warehouse lender and other structuring issues that Royal wanted implemented. At the meeting, Royal representatives raised many issues, two of which were that the Excess Spread Account was not growing as Royal expected and that the number of student loans that were sixty or more days delinquent was greater than Royal expected. Royal's representatives asked for an explanation. Either Turnbull or Hawthorne stated that the Excess Spread Account was not growing as much as Royal expected because students paid two monthly payments upon origination of each loan, so the students all thought they were covered for at least the first sixty days. These payments were accounted for by SFC as prepayments of principal because the student loans were simple interest loans, and therefore would delay by at least sixty days any increase in the Excess Spread Account. In addition, because the borrowers, after graduation, often took jobs as long-haul truck drivers, they were often on the road, away from home, for weeks at a time, which also explained why a large number of the loans might be thirty or sixty days delinquent. The allegation that Gagné knew either of these explanations was false is denied.

59.    The allegation in the third sentence of this paragraph that Answering Defendants were involved in a "scheme" is denied. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

60.    Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and its subparts.

61.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.  By way of further answer, Answering Defendants were not aware of the memorandum described in this paragraph or its contents.

62.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in the first four sentences of this paragraph.  The allegations in the fifth sentence of this paragraph are denied.

63.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

64.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

65.     It is admitted, on information and belief, that Kirk Monteverde quit SFC after a short time on the job.  Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

66.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

67.     Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

68.    Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

69.    The allegations in the second sentence of this paragraph are denied.  Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.   By way of further Answer, no documents that Answering Defendants assisted in drafting contained any representations upon which Royal relied, let alone misrepresentations.  Answering Defendants did not affirm any representations made by SFC.  To the extent Answering Defendants participated in the preparation of documents or otherwise reported information provided to them by SFC, they did so under the belief that the information provided to them by SFC was true and accurate.  By way of further answer, see response to ¶ 1, *supra*.

70.    Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

71.    The allegations in this paragraph directed towards Answering Defendants are denied.  Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph as they relate to parties other than the Answering Defendants.

72.    It is admitted that Gagné had represented Yao for approximately eight years before he and Pepper began representing SFC.  It is admitted that during the period 1996 through 2002, Pepper billed SFC and SFC paid a sum approaching $3.2 million in legal fees.  The allegation that Pepper functioned as SFC's general counsel is

21

denied. It is admitted that Pepper provided legal services to SFC. The allegation that Pepper provided the legal support and necessary documentation for SFC's securitized loan transactions is denied as stated. Pepper provided SFC with legal advice relating to the securitized loan transactions and, along with others, assisted SFC in preparing the documentation necessary to conduct those transactions.

73.     Answering Defendants cannot respond to the allegation that "Gagné facilitated numerous and repeated loans" because the term "facilitated" is vague and undefined. To the extent a response is deemed required to the allegation that "Gagné facilitated numerous and repeated loans," the allegation is denied. By way of further answer, members of Gagné's family and trusts of which Gagné was a trustee loaned funds to SFC. The allegation that loans between Gagné's family or the trusts, on the one hand, and SFC on the other hand had "above market interest rates" is denied. It is denied that Gagné's family members and the trusts loaned to SFC approximately $37 million or were repaid $37 million by SFC. To the contrary, the largest amount ever outstanding on such loans was less than one-third of that amount. By way of further answer, SFC never repaid the approximately $6.8 million that was outstanding when SFC entered bankruptcy.

74.     Denied.

75.     The allegations in the first sentence of this paragraph are admitted. The remaining allegations in this paragraph are denied.

76.     No response is required to the allegations in the first two sentences of this paragraph as the transcript of the deposition referenced in this paragraph is a

writing that speaks for itself. To the extent a response is deemed required, the allegations in the first two sentences of this paragraph are denied. The allegation that, as a result of defending the deposition referenced in this paragraph, Pepper acquired knowledge about SFC's practices is a conclusion of law to which no response is required. To the extent a response is deemed required, the allegation that, as a result of defending the deposition referenced in this paragraph, Pepper acquired knowledge about SFC's practices is denied. By way of further answer, neither Gagné nor any Pepper attorney working on the corporate representation of SFC attended the deposition referenced in this paragraph, read the transcript of the deposition referenced in this paragraph, or was aware of the substance of the testimony given at the deposition referenced in this paragraph, and cannot be charged with the knowledge supposedly obtained by those who did. Answering Defendants were not aware that SFC was making "ghost payments" as that term is defined in the Third Amended Complaint. On information and belief, there was no mention of "ghost payments" in the deposition referred to, or anywhere else in the record of the *Nielsen* litigation.

77.    No response is required to the allegations in the first four sentences of this paragraph as the documents produced in discovery in the *Nielsen* action are writings that speak for themselves. To the extent a response is deemed required, the allegations in the first four sentences of this paragraph are denied. The allegation in the last sentence of this paragraph that, because SFC produced certain documents in the *Nielsen* action, Pepper became aware that SFC made material misrepresentations to Royal is a conclusion of law to which no response is required. To the extent a response is deemed required, the allegation that, because SFC produced certain documents in the

*Nielsen* action, Pepper became aware that SFC made material misrepresentations to Royal is denied. By way of further answer, neither Gagné nor any Pepper attorney working on the corporate representation of SFC reviewed any of the documents or reports produced in the *Nielsen* action and cannot be charged with the knowledge supposedly obtained by those who did.

78. The allegation in the third sentence of this paragraph that Pepper became aware of the "seasoning" payments because it was an issue in the *Nielsen* action is a conclusion of law to which no response is required. To the extent a response is deemed required, the allegation that Pepper became aware of the "seasoning" payments because it was an issue in the *Nielsen* action is denied. By way of further answer, neither Gagné nor any Pepper attorney working on the corporate representation of SFC was aware that "seasoning" payments, as that term is defined in the Third Amended Complaint, were an issue in the *Nielsen* action. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegation in the last sentence of this paragraph. The remaining allegations in this paragraph are denied. By way of further answer, see response to ¶ 58, *supra*.

79. The allegation in the first sentence of this paragraph is denied. No response is required to the remaining allegations in this paragraph as the referenced email is a writing that speaks for itself. To the extent a response is deemed required, the remaining allegations in this paragraph are denied. By way of further answer, the contents of the email quoted in the paragraph make clear that (a) Yao was proposing a "new program," (b) Gagné advised Yao that implementing Yao's proposal would be very

difficult, and (c) Gagné advised Yao that SFC would have to disclose the proposed program to Royal (and others) before implementing it.

80.    *Denied.* By way of further answer, see response to ¶ 79, *supra.*

81.    It is admitted that Answering Defendants assisted SFC in preparing PPMs that were distributed to potential investors and Royal. Any implication that Answering Defendants assisted SFC in attracting investors so that Pepper could generate fees is denied. It is admitted that the PPMs were issued so that SFC could make required disclosures to potential investors. It is admitted that the PPMs purported to describe the material characteristics of SFC's securitized loan pools. Answering Defendants provided Royal with copies of the PPMs so that Royal could verify that information provided by Royal for inclusion in the PPMs was accurate.

82.    It is admitted that SFC issued eight PPMs. It is admitted that the first PPM was finalized on April 11, 2000. The remaining allegations in this paragraph are denied.

83.    *Denied.*

84.    It is admitted that Pepper sent Royal draft and final versions of the PPMs, but it is denied that the draft and final version of the PPMs were sent in conjunction with Royal's decision to issue additional SFC Policies or that Royal in any way relied upon the information contained in the PPMs when deciding whether to issue the SFC Policies. By way of further answer, Answering Defendants provided Royal with copies of the PPMs so that Royal could verify that information provided by Royal for

inclusion in the PPMs was accurate. The allegation that Answering Defendants intended that Royal would rely on the content of the PPMs is denied. The allegations in the last sentence of this paragraph are denied as stated. The allegation that Royal was not aware of SFC's "ghost payments" is denied. Answering Defendants were not aware that SFC was making "ghost payments" as that term is defined in the Third Amended Complaint, and therefore, could not have disclosed the payments in the PPMs. The allegation that Royal believed that loan payments were made by students is denied. In any event, Answering Defendants could not have disabused Royal of any supposed belief that the loan payments were made by students because Answering Defendants believed that the loan payments were made by students.

85.    Denied.

86.    The allegations in the first sentence of this paragraph are denied as stated. Pepper was scrivener of the loan documents. It is admitted that the Accountants knew about at least some of the transactions, but is it denied that the Accountants advised Gagné and his family about how to structure the deal. To the contrary, the Accountants advised SFC. It is denied that Bast restructured a proposed purchase of SFC subordinated debt. To the contrary, Aquino restructured the debt for the benefit of SFC, not for the benefit of Gagné or his family. It is admitted that that the transactions included personal guarantees from Yao, which Gagné was instructed to include in the transaction documents.

87.    The allegations in the first sentence of the paragraph are admitted. The allegations in the second sentence of this paragraph are denied.

88.    Denied.

89.    The allegation that Pepper did not stop representing SFC until May 2002 is denied as stated.  Pepper withdrew from its representation of SFC in April 2002, shortly after learning that SFC had been engaging in conduct about which Answering Defendants had not previously been aware.  The remaining allegations in this paragraph are denied.

90.    No response is required to the allegations in this paragraph because the memo referenced in this paragraph is a writing that speaks for itself.  To the extent a response is deemed required, the allegations in this paragraph are denied.  By way of further answer, see response to ¶ 79, *supra*.

91.    The allegation that Pepper "ostensibly withdrew from representing SFC" on April 24, 2002, is denied as stated.  Pepper withdrew from representing SFC on April 24, 2002, except that Pepper documented additional loan transactions between SFC and Royal whereby Royal agreed to loan funds to SFC because Pepper then knew that Royal was aware of SFC's use of "forbearance" and Royal nonetheless requested that Pepper document those additional loan transactions.  No response is required to the remaining allegations in this paragraph  because the email referenced in this paragraph is a writing that speaks for itself.

92.    Denied as stated. After withdrawing as counsel to SFC, Pepper represented the family trusts in seeking payment of their loans to SFC.   The relevant loan documents obligated SFC as borrower to pay the lenders' legal costs in seeking enforcement.

93.    Denied as stated.  It is admitted that Yao pledged assets to Gagné's family to partially satisfy Yao's obligations to Gagné's family.  Answering Defendants cannot respond to the allegation that Yao pledged to fulfill SFC's obligations to Gagné's family "ahead of other SFC creditors" because the phrase "ahead of other SFC creditors" is vague and undefined.  To the extent a response is deemed required, the allegation that Yao pledged to fulfill SFC's obligations to Gagné's family "ahead of other SFC creditors" is denied.  It is admitted that Pepper billed SFC for the time incurred in connection with Yao's pledge.  By way of further answer, SFC never paid those bills.  By way of further answer, see response to ¶ 92, *supra*.

94.    Denied.  See response to ¶¶ 90, 92, 93, *supra*.

95-134.    The allegations in these paragraphs are not directed toward Answering Defendants and, therefore, no response is required.  To the extent a response is deemed required, the allegations are denied.

## RESPONSE TO COUNT I

135.    No response is required to this incorporation paragraph.  To the extent a response is deemed required, Answering Defendants' responses to the incorporated paragraphs are incorporated by reference.

136.    The allegations in this paragraph are conclusions of law to which no response is required.  To the extent a response is deemed required, the allegations in this paragraph are denied.

137-138.    The allegations in these paragraphs are conclusions of law to which no response is required. To the extent a response is deemed required, the allegations in these paragraphs as they relate to Answering Defendants are denied.

139.    The allegations in the first sentence of this paragraph are conclusions of law to which no response is required. To the extent a response is deemed required, the allegations in the first sentence of this paragraph as they relate to Answering Defendants are denied. The allegations in the second sentence of this paragraph are denied.

140.    The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is deemed required, the allegations in this paragraph as they relate to Answering Defendants are denied.

141.    The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is deemed required, the allegations in this paragraph are denied.

142.    The allegations in the first, fourth, fifth and sixth sentences of this paragraph are conclusions of law to which no response is required. To the extent a response is deemed required, the allegations in the first, fourth, fifth and sixth sentences of this paragraph are denied. The allegations in the second sentence of this paragraph, as they relate to SFC, are admitted on information and belief. The remaining allegations in this paragraph are denied.

143-144.     The allegations in these paragraphs are conclusions of law to which no response is required.  To the extent a response is deemed required, the allegations in these paragraphs as they relate to Answering Defendants are denied.

145.     Answering Defendants cannot respond to the allegation that "Yao was the owner and controller of Student Finance Corporation, SMS, SLS and their affiliates at all times pertinent to this case" because the phrase "at all times pertinent to this case" is vague and undefined.  To the extent a response is deemed required, the allegation that "Yao was the owner and controller of Student Finance Corporation, SMS, SLS and their affiliates at all times pertinent to this case," is admitted on information and belief.  The remaining allegations in the paragraph are admitted on information and belief.

146.     Answering Defendants cannot respond to the allegation that "Hawthorne was the President, Chief Operating Officer, and Secretary of Student Finance Corporation at the time at issue here" because the phrase "at the time at issue here" is vague and undefined.  To the extent a response is deemed required, the allegation that "Hawthorne was the President, Chief Operating Officer, and Secretary of Student Finance Corporation at the time at issue here" is admitted on information and belief. The remaining allegations in the paragraph are admitted on information and belief.

147.     It is admitted that Gagné was and is a partner at Pepper.  The remaining allegations in this paragraph are denied.

148.    The first two sentences of this paragraph are admitted on information and belief.  Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

149-150.    The allegations in these paragraphs are conclusions of law to which no response is required.  To the extent a response is deemed required, the allegations in these paragraphs as they relate to Answering Defendants are denied.

151.    The allegation in this paragraph that an "Enterprise" existed is a conclusion of law to which no response is required.  To the extent a response is deemed required, the allegation that an "Enterprise" existed is denied.  It is denied that Gagné "advised and guided the enterprise."  Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

152.    The allegations in the first sentence of this paragraph are conclusions of law to which no response is required.  To the extent a response is deemed required, the allegations in the first sentence of this paragraph as they relate to Answering Defendants are denied.  The remaining allegations in the paragraph are denied.

153-154.    The allegations in these paragraphs are conclusions of law to which no response is required.  To the extent a response is deemed required, the allegations in these paragraphs as they relate to Answering Defendants are denied.

155.    The allegations in the first sentence of this paragraph are admitted on information and belief.  The remaining allegations in this paragraph are conclusions of

law to which no response is required.  To the extent a response is deemed required, the remaining allegations in this paragraph as they relate to Answering Defendants are denied.

       156.

              a-g.    No response is required to the allegations in these subparagraphs to the extent they refer to writings, which speak for themselves.  To the extent a response is deemed required, Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in these subparagraphs.

       157.    The allegations in this paragraph are conclusions of law to which no response is required.  To the extent a response is deemed required, the allegations in this paragraph are denied.

       158.    The allegations in this paragraph are conclusions of law to which no response is required.  To the extent a response is deemed required, the allegations in this paragraph as they relate to Answering Defendants are denied.

       159.    The allegations in the first sentence of this paragraph as they relate to Answering Defendants are admitted.  The remaining allegations in this paragraph are denied.

       160.

a.      It is admitted that Gagné sent or caused to be sent PPMs via email to employees of Royal.  It is admitted that the employees of Royal to whom the PPMs were emailed were located in North Carolina.  The allegation in this subparagraph that the PPMs were "materially false or misleading" is a conclusion of law to which no response is required.  To the extent a response is deemed required, the allegation is denied.  The allegation that the PPMs concealed and facilitated the fraudulent scheme are denied as stated.  Answering Defendants were not aware of any "fraudulent scheme," and, therefore, were not capable of either concealing it or facilitating it.  The remaining allegations in this subparagraph are denied.  By way of further answer, Answering Defendants provided Royal with copies of the PPMs so that Royal could verify that information provided by Royal for inclusion in the PPMs was accurate.

b.      Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this subparagraph.

161-163.     The allegations in these paragraphs are conclusions of law to which no response is required.  To the extent a response is deemed required, the allegations in these paragraphs as they relate to Answering Defendants are denied.

33

164.    The allegations in this paragraph are conclusions of law to which no response is required.  To the extent a response is deemed required, the allegations in this paragraph are denied.

165.    The allegations in this paragraph are conclusions of law to which no response is required.  To the extent a response is deemed required, the allegations in this paragraph as they relate to Answering Defendants are denied.

166.    The allegations in this paragraph are conclusions of law to which no response is required.  To the extent a response is deemed required, the allegations in this paragraph are denied.

## RESPONSE TO COUNT II

167.    No response is required to this incorporation paragraph.  To the extent a response is deemed required, Answering Defendants' responses to the incorporated paragraphs are incorporated by reference.

168-171.    The allegations in these paragraphs are conclusions of law to which no response is required.  To the extent a response is deemed required, the allegations in these paragraphs as they relate to Answering Defendants are denied.

172.    The allegations in this paragraph are conclusions of law to which no response is required.  To the extent a response is deemed required, the allegations in this paragraph are denied.

## RESPONSE TO COUNT III

173.    No response is required to this incorporation paragraph. To the extent a response is deemed required, Answering Defendants' responses to the incorporated paragraphs are incorporated by reference.

174.    The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is deemed required, Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

175.    Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph.

176.    Denied.

177.    The allegations in the first sentence of this paragraph are denied as stated. Answering Defendants made no misrepresentations to Royal and were not aware that SFC and Yao supposedly made misrepresentations to Royal and, therefore, could not have "corrected" them. The allegation that Answering Defendants hid the "ghost payments" is denied as stated. Answering Defendants were not aware that SFC was engaging in fraudulent activities or making "ghost payments" as that term is defined in the Third Amended Complaint and, therefore, could not have hidden and did not hide such information from Royal. The remaining allegations in this paragraph are denied.

178-179.    Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in these paragraphs.

180-182.    The allegations in these paragraphs are conclusions of law to which no response is required. To the extent a response is deemed required, the allegations in these paragraphs as they relate to Answering Defendants are denied.

183-184.    The allegations in these paragraphs are conclusions of law to which no response is required. To the extent a response is deemed required, the allegations in these paragraphs are denied. By way of further answer, see response to ¶ 1, *supra*.

## RESPONSE TO COUNT IV

185.    No response is required to this incorporation paragraph. To the extent a response is deemed required, Answering Defendants' responses to the incorporated paragraphs are incorporated by reference.

186-187.    The allegations in these paragraphs are conclusions of law to which no response is required. To the extent a response is deemed required, the allegations in these paragraphs as they relate to Answering Defendants are denied.

188-190.    The allegations in these paragraphs are conclusions of law to which no response is required. To the extent a response is deemed required, the allegations in these paragraphs are denied. By way of further answer, see response to ¶ 1, *supra*.

## RESPONSE TO COUNT V

191.    No response is required to this incorporation paragraph. To the extent a response is deemed required, Answering Defendants' responses to the incorporated paragraphs are incorporated by reference.

192.    The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is deemed required, the allegations in this paragraph as they relate to the Answering Defendants are denied.

193.    The allegation that Answering Defendants were aware of SFC's fraudulent scheme is denied. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

194.    The allegation that Answering Defendants knew that part of SFC's fraudulent scheme was to induce Royal to issue insurance is denied. Answering Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph.

195-196.    The allegations in these paragraphs are conclusions of law to which no response is required. To the extent a response is deemed required, the allegations in these paragraphs as they relate to the Answering Defendants are denied.

197-198.    The allegations in these paragraphs are conclusions of law to which no response is required. To the extent a response is deemed required, the

allegations in these paragraphs are denied. By way of further answer, see response to ¶ 1, *supra*.

## RESPONSE TO COUNT VI

199.    No response is required to this incorporation paragraph. To the extent a response is deemed required, Answering Defendants' responses to the incorporated paragraphs are incorporated by reference.

200-202.    The allegations in these paragraphs are conclusions of law to which no response is required. To the extent a response is deemed required, the allegations in these paragraphs as they relate to the Answering Defendants are denied.

203-204.    The allegations in these paragraphs are conclusions of law to which no response is required. To the extent a response is deemed required, the allegations in these paragraphs are denied. By way of further answer, see response to ¶ 1, *supra*.

## RESPONSE TO COUNT VII

205.    No response is required to this incorporation paragraph. To the extent a response is deemed required, Answering Defendants' responses to the incorporated paragraphs are incorporated by reference.

206.    The allegations in this paragraph are conclusions of law to which no response is required. To the extent a response is deemed required, the allegations in this paragraph are denied.

207.    The allegations in this paragraph are conclusions of law to which no response is required.  To the extent a response is deemed required, the allegations in this paragraph as they relate to Answering Defendants are denied.

208.    The allegations in this paragraph are conclusions of law to which no response is required.  To the extent a response is deemed required, the allegations in this paragraph are denied.

WHEREFORE, Pepper and Gagné respectfully request that plaintiff's Third Amended Complaint be dismissed in its entirety and with prejudice, that judgment be entered in their favor and against plaintiff, and that they be awarded costs, attorney's fees and such other relief as the Court deems to be just and equitable.

## AFFIRMATIVE DEFENSES

1.    The Third Amended Complaint fails to state claims upon which relief can be granted.

2.    The claims in the Third Amended Complaint are barred in whole or in part by the doctrines of estoppel, waiver, laches and unclean hands.

3.    The claims in the Third Amended Complaint are barred in whole or in part by the *in pari delicto* doctrine.

4.    The claims in the Third Amended Complaint are barred in whole or in part by the doctrines of contributory and comparative negligence.

5.    Royal's alleged damages were not caused by Answering Defendants.

6.    The claims in the Third Amended Complaint are barred because Royal failed to mitigate its alleged damages.

7.    Royal's alleged damages resulted from its own reckless indifference.

8.    The claims in the Third Amended Complaint are barred as a result of Royal's failure to conduct adequate due diligence.

9.    Royal is not entitled to recover damages because it did not obtain reinsurance as required by 18 Del. C. § 909 even though Royal's exposure to potential

loss in connection with the policies it issued to SFC exceeded ten percent of its surplus to policyholders for each of the years in which Royal issued insurance policies to SFC.

10.    Royal has not incurred damages and/or its alleged damages are speculative.

11.    The claims in the Third Amended Complaint are barred in whole or in part by the applicable statute of limitations.

12.    The relief requested by the Royal is barred by the doctrine of recoupment.

13.    Royal's civil RICO claims are barred by the Private Securities Litigation Reform Act, 18 U.S.C. § 1964(c).

14.    Royal lacks standing to pursue its claim for deepening insolvency and its civil RICO claims.

WHEREFORE, Pepper and Gagné respectfully request that plaintiff's Third Amended Complaint be dismissed in its entirety and with prejudice, that judgment be entered in their favor and against plaintiff, and that they be awarded costs, attorney's fees and such other relief as the Court deems to be just and equitable.

Dated: September 5, 2006
      Wilmington, Delaware

           William H. Sudell, Jr., Esq. (No. 0463)
           Donna L. Culver (No. 2983)
           Daniel B. Butz (No. 4227)
           MORRIS, NICHOLS, ARSHT & TUNNELL
           1201 North Market Street
           P.O. Box 1347
           Wilmington, Delaware 19899-1347
           (302) 658-9200
           (302) 658-3989 (facsimile)

           *Counsel for defendant Pepper Hamilton LLP and W. Roderick Gagné*

OF COUNSEL:

SCHNADER HARRISON SEGAL & LEWIS LLP
Elizabeth K. Ainslie, Esq.
Nicholas J. LePore, III, Esq.
Bruce P. Merenstein, Esq.
Stephen J. Shapiro, Esq.
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
(215) 751-2000
(215) 751-2205 (facsimile)