IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROYAL INDEMNITY COMPANY, | ) | **REDACTED** |
| | ) | <u>**PUBLIC VERSION**</u> |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-165-JJF |
| | ) | |
| PEPPER HAMILTON LLP, W. RODERICK | ) | |
| GAGNÉ, FREED MAXICK & BATTAGLIA | ) | |
| CPAs PC, MCGLADREY & PULLEN, LLP, | ) | |
| MICHAEL AQUINO and FREED MAXICK | ) | |
| SACHS & MURPHY, P.C., | ) | |
| | ) | |
| Defendants. | ) | |

## ROYAL INDEMNITY COMPANY'S RESPONSE TO McGLADREY & PULLEN, LLP'S AND MICHAEL AQUINO'S MOTION TO PRESERVE CONFIDENTIALITY AND LIMITATION ON USE AND DISCLOSURE

ASHBY & GEDDES
Philip Trainer, Jr. (I.D. #2788)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19899
(302) 654-1888

SONNENSCHEIN NATH & ROSENTHAL LLP

Michael H. Barr
Kenneth J. Pfaehler
Robert W. Gifford
1221 Avenue of the Americas
New York, New York 10020-1089
(212) 768-6700

- and -

John Grossbart
Steven L. Merouse
8000 Sears Tower
233 S. Wacker Drive
Chicago, Illinois 60606
(312) 876-8000

Dated: September 27, 2006          *Attorneys for Plaintiff Royal Indemnity Company*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROYAL INDEMNITY COMPANY,        )
                                         )
             Plaintiff,       )
                                         )
        v.                 )    C.A. No. 05-165-JJF
                                         )
PEPPER HAMILTON LLP, W. RODERICK  )
GAGNÉ, FREED MAXICK & BATTAGLIA  )
CPAs PC, MCGLADREY & PULLEN, LLP,  )
MICHAEL AQUINO and FREED MAXICK  )
SACHS & MURPHY, P.C.,           )
                                         )
            Defendants.     )

## ROYAL INDEMNITY COMPANY'S RESPONSE TO McGLADREY & PULLEN, LLP'S AND MICHAEL AQUINO'S MOTION TO PRESERVE CONFIDENTIALITY AND LIMITATION ON USE AND DISCLOSURE

Royal Indemnity Company ("Royal") hereby submits this memorandum in response to

the Motion To Preserve Confidentiality And Limitation On Use And Disclosure (D.I. 218) filed

by defendants McGladrey & Pullen, LLP and Michael Aquino (collectively, "McGladrey").

## INTRODUCTION

McGladrey's Motion asks this Court to sustain its designation of confidentiality, and thus

prevent Royal from using in a related case to which McGladrey is not a party (*Royal Indemnity*

*Co. v. T.E. Moor & Co., Inc.*, No. D-167370 (Tex. Dist. Jeff. Co.) (the "Texas Litigation")), a

**REDACTED**         ("Report") drafted by McGladrey for Student Loan

Servicing, LLC ("SLS"), a wholly-owned subsidiary of Student Finance Corporation ("SFC").

The Report,

**REDACTED**

**REDACTED**                          (The Report is attached as Exhibit B to

McGladrey's sealed memorandum in support of its Motion.)

McGladrey asserts that the protective order governing confidentiality in this case gives it

the right to designate the Report as "confidential" and thus prevent its use outside of the four

SFC-related matters pending here, and further, that Royal's agreement to the terms of that order

effectively precludes its challenge now.  As more fully explained below, McGladrey is wrong on

both counts.

Royal is entitled to challenge improper and excessive confidentiality designations by

McGladrey.  This Court's protective order expressly provides a mechanism for doing so.  The

only issue before the Court is the propriety of McGladrey's assertion of confidentiality with

respect to the Report.  Because McGladrey cannot meet its burden to demonstrate that the Report

or its contents constitutes a trade secret, or is otherwise is protectable by Fed. R. Civ. P. 26(c)(7)

or the terms of this Court's order; and that Royal's use of the Report in the Texas Litigation

somehow would cause any harm to McGladrey, McGladrey's Motion should be denied.

## FACTUAL BACKGROUND

**A.**      **The Report**

The Report in question

**REDACTED**

As McGladrey concedes in its

2

Motion papers, SLS always was expected to review and comment upon the entirety of the Report until it was "suitable for the clients' purposes." McGladrey & Pullen, LLP's and Michael Aquino's Memorandum in Support of Motion to Preserve Confidentiality and Limitation on Use and Disclosure ("McGladrey Memo"), p. 4.

The specific Report in question, which apparently never was circulated outside of McGladrey because of the impending collapse of SFC, was designated by McGladrey as "confidential" under the protective order in this case solely for that reason. Numerous other

**REDACTED**              Reports, that periodically were issued by McGladrey              **REDACTED**

                   by SLS but actually delivered, have been produced by McGladrey in this case but not designated as confidential. (*See, e.g.,* McGladrey produced document ACCT032819, attached hereto as Exhibit A.)

### B.    The Protective Order

On March 16, 2006, this Court so-ordered a stipulated Order For The Protection Of Confidential Information (the "Protective Order," D.I. 121) that had been negotiated by the parties to each of the four, SFC-related cases pending here. Among other provisions, the Protective Order provided that a party may designate a document as "confidential"

> only when the Producing Party has a reasonable, good faith belief that the Information so designated
>
> (i) constitutes or reveals a trade secret or other confidential research, development or commercial information within the meaning of Rule 26(c) of the Federal Rules of Civil Procedure;
>
> (ii) constitutes or reveals confidential and competitively sensitive business plans, strategies, or financial information; or . . . .

McGladrey Memo, Exh. A, ¶ 6(a).[1]

---

[1] *See also* Protective Order, ¶ 12, which expressly sets forth the meet and confer process and procedure for challenging a party's confidentiality designation. Those procedures all have been followed here.

McGladrey contends that the Report is both a "trade secret" under Rule 26(c)(7), and a McGladrey "confidential business plan and strategy." McGladrey Memo, pp. 6–7.

### C.    The Texas Litigation

In the Texas Litigation, Royal is suing two trucking schools for being complicit with SFC in perpetrating its massive fraud on Royal. It has been argued in that case that certain disclosures contained in a McGladrey financial statement that were available to Royal were sufficient to put Royal on notice of SFC's fraudulent practices. The Report.

**REDACTED**

A confidentiality order similar to the Protective Order here also exists in the Texas Litigation (attached hereto as Exhibit B). During the meet and confer process leading up to the filing of McGladrey's Motion, Royal offered to invoke the protections afforded by that order with respect to the Report, but McGladrey refused.

**ARGUMENT**

### I.    THE REPORT IS NOT A "CONFIDENTIAL" DOCUMENT

### A.    The Report is not a trade secret

Paragraph 6(i) of the Protective Order incorporates Fed. R. Civ. P. 26(c)(7), enumerating "trade secrets" as a category of documents that might warrant protection from dissemination to competitors or other non-litigants. A party wishing to avail itself of this protection must demonstrate that the information sought is a bona fide trade secret *and* that disclosure of the secret might be harmful. *See Coca Cola Bottling Co. of Shreveport, Inc. v. Coca Cola Co.,* 107 F.R.D. 288, 292 (D. Del. 1985) (*citing Centurion Industries, Inc. v. Warren Steurer & Associates,* 665 F.2d 323, 325 (10th Cir. 1981)); 8 Wright & Miller, *Federal Practice & Procedure: Civil* § 2043 (1970). The harm required to be shown by the party seeking protection

4

is "not the injury that would be caused by public disclosure, but the injury that would result even from disclosure under an appropriate protective order." *Id.* at 293. The feared injury must be demonstrated with specificity. *See Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786 (3d Cir. 1994) (*quoting Publicker Indus., Inc. v. Cohen,* 733 F.2d 1059, 1071 (3d Cir. 1984)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Leucadia, Inc. v. Applied Extrusion Tech., Inc.,* 998 F.2d 157, 166 (3d Cir. 1993); *see also Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986)).

McGladrey has not alleged any injury that would result if Royal were allowed to use the Report in the Texas Litigation. Nor can it. Even if the Report were entitled to some sort of protection, a substantially similar protective order already is in place in the Texas Litigation. Thus, even assuming that the Report truly contained McGladrey trade secrets, the Texas Litigation confidentiality order would prevent any harm that might conceivably result from dissemination of the Report outside the context of legal proceedings.

Unable to make the required showing of harm, McGladrey instead proffers its own characterization of the Report and argues that the Report, as characterized, constitutes some sort of a *per se* trade secret:

> Under Rule 26(c)(7) an accountant's auditing procedures and
> methodologies are proprietary and confidential.

### REDACTED

> As such, the Report is protected under Rule 26(c)(7).

McGladrey Memo, p. 6 (citations omitted). In support, McGladrey cites three cases. But those cases make clear that what matters is the *actual contents* of a document. Held up to the *contents* of the Report, those cases actually reject McGladrey's assertion of confidentiality here.

In *S3 Ltd.,* 242 B.R. 872, 878 (E.D. Va. 1999), the Chapter 11 debtor subpoenaed a creditor's accountants to produce certain workpapers. The accountants moved to quash pursuant

to Rule 26(c)(7). After conducting an *in camera* review of the accountants' workpapers, the court rejected the accountants' motion because "the vast majority of these documents reflect substantive financial information relating to [the creditor] on their face." *Id.*

Likewise, in *Peat, Marwick*, 65 B.R. 886, 887 (N.D.N.Y. 1986), the court rejected the third-party accountants' request for an order protecting "all of its workpapers." *Id.* The court held that "all substantive information contained in accountants' workpapers pertaining to the financial affairs of the accountants' client are proper subjects for discovery." *Id.* Importantly, the court drew a distinction between documents that contained "only Peat, Marwick's plans for conducting an audit" – which the court found were properly covered by Rule 26(c)(7) – and documents "contain[ing] substantive information about [the client's] operations and therefore are not entitled to protection." *Id.* at 888.

Finally, in *Houbigant*, 2003 WL 21688243 (S.D.N.Y. July 21, 2003), at *3, the court again distinguished between different types of accountants' documents. Documents which do *not* contain "specific information regarding the company that had been audited," such as "internal audit manuals" and "audit practice manuals," were properly protected under Rule 26(c)(7). However, the court rejected the accountants' position that they were entitled to similar, blanket protection for all audit documents, including those containing information about the client. *Citing Peat, Marwick*, 65 B.R. at 887, *supra*.

In this case, the Report plainly

The Report describes,

**REDACTED**

(McGladrey Memo, Exh. B, pp. 6 – 10.) As the courts in the cases discussed above all held, such client-specific information does not constitute the kind of trade secret or

proprietary information of which McGladrey is entitled to control the dissemination.  To the

contrary, the Report is ⸢

**REDACTED**

    To the extent the cases sustain claims of accountant trade secrets and confidentiality, they

do so with respect to documents in the nature of "audit manuals."  Audit manuals are

distinguished from client-specific workpapers and other documents because they do *not* contain

client information, but rather the *internal* policies and procedures accounting firms use to

perform their work.  *See Houbigant*, 2003 WL 21688243, at *3 (discussing protections afforded

"audit manuals," but acknowledging that such protection does not extend to workpapers

containing "specific information regarding the company that had been audited"); *S3 Ltd.*, 242

B.R. at 878 (permitting accountants to withhold documents "reflect[ing] general accounting

procedures of [accountant] and contain[ing] no significant or material financial information

concerning [client]"); *Peat, Marwick*, 65 B.R. at 888 (holding "audit programs" confidential

"[t]o the extent that these documents contain only Peat, Marwick's plans for conducting an

audit"); *but see Master Palletizer Sys., Inc. v. T.S. Ragsdale Co. Inc.*, 123 F.R.D. 351, 353 (D.

Colo. 1988) (rejecting application for protective order even for audit manuals).  The Report ⸲

**REDACTED**

McGladrey Memo, p. 3.

    McGladrey attempts to skirt these holdings – the analysis of which rightly turns on the

*contents* of documents and the necessity of showing harm – by emphasizing that the Report

never was actually delivered to SLS.  *See* McGladrey Memo, p. 7 ("these plans or strategies [in

the Report] were not shared with the client or anyone else outside of the McGladrey team on that

engagement"); *see also* McGladrey Memo, pp. 1, 3-4, 6-7.  But whether McGladrey shared the

Report is not the proper inquiry.  The proper inquiry is the Report's *contents*.  The Report was a

**REDACTED**

**B.**    <u>**The Report does not contain McGladrey's**</u>        **REDACTED**

McGladrey also attempts to characterize the Report as containing

**REDACTED**

McGladrey Memo, p. 4.  That argument too fails for the reasons already

discussed:  (1) the Report                        **REDACTED**

**REDACTED**         (2) McGladrey's statement that the Report was "not shared

with the client or anyone else" (McGladrey Memo, p. 7) ignores the fact that that was due solely

to the fortuitous, advancing collapse of SFC; and that the Report,

**REDACTED**

, and (3) the existence of

the Texas Litigation confidentiality order eliminates entirely any conceivable claim of harm to

McGladrey if the Report were used in that action.

**REDACTED**

**REDACTED**

## II. ROYAL SHOULD NOT BE PRECLUDED FROM USING THE REPORT IN THE TEXAS LITIGATION

Because McGladrey is not entitled to designate the Report as "confidential," there is no reason that Royal should be precluded from using it in the Texas Litigation, particularly where the confidentiality order in that case prevents any broader dissemination. The Protective Order here expressly allows Royal to challenge McGladrey's designation and nothing about these circumstances limits Royal's right to do so.[2] If the Report was not properly designated as "confidential," the precise details of how Royal intends to use it in the Texas Litigation are irrelevant (*see* McGladrey Memo, pp. 1, 3, 6), and neither the Protective Order nor any legal authority compels Royal to waive its work product privilege in Texas in order to explain those details to McGladrey here.[3]

---

[2] McGladrey's sole citation in support of its position is inapposite. In *Omega Homes, Inc. v. Citicorp Acceptance Co.*, 656 F. Supp. 393 (S.D.N.Y. 1987), the plaintiff sought modification of a negotiated protective order for the purpose of sharing discovery materials with *other* plaintiffs in other litigations against the *same* defendant. The Court rejected this as unfair to the defendant. *Id.* at 404. In the instant case, Royal intends to use one McGladrey document in litigation involving a *different* defendant and to which McGladrey is not a party. None of the concerns noted in *Omega Homes* apply here.

[3] Although collateral to the issue before the Court, McGladrey congratulates itself for its judicious use of confidentiality designations, claiming that it "went through a painstaking process of carefully selecting documents to designate." (McGladrey Memo, p. 7.) Yet, of its approximately 140,000-page production to date, McGladrey designated some 75% of that production as "confidential." Nor were those designations done carefully. "Confidential" status was claimed on numerous documents clearly not covered by the Protective Order, including, for example:
provided by :

**REDACTED**

## CONCLUSION

For all of the foregoing reasons, this Court should deny McGladrey's Motion To Preserve Confidentiality And Limitation On Use And Disclosure, and should find that the Report is not "confidential" within the meaning of the Protective Order issued in this case.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Philip Trainer, Jr. (I.D. #2788)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19899
(302) 654-1888
ptrainer@ashby-geddes.com
tlydon@ashby-geddes.com

SONNENSCHEIN NATH & ROSENTHAL LLP

Michael H. Barr
Kenneth J. Pfaehler
Robert W. Gifford
1221 Avenue of the Americas
New York, New York 10020-1089
(212) 768-6700

- and -

John Grossbart
Steven L. Merouse
8000 Sears Tower
233 S. Wacker Drive
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934

*Attorneys for Plaintiff Royal Indemnity Company*

Dated: September 18, 2006

173297.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of September, 2006, the attached **ROYAL INDEMNITY COMPANY'S RESPONSE TO McGLADREY & PULLEN, LLP'S AND MICHAEL AQUINO'S MOTION TO PRESERVE CONFIDENTIALITY AND LIMITATION ON USE AND DISCLOSURE (REDACTED PUBLIC VERSION)** was served upon the below-named counsel of record at the address and in the manner indicated:

William H. Sudell, Jr., Esquire                                    HAND DELIVERY
Morris Nichols Arsht & Tunnell
1201 North Market Street
Wilmington, DE  19899-1347

James L. Holzman, Esquire                                        HAND DELIVERY
J. Clayton Athey, Esquire
Prickett, Jones & Elliott, P.A.
1310 King Street
Wilmington, DE  19899

Michael R. Lastkowski, Esquire                                HAND DELIVERY
Christopher M. Winter, Esquire
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE  19801

John W. Shaw, Esquire                                              HAND DELIVERY
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19899

Karen Lee Turner, Esquire                                        HAND DELIVERY
Susan E. Poppiti, Esquire
Eckert Seamans Cherin & Mellott, LLC
300 Delaware Avenue, Suite 1360
Wilmington, DE  19801

Christopher A. Ward, Esquire                          HAND DELIVERY
Ashley B. Stitzer, Esquire
Daniel K. Astin, Esquire
The Bayard Firm
222 Delaware Avenue, Suite 900
Wilmington, DE 19801

John H. Eickemeyer, Esquire                          VIA FEDERAL EXPRESS
Jonathan A. Wexler, Esquire
Vedder, Price, Kaufman & Kammholz, P.C.
805 Third Avenue
New York, NY 10022

Elizabeth K. Ainslie, Esquire                        VIA FEDERAL EXPRESS
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103

Richard P. Swanson, Esquire                          VIA FEDERAL EXPRESS
Veronica E. Rendon, Esquire
Jason M. Butler, Esquire
Arnold & Porter LLP
399 Park Avenue
New York, NY 10022-4690

Steven M. Farina, Esquire                            VIA FEDERAL EXPRESS
Thomas H.L. Selby
Amber M. Mettler
Williams & Connolly LLP
725 Twelfth Street, NW.
Washington, DC 20005

Neil G. Epstein, Esquire                             VIA FEDERAL EXPRESS
Eckert Seamans Cherin & Mellott, LLC
1515 Market Street, 9th Floor
Philadelphia, PA 19102

Michael S. Waters, Esquire                           VIA FEDERAL EXPRESS
Lois H. Goodman, Esquire
McElroy, Deutsch, Mulvaney & Carpenter, LLP
Three Gateway Center
100 Mulberry Street
Newark, NJ 07102-4079

James J. Rodgers, Esquire                                         VIA FEDERAL EXPRESS
Laura E. Vendzules, Esquire
Andrew M. Marble, Esquire
Dilworth Paxson LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia PA 19103-7595


Andre G. Castaybert, Esquire                                    VIA FEDERAL EXPRESS
Ronald Rauchberg, Esquire
Steven Obus, Esquire
David McTaggart, Esquire
Proskauer Rose LLP
1585 Broadway
New York, NY  10036-8299


Student Loan Servicing LLC                                               U.S. MAIL
1405 Foulk Road, Suite 102
Wilmington, DE  19803-2769


Andrew N. Yao                                                            U.S. MAIL
107 Leighton Drive
Bryn Mawr, PA  19010



                                                        /s/ Tiffany Geyer Lydon

170005.1                                                Tiffany Geyer Lydon


3