# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ROYAL INDEMNITY COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 05-165-JJF |
| | ) |
| PEPPER HAMILTON LLP, W. RODERICK | ) **REDACTED PUBLIC VERSION** |
| GAGNÉ, FREED MAXICK & BATTAGLIA | ) |
| CPAs PC, McGLADREY & PULLEN, LLP, | ) |
| MICHAEL AQUINO, and FREED MAXICK | ) |
| SACHS & MURPHY, P.C., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF MCGLADREY & PULLEN'S
## MOTION TO COMPEL PLAINTIFF'S PRODUCTION OF DOCUMENTS

DUANE MORRIS LLP
Michael R. Lastowski (Bar No. 3892)
Christopher M. Winter (Bar No. 4163)
1100 North Market Street, Suite 1200
Wilmington, DE  19801-1246
Phone:  302-657-4951
Fax:  302-657-4901

-and-

ARNOLD & PORTER LLP
Veronica E. Rendon
Jason M. Butler
399 Park Avenue
New York, NY  10022
Phone:  212-715-1000
Fax:  212-715-1399

Attorneys for McGladrey & Pullen, LLP
and Michael Aquino

WILLIAMS & CONNOLLY LLP
Steven M. Farina
Thomas H. L. Selby
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone:  202-434-5000
Fax:  202-434-5029

Attorneys for McGladrey & Pullen, LLP

## **INTRODUCTION**

In its Third Amended Complaint, Plaintiff Royal Indemnity Company ("Royal") asserts that its ignorance about the known business practices of Student Finance Corporation ("SFC") is the result of a widespread conspiracy to hide SFC's business model. Royal claims that it discovered in March 2002 for the first time the true nature of SFC's business, and only then understood the risks that it had incurred in providing credit enhancement insurance for the SFC deals.

Yet, Royal refuses to produce documents that appear to indicate that it was Royal's own inexperience, lack of proper personnel, and naiveté that caused it to misunderstand not only SFC, but the entire credit enhancement business. In fact, Royal, or its parent in the United Kingdom ("Royal UK"), decided in 2001 – months before the March 2002 events that Royal claims began the unraveling of SFC – that it had imprudently entered the credit enhancement business, and that it should exit this market. Royal refuses to produce documents relating to this decision, except to the limited extent that they explicitly discuss SFC. But the documents that have been produced prove the relevance of the documents Royal is withholding: the decision to exit the credit enhancement business was the result of the inexperience and negligence of a small group of Royal personnel in the "Financial Enhancements Unit," *i.e.*, the same people that managed the SFC account. These documents are relevant to show why Royal failed to learn of SFC's practices (which were disclosed, for example, in the notes to the company's 2000 financial statements), and to put into context for statute of limitations purposes when Royal should have known about the practices. For these reasons, Royal should be compelled to produce the documents concerning Royal's decision to exit the credit enhancement business and shut down the Financial Enhancements Unit. See Fed. R. Civ. P. 37.

## BACKGROUND

In mid-November 1998, Royal Indemnity Company, a property and casualty insurance company, was approached about a new business opportunity with SFC, a company that originated and purchased sub-prime student loans, primarily for truck driving school students. SFC sought "financial guaranty" insurance (also known as "credit enhancement" or "credit risk" insurance) from Royal, *i.e.*, a pledge that if the students did not pay back their loans, the banks and/or investors in SFC's programs would not suffer losses. Although Royal had never before issued financial guaranty insurance (or any insurance relating to sub-prime student loans), it agreed to a deal with SFC after only cursory due diligence, executing a $75,000,000 insurance policy in early January 1999. See Third Am. Compl. at ¶ 37 (Ex. A). This would be the first of several policies that form the basis of Royal's complaint in this matter. Id. at ¶¶ 48-49, 51 (Ex. A).

A relatively new group within Royal, the Financial Enhancements Unit ("FEU"), composed of just a few individuals, was responsible for Royal's credit risk insurance business, including issuing and monitoring the SFC policies. The FEU aggressively pursued SFC insurance premiums, agreeing over the next three years to insure approximately $500,000,000 in SFC student loans. Although SFC was by far the largest exposure, in approximately three years, the FEU issued numerous insurance policies relating to sub-prime assets, in particular, sub-prime auto loans. By the end of 2001, the FEU had underwritten policies covering over            in assets, and exposing Royal to over            in potential liabilities. See Ex. B (

at ROY 159597).

The demise of SFC in 2002, and the ensuing refusal by Royal to pay on its financial guaranty insurance policies are well-known by this Court, and will not be reiterated here. What

has not been apparent until document discovery, however, is that Royal had, long before it alleges the SFC crisis materialized, recognized that it was in over its head. According to the Complaint brought by SFC against Royal in this Court, before March of 2002, Royal or Royal UK, decided to exit the financial guaranty business entirely. See Complaint in In re Student Finance Corp. at ¶ 29 (Ex. C). Royal UK apparently recognized that the FEU's lack of experience in credit risk insurance and its failure to conduct adequate due diligence had exposed Royal to an unacceptable level of risk and to unprecedented losses (that it now faces) resulting from the SFC and other credit enhancement deals.

Royal's decision to shut down the FEU was precipitated by a recognition of the repeated failures by the FEU to conduct adequate due diligence as a general matter, and of SFC's business practices, in particular. Indeed, as early as March 31, 2000, Royal was concerned about outside questions regarding its "underwriting disciplines and skills" in the area of "credit enhancement contracts." Ex. D (Email from Rick Hudson, Group Director, Underwriting & Claims dated Mar. 31, 2000 at ROY 163741-5). Subsequently, in August 2001,

Ex. E (

at ROY 165271-2). After noting the high risk that accompanies credit enhancement insurance,         wrote that Royal did not

Id.         concludes his email with a

recommendation that Royal

i.e., the FEU. Id. A few months later, Vezzosi again reiterated his concerns over the underwriting at the FEU and suggests that there were "leadership issues" which

3

necessitated "some oversight by the deal committee" if FEU was going to stay in business.[1]  Ex.

F (Emails from Vezzosi dated Nov. 4, 2001 and Nov. 14, 2001, at ROY 105780-1).  Finally, in

late 2001, Royal decided to exit the credit risk insurance business and close down the FEU

entirely.  The FEU's failure to recognize or account for the risks associated with insuring sub-

prime loans to truck driving school students, many of which have now come to pass, is the root

cause of the losses Royal now faces.

In this litigation, Royal now asserts that it was not its own due diligence failures that

caused its losses, but a conspiracy to hide the practices of SFC.  See Third Am. Compl. at ¶¶ 1-7

(Ex. A).  Royal claims that – notwithstanding the fact that forbearance payments were explicitly

disclosed in, *inter alia*, SFC's fiscal year 2000 financial statements – Royal was shocked to learn

in March 2002 that SFC had been making these forbearance payments.  Id. ¶ 68 (Ex. A).  Indeed,

Royal claims that its losses stem from an SFC practice of making payments on student loans, *i.e.*,

forbearance payments, to hide the fact that these sub-prime loans were subject to high

delinquency and default rates.  See id. at ¶¶ 6-9 (Ex. A).  In response, McGladrey asserts various

defenses, including that Royal's ignorance was borne of its comparative fault and/or willful

blindness, its own due diligence failures and inexperience.  McGladrey also asserts statute of

limitations defenses based on Royal's actual and/or constructive knowledge of SFC's practices.

See Answer of McGladrey & Pullen LLP to Third Am. Compl. ("McGladrey Answer") at ¶¶

210-17, 219, 223-24 (Ex. I).

---

[1]    There is also evidence that the FEU may have resisted the oversight Royal management tried to
impose, aggravating Royal's already overexposed risk position.  See, e.g., Ex. G,
                                    at ROY 165336 (

                                    ); Ex. H, Email from Bill Hibberd dated Jan. 2, 2002 at
ROY 105786 ("I have admittedly dragged my feet on the deal committee, but this was not with some evil
intentions.").

## DOCUMENTS REQUESTED

On September 7, 2005, McGladrey served Royal with McGladrey's First Request for Production of Documents ("RFP"), attached as Exhibit J.  In Request No. 92, McGladrey requested all documents concerning, in relevant part, "Royal discontinuing the business of issuing credit risk insurance in the United States," including "any communications between Royal and its "'parent in the United Kingdom'" relating to the decision to exit the credit risk insurance business in the U.S.[2]  RFP at ¶ 92 (Ex. J).

On October 18, 2005, Royal served its Objections and Responses to McGladrey's Request ("Response"), attached as Exhibit K.  In it, Royal asserted boilerplate objections, adding merely that Royal objected that the request was "based on allegations made against Royal in another, unrelated action and not on allegations made by Royal."  Response at ¶ 92 (Ex. K).

Subsequently, after a meet and confer teleconference, Royal agreed on December 5, 2005, to produce all documents relating to the allegations in ¶ 29 of the SFC complaint against Royal, "*i.e.*, that Royal told SFC its parent in the UK had instructed Royal to discontinue its credit risk insurance business in the United States."  See Letter from L. MacVittie dated July 28, 2006 at 2, attached as Exhibit L.  Royal, however, refused to search for or produce "any files that may exist relating generally to the reasons for the decision to discontinue the U.S. credit risk insurance business" because such production would be burdensome and such materials are not

---

[2]    Request No. 92 reads in full:

> All documents and electronic data concerning the allegations made in ¶ 29 of the Complaint in Student Finance Corporation v. Royal Indemnity Company, 02-11620 (LK) (Bank. D. Del.) ("SFC/Royal Action"), including but not limited to Royal discontinuing the business of issuing credit risk insurance in the United States, and any communications between Royal and its "parent in the United Kingdom."

RFP at ¶ 92 (Ex. J).

relevant. See id. (Ex. L). Royal maintained its refusal to search for or produce such documents (except those that explicitly mentioned SFC) through subsequent meet and confer efforts. See Letter from T. Selby, dated Aug. 3, 2006 at 2-3, attached as Exhibit M. Numerous attempts to resolve these matters without court intervention have failed, and McGladrey is thus filing this Motion to Compel Plaintiff's Production of Documents.

## ARGUMENT

Documents concerning Royal's decision to exit the credit risk insurance business in the U.S. – the very line of business that involved SFC – are plainly discoverable.[3]

**First**, there can be little doubt that the documents regarding the credit enhancement business are relevant to Royal's claims and McGladrey's defenses thereto. This lawsuit is built on the central assertion that Royal was ignorant of the known business practices of SFC until March 2002 not because of Royal's own negligent investigation or lax due diligence, but because of a widespread conspiracy to keep SFC's business practices secret from Royal. See Third Am. Compl. ¶¶ 1, 5-7 (Ex. A). Yet documents regarding Royal's decision to exit the credit enhancement business are relevant to, and appear to disprove, Royal's assertions and relate to a number of McGladrey's defenses, including, among others, contributory negligence and/or comparative fault, assumption of risk, lack of causation, reckless indifference and/or intentional misconduct, and a failure to mitigate damages. See McGladrey Answer at ¶¶ 212-14, 217 & 224 (Ex. I). Under the liberal discovery standards embodied in the Federal Rules, McGladrey is

---

[3]    Under the liberal discovery standards, Royal must produce any documents that are relevant to the claims or defenses of any party, or reasonably calculated to lead to the discovery of admissible evidence. See Fed. R.Civ. P. 26(b)(1); Pacitti v. Macy's, 193 F.3d 766, 777 (3d Cir. 1999) ("It is well recognized that the federal rules allow broad and liberal discovery."); Corning Inc v. SRU Biosystems, LLC, 223 F.R.D. 191, 193 (D. Del. 2004). The request at issue here easily meets these standards.

therefore entitled to discovery of documents concerning Royal's decision to exist the credit risk insurance business and shut down the FEU.

When it was presented with the opportunity to insure SFC student loans, credit enhancement was a new line of business for Royal, a property and casualty insurance company. Indeed,

Ex. N (                                        ). Nonetheless, Royal created the FEU and entered the credit enhancement business in 1998 and, after a brief investigation into SFC, issued the first SFC policy in early 1999. See Third Am. Compl. at ¶¶ 27, 37 (Ex. A). By August 2001, however, Royal recognized that the FEU was failing. As the

, the FEU did not

for credit enhancement insurance. Ex. E

(                              at ROY 165271-2).

Even Royal UK recognized the FEU's mismanagement. Following the collapse of SFC,

, stated that there was

by the unit. Ex. O (

at ROY 165278-9).        goes on, saying

Id.

(emphasis added).

acknowledgement that SFC is                of the FEU's failures illustrates why McGladrey is entitled to broader discovery than Royal has produced to date.

Documents regarding Royal's decision to exit the credit enhancement business are relevant to disprove Royal's purported ignorance of SFC's business practices, and to establish that it was the FEU's own problems that caused Royal's losses. This is true regardless of whether the documents expressly discuss SFC (and have presumably been produced), other credit enhancement projects, or the work of the FEU generally. Documents relating to the failures of Royal's FEU are germane to issues of causation, whether they mention SFC by name or not, and are therefore relevant to, among others, McGladrey's defenses of contributory negligence and/or comparative fault, assumption of risk, lack of causation, reckless indifference and/or intentional misconduct, and a failure to mitigate damages. See McGladrey Answer at ¶¶ 212-14, 217 & 224 (Ex. I).

*Second*, documents describing the failures of the FEU in the credit enhancement business directly relate to the statute of limitations defense asserted by McGladrey. See McGladrey Answer at ¶ 210 (Ex. I). As the Court is aware from McGladrey's motion to dismiss Royal's complaint, McGladrey believes that Royal was on actual or, at the very least, inquiry notice about SFC's business practices, including the use of forbearance payments, well before March 20, 2002. For example, as early as March 2000, SFC and Yao advised Royal that "for students who are in forbearance, the schools advance payment on behalf of the student until the student resumes paying or until he defaults . . . this, of course, also distorts the default curve." Ex. P (Paragraph 18 of Discussion Points faxed from IBG to Royal on March 6, 2000 at ROY 035334-38). Likewise, on April 30, 2001, McGladrey rendered an audit opinion on SFC's financial statements for the year ended December 31, 2000 (the "2000 audited financial statements"), which disclosed that SFC made "forbearance payments" from the school reserve of $9,515,841 in the year 2000 and $2,012,190 in the year 1999. Ex. Q (Note 7 to 2000 audited financial

8

statements at GT 01079-108). Contemporaneous with these disclosures, documents from Royal establish that the FEU's ability to monitor its deals was under fire. Royal management expressed concern with how ratings agencies would view the FEU's "underwriting disciplines and skills" in March 2000. Ex. D (Email from Rick Hudson, Group Director, Underwriting & Claims dated Mar. 31, 2000 at ROY 163741-5). And just after the 2000 financial statements were released, Royal's upper management acknowledged the FEU's ignorance and inexperience, and, in August 2001,                                    . Ex. E (

at ROY 165271-2)

Documents regarding Royal's decision to exit the credit risk insurance business and dissolve the FEU thus bear directly on whether Royal knew or should have known about the nature and extent of SFC's use of forbearance payments. From the documents produced to date, it appears that management within the FEU may have ignored or misread SFC's disclosures of forbearance, including those contained in the 2000 audited financial statements, and failed to conduct an adequate due diligence of SFC or to monitor SFC's use of forbearance payments over time. The timing of Royal's decision to exit the credit risk insurance business – only months after McGladrey issued its opinion on SFC's 2000 financial statements – is also notable. During this critical period of time, Royal's upper management was aware that the FEU was inadequately staffed, inexperienced, and overwhelmed, and the FEU was dissolved soon thereafter. The failures of the FEU either cast doubt on Royal's alleged ignorance of SFC's practices, or, at the very least, put into context why the statute of limitations should not be tolled.

*Finally*, Royal has done nothing to substantiate its assertion that the search for these documents would be burdensome. See, e.g., Momah v. Albert Einstein Med. Ctr., 164 F.R.D. 412, 417 (E.D. Pa. 1996) ("Mere recitation of the familiar litany that an interrogatory or a

document production request is 'overly broad, burdensome, oppressive and irrelevant' will not

suffice." (quoting Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir.1982)). To the contrary,

Royal has produced similar documents already, but has withheld those that do not expressly

mention SFC.

## CONCLUSION

Because the documents sought by McGladrey's Requests No. 92 are both highly relevant

to the present litigation and not protected from disclosure by any privilege, McGladrey

respectfully asks that this Court order Royal to produce the requested materials.

Dated: September 27, 2006

DUANE MORRIS LLP

By: /s/ Christopher M. Winter
Michael R. Lastowski (Bar No. 3892)
Christopher M. Winter (Bar No. 4163)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Phone: 302-657-4951
Fax: 302-657-4901

-and-

10

ARNOLD & PORTER LLP
Veronica E. Rendon
Jason M. Butler
399 Park Avenue
New York, NY  10022
Phone:  212-715-1000
Fax:  212-715-1399

Attorneys for McGladrey & Pullen, LLP
and Michael Aquino

WILLIAMS & CONNOLLY LLP
Steven M. Farina
Thomas H. L. Selby
725 Twelfth Street, N.W.
Washington, D.C. 20005
Phone:  202-434-5000
Fax:  202-434-5029

Attorneys for McGladrey & Pullen, LLP

11