# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROYAL INDEMNITY COMPANY<br><br>Plaintiff,<br><br>v.<br><br>PEPPER HAMILTON LLP,<br>W. RODERICK GAGNE,<br>FREED MAXICK & BATTAGLIA CPAs PC,<br>MCGLADREY & PULLEN, LLP and<br>MICHAEL AQUINO,<br><br>Defendants. | ORIGINAL<br><br>Civil Action No. 05-165-JJF<br><br>Judge Joseph J. Farnan, Jr. |

### DEFENDANT MCGLADREY & PULLEN, LLP'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF ROYAL INDEMNITY COMPANY

Pursuant to Federal Rule of Civil Procedure 34 and Local Rule of Civil Procedure 26.1, Defendant McGladrey & Pullen, LLP hereby serves the following requests for production of documents on Plaintiff Royal Indemnity Company. Responses to these requests are to be served upon undersigned counsel within 30 days of service. Copies shall be produced as kept in the ordinary course of business, including labeling as to the source of the documents, as required by Fed. R. Civ. P. 34.

## DEFINITIONS

The following terms shall have the following definitions:

1. The terms "Royal" and "you" mean Royal Indemnity Company, as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

2. The term "SFC" means Student Finance Corporation, Student Loan Servicing, LLC, Student Marketing Services, LLC, Student Placement Services, LLC, SFC Financial I, LLC, SFC Financial II, LLC, SFC Acceptance II, LLC, SFC Acceptance III, LLC, SFC Acceptance IV, LLC, SFC Acceptance V, LLC, SFC Acceptance VI, LLC, SFC Acceptance VII, LLC, SFC Acceptance VIII, LLC, SFC Acceptance IX, LLC (and any other related subsidiaries or affiliates), as well as the parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives of the above entities at the present time and, where applicable, during the time period relevant to this action, including without limitation the Grantor Trusts, Andrew Yao, Gary Hawthorne, Perry Turnbull, Diane Messick, Pat Kartha, Frank Martinez, Guy Disimplico, James Pearson, David Sulauf, Maria DeCarlo and Michele Shedrik.

3. The term "Grantor Trust" means those trusts generally identified by the names GT 2000-1, GT 2000-2, GT 2000-3, GT 2000-4, GT 2001-1, GT 2001-2, GT 2001-3 and GT 2001-1A.

4. The term "Trustee" means Charles A. Stanziale, Jr., Esquire, as the Chapter 7 (and Chapter 11) Trustee for the Estate of Student Finance Corporation, as well as the

Trustee's employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

5.  The term "McGladrey" means McGladrey & Pullen, LLP, as well as its partners, employees, and representatives at the present time and, where applicable, during the time period relevant to this action.

6.  The term "AIU Insurance" means AIU Insurance Company, as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

7.  The term "Arthur Andersen" means Arthur Andersen LLP, as well as its parents, subsidiaries, affiliates, partners, employees, and representatives at the present time and, where applicable, during the time period relevant to this action.

8.  The term "Baker & Associates" means Virgil, Baker & Associates, Inc., as well as its parents, subsidiaries, affiliates, parents, officers, directors, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

9.  The term "Bankers Trust" means Bankers Trust Company, as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

10. The term "BDO" means BDO Seidman, LLP, as well as its parents, subsidiaries, affiliates, partners, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

11. The term "Berwyn Holdings" means Berwyn Holdings, Inc., as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

12. The term "brokers" means any insurance broker, insurance agent, or other similar professional having at any time any business relationship involving SFC, including without limitation T.E. Moor & Co. and International Benefits Group, Inc., as well as the parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives of any "broker," at the present time and, where applicable, during the time period relevant to this action.

13. The term "Eagle Funding" means Eagle Funding Capital Corporation, as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

14. The term "Finova" means Finova Group, Inc., as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

15. The term "FMB" means Freed Maxick & Battaglia, CPAs, P.C., as well as their partners, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

16. The term "FMSM" means Freed, Maxick Sachs & Murphy, P.C. and Freed, Maxick & Battaglia, CPA's, P.C., as well as their partners, employees, and

representatives at the present time and, where applicable, during the time period relevant to this action.

17. The term "Gagne" refers to W. Roderick Gagne, the individual and/or the partner of Pepper Hamilton, and/or any individual or entity relating to the Gagne family loans as defined in *Stanziale v. Pepper Hamilton, LLP*, 02-11620-JBR (Bank. D. Del.).

18. The term "Grant Thornton" means Grant Thornton LLP, as well as its partners, employees, agents, attorneys and representatives as well as any affiliates of Grant Thornton at the present time and, where applicable, during the time period relevant to this action.

19. The term "Loofbourrow" means Loofbourrow, Inc., as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

20. The term "Market Street" refers to Market Street Capital Corporation, as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

21. The term "MBIA" means MBIA Insurance Corporation, as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

22. The term "Nielsen Electronics" means Nielsen Electronics Institute Corporation, as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

23. The term "Pepper Hamilton" refers to Pepper Hamilton LLP, as well as its partners, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

24. The term "PNC" refers to PNC Bank, National Association, as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

25. The term "Solomon Smith Barney" means Solomon Smith Barney, Inc., as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

26. The term "SWH" means SWH Funding Corp. and Spectrum Funding Corporation LLC, as well as their parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

27. The term "students" means any individual enrolled at a truck school and/or any individual who is a party to a student loan, including without limitation, any signer, co-signer, co-maker, or other obligor under a student loan.

28. The term "truck schools" means any trucking, trade, or other educational institution having at any time any business relationship with SFC, including without limitation Nielsen Electronics, Hook Up Drivers, Thoroughbred Truck Driving School, Commercial Driver Institute, Inc., MTA Schools, Truck Driver Institute, Inc., Transport Training, Inc., MPIII Holdings, Inc., Alliance Corp. and Across America, Inc, as well as the parents, subsidiaries,

affiliates, officers, directors, employees, agents, attorneys and representatives of any "truck school" at the present time and, where applicable, during the time period relevant to this action.

29. The term "Wells Fargo" means Wells Fargo Bank Minnesota, National Association, as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

30. The term "Wilmington Trust" means Wilmington Trust Corporation, as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

31. The term "XL" means XL Insurance Ltd., as well as its parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys and representatives at the present time and, where applicable, during the time period relevant to this action.

32. The term "Audit or Accounting Report" means any report concerning SFC or its financial statements issued by any auditor, accountant, or other similar professional, including without limitation any Independent Accountant's Report, Audit Report, or report on Agreed-Upon Procedures or "AUPs."

33. The term "Credit Risk Insurance Policies" means any insurance issued or considered for issuance by Royal related to SFC. The term "Credit Risk Insurance Policies" includes, but is not limited to, the "SFC Policies" as that term is used in the First Amended Complaint in this matter, and includes any insurance policies or sub-policies, amendments, expansion, commutation, endorsement or renewal of any insurance policy related to SFC.

34.  The term "Risk Assessment Model" means any formula, calculation, algorithm, spreadsheet, or forecast used to project or predict the potential benefits or risks of issuing any credit risk insurance policy.

35.  The term "Servicer Report" has the same meaning as that term carries in the First Amended Complaint in this matter.

36.  The term "student loans" means any student loan originated, purchased or financed by SFC.

37.  The term "Transactions" refers to all SFC-related warehouse financing, revolving credit facilities, securitizations, bridge or other loans, whether consummated or unconsummated. The term "Transactions" includes, without limitation, (a) the Wilmington Trust and Market Street Capital Corp./PNC Bank warehouse credit facilities; (b) the 1996 securitization referred to in the Complaint; (c) the securitizations involving Grantor Trusts GT 2000-1, GT 2000-2, GT 2000-3, GT 2000-4, GT 2001-1, GT 2001-2, GT 2001-3, GT 2001-IA; (d) any actual or potential financing by SWH; and (e) the Spring 2002 promissory note involving Royal and SFC.

38.  The term "Related Royal Litigation" means all litigation in which Royal is a party arising out of Royal's relationship with Student Finance Corporation, including any appeal of such a matter, and including, without limitation:

- *Royal Indemnity Co. v. Franklin Career Services, Inc.*, 3:04-cv-00038-CRS (W.D. Ky.)
- *Wilmington Trust PA v. Royal Indemnity Co.*, 1:02-cv-1361-JJF (D. Del.);
- *Royal Indemnity Co. v. Commercial Driver Inst. Inc.*, 04-cv-107 (M.D. Tenn.);
- *MBIA Ins. Corp. v. Royal Indemnity Co.*, 1:02-cv-1294-JJF (D. Del.);
- *Royal Indemnity Co. v Pepper Hamilton*, 1:05-cv-165-JJF (D. Del.);

- *Royal Indemnity Co. v. T.E. Moor & Co.*, D167370 (58th Dist., Jefferson County, TX);
- *Stanziale v. Royal Indemnity Co.*, 1:04-cv-953-JJF (D. Del.);
- *Stanziale v. Royal Indemnity Co.*, 1:03-cv-507-JJF (D. Del.);
- *Stanziale v. Royal Indemnity Co.*, 04-adv-53306-JBR (Bankr. D. Del.);
- *Student Finance Corp. v. Royal Indemnity Co.*, 03-cv-507-SLR (D. Del.);
- *Student Finance Corp. v. Royal Indemnity Co.*, 02-adv-6803-LK (Bankr. D. Del.);
- *Nielsen Electronics Inst. v. Student Finance Corp.*, 99-285-MNS (D. Del.);
- *FDIC v. Student Finance Corp.*, 98-D-2703SFC (D. Co.);
- *SWH Funding Corp. v. Student Finance Corp.*, BER-L (N.J. Sup. Ct. 2002); and
- *SWH Funding Corp. v. Student Finance Corp.*, 2:02-cv-02464-FSH (D.N.J.)

39. The term "communications" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) regardless of form (e.g. email, letter, memo) including without limitation all correspondence.

40. As used herein the term "document" means any and all tangible things and documents, whether handwritten, typed, printed, e-mailed, taped, filmed, photostatted, copied or reproduced in any way, including but not limited to:

   a. External communications or interoffice communications, letters, telefaxes, telexes, e-mails, cables, telegrams, wires and memoranda;

   b. Reports, summaries, drafts, studies, minutes, notes, agendas and transcripts;

   c. Drawings and charts;

   d. Tape recordings and other reproductions of sound or voices;

   e. Photographs, films, videotapes, computer generated documents, recordings, e-mail, cassettes, recordings, microfiche and other reproductions;

   f. Contracts, agreements and other official documents and legal instruments;

g. Published material of any kind;

h. Travel reports and vouchers;

i. Ledgers, bills, orders, books, records, invoices, checks, receipts, confirmations, estimates, claims and files;

j. Notebooks, calendars, appointment books, diaries, scrapbooks, schedules and handwritten or other notes;

k. Working papers, sketches, drawings, pictures, plans, instructions, charts, papers, graphs, indices, catalogs, tabulations, data sheets or data processing cards; and

l. Books, bills, pamphlets, periodicals and published material of any kind.

41. The term "document" shall also include any draft or version of a document and all copies which are not identical to the original; all modifications or additions to any document, whether or not such copies or drafts are specifically mentioned in particular requests; any material recorded on verbal, graphic, computer, electronic, telecommunicative, or magnetic form, and any other form capable of being read, heard or otherwise understood; and any electronic data.

42. The term "electronic data" shall include, but not be limited to, metadata, and all data compilations from which information can be obtained through detection devices, including but not limited to original and non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations or highlighting of any kind) of mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program (including word processing documents, spreadsheets, database files (including records, fields and structural information), contact management and personal information data, HTML files, Internet history files and preferences, presentations, charts, graphs and outlines,

graphical image format ("GIF") files, calendar and scheduling information, computer system activity logs, arrays of information and all other information used or produced by any software), electronic mail or "email," operating systems, source code of all types, programming languages, liners and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts and any and all miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. "Electronic data" also includes any and all items stored on computer memory or memories, hard disks, floppy disks, CD-ROM discs, Bernoulli Boxes and their equivalents, magnetic tapes of all types and kinds, microfiche, punched cards, punched tape, zip drives, RAR drives, ARJ drives, personal storage devices, memory sticks, USB storage devices, computer chips (including but not limited to EPROM, PROM, ROM and RAM of any kind) or in any other vehicle for digital data storage or transmittal, including files, folder tabs, or containers and labels appended to or associated with each original and each copy.

43. The term "person" means any natural person or any business, legal or governmental entity or association.

44. The term "concerning" means referring or relating to, describing, evidencing, or constituting.

45. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

46. The use of the singular form of any word includes the plural, and the use of the plural form of any word includes the singular.

## INSTRUCTIONS

1. These requests apply to all documents in your possession, custody, or control, regardless of the location of such documents and regardless of whether such documents are held by any other person or entity, including without limitation your attorneys, representatives, or agents.

2. If any document or portion of any document requested herein is not produced based on a claim of attorney-client privilege, work-product protection, or any other privilege, identify:

   a. the place, date, and manner of preparation or other recordation of the document;

   b. the title of the document, subject matter of the document, and type of document (e.g., record, letter, memorandum, statement), including the number of pages, attachments, exhibits, and appendices;

   c. the author of the document, the author's position, the addressee(s), and all recipients of the document;

   d. the present custodian of the document;

   e. (i) the nature of the legal privilege claimed or other reason for withholding the document, and (ii) the factual basis for that claim of privilege or other reason for the withholding, including the facts establishing any claim of privilege and the facts showing that the privilege asserted has not been waived.

3. Each request shall be deemed to be continuing so as to require prompt supplemental responses if you obtain or discover additional information or documents called for by these requests between the time of responding to these documents requests and the time of any hearing or the time of trial in this matter.

4. Unless otherwise indicated, the time period applicable to these requests is January 1, 1996 to the present.

## DOCUMENTS REQUESTED

1. All documents and electronic data concerning SFC.

2. All documents and electronic data concerning the subject matter of this litigation, or the events or documents described in the First Amended Complaint in this matter ("FAC"), including but not limited to all documents described, quoted or referenced in the FAC.

3. All documents and electronic data concerning Royal's communications with SFC.

4. All documents and electronic data concerning Royal's internal communications related to SFC.

5. All documents and electronic data concerning Royal's external communications related to SFC with any person or entity, including but not limited to SFC, the brokers, the truck schools, the students, Wells Fargo, MBIA, Grant Thornton, McGladrey, FMB, FMSM, BDO, Michael Aquino, Jeff Westad, SWH, Pepper Hamilton, Gagne, PNC, Market Street, Wilmington Trust, Loofbourrow, the Trustee, Baker & Associates, Finova, Berwyn Holdings, Arthur Andersen, Solomon Smith Barney, Nielsen Electronics, AIU Insurance, Bankers Trust, XL and Eagle Funding.

6. All documents and electronic data concerning Royal's communications with any insurer or reinsurer concerning SFC, including but not limited to any attempts made by Royal to obtain insurance or reinsurance related to SFC and/or any notification sent by Royal to any insurer or reinsurer concerning SFC, and including but not limited to all responsive emails and any electronic data related to such emails.

7. All documents and electronic data concerning communications between or among SFC, the brokers, the truck schools, the students, Wells Fargo, MBIA, Grant Thornton,

McGladrey, FMB, FMSM, BDO, Michael Aquino, Jeff Westad, SWH, Pepper Hamilton, Gagne, PNC, Market Street, Wilmington Trust, Loofbourrow, the Trustee, Baker & Associates, Finova, Berwyn Holdings, Arthur Andersen, Solomon Smith Barney, Nielsen Electronics, AIU Insurance, Bankers Trust, XL and Eagle Funding concerning SFC or the subject matter or events described in the FAC.

8. All documents and electronic data concerning the brokers, the truck schools, the students, Wells Fargo, MBIA, Grant Thornton, McGladrey, FMB, FMSM, BDO, Michael Aquino, Jeff Westad, SWH, Pepper Hamilton, Gagne, PNC, Market Street, Wilmington Trust, Loofbourrow, the Trustee, Baker & Associates, Finova, Berwyn Holdings, Arthur Andersen, Solomon Smith Barney, Nielsen Electronics, AIU Insurance, Bankers Trust, XL and Eagle Funding concerning SFC.

9. All documents and electronic data concerning SFC's financial statements.

10. All documents and electronic data concerning SFC's reserves, including without limitation its school reserves, in-school reserves, post-graduation reserves and cash escrow reserve accounts.

11. All documents and electronic data concerning SFC's student loan programs, including without limitation the prime, subprime, four-year and/or career school programs.

12. All documents and electronic data concerning SFC's loan pools, including without limitation the assigned, unassigned and securitized pools.

13. All documents and electronic data concerning SFC's accounting policies, procedures, or practices, including but not limited to all Royal communications relating to SFC's accounting policies, procedures, or practices.

14. All documents and electronic data concerning any person or entity that provided audit or accounting services to SFC, including but not limited to McGladrey, FMB, FMSM, BDO, Dennis Halterman, Thomas Whelans, Michael Aquino, or Jeff Westad.

15. All documents and electronic data concerning any Audit or Accounting Reports.

16. All documents and electronic data concerning any Audit or Accounting Reports that Royal received, including but not limited to documents concerning Royal's actual receipt of such Audit or Accounting Reports, documents that identify the date each Audit or Accounting Report was received by Royal, as well as by whom they were sent, by whom they were received, from where they were sent and where they were received.

17. All documents and electronic data concerning Royal's reliance on any Audit or Accounting Reports, including but not limited to documents that identify by whom such Audit or Accounting Reports were reviewed or analyzed and how, the actions taken by such individuals following such review or analysis, and any communications concerning such review or analysis, including but not limited to all responsive emails and any electronic data related to such emails.

18. All documents and electronic data concerning Agreed Upon Procedures (AUPs) or draft AUPs related to SFC, including but not limited to all reports concerning such AUPs or draft AUPs, and all communications concerning such AUPs or draft AUPs, including but not limited to all responsive emails and any electronic data related to such emails.

19. All documents and electronic data concerning any AUPs or draft AUPs that Royal received related to SFC, including but not limited to documents concerning Royal's actual receipt of such AUPs or draft AUPs, documents that identify the date each AUP or draft

85. All documents and electronic data concerning "seasoning" payments as that term is used in the FAC.

86. All documents and electronic data concerning Kirk Monteverde, the individual discussed in ¶ 65 of the FAC.

87. All documents and electronic data concerning the allegations made in ¶ 66 of the FAC.

88. All documents concerning any audit, review or investigation of SFC conducted by Royal, the Trustee, the brokers or any other person or entity.

89. All documents and electronic data concerning Royal's retention of Grant Thornton, including but not limited to documents concerning any investigation or review performed by Grant Thornton related to SFC, documents obtained or reviewed by Grant Thornton concerning such investigation or review, all communications related to such investigation or review (including but not limited to all responsive emails and any electronic data related to such emails), and any reports or memoranda concerning such investigation or review.

90. All documents and electronic data concerning communications between any United States affiliate or subsidiary of Royal and Royal & Sun Alliance Insurance Group Plc. relating to SFC.

91. All documents and electronic data concerning any financial, operations, or strategic reports, studies, plans or analyses exchanged between any United States affiliate or subsidiary of Royal and Royal Sun Alliance Plc. during the years 1999 though and including 2002.

92. All documents and electronic data concerning the allegations made in ¶ 29 of the Complaint in *Student Finance Corporation v. Royal Indemnity Company*, 02-11620 (LK)

(Bank. D. Del.) ("SFC/Royal Action"), including but not limited to Royal discontinuing the business of issuing credit risk insurance in the United States, and any communications between Royal and its "parent in the United Kingdom."

93. All documents and electronic data concerning the allegations made in ¶ 33 of the SFC/Royal Action, including but not limited to Royal's February 2002 proposal to SFC that Royal "would consider providing credit risk insurance for another securitization if SFC agreed to borrow money from Royal to be used to make 'forbearance payments.'"

94. All documents and electronic data concerning the allegations made in ¶ 36 of the SFC/Royal Action, including but not limited to any SFC recovery plans and/or the Claims and Recovery Purchase Plan.

95. All documents and electronic data concerning any Related Royal Litigation, including but not limited to pleadings; subpoenas, interrogatories, requests for admission, or requests for production served by Royal in the Related Royal Litigation, and any responses thereto; interrogatories, requests for admission, or requests for production served on Royal in the Related Royal Litigation, and any responses thereto; depositions, and electronic copies of such, taken in the Related Royal Litigation; trial transcripts, including electronic copies of such, from any trial in the Related Royal Litigation; and all documents produced by or to Royal in the Related Royal Litigation.

96. All documents and electronic data concerning the February 11, 2000 discussion identified in *MP III Holdings, Inc.'s Second Amended Answer And Counterclaim* (August 16, 2005) ("MPIII") at ¶ 120.

97. All documents and electronic data concerning the March 6, 2000 teleconference and memorandum identified at MPIII ¶ 105.