# Exhibit A

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 440621 (D.Del.)
(Cite as: 2005 WL 440621 (D.Del.))

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
JURIMEX KOMMERZ TRANSIT G.M.B.H.;
Jurimex Kommerz Transit Agrar; and Arge IPC-Jurimex, Plaintiffs,
v.
CASE CORPORATION, Defendant.
No. Civ.A. 00-083 JJF.

Feb. 18, 2005.

Thomas C. Grimm, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, Daniel J. Kornstein, Daniel A. Cohen, and Lana Choi, of Kornstein Veisz Wexler & Pollard, LLP, New York, New York, for Plaintiff, of counsel.

David C. McBride, John W. Shaw, and Dawn M. Jones, of Young, Conaway, Stargatt & Taylor, LLP, Wilmington, Delaware, William E. Deitrick, and Michelle V. Dohra, of Mayer, Brown, Rowe & Maw, Chicago, Illinois, for Defendant, of counsel.

*MEMORANDUM OPINION*

FARNAN, J.

*1 Presently before me is the Motion To Compel Deposition Testimony (D.I.92) filed by Plaintiffs Jurimex Kommerz Transit G.M.B.H, Jurimex Kommerz Transit Agrar, and Arge IPC-Jurimex (collectively, "Jurimex").

Defendant Case Corporation ("Case") contends that there is also a pending issue of *forum non conveniens.* However, in its papers, Case continues to refer to D.I. 13 for this issue. D.I. 13 was Defendant's original Motion To Dismiss, which I granted. The Third Circuit affirmed the decision. Thus, there is no formal motion to dismiss pending at this time.

For the reasons discussed, Jurimex's Motion To Compel Deposition Testimony (D.I.92) will be granted in part and denied in part.

BACKGROUND

Plaintiff Jurimex Kommerz Transit G.M.B.H is incorporated in and has its principal place of business in Austria. It is a commodities and machinery broker that specializes in brokering deals between business concerns in Eastern Europe and those in Western Europe and the United States.

Plaintiff Jurimex Kommerz Transit Agrar is incorporated and has its principal place of business in Austria. It is a corporation established by Jurimex Kommerz Transit G.M.B.H for the purpose of entering into a partnership with a company called IP Consult.

Plaintiff Arge IPC-Jurimex is a partnership formed under the laws of Austria for the purpose of representing Defendant Case, a U.S.-based manufacturer of agricultural machinery, in connection with the sale of combines to Agro Industrial Corporation Golden Grain, Ltd. ("Golden Grain"), a company in Kazakhstan.

Defendant Case is a Delaware corporation with its principal place of business in Racine, Wisconsin.

On February 9, 2000, Jurimex filed a Complaint (D.I.1) alleging nine claims against Case for breach of a contract. Jurimex contends that Case cut Jurimex out of the transaction with Golden Grain, wrongfully depriving Jurimex of no less than $43 million in commissions and lost profits.

On April 14, 2000, Case filed a Motion To Dismiss (D.I.13). I heard oral argument on the motion on May 30, 2000.

On August 21, 2000, Case moved for a protective order, which I granted after a teleconference on September 13, 2000. I stated that I would leave any discovery motions pending while I decided Case's Motion To Dismiss.

On July 23, 2001, I issued an Order (D.I.44) granting Case's Motion To Dismiss and the case was closed. In the associated Memorandum Opinion (D.I.43), I dismissed the complaint pursuant to Rule 12(b)(7) and Rule 19. I held that Case's subsidiaries are necessary parties under Rule 19(a) because Jurimex's interactions were almost entirely with Case's subsidiaries, and not with the Case defendant. Further, I held that joining the Case subsidiaries

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 300-2   Filed 11/02/2006   Page 3 of 17

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 440621 (D.Del.)
**(Cite as: 2005 WL 440621 (D.Del.))**

would eliminate the basis of the Court's diversity jurisdiction and warrant dismissal of the action under Rule 12(b)(1). I did not address Defendant's *forum non conveniens* arguments.

I subsequently denied as futile a Motion To File An Amended Complaint (D.I.46) filed by Jurimex. Jurimex sought to add language proving agency within the context of a parent-subsidiary relationship on the part of Case.

*2 On March 26, 2002, Jurimex appealed these decisions to grant Case's Motion To Dismiss and to deny Jurimex's Motion To File An Amended Complaint. On June 14, 2002, Jurimex commenced an action in state court in Racine, Wisconsin, during the pendency of the Third Circuit appeal, in order to toll any applicable statute of limitations. The Wisconsin court has stayed that action pending a final determination of this Delaware action.

The Third Circuit reversed the denial of Jurimex's Motion To File An Amended Complaint, citing *E.I. DuPont De Nemours and Co. v. Rhone Roulenc Fiber and Resin Intermediates,* 269 F.3d 187, 198 (3d Cir.2001). That case holds that "[o]ne corporation whose shares are owned by a second corporation does not, by that fact alone, become the agent of the second company." Further, the Third Circuit held that discovery is necessary when an agency relationship is alleged. The Third Circuit affirmed my granting of the Motion To Dismiss, stating it was doing so because agency was never pled (D.I. 57 at 3). The Third Circuit made no mention of Case's *forum non conveniens* issue.

On remand, I allowed Juminex to file its Amended Complaint (D.I.46). The Amended Complaint asserts claims against Case as joint tortfeasor by virtue of its agency relationship with its subsidiaries, Case France, Case Europe, and Case Neustadt for (1) breach of contract and implied covenant of good faith and fair dealing; (2) breach of implied contract; (3) promissory estoppel; (4) quasi-contract/unjust enrichment/restitution; (5) tortious interference; (6) unfair competition and misappropriation; and (7) prima facie tort.

On June 23, 2004, I entered an Order (D.I.93) granting Jurimex's Motion To Compel Production Of Documents And Responses To Interrogatories (D.I.75). The Order compelled production of documents and information concerning agreements negotiated on Case's behalf by its European subsidiaries.

In the same Order (D.I.93), I granted Defendant's Motion To Compel Answers To Requests To Admit and limited interrogatories to 50 for each side and requests for admission to 50 for each side. Further, I ordered that discovery be limited in scope to Plaintiff's allegation of a principal-agency relationship between Case and its subsidiaries concerning the Golden Grain transaction.

On August 5, 2004, I heard Oral Argument with regard to Jurimex's Motion To Compel Deposition Testimony (D.I.92). The parties filed supplemental documents supporting their positions (D.I.106, 107).

PARTIES' CONTENTIONS
By its motion, Jurimex moves to compel Case to produce for deposition a Fed R. Civ. P. 30(b)(6) corporate designee and two individual witnesses, Patrice Loiseleur and Gerard Chiffert. The topics in the Rule 30(b)(6) deposition notice addressed to Case concern (1) the Golden Grain" deal (topics 1-5, 7, 9, 10); (2) related business dealings between Case and Jurimex or Golden Grain (topics 1, 3-5); (3) the authority of Case's subsidiaries' employees to act for Case (topics 6-8, 10); and (4) Case's prior discovery responses (topic 9). Jurimex contends that Case refuses to designate a witness for any noticed topic. Jurimex further contends that Patrice Loiseleur and Gerard Chiffert are executives of the subsidiaries who have firsthand knowledge of the events at issue.

*3 In response, Case contends that Jurimex's deposition notice seeks to improperly circumvent my prior ruling that Case's subsidiaries are indispensable parties. Case further contends that Jurimex's deposition notices improperly presume the existence of a principal-agent relationship between Case and its subsidiaries. Specifically, Case contends that it is now in the untenable position of producing witnesses from non-parties to this lawsuit (i.e. the subsidiaries). Case further contends that Jurimex cannot serve deposition notices on it for specific individuals who are not officers, directors, or managing agents of Case Corp.

DISCUSSION
The Federal Rules of Civil Procedure allow for a broad scope of discovery that is not limited to admissible evidence, but evidence that is reasonably calculated to lead to the discovery of admissible evidence. Fed.R.Civ.P. 26(b)(1). Rule 30(b)(6) provides that after receiving a notice of deposition, the corporation should "designate one or more officers, directors, or managing agents, or other

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 300-2   Filed 11/02/2006   Page 4 of 17

Not Reported in F.Supp.2d                                                                Page 3
Not Reported in F.Supp.2d, 2005 WL 440621 (D.Del.)
**(Cite as: 2005 WL 440621 (D.Del.))**

persons who consent to testify on its behalf." Fed.R.Civ.P. 30(b)(6). Additionally, the deponent has a "duty of being knowledgeable on the subject matter identified as the area of inquiry." *Alexander v. Fed. Bureau of Investigation,* 186 F.R.D. 148, 151 (D.D.C.1999).

In this case, on appeal, the Third Circuit cited *E.I. DuPont de Nemours and Co. v. Rhone Roulence Fiver and Resin Intermediates,* 269 F.3d 187, 198 (3d Cir.2001) for the proposition that, under Delaware law, proof of agency within the context of a parent-subsidiary relationship requires that the plaintiff "demonstrate that the agent was acting on behalf of the principal and that the cause of action arises out of that relationship." Further, the Third Circuit cited its decision in *Canavan v. Beneficial Finance Corp.,* 553 F.2d 860 (3d Cir.1977), for the proposition that "discovery is necessary when an agency relationship is alleged, thereby implicitly allowing allegations of agency to survive a facial attack." The Third Circuit did not discuss the *forum non conveniens* issue that Case contends is at issue.

Thus, I conclude that Case must produce for deposition one or more corporate witnesses that satisfy the requirements of Federal Rule of Civil Procedure 30(b)(6) by being prepared to testify with knowledge of the subsidiaries and Case's relationship with them.

With regard to compelling the depositions of Mssrs. Loiseleur and Chiffert, I will deny this part of the motion with leave to renew after Jurimex deposes Case's designated 30(b)(6) witnesses.

CONCLUSION

For the reasons discussed, I conclude that Case has not satisfied its burden under Rule 30(b)(6). Accordingly, the Motion To Compel Deposition Testimony (D.I.92) filed by Jurimex will be granted to the extent that Case must produce for deposition one or more corporate witnesses that satisfy the requirements of Federal Rule of Civil Procedure 30(b)(6). Further, the Motion To Compel Deposition Testimony (D.I.92) will be denied with leave to renew with regard to compelling the depositions of Mssrs. Loiseleur and Chiffert.

*4 An appropriate Order will be entered.

ORDER

At Wilmington, this 18th day of February 2005, for the reasons set forth in the Memorandum Opinion issued this date,

IT IS HEREBY ORDERED that the Motion To Compel Deposition Testimony (D.I.92) filed by Jurimex is *GRANTED* with regard to compelling for deposition one or more corporate witnesses that satisfy the requirements of Federal Rule of Civil Procedure 30(b)(6). The Motion To Compel Deposition Testimony (D.I.92) is *DENIED* with leave to renew with regard to compelling the depositions of Mssrs. Loiseleur and Chiffert.

Not Reported in F.Supp.2d, 2005 WL 440621 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 3666748 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief in Opposition to Defendant's Summary Judgment Motion (Oct. 28, 2005)Original Image of this Document (PDF)

• 2005 WL 2867858 (Trial Motion, Memorandum and Affidavit) Defendant Case Corporation's Brief in Support of its Motion for Summary Judgment and Motion to Dismiss Based upon the Doctrine of Forum Non Convendens (Sep. 29, 2005)Original Image of this Document (PDF)

• 1:00CV00083 (Docket) (Feb. 09, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit B

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1498916 (W.D.N.Y.)
(Cite as: 2004 WL 1498916 (W.D.N.Y.))

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
James LAFOREST, Henrietta Lafriner, Robert Lintz,
Ralph Miner, Laverne Spencer,
and Irene Wesolowski, individually and as a class of persons similarly
situated, Plaintiffs,
v.
HONEYWELL INTERNATIONAL INC., a
Delaware Corporation, Defendant,
v.
MOTOR COMPONENTS LLC., BAM Enterprises,
Inc., Mark IV Industries, Inc., and
Arvinmeritor, Inc., Third-Party Defendants.
No. 03-CV-6248T.

July 1, 2004.
Kenneth L. Wagner, Blitman & King LLP, Syracuse, NY, Niraj R. Ganatra, William A. Wertheimer, Jr., Catherine J. Tafton, Catherine J. Trafton, Daniel W. Sherrick, UAW International Union Legal Dept., Detroit, MI, for Plaintiffs.

Gregory J. McDonald, Harris Beach LLP, Pittsford, NY, Jennifer L. Neumann, Dykema Gossett PLLC, Detroit, MI, Tamsin J. Newman, Morgan, Lewis & Bockius LLP, Philadelphia, PA, for Defendant.

Andrew J. Lusk, Dykema Gossett, Bloomfield Hills, MI, Debra M. McCulloch, Dykema Gossett PLLC, Ann Arbor, MI, Joseph J. Costello, Morgan, Lewis & Bockius LLP, Philadelphia, PA, John W. Allen, Varnum, Riddering, Schmidt & Howlett, LLP, Kalamazoo, MI, for Defendants and ThirdParty Plaintiff.

Hugh C. Carlin, Gross, Shuman, Brizdle & Gilfillan, Buffalo, NY, for ThirdParty Plaintiff and ThirdParty Defendants.

Michael S. Holmes, Powers, Chapman, Troy, MI, Darren M. Malek, Anthony R. Comden, Brett A. Rendeiro, David E. Khorey, Elizabeth W. Skaggs, Joseph J. Vogan, Varnum, Riddering, Grand Rapids, MI, Steven K. Long, Lippes, Silverstein, Mathias & Wexler, Buffalo, NY, for ThirdParty Defendants.

DECISION & ORDER

PAYSON, Magistrate J.

BACKGROUND
*1 By order dated July 10, 2003, the above-captioned matter has been referred to the undersigned for the supervision of pre-trial discovery and the hearing and disposition of all nondispositive motions, pursuant to 28 U.S.C. § § 636(b)(A) and (B). (Docket # 209).

Plaintiffs, a group of retirees from two plants formerly owned by Bendix Corporation (hereinafter "Bendix"), initially filed this action seeking payment of retirement benefits guaranteed to them by Bendix in a 1976 guaranty agreement (hereinafter the "Guaranty"). The Guaranty issued at the time Bendix sold the two plants to Facet Enterprises (hereinafter "Facet"). Through the Guaranty, Bendix provided that qualified employees affected by the sale would continue to receive health and life insurance coverage at the then-existing levels. During the years following the Guaranty, both Bendix and Facet underwent numerous changes in ownership and control. Honeywell became the ultimate successor to Bendix, and Motor Components became the ultimate successor to Facet.

On August 7, 2003, United States District Judge Michael A. Telesca granted the plaintiffs' motion for summary judgment, finding that the Guaranty "clearly and unambiguously require[d] Bendix and its successors in interest to provide full payment of premiums for the retirement benefits at issue in the event that Facet, or its successors in interest, [did] not provide benefits at the specified level." (Docket # 242).

Honeywell has asserted third-party claims for reimbursement and indemnification against third-party defendants Motor Components LLC (hereinafter "Motor Components"), BAM Enterprises, Inc. (hereinafter "BAM"), Mark IV Industries, Inc. (hereinafter "Mark IV"), ArvinMeritor, Inc. (hereinafter "ArvinMeritor") and Purolator Products Company (hereinafter "Purolator"). In essence, Honeywell asserts that one or more of the third-party defendants is responsible

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF    Document 300-2    Filed 11/02/2006    Page 7 of 17

Not Reported in F.Supp.2d                                                                                                           Page 2
Not Reported in F.Supp.2d, 2004 WL 1498916 (W.D.N.Y.)
(Cite as: 2004 WL 1498916 (W.D.N.Y.))

for Facet's obligations under the 1976 Agreement. Thus, Honeywell contends that the responsible party must reimburse and indemnify Honeywell to the extent it is liable to the plaintiffs under the Guaranty.

Currently pending before this Court is Honeywell's motion to compel production of an indemnification agreement signed by three of the third-party defendants on April 14, 2003. (Docket # 277). For the following reasons, Honeywell's motion is granted.

### DISCUSSION

On January 17, 2003, ArvinMeritor filed a cross-claim against Mark IV, asserting claims for indemnification, breach of contract, fraud in the inducement, fraudulent misrepresentation, innocent misrepresentation and securities fraud. (Docket # 71). Purolator filed a similar cross-claim against Mark IV in the related action of *Baldwin, et. al. v. Motor Components, et. al.,* No. 03-CV-6228 (*Baldwin* Docket # 17). [FN1] These claims were voluntarily dismissed by the parties on May 1 and 5, respectively. (Docket # 154; *Baldwin* Docket # 42).

> FN1. The plaintiffs in *Baldwin, et. al. v. Motor Components, et. al.* are also Bendix retirees. These plaintiffs, however, were not eligible for the benefits provided for in the 1976 Guaranty because they had less than ten years of credited service at that time. Instead, the plaintiffs contended that they were promised continued insurance benefits at the level of benefits provided for in the collective bargaining agreement that was in effect at the time they chose to retire. 03-CV-6228.

Honeywell, believing that an indemnification agreement had been executed among ArvinMeritor, Mark IV and Purolator in conjunction with the dismissal of the cross claims, requested discovery of all documents relating to the dismissal. (Affidavit of Tamsin Newman, dated Sept. 8, 2003, Ex. A). In response, the third-party defendants produced a copy of a joint defense agreement executed by the parties. The third-party defendants [FN2] also acknowledged that an indemnification agreement (hereinafter the "Agreement") existed; however, they objected to its production. According to the third-party defendants, the Agreement is "not 'relevant to the claim[s] or defense[s]' of Honeywell or any other party to this action." (Docket # 299). Moreover, they claim that the Agreement should be shielded from discovery by the attorney-client privilege, the "common interest" rule and the work product doctrine. Finally, the third-party defendants contend that the Agreement should be kept confidential to ensure the secrecy of the three companies' settlement terms. (Docket # 299).

> FN2. In this opinion, the "third-party defendants" refer only to ArvinMeritor, Mark IV and Purolator, the parties to the indemnification agreement.

*2 The threshold requirement of discoverability under the Federal Rules of Civil Procedure is whether the information sought is "relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). To be discoverable, the information "need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The relevance standard is thus commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (citation omitted). *See Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine,* 951 F.2d 1357, 1367 (2d Cir.1991) (parties entitled to discovery of any matter that appears "reasonably calculated to lead to the discovery of admissible evidence"); *Morse/Diesel, Inc. v. Fid. and Deposit Co. of Maryland,* 122 F.R.D. 447, 449 (S.D.N.Y.1988) (term "reasonably calculated" in Rule 26(b)(1) means "any possibility that the information sought may be relevant to the subject matter of the action") (internal quotations omitted).

Here, the Agreement has been submitted to this Court for *in camera* review. Based upon that review, I find that the Agreement relates to the corporate relationships among the third-party defendants and the parties' interpretations of their obligations under a 1999 agreement, pursuant to which Mark IV sold to ArvinMeritor all of the stock of Purolator. I find that such information is relevant to Honeywell's claim that one of the third-party defendants is responsible for Facet's obligations under the 1976 Guaranty. Plainly, Honeywell is entitled to disclosure of information concerning the relationship between the third-party defendants, including information concerning business transactions among them, because such information may bear on which company succeeded to or assumed Facet's liabilities and obligations.

Instructive on this issue is the case of *Bank Brussels Lambert v. Chase Manhattan Bank,* (*Bank Brussels*

Case 1:05-cv-00165-JJF   Document 300-2   Filed 11/02/2006   Page 8 of 17

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 1498916 (W.D.N.Y.)
(Cite as: 2004 WL 1498916 (W.D.N.Y.))

*I*), 1996 WL 71507, *5 (S.D.N.Y.1996). In that case, the plaintiff, Bank Brussels, and the defendant, Chase Manhattan Bank, (hereinafter "the Banks") entered into a settlement agreement and related joint prosecution/defense agreement, releasing claims against one another and agreeing to pursue jointly claims against other parties. Ernst & Young, a third-party defendant, served discovery requests upon the Banks seeking disclosure of the settlement documents. The Banks objected to such production. The court, upon motion by Ernst & Young, ordered disclosure of both the settlement agreement and the joint prosecution agreement, finding that they were relevant under Rule 26. Specifically, the court held that "[a] party does not have to make any particularized showing in order to obtain settlement documents in the discovery stage. The materials sought meet the relevance standard of Rule 26 and must be produced, in the absence of some applicable privilege." 1996 WL 71507 at *6, *See also Griffin v. Mashariki,* 1997 WL 756914, *1 (S.D.N.Y.1997) ("[s]ettlement-related information, including settlement agreements, are governed by [Rule 26] and are discoverable without a heightened showing of relevance"); *Collister Alley Music, Inc. v. Warner Bros. Records Inc.,* 1997 WL 198081, *1 (S.D.N.Y.1997) ("[s]ettlement agreements are discoverable; no heightened showing of relevance need be made"). Accordingly, the question remaining before this Court is whether, despite its relevance to this action, the indemnification agreement entered into by the third-party defendants and requested by Honeywell is protected from discovery by one of the asserted privileges.

*3 A. Common Interest Rule and Attorney-Client Privilege: The third-party defendants contend that even if the Agreement is discoverable, "it [is] privileged under the attorney-client privilege and its corollary, the 'joint defense' privilege or 'common interest' rule." (Docket # 299 at 4). This Court disagrees.

According to the Second Circuit:
The joint defense privilege, more properly identified as the "common interest rule," has been described as an extension of the attorney client privilege. It serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel.
*United States v. Schwimmer,* 892 F.2d 237, 243 (2d Cir.1989) (citations omitted). The privilege protects communications if they are made both in the course of an ongoing common enterprise and with intent to further such enterprise. *Id.* Furthermore, because the joint-defense privilege is an extension of the attorney-client privilege, the burden of proof rests upon the party asserting it. *See id.* at 244; *see also von Bulow v. von Bulow,* 811 F.2d 136, 144 (2d Cir.), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987).

The attorney-client privilege does not apply to all communications involving an attorney, but rather, it attaches:
(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.
*In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983,* 731 F.2d 1032, 1036 (2d Cir.1984) (quoting *United States v. Bein,* 728 F.2d 107, 112 (2d Cir.1984)). The protection of the privilege, of course, "extends only to communications and not to facts." *Upjohn v. United States,* 449 U.S. 383, 395, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (internal quotation omitted). While a client may refuse to answer questions regarding what it said or wrote to its attorney, it may not refuse to disclose relevant facts "merely because [it] incorporated a statement of such fact into [its] communication to [its] attorney." *Id.* at 396 (quoting *Philadelphia v. Westinghouse Elec. Corp.,* 205 F.Supp. 830, 831 (E.D.Pa.1962)); *see also Florentia Cont. Corp. v. Resolution Trust Corp.,* 1993 WL 127187, *5 (S.D.N.Y.1993) (attorney-client privilege does not protect "underlying facts embodied in a communication between attorney and client").

Judged on this record, the Agreement in this case does not satisfy the requirements of the attorney-client privilege. The Agreement here represents more of "an understanding among adversaries," than among parties with identical or common legal interests. *Bank Brussels I,* at *5; *see also Bank Brussels Lambert v. Chase Manhattan Bank, (Bank Brussels II),* 1996 WL 91636, *2 (S.D.N.Y.1996) (privilege inapplicable because defendants "were not in privity with each other even [though] they were not actually adverse in the sense that they were opposing parties in the lawsuit"). At the time the Agreement was signed, the executing parties had asserted and still maintained claims against one another. Those claims were not dismissed until

Case 1:05-cv-00165-JJF    Document 300-2    Filed 11/02/2006    Page 9 of 17

Not Reported in F.Supp.2d                                                                 Page 4
Not Reported in F.Supp.2d, 2004 WL 1498916 (W.D.N.Y.)
(Cite as: 2004 WL 1498916 (W.D.N.Y.))

approximately two weeks later.

*4 Moreover, as in *Bank Brussels I,* this Court cannot discern any privileged communications that may be reflected in the settlement agreement; nor do the third-parties identify any particular provisions of the agreement that they maintain reflect such communications. Rather, they contend that the agreement "outline[s] a common legal strategy [among them] in response to this suit." (Docket # 299 at 5). Having reviewed the Agreement, this Court finds such characterization inappropriate. It does not outline, reveal or suggest a legal strategy for their defense to Honeywell's claim beyond the simple fact that the third-party defendants have entered into a joint defense agreement--a fact that is neither privileged, nor secret; the substance or details of such joint defense are not disclosed in the agreement. [FN3] Accordingly, I conclude, as did the court in *Bank Brussels I* that:

> FN3. I find that there exists one narrow provision of the agreement that may be interpreted to reflect a litigation strategy. Specifically, I find that the second and third sentences of paragraph 6 should be redacted from the copy of the Agreement produced.

> [The indemnification agreement] may serve to establish that the relationship of attorney to client exists for purposes of the joint prosecution of the case and therefore shield some subsequent communications in furtherance of the joint enterprise, but does not itself attain the level of privileged communications.
> *Bank Brussels I,* 1996 WL 71507 at *5.

That privileged communications between the parties are contemplated in the future--as the parties' relationship changes from adversarial to cooperative-- is reflected in the terms of the indemnification agreement. The Agreement provides that within ten days of the execution of the Agreement, the parties will enter into a joint defense agreement, "which shall provide for, among other things, the preservation of the attorney-client and work-product privileges, and the safeguarding of the confidentiality of such information provided by the parties in connection with the representation." (Indemnification Agreement, ¶ 6).

As agreed, the third-party defendants did execute a joint defense agreement, a copy of which bas been produced to Honeywell, but not until a day *after* the indemnification agreement was executed. Although a joint defense agreement need not be reflected in writing in order to protect privileged communications, *see e.g., Lugosch v.. Congel,* 219 F.R.D. 220, 237 (N.D.N.Y.2003), the language of the indemnification agreement and the joint defense agreement appears to protect privileged communications to occur in the future, rather than communications that have already occurred. [FN4] In sum, I find that no privileged communications are conveyed by the third-party defendants through the indemnification agreement and that the attorney-client privilege thus does not apply.

> FN4. The copy of the joint defense agreement provided by the third-party defendants to this Court contains a provision that states:
> The substance of any communication from _____ forward between or among the [third-party defendants] and any of their counsel in the Action or otherwise, whether such communication is in oral or written form ... shall be treated and maintained as privileged and confidential communications in the joint defense of their respective clients.
> (Joint Defense Agreement, ¶ A). The commencement date in the executed agreement provided to the Court is blank, supporting the interpretation that the privileged communications were expected to occur in the future.

B. Work Product Doctrine: The third-party defendants also claim that the Agreement is protected by the broader work product doctrine. They contend that this doctrine is applicable because the Agreement was prepared in connection with this litigation and Honeywell has failed to demonstrate a substantial need for the Agreement. (Docket # 299).

*5 According to the Second Circuit:
The attorney work product doctrine, now codified in part in Rule 26(b)(3) of the Federal Rules of Civil Procedure ... provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or trial. Both "distinct from and broader than the attorney-client privilege," *United States v. Nobles,* 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), the work product doctrine permits discovery of "documents and tangible things" prepared by or for counsel in anticipation of civil litigation "only upon a showing that the party seeking discovery has substantial need of the materials ... and that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                  Page 5
Not Reported in F.Supp.2d, 2004 WL 1498916 (W.D.N.Y.)
**(Cite as: 2004 WL 1498916 (W.D.N.Y.))**

party is unable without undue hardship to obtain the substantial equivalent of the materials by other means[.]" Fed.R.Civ.P. 26(b)(3).
*In re Grand Jury Subpoenas Dated March 19, 2002 and Aug. 2, 2002,* 318 F.3d 379, 383 (2d Cir.2003); *see also Hickman v. Taylor,* 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (work product doctrine prevents "unwarranted inquiries into files and mental impressions of an attorney").

The Agreement in this case, however, does not fall within the protection of the work product doctrine. In *Bank Brussels I,* the court rejected the conclusion that settlement documents, similar to those at issue here, were protected as attorney work product. 1996 WL 71507 at *6. Specifically, the court held that:

> Settlement documents would appear to fail as work-product since, as an initial matter, they are not collected or prepared in preparation for possible litigation. Instead they terminate the litigation between the parties thereto. More importantly, the documents do not involve an invasion of the lawyers' files. Settlements, by their very nature, are not constrained by the litigation position of either party. The documents evidencing such compromises are not protected by the privilege.

*Id.* (internal quotation omitted). [FN5]

> FN5. In *Bank Brussels II,* the court subsequently modified this holding and determined that certain narrow provisions of the agreement were covered by the work product doctrine because they concerned strategies of the parties for future settlements with other parties. 1996 WL 91636 at 1-2. Except for the two sentences of paragraph 6, no such strategies are revealed in the Agreement before this Court.

As in *Bank Brussels I,* the indemnification agreement signed by the third-party defendants here was executed pursuant to an agreement to terminate the cross-claims among the parties. As the third-party defendants conceded, the Agreement was drafted "for the purpose of resolving the claims between and among those companies." (Docket # 299 at 5). Even assuming its preparation also contemplated the continuation of the litigation between Honeywell and the third-party defendants, the Agreement does not outline, contrary to the third-party defendants' contention, "a common legal strategy for the three to take in response to this suit." (*Id.*). As previously discussed, other than two sentences in paragraph 6 of the Agreement which should be redacted, neither the substance nor the details of any litigation strategies are revealed; nor does the Agreement reveal the thoughts or mental impressions of counsel. Instead, it merely reflects a mutual understanding of cooperation. Accordingly, I find that the Agreement is not protected from disclosure by the work product doctrine.

*6 C. Confidentiality of Agreement: The third-party defendants' final basis for refusing to disclose the Agreement is that disclosure would violate the parties' interest in maintaining the confidentiality of their settlement. [FN6]

> FN6. Curiously, in their Reply, the third-party defendants seek to disavow their prior representation that the Agreement was executed "to resolve the claims asserted against Mark IV by ArvinMeritor." (Docket # 299 at 7). In the Reply, they argue that is not a complete settlement of the cross-claims "or any kind of settlement." (Docket # 319 at 2). Of course, if the Agreement does not constitute part of a settlement, then the policy considerations of Rule 408 of the Federal Rules of Evidence are not implicated.

The "secrecy of settlement terms ... is a well-established American litigation practice." *Palmieri v. New York,* 779 F.2d 861, 865 (2d Cir.1985) (quoting *In re Franklin Nat'l Bank Sec. Litig.,* 92 F.R.D. 468, 472 (E.D.N.Y.1982), *aff'd sub nom. Fed. Deposit Ins. Corp. v. Ernst & Ernst,* 677 F.2d 230 (2d Cir.1982)). Rule 408 of the Federal Rules of Evidence provides that:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.... This rule also does not require exclusion when the evidence is offered for another purpose such a proving bias or prejudice of a witness....

Fed.R.Evid. 408.

The third-party defendants' reliance upon Rule 408 is misplaced. Rule 408 generally bars settlement documents from admission into evidence. As stated above, however, discovery under Rule 26 is not limited only to admissible evidence, but also includes that which may reasonably lead to admissible evidence. *See* Fed. R. Civ. Pro. 26; *Bank Brussels I,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF    Document 300-2    Filed 11/02/2006    Page 11 of 17

Not Reported in F.Supp.2d                                                                                           Page 6
Not Reported in F.Supp.2d, 2004 WL 1498916 (W.D.N.Y.)
(Cite as: 2004 WL 1498916 (W.D.N.Y.))

1996 WL 71507 at * 2; *Alcan Int'l Ltd. v. S.A. Day Mfg. Co.,* 179 F.R.D. 403, 404 (W.D.N.Y.1998) (Rule 408 "limits the introduction at trial of evidence regarding settlement negotiations, not the discoverability of the evidence"); *Santrayll v. Burrell,* 1998 WL 24375, *2 (S.D.N.Y.1998) (Rule 408 "applies only to admissibility of evidence, not to discovery"); *Tribune Co. v. Purcigliotti,* 1996 WL 337277, *1 (S.D.N.Y.1996) ("Rule 408 neither governs nor precludes the discovery of settlement-related materials"; court directs disclosure of settlement agreement, finding it relevant, reasonably calculated to lead to the discovery of admissible evidence, and not privileged); *Morse/Diesel, Inc. v. Fid., and Deposit Co.,* 122 F.R.D. 447, 449 (S.D.N.Y.1988) (Rule 408 applies only to the admissibility of evidence relating to settlement negotiations and does not protect such evidence from discovery); *City of Wichita v. Aero Holdings, Inc.,* 192 F.R.D. 300, 301-02 (D.Kan.2000) ("[e]ven matter related to settlement negotiations, although barred by Fed.R.Evid. 408 to prove liability at trial, may still be discoverable under Rule 26 if the information sought is 'reasonably calculated' to lead to admissible evidence").

The intent of Rule 408 is to promote public policy favoring compromise and the settlement of disputes. Fed.R.Evid. 408 advisory committee notes. The Rule recognizes that parties may be less likely to make settlement offers if those offers may later be used as evidence at trial. Thus, the Rule promotes the non-judicial resolution of disputes by making such offers inadmissible. *Bank Brussels I,* 1996 WL 71507 at *3. Accordingly, "[t]he policy behind Rule 408[ ] does not require any special restriction on Rule 26 because the discovery rules do not affect admissibility." *Id.*

*7 Finally, the parties' intentions at the time the Agreement was signed are not controlling. The third-party defendants argue that the disclosure of the Agreement would violate their interest in maintaining the confidentiality of their settlement. However, the mere fact that the third-party defendants designated their indemnification agreement as confidential does not shield it from discovery. *Tribune Co. v. Purcigliotti,* 1996 WL 337277 at *3; *see Weissman v. Fruchtman,* 1986 WL 15669, *19 (S.D.N.Y.1986) (parties' intention that agreement remain confidential is not controlling). In sum, despite the third-parties' desire to maintain its confidentiality, the Agreement is not privileged, but it is relevant and reasonably calculated to lead to the discovery of admissible evidence. *See Tribune Co.,* 1996 WL 337277 at *3.

Judged on this record, I find that the third-party defendants have failed to satisfy their burden of demonstrating that the Agreement should be protected from discovery. Thus, Honeywell's motion to compel discovery of the Agreement is granted.

*CONCLUSION*

For the foregoing reasons, Honeywell's motion to compel production of the indemnification agreement signed by ArvinMeritor, Mark IV and Purolator on April 14, 2003 (Docket # 277) is GRANTED.

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2004 WL 1498916 (W.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 6:03cv06248 (Docket) (May. 27, 2003)

END OF DOCUMENT

# Exhibit C

Westlaw.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 71507 (S.D.N.Y.)  
**(Cite as: 1996 WL 71507 (S.D.N.Y.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.  
BANK BRUSSELS LAMBERT, et al. Plaintiffs,  
v.  
The CHASE MANHATTAN BANK, N.A., et al.  
Defendants and Third-Party Plaintiffs,  
v.  
ERNST & YOUNG, et al., Third Party Defendants.  
The CHASE MANHATTAN BANK, N.A., et al.  
Plaintiffs,  
v.  
ERNST & YOUNG, a Partnership, et al., Defendants.  
Nos. 93 Civ. 5298 (LMM)(RLE), 93 Civ. 8270 (LMM)(RLE).

Feb. 20, 1996.

MEMORANDUM OPINION AND ORDER

ELLIS, United States Magistrate Judge:

*1 Before the court is Ernst & Young's letter request to compel The Chase Manhattan Bank, N.A. ("Chase"), Banque Indosuez ("BIS") and Swiss Bank Corporation ("Swiss Bank") (collectively, the "Banks") to disclose documents relating to a settlement among the Banks. For the reasons which follow, the request is GRANTED.

I. BACKGROUND

On November 17, 1994, the Banks entered a "Settlement Agreement" and a related "Joint Prosecution/Defense Agreement," releasing claims against one another in these proceedings and agreeing to jointly pursue claims against other parties. Ernst & Young served requests for the settlement documents on Chase, BIS and Swiss Bank on June 2, 1995. On July 25, 1995, the Banks responded by refusing to produce the requested documents.

On August 24, 1995, by letter to this court, Ernst & Young objected to the Banks' refusal to produce copies of documents evidencing the settlement, arguing that such documents are discoverable under Rule 26(b) of the Federal Rules of Civil Procedure.

On August 28, 1995, Chase, by its counsel, objected to production of the settlement documents. Chase argued that "(a) Ernst & Young's request should be addressed by way of motion, (b) the standard governing disclosure of the documents is a 'particularized showing' of heightened relevance, © Ernst & Young has not made a particularized showing and, (d) portions of the documents contain privileged information." Mem. of Pl. Chase on Standard Governing Discovery of Settlement Agreement, at 4-5 (footnote omitted).

II. DISCUSSION

A. *The Need for Formal Motion*

These consolidated cases have generated substantial written submissions by the parties. Not every dispute should be occasion for broadening the record with a formal motion. The concern of the court is that the issue be appropriately joined, that the parties discharge their duty to confer in good faith and that an actual dispute exist. The court, however, in its discretion, will impose limitations on the written submissions addressing these disputes.

B. *Standard for Discovery of Settlement Materials*

1. The Banks' Position

Chase urges the court to apply a heightened standard to discovery of the settlement documents at issue here. *Bottaro v. Hatton Associates,* 96 F.R.D. 158 (E.D.N.Y. 1982). In *Bottaro,* the court held that the public policy favoring settlements, embodied in Rule 408, Federal Rules of Evidence, requires some particularized showing of a likelihood that admissible evidence will be generated by the disclosure of the terms of a settlement agreement. Chase asserts that courts in the Southern District have followed *Bottaro* and approved the use of the "particularized showing" standard. *See, e.g., Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Md.,* 122 F.R.D. 447 (S.D.N.Y. 1988); *Morse/Diesel, Inc. v. Trinity Industries, Inc.,* 142 F.R.D. 80 (S.D.N.Y. 1992); *Olin v. Ins. Co. of N. Am.,* 603 F. Supp. 445 (S.D.N.Y. 1985).

2. Ernst & Young's Position

*2 Ernst & Young argues that the liberal standards of Rule 26(b)(1) permit broad discovery of relevant documents, that no special showing is required for settlement documents and that the settlement papers

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  Page 2
Not Reported in F.Supp., 1996 WL 71507 (S.D.N.Y.)
**(Cite as: 1996 WL 71507 (S.D.N.Y.))**

are relevant to the subject matter of this lawsuit. Relying on *Bennett v. La Pere,* 112 F.R.D. 136 (D.R.I. 1986), Ernst & Young contends that settlement documents deserve no special treatment under Rule 26. *Bennett* criticizes *Bottaro's* "heavy reliance" on Evidence Rule 408 and indicates that the policy underlying Rule 408 does not apply "when a settlement [has been] achieved." 112 F.R.D. at 139-40. Moreover, Ernst & Young asserts that two decisions in the Southern District subsequent to *Bottaro,* including one cited by Chase, have rejected the "particularized showing" requirement. *See Morse/Diesel, Inc. v. Trinity Industries, Inc.,* 142 F.R.D. 80 (S.D.N.Y. 1992); *Securities and Exchange Comm'n v. Downe,* No. 92 Civ. 4092, 1994 WL 23141 (S.D.N.Y. Jan. 27, 1994).

*3. Discoverability Under Federal Rules*

We begin our analysis with the general provision governing discovery, Rule 26 of the Federal Rules of Civil Procedure. Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action ...." In this context, relevance is defined broadly to include any materials which "appear [[[]] reasonably calculated to lead to the discovery of admissible evidence." *See, e.g., Daval Steel Products v. M/V Fakredine,* 951 F.2d 1357, 1367 (2d Cir. 1991); *Martin v. Valley National Bank of Arizona,* 140 F.R.D. 291, 300 (S.D.N.Y. 1991). In the absence of any other considerations, documents related to the subject matter of the lawsuit fall within the scope of the rule.

Chase nevertheless argues that Rule 408, Federal Rules of Evidence, provides just such a restraint. Rule 408 limits the admissibility of conduct or statements during settlement negotiations. The rule states, in pertinent part:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.... This rule also does not require exclusion when the evidence is offered for another purpose such as proving bias or prejudice of a witness ...

Chase reasons that Rule 408's protection for settlement materials in the evidence context requires a heightened review of requests in the discovery context.

Chase reads too much into the effect of Rule 408 on the discovery process. While Rule 408 bars the admission of settlement documents for some purposes, Rule 26, by its very terms, is not limited to "admissible evidence." Moreover, even Rule 408 does not totally bar admission of such materials. Rather, admission of settlement matter is not allowed on the issues of liability and damages. Admission is specifically provided for other purposes, including the showing of bias or prejudice.

*3 More importantly, Chase misperceives the policy underlying Rule 408. The rule is not designed to lock away settlement documents, forever shielding them from view by those not party to the agreement. While it is true that the rule seeks to encourage the settlement process, it accomplishes that purpose not by making the settlement information unavailable, but by limiting abusive use of positions taken during the process. The rule insures that offers of compromise will not have intrinsic evidentiary value. The rule recognizes that in the give and take of settlement negotiations offers and concessions are made which are inconsistent with the legal and factual positions maintained by the parties. The rule recognizes that parties will be discouraged from making settlement offers if those offers may be used as evidence at trial. The rule thus fosters non-judicial resolution of disputes because compromises made during the settlement process will not later surface to haunt the parties as substantive evidence. [FN1] The policy behind Rule 408 thus does not require any special restriction on Rule 26 because the discovery rules do not affect admissibility.

As the Advisory Committee makes clear, "the rule excludes only when the purpose is proving the validity or invalidity of the claim or its amount ...." Notes of Advisory Committee on 1972 Proposed Rules. In general, settlement documents will not be admissible on these issues because the party "may be motivated by a desire for peace rather than from any concession of weakness of position." *Id.* On the other hand, "evidence otherwise discoverable [will not be excluded] merely because it is presented in the course of compromise negotiations." Notes of Conference Committee, House Report No. 93-1597. The bottom line is that Rule 408 does not require any special modification of discovery decisions. The test under Rule 26 is not whether the information itself is admissible, but whether it "may lead to evidence admissible at trial." *Securities and Exchange Comm'n v. Downe,* No. 92 Civ. 4092, 1994 WL 23141 (S.D.N.Y. Jan. 27, 1994), at *6.

*C. Particularized showing in this case*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 71507 (S.D.N.Y.)  
**(Cite as: 1996 WL 71507 (S.D.N.Y.))**

Page 3

### 1. Set-off under New York Law

Notwithstanding its position that no particularized showing is required, Ernst & Young asserts that the settlement documents are specifically relevant. According to Ernst & Young, it is entitled to a reduction of the claims of Swiss Bank and BIS in an amount equal to at least the value of any consideration given by Chase to each bank in exchange for the releases Chase received. New York General Obligations Law 15-108(a). [FN2] Ernst & Young claims that the settlement documents will establish whether Swiss Bank and BIS received any consideration for releasing Chase. If they did receive consideration, Ernst & Young argues that the documents sought are likely to contain dispositive information concerning the amount by which the claims asserted by Swiss Bank and BIS must be reduced. Chase replies that BIS and Swiss Bank received no payments from Chase in exchange for the releases in the settlement. It therefore maintains that Ernst & Young's reliance on § 15-108(a) of the General Obligations Law is misplaced. Ernst & Young nevertheless maintains that disclosure under § 15-108(a) is still required and will allow it to assess the value of he non-monetary consideration.

*4 Ernst & Young's reliance on this section of the General Obligations Law is unavailing. The section does not mention non-monetary consideration. On its face, the section appears to refer only to specific monetary payments. In any case, the potential impact of § 15-108(a) could be addressed by merely requiring disclosure of the consideration, if any, for the release and would not require general disclosure of the settlement documents. Ernst & Young fails to make a "particularized showing" on this basis.

### 2. Bias and Prejudice

Finally, Ernst & Young argues that the settlement documents are admissible under Rule 408 to show bias or prejudice on the part of Swiss Bank and BIS witnesses testifying about Chase, and of Chase witnesses testifying about Swiss Bank or BIS. On the bias issue, Chase argues that the fact that there is a settlement and a joint prosecution agreement is sufficient information for Ernst & Young's alleged purpose and that inquiry into the details of the agreements is unnecessary and not relevant.

While it is true that documents produced during the settlement process may be admitted on the issue of bias, Ernst & Young fails to demonstrate the actual documents add anything to the fact that an agreement exists. The Banks readily admit that they have joined together to pursue certain claims. Ernst & Young has failed to show that the *details* of the settlement meet the "particularized showing" standard.

### D. *Applicability of Privileges*

### 1. Attorney-Client Privilege

Finally, Chase claims that portions of the settlement documents "contain the terms of the Banks' ongoing, common defense strategy and are subject to the joint defense privilege." See *United States v. Schwimmer,* 892 F.2d 237, 243 (2d Cir. 1989). Such a joint defense privilege, if it applies, is based on the "common interest rule." *Id.*

The common interest rule is an extension of the attorney-client privilege. *Id.* The rule recognizes that when multiple parties share a legal interest, there is a need to protect the flow of information among the parties and their counsel engaged in the common enterprise. It thus protects confidential communications from one party to an attorney for another party when the parties have embarked on a common defense strategy or effort. "Only communication made in the course of [the] ongoing common enterprise and intended to further the enterprise are protected." *Id.* Moreover, as an extension of the attorney-client privilege, "[t]he burden of establishing the ... privilege, in all its elements, always rests upon the person asserting it." *Id.* at 244; *von Bulow v. Von Bulow,* 811 F.2d 136, 144 (2d Cir.), *cert denied,* 481 U.S. 1015 (1987) (quoting *In re Grand jury Subpoena,* 750 F.2d 223, 224 (2d. Cir. 1984)).

The attorney-client privilege does not apply simply because an attorney is involved in the communication. The purpose of the privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn v. United States,* 449 U.S. 383, 389 (1981). The privilege attaches

> *5 (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected(7) from disclosure by himself or by the legal advisor, (8) except the protection be waived ....

*In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1036 (quoting *United States v. Bein,* 728 F.2d 107, 112 (2d Cir 1984)). The three essential components of the privilege are: (1) a confidential

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.  
Not Reported in F.Supp., 1996 WL 71507 (S.D.N.Y.)  
**(Cite as: 1996 WL 71507 (S.D.N.Y.))**

Page 4

communication (2) by a client to his attorney (3) for the purpose of obtaining legal advice.

The privilege thus protects confidential communications to an attorney when the attorney is acting as an attorney. See, *e.g., In Re Grand Jury Subpoena Duces Tecum Dated September 15, 1983,* 731 F.2d 1032, 1037 (2d Cir. 1984). The privilege protects the communication between client and attorney, not the facts which are communicated to the attorney:

> The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Upjohn,* 449 U.S. at 396 (quoting *Philadelphia v. Westinghouse Electric Corp.,* 205 F. Supp. 830, 831 (E.D.Pa. 1962). *See also, Florentia Cont. Corp. v. Resolution Trust Corp.,* 1993 WL 127187, at *5, 1993 U.S. Dist. LEXIS 5275, at 14 (S.D.N.Y.) ([U]nderlying facts embodied in a communication between attorney and client ... are not themselves protected from disclosure.")

Applying these principles, the joint prosecution agreement does not meet the requirements of the attorney-client privilege. The agreement is an understanding among adversaries. No privileged communication is conveyed by the parties involved with the document. No legal advice is sought or given. The Banks simply agree to work together. At best, the agreement is akin to a retainer agreement. It may serve to establish that the relationship of attorney to client exists for purposes of the joint prosecution of the case and therefore shield some subsequent communications in furtherance of the joint enterprise, but does not itself attain the level of privileged communication. *See, e.g., In re Shargel,* 742 F.2d 61, 62 (2d Cir. 1984) (retainer agreements are not privileged)..

2. Work-Product Doctrine

Chase also argues that the settlement documents constitute protected work-product. *See Riddell Sports, Inc. v. Brooks,* No. 92 Civ. 7851, 1995 WL 20260, 1995 U.S. Dist. LEXIS 434 (S.D.N.Y. Jan. 19, 1995) (Francis, M.J.). The work-product doctrine protects (1) documents and tangible things (2) prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative. Rule 26(b)(3), Fed. R. Civ. P. The rule seeks to prevent "unwarranted inquiries into the files and the mental impressions of an attorney."

*Hickman v. Taylor,* 329 U.S. 495, 510 (1947).

*6 Settlement documents would appear to fail as work-product since, as an initial matter, they are not "collected or prepared in preparation for possible litigation ...." *In re Grand Jury Investigation,* 599 F.2d 1224, 1228 (3d Cir. 1979). Instead they terminate the litigation between the parties thereto. More importantly, the documents do not involve an invasion of the lawyers' files. Settlements, by their very nature, are not constrained by the litigation position of either party. The documents evidencing such compromises are not protected by the privilege.

III. CONCLUSION

A party does not have to make any particularized showing in order to obtain settlement documents in the discovery stage. The materials sought meet the relevance standard of Rule 26 and must be produced, in the absence of some applicable privilege. Neither attorney-client privilege nor the work-product doctrine protects the requested materials. The Banks are therefore ordered to produce the settlement agreement and the joint prosecution agreement.

SO ORDERED.

> FN1. The court recognizes that disclosure of offers in ongoing settlement negotiations might have an adverse impact on the settlement process. However, the documents at issue here concern a completed settlement.
>
> FN2. New York General Obligations Law § 15-108(a) provides in relevant part:
> When a release ... is given to one of two or more persons liable or claimed to be liable in tort for the same injury ... it reduces the claim of the releasor against the other tortfeasors to the extent of any amount stipulated by the release ... or in the amount of the consideration paid for it, or in the amount of the released tortfeasor's equitable share of the damages under article fourteen of the civil practice law and rules, whichever is greatest.

Not Reported in F.Supp., 1996 WL 71507 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:93cv08270 (Docket) (Dec. 02, 1993)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                      Page 5
Not Reported in F.Supp., 1996 WL 71507 (S.D.N.Y.)
**(Cite as: 1996 WL 71507 (S.D.N.Y.))**


• 1:93cv05298 (Docket) (Jul. 29, 1993)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.