# UNPUBLISHED OPINION

**Westlaw.**

Not Reported in F.Supp. Page 1
Not Reported in F.Supp., 1997 WL 873550 (D.Del.)
(Cite as: 1997 WL 873550 (D.Del.))

H

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
PLAYBOY ENTERTAINMENT GROUP, INC.,
Plaintiff,
v.
United States of America, et al., Defendants.
No. CIV. A. 96-94-JJF.

Dec. 11, 1997.
A. Gilchrist Sparks, III, Esquire, and Maryellen Noreika, Esquire of Morris, Nichols, Arsht & Tunnell, Wilmington, Of Counsel: Robert Corn-Revere, Esquire, Jean S. Moore, Esquire, and Ronald J. Wiltsie, II, Esquire of Hogan & Hartson L.L.P., Washington, D.C.; Burton Joseph, Esquire of Barsy, Joseph & Lichtenstein, Chicago, IL, for Plaintiff.

Gregory M. Sleet, Esquire, United States Attorney, and Patricia C. Hannigan, Esquire, Assistant United States Attorney of the Office of the United States Attorney, Wilmington, Of Counsel: Frank W. Hunger, Esquire, Assistant Attorney General, Dennis G. Linder, Esquire, Director, and Theodore C. Hirt, Esquire, Assistant Director, Federal Programs Branch, James J. Gilligan, Esquire, Judry L. Subar, Esquire, and Andrea G. Cohen, Esquire of the United States Department of Justice, Washington, D.C.; Daniel M. Armstrong, Esquire, Associate General Counsel, P. Michele Ellison, Esquire, Deputy Associate General Counsel, Susan L. Fox, Esquire, and Nancy L. Kiefer, Esquire of the Office of the General Counsel, Federal Communications Commission, Washington, D.C. for Defendants.

MEMORANDUM OPINION

FARNAN, Chief J.

I. INTRODUCTION
*1 Presently before the Court is Defendants' Motion To Compel Discovery From Plaintiff Playboy Entertainment Group, Inc. (D.I.194). [FN1] Defendants allege that Plaintiff has not complied with discovery in three separate areas. According to Defendants, Plaintiff has: (1) failed to produce relevant financial information; (2) failed to produce any relevant documents in the custody of its parent company; and (3) failed to provide a sufficient response to an interrogatory regarding communications with other entities. (D.I.199). Plaintiff filed an Answer to this Motion on November 6, 1997, (D.I.203) and Defendant filed its Reply on November 14, 1997. (D.I.206). For the reasons set forth below, Defendants' Motion will be denied.

FN1. Title 28, Section 2284 of the United States Code permits the Court to rule on this Motion without the assistance of the other members of the three-judge panel before whom this matter will ultimately be decided. 28 U.S.C. § 2284 (1994).

II. BACKGROUND
Plaintiff Playboy Entertainment Group, Inc. ("Playboy Entertainment") filed this lawsuit against Defendants, including the United States of America, the United States Department of Justice, Attorney General Janet Reno and the Federal Communications Commission, in order to challenge the constitutionality of Section 505 of the Telecommunications Act of 1996. (D.I.1); Pub.L. No. 104-104, 110 Stat. 136 (codified at 47 U.S.C. § 561 (1996)) ("Section 505"). According to Section 505, "[i]n providing sexually explicit adult programming or other programming that is indecent on any channel of its service primarily dedicated to sexually-oriented programming," a multichannel video program distributor must scramble or block the channel so that non-subscribers cannot receive the channel. 47 U.S.C. § 561(a). Additionally, until it complies with this language, the distributor must limit children's access to such programming by not providing it during daytime hours. 47 U.S.C. § 561(b). In its Complaint, Plaintiff asserts, *inter alia,* that the statute violates the First Amendment by discriminating based on the content of speech and that it violates the Equal Protection Clause of the Fifth Amendment because it applies only to networks providing sexually explicit adult programming or otherwise indecent programming. (D.I.1).

In preparation for trial, Defendants have extended interrogatories and document requests to Plaintiff, three of which are the basis for this Motion. (D.I.194). The Court will address each of these issues separately below.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF    Document 303-8    Filed 11/03/2006    Page 3 of 5

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 873550 (D.Del.)
(Cite as: 1997 WL 873550 (D.Del.))

Page 2

III. DISCUSSION

A. Document Request for Financial Information

Defendants first assert that, pursuant to their Document Request No. 18, Plaintiff should be compelled to provide information regarding its projected revenues from sources other than its domestic cable channels. (D.I. 199 at 5). Defendants argue that such information is relevant to this litigation because Plaintiff has presented the possibility of lost profits and bankruptcy if the outcome of this litigation is unfavorable to Plaintiff. (D.I. 199 at 5). Defendants assert that in addition to use of the domestic cable medium, Plaintiff distributes its programming in satellite direct-to-home video markets, domestic home video markets and international television and home video markets, and that Plaintiff licenses programming to third parties for distribution. (D.I. 199 at 5-6). According to Defendants, revenues from these sources, which have allegedly increased in fiscal year 1997, could offset losses that Plaintiff claims it will incur if Section 505 is enforced. (D.I. 199 at 6).

*2 In opposing the Motion, Plaintiff asserts that it is not seeking money damages in this case. (D.I. 203 at 8). Plaintiff contends that it has provided Defendants with its annual financial reports, which provide the information that Defendants seek in the request at issue. (D.I. 203 at 7). Plaintiff argues that the economic growth of markets not regulated by Section 505 is irrelevant to this litigation, and that Defendants are advocating a position wherein the government may interfere with speech in one segment of a business as long as other segments compensate for the loss. (D.I. 203 at 8). Plaintiff further contends that it has alleged economic harm, as opposed to potential bankruptcy, for the sole purpose of demonstrating a First Amendment violation, and that Defendants "fundamentally misconstrue[ ] the limited role of economic harm in this case." (D.I. 203 at 8).

In their Reply Brief, Defendants argue that the success of Plaintiff's business as a whole is highly relevant to this case, regardless of the type of analysis the Court employs in deciding the merits. (D.I. 206 at 2). Defendants contend that if the Court applies a "time, place and manner" analysis, the question of whether alternative channels of communication are available is pivotal to determining the validity of the speech regulation. (D.I. 206 at 3). If, on the other hand, the Court views Section 505 as a content-based restriction, Defendants assert that the Court must consider whether the statute is the least restrictive means of solving the problem that Section 505 was designed to address. (D.I. 206 at 4). Either way, Defendants argue, financial information regarding Plaintiff's other markets is relevant to, and necessary for, such an analysis. (D.I. 206 at 2).

According to Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery of "any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). Because relevance is a fact-specific inquiry, the determination of relevance lies within the broad discretion of the trial court. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir.1992); 6 James Wm. Moore et al., *Moore's Federal Practice* § 26.41[2] (3d ed.1997).

The Court views the information sought by Defendants regarding revenue generated from sources other than Plaintiff's domestic cable business as irrelevant to a claim based on injuries sustained by the enforcement of Section 505, which regulates the domestic cable medium only. Further, the Court is not persuaded by Defendant's argument regarding First Amendment analysis. There are other ways to measure the availability of alternative channels of communication that do not involve an inquiry into the revenue generated by such alternative channels. Likewise, a "least restrictive means" test can be applied through an analysis that does not involve delving into the financial status of Plaintiff's other business ventures. Therefore, the Court will deny Defendants' Motion To Compel the production of documents regarding revenue from sources other than domestic cable channels.

B. Request for Documents Possessed by Parent Company

*3 Defendants next contend that Plaintiff should be compelled to produce relevant documents in the possession of its parent company, Playboy Enterprises. (D.I. 199 at 6). Defendants argue that a subsidiary should be compelled to comply with a request for documents of its parent where the parent exercises substantial ownership and control over the subsidiary, the subsidiary is the agent of the parent, or the parent will substantially benefit from a favorable outcome in the litigation. (D.I. 199 at 7). Defendants claim that Plaintiff meets each of these requirements, and therefore, should be compelled to produce relevant documents in the possession of its parent, Playboy Enterprises. (D.I. 199 at 7-8).

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 873550 (D.Del.)
(Cite as: 1997 WL 873550 (D.Del.))

Page 3

Plaintiff responds that Defendants should have, and did, seek the same documents from Playboy Enterprises itself, and therefore, this portion of the Motion To Compel serves only to waste time and resources. (D.I. 203 at 5). Plaintiff also disagrees with the standards set forth by Defendants for requiring a subsidiary to produce its parent's documents, and asserts that even if those standards are correct, Defendants have not made a sufficient showing to meet them. (D.I. 203 at 6). Finally, Plaintiff contends that discovery against a parent corporation through a subsidiary should only be permitted in exceptional circumstances, such as when the stringent criteria for piercing the corporate veil are satisfied, and that such circumstances are not present in the instant case. (D.I. 203 at 5-6).

The production of documents in civil matters is governed by Federal Rule of Civil Procedure 34, which permits discovery of materials "in the possession, custody or control of the party upon whom the request is served." Fed.R.Civ.P. 34(a). The term "control," which has been defined to include a "legal right to obtain the documents requested upon demand," is broadly construed, and the party seeking production bears the burden of establishing control. Camden Iron & Metal Inc. V. Marubeni Am. Corp., 138 F.R.D. 438, 441 (D.N.J.1991); 7 James Wm. Moore et al., Moore's Federal Practice §§ 34.12 [2][a], [b] (3d ed.1997).

A request made pursuant to Rule 34 that seeks the production of documents in the possession of a corporate litigant's parent company raises the issue of control. In such circumstances, several courts have required the production of documents possessed by a party's corporate parent. Moore, supra, at § 34.14[2] [c]; see, e.g. Camden Iron & Metal, 138 F.R.D. at 441-444; Afros S.P.A. v. Krauss-Maffei Corp., 113 F.R.D. 127, 129-132 (D.Del.1986). Although such cases are very fact-specific, several factors are often considered by courts in determining whether sufficient control is exercised by the party from whom documents are sought, including the corporate structures of the entities involved and the financial relationship between them, the overlap of directors and officers, the non-party's connection to the transaction at issue, the issue of whether the non-party will receive the benefit of a favorable litigation outcome, and the ability of the party from whom documents are sought to obtain the documents upon demand. Moore, supra, at § 34.14[2] [c]; see Camden Iron & Metal, 138 F.R.D. at 441-444 (court compelled wholly-owned subsidiary to produce documents of parent because parent played significant role in transaction at issue, deal was subject to parent's final approval and subsidiary could obtain documents in normal course of business, even though parent had no direct control over subsidiary's day-to-day activities, each company had its own officers, and only one director was shared); Afros S.P.A., 113 F.R.D. at 129-132 (wholly-owned subsidiary was compelled to produce documents in parent's possession where product inquiries received by parent were directed to subsidiary, subsidiary's board of directors included four employees of parent, two of whom had prominent managerial roles in subsidiary, and documents were accessible to subsidiary).

*4 Having examined the relationship between Plaintiff and Playboy Enterprises, the Court concludes that Defendants have not met their burden of demonstrating sufficient control by Plaintiff in its relationship with Playboy Enterprises to require Plaintiff to comply with Defendants' document request. Defendants allege that Plaintiff is the wholly-owned subsidiary of Playboy Enterprises, Plaintiff's president is an executive vice president of Playboy Enterprises, and Playboy Enterprises' Chief Executive Officer approves significant decisions regarding the operation of Plaintiff's business. (D.I. 199 at 7, citing D.I. 196). These sparse submissions, coupled with Defendants' failure to demonstrate that Plaintiff can access these documents in the ordinary course of business upon demand, indicate an insufficiently close connection between Plaintiff and Playboy Enterprises to require compliance with the document request. Therefore, the Court will deny Defendants' Motion To Compel as regards the request for documents in the possession of Plaintiff's corporate parent, Playboy Enterprises.

The Court notes the reliance of both parties on Gerling Int'l Insurance Co. v. Commissioner of Internal Revenue, 839 F.2d 131 (3d Cir.1988). Gerling involved the interpretation of United States Tax Court Rule 72(a)(1), which, like Rule 34(a), permits a party to obtain documents that are in the possession, custody or control of another party. In Gerling, the United States Court of Appeals for the Third Circuit reversed sanctions on an order compelling a litigating corporation to produce documents in the possession of its president in his capacity as a major shareholder of an allegedly affiliated company. Id. at 135, 139-142. As pointed out by the United States District Court for the District of New Jersey in Camden Iron and Metal, "Gerling examined control in the context of a relationship between a litigating corporation and its president,

Not Reported in F.Supp.  
Not Reported in F.Supp., 1997 WL 873550 (D.Del.)  
(Cite as: 1997 WL 873550 (D.Del.))

Page 4

rather than the relationship between a litigating subsidiary and its parent." *Camden Iron and Metal, 138 F.R.D. at 442*. Under the circumstances presented here, the Court views *Gerling* as fact-specific and unpersuasive as precedent in this matter.

C. Response to Interrogatory No. 7

Finally, Defendants assert that Plaintiff should be compelled to provide a more specific response to Interrogatory No. 7 posed by Defendant Federal Trade Commission, rather than the general reference to unspecified documents in Plaintiff's previous response. (D.I.199). Plaintiff, however, contends that the interrogatory posed by Defendants, which requested the identity of all communications between Plaintiff and any cable systems, cable operators, multi system cable operators, or equipment manufacturers regarding the effects of and methods to comply with Section 505, is "inherently unanswerable." (D.I. 203 at 9). Plaintiff argues that it has satisfied Interrogatory No. 7 by previously producing the documents that fulfill this request and specifically identifying such documents at a meeting held on October 3, 1997. (D.I. 203 at 9). Further, Plaintiff asserts that the information sought by Defendants, such as names, dates, positions and employers, is contained on the face of the documents previously produced, and will not require extensive searching by Defendants.

*5 Pursuant to Federal Rule of Civil Procedure 33(d), a party may respond to an interrogatory by specifying the records where the answer may be found. Fed.R.Civ.P. 33(d). This specification must be "in sufficient detail to permit the interrogating party to locate and to identify, as readily as the party served, the records from which the answer may be ascertained." Fed.R.Civ.P. 33(d). Where the burden of ascertaining an answer would be the same for either party, Rule 33(d) places the research burden on the party seeking the information, rather than requiring the responding party to conduct an expensive search of its own records. *Daiflon, Inc. v. Allied Chem. Corp.*, 534 F.2d 221, 225-226 (10th Cir.), cert. denied, 429 U.S. 886, 97 S.Ct. 239, 50 L.Ed.2d 168 (1976); Fed.R.Civ.P. 33(c) Advisory Committee's Note (1970).

In the instant case, the Court concludes that Plaintiff has responded to Interrogatory No. 7 with sufficient detail to allow Defendants to locate the desired information as easily as Plaintiff itself could. Given the type of information sought and the degree of research that would be required by either party to ascertain an answer, the Court is persuaded that Defendants should bear the research burden on this issue, and that Plaintiff's response will sufficiently enable Defendants to do so. Therefore, the Court will deny Defendants' Motion To Compel as it regards Interrogatory No. 7.

IV. CONCLUSION

For the reasons discussed, the Court will deny Defendants' Motion To Compel Discovery From Plaintiff Playboy Entertainment Group, Inc. (D.I.194).

An appropriate Order will be entered.

Not Reported in F.Supp., 1997 WL 873550 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

• 1:96cv00094 (Docket) (Feb. 26, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.