# EXHIBIT A

DEC 10 2000 DAT 00:35 TH TELTEN HAMILTON 20TH FLR     FAX NO: 2155014150          P. 20

## AMENDED AND RESTATED
## CREDIT RISK INSURANCE POLICY

### ROYAL INDEMNITY COMPANY
(A Delaware Capital Stock Insurance Company)
P.O. Box 472488
Charlotte, North Carolina 28247-2488

Policy Number RST 147524
### CREDIT RISK INSURANCE POLICY

### DECLARATIONS

| | | |
|---|---|---|
| Item 1. | Insured: | SFC Acceptance V, LLC or any successor or assignee of SFC Acceptance V, LLC designated on Schedule II by notice to the Insurer executed by the current Insured. |
| | Address: | 5 Radnor Corporate Center<br>Suite 501<br>100 Matsonford Road<br>Radnor, PA 19087 |
| | Beneficiary: | Wells Fargo Bank Minnesota, National Association, and its successors as trustee of the SFC Grantor Trust, Series 2000-4 and any successor trustees or holder of the Student Loans designated on Schedule III by notice to the Insurer executed by the current Beneficiary. |
| | Address: | Wells Fargo Bank Minnesota, National Association<br>Corporate Trust Services<br>N-9311-161<br>Sixth Street and Marquette Avenue<br>Minneapolis, MN 55479 |
| Item 2. | Policy Period: | Policy Inception Date: August 30, 2000<br><br>Policy Expiration Date:     When all of the Obligations Insured have been repaid to the Insured in full, plus twelve (12) months and one day.<br><br>(in each case at 12:01 A.M. at the address of the Insured stated herein). |

ROY 013897

PHLEGAL: #1000680 v1 (LG4_01!.DOC)

DEC 10 2000 SAT 00:33 TH TELTER HAMILTON 20TH FLR    FAX NO. 2196014150    P. 21

| | | |
|---|---|---|
| Item 3: | Limit of Liability: | $29,999,999.94 in principal amount of the Student Loans, plus three months of interest at the stated interest r  e (exclusive of any penalty interest, late payment fees and prepaid financing charges) as set forth in the Student Loans, in the absolute aggregate for the Policy Period. |
| Item 4: | Student: | Each obligor under the Student Loans and any successor thereto or other party having or assuming obligations under the Student Loans which entity, successor or party is obligated to pay Obligations Insured under the Student Loans. |
| Item 5: | Student Loans: | The student loan agreements listed on Schedule I attached hereto. |
| Item 6: | Principal State: | Delaware |
| Item 7: | Endorsements: | Endorsements attached at Policy Inception Date and at various times during the Policy Period as provided herein. |
| Item 8: | Premium: | This Policy represents a restatement of an existing Policy, and the premium with respect to this Policy and the Student Loans covered hereby has been paid in full pursuant to such predecessor policy and no premium is due or owing. |
| Item 9: | Exclusions: | None |

Countersigned by:

*William J. Hibbard*

Royal Indemnity Company

By acceptance of this Policy the Insured agrees that the statements in this Policy (including the Declarations and the attachments hereto) are the agreements and representations of the Insured and that this Policy embodies all agreements existing between the Insured and the Insurer or any of its representatives relating to this insurance.

ROY 013898

PHLEGAL #1000680 v1 (LG4_01 .DOC)

DEC-18-2000 SAT 00:54 AM FH PEPPER HAMILTON 20TH FLR    FAX NO. 2159014150    P. 22

# CREDIT RISK INSURANCE POLICY

This Policy represents a restatement of Credit Risk Insurance Policy Number RST147524, which policy, upon issuance of this Policy with the consent of the Insureds and Beneficiaries under such existing policy, shall be amended, restated and superceded in its entirety hereby.

In consideration of the payment of the premium and in accordance with this Policy, the Declarations, the Student Loans listed on Schedule I hereto, as amended from time to time, and any endorsements(s) hereto, which together shall constitute the Credit Risk Insurance Policy (the "Policy"), Royal Indemnity Company (the "Insurer") agrees as follows:

I.    **INSURING AGREEMENT**

Subject to the Limit of Liability and the terms and conditions set forth hereunder, the Insurer hereby agrees to indemnify the Insured, from the Insurer's own funds, for Loss caused by a Default during the Policy Period. The amount payable by the Insurer will be paid in accordance with Article III, Payment; Notice and Proof of Loss and Recoveries after Payment.

II.   **DEFINITIONS**

A.    "Beneficiary" shall mean Wells Fargo Bank Minnesota, National Association and its successors, as trustee of the Trust and any successor trustee or holder of the Student Loans designated on Schedule III by notice to the Insurer executed by the current Beneficiary provided during the Policy Period.

B.    "Claim" shall mean a written Claim by or on behalf of the Beneficiary submitted to the Insurer for payment of a Loss pursuant to delivery of a Notice and related proof of loss form in accordance with Article III.

C.    "Clean-up-call" shall mean the Insured's right to repurchase the Student Loans from the Beneficiary pursuant to Section 10.2 of the Pooling Agreement or such other corollary section of the Pooling Agreement permitting or requiring the Insured to purchase Student Loans.

D.    "Credit Agreement" shall mean any and all loan, loan purchase, security, pooling and servicing, certificate, note, note purchase or other agreements between a Beneficiary and an Insured.

E.    "Default" shall mean (i) a Student Loan becoming ninety (90) days or more delinquent (treating payments made by a Student but paid over to a bankruptcy court having jurisdiction over the Student as a preference item as not having been paid by the Student), with payments made after a delinquency applied to the earliest delinquency, or (ii) any impairment or avoidance of the rights of the Beneficiary or the Insured in a Student Loan arising out of the bankruptcy or

ROY 013899

DEC 18 2000 SAT 00:54 PM PEPPER HAMILTON 20TH FLR   FAX NO. 2150014150   P. 25

similar event or proceedings with respect to Student Finance Corporation or the Insured, including without limitation pursuant to Section 362 of the United States Bankruptcy Code.

F.   "Default Date" shall mean the first date on which a Default occurs.

G.   "Escrow Agent" shall mean the Escrow Agent under the Escrow Agreement.

H.   "Escrow Agreement" shall have the meaning set forth in Article IV, Section E, below.

I.   "Excess Spread Reserve Account" shall mean the escrow fund established under the Escrow Agreement as amended from time to time and as more fully described in Article IV, Section E, below.

J.   "Experience Account" shall have the meaning set forth in Article IV, Section G, below.

K.   "Initial Balance" shall mean, as to each Student Loan, the outstanding principal balance of such Student Loan on the date such Student Loan is added to the Policy.

L.   "Insured" shall mean the entity listed in Item 1 of the Declarations, its successors and permitted assigns.

M.   "Limit of Liability" shall mean the dollar sum stated in Item 3 of the Declarations and shall be the maximum payment obligation of the Insurer under this Policy for all Obligations Insured for the entire Policy Period.

N.   "Loss" shall mean for any Student Loan as to which a Claim is made in accordance herewith the Value as of the Default Date with respect to such Student Loan. Loss shall not include penalties, taxes, or any other liability incurred by the Insured with respect to such Student Loan.

O.   "MBIA" shall mean MBIA Insurance Corporation and is successors and assigns.

P.   "Notice" shall mean the notice to be provided by the Servicer or Beneficiary to the Insurer directing payment of a Claim as described in Article III, Section B.

Q.   "Obligations Insured" shall mean the full amount of the principal and interest due to the Insured or the Beneficiary pursuant to the Student Loans between the lender and each Student.

R.   "Policy Expiration Date" shall be the earlier of the final day of the Policy Period, as identified in Item 2 of the Declarations, or the date this Policy is commuted in accordance with Article IV, Section D, Paragraph 2 hereof.

ROY 013900

S.    "Policy Inception Date" shall be the first day of the Policy Period, as identified in Item 2 of the Declarations.

T.    "Policy Period" shall mean the period of time from the Policy Inception Date to the Policy Expiration Date.

U.    "Pooling Agreement" shall mean that Pooling and Servicing Agreement between Servicer, Insured, Beneficiary and Wells Fargo Bank Minnesota, National Association as Trustee, as amended from time to time.

V.    "Servicer" shall mean Student Loan Servicing LLC or its successor(s).

W.    "Student" shall mean each obligor under the Student Loans and any successor thereto or other party having or assuming obligations under the Student Loans which entity, successor or party is obligated to pay Obligations Insured under the Student Loans.

X.    "Student Loan" shall mean each student loan agreement listed on Schedule I attached hereto as amended from time to time.

Y.    "Trust" shall mean the SFC Grantor Trust, Series 2000-4.

Z.    "Underwriting Policies" shall mean the policies of Student Finance Corporation with respect to underwriting of Student Loans as reflected in the policy and procedures manual dated December 31, 1997 and the credit scoring model revised January 24, 2000, as amended or modified from time to time subject to Article IV, Section F, Paragraph 4.

AA.   "Value" shall mean the principal balance outstanding under a Student Loan as of the Default Date plus accrued interest thereon (at the stated interest rate (exclusive of any penalty interest, late payment fees and prepaid financing charges) as set forth in such Student Loan) to the Default Date.

III.   PAYMENT; NOTICE AND PROOF OF LOSS AND RECOVERIES AFTER PAYMENT

A.    PAYMENT

Payments of Losses under this Policy shall be made by the Insurer to a Beneficiary or to the Escrow Agent as set forth in the Notice from the Servicer or Beneficiary and shall be due and payable upon receipt of the Notice. Any Claim set forth in the Notice shall be paid by the Insurer within sixty (60) days of the receipt of the Notice by wire transfer of immediately available funds. Each payment made by the Insurer hereunder shall reduce the Limit of Liability by an amount equal to the payment.

ROY 013901

DEC-18-2000 SAT 08:55 FM FEFFER HAMILTON 28TH FLR    FAX NO. 2159814150    P. 25

B.    NOTICE

The Notice shall be in the Form attached hereto, containing the following information: (a) the amount of the Loss to be paid by the Insurer; (b) the amount to be paid each Beneficiary as provided in any Credit Agreement between an Insured and such Beneficiary on Student Loans owned or held by them; and (c) the balance to be paid to the Escrow Agent for deposit in the Excess Spread Reserve Account. The Notice shall be sent by certified mail, return receipt requested, hand delivery, facsimile transmission or overnight courier, addressed to 11111 Carmel Commons Boulevard, Charlotte, North Carolina 28226, Attention: Tony McKenzie, fax number (704) 543-3566 or his or her representative. The Notice will be presumed to have been received on the date of the execution of receipt for certified mail, on the date of delivery if by hand delivery or facsimile transmission or the next business day if sent by overnight courier.

C.    PROOF OF LOSS AND RECOVERIES AFTER PAYMENT

1.    The Insured or Beneficiary agrees to deliver or cause to be delivered with each Notice a written proof of loss form setting forth (a) a schedule detailing the Claims incurred under this Policy due to a Default during the current monthly period by identifying the applicable Student Loans and setting forth the outstanding principal balance and accrued and unpaid interest with respect thereto; and (b) if such claim is in excess of the remaining balance of the Experience Account as notified by the Insurer pursuant to Article IV, Section G, a copy of the notice from the Escrow Agent in accordance with Section 4(e) of the Escrow Agreement to the effect that no funds remain in the Excess Spread Reserve Account or of notice from the Escrow Agent of its refusal to disburse funds from the Excess Spread Reserve Account on account of a bankruptcy of Servicer or an Insured. Upon request of the Insurer, the Insured shall request the Servicer or the Escrow Agent to provide evidence reasonably available with respect to circumstances surrounding a Loss.

2.    After payment of a Loss, all funds or salvage ("Recoveries") received by the Insurer, the Insured or the Beneficiary from the Student or from any other source whatsoever as or toward payment of the Student's obligations under the Student Loan on which the Insurer has paid a Claim, shall be deposited to the Excess Spread Reserve Account, and the Insurer shall have the right to receive distributions from the Excess Spread Reserve Account on account of Losses it has paid which have not been covered by the Experience Account, as set forth in the Escrow Agreement.

3.    No failure to comply with the provisions of this Article III shall in any way impair or limit the right of the Beneficiary to receive payment of any Loss under this Policy.

PHLEGAL #1000680 v3 (LG4_03!.DOC)

ROY 013902

## IV.    GENERAL CONDITIONS

### A.    PAYMENT OF PREMIUM

The premium for the Policy has been fully paid, and this Policy is in effect as of the date issued by the Insurer.

### B.    ADDITIONAL INSUREDS

The initial Insured hereunder, SFC Acceptance V, LLC, shall have the right to name successor Insureds in the event the Student Loans are sold by the Beneficiary (including a Clean-up-call by the Insured) or any future insureds may name successor purchasers or transferees as an insured after the sale by the Beneficiary of the Student Loans after the Policy Inception Date by sending a written notice to the Insurer from time to time that a new Insured is to be added. The new Insured shall be a party to this Policy effective as of the date of the written notice sent to the Insurer by facsimile transmission, electronic mail or courier or the next business day if sent by overnight delivery. The Insurer shall prepare an endorsement to the Policy, which shall be effective as of the date the Insured is added as provided herein. An Insured may not be removed or have the amount of insurance to which it relates reduced unless the Notice of Change in Insured is signed by the Insured to be removed and the Beneficiary.

### C.    BENEFICIARY DESIGNATIONS

Any Insured hereunder shall have the right to designate new beneficiaries hereunder in the event the Student Loans are sold by the Beneficiary (including a Clean-up-call by the Insured) any other purchaser or transferee after the sale by the Beneficiary by sending a written notice to the Insurer from time to time that a new Beneficiary is to be added. The new Beneficiary shall be added to this Policy effective as of the date of the written notice sent to the Insurer by facsimile transmission, electronic mail or courier or the next business day if sent by overnight delivery. The Insurer shall prepare an endorsement to the Policy, which shall be effective as of the date the Beneficiary is added as provided herein. A Beneficiary may not be removed or have the amount of insurance to which it relates reduced unless the Notice of Change in Beneficiary is signed by the Beneficiary to be removed or with respect to which the amount of insurance is to be reduced.

### D.    TERMINATION AND COMMUTATION

#### 1.    TERMINATION

The Policy will be terminated automatically twelve (12) months and one (1) day after all Obligations Insured under this Policy have been repaid in full to the Beneficiary.

ROY 013903

DEC-18-2000 SAT 00:56 PM TEFFER HAMILTON 20TH FLR    FAX NO. 2155014100    P. 21

2.    COMMUTATION

This Policy may also be commuted by the Insured on sixty (60) days prior written notice at any time provided that (a) another policy is issued on the Student Loans from an insurer with a Moody's A-1 rating or better and each Beneficiary, MBIA, each Insured and all other parties to this Policy have consented to such commutation, and (b) notice is given to each rating agency rating any notes or certificates collateralized by the Student Loans.

E.    EXCESS SPREAD RESERVE ACCOUNT

The Insured, the Beneficiary or their respective agent shall pay to the Escrow Agent the Monthly Reserve Amount as that term is defined in the Amended and Restated Excess Spread Reserve Escrow Account Agreement (the "Escrow Agreement") between the Insured, Insurer and the Beneficiary and others, as amended form time to time. The Escrow Agent will pay the sums held in the Excess Spread Reserve Account in accordance with the terms of the Escrow Agreement.

F.    AGREEMENTS WITH RESPECT TO STUDENT LOANS

1.    MAINTENANCE OF FILES

The Beneficiary or the Insured shall maintain a copy of each Student Loan on file with each Servicer. Each Servicer shall provide the Insurer with information in the form provided to the Beneficiary as to the Excess Spread Reserve Account and the Defaults and payments under the Student Loans on a monthly basis, or on a quarterly basis, if requested by the Insurer. The Beneficiary shall supply to the Insurer annual financial statements audited by a certified public accounting firm.

2.    AMENDMENTS TO STUDENT LOANS

No amendment or change to any Student Loans after the Policy Inception Date shall have the effect of increasing or accelerating the amount of Obligations Insured or the Insurer's obligations under this Policy, or otherwise changing any rights the Insurer has under this Policy.

3.    ASSIGNMENTS OF CONTRACTS

The Beneficiary shall not consent to the transfer of, assignment to, or assumption by, any other party of a Student's obligations under any Student Loans without the written consent of the Insurer, which consent shall not be unreasonably withheld.

ROY 013904

DEC-10-2000 SAT 00:51 PM PEPPER HAMILTON 20TH FLR        FAX NO. 2159014190        P. 20

4.    STUDENT LOANS

The Insurer's obligation to pay any Claim made under this Policy is
absolute, unconditional and irrevocable and shall not in anyway be
affected, mitigated or eliminated by (y) a breach of any representation or
warranty made by the Insured, the Servicer, Student Finance Corporation
or the Beneficiary, or (z) the failure of the Insured or Student Finance
Corporation to comply with the Underwriting Policies.

5.    SERVICING STANDARDS

The Servicer shall employ all reasonable collection methods in collecting
on the Student Loans, including, but not limited to, collecting from any
collateral securing the Student Loans.

G.    EXPERIENCE ACCOUNT

The Insurer created an experience account (the "Experience Account") with a
starting balance equal to 18% of the aggregate Initial Balance of the Student
Loans under the Policy, as reduced and increased as hereinafter provided. The
Experience Account was funded by those certain notes of a member of the
Insured in the initial face amount equal to such starting balance of the Experience
Account received by the Insurer pursuant to an assignment from an affiliate of the
Insured, which notes were originally received as a capital contribution to the
affiliate (collectively referred to as the "Note"). The Note is payable on demand,
with interest accruing at the Applicable Federal Rate, as defined in Section 1274
(d) of the Internal Revenue Code of 1986 as amended. The Experience Account
will only be credited with actual cash received by the Insurer under the Note. The
starting balance of the Experience Account shall be increased by (1) all interest
and dividends earned on the cash held and invested by the Insurer in the
Experience Account or interest paid under the Note and (2) any principal
demanded and received from the Note and shall be reduced by (a) any Claims
paid by the Insurer under this Policy and (b) payments made to the Insured, but
not below zero. Through 24 months after the Policy Inception Date, the Insurer
may withdraw from any funds held in the Experience Account (exclusive of any
interest earned on said funds) or make a demand on the principal of the Note for
any Claims to be paid by the Insurer under this Policy. The Insurer shall pay to
the Insured from funds held in the Experience Account or received after a demand
is made and paid by the borrower on the Note on the fifth day of each month (or
the next business day if it is a holiday) (i) all interest earned on the Experience
Account for the preceding month and (ii) beginning on the 5th day of the month
after expiration of 12 months after the Policy Inception Date, an amount equal to
one-twelfth of 18% of the original principal balance of the Student Loans under
this Policy, when said Student Loans were originally added to the Policy (or a
portion thereof if the amount remaining in the Experience Account or the
principal balance of the Note is less than one-twelfth of the principal balance of

ROY 013905

the Student Loans on the date the Student Loans are added to the Policy) until the funds in the Experience Account or the principal balance of the Note are reduced to zero; provided, however, in no event shall the Insurer pay to the Insured any amounts due under this sentence unless there are actual funds in the Experience Account or the Insurer has received amounts demanded under the Note. The Insurer shall assign or cause to be assigned any defaulted Student Loans for which a Claim is paid from the Experience Account that may come into its possession to the Insured within ten days after the Claim is paid and any Recoveries on such defaulted Student Loan shall be retained by the Insured. The Insurer's obligation to pay any Claim made under this Policy is absolute and shall not in anyway be effected, mitigated or eliminated by (x) a default under the Note or (y) the failure to fund the Experience Account. The Insurer shall deliver to the Insured and the Servicer monthly, on or before the third Business Day of each month, notice of the remaining balance of the Experience Account as of the last day of the prior month.

V.   **SUBROGATION**

A.   Subject to Article III, Section C, paragraph 2, upon payment of any Claim under this Policy, the Insurer shall be subrogated to the extent of such payments to all of the Beneficiary's and the Insured's rights against the Students or other liable party to the extent of its obligations to pay Obligations Insured. In addition to and without limiting any rights under the preceding sentence, upon payment of a Claim on account of the Escrow Agent's refusal to distribute any funds under the Excess Spread Reserve Account, the Insurer shall be subrogated to all rights of the Beneficiary to which such Claim was paid to any amounts payable directly or indirectly to such Beneficiary from funds from the Excess Spread Reserve Account on account of the Obligations Insured which were the subject of such Claim. The Insured shall also execute and deliver, during regular business hours and upon reasonable request by the Insurer, all instruments and papers and do whatever else is necessary to transfer, assign, secure and enforce such rights. The Insured shall do nothing to prejudice such rights. The Insured will supply the Insurer with any information reasonably requested by the Insurer relating to the subject of this insurance. The execution by the Beneficiary of a release, satisfaction or waiver of the right to collect the unpaid balance of any amounts due under the Student Loans shall equally release the Insurer from any obligation under this Policy. The Insured's duties with respect to cooperation hereunder shall be performed at the request of the Insurer whether or not Notice has been given in accordance with Article III, Section B hereof.

VI.   **LIMIT OF LIABILITY**

A.   The limit of liability stated in Item 3 of the Declarations, Limit of Liability, is the limit of the Insurer's liability for all payments under this Policy.

ROY 013906

  B. The Limit of Liability shall be reduced by principal repayments of the Obligations Insured by the Student directly to the Insured.

VII. <u>CANCELLATION</u>

THIS POLICY MAY NOT BE CANCELED BY EITHER THE INSURED OR THE INSURER, EXCEPT AS PROVIDED IN ARTICLE IV, SECTION D HEREOF.

VIII. <u>ASSIGNMENT</u>

This Policy and any rights hereunder may not be assigned, other than to the Beneficiary or an Insured in the event of a sale of the Student Loans or, if sold by the Beneficiary (including a Clean-up-call by the Insured) to the new Insured, without the written consent of the Insurer. The Insurer acknowledges that the Insured may assign any and all of its rights under this Policy to the Beneficiary and another Insured, and a Beneficiary may assign its rights to any successor Beneficiary by notice to Insurer, and the Insurer consents to each such assignment, if and when it occurs.

IX. <u>INSPECTION</u>

The Insurer shall have the right to inspect and examine during normal business hours, at any time as is reasonably necessary, the Insured's or the Beneficiary's books, files and records relating to the Student Loans.

X. <u>CHANGES</u>

Notice to any representative of the Insurer or knowledge possessed by any representative or by any person shall not effect a waiver or change in any part of this Policy, including the Student Loans; nor shall the terms of this Policy be waived, changed, modified or amended unless agreed to in writing by an authorized representative of the Insurer, the Insured and consented to in writing by the Beneficiary and MBIA. Insurer understands and acknowledges that there may be changes required to be made to the policy in the future for the addition or deletion of Insureds, the changes of Beneficiaries and such other changes as may be required by a rating agency rating an instrument for which the Student Loans are collateral or which represents a participation in the Student Loans. Notice shall be given to the rating agencies and all Beneficiaries and Insureds of any change.

XI. <u>CHOICE OF LAW</u>

The construction, validity and performance of this Policy shall be governed by the internal laws of the State designated in Item 6 of the Declarations.

XII. <u>RIGHT TO RECEIVE PAYMENT SUBJECT ONLY TO LIMIT OF LIABILITY</u>

NOTWITHSTANDING ANY OTHER PROVISION OF THIS POLICY TO THE CONTRARY, THE RIGHT OF THE BENEFICIARY TO RECEIVE PAYMENT FOR LOSS UNDER THIS POLICY AFTER PAYMENT OF THE INITIAL

ROY 013907

DEC-16-2000 SAT 00:58 PM PEPPER HAMILTON 28TH FLR    FAX NO. 2159814750    P. 50

B.    The Limit of Liability shall be reduced by principal repayments of the Obligations Insured by the Student directly to the Insured.

VII.    CANCELLATION

THIS POLICY MAY NOT BE CANCELED BY EITHER THE INSURED OR THE INSURER, EXCEPT AS PROVIDED IN ARTICLE IV, SECTION D HEREOF.

VIII.    ASSIGNMENT

This Policy and any rights hereunder may not be assigned, other than to the Beneficiary or an Insured in the event of a sale of the Student Loans or, if sold by the Beneficiary (including a Clean-up-call by the Insured) to the new Insured, without the written consent of the Insurer. The Insurer acknowledges that the Insured may assign any and all of its rights under this Policy to the Beneficiary and another Insured, and a Beneficiary may assign its rights to any successor Beneficiary by notice to Insurer, and the Insurer consents to each such assignment, if and when it occurs.

IX.    INSPECTION

The Insurer shall have the right to inspect and examine during normal business hours, at any time as is reasonably necessary, the Insured's or the Beneficiary's books, files and records relating to the Student Loans.

X.    CHANGES

Notice to any representative of the Insurer or knowledge possessed by any representative or by any person shall not effect a waiver or change in any part of this Policy, including the Student Loans; nor shall the terms of this Policy be waived, changed, modified or amended unless agreed to in writing by an authorized representative of the Insurer, the Insured and consented to in writing by the Beneficiary and MBIA. Insurer understands and acknowledges that there may be changes required to be made to the policy in the future for the addition or deletion of Insureds, the changes of Beneficiaries and such other changes as may be required by a rating agency rating an instrument for which the Student Loans are collateral or which represents a participation in the Student Loans. Notice shall be given to the rating agencies and all Beneficiaries and Insureds of any change.

XI.    CHOICE OF LAW

The construction, validity and performance of this Policy shall be governed by the internal laws of the State designated in Item 6 of the Declarations.

XII.    RIGHT TO RECEIVE PAYMENT SUBJECT ONLY TO LIMIT OF LIABILITY

NOTWITHSTANDING ANY OTHER PROVISION OF THIS POLICY TO THE CONTRARY, THE RIGHT OF THE BENEFICIARY TO RECEIVE PAYMENT FOR LOSS UNDER THIS POLICY AFTER PAYMENT OF THE INITIAL

ROY 013907

DEC-10-2000 SAT 06:58 FM PEPPER HAMILTON 26TH FLR    FAX NO. 2159014750    P. 31

PREMIUM BY THE INSURED SHALL BE ABSOLUTE, IRREVOCABLE AND UNCONDITIONAL, AND NO FAILURE ON THE PART OF THE INSURED, THE SERVICER OR THE BENEFICIARY TO OBSERVE OR PERFORM ANY COVENANT OR CONDITION CONTAINED IN THIS POLICY (INCLUDING WITHOUT LIMITATION THOSE CONTAINED IN ARTICLE III, ARTICLE IV AND ARTICLE V) SHALL ENTITLE THE INSURER TO ANY RIGHT OF SET-OFF, COUNTERCLAIM OR DEFENSE AGAINST THE BENEFICIARY OR ANY OTHER PARTIES OR OTHERWISE RELIEVE THE INSURER OF ANY LIABILITY TO MAKE ANY SUCH PAYMENT FOR LOSS TO THE BENEFICIARY UNDER THIS POLICY, SUBJECT ONLY TO THE LIMIT OF LIABILITY.

ROY 013908

Schedule I

Student Loans

See attached.

ROY 013909

Schedule II

Insured

SFC Acceptance V, LLC

ROY 013910

PHILEGAL #1000680 v1 (LG4_01!.DOC)

Schedule III

Beneficiaries

Wells Fargo Bank Minnesota, National Association as Trustee of the SFC Grantor Trust, Series 2000-4 and any successor trustees

ROY 013911

DEC 18 2000 GHT 01:08 TH FELTER HAMILTON ZUHH FER     FHX NO. 2198014190     P. 35

FORM OF NOTICE OF CLAIM

To.     Royal Indemnity Company
        11111 Carmel Commons Boulevard
        Charlotte, North Carolina 28226
        Attention: Tony McKenzie
        Fax Number: (704) 543-3566

        Re:     Credit Risk Insurance Policy, Policy Number 147522 (Restated)

        The undersigned, being a duly appointed officer of [specify Servicer/Beneficiary]
hereby provides the Notice of Claim pursuant to the above referenced Policy, and in connection
therewith certifies the information set forth herein.  Capitalized terms used and not otherwise
defined herein shall have the meanings ascribed thereto in the Policy.

        1.      A Default has occurred with respect to the Student Loans listed on Annex
                A attached hereto.

        2.      Either (check as applicable)

                ____    The amount of the Claim hereunder does not exceed the remaining
                        balance of the Experience Account as set forth in the most recent
                        notice from you pursuant to Article IV, Section G; or

                ____    The amount of the Claim hereunder in excess of the remaining
                        balance of the Experience Account was requested from the Escrow
                        Agent, and the Escrow Agent has delivered a notice that no funds
                        remain in the Excess Spread Reserve Account, or notice of refusal
                        to disburse funds from the Excess Spread Reserve Account on
                        account of the bankruptcy of Servicer or an Insured.

        3.      Either (check as applicable):

                ____    [To the knowledge of the Beneficiary,] after application of
                        available funds in accordance with the Servicing Agreement, the
                        outstanding principal balance of the Student Loans listed on Annex
                        A has not been paid to the Beneficiary; or

                ____    The Default results from an impairment or avoidance of the rights
                        of the undersigned Beneficiary or of the Insured in such Student
                        Loans arising out of the bankruptcy or similar event or proceedings
                        with respect to Student Finance Corporation or the Insured,
                        including without limitation pursuant to Section 362 of the United
                        States Bankruptcy Code.

                                                                ROY 013912

PHLEGAL #1000080 v1 (LG4_01!.DOC)

In accordance with the Policy, you are hereby given notice that a Loss has occurred on account of the Student Loans listed on Annex A as described above, and instructed to make payment in accordance with the Policy as follows:

Aggregate amount of Loss (aggregate principal amount of Student Loans, and accrued and unpaid interest to the Default Date):                    $_____

Amount to be paid to Beneficiary:                    $_____
    Wire instructions for Beneficiary

_____
_____
_____

Amount to be paid to Escrow Agent:          $_____
    (Wire instructions set forth in Escrow Agreement)

IN WITNESS WHEREOF, the undersigned has executed this Notice of Claim as of the date indicated below.

_____, as [Servicer/Beneficiary]

By:_____
Name:
Title:

Date:_____

ROY 013913

DEC-18-2000 SHI 07:01 PM PEPPER HAMILTON 20TH FLR    FAX NO. 2159014750    P. 31

## SECOND AMENDED AND RESTATED
## EXCESS SPREAD RESERVE ESCROW AGREEMENT

THIS AMENDED AND RESTATED EXCESS SPREAD RESERVE ESCROW AGREEMENT, dated as of December 18, 2000 ("Escrow Agreement"), is by and among ROYAL INDEMNITY COMPANY, a Delaware insurance company ("Royal"); SFC Financial I, LLC and SFC Financial II, LLC (the "Predecessor Depositors"); SFC Acceptance V, LLC ("Depositor"); Market Street Funding Corporation and Wilmington Trust Company of Pennsylvania (the "Predecessor Beneficiaries"); Wells Fargo Bank Minnesota, National Association, as Trustee of the SFC Grantor Trust, Series 2000-4 (the "Beneficiary"); and Wells Fargo Bank Minnesota, National Association, a national banking association as escrow agent hereunder ("Escrow Agent").

WHEREAS, Royal, Predecessor Depositors, Predecessor Beneficiaries and Escrow Agent are parties to that certain Amended and Restated Excess Spread Reserve Escrow Agreement dated as of October 1, 2000 (the "Existing Escrow Agreement"), which Existing Escrow Agreement was entered into in connection with that certain Credit Risk Insurance Policy issued by Royal dated as of August 30, 2000, Policy Number RST147524 (the "Existing Policy") insuring the Student Loans as identified therein; and

WHEREAS, on the date hereof, the Student Loans are being transferred from the Predecessor Depositors to Student Finance Corporation ("SFC"), by SFC to Depositor, and by the Depositor to the Beneficiary pursuant to a Pooling and Servicing Agreement dated of even date herewith (the "Pooling and Servicing Agreement") among Student Loan Servicing LLC as Servicer, the Depositor as Settlor, and the Beneficiary as Trustee; and

WHEREAS, upon such transfers being completed, the Existing Policy is being amended and restated to name the Depositor as the "Insured" and the Beneficiary as the "Beneficiary" thereunder; and

WHEREAS, in connection with the amendment and restatement of the Existing Policy, the parties hereto hereby amend and restate the Existing Escrow Agreement in its entirety to read as set forth herein.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual agreements hereinafter set forth, intending to be legally bound, the parties hereto agree as follows:

1.    Definitions.  The following terms have the following meanings when used herein:

"Approved Account" means the following Account:
Wells Fargo Bank Minnesota, N.A.
ABA: 091000019

ROY 013914

DEC-10-2000 SAT 01:02 PM PEFFER HAMILTON COIN PLK    FAX NO. 2159014150    P. 50

IN WITNESS WHEREOF, the parties hereto have caused this Escrow Agreement to be executed under seal as of the date first above written.

> WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, not in its individual capacity but solely as Escrow Agent
>
> By: _____
> Name:
> Title:
>
> ROYAL INDEMNITY COMPANY, Insurer
>
> By: _____
> Name: William J. Hibberd
> Title: Vice President
>
> WILMINGTON TRUST COMPANY OF PENNSYLVANIA, a Predecessor Beneficiary
>
> By: _____
> Name:
> Title:

[EXECUTIONS CONTINUED]

IN WITNESS WHEREOF, the parties hereto have caused this Escrow Agreement to be executed under seal as of the date first above written.

WELLS FARGO BANK MINNESOTA,
NATIONAL ASSOCIATION, not in its individual
capacity but solely as Escrow Agent

By: _____
    Name:
    Title:

ROYAL INDEMNITY COMPANY, Insurer

By: _William J. Hibberd_____
    Name: William J. Hibberd
    Title: Vice President

WILMINGTON TRUST COMPANY OF
PENNSYLVANIA, a Predecessor Beneficiary

By: _____
    Name:
    Title:

[EXECUTIONS CONTINUED]

ROY 013916

DEC-10-2000 SAT 07:03 FH FEFFER HAMILTON 28TH FLR    FHX NO. 2159814750    P. 40

IN WITNESS WHEREOF, the parties hereto have caused this Escrow Agreement to be executed under seal as of the date first above written.

WELLS FARGO BANK MINNESOTA, NATIONAL ASSOCIATION, not in its individual capacity but solely as Escrow Agent

By:_____

    Name:

    Title:

ROYAL INDEMNITY COMPANY, Insurer

By:_____

    Name: William J. Hibberd

    Title: Vice President

WILMINGTON TRUST COMPANY OF PENNSYLVANIA, a Predecessor Beneficiary

By: _____

    Name: **Kevin A. Boyer**

    Title: **Sr. Banking Officer**

[EXECUTIONS CONTINUED]

M999773 / 111419-21

-18-

ROY 013917

MARKET STREET FUNDING CORPORATION,
a Predecessor Beneficiary,

By: _____
    Name:    EVELYN ECHEVARRIA
    Title:    VICE PRESIDENT

SFC FINANCIAL I, LLC, a Predecessor Depositor

By: SFC Finance Corp. I G.P., Inc., its Manager


By:_____
    Name:  Gary J. Hawthorne
    Title:    Executive Vice President and Secretary


SFC FINANCIAL II, LLC, a Predecessor Depositor

By:  SFC Finance Corp. II G.P., Inc., its Manager

By:_____
    Name:  Gary J. Hawthorne
    Title:    Executive Vice President


SFC ACCEPTANCE V, LLC, Depositor

By:  SFC Acceptance V G.P., Inc.,
    its Managing Member

By:_____
    Name:  Gary J. Hawthorne
    Title:    Executive Vice President and Secretary

[EXECUTIONS CONTINUED]

#909773 / 111419-21

-19-

ROY 013918

MARKET STREET FUNDING CORPORATION,
a Predecessor Beneficiary

By:_____
    Name:
    Title:

SFC FINANCIAL I, LLC, a Predecessor Depositor

By: SFC Finance Corp. I G.P., Inc., its Manager

By:_____
    Name:  Gary J. Hawthorne
    Title:  Executive Vice President and Secretary


SFC FINANCIAL II, LLC, a Predecessor Depositor

By:  SFC Finance Corp. II G.P., Inc., its Manager

By:_____
    Name:  Gary J. Hawthorne
    Title:  Executive Vice President


SFC ACCEPTANCE V, LLC, Depositor

By:  SFC Acceptance V G.P., Inc.,
    its Managing Member

By:_____
    Name:  Gary J. Hawthorne
    Title:  Executive Vice President and Secretary

[EXECUTIONS CONTINUED]


ROY 013919

DEC-18-2000 SAT 07:04 PM PEPPER HAMILTON 20TH FLR    FAX NO. 2153814150          P. 45

ACCEPTED AND AGREED:

WELLS FARGO BANK, NATIONAL ASSOCIATION

By:_____
    Name:
    Title:

ROY 013920