IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROYAL INDEMNITY COMPANY,<br><br>        Plaintiff,<br><br>vs.<br><br>PEPPER HAMILTON LLP, W. RODERICK GAGNÉ, FREED MAXICK & BATTAGLIA CPAs PC, MCGLADREY & PULLEN, LLP, MICHAEL AQUINO and FREED MAXICK SACHS & MURPHY, P.C.,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 05-165-JJF<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF ROYAL INDEMNITY COMPANY'S REPLY MEMORANDUM
IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION
OF DOCUMENTS FROM ACCOUNTANT-DEFENDANTS**

Plaintiff Royal Indemnity Company ("Royal") by this memorandum replies to the opposition briefs filed by defendants McGladrey & Pullen LLP ("McGladrey"), Michael Aquino ("Aquino") (D.I. 319), Freed Maxick & Battaglia CPAs, PC ("FMB"), and Freed Maxick Sachs & Murphy, P.C. ("FMSM") (collectively, the "Accountants") (D.I. 318) in response to Royal's Motion to Compel ("Motion") (D.I. 299-300). Although the Accountants have submitted separate briefs, their arguments are similar in all substantive respects.[1]

Royal's Motion sought to compel the Accountants to produce five general categories of documents: (1) accounting manuals; (2) joint defense, indemnification, or similar agreements between the parties related to this litigation; (3) documents reflecting the relationship between and among FMB, FMSM, and McGladrey; (4) documents related to Aquino's departure from

---

[1] FMB and FMSM jointly filed their opposition brief (the "Freed Brief") (D.I. 318) which largely cross-references McGladrey's and Aquino's brief (the "McGladrey Brief") (D.I. 319).

McGladrey; and (5) performance reviews of certain McGladrey personnel. While the Accountants now claim, for the first time, that certain of the requested documents do not exist, they primarily object to Royal's Motion on relevance grounds. As detailed in Royal's opening Memorandum, all of these documents are clearly relevant to establishing Royal's claims, and their discovery patently is "calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see also Pacitti v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999). None of the case law cited by the Accountants prohibits a party who has alleged, among other things, fraud, conspiracy to commit fraud, aiding and abetting fraud, and negligent misrepresentation, from obtaining any of the requested documents. On the other hand, the authorities cited by Royal require such discovery where, as here, the requested documents are relevant to the claims alleged. In light of the connection between the sought-after documents and Royal's specific allegations, this Court should require the Accountants to produce them.

## ARGUMENT

### A.   The Accountants' Manuals Are Properly Discoverable

Royal's allegations that the Accountants willfully or recklessly acted, alone or in concert with Student Finance Corporation ("SFC"), to defraud Royal puts the Accountants' *scienter* at issue. Among the evidence Courts will consider when evaluating *scienter* is whether an auditor took "actions that are contrary to one's expressed policy and prior practice concerning accounting issues." *In re Worldcom, Inc. Sec. Litig.*, 352 F. Supp. 2d 472, 495 (S.D.N.Y. 2005) (*citing In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 77 (2d Cir. 2001)); *see also In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 654 (E.D. Va. 2000) (finding auditor acted with *scienter*, in part because auditor's internal policies would have required it to be "vigilant" to the facts misrepresented). It cannot seriously be disputed that the accounting manuals now sought by Royal—manuals dating from 1997 through 2002—could help to establish the

Accountants' "expressed policy and prior practice" with respect to the accounting procedures at issue in this litigation. They squarely are relevant. *See, e.g., Official Unsecured Creditors Comm. of Media Vision Tech., Inc. v. Jain*, 215 F.R.D. 587, 588-89 (N.D. Cal. 2003) (cited by the Accountants) (ordering production of audit manuals and stating "that as a general proposition, violation of a firm's own policies may be probative to *scienter*"); *Fields v. Oliver's Stores, Inc.*, 1991 WL 44845, (S.D.N.Y. March 2, 1990); *Gohler v. Wood*, 162 F.R.D. 691, 693 (D. Utah 1995) (ordering production of audit manuals, finding production of manuals "may lead to discoverable evidence" and finding that audit manuals were necessary to understand how the accountants "translated [GAAP and GAAS standards] into its actual work"); *Sabratek Liquidating LLC v. KPMG LLP*, 2002 WL 31520993 (N.D. Ill. 2002); *In re Oxford Health Plants, Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 5817 (S.D.N.Y. 2001); *In re Mercury Finance Co. of Ill.*, 1999 WL 495903 (N.D. Ill. 1999). This Court should follow the weight of authority and order production of the Accountants' manuals here.[2]

In response to this overwhelming authority, the Accountants declare that "it is well settled that accountant's manuals are confidential trade secrets . . . ," (McGladrey Br., p. 2 (D.I. 319)), then claim that Royal has not met its burden to warrant production of such purported "secrets," and finally that they already existing confidentiality order in this case provides insufficient protection. The Accountants' arguments are flawed in several respects.

As a preliminary matter, the Accountants have not made any showing that the manuals at issue are, in fact, proprietary trade secrets. As made clear by *Media Vision* and other decisions,

---

[2] The use of internal auditing standards to evaluate *scienter* will not, as the Accountants claim, deter accounting firms from establishing high internal standards. This argument was specifically rejected in *Media Vision* where the court found that there was no evidence supporting the claim that the occasional production of audit manuals in litigation in any way caused accounting firms to "jettison[] or dilute[]" their internal policies. *Id.* at 589. *See also Gohler*, 162 F.R.D. at 695-6.

the trade secret protection of Rule 26(c) is not automatic; an accounting firm seeking protection must demonstrate, by submitting appropriate declarations, that the relevant manuals contain protected proprietary information still in use by the firm, and that "disclosing such information would be harmful." *Media Vision*, 215 F.R.D. at 588; *see also Gohler*, 162 F.R.D. at 693. Here, none of the Accountants has submitted such a declaration to this Court regarding the manuals in question, which are, at minimum, five years old. Instead, the Accountants hope to be excused from their obligation to make these showings on the ground that other courts—considering *different* sets of accountant's manuals involving different factual circumstances—have found those other documents to contain sensitive information. However, even *Worlds of Wonder*, cited by the Accountants, makes clear that each request for the production of manuals must be separately considered on a case-by-case basis. *Worlds of Wonder*, 147 F.R.D. at 216-17 (holding that accounting firm had "demonstrated to the court that its audit manuals are a closely-guarded trade secret and their disclosure to competitors probably would be harmful," but recognizing that other cases might be decided differently because "it is up to the court's discretion to determine the merits of each individual case"). In this matter, the Accountants have failed to meet their burden and have provided *no* evidence that their accountant's manuals qualify as trade secrets.

Further, even if the Accountants had established that, today, their audit manuals dating from 1999, 2000, and 2001 still constituted trade secrets, those manuals are not protected from production. As the bulk of the Accountants' own case law indicates, the question is not whether the accountants' manuals should be produced, but merely how. *See In re Mid American Waste Systems, Inc. Sec. Litig.*, 1997 WL 1045729 (D.N.J. Dec. 10, 1997) (authorizing production of "relevant portions of the audit manuals as referenced in the work papers"); *Peat, Marwick, Mitchell & Co. v. Creditor's Committee of Northeast Dairy Co-op. Fed'n., Inc.*, 65 B.R. 886, 889 (N.D.N.Y. 1986) (even without *scienter* allegations, court permitted attorneys to request

discovery of portions of audit procedures manuals sufficient to put information contained in auditors' work papers into context); *Media Vision*, 215 F.R.D. at 590 (ordering accountants to produce chapters of audit manuals referred to in audit work papers). Where a party has alleged that audit manuals are necessary for probing *scienter*—as Royal has done here—Courts have ordered the production of audit manuals, even when they were found to contain trade secrets. *See, e.g., Gohler*, 162 F.R.D. at 695.[3] The Court's previously issued Order For The Protection Of Confidential Information (D.I. 121) assures that whatever is contained in those manuals only is utilized in connection with this litigation.

Even the Accountants tacitly acknowledge that production of the audit manuals is warranted when they suggest that this Court should order production of the manuals "For Attorney's Eyes Only." (McGladrey Brief, p. 6, n. 3 (D.I. 319).) While, as a last resort, Royal does not oppose production of the accounting manuals pursuant to an attorney's eyes only designation if the Court feels such a designation is warranted, the Accountants have neither given this Court any factual basis on which to formulate an "attorneys' eyes only" protective order nor is their request for an automatic, blanket protective order proper. An "attorney's eyes only" designation is not granted without support. Just as the Accountants have not provided any basis for their trade secret claims, they have not provided any basis for the need for an

---

[3] *In re Worlds of Wonder Sec. Litig.*, 147 F.R.D. 214 (N.D. Cal. 1992), upon which the Accountants primarily rely (*see* McGladrey's Brief, pp. 2-5 (D.I. 319)), was subsequently rejected by a ruling in the same district. *See Media Vision*, 215 F.R.D. *passim* (N.D. Cal. 2003) (considering and rejecting each of the arguments made by the *Worlds of Wonder* court). Further, the *Worlds of Wonder* court, without citing to a single precedent concerning accountant's manuals, held only that the specific audit manuals before it—not accounting audit manuals generally—constituted trade secrets entitled to protection under Fed. R. Civ. P. 26(c)(7). The Accountants also rely on *Tonnemacher v. Sasak*, 155 F.R.D. 193 (D. Ariz. 1994), which adopted the *Worlds of Wonder* reasoning. However, in *Tonnemacher*, the court did not reach the salient issues presented here because the plaintiffs who were seeking discovery of the audit manuals never showed that such discovery would illuminate the accountants' *scienter*. As such, *Tonnemacher* is inapposite.

"attorneys' eyes only" designation. Indeed, courts have produced accounting manuals without such a designation. *See Mid American Waste Systems*, 1997 WL 1045729 at *4 (ordering production of relevant portions of audit manuals without "eyes only" designation). Additionally, even if such a designation were warranted, the protective order should allow Royal to apply for an exception to the "attorneys' eyes only" designation where the assistance of an accounting expert was required. *See, e.g., Media Vision*, 215 F.R.D. at 590; *Peat, Marwick*, 65 B.R. at 889.

**B.     The Accountants Must Produce Any Inter-Party Agreements**

Royal seeks production of any joint-defense agreements, tolling agreements, cooperation agreements, fee agreements, indemnity agreements, release, settlements, or any other agreement that bears on a party's rights, obligations and liabilities with respect to the litigation. In response, FMB and FMSM have represented that they do not have any "written joint defense agreement, cooperation agreement, fee agreement, or other similar agreement with any of the other defendants in this action." (Freed Brief, p. 3 (D.I. 318).) McGladrey and Aquino have represented that "no *formal* written agreement exists between *counsel* for the defendants" (McGladrey Br., p. 7 (emphasis added) (D.I. 319)), but suggest that written agreements do exist between the defendants, or some sub-set of, the defendants themselves (*id.*, pp. 7-8). The Accountants' basis for refusing to produce whatever written agreements do exist is "the joint defense or common interest privilege." (*Id.*, p. 6.)[4]

The Accountants confuse communications made pursuant to a joint defense or other agreement, which Royal does not seek, with the agreements themselves. The agreements themselves are not protected from disclosure by the joint defense privilege. *See LaForest v.*

---

[4] Royal obviously does not seek to compel production of written agreements that do not exist. However, Royal was never told by the Accountants during any of the several meet and confer communications that preceded the filing of Royal's Motion that some of the agreements sought do not exist.

*Honeywell Int'l. Inc.*, 2004 WL 1498916, *4 (W.D.N.Y. 2004) (holding that joint defense agreement "does not itself attain the level of privileged communications"), *citing Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, 1996 WL 71507 (S.D.N.Y. 1996) (holding that a "[joint defense] agreement is an understanding among adversaries.... At best, the agreement is akin to a retainer agreement. It may serve to establish that the relationship of attorney to client exists for purposes of the joint prosecution of the case and therefore shield some subsequent communications in furtherance of the joint enterprise, but does not itself attain the level of privileged communication"). Indeed, Royal has itself produced its joint defense agreement with the Trustee in this action at the behest of the Accountants' co-defendant, Pepper Hamilton. Royal seeks just such agreements the Accountants may have with Pepper, any other party, or each other.

Although the Accountants cite several cases for the proposition that communications subject to a joint defense privilege are privileged (*see* McGladrey's Br., p. 7 (D.I. 319)), they cite no case law holding that joint defense, indemnification, or similar type agreements are, themselves, subject to a joint defense privilege, nor do they cite any case law rejecting the *LaForest* and *Bank Brussels* holdings that require such agreements to be produced. The Accountants attempt to distinguish those cases because they concerned settlements between adverse parties, but that is a distinction without a difference. The simple import of those holdings—unrefuted by any contrary case law—is that inter-party agreements are not, in themselves, privileged.

The Accountants quarrel with Royal's need for such inter-party agreements to show bias and argue that "the court in *Bank Brussels* held that only *the fact* that an indemnification agreement exists between parties is relevant to potential bias, and that production of the actual agreement is unnecessary." (McGladrey Br., p. 8.) The Accountants materially misstate the

holding of *Bank Brussels*. There, the court rejected all claims of privilege regarding a settlement agreement and joint defense agreement and ordered production of both without requiring any particularized showing of need for such documents. *Bank Brussels*, 1996 WL 71507 at *4-*6. While the court found, on the particular facts of that case, that no showing had been made that the particular agreements at issue would add to any claims of bias, it nevertheless commanded production of such documents even in the absence of such a showing. *Bank Brussels* in no way suggests that the inter-party agreements that Royal seeks cannot or should not be produced here.

C.  **Documents Relating To Any Contemplated Merger Among The Accountants Is Discoverable**

As noted in Royal's opening brief, Aqunio worked for at least FMSM, who issued at least three sets of accounting reports at issue in this case and then, at some point, McGladrey, with Aquino in tow, emerged from FMSM. And, as Royal demonstrated at length in its opposition to FMB's motion to dismiss (D.I. 44), there is abundant evidence that FMB is the actual successor to FMSM. For example: FMB and FMSM share the same address and same Chairman/Chief Executive Officer; public documents indicate that FMSM changed its name to FMB; and numerous documents indicate that FMB has been in existence over 40 years, suggesting that FMB was not created new in 2001 but rather succeeded FMSM. (Royal's Opposition to Defendants' Motions to Dismiss, pp. 78-79 (D.I. 44).) As Royal showed in its opposition to the Accountants' motions to dismiss, there is ample publicly available evidence to support the relevance of Royal's inquiry into the relationship between FMSM, FMB and McGladrey. (*Id.*)

The Accountant's objection to producing evidence of their former and current relationships is little more than a flat assertion that FMSM is the proper party and therefore no documents need to be produced. Clearly Royal is entitled to test and confirm the Accountants' claim. Royal's request for documents concerning any merger, separation, or other relationship

between or among the Accountants is specifically seeking evidence that will help to unravel the FMB/FMSM/McGladrey relationship.

D.  **Royal's Request For Certain Employee Evaluations Is Proper**

As discussed in Royal's opening brief, Royal already has produced to the Accountants the evaluations of its personnel who participated in SFC-related matters. The Accountants now, inexplicably, seek to avoid producing the equivalent information about their own employees. The Accountants' position is both unfair and unsupported by case law.

The general law concerning employee evaluations was outlined in Royal's opening brief. Where there is a split in authority as to whether production of an auditor's performance evaluations should typically be required, even the Accountants' cases acknowledge that performance evaluations should be produced where that information is clearly relevant. *See, e.g., New York Stock Exch., Inc. v. Sloan*, 1976 WL 169086, at *3-4 (S.D.N.Y. Oct. 21, 1976). As discussed at length above, whether the performance of the SFC audits was conducted in accordance with the Accountants' stated internal policies is relevant to the issue of *scienter*. For the same reason, the Accountants' evaluations of those auditors is similarly relevant to establishing *scienter* insofar as such evaluations may reveal whether the Accountants condoned or corrected the performance of its employees.

Although the Accountants cite a number of cases as purportedly holding that "accountant performance reviews or evaluations are irrelevant to whether an audit was conducted properly," a careful reading of those cases reveals otherwise:

- In *Sloan*, the accounting firm was alleged to have acted only **negligently**, not willfully or as part of a conspiracy. Without being presented with any need to prove *scienter*, the court not surprisingly concluded under the facts of that case that performance evaluations would not provide further evidence as to whether the audit was conducted negligently. *Sloan*, 1976 WL 169086.

- The *Sunrise Security* court likewise found that allegations of ***mere negligence*** did not make performance evaluations relevant. It also found that any allegations of fraud or conspiracy were not adequately made out to justify discovery of those evaluations. Of course, by contrast, Royal has made clear allegations of both fraud and conspiracy which have survived several motions to dismiss. *In re Sunrise Securities Litig.*, 130 F.R.D. 560, 580 (E.D. Pa. 1989).

- In *Del-Val*, defendant accounting firm in fact "produced internal personnel records evaluating the performance of its accountants on the [] audits." *In re Del-Val Fin. Corp. Sec. Litig.*, 158 F.R.D. 275, 277 (S.D.N.Y. 1994).

- *Stabilus* was a legal malpractice case concerning advice rendered by a law firm in connection with a labor negotiation. The court denied discovery of the client company's negotiating team's performance evaluations because their performance was not relevant to the question of whether the law firm provided competent advice. Contrary to the Accountants' representation, *Stabilus* did not concern "accountant performance reviews" in any way. *Stabilus v. Haynsworth Baldwin, Johnson and Greaves, P.A.*, 144 F.R.D. 258, 266-67 (E.D. Pa. 1992).

In short, none of the cases advanced by the Accountants alters the analysis originally described by Royal in its opening brief: in cases where performance evaluations are clearly relevant and the information is not otherwise readily obtainable, discovery of such evaluations is proper. Here, for all of the reasons discussed above, the evaluations are clearly relevant to the Accountants' *scienter*, and the information contained therein is simply not obtainable by any other means. This Court should order production of those evaluations. And if this Court is inclined to rule otherwise, it should order the performance evaluations already produced by Royal returned, and preclude all use of, or reference to, those evaluations in future depositions or at trial by any party.

E.  **Documents Related to Michael Aquino's Departure from McGladrey Should Be Produced.**

With respect to Royal's request for documents concerning Michael Aquino's departure from McGladrey, the Accountants claim either that the are no documents or, if there are such documents (McGladrey implies there is at least an indemnification agreement) (McGladrey Br.,

- 10 -

p. 9 (D.I. 319)), they are covered by the joint defense privilege. As discussed above in section B, the Accountants are wrong—the joint defense privilege does not protect the indemnification agreement itself. The Accountants make the additional argument that they should not be required to produce any agreement whereby McGladrey promised to pay for Mr. Aquino's legal costs because such an agreement is "extremely commonplace" and "possibly constitutionally required." (McGladrey's Brief, p. 9 (D.I. 319)) Whether or not such an agreement is "commonplace," it is nonetheless evidence that might tend to show bias. As for the Accountants' dramatic constitutional argument, it appears that the Accountants have confused the constitutional right to counsel inherent to criminal cases with the gratuitous provision of counsel in a civil case. *U.S. v. Stein*, 435 F. Supp. 2d 330 (S.D.N.Y. 2006), cited by the Accountants, is not to the contrary.

## CONCLUSION

For the foregoing reasons, Royal respectfully submits that its Motion should be granted.

| | |
|---|---|
| *Of Counsel:* | ASHBY & GEDDES |
| | /s/ Tiffany Geyer Lydon |
| Michael H. Barr | _____ |
| SONNENSCHEIN NATH & ROSENTHAL LLP | Philip Trainer, Jr. (I.D. #2788) |
| 1221 Avenue of the Americas | Tiffany Geyer Lydon (I.D. #3950) |
| New York, New York 10020-1089 | 222 Delaware Avenue, 17th Floor |
| (212) 768-6700 | P.O. Box 1150 |
| | Wilmington, Delaware 19899 |
| - and - | (302) 654-1888 |
| | ptrainer@ashby-geddes.com |
| John Grossbart | tlydon@ashby-geddes.com |
| Steve Merouse | |
| SONNENSCHEIN NATH & ROSENTHAL LLP | *Attorneys for Plaintiff* |
| 7800 Sears Tower | *Royal Indemnity Company* |
| 233 S. Wacker Drive | |
| Chicago, Illinois 60606 | |
| (312) 876-8000 | |

Dated: December 1, 2006
175668.1

# CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of December, 2006, the attached **PLAINTIFF ROYAL INDEMNITY COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMEL PRODUCTION OF DOCUMENTS FROM ACCOUNTANT-DEFENDANTS** was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| William H. Sudell, Jr., Esquire<br>Morris Nichols Arsht & Tunnell<br>1201 North Market Street<br>Wilmington, DE 19899-1347 | <u>HAND DELIVERY</u> |
| James L. Holzman, Esquire<br>J. Clayton Athey, Esquire<br>Prickett, Jones & Elliott, P.A.<br>1310 King Street<br>Wilmington, DE 19899 | <u>HAND DELIVERY</u> |
| Michael R. Lastkowski, Esquire<br>Christopher M. Winter, Esquire<br>Duane Morris LLP<br>1100 North Market Street, Suite 1200<br>Wilmington, DE 19801 | <u>HAND DELIVERY</u> |
| John W. Shaw, Esquire<br>Young Conaway Stargatt & Taylor, LLP<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, DE 19899 | <u>HAND DELIVERY</u> |
| Karen Lee Turner, Esquire<br>Susan E. Poppiti, Esquire<br>Eckert Seamans Cherin & Mellott, LLC<br>300 Delaware Avenue, Suite 1210<br>Wilmington, DE 19801 | <u>HAND DELIVERY</u> |

| | |
|---|---|
| Daniel K. Astin, Esquire<br>Meg Augustine, Esquire<br>The Bayard Firm<br>222 Delaware Avenue, Suite 900<br>Wilmington, DE 19801 | **HAND DELIVERY** |
| John H. Eickemeyer, Esquire<br>Jonathan A. Wexler, Esquire<br>Vedder, Price, Kaufman & Kammholz, P.C.<br>805 Third Avenue<br>New York, NY 10022 | **FEDERAL EXPRESS** |
| Elizabeth K. Ainslie, Esquire<br>Schnader Harrison Segal & Lewis LLP<br>1600 Market Street, Suite 3600<br>Philadelphia, Pennsylvania 19103 | **FEDERAL EXPRESS** |
| Richard P. Swanson, Esquire<br>Veronica E. Rendon, Esquire<br>Jason M. Butler, Esquire<br>Arnold & Porter LLP<br>399 Park Avenue<br>New York, NY 10022-4690 | **FEDERAL EXPRESS** |
| Steven M. Farina, Esquire<br>Thomas H.L. Selby<br>Amber M. Mettler<br>Williams & Connolly LLP<br>725 Twelfth Street, NW.<br>Washington, DC 20005 | **FEDERAL EXPRESS** |
| Neil G. Epstein, Esquire<br>Eckert Seamans Cherin & Mellott, LLC<br>1515 Market Street, 9th Floor<br>Philadelphia, PA 19102 | **FEDERAL EXPRESS** |
| Michael S. Waters, Esquire<br>Lois H. Goodman, Esquire<br>McElroy, Deutsch, Mulvaney & Carpenter, LLP<br>Three Gateway Center<br>100 Mulberry Street<br>Newark, NJ 07102-4079 | **FEDERAL EXPRESS** |

2

| | |
|---|---|
| James J. Rodgers, Esquire<br>Laura E. Vendzules, Esquire<br>Andrew M. Marble, Esquire<br>Dilworth Paxson LLP<br>3200 Mellon Bank Center<br>1735 Market Street<br>Philadelphia PA 19103-7595 | <u>FEDERAL EXPRESS</u> |
| Andre G. Castaybert, Esquire<br>Ronald Rauchberg, Esquire<br>Steven Obus, Esquire<br>David McTaggart, Esquire<br>Proskauer Rose LLP<br>1585 Broadway<br>New York, NY  10036-8299 | <u>FEDERAL EXPRESS</u> |
| Student Loan Servicing LLC<br>1405 Foulk Road, Suite 102<br>Wilmington, DE  19803-2769 | <u>U.S. MAIL</u> |
| Andrew N. Yao<br>107 Leighton Drive<br>Bryn Mawr, PA  19010 | <u>U.S. MAIL</u> |

/s/ *Tiffany Geyer Lydon*
_____
Tiffany Geyer Lydon

170005.1

3