**Duane Morris®**

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
LOS ANGELES
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
ALLENTOWN
WILMINGTON
HARRISBURG
PRINCETON
LAKE TAHOE

CHRISTOPHER M. WINTER
DIRECT DIAL: 302.657.4951
E-MAIL: cmwinter@duanemorris.com

www.duanemorris.com

February 7, 2007

Honorable Joseph J. Farnan, Jr.
United States District Court
for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street, Room 4124
Wilmington, DE 19801

Re:  **Royal Indemnity Co. v. Pepper Hamilton LLP, et al., C.A. No. 05-cv-165**

Dear Judge Farnan:

Enclosed please find a revised version of McGladrey & Pullen LLP's Letter of Request Pursuant to the Hague Convention of March 18, 1970 on the Taking of Evidence in Civil or Commercial Matters, which version incorporates the changes agreed upon by the parties at the hearing this afternoon before Your Honor.

I am available should Your Honor have any questions.

Respectfully submitted,

Christopher M. Winter

cc:  All counsel of record (w/ enclosures)

DUANE MORRIS LLP

1100 NORTH MARKET STREET, SUITE 1200    WILMINGTON, DE 19801-1246                PHONE: 302.657.4900  FAX: 302.657.4901
DM3\450704.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROYAL INDEMNITY COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 05-165-JJF |
| ) | |
| PEPPER HAMILTON LLP, W. RODERICK ) | |
| GAGNÉ, FREED MAXICK & BATTAGLIA ) | |
| CPAs PC, McGLADREY & PULLEN, LLP, ) | |
| MICHAEL AQUINO, and FREED MAXICK ) | |
| SACHS & MURPHY, P.C., ) | |
| ) | |
| Defendants. ) | |

**LETTER OF REQUEST PURSUANT TO THE HAGUE CONVENTION OF MARCH 18, 1970 ON THE TAKING OF EVIDENCE IN CIVIL OR COMMERCIAL MATTERS**

DUANE MORRIS LLP
Michael R. Lastowski (Bar No. 3892)
Christopher M. Winter (Bar No. 4163)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Phone: 302-657-4951
Fax: 302-657-4901

-and-

| | |
|---|---|
| ARNOLD & PORTER LLP | WILLIAMS & CONNOLLY LLP |
| Veronica E. Rendon | Steven M. Farina |
| Jason M. Butler | Thomas H. L. Selby |
| 399 Park Avenue | 725 Twelfth Street, N.W. |
| New York, NY 10022 | Washington, D.C. 20005 |
| Phone: 212-715-1000 | Phone: 202-434-5000 |
| Fax: 212-715-1399 | Fax: 202-434-5029 |
| | |
| Attorneys for McGladrey & Pullen, LLP and Michael Aquino | Attorneys for McGladrey & Pullen, LLP |

DM3\435180.2

I.      United States District Court for the District of Delaware, J. Caleb Boggs Federal Building, 844 N. King Street, Wilmington, DE 19801, U.S.A., to The Supreme Court, Royal Courts of Justice, The Strand, London WC2A 2LL, England, U.K., Attention: Senior Master of the Queen's Bench Division of the High Courts of Justice.

II.      In conformity with Article 3 of the Hague Convention of March 18, 1970 on the Taking of Evidence in Civil or Commercial Matters "the Convention"), the undersigned applicant has the honor to submit the following request to take evidence for use at trial:

The United States District Court for the District of Delaware presents its compliments to the competent judicial authority in the United Kingdom, and requests its assistance in the following manner:

    a.    The parties to a certain litigation pending before the United States District Court for the District of Delaware are as follows:

        (i)    The plaintiff is Royal Indemnity Company ("RIC"), represented by Sonnenschein Nath & Rosenthal, 8000 Sears Tower, 233 S. Wacker Drive, Chicago, IL 60606.

        (ii)    The defendants are Pepper Hamilton LLP, represented by Schnader Harrison Segal & Lewis LLP, 1600 Market Street, Suite 3600, Philadelphia, PA 19103; W. Roderick Gagne, represented in his capacity as a partner of Pepper Hamilton, LLP, by Schnader Harrison Segal & Lewis LLP, 1600 Market Street, Suite 3600, Philadelphia, PA 19103 and in his individual capacity by Eckert Seamans Cherin & Mellott, LLC, 1515 Market Street, 9th Floor, Philadelphia, PA 19102; McGladrey & Pullen, LLP ("McGladrey"), represented by Williams & Connolly LLP, 725 12th St., N.W., Washington, DC 20005 and Arnold & Porter, 399 Park Avenue, New York, NY 10022; Michael Aquino, represented by Arnold & Porter, 399 Park Avenue, New York, NY 10022; and Freed Maxick Sacks & Murphy, P.C. ("Freed Maxick") and

Freed Maxick & Battaglia CPAs PC, represented by Vedder, Price, Kaufman & Kammholz, P.C., 805 Third Avenue, New York, NY 10022.

b. This is a civil suit concerning losses that Royal Indemnity Company ("RIC") alleges it suffered on credit risk insurance policies it issued on a series of loan securitization transactions initiated by Student Finance Corporation ("SFC"), a company that originated and purchased sub-prime student loans. SFC went bankrupt in 2002, and RIC alleges it was exposed to hundreds of millions of dollars of liability on the SFC policies. RIC seeks to establish that its losses stem from a series of fraudulent business practices and a conspiracy to hide the fraud from RIC. Defendant McGladrey avers that it was a failure of underwriting, not fraud by the Accountants that caused RIC's losses, and it asserts defenses of contributory negligence and/or comparative fault, assumption of risk, lack of causation, reckless indifference and/or intentional misconduct, and a failure to mitigate damages. The trial of this action is set to commence on October 10, 2007.

c. The evidence to be obtained consists of documents in the possession of Royal & SunAlliance Insurance Group plc ("RSA"). RSA's Registered Offices are located in the United Kingdom at 9th Floor, One Plantation Place, 30 Fenchurch Street, London EC3M 3BD. Defendant McGladrey seeks documents on the following subjects at issue in the trial, and on which McGladrey contends RSA has relevant evidence to give:

(1) knowledge of and participation in the development, oversight and enforcement of RSA and RIC's policies and procedures regarding underwriting standards, risk management and due diligence and RIC's compliance or lack of compliance with theses policies and procedures concerning the SFC transactions;

(2) knowledge of and participation in RSA's established guidelines for oversight throughout its worldwide operations and the development of the structure for RSA's Structured Risk Financing Business Group that encompassed RIC's Financial Enhancement Unit ("FEU"), which, in turn, undertook the SFC transactions;

(3) knowledge of and participation in negotiations with credit rating agencies, such as Standard & Poor's, to preserve RSA's credit rating in light of the higher risks associated with the Structured Risk Financing Business and the SFC transactions in particular;

(4) knowledge of, participation in, and execution of decision to terminate RIC's Financial Enhancements Unit ("FEU"), which undertook the SFC transactions;

(5) knowledge of and participation, in the aftermath of SFC's collapse, in assessing and mitigating damages from the SFC transactions and evaluating the underwriting failures and "lessons learned;"

(6) knowledge of and participation in a May 28, 2002 meeting with advisors from Grant Thornton, hired to analyze what went wrong with the SFC transactions, SFC, RIC, and RSA involving discussions as to how to develop a recovery strategy;

(7) knowledge of and participation in securing reinsurance coverage for the SFC transactions;

(8) knowledge of and participation in RIC's presentations to RSA's Group Audit Committee to discuss the failings of the FEU with respect to the SFC transactions, specifically including a briefing to the Audit Committee on May 15, 2002, a presentation to the Audit Committee on May 15, 2002, and semi-annual and annual reports submitted to the Audit Committee.

McGladrey contends that it requires documents in RSA's possession for use in proving McGladrey's defenses at the trial of this case, that RIC's losses are due to its own inexperience, negligent due diligence failures, and reckless violations of corporate risk management and underwriting policies, rather than an elaborate conspiracy to conceal fraud. McGladrey's document requests cover primarily the time period between 1998 – 2002. McGladrey contends that:

- During that time, RSA set corporate policies across its global operations and oversaw its subsidiaries, including RIC's, performance and compliance with corporate control policies;

- RSA established the framework in which the Structured Risk Financing Business was allowed to operate;

- RSA negotiated with the credit rating agencies to preserve its rating when the high risk associated with this new business threatened a rating downgrade;

- RSA purported to monitor and understand the particulars of the SFC transactions and require that RIC receive its approval on new large exposures;

- When SFC collapsed, RSA assessed and mitigated the resulting damage;

- It evaluated RIC's performance and operating procedures to determine where the failings were;

- And RSA took over reinsurance negotiations for the SFC transactions and met outside advisors to determine a recovery strategy;

- Because of RSA's direct involvement in, supervision over, and evaluation of RIC, the FEU, and the SFC transactions, the requested documents are necessary for the trial of this matter.

Royal disagrees with these contentions.

This Court wishes to emphasize that the purpose of this letter of request is solely to obtain evidence for use at trial, and this request has no "discovery" purpose.

III.    Accordingly, it is hereby requested that in the interest of justice, you cause by your proper process, such orders to be entered as English law permits directing that the

DM3\435180.2

documents enumerated in Schedule A, attached hereto, being documents which appear to be or are in the possession, custody or power of RSA, be produced by RSA for inspection and copying by counsel for petitioner at a time and place to be determined by you.

      This Court expresses its appreciation of the competent authority in the United Kingdom for its courtesy and assistance in this matter and states that it shall be ready and willing to assist the courts of the United Kingdom in a similar manner when required.

Dated:

_____
UNITED STATES DISTRICT JUDGE

## SCHEDULE A

1. The 2002 forecast that was reported to the Board and referenced in Julian Hance's email, dated April 17, 2002, at ROY 165279. (Exhibit 1)

2. All responses to Julian Hance's email, dated April 17, 2002, at ROY 165279. (Exhibit 1)

3. The presentations made by the "US team" to the audit committee on or about May 7, 2002 and May 15, 2002, as referenced in the email from Julian Hance, dated April 17, 2002, at ROY 165279. (Exhibit 1)

4. The First Quarter Control Self Appraisal Certification submitted to RSA for the quarter ending March 31, 2002, referenced in Joe Fisher's email, dated April 17, 2002, at ROY 165280-1. (Exhibit 2)

5. The "report" prepared by RIC for "local management, WGO, and the Group Audit Committee" referenced in Ian Hutchinson's email, dated April 17, 2002, at ROY 165280. (Exhibit 2)

6. Joe Fisher's "note of April 4" outlining the policy that "any new transactions over $25 M in exposure will require the approval of Rick Hudson," referenced in Julian Hance's email, dated May 2, 2000, at ROY 165354. (Exhibit 3)

7. Email correspondence from Rod Hoover, including John Tighe, in October 2001 regarding "rating downgrades," as referenced in John Tighe's email to Bill Hibberd, dated October 25, 2001, at ROY 105773. (Exhibit 4)

8. Appendixes 1-7 referenced in the "Risk Financing Products" document, prepared by members of the Royal & SunAlliance Group plc ("RSA"), UK, US and Canadian risk finance organizations on or about August 2, 2000, at ROY 175091-94. (Exhibit 5)

9. The "memorandum from Joe Fisher outlin[ing] some guiding principles," that was "widely distributed" following a conference call that included Bob Mendelsohn, Julian Hance, Rick Hudson, Joe Fisher, Rod Hoover and Larry Gowen, that was discussed at an April 10, 2000 meeting in Dublin, and which is referenced in the email from Rod Hoover, dated April 11, 2000, at ROY 164103.01. (Exhibit 6)

10. The responses to Rod Hoover's email dated April 5, 2000, requesting feedback from Julian Hance, Rick Hudson, Raj Sabharwal, Ruth Earnshaw, Martin Hoad, Stephen Mulready, and Marian Povey, on the May 8, 2000 presentation to Standard & Poor's, at ROY 165356. (Exhibit 7)

11. Rod Hoover's "report" on his April 5, 2000 discussion with Bob Mebus from Standard & Poor's, referenced in his email dated April 5, 2000 at ROY 165358. (Exhibit 7)

12. Rod Hoover's response to Bill Hibberd's email, dated January 25, 2001, asking how to proceed with a new SFC transaction, at ROY 165369. (Exhibit 8)

13. The "UK Green Paper," which required the Financial Enhancement business "have a formal review process," referred to in Bill Hibberd's email, dated May 30, 2001, at ROY 164497. (Exhibit 9)

14. RSA's response to the Financial Services Authority's questions "regarding [the] financial enhancement businesses" in May 2002, as referenced in Charlie Schuver's email, dated May 10, 2002, at ROY 106755. (Exhibit 10)

15. The "presentation" made to Bob Gunn and Bob Mendelsohn on May 28, 2002 regarding "alternatives with SFC," referenced in Gil Chandler's email, dated May 16, 2002, at ROY 166215. (Exhibit 11)

16.   The summary prepared by RIC for Rick Hudson in approximately December 2002 "to provide an overall Group . . . picture of the reserves and booking details to date [and including] a recap of the loss estimates and assumptions with an indication of what the future potential result might be," referenced in the document entitled "Financial & Insurance Risk Management Portfolio Review and Update as of December 2003," at ROY 173863. (Exhibit 12)

17.   The "Specialty business plan" that Stephen Mulready presented to Julian Hance on December 1, 2000, as referenced in his email, dated November 6, 2000, at ROY 036642-43. (Exhibit 13)

18.   RIC's semi-annual and annual reports submitted in 2002 to the Group Audit and Compliance Committee.