IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROYAL INDEMNITY COMPANY,          :
                                  :
          Plaintiff,              :
                                  :
     v.                           :     Civil Action No: 05-165-JJF
                                  :
PEPPER HAMILTON LLP,              :
W. RODERICK GAGNÉ, FREED          :
MAXICK & BATTAGLIA CPA'S PC,      :
MCGLADREY & PULLEN LLP,           :
MICHAEL AQUINO, and FREED         :
MAXICK SACHS & MURPHY, P.C.       :
                                  :
          Defendants.             :
_____

Philip Trainer, Jr., Esquire and Tiffany Geyer Lydon, Esquire of
ASHBY & GEDDES, Wilmington, Delaware.
Attorneys for Plaintiff.

William H. Sudell, Jr., Esquire and Daniel Bryan Butz, Esquire of
MORRIS NICHOLS ARSHT & TUNNELL, Wilmington, Delaware.
Bruce P. Merenstein, Esquire, Elizabeth K. Ainslie, Esquire,
Nicholas J. LePore, Esquire and Stephen J. Shapiro, Esquire of
SCHNADER HARRISON SEGAL & LEWIS LLP, Philadelphia, Pennsylvania.
Attorneys for Defendant Pepper Hamilton LLP and W. Roderick
Gagné.

James L. Holzman, Esquire and J. Clayton Athey, Esquire of
PRICKETT JONES & ELLIOTT, P.A., Wilmington, Delaware.
John H. Eickemeyer, Esquire and Marie A. Tieri, Esquire of
VEDDER, PRICE, KAUFMAN, & KAMMHOLZ, P.C., New York, New York.
Attorneys for Defendant Freed Maxick & Battaglia CPA's PC.

Christopher M. Winter, Esquire of DUANE MORRIS LLP, Wilmington,
Delaware.
Amber M. Mettler, Esquire, Steven M. Farina, Esquire, and Thomas
H.L. Selby, Esquire of WILLIAMS & CONNOLLY LLP, Washington, D.C.
Richard P. Swanson, Esquire, Veronica E. Rendon, Esquire, and
Jason M. Butler, Esquire of ARNOLD & PORTER LLP, New York, New
York.
Attorneys for Defendant McGladrey & Pullen LLP.

Christopher M. Winter, Esquire of DUANE MORRIS LLP, Wilmington, Delaware.
Attorney for Defendant Michael Aquino.

J. Clayton Athey, Esquire of PRICKETT, JONES, & ELLIOTT, P.A., Wilmington, Delaware.
Attorney for Defendant Freed Maxick Sachs & Murphy, P.C.

---

**MEMORANDUM OPINION**

March 22, 2007
Wilmington, Delaware

Joseph J. Farnan Jr.
Farnan, District Judge

On March 31, 2006, the Court entered an Order (D.I. 122)
granting in part Plaintiff's Motion To Compel And For Sanctions
(D.I. 84) and denying the following motions to dismiss filed by
the Defendants: 1) Motion To Dismiss for Failure To State A Claim
filed by Freed Maxick & Battaglia CPA's PC (D.I. 29); 2) Motion
To Dismiss Based Upon Motion Of W. Roderick Gagné For The
Dismissal Of Plaintiff's First Amended Complaint filed by W.
Roderick Gagné (D.I. 32); 3) Motion To Dismiss Based Upon Motion
Of Pepper Hamilton LLP For The Dismissal Of Plaintiff's First
Amended Complaint filed by Pepper Hamilton LLP (D.I. 35); and 4)
Motion To Dismiss For Failure To State A Claim filed by McGladrey
& Pullen LLP and Michael Aquino (D.I. 58).  The Court's reasons
are discussed herein.

**I.    BACKGROUND**

The following facts are alleged in Plaintiff's Amended
Complaint (D.I. 14).  Plaintiff is a Delaware Capital Stock
Insurance Company with its principal place of business in North
Carolina.  Defendant Pepper Hamilton, LLP ("Pepper") is a
Pennsylvania limited liability general partnership which provides
legal services.  Defendant W. Roderick Gagné ("Gagné") was, at
the time of the filing of this action, a partner in the
Philadelphia office of Pepper Hamilton, LLP.  Defendants Freed
Maxick & Battaglia CPAs, PC ("Freed") and McGladrey & Pullen, LLP

1

("McGladrey") are accounting firms.  Freed is headquartered in
Buffalo, New York.  McGladrey is headquartered in Bloomington,
Minnesota.  Defendant Michael Aquino ("Aquino"), was, at the time
of filing of this action, a Managing Director and Partner with
McGladrey.

The instant action relates to the operations of Student
Finance Corporation ("SFC"), which was in the business of
originating, purchasing, and selling tuition loans primarily to
students of truck driving schools.[1]  Defendants Pepper and Aquino
became involved with SFC around 1998 by providing legal and
accounting services, respectively.  In the summer of 1998, an
insurance broker contacted Plaintiff on behalf of SFC regarding
the opportunity to provide credit risk insurance to SFC.
Thereafter, SFC communicated to Plaintiff information about its
loan programs.  Plaintiff alleges that these communications
contained numerous material misrepresentations.

On January 22, 1999, Plaintiff issued to SFC a credit risk
insurance policy with a liability limit of $75 million.  The
policy was intended to provide coverage for loan defaults by
students.  Plaintiff alleges that SFC made payments on behalf of
its borrowers to conceal defaults, referring to them as

---

[1] On June 5, 2002, SFC was the subject of an involuntary
petition under Chapter 7 of the Bankruptcy Code in the United
States Bankruptcy Court for the District of Delaware.

"forbearance payments" or "ghost payments". These payments were allegedly reported to Plaintiff as if they were made by the student borrowers, thus, distorting the actual rate of default. Plaintiff alleges the accountant Defendants (Freed, McGladrey, and Aquino) knowingly aided and abetted SFC in disguising that the payments were made by SFC itself. Plaintiff further alleges that Defendant Pepper knew the payments made by SFC manipulated the true performance of the loan activity.

Plaintiff alleges that, based on misrepresentations made by Defendants, it issued numerous additional credit risk insurance policies to cover SFC loans between 1999 and November 2001. Plaintiff alleges it relied on numerous documents drafted by the Defendants regarding SFC's financial situation and its loan performance; specifically: 1) monthly "servicer reports" issued by SFC to Plaintiff regarding the performance of SFC loans; 2) an Independent Accountant's Report issued in 2001 by McGladrey and Aquino which did not disclose that SFC was making "ghost payments"; 3) Private Placement Memoranda drafted by SFC and Pepper which failed to disclose the "ghost payments"; 4) an Independent Auditor's Report issued in 2000 by Freed which certified SFC's financial statements for 1998 and 1999; 5) an Independent Auditor's Report issued in 2001 by McGladrey under Aquino's supervision which certified SFC's financial statements for 2000; and 6) notes with SFC's 2000 financial statements for

3

which McGladrey assisted with the drafting.  Plaintiff also alleges that, after expressing concern for a high number of delinquent loans, it relied on false statements knowingly made by Andrew N. Yao, owner of SFC, that the delinquencies were caused by students making advance payments.  The statements were made in the presence of Gagné, who allegedly knew the statements were false.

On or around March 20, 2002, Mr. Yao admitted to Plaintiff that SFC had been making "forbearance payments" to reduce the number or appearance of defaulted student loans.  On or around April 10, 2002, an SFC officer disclosed in an email to Plaintiff that SFC had made more than $50 million in "ghost payments" between January 2001 and March 2002 on policies which Plaintiff insured.

On March 18, 2005, Plaintiff filed its original Complaint. On April 12, 2005, Plaintiff filed its Amended Complaint (D.I. 14) asserting claims for fraud, conspiracy to commit fraud, aiding and abetting fraud and breach of fiduciary duty, negligence and negligent misrepresentation in connection with the student loan financing operations of Student Finance Corporation. Plaintiff also asserted claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") against Defendants Gagné and Aquino.

4

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  When considering a motion to dismiss, a court must accept as true all allegations in the complaint and must draw all reasonable factual inferences in the light most favorable to the plaintiff.  Neitzke v. Williams, 490 U.S. 319, 326-27 (1989); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255 (3d Cir. 1994).  However, the Court is "not required to accept legal conclusions either alleged or inferred from the pleaded facts."  Kost, 1 F.3d at 183.  Dismissal is only appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## III. DISCUSSION

A.  Motion To Compel And For Sanctions (D.I. 84)

By its Motion, Plaintiff contends that the Defendants McGladrey, Freed, and Aquino have not complied with the Court's Order (D.I. 38) to commence written discovery on September 7, 2005.  Plaintiff further contends that sanctions are warranted

5

because the Defendants McGladrey, Freed, and Aquino have acted in bad faith in refusing to comply with the Court's Order regarding the scheduling of discovery.  In response, the Defendants contend they were waiting for the Court to resolve the pending motions to dismiss before commencing discovery in full compliance with the Court's Order (D.I. 38).

The Court concludes that a proper reading of its Order is that written discovery was to commence on September 7, 2005, regardless of the status of the motions to dismiss.  The Court accepts the Defendants' assertion that the Court had indicated that addressing the motions to dismiss would be a priority.  The Court, however, disagrees with the Defendants' conclusion that written discovery was not to commence before the motions to dismiss were resolved.  Thus, the Court concludes that written discovery, including the production of relevant documents, shall occur pursuant to the instructions in the Court's Order entered June 13, 2005 (D.I. 38).

Further, the Court accepts the Defendants' assertion that no party has produced a single document as of the date of filing its answer brief in response to Plaintiff's Motion To Compel. Because Plaintiff has not demonstrated that Defendants have acted in bad faith, the Court concludes that sanctions are not warranted at this time.  Accordingly, the Court will grant in part Plaintiff's Motion To Compel (D.I. 84) and deny the Motion in part to the extent Plaintiff requests an award of sanctions.

6

B.    Motions To Dismiss For Failure To State A Claim (D.I. 29, 32, 35, 58)

By its motions to dismiss, Defendants raise the same or similar arguments.  Therefore, the Court will address the issues raised by the motions collectively.

1.    Whether Plaintiff's RICO Claims Are Precluded By The Private Securities Litigation Reform Act

Defendant Gagné contends that because the predicate acts on which Plaintiff bases its claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") allege fraud in the purchase or sale of securities, the claims are barred by the Private Securities Litigation Reform Act ("PSLRA") pursuant to 18 U.S.C. § 1964(c).  In response, Plaintiff contends that the PSLRA does not apply to preclude its claims because the predicate acts alleged are not actionable as securities fraud.

The PSLRA precluded from the type of conduct that could qualify as a predicate act to establish a violation of RICO "any conduct that would have been actionable as fraud in the purchase or sale of securities."  18 U.S.C. § 1964(c); see PSLRA Pub.L. No. 104-67, 109 Stat. 737 (1995).  "[T]he proper focus of the analysis is on whether the conduct pled as predicate offenses is 'actionable' as securities fraud - not on whether the conduct is 'intrinsically connected to, and dependent upon' conduct actionable as securities fraud." Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc., 189 F.3d 321, 330 (3d. Cir. 1999).

In its Amended Complaint, Plaintiff alleges that mail and wire fraud are the predicate acts of the RICO-violating conduct. More specifically, Plaintiff alleges that the Defendants made fraudulent misrepresentations to Plaintiff which induced it to issue insurance policies. Construing the Amended Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff has alleged predicate acts that do not constitute conduct "actionable as fraud in the purchase or sale of securities." Thus, Plaintiff's claims are not barred by the PSLRA pursuant to 18 U.S.C. § 1964(c).

   2.   <u>Whether Plaintiff Has Stated A RICO Claim For Which Relief May Be Granted</u>

Defendants Aquino and Gagné contend that Plaintiff fails to state a claim under RICO, 18 U.S.C. § 1962(c), or a claim for conspiracy to violate RICO under § 1962(d).[2] Defendants contend that Plaintiff's RICO claims (Count I and II) fail because: 1) Plaintiff fails to allege the existence of an enterprise; 2) Plaintiff's allegations are insufficient to establish that Aquino or Gagné was involved in the operation or management of the enterprise necessary to establish "control" of the enterprise; 3) the alleged predicate acts do not constitute a pattern of

_____

[2] Defendant Freed also contends in its Motion To Dismiss that Plaintiff fails to state a RICO claim against it. However, by its Amended Complaint, Plaintiff does not include Defendant Freed in Counts I or II. Thus, the Court need not address Defendant Freed's arguments with respect to the RICO claims.

racketeering activity; and 4) the predicate acts to not rise to the level of mail or wire fraud.  Accepting all allegations in Plaintiff's Amended Complaint as true and drawing all reasonable inferences in the light most favorable to Plaintiff, the Court concludes that Plaintiff has adequately stated its RICO claims against Defendants Aquino and Gagné.

In order to establish a claim under section 1962(c), a plaintiff must show: "1) the existence of an enterprise affecting interstate commerce; 2) that the defendant was employed by or associated with the enterprise; 3) that the defendant participated, either directly or indirectly, in the conduct or the affairs of the enterprise; and 4) that the defendant participated through a pattern of racketeering activity that included at least two racketeering acts."  Annulli v. Panikkar, 200 F.3d 189, 198 (3d. Cir. 1999).

With respect to the Defendants' argument that Plaintiff fails to allege an enterprise, the Court concludes that, construing the Amended Complaint in the light most favorable to Plaintiff, Plaintiff alleges the existence of an enterprise.  An enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact though not a legal entity." 18 U.S.C. § 1961(4).  The identification of an enterprise separate from the underlying pattern of racketeering

activity is sufficient to withstand a motion to dismiss.  Seville
Industrial Machinery Corp. v. Southmost Machinery Corp., 742 F.2d
786, 790 (3d. Cir. 1984).  Here, Plaintiff's Amended Complaint
alleges that the "enterprise" was the association in fact and by
agreement between SFC and its related entities, Pepper,
McGladrey, and Freed.  (D.I. 14, ¶ 141).  Plaintiff alleges that
SFC conducted the business of borrowing money, making loans, and
obtaining insurance while Defendants Pepper, through Gagné, and
McGladrey, through Aquino, provided the necessary legal and
financial advice, guidance and information.  Because Plaintiff
identifies an enterprise that existed apart from the underlying
alleged racketeering activity, the Court concludes that
Plaintiff's allegations are sufficient to plead the existence of
an enterprise.

     With respect to the Defendants' argument that Plaintiff
fails to plead that Aquino or Gagné had "control" of the
enterprise, the Court concludes that Plaintiff's allegations are
sufficient to withstand dismissal.  Liability under § 1962(c) is
limited to those who participate in the operation or management
of the enterprise.  Reves v. Ernst & Young, 507 U.S. 170, 185
(1993).  Plaintiff alleges that, "Aquino guided the enterprise on
the effective representation of Student Finance Corporation's
financial status . . ."  (D.I. 14, ¶ 151).  Plaintiff alleges
that, "Gagné advised and guided the enterprise on legal issues .

. ." (D.I. 14, ¶ 151). Plaintiff also alleges that Aquino and Gagné "participated in, conducted the affairs of, directed the activities of, used and . . . knowingly facilitated, the RICO Enterprise . . . ." (D.I. 14, ¶150). Reading the allegations of the Amended Complaint in the light most favorable to the Plaintiff, the Court concludes that Plaintiff has alleged facts sufficient to plead "control" of the enterprise by Defendants Aquino and Gagné.

With respect to the Defendants' argument that the predicate acts do not constitute a pattern of racketeering activity, the Court concludes that Plaintiff has sufficiently pled continuity so as to avoid dismissal. A "pattern of racketeering activity" requires the commission of at least two predicate offenses, including mail and wire fraud. 18 U.S.C. §§ 1961(1)(B), 1961(5). To establish a pattern, two critical factors must be present: 1) a relationship between the acts of racketeering charged; and 2) a threat of continuing activity, or continuity. H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989). To establish the continuity requirement, a RICO plaintiff must show that the predicate acts of racketeering either constitute or threaten long-term criminal activity.[3] Id. Continuity may be either "close-ended" or "open-ended". Open-ended continuity may

---

[3] Defendants do not challenge the relatedness requirement. Accordingly, the Court will discuss only the continuity element.

11

be established by evidence that the predicate acts themselves
involve a distinct threat of long-term racketeering activity or
that the acts are part of an ongoing entity's regular way of
doing business.  Id. at 242-43.  In its Amended Complaint,
Plaintiff alleges that "[t]here is a threat of continued
racketeering activity in the future because all of the RICO
Persons continue in the same or similar lines of business today.
. ." (D.I. 14, ¶ 152).  Reading the Amended Complaint in the
light most favorable to the Plaintiff, the Court concludes that
Plaintiff satisfies the requirement of open-ended continuity
because Plaintiff has alleged a threat of continued criminal
activity.

    A party can demonstrate close-ended continuity by proving a
series of related predicate acts "extending over a substantial
period of time."  Id. at 242.  A court may focus on the duration
of the underlying scheme rather than on the occurrences of the
predicate acts themselves.  Tabas v. Tabas, 47 F.3d 1280, 1294
(3d. Cir. 1995); Nielsen Electronics Institute v. Student Finance
Corporation, No. 99-285, 2001 U.S. Dist. LEXIS 25556 at *25 (D.
Del. Jan. 16, 2001).  Reading the Amended Complaint in the light
most favorable to Plaintiff, the Court concludes that Plaintiff
has sufficiently pled close-ended continuity because it has
alleged a scheme extending from 1998 through the spring of 2002.

12

With respect to the Defendants' argument that the predicate acts do not rise to the level of mail or wire fraud, the Court concludes that Plaintiff has alleged sufficient facts to plead the predicate acts of mail or wire fraud.  A plaintiff raising a claim of mail or wire fraud must establish two essential elements: "1) a scheme to defraud; and 2) the use of the mails or wires for the purpose of executing the scheme." Schuylkill Skyport Inn, Inc. v. Rich, No. 95-3128, 1996 U.S. Dist. LEXIS 12655, at *47 (E.D. Pa. Aug. 21, 1996).  A scheme "need not be fraudulent on its face"; rather, it "must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1415 (3d. Cir. 1991)(citation and internal quotation marks omitted), cert. denied, 501 U.S. 1222 (1991).  The second requirement, use of the mail or wires to execute the scheme, requires that the mail or wire communications be "incident to an essential part of the scheme," or "a step in [the] plot," although they need not contain misrepresentations. Schmuck v. United States, 489 U.S. 705, 710-11 (1989); Kehr Packages, Inc., 926 F.2d at 1413. Reading the Amended Complaint liberally, the Court concludes that Plaintiff has alleged that the Defendants knew of and facilitated communication via the mail and wires to further the scheme.

13

In sum, the Court concludes that the facts alleged in Plaintiff's Amended Complaint are sufficient to state a RICO claim. Accordingly, the Court will deny the Defendants' motions to dismiss Counts I and II of Plaintiff's Amended Complaint; for violation of RICO and conspiracy to commit a violation of RICO.

3.    <u>Whether Plaintiff's Common Law Claims Are Barred As Untimely</u>

By its Motion, the Defendants contend that Pennsylvania law applies to Plaintiff's claims and thus, its claims are barred by the two year statute of limitations. In response, Plaintiff contends that its claims are timely whether Delaware or Pennsylvania law applies because it could not have learned of the Defendants' participation in the fraudulent scheme until 2004.

The Court concludes that, accepting all allegations in Plaintiff's Amended Complaint as true, Plaintiff has alleged that it did not learn and could not have learned of the Defendants' knowing participation in the fraudulent scheme until the fall of 2004. Under either Delaware or Pennsylvania law, the statute of limitations is tolled where the defendants fraudulently conceal their wrongdoing. <u>Bohus v. Beloff</u>, 950 F.2d 919, 926 (3d Cir. 1991); <u>Albert v. Alex Brown Management Servs.</u>, No. 762-N, 2005 WL 1594085 at *19 (Del. Ch. June 29, 2005). Plaintiff has alleged that the Defendants knowingly and fraudulently concealed the scheme of making "forbearance payments" on the student loans.

14

Thus, the Court concludes Plaintiff has alleged sufficient facts to adequately plead that its claims are timely.

    4.   <u>Whether Plaintiff Has Stated Common Law Claims For Which Relief May Be Granted</u>

Defendants contend that Pennsylvania law applies to Plaintiff's common law claims. Defendants further contend that Plaintiff's common law claims are deficient as a matter of law. In response, Plaintiff contends that Delaware or North Carolina law applies to its common law claims and that it properly pled causes of action.

        a.   <u>Whether Plaintiff has stated a claim for civil conspiracy to commit fraud.</u>

Defendants contend that Plaintiff has failed to allege malice, an essential element to a civil conspiracy claim under Pennsylvania law. In response, Plaintiff contends that Delaware or North Carolina law applies, and, under both, its allegations are sufficient. Plaintiff further contends that, even if Pennsylvania law applies, it properly pleads malice.

Under Delaware or North Carolina law, a claim for civil conspiracy requires: 1) a combination of two or more persons; 2) an unlawful act done in furtherance of the conspiracy; and 3) actual damage. <u>See</u> <u>AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.</u>, 871 A.2d 428, 437 n.8 (Del. 2005); <u>DiFrega v. Pugliese</u>, 596 S.E.2d 456, 461-62 (N.C. Ct. App. 2004). Under Pennsylvania law, malice is an essential element to a civil conspiracy claim. <u>See</u> <u>Jeter v. Brown & Williamson Tobacco Co.</u>,

15

294 F.Supp.2d 681, 688 (W.D. Pa. 2003).  Malice exists where the defendant intends to injure the plaintiff without legal justification.  Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 472 (Pa. 1979).  Construing the allegations in the Amended Complaint in the light most favorable to Plaintiff, the Court concludes that Plaintiff has alleged sufficient facts to plead all the elements of a civil conspiracy claim under either Delaware, North Carolina, or Pennsylvania law.

      b.    <u>Whether Plaintiff has stated a claim for fraud, fraudulent inducement, fraudulent concealment, and aiding and abetting fraud</u>.

Defendants contend that Plaintiff has failed to state a claim for fraud for the following reasons: 1) the facts alleged by Plaintiff are inconsistent with the elements of fraud; 2) Plaintiff fails to plead fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b); and 3) Plaintiff fails to allege facts showing justifiable reliance on the Defendants' alleged misrepresentations.

Under Delaware law, the elements of common law fraud are:

1)     a false representation, usually one of fact, made by the defendant;
2)     the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;
3)     an intent to induce the plaintiff to act or to refrain from acting;
4)     the plaintiff's action or inaction taken in justifiable reliance upon the representation; and
5)     damage to the plaintiff as the result of such reliance.

Gaffin v. Teledyne, Inc., 611 A.2d 467, 472 (Del. 1992).

16

Accepting all allegations in Plaintiff's Amended Complaint as true and drawing all reasonable inferences in the light most favorable to Plaintiff, the Court concludes that Plaintiff has stated a claim for fraud sufficient to survive a motion to dismiss.

With respect to the pleading requirements of Rule 9(b), the Court finds that Plaintiff's Amended Complaint contains specific allegations of factual misrepresentations made by the Defendants. For example, Plaintiff has alleged that the Defendants knew of the falsity of the financial reports and intended that Plaintiff rely on them. Plaintiff has also alleged that its reliance on the Defendants' misrepresentations was justifiable and that it was harmed as a result. Accordingly, the Court concludes that Plaintiff has sufficiently pled fraud to withstand dismissal.

                c.    <u>Whether Plaintiff has stated a claim for negligence and negligent misrepresentation</u>.

Defendants contend that, under Pennsylvania law, Plaintiff's claim for negligence fails because there is no strict privity between the Defendants and Plaintiff. Defendants contend that Plaintiff's claim for negligent misrepresentation should be dismissed because Plaintiff fails to allege justifiable reliance. In response, Plaintiff contends that Pennsylvania law does not apply and contractual privity is not a requirement under Delaware or North Carolina law. Plaintiff further contends that, even under Pennsylvania law, it has sufficiently pled the elements necessary for its negligence claims.

17

After reviewing the allegations in Plaintiff's Amended
Complaint in the light most favorable to Plaintiff, the Court
concludes that Plaintiff has alleged the elements of its
negligence claims.  Considering the requirements of negligence
and negligent misrepresentation under the law of Delaware, North
Carolina, and Pennsylvania, and the similarity with the elements
of fraud discussed above, the Court concludes that Plaintiff's
allegations are sufficient to withstand a motion to dismiss.

          d.    <u>Whether Plaintiff has stated a claim for aiding
                and abetting breach of fiduciary duty</u>.

Defendants contend that Pennsylvania law applies and a claim
for aiding and abetting a breach of fiduciary duty is not
recognized under Pennsylvania law.  Defendants further contend
that even if such a claim were recognized, Plaintiff fails to
allege the existence of a fiduciary duty.

At the motion to dismiss stage, the Court need not accept
legal conclusions alleged or inferred in the pleaded facts.
Thus, the Court does not predict whether Pennsylvania law would
recognize a claim for aiding and abetting a breach of fiduciary
duty.  However, considering the elements necessary for such a
claim under Delaware and North Carolina law, the Court concludes
that, construing the Amended Complaint in the light most
favorable to Plaintiff, Plaintiff has alleged sufficient facts to
withstand dismissal.  Plaintiff has alleged that SFC was
insolvent and that such insolvency led to a fiduciary duty.

Plaintiff has also alleged that Defendants knowingly participated in the fraudulent scheme and gave SFC substantial assistance through its accounting and legal services.

> e.  Whether Plaintiff has stated a claim for deepening insolvency.

Defendants contend that Plaintiff's claim for "deepening insolvency" should be dismissed because it is not an independent cause of action.  Defendant Pepper further contends that, even if it was a cause of action, Plaintiff has no standing to bring the claim.  In response, Plaintiff contends that federal courts have found that Delaware, North Carolina, and Pennsylvania have recognized claims for deepening insolvency and it has adequately pled the elements of such a claim.

In support of its contentions, the Defendants and Plaintiff rely on differing interpretations of a Third Circuit case, Official Committee of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 350 (3d. Cir. 2001).  Considering the uncertainty of the law in this area and drawing all reasonable factual inferences in the light most favorable to the Plaintiff, the Court concludes that Plaintiff has pled sufficient facts to state a claim for deepening insolvency.

In sum, the Court concludes that Plaintiff's allegations are sufficient to state common law claims for fraud, conspiracy to commit fraud, aiding and abetting breach of fiduciary duty, negligence and negligent misrepresentation against all of the

19

Defendants.  In addition, the Court concludes that Plaintiff's allegations are sufficient to establish that its common law claims are not barred as untimely.  Accordingly, the Court will deny Defendants' motions to dismiss with respect to Plaintiff's common law claims.

## IV.  CONCLUSION

For the reasons discussed, the Court granted in part and denied in part Plaintiff's Motion To Compel (D.I. 84). Additionally, the Court denied Defendants' Motions To Dismiss (D.I. 29, 32, 35, 58). See D.I 122.