IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROYAL INDEMNITY COMPANY

        Plaintiff,

vs.

PEPPER HAMILTON LLP, ET AL.

        Defendants.

Civil No. 05-165(JJF)

**BRIEF IN SUPPORT OF PEPPER HAMILTON LLP AND W. RODERICK GAGNÉ'S MOTION TO COMPEL ANSWERS AND FOR SANCTIONS**

| | |
|---|---|
| William H. Sudell, Jr., Esq. (No. 0463) | Elizabeth K. Ainslie, Esq. |
| Donna L. Culver, Esq. (No. 2983) | Nicholas J. LePore, III, Esq. |
| Daniel B. Butz (No. 4227) | Bruce P. Merenstein, Esq. |
| MORRIS, NICHOLS, ARSHT & TUNNELL | Stephen J. Shapiro, Esq. |
| 1201 North Market Street | SCHNADER HARRISON SEGAL & LEWIS LLP |
| P.O. Box 1347 | 1600 Market Street, Suite 3600 |
| Wilmington, Delaware 19899-1347 | Philadelphia, Pennsylvania 19103 |
| (302) 658-9200 | (215) 751-2000 |
| (302) 658-3989 (facsimile) | (215) 751-2205 (facsimile) |

*Counsel for defendants Pepper Hamilton LLP and W. Roderick Gagné*

Charles A. Gilman
David G. Januszewski
CAHILL GORDON & REINDEL LLP
Eighty Pine Street
New York, NY 10005
(212) 701-3000
(212) 269-5420 (facsimile)

*Counsel for defendant Pepper Hamilton LLP*

April 19, 2007

**TABLE OF CONTENTS**

|   | Page |
|---|---|
| **TABLE OF AUTHORITIES** | ii |
| **SUMMARY OF ARGUMENT** | 1 |
| **STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS** | 1 |
| **STATEMENT OF FACTS** | 2 |
|     Factual and Procedural Background | 2 |
| **ARGUMENT** | 8 |
| **CONCLUSION** | 9 |

## **TABLE OF AUTHORITIES**

### *Cases*

*Frazier v. Southeastern Pa. Transp. Auth.*, 161 F.R.D. 309 (E.D. Pa. 1995) ................................. 9

*Plaisted v. Geisinger Med. Ctr.*, 210 F.R.D. 527 (M.D. Pa. 2002) .................................................. 9

*Standard Chlorine v. Sinibaldi*, No. Civ. 91-188-SLR, 1994 U.S. Dist. LEXIS 3388
    (D. Del. Mar. 21, 1994) ................................................................................................. 9

*Resolution Trust Corp. v. Dabney*, 73 F.3d 262 (10th Cir. 1995) .................................................... 9

### *Rules*

FED. R. CIV. P. 30(d)(1) ............................................................................................................... 8

D. DEL. LR. 7.1.1 ........................................................................................................................ 7

### *Other Authorities*

FED. R. CIV. P. 30 advisory committee's note (1993) ................................................................. 8

## SUMMARY OF ARGUMENT

In disregard of Rule 30(d) of the Federal Rules of Civil Procedure, the deposition protocol in this case, and this Court's prior ruling on a related matter, counsel for Royal Indemnity Company has repeatedly instructed its current and former employees not to answer any deposition questions regarding employee performance assessments ("personnel evaluations") that specifically involve those employees' handling of the SFC account at Royal. In attempting to explain their violation of Rule 30(d), Royal's counsel have claimed to be relying on a limitation on deposition questioning imposed by this Court. The transcript of the hearing at which the Court supposedly made such a ruling reveals nothing of the sort. Indeed, Royal's personnel evaluations were not even a subject matter at the discovery hearing in question and, to the extent they were discussed at all, it was only for the Court to confirm that no ruling would be made on these evaluations until after the close of discovery. The Court should order Royal (1) to cease instructing its current and former employees not to answer questions about the evaluations; (2) to produce for further deposition questioning at the Philadelphia offices of Pepper's counsel any Royal witness who has previously been instructed not to answer questions on this subject; and (3) to pay Pepper's expenses of bringing this motion, including attorneys' fees.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Royal Indemnity Company ("Royal") filed the instant lawsuit on March 18, 2005 against Pepper Hamilton LLP ("Pepper"), W. Roderick Gagné and others in connection with Royal's obligations to pay under certain insurance policies issued to Student Finance Corporation ("SFC"). Written discovery commenced on September 7, 2005 and all fact discovery is scheduled to close on April 30, 2007.

## **STATEMENT OF FACTS**

### **Factual and Procedural Background**

In the instant action, Royal contends, among other things, that Pepper and Gagné negligently or intentionally misled Royal into issuing hundreds of millions of dollars of credit risk insurance for Student Finance Corporation ("SFC") on the basis of false statements regarding the default rate on student loans issued or purchased by SFC. According to Royal, when many of the loans insured by Royal defaulted, Royal was left paying more than $500 million of insurance claims. Pepper and Gagné contend, among other things, that Royal's own lack of due diligence and incompetence were the actual cause of its losses.

Pepper and Gagné's contention is strongly supported by the words of Royal's own management, including the current CEO of Royal's United States operations, John Tighe. When Tighe was the President of Royal's Custom Risk Division, he authored a scathing critique of William Hibberd, the Royal employee with primary responsibility for the SFC account. *See* A-1 to A-7. Tighe wrote, among other things about Hibberd, that "the lack of discipline, missing information and disregard for underwriting guidelines that [Royal] put in place is unacceptable on the SFC account." *See* A-6. Tighe observed that Royal and Hibberd were "learning on the fly and unfortunately were placing large bets despite our inexperience." *See* A-4. Other Royal employees with involvement in the SFC account also received poor personnel evaluations on the basis of their work on the SFC account. Royal willingly produced these personnel evaluations in the course of document discovery in this matter (and the related matters with which it is consolidated for discovery purposes), in response to document requests by Pepper and Gagné. Pepper also produced in discovery personnel evaluations for its employees who worked on SFC matters. However, SFC's accounting firm, McGladrey & Pullen LLP ("McGladrey"), which is also a defendant in this matter, refused to produce any personnel evaluations on the basis of an auditor's privilege.

Royal moved to compel the production of McGladrey's personnel evaluations (D.I. 299, 300 at 7-9) and, on February 7, 2007, this Court held a hearing on that motion (and others). The entirety of the discussion on that motion is excerpted below (portions of the transcript are included in the appendix accompanying this motion, at pages A-8 to A-15).

The Court noted that Royal's motion to compel (which addressed a number of issues) "is going to be granted in all respects except with regard to the personnel files of accountants." Tr. of Feb. 7, 2007 hearing at 6:21-22 (hereinafter "Tr."), at A-11. After discussion of a separate discovery motion, Royal's counsel, John Grossbart, asked for clarification on the Court's ruling: "did I understand the Court to say it's granted in all respects except the personnel files or did I ---." Tr. 11:23-12:1, at A-12. The Court then answered Mr. Grossbart's query: "There were five specific categories and somewhere in an opening paragraph of the brief, you set them out pretty clear, the five categories. It's granted in all respects except to the . . . personnel files, as I understood it, *of the accountant employees*." Tr. 12:2-10, at A-13 (emphasis added).

Following up on the Court's explanation, Mr. Grossbart inquired: "One of the things we asked with respect to that item in particular is if we were going to be denied discovery of those personnel files, that there be *in limine* protection against use of the personnel files that we and perhaps others have already produced in this case." Tr. 12:11-17, at A-13. Pointedly, Mr. Grossbart did not ask for a ruling that "the personnel files that we . . . have already produced in this case" be deemed off-limits at depositions or otherwise not subject to further discovery. Rather, he asked "that there be *in limine* protection" against their use. The Court responded, "Well, I understand that you gave over some files," which Mr. Grossbart confirmed, before the Court continued, "But all of you are going to be, I assume, if this case goes to trial, in an *in limine* practice. And what I tried to say at the beginning was that I'm granting the discovery because of

3

the fraud assertion, but *that doesn't mean that this is going to be evidence that gets into a trial.*" Tr. 12:18-13:3, at A-13 to A-14 (emphasis added).

Mr. Grossbart expressed his understanding of the Court's ruling ("No, I understand"), and the Court continued, "Because if you get that far, because *it will be motions to limit admission.* Because their big argument is that it's really not probative on any issue. And, of course, your argument to all that is you already gave them over." Tr. 13:4-10, at A-14 (emphasis added). Acknowledging the reality that Royal had already produced personnel evaluations, Mr. Grossbart responded, "My bad." Tr. 13:11, at A-14. The Court continued its discussion of the possible admissibility issue regarding the evaluations: "I don't know what to tell you. So down the road, I understand you may, but for purposes now, present purposes, I'm just ruling on what's disputed. But I would think, to give you *my present thinking*, manuals probably get in. *Irrelevant personnel evaluations*, generally, not specific to the issue don't. But I don't know. *I'll have to wait and see.*" Tr. 13:12-22, at A-14 (emphasis added).

While the Court's ruling and views of the evaluations could not have been clearer — McGladrey did not have to produce its withheld evaluations, there was nothing that could be done at this stage about the evaluations already produced by Royal and others, and the court did not think that irrelevant evaluations would be admissible at trial — Royal's counsel persisted, with another lawyer, Michael Barr, speaking up: "Is the Court's denial of *our access to their personnel records* also pertaining to the specific material where they may have you review that says your performance with respect to the Student Finance?" Tr. 14:4-8, at A-15 (emphasis added). As if there were any doubt about the Court's ruling, the Court answered, "Yes," and Mr. Barr asked for even further clarification, "So across the board?," and the Court responded, "For present purposes, *you're* out." 14:9-12, at A-15 (emphasis added). Mr. Barr thanked the Court (Tr. 14:13, at A-15) and the discussion of personnel evaluations concluded.

Following this hearing, at the depositions of Stephen Mulready on March 19, 2007, Vincent Pugliese on March 22, 2007, John Tighe on March 28, 2007, and Anthony McKenzie on April 5, 2007, Royal's counsel instructed the witnesses not to answer questions asked about Royal's personnel evaluations. In fact, Royal's counsel instructed these witnesses not to answer at least sixteen questions on the topic. In each case, Royal's counsel claimed to be acting on the basis of a limitation imposed by the Court at the February 7, 2007 hearing.

First, at the deposition of Stephen Mulready, the former CEO of Royal's United States operations, counsel for Pepper and Gagné showed the witness Exhibit 353-I, William Hibberd's personnel evaluation for 2001. Mulready Dep. at 297:10-13, at A-22 (the relevant portions of the Mulready Deposition can be found at pages A-16 to A-23). Royal's counsel, Daniel Barnowski, immediately objected and indicated that "I'm going to instruct you not to answer questions about the employee evaluations of any people that worked at Royal." *Id.* at 297:14-17, at A-22. When asked for an explanation of this instruction, Mr. Barnowski claimed that "McGladrey refused, they moved the judge and the judge held them irrelevant to the case. So I'm not going to have . . . one side of the case producing employee evaluations and having its witnesses answer questions while the other side does not." *Id.* at 298:14-22, at A-23.

Three days later, at the deposition of Vincent Pugliese, another former Royal executive, counsel for Pepper and Gagné showed the witness a copy of Hibberd's personnel evaluation. Pugliese Dep. at 315:17-19 (the relevant portions of the Pugliese Deposition can be found at pages A-24 to A-35). Royal's counsel, Drew Marrocco, objected and stated that "Royal's position is we are going to direct the witness not to answer questions about the contents of performance evaluations." *Id.* at 315:24-316:1, at A-29. After Pepper and Gagné's counsel objected to this position, Mr. Marrocco instructed the witness "not to answer questions regarding the subject matter of this performance evaluation." *Id.* at 316:10-13, A-30. Pepper and Gagné's counsel then asked a series of questions about the basics of Hibberd's personnel evaluation (the

5

date, the names listed on it, the fact that John Tighe signed the evaluation as Hibberd's manager), which the witness answered. *Id.* at 316:25-319:19, at A-30 to A-33. However, as soon as Pepper and Gagné's counsel asked the witness questions about the substance of the evaluation, Mr. Marrocco instructed the witness not to answer the questions. *Id.* at 319:20-321:15, at A-33 to A-35.

Six days later, John Tighe, currently the head of Royal's United States operations and, in 2001, William Hibberd's manager and the President of Royal's Custom Risk Division, was deposed. Mr. Tighe answered in the affirmative when asked by Pepper and Gagné's counsel whether he had "ever prepare[d] a formal report, a written report regarding Mr. Hibberd's performance." Tighe Dep. at 405:21-23, at A-39 (the relevant portions of the Tighe Deposition can be found at pages A-36 to A-47). However, when he was asked "Did you find Mr. Hibberd's performance during 2001 to be unsatisfactory?," Michael Barr, Royal's counsel, instructed the witness not to answer the question. *Id.* at 406:3-8, A-40. The following colloquy then occurred on the record:

> MR. MERENSTEIN [Pepper and Gagné's counsel]: And, just for the record — and I'll just state it once. We, obviously, disagree with the instruction to the witness. Royal, to my knowledge, has never filed a motion regarding the performance reviews of its employees. Because it never filed a motion the Court has certainly never issued an order regarding a motion by Royal on this issue.
>
> Mr. Hibberd's performance assessment, written performance assessment prepared by Mr. Tighe has actually been produced without objection by Royal in this litigation.
>
> Mr. Tighe has testified repeatedly today about his views of Mr. Hibberd's performance.
>
> Therefore, we certainly disagree with the idea that I cannot ask him questions about the formal written performance assessment that Mr. Tighe completed and prepared regarding Mr. Hibberd's performance.
>
> MR. SELBY [McGladrey's counsel]: I join in that statement.

6

> MR. BARR: Well — and I will not belabor the record at this hour. We, obviously, disagree with that. We believe the instruction is proper. We believe it reflects the Court's rulings when we specifically requested — not only just to see the performance evaluations of various individuals at McGladrey, then after the Court denied our motion to compel with respect to those performance evaluations I asked the court as a follow-up, could we see the materials that were SFC specific? And the court said no across the board, that we were being precluded from receiving those materials.
>
> On that basis I am not going to allow the examination of Royal witnesses in a topic that the Court deemed — thought that it should not be a proper notice of discovery.
>
> MR. SELBY: Can I get a clarification?
>
> Are you going to instruct the witness not to answer any questions about the substance of the evaluations?
>
> MR. BARR: That is correct.

*Id.* at 406:9-408:3, at A-40 to A-42.

After the parties had stated their positions, Pepper and Gagné's counsel continued to ask the witness questions about Hibberd's personnel evaluation, but, following the instruction of Royal's counsel, the witness refused to answer any of the questions. *Id.* at 408:5-409:24, at A-42 to A-43. Even when the witness was shown Hibberd's evaluation and asked only to verify the date and his signature on the evaluation, Royal's counsel instructed him not to answer. *Id.* at 410:1-411:17, A-44 to A-45. Finally, Royal's counsel instructed the witness not to answer any questions about the substance of discussions the witness had with Hibberd or anyone else regarding Hibberd's personnel evaluation. *Id.* at 412:1-413:7, at A-46 to A-47.[1]

---

[1] In a series of email communications between Stephen Shapiro, counsel for Pepper and Gagné, and Daniel Barnowski, counsel for Royal, dated March 21, 25, and 26, 2007, Pepper and Gagné's counsel made a reasonable effort to reach agreement on this issue, but Royal's counsel persisted in its position that they could properly instruct Royal witnesses not to answer questions about Royal personnel evaluations. *See* A-69 to A-71. Undersigned counsel states that these efforts fulfilled the requirements of Local Rule 7.1.1, as did the colloquy with Royal's counsel at the various depositions.

7

The following week, Anthony McKenzie, one of the former Royal employees who worked extensively on the SFC matter, was deposed. Counsel for Pepper and Gagné showed McKenzie two of his own performance evaluations. *See* A-48 and A-60 (Exhibits 771-II and 772-II). Those evaluations stated, in part, that McKenzie was "spread too thin, and the consequence of that is some items fall behind," and that he "mis-allocated away from analysis of the SFC transaction," which "delayed discovery of structural problems with the account." A-49 and A-63. Royal's counsel refused to permit any questions relating to McKenzie's evaluations and even refused to allow McKenzie to authenticate them. McKenzie Dep. at 991:10-996:10 (the relevant portions of the McKenzie Deposition can be found at pages A-72 to A-80).

## ARGUMENT

Rule 30(d)(1) of the Federal Rules of Civil Procedure prohibits counsel from instructing a deponent not to answer a question, except "when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)." FED. R. CIV. P. 30(d)(1). As the advisory committee noted in amending Rule 30 in 1993,

> Directions to a deponent not to answer a question can be even more disruptive than objections. The second sentence of new paragraph (1) prohibits such directions except in the three circumstances indicated: to claim a privilege or protection against disclosure (e.g., as work product), *to enforce a court directive limiting the scope or length of permissible discovery*, or to suspend a deposition to enable presentation of a motion under paragraph (3) [now paragraph (4)].

*Id.* adv. comm. notes (1993) (emphasis added).

Royal cannot seriously contend that this Court issued a "directive limiting the scope . . . of permissible discovery" that would justify Royal instructing its witnesses not to answer questions about personnel evaluations, including an evaluation of the person in charge of the SFC account at Royal. As the full recitation of the February 7, 2007 hearing set forth above makes clear, this Court ruled only on *Royal's* motion seeking access to *McGladrey's* personnel

8

evaluations. No motion or request to limit discovery regarding *Royal's* personnel evaluations was before the Court. Nor has any such motion been filed by Royal since that time. The fact that the Court expressed a preliminary view that irrelevant personnel evaluations not related to SFC issues may be inadmissible at trial in no way supports Royal's actions in instructing its witnesses not to answer questions at depositions regarding personnel evaluations of Royal employees. *See, e.g., Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("It is inappropriate to instruct a witness not to answer a question on the basis of relevance."); *Plaisted v. Geisinger Med. Ctr.*, 210 F.R.D. 527, 534 (M.D. Pa. 2002) (counsel improperly instructed witnesses not to answer questions on the ground that the questions were, among other things, "irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence"); *Standard Chlorine v. Sinibaldi*, No. Civ. 91-188-SLR, 1994 U.S. Dist. LEXIS 3388, at *15 (D. Del. Mar. 21, 1994) ("counsel's instruction not to answer a deposition question on grounds of relevance is manifestly at odds with proper deposition procedure").

When counsel improperly instructs a witness not to answer questions at a deposition, the appropriate remedy is an order allowing the witness to be deposed again and an award of the moving party's costs, including attorney's fees. *See, e.g., Plaisted*, 210 F.R.D. at 535; *Frazier v. Southeastern Pa. Transp. Auth.*, 161 F.R.D. 309, 317 (E.D. Pa. 1995). Such an order is warranted here, both to prevent Royal from continuing to instruct witnesses not to answer questions in violation of Rule 30(d)(1) and to remedy Royal's improper instructions at the depositions of Stephen Mulready, Vincent Pugliese, John Tighe, and Anthony McKenzie.

## CONCLUSION

For the foregoing reasons, Pepper and Gagné respectfully request that the Court grant its motion and order Royal to cease instructing its current and former employees not to answer questions about the evaluations; to produce for further deposition questioning at the Philadelphia offices of Pepper's counsel any Royal witness who has previously been instructed

9

Case 1:05-cv-00165-JJF   Document 450   Filed 04/19/2007   Page 13 of 13

not to answer questions on this subject; and to pay Pepper's expenses of bringing this motion, including attorneys' fees.

Dated: April 19, 2007
      Wilmington, Delaware

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

_/s/ [signature]_

William H. Sudell, Jr., Esq. (No. 0463)
Donna L. Culver (No. 2983)
Daniel B. Butz (No. 4227)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
(302) 658-3989 (facsimile)

- and -

Elizabeth K. Ainslie, Esq.
Nicholas J. LePore, III, Esq.
Bruce P. Merenstein, Esq.
Stephen J. Shapiro, Esq.
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
(215) 751-2000
(215) 751-2205 (facsimile)

*Counsel for defendant Pepper Hamilton LLP and W. Roderick Gagné*

- and –

Charles A. Gilman
David G. Januszewski
CAHILL GORDON & REINDEL LLP
Eighty Pine Street
New York, NY 10005
(212) 701-3000
(212) 269-5420 (facsimile)

*Counsel for defendant Pepper Hamilton LLP*

803704.1