IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROYAL INDEMNITY COMPANY<br><br>      Plaintiff,<br><br>vs.<br><br>PEPPER HAMILTON LLP, ET AL.<br><br>      Defendants. | Civil No. 05-165 (JJF) |

---

**APPENDIX OF UNREPORTED CASE CITED IN THE BRIEF IN
SUPPORT OF THE MOTION OF PEPPER HAMILTON LLP AND W. RODERICK GAGNÉ'S
MOTION TO COMPEL ANSWERS AND FOR SANCTIONS**

---

William H. Sudell, Jr., Esq. (No. 0463)
Donna L. Culver, Esq. (No. 2983)
MORRIS, NICHOLS, ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
(302) 658-3989 (facsimile)

Elizabeth K. Ainslie, Esq.
Nicholas J. LePore, III, Esq.
Theresa E. Loscalzo, Esq.
Bruce P. Merenstein, Esq.
Stephen J. Shapiro, Esq.
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
(215) 751-2000
(215) 751-2205 (facsimile)

*Counsel for defendants Pepper Hamilton LLP and W. Roderick Gagné*

Charles A. Gilman
David G. Januszewski
CAHILL GORDON & REINDEL LLP
Eighty Pine Street
New York, NY 10005
(212) 701-3000
(212) 269-5420 (facsimile)

*Counsel for defendant Pepper Hamilton LLP*

April 19, 2007

## TABLE OF CONTENTS

**EXHIBIT**

*Standard Chlorine of Delaware, Inc. v. Anthony R. Sinibaldi, et al.*, Civ. No. 91-188-SLR,
    1994 U.S. Dist. LEXIS 3388 (D. Del. Mar. 21, 1994) .................................................................A

A

LEXSEE 1994 US DIST LEXIS 3388

STANDARD CHLORINE OF DELAWARE, INC., Plaintiff, v. ANTHONY R. SINIBALDI, MICHAEL O. SINIBALDI, DOVER STEEL COMPANY, INC., COMMA CORPORATION, LORRAINE RENTAL & EQUIPMENT CO., INC., DELAWARE RENTAL CO., SS&H REALTY, SHS HOLDING CORP., A.M.B. CONSTRUCTION CO., INC., ALL-AMERICAN PROMOTIONS, INC., GEORGE MANTAKOUNIS, and MANTAS PAINTING COMPANY, Defendants, ANTHONY R. SINIBALDI, COMMA CORPORATION, LORRAINE RENTAL & EQUIPMENT CO., INC., SHS HOLDING CORP., and ALL-AMERICAN PROMOTIONS, INC., Counterclaim Plaintiffs, v. STANDARD CHLORINE OF DELAWARE, INC., Counterclaim Defendant. ANTHONY R. SINIBALDI, MICHAEL O. SINIBALDI, COMMA CORPORATION, LORRAINE RENTAL & EQUIPMENT CO., INC., SS&H REALTY, and ALL-AMERICAN PROMOTIONS, INC., Third-Party Plaintiffs, v. LOUIS P. WIENER, MARGARET L. WIENER, and STANDARD CHLORINE CHEMICAL COMPANY, INC., Third-Party Defendants.

Civil Action No. 91-188-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

1994 U.S. Dist. LEXIS 3388

March 21, 1994, Decided

COUNSEL: [*1] Richard D. Allen, Esquire, and Karen L. Pascale, Esquire, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, attorneys for Standard Chlorine of Delaware, Inc., Standard Chlorine Chemical, Inc., Louis P. Wiener, and Margaret L. Wiener.

Steven J. Balick, Esquire, and Regina A. Iorii, Esquire, of Ashby & Geddes, Wilmington, Delaware, attorneys for Anthony R. Sinibaldi, Michael O. Sinibaldi, and Dover Steel Company, Inc.

David S. Lank, Esquire, of Theisen, Lank, Mulford & Goldberg, Wilmington, Delaware, attorneys for Comma Corporation, Lorraine Rental & Equipment Co., Delaware Rental Co., SS&H Realty, SHS Holding Corp., A.M.B. Construction Co., Inc., and All-American Promotions, Inc. Of Counsel: Brian P. Kenney, Esquire, of Elliott, Vanaskie & Riley, Blue Bell, Pennsylvania.

William D. Sullivan, of Elzufon, Austin & Drexler, Wilmington, Delaware, attorneys for George Mantakounis and Mantas Painting Company. Of Counsel: Thomas C. Zielkinski, Esquire, of Cozen and O'Connor, Philadelphia, Pennsylvania.

JUDGES: ROBINSON

OPINION BY: SUE L. ROBINSON

OPINION:

MEMORANDUM OPINION

Dated: March 21, 1994

Wilmington, Delaware

**ROBINSON**, District Judge

In this civil action, plaintiff, Standard Chlorine [*2] of Delaware, Inc. ("Standard"), alleges defendants engaged in a course of criminal conduct perpetrated over a 15-year period for the purpose of defrauding Standard of millions of dollars. Standard claims the alleged scheme violated both the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and Delaware state law.

Before the Court is a dispute regarding the scope and application of the Fifth Amendment privilege in civil litigation, particularly as it applies during pretrial discovery. The dispute arose when defendant George Mantakounis ("Mantakounis") refused to answer numerous questions posed by Standard at Mantakounis' deposition. Standard brought the controversy before the Court by filing a motion to compel Mantakounis to respond to said questions at a reconvened deposition.

**I. PROCEDURAL HISTORY and FACTUAL BACKGROUND**

Standard commenced this action in March 1991. On May 29, 1992, Standard filed an Amended Complaint setting forth additional allegations of fraudulent conduct and naming additional party-defendants to this action, specifically, George Mantakounis and Mantas Painting Company, a sole [*3] proprietorship owned and operated by Mantakounis (the "Mantas Defendants").

On July 29, 1992, after a series of delays, Mantas Defendants moved to dismiss the Amended Complaint as against them for various reasons, most of which were grounded on the assertion that plaintiff failed properly to join the Mantas Defendants in this action. Mantas Defendants also moved for a protective order staying discovery as to them solely on the basis of their pending motion to dismiss. The Court denied these motions in its Opinion and accompanying Order of December 30, 1992, finding, inter alia, that "many, if not all, of the Mantas defendants' contentions and assertions . . . are meritless or . . . even frivolous." (D.I. 103 at 56)

In denying Mantas Defendants' motion for a protective order, the Court reasoned:

> Defendants' argument that they are entitled to a protective order staying discovery as to them during the pendency of their motion to dismiss is without merit. This Court recently confronted a similar request and resolved the issue as follows:
>
>> Defendant's argument assumes that the moment it has filed a motion to stay discovery on the damages issue, it need no longer obey basic discovery [*4] rules. Defendant is in effect granting itself a stay of discovery. Simple logic teaches that defendant has put the presumption on the wrong side: unless and until it is granted a stay, defendant should be required to conduct discovery as if no motion had been filed at all.
>
> Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc., 707 F. Supp. 1429, 1441 (D. Del. 1989). Similarly, in the instant case, Mantas Defendants improperly assume that their filing of a motion for a protective order permitted them to disregard Standard's discovery requests. Mantas Defendants' assumption is incorrect. In any case, the Court herein has found that Mantas Defendants' motion to dismiss will be denied since it is without merit. Accordingly, Mantas Defendants' argument that the pendency of this motion entitled them to an automatic, self-granted stay of discovery is moot.

Standard's discovery request was served on Mantas Defendants on June 24, 1992. Mantas Defendants failed to respond to said request until on or around September 28, 1992, when they filed their motion for a protective order. Defendants' failure to provide a proper and timely response to Standard's discovery [*5] request constitutes a waiver of any and all objections to said request. See, e.g.,

Daumer v. Allstate Ins. Co., Civ. No. 91-7570, 1992 U.S. Dist. LEXIS 16184, *3 (E.D. Pa. 1992) ("Failure to make timely objections [to document requests] constitutes a waiver of any objections ]non-objecting party] might have had.") (citing Usery v. Chef Italia, 540 F. Supp. 587, 592 n.13 (E.D. Pa. 1982); Davis v. Romney, 53 F.R.D. 247, 248 (E.D. Pa. 1971); Cephas v. Busch, 47 F.R.D. 371 (E.D. Pa. 1969)); Applied Biosystems, Inc. v. Cruchem, Inc., Civ. No. 89-579-JRR, Memorandum Opinion, Roth, J. (Aug. 3, 1990) (copy attached to D.I. 96 at Exhibit f) (citing, inter alia, Krewson v. Quincy, 120 F.R.D. 6, 7 (D. Mass. 1988) (defendant waived objections to document request by failing to serve timely response); Perry v. Golub, 74 F.R.D. 360, 363 (N.D. Ala. 1976) (objection on grounds of privilege waived by failure to file timely objection)).

(D.I. 103 at 62-64) The Court directed "Mantas Defendants . . . to respond [*6] fully and promptly (within thirty days) to Standard's discovery requests." (Id. at 64-65)

On January 19, 1993, Mantas Defendants appealed this Court's Order denying their motions to dismiss and to stay discovery. (D.I. 114) On January 22, 1993, the Court held a scheduling conference in this matter. At that time, Mantas Defendants indicated they would not comply with the Court's directive requiring them to respond to Standard's outstanding discovery request. The Court inquired as to the basis for such conduct. Much like the grounds previously offered for their failure to respond to discovery, Mantas Defendants asserted this case was automatically stayed in the District Court as to them during the pendency of their appeal. After expressing disagreement with this position, the Court ordered Mantas Defendants to "supply . . . support for their position that the case should be stayed as to them pending their appeal." (D.I. 113) Mantas Defendants then moved to stay proceedings during the pendency of their appeal.

In denying Mantas Defendants' stay motion, the Court concluded as follows:

> The Court finds that Mantas Defendants' instant motion is frivolous in that, for the reasons discussed [*7] above, n1 it "is [not] warranted by existing law. . . ." Fed. R. Civ. P. 11. Likewise, Mantas Defendants have not made or even attempted to make "a good faith argument for the extension, modification, or reversal of existing law. . . ." Id.
>
> * * *
>
> Although the Court will not sua sponte exercise its authority under Rule 11 to impose sanctions at this time, Mantas Defendants and their attorney are put on notice that this Court will not tolerate any further Rule 11 violations on their part. The Court notes in this regard that Mantas Defendants have refused to comply with this Court's Opinion and Order requiring them to comply--fully and substantively, without further objection--with Standard's discovery requests by January 30, 1993. The record also indicates that Mantas Defendants, without justification, have failed to file a timely answer to Standard's Amended Complaint. See F.R.Civ.P. 12(a) ("if the court denies the motion (to dismiss the complaint), . . . the responsive pleading shall be served within ten days after notice of the court's action").
>
> * * *
>
> The Court will deny Mantas Defendants' motion for a stay pending their appeal. In addition, the Court will order Mantas [*8] Defendants to file an answer to Standard's Amended Complaint and to comply fully and substantively with Standard's outstanding discovery requests that were the subject of this Court's December 30, 1992 Opinion and Order on or before February 19, 1993.

(D.I. 123 at 7-9)

n1 The stay motion was denied because Mantas Defendants appealed from an non-appealable interlocutory Order. Mantas

Defendants' premature appeal was voluntarily dismissed subsequent to issuance of the Order denying their stay motion. (D.I. 136)

The foregoing directive was issued on February 12, 1993. This (second) instruction to respond to discovery concerned a request for production of documents served by Standard on June 24, 1992. Despite the passage of nearly eight months from the time Standard served its request for production of documents and the time Mantas Defendants finally responded thereto, Mantas Defendants never asserted the Fifth Amendment privilege against compulsory self-incrimination nor any other valid grounds for refusing to respond. [*9] n2

> n2 Although the Court's initial directive required Mantas Defendants to respond to Standard's discovery requests "fully and promptly" (D.I. 103 at 65), and the latter directive required Mantas Defendants to "comply fully and substantively with plaintiff's outstanding discovery requests" (D.I. 124 at 1), noting that "Mantas Defendants waived any and all objections to said discovery requests" (D.I. 123 at 8 n. 5), it is obvious that Mantas Defendants had ample opportunity to assert a Fifth Amendment objection to Standard's discovery requests and that their failure to do so is attributable only to them. Mantakounis' present contention, that "production of documents under judicial compulsion certainly does not constitute a waiver [of the Fifth Amendment privilege]" (D.I. 255 at 13 n. 3), completely overlooks the circumstances preceding the entry of orders compelling Mantas Defendants to respond to Standard's document request without further delay or objection.

Mantas Defendants answered the Amended Complaint on February [*10] 19, 1993. (D.I. 130) In answering the Amended Complaint, which includes allegations that Mantas Defendants made unlawful "kickback" payments to the Sinibaldi defendants (former Standard employees) and their families in exchange for the Sinibaldis' directing large amounts of Standard's business to Mantas Painting, work for which Mantas Defendants allegedly received exorbitant profits, Mantas Defendants made several significant admissions. First, they "admitted . . . that Mantas Painting Company made payments to the Sinibaldis" and that "some payments were made by Mantas Painting to the Sinibaldis." (Id. at 3, 6) Defendants further "admitted . . . that during the period 1986 through 1989, Mantas Defendants made certain payments to the Sinibaldis and/or members of their families" and "Mantas Painting made a payment to the wife of Michael Sinibaldi." (Id. at 9)

In responding to Standard's document request, n3 Mantas Defendants produced canceled checks and Form 1099s which document payments to the Sinibaldis during the years 1984 through 1990. n4 Consistent with their Answer and the documents produced to Standard, Mantas Defendants admitted the fact of such payments in response [*11] to Standard's interrogatories. (D.I. 252, Exhibit A, Exhibit 9 at 1) Mantakounis and his company sought to explain this apparently unlawful conduct by claiming "it was the belief of Mantas Painting Company that these payments were necessary in order to keep [Standard's] work." (Id. at 1-2) n5

> n3 Mantas Defendants initially represented, in connection with their February 18, 1993 response to Standard's document production request, that they had complied in full with that request. Mantas Defendants subsequently produced other documents responsive to Standard's document request.

> n4 It should be noted that Mantas Defendants failed to produce many of the financial records sought by Standard, "including disbursement ledgers, receipts ledgers, financial statements (such as income statements and balance sheets), tax returns, and documents relating to any work performed for Standard from 1974 through 1991. . . ." (D.I. 251 at 6) Indeed, the "only documents which the Mantas Defendants have produced in those categories are a single disbursement ledger (for 1990), the 1989 and 1990 individual tax returns of Mr. Mantakounis and his wife, and very limited internal documentation relating to Mantas Painting from 1989 through 1991. (Id.) All other documents in said categories were not produced because, according to the claim of Mantakounis, they were destroyed prior to commencement of this litigation. It is interesting to note Mantas Defendants' previous assertion that their

compliance with Standard's document request would result in "considerable expenses in the form of attorney fees, photocopies, accountant fees, and loss of earning power" (D.I. 94 at P 10)--an assertion which indicates that a far greater number of documents existed at that stage of the proceedings compared to the few ultimately produced.

[*12]

> n5 The essence of this "defense" is reiterated in Mantakounis' brief filed in opposition to the motion at bar:
>
>> In their answer to the complaint, the Mantas defendants admitted that payments were made to the Sinibaldis but denied that those payments constituted kickbacks. In answers to interrogatories, the Mantas defendants admitted that the payments were extorted in order to keep the plaintiff's business. Thus, their answers indicated that (Mantas Defendants) were the victims and not the perpetrators of any criminal activity.
>
> (D.I. 255 at 7)

## II. DEPOSITION OF GEORGE MANTAKOUNIS: RELEVANCE OBJECTION

On January 20, 1994, Standard deposed defendant Mantakounis. Counsel for Mantakounis instructed his client not to answer numerous questions Standard posed at deposition. Though the instant motion concerns questions Mantakounis was instructed not to answer on Fifth Amendment grounds, the Court also will address an instance in which counsel instructed Mantakounis not to respond to questions posed during his deposition on grounds of relevance (or suggested lack thereof). n6

> n6 A teleconference was held following the Mantakounis deposition. (D.I. 247) Both the Fifth Amendment issue and counsel's instruction not to answer on grounds of relevance were raised at that time. The Court gave a tentative ruling, consistent with the discussion herein, that counsel's "instruction not to answer based on relevance is inappropriate." (D.I. 247 at 15) Though the parties indicated the Court's tentative ruling on this issue was sufficient for present purposes, the Court addresses it now to put the matter to rest.

[*13]

As related above, in this action Standard is suing, among others, George Mantakounis and his sole proprietorship, Mantas Painting Company. Another entity, Mantas Painting Company, Inc., "the successor to Mantas Painting Company" (D.I. 252, Exhibit A at 15-16), has not been joined in this lawsuit. When Standard posed questions to Mantakounis regarding the incorporated successor n7 to Mantas Painting Company, counsel instructed his client not to answer. (Id. at 17) Counsel gave the following explanation in responding to Standard's query as to "the basis for [this] instruction":

> The lack of relevance. It's not a party to this lawsuit and your question about why Mantas Painting Company, Inc. stopped doing business in 1992, how is it relevant to anything in this lawsuit? [It is] not named as a party in this lawsuit. The allegations against Mr. Mantas . . . relate to things that were done by Mantas Painting Company in the time period. So what reason why Mantas Painting Company, Inc. did or did not do business in 1992 is not relevant.

(Id. at 17-18)

> n7 Mantakounis' counsel has complained, notwithstanding his client's testimony to the contrary, that Mantas Painting Company, Inc. is not properly characterized as the successor of Mantas Painting Company. However, counsel supplied neither a factual nor a legal basis for this position.

[*14]

There are several problems with defendant's position. First, it is improper for a party to oppose discovery on grounds that the evidence sought would not be relevant at trial. The standard governing the scope of discovery under the Federal Rules of Civil Procedure is whether "the information sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). Because information regarding Mantas Painting Company, Inc. very well may lead to evidence relevant in this litigation, the basis for the objection and instruction not to answer lacks merit.

Second, it appears in any event that the particular question posed, which counsel erroneously implied is not "relevant to anything in this lawsuit," sought information which certainly could be relevant to Standard's claims against Mantas Defendants. As discussed above, Standard alleges that Mantas Defendants profited greatly from their alleged kick-back scheme with the Sinibaldis. Indeed, Standard alleges highly profitable work Mantas Defendants received from Standard--and concededly retained by virtue of payments to the Sinibaldis--constituted the great bulk of Mantas Painting Company's business. [*15] This lawsuit was commenced in 1991 and Mantas Defendants were joined herein in 1992. Since Mantas Painting Company, Inc. could have "stopped doing business in 1992" because the business no longer was profitable without the work from Standard, it is apparent that Standard's question concerned matters relevant to this case.

Finally, counsel's instruction not to answer a deposition question on grounds of relevance is manifestly at odds with proper deposition procedure. Indeed, the recently-amended Federal Rules of Civil Procedure include a provision governing depositions which codifies this established practice. In relevant part, new Rule 30(d)(1) provides: "A party may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present motion under paragraph (3)." Fed.R.Civ.P. 30(d)(1) (As amended Apr. 22, 1993, eff. Dec. 1, 1993) n8 Counsel's instruction not to answer for lack of relevance accordingly was in direct violation of Rule 30(d)(1), as well as being unwarranted for reasons already mentioned.

> n8 The Advisory Committee Notes accompanying this amendment explain:
>
> Directions to a deponent not to answer a question can be even more disruptive than objections. The second sentence of new paragraph (1) prohibits such directions except in three circumstances indicated: to claim a privilege or protection against disclosure (e.g., as work product), to enforce a court directive limiting the scope or length of permissible discovery, or to suspend a deposition to enable presentation of a motion under paragraph (3).

Notes of Advisory Committee on Rules, 1993 Amendments. The Advisory Committee Notes further explain that new Rule 30(d)(3) "authorizes appropriate sanctions . . . when an attorney engages in . . . practices that improperly frustrate the fair examination of a deponent, such as making improper objections or giving directions not to answer prohibited by paragraph (1)." Id.

[*16]

### III. MANTAKOUNIS' ASSERTION OF FIFTH AMENDMENT PRIVILEGE

In addition to asserting the Fifth Amendment privilege against self-incrimination generally, n9 Mantakounis was instructed by counsel not to respond to 56 specific questions Standard posed at deposition. (See D.I. 252 at A-1 to A-8) In moving to compel Mantakounis to respond to these questions at a reconvened deposition and for other related relief, Standard contends that (1) Mantakounis improperly asserted the Fifth Amendment privilege, and (2) Mantakounis waived the privilege as to questions concerning payments to the Sinibaldis. The Court will address the waiver issue in the first instance.

> n9 Counsel advised Standard at deposition that he would instruct his client, Mantakounis, to invoke the Fifth Amendment privilege as to any questions regarding the subject of payments made by Mantas Defendants to the Sinibaldis or members of their families. (D.I. 252, Ex. A at 149-150) Counsel further informed Standard that any questions concerning the tax returns of

Mantakounis and his wife would be subject to direction not to answer on Fifth Amendment grounds (Id. at 132), as would any questions concerning Mantas Defendants' interrogatory responses filed in this case. (Id. at 148). The record, therefore, does not support Mantakounis' present assertion that "he did not assert a blanket privilege but did so on a question by question basis." (D.I. 255 at 9) Though Mantakounis clearly invoked the privilege as to numerous specific questions, he also relied on the privilege in refusing to testify as to blanket areas of inquiry, namely, the categories just mentioned and others.

[*17]

A. Waiver of Fifth Amendment Privilege

In the instant case, defendant Mantakounis does not assert the Fifth Amendment privilege against self-incrimination on the ground that answers to deposition questions posed by Standard could be incriminating of the alleged criminal conduct that is the subject of Standard's RICO claims against him. n10 Indeed, Mantakounis readily concedes that "the assertion of the privilege is not based on his apprehension of prosecution for commercial bribery." (D.I. 255 at 15)

n10 Mantakounis' answer and his responses to Standard's interrogatories, which were not "produced under judicial compulsion," indicate he will testify as to the subject matter of this litigation, irrespective of whether his answers are incriminating as to the wrongdoing alleged in Standard's complaint. Having admitted that he made payments to the Sinibaldis and that he did so to retain Standard's business, Mantakounis already has incriminated himself. Of course, these admissions ultimately may prove not to be incriminating if the jury believes Mantakounis' victim defense of "extortion," assuming he is permitted to present that "defense" to the jury.

[*18]

Thus, Mantakounis shall respond to questions relating to the (criminal) conduct alleged in the Amended Complaint; Mantakounis has waived the privilege and made an informed decision not to assert the privilege in that regard. n11 In addition, to the extent Mantakounis' responses to deposition questions may provide incriminating information to which the IRS already is privy, there is no basis for invoking the Fifth Amendment privilege to preclude Standard from obtaining the same information. n12

n11 For example, Standard questioned Mantakounis as to whether bills submitted to Standard for work performed by Mantas Painting Company were delivered by mail or by hand to Standard. (D.I. 252, Exhibit A at 126) Counsel instructed Mantakounis not to answer the question on grounds of the Fifth Amendment privilege. (Id.) Though it is apparent that the answer to this question may be incriminating as to the predicate acts supporting Standard's RICO claims because it may provide evidentiary support for Standard's allegation that defendants used the mails in furtherance of their alleged fraudulent scheme, there is no basis for concluding that a truthful answer "would provide a link in the chain of evidence needed to prosecute" Mantakounis for violation of tax laws. Accordingly, counsel should not have directed the witness not to respond to this question.

[*19]

n12 For example, Standard sought testimony from Mantakounis regarding the identity of any accountant or accountants he may have used in connection with his business or other financial affairs. Counsel instructed Mantakounis not to respond on Fifth Amendment grounds. Because the IRS may already be aware of the identity of any such accountants, either because they prepared and signed his tax returns or because the IRS previously has been in contact with them regarding Mantakounis' tax matters (which the record indicates may be the case), there is no basis for denying Standard access to that information.

Also, Standard may be entitled to receive copies of documents already produced to the IRS but not produced in this litigation (because of their purported non-existence). Cf. Winchester Associates v. Gould, No. 85 Civ. 2246 (MJL), slip. op., reported in LEXIS (S.D.N.Y. Aug. 9,

1985) (in connection with contempt proceedings concerning defendant's failure to comply with subpoena duces tecum, court directed defendant to "furnish to the plaintiff letters of authorization enabling [it] to examine certain bank accounts belonging to the defendant and to obtain access to documents seized from [the defendant's] home and office by federal law enforcement authorities").

[*20]

The sole basis for assertion of the Fifth Amendment privilege is Mantakounis' claim that responses to Standard's deposition questions could "provide a link in the chain of evidence needed to prosecute" him for criminal violation of tax laws. n13 Mantakounis contends he did not waive the Fifth Amendment privilege against self-incrimination as to matters touching on the tax law violations for which he purportedly fears prosecution. The Court agrees.

> n13 Assuming Mantakounis had not pled the Fifth Amendment privilege in connection with his alleged fear of prosecution for tax law violations, he could not be permitted to assert his "victim" defense of "extortion regarding the payments he admittedly made to the Sinibaldis while concomitantly refusing to give testimony as to the details surrounding those payments. To allow such a tactic would defeat the fact-finding process and invite distortion of the truth.

**B. Proper Assertion and Scope of the Fifth Amendment Privilege**

The Fifth Amendment to the United States [*21] Constitution provides, in relevant part, that "no person . . . shall be compelled in any criminal case to be a witness against himself. . . ." U.S. Const. amend. V. Though the Fifth Amendment itself refers only to "any criminal case," it is well-settled that the privilege against compulsory self-incrimination may be asserted in any civil, criminal or administrative proceeding. Kastigar v. United States, 406 U.S. 441, 444, 32 L. Ed. 2d 212, 92 S. Ct. 1653 (1972).

The privilege protects against disclosures that could be used in a criminal prosecution and may be invoked whenever a witness reasonably believes that his testimony could "furnish a link in the chain of evidence needed to prosecute" him for a criminal offense. Hoffman v. United States, 341 U.S. 479, 486, 95 L. Ed. 1118, 71 S. Ct. 814 (1951). The witness' bare assertion of the privilege, however, is not in itself sufficient to sustain the privilege because a "witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself." Id. at 486. "It is the court that decides whether a witness' refusal to answer is privileged." Estate of Fisher v. Commissioner of Internal Revenue, 905 F.2d 645, 648 (2d Cir. 1990). [*22]

"To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." Hoffman, 341 U.S. at 486-87. However, "when the danger is not readily apparent from the implications of the question asked or the circumstances surrounding the inquiry, the burden of establishing its existence rests on the person claiming the privilege." Estate of Fisher, 905 F.2d at 649 (citing United States v. Fox, 721 F.2d 32, 40 (2d Cir. 1983); In re Morganroth, 718 F.2d 161, 167 (6th Cir. 1983); United States v. Field, 532 F.2d 404 (5th Cir.), cert. denied, 429 U.S. 940, 50 L. Ed. 2d 309, 97 S. Ct. 354 (1976)); see also In re J.M.V., Inc., 90 Bankr. 737, 742 (Bankr. E.D. Pa. 1988) ("Simply identifying crimes which on their face have no apparent connection to the questions asked is insufficient to carry the burden necessary [*23] to sustain the privilege").

Standard challenges Mantakounis' "blanket" assertion of the Fifth Amendment privilege as to certain broad areas of inquiry. n14 "For one to invoke this privilege the party claiming it must not only affirmatively assert it, he must do so with sufficient particularity to allow an informed ruling on the claim. Under the circumstances of this case, a blanket refusal to answer or respond was not sufficient." North River Ins. Co., Inc. v. Stefanou, 831 F.2d 484, 487 (4th Cir. 1987). Though the privilege unquestionably "may be asserted and preserved in the course of discovery proceedings," invocation thereof must be "in specifics sufficient to provide the court with a record upon which to decide whether the privilege has been properly asserted **as to each question.**" Id. (emphasis added).

n14 See supra at n. 9. At deposition, counsel representing Mantakounis explained:

> I have instructed [my client, Mantakounis] that we will assert the Fifth Amendment privilege with respect to questions pertaining to revenues, expenses, income, bids, anything related to the financial statements and conditions of Mantas Painting Company, Mantas Painting Company, Inc., tax returns of those entities, [and] tax returns of Mr. Mantas, individually.

(D.I. 252, Ex. A at 33)

[*24]

As justification for invoking the privilege as to these blanket areas and as to the 56 specific questions Mantakounis refused to answer, counsel offered the following explanation (which is characterized in Mantakounis' brief as "a sufficient showing" to support his exercise of the privilege):

> I've got a subpoena and summons from the Internal Revenue Service. Tax returns deal with relatively simple things. It deals with revenues. It deals with expenses. It goes to the extent that you report revenues and expenses based on bids, in terms of number of people you say are working and the hourly rate.
>
> And it's all connected, in terms of what your revenues and expenses that are reported or not reported, documents that may be out in the public regarding specific jobs that you have done and reimbursement.
>
> So my instructions related to those narrow areas.
>
> I mean, Mr. Allen's questions were numerous, in terms of specific, but it's all related to income and expenses and methodologies utilized to determine prices or invoices for particular jobs. And it's with respect to the 1099s. That's the first thing that the Internal Revenue Service has focused in on and we have to respond to.

(D.I. [*25] 247 at 8-9) n15

n15 During the same teleconference in which the foregoing explanation was offered, counsel stated that "there has been a criminal referral" (Id. at 9) and that "a civil subpoena [was] issued to a sole proprietorship and a corporate entity that are dealing right now with 1099s." (Id. at 18-19) The record in this regard has not been supplemented.

Mantakounis has not provided the Court with sufficient information to determine whether he properly invoked the privilege in refusing to respond to the 56 specific questions and to any questions in the broad areas of subject matter already noted. In this regard, Standard argues:

> Plainly, Mantakounis has not met his burden to show how answering each of Standard's deposition questions poses a danger of self-incrimination, even if everything he and his counsel have represented is true. When, for instance, was the summons and subpoena received? Has there ever been any prior inquiry, investigation or review by the I.R.S., directed either to Mantakounis [*26] individually or to his companies, and, if so, when? To what year or years is the subpoena directed? What are the statutes of limitation for the crimes as to which he claims to fear self-incrimination? In the absence of this and other pertinent information, the Court is left 'to engage in speculation and guesswork' concerning the applicability of the privilege. In re Litton, 74 Bankr. 557, 560 (Bkrtcy. C.D. Ill. 1987).

(D.I. 256 at 4) The Court agrees with Standard's comments here and concludes that Mantakounis' blanket assertion of the privilege was improper. n16 Further, Mantakounis must supply more information "in specifics sufficient to provide the court with a record upon which

to decide whether the privilege has been properly asserted as to each [of the 56 deposition] question[s]." North River Ins. Co., Inc., 831 F.2d at 487.

> n16 Mantakounis can respond to many questions in the areas to which he asserted a blanket privilege without fear of self-incrimination. For example, questions concerning the basis for his "belief . . . that . . . payments [to the Sinibaldis] were necessary in order to keep [Standard's] work," while obviously relevant to Standard's RICO claims, do not appear to be incriminatory as to any tax law violations.

[*27]

Mantakounis notes that if "the Court desires additional information, counsel . . . is certainly agreeable to having an in camera discussion with the Court to discuss further the basis for the assertion of the privilege." (D.I. 255 at 12-13) There is authority favoring the use of such a procedure in these circumstances. E.g., Estate of Fisher, 905 F.2d at 650. Though Mantakounis appears to contemplate an oral discussion with the Court, a written in camera proffer, with any supporting documents, is necessary here. Given the extremely broad scope to which Mantakounis seeks to assert the privilege, and because it is not at all evident how responding to many of the questions posed thus far could "furnish a link in the chain of evidence needed to prosecute" him for a criminal violation of tax laws, the Court directs Mantakounis to supply an in camera proffer which will allow the Court to determine if the privilege has been properly asserted as to each of the 56 questions posed. n17

> n17 One particular issue that can be addressed now is whether Mantakounis may resist authenticating or identifying business records he already produced in this litigation in responding to Standard's document request. Relying on Arndstein v. McCarthy, 254 U.S. 71, 65 L. Ed. 138, 41 S. Ct. 26 (1920), Mantakounis contends that the Fifth Amendment privilege against compulsory self-incrimination entitles him to refuse to identify or authenticate the incriminating documents he has already produced. The Court disagrees. Having already performed the incriminating act of producing the subject documents--which serves as a form of authentication--Mantakounis will not incriminate himself further by responding to Standard's questions in this regard. See United States v. Doe, 465 U.S. 605, 79 L. Ed. 2d 552, 104 S. Ct. 1237 (1984); Curcio v. United States, 354 U.S. 118, 1 L. Ed. 2d 1225, 77 S. Ct. 1145 (1957); see also Butcher v. Bailey, 753 F.2d 465, 471 (6th Cir. 1985). The Court agrees, however, consistent with the Arndstein case, that Mantakounis may exercise the privilege in refusing to give substantive testimony regarding the contents of said documents where it could provide "a link in the chain of evidence needed to prosecute" him for tax law violations.

[*28]

The proffer shall address each of the 56 questions specifically and explain, as to each, how a response could "furnish a link in the chain of evidence needed to prosecute" Mantakounis for criminal violation of tax laws. Mantakounis shall address the specific offenses of concern and the statute of limitations issue. Such an inquiry seems appropriate here, particularly in light of the 15-year span covered by Standard's allegations. As already noted, the Court then will inform Mantakounis of which questions he must respond to and which questions he has properly asserted the privilege. As to questions not yet posed (such as questions within the areas to which he asserted a blanket privilege) to which Mantakounis may invoke the privilege, defendant is instructed to make particularized assertions of the privilege only when a response to a specific question could "furnish a link in the chain of evidence needed to prosecute" him for violation of tax laws.

### C. Consequences of Assertion of the Privilege

In a civil proceeding the finder of fact may be permitted to draw an adverse inference against a litigant who exercises the Fifth Amendment privilege in refusing to testify to probative [*29] matters. Baxter v. Palmigiano, 425 U.S. 308, 318-19, 47 L. Ed. 2d 810, 96 S. Ct. 1551 (1976); see Aetna Casualty and Surety Co. v. Rodco Autobody, 138 F.R.D. 328 n. 22 (D. Mass. 1991) (in civil RICO action, adverse inference warranted by witness' assertion of privilege in refusing to answer questions as to involvement in alleged bribery and kickback scheme); see also Cerro Gordo Charity v.

1994 U.S. Dist. LEXIS 3388, *29

Fireman's Fund American Life Ins. Co., 819 F.2d 1471, 1480-82 (8th Cir. 1987); RAD Services, Inc. v. Aetna Casualty and Surety Co., 808 F.2d 271 (3d Cir. 1986); Brink's Inc. v. City of New York, 717 F.2d 700, 707-10 (2d Cir. 1983). This principle shall apply in the litigation at bar, though the manner in which witness claims of privilege reach the jury need not be decided now. See RAD Services, Inc., 808 F.2d at 277-78.

Furthermore, the Court agrees with Standard that "fairness dictates that the assertion of the privilege be binding" and that a witness "should be precluded from later waiving the privilege and testifying" at trial to matters as to [*30] which he has previously asserted the privilege. (D.I. 251 at 16) n18 Relevant authorities support Standard's position. See, e.g., Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 576-77 (1st Cir. 1989) ("defendant may not use the fifth amendment to shield herself from the opposition's inquiries during discovery only to impale her accusers with surprise testimony at trial"); Duffy v. Currier, 291 F. Supp. 810, 815 (D. Minn. 1968) ("court would not tolerate nor indulge a practice whereby a defendant by asserting the privilege against self-incrimination during pre-trial examination and then voluntarily waiving the privilege at the main trial surprised or prejudiced the opposing party"); see also Bramble v. Kleindienst, 357 F. Supp. 1028, 1035 (D. Colo. 1973), aff'd, 498 F.2d 968 (10th Cir. 1974), cert. denied, 419 U.S. 1069, 42 L. Ed. 2d 665, 95 S. Ct. 656 (1974); Rubenstein v. Kleven, 150 F. Supp. 47 (D. Minn. 1957), aff'd, 261 F.2d 921 (1st Cir. 1958). Because Mantakounis has refused at bar to testify [*31] as to probative and critical matters at issue in the Mantas branch of this litigation, it would be inequitable to permit him to testify at trial if he is successful in asserting the privilege so broadly. n19

n18 Mantakounis is "aware that he will be precluded from personally testifying at trial as to any of the subject matters to which the privilege was asserted." (D.I. 255 at 16)

n19 Mantakounis acknowledges that "it was with extreme reluctance that [he] asserted his privilege because he realized the effect of doing so would prevent him from providing direct testimony which would enable him to successfully defend against the claims being asserted in this lawsuit." (D.I. 255 at 10)

## IV. CONCLUSION

For the reasons stated, Standard's motion will be granted in part and denied in part. n20

n20 Standard's motion sought, inter alia, an order compelling Mantakounis to respond to all questions he refused to answer at his deposition. (D.I. 250 at 2) Though this specific request is not granted, the Court will order that the deposition of Mantakounis be resumed and affords other relief sought by Standard, as explained herein.

[*32]

Mantakounis shall be ordered to file an in camera submission, consistent with the express instructions given herein, in support of his broad exercise of the Fifth Amendment privilege. After reviewing Mantakounis' proffer, the Court will instruct him on the extent to which he may properly exercise the privilege at his reconvened deposition.

The Court's discussion above regarding proper deposition practice and the consequences of exercising the Fifth Amendment privilege in the context of civil litigation shall govern in connection with Mantakounis' reconvened deposition.

An Order consistent with this Memorandum Opinion shall issue forthwith.