# EXHIBIT 1

Case 1:05-cv-00165-JJF    Document 465-2    Filed 05/02/2007    Page 1 of 14

*Royal Indemnity v.*
*Pepper Hamilton*

*Hearing*
*February 7, 2007*

*Hawkins Reporting Service*
*715 N King Street*
*Suite 3*
*Wilmington, DE  19801*
*(302) 658-6697*

*Original File 020707~2.TXT, 36 Pages*
*Min-U-Script® File ID: 0933720868*

**Word Index included with this Min-U-Script®**

```
                                        1
         IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF DELAWARE
    ROYAL INDEMNITY COMPANY, )
         Plaintiff,          )
                             ) C.A. No. 05-165-JJF
    v.                       )
                             )
    PEPPER HAMILTON LLP, W.  )
    RODERICK GAGNE', FREED   )
    MAXICK & BATTAGLIA CPAs  )
    PC, McGLADREY & PULLEN,  )
    LLP, MICHAEL AQUINO and  )
    FREED MAXICK SACHS &     )
    MURPHY,                  )
         Defendant.          )
              Wednesday, February 7, 2007
              1:03 p.m.
              Courtroom 4B
              844 King Street
              Wilmington, Delaware
    BEFORE: THE HONORABLE JOSEPH J. FARNAN, JR.
              United States District Court Judge
    APPEARANCES:
         ASHBY & GEDDES
         BY: PHILIP TRAINER, JR., ESQ.
         BY: TIFFANY GEYER LYDON, ESQ.
              -and-
         SONNENSCHEIN, NATH & ROSENTHAL, LLP
         BY: JOHN I. GROSSBART, ESQ.
         BY: MICHAEL H. BARR, ESQ.
              Counsel for Plaintiff
```

Page 2

```
    APPEARANCES CONTINUED:
         DUANE MORRIS, LLP
         BY: MICHAEL LASTOWSKI, ESQ.
              -and-
         WILLIAMS & CONNOLLY, LLP
         BY: THOMAS H. L. SELBY, ESQ.
              Counsel for Defendant
              McGladrey & Pullen, LLP
         ARNOLD & PORTER, LLP
         BY: VERONICA E. RENDON, ESQ.
         BY: JASON M. BUTLER, ESQ.
              Counsel for Defendants
              McGladrey & Pullen, LLP
              Michael Aquino
         THE BAYARD FIRM
         BY: CHARLENE D. DAVIS, ESQ.
              -and-
         McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
         BY: MICHAEL S. WATERS, ESQ.
         BY: LOIS H. GOODMAN, ESQ.
              Counsel for Chapter 7 Trustee
         PRICKETT, JONES & ELLIOTT
         BY: LAINA M. HERBERT, ESQ.
              -and-
         VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
         BY: JONATHAN A. WEXLER, ESQ.
              Counsel for Defendants,
              Freed, Maxick, Sachs & Murphy &
              Freed, Maxick & Battaglia
```

Page 3

```
    APPEARANCES CONTINUED:
         SCHNADER LAW
         BY: ELIZABETH K. AINSLIE, ESQ.
         BY: STEPHEN J. SHAPIRO, ESQ.
              Counsel for Pepper Hamilton, LLP
              and Roderick Gagne
         ECKERT SEAMENS
         BY: NEIL G. EPSTEIN, ESQ.
              Counsel for Robert Best, Pamela
              Gagne, Roderick Gagne and Family
              Trusts
         PROSKAUER ROSE, LLP
         BY: ANDRE G. CASTAYBERT, ESQ.
         BY: STEVEN OBUS, ESQ.
              Counsel for MBIA and Wells Fargo
              as Trustees
```

Page 4

[1] **THE CLERK:** All rise.

[2] **THE COURT:** All right. Be seated, [3] please.

[4] Good afternoon.

[5] (Everyone said, Good afternoon, Your [6] Honor.)

[7] **THE COURT:** All right. You want to [8] announce your appearances?

[9] **MR. GROSSBART:** John Grossbart on [10] behalf of Royal Indemnity Company, plaintiff.

[11] **MR. BARR:** Michael Barr, [12] Sonnenschein, Nath & Rosenthal on behalf of [13] Royal.

[14] **MR. TRAINER:** Lee Trainer, Ashby & [15] Geddes on behalf of Royal.

[16] **MS. GOODMAN:** Good afternoon, Your [17] Honor. Lois Goodman from McElroy, Deutsch, [18] Mulvaney & Carpenter on behalf of Charles A. [19] Stanziale, Trustee.

[20] **MR. WATERS:** Michael Waters on [21] behalf of the Trustee, Your Honor. Good [22] afternoon.

[23] **MS. DAVIS:** Charlene Davis for The [24] Bayard Firm on behalf of the Chapter 7 Trustee.

Page 5

[1] **MS. LYDON:** Tiffany Geyer Lydon from [2] Ashby & Geddes on behalf of Royal.

[3] **MS. RENDON:** Veronica Rendon, Arnold [4] & Porter on behalf of McGladrey & Pullen, LLP and [5] Mr. Michael Aquino.

[6] **MR. SELBY:** Thomas Selby from [7] Williams & Connolly on behalf of McGladrey & [8] Pullen.

[9] **MS. AINSLIE:** Elizabeth Ainslie [10] representing Pepper Hamilton and Rod Gagne as the [11] partner.

[12] **MR. SHAPIRO:** Steve Shapiro, [13] Schnader Harrison on behalf of Pepper and Gagne.

[14] **MR. EPSTEIN:** Neil Epstein on behalf [15] of Robert Best, Pamela Gagne, and Mr. Roderick [16] Gagne, and Family Trusts.

[17] **MR. LASTOWSKI:** Michael Lastowski of [18] Duane Morris here today on behalf of McGladrey & [19] Pullen.

[20] **MR. PELLETIER:** David Pelletier from [21] Schnader Harrison on behalf of Pepper and Rod [22] Gagne as a partner at Pepper.

[23] **MR. WEXLER:** Jonathan Wexler of [24] Vedder Price on behalf of Freed, Maxick, Sachs &

Page 6

[1] Murphy and Freed, Maxick & Battaglia.

[2] **MR. BUTLER:** Jason Butler on behalf [3] of McGladrey & Pullen and Michael Aquino.

[4] **MR. CASTAYBERT:** Andre Castaybert on [5] behalf of MBIA and Wells Fargo as Trustees, and [6] I'm expecting my colleague, Steve Obus, to be [7] here.

[8] **THE COURT:** All right. We're here [9] for a discovery conference, and what I understand [10] is that Docket Item 133, a motion to compel [11] production of communications between the Trustee [12] and Royal and documents related, excuse me, to [13] compensation received by the Trustee filed by [14] Pepper Hamilton and Gagne remains open.

[15] Is that correct?

[16] **MS. AINSLIE:** That's correct, Your [17] Honor.

[18] **THE COURT:** Pardon me?

[19] **MS. AINSLIE:** That is correct.

[20] **THE COURT:** You haven't been able to [21] resolve it. That motion is going to be granted [22] in all respects except with regard to the [23] personnel files of accountants. My understanding [24] is that what's sought by that motion and are with

Page 7

[1] that pertain to agreements. They are the [2] agreements themselves, not communications.

[3] This case being a case with credible [4] allegations of fraud requires, I believe and find [5] more depth in the discovery than might otherwise [6] be granted in a contract or simple negligence [7] case. So weighing the allegations of fraud [8] against the discovery effort, I've determined [9] that the other four categories of documents must [10] be produced.

[11] **MR. GROSSBART:** Your Honor, I think, [12] if I may, John Grossbart. I wouldn't say [13] that's — you are, I think, referring to Royal's [14] motion against McGladrey as opposed to —

[15] **THE COURT:** I'm sorry. You're [16] right.

[17] What did I say?

[18] **MR. GROSSBART:** The Pepper motion.

[19] **THE COURT:** I apologize.

[20] **MR. GROSSBART:** No, that's all [21] right.

[22] **THE COURT:** You're right. Now, the [23] motion that I just ruled on is Docket Item 299 [24] filed by Royal Indemnity.

Page 8

[1] Docket Item 133, the motion that [2] compels production of communications between the [3] Trustee and Royal and documents relating to [4] compensation received by the Trustee filed by [5] Pepper, is that the right docket item number?

[6] I might have written these down [7] wrong.

[8] **MR. GROSSBART:** I don't know. [9] That's certainly an outstanding motion.

[10] **MR. WATERS:** That's the other [11]

motion.

[12] THE COURT: I better go check the [13] docket real quick just to be sure. I tried to [14] take the docket items off the original documents, [15] so let me just be sure.

[16] MR. WATERS: Your Honor, if I may, [17] the —

[18] THE COURT: Yes.

[19] MR. WATERS: The docket number for [20] Stanziale versus Pepper Hampton is Civil Action [21] Number 04-15 —

[22] THE COURT: Yeah, that's not [23] helpful. I have 04-1551. I'm looking for the [24] docket items with —

Page 9

[1] MR. WATERS: Oh, the docket items.

[2] THE COURT: The specific docket [3] items in the briefing. They are just on the [4] corner usually, and they're not used by you all [5] when you talk about the motions.

[6] So I want to be sure. I got that [7] first one wrong, but it is DI-299.

[8] Now, 133 —

[9] (Following a discussion held off the [10] record:)

[11] THE COURT: Okay. All right. [12] Docket Item 133 in 04-1551, the [13] motion to compel is granted.

[14] And Docket Item 156 a motion for [15] protective order and to compel discovery. As I [16] understand it, in the first part, there's a [17] request for in camera review, which I'll grant.

[18] Are you understanding?

[19] MS. AINSLIE: Yes.

[20] THE COURT: You both said that you [21] would —

[22] MS. AINSLIE: We have the documents [23] here, Your Honor. We can leave them here with [24] you.

Page 10

[1] THE COURT: You'll submit them, and [2] I'll make a ruling on those documents —

[3] MS. AINSLIE: That will be fine.

[4] THE COURT: — on the context of [5] that motion.

[6] The second part of that motion is a [7] request for Gagne's compensation records.

[8] MS. AINSLIE: We have already [9] provided those, Your Honor.

[10] MR. WATERS: That's been resolved, [11] Your Honor.

[12] THE COURT: So all I need to have in [13] that motion, then, is the in camera documents.

[14] MR. GROSSBART: Your Honor, if I [15] could ask a point of clarification on that [16] particular motion?

[17] THE COURT: Sure.

[18] MR. GROSSBART: Pepper's motion had [19] really two separate and independent parts. One [20] had to do with Trustee compensation, one had to [21] do with what we contend were joint.

[22] THE COURT: This is 133?

[23] MR. GROSSBART: Well, they were in [24] the same documents to get Trustee compensation

Page 11

[1] and communications between Royal and the Trustee, [2] which we've asserted are protected by joint [3] privilege.

[4] Are you granting both aspects of [5] that motion or have you not spoken yet to the [6] communications between the Trustee and Royal?

[7] That motion also deals with —

[8] THE COURT: There are two aspects to [9] that, pre-settlement and post-settlement. And [10] I'm granting it as to what I thought the request [11] boiled down to, which were the pre-settlement [12] discussions.

[13] MR. GROSSBART: Got you.

[14] THE COURT: If I misunderstood, now [15] is the time to tell me.

[16] MR. GROSSBART: No. I don't think [17] you misunderstood it. I — I appreciate that [18] distinction.

[19] THE COURT: Okay.

[20] MR. GROSSBART: And just because I'm [21] switching gears here with these numbers on the [22] motion that Royal brought against McGladrey, the [23] motion to compel, did I understand the Court to [24] say it's granted in all respects except the

Page 12

[1] personnel files or did I —

[2] THE COURT: There were five specific [3] categories and somewhere in an opening paragraph [4] of the brief, you set them out pretty clear, the [5] five categories.

[6] It's granted in all respects except [7] to the —

[8] MR. GROSSBART: Correct.

[9] THE COURT: — personnel files, as I [10] understood it, of the accountant employees.

[11] MR. GROSSBART: One of the things we [12] asked with respect to that item in particular is [13] if we were going to be denied discovery of those [14] personnel files, that there be in limine [15] protection against use of the personnel files [16] that we and perhaps others have already produced [17] in the case.

[18] THE COURT: Well, I understand that [19] you gave over some files.

[20] MR. GROSSBART: Yes.

[21] THE COURT: But all of you are going [22] to be, I assume, if this case goes to trial, in [23] an in limine practice. And what I tried to say [24] at the beginning was that I'm granting the

Page 13

[1] discovery because of the fraud assertions, but [2] that doesn't mean that this is going to be [3] evidence that gets into a trial.

[4] MR. GROSSBART: No, I understand.

[5] THE COURT: Because if you get that [6] far, because it will be motions to limit [7] admission. Because their big argument is that [8] it's really not probative on any issue. And, of [9] course, you argument to all that is you already [10] gave them over.

[11] MR. GROSSBART: My bad.

[12] THE COURT: I don't know what to [13] tell you.

[14] So down the road, I understand you [15] may, but for purposes now, present purposes, I'm [16] just ruling on what's disputed. But I would [17] think, to give you my present thinking, manuals [18] probably get in. Irrelevant personnel [19] evaluations, generally, not specific to the issue [20] don't.

[21] But I don't know. I'll have to wait [22] and see.

[23] MR. BARR: Your Honor.

[24] THE COURT: We have got to have a

Page 14

[1] little more discovery before we get that.

[2] MR. BARR: Michael Barr. I [3] apologize two people addressing the same issue.

[4] Is the Court's denial of our access [5] to their personnel records also pertaining to the [6] specific material where they may have you review [7] that says your performance with respect to the [8] Student Finance?

[9] THE COURT: Yes.

[10] MR. BARR: So across the board?

[11] THE COURT: For present purposes, [12] you're out.

[13] MR. BARR: Thank you, Your Honor.

[14] MS. RENDON: Your Honor, on the same [15] motion, if I may just seek some additional [16] clarification.

[17] And I thought, and maybe I [18] misunderstood the Court, that with respect to the [19] request by Royal for joint defense agreements or [20] any kind of cooperation agreements, what Your [21] Honor has ordered is only that agreements be [22] produced, but not communications subject to that [23] agreement.

[24] THE COURT: Yeah. I couldn't tell

Page 15

[1] in your papers whether you whis- [2] pered to each other or you've written things down. I'm not [3] sure, whatever the agreements are, whether [4] they're whispered, oral, written down. You've [5] got to give them the agreements.

[6] You don't have to give any [7] communications that you then transacted subject [8] to those agreements. That, you know, in my view, [9] is not part of my order.

[10] MS. RENDON: And I just wanted to [11] clarify that I had another request for [12] clarification, also, and it relates to the audit [13] manuals that I understand Your Honor is ordering [14] to be produced.

[15] And the question that I have on that [16] is: The request for production was for years [17] audit manuals that existed for 1997 through 2002, [18] but the work that is the subject of the lawsuit [19] all occurred in the time period February 2000 [20] through April 2001.

[21] And what I would request is that [22] the — and I'm not sure if Your Honor took that [23] into consideration or not. I'm sure you will let [24] me know. But I guess what I'm asking is: Can we

Page 16

[1] limit the production of the audit manuals to the [2] time period that the work is at issue?

[3] THE COURT: No. I didn't think the [4] period requested was burdensome, because it's an [5] audit manual.

[6] And I could see where they may want [7] to make some — I don't want to be an advocate [8] here, but I could see where they may want to use [9] prior manuals versus manuals specifically [10] relevant to the time frame. It is discovery.

[11] Now, again, whether I would let them [12] use a manual from '97 against the allegations of [13] the case as proof, I don't know yet. But I think [14] for discovery purposes, I can understand the [15] reason why they would want '97 through.

[16] MS. RENDON: Thank you, Your Honor.

[17] THE COURT: So you have to give them [18] all. You were standing up in the middle of her [19] conversation.

[20] MR. BARR: Your Honor, you [21] responded —

[22] THE COURT: I mean, he was standing [23] up.

[24] MR. BARR: I'm sitting down.

Page 17

[1] MR. GROSSBART: I was standing up, [2] but it got clarified, and I jumped the gun a bit.

[3] THE COURT: Okay. So do you want [4] to —

[5] MR. GROSSBART: We're great.

[6] THE COURT: You want to jump up?

[7] MR. BARR: I'm not budging.

[8] MR. WATERS: Just to be certain, [9] your ruling on Pepper's document request with [10] respect to Mr. Stanziale's compensation from his [11] law firm, you denied the motion for a protective [12] order.

[13] THE COURT: Yes.

[14] MR. WATERS: And you're granting [15] that?

[16] THE COURT: Yes.

[17] MR. WATERS: I am clear. I just [18] wanted to make sure.

[19] THE COURT: Yes. There is a [20] protective order in the case, and I think if [21] they — what was it they talk about, a $5 million [22] payment?

[23] And then what is going on between [24] the Trustee and the law firm, you know, if they

Page 18

[1] want to know that, that's fine. But, again, I [2] don't know if it's evidence in the case on an [3] element ultimately as, you know, proving.

[4] But I'm going to let them see it. I [5] don't think it's all that critical —

[6] MR. WATERS: Okay. I understand.

[7] THE COURT: — as a discovery [8] matter.

[9] They're just curious. They are [10] trying to see if they're being taken care of on [11] their side. It's not a big deal.

[12] I'm not someone that's shocked by [13] numbers. I figure all the aggravation you put up [14] with, you probably ought to be getting double [15] what you are any way.

[16] So, all right. Does that kind of [17] settle what was out there?

[18] There's one more thing in this [19] letter request. I'm sorry.

[20] Is that what you wanted to talk [21] about?

[22] MR. SELBY: Yes.

[23] THE COURT: I sort of had in mind [24] what I was going to do, and then I got this

Page 19

[1] letter, my case manager gave it to me about a [2] half hour ago, telling me what the status is. [3] Because maybe I don't have to get into this.

[4] MR. SELBY: Your Honor, we filed the [5] application. As you know, we were before you [6] arguing for Royal in the United States to produce [7] the documents. Your Honor denied that motion.

[8] We, at the time, informed you we'd [9] be filing the application under the Hague [10] Convention, which we did in January.

[11] We, too, received today this letter [12] objecting, not to the substance of the request, [13] the documents requested, but to some of the [14] language in the application itself. And we've [15] had a brief discussion outside, but that's really [16] where we are today.

[17] We think time is of the essence. [18] We'd like to get the application approved, [19] because as you know, these things take time [20] getting overseas and getting the Court's [21] attention overseas.

[22] We've worked with counsel overseas [23] to craft the request the way it was crafted. And [24] so we'd like to get approval as quickly as

Page 20

[1] possible.

[2] MR. BARR: Your Honor, simply stated [3] where our objection was, Mr. Selby is correct. [4] We're not objecting to them making letter [5] requests or the Court issuing an order from this [6] Court with respect to that in order to start the [7] processes for the Hague Convention.

[8] The portion of what they propose [9] that we objected to, in effect, put this Court in [10] the position of finding essentially relevance [11] with respect to certain materials, making certain [12] specific factual findings as to the relevance of [13] those materials as to the existence of certain [14] facts.

[15] And the only changes that we made [16] in our proposed change was effectively just to [17] eliminate that portion of the findings and to say [18] this is their contention and it's effective for [19] the Court's indulgence to determine how to [20] proceed under the Hague Convention.

[21] It's different what they presented [22] to the Court and what we presented to the Court [23] and most of those changes, Your Honor, are on [24] Page 6, one paragraph there.

Page 21

[1] THE COURT: Do you need those to [2] make your case?

[3] MR. SELBY: Our concern, Your [4] Honor, is that we need to make a showing in the [5] U.K. for these documents, and that paragraph is [6] addressed to the involvement of the U.K. parent [7] in the transaction and in the events related to today.

[8] It is our allegations. We're not [9] submitting that Royal is bound by any finding of [10] this Court related to the application, but we do [11] think it's important to tell the Court in the [12] United Kingdom what the involvement of the United [13] Kingdom company was in order to make the showing [14] for

them to approve the application.

[15] **MR. BARR:** Your Honor, we think that [16] they do make that showing. And again, it is [17] certain they can file papers further to this in [18] London.

[19] But they do make those kind of [20] statements on Pages 2, 3 and 4 of their letter [21] request. They lay these things out chapter and [22] verse. And there it's cast in terms of what [23] their allegations are.

[24] When you turn to the paragraph on

### Page 22

[1] Page 6, it specifically is written in a fashion [2] that no longer talks about these being [3] McGladrey's allegations or McGladrey's [4] contentions, but rather that these are actual [5] specific findings of this Court. And Your Honor, [6] effectively, you are putting then your judicial [7] interpretation on those findings. And [8] respectfully that is not what occurred here.

[9] And, again, we're focusing — there [10] are a few other words we changed earlier, again, [11] to talk about the notion of allegations. What we [12] could do, Your Honor, we could, by this afternoon [13] or tomorrow morning at the latest, provide just a [14] red line so the Court can see the comparison [15] between the two.

[16] But, again, if you're looking at the [17] way the language is on the top of Page 6 where it [18] says, you know, the documents in RSA's [19] possession, i.e. assuming they're in their [20] possession, will be used to prove their defenses [21] at the trial of this case.

[22] And then proceeding, starting with [23] the third sentence, it relates very specifically, [24] effectively findings as to what the role was of

### Page 23

[1] the U.K. parents here, and no factual findings [2] that may ultimately be found in this trial or [3] not.

[4] But they certainly are not something [5] that this Court has already determined. The [6] change that we made, which in our proposal, Your [7] Honor, and I could just hand up a copy if need be [8] here. It's, again, on Page 4 after Number 8.

[9] May I approach?

[10] **THE COURT:** I think I have it.

[11] **MR. BARR:** Your Honor, if you would [12] look, then, on Page 4 of our proposal. And the [13] paragraph under — it's numbered Paragraph 8. I [14] think that language would simply change it to be [15] what they contend happened here, and the fact [16] that they may use — potentially use these at [17] trial.

[18] Again, then it doesn't put this [19] Court in the position of saying to the Court in [20] London, This is what occurred.

[21] **MR. SELBY:** Your Honor, that [22] language is particularly problematic, the [23] language that's just been highlighted to you, [24] because of the requirements of the U.K. Court

### Page 24

[1] that this be not for discovery purposes, but for [2] the use at trial. And the qualifiers in that [3] sentence, as written by Royal, we believe could [4] lead the U.K. Court to reject this. And this has [5] been pending since January without complaints [6] from Royal until this morning.

[7] I find it hard to believe that this [8] is causing as much heartburn as it appears to be [9] when it's been unresponded to all this time.

[10] **MR. BARR:** Your Honor.

[11] **MR. SELBY:** I have no problem — I [12] have no problem, Your Honor, indicating that —[13] these are on the top of Page 6 of our — of our [14] original request that these are allegations. [15] We're not trying to imply or suggest that these [16] are findings by this Court.

[17] I don't have an objection to that. [18] But the softening of the language appears to have [19] the effect of making this much more contingent [20] than the U.K. Courts may allow and could [21] ultimately lead to further litigation on this [22] matter.

[23] **MR. BARR:** Your Honor, but in the [24] same token, for there to be a presentation to a

### Page 25

[1] Court in the U.K., which is obviously not —[2] that's familiar with this action as this Court [3] is, that effectively says these are documents [4] that will be used at trial to prove something is [5] very different from saying these are materials [6] that they need or would like to get possession of [7] in order to present at trial. Those are not the [8] same thing.

[9] And, again, for this Court to be [10] saying to a U.K. Court, in effect, fellow jurors, [11] I need these materials in my courtroom for this [12] matter to be adjudicated is a very different [13] thing than what we have ever understood the [14] purpose of the Hague Convention, which is a [15] procedural mechanism for obtaining materials from [16] different jurisdictions.

[17] Your Honor, it's our belief this is [18] customary in this type of application. This is [19] customary language. We don't see it as any sort [20] of adoption of the position, and we were glad to [21] try to work out language about the allegations.

[22] But we just ask that this either be [23] approved as submitted or that we be given an [24] opportunity to try to work something out over the

### Page 26

[1] next 24 hours. But we really would like to [2] proceed with this in order to get these documents [3] and —

[4] **THE COURT:** Well, let's see if we [5] all understand. I mean, in the patent cases we [6] do here, this happens all the time.

[7] And it's the same standard, but [8] there's different views on the standard. It's [9] much harder, for instance, in Germany, I'm told, [10] and there's some pharmaceutical patents that come [11] from Sweden and places like that, than it is in [12] the United Kingdom.

[13] So, but let me tell you what I think [14] they want you to do: I think you have to make —[15] I have to sign an order that says that I've been [16] presented, and I find that there is evidence in [17] the United Kingdom that is not for discovery, [18] because they don't want you fishing around, but [19] it is for use at trial.

[20] Now, the order I read, possible use [21] at trial, I think that probably is okay. Maybe [22] not.

[23] But the only scrutiny I think the [24] United Kingdom gives our letters, our orders are

### Page 27

[1] that, the difference between discovery and the [2] need for the evidence in the case.

[3] I don't make enough to draft that [4] kind of language. You've got to get together and [5] draft that language.

[6] Now, it can't be tentative language. [7] And so sometimes we have to accept the [8] representations of officers of the Court that the [9] evidence exists, and they're going to need it.

[10] On the other hand, it can't be —[11] first of all, it's not findings able to be used [12] in — you already said that in the trial. But it [13] can't be wide ranging beyond what you really [14] need.

[15] Now, with that guidance can't you [16] come up with something?

[17] **MR. BARR:** Sure we can, Your Honor. [18] Over — at least we certainly will attempt to do [19] so.

[20] **MR. SELBY:** We'll certainly attempt [21] to do so.

[22] **THE COURT:** If you can't after you [23] in good faith — I mean, there's actually a [24] little book on this stuff right here in the

### Page 28

[1] library in this building. Like they have samples [2] you can go get. Just copy it, and then put your [3] allegations in, what

you expect to find, and then [4] I'll sign it. [5] But it ought to be a discrete [6] disagreement if there is a disagreement. And it [7] ought not to be, in my view, about use, intended [8] use. It ought to be about how broad the [9] statement of the information I found is needed.

[10] **MR. BARR:** Thank you, Your Honor.

[11] **THE COURT:** I can parse that, if you [12] can't agree. So you can give me your marked up [13] copy of what you think should be in it, and I'll [14] just make a ruling. And you can have my [15] signature and go.

[16] **MR. BARR:** To be realistic, I would [17] just propose that we have something back to the [18] Court by Friday to inform the Court where we are, [19] it being Wednesday afternoon at this point.

[20] **MR. SELBY:** That's fine.

[21] **THE COURT:** Actually you can [22] probably do this today.

[23] **MR. SELBY:** I agree, Your Honor. I [24] think it is a matter of five words.

Page 29

[1] **THE COURT:** If this is more than —

[2] **MR. SELBY:** With that direction, I [3] think it's really a matter of changing the tenor [4] of the paragraph on Page 6 to be allegations that [5] McGladrey is making.

[6] **THE COURT:** I don't want to get into [7] it.

[8] **MR. SELBY:** That's fine.

[9] **THE COURT:** That's what I'm trying [10] to avoid. I think you can get this done by this [11] afternoon.

[12] **MR. SELBY:** Okay.

[13] **THE COURT:** And I guess you don't [14] call it typed up anymore. What do you call it? [15] Processed?

[16] And I might be able to sign this by [17] five o'clock. You could probably do it in the [18] courthouse and then send somebody with one of [19] those discs.

[20] **MR. SELBY:** We'd be glad to do that, [21] Your Honor.

[22] **THE COURT:** Now, if you can't, then [23] I can look at it tomorrow and get it back to you [24] by tomorrow afternoon.

Page 30

[1] **MR. SELBY:** Super.

[2] **THE COURT:** So I'll expect to get [3] something to sign by five o'clock or your marked [4] up proposals by 10 o'clock tomorrow morning.

[5] **MR. SELBY:** Thank you, Your Honor.

[6] **MR. BARR:** That's fine, Judge. [7] Thanks.

[8] **THE COURT:** You really should be [9] able to agree on this. This is something — I [10] mean, I'd be surprised.

[11] Or else we'll have to cut off [12] funding. That's the trick.

[13] All right. I think I've addressed [14] everything that you had pending.

[15] No?

[16] **MS. AINSLIE:** Yes, you have as far [17] as I know. I just wanted to bring two matters to [18] the Court's attention.

[19] One of them is I'd like to put on [20] the record the fact that Pepper has, I think, [21] since our — or at least I wanted to clarify that [22] the only thing that we are withholding and then [23] submitting to the Court by way of in camera [24] inspection are certain communications between Rod

Page 31

[1] Gagne and counsel to Pepper Hamilton.

[2] All of the other matters that have [3] been referred to —

[4] **THE COURT:** Say that again. You're [5] withholding between Pepper's counsel?

[6] **MS. AINSLIE:** And Pepper's counsel.

[7] **THE COURT:** Schnader?

[8] **MS. AINSLIE:** No, Pepper. Of [9] counsel. Their other counsel, Mr. Wilcox.

[10] So it's those communications. And [11] we have, in fact, waived the — decided that we [12] are able to produce anything relating to other [13] entities as to which we had previously asserted a [14] privilege.

[15] So we have provided those to the [16] Trustee. So the only things that I believe we [17] need to have the Court rule on or look at are [18] these communications. And that's what we've [19] brought.

[20] **MR. WATERS:** As far as I know, they [21] are still withholding documents as to where [22] privilege has not been claimed, but as to which [23] they think a privilege might exist to SLS and SMS [24] and UCM.

Page 32

[1] **MS. AINSLIE:** We are not.

[2] **MR. WATERS:** If you haven't given it [3] to them, you will turn them all over.

[4] **MS. AINSLIE:** They have been [5] produced, but we'll go back and check. And if [6] any have inadvertently not been produced, they [7] will be.

[8] **MR. WATERS:** Okay.

[9] **MS. AINSLIE:** Your Honor, there's [10] one last thing.

[11] **THE COURT:** I think you have an [12] agreement.

[13] **MS. AINSLIE:** Yes, we do.

[14] Your Honor, the one last thing that [15] I'm just raising in case it is of interest to the [16] Court in a way, there is a dispute between the [17] parties, the Trustee and Pepper with respect to a [18] server that

has been in existence and exists in [19] the State of New York.

[20] We filed a motion to compel in the [21] Southern District of New York and one of the [22] Schnader lawyers went to New York City, argued [23] that it appeared that the judge there was of a [24] mind to transfer it to Your Honor

Page 33

[1] If you would like to hear something [2] about that today, we have Mr. Pelletier. But if [3] you would rather wait and see whether this [4] Southern District judge bites the bullet and [5] decides it, I can understand it.

[6] **THE COURT:** They're supposed to be a [7] lot smarter than us up in the Southern District. [8] Let's see.

[9] **MS. AINSLIE:** That is fine. I just [10] wanted to make the offer.

[11] **THE COURT:** They're the high end of [12] the District Court. We will give them the first [13] shot, and then we'll drop it down here.

[14] Here is what I want to tell you: So [15] we're pretty much resolved for what was pending. [16] What I wanted to tell you was there's a [17] procedure, because you all are sort of, you know, [18] at issue in a number of things. As you go on, if [19] you go to the website of my chambers on the Court [20] website, there's a procedure for patent cases for [21] what they call — what do they call it —[22] non-case dispositive motions. Non-case [23] dispositive motions.

[24] So in my world that means not

Page 34

[1] motions to dismiss or summary judgment, but [2] discovery disputes. And there's a motion day [3] each month.

[4] It's only for patent cases right [5] now, but I'm going to allow you to utilize that [6] procedure. But read the order very carefully, [7] because there's some strict time frames, and [8] you'll get bounced. And the idea is to help you [9] reduce paper and help us get you quicker answers.

[10] So you have to come — I think —[11] well, you know, you might be — if you want to go [12] home and write a motion real quickly, I think [13] Friday is the cut-off for March 2nd, because it's [14] a short month in February.

[15] I'd prefer you not do that since you [16] were here today, but there are dates out through [17] July once a month. You notice the motion for 10 [18] o'clock that day. You have to come.

[19] Lately it's been taking like an hour [20] to get everybody out of here. And there's like [21] seven or eight motions on usually.

[22] But you're allowed to use that [23]

procedure, but be very careful. And then [24] essentially we just enter a disposition

Page 35

[1] electronically on the docket tracking the reasons [2] I give at the hearing, kind of like today.

[3] So, but read it carefully about the [4] time frames so you're not cut short and then get [5] bounced to the following month, because that [6] would, you know, not help the purposes of it.

[7] And that way we don't have to worry [8] about you having time to get in.

[9] **MS. AINSLIE:** Great. Thank you.

[10] **THE COURT:** Anything else? [11] All right. Thank you very much. [12] We will be in recess.

[13] (Court was recessed at 1:35 p.m.)

Page 36

State of Delaware         )
New Castle County         )

CERTIFICATE OF REPORTER

I, Heather M. Triozzi, Registered Professional Reporter, Certified Shorthand Reporter, and Notary Public, do hereby certify that the foregoing record, Pages 1 to 36 inclusive, is a true and accurate transcript of my stenographic notes taken on February 7, 2007, in the above-captioned matter.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this 9th day of February, 2007, at Wilmington.

Heather M. Triozzi, RPR, CSR

**Lawyer's Notes**

**Lawyer's Notes**

**$**

**$5 million** 17:21

**0**

**04-15** 8:21
**04-1551** 8:23; 9:12

**1**

**10** 30:4; 34:17
**133** 6:10; 8:1; 9:8, 12; 10:22
**156** 9:14
**1997** 15:17
**1:35** 35:13

**2**

**2** 21:20
**2000** 15:19
**2001** 15:20
**2002** 15:17
**24** 26:1
**299** 7:23
**2nd** 34:13

**3**

**3** 21:20

**4**

**4** 21:20; 23:8, 12

**6**

**6** 20:24; 22:1, 17; 24:13; 29:4

**7**

**7** 4:24

**8**

**8** 23:8, 13

**9**

**97** 16:12, 15

**A**

**able** 6:20; 27:11; 29:16; 30:9; 31:12
**accept** 27:7
**access** 14:4
**accountant** 12:10
**accountants** 6:23
**across** 14:10
**Action** 8:20; 25:2
**actual** 22:4
**actually** 27:23; 28:21
**additional** 14:15
**addressed** 21:5; 30:13
**addressing** 14:3
**adjudicated** 25:12
**admission** 13:7
**adoption** 25:20
**advocate** 16:7
**afternoon** 4:4, 5, 16, 22; 22:12; 28:19; 29:11, 24
**again** 16:11; 18:1; 21:16; 22:9, 10, 16; 23:8, 18; 25:9; 31:4
**against** 7:8, 14; 11:22; 12:15; 16:12
**aggravation** 18:13
**ago** 19:2
**agree** 28:12, 23; 30:9
**agreement** 14:23; 32:12
**agreements** 7:1, 2; 14:19, 20, 21; 15:3, 5, 8
**AINSLIE** 5:9, 9; 6:16, 19; 9:19, 22; 10:3, 8; 30:16; 31:6, 8; 32:1, 4, 9, 13; 33:9; 35:9
**allegations** 7:4, 7; 16:12; 21:8, 23; 22:3, 11; 24:14; 25:21; 28:3; 29:4
**allow** 24:20; 34:5
**allowed** 34:22
**Andre** 6:4
**announce** 4:8
**anymore** 29:14
**apologize** 7:19; 14:3
**appearances** 4:8
**appeared** 32:23
**appears** 24:8, 18
**application** 19:5, 9, 14, 18; 21:10, 14; 25:18
**appreciate** 11:17
**approach** 23:9
**approval** 19:24
**approve** 21:14
**approved** 19:18; 25:23
**April** 15:20
**Aquino** 5:5; 6:3
**argued** 32:22
**arguing** 19:6
**argument** 13:7, 9
**Arnold** 5:3
**around** 26:18
**Ashby** 4:14; 5:2
**aspects** 11:4, 8
**asserted** 11:2; 31:13
**assertions** 13:1
**assume** 12:22
**assuming** 22:19
**attempt** 27:18, 20
**attention** 19:21; 30:18
**audit** 15:12, 17; 16:1, 5
**avoid** 29:10

**B**

**back** 28:17; 29:23; 32:5
**bad** 13:11
**BARR** 4:11, 11; 13:23; 14:2, 2, 10, 13; 16:20, 24; 17:7; 20:2; 21:15; 23:11; 24:10, 23; 27:17; 28:10, 16; 30:6
**Battaglia** 6:1
**Bayard** 4:24
**beginning** 12:24
**behalf** 4:10, 12, 15, 18, 21, 24; 5:2, 4, 7, 13, 14, 18, 21, 24; 6:2, 5
**belief** 25:17
**Best** 5:15
**better** 8:12
**beyond** 27:13
**big** 13:7; 18:11
**bit** 17:2
**bites** 33:4
**board** 14:10
**boiled** 11:11
**book** 27:24
**both** 9:20; 11:4
**bounced** 34:8; 35:5
**bound** 21:9
**brief** 12:4; 19:15
**briefing** 9:3
**bring** 30:17
**broad** 28:8
**brought** 11:22; 31:19
**budging** 17:7
**building** 28:1
**bullet** 33:4
**burdensome** 16:4
**BUTLER** 6:2, 2

**C**

**call** 29:14, 14; 33:21, 21
**camera** 9:17; 10:13; 30:23
**can** 9:23; 15:24; 16:14; 21:17; 22:14; 27:17; 28:2, 11, 12, 14, 21; 29:10, 23; 33:5
**care** 18:10
**careful** 34:23
**carefully** 34:6; 35:3
**Carpenter** 4:18
**case** 7:3, 3, 7; 12:17, 22; 16:13; 17:20; 18:2; 19:1; 21:2; 22:21; 27:2; 32:15
**cases** 26:5; 33:20; 34:4
**cast** 21:22
**CASTAYBERT** 6:4, 4
**categories** 7:9; 12:3, 5
**causing** 24:8
**certain** 17:8; 20:11, 11, 13; 21:17; 30:24
**certainly** 8:9; 23:4; 27:18, 20
**chambers** 33:19
**change** 20:16; 23:6, 14
**changed** 22:10
**changes** 20:15, 23
**changing** 29:3
**Chapter** 4:24; 21:21
**Charlene** 4:23
**Charles** 4:18
**check** 8:12; 32:5
**City** 32:22
**Civil** 8:20
**claimed** 31:22
**clarification** 10:15; 14:16; 15:12
**clarified** 17:2
**clarify** 15:11; 30:21
**clear** 12:4; 17:17
**CLERK** 4:1
**colleague** 6:6
**communications** 6:11; 7:2; 8:2; 11:1, 6; 14:22; 15:7; 30:24; 31:10, 18
**Company** 4:10; 21:13
**comparison** 22:14
**compel** 6:10; 9:13, 15; 11:23; 32:20
**compels** 8:2
**compensation** 6:13; 8:4; 10:7, 20, 24; 17:10
**complaints** 24:5
**concern** 21:3
**conference** 6:9
**Connolly** 5:7
**consideration** 15:23
**contend** 10:21; 23:15
**contention** 20:18
**contentions** 22:4
**context** 10:4
**contingent** 24:19
**contract** 7:6
**Convention** 19:10; 20:7, 20; 25:14
**conversation** 16:19
**cooperation** 14:20
**copy** 23:7; 28:2, 13
**corner** 9:4
**counsel** 19:22; 31:1, 5, 6, 9, 9
**course** 13:9
**COURT** 4:2, 7; 6:8, 18, 20; 7:15, 19, 22; 8:12, 18, 22; 9:2, 11, 20; 10:1, 4, 12, 17, 22; 11:8, 14, 19, 23;
12:2, 9, 18, 21; 13:5, 12, 24; 14:9, 11, 18, 24; 16:3, 17, 22; 17:3, 6, 13, 16, 19; 18:7, 23; 20:5, 6, 9, 22, 22; 21:1, 10, 11; 22:5, 14; 23:5, 10, 19, 19, 24; 24:4, 16; 25:1, 2, 9, 10; 26:4; 27:8, 22; 28:11, 18, 18, 21; 29:1, 6, 9, 13, 22; 30:2, 8, 23; 31:4, 7, 17; 32:11, 16; 33:6, 11, 12, 19; 35:10, 13
**Court's** 14:4; 19:20; 20:19; 30:18
**courthouse** 29:18
**courtroom** 25:11
**Courts** 24:20
**craft** 19:23
**crafted** 19:23
**credible** 7:3
**critical** 18:5
**curious** 18:9
**customary** 25:18, 19
**cut** 30:11; 35:4
**cut-off** 34:13

**D**

**dates** 34:16
**David** 5:20
**DAVIS** 4:23, 23
**day** 34:2, 18
**deal** 18:11
**deals** 11:7
**decided** 31:11
**decides** 33:5
**defense** 14:19
**defenses** 22:20
**denial** 14:4
**denied** 12:13; 17:11; 19:7
**depth** 7:5
**determine** 20:19
**determined** 7:8; 23:5
**Deutsch** 4:17
**DI-299** 9:7
**difference** 27:1
**different** 20:21; 25:5, 12, 16; 26:8
**direction** 29:2
**disagreement** 28:6, 6
**discovery** 6:9; 7:5, 8; 9:15; 12:13; 13:1; 14:1; 16:10, 14; 18:7; 24:1; 26:17; 27:1; 34:2
**discrete** 28:5
**discs** 29:19
**discussion** 9:9; 19:15
**discussions** 11:12
**dismiss** 34:1
**disposition** 34:24
**dispositive** 33:22, 23
**dispute** 32:16
**disputed** 13:16

**disputes** 34:2
**distinction** 11:18
**District** 32:21; 33:4, 7, 12
**Docket** 6:10; 7:23; 8:1, 5, 13, 14, 19, 24; 9:1, 2, 12, 14; 35:1
**document** 17:9
**documents** 6:12; 7:9; 8:3, 14; 9:22; 10:2, 13, 24; 19:7, 13; 21:5; 22:18; 25:3; 26:2; 31:21
**done** 29:10
**double** 18:14
**down** 8:6; 11:11; 13:14; 15:2, 4; 16:24; 33:13
**draft** 27:3, 5
**drop** 33:13
**Duane** 5:18

## E

**earlier** 22:10
**effect** 20:9; 24:19; 25:10
**effective** 20:18
**effectively** 20:16; 22:6, 24; 25:3
**effort** 7:8
**eight** 34:21
**either** 25:22
**electronically** 35:1
**element** 18:3
**eliminate** 20:17
**Elizabeth** 5:9
**else** 30:11; 35:10
**employees** 12:10
**end** 33:11
**enough** 27:3
**enter** 34:24
**entities** 31:13
**EPSTEIN** 5:14, 14
**essence** 19:17
**essentially** 20:10; 34:24
**evaluations** 13:19
**events** 21:7
**everybody** 34:20
**Everyone** 4:5
**evidence** 13:3; 18:2; 26:16; 27:2, 9
**except** 6:22; 11:24; 12:6
**excuse** 6:12
**exist** 31:23
**existed** 15:17
**existence** 20:13; 32:18
**exists** 27:9; 32:18
**expect** 28:3; 30:2
**expecting** 6:6

## F

**fact** 23:15; 30:20; 31:11
**facts** 20:14

**factual** 20:12; 23:1
**faith** 27:23
**familiar** 25:2
**Family** 5:16
**far** 13:6; 30:16; 31:20
**Fargo** 6:5
**fashion** 22:1
**February** 15:19; 34:14
**fellow** 25:10
**few** 22:10
**figure** 18:13
**file** 21:17
**filed** 6:13; 7:24; 8:4; 19:4; 32:20
**files** 6:23; 12:1, 9, 14, 15, 19
**filing** 19:9
**Finance** 14:8
**find** 7:4; 24:7; 26:16; 28:3
**finding** 20:10; 21:9
**findings** 20:12, 17; 22:5, 7, 24; 23:1; 24:16; 27:11
**fine** 10:3; 18:1; 28:20; 29:8; 30:6; 33:9
**Firm** 4:24; 17:11, 24
**first** 9:7, 16; 27:11; 33:12
**fishing** 26:18
**five** 12:2, 5; 28:24; 29:17; 30:3
**focusing** 22:9
**Following** 9:9; 35:5
**found** 23:2; 28:9
**four** 7:9
**frame** 16:10
**frames** 34:7; 35:4
**fraud** 7:4, 7; 13:1
**Freed** 5:24; 6:1
**Friday** 28:18; 34:13
**funding** 30:12
**further** 21:17; 24:21

## G

**Gagne** 5:10, 13, 15, 16, 22; 6:14; 31:1
**Gagne's** 10:7
**gave** 12:19; 13:10; 19:1
**gears** 11:21
**Geddes** 4:15; 5:2
**generally** 13:19
**Germany** 26:9
**gets** 13:3
**Geyer** 5:1
**given** 25:23; 32:2
**gives** 26:24
**glad** 25:20; 29:20
**goes** 12:22
**Good** 4:4, 5, 16, 21; 27:23
**GOODMAN** 4:16, 17
**grant** 9:17
**granted** 6:21; 7:6; 9:13;

11:24; 12:6
**granting** 11:4, 10; 12:24; 17:14
**great** 17:5; 35:9
**GROSSBART** 4:9, 9; 7:11, 12, 18, 20; 8:8; 10:14, 18, 23; 11:13, 16, 20; 12:8, 11, 20; 13:4, 11; 17:1, 5
**guess** 15:24; 29:13
**guidance** 27:15
**gun** 17:2

## H

**Hague** 19:9; 20:7, 20; 25:14
**half** 19:2
**Hamilton** 5:10; 6:14; 31:1
**Hampton** 8:20
**hand** 23:7; 27:10
**happened** 23:15
**happens** 26:6
**hard** 24:7
**harder** 26:9
**Harrison** 5:13, 21
**hear** 33:1
**hearing** 35:2
**heartburn** 24:8
**held** 9:9
**help** 34:8, 9; 35:6
**helpful** 8:23
**high** 33:11
**highlighted** 23:23
**home** 34:12
**Honor** 4:6, 17, 21; 6:17; 7:11; 8:16; 9:23; 10:9, 11, 14; 13:23; 14:13, 14, 21; 15:13, 22; 16:16, 20; 19:4, 7; 20:2, 23; 21:3, 15; 22:5, 12; 23:7, 11, 21; 24:10, 12, 23; 25:17; 27:17; 28:10, 23; 29:21; 30:5; 32:9, 14, 24
**hour** 19:2; 34:19
**hours** 26:1

## I

**i.e** 22:19
**idea** 34:8
**imply** 24:15
**important** 21:11
**inadvertently** 32:6
**Indemnity** 4:10; 7:24
**independent** 10:19
**indicating** 24:12
**indulgence** 20:19
**inform** 28:18
**information** 28:9
**informed** 19:8
**inspection** 30:24

**instance** 26:9
**intended** 28:7
**interest** 32:15
**interpretation** 22:7
**into** 13:3; 15:23; 19:3; 29:6
**involvement** 21:6, 12
**Irrelevant** 13:18
**issue** 13:8, 19; 14:3; 16:2; 33:18
**issuing** 20:5
**Item** 6:10; 7:23; 8:1, 5; 9:12, 14; 12:12
**items** 8:14, 24; 9:1, 3

## J

**January** 19:10; 24:5
**Jason** 6:2
**John** 4:9; 7:12
**joint** 10:21; 11:2; 14:19
**Jonathan** 5:23
**Judge** 30:6; 32:23; 33:4
**judgment** 34:1
**judicial** 22:6
**July** 34:17
**jump** 17:6
**jumped** 17:2
**jurisdictions** 25:16
**jurors** 25:10

## K

**kind** 14:20; 18:16; 21:19; 27:4; 35:2
**Kingdom** 21:12, 13; 26:12, 17, 24

## L

**language** 19:14; 22:17; 23:14, 22, 23; 24:18; 25:19, 21; 27:4, 5, 6
**last** 32:10, 14
**LASTOWSKI** 5:17, 17
**Lately** 34:19
**latest** 22:13
**law** 17:11, 24
**lawsuit** 15:18
**lawyers** 32:22
**lay** 21:21
**lead** 24:4, 21
**least** 27:18; 30:21
**leave** 9:23
**Lee** 4:14
**letter** 18:19; 19:1, 11; 20:4; 21:20
**letters** 26:24
**library** 28:1
**limine** 12:14, 23
**limit** 13:6; 16:1

**line** 22:14
**litigation** 24:21
**little** 14:1; 27:24
**LLP** 5:4
**Lois** 4:17
**London** 21:18; 23:20
**longer** 22:2
**look** 23:12; 29:23; 31:17
**looking** 8:23; 22:16
**lot** 33:7
**LYDON** 5:1, 1

## M

**making** 20:4, 11; 24:19; 29:5
**manager** 19:1
**manual** 16:5, 12
**manuals** 13:17; 15:13, 17; 16:1, 9, 9
**March** 34:13
**marked** 28:12; 30:3
**material** 14:6
**materials** 20:11, 13; 25:5, 11, 15
**matter** 18:8; 24:22; 25:12; 28:24; 29:3
**matters** 30:17; 31:2
**Maxick** 5:24; 6:1
**may** 7:12; 8:16; 13:15; 14:6, 15; 16:6, 8; 23:2, 9, 16; 24:20
**maybe** 14:17; 19:3; 26:21
**MBIA** 6:5
**McElroy** 4:17
**McGladrey** 5:4, 7, 18; 6:3; 7:14; 11:22; 29:5
**McGladrey's** 22:3, 3
**mean** 13:2; 16:22; 26:5; 27:23; 30:10
**means** 33:24
**mechanism** 25:15
**Michael** 4:11, 20; 5:5, 17; 6:3; 14:2
**middle** 16:18
**might** 7:5; 8:6; 29:16; 31:23; 34:11
**mind** 18:23; 32:24
**misunderstood** 11:14, 17; 14:18
**month** 34:3, 14, 17; 35:5
**more** 7:5; 14:1; 18:18; 24:19; 29:1
**morning** 22:13; 24:6; 30:4
**Morris** 5:18
**most** 20:23
**motion** 6:10, 21, 24; 7:14, 18, 23; 8:1, 9, 11; 9:13, 14; 10:5, 6, 13, 16, 18; 11:5, 7, 22, 23; 14:15; 17:11; 19:7; 32:20; 34:2, 12, 17
**motions** 9:5; 13:6; 33:22,

23; 34:1, 21
**much** 24:8, 19; 26:9; 33:15; 35:11
**Mulvaney** 4:18
**Murphy** 6:1
**must** 7:9

# N

**Nath** 4:12
**need** 10:12; 21:1, 4; 23:7; 25:6, 11; 27:2, 9, 14; 31:17
**needed** 28:9
**negligence** 7:6
**Neil** 5:14
**New** 32:19, 21, 22
**next** 26:1
**non-case** 33:22, 22
**notice** 34:17
**notion** 22:11
**number** 8:5, 19, 21; 23:8; 33:18
**numbered** 23:13
**numbers** 11:21; 18:13

# O

**o'clock** 29:17; 30:3, 4; 34:18
**objected** 20:9
**objecting** 19:12; 20:4
**objection** 20:3; 24:17
**obtaining** 25:15
**Obus** 6:6
**obviously** 25:1
**occurred** 15:19; 22:8; 23:20
**off** 8:14; 9:9; 30:11
**offer** 33:10
**officers** 27:8
**once** 34:17
**one** 9:7; 10:19, 20; 12:11; 18:18; 20:24; 29:18; 30:19; 32:10, 14, 21
**only** 14:21; 20:15; 26:23; 30:22; 31:16; 34:4
**open** 6:14
**opening** 12:3
**opportunity** 25:24
**opposed** 7:14
**oral** 15:4
**order** 9:15; 15:9; 17:12, 20; 20:5, 6; 21:13; 25:7; 26:2, 15, 20; 34:6
**ordered** 14:21
**ordering** 15:13
**orders** 26:24
**original** 8:14; 24:14
**others** 12:16
**otherwise** 7:5
**ought** 18:14; 28:5, 7, 8

**out** 12:4; 14:12; 18:17; 21:21; 25:21, 24; 34:16, 20
**outside** 19:15
**outstanding** 8:9
**over** 12:19; 13:10; 25:24; 27:18; 32:3
**overseas** 19:20, 21, 22

# P

**p.m** 35:13
**Page** 20:24; 22:1, 17; 23:8, 12; 24:13; 29:4
**Pages** 21:20
**Pamela** 5:15
**paper** 34:9
**papers** 15:1; 21:17
**paragraph** 12:3; 20:24; 21:5, 24; 23:13, 13; 29:4
**Pardon** 6:18
**parent** 21:6
**parents** 23:1
**parse** 28:11
**part** 9:16; 10:6; 15:9
**particular** 10:16; 12:12
**particularly** 23:22
**parties** 32:17
**partner** 5:11, 22
**parts** 10:19
**patent** 26:5; 33:20; 34:4
**patents** 26:10
**payment** 17:22
**PELLETIER** 5:20, 20; 33:2
**pending** 24:5; 30:14; 33:15
**people** 14:3
**Pepper** 5:10, 13, 21, 22; 6:14; 7:18; 8:5, 20; 30:20; 31:1, 8; 32:17
**Pepper's** 10:18; 17:9; 31:5, 6
**performance** 14:7
**perhaps** 12:16
**period** 15:19; 16:2, 4
**personnel** 6:23; 12:1, 9, 14, 15; 13:18; 14:5
**pertain** 7:1
**pertaining** 14:5
**pharmaceutical** 26:10
**places** 26:11
**plaintiff** 4:10
**please** 4:3
**point** 10:15; 28:19
**Porter** 5:4
**portion** 20:8, 17
**position** 20:10; 23:19; 25:20
**possession** 22:19, 20; 25:6
**possible** 20:1; 26:20
**post-settlement** 11:9

**potentially** 23:16
**practice** 12:23
**pre-settlement** 11:9, 11
**prefer** 34:15
**present** 13:15, 17; 14:11; 25:7
**presentation** 24:24
**presented** 20:21, 22; 26:16
**pretty** 12:4; 33:15
**previously** 31:13
**Price** 5:24
**prior** 16:9
**privilege** 11:3; 31:14, 22, 23
**probably** 13:18; 18:14; 26:21; 28:22; 29:17
**probative** 13:8
**problem** 24:11, 12
**problematic** 23:22
**procedural** 25:15
**procedure** 33:17, 20; 34:6, 23
**proceed** 20:20; 26:2
**proceeding** 22:22
**Processed** 29:15
**processes** 20:7
**produce** 19:6; 31:12
**produced** 7:10; 12:16; 14:22; 15:14; 32:5, 6
**production** 6:11; 8:2; 15:16; 16:1
**proof** 16:13
**proposal** 23:6, 12
**proposals** 30:4
**propose** 20:8; 28:17
**proposed** 20:16
**protected** 11:2
**protection** 12:15
**protective** 9:15; 17:11, 20
**prove** 22:20; 25:4
**provide** 22:13
**provided** 10:9; 31:15
**proving** 18:3
**Pullen** 5:4, 8, 19; 6:3
**purpose** 25:14
**purposes** 13:15, 15; 14:11; 16:14; 24:1; 35:6
**put** 18:13; 20:9; 23:18; 28:2; 30:19
**putting** 22:6

# Q

**qualifiers** 24:2
**quick** 8:13
**quicker** 34:9
**quickly** 19:24; 34:12

# R

**raising** 32:15
**ranging** 27:13
**rather** 22:4; 33:3
**read** 26:20; 34:6; 35:3
**real** 8:13; 34:12
**realistic** 28:16
**really** 10:19; 13:8; 19:15; 26:1; 27:13; 29:3; 30:8
**reason** 16:15
**reasons** 35:1
**received** 6:13; 8:4; 19:11
**recess** 35:12
**recessed** 35:13
**record** 9:10; 30:20
**records** 10:7; 14:5
**red** 22:14
**reduce** 34:9
**referred** 31:3
**referring** 7:13
**regard** 6:22
**reject** 24:4
**related** 6:12; 21:7, 10
**relates** 15:12; 22:23
**relating** 8:3; 31:12
**relevance** 20:10, 12
**relevant** 16:10
**remains** 6:14
**RENDON** 5:3, 3; 14:14; 15:10; 16:16
**representations** 27:8
**representing** 5:10
**request** 9:17; 10:7; 11:10; 14:19; 15:11, 16, 21; 17:9; 18:19; 19:12, 23; 21:21; 24:14
**requested** 16:4; 19:13
**requests** 20:5
**requirements** 23:24
**requires** 7:4
**resolve** 6:21
**resolved** 10:10; 33:15
**respect** 12:12; 14:7, 18; 17:10; 20:6, 11; 32:17
**respectfully** 22:8
**respects** 6:22; 11:24; 12:6
**responded** 16:21
**review** 9:17; 14:6
**right** 4:2, 7; 6:8; 7:16, 21, 22; 8:5; 9:11; 18:16; 27:24; 30:13; 34:4; 35:11
**rise** 4:1
**road** 13:14
**Robert** 5:15
**Rod** 5:10, 21; 30:24
**Roderick** 5:15
**role** 22:24
**Rosenthal** 4:12
**Royal** 4:10, 13, 15; 5:2;

6:12; 7:24; 8:3; 11:1, 6, 22; 14:19; 19:6; 21:9; 24:3, 6
**Royal's** 7:13
**RSA's** 22:18
**rule** 31:17
**ruled** 7:23
**ruling** 10:2; 13:16; 17:9; 28:14

# S

**Sachs** 5:24
**same** 10:24; 14:3, 14; 24:24; 25:8; 26:7
**samples** 28:1
**saying** 23:19; 25:5, 10
**Schnader** 5:13, 21; 31:7; 32:22
**scrutiny** 26:23
**seated** 4:2
**second** 10:6
**seek** 14:15
**SELBY** 5:6, 6; 18:22; 19:4; 20:3; 21:3; 23:21; 24:11; 27:20; 28:20, 23; 29:2, 8, 12, 20; 30:1, 5
**send** 29:18
**sentence** 22:23; 24:3
**separate** 10:19
**server** 32:18
**set** 12:4
**settle** 18:17
**seven** 34:21
**SHAPIRO** 5:12, 12
**shocked** 18:12
**short** 34:14; 35:4
**shot** 33:13
**showing** 21:4, 13, 16
**side** 18:11
**sign** 26:15; 28:4; 29:16; 30:3
**signature** 28:15
**simple** 7:6
**simply** 20:2; 23:14
**sitting** 16:24
**SLS** 31:23
**smarter** 33:7
**SMS** 31:23
**softening** 24:18
**somebody** 29:18
**someone** 18:12
**sometimes** 27:7
**somewhere** 12:3
**Sonnenschein** 4:12
**sorry** 7:15; 18:19
**sort** 18:23; 25:19; 33:17
**sought** 6:24
**Southern** 32:21; 33:4, 7
**specific** 9:2; 12:2; 13:19; 14:6; 20:12; 22:5
**specifically** 16:9; 22:1, 23

spoken 11:5
standard 26:7, 8
standing 16:18, 22; 17:1
Stanziale 4:19; 8:20
Stanziale's 17:10
start 20:6
starting 22:22
State 32:19
stated 20:2
statement 28:9
statements 21:20
States 19:6
status 19:2
Steve 5:12; 6:6
still 31:21
strict 34:7
Student 14:8
stuff 27:24
subject 14:22; 15:7, 18
submit 10:1
submitted 25:23
submitting 21:9; 30:23
substance 19:12
suggest 24:15
summary 34:1
Super 30:1
supposed 33:6
sure 8:13, 15; 9:6; 10:17; 15:3, 22, 23; 17:18; 27:17
surprised 30:10
Sweden 26:11
switching 11:21

**T**

talk 9:5; 17:21; 18:20; 22:11
talks 22:2
telling 19:2
tenor 29:3
tentative 27:6
terms 21:22
Thanks 30:7
thinking 13:17
third 22:23
Thomas 5:6
thought 11:10; 14:17
Tiffany 5:1
today 5:18; 19:11, 16; 21:7; 28:22; 33:2; 34:16; 35:2
together 27:4
token 24:24
told 26:9
tomorrow 22:13; 29:23, 24; 30:4
took 15:22
top 22:17; 24:13
tracking 35:1
TRAINER 4:14, 14
transacted 15:7

transaction 21:7
transfer 32:24
trial 12:22; 13:3; 22:21; 23:2, 17; 24:2; 25:4, 7; 26:19, 21; 27:12
trick 30:12
tried 8:13; 12:23
Trustee 4:19, 21, 24; 6:11, 13; 8:3, 4; 10:20, 24; 11:1, 6; 17:24; 31:16; 32:17
Trustees 6:5
Trusts 5:16
try 25:21, 24
trying 18:10; 24:15; 29:9
turn 21:24; 32:3
two 10:19; 11:8; 14:3; 22:15; 30:17
type 25:18
typed 29:14

**U**

U.K 21:4, 6; 23:1, 24; 24:4, 20; 25:1, 10
UCM 31:24
ultimately 18:3; 23:2; 24:21
under 19:9; 20:20; 23:13
understood 12:10; 25:13
United 19:6; 21:12, 12; 26:12, 17, 24
unresponded 24:9
up 16:18, 23; 17:1, 6; 18:13; 23:7; 27:16; 28:12; 29:14; 30:4; 33:7
use 12:15; 16:8, 12; 23:16, 16; 24:2; 26:19, 20; 28:7, 8; 34:22
used 9:4; 22:20; 25:4; 27:11
usually 9:4; 34:21
utilize 34:5

**V**

Vedder 5:24
Veronica 5:3
verse 21:22
versus 8:20; 16:9
view 15:8; 28:7
views 26:8

**W**

wait 13:21; 33:3
waived 31:11
WATERS 4:20, 20; 8:10, 16, 19; 9:1; 10:10; 17:8, 14, 17; 18:6; 31:20; 32:2, 8
way 18:15; 19:23; 22:17; 30:23; 32:16; 35:7

website 33:19, 20
Wednesday 28:19
weighing 7:7
Wells 6:5
WEXLER 5:23, 23
what's 6:24; 13:16
whispered 15:1, 4
wide 27:13
Wilcox 31:9
Williams 5:7
withholding 30:22; 31:5, 21
without 24:5
words 22:10; 28:24
work 15:18; 16:2; 25:21, 24
worked 19:22
world 33:24
worry 35:7
write 34:12
written 8:6; 15:2, 4; 22:1; 24:3
wrong 8:7; 9:7

**Y**

years 15:16
York 32:19, 21, 22

**Lawyer's Notes**