# EXHIBIT 2

Mulready, Stephen  3/19/07  9:23:00 AM

```
                                             1
 1         UNITED STATES DISTRICT COURT
 2            DISTRICT OF DELAWARE
 3      ─────────────────
                        )
 4   MBIA INSURANCE CORPORATION )
     AND WELLS FARGO BANK, N.A. )
 5   (f/k/a WELLS FARGO BANK    )
     MINNESOTA N.A.) AS TRUSTEE )
 6   OF SFC GRANTOR TRUST,      )
     SERIES 2000-1, SFC GRANTOR )
 7   TRUST, SERIES 2000-2, SFC  )
     GRANTOR TURST, SERIES      )
 8   2000-3, SFC GRANTOR TRUST, )
     SERIES 2000-4, SFC GRANTOR )
 9   TRUST, SERIES 2001-1, SFC  )
     GRANTOR TRUST, SERIES      )
10   2001-2, SFC OWNER TRUST    )
     2001-I, AND SFC GRANTOR    )
11   TRUST, SERIES 2001-3,  )
                        )
12       Plaintiffs and    )
         Counterclaim      )
13       Defendants,       )
                        )
14   vs.           ) C.A. No.
                   ) 02-1294-JJF
15   ROYAL INDEMNITY COMPANY,  )
                        )
16       Defendant and    )
         Counterclaim     )
17       Plaintiff.       )
                        )
18   ─────────────────
19   (Caption continued on the following page.)
20
21       DEPOSITION OF:  STEPHEN MULREADY
22          VOLUME I, TRACK II
23          DATE:  MARCH 19, 2007
24
25
```

296

1  Q. Do you believe that there were
2  adequate controls over underwriting with
3  regard to the SFC deals?
4  A. I believe so.
5  Q. Do you think that with regards to
6  the Financial Enhancement Group, that Royal
7  was learning on the fly?
8      MR. BARNOWSKI: Object to the
9  form.
10  A. I don't believe so.
11 BY MR PELLETIER:
12  Q. Do you believe that they were
13  inexperienced with regard to credit risk
14  insurance?
15     MR. BARNOWSKI: Object to the
16  form.
17  A. I don't know the full background of
18  the parties involved.
19 BY MR PELLETIER:
20  Q. Did you ever partake in an employee
21  evaluation of William Hibberd -- Bill
22  Hibberd?
23  A. I don't recall doing one direct. I
24  may have signed off on one from the
25  supervisor.

297

1  Q. Do you recall when you would have
2  signed off?
3  A. Those were annual reviews, so
4  typically done in the first quarter.
5  Q. Do you recall taking part in any
6  other employees -- employee evaluations?
7  A. I don't specifically, but I would
8  have had to do appraisals for any of my
9  direct reports.
10  Q. Show the witness what's been marked
11  as Exhibit 353, Track I.
12     Please take a minute to familiarize
13  yourself with the document.
14     MR. BARNOWSKI: You don't have
15  to. I'm going to instruct you not to answer
16  questions about the employee evaluations of
17  any people that worked at Royal.
18     MR. PELLETIER: You're not going
19  to permit any questions -- the answers to any
20  questions regarding this evaluation?
21     MR. BARNOWSKI: That's correct.
22     MR. PELLETIER: On what grounds?
23     MR. BARNOWSKI: On the grounds
24  that Defendants have refused -- at least
25  McGladrey has refused to produce any and

298

1  obtained a ruling from the Judge that they
2  were not going to be produced and not
3  relevant.
4      MR. PELLETIER: Do you know
5  whether Royal sought any such protection?
6      MR. BARNOWSKI: Look, I'm not
7  under oath and I'm not going to answer
8  questions.
9      MR. PELLETIER: Your basis is
10 that a co-Defendant in this case has refused,
11 and so you're going to not permit answers to
12 these evaluations?
13     MR. BARNOWSKI: My basis is what
14 I explained -- that McGladrey refused, they
15 moved the judge and the judge held them
16 irrelevant to the case.
17     So I'm not going to have --
18     MR. SELBY: Object to the form.
19     MR. BARNOWSKI: I'm not going to
20 have one side of the case producing employee
21 evaluations and having its witnesses answer
22 questions while the other side does not.
23     MR. PELLETIER: Okay. But just
24 to be clear, you are instructing Mr. Mulready
25 not to answer any questions regarding this;

299

1  is that clear?
2      MR. BARNOWSKI: I thought it was
3  clear.
4      MR. PELLETIER: Well, sorry. I
5  just wanted to make sure.
6  BY MR. PELLETIER:
7  Q. Are you going to follow your
8  counsel's instructions and not answer any
9  questions regarding this document?
10  A. I believe I should follow his
11 advice.
12     MR. PELLETIER: May I ask the
13 witness whether he has ever seen this
14 document before?
15     MR. BARNOWSKI: Sure.
16 BY MR PELLETIER:
17  Q. Have you ever seen this document
18 before?
19  A. I don't think so.
20  Q. Does this document look familiar to
21 the performance evaluations that you have
22 seen from Royal?
23  A. No.
24  Q. Would you please turn to the final
25 page of the performance -- the

                                        300

1  second-to-the-last page of the performance
2  evaluation under "Manager Signature."
3       Do you see the name John Tighe?
4  A. Yes.
5  Q. Is it your understanding as of 2002,
6  it was John Tighe's responsibility to
7  evaluate Bill Hibberd's performance?
8       MR. BARNOWSKI: Object to the
9  form.
10 A. Again, I would have to be looking at
11 the time frame that he took over this area.
12 BY MR PELLETIER:
13 Q. At the top of that page, there's a
14 paragraph that starts, "Manager Comments."
15      Do you see that?
16 A. Okay. I do.
17 Q. Second sentence -- just starting the
18 first sentence, "High standards were set, but
19 the results are unacceptable. I realize that
20 most of this appraisal is with the benefit of
21 hindsight, but the lack of discipline,
22 missing information and disregard for
23 underwriting guidelines that they put in
24 place is unacceptable in the SFC account."
25      Do you see that?

                                        301

1       MR. BARNOWSKI: Object to the
2  form.
3       He's testified he never saw it
4  before, he had no role in preparing it, and
5  I'm going to instruct him not to answer based
6  on the other grounds, as well.
7  BY MR PELLETIER:
8  Q. Are you going to follow your
9  counsel's instruction?
10 A. Yes, I am.
11      MR. PELLETIER: I have no
12 further questions.
13      CROSS EXAMINATION
14 BY MR. McTAGGART:
15 Q. Good afternoon, Mr. Mulready, David
16 McTaggart with Proskauer Rose. We represent
17 MBIA and Wells Fargo in its capacity as
18 trustee.
19      You testified earlier that, I think,
20 in answer to a question from Mr. Selby, that
21 in the course of your obligations at Royal,
22 you never reviewed a pooling servicing
23 agreement with respect to the SFC
24 transactions; is that correct?
25 A. That's correct.

Mulready, Stephen 3/19/07 9:23:00 AM

308

```
 1    A. I'm not an underwriter. As I
 2  mentioned earlier -- and I didn't feel that I
 3  was -- had the necessary background to do the
 4  underwriting, and so I relied upon the people
 5  that were hired and trained to do so.
 6    Q. And who were those people?
 7    A. Well, in -- I viewed B.J. Rood and
 8  Bill Hibberd and the rest of their staff.
 9    Q. What about Mr. Pugliese?
10    A. Mr. Pugliese, I turned to to get
11  involved and not to underwrite, but to manage
12  the operation.
13    Q. Did you ever have anything happen
14  while you were managing -- while you were at
15  Royal that caused you to question the
16  abilities of Mr. Rood, Mr. Hibberd or
17  Mr. Pugliese as underwriters?
18        MR. PELLETIER: Objection to the
19  form.
20    A. I don't remember any incident.
21  BY MR. BARNOWSKI:
22    Q. Did you trust them to do their jobs?
23    A. I did.
24    Q. Do you know what your -- that's me,
25  I apologize. You can object to the form of
```