# EXHIBIT 3

Case 1:05-cv-00165-JJF   Document 465-4   Filed 05/02/2007   Page 1 of 4

Pugliese, Vincent  3/22/07  9:13:00 AM

1

```
 1   UNITED STATES DISTRICT COURT
     DISTRICT OF DELAWARE
 2   C.A. No. 02-1294-JJF
     ------------------------------x
 3   MBIA INSURANCE CORPORATION AND
     WELLS FARBO BANK, N.A. (f/k/a
 4   WELLS FARGO BANK MINNESOTA N.A.)
     AS TRUSTEE OF SFC GRANTOR TRUST
 5   SERIES 2000-1, SFC GRANTOR TRUST,
     SERIES 2000-2, SFC GRANTOR TRUST,
 6   SERIES 2000-3, SFC GRANTOR TRUST,
     SERIES 2000-4, SFC GRANTOR TRUST,
 7   SERIES 2001-1, SFC GRANTOR TRUST,
     SERIES 2000-2, SFC OWNER TRUST,
 8   SERIES 2000-I, AND SFC GRANTOR
     TRUST, SERIES 2001-3,
 9
             Plaintiffs/
10           Counterclaim Defendants,
11       - vs -
12   ROYAL INDEMNITY COMPANY,
13           Defendant/
             Counterclaim Plaintiff.
14   ------------------------------x
     ROYAL INDEMNITY COMPAMY,
15
             Third-Party Plaintiff,
16
         - vs -
17
     ANDREW N. YAO, STUDENT LOAN SERVICING
18   LLC, STUDENT LOAN ACCEPTANCE II LLC,
     STUDENT LOAN ACCEPTANCE III LLC, STUDENT
19   LOAN ACCEPTANCE V LLC, STUDENT LOAN
     ACCEPTANCE VIII LLC, STUDENT LOAN
20   ACCEPTANCE IX LLC, SFC FINANCIAL LLC I,
     SFC FINANCIAL LLC II, SFC FINANCIAL LLC
21   VI, SFC FINANCIAL LLC VII,
22           Third-Party Defendants.
     ------------------------------x
23           March 22, 2007
             9:13 a.m.
24
25   TRACK III WITNESS: VINCENT N. PUGLIESE
```

314

1  Q. Mr. Pugliese, did you rely on Bill
2  Hibberd to oversee the underwriting on the
3  SFC policies?
4     MR. MARROCCO: Objection.
5  A. I did.
6  BY MR. PELLETIER:
7  Q. Do you trust Bill Hibberd?
8  A. I do.
9  Q. Do you believe that he adequately
10 performed underwriting functions on the SFC
11 policies?
12 A. I do.
13 Q. On what do you base that belief?
14 A. His experience. He had been the
15 chief actuary for Royal in the past, a very
16 bright guy, a lot of integrity,
17 knowledgeable, he communicated. So, yes, I
18 thought he had good judgment and a good
19 financial acumen.
20 Q. Do you know if others within Royal
21 shared your opinion of Bill Hibberd?
22    MR. MARROCCO: Objection, form.
23 A. You know, I can think of a few that
24 did, yes.
25 BY MR. PELLETIER:

315

1  Q. Do you know of anyone who didn't?
2     MR. MARROCCO: Objection, form.
3  A. No.
4  BY MR. PELLETIER:
5  Q. Did anyone ever complain to you
6  about Bill Hibberd's performance on the SFC
7  program?
8     MR. MARROCCO: Objection, form.
9  A. No.
10 BY MR. PELLETIER:
11 Q. Did John Tighe ever complain to you
12 about Bill Hibberd's performance?
13 A. Not that I recall.
14 Q. Steve Mulready, did he ever complain
15 to you?
16 A. Not that I recall.
17 Q. I show the witness what has been
18 previously marked as 353, Track I. Please
19 take a minute to look at this.
20    MR. MARROCCO: Before you answer
21 any questions, this has been the subject --
22 it's come up before -- it's been the subject
23 of correspondence between the parties.
24 Royal's position is we are going to direct
25 the witness not to answer questions about the

316

1  contents of performance evaluations.
2     MR. PELLETIER: I understand
3  that that is Royal's position. We obviously
4  disagree with that position. I am going to
5  ask the witness questions about it in order
6  to, at a minimum, make the record clear that
7  we believe we are entitled to ask questions
8  about it, and I understand that you may
9  instruct the witness not to answer.
10    MR. MARROCCO: Okay. I'm
11 instructing the witness not to answer
12 questions regarding the subject matter of
13 this performance evaluation.
14    MR. SELBY: Can I just get one
15 clarification, Drew, is that all questions
16 related to that subject matter of
17 evaluations?
18    MR. MARROCCO: The questions
19 that go to the contents of the evaluations.
20    MR. SELBY: But any question
21 relating to the content?
22    MR. MARROCCO: Yes.
23    MR. SELBY: Okay.
24 BY MR. PELLETIER:
25 Q. Do you recognize what is marked as

317

1  353, Track I?
2     MR. MARROCCO: You can answer
3  that question.
4  A. It's a performance assessment.
5  BY MR. PELLETIER:
6  Q. Have you seen other performance
7  assessments from Royal before today?
8     MR. MARROCCO: You can answer
9  that question.
10 A. Yes.
11 BY MR. PELLETIER:
12 Q. Does this look familiar to the
13 performance assessments that you've seen?
14    MR. MARROCCO: Objection. You
15 can answer it.
16 A. Yes.
17 BY MR. PELLETIER:
18 Q. And if you look on the first page
19 marked RSA 1, at the top, it says "Employee
20 name William Hibberd."
21    Do you see that?
22 A. Yes.
23 Q. Is it fair to say that this is
24 William Hibberd's performance assessment?
25    MR. MARROCCO: Objection.

318

1   A. Yes.
2   BY MR. PELLETIER:
3   Q. On the far right of that same block
4   at the top of the page, it says "2001
5   process."
6       Do you see that?
7   A. I do.
8   Q. Do you believe that this is William
9   Hibberd's 2001 performance evaluation?
10      MR. MARROCCO: Objection.
11  A. I don't know if it's 2001 for 2000
12  performance or what -- you know, which year
13  it's referring to.
14  BY MR. PELLETIER:
15  Q. Fair enough. Do you see the name
16  "Ann Payseur" beneath that?
17  A. I do.
18  Q. Do you know who she is?
19  A. I do not. I am familiar with the
20  last name, but that was a male.
21  Q. Would you please turn to the last
22  page of this exhibit, actually the second to
23  last page, which was marked RSA 6.
24  A. Yes.
25  Q. Do you see at the bottom of the page

319

1   under "Manager's signature" it says "John
2   Tighe?"
3   A. Yes.
4   Q. Spelled T-i-g-h-e; correct?
5   A. Yes.
6   Q. And it's dated 6/7/02; is that
7   correct?
8   A. Yes.
9   Q. Do you believe that this evaluation
10  was signed by John Tighe on July -- June 7th,
11  2002?
12      MR. MARROCCO: Objection. Form.
13  A. That's what it appears.
14  BY MR. PELLETIER:
15  Q. At the top of that last page, RSA 6,
16  there is a section captioned "Manager
17  comments."
18      Do you see that?
19  A. Yes.
20  Q. After that it states "High standards
21  were set but the results are unacceptable. I
22  realize that most of this appraisal is with
23  the benefit of hindsight, but the lack of
24  discipline, missing information and disregard
25  for underwriting guidelines that they put in

320

1   place is unacceptable in the SFC account."
2       Do you see that?
3       MR. MARROCCO: I'm going to
4   direct you not to answer the questions
5   regarding the substance of this report. You
6   can answer whether or not you see it on the
7   page.
8   A. I see it.
9   BY MR. PELLETIER:
10  Q. "Do you agree with that statement?
11      MR. MARROCCO: I'm going to
12  instruct him not to respond to that.
13  BY MR. PELLETIER:
14  Q. Are you going to follow your
15  counsel's instruction?
16  A. I am.
17  Q. Would you please turn to page marked
18  RSA 4. Three-quarters of the way down the
19  page, there is a manager comments section.
20      Do you see that?
21  A. I do.
22  Q. The paragraph reads "Clearly Bill
23  and the entire Financial Enhancement Group
24  was far too trusting with the SFC account."
25      Do you see that?

321

1   A. Yes.
2   Q. "Do you agree with that statement?
3       MR. MARROCCO: I direct you not
4   to answer questions relating to the substance
5   of this report.
6   BY MR. PELLETIER:
7   Q. Are you going to follow your
8   counsel's instructions?
9   A. I am.
10      MR. MARROCCO: I will let him
11  answer questions generally, not tied to this
12  report, but whether he agrees with those
13  types of statements.
14      MR. PELLETIER: Thank you for
15  that clarification.
16  BY MR. PELLETIER:
17  Q. I'd like to show the witness what's
18  previously been marked as 1247, Track I.
19  Just take a minute to look at this, please.
20      1247, Track I, is an e-mail Bates
21  labeled ROY 165278 dated April 17, 2002.
22      Do you see that?
23  A. Yes.
24  Q. The first e-mail, which is -- starts
25  after the -- the initial e-mail on the top of