# **EXHIBIT A**

Case 1:05-cv-00165-JJF    Document 476-2    Filed 05/11/2007    Page 1 of 5

Slip Copy
Slip Copy, 2006 WL 3446584 (W.D.Mich.)
(Cite as: Slip Copy)

Page 1

**H**
Irwin Seating Company v. International Business Machines Corp.
W.D.Mich.,2006.
Only the Westlaw citation is currently available.
United States District Court,W.D. Michigan,Southern Division.
IRWIN SEATING COMPANY, Plaintiff,
v.
INTERNATIONAL BUSINESS MACHINES CORPORATION and J.D. Edwards World Solutions Company, Defendants.
No. 1:04-CV-568.

Nov. 29, 2006.

Aaron M. Phelps, Varnum Riddering Schmidt & Howlett LLP, Grand Rapids, MI, John W. Boyd, Joseph Goldberg, Freedman Boyd Daniels Hollander & Goldberg PA, Albuquerque, NM, for Plaintiff.
Shannon J. Cassell, Gary Michael Miller, Mary Laura Swietnicki, Paul A. Sheldon, Todd C. Jacobs, Grippo & Elden LLC, Stephen J. Rosenfeld, Kristin Lee Lingren, Suzanne Miriam Scheuing, Natalie A. Harris, Mandell Menkes LLC, Chicago, IL, Charles E. Chamberlain, Jr., Willey Chamberlain & Yates LLP, Grand Rapids, MI, Earle I. Erman, Erman Teicher Miller Zucker & Freedman PC, Southfield, MI, for Defendants.

**ORDER STRIKING EXPERT WITNESSES**
HUGH W. BRENNEMAN, JR., Magistrate Judge.
*1 Pending before the court is a motion by defendant International Business Machines Corporation ("IBM") to strike plaintiff's experts due to Irwin Seating Company's ("Irwin") violation of mediation confidentiality (docket no. 195). Defendant J.D. Edwards World Solutions Company has joined in IBM's motion.

Defendant IBM bases its motion on the fact that Irwin improperly supplied its testifying experts with confidential mediation statements and exhibits obtained during a mediation between the parties, and that the experts reviewed these documents in rendering their opinions.

This matter was sent to voluntary facilitative mediation by the court on October 21, 2005. An order entered by the court several days later outlining the procedures for the mediation, provided that "all information disclosed during the mediation session, including the conduct and demeanor of the parties and their counsel during the proceedings, must remain confidential, and must not be disclosed to any other party nor to this court, without consent of the party disclosing the information." Order of November 2, 2005.

At the direction of the mediator, the parties each furnished to her mediation statements and accompanying documents, highlighting those portions of the exhibits the defendants believed to be the most important. IBM asserts, and Irwin does not deny, that Irwin subsequently provided its experts with the defendants' confidential mediation statements accompanying the documents, which explain the importance of certain documents and why they were selected. The documents were also highlighted at the request of the mediator to indicate those portions of the documents that the defendants believed to be the most important.

On April 18, 2006, Irwin produced two expert reports, one by Jeff Hagins assessing the liability of the defendants, and the other by Marianne DeMario pertaining to damages. Each expert report explicitly states that the expert reviewed the mediation material produced by IBM and J.D. Edwards. See Expert Report of Jeff Hagins at p. 40 ("I have reviewed all of the mediation exhibits from IBM, J.D. Edwards, and Irwin Seating."); Expert Report of Marianne L. DeMario at Exhibit B to the report ("Documents Reviewed by Marianne DeMario ... IBM mediation letter, 1/11/06 ... Exhibit C to IBM mediation letter; Exhibit F to JDE mediation brief ... Exhibit G to IBM mediation letter, J.D. Edwards World Solutions Company's Confidential Mediation Brief, 1/12/06....Exhibit G to JDE mediation brief ... Exhibit A to JDE mediation brief). DeMario also cites to the mediation materials throughout the text of her opinion. *Id.* at 3, 4, 5, 6, 7, and 8. Irwin acknowledges that the mediation briefs and attached exhibits "were provided to Mr. Hagins and Ms. DeMario as background and were used by them as such." Plaintiff's Brief in Opposition to IBM's Motion, filed May 22, 2006, at 3.

*Confidentiality Rule*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 476-2   Filed 05/11/2007   Page 3 of 5

Slip Copy
Slip Copy, 2006 WL 3446584 (W.D.Mich.)
(Cite as: Slip Copy)

Page 2

It is beyond question that the mediation proceedings in this case were intended to be confidential, and for settlement purposes only. The explicit order of the court was sufficient notice of this fact to the parties without more.

*2 But there was more. The November 15, 2005 letter from the mediator to the parties reiterated that "[t]he mediation process is confidential." In reliance upon this, IBM states that each page of its mediation statement was clearly marked in bold print: **"CONFIDENTIAL COMMUNICATION FOR SETTLEMENT PURPOSES ONLY."**

Moreover, the local court rules specifically provide for the confidentiality of ADR procedures such as voluntary facilitative mediation. W.D. Mich. LCiv R 16.2(e) provides:
*Confidentiality*-information disclosed during the ADR process shall not be revealed to any one else without consent of the party who disclosed the information. All ADR proceedings are considered to be compromised negotiations within the meaning of Federal Rules of Evidence 408.[FN1]

> FN1. Rule 408 provides in pertinent part: "... Evidence of conduct or statements made in compromised negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromised negotiations ..."

The Sixth Circuit has long recognized that "[t]here exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations. This is true whether settlement negotiations are done under the auspices of the court or informally between the parties. The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system. In order for settlement talks to be effective, parties must feel *uninhibited* in their communications." (emphasis added)

*Goodyear Tire & Rubber v. Chiles Power Supply*, 332 F.3d 976, 980 (6th Cir.2003). In deciding to recognize the existence of a settlement privilege protecting settlement communications, the court noted that "confidential settlement communications are a tradition in this country. *See, e.g., Palmieri v. New York*, 779 F.2d 861, 865 (2nd Cir.1985) (citing *In Re: Franklin Nat'l Bank*, 92 F.R.D. 468, 472 (E.D.N.Y.1981)) (stating that "[s]ecrecy of settlement terms ... is a well-established American litigation practice"). This Court has always recognized the need for, and the constitutionality of, secrecy in settlement proceedings (citations omitted)." *Id.* at 980.

In summary, the court held that "any communications made in furtherance of settlement are privileged." *Id.* 983.

### *Violation of the Conflict Rule*

There is also no question but that Irwin's lawyers provided copies of IBM's and JDE's mediation briefs and exhibits to the experts. See Affidavit of Jeff L. Hagins dated May 19, 2006 at ¶ 3; Affidavit of Marianne L. DeMario dated May 19, 2006 at ¶ 3. While both experts deny either of the mediation briefs from the defendants influenced them in developing their opinion, they both admit they read these mediation statements as they began their analysis. Mr. Hagins stated, "I did read both IBM's and JDE's mediation briefs once, as part of my initial reading of foundational materials, ... in order to gain some sense of what the case was about. I read these mediation briefs on my computer in the electronic format in which they were provided to me." Hagins Brief at ¶ 5.

*3 Ms. DeMario states, "I read the mediation brief for context, when I first started working on my damages analysis...." Ms. DeMario explains that she "cited certain documents as exhibits to the mediation briefs for the sake of simplicity, since it was easier to cite them that way than to locate the same documents among the thousands of pages of materials that had been provided to me by Irwin's lawyers". DeMario's affidavit at 6.[FN2]

> FN2. This protestation proves too much, since by utilizing the exhibits attached to defendants' briefs throughout her analysis, rather than the bates-stamped versions, she was, necessarily, repeatedly pulled back to defendants' briefs and their marked up copies of the documents.

Both experts claim they do not recall what the defendants' mediation positions were, but in this context the affidavits are not particularly persuasive

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 476-2   Filed 05/11/2007   Page 4 of 5

Slip Copy
Slip Copy, 2006 WL 3446584 (W.D.Mich.)
(Cite as: Slip Copy)

Page 3

since it is readily apparent both were drawn up by the same hand. For example, Mr. Hagins testifies in paragraph 7 of his affidavit:
"I do not even recall what IBM's and JDE's mediation positions were",

while Ms. DeMario states in paragraph 7 of her affidavit:"I don't even recall what were IBM's and JDE's mediation positions."

Plaintiff does not deny the documents were confidential documents nor that its lawyers provided them to the plaintiff's experts, nor that the plaintiff's experts reviewed these documents in preparing their reports. Rather, plaintiff's defense is an attempt to minimize the impact these disclosures had and to argue that the sanction requested by defendants-that these experts be stricken as expert witnesses-is too severe.

The court finds that plaintiff's conduct was in direct derogation of the order of this court, the directions of the mediator, and the common understanding of the purpose for which the mediation documents were to be used. Clearly the mediation briefs and the marked-up documents attached to them constituted settlement communications. While defendants correctly acknowledge that the documents themselves were otherwise producible to the plaintiff's experts, they persuasively argue that the mediation reports themselves, and the highlighting of portions of documents especially selected by the defendants as referred to in their mediation reports, were communications subject to the settlement privilege, not grist for the experts' mill.

*Impact of Violation of Confidentiality*

The court need not find a bad intent on the part of Irwin's lawyers in furnishing all of these materials to their experts. What the court does find, whatever the intent, was that these documents were furnished on purpose for the experts to review, and they were in fact reviewed. This is the reality of the situation confronting the court, and it is a dilemma created solely by the actions of plaintiff's own lawyers.

Nor does the problem end here since these reports are now a part of the record used by the plaintiff's experts, and the experts are subject to cross-examination on them. Any cross-examination, of course, runs a risk of touching on the privileged communications. Moreover, and perhaps more significantly, there is no adequate way to assess the impact the mediation briefs had on the experts, and how the experts may have shaped their evaluations consciously or unconsciously in response to the claims made and positions taken by defendants in their mediation briefs. Even in denying any recall of what defendants' positions were in their reports, both experts concede these briefs were among the first documents they read, "in order to gain some sense of what the case was about." [FN3] The bell has been rung. There are simply some things that cannot be forgotten once they are learned.

> FN3. By way of analogy, apropos to this time of the year, if a football coach learns that his opponent for next week's game is relying on his team's ability to pass to a particular deep receiver, the coach learning this will doubtlessly concentrate his attention on strategies to cover that receiver.

*4 Moreover, plaintiff's counsel's behavior in sharing these materials with unauthorized persons strikes at the heart of the ADR process.

Striking an expert witness is a harsh remedy, but not an unfair one, where a party has placed its experts at risk by infusing them with knowledge to which they were not entitled. The risk should not be upon the innocent defendants in this instance. The extent of the damage done in terms of how much these mediation briefs and the highlighted documents affected the experts, again consciously or unconsciously, in shaping their approaches and their opinions, is not truly knowable nor easily remediable. Where this situation arises from a clear violation of the court's order and the settlement privilege generally, it is the plaintiff that must bear the brunt of the resolution.

Defendant's motion is GRANTED, and plaintiff's experts Hagins and DeMario are stricken as experts and shall not testify in this action.[FN4] Movant IBM is also awarded costs and attorney's fees in the amount of $1,000.00, payable within 30 days. *See,* Rules 26(c) and 37(a)(4). If either party objects within 10 days of this order to the amount assessed, IBM shall, within 7 days thereafter, provide an affidavit together with any supporting documentation justifying the amount it believes is appropriate (more or less than $1,000.00), and plaintiff shall have 7 days thereafter to file an appropriate response. The court may schedule a further hearing on the question of costs if it deems it necessary.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00165-JJF   Document 476-2   Filed 05/11/2007   Page 5 of 5

Slip Copy
Slip Copy, 2006 WL 3446584 (W.D.Mich.)
(Cite as: Slip Copy)

Page 4

> FN4. The court is aware this resolution may also have a salutary effect in preserving confidences of future mediation participants, and the candor necessary to successful facilitative mediations. A contrary result would certainly have a dramatically contrary impact.

IT IS SO ORDERED.

W.D.Mich.,2006.
Irwin Seating Company v. International Business Machines Corp.
Slip Copy, 2006 WL 3446584 (W.D.Mich.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.