# EXHIBIT B

Westlaw.

2007 WL 656252                                                                    Page 1

--- F.R.D. ----, 2007 WL 656252 (D.Del.)

**(Cite as: 2007 WL 656252 (D.Del.))**

United States District Court,
D. Delaware.
DYSON TECHNOLOGY LIMITED and Dyson,
Inc., Plaintiffs,
v.
MAYTAG CORPORATION, Defendant.
**Civil Action No. 05-434(GMS).**

March 6, 2007.

**Background:** Defendant moved to compel disclosure of all information that plaintiff provided to its employee designated as an expert witness.

**Holding:** The District Court, Sleet, J., held that in a matter of first impression, employee expert was required to disclose basis of opinions in expert report, irrespective of work-product or attorney-client privilege.
Motion granted in part and denied in part.

**Federal Civil Procedure** ☜1274

170Ak1274 Most Cited Cases
Plaintiff's employee, who was designated as expert and submitted expert report, was required to disclose expert's opinion and basis therefor, irrespective of any work-product or attorney-client privilege information that plaintiff provided him, but was only required to produce information and documents considered by him in connection with formulating opinions expressed in such report, and not information and/or documents that he may have only considered in performing his general job duties. Fed.Rules Civ.Proc.Rule 26(a)(2)(A), 30(b)(6), 28 U.S.C.A.

John W. Shaw, Esquire, C. Barr Flinn, Esquire, and Adam W. Poff, Esquire, of Young, Conaway, Stargatt & Taylor, LLP, Wilmington, DE, and Garrard R. Beeney, Esquire, Richard C. Pepperman, Esquire, Keith McKenna, Esquire, David B. Tulchin , Esquire, James T. Williams, Esquire, and Adam R. Brebner, Esquire, of Sullivan & Cromwell LLP,

New York City, and Steven F. Reich, Esquire, Jeffrey S. Edelstein, Esquire, Monica Y. Youn, Esquire, Tamar Feder, Esquire, Melissa D. Goetz, Esquire, Christopher A. Cole, Esquire, John F. Libby, Esquire, Craig S. Rutenberg, Esquire, and George A. Clarick, Esquire, of Manatt, Phelps & Phillips, LLP, New York City, for Plaintiff.

Francis DiGiovanni, Esquire, of Connolly, Bove, Lodge & Hutz LLP, Wilmington, DE, and Kimball R. Anderson, Esquire, Stephen P. Durchslag, Esquire, Anthony DiSarro, Esquire, Lisa J. Parker, Esquire, and Ronald Y. Rothstein, Esquire, of Winston & Strawn LLP, Chicago, IL, and Ray L. Weber, Esquire, and Laura J. Gentilcore, Esquire, of Renner, Kenner, Greive, Bobak, Taylor & Weber, Akron, OH, for Defendants.

*MEMORANDUM AND ORDER*

SLEET, District Judge.

**\*1** 1. On February 2, 2007, the court held a discovery teleconference in the above-captioned action. One of the issues raised by Maytag Corporation ("Maytag") was the discoverability of work-product and attorney-client privilege information that Dyson Technology Limited and Dyson, Inc. ("Dyson") provided to its experts, specifically James Widdowson ("Widdowson"), an employee of Dyson Limited (an indirect parent of Dyson, Inc.). After hearing argument, the court ordered the parties to submit letter briefing on the issue, which it would treat as Maytag's motion to compel.

2. On February 7, 2007, Maytag filed its opening brief (D.I. 245), framing the issues as follows: (1) whether materials shown to experts by attorneys remain privileged under Federal Rule of Civil Procedure 26(a)(2)(B) and Third Circuit precedent; and (2) whether Dyson, by designating Widdowson a testifying expert and submitting a report on his

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2007 WL 656252                                                                              Page 2

--- F.R.D. ----, 2007 WL 656252 (D.Del.)

**(Cite as: 2007 WL 656252 (D.Del.))**

behalf, waived the work-product and attorney-client privileges with respect to materials considered by him in forming his opinions. It is Maytag's position that, based on the broad disclosure requirements of Rule 26(a)(2)(B), it is entitled to all documents and information otherwise subject to attorney-client privilege and attorney work-product protection that were provided to or considered by Dyson's testifying experts in forming their opinions. Maytag further asserts that Dyson has waived the attorney-client privilege and work-product protection with respect to Widdowson, because Dyson has designated him as an expert, submitted a report on his behalf, and made him available for an expert deposition.

3. On February 12, 2007, Dyson filed a responsive letter brief (D.I. 250). Dyson argues that Rule 26(a)(2)(B) does not apply to Widdowson, because he is not an expert witness that is "retained" or "specially employed" by Dyson, and is not an employee who "regularly" provides expert testimony, as the rule requires. Dyson further argues that, even if Widdowson were subject to all of Rule 26(a)(2)(B)'s requirements, it has not waived all attorney-client or work-product privileges under *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587 (3d Cir.1984).

4. After having considered the parties submissions, the arguments made during the discovery teleconference, and the relevant law, the court concludes that the requirements of Rule 26(a)(2)(B) apply to Widdowson, an employee of Dyson Limited, who is designated as an expert witness and has provided an expert report in this action. The court further concludes that Rule 26(a)(2)(B) requires the disclosure of all materials considered by Dyson's experts, regardless of Dyson's claims of attorney-client privilege or work-product privilege. Finally, the court concludes that Maytag is not entitled to information and/or documents that Widdowson may have considered in performing his general job duties, but did not consider in connection with formulating the opinions expressed in his expert report. The court explains its rationale below, first addressing the Rule 26(a)(2)(B) issue, and then turning to the scope of the waiver.

*2  5.  Rule 26(a)(2)(B) provides that expert disclosure "with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony [shall] be accompanied by a written report prepared and signed by the witness, [which] ... shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; [and] any exhibits to be used as a summary of or support for the opinions," among other things. Fed.R.Civ.P. 26(a)(2)(B). This court has not had occasion to consider the application of Rule 26(a)(2)(B) to an employee-expert witness. However, courts in the Southern District of New York, the District of Minnesota, and the Middle District of Alabama have rejected the argument that Dyson advances in the present case. *See KW Plastics v. United States Can Co.,* 199 F.R.D. 687 (M.D.Ala.2000); *Minnesota Mining & Mfg. Co. v. Signtech USA, Ltd.,* 177 F.R.D. 459 (D.Minn.1998) ; *Day v. Consol. Rail Corp.,* No. 95 CIV. 968(PKL), 1996 WL 257654 (S.D.N.Y. May 15, 1996).

6. The court finds persuasive the rationale and decision reached by the Southern District of New York in *Day v. Consolidated Rail Corp.* Specifically, the *Day* court stated:

  The argument [that the federal rule governing expert witness discovery does not apply to] Mr. Heide is premised on the fact that he is an employee of [the defendant].... According to the defendant, Mr. Heide's job duties ... do not "regularly involve giving expert testimony" and he was not "retained or specially employed to provide expert testimony in the case...."

  [T]he reading [of Rule 26(a)(2)(B) ] proposed by the defendant would create a distinction seemingly at odds with the evident purpose of promoting full pre-trial disclosure of expert information. The logic of the defendant's position would be to create a category of expert trial witness for whom no written disclosure is required--a result plainly not contemplated by the drafters of the current version of the rules and not justified by any articulable policy.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.R.D. ----, 2007 WL 656252 (D.Del.)

**(Cite as: 2007 WL 656252 (D.Del.))**

Although rule 26(b)(4)(a), governing depositions of experts, appears to imply that some category of experts may be exempt from the report requirement, that exemption is apparently addressed to experts who are testifying as fact witnesses, although they may also express some expert opinions--for example, treating physicians.... In such an instance, we may infer that the reasons for requiring an expert's report are far less compelling and may unfairly burden a non-party who is appearing principally because he or she witnessed certain events relevant to the lawsuit.

In a case such as this, in which it appears that the witness in question ... although employed by the defendant is being called solely or principally to offer expert testimony, there is little justification for construing the rules as excusing the report requirement. Since his duties do not normally involve giving expert testimony, he may be fairly viewed as having been "retained" or "specially employed" for that purpose.

*3 1996 WL 257654, at *1-3. *See KW Plastics v. United States Can Co.,* 199 F.R.D. 687 (M.D.Ala.2000) (citing *Day* with approval and adopting its rationale); *Minnesota Mining & Mfg. Co. v. Signtech USA, Ltd.,* 177 F.R.D. 459 (D.Minn.1998) (discussing *Day* decision and finding its rationale "instructive and compelling"). Given the circumstances in the present case and the rationale of *Day,* the court concludes that Widdowson is not analogous to a "treating physician," at least with respect to the information contained in his report. [FN1] This is because the information contained in Widdowson's report is not a recitation of the facts of the case with some expert opinions expressed. Instead it is, in Widdowson's own words, "an expert report regarding various advertising claims by [Dyson] for its vacuum cleaners that have been challenged by [Maytag] in pending litigation." (D.I. 250 Ex. A, at 1.)

7. Moreover, it appears in the present case that Widdowson has gone even further than the expert in *Day,* who was disclosed to the plaintiff, but had not produced a report. *See Day,* 1996 WL 257654, at *1. That is, as previously mentioned, Dyson designated Widdowson as an expert under Rule

26(a)(2)(A), and had him submit an expert report. (See D.I. 250 Ex. A, at 1.) Maytag contends that the submission of the report subjects Widdowson to the same disclosure requirements applicable to all expert witnesses under rule 26(a)(2)(B). The court agrees. It seems as though Dyson is attempting to "have its cake and eat it too." Put another way, Dyson has designated Widdowson as an expert and submitted an expert report on his behalf, presumably because it wants to call him as an expert at trial, but does not want Maytag to have access to all of the information Widdowson used to formulate his opinions. What Dyson is trying to accomplish is not in accord with Rule 26, which exists to avoid expert disclosure that is "sketchy and vague," so that litigants can be prepared for trial. Fed. R. Civ. Pro. 26(a)(2)(B) Advisory Committee's Note. Accordingly, Widdowson is subject to the requirements of Rule 26(a)(2)(B). [FN2]

8. The court now turns to the second issue presented in Maytag's motion, i.e. the scope of the disclosure. Maytag contends that Dyson must produce all information and documents otherwise protected by attorney-client and work-product privileges shown to, or considered by, Dyson's testifying experts. Conversely, Dyson asserts it has not waived all attorney-client and work-product privileges, citing *Bogosian v. Gulf Oil Corp.,* 738 F.2d 587 (3d Cir.1984), as support. After having considered the relevant law, the court concludes that Rule 26(a)(2)(B) requires disclosure of all information considered by a testifying expert in formulating his or her report, without regard to asserted privilege. In reaching its conclusion, the court relies on the text of Rule 26(a)(2)(B), the Advisory Committee Notes to Rule 26, and persuasive authority from courts in this circuit.

*4 9. In *Bogosian,* a case decided in 1984, the issue presented to the Third Circuit was whether Rule 26(b)(4)(A) overrides the work-product privilege of Rule 26(b)(3) as to all documents shown to an expert who is identified as an intended trial witness, even though the documents may contain the mental impressions and thought processes of counsel. 738 F.2d at 590-91. The court concluded that Rule 26(b)(3), which protects an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2007 WL 656252

Page 4

--- F.R.D. ----, 2007 WL 656252 (D.Del.)

**(Cite as: 2007 WL 656252 (D.Del.))**

attorney's legal theories, opinions, and mental impressions, did not "give way" to Rule 26(b)(4), authorizing discovery relating to expert witnesses. *Id.* at 594-96 ("When Rules 26(b)(3) and 26(b)(4) are viewed as set forth here [under the 1984 version of the Federal Rules of Civil Procedure], we believe they do not present the 'tension' that the district court saw, and that the policies underlying each section can be satisfied.") [FN3]

10. Subsequent to the Third Circuit's decision in *Bogosian,* Rule 26 was amended to broaden the scope of discovery, particularly with respect to experts. Specifically, Rule 26(a)(2)(B) was amended to provide that a testifying expert shall submit an expert report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor," and "the data or other information considered by the witness in forming the opinions." Fed.R.Civ.P. 26(a)(2)(B). Courts have defined the term "considered" broadly to include materials that an expert reviews, reflects upon, reads, and/or uses. *Synthes Spine Co. v. Walden,* 232 F.R.D. 460, 463 (E.D.Pa.2005); *Vitalo v. Cabot Corp.,* 212 F.R.D. 472, 474 (E.D.Pa.2002) . Thus, putting privilege considerations aside, a testifying expert must disclose all information that he or she reviewed, reflected upon, read and/or used in formulating his or her opinions.

11. With respect to privilege, the Advisory Committee's notes to the 1993 amendments to Rule 26(a)(2) state: "[g]iven [the] obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions--whether or not ultimately relied upon by the expert--are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." Fed.R.Civ.P. 26 Advisory Committee's Note. By its plain terms, the note states that the attorney-client and work-product privileges once relied upon by litigants to prevent disclosure of certain materials furnished to experts no longer exist. *See* Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2016.2, at 252 (2d ed. 1994) ("At least with respect to experts who testify at trial, the disclosure requirements of Rule

26(a)(2), adopted in 1993, were intended to pretermit further discussion and mandate disclosure despite privilege.") Accordingly, the court interprets Rule 26(a)(2)(B) as requiring the disclosure of all materials considered by Dyson's experts, including Widdowson, regardless of Dyson's claims of attorney-client or work-product privilege. [FN4]

*5 12. Finally, Maytag contends that it is entitled to all information and documents considered by Widdowson before or in connection with the formulation of his expert opinions, regardless of any claims of attorney-client privilege, work-product protection, or time limitations before or after his designation as a testifying expert. The court disagrees and will limit production to only the information and documents considered by Widdowson in connection with formulating his expert opinions expressed in his report. Widdowson is an employee of Dyson Limited who also is being offered as an expert. Thus, he possesses general information regarding his ordinary job duties, as well as the specialized knowledge contained in his expert report. Under these circumstances, the court finds that it would be burdensome and unjust to order the production of information and documents not considered by Widdowson in connection with his expert report.

Therefore, IT IS HEREBY ORDERED that:

1. Maytag's Motion to Compel (D.I. 245) is GRANTED in part and DENIED in part.

2. Maytag's motion is GRANTED in that Dyson shall produce all information and documents considered by Widdowson in connection with formulating the opinions expressed in his January 15, 2007 expert report.

3. Dyson shall produce the information and documents that are the subject of this Order within five (5) days of Widdowson's expert deposition.

4. Maytag's motion is DENIED in that the court will not order production of information and/or documents that Widdowson may have considered in performing his general job duties, but did not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.R.D. ----, 2007 WL 656252 (D.Del.)

**(Cite as: 2007 WL 656252 (D.Del.))**

consider in connection with formulating the opinions expressed in his January 15, 2007 expert report.

> FN1. Dyson points out that Widdowson has already been deposed as both a fact and 30(b)(6) witness. The court's conclusion with respect to the information provided in Widdowson's expert report does not apply to the factual information previously provided by Widdowson in his capacity as a fact and 30(b)(6) witness. That is, it applies only to the opinions expressed by Widdowson in his expert report.

> FN2. The District of Kansas, in a case with facts similar to those in the present case, ordered production of disclosures required by Rule 26(a)(2)(B). *See Super Film of Am. v. UCB Films, Inc.,* 219 F.R.D. 649 (D.Kan.2004). In *Super Film,* the plaintiff designated one of its employees as an expert pursuant to Rule 26(a)(2)(A) and furnished the defendant with an expert report from the employee. *Id.* at 658. When the defendant requested Rule 26(a)(2)(B) disclosures, the plaintiff objected, stating that the expert was not retained, specially employed, or regularly involved in providing expert testimony. *Id.* The defendant moved to compel production of the materials and the plaintiff responded by stating that it designated the employee as an expert " 'out of an abundance of caution ... in order to preserve those opinions for this case.' " *Id.* at 659 (citation to record omitted). Dyson advanced a similar, if not identical, rationale for its designation of Widdowson during the oral presentation of the issue to the court. The court in *Super Film* reached the same conclusion that this court reaches today. The court concludes that, as a result of the employee's designation as an expert and submission of a report, the defendant is entitled to the disclosures required by Rule 26(a)(2)(B).

> FN3. Dyson also relies on the Third Circuit's decision in *In re Cendant Corp.,* 343 F.3d 658 (3d Cir.2003) to support its contention that it is not required to produce materials protected by the work-product privilege. *Cendant* is distinguishable, however, because the issue there was whether Rule 26(b)(4)(B) required production of work-product generated by a *non-testifying* expert, and not a *testifying* expert as in the present case. 343 F.3d at 659 ("At issue on appeal is whether the 'work product' of a non-testifying trial consultant in this case is privileged and subject to only limited discovery.") As such, Dyson's reliance on that authority is misplaced.

> FN4. In ruling as it does today, the court finds persuasive and follows authority in this district, and several other districts, requiring production of all documents considered by the testifying expert. *See Synthes Spine,* 232 F.R.D. at 463-64 (noting that the "overwhelming majority of courts addressing this issue [the scope of disclosure required by an expert witness] have adopted a pro-discovery position, concluding that, pursuant to Rule 26(a)(2)(B), a party must disclose all information provided to its testifying expert for consideration in the expert's report, including information otherwise protected by the attorney-client privilege or the work product privilege" and citing cases); *CP Kelco U.S. Inc. v. Pharmacia Corp.,* 213 F.R.D. 176, 178-79 (D.Del.2003) (ordering production of documents considered by testifying expert, even though the documents were claimed as privileged, because "[i]t would be manifestly unfair to allow a party to use the privilege to shield information which it had deliberately chosen to use offensively ... when it used the allegedly privileged documents to arm its expert for testimony"); *Vitalo v. Cabot Corp.,* 212 F.R.D. 478, 479 (E.D.Pa.2002) (same).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2007 WL 656252

Page 6

--- F.R.D. ----, 2007 WL 656252 (D.Del.)

**(Cite as: 2007 WL 656252 (D.Del.))**

--- F.R.D. ----, 2007 WL 656252 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1996 WL 900345 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

**H**
In re Orthopedic Bone Screw Products Liability
Litigation
E.D.Pa.,1996.
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
In re ORTHOPEDIC BONE SCREW PRODUCTS
LIABILITY LITIGATION,
This document relates to all actions.
No. MDL 1014.

July 16, 1996.

*MEMORANDUM AND ORDER*
BECHTLE, District Judge.
**\*1** Presently before the court is the issue of the extent to which discovery may be sought by the plaintiffs regarding factual materials relied upon by Hansen A. Yuan, M.D. ("Dr.Yuan") in reaching his opinions as an expert for defendant Smith & Nephew Richards, Inc. ("SNR") in MDL 1014. This matter comes before the court on the recommendation of the Special Master that the court convene a hearing to attempt to resolve the differences between the plaintiffs and SNR concerning the scope of discovery permitted of the factual grounds relied upon by Dr. Yuan, a principal expert witness to be called upon by the defendants in many, if not all, MDL 1014 cases. Dr. Yuan has furnished an undated report that consists of ten unnumbered pages, in which he states, among other things, that he has implanted several thousand pedicle screws, and that in those instances,[FN1] he has only had "two incidences of nerve root irritation. " (Hansen Report at 2).[FN2] Plaintiffs seek from SNR the files for the several hundred patients who had pedicle screws implanted by Dr. Yuan. SNR makes two principles arguments as to why plaintiffs' request should be denied. First, that plaintiffs' request is unduly burdensome and oppressive. Second, that the patient/physician privilege precludes disclosure.

FN1. Counsel for SNR suggested that approximately 300 separate patients were involved in these procedures. (Tr. 7/2/96 at 10-11).

FN2. The report pages are unnumbered but the court will number them for ease of comprehension beginning with the first full page as number 1.

The court will treat plaintiffs' request as a motion to compel disclosure pursuant to Federal Rule of Civil Procedure 37. For the reasons set forth below, the court will grant plaintiffs' motion.

*I. INTRODUCTION*

On September 14, 1995, pursuant to Federal Rule of Civil Procedure 53, the court appointed Robert E. Welsh, Jr. as Special Discovery Master in MDL 1014 to assist the court with administering the discovery schedule and resolving discovery disputes under Rules 26, 31, 34, 35, 36 and 45 of the Federal Rules of Civil Procedure. *See* PTO 112. PTO 112 directs all parties to present discovery disputes to the Special Master before filing any motions with the court. After addressing a particular discovery dispute, the Special Master issues a Report and Recommendation which outlines his decision on the matter. If any party disagrees with a finding of the Special Master, it may appeal his ruling by filing a motion with the court.

With regard to this issue, the Special Master, on June 28, 1996, issued a Report and Recommendation suggesting that the court convene a hearing to address the "extent to which the plaintiffs may have access to data, experience, observations, and studies underlying" Dr. Yuan's opinions. On July 2, 1996, the court convened a hearing on this issue.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                              Page 2

Not Reported in F.Supp., 1996 WL 900345 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

II. *DISCUSSION*

Federal Rule of Civil Procedure 26(a)(2) outlines the obligations of a party concerning the disclosure of expert testimony. The rule provides, in pertinent part:

Disclosure of Expert Testimony.

(A) In addition to the disclosures required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.

*2 (B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case ..., be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; *the data or other information considered by the witness in forming the opinions;* any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed.R.Civ.P. 26(a)(2)(A)-(B) (emphasis added).[FN3]

> FN3. The court notes here that the provisions of Rule 26(a)(1) that were excepted from application in the Eastern District of Pennsylvania by Standing Order on December 1, 1993 do not apply to **Rule 26(a)(2)**. *See* Standing Order of 12/1/93 (E.D.Pa.)

**Rule 26(a)(2)**'s requirements are plain. First, a party who is going to provide expert testimony is required to prepare and sign a written report. Dr. Yuan's report satisfies this requirement although the report is undated. Second, an expert's report must contain the witness's opinions that are intended to be expressed and provide the basis and reasons therefor. Dr. Yuan's report also satisfies this

requirement. What Dr. Yuan's report does not contain, and which is required by the Rule, is the *data or other information considered* by the witness in forming his opinion. Further, Dr. Yuan's report fails to include his qualifications, including a list of publications authored by him over the last ten years.[FN4] In addition, his report makes no reference to the compensation to be paid for the study, nor does it list the other cases in which Dr. Yuan has testified within the last four years. These latter matters are not in dispute, however, so they are not pertinent to the court's decision here.

> FN4. As the court understands it, Dr. Yuan has not published any works over the last ten years.

In his report, Dr. Yuan expressly states, in the last paragraph, that his opinion is that pedicle screw systems allow the lumbar spine to be corrected and maintained regarding its alignment with a minimum of complications. (Yuan Report at 10). It is also his opinion that pedicle screw systems create no higher complication rate than any other "fixation devices that are classified class II." *Id.* Dr. Yuan is also of the opinion that pedicle screw systems can greatly improve a patient's "outcome" and "should be available to appropriately trained surgeons for use in patients with carefully selected indications." *Id.*

The problem with these opinions from the standpoint of **Rule 26(a)(2)** is that they are all premised on Dr. Yuan's own extensive experience in implanting pedicle screw devices in 300 or more patients and using, in his words, several thousand pedicle screws. Most of his report is written in the first person and it is plain that the factual episodes referred to in the report, spanning many years of his professional work in this field, are the building blocks of his ultimate conclusions. He points out on page 2 of his report that of the several thousand pedicle screws that he has implanted, he has only had two incidences of nerve root irritation. He then goes on to explain what information he has discovered regarding those two incidences. Further down on page 2, he states that he found that there was a higher chance for reoperation in patients with

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Page 3

Not Reported in F.Supp., 1996 WL 900345 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

pedicular fixation compared with those with non-pedicular fixation, "due to the need for a few metal removal cases." *Id.* at 2. On this same page, Dr. Yuan speaks about his "own patient population" and then makes certain comparisons based on observations that he has made. Dr. Yuan's review of the Cohort Study findings also comes from his particular individual involvement in the study and through his observations and opinions based upon that involvement.

*3 The difficulty with SNR's position here is that all of this material that Dr. Yuan bases his opinions on are facts that support his opinion and therefore they qualify under **Rule 26(a)(2)**(B) as "the data or **other information considered** by the witness in forming the opinions."

As stated above, SNR opposes disclosure on two grounds. First, it contends that because this factual material forming Dr. Yuan's vast experience in the field is so voluminous, it is too burdensome to produce. It was estimated at the hearing that Dr. Yuan's opinions probably involve 300 separate patients. (Tr. 7/2/96 at 10-11). Presumably, that may include more surgeries if any of the patients had more than one surgery. What must be remembered here is that the opinions regarding these 300 cases with only two presented problems does not highlight the two cases that presented problems, but instead buttresses the strength of Dr. Yuan's opinions as to the remaining 298 cases.

Paradoxically, the greater the reach of an expert's opinion and the depth of the support that is proffered to justify it, the greater the burden that follows concerning the data and information that has been relied upon to make the opinion more persuasive than it might otherwise be. The expert who has five years of experience and has performed ten surgical procedures utilizing a particular technique will, usually, not be as strong of a witness as one who has fifteen years of experience and has performed 300 surgical procedures using that same technique. Indeed, the former would not likely qualify as an expert at all.

If SNR's approach was correct, the more qualified a witness, the less access an adverse party would have

to the grounds for the expert's opinion, because of the burdensome documentary support involved in obtaining the supporting materials, the cost of time and resources to seek waivers of patient/physician privilege or to administratively redact privileged documents. Of course, a party adverse to a proferred expert can always make the decision that it is not concerned with the underpinnings for an expert's opinion and can waive the requirements. This circumstance could occur either because it is implicit that the proferred expert is indeed an expert in the field, and a detailed examination of the support for the opinions would neither be cost effective nor a major factor for any number of reasons. That, however, is not the case here. Plaintiffs are not waiving their right to examine the data and information that Dr. Yuan has relied upon to formulate his opinions, but instead are insisting upon its disclosure.

Section 29(a)(2) was added to Rule 26 with the 1993 amendments to the Federal Rules of Civil Procedure. It replaced former Rule 26(b)(4). The purpose of adding **Rule 26(a)(2)** was to widen the scope of pretrial discovery of expert witnesses. It was also intended to reduce the time and expense associated with normal discovery efforts concerning experts by making the disclosures of experts voluntary and not subject to the usual discovery thrusts by either party through the various rules of discovery including Rule 26. The advisory notes state that **Rule 26(a)(2)** imposes an additional duty to disclose information regarding experts' testimony sufficiently in advance of trial so that opposing parties have a real opportunity to prepare for effective cross-examination and can perhaps arrange for expert testimony for other witnesses. The previous extremely restrictive and burdensome task of securing discovery from experts under Rule 26(b)(4) was rejected in return for the realism of having less costly discovery for experts and to support the notion of fairness. The incentive to disclose voluntarily is created by the revision to **Rule 37(c)**(1) which provides that a party ordinarily will not be allowed to use as direct examination any expert testimony not disclosed in accordance with paragraph 2(B) of **Rule 26(a)(2)**. **Rule 37(c)**(1) states, in pertinent part:

*4 A party that without substantial justification fails

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1996 WL 900345 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.

Fed.R.Civ.P. 37(c)(1).

The court here finds itself with the application by SNR for relief from voluntary disclosure of the data and information relied upon by its own preferred expert. The court believes that from the standpoint of fairness, effective cross-examination, and upon consideration of the preparation of adversarial expert testimony, disclosure must be required as a condition of allowing Dr. Yuan to present the opinions that he has articulated in his report, or any other opinions that may be hereafter formulated that rely upon the same or similar data and information.

SNR also objects to disclosure of this information on the grounds that disclosure would violate the patient/physician privilege. The court agrees with SNR that plaintiffs' access to hundreds of patients' names and disclosure of their records that presumably include confidential information and communications between the patient and Dr. Yuan would likely violate the privilege. SNR could presumably avoid a violation of the patient/physician privilege, however, by securing patient waivers, or by having Dr. Yuan redact the patients' names from all of the patient files in order to conform with **Rule 26(a)(2)**. The court concludes that the refusal of Dr. Yuan to make the voluntary disclosures required by **Rule 26(a)(2)** is not substantially justified, nor would his testimony, without making such disclosures, be harmless. If Dr. Yuan does not secure a waiver, or cause the redaction of the patients' names from the records; and does not voluntarily disclose the information concerning all of his patients in whom he implanted pedicle screws as required by **Rule 26(a)(2)**, the court will preclude his expert testimony based on those case histories pursuant to **Rule 37(c)(1)**.

III. *CONCLUSION*

For the reasons stated above, plaintiffs' motion to

compel disclosure pursuant to Federal Rule of Civil Procedure 37 is granted.

An appropriate Order follows.

*PRETRIAL ORDER NO. 449*

AND NOW, TO WIT, this 16th day of July, 1996, upon consideration of plaintiffs' motion to compel disclosure pursuant to Federal Rule of Civil Procedure 37, IT IS ORDERED that said motion is *granted* as set forth in the accompanying Memorandum.

SO ORDERED.

E.D.Pa.,1996.
In re Orthopedic Bone Screw Products Liability Litigation
Not Reported in F.Supp., 1996 WL 900345 (E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

Westlaw.

Not Reported in F.Supp.

Not Reported in F.Supp., 1996 WL 530106 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

**H**
In re Orthopedic Bone Screw Products Liability
Litigation
E.D.Pa.,1996.
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.
In re ORTHOPEDIC BONE SCREW PRODUCTS
LIABILITY LITIGATION.
This Document Relates To All Actions.
**MDL No. 1014.**

Sept. 16, 1996.

MEMORANDUM AND ORDER
BECHTLE, District Judge.
*1 Presently before the court is defendant Smith &
Nephew Richards, Inc.'s ("SNR") Motion for
Reconsideration and/or Clarification of Pretrial
Order No. 449 (docket # 4138), and plaintiffs'
opposition thereto. For the reasons set forth below,
the court will deny said motion.

I. BACKGROUND

In Pretrial Order No. 449, entered on July 16, 1996,
the court granted plaintiffs' motion to compel
disclosure pursuant to Federal Rule of Civil
Procedure 37, and permitted plaintiffs access to the
factual materials relied upon by Hansen A. Yuan,
M.D. ("Dr. Yuan") in reaching his opinions as an
expert for defendant Smith & Nephew Richards,
Inc. See Pretrial Order No. 449. On July 30, 1996,
SNR filed the instant motion for reconsideration
and/or clarification, requesting that the court vacate
Pretrial Order No. 449 based upon Dr. Yuan's
clarification that his specific reference to the results
of his pedicle screw fixation surgeries was "not
intended to be a statistical comparison or analysis of
his patients' results, and that such references were
included by way of example illustrating his opinions
and may be deleted or eliminated without materially
affecting those opinions." (SNR Mem. In Supp. of

Recon. at 2.) On August 27, 1996, the court heard
oral argument on this motion.

II. DISCUSSION

In Dr. Yuan's original ten-paged report, he stated,
among other things, that he has implanted several
thousand pedicle screws, and that in those instances,
he has only had "two incidences of nerve root
irritation." (Hansen Report at 2.) Dr. Yuan's
original report makes it clear that his ultimate
opinions are based on the outcomes of his treatment
of specific patients. His assertions are statements of
fact, not expressions of opinion.

In the instant motion currently before the court,
SNR produces a supplemental report prepared by
Dr. Yuan, in which he states that all of the opinions
expressed in his initial report were based upon his "
impressions and recollections" of his extensive
clinical and professional experience as a spine
surgeon, and were not meant to be factual assertions
based on specific case studies. The specific
examples referenced in his report, he claims, "are
not intended to be or to represent a specific study
and/or a particularized statistical compilation, ratio,
analysis, or quantification of the sum total of my
clinical and other experience with instrumented
spine surgery ...." (SNR Mem. for Recon. at Exhibit
A at 4.) Dr. Yuan asserts that the specific references
to surgeries in his initial report can be eliminated
entirely from his report without in any way
materially affecting his opinions. In light of the
assertions made by Dr. Yuan in this Supplemental
report, argues SNR, the court should vacate Pretrial
Order No. 449 and the requirement that Dr. Yuan
produce his patients' records to plaintiffs.

The court will deny SNR's motion. As the court
stated in Pretrial Order No. 449 and at the August
27, 1996 hearing on this motion, the opinions
expressed by Dr. Yuan in his initial report are all
premised on his experience in implanting pedicle

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.

Not Reported in F.Supp., 1996 WL 530106 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.)**

screw devices in 300 or more patients, using several thousand pedicle screws. Federal Rule of Civil Procedure 26(a)(2)(B)'s requirement to produce " the data or other information considered by the witness in forming the opinions," therefore, applies here to Dr. Yuan. *See* Fed. R. Civ. P. 26(a)(2)(B). Because the data is extensive, and because Dr. Yuan has personal hands-on experience with every surgery that by his own declaration form the basis of his opinion, that data must simply be produced if the opinions are to be received. Dr. Yuan's impressive credentials in the specialized field of pedicle screw development, application, and surgery are the features of his background that are being proferred as the reasons why he should be permitted to testify as an expert, and if he is, why his proponents also believe he will help their cause. Those views are sound of course, but in the adversarial context, as opposed to the lecture or consultation context, allowance must be made to provide an opportunity, for those with standing who may have a different view of Dr. Yuan's convictions, to test the grounds upon which they are based. By reason of the declarations that he has already made in this court proceeding, there is no way that his opinions can stand concerning the integrity of the pedicle screw if his extensive surgical experience with the device is simply culled out as forbidden territory for inquiry.

### III. CONCLUSION

*2 For the foregoing reasons, the court will deny SNR's motion. An appropriate Order follows.

### PRETRIAL ORDER NO. 526

AND NOW, TO WIT, this 16th day of September, 1996, upon consideration of defendant Smith & Nephew Richards' ("SNR") Motion for Reconsideration or Clarification of Pretrial Order No. 449, IT IS ORDERED that said motion is DENIED.

E.D.Pa.,1996.
In re Orthopedic Bone Screw Products Liability Litigation

Not Reported in F.Supp., 1996 WL 530106 (E.D.Pa.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT E

Westlaw.

Not Reported in F.Supp.2d

Page 1

Not Reported in F.Supp.2d, 2006 WL 1644742 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
D & D Associates, Inc. v. Board of Educ. of North
Plainfield
D.N.J.,2006.
Only the Westlaw citation is currently
available.NOT FOR PUBLICATION
United States District Court,D. New Jersey.
D & D ASSOCIATES, INC., Plaintiff,
v.
The BOARD OF EDUCATION OF NORTH
PLAINFIELD, et al., Defendants.
**Civil Action No. 03-1026 (MLC).**

June 8, 2006.

J. Charles Sheak, Timothy J. Korzun, Sheak &
Korzun, PC. Pennington, NJ, for Plaintiff.
Jacqueline Greenberg Vogt, Greenberg Traurig,
LLP, Florham Park, NJ, Gary C. Chiumento,
Jennifer Lynn Neilio, Harvey, Pennington, Cabot,
Griffith & Renneisen, PC, Cherry Hill, NJ, Ronald
Stephen Levitt, Golden, Rothschild, Spagnola,
Lundell, Levitt & Boylan, PC, Bridgewater, NJ,
Walter James Greenhalgh, Sanjay P. Ibrahim,
Duane Morris LLP, Newark, NJ, Joseph P. Lasala,
McElroy, Deutsch, Mulvaney & Carpenter,
Morristown, NJ, for Defendants.

**MEMORANDUM OPINION**
COOPER, District Judge.
*1 This matter comes before the Court on the
appeal by D & D Associates, Inc. ("D & D") from
an order of the Magistrate Judge dated March 3,
2006. (Dkt. entry no. 122.) For the reasons stated
herein, the Court will (1) affirm the part of the order
of the Magistrate Judge granting an application for
an award of attorney fees, and (2) modify the part
of the order setting forth the amount of fees awarded
to be consistent with the intent of the order, and
affirm as modified.

*BACKGROUND*

**I. Facts**

The parties are familiar with the background of this
action. (*See* 9-30-05 Mem.Op. & Ord.; 1-10-06
Mem.Op. & Ord.) Plaintiff, D & D, was the general
contractor for various school construction and
renovation projects in North Plainfield, New Jersey.
(*Id.*) The construction projects were delayed, and
defendant Board of Education of North Plainfield ("
the Board") issued a notice of default to D & D.
(*Id.*) The Board also terminated D & D from the
project. (*Id.*)

D & D brought this action on March 10, 2003, (1)
alleging that the Board, and its attorney Robert C.
Epstein ("Epstein"), among others, violated D &
D's civil rights and breached a contract with D & D,
and (2) asserting claims for tortious interference,
libel, slander, conversion, and fraudulent
inducement. (Am.Compl.) Discovery concluded on
March 30, 2006. (Dkt. entry no. 121.) Among other
discovery motions, the Board moved to preclude the
expert report on damages from trial ("the Simonds
Report") prepared by Theresa M. Simonds ("
Simonds"), and Arthur Federstein ("Federstein")
submitted on behalf of D & D. (Dkt. entry no. 88.)
The Magistrate Judge (1) granted the motion to
preclude, (2) provided D & D thirty days to submit
a new expert report on damages, and (3) determined
that the Board's counsel was entitled to reasonable
fees and costs associated with the motion.
(11-23-05 Order, dkt entry no. 98.) The Board
applied for the reimbursement of its fees and costs
on December 5, 2005. (Dkt. entry no. 101.) In an
order dated March 3, 2006 ("March Order"), the
Magistrate Judge ordered D & D to pay the Board
$22,530.00 in fees and costs associated with the
motion to preclude. (3-3-06 Order, dkt. entry no.
122.) The appeal from that order is now before this
Court. (Dkt. entry no. 124.)

**II. The Magistrate Judge's Orders**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page 2

Not Reported in F.Supp.2d, 2006 WL 1644742 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

### A. The Underlying Motion to Preclude

The Board moved to preclude the Simonds Report on October 14, 2005. (Dkt. entry no. 95.) As articulated by the authors of the report, they had been engaged "to calculate the financial damages incurred by D & D Associates, Inc., ("D & D") due to the alleged actions of [the Board]." (Simonds Report, at 1.)

The Board argued that the report should be precluded because (1) it was an impermissible preliminary report, (2) there was no basis for the opinions rendered, and (3) the report failed to comply with Federal Rule of Civil Procedure ("Rule ") 26. (Board Br. in Supp. of Mot. to Preclude, at 9, 11, 23.) D & D argued that the report should not be precluded because (1) the Board was improperly seeking to bar all expert testimony before discovery was complete, (2) the report provided the mandated initial disclosures and would be supplemented pursuant to Rule 26, and (3) the report was a compilation and did not express opinions outside of the authors' expertise. (D & D Br. in Opp'n to Mot. to Preclude, at 9, 11, 15.)

**\*2** Rule 26 requires parties to disclose the identity of any person who will be providing expert testimony at trial, and to submit a written report prepared and signed by that witness. Fed.R.Civ.P. 26(a)(2). Rule 26(a)(2)(B) outlines what information must be included in the written report. Fed.R.Civ.P. 26(a)(2)(B). The Magistrate Judge, applying Rule 26(a)(2)(B), found that the Simonds Report was

woefully deficient as it does not provide sufficient bases for the opinions expressed, it is preliminary in nature, without any specific determinations for various amounts of damages or how the damages were calculated, it relied solely on information provided by plaintiff's pleadings and its employees and admitted that the information could not be independently verified.

(11-23-05 Order, at 2.) The Magistrate Judge also determined that the report was insufficient to allow the expert to testify at trial pursuant to Federal Rule of Evidence 702. (*Id.*) Based on those conclusions,

the Magistrate Judge (1) ordered "the report submitted by Theresa M. Simonds ... precluded from trial," (2) permitted D & D to submit a new report that complied with Rule 26, and (3) indicated that the Board was entitled to reasonable fees and costs pursuant to Rule 37(c). (*Id.* at 2-3.)

### B. The Award of Attorney Fees

The Board, as directed by the Magistrate Judge, submitted a memorandum of services related to the motion to preclude on December 5, 2005. (Dkt. entry no. 101.) The attorneys for the Board sought $32,202.50 in fees and costs. (*Id.*) D & D opposed the request arguing that the amount sought was " overly excessive," particularly because the Board's motion was "partly denied." (D & D Br. in Opp'n to Attorney Fees, at 5.) The Magistrate Judge (1) adjusted the hourly rate of one of the Board's attorneys, (2) reduced the hours spent preparing the motion to preclude, and (3) awarded the Board attorneys a reduced fee of $22,530.00. (3-3-06 Order, at 2-4.)

### DISCUSSION

D & D argues that the March Order should be reversed because (1) the Board is not entitled to any attorney fees in connection with the motion to preclude because (a) "the Board's motion failed in its fundamental purposes," and (b) D & D's opposition to the motion was substantially justified, and (2) the fees awarded are "heavily excessive and unwarranted." (D & D Br., at 7, 9.) The Board argues that the March Order should be affirmed because (1) the Simonds Report was deficient and sanctions were appropriate, and (2) the amount of fees awarded was reasonable. (Board Br., at 13, 15, 20.)

### I. District Court Review of Magistrate Judge Decisions

The district court has authority to review determinations of a magistrate judge. *See* 28 U.S.C. § 636. A magistrate judge is accorded wide

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 3

Not Reported in F.Supp.2d, 2006 WL 1644742 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

discretion in addressing non-dispositive motions, and an exercise of discretion will be reversed only if there is an abuse of that discretion. *Id.; Miller v. Beneficial Mgmt. Corp.,* 844 F.Supp. 990, 997 (D.N.J.1993). A district judge may not reverse, modify, or vacate a magistrate judge's order addressing a non-dispositive motion unless the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); L.Civ.R. 72.1(c)(1); *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1113 (3d Cir.1986). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Thomas v. Ford Motor Co.,* 137 F.Supp.2d 575, 579 (D.N.J.2001) (internal quotes and cites omitted). Any evidence that was not presented to the magistrate judge cannot be considered by the district court when making a factual determination. *Id.* at 579.

## II. Relevant Discovery Standards

### A. Rule 26 Disclosures

**\*3** Rule 26 requires parties to an action to disclose, *inter alia,* the names of individuals with discoverable information, a copy of documents that may support claims or defenses, and the identity of any witnesses retained to provide expert testimony. Fed.R.Civ.P. 26(a). A written report prepared and signed by the witness must accompany the identification of an expert witness. Fed.R.Civ.P. 26(a)(2)(B). The report shall contain:
a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

*Id.*[FN1] The written report must be "detailed and complete." Fed.R.Civ.P. 26 advisory committee's note (1993 Amendments). Prior versions of Rule 26 did not require the submission of written reports, but the rule was amended because often the initial information disclosed about the content of an expert's testimony was "sketchy and vague." *Id.* Also, because the deposition of an expert witness cannot be taken until after the witness submits a written report, the length of, or need for an expert's deposition will be often be reduced once a report is submitted. *Id.*

> FN1. For ease of reference, the requirements of what information an expert report must contain can be broken down into six items, (1) how and why the expert reached an opinion, (2) what the expert relied upon when formulating an opinion, (3) exhibits to be used by the expert, (4) qualifications of the expert including publications, (5) expert compensation, and (6) a list of other cases in which the expert has testified previously. *Reed v. Binder,* 165 F.R.D. 424, 428-29 (D.N.J.1996).

An expert also is obligated to supplement the written report when additional information becomes available. Fed.R.Civ.P. 26(a)(2)(C). The allowance of supplementary disclosures, however, is "not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.,* 73 F.3d 546, 571 (5th Cir.1996). "The failure to comply with the disclosure requirements of the Rule frustrates the purpose of the Rules-the elimination of unfair surprise and the conservation of resources." *Reed,* 165 F.R.D. at 431. The trial judge acts as a gatekeeper and has discretion to determine when an expert report is admissible. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999); *Yarchak v. Trek Bicycle Corp.,* 208 F.Supp.2d 470, 494 (D.N.J.2002).

### B. Rule 37 Sanctions

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 1644742 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

The Magistrate Judge determined that the Simonds Report did not meet the standards set forth in Rule 26, and awarded attorney fees to the Board pursuant to Rule 37(c). (3-3-06 Order.) Rule 37(c) provides:
[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) ... is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court ... may impose other appropriate sanctions ... including attorney's fees.

**\*4** Fed.R.Civ.P. 37(c). "Rule 37 is written in mandatory terms and is designed to provide a strong inducement for disclosure of Rule 26(a) material." *Newman v. GHS Osteopathic, Inc., Parkview Hosp. Div.,* 60 F.3d 153, 156 (3d Cir.1995).

The imposition of sanctions pursuant to Rule 37 is within the discretion of the court. *Id.; Reed,* 165 F.R.D. at 431; *see also Stein v. Foamex Int'l,* No. 00-2356, 2001 WL 856722, at \*6 (E.D.Pa. July 23, 2001) ("the Court retains discretion in crafting a remedy for violation of this Rule [26]"). While Rule 37 permits a court to bar an expert's testimony, such a remedy may be unduly harsh. The rule, therefore, provides the court with discretion to fashion an appropriate remedy. *Id.* An appropriate remedy may include ordering the non-compliant party to pay the attorney fees and costs of the opposing party. *Fitz, Inc. v. Ralph Wilson Plastics Co.,* 174 F.R.D. 587, 591-92 (D.N.J.1997) (determining that the plaintiffs' non-compliance with Rule 26 did not mandate the exclusion of the declarations at issue, but required that they compensate the defendants for their legal fees and costs).

Sanctions are not appropriate for failure to comply with Rule 26 when the failure is substantially justified or harmless. Fed.R.Civ.P. 37(c); *Newman,* 60 F.3d at 156; *Fitz, Inc.,* 174 F.R.D. at 591. Substantial justification requires
justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there exists a genuine dispute concerning

compliance.

*Fitz, Inc.,* 174 F.R.D. at 591; *see also Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 680 (D.Kan.1995). " Failure to comply with the mandate of the Rule [26] is harmless when there is no prejudice to the party entitled to disclosure." *Reed,* 165 F.R.D. at 430. Factors to consider when determining whether a failure was harmless include prejudice or surprise to a party against whom evidence is offered, the ability to cure the prejudice, likelihood of disruption to trial, and bad faith. *In re Mercedes-Benz Anti-trust Litig.,* 225 F.R.D. 498, 505 (D.N.J.2005). Prejudice for failure to meet scheduling orders and to respond to discovery may include deprivation of information and "costs expended to force compliance with discovery." *Adams v. Trs. of N.J. Brewery Employees' Pension Trust Fund,* 29 F.3d 863, 873-74 (3d Cir.1994); *Smith v. Altegra Credit Co.,* No. 02-8221, 2004 WL 2399773, at \*5 (E.D.Pa. Sept. 22, 2004). The party who is alleged to have failed to comply with Rule 26 has the burden of demonstrating substantial justification and harmlessness. *Nguyen,* 162 F.R.D. at 680.

### III. Analysis

D & D appeals from the March Order that directs it to pay $22,530 .00 to the Board in connection with the motion to preclude the Simonds Report. D & D has not appealed from the November 2005 order that granted the motion to preclude the report and entitled the Board to attorney fees. (See 11-23-05 Order, dkt. entry no. 98.) The Court, however, must review whether the Simonds Report complied with Rule 26 to determine if a Rule 37 sanction was appropriate. Then, the Court can review whether the award was appropriate. The Court reviews the Magistrate Judge's order for abuse of discretion because whether the Simonds Report is sufficiently compliant with Rule 26 is a matter of degree. *See Sierra Club,* 73 F.3d at 571 n. 46 (noting that where the standard of compliance is a matter of degree, such as whether an initial expert disclosure is complete, the determination of compliance is appropriately left to the discretion of the trial court and an appellate court should reverse only upon the showing of clear abuse).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 5

Not Reported in F.Supp.2d, 2006 WL 1644742 (D.N.J.)
(Cite as: Not Reported in F.Supp.2d)

### A. The Sufficiency of the Simonds Report

*5 The Magistrate Judge precluded the Simonds Report finding that it failed to comply with Rule 26 because, *inter alia*, it was "woefully deficient," preliminary in nature, and did not provide specific determinations for the amount of damages. (11-23-05 Order.) The report itself indicates that it is a "preliminary assessment of damages." (Simonds Report, at 1.) An examination of the report in light of the six items required to be included in an expert report pursuant to Rule 26 confirms the Magistrate Judge's determination. The preclusion of the report was not clearly erroneous.

Simonds and Federstein indicate in the Simonds Report that they were "engaged to calculate financial damages incurred by D & D Associates, Inc." (Simonds Report, at 1.) The report provides a background of the events leading up to the litigation at issue, and identifies six different "elements" of financial damages to D & D: (1) balances due under the construction contracts, (2) excess expenses incurred due to field directives, (3) the value of D & D's assets that were allegedly converted by the Board, (4) the loss of bonding capacity and the corresponding profits that would have been realized, (5) legal and professional fees, and (6) expenses incurred in connection with D & D's Chapter 11 bankruptcy filing. *(Id.* at 5-6.) The report, however, does not explain how or why the damages were grouped into these six elements. Also, the dollar amounts of damages provided in each category are not "complete and detailed," but rather are "vague and sketchy."

The dollar amounts for excess expenses, loss of bonding capacity, and legal and professional fees are incomplete or not up to date. With respect to excess expenses, the report indicates that $1,175,755.00 in excess expenses have been identified to date, but that Simonds and Federstein are in the process of working with D & D and its outside accountants to identify excess expenses. *(Id.* at 6.) There is, however, no explanation as to what is considered an excess expense, what expenses are included in the $1,175,755.00 figure, or how that figure was calculated. *(Id.)* The same is true of damages attributed to the loss of bonding capacity.

The report indicates that the firm is working with D & D and outside accountants to determine what jobs D & D might have lost due to its lack of bonding capacity, but that "damages are expected to exceed $100,000.00." *(Id.* at 8.) In the bankruptcy expenses category, there is not even a preliminary estimate as to the fees incurred. The amount of damages related to the Board's alleged conversion is also incomplete because Simonds and Federstein have not verified the amounts that D & D reported. *(Id.)* Finally, no overall total damages amount is provided.

The report, as required by Rule 26, does list the items that were relied upon in compiling the report, and Simonds and Federstein's qualifications, including when they have testified in previous cases. The report, however, lacks information regarding what compensation the experts are receiving for the report and testimony. Based on the profiles provided, it is also uncertain whether the experts have authored any publications. *(Id.* at 11-12.) Overall, most of the damage assessments provided in the Simonds Report are incomplete, and at least one required element is absent. It, therefore, was not clearly erroneous for the Magistrate Judge to conclude that the Simonds Report failed to comply with Rule 26.

*6 D & D has the burden to demonstrate that the failure to comply with Rule 26 was substantially justified or harmless. D & D argues on appeal that " the extensiveness of the defendant's own research in which they (unsuccessfully) sought to find persuasive authority for their motions to preclude and the thoroughness of the plaintiff's responsive brief demonstrates the legitimacy of the plaintiff's position." (D & D Br., at 9.) In its brief opposing the motion to preclude, D & D does not concede that the Simonds Report is a preliminary report, but emphasizes that the Board will not be prejudiced because the Simonds Report is an initial report that will be supplemented. (D & D Br. in Opp'n to Mot. to Preclude, at 6, 15.) D & D does not offer other justifications in this appeal.

D & D has not satisfied its burden of demonstrating that the Simonds Report's failure to comply with Rule 26 was substantially justified or harmless. The extent of research done relating to the motion to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2006 WL 1644742 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

preclude does not explain or provide justification for the incomplete damage totals or absence of information in the Simonds Report. The scheduling order required that "Plaintiff's expert reports on all liability and damages shall be served no later than July 15, 2005. No expert may testify at the time of trial as to any opinions ... not substantially disclosed in any report." (3-14-05 Scheduling Order.) Reasonable persons could not differ as to what the scheduling order required. While the Simonds Report was an "initial" report, Rule 26 indicates that expert reports are to be a "complete statement." The fact that D & D stated that the report would be supplemented does not cure the deficiencies. As recognized in *Sierra Club*, allowing supplementary disclosures is not intended to provide an extension of the deadline for the "lion's share" of expert disclosures. *See Sierra Club*, 73 F.3d at 571.

"A party may not simply retain an expert and then make whatever disclosures the expert is willing or able to make notwithstanding the known requirements of Rule 26." *Nguyen*, 162 F.R.D. at 681. "[I]t is no longer acceptable to wait until the last minute to retain and prepare experts. Counsel must be prepared to provide full and meaningful disclosure and discovery at the times required by the rules of procedure and the pretrial scheduling order." *Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 506 (D.Md.1997). The scheduling order initially provided the parties four months to submit their expert reports. At D & D's request the time period was extended to five months. (*See* 3-14-05 Order; 6-27-05 Order.)

D & D argues that many of its "business records" are unavailable to it because they are locked in D & D's trailer that was seized by the Board in February 2003. (D & D Br., at 5.) [FN2] The unavailability of " business records" that pre-date February 2003, however, does not account for the incomplete figures relating to the damages incurred as a result of D & D's bankruptcy filing or legal fees because those fees were incurred after the seizure of the trailer. Also, it is unclear exactly what documents are being referred to as unavailable due to the seizure, and whether they are documents that are necessary to calculate the other elements of damages. The report only indicates that Simonds

and Federstein are working with D & D personnel and D & D's outside accountants to calculate the incomplete figures. (Simonds Report, at 6-8.)

> FN2. The Simonds Report itself does not specifically indicate that this is the reason for the incomplete figures. The report in the "Background" section that narrates how the cause of action against the Board arose states "[t]hey [the Board] seized D & D's project records and other documents." (Simonds Report, at 4.)

*7 D & D also has not demonstrated that the omissions from the Simonds Reports were harmless. As recognized in *Adams*, the insufficiency of the report has deprived the Board of relevant information relating to damages. The Board has also incurred fees and costs to ensure that the D & D's expert report complied with Rule 26. *See Adams*, 29 F.3d at 873-74. "The omission in most reports of the basis and reasons for the opinions is hardly harmless. Nothing causes greater prejudice than to have to guess how and why an adversarial expert reached his or her conclusion." *Reed*, 165 F.R.D. at 430.

### B. The Penalty Imposed

This Court determines that the Magistrate Judge's decision to preclude the Simonds Report was not clearly erroneous. The Magistrate Judge, therefore, had discretion to impose sanctions pursuant to Rule 37.

### 1. Provision for Attorney Fees

The Magistrate Judge pursuant to Rule 37 precluded the Simonds Report, provided D & D with time to submit a new report, and directed D & D to pay the attorney fees incurred by the Board as a result of the motion to preclude. As discussed *supra*, Rule 37 provides the Court with discretion to craft an appropriate remedy, including the award of attorney fees and costs when parties have failed to comply with Rule 26.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 7

Not Reported in F.Supp.2d, 2006 WL 1644742 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

There was no abuse of discretion on the part of the Magistrate Judge in awarding attorney fees. As acknowledged in the Advisory Committee's Notes to Rule 37, and accompanying case law, preclusion of evidence is a harsh remedy. The Magistrate Judge recognized that the complete preclusion of a damages report in this action would be severe and " tantamount to summary judgment." (11-23-05 Order, at 2.) The Magistrate Judge, therefore, devised a sanction that would address the deficiency of the Simonds Report without creating an unfair advantage for the Board. Permitting the submission of a new report cures the prejudice to the Board that would result from incomplete information, but does not impair D & D's ability to present evidence on an important aspect of its case. Providing fees for the Board, compensates it for the expenses incurred to secure adequate discovery. *See e.g, Fitz Inc.,* 174 F.R.D. at 591 (awarding attorney fees related to a discovery dispute in lieu of excluding evidence because exclusion would be a "severe sanction" and because the Rule 26 violation was substantially justified"); *Reed,* 165 F.R.D. at 431 (ordering defendants to bear the costs of expert depositions incurred by the plaintiffs, but not barring the testimony of those experts).

D & D argues that the Board should not be awarded attorney fees because the Board's motion failed in its fundamental purpose; precluding D & D from presenting damages evidence. (D & D Br., at 7 .) The Board's motion sought "to preclude this report [the Simonds Report] and all expert testimony based thereon," and any expert evidence on the issue of damages. (Board Br. in Supp. of Mot. to Preclude, at 2, 27.) The Board did succeed in precluding the Simonds Report as evidence of damages. The Magistrate Judge's decision to allow D & D to submit a new report did not make the Board less successful, but rather was necessary to prevent an unfairly harsh result to D & D, and to ensure that this case would be "tried on the merits." *(See* 11-23-05 Order, at 2.)

### 2. Amount of the Fees

**\*8** The party seeking attorney fees has the burden to show that the request for fees is reasonable. *Rode v.*

*Dellaciprete,* 892 F.2d 1177, 1183 (3d Cir.1990); *Mosaid Techs. Inc. v. Samsung Elecs. Co.,* 224 F.R.D. 595, 596 (D.N.J.2004). It must submit evidence stating the hours worked and the rates claimed. *Id.* The opposing party then has the burden to challenge the reasonableness of the requested fee, by affidavit or brief, with sufficient specificity to give notice. *Bell v. United Princeton Props., Inc.,* 884 F.2d 713, 715 (3d Cir.1989). The Court cannot "decrease a fee award based on factors not raised at all by the adverse party." *Id.* at 720; *Rode,* 892 F.2d at 1183.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* (internal quotes omitted). Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary. *Id.* The Court may reduce the hours claimed when (1) the hours are not adequately documented, (2) a party is not successful on a particular matter, or (3) the matters on which the party was unsuccessful are distinct from those upon which the party did prevail. *Id.* To determine whether the hourly rate is reasonable the Court should look to the prevailing market rate in the relevant community, and the experience and skill of the attorney. *Id.*

The Magistrate Judge ordered D & D to pay the Board attorneys $22,530.00. (3-3-06 Order.) This Court reviews this award for abuse of discretion. *See* 28 U.S.C § 636(b)(1)(A); *Cipollone,* 785 F.2d at 1113. The Board attorneys, as directed by the November 2005 order, submitted a certification of services documenting the hours they spent in connection with the motion to preclude the Simonds Report, and the hourly rates charged by each attorney. (Dkt. entry no. 101.) The attorneys requested fees totaling $32,202.50. The Magistrate Judge awarded less than requested based on three determinations. First, the Magistrate Judge reduced the hourly rate of one of the attorneys because the attorney did not possess as much experience as another attorney that charged the same rate. (3-3-06 Order, at 2.) Second, the Magistrate Judge found that the amount of time spent on strategy, research, and writing was excessive, and reduced the reasonable hours expended accordingly. *(Id.)* Third,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2006 WL 1644742 (D.N.J.)
**(Cite as: Not Reported in F.Supp.2d)**

the Magistrate Judge found that the Board attorneys were not entitled to fees for hours spent analyzing D & D's expert reports because such analysis would have to be conducted regardless of the motion to preclude. *(Id.* at 3.)

D & D challenges neither a specific entry, nor the hourly rate on appeal, but argues that the March Order should be reversed because "the Board did not meet the burden of demonstrating the reasonableness of its hours and fees, given the rampant overbilling and over-staffing contained therein with no recognition that the motion was only successful in part." (D & D Br., at 11.) This Court determines that the Magistrate Judge's award of attorney fees was not clearly erroneous or contrary to law. The Magistrate Judge, consistent with *Rode,* considered the reasonableness of the hourly rate charged, the hours expended, and the degree of success of the motion and adjusted the original request accordingly.

*\*9* The March Order, however, will be modified in one respect. The order recognizes that the Board attorneys' original request was $32,202.50. The total reduction in fees made by the Magistrate Judge was $10,060.00. Subtracting $10,060.00 from $32,202.50 yields a total fee award of $22,142.50. The body of the March Order reflects this amount in the "total fees awarded" column. (3-3-06 Order, at 4.) The final sentence of the order, however, reads " IT IS on this 3rd day of March 2006 ORDERED that Plaintiff shall pay Defendants reasonable attorneys' fees ... in the amount of $22,530.00." *(Id.)* The discrepancy in the two numbers is not explained. The proper amount of fees to be awarded to the Board attorneys therefore is $22,142.50 because it is the difference between the total amount requested and the deductions specifically enumerated in the body of the order.

### CONCLUSION

The Magistrate Judge, in deciding the motion to preclude, was vested with discretion to impose sanctions pursuant to Rule 37. The Magistrate Judge's order here was reasoned and not clearly erroneous. This Court, therefore, is not inclined to

reverse the Magistrate Judge's decision to award attorney fees to the Board.

The Court, for the reasons stated *supra,* will affirm and modify the March 3, 2006, order of the Magistrate Judge. The Court will issue an appropriate order.

D.N.J.,2006.
D&D Associates, Inc. v. Board of Educ. of North Plainfield
Not Reported in F.Supp.2d, 2006 WL 1644742 (D.N.J.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.