IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MBIA INSURANCE CORPORATION, et al.,<br>　　Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>ROYAL INDEMNITY COMPANY,<br>　　Defendant/Counterclaim Plaintiff. | C.A. No. 02-1294-JJF |
| CHARLES A. STANZIALE, JR., Ch. 7 Trustee,<br>　　Plaintiff,<br><br>v.<br><br>PEPPER HAMILTON LLP, et al.,<br>　　Defendants. | C.A. No. 04-1551-JJF |
| CHARLES A. STANZIALE, JR., Ch. 7 Trustee,<br>　　Plaintiff,<br><br>v.<br><br>McGLADREY & PULLEN LLP, et al.,<br>　　Defendants. | C.A. No. 05-72-JJF |
| ROYAL INDEMNITY COMPANY,<br>　　Plaintiff,<br><br>v.<br><br>PEPPER HAMILTON LLP, et al.,<br>　　Defendants. | C.A. No. 05-165-JJF |

**MEMORANDUM OF ROYAL INDEMNITY COMPANY
IN SUPPORT OF EMERGENCY MOTION FOR LEAVE
TO REPLACE STRICKEN EXPERT WITNESSES**

ASHBY & GEDDES
Lawrence C. Ashby (#468)
Philip Trainer, Jr. (#2788)
Tiffany L. Geyer (#3950)
Andrew D. Cordo (#4534)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19899
(302) 654-1888
(302) 654 2067 (Fax)

SONNENSCHEIN NATH & ROSENTHAL LLP
Michael H. Barr
Alan S. Gilbert
John Grossbart
Kenneth J. Pfaehler
1221 Avenue of the Americas
New York, New York 10020-1089
(212) 768-6700
(212) 768-6800 (Fax)

*Attorneys for Royal Indemnity Company*

May 29, 2007

# Table of Contents

**Page**

Table of Contents ..................................................................................................................... i
Table of Authorities ................................................................................................................ ii
INTRODUCTORY STATEMENT ......................................................................................... 1
NATURE AND STAGE OF PROCEEDINGS AND STATEMENT OF FACTS ................... 2
    A.    The Stricken Expert Testimony ................................................................................. 2
    B.    The Motion to Strike ................................................................................................. 3
    C.    The Court's May 25 Memorandum Order ................................................................ 4
    D.    Pepper Now Refuses To Agree To Substituting New Experts .................................. 4
ARGUMENT ............................................................................................................................ 5
    Royal Should Be Given Leave to Substitute New Experts ............................................... 5
        1.    Precluding Any Expert Testimony On Pepper's Professional Responsibilities Would Not Be A Sanction Tailored to the Harm ............................................ 5
        2.    The Harm Has Been Mitigated By Striking The Three Experts .............................. 6
        3.    Preventing Replacement Experts Would Be Fundamentally Unfair ....................... 6
        4.    There Is No Harm to Defendants In Allowing New Experts .................................. 8
        5.    Denying Leave to Replace the Experts Is Too Extreme A Sanction ...................... 9
CONCLUSION ........................................................................................................................ 9

25203536\V-5

# TABLE OF AUTHORITIES

## CASES

**Page**

*ABB Air Preheater Inc. v. Regenerative Envtl. Equip. Co.*, 167 F.R.D. 668 (D.N.J. 1996)........5, 7

*Borden v. Ingersoll-Rand Co.*, 2003 WL 21488511 (E.D. Pa. Jan. 17, 2003)................9

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)................5

*DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193 (3d Cir. 1978)................9

*DiFlorio v. Nabisco Biscuit Co.*, 1995 WL 710592 (E.D. Pa. Nov. 13, 1995)................9

*Fitz Inc. v. Ralph Wilson Plastics Co.*, 184 F.R.D. 532 (D.N.J. 1999)................5

*Irwin Seating Co. v. International Bus. Machs. Corp.*, No. 1:04-CV-568, 2006 WL 3446584, 2007 WL 518866 (W.D. Mich. 2007)........................*passim*

*Landon v. Hunt*, 938 F.2d 450 (3d Cir. 1991)................5

*Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894 (3d Cir. 1977)................9

*Newman v. GHS Osteopathic Inc.*, 60 F.3d 153 (3d Cir. 1995)................5, 7

*In re Paoli RR Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994)................7, 9

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984)................5

*Republic of the Philippines v. Westinghouse Electric Corp.*, 43 F.3d 65 (3d Cir. 1994)................5

*Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76 (3d Cir. 1994)................7

*In re TMI Litig.*, 922 F. Supp. 997 (M.D. Pa. 1996)................9

*Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487 (D. Del. 2005)................9

*Upchurch v. Hester*, No. Civ. A. 05-252, 2006 WL 3020772 (D. Del. Oct. 23, 2006)................8

Plaintiff Royal Indemnity Company ("Royal") submits this memorandum in support of its motion for leave to replace expert witnesses Nancy Moore and Steven Schwarcz, whose reports were stricken and testimony precluded by order of this Court on May 25, 2007, because they had received statements exchanged by four of the parties to these actions during a mediation.

## INTRODUCTORY STATEMENT

Last Friday this Court entered an order striking the expert reports and precluding the testimony of Professors Nancy Moore and Steven Schwarcz, expert witnesses for Royal and plaintiff Charles A. Stanziale, Jr., Chapter 7 Trustee of Student Finance Corporation (the "Trustee"), and Douglas Branson, an expert witness for the Trustee. The Court took this step because these three experts had received the mediation statements of defendants exchanged by Pepper Hamilton LLP and W. Roderick Gagne in his capacity as an attorney at Pepper Hamilton LLP (collectively, "Pepper") and defendants Robert L. Bast, Pamela Bashore Gagne, W. Roderick Gagne as Trustee of the Brennan Trusts, and the Brennan Trusts (collectively, the "Gagne/Bast family trust defendants") with Royal and the Trustee.

In its opposition to the motion, Royal requested sufficient time to find replacement experts and to file replacement reports. Pepper filed a reply to Royal's opposition in which Pepper did not oppose Royal's request. The Court did not address Royal's request in its May 25 Order.

Seeking to turn Royal's now-sanctioned mistake into a tactical advantage for itself, Pepper now refuses to accede to replacement experts. Pepper takes this position despite that it has not sought to exclude the subject matters of the testimony, and that the harm from showing the three experts the mediation statements has been fully mitigated by the exclusion of their testimony.

We know of no authority that would deny replacement experts when the harm has been rectified this early in the expert discovery period and this long before trial. This is particularly the case where, as here, Royal and the Trustee otherwise will be left without experts to address key aspects of the rules of professional responsibility and standards of care applicable to Pepper's conduct. Even the *Irwin* case Pepper relied upon in its motion recognized that the "striking of experts is itself a harsh sanction" and allowed the Plaintiffs to "engage new experts." *Irwin Seating Co. v. Int'l Bus. Machs. Corp.*, No. 1:04-CV-568, 2007 WL 518866, at *6 (W.D. Mich. 2007).

Denying replacement experts would convert the sanction this Court imposed last Friday from one that is proportionate to the harm into one that excludes expert evidence on elements of plaintiffs' cases against Pepper, and therefore is no longer proportionate to the harm. Denying Royal and the Trustee expert testimony on the rules of professional responsibility and standards of care applicable to Pepper's conduct would be fundamentally unfair to Royal and the Trustee. Therefore, Royal requests that it be permitted to replace Professors Moore and Schwarcz, and be allowed until June 15, 2007, to submit expert reports for the replacement experts.

## NATURE AND STAGE OF PROCEEDINGS AND STATEMENT OF FACTS

### A.    The Stricken Expert Testimony

On May 7, 2007, Royal and the Trustee served their expert reports in this action. Included were reports from Professor Nancy Moore, Steven Schwarcz and Douglas Branson.[1] Professor Nancy Moore's report sets forth two opinions (one on behalf of the Trustee and Royal jointly, and another on behalf of the Trustee alone), which address the rules of professional

---

[1]    The three expert reports at issue were attached as exhibits 1, 2 and 3, respectively, to the Declaration of John Grossbart, dated May 22, 2007, submitted in opposition to the motion to strike (Case 05-165 D.I. 486, cited herein as "Grossbart decl.").

- 3 -

responsibility and standards of care applicable to Pepper's conduct. (Grossbart decl. ex. 1). Professor Schwarcz's report also contains two opinions. One relates solely to Royal's and the Trustee's claims against Pepper and the applicable standard of care; the other opines about industry standards, customs and practices applicable to assessing the reasonableness of Royal's due diligence and reliance, and is not limited to Pepper. (*Id.* ex. 2, sections 2 & 3). Professor Douglas Branson has submitted an expert report on behalf of the Trustee that deals with certain of the Trustee's claims against Pepper and the standard of care applicable to Pepper. (*Id.* at ex. 3).

### B. The Motion to Strike

On May 11, 2007, Pepper moved to strike the expert reports and preclude the testimony of Professors Moore, Schwarcz and Branson because they had received the parties' mediation position statements. The motion provided for a hearing date of June 1, 2007.

Counsel for Pepper conferred with counsel for Royal and requested that Royal agree to expedite the motion. Royal agreed to expedite the briefing and hearing on the motion because Royal would need to move quickly to replace the experts if Pepper's motion were granted.

On May 14, 2007, defendants Freed Maxick & Battaglia CPAs PC, Freed Maxick Sachs & Murphy, P.C., McGladrey & Pullen, LLP, and Michael Aquino (collectively, the "Accountant Defendants") joined Pepper's motion, but solely as to the expert report and testimony of Professor Schwarcz that touches upon Royal's claim against them, recognizing that Professors Branson and Moore (and, necessarily, Professor Schwarcz's Pepper-related opinion) did not offer opinions relevant to the Accountant Defendants. On May 15, 2007, the Gagne/Bast family trust defendants joined the motion.

On May 18, 2007 this Court held a conference to set a schedule for the motion. At the conference, counsel for Pepper represented that Pepper would waive its reply on the motion if the schedule were expedited.

On May 22, Royal submitted its brief in opposition to the motion. In addition to opposing the motion, Royal requested that, if the Court should determine to strike the experts, Royal be afforded "sufficient time to find replacement experts and to file replacement reports."

On May 23, in contravention of its waiver, Pepper submitted a reply brief. The reply did not oppose Royal's request to be permitted time to find replacement experts and file replacement reports.

On May 24, the Accountant Defendants also filed a reply. They, too, did not oppose Royal's request to be permitted time to find replacement experts and file replacement reports.

### C. The Court's May 25 Memorandum Order

On May 25, the Court issued its Memorandum Order. The Court found that "Plaintiffs have exposed three of their testifying experts to confidential mediation statements made by Defendants. By doing so, Plaintiffs have introduced to the adjudicative process matters that are supposed to be shielded from the Court. Therefore, the Court concludes that the expert reports must be stricken and the testimony excluded."

The Court also granted the defendants' oral request to extend deadlines for submission of expert reports, requiring submission of a revised Case Management Order no later than Wednesday, May 30, 2007.

### D. Pepper Now Refuses To Agree To Substituting New Experts

After receiving the Order, Royal reached out to counsel for Pepper and requested a phone call to "discuss with you dates for our substitute experts' reports and for your expert reports." In a May 26, 2007 e-mail and in a May 29, 2007 telephone conference, Pepper counsel took the

position that "the Court has ruled," and Pepper does not agree that Plaintiffs may "replace" their experts.

## ARGUMENT

### Royal Should Be Given Leave to Substitute New Experts

**1. Precluding Any Expert Testimony On Pepper's Professional Responsibilities Would Not Be A Sanction Tailored to the Harm**

This Court's order was entered pursuant to its inherent powers. A "primary aspect" of a district court's discretion when exercising its inherent powers "is the ability to fashion an *appropriate* sanction." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)(emphasis added). As the Third Circuit has explained:

> [H]aving evaluated the conduct at issue, the district court must specifically consider the range of permissible sanctions and explain why less severe alternatives to the sanction imposed are inadequate or inappropriate. Although the court need not "exhaust all other sanctioning mechanisms prior to resorting to its inherent power", the court must explain why it has chosen any particular sanction from the range of alternatives it has identified.

*Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74-75 (3d Cir. 1994), quoting *Landon v. Hunt*, 938 F.2d 450, 454 (3d Cir. 1991), and citing *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984).

Sanctions should be commensurate with the violation. *Newman v. GHS Osteopathic Inc.*, 60 F.3d 153, 156 (3d Cir. 1995); *Fitz, Inc. v. Ralph Wilson Plastics Co.*, 184 F.R.D. 532, 536 (D.N.J. 1999). A "district court may be found to have abused its discretion" if its "exclusion of testimony results in fundamental unfairness in the trial of the case." *Newman*, 60 F.3d at 156; *ABB Air Preheater Inc. v. Regenerative Envtl. Equip. Co.*, 167 F.R.D. 668, 672 (D.N.J. 1996).

### 2. The Harm Has Been Mitigated By Striking The Three Experts

The lodestar for the Court, then, is to tailor the narrowest possible remedy for the harm done. The Court identified the harm it found to have occurred. "Plaintiffs have exposed three of their testifying experts to confidential mediation statements made by Defendants. By doing so, Plaintiffs have introduced to the adjudicative process matters that are supposed to be shielded from the Court." (Mem. Order at 4). To remedy that harm, the Court concluded "that the expert reports must be stricken and the testimony excluded." (*Id.*).

Striking the expert reports for Professors Moore, Schwarcz and Branson and precluding their testimony removed from the adjudicative process the matters that were supposed to be shielded from the Court. This sanction is all that is needed to remedy any harm to Pepper and the Gagne/Bast family trust defendants. Substituting replacement experts to testify on the subject matters covered by the three excluded experts does not reintroduce the confidential matters into the adjudicative process. At this very early stage of the expert discovery period, and still over four and a half months before trial, substituting replacement experts does no one any harm.

### 3. Preventing Replacement Experts Would Be Fundamentally Unfair

If substitution of new experts is not permitted, however, Royal and the Trustee will be severely prejudiced. They will be left with no experts to address key aspects of the rules of professional responsibility and standards of care applicable to Pepper's conduct. Denying replacement experts converts the sanction imposed from one proportionate to the harm to one that excludes expert evidence on elements of plaintiffs' cases.

Other courts facing this issue have permitted replacement experts. Most strikingly, *Irwin Seating Co. v. Int'l Bus. Machs. Corp.*, No. 1:04-CV-568, 2006 WL 3446584 (W.D. Mich. 2006)

& 2007 WL 518866 (W.D. Mich. 2007), the case that Pepper's motion relied almost exclusively upon, permitted replacement experts, even though trial was nigh.

> The Court has reviewed the totality of the circumstances and finds that a complete denial of expert witnesses would be an excessive sanction, not warranted by the Plaintiff's conduct. The harm to Defendants is fully mitigated by the exclusion of the testimony of those experts exposed to the confidential information. The striking of experts is itself a harsh sanction and should not be made greater by the exclusion of all expert evidence in support of Plaintiff's case. Accordingly, notwithstanding the late stage of these proceedings, the Court will permit Plaintiff to engage new experts.

*Irwin*, 2007 WL 518816, at *6.

As in *Irwin*, so too here, the striking of Royal's experts is already a harsh sanction, and should not be made greater by the exclusion of all expert evidence on Pepper's professional responsibilities and standards of care. Such a result would be "substantially unfair" to Royal, when the lesser sanction of excluding Professors Moore, Schwarcz and Branson has already removed any potential for harm to the defendants. *Cf. Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994). Evidence may not be excluded when exclusion results in "fundamental unfairness" to a party. *Newman*, 60 F.3d at 156; *ABB Air Preheater Inc.*, 167 F.R.D. at 672.

The effect of not allowing replacement of the experts would be to exclude expert testimony altogether on the subject matters of their reports. Exclusion of all expert testimony on these subject matters would fundamentally undermine plaintiffs' ability to try their cases against Pepper. Where prejudice is minimal, it is error to exclude evidence. *In re Paoli RR Yard PCB Litig.*, 35 F.3d 717, 792-93 (3d Cir. 1994), *cert. denied*, 513 U.S. 1190 (1995).

#### 4. There Is No Harm to Defendants In Allowing New Experts

By contrast, there is no harm to the defendants from permitting Royal and the Trustee to substitute new experts. This motion is necessary because such expert reports would be submitted outside of the time allowed by First Amended Case Management Order # 1. But this Court has already ruled that there is a need for a new schedule, and requested defendants to submit one. The only reason a new schedule is needed is to address the further delay for defendants in submitting their own expert reports because of the time needed to replace plaintiffs' stricken experts. Otherwise there would be no need to reschedule, because the Court already has given defendants additional time to ameliorate the delay stemming from Pepper's original motion. Certainly the defendants do not need more time than originally contemplated in the case management order to prepare reports in response to the non-stricken plaintiff experts, as they have already had more time than contemplated in the case management order. Moreover, Royal acquiesced in expediting Pepper's motion in order to minimize the delay that would ensue if the motion were granted.

The circumstances here, in fact, present far less scheduling impact than those in other cases where substitution of experts has been permitted. For instance, in *Upchurch v. Hester*, No. Civ. A. 05-252, 2006 WL 3020772 (D. Del. Oct. 23, 2006), this Court found harmless the plaintiff's failure to provide an expert report as required under the scheduling order, when the plaintiff committed to providing a report by mid-November and the pre-trial conference was not scheduled until January. *Id.* This Court in *Upchurch* also observed that the defendants had been aware throughout the discovery period of the subject matter of the expert's testimony. *Id.* So too here; Pepper has been aware of Royal's positions concerning Pepper's professional responsibilities and standards of care throughout discovery and, with the Moore and Schwarcz reports in hand, are fully aware of the subject matter of the replacement reports.

Similarly, the Third Circuit found reversible error in excluding expert testimony when, as here, there was only a slight deviation from pretrial requirements, there were 60 days left to depose the expert after disclosure, and admitting the witness "was likely to cause only slight prejudice to the defendants, who were already aware of the basic substance of the witness' testimony." *In re Paoli RR Yard PCB Litig.*, 35 F.3d at 792, *citing DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1202 (3d Cir. 1978).

### 5. Denying Leave to Replace the Experts Is Too Extreme A Sanction

This Court is mindful that the "exclusion of critical evidence is an 'extreme sanction,' not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." *Tracinda Corp. v. DaimlerChrysler AG*, 362 F. Supp. 2d 487, 506 (D. Del. 2005), *quoting Borden v. Ingersoll-Rand Co.*, 2003 WL 21488511, at *2 (E.D. Pa. Jan. 17, 2003), and *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977). Denying this motion means that Royal would suffer precisely that extreme sanction. The Third Circuit has "has been reluctant to approve the exclusion of testimony unless a party has (1) revealed previously undisclosed testimony when trial was either imminent or in progress, or (2) acted in bad faith." *In re TMI Litig.*, 922 F. Supp. 997, 1003-04 (M.D. Pa. 1996), *rev'd in part on other grounds*, 193 F.3d 613 (3rd Cir. 1999), *quoting DiFlorio v. Nabisco Biscuit Co.*, No. Civ. A 95-0089, 1995 WL 710592, at *2 (E.D. Pa. Nov. 13, 1995). Trial is neither imminent nor in progress, and Royal did not act in bad faith.

### CONCLUSION

Pepper seeks to prevent Royal and the Trustee from substituting experts to opine on the subjects that were addressed in the stricken reports of Professors Branson, Moore and Schwarcz. In so doing, Pepper seeks to gain a tactical advantage from Royal's and the Trustee's mistake, for which they already have paid the penalty of losing three of their expert witnesses. If

replacement experts are not permitted, Royal and the Trustee will be deprived of *any* expert testimony on the rules of professional responsibility and standards of care applicable to Pepper's conduct, which are key components of Royal's and the Trustee's cases against Pepper. Denying replacement experts for Royal and the Trustee would be to convert the sanction from one proportionate to the harm to one that is extremely disproportionate and that would substantially prejudice the plaintiffs. For these reasons and all the reasons set forth herein, Royal requests leave to replace the stricken experts Moore and Schwarcz, and to be permitted until June 15, 2007 to file replacement expert reports.

Dated:  May 29, 2007

Respectfully submitted,

ASHBY & GEDDES

*/s/Philip Trainer, Jr.*
_____
Lawrence C. Ashby (#468)
Philip Trainer, Jr. (#2788)
Tiffany L. Geyer (#3950)
Andrew D. Cordo (#4534)
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19899
(302) 654-1888
(302) 654 2067 (Fax)

*Attorneys for Plaintiff
Royal Indemnity Company*

Michael H. Barr
Kenneth J. Pfaehler
SONNENSCHEIN NATH & ROSENTHAL LLP
1221 Avenue of the Americas
New York, New York 10020-1089
(212) 768-6700
(212) 768-6800 (fax)

- and -

Alan S. Gilbert
John I. Grossbart
SONNENSCHEIN NATH & ROSENTHAL LLP
7800 Sears Tower
233 S. Wacker Drive
Chicago, Illinois 60606
(312) 876-8000
(312) 876-7934 (fax)
181011.1