# ATTACHMENT 2a

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

CHARLES A. STANZIALE, JR.,
CHAPTER 7 TRUSTEE OF STUDENT
FINANCE CORPORATION

                Plaintiff,      :  MISC. NO.

    -against-

PEPPER HAMILTON LLP, ET AL

                Defendants.    :

------------------------------------------------------------------ x

RECEIVED
JAN 03 2007
U.S.D.C. S.D. N.Y.
CASHIERS

## MEMORANDUM OF LAW OF PEPPER HAMILTON LLP IN SUPPORT OF MOTION TO COMPEL DISCOVERY FROM NONPARTY MANDIANT CORPORATION

Kenneth R. Puhala
Jane H. Kauh
SCHNADER HARRISON SEGAL & LEWIS LLP
140 Broadway, Suite 3100
New York, New York 10005
(212) 973-8000

Of counsel:

Bruce P. Merenstein*
Stephen J. Shapiro*
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
(215) 751-2000

*Attorneys for Defendants
Pepper Hamilton LLP and Roderick Gagné*

*Not admitted in the United States District Court for
the Southern District of New York

PHDATA 1413807_2

## PRELIMINARY STATEMENT/FACTUAL BACKGROUND

Pepper Hamilton LLP ("Pepper") submits this Memorandum of Law in support of its motion pursuant to FRCP 34(c), 37 and 45 to compel nonparty Mandiant Corporation, f/k/a/ Red Cliff Consulting LLC ("Mandiant"), to produce documents responsive to a Subpoena *Duces Tecum* ("Subpoena") on a date and time set by the Court. The facts relevant to a disposition of this motion are set forth in the Declaration of Stephen J. Shapiro dated December 29, 2006, ("Shapiro Decl.") and the exhibits attached thereto. The following is a brief summary of the relevant facts.

On November 17, 2006, Pepper issued a Subpoena to Mandiant in an attempt to obtain documents stored on a computer server relevant to two litigations presently pending in the United States District Court for the District of Delaware – *Stanziale v. Pepper Hamilton LLP, et al.*, No. 04-1551 (D. Del) and *Royal Indemnity Company v. Pepper Hamilton LLP, et al.*, No. 05-165 (D. Del) (collectively, the "Pepper Cases"). Shapiro Decl. ¶ 2. The Pepper Cases were initiated by Charles A. Stanziale, Jr., Chapter 7 Trustee of SFC (the "Trustee"), and Royal Indemnity Company ("Royal"), an insurer that had issued credit risk insurance policies to SFC. The Pepper Cases allege (falsely) that Pepper was "general counsel" to Student Finance Corporation ("SFC"), a former client of the Pepper law firm now in bankruptcy, and that Pepper knew or should have known that SFC was engaged in fraudulent business practices.

On information and belief, as part of the liquidation of SFC's assets, the Trustee sold the computer server (the "Server") on which the documents in questions were stored to Student Loan Servicing LLC ("SLS"), an affiliate of SFC that the Trustee neither represents nor

controls. Shapiro Decl. ¶ 4. On information and belief, SLS subsequently ceased operations. Shapiro Decl. ¶ 10.

In 2004, in connection with discovery in an adversary proceeding that the Trustee had initiated against Royal (and to which Pepper was not a party), Royal, on information and belief, hired Mandiant, a technology consulting firm, to analyze and extract certain documents from the Server. Shapiro Decl. ¶¶ 3-6. Mandiant obtained a copy of the Server for processing, and, on information and belief, retained and still possesses today a copy of the entire Server. Shapiro Decl. ¶ 6.

The Server likely contains documents highly relevant to the Pepper Cases. Because the Trustee claims that he no longer possesses the Server and because SLS is no longer in operation, Pepper took the only option remaining to it to acquire the documents on the Server; namely subpoenaing Mandiant to produce a copy of the Server. Shapiro Decl. ¶10. Mandiant, however, refused to comply with the Subpoena because of out-of-court confidentiality obligations it had undertaken when it was provided with a copy of the Server during the litigation between the Trustee and Royal. Shapiro Decl. ¶¶ 6, 11, Exhibit "B" thereto.[1]

---

[1] Mandiant's objection to the Subpoena was untimely. Pursuant to Rule 45(c)(2)(B), Mandiant was authorized to serve a written objection to the Subpoena within 14 days after service of the Subpoena. The Subpoena was served on November 21, 2006. Mandiant, therefore, was required to serve a written objection on or before December 5, 2006. Mandiant did not do so until December 11, 2006. Shapiro Decl. ¶ 11. *See Israel v. Carpenter*, 95 Civ. 2703, 2002 U.S. Dist. LEXIS 11792, at *3 (S.D.N.Y. June 28, 2002) (denying non-party's motion to quash a subpoena served upon it where non-party failed to comply with the 14 day time limitation in Rule 45(c)(2)(B)).

## ARGUMENT

1.    This Court Should Compel Mandiant To Comply With The Subpoena

Pursuant to FRCP 34(c), 37 and 45, Mandiant should be compelled to produce documents responsive to the Subpoena on a date and time set by the Court. FRCP 34(c) ("A person not a party to the action may be compelled to produce documents and things or submit to an inspection as provided in Rule 45."); *see also Atlantic Bank of New York v. Homeowners Financial Corp.*, No. 97 Civ. 1274, 1999 U.S. Dist. LEXIS 2982, at *17 (S.D.N.Y. March 15, 1999) (nonparty witness may be compelled to turn over documents pursuant to FRCP 34(c)). A party is entitled to discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party." FRCP 26. Nothing in the federal rules permits Mandiant to utilize the out-of-court confidentiality agreement that it entered into with other parties (not Pepper) as an excuse to avoid complying with the Subpoena.[2]

---

[2]    Although Rule 45(c)(3)(A) permits a party to move to quash or modify a subpoena that "requires disclosure of privileged or other protected matter [where] no exception or waiver applies," Mandiant did not avail itself of that procedure within the 14 days permitted. *See* note 1, *supra*. Nor could it have. First, there is no suggestion that any of the information on the Server is protected from disclosure by any privilege that belongs to Mandiant itself. Second, even assuming Mandiant could satisfy its burden of demonstrating that any documents on the Server are protected from disclosure by a privilege that belongs to some other party (and Mandiant has made no such showing), Mandiant would lack standing to invoke that privilege. *See Kuwait Inv. Auth. v. Sarrio S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) (holding that party opposing production of documents had no standing to invoke another party's attorney-client privilege).

In addition, the only party that conceivably could assert a privilege – the Trustee – has waived his right to do so. The 14 day time limit in Rule 45(c)(2)(B) applies with equal force to objections to document productions that are founded on the assertion of a privilege. *See DG Creditor Corp. v. Dabah (In re DG Acquisition Corp.)*, 151 F.3d 75, 81 (2d Cir 1998) ("Rule 45 contemplates assertion of all objections to document production within 14 days, including those based on the act of production privilege."). The 14 day time limitation applies to parties that seek to quash or modify a subpoena issued to a non-party. *See Schweizer v. Mulvehill*, 93 F. Supp. 2d 376, 412 (S.D.N.Y. 2000) (holding that party to underlying action waived objections to subpoena to a non-

Here, the information sought by Pepper is relevant to its defenses in the Pepper Cases and/or might lead to the discovery of admissible evidence in those matters. For example, the Trustee has alleged that Pepper was SFC's "general counsel" and therefore knew or should have known that SFC was engaging in fraudulent business practices. Discovery in the Pepper Cases, however, has demonstrated that other law firms performed substantial legal work for SFC, and the Server likely contains emails and other documents relating to that legal work. Pepper is clearly entitled to discovery of this information. The Trustee and Royal also falsely allege that Pepper was aware that SFC was engaging in fraudulent business practices. The Server may contain emails and other documents that will prove those allegations to be false.

So as to mitigate the costs that Mandiant may incur in complying with the Subpoena, Pepper will, at its own expense, provide Mandiant with an appropriate storage device onto which Mandiant can copy the data from the Server. Accordingly, Pepper requests that Mandiant be compelled to comply with the Subpoena.

---

party by failing to move to quash or modify the subpoena within 14 days of service of the subpoena). Therefore, the Trustee, who was served with a copy of the Subpoena on November 22, 2006, but who failed to file a motion to quash or modify the Subpoena within 14 days (and who has, to this day, not filed such a motion), has waived any objections to the Subpoena, including privilege objections.

## CONCLUSION

For the reasons set forth above, Pepper respectfully requests that this Court grant

the Motion in its entirety and grant any other relief that it deems just and proper.


Dated:   New York, New York
         December 29, 2006


                              Respectfully submitted,

                              SCHNADER HARRISON SEGAL & LEWIS LLP

                              By: _____
                                  Kenneth B. Puhala (KP-8104)
                                  Jane H. Kauh (JK-9298)
                                  140 Broadway, Suite 3100
                                  New York, New York 10005-1101
                                  (212) 973-8000

                              Of counsel:

                              Bruce P. Merenstein*
                              Stephen J. Shapiro*
                              1600 Market Street, Suite 3600
                              Philadelphia, Pennsylvania 19103
                              (215) 751-2000

                              *Attorneys for Defendants Pepper Hamilton
                              LLP and W. Roderick Gagné*


                              *Not admitted in the United States District
                              Court for the Southern District of New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- x
CHARLES A. STANZIALE, JR.,               :
CHAPTER 7 TRUSTEE OF STUDENT
FINANCE CORPORATION                      :

                          Plaintiff,    :    MISC. NO.

      -against-                          :

PEPPER HAMILTON LLP, ET AL              :

                    Defendants.    :
----------------------------------------------------------------- x

## DECLARATION OF STEPHEN J. SHAPIRO IN SUPPORT OF MOTION TO COMPEL DISCOVERY

Stephen J. Shapiro, an attorney admitted to practice before the Courts of the Commonwealth of Pennsylvania and the State of New Jersey, declares the following under the penalties of perjury pursuant to 28 U.S.C. § 1746:

    1.    I am an associate at Schnader Harrison Segal & Lewis LLP ("Schnader"), and counsel to Defendants Pepper Hamilton LLP ("Pepper") and W. Roderick Gagné. I submit this declaration in support of Pepper's motion to compel nonparty Mandiant Corporation, f/k/a Red Cliff Consulting, LLC ("Mandiant"), to produce documents responsive to a Subpoena *Duces Tecum* ("Subpoena") on a date and time set by the Court.

    2.    The Subpoena was issued to Mandiant in an effort to obtain discovery from it relevant to litigation currently pending in the United States District Court for the District of Delaware – *Stanziale v. Pepper Hamilton LLP, et al.*, No. 04-1551 (D. Del) and *Royal Indemnity Company v. Pepper Hamilton LLP, et al.*, No. 05-165 (D. Del). Mandiant was served with the Subpoena on November 21, 2006. Attached hereto as Exhibit "A" is a copy of the Subpoena and Proof of Service. To date, Mandiant has refused to comply with the Subpoena.

3.     Student Finance Corporation ("SFC"), a former client of the Pepper law firm, was a Pennsylvania corporation in the business of originating or acquiring and then securitizing student loans from truck driving schools. Bankruptcy proceedings against SFC were initiated in the United States Bankruptcy Court for the District of Delaware in 2002 and Charles A. Stanziale, Jr., was appointed to serve as bankruptcy trustee for SFC (the "Trustee").

4.     Prior to the bankruptcy, SFC owned several computer servers, one of which served as a repository for, among other data, emails to and from employees of SFC (the "Server"). Presumably as part of the Trustee's efforts to liquidate SFC's assets, the Server was sold at auction to an entity called Student Loan Servicing LLC ("SLS"), which was an affiliate of SFC not under the control of the Trustee. The data on the Server, including SFC's emails, was not removed from the Server before SLS took possession of it.

5.     In 2002, the Trustee filed an adversary action against Royal Indemnity Company ("Royal") alleging that Royal, which had issued credit risk insurance policies to SFC, had discovered that SFC was engaging in fraudulent business practices but had concealed that information and had attempted to prop-up SFC to avoid facing claims on its insurance policies. *See Stanziale v. Royal Indemnity Company*, Adv. No. 02-6803 (Bankr. D. Del.) (the "Royal Litigation"). The emails and other data on the Server presumably were potentially relevant to the issues in the Royal Litigation. However, the Trustee apparently took the position that some of the emails on the Server – such as emails between SFC and its attorneys (including Pepper) – theoretically might be protected from disclosure by the attorney-client privilege. The Trustee apparently was not willing to review all of the emails on the Server to determine which emails, if any, were in fact protected from disclosure by the attorney-client privilege. Accordingly, the Trustee and Royal reached a compromise whereby the Trustee, Royal and SLS agreed to have an

2

independent third party extract only the emails from the Server that were not sent to or by SFC's lawyers.

6.     Royal retained Mandiant, a technology consulting firm, to extract the emails from the Server. Pursuant to a written agreement between Royal, the Trustee and SLS, Mandiant was to program its extraction software in a fashion that would filter out all emails that were sent to or received from any email address that belonged to any of SFC's lawyers. *See* October 13, 2004 letter annexed to Exhibit "A." As part of this process, Mandiant agreed that it would not "disclose the contents of any files or other data located on the Servers to any person or entity other than Royal [through its lawyers], SFC [through its lawyers] and SLS [through its lawyers], or a judicial officer, unless required by law to do so." *Id.* at 2. After the agreement was put into place, Mandiant obtained a copy of the Server for processing, performed the extraction, and produced to Royal, the Trustee and SLS the thousands of emails that made it through the filtering software Mandiant applied. Mandiant also, on information and belief, retained and still possesses today a copy of the entire Server – not just the emails that made it through the filter. The Trustee and Royal subsequently settled the Royal Litigation.

7.     In November 2004, the Trustee sued Pepper for, among other things, professional malpractice and breach of fiduciary duty arising out of Pepper's representation of SFC. *See Stanziale v. Pepper Hamilton LLP, et al.*, No. 04-1551 (D. Del). In March 2005, Royal sued Pepper for, among other things, negligent and fraudulent misrepresentation in connection with the SFC transactions that Royal insured. *See Royal Indemnity Company v. Pepper Hamilton LLP, et al.*, No. 05-165 (D. Del). Both cases against Pepper (the "Pepper Cases") allege (falsely) that Pepper was SFC's "general counsel" and knew or should have known that SFC was engaging in fraudulent business practices.

3

8.      During discovery in the Pepper Cases, Royal produced the emails that Mandiant extracted from the Server. The Server, however, likely contains emails between SFC and its lawyers (including Pepper lawyers) that were not extracted because they were blocked by Mandiant's filtering software and, therefore, have never been produced in either the Royal Litigation or the Pepper Cases.

9.      These emails may be highly relevant to Pepper's defenses in the Pepper Cases and/or are likely to lead to the discovery of admissible evidence. For instance, the Trustee has alleged that Pepper was SFC's "general counsel" and therefore knew or should have known that SFC was engaging in fraudulent business practices. Discovery in the Pepper Cases has demonstrated, however, that other law firms performed substantial legal work for SFC and documents related to those other representations may be stored on the Server. Pepper is clearly entitled to discovery of those documents. The emails may also support Pepper's defense that it was unaware of SFC's fraudulent business practices. Therefore, Pepper asked the Trustee to produce any emails on the Server that were not previously produced. The Trustee responded that he did not possess the Server and, therefore, could not produce the missing emails.

10.     Because the Trustee claimed that he was not able to produce the emails in question and because SLS apparently is no longer in business, Pepper's only remaining option was to acquire the emails directly from Mandiant. Accordingly, on November 21, 2006, Pepper served a subpoena on Mandiant (a copy of the subpoena was also sent to counsel for Royal and the Trustee on November 22, 2006). The Subpoena directed Mandiant to produce the emails on the Server that were not produced during the Royal Litigation or, in the alternative, to produce the entire Server in the event that Mandiant did not maintain the withheld emails in a segregated file. *See* Exhibit "A" hereto.

4

11.    On December 11, 2006, the date on which the Subpoena commanded Mandiant to produce the documents in question, Mandiant wrote to counsel for Pepper and explained that it would not produce the data requested lest it be deemed in breach of the confidentiality agreement into which it had entered.  *See* Mandiant Letter attached hereto as Exhibit "B."  In response, counsel for Pepper pointed out that Mandiant's out-of-court agreement with Royal, the Trustee and SLS (to which Pepper was not a party) permitted Mandiant to produce the documents requested if "required by law to do so" and that Pepper's Subpoena was just such a legal requirement.  Pepper's counsel also explained that the out-of-court confidentiality agreement did not excuse Mandiant from its obligation to comply with the Subpoena and requested that Mandiant comply with it by December 20, 2006.  *See* Pepper Letter attached hereto as Exhibit "C."  To date, Mandiant has not produced the requested data.[1]

12.    As a result of its failure to comply with the Subpoena, Mandiant should be compelled to respond to the Subpoena on a date and time set by the Court.  If Mandiant fails to produce documents on the date and time set by the Court, appropriate sanctions should also be imposed, including a daily fine, until it produces such documents.

13.    No prior application for this or similar relief has been requested.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 29, 2006, in Philadelphia Pennsylvania.

STEPHEN J. SHAPIRO

---

[1]    Pepper will, at its own expense, provide Mandiant with an appropriate storage device onto which Mandiant can copy the data from the Server, so cost should not be an issue.

5

PHDATA 1413806_2

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
CHARLES A. STANZIAE, JR.,
CHAPTER 7 TRUSTEE OF STUDENT FINANCE CORPORATION

                             Plaintiff,              CASE NO.
                                                05-165 AND
          -against-                     04-1551

PEPPER HAMILTON LLP, ET AL
                                            AFFIDAVIT OF
                                              SERVICE
                        Defendants.
----------------------------------------------------------------X

STATE OF NEW YORK, COUNTY OF NEW YORK.  ss:

    **Robert Vick**, being duly sworn, deposes and says that he is not a party to the above action, is over 18 years of age, and resides in Brooklyn, New York.

    On **November 21, 2006**, at approximately 3:15**pm**, deponent served a **SUBPOENA AND COVER LETTER**, in the above captioned action upon **Mandiant**, at 1285 Avenue of the Americas, 35th Floor, New York, NY 10019, by delivering a true and correct copy of said documents to **Michael Malin/Manager**, who acknowledged that he was authorized to accept service on behalf of **Michael Malin**.

    **Mr. Malin's** approximate physical description is:

        RACE        :WHITE
        SEX         :MALE
        HAIR       :BROWN
        EYES       :BROWN
        HEIGHT     :6'1"
        WEIGHT     :200 LBS
        AGE         :40-45

                                    _Robert Vick_
                                      Robert Vick

Sworn to Before Me this
27th day of November, 2006.

NOTARY PUBLIC

Schnader400

RINA I. RAMOS, Notary Public
State of New York No. 01RA6002465
Qualified in Queens County
Certified in Queens County
Commission Expires Feb. 9, 2010

# Schnader
## ATTORNEYS AT LAW

1600 MARKET STREET  SUITE 3600
PHILADELPHIA, PA  19103-7286
215.751.2000   FAX 215.751.2205   schnader.com

November 17, 2006

Stephen J. Shapiro
Direct Dial 215-751-2259
E-mail: sshapiro@schnader.com

**VIA PERSONAL SERVICE**

Mandiant
1285 Avenue of the Americas, 35th Floor
New York, NY 10019

RE:  *Royal Indemnity Company v. Pepper Hamilton LLP, et al.,*
       *No. 05-165 (D. Del.)*
       *Stanziale v. Pepper Hamilton LLP, et al., No. 04-1551 (D. Del.)*

Dear Sir or Madam:

        This firm represents defendants Pepper Hamilton LLP and W. Roderick Gagné in the above-captioned actions. Information that we have obtained through discovery indicates that Mandiant, which we understand formerly operated under the name Red Cliff Consulting, LLC, may possess information relevant to the case. Therefore, we have enclosed a subpoena directing Mandiant to produce certain information that may be in its possession.

        Please do not hesitate to contact me if you have any questions or need any additional information.

                    Sincerely,

                    *Stephen Shapiro/deg*
                    Stephen J. Shapiro
        For SCHNADER HARRISON SEGAL & LEWIS LLP

Enclosure

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

SOUTHERN _____ DISTRICT OF _____ NEW YORK

Charles A. Stanziale, Jr.,
Chapter 7 Trustee of Student Finance Corporation

**SUBPOENA IN A CIVIL CASE**

V.

Pepper Hamilton LLP, et al.

Case Number:[1]  05-165 and 04-1551 (D. Del.)

TO:  Mandiant
1285 Avenue of the Americas, 35th Floor
New York, New York 10019

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attached Schedule

| PLACE   Schnader Harrison Segal & Lewis LLP<br>140 Broadway, Suite 3100, New York, New York 10005-1101 | DATE AND TIME<br>12/11/2006 10:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *[signature]* | 11/17/06 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Bruce P. Merenstein, Esquire
Schnader Harrison Segal & Lewis LLP, 1600 Market St., Ste 3600, Philadelphia, PA 19103 (215) 751-2249

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1)  A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)  (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B)  Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply with production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)  (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance,

(ii)  requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii)  requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)  subjects a person to undue burden.

(B)  If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1)  A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2)  When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the rummdemanding party to contest the claim.

## SCHEDULE OF DOCUMENTS

### Definitions

1.    "Red Cliff" means Red Cliff Consulting LLC, as well as its parents, subsidiaries, or affiliate companies, predecessors, successors, including Mandiant, agents, officers, directors, attorneys, employees, or representatives.

2.    "Royal" means Royal Indemnity Company and Royal & Sun Alliance, as well as their parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, and representatives.

3.    "Letter" means the October 13, 2004 letter from Marc J. Zwillinger to Brian Dykstra attached hereto.

4.    "Servers" shall have the same meaning as that term is defined in the Letter.

5.    All words and phrases shall be construed in accordance with normal custom and usage in the industries or field of commerce to which they apply.

6.    The connectives "and" and "or" are to be construed either disjunctively or conjunctively as necessary to bring within the scope of the request all responses that might otherwise be construed to be outside of its scope.

7.    The use of the singular form of any word includes the plural and vice versa.

PHDATA 1399225_1

## Document Request

All email messages from the Servers that were not provided to Royal pursuant to the instructions set forth in the paragraph numbered "1" in the Letter.

## Alternative Document Request

In the event Red Cliff is not able to comply with the request above without performing anew the procedures set forth in the Letter, Red Cliff shall produce a complete copy of the Servers.

**EXHIBIT B**

# Sonnenschein
SONNENSCHEIN NATH & ROSENTHAL LLP

Marc J. Zwillinger
202.408.9171
mzwillinger@sonnenschein.com

1301 K Street N.W.
Suite 600, East Tower
Washington, D.C. 20005
202.408.6400
202.408.6399 fax
www.sonnenschein.com

Chicago
Kansas City
Los Angeles
New York
San Francisco
Short Hills, N.J.
St. Louis
Washington, D.C.
West Palm Beach

October 13, 2004

<u>VIA FACSIMILE</u>

Brian Dykstra
Red Cliff Consulting LLC
111 South Fairfax Street
Alexandria, VA 22314

      Re:    Engagement Protocols

Dear Brian:

      As you know, Red Cliff's engagement by Royal Indemnity Company ("Royal") will involve the evaluation (phase I), restoration and preservation (phase II), and analysis and preparation (phase III) of three separate servers. Red Cliff will consult with Marc Zwillinger or Shane McGee at Sonnenschein Nath & Rosenthal LLP ("Sonnenschein") prior to beginning each phase, and Red Cliff will not begin a new phase without obtaining Sonnenschein's consent.

      As a part of this engagement, Red Cliff will access data owned by Student Finance Company through its Chapter 7 Trustee ("SFC"). This data is located on three servers: an EMC server with a 40-drive RAID array; a file server with a small RAID array; and a small Exchange server (collectively, the "Servers"). The latter two servers are owned or controlled by Student Loan Servicing, LLC ("SLS"). Red Cliff will access the SLS-owned Servers outside of SLS' normal business hours and will observe any other reasonable requests made by SLS with respect to Red Cliff's onsite activities.

      Red Cliff's activities in performing the work pursuant to this retention will follow the attached Statement of Work. In addition, at all times Red Cliff will adhere to the following protocol in connection with this engagement:

      1.     There are three categories of information that *must not* and *will not* be provided to Sonnenschein or its client Royal:

          A.     Any and all email messages (along with any attachments thereto) in which an address in either or both of the "TO:" and/or "FROM:" fields (but not including the "CC:" field) contain any of the email addresses on the attached Schedule A; and



Brian Dykstra
October 13, 2004
Page 2

     B.     Any file or other data that was initially created after September 29, 2003.

2.     Red Cliff shall not, under any circumstances, disclose the contents of any files or other data located on the Servers to any person or entity other than Royal (through Sonnenschein), SFC (through Dilworth Paxson), SLS (through Saul Ewing LLP), or a judicial officer, unless required by law to do so.

3.     After the acquisition phase, Red Cliff will provide to SFC (through the Trustee or his counsel) a single copy of all information acquired from the Servers in the same form and manner as such information was provided to Royal.

4.     Red Cliff will access the SLS-owned Servers outside of SLS' normal business hours and will observe any other reasonable requests made by SLS with respect to Red Cliff's onsite activities.

Please let me know if you have any questions.

               Sincerely,

               Marc J. Zwillinger

**Sonnenschein**
SONNENSCHEIN NATH & ROSENTHAL LLP

Brian Dykstra
October 13, 2004
Page 3

## SCHEDULE A

### Saul Ewing LLP Attorneys and Staff:

| | |
|---|---|
| Elizabeth Witmer | ewitmer@saul.com |
| Linda Richenderfer | lrischenderfer@saul.com |
| Suzanne Laumakis | slaumakis@saul.com |
| Chad Fitzgerald | cfitzgerald@saul.com |
| Christine Kovan | ckovan@saul.com |
| Chad Toms | ctoms@saul.com |
| Nicole Gicker | ngicker@saul.com |
| Derrick Lowe | dlowe@saul.com |
| Terri Pawelski | tpawelski@saul.com |
| David Falcone | dfalcone@saul.com |
| Chris Pippett | cpippett@saul.com |
| Mary Kay Christodoulou | mchristodoulou@saul.com |
| Colleen Nihill | cnihill@saul.com |
| John Royer | jroyer@saul.com |

### Pepper Hamilton LLP Attorneys and Staff:

| | |
|---|---|
| Abbott, Natalie S. | abbottn@pepperlaw.com |
| Abelson, Barry | abelsonb@pepperlaw.com |
| Adler, Matthew | adlerm@pepperlaw.com |
| Agran, Joan | agranj@pepperlaw.com |
| Allen, Eileen | allene@pepperlaw.com |
| Anderson, M. | andersonm@pepperlaw.com |
| Arnold, Joan | arnoldj@pepperlaw.com |
| Barberena, Irene | barberenai@pepperlaw.com |
| Barbour, Aisha | barboura@pepperlaw.com |
| Bassett, Rhonda | bassettr@pepperlaw.com |
| Battista, Julie | battistaj@pepperlaw.com |
| Beard, Glenn A. | beardg@pepperlaw.com |
| Bettinger, William C. | bettingerw@pepperlaw.com |
| Boericke, J. Bradley | boerickej@pepperlaw.com |
| Braun, George | braung@pepperlaw.com |
| Brookman, Andrew | brookmana@pepperlaw.com |
| Butler, Cinque | butlerc@pepperlaw.com |
| Cappaso, Jane | cappasoj@pepperlaw.com |
| Caputo, Jodi Simme | caputojs@pepperlaw.com |
| Cole, Thomas | colet@pepperlaw.com |

Sonnenschein
SONNENSCHEIN NATH & ROSENTHAL LLP

Brian Dykstra
October 13, 2004
Page 5

| | |
|---|---|
| Kohn, Debra E. | kohnd@pepperlaw.com |
| | kohnde@pepperlaw.com |
| Kopelman, Rena M. | kopelmanrm@pepperlaw.com |
| | kopelmanr@pepperlaw.com |
| Krepto, Laurie | kreptol@pepperlaw.com |
| Lane, Robert D. | laner@pepperlaw.com |
| Lawlor, James | lawlorj@pepperlaw.com |
| Leadbetter, Amanda | leadbettera@pepperlaw.com |
| Lee, Darcy | leed@pepperlaw.com |
| Lee, Joo Young | leejy@pepperlaw.com |
| Leone, Michael | leonem@pepperlaw.com |
| Liebman, Daniel S. | liebmand@pepperlaw.com |
| | liebmands@pepperlaw.com |
| Lindenfeldar, R. | lindenfeldarr@pepperlaw.com |
| Lisansky, Mary | lisanskym@pepperlaw.com |
| Lozoff, Gary | lozoffg@pepperlaw.com |
| Manwaring, Albert H. | manwaringa@pepperlaw.com |
| Marino, Carla | marinoc@pepperlaw.com |
| Matlock, Tracy | matlockt@pepperlaw.com |
| McDonald, Barbara | mcdonaldb@pepperlaw.com |
| McGrenrey, Sharon | mcgrenreys@pepperlaw.com |
| Moore, Darlene | moored@pepperlaw.com |
| Morais, Michael M. | moraism@pepperlaw.com |
| | moraismm@pepperlaw.com |
| Naylor, Joseph | naylorj@pepperlaw.com |
| Pace, M. | pacem@pepperlaw.com |
| Pang, Juliana | pangj@pepperlaw.com |
| Perez, Kimberly K. | perezk@pepperlaw.com |
| | perezkk@pepperlaw.com |
| Petkun, Lisa B | petkunl@pepperlaw.com |
| Pigeon, Jennifer M. | pigeonjm@pepperlaw.com |
| | pigeonj@pepperlaw.com |
| Proffitt, Leslie | proffittl@pepperlaw.com |
| Quirk, Marion | quirkm@pepperlaw.com |
| Reed, Michael H. | reedm@pepperlaw.com |
| Richardson, Shari | richardsons@pepperlaw.com |
| Robertson, Monica | robertsonm@pepperlaw.com |
| Rollins, Gene | rollinsg@pepperlaw.com |
| Rudolph, Andrew | rudolpha@pepperlaw.com |
| Ruggiero, Christopher A. | ruggieroca@pepperlaw.com |
| | ruggieroc@pepperlaw.com |

Sonnenschein
SONNENSCHEIN NATH & ROSENTHAL LLP

Brian Dykstra
October 13, 2004
Page 6

| | |
|---|---|
| Schless, Adam | schlessa@pepperlaw.com |
| Schneider, Shari | schneiders@pepperlaw.com |
| Schwartz, Mindy E. | schwartzme@pepperlaw.com |
| Serritella, Joseph S. | serritellaj@pepperlaw.com |
| Shea, Kathleen Ballay | sheaballayk@pepperlaw.com |
| Shire, D. | shired@pepperlaw.com |
| Smith, D. | smithdg@pepperlaw.com |
| Smith, N. | smithn@pepperlaw.com |
| Spangler, L. | spanglerl@pepperlaw.com |
| Spitofsky, Amy | spitofszkya@pepperlaw.com |
| Stephenson, Kathleen A. | stephensonk@pepperlaw.com |
| Strauss, Benjamin | straussb@pepperlaw.com |
| Street, R. | streetr@pepperlaw.com |
| Sullivan, Mark | sullivanm@pepperlaw.com |
| Surbeck, David | surbeckd@pepperlaw.com |
| Tanner, Neil B. | tannern@pepperlaw.com |
| Thompson, J. | thompsonj@pepperlaw.com |
| Townsend, J. | townsendj@pepperlaw.com |
| Unterberger, Andrea | unterbergera@pepperlaw.com |
| Vargo, Brian S. | vargob@pepperlaw.com |
| | vargobs@pepperlaw.com |
| Wallen, John | wallenj@pepperlaw.com |
| Warren, Laura D. | warrenl@pepprlaw.com |
| Weisensee, Barbara D. | weisenseeb@pepperlaw.com |
| | weisenseebd@pepperlaw.com |
| Woodward, Matthew A. | woodwardm@pepperlaw.com |
| | woodwardma@pepperlaw.com |

### Dilworth Paxson LLP Attorneys and Staff:

Any email address ending in "dilworthlaw.com"

### Other Counsel:

**Brownstein, Hyatt & Farber, P.C.**

| | |
|---|---|
| Farbes, Hubert A. | hfarbes@bhf-law.com |
| Gill, Terence C. | tgill@bhf-law.com |
| Imhoff, Elizabeth Rae | eimhoff@bhf-law.com |
| Keegan, Teresa A. | tkeegan@bhf-law.com |
| Warnkey, Kathleen A. | kwarnkey@bhf-law.com |

# Sonnenschein
SONNENSCHEIN NATH & ROSENTHAL LLP

Brian Dykstra
October 13, 2004
Page 7

**Powell, Trachtman, Logan, Carrle, Bowman & Lombardo**
| | |
|---|---|
| Curley, C.V. | ccurley@powelltrachtman.com |
| Curry, Michael J. | mcurry@powelltrachtman.com |
| Halberstadt, E.N. | ehalberstadt@powelltrachtman.com |
| Hall, C.B. | chall@powelltrachtman.com |
| Jacobson, M.B. | mjacobson@powelltrachtman.com |
| Maransky, Michael J. | mmransky@powelltrachtman.com |

**Montgomery, McCracken, Walker & Rhoads, LLP**
| | |
|---|---|
| Bloxom, John M. | jbloxom@mmwr.com |
| Newcomer, J.H. | jnewcomer@mmwr.com |

**Fox Rothschild**
| | |
|---|---|
| Berger, Allison | aberger@foxrothschild.com |
| Bonekemper, Andrew W. | abonekemper@foxrothschild.com |
| Baume, Hal | hbaume@foxrothschild.com |
| Cornell, L. Jason | jcornell@foxrothschild.com |
| DeMichele, Anthony P. | ademichele@foxrothschild.com |
| Dorr, Teresa M. | tdorr@forxrothschild.com |
| Gradwohl, David A. | dgradwohl@foxrothschild.com |
| Hinerman, Philip L. | phinerman@foxrothschild.com |
| Jobes, T.H. | tjobes@foxrothschild.com |
| Kelly, Kimberly L. | kkimberly@foxrothschild.com |
| Maransky, Michael J. | mmaransky@foxrothschild.com |
| Menkowitz, Michael G. | mmenkowitz@foxrothschild.com |
| Pileggi, Francis | fpileggi@foxrothschild.com |
| Rennie, Sheldon | srennie@foxrothschild.com |
| Solomon, Robin I. | rsolomon@foxrothschild.com |
| Wanger, William R. | wwanger@foxrothschild.com |

**The Bayard Firm**
| | |
|---|---|
| Astin, Daniel K. | dastin@bayardfirm.com |
| Davis, Charlene D. | cdavis@bayardfirm.com |
| Matthews, Tiffany | cmatthews@bayardfirm.com |
| Richards, Deirdre | drichards@bayardfirm.com |
| Saccullo, Anthony | asaccullo@bayardfirm.com |

**Gardere & Wynne**
| | |
|---|---|
| Nicewander, Dan L. | dnicewander@gardere.com |

Sonnenschein
SONNENSCHEIN NATH & ROSENTHAL LLP

Brian Dykstra
October 13, 2004
Page 8

**Dorsey & Whitney**
Reeslund, Michael                           reeslund.mike@dorsey.com

**Schwartz, Tobia, Stanziale, Sedita & Campisano**
Crecca, Donald J.                           creccd@kipslaw.com
Diddio, Kim M.                              kim@kipslaw.com
Stanziale, Jr., Charles A.                  stanzch@kipslaw.com
Testa, Jeffrey T.                           testaj@kipslaw.com
Ward, Roger C.                              wardr@kipslaw.com

**Others**

William C. Cleveland, III, Esquire          wcleveland@bmsmlaw.com
Richard Hawley, Esquire                     rhawley@k-glaw.com
Chad A. Cicconi                             ccicconi@thorpreed.com
Constance R. Ariagno                        cariagno@PattonBoggs.com
Gerald R. Flatten                           RienDF@aol.com
Rendi Mann-Stadt                            rmann-stadt@mwbavl.com
Heather Goldstein                           hgoldstein@mwbavl.com
Fred Barbour                                fbarbour@mwbavl.com
Russell S. Sayre                            sayre@taftlaw.com
Scott Hickman                               shickman@sherrardroe.com
Stephen Hurd                                shurd@sherrardroe.com
James (Jim) M. Matour                       jmatour@hangley.com
Perry K. Delay                              pdelay@hangley.com
Bruce S. Haines                             bhaines@hangley.com
Kathleen M. Laubenstein                     klaubenstein@hangley.com
Richard J. Zook                             rzook@cdzc.com

Electronic Evidence Discovery and

Analysis

Statement of Work

For:

Royal Indemnity Company

through

Sonnenschein Nath & Rosenthal LLP

October 13, 2004

Prepared For:

Mr. Marc Zwillinger, Esq.
Sonnenschein Nath & Rosenthal LLP

## Engagement Summary

Royal Indemnity Company ("ROYAL"), through Sonnenschein Nath & Rosenthal LLP ("SONNENSCHEIN") has retained Red Cliff Consulting, Inc. ("Red Cliff") to provide forensic preservation, forensic and data analysis, file recovery and file processing services. As part of this engagement, Red Cliff will preserve and attempt to recover data from the following servers:

1.   EMC Storage Device – 40-36GB RAID drives – 1.5TB total. EMC owned 20 of the 40 drives, removed those 20 drives and disabled the machine for failure to pay rental fees. The machine has been offline for more than one year. Configuration and server model are unknown. Preserve forensically and attempt to rebuild RAID array and recover data.

2.   Microsoft Exchange 5.5 Email Server – Machine is currently in use supporting 8 user mailboxes, but had supported approximately 200 user mailboxes at one time. Size and server model unknown. Preserve forensically and attempt to recover the previous 192 mailboxes.

3.   File Server – 8-18GB RAID drives. Machine is currently in use. Configuration and server model are unknown. Preserve forensically and attempt to recover data.

Once onsite, Red Cliff will assess the functionality of the servers and determine the exact course of action to take for efficient restoration. Due to the unknown model and state of each of the machines, there may be no relevant data that can be recovered from a particular machine. Red Cliff may engage EMC Professional Services to provide technical background and consulting related to the EMC storage device.

### Engagement Tasks

### Phase I – Preservation and Data Restoration of Identified Hardware

Red Cliff's foremost task and goal will be to preserve the data available on each machine's hard drive(s). Because this project involves a large number of drives that must be preserved individually, Red Cliff will establish an onsite data acquisition lab including multiple acquisition workstations with write-protection hardware. This will enable Red Cliff to preserve multiple drives concurrently to shorten the preservation process.

Provided the Exchange server and the File server are in working order, Red Cliff should be able to complete the restoration and assessment in very short order. However, the fact that drives have been removed from the EMC server increases the potential complexity of the restoration process exponentially due to the fact that each drive must be put back in the exact same order as when the server was being used. In order to maximize the opportunity for a successful restoration of the EMC RAID array, Red Cliff may partner with EMC Professional Services to develop a custom EMC approach to determine the viability of the machine and data drives. EMC may require restitution for any outstanding invoices before any support will be provided. If so, Sonnenschein will instruct Red Cliff how to proceed.

Once the data has been preserved, the following tasks will take place for the specific hardware in order to collect the relevant data:

Privileged and Confidential

A.    EMC Server – Once preserved, if the RAID array cannot be rebuilt onsite with EMC's support, Red Cliff will bring the preserved drives back to its lab in Fairfax, VA, and use the EnCase forensic software to attempt to reconstruct the order and configuration drives. <u>NOTE: This is a manually intensive process with a possibility of no success.</u>

B.    Exchange Server – Once preserved, Red Cliff will review the preserved data for the Exchange server file (.edb) that may have contained the previous 192 mailboxes. If it exists, Red Cliff will restore the .edb file and attempt to extract any identified mailboxes. If the previous .edb cannot be located or restored, Red Cliff will examine the preserved data forensically to determine if any email fragments can be recovered.

C.    File Server – If a logical preservation can be made of the file server, Red Cliff will allow the server to reconstruct the RAID array and preserve the data directly. If a forensic preservation is required, Red Cliff will preserve each drive individually and then rebuild the RAID array using either the existing hardware or by bringing the data back to Red Cliff's VA lab and reconstructing it using the EnCase forensic software.

Due to the availability of EMC Professional Services, Red Cliff may begin work on the Exchange server and the File Server before beginning work on the EMC server. This will allow EMC to perform the necessary research into the EMC server's specific history, and Red Cliff and EMC to prepare for the onsite assessment.

**Phase II – Analysis and Preparation of Resulting Data**

Once the existing data has been preserved and reconstructed, the data will be verified and reviewed for consistency, and recoverable deleted files will be restored. Due to the processing requirements for email and user files, the data will be broken into two different processing paths at this point.

EMAIL – All recovered mailboxes will be screened for exclusion consistent with the Engagement Protocols at the end of this document, searched, and prepared for review in multiple formats. Because the mailboxes are a structured format, Red Cliff will convert each email message into an HTML representation of the message, establish an automated link between the email and any attachments (only to the extent that the email message containing the attachment was not already excluded pursuant to the Engagement Protocols at the end of this document), and de-duplicate the email messages.

Cost estimates provided for these tasks will be based on the assumption that only 25 PSTs need to be recovered from the Exchange server. Final determination on the approach to take will be made by Sonnenschein once the volume of data is identified.

USER FILES – These are non-email files that are typically found on custodian's computers or on file servers that custodians have access to (this could also include email file stores which will be processed as described above). Red Cliff's standard approach for processing user files is to begin by filtering out known files that are not specific to the custodians including system executable files (e.g., .exe, .dll, .sys, etc.). The remaining files are then filtered to exclude non-

Privileged and Confidential

business documents which are typically not relevant to litigation (e.g., .gif, .avi, .mp3, etc.). The remaining business documents will be de-duplicated to remove multiple versions of the same file. The resulting files will be indexed and searched according to Sonnenschein's instructions.

## Engagement Protocols

**Red Cliff will adhere to the following protocol in connection with this engagement:**

1.      There are three categories of information that *must not* and *will not* be provided to Sonnenschein or its client Royal Indemnity Company ("Royal"):

   A.      Any and all email messages (along with any attachments thereto) in which an address in either or both of the "TO:" and/or "FROM:" fields (but not including the "CC:" field) contain any of the email addresses on the attached Schedule A; and

   B.      Any file or other data that was initially created after September 29, 2003.

2.      Red Cliff shall not, under any circumstances, disclose the contents of any files or other data located on the Servers to any person or entity other than Royal (through Sonnenschein), SFC (through Dilworth Paxson), SLS (through Saul Ewing LLP), or a judicial officer, unless required by law to do so.

3.      After the acquisition phase, Red Cliff will provide to SFC (through the Trustee or his counsel) a single copy of all information acquired from the Servers in the same form and manner as such information was provided to Royal.

4.      Red Cliff will access the SLS-owned Servers outside of SLS' normal business hours and will observe any other reasonable requests made by SLS with respect to Red Cliff's onsite activities.



Stephen J. Shapiro
Schnader Harrison Segal & Lewis LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286

     Re: Subpoena

Dear Mr. Shapiro:

     We received your subpoena dated November 17, 2006.  As you know, Mandiant acquired the data referenced in your subpoena pursuant to a multi-party agreement.  Releasing the data you requested without the consent of all parties to that original agreement would be a breach of our confidentiality obligations.

     We understand that negotiations are underway among counsel to find a way to make this information available.  We will address your subpoena once those negotiations conclude.  If you have any questions, please contact Shane McGee at 202-408-9216.

     Regards,

Michael Malin
Executive Vice President & CFO
Mandiant Corporation

cc: Shane M. McGee, Esq.

# EXHIBIT C

# Schnader
## ATTORNEYS AT LAW

1600 MARKET STREET   SUITE 3600
PHILADELPHIA, PA 19103-7286
215.751.2000   FAX 215.751.2205   schnader.com

December 12, 2006

Stephen J. Shapiro
Direct Dial 215-751-2259
E-mail: sshapiro@schnader.com

## VIA FAX AND FIRST CLASS MAIL

Michael Malin
Mandiant
675 North Washington Street, Suite 210
Alexandria, VA 22314

Re:   *Royal Indemnity Company v. Pepper Hamilton LLP, et al.,*
      *No. 05-165 (D. Del.)*
      *Stanziale v. Pepper Hamilton LLP, et al.,* No. 04-1551 (D. Del.)

Dear Mr. Malin:

We write in response to your fax of December 11, 2006.

The subpoena served upon Mandiant on November 21, 2006 is an order of the United States District Court for the Southern District of New York (the "Court") commanding Mandiant to produce the data identified in the subpoena. The fact that Mandiant may have entered into an out-of-court agreement with other parties through which it promised not to disclose that data in no way excuses Mandiant from complying with the subpoena. In fact, the agreement to which you refer specifically states that Mandiant may disclose the data if it is "required by law to do so." The subpoena is just such a legal requirement.

As parties to the above-captioned cases, Royal and SFC's bankruptcy Trustee – two of the three entities mentioned in the agreement – were served with copies of the subpoena and had the opportunity to seek relief from the Court. As for SLS, the third entity mentioned in the agreement, the Trustee has taken the position in recent court filings that SLS no longer exists and, therefore, cannot assert any privileges. In any event, Mandiant had ample opportunity to notify SLS about the subpoena so that SLS could take whatever action it deemed necessary. Neither Royal nor the Trustee nor SLS has sought relief from the Court.



Michael Malin
December 12, 2006
Page 2

       In light of the above, we must insist that Mandiant comply with the subpoena.  If Mandiant does not produce the data by December 20, 2006, we will request Court intervention. Please feel free to contact me with any questions.

                    Sincerely,

                    Stephen J. Shapiro
            For SCHNADER HARRISON SEGAL & LEWIS LLP

cc (via e-mail):
    Neil G. Epstein, Esquire
    Veronica E. Rendon, Esquire
    Andre Castaybert, Esquire
    John H. Eikemeyer, Esquire
    Lois H. Goodman, Esquire
    John I. Grossbart, Esquire
    Shane M. McGee, Esquire