# ATTACHMENT 2c

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

CHARLES A. STANZIALE, JR.,                    :
CHAPTER 7 TRUSTEE OF STUDENT            :
FINANCE CORP.,                                        :
                                                              :
                              Plaintiff,                   :
          -against-                                         :
                                                              :
PEPPER HAMILTON, LLP., et al.,               :
                                                              :
                              Defendants.              :

------------------------------------------------x

*ELECTRONICALLY FILED*
Misc. No. M8-85

---

## MEMORANDUM OF LAW OF CHARLES A. STANZIALE, JR., CHAPTER 7 TRUSTEE OF STUDENT FINANCE CORPORATION IN OPPOSITION TO PEPPER HAMILTON, LLP'S MOTION TO COMPEL DISCOVERY FROM NONPARTY MANDIANT CORPORATION

Lois H. Goodman
McElroy, Deutsch, Mulvaney & Carpenter, LLP
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102-4079
(973) 622-7711

*Attorneys for Plaintiff Charles A. Stanziale, Jr.
Chapter 7 Trustee of Student Finance
Corporation*

## PRELIMINARY STATEMENT/STATEMENT OF FACTS

Pepper Hamilton LLP ("Pepper") has moved this Court to compel discovery from Mandiant Corporation ("Mandiant"), pursuant to a subpoena, for use in <u>Charles A. Stanziale Jr., Chapter 7 Trustee of Student Finance Corp. v. Pepper Hamilton LLP, et al.</u>, Civil Action No. 04-1551 (JJF), now pending in the United States District Court for the District of Delaware (the "Action"). Charles A. Stanziale, Jr., the Chapter 7 Trustee (the "Trustee") of Student Finance Corporation ("SFC"), plaintiff in the Action, respectfully submits this memorandum of law in opposition to Pepper's motion to compel. The Trustee does not seek to bar Pepper from obtaining relevant discovery. Rather, the Trustee's objection to the motion is limited to the need to preserve the Trustee's attorney-client and work product privilege with respect to documents contained within the materials Pepper seeks, and to ensure that the costs associated with the production are borne by Pepper.

The Action was brought by the Trustee against Pepper, alleging, <u>inter alia</u>, that Pepper committed malpractice and breached its fiduciary duty in its representation of SFC. The computer server that is the subject of the subpoena served on Mandiant contains information relating to the operations of SFC. Most of the contents of the server have already been produced to Pepper. By its subpoena, and the present order to show cause, Pepper seeks production of those documents that were not previously produced, as potentially bearing on the Action.[1] The Trustee does not object to the discovery sought

---

[1]. Despite the fact that the Action is before the Hon. Joseph J. Farnan, Jr., U.S.D.J., who has decided a number of discovery issues, and has pending before him other motions related to attorney-client privileges, and that Mandiant has offered to make itself subject to the jurisdiction of the Delaware District Court, Pepper elected to circumvent that Court's oversight by bringing its application to this Court. Pepper proceeded by way of order to show cause, even though that discovery is not scheduled to close until April 6, 2007. Courts have recognized that there is a benefit inherent in allowing the court in which an action is pending to decide discovery issues. "The third-party subpoena route has the added benefit of allowing the

2

by Pepper, other than insofar as the materials sought pursuant to the subpoena are privileged.

Pepper states in its motion that "[t]he server likely contains documents highly relevant to the Pepper case." Pepper memorandum at 2. After SFC was put into involuntary bankruptcy in June 2002, the server was sold to SLS, a company related to SFC, and SFC continued to use the server and store information on it for a period of time. In the fall of 2004, the contents of the server was imaged by Mandiant and filtered so that non-privileged documents could be produced as part of the Trustee's litigation with Royal Indemnity ("Royal").[2] The Trustee did not waive SFC's privilege with regard to representation by Pepper in that litigation, and the Pepper communications were filtered out of the production. Royal, as the requesting party, bore the cost of the production, including the filtering for privilege.

Pepper represented SFC for a number of years but withdrew from that representation in April 2002. From that point on, Pepper provided very limited representation to SFC, and even that limited representation ended shortly thereafter. While the server at issue may have some limited communications that are relevant to Pepper's representation of SFC, the fact is that those communications would be from the time of Pepper's representation or shortly after Pepper withdrew. In the Action, the Trustee has waived any privilege that SFC may have had relating to its representation by

---

court in which the main litigation is pending to make the ruling." Smithkline Beecham Corp. v. Synthon Pharmaceuticals LTD., 210 F.R.D. 163, 169 n.7 (M.D.N.C. 2002). When the information is "sought via a subpoena, the third party has the right to request transfer of the dispute to the court in which the main litigation is pending for resolution." Further, "the court in which the litigation is pending will be in a better position to decide relevancy issues." Id. at 169 n7.

[2] Pepper says in the Declaration of Stephen Shapiro that "[t]he Trustee apparently was not willing to review all of the e-mails on the Server to determine which e-mails, if any, were in fact protected from disclosure by the attorney-client privilege." Shapiro Decl. ¶5. As Pepper is well aware, this is not a matter of simply reviewing a few e-mails – the server as filtered (and produced to Pepper) alone contains 16 gigabytes of data. Waters' Decl. at ¶ 2.

3

Pepper, as well as by other professionals prior to the appointment of the Trustee, which did not take place until September 29, 2003.[3] Accordingly, a simple solution to the issue posed by Pepper, and one to which the Trustee would not object, is the production from the server of any communications that took place prior to September 29, 2003, when the Trustee was appointed and by which time Pepper was no longer representing SFC. This would obviate the need for filtering by individual or by firm name, in favor of a single filter by date.

Contrary to Pepper's assertion that the Trustee has waived his right to object based on privilege, the correspondence between counsel, which Pepper has chosen not to advise the Court of include in its submission, makes clear that Pepper was on notice of the Trustee's position. In fact, there were several letters and emails exchanged between Pepper and the Trustee's counsel. See Waters' Decl. Exhibit A. Specifically, on November 22, 2006, the Trustee's counsel sent a letter to Mr. Shapiro outlining the concerns with regard to the privilege issue. See Waters' Decl. Exhibit B. Mr. Shapiro's response, dated December 5, 2006, clearly acknowledges that the Trustee had asserted the privilege with respect to certain communications contained in the server and was objecting to production of the privileged communications. In fact, Mr. Shapiro specifically wrote that "[t]he Trustee claims that the SLS Server contains attorney-client privileged communications between counsel for the Trustee and his agents and/or work

---

[3] The Trustee has not waived his privilege with regard to communications with counsel subsequent to his appointment. That representation was by a number of firms, including Dilworth Paxson LLP, Schwarz, Tobia, Stanziale, Sedita & Campisano, PA and McElroy, Deutsch, Mulvaney & Carpenter, LLP. Accordingly, the Trustee provided Mandiant with a list of counsel that might be party to communications contained on the server, which should not be produced. Waters' Aff. Exhibit D, pp. 1-2. Those communications while left in the SLS server were maintained in a password protected drive and were not copied to third parties. Waters' Decl. Exhibit F at 1.

product of the Trustee's counsel that will not be produced in these cases . . . ." Waters' Decl. Exhibit C at 1.

Subsequently, the Trustee received a letter from Mandiant dated December 14, 2006, stating that it would comply with the Third-Party Subpoena and turn over the communications on December 22, 2006 unless the Trustee objected.[4] See Waters' Decl. Exhibit E. Although Pepper was already on written notice of the Trustee's position, by letter dated December 21, 2006, this firm put Mandiant on written notice as well, advising that the Trustee did not object to the production of e-mail communications between SFC and Pepper, or to the production of other non-privileged communications, but that the Trustee did object to the production of privileged communications with counsel subsequent to his appointment. Waters' Decl. Exhibit E at 1. A copy of the letter was sent to counsel for Pepper. Far from waiving his objection, the Trustee has put Pepper on notice on several occasions, and Pepper has acknowledged the Trustee's objection.

## ARGUMENT

### POINT I

#### THE TRUSTEE HAS NOT WAIVED HIS PRIVILEGE WITH REGARD TO COMMUNICATIONS WITH COUNSEL CONTAINED ON THE SLS SERVER

Rule 45(c)(2)(B) of Federal Rules of Civil Procedure provides for the protection of persons subject to subpoenas and states "a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon

---

[4] Mandiant initially objected to Pepper's subpoena on December 11, 2006. However, in a letter dated December 12, 2006, Pepper extended the return date of the subpoena, allowing Mandiant until December 20, 2006 to respond. See Waters' Aff. Exhibit E.

5

the party or attorney designated in the subpoena written objection to inspection and copying of any or all of the designated materials or the premises." It further states that "[i]f objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court . . . ." Fed. R. Civ. P. 45(c)(2)(B).

Pepper clearly received written objections, as contemplated by the rule. Pepper was made aware through the correspondence between counsel that the Trustee had no objection to the production of non-privileged communications on the SLS server, but that he would not waive the privilege with regard to communications with counsel after his appointment. Pepper seems to assert that the Trustee should have filed a formal objection or a motion to quash or modify the subpoena. Rule 45(c)(2)(B), which was relied on by Pepper, places no such burden on the objecting party but simply requires that the Trustee send a written objection to Pepper's counsel. See Fed. R. Civ. P. 45(c)(2)(B); see also DG Creditor Corp. v. Dabah (In re Acquisition Corp.), 151 F.3d 75, 81 (2d Cir. 1998)(Rule 45(c)(2)(B) applies with equal force to objections to document productions that are founded on the assertion of a privilege). Accordingly, the Trustee has not waived his privilege with regard to communications with counsel contained in the SLS server.

## POINT II

### PEPPER SHOULD BEAR THE COST OF OBTAINING THE COMMUNICATIONS AND FILTERING THE PRIVILEGED INFORMATION CONTAINED IN THE SLS SERVER

When the costs of producing the information sough would place an undue burden on the producing party, the party seeking production should bear the costs associated with

6

that production. In this case, Pepper should bear any costs associated with the production of non-privileged materials from the server.

The fact is that the information Pepper alleges is "highly relevant to the Pepper case" is readily available to it and is not the subject of the Trustee's objection. Pepper does not and cannot assert that it is seeking communications from the server from after September 29, 2003, when the Trustee was appointed; by then Pepper's representation of SFC had ended. Accordingly, the simple solution is have the material on the server screened so that only those communications from prior to the Trustee's appointment are produced. No one suggests that that cannot be done. The issue, however, is the cost – this is really the heart of Pepper's motion. Pepper has insisted that any cost arising from the production, other than the minimal cost of providing a server on to which to copy the contents of the SLS server, should be borne by the Trustee. Waters' Decl. Exhibit C at 1. Pepper should bear the cost of obtaining the communications and filtering the privileged information contained in the SLS server.

Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure states "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost . . . ." Fed. R. Civ. P. 26(b)(2)(B). Although there is a presumption that the responding party shall pay the expenses associated with producing electronic discovery, those costs can be shifted back to the requesting party, upon showing of good cause. See Zubulake v. UBS Warburg, LLC, 217 F.R.D. 309 (S.D.N.Y. 2003). Good cause is shown when "electronic discovery imposes an 'undue burden or expense' on the responding party. Id. at 318; Fed. R. Civ. P. 26(b)(2)(B). "The burden of or expense of discovery is, in turn, 'undue'

when it 'outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" Id. (quoting Fed. R. Civ. P. 26(b)(2)(C)(iii)). Courts "[are] also permitted to impose conditions on discovery when it might be duplicative." Id. at 318, n47; see Fed. R. Civ. P. 26(b)(2)(C)(i).

Zubulake sets forth a seven-factor test to determine whether the cost should be shifted to the requesting party; (1) the extent to which the request is specifically tailored to discover relevant information; (2) the availability of such information from other sources; (3) total cost of production, compared to the amount in controversy; (4) total cost of production, compared to the resources available to each party; (5) the relative ability of each party to control costs and its incentive to do so; (6) the importance of the issues at stake in the litigation; and (7) the relative benefits to the parties of obtaining the information. Zubulake, 217 F.R.D. at 322.

The first two factors are the most important as they determine the relevancy of the information sought. Id. at 323. The second group of factors, comprised of factors 3, 4, and 5, addresses the cost issues. Id. Next, the 6th factor will only rarely come into play. Collectively, the first six factors "correspond to the three explicit considerations of Rule 26(b)(2)(iii)." Id. Finally, the 7th factor is least important because "it is fair to presume that the response to a discovery request generally benefits the requesting party." Id. Ultimately, the Court should conduct the appropriate cost-shifting analysis with the production of responsive documents from a small sample of the request as the determination is fact-intensive. Id. at 324.

By applying the <u>Zubulake</u> test, clearly the cost should be shifted to Pepper, the requesting party. First, Pepper is seeking a broad category of communications, although most of the communications on the server have already been produced. Furthermore, to the extent that the communications sought are those involving Pepper, specifically its e-mails with SFC, those e-mails should be available from Pepper's own database. SFC's hard copies of emails with Pepper have already been produced to Pepper during document discovery. Pepper has also produced its emails to SFC but is seeking copies of its own e-mails on the SLS server because Pepper had in place a policy of destroying e-mails that were 90 days old unless specifically saved. If Pepper seeks those e-mails, it should have to pay for them, rather than seeking to have the Trustee bear the cost of replacing what Pepper has destroyed.

Next, to the extent that the cost incurred in re-filtering the SLS server is substantial (Mandiant has indicated that it may be in the range of $35,000-50,000), that cost is easier borne by Pepper than by the Trustee. The purpose of the appointment of a Trustee is to collect money for the benefit and protection of the creditors and the estate. In light of that purpose, Pepper clearly has more resources available than the Trustee, as the depletion of the Trustee's funds will ultimately harm the creditors in the bankruptcy proceedings. Accordingly, taking the <u>Zubulake</u> factors as a whole, the factors weigh in favor of shifting the cost to Pepper.

## CONCLUSION

For the forgoing reasons, the Trustee respectfully submits that the privilege pertaining to communications subsequent to the Trustee's appointment has been properly preserved by the written objections of counsel. Pepper should be allowed access to the

non-privileged materials it seeks, by allowing it to obtain a copy of the information on the server filtered to exclude materials from after the Trustee's appointment on September 29, 2003. Finally, the cost of production, including the filtering, should be borne by Pepper.

Respectfully Submitted,

McElroy, Deutsch, Mulvaney & Carpenter, LLP

By ____ /s/Lois H. Goodman _____
    Lois H. Goodman (LHG-4484)
    Three Gateway Center
    100 Mulberry Street
    Newark, New Jersey 07102-4079
    (973) 622-7711

    *Attorneys for Plaintiff Charles A. Stanziale, Jr.*
    *Chapter 7 Trustee of Student Finance*
    *Corporation*

Dated: January 10, 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CHARLES A. STANZIALE, JR.,    :
CHAPTER 7 TRUSTEE OF STUDENT   :
FINANCE CORP.,    :
    :
    :
    Plaintiff,    :
   -against-    :
    :
PEPPER HAMILTON, LLP., et al.,   :
    :
    Defendants.    :
-------------------------------------------------------x

*__ELECTRONICALLY FILED__*
Misc. No. M8-85

**DECLARATION OF
MICHAEL S. WATERS, ESQ.**

I, Michael S. Waters, an attorney duly admitted to practice before the Courts of the State of New York, declare the following under the penalties of perjury:

1.    I am a member of the law firm McElroy, Deutsch, Mulvaney & Carpenter, LLP, counsel for Plaintiff Charles A. Stanziale, Jr., Chapter 7 Trustee (the "Trustee") of Student Finance Corporation ("SFC"), in the above-captioned matter. As such, I am fully familiar with the facts set forth herein. I submit this affidavit in support of the Trustee's opposition to Defendant Pepper Hamilton, LLP's ("Pepper") motion to compel the production from non-party Mandiant Corp. ("Mandiant").

2.    The computer server that is the subject of the subpoena served on Mandiant contains information relating to the operations of SFC. Most of the contents of the server, approximately 16 gigabytes of data, have already been produced to Pepper.

3.    After SFC was put into involuntary bankruptcy in June 2002, the server was sold to SLS, a company related to SFC, and SFC continued to use the server and store information on it for a period of time.

4.      In the fall of 2004, the contents of the server was imaged by Mandiant and filtered so that non-privileged documents could be produced as part of the Trustee's litigation with Royal Indemnity ("Royal").

5.      Royal, as the requesting party then, bore the cost of the production, including the filtering for privilege.

6.      Pepper represented SFC for a number of years but withdrew from that representation in April 2002.   From that point on, Pepper provided very limited representation to SFC, and even that limited representation ended shortly thereafter.

7.      Attached hereto as Exhibit A is a true and accurate copy of the letter, dated November 22, 2006, sent by Lois H. Goodman, Esq. of this firm to Stephen J. Shapiro, Esq.

8.      Attached hereto as Exhibit B is a true and accurate copy of Mr. Shapiro's letter, dated December 5, 2006.

9.      Attached hereto as Exhibit C is a true and accurate copy of Mandiant's letter, dated December 14, 2006.

10.      Attached hereto as Exhibit D is a true and accurate copy of Pepper's letter, dated December 12, 2006, to Mandiant.

11.      Attached hereto as Exhibit E is a true and accurate copy of the letter, dated December 21, 2006, sent by Ms. Goodman to Mandiant.

12.     Attached hereto as Exhibit F is a true and accurate copy of the letter, dated

December 7, 2006, sent by Ms. Goodman to Mr. Shapiro.

I declare under the penalty of perjury that the foregoing is true and accurate.

By: _____
                Michael S. Waters

Dated: January 10, 2007

# EXHIBIT A

# McElroy, Deutsch, Mulvaney & Carpenter, LLP
### ATTORNEYS AT LAW

THREE GATEWAY CENTER
100 MULBERRY STREET
NEWARK, NEW JERSEY 07102-4079
(973) 622-7711
FACSIMILE (973) 622-5314

LOIS H. GOODMAN
Direct Dial: (973) 565-2079
E-mail: lgoodman@mdmc-law.com

November 22, 2006

*VIA E-MAIL AND FIRST CLASS MAIL*

Stephen J. Shapiro, Esq.
Schnader Harrison Segal & Lewis LLP
Suite 3600, 1600 Market Street
Philadelphia, Pennsylvania 19103-7286

> Re:    *In Re: Student Finance Corporation*
> *Charles A. Stanziale, Jr., Chapter 7 Trustee of Student Finance Corporation*
> *vs. Pepper Hamilton LLP, et al.*
> *Civil Action Number: 04-1551 (JJF)*

Dear Steve:

I have your letter of November 16, 2006 to Mike Waters. I am responding because as you may recall, this issue was raised during the deposition of Guy DiSimplico last week. You voiced your concern that documents had been screened from production of the SLS server, and I put on the record my concern that privileged documents that should have been screened had not been. We agreed to work on a procedure to address these issues; your letter came while the deposition was still ongoing.

The e-mail communications to which you refer were on an SFC server that was sold to SLS prior to the appointment of the Trustee. This server has since been referred to as the SLS server. By agreement among SLS, Royal and the Trustee, Red Cliff, a computer consultant, was given access to the SLS server and was allowed to image it. My understanding is that at that time, the Trustee was still in litigation with Royal, and they worked out a protocol for the production of the non-privileged materials on the SLS server for that litigation. To that end, a protocol for inspection was agreed upon, which was designed to screen out privileged communications. The result is the version of the SLS server that has been produced by Royal in this case. That version of the server is the same as the one the Trustee received from Red Cliff; we have no other version in our possession.

The Trustee has agreed in this litigation to waive the privilege with respect to Pepper for purposes of having a full exchange of information. Pursuant to that waiver, the files of SFC and Pepper were both explored, copied and exchanged. It only recently came to my attention that the original protocol established with Red Cliff eliminated e-mail communications between SFC and attorneys at Pepper Hamilton. Clearly, production in this case was not something that was contemplated at the time the protocol for Red Cliff was agreed upon.



## McElroy, Deutsch, Mulvaney & Carpenter, LLP

Stephen J. Shapiro, Esq.
November 22, 2006
Page 2

When I learned of this issue, I began to explore the possibility of obtaining copies of the Pepper communications, as I agree with you that that is part of the information as to which no privilege is being asserted in this case and, therefore, of course, we would not put them on a privilege log. I have been advised that there might be a substantial expense involved in having Red Cliff re-screen the material on the original SLS server; I have asked for additional information as to the cost, and I will provide you with that information as soon as it is available to me.

I should point out before we pursue this further that the project we are discussing is really just a double check as to whether Pepper has properly preserved and turned over to us all of its e-mails with SFC, since the Red Cliff screening protocol was only with regard to email communications. We were given documents in the litigation which indicated that Pepper does in fact preserve e-mails and that all available e-mails were searched for. If Pepper has retained and produced all of the e-mails on its server, then a search of the SLS server for the same e-mails should not produce anything additional. Please advise me in greater detail of the completeness of Pepper's e-mail retention and the extent of the search that was made.

Very truly yours,

McElroy, Deutsch, Mulvaney & Carpenter, LLP

Lois H. Goodman

LHG:dmc
cc:　John I. Grossbart, Esq. (Via E-mail)
　　　Lisa A. MacVittie, Esq. (Via E-Mail)

# EXHIBIT B

# Schnader
ATTORNEYS AT LAW

1600 MARKET STREET   SUITE 3500
PHILADELPHIA, PA  19103-7286
215.751.2000   FAX 215.751.2205   schnader.com

December 5, 2006

Stephen J. Shapiro
Direct Dial 215-751-2259
E-mail: sshapiro@schnader.com

## VIA E-MAIL AND FIRST CLASS MAIL

Lois H. Goodman, Esquire
McElroy, Deutsch, Mulvaney
& Carpenter, LLP
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102

RE:    *Royal Indemn. Co. v. Pepper Hamilton LLP, et al.*, No. 05-165 (D. Del.)
       *Stanziale v. Pepper Hamilton LLP, et al.*, No. 04-1551 (D. Del.)

Dear Lois:

I write in response to your letters of November 22 and 27, 2006, and your subsequent e-mails of November 29 and 30, 2006 relating to the so-called "SLS Server."

We find the Trustee's position perplexing. The Trustee claims that the SLS Server contains attorney-client privileged communications between counsel for the Trustee and his agents and/or work product of the Trustee's counsel that will not be produced in these cases. At the same time the Trustee claims that the SLS Server is not currently in his possession. If the SLS Server is in the possession of some third party, the protections of the attorney-client privilege and work product doctrine were waived when the Trustee relinquished possession of the server. This is true regardless of the fact that the Trustee's agents may have used the server for a period of time after the Trustee was appointed. If the Trustee does not have possession of or control over the server *today*, any privilege has been waived.

If, on the other hand, the Trustee is taking the position that the privilege has not been waived because he does, in fact, have possession of or control over the SLS server, the Trustee is obliged to produce at his expense any non-privileged communications or other documents that relate to SFC that are on the server and provide a privilege log identifying any withheld documents, as those documents are responsive to the document requests that Pepper served more than a year ago.[1]

---

[1]    In both of your letters you refer to the potentially substantial cost that could be involved in re-screening the emails on the SLS Sever. We do not understand why there would be any cost involved in having Red Cliff re-screen the server, since they obviously did not do what they were paid to do the first time.

Schnader
ATTORNEYS AT LAW

Lois H. Goodman, Esquire
December 5, 2006
Page 2

In any event, we understand that the Trustee has waived the attorney-client
privilege on behalf of SFC for the period of time prior to his appointment in October 2003.  As
such, the Trustee must at a minimum produce *all* communications on the SLS Server between
SFC and *any* of its attorneys that pre-date October 2003, not just communications between SFC
and Pepper, as your November 22, 2006 letter seems to suggest.  There can be no doubt that
these communications are relevant to the claims and defenses in this case and/or are likely to
lead to the discovery of admissible evidence.  Indeed, the Trustee has alleged that Pepper was
SFC's "general counsel" and did substantially all of SFC's legal work.  We have learned through
the various discovery and depositions to date that other lawyers performed important legal work
for SFC.  Pepper is entitled to full and complete discovery on these issues, including copies of
communications between SFC and its other lawyers.[2]

Finally, your November 22 letter incorrectly suggests that re-screening the SLS
Server would be nothing more that a "double check as to whether Pepper has properly preserved
and turned over to us all of its emails with SFC."  First, as discussed above, the Trustee is
obliged to turn over emails on the SLS Server between SFC and all of its lawyers, not just
Pepper.  More importantly, as set forth in both the 1997 and 2001 Pepper attorney manuals
(copies of which you have had for months), emails on the Pepper system are deleted
automatically after sixty days if not specifically saved.  Therefore, it is entirely possible that
there are emails between SFC and Pepper on the SLS Server that Pepper no longer possesses.

Sincerely,

Stephen J. Shapiro
For SCHNADER HARRISON SEGAL & LEWIS LLP

---

[2]     On a related issue, we understand that Terrence Gill, Esq., and the law firm of Sherman
& Howard L.L.C. have delivered SFC-related documents (the "Gill Documents") to your
firm.  In a letter dated November 1, 2006, Mr. Gill indicated that he was informed by
Mike Waters that "the trustee did not intend to waive privilege on all of Student
Finance's matters" and would conduct a privilege review of the documents.  We assume,
given your representations to date, that the Trustee will produce any Gill Documents that
pre-date October 2003.

# EXHIBIT C

December 14, 2006

**VIA REGISTERED MAIL**

Student Loan Servicing, LLC
c/o Andrew N. Yao, Registered Agent
261 Chapman Road, Suite 101
Newark, Delaware 19702

Student Loan Servicing, LLC
c/o Andrew N. Yao, Registered Agent
107 Leighton Drive
Bryn Mawr, Pennsylvania 19010

Re:  Subpoena to Mandiant Corp. issued in *Charles A. Stanziale Jr., Ch. 7 Trustee of Student Finance Corp. v. Pepper Hamilton LLP, et al.* (D. Del. case no. 04-1551-JJF) and *Royal Indemnity Co. v. Pepper Hamilton LLP, et al.* (D. Del. case no. 05-165-JJF)

Dear Mr. Yao:

On November 17, 2006, Schnader Harrison Segal & Lewis LLP issued the attached subpoena to Mandiant Corporation ("Mandiant") seeking to obtain information Mandiant acquired from two Student Loan Servicing, LLC ("SLS") servers in late 2004. Mandiant, formerly Red Cliff Consulting LLC, acquired forensic images of the two SLS servers pursuant to an agreement among SLS, Royal Indemnity Company, and Student Finance Corporation through its Chapter 7 Trustee. Pursuant to the agreement, Mandiant filtered these forensic images to remove communications between SLS and its attorneys before the remaining data were produced to the parties.

The subpoena, however, seeks all the communications on these servers, which would include the privileged communications filtered out in 2004. As the privilege is SLS's, and we are unsure if you are aware of the subpoena, we wanted to bring the subpoena to SLS's attention. Please be advised that, consistent with the 2004 agreement, Mandiant retained copies of the unfiltered forensic images, and may be compelled to produce those copies in response to the subpoena unless the subpoena is quashed or modified pursuant to a court order.

Please notify us in writing prior to December 22, 2006 whether you intend to move to quash or otherwise challenge the subpoena.

Sincerely yours,

Michael Malin
Executive Vice President & CFO
Mandiant Corporation

# EXHIBIT D



ATTORNEYS AT LAW

1600 MARKET STREET   SUITE 3600
PHILADELPHIA, PA  19103-7286
215.751.2000   FAX 215.751.2205   schnader.com

December 12, 2006

Stephen J. Shapiro
Direct Dial 215-751-2259
E-mail: sshapiro@schnader.com

**<u>VIA FAX AND FIRST CLASS MAIL</u>**

Michael Malin
Mandiant
675 North Washington Street, Suite 210
Alexandria, VA 22314

        Re:    *Royal Indemnity Company v. Pepper Hamilton LLP, et al.,*
              **No. 05-165 (D. Del.)**
              *Stanziale v. Pepper Hamilton LLP, et al.,* **No. 04-1551 (D. Del.)**

Dear Mr. Malin:

        We write in response to your fax of December 11, 2006.

        The subpoena served upon Mandiant on November 21, 2006 is an order of the United States District Court for the Southern District of New York (the "Court") commanding Mandiant to produce the data identified in the subpoena. The fact that Mandiant may have entered into an out-of-court agreement with other parties through which it promised not to disclose that data in no way excuses Mandiant from complying with the subpoena. In fact, the agreement to which you refer specifically states that Mandiant may disclose the data if it is "required by law to do so." The subpoena is just such a legal requirement.

        As parties to the above-captioned cases, Royal and SFC's bankruptcy Trustee – two of the three entities mentioned in the agreement – were served with copies of the subpoena and had the opportunity to seek relief from the Court. As for SLS, the third entity mentioned in the agreement, the Trustee has taken the position in recent court filings that SLS no longer exists and, therefore, cannot assert any privileges. In any event, Mandiant had ample opportunity to notify SLS about the subpoena so that SLS could take whatever action it deemed necessary. Neither Royal nor the Trustee nor SLS has sought relief from the Court.

Schnader Harrison Segal & Lewis LLP

NEW YORK    PENNSYLVANIA    CALIFORNIA    WASHINGTON, DC    NEW JERSEY    DELAWARE

Schnader
ATTORNEYS AT LAW

Michael Malin
December 12, 2006
Page 2


        In light of the above, we must insist that Mandiant comply with the subpoena.  If
Mandiant does not produce the data by December 20, 2006, we will request Court intervention.
Please feel free to contact me with any questions.


                                Sincerely,


                                Stephen J. Shapiro
                                For SCHNADER HARRISON SEGAL & LEWIS LLP


cc (via e-mail):
        Neil G. Epstein, Esquire
        Veronica E. Rendon, Esquire
        Andre Castaybert, Esquire
        John H. Eikemeyer, Esquire
        Lois H. Goodman, Esquire
        John I. Grossbart, Esquire
        Shane M. McGee, Esquire

# EXHIBIT E

# MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
### ATTORNEYS AT LAW

THREE GATEWAY CENTER
100 MULBERRY STREET
NEWARK, NEW JERSEY 07102-4079
(973) 622-7711
FACSIMILE (973) 622-5314

LOIS H. GOODMAN
Direct dial:  (973) 565-2079
lgoodman@mdmc-law.com

December 21, 2006

**<u>VIA OVERNIGHT MAIL AND FACSIMILE</u>**
Mr. Michael Malin
Executive Vice President & CFO
Mandiant Corporation
675 North Washington Street, Suite 210
Alexandria, VA 22314

> Re:    Subpoena to Mandiant Corp. issued in *Charles A. Stanziale Jr., Ch. 7 Trustee of Student Finance Corp. v. Pepper Hamilton LLP, et al.* <u>Civil Action Number: 04-1551(JJF)</u>

Dear Mr. Malin:

    We represent Charles A. Stanziale Jr., Chapter 7 Trustee of Student Finance Corp. (the "Trustee") in the above-referenced case.  We are aware that on November 17, 2006 Schnader Harrison Segal & Lewis LLP, counsel for Pepper Hamilton LLP ("Pepper"), issued a third-party subpoena to Mandiant Corporation, formerly known as Red Cliff Consulting LLC ("Mandiant"), seeking to obtain information Mandiant acquired from two Student Loan Servicing, LLC ("SLS") servers in late 2004.  Mandiant obtained forensic images of the two SLS servers pursuant to an agreement among SLS, Royal Indemnity Company, and the Trustee.  As you have stated in your letter dated December 14, 2006, Mandiant retained copies of the unfiltered forensic images, and is prepared to produce those copies in response to the subpoena.

    While the Trustee does not object in concept to the production of e-mail communications between Student Financing Corporation ("SFC") and Pepper and other non-privileged communications, the Trustee does object to the following:

- Communications between the Trustee and his previous counsel, Dilworth Paxson LLP ("Dilworth").
- Communications between Dilworth and SFC or any of its agents.
- Communications between the Trustee, Dilworth and SFC or any of its agents.
- Communications between the Trustee and Schwartz, Tobia, Stanziale, Sedita & Campisano, PA, including but not limited to the e-mail domain @kipslaw.com ("Schwartz").

NEW YORK, NEW YORK    DENVER, COLORADO    RIDGEWOOD, NEW JERSEY    MORRISTOWN, NEW JERSEY    PHILADELPHIA, PENNSYLVANIA

# McElroy, Deutsch, Mulvaney & Carpenter, LLP

Mr. Michael Malin
January 5, 2007
Page 2

- Communications between Schwartz and SFC or any of its agents.
- Communications between the Trustee, Schwartz, and SFC or any of its agents.

As the above-listed communications are attorney-client privileged, please refrain from producing those e-mails to Pepper or any other parties. Further, before production of any e-mail communications, please contact me to address the specifics of the exclusions requested. Also, please be advised that any production should be at the cost of the requesting party. Thank you for your assistance in this matter.

Very truly yours,

McElroy, Deutsch, Mulvaney & Carpenter, LLP

Lois H. Goodman

cc: Stephen J. Shapiro, Esq. (via facsimile and overnight mail)
    Edwin M. Goldsmith, III, Esq. (via facsimile and overnight mail)
    John Bicks, Esq. (via facsimile and overnight mail)
    Lisa A. MacVittie, Esq. (via facsimile and overnight mail)

# EXHIBIT F

# McElroy, Deutsch, Mulvaney & Carpenter, LLP
### ATTORNEYS AT LAW

THREE GATEWAY CENTER
100 MULBERRY STREET
NEWARK, NEW JERSEY   07102-4079
(973) 622-7711
FACSIMILE (973) 622-5314

LOIS H. GOODMAN
Direct Dial: (973) 565-2079
E-mail: lgoodman@mdmc-law.com

December 7, 2006

*VIA E-MAIL AND FIRST CLASS MAIL*

Stephen J. Shapiro, Esq.
Schnader Harrison Segal & Lewis LLP
Suite 3600, 1600 Market Street
Philadelphia, Pennsylvania 19103-7286

> Re:   *In Re: Student Finance Corporation*
> *Charles A. Stanziale, Jr., Chapter 7 Trustee of Student Finance Corporation*
> *vs. Pepper Hamilton LLP, et al.*
> *Civil Action Number: 04-1551 (JJF)*

Dear Steve:

This is in response to your letter dated December 5, 2006 with regard to the Trustee's assertion of privilege. I am not sure what you find perplexing. The Trustee has asserted the privilege with regard to communications between him, or those acting on his behalf, and his counsel. That privilege has not been waived. The communications were maintained in a password protected directory, and were not copied to third parties. We disagree with your assertion that because the Trustee does not currently have possession of the server, that he has waived the privilege with regard to communications on that server. There has been no voluntary or intentional disclosure here, and hence, no waiver of the privilege.

We also disagree with your contention that the Trustee has the obligation to produce non-privileged communications on the SLS server, at his expense. Throughout discovery, the Trustee has continually made available to all parties whatever non-privileged materials he has had in his possession. With regard to the SLS server, the image made by Red Cliff has been produced in the same form that the Trustee received it. If any additional filtering needs to be done of the documents on the server, the Trustee will not stand in the way of that process, as long as there is a protection in place to preserve the privilege. Accordingly, if Pepper wants to have the communications on the server re-filtered, we have no objection to your contacting Red Cliff to arrange that at your client's expense, but the Trustee is not the party that retained Red Cliff, and we suggest that you make these arrangements through Royal.

With regard to the documents produced by Terence Gill, referenced in footnote 2 of your letter, those documents are being maintained in my firm's Morristown office and are available for inspection by the parties. We do not intend to withhold any of the documents provided by Mr. Gill.

## MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

Stephen J. Shapiro, Esq.
December 7, 2006
Page 2


If you want to review those files, please let me know and we can make arrangements for you to do so.

Very truly yours,

MCELROY, DEUTSCH. MULVANEY & CARPENTER, LLP


Lois H. Goodman

LHG:dmc
cc:     John I. Grossbart, Esq. (Via E-mail)
        Lisa A. MacVittie, Esq. (Via E-Mail)