# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

William H. Sudell, Jr.
302 351 9284
302 425 4685 Fax
wsudell@mnat.com

July 30, 2007

**E-FILED AND HAND DELIVERED**

The Honorable Joseph J. Farnan, Jr.
United States District Court
District of Delaware
844 N. King Street
Room 4124, Lockbox 27
Wilmington, DE 19801

      Re:    *Royal Indemnity Co. v. Pepper Hamilton LLP, et al.*, No. 05-165 (JJF)

Dear Judge Farnan:

      I write, pursuant to the Second Amended Case Management Order #1, on behalf of Pepper Hamilton LLP ("Pepper Hamilton") and W. Roderick Gagné ("Mr. Gagné"), in his capacity as an attorney practicing at Pepper Hamilton. As contemplated by Your Honor's comments at the May 17, 2006 conference, I write to identify the bases upon which we intend to move for summary judgment in the above-referenced action.[1] I outline in a separate letter the grounds upon which we intend to move for summary judgment in the related action captioned *Stanziale* v. *Pepper Hamilton LLP, et al.*, No. 04-1551 (JJF).

      We understand that, as a result of a settlement between Royal and the Trustee, Royal's bankruptcy claim constitutes approximately 98% of the dollar amount of unsecured claims against the Estate of Student Finance Corporation ("SFC"). Nevertheless, independently of the SFC Trustee's claims, Royal's Third Amended Complaint asserts seven causes of action:

---

[1]     Attached to this letter is a chart summarizing Royal's claims and the grounds for dismissal of them.

The Honorable Joseph J. Farnan, Jr.
July 30, 2007
Page Two

(i) civil RICO § 1962(c) (against Mr. Gagné but not Pepper Hamilton); (ii) civil RICO § 1962(d) (against Mr. Gagné but not Pepper Hamilton); (iii) civil conspiracy to commit fraud; (iv) fraud, fraudulent inducement and fraudulent concealment; (v) aiding and abetting fraud; (vi) negligence and negligent misrepresentation; and (vii) aiding and abetting breach of fiduciary duty.

### Counts I and II (civil RICO)

In order to establish a claim under §1962(c), Royal must show, *inter alia*, that "the defendant participated, either directly or indirectly, in the conduct or the affairs of the enterprise." *Royal Indemnity Co.* v. *Pepper Hamilton LLP*, 479 F. Supp. 2d 419, 427 (D. Del. 2007) (citation and internal quotation marks omitted). Liability under §1962(c) is limited to those who "participate in the operation or management of the enterprise itself." *Reves* v. *Ernst & Young*, 507 U.S. 170, 185 (1993). Discovery is complete and Royal cannot meet its burden of raising a genuine issue as to whether Mr. Gagné participated in the operation or management of SFC or an alleged association in fact enterprise. There is also no evidence of any agreement, let alone an unlawful one, between Pepper Hamilton and the McGladrey accounting firm or between Mr. Gagné and the accountant Mr. Aquino.

"[Royal's] claim pursuant to 18 U.S.C. §1962(d) depends in part upon [its] stating a cognizable claim pursuant to 18 U.S.C. §1962(c)." *Alves* v. *Player's Edge, Inc.*, 2007 WL 1238681 at *7 (S.D. Cal. Apr. 26, 2007). Thus, summary judgment as to Count I (§1962(c)) compels summary judgment as to Count II (§1962(d)).

### Counts III through VII are time-barred

Delaware's choice of law rules determine the statute of limitations applicable to Royal's state law claims, and in the case of the torts alleged by Royal the applicable Delaware choice of law rule "requires a court to apply the substantive law of the state . . . where the defendant's wrongful conduct primarily occurred." *Christ* v. *Cormick*, 2007 U.S. Dist. LEXIS 49825 at *19-20 (D. Del. July 10, 2007). As for the allegations against Pepper Hamilton and Mr. Gagné, that is Pennsylvania.[2] Pennsylvania's two year statute of limitations for claims to "recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct," 42 Pa.C.S. § 5524(7), applies to Counts III through VII of Royal's Third Amended Complaint, alleging civil conspiracy, fraud, negligence, and aiding and abetting fraud and breach of fiduciary duty. Royal cannot raise a genuine issue as to whether these claims are timely.

---

[2]   Because Royal's principal place of business is in North Carolina (*see* Royal Third Amended Complaint ¶12), Royal is a non-resident for purposes of application of Delaware's "borrowing statute," 10 Del. C. § 8121.

The Honorable Joseph J. Farnan, Jr.
July 30, 2007
Page Three

      It is undisputed by Royal that in March 2002 SFC's Chief Executive Officer "admitted to Royal . . . that SFC had been making the 'forbearance' payments to prevent student loans from being reported as defaults. . . .[and that] Royal was shocked by these revelations." (Royal Third Amended Complaint ¶¶ 68-69). It is undisputed by Royal that in April 2002 "an SFC officer sent Royal an email in which SFC admitted that it had made a total of more than $50 million in ghost payments between January 2001 and March 2002 on student loans covered by SFC Policies." *Id.* ¶ 70. Royal was on the clearest notice that it should investigate the accuracy of the representations in the PPMs and other securitization documents about which it now complains no later than March/April 2002. Royal hired forensic accountants from the Grant Thornton firm to investigate. In a memo headed "CONFIDENTIAL — ATTORNEY WORK PRODUCT" and titled "Potential Fraud Issues" from Grant Thornton to Royal dated May 9, 2002, Grant Thornton reported to Royal that it had "found some evidence that fraud may have been committed relative to student loans issued and securitized by [SFC] and for which [Royal] had issued credit risk insurance policies." The memo also identified Pepper Hamilton and Mr. Gagné as potentially responsible parties, stating: "SFC's former principal law firm, Pepper Hamilton, has resigned as attorneys for SFC and related companies. We were told that Rod Gagné, a partner in Pepper Hamilton, including his family and affiliated entities, still has investments over $10,000,000 in entities controlled by Andrew Yao." Grant Thornton followed up its memo with a report to Royal dated May 17, 2002 in which Pepper Hamilton and Mr. Gagné were included in a section titled "Potentially Responsible Parties." On July 15, 2002, MBIA sued Royal for over $400 million in connection with Royal's insurance of SFC student loans. Thus, the "forbearance payments," the "fraud," the "conflicts of interest" and the "damages" now alleged were all known to Royal by early/mid 2002. Royal did not file suit until March 18, 2005 — well beyond the two year period of limitations. Counts III, IV, V, VI and VII are time-barred.

**Count III also fails for want of "malice"**

      Royal's claim of civil conspiracy to commit fraud is an intentional tort and is governed by the law of Pennsylvania. *See Christ v. Cormick*, 2007 U.S. Dist. LEXIS 49825 at *19-20 (D. Del. July 10, 2007). "Under Pennsylvania law, malice is an essential element to a civil conspiracy claim." *Royal* Indemnity Co. v. *Pepper Hamilton LLP*, 479 F. Supp. 2d 419, 429 (D. Del. 2007) (citation omitted). "Malice exists where the defendant intends to injure the plaintiff without legal justification." *Id.*, citing *Thompson Coal Co.* v. *Pike Coal Co.*, 488 Pa. 198, 211, 412 A.2d 466, 472 (Pa. 1979) (affirming summary judgment for defendant because of absence of facts indicating that defendant "acted solely to injure" plaintiffs) (emphasis added). *Thompson* has been consistently interpreted as requiring that the sole purpose of the conspiracy be an intent to injure or to cause harm to the party who has been injured. *See WM High Yield Fund* v. *O'Hanlon*, 2005 U.S. Dist. LEXIS 12064 at *48 (E.D. Pa. May 13, 2005) (collecting cases); *Becker* v. *Chicago Title Ins. Co.*, 2004 U.S. Dist. LEXIS 1988 at * 39-40 (E.D. Pa. Feb. 4, 2004).

The Honorable Joseph J. Farnan, Jr.
July 30, 2007
Page Four

Royal has not alleged that Pepper Hamilton or Mr. Gagné acted with the <u>sole</u> intent of harming Royal. *See* Royal Third Amended Complaint, Count III. Because Royal asserts that legal fees and family loans were the "incentive Pepper and Gagné had to further SFC's fraud" (Royal Third Amended Complaint ¶85; incorporated in Count III), Royal cannot raise a genuine issue as to the <u>sole</u> intent of Pepper Hamilton or Mr. Gagné being to injure Royal. Pepper Hamilton and Mr. Gagné are thus entitled to summary judgment on Count III.

**<u>Counts I through VII fail for want of causation</u>**

Pepper Hamilton and Mr. Gagné are entitled to summary judgment as to all of Royal's claims because Royal can adduce no evidence of causation between the actions of Pepper Hamilton or Mr. Gagné on the one hand and Royal's alleged damages on the other.

Royal had no attorney-client relationship with Pepper Hamilton or Mr. Gagné in connection with the matters at issue. Pepper Hamilton issued more than 30 legal opinions in connection with SFC's student loan securitizations on matters pertaining to authority, true sale, non-consolidation and tax matters. These legal opinions were addressed to the qualified institutional buyers, the rating agencies, the bank lenders and others, and every one of them stated that only those to whom they were addressed should rely on them. <u>None</u> of the Pepper Hamilton legal opinions relating to the student loan securitizations was addressed to Royal. This is explained by the fact that Royal insured pools of student loans acquired by SFC at the time those loans were placed in warehouse prior to their securitization. Royal's insurance commitments as to pools of student loans were made *before* those loans were placed into securitizations, *before* the Private Placement Memoranda relating to the securitization of those student loans were distributed, and *before* Pepper Hamilton issued its closing opinions on those securitizations. This sequence of events is undisputed. *See* Royal Third Amended Complaint ¶¶ 37, 47, 51.

Royal's underwriting executives were informed in March 2000 by SFC about forbearance and its effect on the default data. *See* Memorandum dated March 6, 2000 ("for students who are in forbearance, the schools advance payment on behalf of the student until the student resumes paying or until he defaults . . . this, of course, also distorts the default curve"). This was *before* Royal wrote any credit risk insurance on any of SFC's securitizations. During their relationship, SFC informed Royal of the 475% increase in the dollar magnitude of "Forbearance payments" (from $2 million in 1999 to $9.5 million in 2000) in Note 7 to SFC's audited financial statements for the years ended December 31, 2000 and 1999. This was *before* Royal issued another $300 million in credit risk insurance to SFC.

The Honorable Joseph J. Farnan, Jr.
July 30, 2007
Page Five

Failure of causation warrants summary judgment. *See McCabe* v. *Ernst & Young, LLP*, No. 06-1318, 2007 U.S. App. LEXIS 17467 (3d Cir. July 23, 2007); *Steamfitters Local Union No. 420 Welfare Fund* v. *Philip Morris, Inc.*, 171 F.3d 912 (3d Cir. 1999).[3]

**Counts IV, V and VI also fail for lack of falsity and justifiable reliance**

Pepper Hamilton and Mr. Gagné are entitled to summary judgment with respect to Royal's claims of fraud, aiding and abetting fraud and negligent misrepresentation, because of (i) Royal's failure to adduce evidence that any representations made by Pepper Hamilton or Mr. Gagné were false when made; and (ii) Royal's inability to show reasonable reliance.

A fraud claim requires Royal to demonstrate, among other things, that: (i) the allegedly fraudulent statements were false when they were made; (ii) Royal relied on those statements; and (iii) a reasonable juror would conclude that Royal's alleged reliance was justified. *See Royal Indemnity Co.* v. *Pepper Hamilton LLP*, 479 F. Supp. 2d at 430. Royal "must prove each and every element of [its] claims with clear, precise and convincing evidence. This burden is greater than the burden of a preponderance of the evidence. . . . The 'clear, direct, precise and convincing evidence' standard means that [Royal] must present evidence sufficient to enable a reasonable jury to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *Thompson* v. *Glenmede Trust Co.*, Civ. A. No. 92-5233, 1996 U.S. Dist. LEXIS 16248, at *10-11 (E.D. Pa. Oct. 31, 1996). The Court must consider this heightened burden on Royal in considering whether the claims can survive summary judgment. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986) ("in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden.").

Royal's negligent misrepresentation claim similarly requires proof that Pepper Hamilton and Mr. Gagné supplied false information and that Royal suffered a pecuniary loss caused by justifiable reliance upon the false information. Royal is chargeable with the knowledge of what it may reasonably have found if it conducted an appropriate investigation. The Pennsylvania Supreme Court has held that it "hesitate[s] to find reliance justified where the

---

[3] Pennsylvania law applies to Royal's state law intentional tort claims. *See Christ* v. *Cormick*, 2007 U.S. Dist. LEXIS 49825 at *19-20 (D. Del. July 10, 2007). "The Pennsylvania Supreme Court has never recognized a cause of action for aiding and abetting fraud" and "[t]his Court follows the lead of the majority of other courts in this district, in declining to expand Pennsylvania law, and holds that the Pennsylvania Supreme Court would not permit such an action." *Fleet National Bank* v. *Boyle*, 2005 U.S. Dist. LEXIS 44036 at *33 and *48 (E.D. Pa. Sept. 12, 2005) (collecting cases). Thus, Pepper Hamilton and Mr. Gagné are entitled to summary judgment as to Count V of Royal's Third Amended Complaint for this reason as well.

The Honorable Joseph J. Farnan, Jr.
July 30, 2007
Page Six

party claiming reliance had an adequate opportunity to verify the allegedly fraudulent statements." *Porreco* v. *Porreco*, 811 A.2d 566, 571 (Pa. 2002).

None of the Pepper Hamilton opinions was addressed to Royal, so there can be no argument that Pepper Hamilton invited Royal to rely on them. Moreover, Royal cannot identify any statement made to it by Pepper Hamilton that was even arguably false when made. Because Royal made its insurance commitments with respect to pools of student loans *before* any private placement memorandum or opinion letter relating to the securitization of those student loans was drafted, Royal can adduce no evidence that it justifiably relied on anything that Pepper Hamilton or Mr. Gagné said, did or wrote, nor could Royal prove that any alleged reliance was reasonable or justifiable. Pepper Hamilton and Mr. Gagné are entitled to summary judgment on Counts IV, V and VI.

**Count VI also fails for want of any legal duty**

Pepper Hamilton and Mr. Gagné are entitled to summary judgment in respect of Royal's claim of negligence because Royal cannot identify any legal duty owed by Pepper Hamilton or Mr. Gagné to Royal. Royal had no attorney-client relationship with Pepper Hamilton or Mr. Gagné relating to the matters at issue and was to them a third party. "It is well settled . . . that an attorney's duty runs to his client and (ordinarily) not to third parties. Because the existence of a legal duty is a prerequisite to any claim for the negligent performance of an attorney's duty, a party cannot generally sue someone else's attorney for negligence." *Broad-Bussel Family LP* v. *Bayou Group LLC*, 472 F. Supp. 2d 528, 531 (S.D.N.Y. 2007) (action by creditor against debtor's former counsel) (citations omitted). It is generally held that "a claim for professional negligence will fail when a third party brings an action against an attorney because beyond the duty owed to their client and the Court, no other duty is owed by an attorney." *Nichols* v. *Twilley, Street & Braverman, P.A.*, 1991 WL 226777 at *2 (D. Del. Oct. 3, 1991) (collecting cases). Pennsylvania law, which governs, is clear. "[A] claim against an attorney for either legal malpractice or breach of an attorney-client agreement, must be asserted by the attorney's actual client. The only exception to this rule is for a narrow class of third party beneficiaries, specifically, for named legatees of a will, whose legacies have failed as a result of attorney malpractice. Otherwise, the requirement of a relationship between the defendant attorney and plaintiff client remains." *Krauss* v. *Claar*, 879 A.2d 302, 308 (Pa. Super. Ct. 2005) (citations and internal quotation marks omitted). There is no legal duty actionable in negligence running from either Pepper Hamilton or Mr. Gagné to Royal. Summary judgment is warranted as to Count VI.

**Count VII does not allege a recognized tort and Royal cannot prove the elements thereof**

Royal's claim for aiding and abetting breach of fiduciary duty fails because, as this Court has already held in a related action, Pennsylvania does not recognize that cause of action. *Stanziale* v. *Pepper* Hamilton *LLP,* 335 B.R. 539, 551 (D. Del. 2005) ("[T]he Court concludes that there is an insufficient basis to conclude that the Pennsylvania Supreme Court

The Honorable Joseph J. Farnan, Jr.
July 30, 2007
Page Seven

would decide that aiding and abetting breach of fiduciary duty is a valid cause of action under Pennsylvania law.").

In any event, to assert a claim for aiding and abetting breach of fiduciary duty, Royal must identify the existence and breach of a fiduciary duty to it that serves as the underlying tort. *See Broad-Bussel*, 472 F. Supp. 2d at 532; *Restatement (Second) of Torts* § 876 (1977). Royal's claim of aiding and abetting breach of fiduciary duty fails because the relationship between SFC and Royal was an arm's-length business relationship, not a fiduciary relationship. There is no underlying primary breach of fiduciary duty to Royal to which aiding and abetting might apply. Indeed, creditors of a corporation that is insolvent or in the zone of insolvency may not bring direct claims for breach of fiduciary duty against its directors. *See North Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, No. 521, 2006, 2007 WL 1453705, at *6 (Del. May 18, 2007). It follows, then, that Royal may not prosecute a claim for aiding and abetting such a breach of fiduciary duty against a third party.

Moreover, the claim fails because "the essence of [Royal's] claim is that [the law firm for the debtor] knew that [the debtor] was a sham operation [and Ponzi scheme] but failed to disclose that fact to plaintiffs. But [the law firm] owed no duty to the plaintiffs — including no duty of disclosure. In the absence of a fiduciary duty to speak, there can be no liability for aiding and abetting based on silence." *Broad-Bussel*, 472 F. Supp. 2d at 534 (citations omitted). "Mere inaction of an alleged aider and abettor is insufficient as a matter of law unless the aider and abettor owed a fiduciary duty directly to the plaintiff." *Id.*, citing *Sharp Int'l Corp. v. State Street Bank & Trust Co.*, 403 F.3d 43, 50-51 (2d Cir. 2005) (dismissing aiding and abetting claims by bankruptcy trustee against debtor's former outside counsel); *see also Schatz v. Rosenberg*, 943 F.2d 485 (4th Cir. 1991) (affirming dismissal of third party claims against lawyer for aiding and abetting client where allegation was that lawyer remained silent even though it knew that its client was financially insolvent because silence of the attorney absent a duty of disclosure is not actionable; rejecting the argument that ethical duties and public policy give rise to a legal duty to non-clients not to remain silent in the face of client misrepresentations; holding that a corporate counsel's representation of a client "does not mean that they warranted or promised that [the client] had been honest"), *cert. denied*, 503 U.S. 936 (1996).

**Royal's damages are barred by 18 Del. C. § 909**

Royal is a Delaware licensed insurer. *See* Royal Third Amended Complaint ¶ 12. Section 909 of the Delaware Insurance Code prohibits an insurer from retaining "any risk on any one subject of insurance, whether located or to be performed in this State or elsewhere, in an amount exceeding 10% of its surplus to policyholders." 18 Del. C. § 909. Surplus are the funds that insurers are required to hold in excess of monies held to pay their liabilities.

The "subject" of Royal's insurance in this case was "the SFC student loan program" and involved student loans acquired from just a "handful" of vocational schools by a

The Honorable Joseph J. Farnan, Jr.
July 30, 2007
Page Eight

single originator (SFC) and serviced by a single servicer (Student Loan Servicing, LLC, an affiliate of SFC). *See* Royal Third Amended Complaint ¶¶ 1-2, 18-22, 43. There is no evidence that Royal did any loan-by-loan due diligence; rather, in insuring "student loan pools" (*Id.* ¶¶ 180, 183) Royal alleges that it relied on SFC's history and underwriting guidelines concerning loan selection (*Id.* ¶¶ 32-35). Throughout Royal's Third Amended Complaint, the single subject of Royal's insurance is referred to as "the SFC Policies" (*Id.* ¶ 1, 7, 163, 170, 180, 189, 203) issued in connection with "SFC's student loan program." (*Id.* ¶¶ 19, 36, 43, 52). That is a single subject of insurance governed by the 10% limitation requirement of Section 909 of the Delaware Insurance Code.

For every year at issue in this case, the amount of credit risk insurance written by Royal to SFC far exceeded the 10% statutory limit. Pennsylvania and Delaware both recognize the doctrine of negligence in law, otherwise known as negligence *per se*. *See Mahan v. Am-Gard, Inc.*, 841 A.2d 1052 (Pa. Super. Ct. 2003); *Capital Mgmt. Co. v. Brown*, 813 A.2d 1094 (Del. 2002). An insurer's violation of the Delaware insurance code can support a claim of negligence *per se*. *See Apartment Communities Corp. v. Am. E&S Ins. Brokers*, No. Civ. A. 97-177-SLR, 1999 WL 1011975 (D. Del. Oct. 13, 1999) (assuming that violation of 18 Del. C. § 1909 would support claim of negligence *per se*). To the extent that Royal wrote insurance to SFC in excess of the maximum insurance that it was permitted to write, Royal's alleged damages are the direct and proximate result of its violation of 18 Del. C. § 909, and therefore to that extent are barred by the doctrine of contributory negligence. This will result in a reduction in possible damages from the more than $400 million claimed by Royal to no more than the approximately $145 million in policies Royal was permitted to write under the statute, as a matter of law.

        \*        \*        \*

We believe that there is no reasonable dispute as to any material fact asserted in this letter, and therefore believe summary judgment is warranted on the grounds described herein. We will be happy to supplement this letter in any way the Court might find helpful, and thank Your Honor for consideration of these matters.

Respectfully submitted,

*[signature]*

William H. Sudell, Jr.

cc:    All Counsel on Attached Service List

1088974