EXHIBIT A

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROYAL INDEMNITY COMPANY,       )
                               )
              Plaintiff,       )
                               )  C.A. No. 05-165-JJF
v.                             )
                               )
PEPPER HAMILTON LLP, W.        )
RODERICK GAGNE', FREED         )
MAXICK & BATTAGLIA CPAs        )
PC, McGLADREY & PULLEN,        )
LLP, MICHAEL AQUINO and        )
FREED MAXICK SACHS &           )
MURPHY,                        )
                               )
              Defendant.       )

                    Wednesday, February 7, 2007
                    1:03 p.m.
                    Courtroom 4B

                    844 King Street
                    Wilmington, Delaware


BEFORE:  THE HONORABLE JOSEPH J. FARNAN, JR.
         United States District Court Judge


APPEARANCES:

         ASHBY & GEDDES
         BY: PHILIP TRAINER, JR., ESQ.
         BY:  TIFFANY GEYER LYDON, ESQ.

              -and-

         SONNENSCHEIN, NATH & ROSENTHAL, LLP
         BY:  JOHN I. GROSSBART, ESQ.
         BY:  MICHAEL H. BARR, ESQ.

                    Counsel for Plaintiff

2

```
 1    APPEARANCES CONTINUED:

 2

 3            DUANE MORRIS, LLP
             BY:  MICHAEL LASTOWSKI, ESQ.
                      -and-
 4
             WILLIAMS & CONNOLLY, LLP
 5           BY:  THOMAS H. L. SELBY, ESQ.

 6                   Counsel for Defendant
                     McGladrey & Pullen, LLP
 7

 8            ARNOLD & PORTER, LLP
             BY:  VERONICA E. RENDON, ESQ.
 9           BY:  JASON M. BUTLER, ESQ.

10                   Counsel for Defendants
                     McGladrey & Pullen, LLP
11                   Michael Aquino

12

13            THE BAYARD FIRM
             BY:  CHARLENE D. DAVIS, ESQ.

14                   -and-

15            McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
             BY:  MICHAEL S. WATERS, ESQ.
16           BY:  LOIS H. GOODMAN, ESQ.

17                   Counsel for Chapter 7 Trustee

18

19            PRICKETT, JONES & ELLIOTT
             BY:  LAINA M. HERBERT, ESQ.

20                   -and-

21            VEDDER, PRICE, KAUFMAN & KAMMHOLZ, P.C.
             BY:  JONATHAN A. WEXLER, ESQ.

22                   Counsel for Defendants,
23                   Freed, Maxick, Sachs & Murphy &
                     Freed, Maxick & Battaglia

24
```

3

```
 1    APPEARANCES CONTINUED:

 2

 3            SCHNADER LAW
          BY: ELIZABETH K. AINSLIE, ESQ.
          BY:  STEPHEN J. SHAPIRO, ESQ.

 4
                 Counsel for Pepper Hamilton, LLP
 5               and Roderick Gagne

 6

 7            ECKERT SEAMENS
          BY:  NEIL G. EPSTEIN, ESQ.

 8               Counsel for Robert Best, Pamela
                 Gagne, Roderick Gagne and Family
 9               Trusts

10

11            PROSKAUER ROSE, LLP
          BY:  ANDRE G. CASTAYBERT, ESQ.
          BY:  STEVEN OBUS, ESQ.

12
                 Counsel for MBIA and Wells Fargo
13               as Trustees

14

15

16

17

18

19

20

21

22

23

24
```

```
1                    THE CLERK:  All rise.

2                    THE COURT:  All right.  Be seated,

3        please.

4                    Good afternoon.

5                    (Everyone said, Good afternoon, Your

6        Honor.)

7                    THE COURT:  All right.  You want to

8        announce your appearances?

9                    MR. GROSSBART:  John Grossbart on

10       behalf of Royal Indemnity Company, plaintiff.

11               .   MR. BARR:  Michael Barr,

12       Sonnenschein, Nath & Rosenthal on behalf of

13       Royal.

14                   MR. TRAINER:  Lee Trainer, Ashby &

15       Geddes on behalf of Royal.

16                   MS. GOODMAN:  Good afternoon, Your

17       Honor.  Lois Goodman from McElroy, Deutsch,

18       Mulvaney & Carpenter on behalf of Charles A.

19       Stanziale, Trustee.

20                   MR. WATERS:  Michael Waters on

21       behalf of the Trustee, Your Honor.  Good

22       afternoon.

23                   MS. DAVIS:  Charlene Davis for The

24       Bayard Firm on behalf of the Chapter 7 Trustee.
```

1          MS. LYDON:   Tiffany Geyer Lydon from

2     Ashby & Geddes on behalf of Royal.

3          MS. RENDON:   Veronica Rendon, Arnold

4     & Porter on behalf of McGladrey & Pullen, LLP and

5     Mr. Michael Aquino.

6          MR. SELBY:   Thomas Selby from

7     Williams & Connolly on behalf of McGladrey &

8     Pullen.

9          MS. AINSLIE:   Elizabeth Ainslie

10    representing Pepper Hamilton and Rod Gagne as the

11    partner.

12          MR. SHAPIRO:   Steve Shapiro,

13    Schnader Harrison on behalf of Pepper and Gagne.

14          MR. EPSTEIN:   Neil Epstein on behalf

15    of Robert Best, Pamela Gagne, and Mr. Roderick

16    Gagne, and Family Trusts.

17          MR. LASTOWSKI:   Michael Lastowski of

18    Duane Morris here today on behalf of McGladrey &

19    Pullen.

20          MR. PELLETIER:   David Pelletier from

21    Schnader Harrison on behalf of Pepper and Rod

22    Gagne as a partner at Pepper.

23          MR. WEXLER:   Jonathan Wexler of

24    Vedder Price on behalf of Freed, Maxick, Sachs &

1   Murphy and Freed, Maxick & Battaglia.

2           MR. BUTLER:  Jason Butler on behalf

3   of McGladrey & Pullen and Michael Aquino.

4           MR. CASTAYBERT:  Andre Castaybert on

5   behalf of MBIA and Wells Fargo as Trustees, and

6   I'm expecting my colleague, Steve Obus, to be

7   here.

8           THE COURT:  All right.  We're here

9   for a discovery conference, and what I understand

10  is that Docket Item 133, a motion to compel

11  production of communications between the Trustee

12  and Royal and documents related, excuse me, to

13  compensation received by the Trustee filed by

14  Pepper Hamilton and Gagne remains open.

15          Is that correct?

16          MS. AINSLIE:  That's correct, Your

17  Honor.

18          THE COURT:  Pardon me?

19          MS. AINSLIE:  That is correct.

20          THE COURT:  You haven't been able to

21  resolve it.  That motion is going to be granted

22  in all respects except with regard to the

23  personnel files of accountants.  My understanding

24  is that what's sought by that motion and are with

1  that pertain to agreements.  They are the

2  agreements themselves, not communications.

3       This case being a case with credible

4  allegations of fraud requires, I believe and find

5  more depth in the discovery than might otherwise

6  be granted in a contract or simple negligence

7  case.  So weighing the allegations of fraud

8  against the discovery effort, I've determined

9  that the other four categories of documents must

10  be produced.

11       MR. GROSSBART:  Your Honor, I think,

12  if I may, John Grossbart.  I wouldn't say

13  that's -- you are, I think, referring to Royal's

14  motion against McGladrey as opposed to --

15       THE COURT:  I'm sorry.  You're

16  right.

17       What did I say?

18       MR. GROSSBART:  The Pepper motion.

19       THE COURT:  I apologize.

20       MR. GROSSBART:  No, that's all

21  right.

22       THE COURT:  You're right.  Now, the

23  motion that I just ruled on is Docket Item 299

24  filed by Royal Indemnity.

1          Docket Item 133, the motion that

2   compels production of communications between the

3   Trustee and Royal and documents relating to

4   compensation received by the Trustee filed by

5   Pepper, is that the right docket item number?

6          I might have written these down

7   wrong.

8          MR. GROSSBART:  I don't know.

9   That's certainly an outstanding motion.

10          MR. WATERS:  That's the other

11   motion.

12          THE COURT:  I better go check the

13   docket real quick just to be sure.  I tried to

14   take the docket items off the original documents,

15   so let me just be sure.

16          MR. WATERS:  Your Honor, if I may,

17   the --

18          THE COURT:  Yes.

19          MR. WATERS:  The docket number for

20   Stanziale versus Pepper Hampton is Civil Action

21   Number 04-15 --

22          THE COURT:  Yeah, that's not

23   helpful.  I have 04-1551.  I'm looking for the

24   docket items with --

1          MR. WATERS:  Oh, the docket items.

2          THE COURT:  The specific docket

3   items in the briefing.  They are just on the

4   corner usually, and they're not used by you all

5   when you talk about the motions.

6          So I want to be sure.  I got that

7   first one wrong, but it is DI-299.

8          Now, 133 --

9          (Following a discussion held off the

10  record:)

11          THE COURT:  Okay.  All right.

12          Docket Item 133 in 04-1551, the

13  motion to compel is granted.

14          And Docket Item 156 a motion for

15  protective order and to compel discovery.  As I

16  understand it, in the first part, there's a

17  request for in camera review, which I'll grant.

18          Are you understanding?

19          MS. AINSLIE:  Yes.

20          THE COURT:  You both said that you

21  would --

22          MS. AINSLIE:  We have the documents

23  here, Your Honor.  We can leave them here with

24  you.

```
 1              THE COURT:  You'll submit them, and

 2   I'll make a ruling on those documents --

 3              MS. AINSLIE:  That will be fine.

 4              THE COURT:  -- on the context of

 5   that motion.

 6              The second part of that motion is a

 7   request for Gagne's compensation records.

 8              MS. AINSLIE:  We have already

 9   provided those, Your Honor.

10              MR. WATERS:  That's been resolved,

11   Your Honor.

12              THE COURT:  So all I need to have in

13   that motion, then, is the in camera documents.

14              MR. GROSSBART:  Your Honor, if I

15   could ask a point of clarification on that

16   particular motion?

17              THE COURT:  Sure.

18              MR. GROSSBART:  Pepper's motion had

19   really two separate and independent parts.  One

20   had to do with Trustee compensation, one had to

21   do with what we contend were joint.

22              THE COURT:  This is 133?

23              MR. GROSSBART:  Well, they were in

24   the same documents to get Trustee compensation
```

1    and communicatins between Royal and the Trustee,

2    which we've asserted are protected by joint

3    privilege.

4              Are you granting both aspects of

5    that motion or have you not spoken yet to the

6    communications between the Trustee and Royal?

7              That motion also deals with --

8              THE COURT:  There are two aspects to

9    that, pre-settlement and post-settlement.  And

10   I'm granting it as to what I thought the request

11   boiled down to, which were the pre-settlement

12   discussions.

13             MR. GROSSBART:  Got you.

14             THE COURT:  If I misunderstood, now

15   is the time to tell me.

16             MR. GROSSBART:  No.  I don't think

17   you misunderstood it.  I -- I appreciate that

18   distinction.

19             THE COURT:  Okay.

20             MR. GROSSBART:  And just because I'm

21   switching gears here with these numbers on the

22   motion that Royal brought against McGladrey, the

23   motion to compel, did I understand the Court to

24   say it's granted in all respects except the

1    personnel files or did I --

2              THE COURT:  There were five specific

3    categories and somewhere in an opening paragraph

4    of the brief, you set them out pretty clear, the

5    five categories.

6              It's granted in all respects except

7    to the --

8              MR. GROSSBART:  Correct.

9              THE COURT:  -- personnel files, as I

10   understood it, of the accountant employees.

11             MR. GROSSBART:  One of the things we

12   asked with respect to that item in particular is

13   if we were going to be denied discovery of those

14   personnel files, that there be in limine

15   protection against use of the personnel files

16   that we and perhaps others have already produced

17   in the case.

18             THE COURT:  Well, I understand that

19   you gave over some files.

20             MR. GROSSBART:  Yes.

21             THE COURT:  But all of you are going

22   to be, I assume, if this case goes to trial, in

23   an in limine practice.  And what I tried to say

24   at the beginning was that I'm granting the

1    discovery because of the fraud assertions, but

2    that doesn't mean that this is going to be

3    evidence that gets into a trial.

4              MR. GROSSBART:  No, I understand.

5              THE COURT:  Because if you get that

6    far, because it will be motions to limit

7    admission.  Because their big argument is that

8    it's really not probative on any issue.  And, of

9    course, you argument to all that is you already

10   gave them over.

11             MR. GROSSBART:  My bad.

12             THE COURT:  I don't know what to

13   tell you.

14             So down the road, I understand you

15   may, but for purposes now, present purposes, I'm

16   just ruling on what's disputed.  But I would

17   think, to give you my present thinking, manuals

18   probably get in.  Irrelevant personnel

19   evaluations, generally, not specific to the issue

20   don't.

21             But I don't know.  I'll have to wait

22   and see.

23             MR. BARR:  Your Honor.

24             THE COURT:  We have got to have a

1      little more discovery before we get that.

2                   MR. BARR:  Michael Barr.  I

3      apologize two people addressing the same issue.

4                   Is the Court's denial of our access

5      to their personnel records also pertaining to the

6      specific material where they may have you review

7      that says your performance with respect to the

8      Student Finance?

9                   THE COURT:  Yes.

10                  MR. BARR:  So across the board?

11                  THE COURT:  For present purposes,

12     you're out.

13                  MR. BARR:  Thank you, Your Honor.

14                  MS. RENDON:  Your Honor, on the same

15     motion, if I may just seek some additional

16     clarification.

17                  And I thought, and maybe I

18     misunderstood the Court, that with respect to the

19     request by Royal for joint defense agreements or

20     any kind of cooperation agreements, what Your

21     Honor has ordered is only that agreements be

22     produced, but not communications subject to that

23     agreement.

24                  THE COURT:  Yeah.  I couldn't tell

```
 1   in your papers whether you whispered to each

 2   other or you've written things down.  I'm not

 3   sure, whatever the agreements are, whether

 4   they're whispered, oral, written down.  You've

 5   got to give them the agreements.

 6             You don't have to give any

 7   communications that you then transacted subject

 8   to those agreements.  That, you know, in my view,

 9   is not part of my order.

10             MS. RENDON:  And I just wanted to

11   clarify that I had another request for

12   clarification, also, and it relates to the audit

13   manuals that I understand Your Honor is ordering

14   to be produced.

15             And the question that I have on that

16   is:  The request for production was for years

17   audit manuals that existed for 1997 through 2002,

18   but the work that is the subject of the lawsuit

19   all occurred in the time period February 2000

20   through April 2001.

21             And what I would request is that

22   the -- and I'm not sure if Your Honor took that

23   into consideration or not.  I'm sure you will let

24   me know.  But I guess what I'm asking is:  Can we
```

1    limit the production of the audit manuals to the

2    time period that the work is at issue?

3                    THE COURT:  No.  I didn't think the

4    period requested was burdensome, because it's an

5    audit manual.

6                    And I could see where they may want

7    to make some -- I don't want to be an advocate

8    here, but I could see where they may want to use

9    prior manuals versus manuals specifically

10   relevant to the time frame.  It is discovery.

11                   Now, again, whether I would let them

12   use a manual from '97 against the allegations of

13   the case as proof, I don't know yet.  But I think

14   for discovery purposes, I can understand the

15   reason why they would want '97 through.

16                   MS. RENDON:  Thank you, Your Honor.

17                   THE COURT:  So you have to give them

18   all. You were standing up in the middle of her

19   conversation.

20                   MR. BARR:  Your Honor, you

21   responded --

22                   THE COURT:  I mean, he was standing

23   up.

24                   MR. BARR:  I'm sitting down.

1          MR. GROSSBART:  I was standing up,

2    but it got clarified, and I jumped the gun a bit.

3          THE COURT:  Okay.  So do you want

4    to --

5          MR. GROSSBART:  We're great.

6          THE COURT:  You want to jump up?

7          MR. BARR:  I'm not budging.

8          MR. WATERS:  Just to be certain,

9    your ruling on Pepper's document request with

10   respect to Mr. Stanziale's compensation from his

11   law firm, you denied the motion for a protective

12   order.

13          THE COURT:  Yes.

14          MR. WATERS:  And you're granting

15   that?

16          THE COURT:  Yes.

17          MR. WATERS:  I am clear.  I just

18   wanted to make sure.

19          THE COURT:  Yes.  There is a

20   protective order in the case, and I think if

21   they -- what was it they talk about, a $5 million

22   payment?

23          And then what is going on between

24   the Trustee and the law firm, you know, if they

18

1    want to know that, that's fine.  But, again, I

2    don't know if it's evidence in the case on an

3    element ultimately as, you know, proving.

4              But I'm going to let them see it.  I

5    don't think it's all that critical --

6              MR. WATERS:  Okay.  I understand.

7              THE COURT:  -- as a discovery

8    matter.

9              They're just curious.  They are

10   trying to see if they're being taken care of on

11   their side.  It's not a big deal.

12             I'm not someone that's shocked by

13   numbers.  I figure all the aggravation you put up

14   with, you probably ought to be getting double

15   what you are any way.

16             So, all right.  Does that kind of

17   settle what was out there?

18             There's one more thing in this

19   letter request.  I'm sorry.

20             Is that what you wanted to talk

21   about?

22             MR. SELBY:  Yes.

23             THE COURT:  I sort of had in mind

24   what I was going to do, and then I got this

1  letter, my case manager gave it to me about a

2  half hour ago, telling me what the status is.

3  Because maybe I don't have to get into this.

4          MR. SELBY: Your Honor, we filed the

5  application. As you know, we were before you

6  arguing for Royal in the United States to produce

7  the documents. Your Honor denied that motion.

8          We, at the time, informed you we'd

9  be filing the application under the Hague

10  Convention, which we did in January.

11          We, too, received today this letter

12  objecting, not to the substance of the request,

13  the documents requested, but to some of the

14  language in the application itself. And we've

15  had a brief discussion outside, but that's really

16  where we are today.

17          We think time is of the essence.

18  We'd like to get the application approved,

19  because as you know, these things take time

20  getting overseas and getting the Court's

21  attention overseas.

22          We've worked with counsel overseas

23  to craft the request the way it was crafted. And

24  so we'd like to get approval as quickly as

1    possible.

2            MR. BARR: Your Honor, simply stated

3    where our objection was, Mr. Selby is correct.

4    We're not objecting to them making letter

5    requests or the Court issuing an order from this

6    Court with respect to that in order to start the

7    processes for the Hague Convention.

8            The portion of what they propose

9    that we objected to, in effect, put this Court in

10   the position of finding essentially relevance

11   with respect to certain materials, making certain

12   specific factual findings as to the relevance of

13   those materials as to the existence of certain

14   facts.

15           And the only changes that we made in

16   our proposed change was effectively just to

17   eliminate that portion of the findings and to say

18   this is their contention and it's effective for

19   the Court's indulgence to determine how to

20   proceed under the Hague Convention.

21           It's different what they presented

22   to the Court and what we presented to the Court

23   and most of those changes, Your Honor, are on

24   Page 6, one paragraph there.

1          THE COURT:  Do you need those to

2    make your case?

3          MR. SELBY:  Our concern, Your Honor,

4    is that we need to make a showing in the U.K. for

5    these documents, and that paragraph is addressed

6    to the involvement of the U.K. parent in the

7    transaction and in the events related to today.

8          It is our allegations.  We're not

9    submitting that Royal is bound by any finding of

10   this Court related to the application, but we do

11   think it's important to tell the Court in the

12   United Kingdom what the involvement of the United

13   Kingdom company was in order to make the showing

14   for them to approve the application.

15         MR. BARR:  Your Honor, we think that

16   they do make that showing.  And again, it is

17   certain they can file papers further to this in

18   London.

19         But they do make those kind of

20   statements on Pages 2, 3 and 4 of their letter

21   request.  They lay these things out chapter and

22   verse.  And there it's cast in terms of what

23   their allegations are.

24         When you turn to the paragraph on

1     Page 6, it specifically is written in a fashion

2     that no longer talks about these being

3     McGladrey's allegations or McGladrey's

4     contentions, but rather that these are actual

5     specific findings of this Court. And Your Honor,

6     effectively, you are putting then your judicial

7     interpretation on those findings. And

8     respectfully that is not what occurred here.

9                    And, again, we're focusing -- there

10    are a few other words we changed earlier, again,

11    to talk about the notion of allegations. What we

12    could do, Your Honor, we could, by this afternoon

13    or tomorrow morning at the latest, provide just a

14    red line so the Court can see the comparison

15    between the two.

16                   But, again, if you're looking at the

17    way the language is on the top of Page 6 where it

18    says, you know, the documents in RSA's

19    possession, i.e. assuming they're in their

20    possession, will be used to prove their defenses

21    at the trial of this case.

22                   And then proceeding, starting with

23    the third sentence, it relates very specifically,

24    effectively findings as to what the role was of

23

1     the U.K. parents here, and no factual findings

2     that may ultimately be found in this trial or

3     not.

4              But they certainly are not something

5     that this Court has already determined.  The

6     change that we made, which in our proposal, Your

7     Honor, and I could just hand up a copy if need be

8     here.  It's, again, on Page 4 after Number 8.

9                   May I approach?

10                  THE COURT:  I think I have it.

11                  MR. BARR:  Your Honor, if you would

12    look, then, on Page 4 of our proposal.  And the

13    paragraph under -- it's numbered Paragraph 8.  I

14    think that language would simply change it to be

15    what they contend happened here, and the fact

16    that they may use -- potentially use these at

17    trial.

18              Again, then it doesn't put this

19    Court in the position of saying to the Court in

20    London, This is what occurred.

21                  MR. SELBY:  Your Honor, that

22    language is particularly problematic, the

23    language that's just been highlighted to you,

24    because of the requirements of the U.K. Court

24

1    that this be not for discovery purposes, but for

2    the use at trial.  And the qualifiers in that

3    sentence, as written by Royal, we believe could

4    lead the U.K. Court to reject this.  And this has

5    been pending since January without complaints

6    from Royal until this morning.

7              I find it hard to believe that this

8    is causing as much heartburn as it appears to be

9    when it's been unresponded to all this time.

10             MR. BARR:  Your Honor.

11             MR. SELBY:  I have no problem -- I

12   have no problem, Your Honor, indicating that --

13   these are on the top of Page 6 of our -- of our

14   original request that these are allegations.

15   We're not trying to imply or suggest that these

16   are findings by this Court.

17             I don't have an objection to that.

18   But the softening of the language appears to have

19   the effect of making this much more contingent

20   than the U.K. Courts may allow and could

21   ultimately lead to further litigation on this

22   matter.

23             MR. BARR:  Your Honor, but in the

24   same token, for there to be a presentation to a

1    Court in the U.K., which is obviously not --

2    that's familiar with this action as this Court

3    is, that effectively says these are documents

4    that will be used at trial to prove something is

5    very different from saying these are materials

6    that they need or would like to get possession of

7    in order to present at trial.  Those are not the

8    same thing.

9              And, again, for this Court to be

10   saying to a U.K. Court, in effect, fellow jurors,

11   I need these materials in my courtroom for this

12   matter to be adjudicated is a very different

13   thing than what we have ever understood the

14   purpose of the Hague Convention, which is a

15   procedural mechanism for obtaining materials from

16   different jurisdictions.

17             Your Honor, it's our belief this is

18   customary in this type of application.  This is

19   customary language.  We don't see it as any sort

20   of adoption of the position, and we were glad to

21   try to work out language about the allegations.

22             But we just ask that this either be

23   approved as submitted or that we be given an

24   opportunity to try to work something out over the

1    next 24 hours.  But we really would like to

2    proceed with this in order to get these documents

3    and --

4                THE COURT:  Well, let's see if we

5    all understand.  I mean, in the patent cases we

6    do here, this happens all the time.

7                And it's the same standard, but

8    there's different views on the standard.  It's

9    much harder, for instance, in Germany, I'm told,

10   and there's some pharmaceutical patents that come

11   from Sweden and places like that, than it is in

12   the United Kingdom.

13               So, but let me tell you what I think

14   they want you to do:  I think you have to make --

15   I have to sign an order that says that I've been

16   presented, and I find that there is evidence in

17   the United Kingdom that is not for discovery,

18   because they don't want you fishing around, but

19   it is for use at trial.

20               Now, the order I read, possible use

21   at trial, I think that probably is okay.  Maybe

22   not.

23               But the only scrutiny I think the

24   United Kingdom gives our letters, our orders are

1    that, the difference between discovery and the

2    need for the evidence in the case.

3            I don't make enough to draft that

4    kind of language.  You've got to get together and

5    draft that language.

6            Now, it can't be tentative language.

7    And so sometimes we have to accept the

8    representations of officers of the Court that the

9    evidence exists, and they're going to need it.

10           On the other hand, it can't be --

11   first of all, it's not findings able to be used

12   in -- you already said that in the trial.  But it

13   can't be wide ranging beyond what you really

14   need.

15           Now, with that guidance can't you

16   come up with something?

17           MR. BARR:  Sure we can, Your Honor.

18   Over -- at least we certainly will attempt to do

19   so.

20           MR. SELBY:  We'll certainly attempt

21   to do so.

22           THE COURT:  If you can't after you

23   in good faith -- I mean, there's actually a

24   little book on this stuff right here in the

1    library in this building.  Like they have samples

2    you can go get.  Just copy it, and then put your

3    allegations in, what you expect to find, and then

4    I'll sign it.

5              But it ought to be a discrete

6    disagreement if there is a disagreement.  And it

7    ought not to be, in my view, about use, intended

8    use.  It ought to be about how broad the

9    statement of the information I found is needed.

10             MR. BARR:  Thank you, Your Honor.

11             THE COURT:  I can parse that, if you

12   can't agree.  So you can give me your marked up

13   copy of what you think should be in it, and I'll

14   just make a ruling.  And you can have my

15   signature and go.

16             MR. BARR:  To be realistic, I would

17   just propose that we have something back to the

18   Court by Friday to inform the Court where we are,

19   it being Wednesday afternoon at this point.

20             MR. SELBY:  That's fine.

21             THE COURT:  Actually you can

22   probably do this today.

23             MR. SELBY:  I agree, Your Honor.  I

24   think it is a matter of five words.

```
 1                  THE COURT:  If this is more than --
 2                  MR. SELBY:  With that direction, I
 3    think it's really a matter of changing the tenor
 4    of the paragraph on Page 6 to be allegations that
 5    McGladrey is making.
 6                  THE COURT:  I don't want to get into
 7    it.
 8                  MR. SELBY:  That's fine.
 9                  THE COURT:  That's what I'm trying
10    to avoid.  I think you can get this done by this
11    afternoon.
12                  MR. SELBY:  Okay.
13                  THE COURT:  And I guess you don't
14    call it typed up anymore.  What do you call it?
15    Processed?
16                  And I might be able to sign this by
17    five o'clock.  You could probably do it in the
18    courthouse and then send somebody with one of
19    those discs.
20                  MR. SELBY:  We'd be glad to do that,
21    Your Honor.
22                  THE COURT:  Now, if you can't, then
23    I can look at it tomorrow and get it back to you
24    by tomorrow afternoon.
```

1              MR. SELBY:   Super.

2              THE COURT:  So I'll expect to get

3     something to sign by five o'clock or your marked

4     up proposals by 10 o'clock tomorrow morning.

5              MR. SELBY:  Thank you, Your Honor.

6              MR. BARR:  That's fine, Judge.

7     Thanks.

8              THE COURT:  You really should be

9     able to agree on this.  This is something -- I

10    mean, I'd be surprised.

11              Or else we'll have to cut off

12    funding.  That's the trick.

13              All right.  I think I've addressed

14    everything that you had pending.

15              No?

16              MS. AINSLIE:  Yes, you have as far

17    as I know.  I just wanted to bring two matters to

18    the Court's attention.

19              One of them is I'd like to put on

20    the record the fact that Pepper has, I think,

21    since our -- or at least I wanted to clarify that

22    the only thing that we are withholding and then

23    submitting to the Court by way of in camera

24    inspection are certain communications between Rod

1    Gagne and counsel to Pepper Hamilton.

2              All of the other matters that have

3    been referred to --

4              THE COURT:  Say that again.  You're

5    withholding between Pepper's counsel?

6              MS. AINSLIE:  And Pepper's counsel.

7              THE COURT:  Schnader?

8              MS. AINSLIE:  No, Pepper.  Of

9    counsel.  Their other counsel, Mr. Wilcox.

10             So it's those communications.  And

11   we have, in fact, waived the -- decided that we

12   are able to produce anything relating to other

13   entities as to which we had previously asserted a

14   privilege.

15             So we have provided those to the

16   Trustee.  So the only things that I believe we

17   need to have the Court rule on or look at are

18   these communications.  And that's what we've

19   brought.

20             MR. WATERS:  As far as I know, they

21   are still withholding documents as to where

22   privilege has not been claimed, but as to which

23   they think a privilege might exist to SLS and SMS

24   and UCM.

32

1          MS. AINSLIE:  We are not.

2          MR. WATERS:  If you haven't given it

3   to them, you will turn them all over.

4          MS. AINSLIE:  They have been

5   produced, but we'll go back and check.  And if

6   any have inadvertently not been produced, they

7   will be.

8          MR. WATERS:  Okay.

9          MS. AINSLIE:  Your Honor, there's

10   one last thing.

11          THE COURT:  I think you have an

12   agreement.

13          MS. AINSLIE:  Yes, we do.

14          Your Honor, the one last thing that

15   I'm just raising in case it is of interest to the

16   Court in a way, there is a dispute between the

17   parties, the Trustee and Pepper with respect to a

18   server that has been in existence and exists in

19   the State of New York.

20          We filed a motion to compel in the

21   Southern District of New York and one of the

22   Schnader lawyers went to New York City, argued

23   that it appeared that the judge there was of a

24   mind to transfer it to Your Honor

1      If you would like to hear something

2    about that today, we have Mr. Pelletier.  But if

3    you would rather wait and see whether this

4    Southern District judge bites the bullet and

5    decides it, I can understand it.

6            THE COURT:  They're supposed to be a

7    lot smarter than us up in the Southern District.

8    Let's see.

9            MS. AINSLIE:  That is fine.  I just

10   wanted to make the offer.

11           THE COURT:  They're the high end of

12   the District Court.  We will give them the first

13   shot, and then we'll drop it down here.

14           Here is what I want to tell you:  So

15   we're pretty much resolved for what was pending.

16   What I wanted to tell you was there's a

17   procedure, because you all are sort of, you know,

18   at issue in a number of things.  As you go on, if

19   you go to the website of my chambers on the Court

20   website, there's a procedure for patent cases for

21   what they call -- what do they call it --

22   non-case dispositive motions.  Non-case

23   dispositive motions.

24           So in my world that means not

34

1    motions to dismiss or summary judgment, but

2    discovery disputes.  And there's a motion day

3    each month.

4            It's only for patent cases right

5    now, but I'm going to allow you to utilize that

6    procedure.  But read the order very carefully,

7    because there's some strict time frames, and

8    you'll get bounced.  And the idea is to help you

9    reduce paper and help us get you quicker answers.

10            So you have to come -- I think --

11    well, you know, you might be -- if you want to go

12    home and write a motion real quickly, I think

13    Friday is the cut-off for March 2nd, because it's

14    a short month in February.

15            I'd prefer you not do that since you

16    were here today, but there are dates out through

17    July once a month.  You notice the motion for 10

18    o'clock that day.  You have to come.

19            Lately it's been taking like an hour

20    to get everybody out of here.  And there's like

21    seven or eight motions on usually.

22            But you're allowed to use that

23    procedure, but be very careful.  And then

24    essentially we just enter a disposition

1    electronically on the docket tracking the reasons

2    I give at the hearing, kind of like today.

3            So, but read it carefully about the

4    time frames so you're not cut short and then get

5    bounced to the following month, because that

6    would, you know, not help the purposes of it.

7            And that way we don't have to worry

8    about you having time to get in.

9            MS. AINSLIE:  Great.  Thank you.

10           THE COURT:  Anything else?

11           All right.  Thank you very much.

12           We will be in recess.

13           (Court was recessed at 1:35 p.m.)

14

15

16

17

18

19

20

21

22

23

24

36

```
1    State of Delaware    )
                          )
2    New Castle County    )

3

4

5              CERTIFICATE OF REPORTER

6

7         I, Heather M. Triozzi, Registered

8    Professional Reporter, Certified Shorthand

9    Reporter, and Notary Public, do hereby certify

10   that the foregoing record, Pages 1 to 36

11   inclusive, is a true and accurate transcript of

12   my stenographic notes taken on February 7, 2007,

13   in the above-captioned matter.

14

15         IN WITNESS WHEREOF, I have hereunto

16   set my hand and seal this 9th day of February,

17   2007, at Wilmington.

18

19

20

21         Heather M. Triozzi, RPR, CSR

22

23

24
```

Hawkins Reporting Service
715 North King Street - Wilmington, Delaware  19801
(302) 658-6697